Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Christopher L. Lebsock (Cal. Bar No. 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel:  (415) 633-1908
Fax:  (415) 358-4980
Email:  mlehmann@hausfeld.com
Email:  bsweeney@hausfeld.com
Email:  clebsock@hausfeld.com

Michael D. Hausfeld
James J. Pizzirusso
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email:  mhausfeld@hausfeld.com
Email:  jpizzirusso@hausfeld.com

*Counsel for Plaintiff Olean Wholesale*
*Grocery Cooperative, Inc.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Direct Purchaser Class Actions | Case No. 3:15-md-02670-JLS-MDD<br><br>MDL No. 2670<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AN ORDER APPOINTING HAUSFELD LLP AS INTERIM LEAD COUNSEL FOR THE PUTATIVE CLASS OF DIRECT PURCHASER PLAINTIFFS AND APPOINTMENT OF A STEERING COMMITTEE**<br><br>Judge: Hon. Janis L. Sammartino<br>Date:   March 10, 2016<br>Time:  10 a.m. |

# <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION...........................................................................................1

II.  ARGUMENT. ..............................................................................................2

    A.    Standards for Appointment of Lead Counsel under Rule
        23(g)(3). ...............................................................................................2

    B.    Background ..........................................................................................3

    C.    Benefits of A Single Lead and Steering Committee............................3

    D.    Work Done By The Hausfeld Firm In This Matter ..............................5

    E.    The Proposed Steering Committee's and Hausfeld's
        Experience in Antitrust Class Action Litigation..................................7

    F.    Resources To Conduct This Litigation ..............................................10

    G.    Steering Committee And Ability To Work Cooperatively
        With Other Counsel .........................................................................13

III.  CONCLUSION. ........................................................................................23

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*BP p.l.c. Securities Litigation,*
   No. 10-md-02185 (S.D.Tex.)   ......................................................... 17

*Brigiotta's Farmland Produce & Garden Center Inc. v.  United Potato
Growers of Idaho, Inc. et al.,*
   Case No. 4:10-CV-307-BLW (D. Idaho) ............................................ 4

*Eminence Capital, LLC v. Aspeon, Inc.,*
   316 F.3d 1048 (9th Cir. 2003) ......................................................... 18

*Four In One Co. v. SK Foods, L.P.,*
   2:08-cv-03017 MCE, 2009 WL 747160 (E.D. Cal. Mar. 20, 2009) .................. 12

*Hendricks v. StarKist Co.,*
   No. 13-CV-00729 HSG (N.D. Cal.) ................................................. 6, 7

*In re Air Cargo Services Antitrust Litigation,*
   No. 1:06-MD-01775 (E.D.N.Y.) ................................................ 7, 8, 9, 10, 20

*In re Air Cargo Shipping Servs. Antitrust Litigation*,
   240 F.R.D. 56 (E.D.N.Y. 2006) .................................................... 7,8

*In re Apple iPod iTunes Antitrust Litigation,*
   No. 5:05-CV-00037 YGR (N.D. Cal.) ........................................... 9, 13

*In re Blue Cross Blue Shield Antitrust Litigation,*
   No. 2:13-CV-20000-RDP, 2014 WL 2767360 (N.D. Ala. June 18, 2014).......... 7

*In re Capacitors Antitrust Litigation*,
   No. 3:14-cv-03264-JD (N.D. Cal.).................................................... 4

*In re Cathode Ray Tube (CRT) Antitrust Litig*ation,
   No. 07-5944 SC, 2008 WL 2024957 (N.D. Cal. May 9, 2008) ....................... 4

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litigation*,
No. 1674, 2011 U.S. Dist. LEXIS 107366, (W.D. Pa. Sep. 20, 2011) ............... 5

*In re Domestic Airline Travel Antitrust Litigation*,
No. 15-md-1404 (D.D.C.) ................................................................. 15

*In re Domestic Drywall Antitrust Litigation*,
13-md-02437 (E.D.Pa.) ................................................................... 16

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litigation*,
No. 03-md-1542 (D. Conn.) ............................................................. 19

*In re Foreign Exchange Benchmark Rates Antitrust Litigation*,
No. 1:13-cv-07789, (S.D.N.Y) ................................................... 7, 9, 20

*In re Fresh and Process Potato Prods. Antitrust Litigation*,
No. 4:10-md-02186 (D. Idaho) .................................................... 10, 12

*In re Gold Fixing Antitrust and Commodity Exchange Act Litigation*,
No. 14-cv-2917 (S.D.N.Y.) .............................................................. 15

*In re Google, Inc. Class C Shareholder Litigation*,
No. 7469-CS (Del. Ch. Ct.) ............................................................. 16

*In re High Pressure Laminates Antitrust Litigation*,
MDL No. 1368 (S.D.N.Y.) ............................................................... 12

*In re Honey Transhipping*,
No. 1:13-cv-02905 (N.D. Ill.) ........................................................... 10

*In re International Air Passenger Surcharge Antitrust Litigation*,
No. M:06-01793 CRB (N.D. Cal.) ...................................................... 10

*In Re Korean Ramen Antitrust Litigation*,
No. 3:13-cv-04115 (N.D. Cal.) .................................................... 12, 13

*In re LIBOR-Based Fin. Instruments Antitrust Litigation*,
No. 1:11-md-02262, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) ... 2, 7, 11, 21

*In re Memorex Security Cases*,
161 F.R.D. 88 (N.D. Cal. 1973) ........................................................ 17

*In re London Silver Fixing Ltd., Antitrust Litigation,*
No. 1:14-md-02573 (S.D.N.Y.)................................................................. 20

*In re Methionine Antitrust Litigation,*
MDL No. 00-1311 (N.D. Cal.) ................................................................ 19

*In re Municipal Derivatives Antitrust Litigation,*
No. 1:08-md-01950 (S.D.N.Y.) ................................................................. 4

*In Re: Optical Disc Drive Products Antitrust Litigation,*
N.D. Cal. Case No. M:10-cv-02143-VRW (Dkt. 33, May 7, 2010) ................. 7

*In re Payment Card Interchange Fee and Merchant Discount
Antitrust Litigation,*
No. 1:05-md-1720-JG-JO (E.D.N.Y.) ..................................................... 13

*In re Polyester Staple Antitrust Litigation,*
MDL No. 03CV1516 (W.D.N.C.)............................................................ 19

*In re Pool Products Distribution Market Antitrust Litigation,*
No. 12-MD-2328 (E.D. La.) ................................................................... 15

*In re Processed Egg Prods. Antitrust Litigation,*
No. 2:08-md-02002 (E.D. Pa.) ............................................................... 15

*In re Rail Freight Fuel Surcharge Antitrust Litigation,*
MDL No. 1869 (D.D.C  September 20, 2012) ...................................5, 7, 15

*In re Rent-Way Securities Litigation,*
*3*05 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................... 19

*In re Rough Rice Commodity Litigation,*
No. 11-cv-00618 (N.D. Ill.).................................................................... 21

*In re Rubber Chemicals Antitrust Litigation,*
MDL No. C-04-1648 (N.D. Cal.) ........................................................... 19

*In re Swisher Hygiene, Inc., Securities and Derivative Litigation.*
12-md-2384 GCM (W.D.N.C.) ............................................................... 17

*In re Thalomid and Revlimid Antitrust Litigation.*
14-cv-06997 (D.N.J.)............................................................................. 16

*In re Titanium Dioxide Antitrust Litigation*
  No. 10-cv-00318 RDB (D. Md.), 2013 WL 5182093
  (D. Md. Sep. 12, 2013) ....................................................................... 18

*In re Treasury Securities Auction Antitrust Litigation.*
  MDL 2673 (S.D.N.Y.)........................................................................... 15

*In re Vitamin C Antitrust Litigation,*
  No. 1:06-MD-01738, (E.D.N.Y.) .................................................... 7, 9

*In re Vitamins Antitrust Litigation,*
  MDL No. 1285 (D.D.C) ................................................................... 7, 9

*In re: Volkswagen "Clean Diesel" Marketing, Sales Practices
And Products Liability Litigation,*
  No. 3:15-md-02672-CRB (JSC) (N.D. Cal.). ................................... 17

