Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Christopher L. Lebsock (Cal. Bar No. 184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94104
Telephone: (415) 633-1908
Facsimile: (415) 358-4980
Email: mlehmann@hausfeld.com
Email: bsweeney@hausfeld.com
Email: clebsock@hausfeld.com

Michael D. Hausfeld
James J. Pizzirusso
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email:   mhausfeld@hausfeld.com
Email:   jpizzirusso@hausfeld.com

*Interim Lead Counsel for the Direct Purchaser Plaintiffs*
*Additional Counsel In Signature Block*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACKAGED SEAFOOD ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Direct Purchaser Class Actions | Case No. 3:15-md-02670-JLS-MDD<br><br>MDL No. 2670<br><br>**MAJORITY DIRECT PURCHASER PLAINTIFFS' OPPOSITION TO JASON S. HARTLEY'S MOTION FOR APPOINTENT AS INTERIM LEAD COUNSEL**<br><br>Judge: Hon. Janis L. Sammartino<br>Date:   March 10, 2016<br>Time:  10 a.m. |

## I. INTRODUCTION

Majority DPPs[1] respectfully submit this opposition to the Motion for Appointment of Jason S. Hartley ("Hartley") as Direct Purchaser Class Plaintiffs' Interim Lead Counsel (72-1) and in further support of Majority DPPs' Motion for an Order Appointing Hausfeld LLP ("Hausfeld") as Interim Lead Counsel for the Putative Class of Direct Purchaser Plaintiffs and Appointment of a Steering Committee (73-1).  Majority DPPs' proposal– which promises unmatched antitrust expertise, class action and trial experience, and resources – will best represent the interests of the proposed DPP class, and will do so in a more efficient and more inclusive manner than Hartley's proposed structure.  Moreover, Hartley's suggestion that if there were to be an additional lead counsel he should be selected ignores the very significant experience, resources and capabilities of the proposed Steering Committee firms, each of which stepped back here to work cooperatively for the benefit of the alleged class.

**ARGUMENT**

### A. Majority DPPs' Proposed Leadership Structure is Best Able to Represent the Proposed Class.

Majority DPPs have proposed a leadership structure that is both more efficient and more inclusive than the one proposed by Hartley.  Majority DPPs propose appointing one lead counsel firm – Hausfeld – to be responsible for the overall conduct of the litigation, in close consultation with the Steering Committee.  Appointment of a single lead counsel ensures accountability and streamlined efficiency, as recognized by this Court[2] and many others.  *See, e.g., In re Cathode*

---

[1] Direct Purchaser Plaintiffs Olean Wholesale Grocery Cooperative, Inc., Benjamin Foods LLC, Beverly Youngblood, Pacific Groservice, Inc. d/b/a PITCO Foods, Central Grocers, Inc., Piggly Wiggly Alabama Distributing Co., Inc., and Associated Grocers of Florida, Inc.
[2] Transcript of January 20, 2016 Motion Hearing at 44, attached as Ex. A to Second Declaration of Bonny E. Sweeney in Support of Motion for Appointment of Hausfeld LLP as Interim Lead Counsel and for the Appointment of a Steering Committee ("Second Sweeney Decl.").

*Ray Tube (CRT) Antitrust Litig.*, No. 07-5944 SC, 2008 WL 2024957, at *1 (N.D. Cal. May 9, 2008) (appointing sole lead); *Levitte v. Google, Inc.*, C 08-03369 JW, 2009 WL 482252 at *2 (N.D. Cal. Feb. 25, 2009) (same); "Order Appointing Interim Lead Class Counsel," pp. 1-2 (Oct. 31, 2014) (Dkt. No. 319), *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD (N.D. Cal.) (same).  Second Sweeney Decl., Ex. A.

    This proposal also draws on the very significant expertise and resources of counsel for the other DPPs, all of whom are qualified to serve as lead counsel but who have agreed, in the interest of compromise and to advance the case, to serve instead as members of the proposed Steering Committee.  Aside from Hartley's clients, **all** of the DPPs who have filed complaints will be represented in this proposed structure, with their lawyers acting either as Interim Lead Counsel or serving on the Steering Committee.  In their proposed lead counsel order, a draft of which was sent to Hartley, Majority DPPs explain in detail the role of Interim Lead Counsel.  Second Sweeney Decl., ¶2; Ex. C.  Leadership structures including a single lead counsel together with a steering or executive committee have been approved in many class actions, including antitrust cases.  *See, e.g., In re Optical Disk Drive Products Antitrust Litig.*, No. M:10-2143 (N.D. Cal. May 7, 2010) (appointing a seven-firm committee to be chaired by one lawyer); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig.*, (N.D. Cal. January 21, 2016) (appointing one lawyer as lead counsel and chair of a plaintiffs' steering committee comprised of 22 lawyers).  Second Sweeney Decl., Exs. D, E.

