BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

*Interim Lead Counsel for the End Payer Plaintiffs*

[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 15-MD-2670 JLS (MDD) |
| This Document Relates To:<br><br>The Indirect Purchaser End Payer Actions | **CONSOLIDATED CLASS ACTION COMPLAINT OF THE INDIRECT PURCHASER END PAYER PLAINTIFFS**<br><br>DEMAND FOR JURY TRIAL<br><br>JUDGE:  Hon. Janis L. Sammartino<br>CTRM:   4A (4th Fl.—Schwartz) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page No.**

NATURE OF ACTION ........................................................................... 1

PARTIES ............................................................................................... 2

AGENTS AND CO-CONSPIRATORS .................................................. 8

JURISDICTION AND VENUE ............................................................. 9

CLASS ACTION ALLEGATIONS ...................................................... 10

RELEVANT MARKETS ...................................................................... 18

INTERSTATE COMMERCE ............................................................... 19

ADDITIONAL FACTUAL ALLEGATIONS ....................................... 19

FRAUDULENT CONCEALMENT AND THE TOLLING OF THE STATUTE
OF LIMITATIONS .............................................................................. 38

CAUSES OF ACTION ......................................................................... 40

     VIOLATIONS OF STATE ANTITRUST LAW ............................. 43

     VIOLATIONS OF STATE CONSUMER PROTECTION LAW ................. 70

     UNJUST ENRICHMENT .............................................................. 98

PRAYER FOR RELIEF ..................................................................... 1188

JURY DEMAND .............................................................................. 119

Plaintiffs Louise Adams, Nay Alidad, Paul Berger, Barbara Blumstein, Jessica Breitbach, Melissa Bowman, Barbara Buenning, Michael Buff, Scott Caldwell, Jade Canterbury, Laura Childs, Casey Christensen, Jody Cooper, Sally Crnkovich, Sundé Daniels, Elizabeth Davis-Berg, Jessica Decker, Vivek Dravid, Kenneth Dunlap, Brian Depperschmidt, Stephanie Gipson, Kathy Gore, Tina Grant, Lisa Hall, Mary Hudson, Tya Hughes, Amy Jackson, Marissa Jacobus, Danielle Johnson, Amy Joseph, Michael Juetten, Dwayne Kennedy, Joseph A. Langston, Carla Lown, Katherine McMahon, Diana Mey, Beth and Liza Milliner, Rick Musgrave, Corey Norris, Barbara Olson, Jennifer A. Nelson, Jonathan Rizzo, Joelyna A. San Agustin, Rebecca Lee Simoens, Greg Stearns, Nancy Stiller, Christopher Todd, David Ton, John Trent, Elizabeth Twitchell, Bonnie VanderLaan, Nigel Warren, Thomas E. Willoughby III, (collectively "Plaintiffs"), for their consolidated complaint, allege upon personal knowledge as to themselves and their own actions, and upon information and belief, including the investigation of counsel, as follows:

## NATURE OF ACTION

1.      This is a class action concerning anticompetitive activity by the Defendants Bumble Bee Foods LLC, StarKist Company, and Tri-Union Seafoods LLC (collectively "Defendants"). The claims alleged herein are brought pursuant to Section 1 of the Sherman Act, 15 U.S.C. § 1, and Section 3 of the Clayton Act, 15 U.S.C. § 14, as well as various state laws as alleged.   This action is brought by Plaintiffs, on behalf of themselves and Classes of persons and entities who indirectly purchased from any Defendant or current or former subsidiary or affiliate of any Defendant, shelf-stable packaged seafood products ("PSPs"), including tuna, crab, mackerel, oyster, salmon, sardines and shrimp, during the period from, and including, at least August 1, 2008 through such time as the anticompetitive effects of Defendants' conduct ceases (the "Class Period").

2.     Defendants have conspired to raise, fix, stabilize or maintain prices of and restrict capacity within the market for the sale of PSPs during the Class Period.

3.     With slowing and stagnating growth in the United States PSP industry, beginning in or about August 1, 2008, Defendants directly coordinated the pricing and market allocation for PSPs throughout the United States.  As part of this coordination, Defendants agreed and conspired to artificially increase prices for PSPs to record highs in spite of reduced consumer interest and falling demand. The impacts of Defendants' unlawful and anticompetitive conduct are ongoing and continue to this day.

## PARTIES

**Plaintiffs**

4.     Plaintiff Louise Adams is domiciled in Chippewa County, Michigan, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Michigan during the Class Period.

5.     Plaintiff Nay Alidad is domiciled in Clark County, Nevada, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Nevada during the Class Period.

6.     Plaintiff Paul Berger is domiciled in the District of Columbia and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the District of Columbia during the Class Period.

7.     Plaintiff Barbara Blumstein is domiciled in Palm Beach County, Florida, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Florida during the Class Period.

8.     Plaintiff Jessica Breitbach is domiciled in Milwaukee County, Wisconsin, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the States of Illinois and Wisconsin during the Class Period.

9.     Plaintiff Melissa Bowman is domiciled in Douglas County, Nebraska,

- 2 -

and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Nebraska during the Class Period.

10.    Plaintiff Barbara Buenning is domiciled in Dodge County, Nebraska, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Nebraska during the Class Period.

11.    Plaintiff Michael Buff is domiciled in Albany County, New York, an purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of New York during the Class Period.

12.    Plaintiff Scott Caldwell is domiciled in Essex County, Massachusetts, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the States of California and Massachusetts during the Class Period.

13.    Plaintiff Jade Canterbury is domiciled in Monroe County, West Virginia, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of West Virginia during the Class Period.

14.    Plaintiff Laura Childs is domiciled in Washington County, Minnesota, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Minnesota during the Class Period.

15.    Plaintiff Casey Christensen is domiciled in Lincoln County, South Dakota, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of South Dakota during the Class Period.

16.    Plaintiff Jody Cooper is domiciled in Merrimack County, New Hampshire, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of New Hampshire.

17.    Plaintiff Sally Crnkovich is domiciled in Cook County, Illinois, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Illinois during the Class Period.

18.    Plaintiff Sundé Daniels is domiciled in Norfolk County, Massachusetts and purchased PSPs, primarily canned tuna, indirectly from one or

No. 15-MD-2670 JLS (MMD)

more Defendants in the State of Massachusetts during the Class Period.

19. Plaintiff Elizabeth Davis-Berg is domiciled in Cook County, Illinois, and purchased PSPs, primarily packaged tuna, indirectly from one or more Defendants in the State of Illinois during the Class Period.

20. Plaintiff Jessica Decker is domiciled in Ingham County, Michigan, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Michigan during the Class Period.

21. Plaintiff Vivek Dravid is domiciled in Salt Lake County, Utah, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the States of New Mexico, Illinois, and Utah during the Class Period.

22. Plaintiff Kenneth Dunlap is domiciled in Milwaukee County, Wisconsin, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Wisconsin during the Class Period.

23. Plaintiff Brian Depperschmidt is domiciled in Sedgwick County, Kansas, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Kansas during the Class Period.

24. Plaintiff Stephanie Gipson is domiciled in Chittenden County, Vermont, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the States of New York and Vermont during the Class Period.

25. Plaintiff Kathy Gore is domiciled in Portales County, New Mexico, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of New Mexico during the Class Period.

26. Plaintiff Tina Grant is domiciled in Salt Lake County, Utah, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the States of Arizona and Utah during the Class Period.

27. Plaintiff Lisa Hall is domiciled in Saline County, Kansas, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Kansas during the Class Period.

No. 15-MD-2670 JLS (MMD)

28.     Plaintiff Mary Hudson is domiciled in San Diego County, California, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of California during the Class Period.

29.     Plaintiff Tya Hughes is domiciled in Ward County, North Dakota, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of North Dakota during the Class Period.

30.     Plaintiff Amy Jackson is domiciled in the Territory of Guam and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the Territory of Guam and the State of California during the Class Period.

31.     Plaintiff Marissa Jacobus is domiciled in Calaveras County, California, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of California during the Class Period.

32.     Plaintiff Danielle Johnson is domiciled in Multnomah County, Oregon, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Oregon during the Class Period.

33.     Plaintiff Amy Joseph is domiciled in DuPage County, Illinois, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Illinois during the Class Period.

34.     Plaintiff Michael Juetten is domiciled in Los Angeles County, California, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of California during the Class Period.

35.     Plaintiff Dwayne Kennedy is domiciled in Clark County, Nevada, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Nevada during the Class Period.

36.     Plaintiff Joseph A. Langston is domiciled in Benton County, Arkansas, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Arkansas during the Class Period.

37.     Plaintiff Carla Lown is domiciled in Blackhawk County, Iowa, and

No. 15-MD-2670 JLS (MMD)

purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Iowa during the Class Period.

38.    Plaintiff Katherine McMahon is domiciled in Washington County, Rhode Island, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Rhode Island during the Class Period.

39.    Plaintiff Diana Mey is domiciled in Ohio County, West Virginia, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of West Virginia during the Class Period.

40.    Plaintiffs Beth and Liza Milliner are domiciled in Washington County, Oregon, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Oregon during the Class Period.

41.    Plaintiff Rick Musgrave is domiciled in Contra Costa County, California, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of California during the Class Period.

42.    Plaintiff Corey Norris is domiciled in Johnston County, North Carolina, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of North Carolina during the Class Period.

43.    Plaintiff Barbara Olson is domiciled in Washtenaw County, Michigan, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Michigan during the Class Period.

44.    Plaintiff Jennifer A. Nelson domiciled in Bennington County, Vermont, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the States of Iowa, New York, and Vermont during the Class Period.

45.    Plaintiff Jonathan Rizzo is domiciled in Maricopa County, Arizona, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Arizona during the Class Period.

46.    Plaintiff Joelyna A. San Agustin is domiciled in the Territory of Guam and purchased PSPs, primarily canned tuna, indirectly from one or more

No. 15-MD-2670 JLS (MMD)

Defendants in the Territory of Guam during the Class Period.

47.    Plaintiff Rebecca Lee Simoens is domiciled in St. Charles County, Missouri, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Missouri during the Class Period.

48.    Plaintiff Greg Stearns is domiciled in Waldo County, Maine, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Maine during the Class Period.

49.    Plaintiff Nancy Stiller is domiciled in Washoe County, Nevada, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Nevada during the Class Period.

50.    Plaintiff Christopher Todd is domiciled in New Orleans Parish, Louisiana, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Mississippi during the Class Period.

51.    Plaintiff David Ton is domiciled in San Diego County, California, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of California during the Class Period.

52.    Plaintiff John Trent is domiciled in Shelby County, Tennessee, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Florida during the Class Period.

53.    Plaintiff Elizabeth Twitchell is domiciled in the independent city of Alexandria, Virginia, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the States of Illinois, North Carolina, and Virginia during the Class Period.

54.    Plaintiff Bonnie VanderLaan is domiciled in Emmons County, North Dakota, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the States of North Dakota and South Dakota during the Class Period.

55.    Plaintiff Nigel Warren is domiciled in Kings County, New York, and

No. 15-MD-2670 JLS (MMD)

purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of New York during the Class Period.

56.     Plaintiff Thomas E. Willoughby III is domiciled in Cumberland County, Maine, and purchased PSPs, primarily canned tuna, indirectly from one or more Defendants in the State of Maine during the Class Period.

**Defendants**

57.     Defendant Tri-Union Seafoods, LLC d/b/a Chicken of the Sea International ("Tri-Union" or "COSI") is a Delaware corporation with its principal place of business at 4510 Executive Drive, No. 3, San Diego, CA 92121.

58.     Defendant COSI and sister company King Oscar, Inc. are wholly-owned subsidiaries of Thai Union Frozen Products Public Company, Ltd. ("Thai Union"), a publicly held company headquartered in Thailand.

59.     Defendant Bumble Bee Foods LLC, f/k/a Bumble Bee Seafoods LLC ("Bumble Bee") is a Delaware corporation with its principal place of business at 9655 Granite Ridge Drive, Suite 100, San Diego, CA 92123.  Bumble Bee is a wholly-owned subsidiary of Lion Capital, a private investment firm headquartered in the United Kingdom.

60.     Defendant StarKist Company ("StarKist") is a Delaware corporation with its principal place of business at 225 North Shore Drive, Suite 400, Pittsburgh, PA 15212.  StarKist is a wholly-owned subsidiary of Dongwon Industries Co. ("Dongwon"), which is headquartered in the Republic of Korea.

61.     Defendants and their co-conspirators directly and through their affiliates sold PSPs in the United States and in this district at artificially inflated prices during the Class Period.  Defendants are direct, horizontal competitors in the United States PSP market.

### AGENTS AND CO-CONSPIRATORS

62.     On information and belief, other corporations, partnerships, or business

- 8 -

entities, currently unknown to Plaintiffs, are co-conspirators with Defendants in their unlawful restraints of trade.   Various persons that are not named as Defendants have participated as co-conspirators in the violations alleged herein and have performed acts and made statements in furtherance thereof.

63.   These other persons or entities have facilitated, adhered to, participated in, and/or communicated with others regarding the alleged conspiracy to raise prices of PSPs and the anticompetitive and unduly restrictive exclusive dealing agreements addressed in this lawsuit.  Plaintiffs reserve the right to name some or all of these entities as Defendants at a later date.

### JURISDICTION AND VENUE

64.   Plaintiffs seek consideration paid, damages, restitution, treble damages or three times consideration paid  by consumers of PSPs, disgorgement, other monetary relief, injunctive and other equitable relief under various state antitrust, consumer protection and unfair trade practices laws, and state unjust enrichment laws, as alleged specifically herein,  as well as costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of Defendants' violations of those laws. This Consolidated Class Action Complaint of the Indirect Purchaser End Payer Plaintiffs ("CAC") is also filed under Section 16 of the Clayton Act, 15 U.S.C. § 26, to obtain injunctive relief and to recover the costs of suit, including reasonable attorneys' fees, for the injuries sustained by Plaintiffs and all others similarly situated as a result of Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

65.   This Court has jurisdiction over the federal claim under Section 16 of the Clayton At, 15 U.S.C. § 26, as well as under 28 U.S.C. §§ 1331, 1337. The Court has jurisdiction over the state law claims under 28 U.S.C. § 1367 because those claims are so related to the federal claim that they form part of the same case or controversy. Independently, this Court also has subject matter jurisdiction over

No. 15-MD-2670 JLS (MMD)

the state law claims under 28 U.S.C. § 1332 because the amount in controversy for each of the Classes exceeds $5,000,000, there are more than 100 members in each of the Classes, and there are members of some of the Classes who are citizens of different states than Defendants.

66.    Venue is proper in this Judicial District because (1) Defendants Tri-Union and Bumble Bee each have their principal places of business within this District and (2) each Defendant transacts a substantial amount of business in this District, and (3) each Defendant and the conduct alleged has affected, and continues to affect, a substantial amount of trade and commerce in this District.

## CLASS ACTION ALLEGATIONS

67.    Plaintiffs bring the claims asserted in this action on behalf of themselves and as  class claims  under Federal Rules of Civil Procedure, Rule 23(a) and (b)(2), seeking equitable and injunctive relief on behalf of the following classes  (defined for use in this CAC as the "Nationwide Sherman Act Class", the "Nationwide Cartwright Act Class" and the "State Classes" each of which is individually described and further defined):

68.    The Nationwide Sherman Act Class consists of:

All persons and entities who resided in the United States who indirectly purchased PSPs for end consumption and not for resale, from any Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period for equitable and injunctive relief under the Sherman Act.

69.    The Nationwide Cartwright Act Class consists of:

All persons and entities who resided in the United States who indirectly purchased PSPs for end consumption and not for resale, from any Defendants or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period for equitable and injunctive relief and appropriate damages under California's Cartwright Act.

70.    Plaintiffs as specifically identified herein also bring claims asserted in

No. 15-MD-2670 JLS (MMD)

this action on behalf of themselves and as a class claims under Federal Rules of Civil Procedure, Rule 23(a) and (b)(3), seeking damages pursuant to various the state antitrust, unfair competition, and consumer protection laws of the states listed below on behalf of the following classes (collectively, the "State Classes"):

(a) **Arizona class**: All persons and entities who resided in the State of Arizona who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(b) **Arkansas class**: All persons and entities who resided in the State of Arkansas who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(c) **California class**: All persons and entities who resided in the State of California who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(d) **District of Columbia class**: All persons and entities who resided in the District of Columbia who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(e) **Florida class**: All persons and entities who resided in the State of Florida who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(f) **Guam class**: All persons and entities who resided in the Territory of Guam who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former

- 11 -

subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(g)   **Illinois class**: All persons and entities who resided in State of Illinois  who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(h)   **Iowa class**: All persons and entities who resided in the State of Iowa who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(i)   **Kansas class**: All persons and entities who resided in the State of Kansas who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(j)   **Maine class**: All persons and entities who resided in the State of Maine who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(k)   **Massachusetts class**: All persons and entities who resided in the State of Massachusetts who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(l)   **Michigan class**: All persons and entities who resided in the State of Michigan who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

No. 15-MD-2670 JLS (MMD)

(m)     **Minnesota class**: All persons and entities who resided in the State of Minnesota who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(n)     **Mississippi class**: All persons and entities who resided in the State of Mississippi who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(o)     **Missouri class**: All persons and entities who resided in the State of Missouri who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(p)     **Nebraska class**: All persons and entities who resided in the State of Nebraska who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(q)     **Nevada class**: All persons and entities who resided in the State of Nevada who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(r)     **New Hampshire class**: All persons and entities who resided in the State of New Hampshire who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(s)     **New Mexico class**: All persons and entities who resided in the State of New Mexico who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any

- 13 -

current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(t)     **New York class**: All persons and entities who resided in the State of New York who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(u)     **North Carolina class**: All persons and entities who resided in the State of North Carolina who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(v)     **North Dakota class**: All persons and entities who resided in the State of North Dakota who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(w)     **Oregon class**: All persons and entities who resided in the State of Oregon who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(x)     **Rhode Island class**: All persons and entities who resided in the State of Rhode Island  who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(y)     **South Dakota class**: All persons and entities who resided in the State of South Dakota  who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

- 14 -

(z)   **Utah class**: All persons and entities who resided in the State of Utah who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(aa)   **Vermont class**: All persons and entities who resided in the State of Vermont who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(bb)   **Virginia class**: All persons and entities who resided in the State of Virginia who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(cc)   **West Virginia class**: All persons and entities who resided in the State of West Virginia who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

(dd)   **Wisconsin class**: All persons and entities who resided in the State of Wisconsin who indirectly purchased PSPs for end consumption and not for resale, from any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the Class Period.

71.   The Nationwide Classes and the State Classes are collectively referred to herein as the "Classes" unless otherwise indicated.

72.   Excluded from each of the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, federal governmental entities and instrumentalities of the federal government, states and their subdivisions, agencies and instrumentalities, all judges assigned to this matter, all jurors in this matter, and all persons and entities who only purchased PSPs directly or for resale.

No. 15-MD-2670 JLS (MMD)

73.    Each of the Classes is so numerous that joinder of all members impracticable.  While Plaintiffs do not know the exact number members of each of the Classes, Plaintiffs believe there are at least hundreds of thousands of members in each of the Classes.

74.    Common questions of law and fact exist as to all members of each of the Classes.  This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all members of each of the Classes, thereby making appropriate relief with respect to each Class as a whole.  Such questions of law and fact common to the Classes include, but are not limited to:

(a)    Whether the Defendants and their co-conspirators engaged in a combination and conspiracy to fix, raise, maintain or stabilize the prices of PSPs sold in the United States and in each of the States alleged herein;

(b)    The identity of the participants of the alleged conspiracy;

(c)    The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

(d)    Whether Defendants' alleged conduct violated the Sherman and Clayton Acts;

(e)    Whether Defendants' alleged conduct violated various state antitrust and restraint of trade laws;

(f)    Whether Defendants' alleged conduct violated various state consumer protection and unfair competition laws;

(g)    Whether the conduct of Defendants and co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

(h)    The effect of Defendants' alleged conduct on the prices of PSPs sold in the United States during the Class Period; and

- 16 -

No. 15-MD-2670 JLS (MMD)

(i)     The appropriate relief for the Classes, including injunctive and equitable relief.

75.     Each Plaintiff's claims are typical of the claims of the members of the respective Classes each Plaintiff seeks to represent, and each Plaintiff will fairly and adequately protect the interests of the respective classes such plaintiff seeks to represent.  Each of the Plaintiffs and all members of the Classes that Plaintiffs seek to represent were similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for PSPs purchased indirectly from the Defendants and/or their co-conspirators.

