1

**FILED UNDER SEAL – HIGHLY CONFIDENTIAL INFORMATION SUBJECT TO PROTECTIVE ORDER OF THE COURT**

2

BETSY C. MANIFOLD (182450)

3

manifold@whafh.com
RACHELE R. RICKERT (190634)

4

rickert@whafh.com
MARISA C. LIVESAY (223247)

5

livesay@whafh.com
BRITTANY N. DEJONG (258766)

6

dejong@whafh.com
**WOLF HALDENSTEIN ADLER**

7

**FREEMAN & HERZ LLP**
750 B Street, Suite 2770

8

San Diego, CA 92101
Telephone: 619/239-4599

9

Facsimile:  619/234-4599

10

*Interim Lead Counsel for the End Payer Plaintiffs*

11

[Additional Counsel Listed on Signature Page]

12

**UNITED STATES DISTRICT COURT**

13

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

14

15

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 15-MD-2670 JLS (MDD) |
| | **[REDACTED] MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** |
| This Document Relates To: | **(FILED UNDER SEAL)** |
| The Indirect Purchaser End Payer Actions | DATE:  December 20, 2018<br>TIME:    9:00 a.m.<br>JUDGE:  Hon. Janis L. Sammartino<br>CTRM:   4D (4th Floor – Schwartz) |

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILED UNDER SEAL**

# <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

I.    INTRODUCTION ................................................................... 1

II.   STATEMENT OF FACTS ....................................................... 3

III.  CLASS DEFINITION .............................................................. 4

IV.   ARGUMENT ........................................................................... 5

      A.    Standards for Class Certification ................................. 5

      B.    EPPs' Meet the Rule 23(a) Requirements ................... 7

            1.    Numerosity ........................................................ 7

            2.    Commonality ..................................................... 8

            3.    Typicality .......................................................... 9

            4.    Adequacy ......................................................... 11

      C.    Common Questions of Law and Fact
            Predominate Here........................................................ 12

            1.    Common Evidence Will Prove
                  Defendants' Liability....................................... 13

            2.    Common Evidence Will Prove Defendants'
                  Anticompetitive Overcharge............................ 13

            3.    Common Evidence Will Prove Classwide
                  Antitrust Injury. .............................................. 16

                  a.    Presumption of Impact to EPPs............... 16

            4.    Common Proof of Pass-Through and
                  Impact to EPPs................................................ 18

                  a.    General Standards on Proof of
                        Pass-Through to EPPs .................................. 18

                  b.    Economic Characteristics of the Packaged
                        Tuna Distribution Chain Support Pass-Through............ 22

                  c.    Quantitative Economic Analysis of

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

                   Changes in Cost and Price of Packaged Tuna in the Distribution Chain Support Pass-Through ........................................................ 23

         d.    Common Anecdotal and Other Evidence Support Pass-through and Impact. ................................. 28

     5.    The Amount of Damages Will Be Estimated Using A Common Method. ...................................... 29

  D.    The Class Device Is The Superior Method To Adjudicate This Controversy ............................................. 31

     1.    Use of the Class Device Promotes Judicial Efficiency ...................................................... 31

     2.    Identification of Class Members Presents No Barriers to Manageability ...................................... 33

  E.    The Court Should Certify the Multistate Cartwright Class Under California Law................................................ 35

     1.    Defendants' Conspiracy in California Satisfies Due Process ............................................................. 35

     2.    No Conflicts Prevent Application of California Law to the Cartwright Class ...................................... 36

  F.    The Court Should Also Certify 32 Separate Statewide Classes ................................................... 39

  G.    The Court Should Appoint Class Counsel......................................... 40

V.    CONCLUSION    ........................................................................ 41

- ii –

FILED UNDER SEAL

# **TABLE OF AUTHORITIES**

**Page No.**

## **Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ....................................................................... 12

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    568 U.S. 455 (2013) ......................................................................... 7

*Astiana v. Kashi Co.* 291 F.R.D. 493 (S.D. Cal. 2013) ............................................ 8

*AT&T Mobility LLC v. AU Optronics Corp.,*
    707 F.3d 1106 (9th Cir. 2013) ................................................... 35, 36

*Bafus v. Aspen Realty, Inc.,*
    236 F.R.D. 652 (D. Idaho 2006) .................................................... 12

*Bigelow v. RKO Radio Pictures, Inc.,*
    327 U.S. 251 (1946) ....................................................................... 30

*Briseno v. ConAgra Foods, Inc.,*
    844 F.3d 1121 (9th Cir. 2017) ........................................... 6, 33, 34

*Bruno v. Superior Court,*
    127 Cal. App. 3d 120 (1981) ........................................................ 30

*Butler v. Sears Roebuck & Co.,*
    727 F.3d 796 (7th Cir. 2013) .......................................................... 2

*B.W.I. Custom Kitchen v. Owens-Illinois, Inc.,*
    191 Cal. App. 3d 1341 (1987) ........................................... 16, 17, 20

*Computer Econ., Inc. v. Gartner Group, Inc.,*
    50 F. Supp. 2d 980 (S.D. Cal. 1999) ............................................ 16

*Conagra Brands, Inc. v. Briseno,*
    138 S. Ct. 313, 99 L. Ed. 2d 206 (2017)) ...................................... 6

**FILED UNDER SEAL**

*Coral Constr. Co. v. King County*,
   941 F.2d 910 (9th Cir.1991) .................................................29

*Costco Wholesale Corp. v. AU Optronics Corp.*,
   No. C13-1207RAJ, 2016 U.S. Dist.
   LEXIS 54495 (W.D. Wash. Mar. 3, 2016) .........................29

*Dilts v. Penske Logistics, LLC*,
   No. 08-cv-318-CAB (BLM), 2013 U.S. Dist.
   LEXIS 192323 (S.D. Cal. Jan. 17, 2013) ..............................5

*Edwards v. Nat'l Milk Producers Fed'n*,
   No. C 11-04766 JSW, 2014 U.S. Dist.
   LEXIS 130621 (N.D. Cal. Sept. 16, 2014) ..........................40

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ..............................................12

*Erie R.R. v. Tompkins*,
   304 U.S. 64 (1938) ....................................................16, 32

*Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ. Litig.)*,
   881 F.3d 679 (9th Cir. 2018) .....................................37, 38, 39

*Farar v. Bayer AG*,
   No. 14-cv-04601-WHO, 2017 U.S. Dist.
   LEXIS 193729 (N.D. Cal. Nov. 15, 2017) ..........................34

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
   No. 09-cv-00852, 2012 U.S. Dist.
   LEXIS 125677 (E.D. Wis. Sept., 2012) ..............................19

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
   No. 09-cv-00852, 2017 U.S. Dist.
   LEXIS 142470 (E.D. Wis. Aug. 8, 2017) .............................20

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ..............................36

- iv –

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

*Gordon v. Microsoft Corp.*,
   No. 00-5994, 2001 U.S. Dist.
   LEXIS 26360 (D. Minn. Mar. 30, 2001) ............................................................20

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)................................................................... 9, 10

*Hanon v. Dataproducts Corp.,* 976 F.2d 497 (9th Cir. 1992) ................................10

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251 (1972) ........................................................................................5

*Hopkins v. De Beers Centenary AG*,
   No. CGC-04-432954,
   2005 WL 1020868 (S.F. Cnty. Super. Ct. Apr. 15, 2005) ..................................16

*In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012)................................14

*In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*,
   No. Civ. 02-6030 (WHH), 2006 U.S. Dist.
   LEXIS 16619 (D.N.J. Apr. 4, 2006) ...................................................................14

*In re Cathode Ray Tube (CRT) Antitrust Litig.* (“*CRT*”),
   308 F.R.D. 606 (N.D. Cal. 2015).................................................................*passim*

*In re Cathode Ray Tube (CRT) Antitrust Litig.* (“*CRT*”),
   No. MDL 1917, 2013 U.S. Dist
   LEXIS 137945 (N.D. Cal. Sept. 24, 2013) ....................................................21, 29

*In re Cathode Ray Tube (CRT) Antitrust Litig.* (“*CRT*”),
   No. MDL 1917, 2013 U.S. Dist
   LEXIS 137946 (N.D. Cal. Sept. 24, 2013) ...................................................*passim*

*In re Chocolate Confectionary Antitrust Litig.*,
   289 F.R.D. 200 (M.D. Pa. 2012).......................................................................22

*In re Cipro Cases I and II*,
   121 Cal. App. 4th 402 (2004).............................................................................17

- v –

**FILED UNDER SEAL**

*In re Citric Acid Antitrust Litig.*,
No. 95–1092, 1996 U.S. Dist.
LEXIS 16409 (N.D. Cal. Oct. 2, 1996)..........................................................13, 14

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.* ("*DRAM*"),
No. 02-MDL-1486-PJH, 2006 U.S. Dist.
LEXIS 39841 (N.D. Cal. Jun. 5, 2006)........................................................9, 11, 14

*In re Flonase Antitrust Litig.*,
284 F.R.D. 207 (E.D. Pa. 2012) .........................................................................19

*In re High-Tech Employee Antitrust Litig.*,
985 F. Supp. 2d 1167 (N.D. Cal. 2013) ..............................................8, 29, 31, 32

*In re Korean Ramen Antitrust Litigation* ("*Korean Ramen*"),
No. 13-cv-04115-WHO, 2017 U.S. Dist.
LEXIS 7756 (N.D. Cal. Jan. 19, 2017) ........................................................*passim*

*In re Korean Ramen Antitrust Litigation* ("*Korean Ramen*"),
No. 13-cv-04115-WHO, 2018 U.S. Dist.
LEXIS 48606 (N.D. Cal. Mar. 23, 2018)..............................................................38

*In re Lidoderm Antitrust Litig.*,
 No. 14-md-02521-WHO, 2017 U.S.
Dist. LEXIS 24097 (N.D. Cal. Feb. 21, 2017).......................................33, 34, 40

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-2420-YGR, 2017 U.S. Dist.
LEXIS 57340 (N.D. Cal. Apr. 12, 2017) ..............................................................6

*In re Magnetic Audiotape Antitrust Litig.*,
No. 99 CIV. 1580 (LMM), 2001 U.S. Dist.
LEXIS 7303 (S.D.N.Y. June 6, 2001) .................................................................13

*In re Nexium (Esomeprazole) Antitrust Litig.*,
297 F.R.D. 168 (D. Mass. 2013) ........................................................................40

*In re Online DVD Rental Antitrust Litig.*,
No. M 09-2029-PJH, 2010 U.S. Dist.
LEXIS 138558 (N.D. Cal. Dec. 23, 2010)................................................8, 10, 14

**FILED UNDER SEAL**

*In re Optical Disk Drive Antitrust Litig*. ("*Optical Disk*"),
No. 10-md-2143-RS, 2016 U.S. Dist.
LEXIS 15899 (N.D. Cal. Feb. 8, 2016) ........................................*passim*

*In re OSB Antitrust Litig.*,
No. 06-826, 2007 U.S. Dist. LEXIS 56617 (E.D. Pa. Aug. 3, 2007) ...........20, 28

*In re Packaged Seafood Products Antitrust Litig.*,
277 F. Supp. 3d 1167 (S.D. Cal. 2017).........................................*passim*