*Joseph v. Wiles,*
  223 F.3d 1155 (10th Cir. 2000) ...................................................... 18

*Levitte v. Google, Inc.,*
  No. C 08-03369 JW, 2009 WL 482252 (N.D. Cal. Feb. 25, 2009) .................... 4

*Law v. NCAA,*
  No. 94-2053-KHV (D. Kan.)................................................................. 9

*Laydon v. Mizuho Bank, Ltd., et al,*
  No. 12-cv-3419 (S.D.N.Y.) ............................................................... 21

*Matrix Capital Management Fund, L.P. v. BearingPoint, Inc.,*
  576 F.3d 172 (4th Cir. 2009) ........................................................... 18

*O'Bannon v. National Collegiate Athletic Association,*
  No. C 09-3329 CW (NC), 2015 WL 4274370 (N.D. Cal.). .............7, 8, 9, 11, 12

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC, et al.*
  No. 3:15-cv-0714-JLS-MDD (S.D. Cal.) ....................................... passim

*Pacific Groservice Inc. d/b/a PITCO Foods v. Bumble Bee Foods
LLC, et al.*
  No. 3:15-cv-01791 (S.D. Cal.) ........................................................ 3, 6

*Ploss v. Kraft Foods Group, Inc., et al.,*
    No. 15-cv-2937 (N.D. Ill.) ................................................................... 21

*Roberts v. Heim,*
    No. C 84-8069 TEH, 1991 WL 427888 (N.D. Cal. August 28, 1991) ............. 13

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG, et al,*
    No. 15-cv-0871 (S.D.N.Y.) ................................................................... 21

*Transpacific*, *Korean Ramen*, and *District Council #16 Northern Cal.*
*Health & Welfare Fund v. Sutter Health*,
    No. RG15753647 (Alameda Cty. Super. Ct.) ........................................... 13

*Youngblood v. Bumble Bee Foods LLC, et al.,*
    No. 3:15-cv-01863-JLS-MDD (S.D. Cal.) ................................................ 1, 4, 7

## STATUTES

Antitrust Criminal Penalty Enforcement and Reform Act, 118 Stat. 661 ................ 6

## RULES

Fed. R. Civ. P. 23(g)(1) ...................................................................... 2, 7
Fed. R. Civ. P. 23(g)(1)(A)(i-iv) .............................................................. 2
Fed. R. Civ. P. 23(g)(3) ....................................................................... 2

## OTHER AUTHORITIES

Bonny Sweeney, *"Earning ACPERA's Civil Benefits: What Constitutes*
    *'Timely' and 'Satisfactory' Cooperation?"*
    Antitrust at 37-41 (Summer 2015). .................................................... 6

*Manual for Complex Litigation (Fourth)* § 21.11 (2004) ......................... 3

REPORT: THIRD CIRCUIT TASK FORCE REPORT ON SELECTION OF
CLASS COUNSEL,
    74 Temp. L. Rev. 689, 769. ............................................................... 5

## I.    INTRODUCTION.

Direct purchaser plaintiffs ("DPPs") Olean Wholesale Grocery Cooperative, Inc.; Benjamin Foods LLC; Beverly Youngblood; Pacific Groservice, Inc. d/b/a PITCO Foods; Central Grocers, Inc.; Piggly Wiggly Alabama Distributing Co., Inc.; and Associated Grocers of Florida, Inc. (collectively, "Majority DPPs") respectfully submit this brief regarding the structure and organization of plaintiffs' litigation effort in response to the Court's "Order Following Status Conference" (Dkt. No. 42) (the "Order").

With respect to item (1) in the Court's Order, the Majority DPPs respectfully submit that the four different categories of plaintiffs (direct purchaser individual actions, direct purchaser class actions, indirect purchaser commercial food preparer class actions, and indirect purchaser end user class actions) proceed under separate leadership,[1] with separate complaints, but with coordinated discovery and motion practice.

This memorandum focuses on the organizational structure and leadership (items (2) and (3) in Court's Order) for the DPPs.  With respect to those issues, it is respectfully submitted that the eight DPPs and proposed class of direct purchasers be represented by a single lead counsel firm working in consultation with a Steering Committee consisting of five law firms.  The Majority DPPs believe that this structure offers both the alleged class and the Court an ideal balance of efficiency, resources and collaboration.  Without compromising efficiency, the structure ensures that the leadership will be representative, diverse and well-poised to meet the challenges to be posed by the Defendants and the huge resources that they will bring to bear in this litigation.

Accordingly, the Majority DPPs respectfully request that this Court

---

[1] The Majority DPPs join in the Class Plaintiffs' Joint Submission, filed concurrently, which explains why the separate groups of plaintiffs require separate leadership.

1   reconfirm its prior ruling appointing Hausfeld LLP ("Hausfeld") as Interim Lead

2   Counsel for the DPPs and appoint a Steering Committee consisting of the law firms

3   of Bernstein Liebhard LLP ("Bernstein Liebhard"); Block & Leviton LLP ("Block

4   & Leviton"); Cera LLP; Lowey Dannenberg Cohen & Hart, P.C. ("Lowey

5   Dannenberg"); and Quinn Emanuel Urquhart & Sullivan, LLP ("Quinn Emanuel").

6   Through this organizational structure, Hausfeld will serve as the liaison with the

7   leadership of the other groups of plaintiffs both informally (as they already have in

8   this litigation) and formally, through the procedures and agreements to be

9   negotiated among the parties and ordered by the Court.[2]

10  **II.    ARGUMENT.**

11      **A.    Standards for Appointment of Lead Counsel under Rule 23(g)(3).**

12          Federal Rule of Civil Procedure 23(g)(1) outlines the considerations pertinent

13  to the appointment of lead counsel at the time the class is certified, standards which

14  apply equally to the appointment of interim lead counsel before certification.[3]

15  Under this Rule, courts must consider four factors in appointing lead counsel: (1)

16  the work counsel has done in identifying or investigating potential claims in the

17  action; (2) counsel's experience in handling class actions, other complex litigation,

18  and claims of the type asserted in the action; (3) counsel's knowledge of the

19  applicable law, and (4) the resources counsel will commit to representing the class.

20  Fed. R. Civ. P. 23(g)(1)(A)(i-iv).  Part and parcel of these requirements is counsel's

21  ability to work cooperatively with others and to litigate the action in an efficient

22  manner.  Each of these criteria is readily satisfied by Hausfeld and the proposed

23  _____

24  [2]   This pertains to item (4) of the Court's Order.  Counsel for each of the four
    plaintiffs' groups have extensive experience in coordinating with counsel
25  representing other classes or interests within a given litigation to ensure that
    interactions with defense counsel, the Court, and others, are conducted efficiently
26  and without undue burden.  Majority DPPs, therefore, do not foresee any issues
    with adopting a similar approach in this matter.

27  [3] *See* Fed. R. Civ. P. 23(g)(3); *see also In re LIBOR-Based Fin. Instruments
    Antitrust Litig.*, No. 1:11-md-02262, 2011 WL 5980198, at *4 (S.D.N.Y. Nov. 29,
28  2011) ("*LIBOR*").  *See also Manual for Complex Litigation (Fourth)* § 21.11 (2004)
    ("*Manual*").

1  Steering Committee.

2  **B.   Background**

3  Plaintiff Olean, through its attorneys at Hausfeld, researched and filed the

4  first complaint on August 6, 2015.  *Olean* Dkt. No. 1.  Olean alleged that

5  Defendants Bumble Bee Foods LLC ("Bumble Bee"), Tri Union Seafoods LLC

6  ("Tri Union") (which markets "Chicken of the Sea" ("CoS") canned tuna) and

7  StarKist Company ("StarKist") have engaged in anticompetitive conduct that

8  raised, maintained, or stabilized the prices of packaged seafood products ("PSPs")

9  paid by their direct customers—largely wholesalers and distributors of food

10  products.  The initial *Olean* Complaint served as the basis for some of the

11  complaints that followed.  And, on August 27, 2015, Olean amended its complaint

12  to add newly-discovered facts, extend the time period covered by the conspiracy,

13  and add an additional co-conspirator as a Defendant, Tri Marine International, Inc.