    Hausfeld and the proposed Steering Committee repeatedly invited Hartley to serve on the Steering Committee, but Hartley declined, insisting instead on a lead or co-lead position.  Second Sweeney Decl., ¶ 2.  Hartley offers no convincing reason why his addition as a co-lead counsel is necessary or why his candidacy should trump that of the proposed Steering Committee members.

### B. Majority DPPs' Proposed Leadership Structure Offers Geographic Breadth.

Hartley makes much of the fact that his firm has a local office in San Diego, and that Hartley has practiced here for many years.[3] But even putting aside that local counsel is not required for multi-district litigation transferred under Section 1407,[4] most of Stueve Siegel's (Hartley's firm) lawyers reside in Kansas City; only three are listed in its San Diego office. See http://www.stuevesiegel.com/ssh/attorneys.html. And while Hartley is a San Diego attorney, Hausfeld partner Bonny Sweeney is also a San Diego attorney, and has practiced and resided here since 1996, at either Hausfeld or the Robbins Geller firm and its predecessor. She is thoroughly familiar with local practice and has a highly accomplished resume, a fact Hartley ignores.

Moreover, the Majority DPP firms offer unparalleled geographic breadth to litigate this case in the best interests of the class. The Majority DPPs' counsel comprise firms representing hundreds of attorneys, with offices throughout California, the rest of the United States, as well in the United Kingdom and Asia (where certain Defendants' parent companies are located). *See* Memorandum of Points and Authorities in Support of Motion for an Order Appointing Hausfeld LLP as Interim Lead Counsel for the Putative Class of Direct Purchaser Plaintiffs and Appointment of a Steering Committee ("Majority DPPs' Opening Mem.") at 10-12. Here, the combination of those resources and Majority DPPs' experience, coupled with Sweeney's presence in San Diego, make appointment of additional lead counsel unnecessary. *See, e.g., Smith v. State Farm Automobile Ins. Co.*, 301 F.R.D. 284, 289-90 (N.D. Ill. 2014) (considering the proposed leadership's

---

[3] Every single one of the 21 cases in which Stueve Siegel was appointed lead or co-lead counsel was pending outside the Southern District of California. Memorandum of Points and Authorities in Support of Motion for Appointment of Jason S. Hartley as Direct Purchaser Class Plaintiffs' Interim Lead Counsel (72-1) ("Hartley Mem.") at 11, n. 7.
[4] *See* Rule 2.1(c) of the Judicial Panel Rule on Multi-District Litigation.

"overall resources combined" and local presence in determining leadership, and placing "little weight in this case on the comparative sizes of proposed counsel's staffs" in the District "in evaluating their ability to fairly and adequately represent the interests of the putative class").

### C. Majority DPPs' Counsel Have Superior Experience and Resources

Majority DPPs do not quarrel with Hartley's assertion that he is experienced in handling antitrust class actions. However, that experience is dwarfed by the superior collective antitrust expertise of Hausfeld and the members of the proposed Steering Committee. *See* Majority DPPs' Opening Mem. and supporting declarations. And even if the Court were to adopt Hartley's suggestion that individuals, as opposed to firms, be appointed to leadership positions, the lawyers that comprise the leadership group proposed by Majority DPPs have far more experience than Hartley.[5] *See* Majority DPPs' Opening Mem. at 12-19 and supporting declarations.

Nor can Hartley's firm begin to match the resources Majority DPPs can deploy on behalf of the proposed DPP class. As described in Majority DPPs' memorandum and supporting declarations, Majority DPPs not only have the attorneys and financial wherewithal to litigate this case vigorously and effectively; they also have offices in the United Kingdom and Asia (where defendant parents reside), lawyers who are fluent in Korean and regularly practice in South Korea, and significant experience trying antitrust and class action cases. *See* Majority DPPs' Opening Mem. at 9-12, 22 and supporting declarations.