76.     Each Plaintiff's claims arise out of the same common course of conduct giving rise to the claims of the other members of each of the Classes that each Plaintiff seeks to represent. Each Plaintiff's interests are coincident with, and not antagonistic to, those of the other members of the respective Classes that plaintiff seeks to represent.   Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

77.     The questions of law and fact common to the members of each of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

78.     Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that it might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in management of this class action.

No. 15-MD-2670 JLS (MMD)

79.   The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

## RELEVANT MARKETS

80.   The relevant geographic market is the United States. Defendants operate and sell PSPs in the United States and, collectively, control the U.S. market of PSPs including, specifically, the largest category of PSP sales in the United States – canned or packaged tuna.  Collectively, Defendants account for nearly 80% of PSP tuna sales in the United States, and a slightly lower percentage of the nation's overall PSP market.  Unlike PSP manufacturers and sellers located outside of the United States, Defendants have U.S. facilities, relationships and distribution assets in the United States that enable Defendants to avoid foreign product import tariffs and to effectively constrain prices for PSPs packaged and sold in the United States.

81.   The relevant product market is shelf-stable packaged seafood products, or PSPs. These are tuna, crab, mackerel, oyster, salmon, sardines and shrimp, packaged such that they may be transported and stored at room temperature.

82.   The market in the United States for PSPs is approximately $2.6 billion annually. There are four generally recognized categories of PSPs:  (1) tuna, the largest, accounting for approximately 71% of U.S. sales of PSPs; (2) salmon; (3) sardines; and (4) "specialty" PSPs which are largely invertebrates, and include crab, shrimp and bivalves.  Defendants account for nearly 80% of PSP tuna sales in the United States and a slightly lower proportion of the overall PSP market.  As shelf-stable food products, PSPs may be transported across state lines in the final packaging and without cold-chain or further processing.

83.   PSPs are sold nationwide to consumers in a few standard sizes and predominantly in standard grades.  Each brand's offerings compete with each

other brand's comparable offerings, and PSPs have many characteristics of commodity products.

84.     PSPs, including canned tuna, are regulated by the United States Department of Agriculture, at 21 CFR 161.190.   The regulations govern the species, parts, packaging, packing media, additives and flavoring, and labeling of canned tuna.   The regulations for tuna contemplate four can sizes and four ingredient types (solid, chunks, flakes, and grated) of canned tuna.

### INTERSTATE COMMERCE

85.     Defendants manufactured and/or sold PSPs in the United States in a continuous and uninterrupted flow of interstate commerce, including through and into this judicial district.

86.     Defendants' business activities substantially affected interstate commerce in the United States and caused antitrust injury throughout the United States.

87.     Defendants' business activities also affected the intrastate (or intra-District, or intra-Territorial) commerce of every jurisdiction for which a claim is asserted herein, as further specifically alleged in Claims for Relief Two through Seventy-Eight herein where required.   Canned tuna, the most widely transacted PSP, is a staple food.   American consumers, on average, currently purchase more than two pounds of this product per capita annually, and thousands of consumers buy it each year in every single state, District and territory.

88.     Together, Defendants control just under 80% of the United States tuna PSP market.   StarKist controls roughly 35-40% of the market, Bumble Bee roughly 25% and Tri-Union roughly 20%.

### ADDITIONAL FACTUAL ALLEGATIONS

**A.     Overview of the Packaged Seafood Products ("PSPs") Industry.**

89.     PSPs start as raw seafood that is processed, cooked and canned for flavor, safety, and to increase shelf life. Because the animals that comprise PSPs

- 19 -

are generally caught far out at sea, raw seafood is usually delivered to canneries or processing facilities in a frozen or refrigerated state. Upon delivery to a processing plant, an initial quality control inspection is performed.

90.   Seafood of acceptable quality is transferred to large ovens for "precooking." Following pre-cooking and cleaning, seafood is transmitted into a filling machine which processes the seafood into cans, pouches or cups in pre-set amounts. The containers are then closed and sealed in sealing machines.

91.   Each package has a code that identifies the plant, product, date, batch and other identifying information. Filled and sealed packages are then cooked under pressure to make the products commercially sterile and so that they will have a long shelf life.

92.   PSPs are largely sold, in their original packaging, directly to wholesale distributors, who, in turn, re-sell, also in their original packaging, to grocery stores, restaurants, school districts and other outlets.  Additionally, PSPs are sold both directly and indirectly, in their original packaging, to club warehouses, retail groceries, grocery cooperatives, mass merchandisers, and drug stores, among others, who resell PSPs to end-user consumers in their original individual packaging.

93.   Defendants all sell PSPs in the United States. StarKist, Bumble Bee and COSI sell packaged tuna, clams, salmon, and sardines. Bumble Bee and Tri-Union also sell packaged crab, mackerel, oysters and shrimp.

94.   Defendants collectively dominate the United States' highly-concentrated industry for PSPs and have done so for decades. StarKist, Bumble Bee, and COSI for about 80% of the tuna market, and the remaining share is divided among private label brands, typically associated with and distributed by a single retailer.

95.   Beginning in or about 2000, national demand for PSPs, particularly canned tuna, began to decline for numerous reasons.  Between 2000 and 2014, the

- 20 -

average per person annual tuna consumption decreased by more than 31% from approximately 3.5 pounds per person per year to 2.4 pounds per person per year

96.   In a competitive environment, a decline in demand for a given commodity product should (other factors being equal) lead to a decline in that product's price. However, as Defendants control the market and have agreed to restrict capacity, allocate customers, and fix prices for PSPs, the prices were set at artificially high levels beginning not later than August 1, 2008.  Further, while the raw material is the largest cost input to PSPs, the price of canned tuna since 2007 has outpaced the price of the major component fish, namely skipjack tuna.  Growth of prices of a commodity product, unexplained by rising raw product costs, and in markets where demand is softening, suggests suspension of ordinary market functions.

97.   Prices for PSPs since at least August, 2008 were a direct result of Defendants' conspiracy to restrict capacity, allocate customers, and fix the prices of PSPs in the United States. As a result, Plaintiffs and the Classes paid artificially-inflated prices for PSPs purchased indirectly from Defendants.

**B.   Defendants Engaged in an Anticompetitive Conspiracy**

98.   At least as early as August 2008  Defendants Tri-Union, Bumble Bee and StarKist participated in an anticompetitive   horizontal cartel, perpetuated through organizations the Defendants themselves created, and which conspiracy included communications in person and by telephone and email , sharing sensitive business information.   While it is possible that Defendants' anticompetitive conduct in the United States ceased when the United States Department of Justice ("DOJ") opened its investigation of the anti-competitive conduct of the Defendants in 2015, the effects of that anticompeitive conduct persist to the present. In the course of this cartel, Defendants (1) coordinated increases to list prices of PSPs; (2) shared information about and policed discounting from list prices; and (3) collectively agreed to forbear from introducing certain higher cost PSP products in

their brand lines.  The Defendants' horizontal collusion was intended to, and did, fix, raise, stabilize, and/or maintain the prices of PSPs sold to customers in the United States.

99.     The Defendants among others, in their present or past parent corporate forms, were founding members of the National Fisheries Institute ("NFI").  The NFI was founded at least as early as 1945, and continues to serve as the seafood industry's primary trade group and lobby.

100.    The NFI includes several subgroups, including the Tuna Council, which consists of at least all of the Defendants and possibly others.  Additionally, in 2007 NFI members created the Better Seafood Board ("BSB"), an organization which, while "governed separately from NFI," "provides the mechanism for [the] industry's partners in the supply chain. . .to report suppliers committing economic fraud."[1] BSB's code of conduct includes requirements of "never mislabeling a fish" or "short-weighting product".[2] During the Class Period NFI and the BSB have served as loci for collusive communication between Defendants and as a source of anticompetitive agreement.

101.    Defendants formed another organization, the International Sustainable Seafood Foundation ("ISSF"), in 2009.  The ISSF also serves as a forum for in-person and telephonic meetings between the Defendants, who are direct horizontal competitors.

***Alignment of Can Sizes in 2008***

102.    Between roughly 2000 and 2008, leading tuna companies, including Defendants, followed each other in a series of gradual moves to change the size of

---

[1]     *See*     http://www.aboutseafood.com/about/better-seafood-board-3/,     last accessed May 6, 2016.

[2]     *See*     http://blogs.wsj.com/corruption-currents/2013/01/28/seafood-companies-fight-fraud-with-traceability/, last accessed May 6, 2016

the standard tuna can, first from seven ounces to six and a half ounces, then to six and one-eighth ounces, and then to six ounces.[3]  These changes occurred gradually over at least an eight-year period.

103.  In or about August 2008, StarKist abruptly changed the size of its standard six-ounce tuna can to five ounces, marking a major departure from the gradual changes of the previous decade.  At the time, StarKist stated that it did this primarily for environmental reasons, including the purpose of "sav[ing] two million gallons of water a year, while only taking out two teaspoons of tuna from each can."[4]

104.  COSI and Bumble Bee swiftly reduced their can sizes to match StarKist's can size, reducing their standard can size from six to five ounces as well.

105.  In early 2009, in the face of this move, smaller competitor Tri-Marine, tuna producer for Costco's in-house brand Kirkland Signature, distinguished itself from Defendants by selling a larger size of its most popular tuna can, and in fact increased its standard package size to seven ounces.  In early 2009, Tri-Marine advertised the return to a once industry-standard seven-ounce can size as a selling point for its tuna product.[5]

106.  The uniform move by the three leading brands to sharply drop the most common can size, even in the face of a competitive move by a private label to differentiate their product selling a larger seven ounce size canned tuna product is

---

[3]  *See* http://www.thedailybeast.com/articles/2010/07/29/tuna-shrinkage-cans-now-five-ounces-more-expensive.html; http://www.mouseprint.org/2008/08/11/holy-mackerel-starkist-downsizes-tuna/, last accessed May 13, 2016.

[4]  *See*  http://www.mouseprint.org/2008/08/11/holy-mackerel-starkist-downsizes-tuna/, last accessed May 13, 2016.

[5]  *See*  http://www.mouseprint.org/2009/07/06/some-tuna-cans-just-got-upsized/, last accessed May 13, 2016.

No. 15-MD-2670 JLS (MMD)

1    suggestive of collusion.

2    *Collusive Price Increase of 2012*

3         107.   Further in December 2011, senior sales and management personnel of
4    COSI, Bumble Bee and StarKist engaged in a series of communications about
5    price.  These communications took the form of email and telephone conversations,
6    all or substantially all of which were bilateral between two of the three
7    competitors, but which in aggregate constituted communications among all three
8    brands' personnel with pricing responsibilities.

9         108.   Through these communications, the three companies reached an
10   agreement for a near simultaneous increase in list prices for the products sold at
11   retail in the United States, and by the same amount.  The Defendants' agreement
12   covered at least all the consumer tuna PSPs sold in the United States under the
13   Defendants' flagship brands.

14        109.   The series of communications among and between Defendants
15   continued from 2011 into approximately the first 18 days of January 2012.

16        110.   Within the six days from January 13, 2012, to January 18, 2012, the
17   three brands each announced new price lists to their customers. StarKist announced
18   its price increases on January 13, effective March 26, 2012. Bumble Bee
19   announced its increases on January 17, 2012, effective on April 1, 2012.  COSI
20   announced its increases on January 18, 2012, effective on April 1, 2012.  The price
21   increases were substantially identical for the cartel participants' corresponding
22   products.

23   *Collusive Monitoring of Promotions*

24        111.   Following the decision to impose a coordinated price increase, the
25   cartel members engaged in monitoring of discounts.  In bilateral communications
26   that were intended to be, and in fact were, communicated  among all three of the
27   Defendants via telephone and email, beginning not later than May 2012, the sales
28   and management personnel of the three brands announced to each other their

awareness of particularly aggressive discounts from list price, and in turn the personnel of the brand subject to the discount or promotion provided assurances that the discount or promotion was not intended to spark price competition between the cartel members but reflected particular circumstances and would not set a precedent.

112.   This pattern of policing communications between the cartel members continued, through communications of this kind continued until at least June 2013.

***Collusive Refusal to Offer FAD-Free Products***

113.   During 2011 the industry experienced increasing pressure to provide consumers the option to purchase more sustainably fished product in their product lines.   A particular focus was the use of Fish Aggregation Devices ("FADs") in conjunction with the purse-seine method of fishing. A FAD is a man-made device that floats on the ocean (typically using a buoy tethered to the ocean floor) used to attract schools of fish that orbit around the FAD.

114.   Much of the world's tuna is caught by purse-seine netting, in which a large net is deployed under an entire school of fish and hoisted upwards.   This technique is distinct from methods involving towed nets, or pole-and-line fishing, where fish are hooked.   The most cost-effective method of catching tuna is to use a FAD to draw schools of tuna into a small area, and a purse-seine net to capture them.   The practice has drawn criticism on environmental sustainability grounds.

115.   The Defendants, among others in the industry have been pressed by sustainability advocates to end the use of FADs.   But the Defendants' customers have also sought to prompt the Defendants to introduce FAD-free tuna into the United States PSP market, asserting that they perceive an unmet consumer demand for a more sustainable, FAD-free tuna product in the U.S. market.

116.   Bumble Bee, StarKist and COSI began in 2011 to discuss a response to the pressure to offer FAD-free tuna in the United States.

117.   These discussions between the competitors occurred through the

industry organizations concerned with sustainability, and specifically at least through the mechanism of NFI.

118.   The discussions of the pressure to offer FAD-free tuna that began in 2011 during one or more conference calls under the aegis of sustainability organizations.  At least once in the week of February 6, 2012, each of Bumble Bee, StarKist and COSI participated in a call under the aegis of NFI.  On that call, the participants reached an agreement.  This call was memorialized in email on or about February 17, 2012.

119.   The agreement between the participants to the call on or about February 6, 2012 was to prevent the launch of a FAD-free tuna product under the brand name of any of the major brands for the US market. This agreement enabled Defendants to maintain their price-fixing conspiracy, and to further effectuate their agreement not to compete on the basis of price or distinguishing product choice, such as FAD-free tuna.

**Defendants Have Ample Opportunities to Collude**

120.   Defendants BumbleBee, StarKist and Tri-Union or their precedent corporate parents all helped found NFI and BSB, which became loci of a conspiracy among these competitors not to compete, and to share competitive information and coordinated business strategies.  NFI itself includes a subgroup, the Tuna Council.  As explained on that organization's website: "The National Fisheries Institute's Tuna Council represents the largest processors and household names for canned and pouch tuna in the U.S. including *Bumble Bee*®, *Chicken of the Sea*® and *StarKist*®. The Tuna Council speaks for the tuna industry on numerous issues including food safety, labeling, sustainability, nutrition education and product marketing."

121.   The industry provides other opportunities for the Defendants to collude and exchange sensitive business information necessary to forming and monitoring a cartel.  For example:

No. 15-MD-2670 JLS (MMD)

a. All three Defendants participate in regional fisheries management organizations. These include the Mid-Atlantic Fisheries Council; and the Fishery Counsel of Canada.

b. All three Defendants regularly send representatives to major trade conferences including the Infofish World Tuna Trade Conference and Exchange, an Asia-Pacific region conference sponsored each year by an intergovernmental arm of the United Nations and drawing key players in the industry. The conference is in its fourteenth year.

c. Since 2009, all Defendants have participated in the ISSF, of which all three were founding members.

d. Defendants also collaborated on projects at trade and other not-for-profit associations during the relevant period, such as the "Tuna the Wonderfish" campaign of 2011-2012.

122. The "Tuna the Wonderfish" campaign was designed to combat declining sales of PSPs from early 2011 to early 2012. It was unsuccessful, but it gave Defendants ample opportunity to collude to raise and fix PSP prices. This campaign was bankrolled by the Defendants and carried out under the auspices of the Tuna Council with the support of Thai processors. In it, the Defendants teamed up for marketing purposes. Joe Tuza, Senior Vice-President of Marketing for StarKist, reportedly said that "[w]e worked together surprisingly well." He said further that the campaign, intended to increase consumption of tuna, was based on the hope that "as the water level rises . . . all boats rise with the tide," referring to the three Defendant companies. This was evidenced in a 2012 price increase in the face of falling demand.

123. Defendants Bumble Bee and Tri-Union also cooperate on seafood processing and packaging through bilateral co-packing agreements. Bumble Bee co-packs for the West Coast of the United States for Tri-Union in Bumble Bee's Santa Fe Springs, California plant while Tri-Union does the same for the East

Coast in Lyons, Georgia.   Thus, even before the proposed merger, described below, of these two companies, they were cooperating closely.  These interlocking relationships provided an excellent opportunity to collude on pricing. Collaborating at their U.S. processing facilities allowed each of these two Defendants an organic and in-house opportunity to monitor production, a key component of information exchange necessary to sustaining a long-term cartel.

124.   Defendants' representatives were in regular communication with each other during 2011 and 2012 regarding coordinating pricing and responses to their customer and consumer pressure for sustainable and environmentally improved fishing operations. These communications strongly suggest that these individuals were in communications on a regular basis prior to the communications in 2011 and 2012 and thereafter.

## C.   The PSP Market Is Conducive to Collusion

125.   The PSP market is structured and characterized in such a way as to be highly conducive to conspiracy.

126.   PSPs are commodity products which are sold to wholesale and retail stores which in turn sell to customers such as the Plaintiffs.  A very small percentage of sales are made directly to consumers. There are different varieties of PSPs, but within each type of seafood, each variety is sold in similar amounts in similar sizes with similar shelf life and in similar types of packaging. As a result, consumers such as the Plaintiffs are more likely to be influenced by price when making a purchasing decision.

127.   There are numerous barriers to entry into the PSP market. Start-up costs are very high.  Dongwon and Thai Union each are to some degree vertically integrated, Dongwon claiming at times to have the world's largest fishing fleet. The cost of processing plants is high.  Merely modernizing the processing plant in American Samoa (owned by COSI at the start of the Class Period, purchased and refitted by a nonparty and reopened in 2015) cost $70 million.   Access to

manufacturing materials, distribution channels and raw materials are all highly restricted. Defendants are able to raise prices without fear of being undercut by new entrants into the market.

128. Additionally, StarKist, COSI and Bumble Bee, as brands, have all existed for around a century. StarKist was founded in 1917. COSI was founded in 1914 as the Van Camp Seafood Company, and was once a part of Ralston Purina. Bumble Bee was founded in 1899 and was previously part of Pillsbury and later ConAgra. These three brands have had not decades but generations to build brand identities and relationships. They are known by virtually every American consumer. Any company seeking to start anew faces difficulties in lack of background, industry ties, and brand awareness.

129. Even an industry player with decades of experience faces formidable obstacles in establishing a consumer brand. Tri-Marine, a company that has sold fish to each brand for decades, now cans the Kirkland Signature brand for Costco, one of the more successful private labels. It now owns the packing plant in American Samoa previously operated by COSI. However, even with this massive investment and experience, Tri-Marine's entry has been limited to private label production, where one of the largest retail outlets lends its muscle to bring the product to market. Tri-Marine has a brand of its own, Ocean Naturals, but Ocean Naturals has struggled to find shelf space and exists as a niche environmental sustainability product with small areas of shelf space at Walmart, and is otherwise dependent upon Amazon as a retail conduit.

130. Purchasers routinely source their PSPs from one of the Defendants. As a result, Defendants dominate the United States PSPs market.

131. As stated above, Defendants control roughly 80% of the tuna market share for the United States, so almost all wholesale or retail purchasers do business with Defendants. Defendants possess significant market power to raise prices for PSPs to supra-competitive price levels in the United States.

132.   PSPs have a number of characteristics that uniquely combine to reduce customers' willingness to purchase substitute products in the face of rising prices.  PSPs are convenient high protein, low fat, shelf-stable foods that have a particular taste and historical usage.  Because of these characteristics, there are no reasonable substitutes for PSPs.  Therefore, control of the Relevant Markets by a theoretical a hypothetical monopolist would allow that monopolist to profitably increase the prices of PSPs to supra-competitive or monopoly levels

133.   A paper by Ronald A. Babula and Roger L. Corey, Jr. in the *Journal of International Fishery and Agribusiness Marketing* measured the demand coefficient of canned tuna at -0.3, a highly inelastic figure that indicates tuna is a staple food item for U.S. consumers.  This figure implies that if the makers were able to constrain supply by just 3%, they could sustainably raise prices by 10%.