*In re Petrobras Sec. Litig.*,
862 F.3d 250 (2d. Cir. 2017)..................................................33

*In re Pharm. Indus. Average Wholesale Price Litig.*,
582 F.3d 156 (1st Cir. 2009) ..................................................30

*In re Polyurethane Foam Antitrust Litig*. ("*Polyurethane Foam*"),
314 F.R.D. 226 (N.D. Ohio 2014) ...........................................*passim*

*In re Relafen Antitrust Litig.*,
221 F.R.D. 260 (D. Mass. 2004)...........................................13, 16

*In re Rubber Chemicals Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) ...........................................5, 8

*In re Scrap Metal Antitrust Litig.*,
527 F.3d 517 (6th Cir. 2008)..................................................30

*In re Static Random Access Memory (SRAM) Antitrust Litig*. ("*SRAM*"),
264 F.R.D 603 (N.D. Cal. 2009)...........................................*passim*

*In re Static Random Access Memory (SRAM) Antitrust Litig*. ("*SRAM*"),
No. C 07-01819 CW, 2008 U.S. Dist.
LEXIS 107523 (N.D. Cal. Sept. 29, 2008) .......................................14

*In re Tableware Antitrust Litig.*,
241 F.R.D. 644 (N.D. Cal. 2007).............................................2, 12

## FILED UNDER SEAL

*In re Terazosin Hydrochloride Antitrust Litig.*,
220 F.R.D. 672 (S.D. Fla. 2004) .......................................................... 40

*In re TFT-LCD Antitrust Litig.* ("*LCD*"),
267 F.R.D. 583 (N.D. Cal. 2010) .................................................... *passim*

*In re TFT-LCD Antitrust Litig.* ("*LCD*"),
No. M 07-1827 SI, 2012 U.S. Dist.
LEXIS 21696 (N.D. Cal. Feb. 21, 2012) ............................................. 19

*In re Visa Check/Mastermoney Antitrust Litig.*,
192 F.R.D. 68 (E.D.N.Y. 2000) ........................................................... 14

*In re Vitamins Antitrust Litig.*,
209 F.R.D. 251 (D.D.C. 2002) ............................................................ 12

*In re Wellbutrin XL Antitrust Litig.*,
282 F.R.D. 126 (E.D. Pa. 2011) ......................................................... 40

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015) ........................................................ 10

*Johnston v. Pierce Packing Co.*,
550 F.2d 474 (9th Cir.1977) ................................................................ 16

*Lambert v. Nutraceutical Corp.*,
870 F.3d 1170 (9th Cir. 2017) ............................................................. 30

*Larson v. Trans Union*, LLC,
No. 12-CV-05726-WHO, 2015 U.S. Dist.
LEXIS 83459 (N.D. Cal. June 26, 2015) ............................................ 34

*Leyva v. Medline Indus. Inc.*,
716 F.3d 510 (9th Cir. 2013) ............................................................... 30

*Lilly v. Jamba Juice Co.*,
308 F.R.D. 231 (N.D. Cal. 2014) ........................................................ 34

*Los Angeles Memorial Coliseum Comm'n v. Nat'l Football League*,
791 F.2d 1356 (9th Cir. 1986) ............................................................ 29

**FILED UNDER SEAL**

*Mazza v. American Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) .......................................................................*passim*

*McAtee v. Capital One, F.S.B.,*
   479 F.3d 1143 (9th Cir. 2007) ....................................................................... 18

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (2010) ..................................................................................... 37

*Meijer, Inc. v. Abbot Labs.*, No. C 07-5985 CW,
   2008 U.S. Dist. LEXIS 78219 (N.D. Cal. Aug. 27, 2008)............................. 13

*Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*,
   246 F.R.D. 293 (D.D.C. 2007) ....................................................................... 31

*Microsoft I-V Cases*,
   J.C.C.P. No. 4106, Trade Regulation
   Reports at 88,560 (S.F. Cnty. Super. Ct., Aug. 29, 2000) ...................... 17, 18

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016); .................................................................... 9

*Pecover v. Elec. Arts Inc.*,
   No. C 08-2820 VRW, 2010 U.S. Dist.
   LEXIS 140632 (N.D. Cal. Dec. 21, 2010) ................................................ 20, 36

*Pettit v. P&G*,
   No. 15-cv-02150-RS, 2017 U.S. Dist.
   LEXIS 122668 (N.D. Cal. Aug. 3, 2017) ........................................................ 34

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015)........................................................................... 30

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979) .......................................................................................... 5

*Resnick v. Frank*,
   779 F.3d 934 (9th Cir. 2015)............................................................................. 8

**FILED UNDER SEAL**

*Rikos v. Procter & Gamble Co.*,
   799 F.3d 497 (6th Cir. 2015) ..................................................................... 33

*Ruiz v. XPO Last Mile, Inc.*¸
   No. 5-cv-2125 JLS (KSC), 2016 U.S. Dist.
   LEXIS 152095 (S.D. Cal. Feb. 1, 2016) ............................................... 6, 8

*Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*,
   821 F.3d 992 (8th Cir. 2016) ..................................................................... 33

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003); .................................................................... 11

*Stockwell v. City and County of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) ............................................................. 6, 12

*Tourgeman v. Collins Fin. Servs.*,
   No. 08-cv-1392-JLS (NLS), 2011 U.S. Dist.
   LEXIS 122422 (S.D. Cal. Oct. 21, 2011) ............................................... 8, 9

*Wagner v. NutraSweet Co.*,
   95 F.3d 527 (7th Cir. 1996) ....................................................................... 10

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................... 9

*Zinser v. Accufix Research Institute, Inc.*,
   253 F.3d 1180 (9th Cir. 2001) ............................................................ 31, 32

**Statutes**

Cal. Bus. & Prof. Code
   § 16760(d) ..................................................................................................... 30

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

## Other Authorities

Class Action Fairness Act of 2005,
  Pub. L. No. 109-2, 119 Stat. 4 (2005) .................................................................. 18


Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE:
  CIVIL PROCEDURE
  § 1781, at 254–55 (3d ed. 2004) ........................................................ 31

## Rules

Fed. R. Civ. P.
  23 ............................................................................................................. *passim*
  23(a) ......................................................................................................... *passim*
  23(a)(1) .............................................................................................................. 7
  23(a)(2) .............................................................................................................. 8
  23(b) .............................................................................................. 6, 16, 39
  23(b)(3) .................................................................................................... *passim*
  23(c)(2)(B) ...................................................................................................... 33
  23 (g) ............................................................................................................ 12

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

1

2 **<u>TABLE OF ABBREVIATIONS</u>**

3

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

| Ardagh (formerly Impress) | Can maker in American Samoa used by both StarKist and COSI |
|---|---|
| ATUNA | Trade publication |
| BB Rog Resp. | Bumble Bee's Fifth Supplemental Objections and Responses to Plaintiffs; Second Set of Interrogatories |
| BKK | Bangkok spot price for skipjack |
| Burt Decl. | Declaration of Thomas H. Burt dated May 29, 2018 |
| CAFA | Class Action Fairness Act of 2005 |
| COSI | Chicken of the Sea |
| EPPs | End Payer Plaintiffs |
| Fed. R. Civ P. | Federal Rule of Civil Procedure |
| FCF | F.C.F. Fishery Co. Ltd. |
| FAD | Fish Aggregating Device |
| IRI | Information Resources, Inc. |
| Manifold Decl. | Declaration of Betsy Manifold dated May 29, 2018 |
| Milton's | Restaurant in Del Mar, CA and meeting spot for Defendants |
| NFI | National Fisheries Institute |
| POC price | "Pago Pago market price" or "Pacific Operating Committee" |
| Project Peach | Co-packing agreement between BumbleBee and COSI in Lyons, Georgia |
| SamPac | COSI plant in American Samoa |
| Sunding | Annexed Declaration of David Sunding, Ph.D |

20
21
22
23
24
25
26
27
28

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

# I.   INTRODUCTION

This Court has already twice upheld the legal sufficiency of the class action allegations in this case.[1]  The only question that remains for the Court to decide on this motion for class certification is whether, on the limited discovery to date, Plaintiffs have made a showing sufficient to satisfy Rule 23 of the Federal Rules of Civil Procedure ("Rule(s)").  Because the End Payer Plaintiffs ("EPPs") demonstrate that their class allegations have satisfied each applicable requirement under that Rule, the Court should grant the motion.

The prerequisites of Rule 23(a) that may in some cases be hotly debated cannot be credibly contested here.  One company and three individuals have pleaded guilty to fixing prices on shelf stable packaged tuna ("Packaged Tuna"), a staple food produce bought by millions of EPPs each year, more than establishing numerosity and commonality. *See* Declaration of Thomas H. Burt dated May 29, 2018 ("Burt Decl."), ¶¶ 47-48, 51-52.  Given the nature of the conspiracy, the named plaintiffs are typical of the larger class, and their adequacy is more than demonstrated by their involvement in prosecuting the EPP class claims thus far. *See* Declaration of Betsy C. Manifold dated, May 29, 2018, ("Manifold Decl.") Exs. 1-65.  The adequacy of class counsel likewise cannot be reasonably disputed

---

[1]    *See e.g.,* March 14, 2017 Order Granting in Part and Denying in Part Defendants' Remaining Motions to Dismiss (Dkt. No. 295) (hereinafter "*PSP II*") at 5-6 ("The state-law issues . . . the subject of this corresponding Order [include] the legal permissibility of all relevant Plaintiffs' attempt to bring claims on behalf of a nationwide California class"), and at 20-24; September 26, 2017 Order Granting in Part and Denying in Part Motions to Dismiss (Dkt. No. 492), *In re Packaged Seafood Products Antitrust Litig.,* 277 F. Supp. 3d 1167 (S.D. Cal. 2017) (hereinafter "*PSP III*") at 16-21; 21 (examining "whether Plaintiffs' have stated a plausible Cartwright Class" and finding that "Defendants have not met their burden to dismiss Plaintiffs' Cartwright Class claims at this stage; accordingly, the Court DENIES Defendants' Motion to Dismiss on this ground.").

- 1 –

**FILED UNDER SEAL**

1   (*see* Manifold Decl., ¶¶ 3-6), and has already been determined by the Court (Dkt.
2   No. 119).

3          Because the Rule 23(a) prerequisites and the admitted criminal price-fixing
4   liability are not reasonably disputed, the focus of Defendants' opposition to class
5   certification will likely rest with Rule 23(b)(3), specifically whether the impact of
6   Defendants' illegal conduct can be resolved using class-wide evidence. The impact
7   on the individuals in the proposed EPP class is primarily expressed as an
8   overcharge to the prices of Packaged Tuna during the Class Period, and in the pass-
9   through of these charges to EPPs in their purchases during the Class Period
10  (defined below). As demonstrated in the Expert Report of David Sunding, PhD
11  ("Sunding"), attached as Exhibit 90 to the Burt Decl., each of these is
12  accomplished on a common basis, by academically accepted, industry-standard
13  econometric studies, discussed at length below.