14  ("Tri Marine"). *Olean* Dkt. No. 37.

15  Early in this case, Olean's counsel, Hausfeld, moved for appointment as

16  interim lead counsel for the DPPs.  The motion was supported by counsel for

17  *PITCO* and *Youngblood* (the only DPP class actions then on file in this District).

18  On August 31, 2015 the Court granted the motion, noting: (a) that Hausfeld "has

19  done work identifying the claims in this action", (b) Hausfeld's "exceptional

20  experience in class action antitrust cases and knowledge of the applicable law", and

21  (c) its "resources necessary to represent the class."  *Olean* Dkt. No. 19 at 2.

22  Both before the issuance of that order and thereafter, Hausfeld, in

23  coordination with its co-counsel, has managed this case efficiently and effectively,

24  allocating work to other firms in an equitable way that has avoided unnecessary

25  duplication of efforts.  Hausfeld and the proposed Steering Committee will continue

26  doing so in the future.

27  **C.   Benefits of a Single Lead and Steering Committee**

28  At the hearing held on January 20, 2016, the Court expressed an interest in

1   having a single lead counsel represent each of the proposed classes.  Hausfeld and

2   the proposed Steering Committee are following this approach, which has been

3   adopted by many courts.  *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*,

4   No. 07-5944 SC, 2008 WL 2024957, at *1 (N.D. Cal. May 9, 2008) (appointing

5   sole lead); *Levitte v. Google, Inc.*, C 08-03369 JW, 2009 WL 482252 at *2 (N.D.

6   Cal. Feb. 25, 2009) the putative class will benefit from having a single firm conduct

7   the pre-class certification aspects of the litigation"); "Order Appointing Interim

8   Lead Class Counsel," pp. 1-2 (Oct. 31, 2014) (Dkt. No. 319) in *In re Capacitors*

9   *Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal.) (finding "that it would be the

10  most efficient to appoint a single lead counsel for the putative class").

11         Further, appointment of a steering committee consisting of law firms

12  representing all but one of the DPPs[4] ensures the representation of multiple

13  viewpoints and allows for equitable and efficient distribution of work assignments.

14  Steering committees consisting of multiple firms is common in antitrust MDL

15  litigation, and has worked well in the past.  *See, e.g.*, *Brigiotta's Farmland Produce*

16  *& Garden Center Inc. v.  United Potato Growers of Idaho, Inc. et al.*, Case No.

17  4:10-CV-307-BLW (D. Idaho) (Dkt. No. 107, Oct. 4, 2010) (Hausfeld appointed as

18  chair, plus 9 firms appointed to steering committee, including some of the proposed

19  steering committee members here); *In Re: Optical Disc Drive Products Antitrust*

20  *Litig.*, N.D. Cal. Case No. M:10-cv-02143-VRW (Dkt. 33, May 7, 2010)

21  (appointing six steering committee members, plus chair).

22

23  _____

[4] With one exception, all of the firms that have filed DPP cases have achieved consensus and united behind the proposal that Hausfeld be reconfirmed as sole lead

24  interim lead counsel for the putative DPP class and that it oversee the prosecution of that class case with the assistance of an Executive Committee. These firms all

25  took to heart the Court's suggestion at the January 20 hearing that it would be more efficient to have a single lead counsel to speak on behalf of the DPP class. The one

26  exception was the Stueve Siegel law firm, which continues to insist that its partner, Jason Hartley, be appointed as interim colead counsel for the DPP class. The Court

27  will remember that Mr. Hartley made that request previously and that it was denied without prejudice. An effort was made by Hausfeld to include Stueve Siegel within the proposed single interim lead structure but Mr. Hartley responded that he

28  intended to file a separate request with the court.  Sweeney Decl., ¶12

1   Moreover, this leadership proposal is supported by seven of the eight DPPs.

2   This type of consensual, private ordering is encouraged.  *See In re Rail Freight*

3   *Fuel Surcharge Antitrust Litig.*, MDL No. 1869, 2008 U.S. Dist. LEXIS 34229,

4   *12-13 (D.D.C. Apr. 28, 2008) ("[M]any firms with experience, resources and

5   ability have agreed not to seek positions ….  Were the Court now to 're-open' the []

6   issue, other firms would likely seek appointment as well, and this could lead to

7   costly, time-consuming and wasteful disputes that would not be in the best interests

8   of the proposed plaintiff class.").[5]

9   **D.    Work Done By The Hausfeld Firm In This Matter.**

10   Hausfeld's attorneys conducted the investigation that led to the filing of the

11   *Olean* Complaint in both its initial and amended versions.  The filing of the initial

12   version of the complaint followed an investigation of the publicly available

13   literature on the PSP industry, including analyst reports, various corporate

14   presentations, annual reports, various sources concerning the United States

15   Department of Justice's ("DOJ") criminal investigation of the PSP industry, and a

16   review of economic analyses of canned tuna consumption from the Bureau of

17   Labor Statistics.  Sweeney Decl., ¶3.  Hausfeld also retained the services of a

18   prominent economics firm and a fisheries economist with 20 years of experience in

19   the tuna market to provide guidance regarding the economics of the market.  *Id.* at

20   ¶7.  Many of the other complaints filed in this multi-district litigation incorporated,

21   at least in part, the allegations first made by Olean.  *Id.* at ¶3.

22   When new information came to light that Defendant Tri-Union Seafoods

23   LLC had applied to the DOJ for amnesty with respect to the antitrust investigation

24

25   [5]  *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, No. 1674, 2011 U.S.
Dist. LEXIS 107366, at *22 (W.D. Pa. Sep. 20, 2011) ("[T]he private ordering

26   method of selecting interim lead counsel has long been the preferred" and "well-
established approach."); REPORT: THIRD CIRCUIT TASK FORCE REPORT

27   ON SELECTION OF CLASS COUNSEL, 74 Temp. L. Rev. 689, 769 ("Case law
and experience indicates that the dominant scenario for appointing class counsel is

28   deference to private ordering.").

1  of the PSP industry, Hausfeld further amended its complaint. *Id.* ¶4.  As reflected

2  in the amended *Olean* complaint, Hausfeld also sent a letter  to  Tri-Union

3  requesting that it provide cooperation under the Antitrust Criminal Penalty

4  Enforcement and Reform Act ("ACPERA") (118 Stat. 661).[6]  Sweeney Decl. ¶5.

5       Hausfeld also made the initial motion before the Judicial Panel on

6  Multidistrict Litigation ("Panel") to have these cases transferred to the Southern

7  District of California.  The plaintiffs who initially filed in the Northern District of

8  California opposed that motion, and Hausfeld partner Christopher Lebsock

9  successfully persuaded the Panel to centralize the cases in this District. *Id.* ¶6.

10       Further demonstrating the work they have done on behalf of the proposed

11  class, Hausfeld, along with counsel for *PITCO* and *Youngblood*, reached out to the

12  settling parties in *Hendricks v. StarKist Co.*, No. 3:13-CV-00729 HSG (N.D. Cal.)

13  ("*Hendricks*") to ensure that the release of the claims in that case (involving the

14  underfilling of cans of tuna) did not affect the antitrust claims in these cases.

15  Hausfeld and *PITCO* counsel reviewed the documents contained in the public

16  docket, drafted proposed revisions to the *Hendricks* release, and drafted a proposed

17  objection to the settlement, which they presented to counsel in *Hendricks*. *Id.* ¶8.

18  Following extensive negotiations, Mr. Lebsock persuaded counsel for StarKist

19  Company to exclude the claims of DPPs here from the release in *Hendricks*. *Id.*

20  Counsel for StarKist acknowledged this point at the Panel hearing and in papers

21  filed in the *Hendricks* docket:

22         Mr. Lebsock requested that the Release language be clarified to exclude from

23         its effect wholesale purchasers of StarKist products (the "Resellers"), who

24         purchase StarKist products for purposes of resale and not for their own
       consumption.

25         Following multiple discussions with Mr. Lebsock, we reached an

26         understanding about the appropriate scope of the Release.  I then conferred

27

28  [6] *See* Bonny Sweeney, "Earning ACPERA's Civil Benefits: What Constitutes 'Timely' and 'Satisfactory' Cooperation?", *Antitrust* at 37-41 (Summer 2015).

with counsel for Plaintiff in this case and reached agreement on a stipulated amendment to the Settlement Agreement (entered into pursuant to Paragraph 8.4 of the Settlement Agreement) to revise the scope of the Release to address Mr. Lebsock's concerns.