/ / /

/ / /

---

[5] If the Court prefers to appoint individual lawyers rather than law firms, Majority DPPs recommend appointment of Bonny E. Sweeney of Hausfeld LLP as Interim Lead Counsel and appointment of Ronald J. Aranoff of Bernstein Liebhard, Whitney E. Street of Block & Leviton, Solomon B. Cera of Cera LLP, Barbara J. Hart of Lowey Dannenberg, and Stephen R. Neuwirth of Quinn Emanuel as members of the Steering Committee.

### D. Majority DPPs' Counsel Conducted the Vast Bulk of Work Done to Date

Although Hartley asserts that he and his firm have conducted extensive work that has already benefited the proposed class, Hausfeld and the members of the proposed Steering Committee have done far more, including, importantly, protecting class members by excluding their claims from the release in the recently-settled under-filling case *Hendricks v. StarKist Co.*, No. 3:13-CV-00729 HSG (N.D. Cal.). *See* Majority DPPs' Opening Mem. at 5-6; Declaration of Bonny E. Sweeney in Support of Motion for Appointment of Hausfeld LLP as Interim Lead Counsel and for the Appointment of a Steering Committee (73-2) ("First Sweeney Decl."), ¶8 and Ex. B. Much of the work that Hartley describes, in contrast, has not resulted in any concrete benefit to the plaintiffs or the class, but instead appears to be directed toward seeking a leadership position. The time spent talking to other plaintiffs' counsel, for example, did not deal with the evidentiary basis for the DPPs' claims, but instead dealt with Hartley's request to make Stueve Siegel a second interim lead counsel. Second Sweeney Decl., ¶2. Even the complaint Hartley filed on behalf of Trepco consists of allegations that are mostly copied – largely verbatim – from the *Affiliated* and *Olean* complaints.[6]

Finally, Hartley asserts that he pleaded a longer class period than other plaintiffs based on an investigation conducted by economists. As Majority DPPs pointed out in their opening memorandum, Hausfeld has also retained the services of a prominent economics firm and a fisheries economist with 20 years of experience in the tuna market. *See* Majority DPPs' Opening Mem. at 5. As to the class period, Hartley's allegations are the same as some of the Majority DPPs and some of the Direct Action Purchasers. After this Court resolves the leadership

---

[6] *Compare Affiliated* complaint, ¶¶1-6, 8-46, 61-76 and Prayer for Relief with *Trepco* complaint, ¶¶1-6, 9-27, 39-42, 44-53, 57-66, 71-76 & Prayer for Relief. *Compare Olean* complaint ¶¶16-20, figures in ¶¶22, 24, ¶¶29-37 with *Trepco* complaint, ¶¶28-31, Figures 2-3 in ¶¶42-43, ¶¶67-75.

dispute, the appointed lead counsel will convene and determine which class period is best supported by available facts and the evidence.

### E. Majority DPPs' Proposed Structure is Inclusive and Efficient

Despite the offer made to Hartley join the proposed Steering Committee, Hartley nevertheless insists that he should be appointed as a lead counsel. While Hartley asserts that "[g]iven the involvement of only six different counsel or groups of counsel, a larger structure is bloated, unnecessary and counterproductive," Hartley Mem. at 3, it is worth noting Hartley had initially proposed a *four-firm* co-lead structure. Hartley Decl., Ex. B.[7] It is this structure that he is referring to when he asserts that his proposed leadership structure included "defined, substantive roles for every DPP counsel – not worthless titles." Hartley Mem. at 3.

Mr. Hartley now vaguely claims he will ensure all DPPs and their counsel will have a "substantive role in the litigation," Hartley Mem. at 4, but offers no compelling reason why he is needed as an arbiter of work tasks. Hausfeld, along with the proposed Steering Committee, will ensure that responsibilities are allocated so as to be handled efficiently and without duplicative efforts. And although Hartley touts his ability to work cooperatively and inclusively with other counsel, it is Hausfeld and counsel for the other DPPs – not Hartley – that have demonstrated that ability in this case. Here, the Majority DPP firms – all of whom would have had compelling grounds to seek a lead position, have agreed instead to work cooperatively and inclusively for the benefit of the proposed class. Hausfeld and the other Majority DPP firms have worked extensively and cooperatively with other plaintiffs' counsel in many prior cases, including with the lawyers who will

---

[7] Among other issues with Hartley's proposal, it entirely omitted the law firms representing the plaintiffs who filed cases before his. Hartley Decl., Ex. B.

likely be active in this litigation.[8]  Second Sweeney Decl., ¶¶3, 4.[9]  In addition to reaching agreement on a leadership proposal with seven of the eight DPP class plaintiffs, Hausfeld (along with the proposed Steering Committee) coordinated with all the other plaintiff groups to present a proposed schedule to the Court at the January 20 status conference, and worked with those same plaintiff groups to present to the Court a joint submission recommending that each of the four plaintiff groups be separately represented.  First Sweeney Decl., ¶9.