134.   There are economic indications that support the conclusion that there was collusive pricing within the domestic PSPs industry.   As noted above, consumption of PSPs, both canned tuna and other PSP products, has declined over the past ten years in the United States.  The annual consumption per person of canned tuna was 3.1 lbs. in 2005, but fell to 2.3 lbs. in 2013. An article in the *Washington Post* graphically represented this decline by measuring United States annual per capita consumption from 1930 to 2010:



- 30 -

135.   But while Americans are buying less canned seafood, they are paying more for what they do buy.  The same article presented this graph, illustrating the increased prices paid for lower quantities of canned seafood (expanding the analysis beyond tuna) by American purchasers:



136.   Given this decline in consumption of PSPs, one would expect rational businesses to reduce the prices for packaged seafood products, but that did not happen. The following chart, taken from data available at the Bureau of Labor Statistics, depicts seasonally adjusted U.S. city average prices for shelf stable fish and seafood from January 2005 through the first part of 2015, with the period 1982-84 used as a baseline.

137.   As shown below, the average U.S. price for PSPs increased dramatically from 2008 to the early part of 2015 – and did so even though annual consumer demand for PSPs in the United States was falling.





138.   Changes in overall tuna catch do not explain the price increase. Supply of tuna has expanded steadily worldwide since the early 1960s.  The use of purse-seine netting, in which a net is extended under an entire school and hauled upwards, as described above, has increased the availability of skipjack tuna since the 1970s, so that Skipjack has come to represent more than 70% of the Defendants' tuna products on U.S. store shelves.  The global tuna catch, which was less than a million metric tons per year in 1961, is now over 4.5 million tons annually.  Catch per vessel has roughly doubled since the mid-1980s, and the global tuna fishing fleet is larger today than it was in the mid-1980s.   No constriction in global tuna catch explains the rising prices charged by Defendants.

139.   Nor do raw material costs adequately explain these price increases. While the cost per metric ton of skipjack tuna rose in 2012 and early 2013, it declined precipitously thereafter. According to the April 19, 2015 issue of *Tuna Market Intelligence*, "[a]s recently as June last year, skipjack was selling at US$1,800 in Bangkok. But the price has since plummeted to US$1,000 since the beginning of the year, with industry officials anticipating further reductions in price this year." Tuna exporters in Ecuador noted in January of 2015 that the price per metric ton had declined from $1,400 to $800. And the United Nations Food &

Agriculture Organization noted in its May 2015 "Food Outlook" biannual report that tuna prices had dropped considerably in 2014: "tuna prices declined significantly due to excess supply, with frozen skipjack prices hitting a 6-year low." Despite these drastically declining raw material costs, Defendants did not decrease prices and try to obtain more market share.

140. In fact, while there have been periodic increases in fish cost, from 2000 to 2015, fish cost as a proportion of retail price of canned tuna has actually decreased. In 2000, the price of tuna accounted for 37% of the retail price of the canned product. By 2015, tuna price was only 31% of the canned tuna price – meaning that while the price of skipjack tuna has increased, the price of retail canned tuna in the U.S. has risen even faster, and at a time when U.S. consumption is falling due to changing consumer preferences.



141. The spread between the price of frozen skipjack tuna and the price of

canned tuna visibly widens, particularly from 2008 forward.

142.   Thai Union Frozen Products' Annual Reports discuss this situation. In its 2013 Annual Report, Thai Union Frozen Products stated that "our branded tuna business showed resilient growth from 2012 thanks to the price adjustments in Europe and *more rational market competition in the US*." (Emphasis added). It stated in the same report that its future profit margins would depend upon "*[r]easonable US canned tuna competition without unnecessary price*." (Emphasis added). In its 2014 Annual Report, Thai Union Frozen Products explicitly noted that this goal had been achieved. It stated: "*Thanks to reduced price competition (absence of cut throat pricing) and generally lower fish cost Chicken of the Sea, our own tuna brands marked a great year of increased profitability. Despite minimal sales growth in the U.S., competitive inventory cost and reasonable market conditions helped lift the margin of our U.S. brand.*" (Emphases added).

143.   The same report went on to note that "sensible market competition, supported by lower raw material costs, made it possible for our own tuna brands to expand their margins through the year despite limited volume growth." (Emphasis added). It indicated that future revenue growth would again be dependent upon "*[r]easonable US canned tuna market competition that focuses more on consumption creation than market share alone*." (Emphasis added). The "reasonable market conditions," "more rational market competition," "sensible market competition," avoidance of battles for market share and "absence of cut throat pricing" that the reports note could only have come about through collusion. It would have been against the individual self-interest of each Defendant to eschew increasing market share during this period by lowering prices.

**D.     Pretextual Explanations**

144.   Each of the Defendants has offered explanations for price increases that are pretextual.

145.   During the period December 2011 through January 2012, for example,

- 34 -

as described above, the three Defendants executed price increases to their U.S. customers.   In June, 2011, COSI explained these increases to its customers – wholesalers and grocery chains – as arising from persistent global increases in fish prices. StarKist, in July 2011, attributed increases to "continuously rising fish costs."  In January, 2012, COSI again attributed rising prices to "high fish prices". Bumble Bee's Scott Cameron publicly stated on March 30, 2012 that "unforecasted elements" would drive price increases for the second half of 2012, and in April, 2013, Bumble Bee projected an increase of $120 to $200 per metric ton of skipjack tuna to explain rising prices.   Though they offered facially innocuous explanations, the price increases were in fact coordinated between three competing brands.

### E.     The Department of Justice Investigates Defendants

146.   The San Francisco office of the Antitrust Division of the United States Department of Justice ("DOJ") is currently investigating anticompetitive practices in the PSP industry. A grand jury has been convened. Two Defendants, Tri-Union and Bumble Bee, have publicly confirmed receipt of grand jury subpoenas.

147.   On July 23, 2015, Thai Union confirmed that "Tri-Union Seafoods LLC, operating in the United States under the brand Chicken of the Sea ha[d] received a subpoena requiring the production of relevant information to the DOJ" and that "Chicken of the Sea is cooperating fully with the investigation."

148.   On July 17, 2015, Thai Union announced it suspended a planned public stock offering that it had planned to use to finance acquisition of Bumble Bee. Thai Union stated that it wanted "additional clarity" on the investigation before proceeding with the offering.  Thai Union has notified the United States Securities and Exchange Commission ("SEC") of the suspension.  Thai Union has since also announced that the planned acquisition of Bumble Bee will not proceed given the merger investigation that is part of the DOJ investigation of anticompetitive practices in the PSP industry.

149.   The publication *Global Competition Review* has reported that it "is highly likely that something produced in the [Tri-Union and Bumble Bee] merger investigation sparked this investigation touching the industry as a whole rather than just the parties to the deal," and "early information indicates the demand for information came from a separate section of the antitrust division, not one tasked with analyzing deals."

150.   On July 23, 2015, Bumble Bee acknowledged receipt of a grand jury subpoena. Bumble Bee stated, "The Company did receive a grand jury subpoena relating to a US Department of Justice investigation into potential antitrust violations in the packaged seafood industry. The Company is cooperating fully with the investigation."

151.   Based on the public statements about the currently pending DOJ investigation, it appears that StarKist received a subpoena as well, and that the DOJ's investigation extends to the entire domestic PSP sector.  StarKist has not announced whether or not it has received a grand jury subpoena.

152.   The fact that these companies received subpoenas from a federal grand jury is significant, as is reflected in Chapter 3 of the 2014 edition of the DOJ's       Antitrust       Division       Manual,       *available       at* http://www.justice.gov/atr/public/divisionmanual/chapter3.pdf. Section F.1 of that chapter notes that "staff should consider carefully the likelihood that, if a grand jury investigation developed evidence confirming the alleged anticompetitive conduct, the Division would proceed with a criminal prosecution." *Id.* at lll-82. The staff request needs to be approved by the relevant field chief and is then sent to the Antitrust Criminal Enforcement Division. *Id.* "The DAAG [Deputy Assistant Attorney General] for Operations, the Criminal DAAG, and the Director of Criminal Enforcement will make a recommendation to the Assistant Attorney General. If approved by the Assistant Attorney General, letters of authority are issued for all attorneys who will participate in the grand jury investigation." *Id.* at

111-83. "The investigation should be conducted by a grand jury in a judicial district where venue lies for the offense, such as a district from or to which price-fixed sales were made or where conspiratorial communications occurred." *Id.*

153. In this case, the seriousness of the ongoing Grand Jury investigation is no secret. The DOJ made a formal motion for intervention in this action, which was not opposed and has since been granted by this Court. The DOJ is now an intervenor in this action. The DOJ had three attorneys in attendance at the first status conference on January 20, 2016. Since then, the parties and the Government have negotiated and filed a partial stay agreement that expressly provides for certain discovery while preventing discovery that would infringe upon the Grand Jury's investigation.

154. It has been publicly reported that one Defendant has applied for and been accepted into the DOJ's corporate leniency program under the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, §213(b), 118 Stat. 665, 666 (codified as amended at 15 U.S.C. § 1 note) ("ACPERA"). This Defendant's admittance into the ACPERA leniency program is specifically related to Defendants' price-fixing activities and other anticompetitive conduct in violation of Section 1 of The Sherman Act in the United States PSP market. At least one news service has identified a single brand as the leniency applicant. The news service MLex Market Insight has reported that the amnesty applicant has applied for protection the Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, tit. II, 118 Stat. 661 (2004) ("ACPERA"), Part B. Such protection requires that the amnesty applicant admit the commission of a criminal act.

## F. Plaintiffs Suffered Antitrust Injury

155. Defendants' anticompetitive conduct had the following effects, among others:

a. Price competition has been restrained or eliminated with respect to PSPs sold in the United States;

b. The prices of PSPs sold in the United States have been fixed, raised, maintained, or stabilized at artificially inflated levels;

c. Indirect purchasers of PSPs have been deprived of free and open competition; and

d. Indirect purchasers of PSPs paid artificially inflated prices.

156. By reason of the alleged violations of the antitrust laws and other laws alleged herein, Plaintiffs and the members of the Classes have sustained injury to their businesses or property, having paid higher prices for PSPs than they would have paid in the absence of Defendants' illegal conduct, and, as a result, have suffered damages in an amount presently undetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

## FRAUDULENT CONCEALMENT AND THE TOLLING OF THE STATUTE OF LIMITATIONS

157. Throughout the Class Period, Defendants affirmatively and fraudulently concealed their unlawful conduct from discovery by Plaintiffs.

158. Plaintiffs did not discover, nor could have discovered through the exercise of due diligence, the existence of the conspiracy and Defendants' and their co-conspirators' involvement in the conspiracy before July 23, 2015, when the DOJ's investigation became public.

159. Because the conspiracy was actively concealed until July 23, 2015, Plaintiffs were unaware of Defendants' and their co-conspirators' unlawful conduct. Until that time, Plaintiffs were unaware that they were paying artificially inflated prices for PSPs.

160. The affirmative acts of Defendants and their co-conspirators, including acts in furtherance of the conspiracy, were wrongfully concealed and conducted in a manner that precluded detection.

- 38 -

161.   Defendants and their co-conspirators agreed among themselves not to discuss publicly or otherwise reveal the nature and substance of the acts and communications in furtherance of their illegal conspiracy.

162.   Defendants and their co-conspirators met and communicated secretly concerning the pricing and marketing of PSPs so as to avoid detection.

163.   Plaintiffs could not have discovered the alleged conspiracy at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques employed by Defendants and their co-conspirators to avoid the detection of, and fraudulently conceal, their contract, conspiracy, or combination. Defendants' conspiracy was fraudulently concealed by various means and methods, including, but not limited to, secret meetings, misrepresentations to customers, and surreptitious communications among Defendants and their co-conspirators via telephone or in in-person meetings.

164.   Because the alleged conspiracy was affirmatively concealed by Defendants and their co-conspirators until July 23, 2015, Plaintiffs had no knowledge of the alleged conspiracy or any facts or information that would have caused a reasonably diligent person to investigate whether a conspiracy existed.

165.   None of the facts or information available to Plaintiffs prior to July 23, 2015, if investigated with reasonable diligence, could or would have led to the discovery of the conspiracy prior to July 23, 2015.

166.   As a result of Defendants' and their co-conspirators' fraudulent concealment of the conspiracy, the running of any statutes of limitations has been tolled with respect to Plaintiffs' claims of anticompetitive or unfair business practice conduct alleged in this Complaint.

///
///
///
///

# CAUSES OF ACTION

## FIRST CLAIM FOR RELIEF

### Violation of Section 1 of the Sherman Act, 15 U.S.C. § 1
### (By All Plaintiffs On Behalf of The Nationwide Sherman Act Class)

167.   Plaintiffs repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

168.   Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy to artificially fix, raise, maintain and/or stabilize the prices of PSPs within the United States, its territories, and the District of Columbia in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

169.   Defendants' anticompetitive acts were intentionally directed at the United States market for PSPs and had a substantial and foreseeable effect on interstate commerce by raising and fixing PSP  prices throughout the United States.

170.   The contract, combination or conspiracy had the following direct, substantial, and reasonably foreseeable effects upon commerce in the United States and upon import commerce:

        a.    prices charged to, and paid by, Plaintiffs and members of the Classes were artificially raised, fixed, maintained, or stabilized at supra-competitive levels;

        b.    Plaintiffs and members of the Nationwide Sherman Act Class have been deprived of the benefits of free, open and unrestricted competition in the PSP market in the United States; and

        c.    competition in establishing prices paid for PSPs has been unlawfully restrained, suppressed, or eliminated.

171.   Defendants and their co-conspirators' anticompetitive activities have directly and proximately caused injury to Plaintiffs and members of the Nationwide Sherman Act Class in the United States.

No. 15-MD-2670 JLS (MMD)

172.   As a direct, foreseeable, and proximate result of Defendants' anticompetitive conduct, Plaintiffs and the Nationwide Sherman Act Class have been injured in their business and property and are threatened with further injury. Accordingly, Plaintiffs and the Nationwide Sherman Act Class seek injunctive relief.

## SECOND CLAIM FOR RELIEF

**Violation of Section 16720 of the**
**California Business and Professions Code ("The Cartwright Act")**
**(By All Plaintiffs On Behalf of The Nationwide Cartwright Act Class)**

173.   Plaintiffs repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

174.   The violations of federal antitrust law set forth above also constitute violations of section 16720 of California Business and Professions Code.

175.   During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce and other anticompetitive conduct alleged above in violation of California Business and Professions Code section 16700, *et seq.*

176.   Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of California Business and Professions Code section 16700, *et seq.*

177.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Nationwide Cartwright Act Class have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct.  As a result of Defendants' violation of section 16720 of California Business and Professions Code, Plaintiffs and members of the Nationwide Cartwright Act Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 16750(a) of California Business and Professions Code.

## **THIRD CLAIM FOR RELIEF**

**Violations of California Business and Professions Code § 17200*, et seq.* (the "UCL")**

**(By All Plaintiffs On Behalf of The Nationwide Cartwright Act Class)**

178.   Plaintiffs repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

179.   The violations of federal antitrust law set forth above also constitute violations of section 17200*, et seq.* of California Business and Professions Code, also known as the Unfair Competition Law (the "UCL").

180.   Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

181.   This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

182.   The Defendants' conduct as alleged herein violated the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; and (2) the violations of section 16720*, et seq.*, of California Business and Professions Code, set forth above.

183.   Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of section 16720*, et seq.*, of California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

184.   Plaintiffs and members of the Nationwide Cartwright Act Class are

No. 15-MD-2670 JLS (MMD)

1  entitled to full restitution and/or disgorgement of all revenues, earnings, profits,

2  compensation, and benefits that may have been obtained by Defendants as a result

3  of such business acts or practices.

4        185.   The effects of the illegal conduct alleged herein are continuing and

5  while the conspiracy has ended, the effects of the conspiracy continue to harm

6  Plaintiffs and members of The Nationwide Cartwright Act Class.

7        186.   The unlawful and unfair business practices of Defendants, and each of

8  them, as described above, have caused and continue to cause Plaintiffs and the

9  members of the Nationwide Cartwright Act Class to pay supra-competitive and

10 artificially-inflated prices for PSPs sold in the United States. Plaintiffs and the

11 members of the Nationwide Cartwright Act Class suffered injury in fact and lost

12 money or property as a result of such unfair competition.

13       187.   As alleged in this Complaint, Defendants and their co-conspirators

14 have been unjustly enriched as a result of their wrongful conduct and by

15 Defendants' unfair competition. Plaintiffs and the members of the Nationwide

16 Cartwright Act Class are accordingly entitled to equitable relief including

17 restitution and/or disgorgement of all revenues, earnings, profits, compensation,

18 and benefits that may have been obtained by Defendants as a result of such

19 business practices, pursuant to California Business and Professions Code sections

20 17203 and 17204.

21                  VIOLATIONS OF STATE ANTITRUST LAW

22                          **(Against All Defendants)**

23       188.   The following Fourth through Twenty-ninth Claims for Relief are

24 pleaded under the antitrust laws of each State or jurisdiction identified below, on

25 behalf of the indicated Class.

26 ///

27 ///

28 ///

**FOURTH CLAIM FOR RELIEF**
**Violation of Arizona's Uniform State Antitrust Act,**
**Ariz. Rev. Stat. § 44-1401, *et seq.***
**(By Plaintiffs Jonathan Rizzo and Tina Grant**
**On Behalf of the Arizona Class)**

189.   Plaintiffs Jonathan Rizzo and Tina Grant, on behalf of themselves and the Arizona Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

190.   By reason of the conduct alleged herein, Defendants have violated Arizona Rev. Stat. § 44-1401, *et seq.*

191.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Arizona.

192.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Arizona, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

193.   Defendants' violations of Arizona law were flagrant.

194.   Defendants' unlawful conduct substantially affected Arizona's trade and commerce.

195.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and members of the Arizona Class have been injured in their business or property and are threatened with further injury.

196.   By reason of the foregoing, Plaintiffs and members of the Arizona Class are entitled to seek all forms of relief available under Arizona Revised Stat. § 44-1401, *et seq.*

///

///

///

- 44 -

**FIFTH CLAIM FOR RELIEF**
**Violation of the Arkansas Unfair Practices Act,**
**Ark. Code Ann. § 4-75-201, *et seq*. and § 4-75-301, *et seq*.**
**(By Plaintiff Joseph A. Langston On Behalf of the Arkansas Class)**

197.   Plaintiff Joseph A. Langston, on behalf of himself and the Arkansas Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

198.   By reason of the conduct alleged herein, Defendants have violated Ark. Code Ann. § 4-75-201, *et seq*. and § 4-75-301, *et seq*.

199.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Arkansas.

200.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Arkansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

201.   Defendants' violations of Arkansas law were flagrant.

202.   Defendants' unlawful conduct substantially affected Arkansas's trade and commerce.

203.   Defendants' unlawful conduct caused injury, and as a result, Plaintiff and the members of the Arkansas Class have been damaged in their business or property and are threatened with further damages.

204.   By reason of the foregoing, Plaintiff and members of the Arkansas Class is entitled to seek all forms of relief, including treble damages, reasonable attorney's fees and costs, and injunctive relief available under Ark. Code Ann. § 4-75-211.

///

///

- 45 -

## **SIXTH CLAIM FOR RELIEF**

### **Violation of California's Cartwright Act, Cal. Bus. & Prof. Code § 16700, *et seq.***
### **(By Plaintiffs Mary Hudson, Marissa Jacobus, Michael Juetten, Rick Musgrave, and David Ton On Behalf of the California Class)**

205.  Plaintiffs Mary Hudson, Marissa Jacobus, Michael Juetten, Rick Musgrave, and David Ton, for themselves and on behalf of the California Class, repeat and reallege each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

206.  The California Business & Professions Code generally governs conduct of corporate entities. The Cartwright Act, Cal. Bus. & Prof. Code §§ 16700-16770, governs antitrust violations in California.

207.  California policy is that "vigorous representation and protection of consumer interests are essential to the fair and efficient functioning of a free enterprise market economy," including by fostering competition in the marketplace. Cal. Bus. & Prof. Code § 301.

208.  Under the Cartwright Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Cal. Bus. & Prof. Code § 16750(a).

209.  A trust in California is any combination intended for various purposes, including but not limited to creating or carrying out restrictions in trade or commerce, limiting or reducing the production or increasing the price of merchandise, or preventing competition in the market for a commodity. Cal. Bus. & Prof. Code § 16720. Every trust in California is unlawful except as provided by the Code. *Id.* at § 16726.