14         Once the Court identifies common questions of law and fact pursuant to
15  Rule 23(a)(2), it then determines whether those common questions predominate
16  over individual issues. *Butler v. Sears Roebuck & Co.*, 727 F.3d 796, 801 (7th Cir.
17  2013). Class treatment is appropriate when as here, plaintiffs will use a common
18  method to resolve the issues central to the claims in one stroke. *Id.*[2]

19
20  ---
    [2]     Rule 23 does not require that EPPs prove their claims as an evidentiary
21  matter. At class certification, the Court's review of any liability evidence, is
    limited to determining whether the claims will stand or fall on common proof. *In re*
22  *TFT-LCD Antitrust Litig.* ("*LCD*"), 267 F.R.D. 583, 600 (N.D. Cal. 2010)
    amended in part, No. M 07-1827 SI, 2011 U.S. Dist. LEXIS 84476 (N.D. Cal. July
23  28, 2011) ("the Court must identify the issues involved in the case, and determine
    which are subject to common proof and which are subject to individualized
24  proof"); *In re Tableware Antitrust Litig.*, 241 F.R.D. 644, 652 (N.D. Cal. 2007)
25  (certifying class showing "that means exist for proving impact on a class-wide
    basis"). This brief's factual discussion is provided for background. The attached
26  Burt Decl. contains a fuller recitation of relevant information uncovered through
27  the ongoing discovery process as they show the classwide impact of Defendants'
28  conduct.

- 2 -

**FILED UNDER SEAL**

As set forth below, EPPs readily satisfy each element of Rule 23(a) and Rule 23(b)(3), and respectfully submit that the Court should certify the EPP class.

## II.    STATEMENT OF FACTS

In 2008, Defendants established in-person, phone, and email contacts with each other's senior management teams, and since at least 2011 through 2015, used those contacts to exchange competitive information to reach an anti-competitive agreement to match prices and control discounting. ███████████████████

Before the Class Period, in late 2007 and March 2008, ████████████████

In 2010, the cartel members redoubled their efforts to coordinate pricing, resulting in significant overcharge at their coordinated prices from 2011 onwards.

- 3 –

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

1 ███████████████████████████████████████████

2 ████████████████████████████████████████

3   The cartel ended only when the Department of Justice intervened. Since

4 then, Bumble Bee has admitted that, from 2011 through 2013, they did in fact

5 collude to fix prices. ████████████████████████████████████

6 ████████████  In addition, three individuals – Ken Worsham and Scott

7 Cameron of Bumble Bee, and Steve Hodge of StarKist – have pleaded guilty to the

8 same conspiracy.

9 **III.   CLASS DEFINITION**

10   EPPs seek certification of a class, pursuing claims under the Cartwright Act,

11 Section 16720 of the California Business and Professions Code ("The Cartwright

12 Act"), defined as:

13   **Cartwright Act class**: All persons and entities who resided in one of

14   the States described in paragraphs 113(b) to 113(gg) of the Fourth

15   Consolidated Amended Complaint, specifically Arizona, Arkansas,

16   California, the District of Columbia, Florida, Guam, Hawaii, Iowa,

17   Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi,

18   Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New

19   York, North Carolina, North Dakota, Oregon, Rhode Island, South

20   Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West

21   Virginia, and Wisconsin, who indirectly purchased Packaged Tuna in

22   cans or pouches smaller than forty ounces for end consumption and

23   not for resale, produced by any Defendant or any current or former

24   subsidiary or affiliate thereof, or any co-conspirator, during the period

25   June 1, 2011 through July 1, 2015 (the "Class Period").

26

27 ───────────────────

28 [3]  ███████████████████████████████

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

1  The class excludes purchases of meal kits.  Also excluded from the Class is the
2  Court.

3      Likewise, EPPs seek certification of a class for each State, District or
4  Territory enumerated in paragraphs 113(b) to 113(gg) of the Fourth Consolidated
5  Amended Complaint, as specified in EPPs' Proposed Order filed concurrently
6  herewith, mirroring the above Cartwright Act Class definition:

7          All persons and entities who resided in [State, District or Territory],
8      who indirectly purchased Packaged Tuna in cans or pouches smaller
9      than forty ounces for end consumption and not for resale, produced by
10     any Defendant or any current or former subsidiary or affiliate thereof,
11     or any co-conspirator, during the period June 1, 2011 through July 1,
12     2015 (the "Class Period"). The class excludes purchases of meal kits.
13     Also excluded from the Class is the Court.[4]

14  **IV.    ARGUMENT**

15      **A.    Standards for Class Certification**

16      It has long been recognized that antitrust class actions play an integral role in
17  the enforcement of antitrust laws. *See Reiter v. Sonotone Corp.*, 442 U.S. 330, 344
18  (1979); *Hawaii v. Standard Oil Co. of Cal.,* 405 U.S. 251, 266 (1972). As a result,
19  it is incumbent on the courts to "'resolve doubts in these actions in favor of
20  certifying the class.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT*"), 308
21  F.R.D. 606, 612 (N.D. Cal. 2015) (quoting *In re Rubber Chemicals Antitrust Litig.*,
22  232 F.R.D. 346, 350 (N.D. Cal. 2005)); *Dilts v. Penske Logistics, LLC*, No. 08-cv-
23  318-CAB (BLM), 2013 U.S. Dist. LEXIS 192323, at *5 (S.D. Cal. Jan. 17, 2013)

24  _____
   [4]     In connection with EPPs' motion seeking substitution of a named plaintiff
25  and withdrawal of three plaintiffs filed on May 25, 2018 (Dkt. No. 1104), EPPs
26  submitted a [Proposed] Fifth Amended Consolidated Class Action Complaint
   which only included the proposed changes to the named plaintiffs seeking
27  substitution and withdrawal, and entailed no substantive changes to the proposed
28  classes defined at Paragraphs 110(a) to 110(gg).

**FILED UNDER SEAL**

1  ("doubts regarding the propriety of class certification should be resolved in favor
2  of certification").

3       Class certification is governed by Rule 23. Rule 23(a) requires that: "(1) the
4  class is so numerous that joinder of all members is impracticable; (2) there are
5  questions of law or fact common to the class; (3) the claims or defenses of the
6  representative parties are typical of the claims or defenses of the class; and (4) the
7  representative parties will fairly and adequately protect the interest of the class."
8  *Ruiz v. XPO Last Mile, Inc.*¸ No. 5-cv-2125 JLS (KSC), 2016 U.S. Dist. LEXIS
9  152095, at *14 (S.D. Cal. Feb. 1, 2016). Further, the party seeking class
10  certification only needs to satisfy the requirements of one of the subsections of
11  Rule 23(b). *Id.* at *13.  Class actions for money damages proceed under Rule
12  23(b)(3), which requires that "the questions of law or fact common to the class
13  members predominate over any questions affecting only individual members, and
14  that a class action is superior to other available methods for fairly and efficiently
15  adjudicating the controversy."[5] Fed. R. Civ. P. 23(b)(3).

16       While the court's class certification analysis must be rigorous and may
17  overlap with the merits of the Plaintiffs' underlying claims, the mere fact that a
18  party moves for class certification is not a "license to engage in free-ranging merits
19  inquiries." *Stockwell v. City and County of San Francisco*, 749 F.3d 1107, 1111-12

---

21  [5]     This Circuit has recently rejected the concept of a separate administrative or
22  ascertainability requirement. "To the extent concerns arise about the identification
    of class members, those concerns are subsumed in Rule 23's superiority analysis,
23  which considers whether the class is defined clearly and with objective criteria, and
24  is manageable . . . . ('Rule 23(b)(3) already contains a specific, enumerated
    mechanism to achieve that goal [of mitigating burdens of trying a class action]: the
25  manageability criterion of the superiority requirement.')."  *In re Lithium Ion*
26  *Batteries Antitrust Litig.*, No. 13-MD-2420-YGR, 2017 U.S. Dist. LEXIS 57340,
    at *64 n.3 (N.D. Cal. Apr. 12, 2017) (quoting *Briseno v. ConAgra Foods, Inc.*, 844
27  F.3d 1121, 1127 (9th Cir. 2017) *cert. denied*, *sub nom. Conagra Brands, Inc. v.*
28  *Briseno*, 138 S. Ct. 313, 199 L. Ed. 2d 206, (2017)).

- 6 –

**FILED UNDER SEAL**

(9th Cir. 2014) (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013)). Instead, "[m]erits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* (emphasis in original); *see also CRT*, 308 F.R.D. at 612.

In two rounds of motions to dismiss, this Court has already addressed the sufficiency of the EPP class allegations. Both times, this Court has found that the allegations, if supported by facts, permit Plaintiffs to proceed with a multistate class consisting of purchasers of Packaged Tuna from 32 states. *See PSP II* at 5-6 (deciding "the legal permissibility of all relevant Plaintiffs' attempt to bring claims on behalf of a nationwide California class"), and 20-24 (choice of law analysis); *PSP III* at 1181-1183 (examining "whether Plaintiffs' have stated a *plausible* Cartwright Class" and finding that "Defendants have not met their burden to dismiss Plaintiffs' Cartwright Class claims at this stage"). The Court further found that Plaintiffs had stated a plausible Cartwright class and EPPs may also proceed with claims in each of those 32 states that offer indirect purchasers a private right of action akin to California's Cartwright Act. *Id.* at 1183 ("Defendants have not shown that Plaintiffs' newly defined Cartwright Classes create material differences between California and the relevant states' laws"). The Court has already performed a meticulous and rigorous analysis on those points and need not rework its analysis a third time. Here, Plaintiffs' burden is to establish that sufficient evidence now supports the allegations to satisfy each prerequisite of Rule 23(a) and Rule 23(b)(3)—a burden they easily carry.

**B.    EPPs Meet the Rule 23(a) Requirements**

**1.    Numerosity**

Rule 23(a)(1) provides that a class should be certified if "the class is so numerous that joinder of all members is impracticable." Impracticability is a lower bar than impossibility. The Court should focus its inquiry on the difficulty or

**FILED UNDER SEAL**

1  inconvenience of joining all the class members. *Astiana v. Kashi Co.* 291 F.R.D.

2  493, 501 (S.D. Cal. 2013).

3        Plaintiffs need not "state the exact number of potential class members, nor is

4  there a bright-line minimum threshold requirement." *In re High-Tech Employee*

5  *Antitrust Litig.,* 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (citation omitted);

6  *see also, Ruiz*, 2016 U.S. Dist. LEXIS 152095, at *18-19 (finding 250 members

7  sufficient). Where the exact size of the class is unknown but common sense

8  indicates that the class is large, numerosity is satisfied. *Tourgeman v. Collins Fin.*

9  *Servs.*, No. 08-cv-1392-JLS (NLS), 2011 U.S. Dist. LEXIS 122422, at *22 (S.D.

10  Cal. Oct. 21, 2011); *see also In re Static Random Access Memory (SRAM)*

11  *Antitrust Litig.* ("*SRAM*"), 264 F.R.D 603, 608 (N.D. Cal. 2009).

12        Here, the proposed EPP classes easily meet the numerosity requirements.

13  Retailers throughout the United States sold Packaged Tuna. Sales made by direct

14  action plaintiff Wal-Mart alone are sufficient to establish that in every state at issue

15  here - the number of end purchasers who bought Packaged Tuna is so numerous

16  that joinder of all of them in a single action would be impracticable. ▇▇▇

17  ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

18  ▇▇▇▇▇▇▇▇ The classes comprise individual purchasers from 32 different

19  states, districts or territories. Manifold Decl., Ex. 67. *See In re Online DVD Rental*

20  *Antitrust Litig.*, No. M 09-2029-PJH, 2010 U.S. Dist. LEXIS 138558, at *42 (N.D.