*See* Exhibit B to the Sweeney Declaration.  The modification of the release secured by Hausfeld in the *Hendricks* matter benefitted not just Olean, but all of the DPPs and the DAPs.

### E.    The Proposed Steering Committee's and Hausfeld's Experience In Antitrust Class Action Litigation.

With respect to the second through fourth factors of the Rule 23(g)(1) analysis, Hausfeld has, in recent years, served as lead or co-lead counsel in more than 30 major antitrust class action cases.  *See* Sweeney Decl., ¶10 and Exhibit A, thereto.  Hausfeld has been appointed as lead or co-lead class counsel in *Air Cargo*, *In re Foreign Exchange Benchmark Rates Antitrust Litigation ("Foreign Exchange"), In re Municipal Derivatives Antitrust Litigation*, *In re Rail Freight Fuel Surcharge Antitrust Litigation* ("*Rail Freight*"), *In re Vitamins Antitrust Litigation* ("*Vitamins*"), *In re Vitamin C Antitrust Litigation* ("*Vitamin C*"), *LIBOR, In re Blue Cross Blue Shield Antitrust Litigation*, and *O'Bannon v. National Collegiate Athletic Association, ("O'Bannon")*,[7] among many others.

---

[7] *In re Air Cargo Services Antitrust Litig.,* No. 06-MD-1775, (E.D.N.Y); "Order" (March 4, 2015) (Dkt. No. 145) in *In re Foreign Exchange Benchmark Rates Antitrust Litigation,* No. 1:13-cv-07789, (S.D.N.Y) (granting application for Hausfeld to serve as co-lead counsel); 252 F.R.D. 184, 187 (S.D.N.Y. 2008) (appointing law firm of Cohen, Milstein, Hausfeld & Toll as co-lead counsel); "Order" (Dec. 9, 2008) in *In re Mun. Derivatives Antitrust Litig.,* No. 1:08-md-01950, (S.D.N.Y.) (substituting Hausfeld as interim co-lead counsel); "Memorandum Opinion and Order" (March 13, 2009) (Dkt. No. 232) in *In re Rail Freight,* No. 07-mc-0489, (D.D.C) (substituting Hausfeld as co-lead counsel); "Order Appointing Interim Co-Lead Counsel for Direct Purchaser Plaintiffs" (Nov. 11, 2008) in *In re Vitamins Antitrust Litig.,* No. MDL 1285 (D.D.C.) (appointing Cohen, Milstein, Hausfeld & Toll as co-lead counsel); "Pre-trial Order 2, Part VIII" (June 7, 2006) (Dkt. No. 24) in *In re Vitamin C Antitrust Litig.,* No. 1:06-MD-01738, (E.D.N.Y.), ECF No. 24 (appointing Cohen, Milstein, Hausfeld & Toll as interim co-lead counsel); "Order" (Nov. 26, 2009) (Dkt. No. 350) in *In re Vitamin C Antitrust Litig.,* No. 06-MD-1738, (E.D.N.Y.) ("so ordering" stipulation substituting Hausfeld as interim co-lead counsel); No. 2:13-CV-20000-RDP, 2014 WL 2767360 (N.D. Ala. Apr. 26, 2013); "Order Granting Plaintiffs Samuel

The firm has won numerous accolades for its work on behalf of plaintiff classes and other claimants. *See* http://www.hausfeld.com/about-us/awards.  The *Global Competition Review* said that "the lawyers at Hausfeld have established themselves as one of—if not the—top plaintiffs' antitrust firm in the US."  For six years running, the *Legal 500* likewise has identified Hausfeld as among the top five firms in the U.S. for antitrust litigation, calling it a "market transformer," and the "most innovative firm with respect to antitrust damages." [8]  It has been listed in the *National Law Journal*'s "Plaintiffs Hot List" for 2012-15 (http://www.hausfeld.com/news/us/hausfeld-named-to-the-national-law-journals-plaintiffs-hot-list-for-the-thi), is listed by *Chambers and Partners* as a band 1 antitrust firm, and has received numerous awards from both the American Antitrust Institute and the *Global Competition Review* in 2015 for its work in the *O'Bannon* case (http://www.hausfeld.com/news/global/hausfeld-attorneys-win-gcr-awards; http://www.hausfeld.com/news/us/hausfeld-wins-aais-award-for-outstanding-antitrust-litigation-achievement).  The *National Law Journal* recently named Hausfeld as one of a select group of America's Elite Trial Lawyers, as determined by "big victories in complex cases that have a wide impact on the law and legal

---

Michael Keller's and Edward C. O'Bannon, Jr.'s Joint Motion for Appointment of Interim Co-Lead Counsel Pursuant to Fed. R. 23(c)(g)" (Aug. 8, 2014) in *O'Bannon v. NCAA*, No. C 09-3329 CW (N.D. Cal.).

[8] The Legal 500 in its 2015 listing for Hausfeld stated that "Hausfeld is a 'market transformer', and the 'most innovative firm with respect to antitrust damages'. 'Driven by excellence', the team 'anticipates the evolving needs of clients' and delivers 'outstanding advice not only in legal terms but also with a true entrepreneurial touch'. In a highly publicized dispute between the National Collegiate Association (NCAA) and student athletes claiming payments from the NCAA for their image and likenesses, the firm scored a major victory by securing class certification of the athletes. The team is also co-lead counsel for a class of direct purchasers in *In re Air Cargo Shipping Services*, one of the largest class actions in the country; the team is responsible for managing interactions with the 60-plus US firms involved in the case. The 'incredibly impressive' Michael Hausfeld and Brian Ratner are 'highly skilled negotiators and litigators, and real fighters with an outstanding strategic sense'.  Megan Jones is also recommended." http://www.hausfeld.com/news/us/legal-500-once-again-names-hausfeld-to-top-tier-of-law-firms-US.

business" (http://www.nationallawjournal.com/id=1202671494029/Elite-Trial-Lawyers-The-50-Leading-Plaintiffs-Firms-in-America).

Hausfeld has considerable antitrust trial experience.  Of the nine antitrust class actions brought to trial in federal court in the last decade, Hausfeld or Hausfeld attorneys have tried four of them.[9]  Most recently, Hausfeld led a 2014 trial team against the NCAA in *O'Bannon*, securing an injunction barring the NCAA from enforcing an agreement not to compensate student athletes.  Following its victory in that trial, Magistrate Judge Nathaniel Cousins wrote, in his order approving attorneys' fees and costs, that plaintiffs' counsel achieved "excellent results." *O'Bannon v. NCAA*, No. C 09-3329 CW (NC), 2015 WL 4274370, at * 5 (N.D. Cal. July 13, 2015).[10]  The firm and its lawyers have also demonstrated repeated success in negotiating sizable class recoveries in settlements.  For example, in *Air Cargo*, where Hausfeld serves as co-lead counsel, settlements to date total more than $1 billion.  In *Foreign Exchange*, in which Hausfeld also serves as co-lead counsel, settlements totaling more than $2 billion have been achieved by the firm.

And Hausfeld has been repeatedly praised for the high level of its work and commitment on behalf of various classes in class action cases.  For example, after the trial in *Vitamin C*, Judge Brian M. Cogan praised co-lead counsel, which included Hausfeld, for their "highly experienced antitrust lawyers." *Vitamin C*, Hearing Transcript, at 11:24-25, 12:1-5 (E.D.N.Y. Oct. 2, 2013) (Dkt. No. 799).

---

[9] Hausfeld attorneys, along with co-counsel, tried *Law v. NCAA,* No. 94-2053-KHV (D. Kan.) ("*Law*") in 1998, *Vitamins* in 2003, *In re High Pressure Laminates Antitrust Litig.,* MDL No. 1368 (S.D.N.Y.) ("*Laminates*") in 2006, *Vitamin C* in 2013, *O'Bannon* in 2014, and *In re Apple iPod iTunes Antitrust Litig.,* No. 5:05-CV-00037 YGR (N.D. Cal.) in 2014.