### F. Case Management Orders and Billing Protocols

Some of the leadership proposals filed with the Court have included proposed case management orders and/or protocols for attorney time and expense billing.  Majority DPPs agree that these proposals and protocols contain important and appropriate provisions, and have utilized similar protocols in other cases.  Hausfeld, for example, has utilized a billing protocol in other cases in which it serves as lead counsel that minimizes duplicative and excessive expenses and attorney billing.  Second Sweeney Decl., Ex. G.  However, in light of the organizational and leadership decisions that must first be made by the Court, Majority DPPs respectfully suggest that these proposals are premature and instead should be considered promptly after the Court rules on the appropriate leadership structure.

## II. CONCLUSION

For the reasons set forth above and in Majority DPPs' opening memorandum, Hausfeld respectfully requests that this Court appoint it as interim lead counsel for the putative class of DPPs and appoint a Steering Committee comprised of the following firms:  Bernstein Liebhard LLP, Block & Leviton LLP, Cera LLP,

---

[8] Ms. Sweeney, for example, as co-lead counsel in *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, worked closely with William Blechman, who served in that case as liaison counsel for the Direct Action Plaintiffs, a role he is likely to play in this case as well.  Second Sweeney Decl., ¶4.
[9] Nor should Hartley, who has done little to organize these cases, be allowed to "leapfrog" over these DPPs and their counsel.  That is hardly a model of working cooperatively with co-counsel.

Lowey Dannenberg Cohen & Hart, P.C., and Quinn Emanuel Urquhart & Sullivan, LLP.

Dated: February 11, 2016

Respectfully submitted,

*/s/ Bonny E. Sweeney*
Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Christopher L. Lebsock (Cal. Bar No. 184546)
HAUSFELD LLP
600 Montgomery Street
Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile: 415-217-6813
mlehmann@hausfeld.com
bsweeney@hausfeld.com
clebsock@hausfeld.com

Michael D. Hausfeld
James J. Pizzirusso
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
Email:   mhausfeld@hausfeld.com
Email:   jpizzirusso@hausfeld.com

*Counsel for Plaintiff Olean Wholesale Grocery Cooperative, Inc.*

Whitney E. Street (State Bar No. 223870)
BLOCK & LEVITON LLP
520 Third Street, Suite 108
Oakland, CA 94607
(415) 968-8999
(617) 507-6020
whitney@blockesq.com

*Counsel for Beverly Youngblood*

Barbara Hart
Sung-Min Lee
LOWEY DANNENBERG COHEN
& HART, P.C.
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
Telephone: (610) 941-2760

One North Broadway, Suite 509
White Plains, NY 10601-2301
Telephone: (914) 997-0500
Facsimile: (914) 997-0035

E-Mail: bhart@lowey.com
E-Mail: slee@lowey.com

*Counsel for Pacific Groservice Inc. d/b/a PITCO Foods*

Solomon B. Cera (State Bar No. 99467)
Thomas C. Bright (State Bar No. 169713)
Louis A. Kessler (State Bar No. 243703)
CERA LLP
595 Market Street, Suite 2300
San Francisco, California 94105
Tel: (415) 777-2230
Fax: (415) 777-5189
Email: scera@cerallp.com
Email: tbright@cerallp.com
Email: lakessler@cerallp.com

*Counsel for Piggly Wiggly Alabama Distributing Co., Inc., Central Grocers, Inc. v. Bumble Bee Foods, LLC, Central Grocers, Inc. v. Bumble Bee Foods, LLC, Associated Grocers of Florida, Inc.*

Stephen R. Neuwirth
Sami H. Rashid
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

Email: stephenneuwirth@quinnemmanuel.com

Email: samirashid@quinnemmanuel.com

Ronald J. Aranoff
Dana Statsky Smith
BERNSTEIN LIEBHARD LLP
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218

Email: aranoff@bernlieb.com
Email: dsmith@bernlieb.com

*Counsel for Benjamin Foods LLC*