210.  Plaintiffs Mary Hudson, Marissa Jacobus, Michael Juetten, Rick Musgrave, and David Ton purchased PSPs within the State of California during the Class Period.  But for Defendants' conduct set forth herein, the price per unit of

- 46 -

PSPs would have been lower, in an amount to be determined at trial.

211. Defendants enacted a combination of capital, skill or acts for the purpose of creating and carrying out restrictions in trade or commerce, in violation of Cal. Bus. & Prof. Code § 16700, *et seq.*

212. Plaintiffs and members of the Class were injured in their business or property, with respect to purchases of PSPs in California and are entitled to all forms of relief, including recovery of treble damages, interest, and injunctive relief, plus reasonable attorneys' fees and costs.

## SEVENTH CLAIM FOR RELIEF
### Violation of the District of Columbia Antitrust Act,
### D.C. Code § 28-4501, *et seq.*
### (By Plaintiff Paul Berger On Behalf of the District of Columbia Class)

213. Plaintiff Paul Berger, on behalf of himself and on behalf of the District of Columbia Class, repeats and realleges each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

214. The policy of District of Columbia Code, Title 28, Chapter 45 (Restraints of Trade) is to "promote the unhampered freedom of commerce and industry throughout the District of Columbia by prohibiting restraints of trade and monopolistic practices."

215. Plaintiff Paul Berger purchased PSPs within the District of Columbia during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

216. Under District of Columbia law, indirect purchasers have standing to maintain an action under the antitrust provisions of the D.C. Code based on the facts alleged in this Complaint, because "any indirect purchaser in the chain of manufacture, production or distribution of goods…shall be deemed to be injured within the meaning of this chapter." D.C. Code 28-4509(a).

217. Defendants contracted, combined or conspired to act in restraint of

trade within the District of Columbia, and monopolized or attempted to monopolize the market for PSPs within the District of Columbia, in violation of D.C. Code § 28-4501, *et seq.*

218. Plaintiff and members of the Class were injured with respect to purchases of PSPs in the District of Columbia and are entitled to all forms of relief, including actual damages, treble damages, and interest, reasonable attorneys' fees and costs.

### EIGHTH CLAIM FOR RELIEF
**Violation of the Guam Antitrust Law,
Guam Code Ann. tit. 9 § 69.10, *et seq.*
(By Plaintiffs Amy Jackson and Joelyna A. San Agustin
On Behalf of the Guam Class)**

219. Plaintiffs Amy Jackson and Joelyna San Agustin, on behalf of themselves and the Guam Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

220. By reason of the conduct alleged herein, Defendants have violated Guam Code Ann. tit. 9 § 69.10, *et seq.*

221. Plaintiffs Amy Jackson and Joelyna San Agustin purchased PSPs within the Territory of Guam during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

222. Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Guam.

223. Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Guam, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

224. Defendants' conduct was an unfair method of competition, and an

No. 15-MD-2670 JLS (MMD)

unfair or deceptive act or practice within the conduct of commerce within the State of Guam.

225.   Defendants' unlawful conduct substantially affected Guam's trade and commerce.

226.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the Guam Class have been injured in their business or property and are threatened with further injury.

227.   By reason of the foregoing, the Plaintiffs and members of the Guam Class is entitled to seek all forms of relief, including treble damages and reasonable attorney's fees and costs under Guam.

### NINTH CLAIM FOR RELIEF
**Violation of the Illinois Antitrust Act,**
**740 Ill. Comp. Stat. Ann. 10/3(1)*, et seq.***
**(By Plaintiffs Jessica Breitbach, Sally Crnkovich, Elizabeth Davis-Berg, Amy Joseph, and Elizabeth Twitchell On Behalf of the Illinois Class)**

228.   Plaintiffs Jessica Breitbach, Sally Crnkovich, Elizabeth Davis-Berg, Amy Joseph, and Elizabeth Twitchell, on behalf of themselves and the Illinois Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

229.   The Illinois Antitrust Act, 740 ILCS 10/1, *et seq.*, aims "to promote the unhampered growth of commerce and industry throughout the State by prohibiting restraints of trade which are secured through monopolistic or oligarchic practices and which act or tend to act to decrease competition between and among persons engaged in commerce and trade . . . ." 740 ILCS 10/2.

230.   Plaintiffs Jessica Breitbach, Sally Crnkovich, Elizabeth Davis-Berg, Amy Joseph, and Elizabeth Twitchell purchased PSPs within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

231.   Under the Illinois Antitrust Act, indirect purchasers have standing to

maintain an action for damages based on the facts alleged in this Complaint. 740 ILCS 10/7(2).

232.   Defendants made contracts or engaged in a combination or conspiracy with each other, though they would have been competitors but for their prior agreement, for the purpose of fixing, controlling or maintaining prices for PSPs sold, and/or for allocating customers or markets for PSPs within the intrastate commerce of Illinois.

233.   Defendants further unreasonably restrained trade or commerce and established, maintained or attempted to acquire monopoly power over the market for PSPs in Illinois for the purpose of excluding competition, in violation of 740 ILCS 10/1, *et seq.*

234.   Plaintiffs and members of the Class were injured with respect to purchases of PSPs in Illinois and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees and costs.

<u>**TENTH CLAIM FOR RELIEF**</u>
**Violation of the Iowa Competition Law**
**Iowa Code § 553.1, *et seq.***
**(By Plaintiffs Carla Lown and Jennifer A. Nelson**
**On Behalf of the Iowa Class)**

235.   Plaintiffs Carla Lown and Jennifer A. Nelson, on behalf of themselves and the Iowa Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

236.   The Iowa Competition Law aims to "prohibit[] restraint of economic activity and monopolistic practices." Iowa Code § 553.2.

237.   Plaintiffs Carla Lown and Jennifer A. Nelson purchased PSPs within the State of Iowa during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

- 50 -

238.   Defendants contracted, combined or conspired to restrain or monopolize trade in the market for PSPs, and attempted to establish or did in fact establish a monopoly for the purpose of excluding competition or controlling, fixing or maintaining prices for PSPs, in violation of Iowa Code § 553.1, *et seq.*

239.   Plaintiffs and members of the Iowa Class were injured with respect to purchases of PSPs in Iowa, and are entitled to all forms of relief, including actual damages, exemplary damages for willful conduct, reasonable attorneys' fees and costs, and injunctive relief.

### ELEVENTH CLAIM FOR RELIEF
**Violation of the Kansas Restraint of Trade Act**
**Kan. Stat. Ann. § 50-101, *et seq.***
**(By Plaintiffs Brian Depperschmidt and Lisa Hall**
**On Behalf of the Kansas Class)**

240.   Plaintiffs Brian Depperschmidt and Lisa Hall, on behalf of themselves and the Kansas Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

241.   The Kansas Restraint of Trade Act aims to prohibit practices which, *inter alia*, "tend to prevent full and free competition in the importation, transportation or sale of articles imported into this state." Kan. Stat. Ann. § 50-112.

242.   Plaintiffs Brian Depperschmidt and Lisa Hall purchased PSPs within the State of Kansas during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

243.   Under the Kansas Restraint of Trade Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Kan. Stat. Ann § 50-161(b).

244.   Defendants combined capital, skill or acts for the purposes of creating restrictions in trade or commerce of PSPs, increasing the price of PSPs, preventing

- 51 -

competition in the sale of PSPs, or binding themselves not to sell PSPs, in a manner that established the price of PSPs and precluded free and unrestricted competition among themselves in the sale of PSPs, in violation of Kan. Stat. Ann. § 50-101, *et seq.*

245.   Plaintiffs and members of the Class were injured with respect to purchases of PSPs in Kansas and are entitled to all forms of relief, including actual damages, reasonable attorneys' fees and costs, and injunctive relief.

## TWELFTH CLAIM FOR RELIEF
### Violation of the Maine's Antitrust Statute,
### Me. Rev. Stat. Ann. tit. 10 § 1101, *et seq.*
### (By Plaintiffs Greg Stearns and Thomas E. Willoughby III
### On Behalf of the Maine Class)

246.   Plaintiffs Greg Stearns and Thomas E. Willoughby III, on behalf of themselves and the Maine Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

247.   Part 3 of Title 10 the Maine Revised Statutes generally governs regulation of trade in Maine. Chapter 201 thereof governs monopolies and profiteering, generally prohibiting contracts in restraint of trade and conspiracies to monopolize trade. Me. Rev. Stat. Ann. Tit. 10, §§ 1101-02.

248.   Plaintiffs Thomas E. Willoughby III and Greg Stearns purchased PSPs within the State of Maine during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

249.   Under Maine law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Me. Rev. Stat. Ann. Tit. 10, § 1104(1).

250.   Defendants contracted, combined or conspired in restraint of trade or commerce of PSPs within the intrastate commerce of Maine, and monopolized or attempted to monopolize the trade or commerce of PSPs within the intrastate

commerce of Maine, in violation of Me. Rev. Stat. Ann. Tit. 10, § 1101, *et seq.*

251.  Plaintiffs and members of the Class were injured with respect to purchases of PSPs in Maine and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' and experts' fees and costs.

## THIRTEENTH CLAIM FOR RELIEF
### Violation of the Michigan Antitrust Reform Act
### Mich. Comp. Laws § 445.771, *et seq.*
### (By Plaintiffs Louise Adams, Jessica Decker, and Barbara Olson
### On Behalf of the Michigan Class)

252.  Plaintiffs Louise Adams, Jessica Decker, and Barbara Olson, on behalf of themselves and the Michigan Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

253.  The Michigan Antitrust Reform Act aims "to prohibit contracts, combinations, and conspiracies in restraint of trade or commerce…to prohibit monopolies and attempts to monopolize trade or commerce…[and] to provide remedies, fines, and penalties for violations of this act." Mich. Act 274 of 1984.

254.  Plaintiffs Louise Adams, Jessica Decker, and Barbara Olson purchased PSPs within the State of Michigan during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

255.  Under the Michigan Antitrust Reform Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Mich. Comp. Laws. § 452.778(2).

256.  Defendants contracted, combined or conspired to restrain or monopolize trade or commerce in the market for PSPs, in violation of Mich. Comp. Laws § 445.772, *et seq.*

257.  Plaintiffs and members of the Class were injured with respect to purchases of PSPs in Michigan and are entitled to all forms of relief, including

- 53 -

actual damages, treble damages for flagrant violations, interest, costs, reasonable attorneys' fees, and injunctive or other appropriate equitable relief.

## FOURTEENTH CLAIM FOR RELIEF
### Violation of the Minnesota Antitrust Law,
### Minn. Stat. § 325D.49, *et seq.*
### (By Plaintiff Laura Childs On Behalf of the Minnesota Class)

258.   Plaintiff Laura Childs, on behalf of herself and the Minnesota Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

259.   The Minnesota Antitrust Law of 1971 aims to prohibit any contract, combination or conspiracy when any part thereof was created, formed, or entered into in Minnesota; any contract, combination or conspiracy, wherever created, formed or entered into; any establishment, maintenance or use of monopoly power; and any attempt to establish, maintain or use monopoly power, whenever any of these affect Minnesota trade or commerce.

260.   Plaintiff Laura Childs purchased PSPs within the State of Minnesota during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

261.   Under the Minnesota Antitrust Act of 1971, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. Minn. Stat. § 325D.56.

262.   Defendants contracted, combined or conspired in unreasonable restraint of trade or commerce in the market for PSPs within the intrastate commerce of and outside of Minnesota; established, maintained, used or attempted to establish, maintain or use monopoly power over the trade or commerce in the market for PSPs within the intrastate commerce of and outside of Minnesota; and fixed prices and allocated markets for PSPs within the intrastate commerce of and outside of Minnesota, in violation of Minn. Stat. § 325D.49, *et seq.*

263.   Plaintiff and members of the Class were injured with respect to purchases of PSPs in Minnesota and are entitled to all forms of relief, including actual damages, treble damages, costs and disbursements, reasonable attorneys' fees, and injunctive relief necessary to prevent and restrain violations hereof.

### FIFTEENTH CLAIM FOR RELIEF
**Violation of the Mississippi Antitrust Statute,**
**Miss. Code Ann. § 75-21-1, *et seq.***
**(By Plaintiff Christopher Todd On Behalf of the Mississippi Class)**

264.   Plaintiff Christopher Todd, on behalf of himself and the Mississippi Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

265.   Title 75 of the Mississippi Code regulates trade, commerce and investments. Chapter 21 thereof generally prohibits trusts and combines in restraint or hindrance of trade, with the aim that "trusts and combines may be suppressed, and the benefits arising from competition in business [are] preserved" to Mississippians. Miss. Code Ann. § 75-21-39.

266.   Trusts are combinations, contracts, understandings or agreements, express or implied, when inimical to the public welfare and with the effect of, *inter alia*, restraining trade, increasing the price or output of a commodity, or hindering competition in the production or sale of a commodity. Miss. Code Ann. § 75-21-1.

267.   Plaintiff Christopher Todd purchased PSPs within the State of Mississippi during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

268.   Under Mississippi law, indirect purchasers have standing to maintain an action under the antitrust provisions of the Mississippi Code based on the facts alleged in this Complaint. Miss. Code Ann. § 75-21-9.

269.   Defendants combined, contracted, understood and agreed in the

- 55 -

market for PSPs, in a manner inimical to public welfare, with the effect of restraining trade, increasing the price of PSPs and hindering competition in the sale of PSPs, in violation of Miss. Code Ann. § 75-21-1(a), *et seq*.

270.   Defendants monopolized or attempted to monopolize the production, control or sale of PSPs, in violation of Miss. Code Ann. § 75-21-3, *et seq.*

271.   Defendants' PSPs are sold in hundreds of grocery stores, markets, and warehouse clubs throughout the State of Mississippi.  During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

272.   Plaintiff and members of the Class were injured with respect to purchases of PSPs in Mississippi and are entitled to all forms of relief, including actual damages and a penalty of $500 per instance of injury.

### SIXTEENTH CLAIM FOR RELIEF
**Violation of the Missouri Merchandising Practices Act,**
**Mo. Ann. Stat. § 407.010, *et seq.***
**(By Plaintiff Rebecca Lee Simoens On Behalf of the Missouri Class)**

273.   Plaintiff Rebecca Lee Simoens on behalf of herself and the Missouri Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

274.   Chapter 407 of the Missouri Merchandising Practices Act (the "MMPA") generally governs unlawful business practices, including antitrust violations such as restraints of trade and monopolization.

275.   Plaintiff purchased PSPs within the State of Missouri during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

276.   Under Missouri law, indirect purchasers have standing to maintain an action under the MMPA based on the facts alleged in this Complaint.  *Gibbons v. J. Nuckolls, Inc*., 216 S.W.3d 667, 669 (Mo. 2007).

277.   Defendants contracted, combined or conspired in restraint of trade or

commerce of PSPs within the intrastate commerce of Missouri, and monopolized or attempted to monopolize the market for PSPs within the intrastate commerce of Missouri by possessing monopoly power in the market and willfully maintaining that power through agreements to fix prices, allocate markets and otherwise control trade, in violation of Mo. Ann. Stat. § 407.010, *et seq*.

278.   Plaintiff and members of the Missouri Class were injured with respect to purchases of PSPs in Missouri and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

## SEVENTEENTH CLAIM FOR RELIEF
### Violation of the Nebraska Junkin Act,
### Neb. Rev. Stat. § 59-801, *et seq.*,
### (By Plaintiffs Melissa Bowman and Barbara Buenning On Behalf of the Nebraska Class)

279.   Plaintiff Melissa Bowman and Barbara Buenning, on behalf of themselves and the Nebraska Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

280.   Chapter 59 of the Nebraska Revised Statute generally governs business and trade practices. Sections 801 through 831 thereof, known as the Junkin Act, prohibit antitrust violations such as restraints of trade and monopolization.

281.   Plaintiffs Melissa Bowman and Barbara Buenning purchased PSPs within the State of Nebraska during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

282.   Under Nebraska law, indirect purchasers have standing to maintain an action under the Junkin Act based on the facts alleged in this Complaint. Neb. Rev.

- 57 -

Stat. § 59-821.

283.   Defendants contracted, combined or conspired in restraint of trade or commerce of PSPs within the intrastate commerce of Nebraska, and monopolized or attempted to monopolize the market for PSPs within the intrastate commerce of Nebraska by possessing monopoly power in the market and willfully maintaining that power through agreements to fix prices, allocate markets and otherwise control trade, in violation of Neb. Rev. Stat. § 59-801, *et seq.*

284.   Plaintiff and members of the Class were injured with respect to purchases of PSPs in Nebraska and are entitled to all forms of relief, including actual damages or liquidated damages in an amount which bears a reasonable relation to the actual damages which have been sustained, as well as reasonable attorneys' fees, costs, and injunctive relief.

## EIGHTEENTH CLAIM FOR RELIEF
### Violation of the Nevada Unfair Trade Practices Act,
### Nev. Rev. Stat. § 598A.010, *et seq.*
### (By Plaintiffs Nay Alidad, Dwayne Kennedy, and Nancy Stiller
### On Behalf of the Nevada Class)

285.   Plaintiffs Nay Alidad, Dwayne Kennedy, and Nancy Stiller, on behalf of themselves and the Nevada Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

286.   The Nevada Unfair Trade Practice Act ("NUTPA") states that "free, open and competitive production and sale of commodities…is necessary to the economic well-being of the citizens of the State of Nevada." Nev. Rev. Stat. Ann. § 598A.030(1).

287.   The policy of NUTPA is to prohibit acts in restraint of trade or commerce, to preserve and protect the free, open and competitive market, and to penalize all persons engaged in anticompetitive practices. Nev. Rev. Stat. Ann. § 598A.030(2). Such acts include, *inter alia*, price fixing, division of markets,

allocation of customers, and monopolization of trade. Nev. Rev. Stat. Ann. § 598A.060.

288.   Plaintiffs Nay Alidad, Dwayne Kennedy, and Nancy Stiller purchased PSPs within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

289.   Under Nevada law, indirect purchasers have standing to maintain an action under NUTPA based on the facts alleged in this Complaint. Nev. Rev. Stat. Ann. §598A.210(2).

290.   Defendants fixed prices by agreeing to establish prices for PSPs in Nevada, divided Nevada markets, allocated Nevada customers, and monopolized or attempted monopolize trade or commerce of PSPs within the intrastate commerce of Nevada, constituting a contract, combination or conspiracy in restraint of trade in violation of Nev. Rev. Stat. Ann. § 598A, *et seq.*

291.   Plaintiffs and members of the Class were injured with respect to purchases of PSPs in Nevada in that at least thousands of sales of Defendants' PSPs took place in Nevada, purchased by Nevada consumers at supra-competitive prices caused by Defendants' conduct.

292.   Accordingly, Plaintiffs and members of the Nevada Class are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

293.   In accordance with the requirements of § 598A.210(3), simultaneous notice of this action was mailed to the Nevada Attorney General by Plaintiffs Nay Alidad and Nancy Stiller.

///
///
///
///

## NINETEENTH CLAIM FOR RELIEF
### Violation of New Hampshire's Antitrust Statute,
### N.H. Rev. Stat. Ann. tit. XXXI, § 356, *et seq.*
### (By Plaintiff Jody Cooper On Behalf of the New Hampshire Class)

294.  Plaintiff Jody Cooper, on behalf of herself and the New Hampshire Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein

295.  Title XXXI of the New Hampshire Statutes generally governs trade and commerce. Chapter 356 thereof governs combinations and monopolies and prohibits restraints of trade. N.H. Rev. Stat. Ann. §§ 356:2, 3.

296.  Plaintiff Jody Cooper purchased PSPs within the State of New Hampshire during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

297.  Under New Hampshire law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.H. Rev. Stat. Ann. § 356:11(II).

298.  Defendants fixed, controlled or maintained prices for PSPs, allocated customers or markets for PSPs, and established, maintained or used monopoly power, or attempted to, constituting a contract, combination or conspiracy in restraint of trade in violation of N.H. Rev. Stat. Ann. § 356:1, *et seq.*

299.  Plaintiffs and members of the Class were injured with respect to purchases of PSPs in New Hampshire and are entitled to all forms of relief, including actual damages sustained, treble damages for willful or flagrant violations, reasonable attorneys' fees, costs, and injunctive relief.

///

///

///

///

**TWENTIETH CLAIM FOR RELIEF**
**Violation of the New Mexico Antitrust Act,**
**N.M. Stat. Ann. §§ 57-1-1, *et seq.***
**(By Plaintiff Vivek Dravid On Behalf of the New Mexico Class)**

300.   Plaintiff Vivek Dravid, on behalf of himself and the New Mexico Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

301.   The New Mexico Antitrust Act aims to prohibit restraints of trade and monopolistic practices. N.M. Stat. Ann. 57-1-15.