21  Cal. Dec. 23, 2010) *aff'd sub nom. Resnick v. Frank*, 779 F.3d 934 (9th Cir. 2015)

22  (the fact that a class is geographically diverse supports class certification) (citing *In*

23  *re Rubber Chem. Antitrust Litig.*, 232 F.R.D. at 350-51). Uncontroverted evidence

24  of the geographically widespread sale of billions of units clearly satisfies

25  numerosity.

26        **2.**      **Commonality**

27        Rule 23(a)(2) requires "questions of law or fact common to the class." The

28  commonality requirement is satisfied if a classwide proceeding has the "capacity

- 8 –

FILED UNDER SEAL

1   . . . to generate common *answers* apt to drive the resolution of the litigation." *Wal-*
2   *Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citations and quotations
3   omitted). The mere presence of individual issues will not defeat commonality.
4   *Tourgeman*, 2011 U.S. Dist. LEXIS 122422, at *32. "The existence of shared
5   legal issues with divergent factual predicates is sufficient, as is a common core of
6   salient facts coupled with disparate legal remedies within the class." *Hanlon v.*
7   *Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

8   Courts have routinely held, where an antitrust conspiracy has been
9   adequately alleged, "the very nature of a conspiracy antitrust action compels a
10  finding that common questions of law and fact exist." *CRT*, 308 F.R.D. at 617.[6]
11  This Court has already determined that EPPs have validly pleaded a plausible
12  conspiracy. *In re Packaged Seafood Products* ("*PSP III*"), 277 F. Supp. 3d at
13  1173-74, 1183, 1185. Issues such as the identity of the conspirators, duration and
14  terms of the conspiracy, and whether the conduct satisfies each claim alleged will
15  be proved by evidence that focuses on the Defendants' conduct and not that of the
16  individual class members. For example, ███████████████████████████
17  ████████████████████████████████████████████████████████
18  ████████████████████████████████████████████████████████
19  ██████████████ are all direct evidence of a conspiracy that supplies common proof
20  of common issues.

21      **3.   Typicality**

22  EPPs are each members of the multistate Cartwright Class, and each state
23  class is represented by at least one named plaintiff. All satisfy the permissive

---

24  [6]    *See also Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283
25  (N.D. Cal. 2016); *In re Optical Disk Drive Antitrust Litig.* ("*Optical Disk*"), No.
26  10-md-2143-RS, 2016 U.S. Dist. LEXIS 15899, at *73 (N.D. Cal. Feb. 8, 2016);
    *LCD*, 267 F.R.D. at 593; *In re Dynamic Random Access Memory (DRAM)*
27  *Antitrust Litig.* ("*DRAM*"), No. 02-MDL-1486-PJH, 2006 U.S. Dist. LEXIS 39841,
28  at *29 (N.D. Cal. Jun. 5, 2006).

**FILED UNDER SEAL**

typicality requirement of Rule 23(a)(3) which requires only that the representative's claims are "reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. The court's examination into typicality revolves around the questions of "whether other [class] members have the same *or similar* injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) (emphasis added) (citation and quotations omitted).[7] EPPs fulfill each one here.

Plaintiffs satisfy the typicality prong of Rule 23 by alleging that Defendants engaged in a price-fixing scheme which affected all class members regardless of whether each "plaintiff followed different purchasing procedures, purchased in different quantities or at different prices, or purchased a different mix of products than did the members of the class." *CRT*, 308 F.R.D at 613.

As such, the inquiry surrounding typicality here can "'be determined with reference to the [defendant's] actions, not with respect to particularized defenses it might have against certain class members.'" *In re Yahoo Mail Litig.*, 308 F.R.D. 577, 594 (N.D. Cal. 2015) (quoting *Wagner v. NutraSweet Co.,* 95 F.3d 527, 534 (7th Cir. 1996)); *see also In re Online DVD Rentals Antitrust Litig.*, 2010 U.S. Dist. LEXIS 138558, at *44 (typicality exists "if the representative plaintiffs' claims arise from the same event, practice or course of conduct that gives rise to

---

[7]     *See also In re Korean Ramen Antitrust Litigation* ("*Korean Ramen*"), No. 13-cv-04115-WHO, 2017 U.S. Dist. LEXIS 7756, at *60-61 (N.D. Cal. Jan. 19, 2017) (rejecting defendants' arguments that plaintiffs lacked typicality because many individual types of consumers purchased the product from different channels, as that failed to show how those differences separated them from each other with respect to the overcharge claim at issue).

- 10 –

**FILED UNDER SEAL**

1    the claims of the absent class members and if their claims are based on the same

2    legal or remedial theory.").

3          Each proposed Class Representative has shown that they purchased

4    Packaged Tuna products and thus that they were all injured by the Defendants'

5    illegal conspiracy to fix prices. *See* Manifold Decl., ¶ 7 and Exhibits 1-65

6    (attaching plaintiff declarations). Defendants' conduct did not vary from class

7    member to class member. Thus, the claims of the representative EPPs are typical of

8    all class members.

9          **4.  Adequacy**

10         There are two aspects to the adequacy requirement under Rule 23(a): that the

11   named plaintiffs and their counsel do not have any conflicts of interest with other

12   class members and that the named plaintiffs and their counsel will prosecute the

13   action vigorously on the class's behalf. *Staton v. Boeing Co.*, 327 F.3d 938, 957

14   (9th Cir. 2003); *see also CRT,* 308 F.R.D. at 618.

15         Each proposed Class Representative purchased Packaged Tuna products

16   during the Class Period. Manifold Decl., Exs. 1-65. Each has actively participated

17   in this litigation including *inter alia,* sitting for depositions, providing responses to

18   written discovery, and reviewing filings. *Id.* Each understands the obligation and

19   responsibilities to the class and plans to continue vigorously prosecuting this action

20   as class representatives. *Id.* Each plaintiff's interests are directly in line with those

21   of the absent class members. No conflict exists between the members of the Class,

22   or the Classes, because each stands in the same relation to Defendants: as an end-

23   purchaser of Packaged Tuna initially sold by Defendants. No group with a different

24   or potentially adverse interest exists here because their claims arise out of the same

25   illegal conduct performed by the Defendants, are based on the same legal theories,

26   and seek the same relief. *See infra* at IV.C. *See also DRAM*, 2006 U.S. Dist.

27   LEXIS 39841, at *36 (finding adequacy where "the named plaintiffs allege that all

28   members of the proposed class paid artificially inflated prices as a result of

**FILED UNDER SEAL**

defendants' [antitrust violation] during the relevant class period, that all suffered similar injury as a consequence of the conspiracy, and that all seek the same relief"); *In re Tableware Antitrust Litig.*, 241 F.R.D. at 649 (no conflict precluded certification of antitrust claims); *Bafus v. Aspen Realty, Inc.*, 236 F.R.D. 652, 657 (D. Idaho 2006) (same). Therefore, the proposed Class Representatives adequately represent the interests of the absent Class Members.[8]

### C.   Common Questions of Law and Fact Predominate Here

Predominance is satisfied where the elements of the class claims are subject to generalized, as opposed to individualized, proof. *DRAM*, 2006 U.S. Dist. LEXIS 39841, at *38; *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 266 (D.D.C. 2002). Here, EPPs will use generalized proof for all three key elements of their claims that Defendants: "[(1) formed] a conspiracy to fix prices in violation of the antitrust laws; (2) the fact of plaintiffs' antitrust injury, or 'impact' of defendants' unlawful activity; and (3) the amount of damages sustained as a result of the antitrust violations." *Optical Disk*, 2016 U.S. Dist. LEXIS 15899, at *46.

"Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). In analyzing the predominance question in price-fixing cases, "courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." *SRAM*, 264 F.R.D. 603, 611. Under Rule 23(b)(3) courts should not evaluate merits issues, but should "focus[] on whether the questions presented, whether meritorious or not, were common to the members of the putative class." *Stockwell*, 749 F.3d at 1113-14; *see also Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 & n.8 (9th Cir. 2011) (instructing district court to resolve "factual disputes necessary to determine

---

[8]   The Court assessed the adequacy of counsel in appointing Interim Lead Counsel pursuant to Rule 23(g). Dkt. No. 119.  *See also* Manifold Decl., ¶¶ 3-5.

**FILED UNDER SEAL**

whether there was a common pattern and practice that could affect the class *as a whole*" but "not to determine whether class members could actually prevail on the merits of their claims") (emphasis in original).

### 1. Common Evidence Will Prove Defendants' Liability

Common issues predominate in proving Defendants' antitrust violation because EPPs' claims arose out of a common course of conduct by Defendants and can be determined on a classwide basis through common proof. The inquiry necessarily focuses on Defendants' conduct and not the conduct of individual class members. *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 275 (D. Mass. 2004) ("The alleged antitrust violation relates solely to SmithKline's conduct, and as such, constitutes a common issue subject to common proof."); *see also Meijer, Inc. v. Abbot Labs.*, No. C 07-5985 CW, 2008 U.S. Dist. LEXIS 78219, at *23-24 (N.D. Cal. Aug. 27, 2008); *In re Citric Acid Antitrust Litig.*, No. 95–1092, 1996 U.S. Dist. LEXIS 16409, at *16-22 (N.D. Cal. Oct. 2, 1996).

Specifically, proof that Defendants entered into a combination or conspiracy in restraint of trade or commerce and engaged in unfair or deceptive trade practices will be accomplished through common evidence. Such common evidence will include guilty pleas by Defendants' executives to price-fixing charges, Defendants' own written communications and in-person meetings in furtherance of the conspiracy, exchanges of confidential and commercially sensitive pricing information, and contemporaneous price and package-size announcements. Because the existence of the conspiracy in violation of state laws is paramount here, class treatment is appropriate. A partial description of the common liability evidence is set forth in the Burt Declaration filed concurrently herewith.

### 2. Common Evidence Will Prove Defendants' Anticompetitive Overcharge

"[O]n a motion for class certification, the Court only evaluates whether the **method** by which plaintiffs propose to prove class-wide impact could prove such

- 13 –

**FILED UNDER SEAL**

impact, not whether plaintiffs in fact can prove class-wide impact." *In re Magnetic Audiotape Antitrust Litig.*, No. 99 CIV. 1580 (LMM), 2001 U.S. Dist. LEXIS 7303, at *15 (S.D.N.Y. June 6, 2001) (emphasis added). In other words, plaintiffs need only present a "plausible methodology to demonstrate that antitrust injury can be proven on a class-wide basis." *LCD*, 267 F.R.D 291, 313 (N.D. Cal. 2010), *abrogated on other grounds in In re ATM Fee Antitrust Litig.*, 686 F.3d 741, 755 n.7 (9th Cir. 2012); *see also In re Online DVD Rental Antitrust Litig.*, 2010 U.S. Dist. LEXIS 138558, at *61-64 (objections ultimately directed to the merits of plaintiffs' ability to prove impact did not establish that plaintiffs' methodology would require individualized evidence, and therefore did not bar certification); *In re Citric Acid Antitrust Litig.*, 1996 U.S. Dist. LEXIS 16409, at *21 (finding the "means exist for proving impact on a classwide basis, which is all that is required").