[10] As the Magistrate Judge went on to say, "[t]his win against a behemoth of an institution like the NCAA could significantly change American college sports; in particular, the way the NCAA treats its student-athletes." *Id*. That "landmark ruling" led to *AmLaw Litigation* commenting that:  "The decision doesn't just pave the way for college athletes to share in the revenue they generate.  It also bolsters the consensus among courtroom observers that Michael Hausfeld [and co-counsel] got the best of a parade of NCAA witnesses at trial."

Similarly, Judge Charles R. Breyer described the firm's lawyers as "outstanding" and praised the firm for achieving "really, an outstanding settlement in which a group of lawyers from two firms coordinated the work . . . and brought an enormous expertise and then experience in dealing with the case."   Hearing Transcript, at 5:20-25, 7:11-12 (Jan. 29, 2009) in *In re International Air Passenger Surcharge Antitrust Litig.*, No. M:06-01793 CRB (N.D. Cal.).  In finally approving the settlements in *In re Fresh and Process Potato Prods. Antitrust Litig.*, No. 4:10-md-02186 (D. Idaho) ("*Potatoes*"), District Judge B. Lynn Winmill noted that counsel were "clearly of the highest caliber" and lauded plaintiffs' "tremendous professionalism" and "superb job in clarifying [and] simplifying" the complex issues in the case.  Transcript of Hearing of Dec. 3, 2015 at 17, 22-24.

### F.    Resources To Conduct This Litigation.

Hausfeld and the proposed Steering Committee have the attorney and financial resources to litigate the case efficiently and effectively.  Hausfeld, with more than 60 attorneys world-wide, has an office in San Francisco and a partner who resides in San Diego. Quinn Emanuel has over 700 attorneys world-wide and 3 major California offices.   Cera LLP and Block & Leviton also have offices in the San Francisco Bay Area as well.

In addition, with successful track records in some of the most complex class actions ever tried or settled, Hausfeld and the proposed Steering Committee firms have the financial resources necessary to litigate this case in the best interests of the class.  *See e.g.,* "Order", pp. 3-4 (Aug. 3, 2009) (Dkt. No. 57) in *In re Honey Transhipping*, No. 1:13-cv-02905 (N.D. Ill.) (noting "substantial experience handling class action litigation" and "greater resources" in appointing Hausfeld and one other firm as co-lead class counsel); *Air Cargo* Amendment Order at 2 (it was shown that "that the firm possesses the financial resources to assure its viability well into the future and its ability to fund any necessary expenses

1  associated with a lead counsel role in this action.")[11]

2  Moreover, to the extent foreign discovery may become necessary in this

3  matter, Hausfeld and the members of the proposed Steering Committee are well-

4  situated to oversee it.  As noted in the *Olean* complaints, the Defendants' parent

5  companies are based in the United Kingdom, Thailand, and South Korea.

6  Hausfeld's and the proposed Steering Committee's ability to conduct discovery

7  quickly and efficiently in international jurisdictions is an additional factor

8  supporting appointment.  *See e.g. LIBOR*, 2011 WL 5980198, at *3 (considering

9  the existence of Hausfeld's presence in the United Kingdom in appointing it as

10  interim Co-Lead Counsel for a class of over the counter purchasers of LIBOR-

11  based financial instruments).

12  Indeed, Hausfeld, with offices in San Francisco, New York, Washington

13  D.C., Philadelphia, London, Brussels, and Berlin, frequently works with a network

14  of firms in Asia that stand ready to assist when discovery issues arise, including

15  some of the biggest and most prominent firms in Korea, where Starkist's parent is

16  headquartered.  For example, in another food-related antitrust action led by

17

18  ———————————
   [11] As commentators and judges have noted, some of these cases appeared

19  initially to be quixotic quests, with high hurdles to conquer.  In the opinion cited
   above, Magistrate Judge Cousins analogized Hausfeld's 2014 trial victory over the

20  NCAA to George R.R. Martin's *Game of Thrones*, "where individuals with
   seemingly long odds overcome unthinkable challenges, but suffer stark losses along

21  the path to victory," and held that plaintiffs' "trial victory in this adventurous, risky

22  suit," warranted an award of attorneys' fees for work spent on all claims.
   *O'Bannon*, 2015 WL 4274370, at *6. In this vein, Hausfeld attorneys have also

23  successfully helped Holocaust victims recover more than $1.25 billion in litigation

24  from Swiss banks that collaborated with the Nazi regime, collected another $5.2
   billion from German companies that utilized slave labor during World War II, and

25  represented Japanese Comfort Women forced into sexual slavery during World War
   II, among other *pro bono* efforts on behalf of those in need of legal representation.

26  *See* Sweeney Decl., Exh. A at 12-13; 23.  Hausfeld has time and again

27  demonstrated its willingness and ability to take on risky, difficult cases and pursue

28  those cases all the way through trial and appeals if necessary.

Hausfeld, *In Re Korean Ramen Antitrust Litig.*, N.D. Cal. Case No. 3:13-cv-04115 (N.D. Cal.) ("*Korean Ramen*")—discovery of Korean parent companies and former employees has recently taken place in South Korea with the assistance of Hausfeld's network of foreign law firm partners, who are prosecuting discovery actions in the Korean court system pursuant to a letters rogatory request made by the District Court, among other matters pertinent to that litigation.[12]

The Hausfeld attorneys that will continue to staff the case on a regular basis include experienced antitrust class action counsel Michael Lehmann, Bonny Sweeney, and Christopher Lebsock.

Mr. Lehmann, who has been practicing law since 1978, has done antitrust litigation and regulatory work on both the plaintiffs' and the defense side.  He has participated in the management of well over two dozen class and individual antitrust or unfair competition cases during the past three decades, often in a co-lead or sole lead role.  He has been involved in other food-related antitrust litigation brought by the Hausfeld firm, including *Four In One Co. v. SK Foods, L.P.*, 2:08-cv-03017 MCE (E.D. Cal.) (concerning price-fixing of processed tomatoes) and *Potatoes* (concerning price-fixing of fresh and processed potatoes).[13] He participated in the trials in *Laminates* and *O'Bannon*, among other cases.

Ms. Sweeney, a longtime resident of San Diego, is a highly-respected veteran litigator with more than 25 years of litigation experience, including nearly 20 years of experience in complex class action litigation.  She joined Hausfeld's San Francisco office as a partner in 2015 after 19 years at the San Diego office of

---

[12] Quinn Emanuel also has offices in key Asian locations, including Hong Kong, Tokyo and Australia, that can provide key support for this litigation.  The head of the Hong Kong office, as discussed below, is a native Korean who is regularly on the ground in Korea handling significant litigation matters.

[13] James Pizzirusso, another of the Hausfeld counsel listed on the *Olean* Complaint, is in charge of day-to-day oversight in both *Potatoes* and another food-related antitrust case, *In re Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002 (E.D. Pa).

Robbins Geller Rudman & Dowd and its predecessor firm, which specializes in complex class action litigation.  During that time, Ms. Sweeney served as lead or co-lead counsel in numerous class actions.  She was co-lead counsel in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, No. 1:05-md-01720-JG-JO (E.D.N.Y.) ("*Interchange*"), which settled shortly before trial for more than $7.2 billion (before reductions for opt-outs), the largest-ever settlement in an antitrust class action.  Ms. Sweeney was named as one of the Top Women Lawyers in California by the *Daily Journal* in May of 2014, was named Litigator of the Week by *Global Competition Review* in October of 2014, and was named as an Outstanding Woman in Antitrust by *Competition Law 360* in 2007.  Ms. Sweeney also has class action trial experience, having tried *iPod* case in this district, as well as *Law*.