302.   Plaintiff Vivek Dravid purchased PSPs within the State of New Mexico during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

303.   Under New Mexico law, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.M. Stat. Ann. § 57-1-3.

304.   Defendants contracted, agreed, combined or conspired, and monopolized or attempted to monopolize trade for PSPs within the intrastate commerce of New Mexico, in violation of N.M. Stat. Ann. § 57-1-1, *et seq.*

305.   Plaintiff and members of the Class were injured with respect to purchases of PSPs in New Mexico and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, costs, and injunctive relief.

**TWENTY-FIRST CLAIM FOR RELIEF**
**Violation of Section 340 of the New York General Business Law**
**(By Plaintiffs Michael Buff, Stephanie Gipson, Jennifer A. Nelson, and**
**Nigel Warren On Behalf of the New York Class)**

306.   Plaintiffs Michael Buff, Stephanie Gipson, Jennifer A. Nelson, and Nigel Warren, on behalf of themselves and the New York Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth

- 61 -

No. 15-MD-2670 JLS (MMD)

1    herein

2       307.   Article 22 of the New York General Business Law general prohibits

3    monopolies and contracts or agreements in restraint of trade, with the policy of

4    encouraging competition or the free exercise of any activity in the conduct of any

5    business, trade or commerce in New York. N.Y. Gen. Bus. Law § 340(1).

6       308.   Plaintiffs Michael Buff, Stephanie Gipson, Jennifer A. Nelson, and

7    Nigel Warren purchased PSPs within the State of New York during the Class

8    Period. But for Defendants' conduct set forth herein, the price per unit of PSPs

9    would have been lower, in an amount to be determined at trial.

10      309.   Under New York law, indirect purchasers have standing to maintain

11   an action based on the facts alleged in this Complaint. N.Y. Gen. Bus. Law §

12   340(6).

13      310.   Defendants established or maintained a monopoly within the intrastate

14   commerce of New York for the trade or commerce of PSPs and restrained

15   competition in the free exercise of the conduct of the business of PSPs within the

16   intrastate commerce of New York, in violation of N.Y. Gen. Bus. Law § 340, *et*

17   *seq.*

18      311.   Plaintiffs and members of the Class were injured with respect to

19   purchases of PSPs in New York and are entitled to all forms of relief, including

20   actual damages, treble damages, costs not exceeding $10,000, and reasonable

21   attorneys' fees.

22                    **<u>TWENTY-SECOND CLAIM FOR RELIEF</u>**
                      **Violation of the North Carolina General Statutes,**
23                    **N.C. Gen. Stat. § 75-1, *et seq.***
24                    **(By Plaintiffs Corey Norris and Elizabeth Twitchell**
                      **On Behalf of the North Carolina Class)**
25

26      312.   Plaintiffs Corey Norris and Elizabeth Twitchell, on behalf of

27   themselves and the North Carolina Class, repeat and reassert each of the

28   allegations contained in paragraphs 1 to 166 as if fully set forth herein.

No. 15-MD-2670 JLS (MMD)

313.   Defendants entered into a contract or combination in the form of trust or otherwise, or conspiracy in restraint of trade or commerce in the PSP Market, a substantial part of which occurred within North Carolina.

314.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, for the purpose of affecting competition or controlling, fixing, or maintaining prices, a substantial part of which occurred within North Carolina.

315.   Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

316.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

317.   By reason of the foregoing, Plaintiffs and members of the North Carolina Class are entitled to seek all forms of relief available, including treble damages, under N.C. Gen. Stat. § 75-1, *et seq.*

**TWENTY-THIRD CLAIM FOR RELIEF**
**Violation of the North Dakota Uniform State Antitrust Act,**
**N.D. Cent. Code § 51-08.1, *et seq.***
**(By Plaintiffs Tya Hughes and Bonnie VanderLaan**
**On Behalf of the North Dakota Class)**

318.   Plaintiffs Tya Hughes and Bonnie VanderLaan, on behalf of themselves and the North Dakota Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

319.   The North Dakota Uniform State Antitrust Act generally prohibits restraints on or monopolization of trade. N.D. Cent. Code § 51-08.1, *et seq.*

320.   Plaintiffs Tya Hughes and Bonnie VanderLaan purchased PSPs within the State of North Dakota during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

321.   Under the North Dakota Uniform State Antitrust Act, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint. N.D. Cent. Code § 51-08.1-08.

322.   Defendants contracted, combined or conspired in restraint of, or to monopolize trade or commerce in the market for PSPs, and established, maintained, or used a monopoly, or attempted to do so, for the purposes of excluding competition or controlling, fixing or maintaining prices for PSPs, in violation of N.D. Cent. Code §§ 51-08.1-02, 03.

323.   Plaintiffs and members of the Class were injured with respect to purchases in North Dakota and are entitled to all forms of relief, including actual damages, treble damages for flagrant violations, costs, reasonable attorneys' fees, and injunctive or other equitable relief.

<u>**TWENTY-FOURTH CLAIM FOR RELIEF**</u>
**Violation of the Oregon Antitrust Law,**
**Or. Rev. Stat. § 646.705, *et seq.***
**(By Plaintiffs Danielle Johnson and Beth and Liza Milliner**
**On Behalf of the Oregon Class)**

324.   Plaintiffs Danielle Johnson and Beth and Liza Milliner, on behalf of themselves and the Oregon Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

325.   Chapter 646 of the Oregon Revised Statutes generally governs business and trade practices within Oregon. Sections 705 through 899 thereof govern antitrust violations, with the policy to "encourage free and open competition in the interest of the general welfare and economy of the state." Or. Rev. Stat. § 646.715.

326.   Plaintiffs Danielle Johnson and Beth and Liza Milliner purchased PSPs within the State of Oregon during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

- 64 -

327.   Under Oregon law, indirect purchasers have standing under the antitrust provisions of the Oregon Revised Statutes to maintain an action based on the facts alleged in this Complaint. Or. Rev. Stat. § 646.780(1)(a).

328.   Defendants contracted, combined, or conspired in restraint of trade or commerce of PSPs, and monopolized or attempted to monopolize the trade or commerce of PSPs, in violation of Or. Rev. Stat. § 646.705, *et seq.*

329.   Plaintiffs and members of the Class were injured with respect to purchases of PSPs within the intrastate commerce of Oregon, or alternatively to interstate commerce involving actual or threatened injury to persons located in Oregon, and are entitled to all forms of relief, including actual damages, treble damages, reasonable attorneys' fees, expert witness fees and investigative costs, and injunctive relief.

## TWENTY-FIFTH CLAIM FOR RELIEF
### Violation of the Rhode Island Antitrust Act
### R.I. Gen. Laws § 6-36-1, *et seq.*
### (By Plaintiff Katherine McMahon On Behalf of the Rhode Island Class)

330.   Plaintiff Katherine McMahon, on behalf of herself and the Rhode Island Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

331.   The Rhode Island Antitrust Act aims to promote the unhampered growth of commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade and monopolistic practices that hamper, prevent or decrease competition. R.I. Gen. Laws § 6-36-2(a)(2).

332.   Plaintiff Katherine McMahon purchased PSPs within the State of Rhode Island during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

333.   Under the Rhode Island Antitrust Act, as of July 15, 2013, indirect

purchasers have standing to maintain an action based on the facts alleged in this Complaint. R.I. Gen. Laws § 6-36-11(a). In Rhode Island, the claims of the Plaintiff and the Class alleged herein run from July 15, 2013, through the date that the effects of Defendants' anticompetitive conduct cease.

334.   Defendants contracted, combined and conspired in restraint of trade of PSPs within the intrastate commerce of Rhode Island, and established, maintained or used, or attempted to establish, maintain or use, a monopoly in the trade of PSPs for the purpose of excluding competition or controlling, fixing or maintaining prices within the intrastate commerce of Rhode Island, in violation of R.I. Gen. Laws § 6-36-1, *et seq.*

335.   Plaintiff and members of the Class were injured with respect to purchases of PSPs in Rhode Island and are entitled to all forms of relief, including actual damages, treble damages, reasonable costs, reasonable attorneys' fees, and injunctive relief.

### TWENTY-SIXTH CLAIM FOR RELIEF
**Violation of the South Dakota Antitrust Statute,**
**S.D. Codified Laws § 37-1-3.1, *et seq.***
**(By Plaintiffs Casey Christensen and Bonnie VanderLaan**
**On Behalf of the South Dakota Class)**

336.   Plaintiffs Casey Christensen and Bonnie VanderLaan, on behalf of themselves and the South Dakota Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

337.   Chapter 37-1 of the South Dakota Codified Laws prohibits restraint of trade, monopolies and discriminatory trade practices. S.D. Codified Laws §§ 37-1-3.1, 3.2.

338.   Plaintiffs Casey Christensen and Bonnie VanderLaan purchased PSPs within the State of South Dakota during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an

amount to be determined at trial.

339.   Under South Dakota law, indirect purchasers have standing under the antitrust provisions of the South Dakota Codified Laws to maintain an action based on the facts alleged in this Complaint. S.D. Codified Laws § 37-1-33.

340.   Defendants contracted, combined or conspired in restraint of trade or commerce of PSPs within the intrastate commerce of South Dakota, and monopolized or attempted to monopolize trade or commerce of PSPs within the intrastate commerce of South Dakota, in violation of S.D. Codified Laws § 37-1, *et seq.*

341.   Plaintiffs and members of the Class were injured with respect to purchases of PSPs in South Dakota and are entitled to all forms of relief, including actual damages, treble damages, taxable costs, reasonable attorneys' fees, and injunctive or other equitable relief.

### TWENTY-SEVENTH CLAIM FOR RELIEF
**Violation of the Utah Antitrust Act,**
**Utah Code Ann. §§ 76-10-911, *et seq.***
**(By Plaintiffs Vivek Dravid and Tina Grant On Behalf of the Utah Class)**

342.   Plaintiffs Vivek Dravid and Tina Grant, on behalf of themselves and the Utah Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

343.   The Utah Antitrust Act aims to "encourage free and open competition in the interest of the general welfare and economy of this state by prohibiting monopolistic and unfair trade practices, combinations and conspiracies in restraint of trade or commerce . . . ." Utah Code Ann. § 76-10-3102.

344.   Plaintiffs Vivek Dravid and Tina Grant purchased PSPs within the State of Utah during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

345.   Under the Utah Antitrust Act, indirect purchasers who are either Utah residents or Utah citizens have standing to maintain an action based on the facts alleged in this Complaint. Utah Code Ann. § 76-10-3109(1)(a).

346.   Defendants contracted, combined or conspired in restraint of trade or commerce of PSPs, and monopolized or attempted to monopolize trade or commerce of PSPs, in violation of Utah Code Ann. § 76-10-3101, *et seq.*

347.   Plaintiffs and members of the Class who are either Utah residents or Utah citizens were injured with respect to purchases of PSPs in Utah and are entitled to all forms of relief, including actual damages, treble damages, costs of suit, reasonable attorneys' fees, and injunctive relief.

**TWENTY-EIGHTH CLAIM FOR RELIEF**
**Violation of the West Virginia Antitrust Act,**
**W. Va. Code § 47-18-1, *et seq.***
**(By Plaintiffs Diana Mey and Jade Canterbury**
**On Behalf of the West Virginia Class)**

348.   Plaintiffs Diana Mey and Jade Canterbury, on behalf of themselves and the West Virginia Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

349.   The violations of federal antitrust law set forth above also constitute violations of section 47-18-1 of the West Virginia Code.

350.   During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce and other anticompetitive conduct alleged above in violation of W. Va. Code § 47-18-1, *et seq*.

351.   Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the West Virginia Antitrust Act.

352.   As a direct and proximate result of Defendants' unlawful conduct,

Plaintiffs and members of the West Virginia Class have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct.   As a result of Defendants' violation of Section 47-18-3 of the West Virginia Antitrust Act, Plaintiff and members of the West Virginia Class seek treble damages and their cost of suit, including reasonable attorneys' fees, pursuant to section 47-18-9 of the West Virginia Code.

**TWENTY-NINTH CLAIM FOR RELIEF**
**Violation of the Wisconsin Antitrust Act,**
**Wis. Stat. Ann. § 133.01(1)***, et seq.*
**(By Plaintiffs Jessica Breitbach and Kenneth Dunlap**
**On Behalf of the Wisconsin Class)**

353.   Plaintiffs Jessica Breitbach and Kenneth Dunlap, on behalf of themselves and the Wisconsin Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

354.   Chapter 133 of the Wisconsin Statutes governs trust and monopolies, with the intent "to safeguard the public against the creation or perpetuation of monopolies and to foster and encourage competition by prohibiting unfair and discriminatory business practices which destroy or hamper competition." Wis. Stat. § 133.01.

355.   Plaintiffs Kenneth Dunlap and Jessica Breitbach purchased PSPs within the State of Wisconsin during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

356.   Under Wisconsin law, indirect purchasers have standing under the antitrust provisions of the Wisconsin Statutes to maintain an action based on the facts alleged in this Complaint. Wis. Stat. 133.18(a).

357.   Defendants contracted, combined or conspired in restraint of trade or

No. 15-MD-2670 JLS (MMD)

commerce of PSPs, and monopolized or attempted to monopolize the trade or commerce of PSPs, with the intention of injuring or destroying competition therein, in violation of Wis. Stat. § 133.01, *et seq.*

358.   Plaintiffs and members of the Class were injured with respect to purchases of PSPs in Wisconsin in that the actions alleged herein substantially affected the people of Wisconsin, with at least thousands of consumers in Wisconsin paying substantially higher prices for Defendants' PSPs in Wisconsin.

359.   Accordingly, Plaintiffs and members of the Class are entitled to all forms of relief, including actual damages, treble damages, costs and reasonable attorneys' fees, and injunctive relief.

360.   Defendants' and their co-conspirators' anticompetitive activities have directly, foreseeably and proximately caused injury to Plaintiffs and members of the Classes in the United States. Their injuries consist of: (1) being denied the opportunity to purchase lower-priced PSPs from Defendants, and (2) paying higher prices for Defendants' PSPs than they would have in the absence of Defendants' conduct. These injuries are of the type of the laws of the above States were designed to prevent, and flow from that which makes Defendants' conduct unlawful.

361.   Defendants are jointly and severally liable for all damages suffered by Plaintiffs and Class members.

### VIOLATIONS OF STATE CONSUMER PROTECTION LAW
#### (Against All Defendants)

362.   The following Thirtieth through Fifty-second Claims for Relief are pleaded under the consumer protection or similar laws of each State or jurisdiction identified below, on behalf of the indicated Class.

///

///

///

**THIRTIETH CLAIM FOR RELIEF**
**Violation of the Arkansas Deceptive Trade Practices Act,**
**Ark. Code Ann. § 4-88-101, *et seq.***
**(By Plaintiff Joseph A. Langston On Behalf of the Arkansas Class)**

363.   Plaintiff Joseph A. Langston, on behalf of himself and the Arkansas Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

364.   By reason of the conduct alleged herein, Defendants have violated Ark. Code Ann. § 4-88-101, *et seq.*

365.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Arkansas.

366.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Arkansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

367.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Arkansas.

368.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

369.   Defendants' unlawful conduct substantially affected Arkansas's trade and commerce.

370.   Defendants' conduct was willful.

371.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Arkansas Class have been injured in their business or property and are threatened with further injury.

372.   By reason of the foregoing, Plaintiff and members of the Arkansas Class are entitled to seek all forms of relief, including actual damages plus reasonable attorney's fees under Ark. Code Ann. § 4-88-113.

No. 15-MD-2670 JLS (MMD)

## THIRTY-FIRST CLAIM FOR RELIEF

### Violations of California's Unfair Competition Law
### Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL")
### (By Plaintiffs Mary Hudson, Marissa Jacobus, Michael Juetten,
### Rick Musgrave, and David Ton On Behalf of the California Class)

373. Plaintiffs Mary Hudson, Marissa Jacobus, Michael Juetten, Rick Musgrave, and David Ton, for themselves and on behalf of the California Class, repeat and reallege each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

374. The violations of federal antitrust law set forth above also constitute violations of section 17200, *et seq.* of California Business and Professions Code.

375. Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the UCL by engaging in the acts and practices specified above.

376. This claim is instituted pursuant to sections 17203 and 17204 of California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated the UCL.

377. The Defendants' conduct as alleged herein violated the UCL. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of the UCL, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; and (2) the violations of section 16720, *et seq.*, of California Business and Professions Code, set forth above.

378. Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of section 16720, *et seq.*, of California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent;

No. 15-MD-2670 JLS (MMD)

379.   Plaintiffs and members of the California Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

380.   The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

381.   The unlawful and unfair business practices of Defendants, and each of them, as described above, have caused and continue to cause Plaintiffs and the members of the California Class to pay supra-competitive and artificially-inflated prices for PSPs sold in the State of California. Plaintiffs and the members of the California Class suffered injury in fact and lost money or property as a result of such unfair competition.

382.   As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and the members of the California Class are accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to California Business and Professions Code sections 17203 and 17204.

### THIRTY-SECOND CLAIM FOR RELIEF
**Violation of the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.***
**(By Plaintiff Paul Berger On Behalf of the District of Columbia Class)**

383.   Plaintiff Paul Berger, on behalf of himself and the District of Columbia Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

384.   Plaintiff Paul Berger and members of the District of Columbia Class purchased PSPs for personal, family, or household purposes.

- 73 -

385.   By reason of the conduct alleged herein, Defendants have violated D.C. Code § 28-3901, *et seq.*

386.   Defendants are "merchants" within the meaning of D.C. Code § 28-3901(a)(3).

387.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within the District of Columbia.

388.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within the District of Columbia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

389.   Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the District of Columbia.

390.   Defendants' unlawful conduct substantially affected the District of Columbia's trade and commerce.

391.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and members of the District of Columbia Class have been injured in their business or property and are threatened with further injury.

392.   By reason of the foregoing, the Plaintiff and members of the District of Columbia Class are entitled to seek all forms of relief, including treble damages or $1500 per violation (whichever is greater) plus punitive damages, reasonable attorney's fees and costs under D.C. Code § 28-3901, *et seq.*

///

///

///

# THIRTY-THIRD CLAIM FOR RELIEF
## Violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201(2), *et seq.*
### (By Plaintiffs Barbara Blumstein and John Trent
### On Behalf of the Florida Class)

393.   Plaintiffs Barbara Blumstein and John Trent, for themselves and on behalf of the Florida Class, repeat and reallege each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

394.   The Florida Deceptive & Unfair Trade Practices Act, Florida Stat. §§ 501.201, *et seq.* (the "FDUTPA"), generally prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," including practices in restraint of trade. Florida Stat. § 501.204(1).

395.   The primary policy of the FDUTPA is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Florida Stat. § 501.202(2).

396.   A claim for damages under the FDUTPA has three elements: (1) a prohibited practice; (2) causation; and (3) actual damages.

397.   Under Florida law, indirect purchasers have standing to maintain an action under the FDUTPA based on the facts alleged in this Complaint. Fla. Stat. § 501.211(a) ("…anyone aggrieved by a violation of this [statute] may bring an action…").

398.   Plaintiffs Barbara Blumstein and John Trent purchased PSPs within the State of Florida during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

399.   Defendants entered into a contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce

- 75 -

in the PSP market, a substantial part of which occurred within Florida.

400.   Defendants established, maintained or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for PSPs, for the purpose of excluding competition or controlling, fixing or maintaining prices in Florida at a level higher than the competitive market level, beginning at least as early as 2000 and continuing through the date of this filing.

401.   Accordingly, Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Florida.

402.   Defendants' unlawful conduct substantially affected Florida's trade and commerce.

403.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and the members of the Florida Class have been injured in their business or property by virtue of overcharges for PSPs and are threatened with further injury.

404.   By reason of the foregoing, Plaintiffs and the members of the Florida Class is entitled to seek all forms of relief, including injunctive relief pursuant to Florida Stat. §501.208 and declaratory judgment, actual damages, reasonable attorneys' fees and costs pursuant to Florida Stat. § 501.211.