Here, EPPs' overcharge theory is consistent with the "general rule" that "an illegal price fixing scheme presumptively impacts upon all purchasers of a price-fixed product in a conspiratorially affected market." *In re Citric Acid Antitrust Litig.*, 1996 U.S. Dist. LEXIS 16409, at *18 (citation and quotations omitted). Courts routinely accept an expert's overcharge analysis as an acceptable method to prove injury in fact on a classwide basis. *See, e.g.*, *SRAM*, No. C 07-01819 CW, 2008 U.S. Dist. LEXIS 107523, at *46-47 (N.D. Cal. Sept. 29, 2008) (correlation analysis); *DRAM*, 2006 U.S. Dist. LEXIS 39841, at *45-47 (correlation analysis); *In re Bulk (Extruded) Graphite Prods. Antitrust Litig.*, No. Civ. 02-6030 (WHH), 2006 U.S. Dist. LEXIS 16619, at *39-44 (D.N.J. Apr. 4, 2006) (multiple regression and benchmark analyses). Such analyses do not depend on any individualized questions. *See In re Visa Check/Mastermoney Antitrust Litig.*, 192 F.R.D. 68, 82-83 (E.D.N.Y. 2000).

EPPs and their economic expert, Professor Sunding, rely upon standard and academically accepted methodologies performing their overcharge analysis.

- 14 –

**FILED UNDER SEAL**



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

No. 15-MD-2670 JLS (MDD)

FILED UNDER SEAL

### 3.     Common Evidence Will Prove Classwide Antitrust Injury

EPPs have the benefit both of legal presumption of impact, and of classwide empirical and economic proof of impact. Each individually, and *a fortiori* both together, establish impact using common evidence.

### a.     Presumption of Impact to EPPs

As part of its predominance inquiry, the Court applies the substantive legal standards of those states forming the basis for the claims upon which this multistate class action is based. *See, e.g., In re Relafen Antitrust Litig.*, 221 F.R.D. at 276 (Court examines "end payor plaintiffs' claims under governing state law . . . [which is] relevant to determining the demonstration of common injury necessary for certification."). This is equally true with regard to the presumptions and burdens of proof applied to the procedural requirements of Rule 23. *Johnston v. Pierce Packing Co.,* 550 F.2d 474, 476 n.1 (9th Cir.1977) (citing *Erie R.R. v. Tompkins,* 304 U.S. 64 (1938)); *see also Computer Econ., Inc. v. Gartner Group, Inc.,* 50 F. Supp. 2d 980, 990 (S.D. Cal. 1999) ("State rules that define the elements of a cause of action, affirmative defenses, presumptions, and burdens of proof, and rules that create or preclude liability are so obviously substantive that their application in diversity actions is required."); *LCD,* 267 F.R.D. at 600.

EPPs' resulting injury readily meets the predominance requirement under California law. California cases construing the Cartwright Act recognize a presumption of classwide impact in end purchaser horizontal price-fixing cases. As the court held in *B.W.I. Custom Kitchen v. Owens-Illinois, Inc.*, 191 Cal. App. 3d 1341, 1351 (1987), "a jury can *infer* the fact of injury when a conspiracy to fix prices has been established and plaintiffs have established that they purchased the affected goods or services." The *B.W.I. Custom Kitchen* court continued, "This inference eliminates the need for each class member to prove individually the consequences of the defendants' actions to him or her. Accordingly, impact can be

- 16 –

**FILED UNDER SEAL**

1  treated as a common question for certification purposes." *Id.* at 1351 (citation and
2  quotations omitted); *see also Hopkins v. De Beers Centenary AG*, No. CGC-04-
3  432954, 2005 WL 1020868, at *5 (S.F. Cnty. Super. Ct. Apr. 15, 2005) ("Where,
4  as here, Plaintiff alleges a market-wide restraint of trade, fact-of-injury is assumed
5  for class certification purposes"); *Microsoft I–V Cases*, J.C.C.P. No. 4106, Trade
6  Regulation Reports at 88,560 (S.F. Cnty. Super. Ct., Aug. 29, 2000) (Attached to
7  the Manifold Decl. as Exhibit 69) ("A *per se* violation raises a presumption of
8  harm because conduct such as a conspiracy to fix prices has the sole purpose of
9  artificially raising the price of the item. It follows that consumers of the product
10 pay more than they would in a competitive market even if the prices charged to
11 direct purchasers vary."). *B.W.I. Custom Kitchen* specifically applied this
12 presumption for indirect purchasers, where the product "is largely unchanged in
13 form" between defendant and consumer. *Id.* at 1352-53. Federal courts in
14 California also recognize the presumption of impact under California law. *See e.g.,*
15 *SRAM*, 264 F.R.D. at 612 & n.5; *LCD*, 267 F.R.D. at 600.

16       Defendants cannot overcome the presumption that the vast majority of the
17 proposed EPP Class suffered injury, even if it were later shown that some retailers
18 may have sporadically passed on Defendants' price increases during the class
19 period so that some consumers' purchases may not have involved an overcharge.
20 California and federal courts have rejected the notion that each member of the
21 purported class must prove that he or she absorbed at least some portion of the
22 overcharges in order to establish liability, and "[t]he fact that certain members of
23 the class may not have been injured at all does not defeat class certification." *See*
24 *In re Cipro Cases I and II*, 121 Cal. App. 4th 402, 413 (2004) (reaffirming the
25 application of the *B.W.I. Custom Kitchen*'s presumption of classwide impact on
26 indirect purchasers in horizontal price-fixing cases, whereby injury may be
27 assumed even if some consumers did not pay the overcharges because of their
28 individual circumstances, the market at issue in the case was "characterized by

- 17 –

**FILED UNDER SEAL**

1    individually negotiated prices, varying profit margins, and intense competition," or

2    the consumers bought the price-fixed product from middlemen); *Microsoft I–V*

3    *Cases*, Trade Regulation Reports at 88,562-63 (Manifold Decl., Ex. 69) (certifying

4    a class of indirect purchasers and holding that "[P]laintiffs need not prove that each

5    and every class member paid a supracompetitive price for the relevant software

6    products").

7        Application by federal courts of state substantive laws governing antitrust

8    impact and damages effectuates each state's policy favoring class action

9    enforcement of antitrust laws. This federal forum does not afford EPPs, as

10   members of a multistate class, another body of law. Rather, *state law* provides the

11   source of substantive rights enforced by a federal court exercising jurisdiction

12   under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005)

13   (codified at 28 U.S.C. § 1711 (2012)) ("CAFA"). *See McAtee v. Capital One*,

14   *F.S.B.,* 479 F.3d 1143, 1147 (9th Cir. 2007) ("removal of a CAFA case from state

15   to federal court produces a change of courtrooms and procedure rather than a

16   change of substantive law"). CAFA's jurisdictional expansion does not eviscerate

17   consumers' substantive state law antitrust rights and the various states' legislative

18   intent to retain the viability of indirect purchaser suits as an effective means of

19   enforcing state antitrust laws. Here, EPPs do not ask the Court to simply assume

20   impact by fact of the price-fixing conspiracy. Rather, California's presumption of

21   impact, in conjunction with EPPs' sound expert economic analysis and other

22   evidence described below, clearly establish common proof of classwide impact,

23   and meet the requirements of Rule 23(b)(3) here.

**4.    Common Proof of Pass-Through and Impact to EPPs**

**a.    General Standards on Proof of Pass-Through to EPPs**

27   In addition to presenting common proof of overcharge impact, EPPs present

28   below a reasonable method for determining on a classwide basis whether and to

- 18 –

**FILED UNDER SEAL**

1   what extent the overcharge was passed through to the retail level. *See LCD*, 267

2   F.R.D. at 601; *Optical Disk*, 2016 U.S. Dist. LEXIS 15899, at *59-60 (indirect

3   purchasers "must also show those overcharges were passed through all stages of

4   the distribution chain").  But at class certification, EPPs need not definitively show

5   common proof of injury or pass-through to ***all*** class members.[9]

6        "This is a question of methodology, not merit." *CRT*, 2013 U.S. Dist. LEXIS

7   137946, at *79.  In assessing impact to end-purchasers, "[t]he Court's job at this

8   stage is simple: determine whether the [EPPs] showed that there is a reasonable

9   method for determining, on a classwide basis, the antitrust impact's effects on the

10  class members." *Id.* at *78. The Court's "rigorous analysis overlaps with the merits

11  of the [EPPs'] claims and requires that the [EPPs] make an evidentiary case for

12  predominance, . . .but . . . a full-blown merits analysis . . . is forbidden and

13  unnecessary at this point." *Id.* at *79 (citation omitted).

14  ████████████████████████████████████████████████████████

15  ████████████████████████████████████████ Consumers bought the product

16  largely unchanged from how the Defendants sold it.  Where, as here, the price-

17  fixed item is the complete product purchased by the class members, "the price

18  charged by the manufacturer will largely determine the price paid by the end

19  user." *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co., Ltd.*, No. 09-cv-

20  _____

21  [9]   *See CRT*, No. MDL 1917, 2013 U.S. Dist. LEXIS 137946, at *80 (N.D. Cal.

22  Sept. 24, 2013) (plaintiffs "need not prove, at the class certification stage, that

     every single class member was in fact injured in a specific way"); *LCD*, No. M 07-

23  1827 SI, 2012 U.S. Dist. LEXIS 21696, at *50 (N.D. Cal. Feb. 21, 2012) (EPPs

24  "need not reconstruct each  . . . product sold to a class member . . . to establish that

     the class member paid an overcharge attributable to the conspiracy. Rather, . . .

25  plaintiffs . . . may establish pass-through by showing that companies in the

26  manufacturing and distribution chains passed along cost increases in general"); *In

     re Flonase Antitrust Litig.*, 284 F.R.D. 207, 227 (E.D. Pa. 2012) ("the inability to

27  show injury as to a few does not defeat class certification where the plaintiffs can

28  show widespread injury to the class") (citation and quotations omitted).

FILED UNDER SEAL

00852, 2012 U.S. Dist. LEXIS 125677, at *14 (E.D. Wis. Sept. 5, 2012); *see also Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.,* No. 09-cv-00852, 2017 U.S. Dist. LEXIS 142470 (E.D. Wis. Aug. 8, 2017) (certifying statewide classes of indirect purchasers who purchased aftermarket sheet metal auto parts that traveled down the distribution chain substantially unchanged).

In such circumstances, a common showing of injury by pass-through analysis has repeatedly warranted certification. *See, e.g., Korean Ramen*, 2017 U.S. Dist. LEXIS 7756, at *59 n.38 (accepting pass-through analysis because "[t]he ramen market does not present the same sort of complexities" as actions involving component parts); *In re OSB Antitrust Litig.*, No. 06-826, 2007 U.S. Dist. LEXIS 56617, at *29-32 (E.D. Pa. Aug. 3, 2007) (certifying class of indirect purchasers of defendants' products, but not class of homebuyers); *Gordon v. Microsoft Corp.*, No. 00-5994, 2001 U.S. Dist. LEXIS 26360, at *33-39 (D. Minn. Mar. 30, 2001) (product unchanged through distribution); *Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW, 2010 U.S. Dist. LEXIS 140632, at *63-68 (N.D. Cal. Dec. 21, 2010) (video games unchanged through distribution); *see also B.W.I. Custom Kitchen*, 191 Cal. App. 3d at 1352 (presumption of injury where product "largely unchanged in form").