Mr. Lebsock is a partner in Hausfeld's San Francisco office.  He is serving as lead or co-lead counsel in *Transpacific*, *Korean Ramen*, and *District Council #16 Northern Cal. Health & Welfare Fund v. Sutter Health*, No. RG15753647 (Alameda Cty. Super. Ct.) (UCL claim concerning alleged fraudulent billing practices by Sutter Health and its affiliates).  He also works extensively with the firm's Asian clients—including prominent Korean companies such as Woori Bank, Hyundai Heavy Industries, Hankook Jungsoo Industrial Co., and many others.  In addition, Mr. Lebsock represents both plaintiffs and defendants in a variety of non-class business disputes in courts throughout the United States, serves on the firm's new case committee, and serves as the administrative partner for the firm's San Francisco office.  Mr. Lebsock has previously tried class and non-class matters to verdict, including an employment class action against Wal-Mart (*Savaglio v. Wal-Mart Stores, Inc.,* No. C-835687 (Alameda Cty. Super. Ct.)) that resulted in an important $172 million judgment and an injunction requiring the nation's largest employer to abide by California's meal and rest period laws

### G.     Steering Committee And Ability To Work Cooperatively With Other Counsel.

Hausfeld lawyers have demonstrated their ability to work cooperatively with other attorneys.  Here, Hausfeld has facilitated an agreement with counsel for seven of the eight DPP class plaintiffs.  As of the date of this filing, one DPP class plaintiff has not assented to this structure and will apparently file a separate leadership application.  In addition, Hausfeld coordinated with all of the other groups of plaintiffs to present an agreed-upon schedule to the Court at the January 20 status conference, and worked with those same plaintiff groups to present to the Court a unified position in the Class Plaintiffs' Joint Submission.  Sweeney Decl., ¶9.

Each of the firms that will serve on the proposed steering committee is highly regarded and could easily be appointed as lead counsel in this case.  Nevertheless, they have agreed to subordinate their own interests for the overall benefit of the litigation.  They should not be prejudiced by doing so.

### Bernstein Liebhard

Since its inception in 1993, Bernstein Liebhard has represented individual and institutional investors in complex and class action litigations, recovering over $3.5 billion for the plaintiffs it has represented.  Bernstein Liebhard has successfully served as sole lead counsel and as co-lead counsel in some of the largest class action cases in the past decade and has actively litigated scores of actions to successful conclusions.  Bernstein Liebhard brings together a unique array of talent – including former prosecutors and former judicial clerks, as well as attorneys with a wealth of experience in class action litigation.  Bernstein Liebhard's practice is national in scope and spans a broad range of industries.  The firm's antitrust department, under the leadership of Stanley D. Bernstein and Ronald J. Aranoff, has developed the expertise, knowledge and recognition to represent businesses and individuals in all aspects of antitrust litigation.

1    Bernstein Liebhard is the only firm in the country to be named by *The*

2    *National Law Journal* to the "Plaintiffs' Hot List," recognizing the top plaintiffs'

3    firms in the country, for twelve consecutive years.  Bernstein Liebhard is also

4    included in *The National Law Journal*'s "Plaintiffs' Hot List Hall of Fame," and

5    was recognized by *The National Law Journal* as one of a select group of

6    "America's Elite Trial Lawyers" for two consecutive years.  Bernstein Liebhard

7    was selected for its "exemplary and cutting-edge work" on behalf of plaintiffs and

8    for "big victories in complex cases that have a wide impact on the law and legal

9    business."

10    In 2015, Bernstein Liebhard was listed for the ninth consecutive year in *The*

11    *Legal 500*, a guide to the best commercial law firms in the United States.  In

12    addition, Bernstein Liebhard was listed for the fourth consecutive year in

13    *Benchmark Plaintiff:  The Definitive Guide To America's Leading Plaintiff Firms*

14    *& Attorneys* ("*Benchmark Plaintiff*").

15    Since the inception of its antitrust practice group, Bernstein Liebhard has led,

16    either as lead counsel or as a member of an executive/steering committee, numerous

17    successful antitrust actions. The firm is currently serving as a court appointed

18    executive committee member (the highest court-appointed position in the case) in

19    *In re Pool Products Distribution Market Antitrust Litigation,* No. 12-MD-02328

20    (E.D. La.) and as lead counsel in *In re Processed Egg Products Antitrust Litigation,*

21    No. No. 2:08-md-02002 (E.D. Pa.). The firm is also actively litigating the following

22    multidistrict antitrust cases:  *In re Domestic Airline Travel Antitrust Litigation*, No.

23    15-md-1404 (D.D.C.), *In re Gold Fixing Antitrust and Commodity Exchange Act*

24    *Litigation*, No. 14-cv-2917 (S.D.N.Y.); *In re Rail Freight Fuel Surcharge Antitrust*

25    *Litigation*, No. 07-md-489 (D.D.C.); and *In re Treasury Securities Auction*

26    *Antitrust Litigation*.

27    It is respectfully submitted that Bernstein Liebhard's track record in class

28    action and multi district antitrust litigation, coupled with its willingness to commit

1   the full extent of its resources to this litigation, merit a position on the steering

2   committee of this case.[14]

3   **Block & Leviton**

4   Block & Leviton, which has worked cooperatively with the Hausfeld firm to

5   contribute to the advancement of this litigation as described above, is accomplished

6   in the field of complex class action litigation and has been appointed lead or co-lead

7   counsel in dozens of cases.[15]  For example, Block & Leviton partner Whitney Street

8   was recently appointed Co-Lead Counsel on behalf of the class of indirect

9   purchaser plaintiffs in *In re Domestic Drywall Antitrust Litig.*, 13-md-02437

10  (E.D.Pa.) and has, to date, recovered more than $10 million for the class.  In

11  addition, she represents a proposed class of third party payors and consumers in an

12  antitrust suit against a pharmaceutical company for the unlawful exclusion of

13  generic competition for vital cancer treatment drugs.  *See In re Thalomid and*

14  *Revlimid Antitrust Litig.,* 14-cv-06997 (D.N.J.)  Ms. Street's commitment to the

15  field of antitrust class action litigation is also reflected in her efforts co-founding

16  (and co-chairing) the American Association for Justice Antitrust Litigation Group

17  and her service as a member of the Law360 Competition Law Editorial Advisory

18  Board.

19  In addition to Block & Leviton's role at the helm of a number of antitrust

20  class actions, the firm's attorneys have litigated landmark securities class actions,

21  recovering billions of dollars for investors.  For example, Block & Leviton was

22  appointed co-lead counsel in *In re Google, Inc. Class C Shareholder Litig*., No.

23  7469-CS (Del. Ch. Ct.) and ultimately recovered $522 million for Google

24  shareholders in May 2015.  At present, Block & Leviton is counsel to lead plaintiff

25

26  [14] A more detailed recitation of Bernstein Liebhard LLP's background, experience and credentials, along with references to work performed and results achieved are detailed in the Aranoff Declaration and the Firm Resume attached as Exhibit A

27  thereto dated February 1, 2016 and filed together with this memorandum of law.
[15] Block & Leviton's C.V. is submitted herewith as Exhibit 1 to the Declaration of

28  Whitney Street.

1  Ohio Public Employees' Retirement System in *In re: BP p.l.c. Securities Litig.*, 10-

2  md-02185 (S.D.Tex.), charging that BP misled investors about the amount of oil

3  flowing from the Macondo well following the fatal explosion aboard the Deepwater

4  Horizon oil rig.  The firm's ability to effectively manage large, complex actions is

5  further reflected in the recent appointment of Block & Leviton partner Lesley

6  Weaver to serve on the steering committee in the *In re Volkswagen "Clean Diesel"*

7  *Marketing, Sales Practices, and Products Liability Litigation,* 15-md-2672

8  (N.D.Cal.) litigation.

9      Block & Leviton, whose attorneys have been praised by courts for the quality

10  of their work on behalf of class members in complex actions,[16] stands ready,

11  willing, and able to assist in the efficient prosecution of this matter.