### THIRTY-FOURTH CLAIM FOR RELIEF
**Violation of the Illinois Consumer Fraud and
Deceptive Business Practices Act,
815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*
(By Plaintiffs Jessica Breitbach, Sally Crnkovich, Elizabeth Davis-Berg, Amy Joseph, and Elizabeth Twitchell On Behalf of the Illinois Class)**

405.   Plaintiffs Jessica Breitbach, Sally Crnkovich, Elizabeth Davis-Berg, Amy Joseph, and Elizabeth Twitchell, on behalf of themselves and the Illinois Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166

as if fully set forth herein

406.   By reason of the conduct alleged herein, Defendants have violated 740 Ill. Comp. Stat. Ann. 10/3(1), *et seq.*

407.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Illinois.

408.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Illinois, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

409.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Illinois.

410.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

411.   Defendants' unlawful conduct substantially affected Illinois's trade and commerce.

412.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and members of the Illinois Class have been injured in their business or property and are threatened with further injury.

413.   By reason of the foregoing, Plaintiffs and members of the Illinois Class are entitled to seek all forms of relief, including actual damages or any other relief the Court deems proper under 815 Ill. Comp. Stat. Ann. 505/10a, *et seq.*

### THIRTY-FIFTH CLAIM FOR RELIEF
**Violation of the Maine Unfair Trade Practices Act,**
**Me. Rev. Stat. Ann. tit. 5 § 205-A, *et seq.***
**(By Plaintiffs Greg Stearns and Thomas E. Willoughby III**
**On Behalf of the Maine Class)**

414.   Plaintiffs Greg Stearns and Thomas E. Willoughby III, on behalf of

themselves and the Maine Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

415.   By reason of the conduct alleged herein, Defendants have violated Me. Rev. Stat. Ann. tit. 5 § 205-A, *et seq*.

416.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Maine.

417.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Maine, for the purpose of unfairly excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

418.   Defendants' violations of Maine law were flagrant.

419.   Defendants' unlawful conduct substantially affected Maine's trade and commerce.

420.   Plaintiffs and members of the Maine class purchased goods, namely PSPs, primarily for personal, family, or household purposes.

421.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the Maine Class have been injured in their business or property and are threatened with further injury.

422.   By reason of the foregoing, the Plaintiffs and the members of the Maine Class are entitled to seek all forms of relief, including treble damages, reasonable attorneys' fees and costs, and injunctive relief available under Me. Rev. Stat. Ann. tit. 5 § 213.

423.   Pursuant to Me. Rev. Stat. Ann. tit. 5 § 213, a written demand for relief was sent to all Defendants at least 30 days prior to the filing of this claim.

424.   Further, pursuant to Me. Rev. Stat. Ann. tit. 5 § 213, the Attorney General of Maine is being served by mail with a copy of this Complaint upon its filing.

### THIRTY-SIXTH CLAIM FOR RELIEF
**Violation of the Massachusetts Consumer Protection Act,**
**Mass. Gen. Laws ch. 93A § 1,** *et seq.*
**(By Plaintiffs Scott Caldwell and Sundé Daniels**
**On Behalf of the Massachusetts Class)**

425.   Plaintiffs Scott Caldwell and Sundé Daniels, on behalf of themselves and the Massachusetts Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

426.   By reason of the conduct alleged herein, Defendants have violated the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A § 2, *et seq*.

427.   Plaintiffs Scott Caldwell and Sundé Daniels purchased PSPs within the State of Massachusetts during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

428.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Massachusetts.

429.   Defendant established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the market for PSPs, a substantial part of which occurred within Massachusetts, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP market.

430.   Defendants' conduct was an unfair method of competition, and an unfair or deceptive act or practice within the conduct of commerce within the State of Massachusetts

431.   Defendants' unlawful conduct substantially affected Massachusetts'

1    trade and commerce.

2        432.   As a direct and proximate cause of Defendants' unlawful conduct, the

3    Plaintiffs and the members of the Massachusetts Class have been injured in their

4    business or property and are threatened with further injury.

5        433.   By reason of the foregoing, the Plaintiffs and the Massachusetts Class

6    are entitled to seek all forms of relief, including up to treble damages and

7    reasonable attorney's fees and costs under Mass. Gen. Laws ch. 93A § 9.

8        434.   Pursuant to Mass. Gen. Laws ch. 93A § 9, Plaintiff Caldwell mailed to

9    all Defendants on August 31, 2015, via certified mail, return receipt requested,

10   Demand for Payment Letters which explained the unfair acts, the injury suffered,

11   and requested relief from the Defendants. Plaintiff Caldwell has received a

12   response to these letters from Defendant StarKist, but was unable to come to any

13   agreement with StarKist.  Plaintiff Caldwell has received no response from other

14   Defendants.

15       435.   Pursuant to Mass. Gen. Laws ch. 93A § 9, Plaintiff Daniels mailed to

16   all Defendants on September 3, 2015, and again on October 2, 2015, via certified

17   mail, return receipt requested, Demand for Payment Letters which explained the

18   unfair acts, the injury suffered, and requested relief from the Defendants. Plaintiff

19   Daniels has received a response to these letters from Defendant StarKist, but was

20   unable to come to any agreement with StarKist.  Plaintiff Daniels has received no

21   response from other Defendants.

## THIRTY-SEVENTH CLAIM FOR RELIEF
### Violation of the Michigan Consumer Protection Act
### Mich. Comp. Laws Ann. § 445.901, *et seq.*
### (By Plaintiffs Louise Adams, Jessica Decker, and Barbara Olson
### On Behalf of the Michigan Class)

        436.  Plaintiffs Louise Adams, Jessica Decker, and Barbara Olson, on

behalf of themselves and the Michigan Class, repeat and reassert each of the

allegations contained in paragraphs 1 to 166 as if fully set forth herein.

437.   By reason of the conduct alleged herein, Defendants have violated Mich. Comp. Laws Ann. § 445.901, *et seq.*

438.   Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP Market, a substantial part of which occurred within Michigan.

439.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Michigan.

440.   Defendants' conduct was conducted with the intent to deceive Michigan consumers regarding the nature of Defendants' actions within the stream of Michigan commerce.

441.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Michigan.

442.   Defendants' conduct misled consumers, withheld material facts, and took advantage of Plaintiffs and Class members' inability to protect themselves.

443.   Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

444.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and members of the Michigan Class have been injured in their business or property and are threatened with further injury.

445.   By reason of the foregoing, the Plaintiffs and the Michigan Class are entitled to seek all forms of relief available under Mich. Comp. Laws Ann. § 445.911.

///

///

///

## THIRTY-EIGHTH CLAIM FOR RELIEF
### Violation of the Minnesota Consumer Fraud Act,
### Minn. Stat. § 325F.68, *et seq.*
### (By Plaintiff Laura Childs On Behalf of the Minnesota Class)

446.   Plaintiff Laura Childs, on behalf of herself and the Minnesota Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

447.   By reason of the conduct alleged herein, Defendants have violated Minn. Stat. § 325F.68, *et seq.*

448.   Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

449.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, a substantial part of which occurred within Minnesota, for the purpose of controlling, fixing, or maintaining prices in the PSP Market.

450.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Minnesota.

451.   Defendants' conduct, specifically in the form of fraudulent concealment of their horizontal agreement, created a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

452.   Defendants' unlawful conduct substantially affected Minnesota's trade and commerce.

453.   Defendants' conduct was willful.

454.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Minnesota Class have been injured in their business or property and are threatened with further injury.

455.   By reason of the foregoing, the Plaintiff and the members of the Minnesota Class are entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs under Minn. Stat. § 325F.68, *et seq.* and

applicable case law.

**THIRTY-NINTH CLAIM FOR RELIEF**
**Violation of the Nebraska Consumer Protection Act,**
**Neb. Rev. Stat. § 59-1602, *et seq.***
**(By Plaintiff Melissa Bowman On Behalf of the Nebraska Class)**

456.  Plaintiffs Melissa Bowman and Barbara Buenning, on behalf of themselves and the Nebraska Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

457.  By reason of the conduct alleged herein, Defendants have violated Neb. Rev. Stat. § 59-1602, *et seq.*

458.  Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP Market, a substantial part of which occurred within Nebraska.

459.  Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Nebraska.

460.  Defendants' conduct was conducted with the intent to deceive Nebraska consumers regarding the nature of Defendants' actions within the stream of Nebraska commerce.

461.  Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nebraska.

462.  Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff and Class members' ability to protect themselves.

463.  Defendants' unlawful conduct substantially affected Nebraska's trade and commerce.

464.  As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Nebraska Class have been injured in their

- 83 -

business or property and are threatened with further injury.

465.   By reason of the foregoing, Plaintiff and members of the Nebraska Class are entitled to seek all forms of relief available under Neb. Rev. Stat. § 59-1614.

### FORTIETH CLAIM FOR RELIEF
**Violation of the Nevada Deceptive Trade Practices Act,**
**Nev. Rev. Stat. § 598.0903, *et seq.***
**(By Plaintiffs Nay Alidad, Dwayne Kennedy, and Nancy Stiller**
**On Behalf of the Nevada Class)**

466.   Plaintiffs Nay Alidad, Dwayne Kennedy, and Nancy Stiller, on behalf of themselves and the Nevada Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

467.   By reason of the conduct alleged herein, Defendants have violated Nev. Rev. Stat. § 598.0903, *et seq.*

468.   Defendants engaged in a deceptive trade practice with the intent to injure competitors and to substantially lessen competition.

469.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, a substantial part of which occurred within Nevada, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

470.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nevada.

471.   Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

472.   Defendants' unlawful conduct substantially affected Nevada's trade and commerce.

473.   Defendants' conduct was willful.

474.   As a direct and proximate cause of Defendants' unlawful conduct, the

members of the Nevada Class have been injured in their business or property and are threatened with further injury.

475.  By reason of the foregoing, the Nevada Class is entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs, and a civil penalty of up to $5,000 per violation under Nev. Rev. Stat. § 598.0993.

## FORTY-FIRST CLAIM FOR RELIEF
**Violation of the New Hampshire Consumer Protection Act,**
**N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq.*,**
**(By Plaintiff Jody Cooper On Behalf of the New Hampshire Class)**

476.  Plaintiff Jody Cooper, on behalf of herself and the New Hampshire Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

477.  By reason of the conduct alleged herein, Defendants have violated N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq*.

478.  Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP Market, a substantial part of which occurred within New Hampshire.

479.  Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within New Hampshire.

480.  Defendants' conduct was conducted with the intent to deceive New Hampshire consumers regarding the nature of Defendants' actions within the stream of New Hampshire commerce.

481.  Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire.

482.  Defendants' conduct was willful and knowing.

483.  Defendants' conduct misled consumers, withheld material facts, and

had a direct or indirect impact upon Plaintiff and Class members' ability to protect themselves.

484.   Defendants' unlawful conduct substantially affected New Hampshire's trade and commerce.

485.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the New Hampshire Class have been injured in their business or property and are threatened with further injury.

486.   By reason of the foregoing, the Plaintiff and the members of the New Hampshire Class are entitled to seek all forms of relief available under N.H. Rev. Stat. Ann. tit. XXXI, §§ 358-A:10 and 358-A:10-a.

**FORTY-SECOND CLAIM FOR RELIEF**
**Violation of the New Mexico Unfair Practices Act,**
**N.M. Stat. Ann. §§ 57-12-3, *et seq.***
**(By Plaintiff Vivek Dravid On Behalf of the New Mexico Class)**

487.   Plaintiff Vivek Dravid, by himself and on behalf of the New Mexico Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

488.   By reason of the conduct alleged herein, Defendants have violated N.M. Stat. Ann. §§ 57-12-3, *et seq.*

489.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within New Mexico.

490.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within New Mexico, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

491.   Defendants' conduct was unfair, unconscionable, or deceptive within

- 86 -

the conduct of commerce within the State of New Mexico.

492.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

493.   Defendants' unlawful conduct substantially affected New Mexico's trade and commerce.

494.   Defendants' conduct constituted "unconscionable trade practices" in that such conduct, *inter alia,* resulted in a gross disparity between the value received by the New Mexico class members and the price paid by them for PSPs as set forth in N.M. Stat. Ann. § 57-12-2E.

495.   Defendants' conduct was willful.

496.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the New Mexico Class have been injured in their business or property and are threatened with further injury.

497.   By reason of the foregoing, Plaintiff and members of the New Mexico Class are entitled to seek all forms of relief, including actual damages or up to $300 per violation, whichever is greater, plus reasonable attorney's fees under N.M. Stat. Ann. §§ 57-12-10.

## FORTY-THIRD CLAIM FOR RELIEF
### Violation of the North Carolina Unfair Trade and Business Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*
### (By Plaintiffs Corey Norris and Elizabeth Twitchell On Behalf of the North Carolina Class)

498.   Plaintiffs Corey Norris and Elizabeth Twitchell, on behalf of themselves and the North Carolina Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

499.   By reason of the conduct alleged herein, Defendants have violated N.C. Gen. Stat. § 75-1.1, *et seq.*

500.   Defendants entered into a contract, combination, or conspiracy in

- 87 -

restraint of, or to monopolize, trade or commerce in the PSP Market, a substantial part of which occurred within North Carolina.

501.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Carolina.

502.   Defendants' trade practices are and have been immoral, unethical, unscrupulous, and substantially injurious to consumers.

503.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

504.   Defendants' unlawful conduct substantially affected North Carolina's trade and commerce.

505.   Defendants' conduct constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

506.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the North Carolina Class have been injured in their business or property and are threatened with further injury.

507.   By reason of the foregoing, the Plaintiffs and the members of the North Carolina Class are entitled to seek all forms of relief, including treble damages under N.C. Gen. Stat. § 75-16.

### FORTY-FOURTH CLAIM FOR RELIEF
**Violation of the North Dakota Unfair Trade Practices Law,**
**N.D. Cent. Code § 51-10, *et seq*.**
**(By Plaintiffs Tya Hughes and Bonnie VanderLaan**
**On Behalf of the North Dakota Class)**

508.   Plaintiffs Tya Hughes and Bonnie VanderLaan, on behalf of themselves and the North Dakota Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

No. 15-MD-2670 JLS (MMD)

509. By reason of the conduct alleged herein, Defendants have violated N.D. Cent. Code § 51-10-01, *et seq.*

510. Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

511. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, a substantial part of which occurred within North Dakota, for the purpose of controlling, fixing, or maintaining prices in the PSP Market.

512. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of North Dakota.

513. Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

514. Defendants' unlawful conduct substantially affected North Dakota's trade and commerce.

515. Defendants' conduct was willful.

516. As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the North Dakota Class have been injured in their business or property and are threatened with further injury.

517. By reason of the foregoing, the Plaintiffs and the members of the North Dakota Class are entitled to seek all forms of relief, including damages and injunctive relief under N.D. Cent. Code § 51-10-06.

### FORTY-FIFTH CLAIM FOR RELIEF
**Violation of the Oregon Unlawful Trade Practices Act,
Or. Rev. Stat. § 646.605, *et seq.*
(By Plaintiffs Danielle Johnson and Beth and Liza Milliner
On Behalf of the Oregon Class)**

518. Plaintiffs Danielle Johnson and Beth and Liza Milliner, on behalf of themselves and the Oregon Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

519.   By reason of the conduct alleged herein, Defendants have violated Or. Rev. Stat. § 646.608, *et seq.*

520.   Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP Market, a substantial part of which occurred within Oregon.

521.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Oregon.

522.   Defendants' conduct was conducted with the intent to deceive Oregon consumers regarding the nature of Defendants' actions within the stream of Oregon commerce.

523.   Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Oregon.

524.   Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiff and class members' ability to protect themselves.

525.   Defendants' unlawful conduct substantially affected Oregon's trade and commerce.

526.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the Oregon Class have been injured in their business or property and are threatened with further injury.

527.   By reason of the foregoing, the Plaintiffs and the members of the Oregon Class are entitled to seek all forms of relief available under Or. Rev. Stat. § 646.638.

528.   Pursuant to section 646.638 of the Oregon Unlawful Trade Practices Act, contemporaneously with the filing of this action, a copy of this Complaint is being served upon the Attorney General of Oregon.

**FORTY-SIXTH CLAIM FOR RELIEF**
**Violation of Rhode Island Deceptive Trade Practices Act,**
**R.I. Gen Laws § 6-13.1-1, *et seq.***
**(By Plaintiff Katherine McMahon On Behalf of the Rhode Island Class)**

529.   Plaintiff Katherine McMahon, on behalf of herself and the Rhode Island Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

530.   By reason of the conduct alleged herein, Defendants have violated R.I. Gen Laws § 6-13.1-1, *et seq.*

531.   Defendants engaged in an unfair or deceptive act or practice with the intent to injure competitors and consumers through supra-competitive profits.

532.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, a substantial part of which occurred within Rhode Island, for the purpose of controlling, fixing, or maintaining prices in the PSP Market.

533.   Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Rhode Island.

534.   Defendants' conduct amounted to an unfair or deceptive act or practice committed by a supplier in connection with a consumer transaction.

535.   Defendants' unlawful conduct substantially affected Rhode Island's trade and commerce.

536.   Defendants' conduct was willful.

537.   Defendants deliberately failed to disclose material facts to Plaintiff and members of the Rhode Island Class concerning Defendants' unlawful activities, including the horizontal conspiracy and artificially-inflated prices for PSPs.

538.   Defendants' deception, including its affirmative misrepresentations and/or omissions concerning the price of PSPs, constitutes information necessary

to Plaintiff and members of the Rhode Island Class relating to the cost of PSPs purchased.

539. Plaintiff and members of the Rhode Island class purchased goods, namely PSPs, primarily for personal, family, or household purposes.

540. As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the Rhode Island Class have been injured in their business or property and are threatened with further injury.

541. By reason of the foregoing, Plaintiff and the members of the Rhode Island Class are entitled to seek all forms of relief, including actual damages or $200 per violation, whichever is greater, and injunctive relief and punitive damages under R.I. Gen Laws § 6-13.1-5.2.

<u>**FORTY-SEVENTH CLAIM FOR RELIEF**</u>
**Violation of the South Dakota Deceptive Trade Practices**
**and Consumer Protection Law, S.D. Codified Laws § 37-24, *et seq.***
**(By Plaintiffs Casey Christensen and Bonnie VanderLaan**
**On Behalf of the South Dakota Class)**

542. Plaintiffs Casey Christensen and Bonnie VanderLaan, on behalf of themselves and the South Dakota Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

543. By reason of the conduct alleged herein, Defendants have violated S.D. Codified Laws § 37-24-6.

544. Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

545. Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, a substantial part of which occurred within South Dakota, for the purpose of controlling, fixing, or maintaining prices in the PSP Market.

546. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of South Dakota.

No. 15-MD-2670 JLS (MMD)

547.   Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

548.   Defendants' unlawful conduct substantially affected South Dakota's trade and commerce.

549.   Defendants' conduct was willful.

550.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the South Dakota Class have been injured in their business or property and are threatened with further injury.

551.   By reason of the foregoing, Plaintiffs and the members of the South Dakota Class are entitled to seek all forms of relief, including actual damages and injunctive relief under S.D. Codified Laws § 37-24-31.

### FORTY-EIGHTH CLAIM FOR RELIEF
**Violation of the Utah Consumer Sales Practices Act,**
**Utah Code Ann. §§ 13-11-1, *et seq.***
**(By Plaintiffs Vivek Dravid and Tina Grant On Behalf of the Utah Class)**

552.   Plaintiffs Vivek Dravid and Tina Grant, on behalf of themselves and the Utah Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

553.   By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-11-1, *et seq.*

554.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the PSP market, a substantial part of which occurred within Utah.

555.   Defendants are suppliers within the meaning of Utah Code Ann. §§ 13-11-3.

556.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the Relevant Markets, a substantial part of which occurred within Utah, for the purpose of excluding

No. 15-MD-2670 JLS (MMD)

competition or controlling, fixing, or maintaining prices in the PSP Market.

557.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Utah.

558.   Defendants' conduct and/or practices were unconscionable and were undertaken in connection with consumer transactions.

559.   Defendants knew or had reason to know that their conduct was unconscionable.

560.   Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiff and members of the Class.

561.   Defendants' unlawful conduct substantially affected Utah's trade and commerce.

562.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiffs and the members of the Utah Class have been injured in their business or property and are threatened with further injury.

563.   By reason of the foregoing, the Plaintiffs and the members of the Utah Class is entitled to seek all forms of relief, including declaratory judgment, injunctive relief, and ancillary relief, pursuant to Utah Code Ann. §§ 13-11-19(5) and 13-11-20.

### FORTY-NINTH CLAIM FOR RELIEF
**Violation of the Utah Unfair Practices Act,**
**Utah Code All. §§ 13-5-1, *et seq.***
**(By Plaintiffs Vivek Dravid and Tina Grant On Behalf of the Utah Class)**

564.   Plaintiffs Vivek Dravid and Tina Grant, on behalf of themselves and the Utah Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

565.   By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-5-1, *et seq.*

566.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce

- 94 -

1    in the PSP market, a substantial part of which occurred within Utah.