To the extent distribution involves any claimed complexities, they serve as no bar to presentation of common proof of pass-through, impact and damages. *See SRAM*, 264 F.R.D. at 614 (citation and quotations omitted) ("divergent pricing and sales practices are not necessarily an impediment to measuring pass-through. Courts have held that contentions of infinite diversity of product, marketing practices, and pricing have been made in numerous cases and rejected"). Accordingly, this Court "may look past 'surface distinctions' in 'marketing mechanisms' when analyzing whether to certify indirect purchaser classes; [i]dentical products, uniform prices, and unitary distribution patterns are not

- 20 –

**FILED UNDER SEAL**

indispensable for class certification in this context." *Id.* (citations and quotations omitted; brackets in original).

Common proof of pass-through may be presented through: (1) qualitative evidence of the economic characteristics of the distribution chain that support pass-through of overcharges paid by direct purchasers to indirect purchasers,[10] (2) quantitative evidence of the prices paid by direct purchasers, indirect purchaser resellers, and end payors showing that overcharges are passed through, including empirical estimations of the pass-through amount,[11] and (3) anecdotal and other record evidence that supports the pass through of direct overcharges, including testimonial and documentary evidence from defendants or resellers regarding the treatment or effect of cost changes that are downstream from the direct overcharge.[12] As explained below, EPPs present all three forms of evidentiary proof, all of which support pass-through of the direct overcharge to EPPs, and all of which would be presented in a single trial on behalf of any one class member, or on behalf of the class as a whole.

---

[10]    *See, e.g., SRAM*, 264 F.R.D. at 613 (reviewing expert economist's application of economic theory).

[11]    *See, e.g., LCD*, 267 F.R.D. at 602-04 (expert's empirical studies showed that "channel-length pass-through rate can be measured"); *In re Polyurethane Foam Antitrust Litig.* ("*Polyurethane Foam*"), 314 F.R.D. 226, 286-88 (N.D. Ohio 2014) (expert's empirical studies of pass through "present a workable damages methodology" to show the "end-use overcharge rates").

[12]    *See, e.g., Polyurethane Foam*, 314 F.R.D. at 276 ("[d]efendants 'were keenly aware' of the relationship between flexible foam prices and the prices of end-use products"); *CRT*, MDL No. 1917, 2013 U.S. Dist. LEXIS 137945, at *118 (N.D. Cal. June 20, 2013) [(special master report discussing evidence that, *inter alia*, "Defendants expected resellers of CRT products to pass through cost changes . . . .") *adopted in CRT*, 2013 U.S. Dist. LEXIS 137946.

FILED UNDER SEAL

### b.   Economic Characteristics of the Packaged Tuna Distribution Chain Support Pass-Through

Analysis of predominance under Rule 23(b)(3) includes consideration of expert opinion on economic theory that forecasts pass-through of upstream pricing changes and whether the products and distribution channels at issue reflect characteristics that are likely to support pass-through to end purchasers.[13]  Multiple courts have held that expert opinion applying economic theory to the products and distribution channels at issue provides sufficient common proof showing pass through to all class members.[14]   Here, using the evidence available and highly regarded academic literature, EPPs' expert has demonstrated that economic theory strongly supports pass-through in the Packaged Tuna market.

First, the degree of competitiveness of the various levels of the distribution channels through which Defendants' products pass will impact pass-through. *See LCD*, 267 F.R.D. at 601-02. Literature does not specifically address Packaged Tuna pass-through, except as an analysis of a larger pattern of grocery pass-through.

------

[13]   *See, e.g., LCD*, 267 F.R.D. at 601-02 (describing expert's discussion of "the economic theory of pass-through" and "documentary evidence and industry information" regarding same); *SRAM*, 264 F.R.D. at 613 (application of economic theory to relevant product and market characteristics in assessing impact and pass-through of overcharge).

[14]   *See, e.g., SRAM*, 264 F.R.D. at 613 (finding expert's presentation on "theoretical issues"—including "temporal relationships, pricing practices, directness of affected costs, supply and demand" and pass through "plausible methodologies … to demonstrate class-wide injury"); *see also In re Chocolate Confectionary Antitrust Litig.,* 289 F.R.D. 200, 209-10, 220 (M.D. Pa. 2012) (application of economic theory to chocolate product and market characteristics supported predominance under Rule 23(b)(3) on the issue of direct purchaser impact and overcharge).

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**



      **c.**      **Quantitative Economic Analysis of Changes in**
                     **Cost and Price of Packaged Tuna in the**
                     **Distribution Chain Support Pass-Through**

The statistical and economic methodologies such as multiple regression and correlation analyses employed by Prof. Sunding are "well established as [] means of providing classwide proof of antitrust injury and damages." *CRT*, 308 F.R.D. at 629. Such evidence may also be used to establish pass-through of overcharges through the chain of distribution. *SRAM*, 264 F.R.D. at 613-15. Indeed, numerous courts have accepted indirect purchaser plaintiffs' proffered econometric analyses of pass-through and granted class certification.[15]   As detailed below, this case warrants a similar outcome.

---

[15]    *See SRAM*, 264 F.R.D. at 613-15 (finding pass-through of overcharges on SRAM chips incorporated into routers, switches and other finished products and classwide impact supported by econometric analyses); *Korean Ramen*, 2017 U.S.

**FILED UNDER SEAL**



_____

Dist. LEXIS 7756, at *58-59 (finding pass-through of overcharges on Korean ramen noodles from wholesalers to retailers to consumers and classwide impact supported by econometric analyses); *CRT*, 2013 U.S. Dist. LEXIS 137946, at *72-76 (same with respect to overcharges on CRTs incorporated into monitors and television products); *Polyurethane Foam*, 267 F.R.D. at 278-281 (same with respect to polyurethane foam incorporated into furniture, mattresses and other finished products); *LCD*, 267 F.R.D. at 601-06 (same with respect to liquid crystal display panels incorporated into laptops, televisions and other finished products).



[16]

[17] In fact, COSI had



- 25 –

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**



24    In  summary,  Professor  Sunding's  qualitative  analysis  of  retail  price

25    included:

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

Taken as a whole, this empirical work confirms both ███████████ and the prediction of economic theory: that changes in the price Defendants charged for their Packaged Tuna products were passed on to the consumer, typically at or above 100%, but in every empirical study of every part of the chain of commerce, at more than half. It was never zero, or even near zero. This result holds for the entire United States, and for individual states, based on a statistical sample of the retail universes, as the IRI study shows. This result holds for the entire period 2002 to 2017, as a study of the largest retailer of the products (and the world's largest retail firm) demonstrates. This result holds even at the individual store level, for a retail outlet with over 1,900 grocery stores, as the Kroger study shows. This result holds even for a retailer that sells only private label products, over a decade-long survey, as the Trader Joe's study demonstrates. And finally, as both the IRI convenience store data and the Coremark study show, this result holds even considering specifically those consumers who made their purchases at convenience stores.

This compares very favorably with similar work in other indirect antitrust cases. *See Korean Ramen,*

- 27 –

**FILED UNDER SEAL**

2017 U.S. Dist. LEXIS 7756, at *59 (monthly averages from two retailers and two wholesalers); *In re OSB Antitrust Litig.*, 2007 U.S. Dist. LEXIS 56617, at *30-31 (data from seven sellers); *Polyurethane Foam*, 314 F.R.D. at 280-281 (pass-through analysis has 35,000 usable observations of retail price).

These robust pass-through studies and analyses demonstrate that common evidence will be used to demonstrate injury to the Class such that the EPP Class Members can put forth common proof that when the Defendants caused an overcharge in the price to their own customers, the consumers bore at least part of that overcharge by paying a price that was increased by the pass-through of at least some quantum of that overcharge. Six models, some of which cover all or nearly all of the Class Period, and which in the aggregate address the broad swath of retail channels, provide that proof. These studies leave no room for a reasonable expectation that some part of the Class, or group of the Class members, was somehow unaffected even when the products were sold by Defendants at an anticompetitive rate. Once there is a sufficient evidentiary foundation to find that proof of injury is done by putting forward expert evidence, and not by putting forward separate proof by each Class member, the concern for certification is largely satisfied. Once injury is established, as discussed below in Section IV.C.5, it is well settled that damages may be estimated by statistical methods.

### d.     Common Anecdotal and Other Evidence Support Pass-through and Impact

EPPs also present anecdotal evidence, common to all Class Members, that supports proof of pass-through and impact. Principally, the Defendants themselves in the course of their business, researched and understood the interaction of their direct pricing with the pricing on store shelves. Their documents, reflecting their own contemporaneous analysis and planning for business purposes, show that they observed pass-through as a regular factor. This understanding was clear enough that Defendants' own personnel expressed rules-of-thumb for the store shelf price

- 28 –

**FILED UNDER SEAL**

1  that should be expected to result from a particular increase in Defendants' prices.[18]

2  ███████████████████████████████████

3  ███████████████████████████████████

4  ███████████████████████████████████

5       This evidence would be presented at trial and supports class certification

6  here. *See, e.g.*, *CRT*, 2013 U.S. Dist. LEXIS 137946, at *70-76, 93 (district court

7  describing such evidence and adopting special master report and recommendation

8  on certification that relied on it). Such evidence, when consistent with and

9  supported by qualitative and quantitative economic analyses, presents a strong case

10  for proof of impact. *See In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d

11  at 1215, 1217 (stating "courts have long noted that statistical and anecdotal

12  evidence must be considered in tandem" and citing *Coral Constr. Co. v. King*

13  *County*, 941 F.2d 910, 919 (9th Cir.1991) ("[T]he combination of convincing

14  anecdotal and statistical evidence is potent.")).

     **5.      The Amount of Damages Will Be Estimated Using A Common Method**

17       "'In antitrust cases, a lesser level of proof is needed to support the amount of

18  damages than to support the fact of antitrust injury.'" *Costco Wholesale Corp. v.*

19  *AU Optronics Corp.*, No. C13-1207RAJ, 2016 U.S. Dist. LEXIS 54495, at *6

20  (W.D. Wash. Mar. 3, 2016) (quoting *Los Angeles Memorial Coliseum Comm'n v.*

21  *Nat'l Football League*, 791 F.2d 1356, 1360 (9th Cir. 1986)). Courts require "only

22  that the plaintiff provide sufficient evidence to permit a just and reasonable

23  estimate of the damages." *Los Angeles Memorial Coliseum*, 791 F.2d at 1360

---

[18]   *See, e.g.,*



**FILED UNDER SEAL**

(citation and quotations omitted). This approach embodies the long-standing principle that a too-demanding damages standard would act as an "inducement to make wrongdoing so effective and complete in every case as to preclude any recovery, by rendering the measure of damages uncertain." *Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946).

It is well settled that, once an antitrust violation and its causal relation to plaintiffs' injury have been established, the necessity for proving damages individually does not defeat class predominance. *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (vacating denial of class certification); *see also Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015) ("We reaffirmed the proposition that differences in damage calculations do not defeat class certification after *Comcast*").