12      **Cera LLP**

13      For more than 40 years, Cera LLP[17] and its predecessors, based in San

14  Francisco with an office in Boston, has played a significant role in representing

15  plaintiffs in complex antitrust and securities class action litigation.  *See In re*

16  *Memorex Security Cases*, 61 F.R.D. 88 (N.D. Cal. 1973).  Scores of published

17  decisions demonstrate the significant work that Cera LLP has performed in

18  recovering over one billion dollars for the remuneration of victims of price fixing

19  and securities fraud.[18]

20      For example, led by Solomon B. Cera,[19] Cera LLP investigated and initiated

21

22  ─────────────

[16] Recently, the Honorable Graham C. Mullen (W.D.N.C.) described the result

23  achieved by Block & Leviton as "extremely impressive," noting that the "matter []
    has been fairly litigated by people who know what they're doing." *In re Swisher*

24  *Hygiene, Inc., Securities and Derivative Litig.*, 12-md-2384 GCM (W.D.N.C.).
    [17] Cera LLP was formerly known as Gold Bennett Cera & Sidener LLP, and

25  changed its name earlier this year. Throughout its fifty (50) year history, the Firm
    has also previously been known as David B. Gold, A Professional Law

26  Corporation, Gold & Bennett LLP, and Gold Bennett & Cera LLP.
    [18] *See* Cera LLP Firm profile, attached as Ex. A to the Cera Decl.

27  [19] Mr. Cera is an AV-rated attorney and Northern California Super Lawyer.  He has
    been representing plaintiffs in complex antitrust and securities class actions for

28  almost thirty-three (33) years while at the same firm.

an antitrust price-fixing class action that in 2014 paid $163.5 million to members of a direct purchaser class pursuant to settlements reached on the eve of trial, and that was finally approved by the Court in an order praising the significant result obtained.  *See In re Titanium Dioxide Antitrust Litig.*, Case No. 10-cv-00318 RDB (D. Md.), 2013 WL 5182093 at *4 (D. Md. Sep. 12, 2013).[20]  This case was not the subject of any DOJ or regulatory proceedings, but rather was developed solely based on the investigation and research of Cera LLP.  In that case, commenting on the Firm's work, United States District Judge Richard D. Bennett stated as follows:

> And Mr. Cera has aptly noted the high quality with great pride of the plaintiffs' trial team. . . . [O]n more than one occasion, you may have noticed quite a few law clerks and interns, not just from here to my left, but also in the courtroom, who were watching the outstanding lawyering that went on here. And I would be remiss if I didn't really comment upon the extraordinarily high level of professionalism that I found attended to these cases, that you make us all proud to be part of this profession in terms of quality of your representation. I mean that sincerely as to all of you. With all the level of cynicism at times as to our profession, of the frustration and sitting in rooms, and particularly younger lawyers here going through billions of documents and document review and discovery, there's still a place here for outstanding advocacy. . . . [I]t was a pleasure to preside over this case and see the quality of the lawyering I saw on both sides of the aisle. So you present the best of our profession.

Cera Decl., Ex. B.

In numerous cases led by Mr. Cera, his efforts also have helped to establish some of the basic principles for handling complex litigation in both the securities and antitrust areas.  *See, e.g., Matrix Capital Management Fund, L.P. v. BearingPoint, Inc.,* 576 F.3d 172 (4th Cir. 2009) (reversing improper denial of Rule 15(a) motion to amend); *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048 (9th Cir. 2003) (setting forth Ninth Circuit amendment standards in PSLRA cases); *Joseph v. Wiles*, 223 F.3d 1155 (10th Cir. 2000) (establishing standing for

---

[20]  *See also In re Titanium Dioxide Antitrust Litig.*, 284 F.R.D. 328 (D. Md. 2012) (certifying class and appointing the firm as co-lead counsel).

aftermarket purchasers under Section 11 of the Securities Act of 1933).  Very

sizeable recoveries have been made for the benefit of plaintiffs in Cera LLP's

antitrust cases. *See, e.g., In re  Rubber Chemicals Antitrust Litig.,* MDL No. C-04-

1648 (N.D. Cal.) ($320 million recovery);[21] *In re Methionine Antitrust Litig.,* MDL

No. 00-1311 (N.D. Cal.) ($107 million); *In re Ethylene Propylene Diene Monomer*

*(EPDM) Antitrust Litig.,* No. 03-md-1542 (D. Conn.) ($99.3 million); *In re*

*Polyester Staple Antitrust Litig.*, MDL No. 03CV1516 (W.D.N.C.) ($63.5 million).

      Courts have repeatedly praised Cera LLP's work. For example, in

commenting on Mr. Cera's representation of the class in a securities fraud class

action, the then Chief Judge of the United States District Court for the Northern

District of California, the Honorable Thelton E. Henderson, stated: "[T]hroughout

this action, class counsel has demonstrated superior legal abilities, and has

submitted to the court briefs, memoranda and oral argument of the highest quality .

. . [C]ounsel's efforts have conferred substantial benefits on the class." *Roberts v.*

*Heim*, Case No. C 84-8069 TEH, 1991 WL 427888 at *6 (N.D. Cal. August 28,

1991).  In *In re Rent-Way Securities Litigation*, the Court presiding over the case

stated:

> [T]he Court previously indicated its satisfaction that the firm would be an
> 'effective lead counsel in this action.' … Having thus initially expressed our
> confidence in Lead Counsel's abilities, the Court has not since been
> disappointed. On the contrary, Class Counsel in this case have shown
> themselves to be attorneys of the highest caliber, at all times prosecuting this
> action with a high degree of skill and professionalism.

*3*05 F. Supp. 2d 491, 515 (W.D. Pa. 2003).

      In sum, the Court can be assured that Cera LLP, working together the

Hausfeld firm and the other members of the Steering Committee, will provide the

highest quality representation for the class of direct purchasers of packaged seafood

---

[21] *See In re Rubber Chemicals Antitrust Litig.*, 232 F.R.D. 346, 355 (N.D. Cal.
2005).

1  products.

2      **Lowey Dannenberg**

3      Lowey Dannenberg is counsel for PITCO, which is a large food wholesaler

4  with significant historical purchases from several Defendants, and filed the second

5  direct-purchaser class action on August 13, 2015, in the Southern District of

6  California.  Lowey Dannenberg specializes in antitrust, commodities, securities,

7  and healthcare litigation, and it has recovered billions of dollars for classes and for

8  a notable list of Fortune 100 clients.[22]

9      Ms. Barbara J. Hart is Lowey Dannenberg's President and CEO, with over 20

10  years of experience representing a broad range of clients.  She is rated "AV

11  Preeminent" by Martindale-Hubbell, and served as the 2014 Chair of the Executive

12  Committee of the New York State Bar Association's Antitrust Law Section.

13      Presently, Ms. Hart is Co-Lead Counsel in *In re London Silver Fixing Ltd.,*

14  *Antitrust Litigation*, No. 1:14-md-02573 (S.D.N.Y.), a case alleging collusion

15  among the world's largest financial institutions to manipulate the price of silver,

16  and Allocation Counsel in *In re: Foreign Exchange Benchmark Rates Antitrust*

17  *Litigation*, No. 1:13-cv-07789 (S.D.N.Y.), where the court preliminarily approved

18  nine settlements in excess of $2 billion as to certain defendants in December 2015,

19  involving allegations that the world's largest financial institutions conspired to

20  manipulate prices paid in the $5.3-trillion-per-day foreign exchange market from

21  2003 to present.  Throughout her career, Ms. Hart served as Lead or Co-Lead

22  Counsel in numerous cases, including *In re Air Cargo Antitrust Litigation*, Master

23  File No. 1:06-MD-01775 (E.D.N.Y.), one of the largest collusion cases in history

24  involving most of the world's major airlines.[23]

25  _____

26  [22] *See* Declaration of Barbara J. Hart in support of Motion for the Appointment of
Hausfeld LLP as Interim Lead Counsel and for the Appointment of a Steering
Committee, and Exhibit A (firm résumé).