2        567.   Defendants established, maintained, or used a monopoly, or attempted

3    to establish a monopoly, of trade or commerce in the Relevant Markets, a

4    substantial part of which occurred within Utah, for the purpose of excluding

5    competition or controlling, fixing, or maintaining prices in the PSP Market.

6        568.   Defendants' conduct caused or was intended to cause unfair methods

7    of competition within the State of Utah.

8        569.   Defendants' unlawful conduct substantially affected Utah's trade and

9    commerce.

10       570.   As a direct and proximate cause of Defendants' unlawful conduct, the

11   Plaintiffs and the members of the Utah Class have been injured in their business or

12   property and are threatened with further injury.

13       571.   By reason of the foregoing, the Plaintiffs and the members of the Utah

14   Class is entitled to seek all forms of relief, including actual damages or $2000 per

15   Utah Class member, whichever is greater, plus reasonable attorney's fees under

16   Utah Code Ann. §§ 13-5-14, *et seq.*

17                        **FIFTIETH CLAIM FOR RELIEF**
                     **Violation of the Vermont Consumer Fraud Act,**
18                    **Vt. Stat. Ann. tit. 9, §§ 2453, *et seq.***
19              **(By Plaintiffs Stephanie Gipson and Jennifer A. Nelson**
20                        **On Behalf of the Vermont Class)**

21       572.   Plaintiffs Stephanie Gipson and Jennifer A. Nelson, on behalf of

22   themselves and the Vermont Class, repeat and reassert each of the allegations

23   contained in paragraphs 1 to 166 as if fully set forth herein.

24       573.   Title 9 of the Vermont Statutes generally governs commerce and trade

25   in Vermont. Chapter 63 thereof governs consumer protection and prohibits, *inter*

26   *alia*, unfair methods competition, unfair and deceptive acts and practices, and

27   antitrust violations such as restraints of trade and monopolization. Vt. Stat. Ann.

28   Tit. 9 § 2453(a).

574.   One such unfair method of competition is through collusion, defined as agreeing, contracting, combining or conspiring to engage in price fixing, market division and/or allocation of goods, constituting unfair competition in the commerce of PSPs. Vt. Stat. Ann. Tit. 9, § 2451a(h).

575.   Plaintiffs Stephanie Gipson and Jennifer A. Nelson purchased PSPs within the State of Vermont during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

576.   Under Vermont law, indirect purchasers have standing under the antitrust provisions of the Vermont Statutes to maintain an action based on the facts alleged in this Complaint. Vt. Stat. Ann. Tit. 9, § 2465(b).

577.   Defendants competed unfairly and colluded by meeting to fix prices, divide markets, and otherwise restrain trade as set forth herein, in violation of Vt. Stat. Ann. Tit. 9, § 2453, *et seq.*

578.   Plaintiffs and members of the Class were injured with respect to purchases of PSPs in Vermont and are entitled to all forms of relief, including actual damages, treble damages, and reasonable attorneys' fees.

### FIFTY-FIRST CLAIM FOR RELIEF
**Violation of the Virginia Consumer Protection Act,**
**Va. Code Ann. § 59.1-196, *et seq.***
**(By Plaintiff Elizabeth Twitchell On Behalf of the Virginia Class)**

579.   Plaintiff Elizabeth Twitchell, on behalf of herself and the Virginia Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

580.   By reason of the conduct alleged herein, Defendants have violated Va. Code Ann. § 59.1-196, *et seq.*

581.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce

in the PSP market, a substantial part of which occurred within Virginia.

582.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the PSP Market, a substantial part of which occurred within Virginia, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the PSP Market.

583.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Virginia.

584.   Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

585.   Defendants' unlawful conduct substantially affected Virginia's trade and commerce.

586.   Defendants' conduct was willful.

587.   As a direct and proximate cause of Defendants' unlawful conduct, the Plaintiff and the members of the Virginia Class have been injured in their business or property and are threatened with further injury.

588.   By reason of the foregoing, the Plaintiff and the members of the Virginia Class is entitled to seek all forms of relief, including treble damages or $1000 per violation, whichever is greater, plus reasonable attorneys' fees and costs under Va. Code Ann. § 59.1-204(A), *et seq.*

### FIFTY-SECOND CLAIM FOR RELIEF
**Violation of the West Virginia Consumer Credit and Protection Act,**
**W. Va. Code § 46A-6-101, *et seq.***
**(By Plaintiffs Diana Mey and Jade Canterbury**
**On Behalf of the West Virginia Class)**

589.   Plaintiffs Diana Mey and Jade Canterbury, on behalf of themselves and the West Virginia Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

590.   The violations of federal antitrust law set forth above also constitute

violations of Sections 46A-6-101, *et seq*. of the West Virginia Code.

591.   During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination or conspiracy in unreasonable restraint of trade and commerce and other anticompetitive conduct alleged above in violation of  W. Va. Code § 46A-6-101, *et seq*.

592.   Defendants' anticompetitive acts described above were knowing, willful and constitute violations or flagrant violations of the West Virginia Antitrust Act and the West Virginia Consumer Credit and Protection Act.

593.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and members of the West Virginia Class have been injured in their business and property in that they paid more for PSPs than they otherwise would have paid in the absence of Defendants' unlawful conduct.   As a result of Defendants' violation of Sections 46A-6-104 of the West Virginia Consumer Credit and Protection Act, Plaintiffs and members of the West Virginia Class seek actual damages or $200 per violation, whichever is greater, pursuant to Section 46A-6-106 of the West Virginia Code.

594.   Pursuant to Section 46A-6-106(c) of the West Virginia Code, Plaintiff Jade Canterbury provided notice to Defendants in the manner specified under the Code on September 25, 2015, which was twenty (20) days or more prior to the addition of this claim.   Plaintiff has not received an offer to cure as of the date of this filing.

<u>UNJUST ENRICHMENT</u>

595.   The following Fifty-third through Seventy-eighth Claims for Relief are pleaded in the alternative to each of the other claims in this Complaint save the Sherman Act claim and the Cartwright Act claim.

**<u>FIFTY-THIRD CLAIM FOR RELIEF</u>**
**(By Plaintiffs Jonathan Rizzo and Tina Grant On Behalf of the Arizona Class)**

596.   Plaintiffs Jonathan Rizzo and Tina Grant, on behalf of themselves and

the Arizona Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

597.    Plaintiffs Jonathan Rizzo and Tina Grant purchased PSPs within the State of Arizona during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

598.    Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Arizona at prices that were more than they would have been but for Defendants' actions.

599.    Defendants have been enriched by revenue resulting from unlawful overcharges for Defendants' PSPs.

600.    Plaintiffs and Class members have been impoverished by the overcharges for Defendants' PSPs resulting from Defendants' unlawful conduct.

601.    Defendants' enrichment and Plaintiffs' impoverishment are connected. Defendants have paid no consideration to any other person for any benefits they received from Plaintiffs and Class Members.

602.    There is no justification for Defendants' receipt of the benefits causing their enrichment and Plaintiffs' and Class members' impoverishment, because Plaintiffs and Class members paid anticompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges.

603.    Plaintiffs and Class members have no remedy at law.

## FIFTY-FOURTH CLAIM FOR RELIEF
### (By Plaintiffs Mary Hudson, Marissa Jacobus, Michael Juetten, Rick Musgrave, and David Ton On Behalf of the California Class)

604.    Plaintiffs Mary Hudson, Marissa Jacobus, Michael Juetten, Rick Musgrave, and David Ton, for themselves and on behalf of the California Class,

No. 15-MD-2670 JLS (MMD)

repeat and reallege each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

605.   Plaintiffs Mary Hudson, Marissa Jacobus, Michael Juetten, Rick Musgrave, and David Ton purchased PSPs within the State of California during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

606.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in California at prices that were more than they would have been but for Defendants' actions.

607.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

## FIFTY-FIFTH CLAIM FOR RELIEF
### (By Plaintiff Paul Berger On Behalf of the District of Columbia Class)

608.   Plaintiff Paul Berger for himself and on behalf of the District of Columbia Class, repeats and realleges each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

609.   Plaintiff Paul Berger purchased PSPs within the District of Columbia during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

610.   Defendants retained the benefits bestowed upon them under inequitable and unjust circumstances at the expense of Plaintiffs and Class Members.

611.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in the District of Columbia at prices that were more than they would have been but for Defendants' actions.

612.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to

No. 15-MD-2670 JLS (MMD)

1  the economic detriment of Plaintiffs and Class members.

2      613.   Defendants accepted and retained the benefit bestowed upon them

3  under inequitable and unjust circumstances arising from unlawful overcharges to

4  Plaintiffs and Class Members.

5      614.   Under the circumstances, it would be inequitable and unjust for

6  Defendants to retain such benefits.

7              **FIFTY-SIXTH CLAIM FOR RELIEF**

8          **(By Plaintiffs Barbara Blumstein and John Trent**

9              **On Behalf of the Florida Class)**

10     615.   Plaintiffs Barbara Blumstein and John Trent, for themselves and on

11 behalf of the Florida Class, repeat and reallege each of the allegations contained in

12 paragraphs 1 to 166 as if fully set forth herein.

13     616.   Plaintiffs Barbara Blumstein and John Trent purchased PSPs within

14 the State of Florida during the Class Period. But for Defendants' conduct set forth

15 herein, the price per unit of PSPs would have been lower, in an amount to be

16 determined at trial.

17     617.   Defendants unlawfully overcharged end payers, who made purchases

18 of Defendants' PSPs in Florida at prices that were more than they would have been

19 but for Defendants' actions.

20     618.   Plaintiffs and the Class members have conferred a direct economic

21 benefit upon Defendants, in the nature of revenue resulting from unlawful

22 overcharges paid by Plaintiffs and the Class members and accepted and retained by

23 Defendants, to the economic detriment of Plaintiffs and the Class members.

24     619.   Defendants appreciated the benefits bestowed upon them by Plaintiffs

25 and the Class Members.

26     620.   It is inequitable for Defendants to accept and retain the benefits

27 received without compensating Plaintiffs and the Class members.

28 ///

No. 15-MD-2670 JLS (MMD)

## FIFTY-SEVENTH CLAIM FOR RELIEF
### (By Plaintiffs Jessica Breitbach, Sally Crnkovich, Elizabeth Davis-Berg, Amy Joseph, and Elizabeth Twitchell On Behalf of the Illinois Class)

621.   Plaintiffs Jessica Breitbach, Sally Crnkovich, Elizabeth Davis-Berg, Amy Joseph, and Elizabeth Twitchell, on behalf of themselves and the Illinois Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

622.   Plaintiffs Jessica Breitbach, Sally Crnkovich, Elizabeth Davis-Berg, Amy Joseph, and Elizabeth Twitchell purchased PSPs within the State of Illinois during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

623.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Illinois at prices that were more than they would have been but for Defendants' actions.

624.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

625.   Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and Class members.

626.   It is unjust and inequitable for Defendants to retain the benefits received without compensating Plaintiffs and Class members.

## FIFTY-EIGHTH CLAIM FOR RELIEF
### (By Plaintiffs Carla Lown and Jennifer A. Nelson On Behalf of the Iowa Class)

627.   Plaintiffs Carla Lown and Jennifer A. Nelson, on behalf of themselves and the Iowa Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

628.   Plaintiffs Carla Lown and Jennifer A. Nelson purchased PSPs within the State of Iowa during the Class Period. But for Defendants' conduct set forth

herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

629.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Iowa at prices that were more than they would have been but for Defendants' actions.

630.   Defendants have been enriched by revenue resulting from unlawful overcharges for Defendants' PSPs, which revenue resulted from anticompetitive prices paid by Plaintiffs, which inured to Defendants' benefit.

631.   Defendants' enrichment has occurred at the expense of Plaintiffs and Class members.

632.   It is against equity and good conscience for Defendants to be permitted to retain the revenue resulting from their unlawful overcharges.

## FIFTY-NINTH CLAIM FOR RELIEF
### (By Plaintiffs Brian Depperschmidt and Lisa Hall
### On Behalf of the Kansas Class)

633.   Plaintiffs Brian Depperschmidt and Lisa Hall, on behalf of themselves and the Kansas Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

634.   Plaintiffs Brian Depperschmidt and Lisa Hall purchased PSPs within the State of Kansas during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

635.   Defendants unlawfully overcharged end payers, who made of Defendants' PSPs in Kansas at prices that were more than they would have been but for Defendants' actions.

636.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to

the economic detriment of Plaintiffs and Class members.

637.   Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and Class Members.

638.   Defendants were unjustly enriched at the expense of Plaintiffs and Class members.

## SIXTIETH CLAIM FOR RELIEF
### (By Plaintiffs Greg Stearns and Thomas E. Willoughby III
### On Behalf of the Maine Class)

639.   Plaintiffs Greg Stearns and Thomas E. Willoughby III, on behalf of themselves and the Maine Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

640.   Plaintiffs Greg Stearns and Thomas E. Willoughby III purchased PSPs within the State of Maine during the Class Period.. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

641.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Maine at prices that were more than they would have been but for Defendants' actions.

642.   Plaintiffs and Class members have conferred a direct economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges paid by Plaintiffs and the Class members and accepted and retained by Defendants, to the economic detriment of Plaintiffs and Class members.

643.   Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and Class members.

644.   Defendants were aware of and appreciated the benefit bestowed upon them by Plaintiffs and Class members.

645.   Defendants were unjustly enriched at the expense of Plaintiffs and Class members.

No. 15-MD-2670 JLS (MMD)

## SIXTY-FIRST CLAIM FOR RELIEF
### (By Plaintiffs Scott Caldwell and Sundé Daniels
### On Behalf of the Massachusetts Class)

646.   Plaintiffs Scott Caldwell and Sundé Daniels, on behalf of themselves and the Massachusetts Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

647.   Plaintiffs Scott Caldwell and Sundé Daniels purchased PSPs within the State of Massachusetts during the Class Period.. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

648.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Massachusetts at prices that were more than they would have been but for Defendants' actions.

649.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

650.   Defendants were aware of or appreciated the benefit conferred upon them by Plaintiffs and Class members.

651.   Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class members. Fairness and good conscience require that Defendants not be permitted to retain the revenue resulting from their unlawful overcharges at the expense of Plaintiffs and Class members.

## SIXTY-SECOND CLAIM FOR RELIEF
### (By Plaintiffs Louise Adams, Jessica Decker, and Barbara Olson
### On Behalf of the Michigan Class)

652.   Plaintiffs Louise Adams, Jessica Decker, and Barbara Olson, on behalf of themselves and the Michigan Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

- 105 -

No. 15-MD-2670 JLS (MMD)

653.   Plaintiffs Louise Adams, Jessica Decker, and Barbara Olson purchased PSPs within the State of Michigan during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

654.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Michigan at prices that were more than they would have been but for Defendants' actions.

655.   Plaintiffs and Class members have conferred a direct economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges paid by Plaintiffs and the Class members and accepted and retained by Defendants, to the economic detriment of Plaintiffs and Class members.

656.   Defendants retained the benefits bestowed upon them under unjust circumstances arising from unlawful overcharges to Plaintiffs and Class members.

657.   Defendants were unjustly enriched at the expense of Plaintiffs and Class members.

## SIXTY-THIRD CLAIM FOR RELIEF
### (By Plaintiff Laura Childs On Behalf of the Minnesota Class)

658.   Plaintiff Laura Childs, on behalf of herself and the Minnesota Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

659.   Plaintiff Laura Childs purchased PSPs within the State of Minnesota during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

660.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Minnesota at prices that were more than they would have been but for Defendants' actions.

661.   Defendants appreciated and knowingly accepted the benefits bestowed upon them by Plaintiff and Class members. Defendants have paid no

consideration to any other person for any of the benefits they have received from Plaintiff and Class members.

662.   It is inequitable for Defendants to accept and retain the benefits received without compensating Plaintiff and Class members.

## SIXTY-FOURTH CLAIM FOR RELIEF
**(By Plaintiff Christopher Todd On Behalf of the Mississippi Class)**

663.   Plaintiff Christopher Todd, on behalf of himself and the Mississippi Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

664.  Plaintiff Christopher Todd purchased PSPs within the State of Mississippi during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

665.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Mississippi at prices that were more than they would have been but for Defendants' actions.

666.   Defendants retained the benefit of overcharges received on the sales of Defendants' PSPs, which in equity and good conscience belong to Plaintiffs and Class members on account of Defendants' anticompetitive conduct.

## SIXTY-FIFTH CLAIM FOR RELIEF
**(By Plaintiff Rebecca Lee Simoens On Behalf of the Missouri Class)**

667.   Plaintiff Rebecca Lee Simoens, on behalf of herself and the Missouri Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

668.   Plaintiff Rebecca Lee Simoens purchased PSPs within the State of Missouri during the Class Period.  But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

- 107 -

No. 15-MD-2670 JLS (MMD)

669.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Missouri at prices that were more than they would have been but for Defendants' actions.

670.   Plaintiff and Missouri Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiff and Missouri Class Members.

671.   Defendants appreciated the benefit bestowed upon them by Plaintiff and Missouri Class members.

672.   Defendants accepted and retained the benefit bestowed upon them under inequitable and unjust circumstances arising from unlawful overcharges to Plaintiff and Missouri Class members.

<u>**SIXTY-SIXTH CLAIM FOR RELIEF**</u>
**(By Plaintiffs Melissa Bowman and Barbara Buenning**
**On Behalf of the Nebraska Class)**

673.   Plaintiffs Melissa Bowman and Barbara Buenning, on behalf of themselves and the Nebraska Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

674.   Plaintiff Melissa Bowman and Barbara Buenning purchased PSPs within the State of Nebraska during the Class Period.  But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

675.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Nebraska at prices that were more than they would have been but for Defendants' actions.

676.   Defendants received money from Plaintiffs and Class members as a direct result of the unlawful overcharges, and have retained this money. Defendants have paid no consideration to any other person in exchange for this money.

677.   In justice and fairness, Defendants should disgorge such money and remit the overcharged payments back to Plaintiffs and Class members.

## SIXTY-SEVENTH CLAIM FOR RELIEF
### (By Plaintiffs Nay Alidad, Dwayne Kennedy, and Nancy Stiller
### On Behalf of the Nevada Class)

678.   Plaintiffs Nay Alidad, Dwayne Kennedy, and Nancy Stiller, on behalf of themselves and the Nevada Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

679.   Plaintiffs Nay Alidad, Dwayne Kennedy, and Nancy Stiller purchased PSPs within the State of Nevada during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

680.   Defendants unlawfully overcharged end payers, who made purchases Defendants' PSPs in Nevada at prices that were more than they would have been but for Defendants' actions.

681.   Plaintiffs and Class members have conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges for Defendants' PSPs.

682.   Defendants appreciated the benefits bestowed upon them by Plaintiffs and Class members, for which they have paid no consideration to any other person.

683.   Defendants have knowingly accepted and retained the benefits bestowed upon them by Plaintiffs and Class members.

684.   The circumstances under which Defendants have accepted and retained the benefits bestowed upon them by Plaintiffs and Class members are inequitable in that they result from Defendants' unlawful overcharges for Defendants' PSPs.

///

///

- 109 -

## SIXTY-EIGHTH CLAIM FOR RELIEF
### (By Plaintiff Jody Cooper On Behalf of the New Hampshire Class)

685.   Plaintiff Jody Cooper, on behalf of herself and the New Hampshire Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein

686.   Plaintiff Jody Cooper purchased PSPs within the State of New Hampshire during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

687.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in New Hampshire at prices that were more than they would have been but for Defendants' actions.

688.   Defendants have received a benefit from Plaintiff and Class members in the nature of revenue resulting from the unlawful overcharges, which revenue resulted from anticompetitive prices that inured to the benefit of Defendants.

689.   Under the circumstances, it would be unconscionable for Defendants to retain such benefits.

## SIXTY-NINTH CLAIM FOR RELIEF
### (By Plaintiff Vivek Dravid On Behalf of the New Mexico Class)

690.   Plaintiff Vivek Dravid, on behalf of himself and the New Mexico Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

691.   Plaintiff Vivek Dravid purchased PSPs within the State of New Mexico during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

692.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in New Mexico at prices that were more than they would

No. 15-MD-2670 JLS (MMD)

have been but for Defendants' actions.

693.   Defendants have knowingly benefitted at the expense of Plaintiff and Class members from revenue resulting from unlawful overcharges for Defendants' PSPs.