At the class certification stage, moreover, an actual calculation of damages is not necessary "as long as a valid method has been proposed for calculating those damages." *Lambert v. Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) (citing *Leyva*, 716 F.3d at 514). As such, courts "have never required a precise mathematical calculation of damages" for certification. *CRT*, 2013 U.S. Dist. LEXIS 137945, at *137 (citing *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 535 (6th Cir. 2008)); *see also LCD*, 267 F.R.D. at 606; *SRAM*, 264 F.R.D. at 615.

The use of aggregate damages calculations in antitrust class actions is also well established.[19] Indeed, the Cartwright Act expressly permits that aggregate damages may be proved by statistical methods. *See* Cal. Bus. & Prof. Code §

---

[19] *See In re Pharm. Indus. Average Wholesale Price Litig.*, 582 F.3d 156, 197-98 (1st Cir. 2009) ("The use of aggregate damages calculations is well established in federal court and implied by the very existence of the class action mechanism itself"); *In re Scrap Metal Antitrust Litig.*, 527 F.3d at 534 ("Damages in an antitrust class action may be determined on a classwide, or aggregate, basis . . . ."); *Polyurethane* Foam, 314 F.R.D. at 267 ("In an antitrust action, that "classwide" figure can be an aggregate damages sum").

- 30 –

FILED UNDER SEAL

16760(d); *Bruno v. Superior Court*, 127 Cal. App. 3d 120, 129 n.4, 134 n.9 (1981) ("aggregate damage calculation is expressly permitted under the Cartwright Act" and "[d]ue process does not prevent calculation of damages on a classwide basis"). At the class certification stage, EPPs need only offer a method for calculating aggregate damages for overcharges paid by the class members; damages need not be calculated at the class member level. *Meijer, Inc. v. Warner Chilcott Holdings Co. III, Ltd.*, 246 F.R.D. 293, 312-13 (D.D.C. 2007) (recognizing that aggregate class damage is a feasible approach and has been widely used in antitrust and other class actions).

### D. The Class Device Is The Superior Method To Adjudicate This Controversy

In assessing whether a class action is superior to other available methods for adjudicating the controversy under Rule 23(b)(3), courts consider four "non-exclusive" factors: "(1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action." *In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d at 1227 (citing *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1190-92 (9th Cir. 2001)). Indeed, "'if common questions are found to predominate in an antitrust action, . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied.'" *LCD*, 267 F.R.D. at 608 (quoting Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL PROCEDURE § 1781, at 254–55 (3d ed. 2004)). EPPs amply satisfy the enumerated criteria.

#### 1. Use of the Class Device Promotes Judicial Efficiency

Individual consumers have shown no interest in individually controlling separate actions, and EPPs are aware of no litigation in which an individual end

- 31 –

**FILED UNDER SEAL**

1   purchaser seeks relief for the conduct at issue. Given that EPPs' claims rise or fall
2   on common evidence, the alternative of conducting thousands of individual
3   adjudications would be inefficient. *In re High-Tech Employee Antitrust Litig.*, 985
4   F. Supp. 2d at 1228. Instead, concentrating litigation of these claims in this forum
5   is desirable because in antitrust cases such as this one, "damages . . . are likely to
6   be too small to justify litigation, but a class action would offer those with small
7   claims the opportunity for meaningful redress." *SRAM*, 264 F.R.D. at 615.
8
9   Even families purchasing
10  Packaged Tuna every week of the Class Period are unlikely to have damages
11  measured in the hundreds of dollars. A family purchasing twenty cans per month
12  through the Class Period would purchase approximately 1,000 cans at an
13  overcharge of well under $.20 per can. *See also Zinser*, 253 F.3d at 1190 ("Where
14  damages suffered by each putative class member are not large, this factor weighs
15  in favor of certifying a class action."). Finally, the Statewide Classes can be easily
16  managed due to the substantial similarity of the state laws at issue. As further
17  discussed in Section IV.F, *infra*, each of the 32 statewide classes are certifiable in
18  their own right. The 25 Statewide Classes with state antitrust claims, and the 23
19  Statewide Classes with state consumer protection claims, are all satisfied by the
20  evidence of the price-fixing. Since the EPPs' proof for the key elements of state
21  claims will be identical for all class members, it is possible to resolve efficiently all
22  class members' claims in one stroke. In adjudicating state-law claims under CAFA
23  jurisdiction, this Court is bound to follow *Erie*'s mandate by applying state laws.
24  Any variations in state laws that may exist relate to remedies, can be effectively
25  managed through bifurcated proceedings, and are simply not relevant to the issue
26  of class certification.   For these reasons, class treatment is superior to other
27  alternatives.
28

No. 15-MD-2670 JLS (MDD)

**FILED UNDER SEAL**

### 2. Identification of Class Members Presents No Barriers to Manageability

"As the Ninth Circuit recently explained, ascertainability (much less 'administrative ascertainability') is not a requirement under Rule 23." *In re Lidoderm Antitrust Litig.,* No. 14-md-02521-WHO, 2017 U.S. Dist. LEXIS 24097, at \*105 (N.D. Cal. Feb. 21, 2017) (citing *Briseno,* 844 F.3d at 1125-26 ("Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification.")). *See also In re Petrobras Sec. Litig.*, 862 F.3d 250, 264 (2d. Cir. 2017); *Rikos v. Procter & Gamble Co*., 799 F.3d 497, 525-26 (6th Cir. 2015); *Sandusky Wellness Center, LLC v. Medtox Scientific, Inc.*, 821 F.3d 992, 997-98 (8th Cir. 2016).

In *Briseno*, the Ninth Circuit affirmed the district court's holding that an objective criterion defining the class was sufficient to show it ascertainable despite the defendant's claims that there was no administratively feasible way to identify class members because records establishing purchase were not kept by the defendant and purchasers of the oil alleged to be deceptively labeled were unlikely to have saved their receipts or remember individual purchases. *See id.* at 1124-25. The Ninth Circuit further held that: (1) an administrative feasibility requirement would "conflict[ ] with the well-settled presumption that courts should not refuse to certify a class merely on the basis of manageability concerns" (*id*. at 1128); (2) there are no due process concerns regarding notice to class members because Rule 23(c)(2)(B) "does not insist on actual notice to all class members in all cases and recognizes it might be *impossible* to identify some class members for purposes of actual notice" (*see id*. at 1129) (citation and quotations omitted); and (3) there are no due process concerns for defendants because there is no right to "a *cost-effective* procedure for challenging every individual claim to class membership." *Id*. at 1132.

**FILED UNDER SEAL**

1    District courts have historically evaluated ascertainability to find "if [the

2 class] identifies a group of unnamed plaintiffs by describing a set of common

3 characteristics sufficient to allow a member of that group to identify himself or

4 herself as having a right to recover based on the description." *Larson v. Trans*

5 *Union*, LLC, No. 12-CV-05726-WHO, 2015 U.S. Dist. LEXIS 83459 at *43-44

6 (N.D. Cal. June 26, 2015). Where, as here, the classes are defined by purely

7 objective criteria to encompass consumers who have purchased Packaged Tuna

8 during the Class Period, ascertainability is satisfied. *See Farar v. Bayer AG*, No.

9 14-cv-04601-WHO, 2017 U.S. Dist. LEXIS 193729, at *41 (N.D. Cal. Nov. 15,

10 2017) (certifying a class of consumers alleging state consumer protection claims

11 where the "class definitions provide objective criteria that allow class members to

12 determine whether they are included in the proposed class"); *see also In re*

13 *Lidoderm Antitrust Litig.*, 2017 U.S. Dist. LEXIS 24097, at *105 (certifying class

14 of end purchasers even while class definition was "somewhat complex" where

15 based on objective criteria that allowed class members to determine their inclusion

16 in the class); *Pettit v. P&G*, No. 15-cv-02150-RS, 2017 U.S. Dist. LEXIS 122668,

17 at *5 n.1 (N.D. Cal. Aug. 3, 2017) (certifying a class noting that "this Circuit does

18 not require a class proponents proffer an administratively feasible way to identify

19 class members," and citing *Briseno*, 884 F.3d at 1125 n.4).

20    Courts in the Ninth Circuit recognize that at "the claims administration

21 stage, parties have long relied on claim administrators, various auditing processes,

22 sampling for fraud detection, follow-up notices to explain the claims process, and

23 other techniques tailored by the parties and the court to validate claims." *Briseno*,

24 844 F.3d at 1131 (citation and quotations omitted). Plaintiffs can and will

25 commission a media and notice expert for that purpose. *See Lilly v. Jamba Juice*

26 *Co.*, 308 F.R.D. 231, 239 (N.D. Cal. 2014).

27

28

No. 15-MD-2670 JLS (MDD)

FILED UNDER SEAL

### E.   The Court Should Certify the Multistate Cartwright Class Under California Law

EPPs seek to certify a multistate class that properly applies California's Cartwright Act to each Class Member's claim. Certifying the Cartwright Class, and applying California law to the adjudication of their claims, "comports with both (1) due process, and (2) California's choice of law rules." *Optical Disk*, 2016 U.S. Dist. LEXIS 15899, at *37 (certifying a class of 23 states and D.C. under California law); *Korean Ramen*, 2017 U.S. Dist. LEXIS 7756, at * 71-72 (same).

First, application of California law is appropriate because Defendants conducted their conspiratorial activity in California, targeted their collusion at California, and maintained substantial contacts with California by locating their headquarters and/or doing business there. *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106 (9th Cir. 2013) (permitting application of Cartwright Act to purchasers outside of California for conspiracy that included in-state collusion).

Second, having thoroughly examined choice of law rules twice thus far, including "each prong of analysis under *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 587 (9th Cir. 2012)," this Court "in large part agree[d] with Plaintiffs" to uphold the application of California law to the narrowly drawn Cartwright Class. *PSP III* at 1180-1183. In line with the Court's prior orders analyzing the application of *Mazza* to EPPs' price-fixing claims here, the Cartwright Class is limited to those states that explicitly authorize claims by indirect purchasers, and as in *Korean Ramen* and *Optical Disk*, common questions predominate as to the Cartwright Class and merit its certification. *See Optical Disk*, 2016 U.S. Dist. LEXIS 15899, at *37; *Korean Ramen*, 2017 U.S. Dist. LEXIS 7756, at *54.

### 1.   Defendants' Conspiracy in California Satisfies Due Process

"[T]he Cartwright Act can be lawfully applied [consistent with] defendant's due process rights when more than a *de minimis* amount of that defendant's alleged

- 35 –

**FILED UNDER SEAL**

1  conspiratorial activity leading to the sale of price-fixed goods to plaintiffs took

2  place in California." *AT&T Mobility*, 707 F.3d at 1113. Defendant's conspiratorial

3  conduct, strongly connected to California, supports the application of California

4  law as "neither arbitrary nor fundamentally unfair." *Id*. at 1107.

5    Two Defendants are headquartered in California. Burt Decl., ¶ 49.

6  ████████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████████

9  ████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████

11 █████████

12    █████████████████████████████████████████████

13 ████████████████████████████████████████████  These and other

14 acts in California in furtherance of the conspiracy satisfy due process. *AT&T*

15 *Mobility*, 707 F.3d at 1112 ("perpetration of anticompetitive activities within

16 California creates state interests in applying California law" to "conduct that

17 cause[d] out-of-state injuries") (citation and quotations omitted). *See also Pecover*,

18 2010 U.S. Dist. LEXIS 140632, at *52.