27  [23] Other antitrust cases in which she served as Lead or Co-Lead Counsel include: *In
re Stock Exchange Options Trading Antitrust Litigation* ($47 million settlement); *In*

28  *re Brand Name Drug Litigation* ($65 million settlement); *In re Augmentin Antitrust*

1   Additionally, Lowey Dannenberg is Interim Lead Counsel in *Sonterra*

2   *Capital Master Fund Ltd. v. Credit Suisse Group AG, et al.*, No. 15-cv-0871

3   (S.D.N.Y.), a proposed class action against numerous global financial institutions

4   responsible for setting LIBOR for the Swiss Franc; Lead Class Counsel in *Laydon*

5   *v. Mizuho Bank, Ltd., et al.,* No. 12-cv-3419 (S.D.N.Y.), a proposed class action

6   alleging that over thirty financial institution defendants colluded to unlawfully

7   manipulate the LIBOR for the Japanese Yen and the Euroyen Tokyo Interbank

8   Offered Rate; Co-Lead Counsel in *In re Rough Rice Commodity Litigation*, No. 11-

9   cv-00618 (N.D. Ill.); and Co-Lead Counsel in *Ploss v. Kraft Foods Group, Inc., et*

10   *al.*, No. 15-cv-2937 (N.D. Ill.) involving alleged manipulation of the prices of

11   Chicago Board of Trade wheat futures and options contracts.

12   **Quinn Emanuel**

13   Quinn Emanuel, offers unique resources as a steering committee member for

14   this litigation.  With over 700 litigators worldwide (including in Asia where, as

15   noted above, some of Defendants' parent companies are headquartered), the firm

16   has been described as a "global force in business litigation" by the *Wall Street*

17   *Journal* and a "litigation powerhouse" by *The American Lawyer*.[24]  Quinn

18   Emanuel's class action and litigation prowess has been widely recognized.  For

19   example: in 2015, Quinn Emanuel was again named as a Class Action Practice

20   Group of the Year by *Law360*; *The Recorder* recognized Quinn Emanuel as

21   Antitrust Litigation Department of the Year in 2015; and, for the third straight year,

22   BTI Consulting Group has recognized Quinn Emanuel in 2015 as one of the four

23

24   *Litigation* ($29 million settlement); *In re Paxil Antitrust Litigation* ($65 million
     settlement); *In re Sodium Erythorbate and Maltol Antitrust Litigation* ($18.45
25   million settlement); *In re Synthroid Marketing and Antitrust Litigation* ($87.4
     million settlement); and *In re Warfarin Sodium Antitrust Litigation* ($44.5 million
26   settlement).
     [24]  *See* Declaration of Stephen R. Neuwirth (Feb. 1, 2016) ("Neuwirth
27   Declaration").   A more detailed summary of Quinn Emanuel's experience and
     credentials, along with exhibits to the information cited herein, is set forth in the
28   Neuwirth Declaration.

law firms that "in-house counsel fear the most."

Stephen R. Neuwirth, chair of Quinn Emanuel's worldwide antitrust practice, has compiled an extraordinary record as one of the leading antitrust attorneys in the United States.  Among other accolades, Mr. Neuwirth has been recognized by *The National Law Journal* in 2015 as an Antitrust "Trailblazer"; by *Law360* in 2014 as a "Titan of the Plaintiffs Bar," and in 2012 as one of just eight competition law "MVPs" nationwide.  He has served as lead counsel in some of the most significant antitrust class actions in the nation, and has recovered over $800 million for antitrust plaintiffs in the past 18 months alone.  At the same time, Mr. Neuwirth, is virtually unique among leaders of the Plaintiffs' antitrust bar in also having a blue chip practice representing corporate defendants – which provides significant credibility with defense counsel and a strategic perspective that will benefit the proposed class.[25]

As the parent companies of major Defendants here are headquartered in Asia, Quinn Emanuel will also be able to draw upon Quinn Emanuel attorneys working out its offices in Tokyo, Hong Kong, and Sydney to assist with foreign discovery and other foreign issues.[26]  Quinn Emanuel has numerous major South Korean clients and, in particular, can draw upon the expertise of John Rhie, managing partner of the firm's Hong Kong office. Mr. Rhie is not only a native Korean speaker who serves as adjunct professor at Seoul National University and at the Korean Supreme Court's Judicial Research and Training Institute, but he is widely regarded as one of the pre-eminent lawyers in Asia.

Finally, among its many other pre-eminent practice groups, Quinn Emanuel also has one of the nation's top white collar and investigations practices, which is

---

[25] Quinn Emanuel's deep bench of antitrust and class action talent extends beyond Mr. Neuwirth.  The firm's core team for the case will also include Sami H. Rashid, one of Quinn Emanuel's rising antitrust and class action stars.
[26] Quinn Emanuel's Asia practice was named Disputes Firm of the Year at *The Asian Lawyer's* Asia Legal Awards in 2015.

1    particularly relevant in this case involving a parallel criminal investigation.  Global

2    Investigations Review recently named Quinn Emanuel the "Most Impressive

3    Investigations Practice of the Year," and *Law 360* recently named the firm as a

4    "White Collar Practice Group of The Year".  The co-chair of that practice group,

5    John Potter – who is based in San Francisco and previously held a number of high-

6    ranking positions within the United States Attorney's Office – will be able to

7    provide strategic guidance on interactions with the pending government

8    investigation in San Francisco.  He is the former co-chair of the American Bar

9    Association's white collar antitrust committee. Neuwirth Decl. at ¶¶10 31-32.

10   ## III.    CONCLUSION.

11          Accordingly, Hausfeld and the proposed Steering Committee respectfully

12   request that this Court reconfirm its order appointing Hausfeld as interim lead

13   counsel for the putative class of DPPs and also appoint a steering committee of the

14   following firms:  Bernstein Liebhard LLP, Block & Leviton LLP, Cera LLP,

15   Lowey Dannenberg Cohen & Hart, P.C., and Quinn Emanuel Urquhart &

16   Sullivan, LLP.

17

18   Dated: February 1, 2016                    Respectfully submitted,

19

20                                             */s/ Bonny E. Sweeney*
                                               Michael P. Lehmann (Cal. Bar No.
21                                             77152)
                                               Bonny E. Sweeney (Cal. Bar No.
22                                             176174)
                                               Christopher L. Lebsock (Cal. Bar No.
23                                             184546)
                                               HAUSFELD LLP
24                                             600 Montgomery Street
                                               Suite 3200
25                                             San Francisco, CA 94111
                                               Telephone: 415-633-1908
26                                             Facsimile: 415-217-6813
                                               mlehmann@hausfeld.com
27                                             bsweeney@hausfeld.com
                                               clebsock@hausfeld.com

28

Michael D. Hausfeld
James J. Pizzirusso
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email:   mhausfeld@hausfeld.com
Email:   jpizzirusso@hausfeld.com

*Counsel for Plaintiff Olean Wholesale
Grocery Cooperative, Inc.*

Whitney E. Street (State Bar No. 223870)
BLOCK & LEVITON LLP
520 Third Street, Suite 108
Oakland, CA 94607
(415) 968-8999
(617) 507-6020
whitney@blockesq.com

*Counsel for Beverly Youngblood*

Barbara  Hart
Sung-Min  Lee
LOWEY DANNENBERG  COHEN
& HART, P.C.
200 Barr Harbor Drive,  Suite  400
West Conshohocken, PA  19428
Telephone:  (610) 941-2760

One  North  Broadway, Suite  509
White Plains,  NY  10601-2301
Telephone:  (914) 997-0500
Facsimile:    (914) 997-0035

E-Mail:  bhart@lowey.com
E-Mail:  slee@lowey.com

*Counsel for Pacific Groservice Inc. d/b/a PITCO Foods*

Solomon B. Cera (State Bar No. 99467)

1
2
3
4
5
6
7

Thomas C. Bright (State Bar No. 169713)
Louis A. Kessler (State Bar No. 243703)
CERA LLP
595 Market Street, Suite 2300
San Francisco, California 94105
Tel: (415) 777-2230
Fax: (415) 777-5189
Email:  scera@cerallp.com
Email:  tbright@cerallp.com
Email:  lakessler@cerallp.com

8
9
10

*Counsel for Piggly Wiggly Alabama Distributing Co., Inc., Central Grocers, Inc. v.
Bumble Bee Foods, LLC, Central Grocers, Inc. v. Bumble Bee Foods, LLC,
Associated Grocers of Florida, Inc.*

11
12
13
14
15
16

Stephen R. Neuwirth
Sami H. Rashid
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

17
18

Email:  stephenneuwirth@quinnemmanuel.com
Email:  samirashid@quinnemmanuel.com

19
20
21
22
23

Ronald J. Aranoff
Dana Statsky Smith
BERNSTEIN LIEBHARD LLP
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

24
25

Email:  aranoff@bernlieb.com
Email:  dsmith@bernlieb.com

26
27
28

*Counsel for Benjamin Foods LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28