694.   To allow Defendants to retain the benefits would be unjust because the benefits resulted from anticompetitive pricing that inured to Defendants' benefit and because Defendants have paid no consideration to any other person for any of the benefits they received.

## SEVENTIETH CLAIM FOR RELIEF
### (By Plaintiffs Corey Norris and Elizabeth Twitchell
### On Behalf of the North Carolina Class)

695.   Plaintiffs Corey Norris and Elizabeth Twitchell, on behalf of themselves and the North Carolina Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

696.   Plaintiffs Corey Norris and Elizabeth Twitchell purchased PSPs within the State of North Carolina during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

697.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in North Carolina at prices that were more than they would have been but for Defendants' actions.

698.   Plaintiffs and Class members have conferred an economic benefit upon Defendants in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

699.   Plaintiffs and Class members did not interfere with Defendants' affairs in any manner that conferred these benefits upon Defendants.

700.   The benefits conferred upon Defendants were not gratuitous, in that they comprised revenue created by unlawful overcharges arising from Defendants'

No. 15-MD-2670 JLS (MMD)

actions to fix, maintain and stabilize artificially high prices for PSPs on the market.

701.  The benefits conferred upon Defendants are measurable, in that the revenue Defendants have earned due to unlawful overcharges are ascertainable by review of sales and other business records.

702.  Defendants consciously accepted the benefits and continue to do so as of the date of this filing.

## SEVENTY-FIRST CLAIM FOR RELIEF
### (By Plaintiffs Tya Hughes and Bonnie VanderLaan
### On Behalf of the North Dakota Class)

703.  Plaintiffs Tya Hughes and Bonnie VanderLaan, on behalf of themselves and the North Dakota Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

704.  Plaintiffs Tya Hughes and Bonnie VanderLaan purchased PSPs within the State of North Dakota during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

705.  Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in North Dakota at prices that were more than they would have been but for Defendants' actions.

706.  Defendants, without justification, have been enriched at the direct impoverishment of Plaintiffs and Class members, in that Defendants have been enriched by revenue resulting from unlawful overcharges for Defendants' PSPs.

707.  Plaintiffs and Class members have been impoverished by the overcharges for Defendants' PSPs resulting from Defendants' unlawful conduct, and they have no legal means of retrieving the value of their impoverishment.

708.  Defendants' enrichment and Plaintiffs' and Class members' impoverishment are connected. Defendants have paid no consideration to any other person for any benefits they received directly or indirectly from Plaintiffs and

No. 15-MD-2670 JLS (MMD)

Class Members.

709.   There is no justification for Defendants' receipt of the benefits causing their enrichment, because Plaintiffs and Class members paid anticompetitive prices that inured to Defendants' benefit, and it would be inequitable for Defendants to retain any revenue gained from their unlawful overcharges.

710.   Plaintiffs and Class members have no remedy at law.

**SEVENTY-SECOND CLAIM FOR RELIEF**

**(By Plaintiffs Danielle Johnson and Beth and Liza Milliner**
**On Behalf of the Oregon Class)**

711.   Plaintiffs Danielle Johnson and Beth and Liza Milliner, on behalf of themselves and the Oregon Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

712.   Plaintiffs Danielle Johnson and Beth and Liza Milliner purchased PSPs within the State of Oregon during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

713.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Oregon at prices that were more than they would have been but for Defendants' actions.

714.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

715.   Defendants were aware of the benefit bestowed upon them by Plaintiffs and Class members.

716.   It would be inequitable and unjust for Defendants to retain any of the overcharges for PSPs derived from Defendants' unfair conduct without compensating Plaintiffs and Class members.

- 113 -

## SEVENTY-THIRD CLAIM FOR RELIEF
### (By Plaintiff Katherine McMahon
### On Behalf of the Rhode Island Class)

717.   Plaintiff Katherine McMahon, on behalf of herself and the Rhode Island Class, repeats and reasserts each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

718.   Plaintiff Katherine McMahon purchased PSPs within the State of Rhode Island during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

719.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Rhode Island at prices that were more than they would have been but for Defendants' actions.

720.   Plaintiff and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiff and Class members.

721.   Defendants were aware of and/or recognized the benefit bestowed upon them by Plaintiff and the Class members.

722.   Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiff and Class members.

## SEVENTY-FOURTH CLAIM FOR RELIEF
### (By Plaintiffs Casey Christensen and Bonnie VanderLaan
### On Behalf of the South Dakota Class)

723.   Plaintiffs Casey Christensen and Bonnie VanderLaan, on behalf of themselves and the South Dakota Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

724.   Plaintiffs Casey Christensen and Bonnie VanderLaan purchased PSPs within the State of South Dakota during the Class Period. But for Defendants'

No. 15-MD-2670 JLS (MMD)

conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

725. Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in South Dakota at prices that were more than they would have been but for Defendants' actions.

726. Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members.

727. Defendants were aware of the benefit bestowed upon them by Plaintiffs and Class members.

728. Under the circumstances, it would be inequitable and unjust for Defendants to retain such benefits without reimbursing Plaintiffs and Class members.

## SEVENTY-FIFTH CLAIM FOR RELIEF
### (By Plaintiffs Vivek Dravid and Tina Grant
### On Behalf of the Utah Class)

729. Plaintiffs Vivek Dravid and Tina Grant, on behalf of themselves and the Utah Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

730. Plaintiffs Vivek Dravid and Tina Grant purchased PSPs within the State of Utah during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

731. Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Utah at prices that were more than they would have been but for Defendants' actions.

732. Plaintiffs and Class members have conferred a direct economic benefit upon Defendants, in the nature of revenue resulting from unlawful

overcharges paid by Plaintiffs and the Class members and accepted and retained by Defendants, to the economic detriment of Plaintiffs and Class members.

733.   Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and Class members.

734.   Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class Members.

<u>**SEVENTY-SIXTH CLAIM FOR RELIEF**</u>
**(By Plaintiffs Stephanie Gipson and Jennifer A. Nelson**
**On Behalf of the Vermont Class)**

735.   Plaintiffs Stephanie Gipson and Jennifer A. Nelson, on behalf of themselves and the Vermont Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein

736.   Plaintiffs Stephanie Gipson and Jennifer A. Nelson purchased PSPs within the State of Vermont during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

737.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Vermont at prices that were more than they would have been but for Defendants' actions.

738.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class Members.

739.   Defendants accepted the benefit bestowed upon them by Plaintiffs and Class members.

740.   Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class members.

///

///

- 116 -

**SEVENTY-SEVENTH CLAIM FOR RELIEF**
**(By Plaintiffs Diana Mey and Jade Canterbury**
**On Behalf of the West Virginia Class)**

741.   Plaintiffs Diana Mey and Jade Canterbury, on behalf of themselves and the West Virginia Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

742.   Plaintiffs Diana Mey and Jade Canterbury purchased PSPs within the State of West Virginia during the Class Period. But for Defendants' conduct set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

743.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in West Virginia at prices that were more than they would have been but for Defendants' actions.

744.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

745.   Defendants were aware of or appreciated the benefit bestowed upon them by Plaintiffs and Class members.

746.   Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class members.

**SEVENTY-EIGHTH CLAIM FOR RELIEF**
**(By Plaintiffs Jessica Breitbach and Kenneth Dunlap**
**On Behalf of the Wisconsin Class)**

747.   Plaintiffs Jessica Breitbach and Kenneth Dunlap, on behalf of themselves and the Wisconsin Class, repeat and reassert each of the allegations contained in paragraphs 1 to 166 as if fully set forth herein.

748.   Plaintiffs Jessica Breitbach and Kenneth Dunlap purchased PSPs within the State of Wisconsin during the Class Period. But for Defendants' conduct

No. 15-MD-2670 JLS (MMD)

set forth herein, the price per unit of PSPs would have been lower, in an amount to be determined at trial.

749.   Defendants unlawfully overcharged end payers, who made purchases of Defendants' PSPs in Wisconsin at prices that were more than they would have been but for Defendants' actions.

750.   Plaintiffs and Class members have conferred an economic benefit upon Defendants, in the nature of revenue resulting from unlawful overcharges to the economic detriment of Plaintiffs and Class members.

751.   Defendants appreciated the benefit bestowed upon them by Plaintiffs and Class Members.

752.   Under the circumstances, it would be inequitable for Defendants to retain such benefits without compensating Plaintiffs and Class members.

## PRAYER FOR RELIEF

Accordingly, Plaintiffs, on behalf of themselves and the Classes of all others so similarly situated, respectfully requests that:

a)   The Court determine that each of the claims alleged in this Complaint may be maintained as a class action claims under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to each and every member of the Classes once certified;

b)   The unlawful conduct alleged herein be adjudged and decreed in violation of Section 1 of the Sherman Act, Section 3 of the Clayton Act, the listed state antitrust laws, state consumer protection laws, and common law;

c)   Plaintiffs and the members of the Classes recover damages, to the maximum extent allowed under applicable state law, and that a joint and several judgment in favor of Plaintiffs and the members of such Classes be entered against Defendants in an amount to be trebled to the extent such laws permit;

d)     Plaintiffs and the members of the Classes recover damages, to the maximum extent allowed by applicable state law , in the form of restitution and/or disgorgement of profits unlawfully gained from them;

e)     Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the conduct, contract, conspiracy, or combination alleged herein, or from entering into any other contract, conspiracy, or combination having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

f)     Plaintiffs and the members of the Classes be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate from and after the date of service of this Complaint;

g)     Plaintiffs and the members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law;

h)     Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## JURY DEMAND

Plaintiffs, on behalf of themselves and the Classes of all others similarly situated, hereby demand a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED: May 23, 2016                **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

                                   By:    */s/ Rachele R. Rickert*
                                          RACHELE R. RICKERT

                                   BETSY C. MANIFOLD
                                   RACHELE R. RICKERT
                                   750 B Street, Suite 2770
                                   San Diego, CA 92101

- 119 -

No. 15-MD-2670 JLS (MMD)

Telephone:   619/239-4599
Facsimile:   619/234-4599
manifold@whafh.com
rickert@whafh.com

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
FRED TAYLOR ISQUITH
THOMAS H. BURT
RANDALL S. NEWMAN
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/545-4653
isquith@whafh.com
burt@whafh.com
newman@whafh.com

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
THEODORE B. BELL
CARL MALMSTROM
One South Dearborn St., Suite 2122
Chicago, IL 60603
Telephone: 312/984-0000
Facsimile:   312/212-4401
tbell@whafh.com
malmstrom@whafh.com

*Interim Lead Counsel for the End Payer*
*Plaintiffs*

**LOCKRIDGE GRINDAL NAUEN PLLP**
HEIDI M. SILTON
KAREN H. RIEBEL
hmsilton@locklaw.com
khriebel@locklaw.com
100 Washington Ave. South
Minneapolis, MN 55401
Telephone:  612/339-6900
Facsimile:  612/339-0981

**POMERANTZ LLP**
JAYNE GOLDSTEIN
1792 Bell Tower Lane, Suite 203
Weston, FL 33326
Telephone: 954/315.3454
Facsimile: 954/315.3455
jagoldstein@pomlaw.com

- 120 -

No. 15-MD-2670 JLS (MMD)

**CASEY GERRY**
  **SCHENK FRANCAVILLA**
  **BLATT & PENFIELD LLP**
DAVID S. CASEY, JR.
GAYLE M. BLATT
JEREMY ROBINSON
110 Laurel Street
San Diego, CA 92101
Telephone: 619/238-1811
Facsimile:   619/544-9232
dcasey@cglaw.com
gmb@cglaw.com
jrobinson@cglaw.com

**PRITZKER LEVINE LLP**
ELIZABETH PRITZKER
SHIHO YAMAMOTO
180 Grand Ave., Suite 1390
Oakland, CA 94612
Telephone: 415/692-0772
Facsimile: 415/366-6110
ecp@pritzkerlevine.com
sy@pritzkerlevine.com

**LEVI & KORSINSKY LLP**
NANCY KULESA
30 Broad St., 24th Floor
New York, NY 1004
Telephone: 212/363-7500
Facsimile: 212/363-7171
nkulesa@zlk.com

**ZOLL & KRANZ LLC**
MICHELLE KRANZ
6620 West Central Ave.
Suite 100
Toledo, OH 43617
Telephone: 419/841-9623
Facsimile: 419/841-9719
michelle@toledolaw.com

**GAINEY, McKENNA & EGLESTON**
THOMAS J. McKENNA
tjmckenna@gme-law.com
440 Park Avenue South
New York, NY 10016
Telephone: 212/983-1300
Facsimile: 212/983-0383

**THE OLIVER LAW GROUP PC**
ALYSON OLIVER
363 W. Big Beaver Rd., Suite 200
Troy, MI 48084

- 121 -

Telephone: 248/327-6556
Facsimile: 248/436-3385
aoliver@oliverlg.com

**BOTTINI & BOTTINI, INC.**
FRANCIS A. BOTTINI, JR.
7817 Ivanhoe Ave., Suite 102
La Jolla, CA 92037
Telephone: 858/914.2001
Facsimile: 858/914.2002
fbottini@bottinilaw.com

**ZIMMERMAN LAW OFFICES PC**
THOMAS A. ZIMMERMAN, JR.
MATTHEW C. DE RE
77 West Washington Street, Suite 1220
Chicago, IL 60602
Telephone: 312/440-0020
Facsimile: 312/440-4180
tom@attorneyzim.com
matt@attorneyzim.com

**LAURENCE D. PASKOWITZ, ESQ.**
208 East 51st St., Suite 380
New York, NY 10022
Telephone: 212/685.0969
Facsimile: 212/685.2306
lpaskowitz@pasklaw.com

**SUSAN A. BERNSTEIN**
200 Highland Avenue, Suite 306
Needham, MA 02494-3035
Telephone: 781/290-5858
Facsimile: 781/247-4266
susan@sabernlaw.com

**BLOCK & LEVITON LLP**
WHITNEY E. STREET
LESLEY E. WEAVER
520 3rd Street, Suite 108
Oakland, CA 94607
Telephone: 415/968-8999
Facsimile: 617/507-6020
wstreet@blockesq.com
lweaver@blockesq.com

**BLOCK & LEVITON LLP**
ERICA G. LANGSEN
155 Federal Street, Suite 400
Telephone: 617/398-5600
Facsimile: 617/507-6020
elangsen@blockesq.com

- 122 -

**BAILEY GLASSER LLP**
ERIC B. SNYDER
KATHERINE E. CHARONKO
209 Capitol St.
Charleston, WV 25301
Telephone: 304/345-6555
Facsimile: 304/342-1110
esnyder@baileyglasser.com
kcharonko@baileyglasser.com

**STRAUS & BOIES, LLP**
TIMOTHY D. BATTIN
NATHAN M. CIHLAR
CHRISTOPHER V. LE
CARLA M. VOIGT
4041 Fairfax Drive, Fifth Floor
Fairfax, VA 22201
Telephone: 703/764-8700
Facsimile: 703/764-8704
tbattin@straus-boies.com
ncihlar@straus-boies.com
cle@straus-boies.com
cvoigt@straus-boies.com

**TRUMP, ALIOTO, TRUMP & PRESCOTT, LLP**
MARIO N. ALIOTO
LAUREN C. CAPURRO
2280 Union Street
San Francisco, CA 94123
Telephone: 415/563-7200
Facsimile: 415/346-0679
laurenrussell@tatp.com

**SANDIA CASCADE LEGAL GROUP, PLLC**
ROBERT TAYLOR-MANNING
1800 S. Jackson Street, #123
Seattle, WA 98144
Telephone: 206/292-6300
Facsimile: 206/292-6301
rtm@taylor-manning.net

**STOLL STOLL BERNE LOKTING & SHLACHTER P.C.**
KEITH S. DUBANEVICH
STEVE D. LARSON
MARK A. FRIEL
209 SW Oak Street, Suite 500
Portland, OR 97204
Telephone: 503/227-1600
Facsimile: 503/227-6840
kdubanevich@stollberne.com

- 123 -

slarson@stollberne.com
mfriel@stollberne.com

**LAW OFFICE OF JERALD M. STEIN**
JERALD M. STEIN
PO Box 1011
835 Main Street
Margaretville, NY 12455-1011
Telephone: 845/586-6111
Facsimile:  845/586-2815
jmsteinlaw@gmail.com

**SULLIVAN HILL**
DONALD G. REZ
550 West C Street, 15th Floor
San Diego, CA 92101
Telephone: 619/233-4100
Facsimile: 619/231-4372
rez@sullivanhill.com

**GREGORY J. SEMANKO, P.A.**
GREGORY J. SEMANKO
23427 735th Ave.
Dassel, MN 55325
Telephone: 612/226-0262
Facsimile: 320/275-1999
gregoryjsemankopajr@embarqmail.com

**ZELLE LLP**
CHRISTOPHER T. MICHELETTI
JUDITH A. ZAHID
JIANGXIAO ATHENA HOU
44 Montgomery Street, Suite 3400
San Francisco, CA 94104
Telephone: 415/693-0700
Facsimile: 415/693-0770
cmicheletti@zelle.com
jzahid@zelle.com
ahou@zelle.com

**THE KRALOWEC LAW GROUP**
KIMBERLY A. KRALOWEC
KATHLEEN STYLES ROGERS
CHAD A. SAUNDERS
44 Montgomery Street, Suite 1210
San Francisco, CA 94104
Telephone: 415/546-6800
Facsimile: 415/546-6801
kkralowec@kraloweclaw.com
krogers@kraloweclaw.com
csaunders@kraloweclaw.com

- 124 -

No. 15-MD-2670 JLS (MMD)

**HULETT HARPER STEWART LLP**
KIRK B. HULETT
DENNIS STEWART
550 West C St., Suite 1500
San Diego, CA
Telephone: 619/338-1133
Facsimile: 619/338-1139
kbh@hulettharper.com
dstewart@hulettharper.com

**KIRBY MCINERNEY LLP**
ROBERT J. GRALEWSKI , JR.
600 B Street, Suite 1900
San Diego, CA  92101
Telephone:  619/398-6255
bgralewski@kmllp.com

**CRAIG MCKENZIE NICHOLAS**
NICHOLAS AND TOMASEVIC
ALEX M. TOMASEVIC
225 Broadway Suite 1900
San Diego , CA  92101
Telephon: 619/325-0492
Facsimile:  619/325-0496
cnicholas@nicholaslaw.org
atomasevic@nicholaslaw.org

**ADEMI & O'REILLY, LLP**
SHPETIM ADEMI
3620 East Layton Avenue
Cudahy , WI  53110
Telephone:  414/482-8000
sademi@ademilaw.com

**FINKELSTEIN THOMPSON, LLP**
ROSEMARY M. RIVAS
One California Street, Suite 900
San Francisco , CA  94111
Telephone:  415/398-8700
Facsimile:  415/398-8704
rrivas@finkelsteinthompson.com

**WILSON TURNER KOSMO LLP**
FREDERICK WILLIAM KOSMO, JR.
550 West C Street Suite 1050
San Diego , CA  92101-3532
Telephone:  619/236-9600
Facsimile:  619/236-9669
fkosmo@wilsonturnerkosmo.com

- 125 -

No. 15-MD-2670 JLS (MMD)

**BLOOD HURST & O'REARDON LLP**
TIMOTHY GORDON BLOOD
PAULA R. BROWN
THOMAS J. O'REARDON
701 B Street, Suite 1700
San Diego, CA 92101
Telephone: 619/338-1100
Facsimile: 619/338-1101
tblood@bholaw.com
pbrown@bholaw.com
toreardon@bholaw.com

**GUSTAFSON GLUEK PLLC**
DANIEL E. GUSTAFSON
DANIEL C. HEDLUND
Canadian Pacific Plaza
120 So. 6th St., Ste. 2600
Minneapolis , MN 55402
Telephone: 612/333-8844
Facsimile: 612/339-6622
dgustafson@gustafsongluek.com
dhedlund@gustafsongluek.com

**GROSS & KLEIN, LLP**
STUART GEORGE GROSS
The Embarcadero Pier 9, Suite 100
San Francisco , CA 94111
Telephone: 415/671-4628
Facsimile: 415/480-6688
sgross@grosskleinlaw.com

**SAFIRSTEIN METCALF LLP**
PETER G. SAFIRSTEIN
1250 Broadway, 27th Floor
New York, NY 10001
Telephone: 212/201-2855
psafirstein@safirsteinmetcalf.com

*Additional Counsel for the End Payer Plaintiffs*

SHELF.STABLE.SEAFOOD:22939v4.complaint

- 126 -

No. 15-MD-2670 JLS (MMD)