19   Given their extensive contacts, Defendants cannot (and have yet to) claim

20 that application of California law poses constitutional concerns. As such, "it is

21 Defendant's burden to defeat the presumption that California law applies and to

22 show a compelling reason justifying displacement of California law." *Forcellati v.*

23 *Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012) (citation and

24 quotations omitted).

25    **2.**  **No Conflicts Prevent Application of California Law to**
26       **the Cartwright Class**

27   The Court has properly applied each step of the *Mazza* analysis to examine

28 whether: (1) the individual laws of the 32 states are substantively similar to the

– 36 –

**FILED UNDER SEAL**

1   Cartwright Act; (2) any real differences in the individual laws present "a true

2   conflict" between jurisdictions; and (3) were there a true conflict, if California's

3   interest would be more deeply impaired if the Cartwright Act were not applied.

4   *Mazza*, 666 F.3d at 590 (citing *McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68, 81-

5   82 (2010). *PSP II* at 24. EPPs then narrowly tailored the Cartwright Class to

6   include only those states permitting indirect purchasers' claims.[20] *PSP III* at 18-21.

7   At the hearing, the Court offered Defendants the opportunity to point to any

8   material differences in the Cartwright Class states' laws at oral argument.

9   Defendants made no such showing.[21] Accordingly, the Court found no material

10  conflict. *PSP III* at 17, n. 10 (quoting *Mazza*, 666 F.3d at 590).

11      In line with the reasoning in both *Korean Ramen* and *Optical Disk*, applying

12  California law to Packaged Tuna purchases in the Cartwright Class states satisfies

13  California's choice of law rules. *See Korean Ramen*, 2017 U.S. Dist. LEXIS 7756,

14  at \*63-64. *See also Optical Disk*, 2016 U.S. Dist. LEXIS 15899, at \*79-80 ("Apart

15  from the *Illinois Brick* issue, however, the potential differences identified between

16  California and some of the other jurisdictions do not appear to stand as true

17  conflicts . . . .").

18      The recent decision in *Espinosa v. Ahearn (In re Hyundai & Kia Fuel Econ.

19  Litig.*), 881 F.3d 679 (9th Cir. 2018) sets the standard for California choice of law

20  at class certification, and further supports this Court's holding that California law

21

22  [20]    The narrowed Cartwright Class thus is virtually identical to that upheld in

23  *Korean Ramen* and *Optical Disk* and entirely obviates the Court's prior concerns

24  over the threshold issue of whether each states included provided a claim for price-

    fixing. Feb. 28, 2017 Hearing Tr. at 57:8-9.

25  [21]    If anything, Defendants conceded the fact that the states included in the

26  Cartwright Class all provided for indirect purchaser recovery for price-fixing. Sept.

27  6, 2017 Hearing Tr. at 24:12-13 ("while those states may provide under those laws

    for some measure of compensation for individuals isn't the question, the question

28  is is [sic] there a conflict of law?").

**FILED UNDER SEAL**

1    applies to the Cartwright Class. In *Espinosa*, the Ninth Circuit reversed the lower
2    court's certification of a ***settlement*** class for failure to undertake the proper
3    requisite analysis, including application of choice of law rules. *Id*. at 691-694.
4    There, in a prior order the district court had ***denied*** class certification, finding that
5    material differences as to the various state laws at issue prevented application of
6    California law to a nationwide class under *Mazza*. *Id.* at 695-696. Despite having
7    once engaged in the requisite inquiry, at the settlement stage the district court in
8    *Espinosa* improperly ignored its own prior holding and "declined to apply
9    California's choice of law rules to determine whether California law was
10   applicable to the class, or to make any choice of law ruling," instead, certifying the
11   same exact nationwide class it had once rejected. *Id.* at 700 ("the court thought
12   such an analysis was not warranted in the settlement context").

13          In contrast, this Court has already held *Mazza*'s choice of law analysis has
14   been satisfied. *PSP III* at 17. In *Espinosa*, the consumer protection laws at issue
15   presented true material differences in the type of prohibited conduct, specifically
16   relating to individual questions of exposure to the misleading advertisements at
17   issue (*id.* at 696). Here, EPPs present claims "based on the same factual conduct
18   underlying the alleged Sherman Act violations" (*PSP III* at 17, n.10, citing Mar.
19   14, 2017 Prior *PSP II* (Dkt. No. 295) at 21), and every state included in the
20   Cartwright Class treats the conduct the same: each included state provides for civil
21   liability for price-fixing. This interpretation of *Espinosa* is supported by *Korean*
22   *Ramen*, No. 13-cv-04115-WHO, 2018 U.S. Dist. LEXIS 48606 (N.D. Cal. Mar.
23   23, 2018). *Korean Ramen* is, like this case, an indirect purchaser antitrust litigation
24   under California law by a multistate class of consumers whose states allow indirect
25   claims. The defendants in that matter moved to decertify the class, citing *Espinosa*.
26   The District Court held that *Espinosa* had not changed the analysis or burden, so
27   the Court's prior holding that the *Mazza* standard permitted application of
28

**FILED UNDER SEAL**

California law to a multistate class mirroring the one at issue here, was undisturbed.

Therefore, this Court has not done what proved reversible in *Espinosa* – papering over already-identified differences in law to approve a settlement. Instead, this Court employed a thorough application of *Mazza* as the *Korean Ramen* court properly did, which meets the requirements of *Espinosa.* As in *Korean Ramen*, the choice of law analysis dictates that California law may be applied to the narrowly tailored Cartwright Class, supporting certification of the multistate Class under California law here.

## F. The Court Should Also Certify 32 Separate Statewide Classes

The EPPs also seek to certify statewide damages classes under the laws of 32 specific states[22] (the "32 Statewide Classes"). The Rule 23(a) analysis would be the same for the 32 Statewide Classes as for a single Cartwright Class. Annexed to the Manifold Declaration as Exhibit 67 is Appendix A, a table of evidence demonstrating that for each State class, numerosity and adequacy prongs are met by a combination of representatives' declarations and IRI data. Commonality and typicality are satisfied in the same manner as for the Cartwright Class. The Rule 23(b) analysis for each statewide class differs only in that it is limited to claims under the laws of a single state. *See id.*

All of the 32 states allow class treatment of indirect purchaser actions based on antitrust misconduct. Each statute requires essentially the same core elements for antitrust liability which do not vary materially by jurisdiction. *See In re*

---

[22]     Thirty states, plus one District and one territory: Arizona, Arkansas, California, the District of Columbia, Florida, Guam, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin.

FILED UNDER SEAL

1    *Lidoderm Antitrust Litig.*, 2017 U.S. Dist. LEXIS 24097, at *111 (variance in state

2    laws are not "material or even significant" to bar certification); *see also In re*

3    *Nexium (Esomeprazole) Antitrust Litig.*, 297 F.R.D. 168, 176 (D. Mass. 2013),

4    *aff'd sub nom. In re Nexium Antitrust Litig.*, 777 F.3d 9 (1st Cir. 2015) (same); *In*

5    *re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 699 n.45 (S.D. Fla.

6    2004) ("the applicable substantive laws [for the separate state classes] are virtually

7    identical in their required elements"); *In re Wellbutrin XL Antitrust Litig.*, 282

8    F.R.D. 126, 137 (E.D. Pa. 2011) ("Although this action is brought under the law of

9    six different states [i.e., California, Florida, Nevada, New York, Tennessee, and

10   Wisconsin], proof of the essential elements of these [state] statutes will also require

11   common proof. The antitrust laws and consumer protection laws for these six states

12   do not differ in material respects."). Here, whether Defendants engaged in a

13   conspiracy to fix the prices of Packaged Tuna, whether members of the statewide

14   classes were injured, and the proof of damages sustained on a classwide basis are

15   all subject to generalized proof, not individualized proof.

16         Numerous courts in this Circuit have certified cases involving indirect

17   purchaser claims under different state laws. *See, e.g.*, *Edwards v. Nat'l Milk*

18   *Producers Fed'n*, No. C 11-04766 JSW, 2014 U.S. Dist. LEXIS 130621, at *19-22

19   (N.D. Cal. Sept. 16, 2014); *CRT*, 2013 U.S. Dist. LEXIS 137946, at *93; *LCD*, 267

20   F.R.D. at 608-613; *SRAM*, 264 F.R.D. at 617-22. Appendix B, attached as Ex. 68

21   to the Manifold Decl., sets forth federal and state decisions which have certified

22   indirect purchaser classes under the antitrust or consumer protection laws of these

23   32 states. These cases provide ample support for certification here of the requested

24   individual statewide classes. Because the key proof relevant to EPPs' antitrust

25   claim is common to all class members, the predominance requirement is satisfied.

26         **G.    The Court Should Appoint Class Counsel**

27         The Manifold Declaration, ¶ 8 and Exhibit 66 provide the evidentiary record

28   necessary for the Court to conclude that Wolf Haldenstein Adler Freeman & Herz

- 40 -

**FILED UNDER SEAL**

1   LLP, already appointed Interim Class Counsel by this Court based on evidence of

2   experience and fitness to conduct large-scale class action litigation, is adequate to

3   represent the class.

4   **V.      CONCLUSION**

5          For the foregoing reasons, this case easily meets all the requirements of

6   Rules 23(a) and 23(b)(3) for class certification.  EPPs therefore request that the

7   Court grant their motion to certify the class action, to appoint the proposed EPP

8   Class Representatives, and to appoint Wolf Haldenstein as Lead Class Counsel.

9

10  DATED: May 29, 2018               **WOLF HALDENSTEIN ADLER
                                        FREEMAN & HERZ LLP**
11                                   BETSY C. MANIFOLD
                                     RACHELE R. RICKERT
12                                   MARISA C. LIVESAY
                                     BRITTANY N. DEJONG
13

14                        By:          *s/ Betsy C. Manifold*
                                      BETSY C. MANIFOLD
15
                                     750 B Street, Suite 2770
16                                   San Diego, CA 92101
                                     Telephone:  619/239-4599
17                                   Facsimile:   619/234-4599
                                     manifold@whafh.com
18                                   rickert@whafh.com
                                     livesay@whafh.com
19                                   dejong@whafh.com

20                                   **WOLF HALDENSTEIN ADLER
                                        FREEMAN & HERZ LLP**
21                                   FRED TAYLOR ISQUITH
                                     isquith@whafh.com
22                                   THOMAS H. BURT
                                     burt@whafh.com
23                                   270 Madison Avenue
                                     New York, New York 10016
24                                   Telephone:  212/545-4600
                                     Facsimile:   212/545-4653
25                                   burt@whafh.com
26
                                     **WOLF HALDENSTEIN ADLER
27                                      FREEMAN & HERZ LLP**
                                     THEODORE B. BELL
28

- 41 –

**FILED UNDER SEAL**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

tbell@whafh.com
CARL MALMSTROM
malmstrom@whafh.com
One South Dearborn St., Suite 2122
Chicago, IL 60603
Telephone: 312/984-0000
Facsimile:  312/212-4401

*Interim Lead Counsel for the
Indirect Purchaser End Payer Plaintiffs*

TUNA:  24657