Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Christopher L. Lebsock (Cal. Bar No. 184546)
Samantha J. Stein (Cal. Bar No. 302034)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel:  (415) 633-1908
Fax:  (415) 358-4980
E-mail:   mlehmann@hausfeld.com
E-mail:   bsweeney@hausfeld.com
E-mail:   clebsock@hausfeld.com
E-mail:   sstein@hausfeld.com

*Counsel for Olean Wholesale Grocery Cooperative, Inc.
and Interim Lead Counsel for the Proposed Direct Purchaser Class*
[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION <br><br> This document relates to: <br> DIRECT PURCHASER CLASS PLAINTIFFS TRACK | Case No. 15-MD-2670 JLS (MDD) <br> MDL No. 2670 <br><br> **DIRECT PURCHASER CLASS PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION [Redacted]** <br><br> DATE:     Dec. 20, 2018 <br> TIME:     9:00 a.m. <br> JUDGE:   Janis L. Sammartino <br> CTRM:    4D |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

FACTUAL BACKGROUND ..................................................................................... 3

    I.     The Packaged Tuna Market ................................................................ 3

    II.    Common Classwide Evidence of a Conspiracy. ............................... 5

    III.   Impact in the United States and its Territories ............................... 12

ARGUMENT ............................................................................................................ 12

    I.     The Rule 23 Standard ...................................................................... 12

    II.    Plaintiffs Meet the Requirements of Rule 23(a) ............................ 13

          A.    The Proposed Class Is Sufficiently Numerous ................... 13

          B.    Questions of Law or Fact Are Common to the Proposed Class ........ 14

          C.    Plaintiffs' Claims are Typical of the Proposed Class ......................... 14

          D.    Plaintiffs Will Adequately Represent the Interests of the Proposed Class ..... 15

    III.   Certification is Appropriate Under Rule 23(b)(3) ........................... 16

          A.    Common Issues Predominate ............................................... 16

               1.    Common Issues Predominate as to Antitrust Violations .......... 17

               2.    Common Issues Predominate as to Antitrust Impact .............. 17

                    a.    Defendants' Conduct Supports Common Impact .......... 18

                    b.    Industry Characteristics Support Common Impact ........ 19

                    c.    Expert Evidence Demonstrates Common Impact .......... 20

                3.    Damages Can be Proved by a Common Methodology ........... 23

          B.    A Class Action Is the Superior Method to Determine Plaintiffs' Claims ..... 24

CONCLUSION ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
276 F.R.D. 364 (C.D. Cal. 2011) ............................................................................*passim*

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................... 16

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
568 U.S. 455 (2013) .................................................................... 13, 16

*In re Apple iPod iTunes Antitrust Litig.*,
No. C 05-00037 JW, 2011 WL 5864036 (N.D. Cal. Nov. 22, 2011) ........................... 23

*In re ATM Fee Antitrust Litig.*,
686 F.3d 741 (9th Cir. 2012) ....................................................... 18

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) ..................................................... 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015) ...................................... 13, 16, 17, 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944-SC, 2014 WL 4181732 (N.D. Cal. Aug. 20, 2014), *recon.
denied*, 2014 WL 4446294 (N.D. Cal. Sept. 8, 2014) ....................................... 1

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) ........................................................................ 23

*In re Commercial Tissue Prods.*,
183 F.R.D. 589 (N.D. Fla. 1998) ................................................ 18

*In re Domestic Drywall Antitrust Litig.*,
322 F.R.D. 188 (E.D. Pa. 2017) .............................................. 17, 18

*Edwards v. Nat'l Milk Producers Fed'n*,
No. C 11-04766 JSW (N.D. Cal. Sept. 16, 2014), ECF No. 266 ................................ 24

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) ...................................................... 13

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
   256 F.R.D. 82 (D. Conn. 2009) ...................................................................... 22

*Giuliano v. Sandisk Corp.*,
   No. C 10-02787 SBA, 2015 WL 10890654 (N.D. Cal. May 14, 2015) ....................... 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................................... 16

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251 (1972) ................................................................................. 12

*In re High-Tech Emp. Antitrust Litig.*,
   289 F.R.D. 555 (N.D. Cal. 2013) .................................................................. 20

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013) .................................................. 14, 15, 17, 25

*In re Indus. Diamonds Antitrust Litig.*,
   167 F.R.D. 374 (S.D.N.Y. 1996) ................................................................... 18

*Kleen Prods. LLC v. Int'l Paper Co.*,
   831 F.3d 919 (7th Cir. 2016) ..................................................................... 18-19

*In re Korean Ramen Antitrust Litig.*,
   No. 13-CV-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) .......... 15, 21, 22

*Lambert v. Nutraceutical Corp.*,
   870 F.3d 1170 (9th Cir. 2017) ...................................................................... 23

*Leyva v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ....................................................................... 23

*In re Lidoderm Antitrust Litig.*,
   No. 14-MD-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 21, 2017) ............... 13, 25

*Lo v. Oxnard European Motors, LLC*,
   No. 11CV1009 JLS (MDD), 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ......... 13, 15

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ....................................................................... 16

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust
   Litig.*,
   311 F.R.D. 532 (N.D. Cal. 2015) .................................................................. 15

*In re Nexium Antitrust Litig.*,
   777 F.3d 9 (1st Cir. 2015)................................................................................ 20

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016)............................................................... 14, 17

*Nitsch v. Dreamworks Animation SKG Inc.*,
   No. 14-CV-04062-LHK, 2016 WL 4424965 (N.D. Cal. July 6, 2016) ...................... 24

*In re Optical Disk Drive Antitrust Litig.*,
   No. 3:10-MD-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016).................... 20, 24

*In re Polyester Staple Antitrust Litig.*,
   No. 3:03CV1516, 2007 WL 2111380 (W.D.N.C. July 19, 2017)............................. 25

*In re Processed Egg Prods. Antitrust Litig.*,
   312 F.R.D. 171 (E.D. Pa. 2015)............................................................... 19, 20

*In re Processed Egg Prods. Antitrust Litig.*,
   81 F. Supp. 3d 412, 431 (E.D. Pa. 2015)............................................................ 21

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) .............................................................................. 23

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979)............................................................................................ 12

*In re Rubber Chems. Antitrust Litig.*,
   232 F.R.D. 346 (N.D. Cal. 2005)........................................................................ 21

*Sali v. Corona Reg'l Med. Ctr.*,
   889 F.3d 623 (9th Cir. 2018) ........................................................................ 13, 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009)........................................................................ 15

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   No. C 07-1819 CW, 2008 WL 4447592 (N.D. Cal. Sept. 29, 2008) ............... 19, 21, 24

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
   282 U.S. 555 (1931).......................................................................................23-24

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. 2010), *amended in part by* No. 07-1827, 2011
   WL 3268649 (N.D. Cal. July 28, 2011) ........................................................ 14, 15, 21

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 291 (N.D. Cal. 2010)......................................................... 18, 22, 24

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S. Ct. 1036 (2016)............................................................................ 22, 24

*In re Urethane Antitrust Litig.*,
   768 F.3d 1245 (10th Cir. 2014) ........................................................ 18, 19, 20

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ....................................................................... 24

*In re Vitamin C Antitrust Litig.*,
   279 F.R.D. 90 (E.D.N.Y. 2012) .................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011)...................................................................................... 14

**Statutes**

Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3) ...................................... 2

**Other Authorities**

ABA Section of Antitrust Law, Proof of Conspiracy Under Federal Antitrust
   Laws 53-56 (2010)........................................................................................... 2

Fed. R. Civ. P. 23 ................................................................................*passim*

# **INTRODUCTION**

This case involves a classic antitrust conspiracy with liability readily established by criminal guilty pleas and the documentary record, and antitrust impact and damages easily determined on a classwide basis through Defendants' own transactional data. The Court should grant certification of the proposed Direct Purchaser Plaintiff ("DPP") class pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3).

Plaintiffs Olean Wholesale Grocery Cooperative, Inc. ("Olean"), Pacific Groservice Inc. d/b/a PITCO Foods ("PITCO"), Piggly Wiggly Alabama Distributing Co., Inc. ("Piggly Wiggly"), Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc. ("Central Grocers"), Trepco Imports and Distribution Ltd. ("Trepco"), and Benjamin Foods LLC ("Benjamin Foods") (collectively, "Plaintiffs" or "DPPs") therefore move the Court to certify the following class ("Class"):

> All persons and entities that directly purchased packaged tuna products within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 1, 2015. Excluded from the class are all governmental entities; Defendants and any parent, subsidiary or affiliate thereof; Defendants' officers, directors, employees, and immediate families; any federal judges or their staffs; purchases of tuna salad kits or cups; and salvage purchases.[1]

The DPPs seek to recover the hundreds of millions of dollars in damages they and other Class members suffered as a result of the conspiracy by the three largest domestic producers of packaged tuna products—Bumble Bee Foods LLC ("BB"), Tri-Union Seafoods LLC d/b/a Chicken of the Sea ("COSI"), and StarKist Company ("SK"), and

---

[1] For purposes of class certification, the DPPs who have filed separate actions are deemed to be part of the putative DPP class unless and until they opt out in response to a certification notice. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014), *recon. denied*, 2014 WL 4446294 (N.D. Cal. Sept. 8, 2014).

their parent companies[2] (collectively, "Defendants")—to fix, raise, maintain, and stabilize prices for packaged tuna products in the United States, in violation of Sections 1 and 3 of the Sherman Antitrust Act (15 U.S.C. §§ 1, 3). This motion is supported by the accompanying declarations of the DPPs' economic expert, Dr. Russell Mangum (who has testified on numerous occasions on class certification and liability in antitrust cases) ("Mangum Decl."), and Samantha J. Stein ("Stein Decl.").

The conspiracy is confirmed by, among other things, the guilty pleas of: (1) BB and its executives Scott Cameron, former Senior Vice-President of Sales, and Kenneth Worsham, former Senior Vice-President of Trade Marketing; (2) Steve Hodge, a former Senior Vice-President of Sales for SK; and (3) COSI, which has confirmed that it has sought leniency from the Department of Justice ("DOJ") for its participation in the conspiracy. *See* Stein Decl. ¶¶ 2-6, Exs. 1-5.[3] As stated in these pleas, Defendants effectuated their conspiracy through meetings and other communications in which they agreed to issue collusive price increases and to fix and maintain prices on packaged tuna products, as well as by agreeing to exchange confidential business information.

Even with discovery still ongoing, the evidence compiled to date demonstrates that certification of a DPP class—comprised of wholesalers, distributors, and retailers—is appropriate. This Class meets the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) because classwide issues predominate over individual issues, and class litigation is superior to individual litigation of the Class members' claims.

//

---

[2] Dongwon Industries Co. Ltd. owns SK and SK was owned by Del Monte Food Company and H.J. Heinz Co. Thai Union Group Co. Ltd. owns COSI. Lion Capital LLP, Lion Capital (Americas) Inc., and Lion/Big Catch Cayman LP own BB.

[3] The guilty pleas themselves are powerful direct classwide evidence of a conspiracy here. *See* ABA Section of Antitrust Law, Proof of Conspiracy Under Federal Antitrust Laws 53-56 (2010) (listing guilty pleas as an example of direct evidence of conspiracy). Chris Lischewski, BB's CEO, was also recently indicted by a federal grand jury for a variety of anticompetitive activities, including that he and co-conspirators "issued price announcements and pricing guidance in accordance with the agreements reached." Stein Decl. ¶ 7, Ex. 6.

# FACTUAL BACKGROUND

## I.    The Packaged Tuna Market.

Packaged tuna or "shelf-stable tuna" refers to canned or pouched tuna products that can be stored at room temperature. *See* Stein Decl. ¶ 9, Ex. 8. "Light meat" tuna consists





It is upon this evidence that Dr. Mangum has modeled classwide impact and damages, as further described below.

## II.  Common Classwide Evidence of a Conspiracy.

The evidence compiled to date establishes that the existence of a conspiracy presents an issue susceptible to classwide proof.  In addition to the guilty pleas referenced above, as BB wrote in its Interrogatory Responses:



13    Discovery is ongoing, but a brief chronology of the common evidence compiled to

14  date concerning the alleged conspiracy is presented below.

15    **Close Coordination and Joint Marketing Efforts in 2010.**  In March of 2010,

16  Defendants developed a joint advertising "campaign targeted at increasing U.S. consumer

17  awareness of and interest in processed tuna products[.]"  Stein Decl. ¶ 8, Ex. 7.  The

18  campaign launched at a time when "[t]una was losing relevance" as per-capita

19  consumption of canned tuna had plummeted from a high of 3.4 pounds a year in 2003 to

20  2.5 pounds a year in 2009.  *Id.*  The declining consumption, "needless to say, ha[d] hurt

21  the companies" and their parent entities.  *Id.*











███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

### III.   Impact in the United States and its Territories

Defendants intended that their coordination would allow them to increase prices to customers and maintain those increased prices, and they were successful in achieving their goal. ████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████

Having analyzed Defendants' sales data as well as other evidence, Dr. Mangum has concluded there is "econometric evidence that the alleged collusive agreement resulted in higher prices paid by DPPs in the United States," and further, that there is "strong evidence of common impact (rather than individual impact)."  Mangum Decl. ¶ 203.

### ARGUMENT

### I.   The Rule 23 Standard

The Supreme Court has long recognized that antitrust class actions are a vital component of antitrust enforcement.  *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972).  Thus, courts '"resolve

doubts in these actions in favor of certifying the class.'" *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) ("*CRT II*").

To certify a class under Fed. R. Civ. P. 23, plaintiffs must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—as well as at least one of the three subsections of Rule 23(b). *See Sali v. Corona Reg'l Med. Ctr.*, No. 15-56460, 889 F.3d 623, 629 (9th Cir. 2018) ("*Sali*") (citing Fed. R. Civ. P. 23(c)(1)(A)). A plaintiff seeking Rule 23(b)(3) certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

To determine whether plaintiffs have satisfied their burden under Rule 23, the Court must conduct a "rigorous analysis," which may require it to probe behind the pleadings. *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 980-81 (9th Cir. 2011) ("*Ellis*"). The merits, may, however, be considered only to the extent necessary to determine whether Rule 23's requirements are met. *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465-66 (2013) ("*Amgen*"). "The district court is required to examine the merits of the underlying claim . . . only inasmuch as it must determine whether common questions exist; not to determine whether class members could actually prevail on the merits[.]" *Ellis*, 657 F.3d at 983 n.8.

## II.    Plaintiffs Meet the Requirements of Rule 23(a)

### A. The Proposed Class Is Sufficiently Numerous

Numerosity is satisfied by showing that the proposed Class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "'[C]ourts generally find that the numerosity factor is satisfied if the class comprises 40 or more members[.]'" *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *2 (S.D. Cal. Dec. 15, 2011) ("*Lo*") (quotation omitted); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2017 WL 679367, at *13 (N.D. Cal. Feb. 21, 2017) ("*Lidoderm*") (class with 53 members was sufficiently numerous). Here, there are

thousands of class members, geographically dispersed throughout the United States, which easily satisfies the numerosity requirement.  Mangum Decl. ¶¶ 77-80, 205.[23]

**B. Questions of Law or Fact Are Common to the Proposed Class**

Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016) ("*Nitsch*") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Where, as here, the focus is on Defendants' anticompetitive conduct, questions of law and fact are common to the class. "Where an antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) ("*High-Tech*") (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010) ("*LCD II*") *amended in part by* No. 07-1827, 2011 WL 3268649 (N.D. Cal. July 28, 2011).  In this case, there are numerous common issues, including: (1) whether Defendants participated in a conspiracy to fix prices in violation of the antitrust laws; (2) the scope of that conspiracy; and (3) whether the Class suffered antitrust injury (*i.e.*, "impact") as a result of Defendants' conspiracy.

**C. Plaintiffs' Claims are Typical of the Proposed Class**

The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sali*, 889 F.3d at 633 (quotation omitted).  "In antitrust cases, typicality usually 'will be established by plaintiffs and all class members alleging the same antitrust violations by defendants.'"

---

[23] The Ninth Circuit has held that Rule 23 does not require "an administratively feasible way to identify all class members at the certification stage[.]" *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1131 (9th Cir. 2017).  Here, the Class members here are readily ascertainable from Defendants' records.

*High-Tech*, 985 F. Supp. 2d at 1181; *see also Lo*, 2011 WL 6300050, at *2.

The claims of Plaintiffs and the proposed Class are all based on the same antitrust violations, and they each have suffered injury as a result of Defendants' antitrust conspiracy. Any factual differences among Class members do not preclude a finding of typicality. *See In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2017 WL 235052, at *20 (N.D. Cal. Jan. 19, 2017) ("*Korean Ramen*") (plaintiffs' claims were typical "even though they may have purchased less ramen or purchased it through different channels"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009) ("*SRAM II*") (typicality found "even though they may have used different purchasing procedures, purchased different quantities or a different mix of products, or received different prices"); *see also LCD II*, 267 F.R.D. at 593 ("[t]he overarching scheme is the linchpin of plaintiffs' . . . complaint, regardless of the product purchased, the market involved or the price ultimately paid.") (quotation omitted).

**D. Plaintiffs Will Adequately Represent the Interests of the Proposed Class**

Adequacy requires that Plaintiffs "(1) have no interests that are antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel able to vigorously prosecute their interests." *CRT II*, 308 F.R.D. at 618. "The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 541 (N.D. Cal. 2015) (quotation omitted).

There is no conflict between Plaintiffs' interests and those of absent Class members. Plaintiffs allege that all Class members were injured by having to pay supracompetitive prices for packaged tuna products. *See* DPPs Third Am. Consolidated Compl. ¶ 258(c), ECF Nos. 907 (under seal), 911 (filed on public docket). All Class members have made purchases from the Defendants, and seek the same relief; thus, they share an identity of interests in proving Defendants' liability.

Furthermore, Plaintiffs have retained skilled counsel with extensive experience in prosecuting antitrust class actions to vigorously represent the interests of the proposed

class.  *See* Stein Decl. ¶ 68, Ex. 75 (firm resume).  Plaintiffs and their chosen counsel have adequately represented the proposed class in this litigation thus far and will continue to do so until the case is resolved.  Plaintiffs have actively participated in the litigation and will continue to do so.  Among other things, all Plaintiffs have reviewed pleadings, responded to discovery, and searched for, collected, and produced documents.  *Id.* ¶ 66.

## III.   Certification is Appropriate Under Rule 23(b)(3)

### A. Common Issues Predominate

"Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).  Courts commonly find Rule 23's "predominance" requirement satisfied in direct purchaser horizontal price fixing cases.  *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) ("*Messner*"); *Nitsch*, 315 F.R.D. at 315.

Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to class-wide proof.' What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.'"  *Amgen*, 568 U.S. at 469 (citation omitted; brackets in original).  Predominance is satisfied when "common questions present a significant aspect of the case" such that significant facts and issues underlying the proposed class' claims are subject to common proof.  *CRT II*, 308 F.R.D. at 620 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

DPPs will prove through common, classwide evidence: (1) that Defendants participated in a conspiracy to fix prices in violation of the antitrust laws and the scope of that conspiracy; (2) the scope of that conspiracy; (3) that the Class suffered antitrust injury (*i.e.*, "impact") as a result of Defendants' conspiracy; and (4) there exists a classwide methodology for proving aggregate damages sustained by the Class as a result of the antitrust violations.  Common questions predominate because the DPPs will establish each of the above elements through "generalized proof" applicable to the Class as a whole.

//

### 1. Common Issues Predominate as to Antitrust Violations

The existence and scope of Defendants' horizontal price-fixing conspiracy is a classwide issue that can be proved for each Class Member through common evidence. "In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." *Nitsch*, 315 F.R.D. at 315 (quotation and internal marks omitted); *CRT II*, 308 F.R.D. at 620, 625 (holding the same); *High-Tech*, 985 F. Supp. 2d at 1217 (holistic examination of liability, not just econometric analysis, justified certification).

In this case, if each Class Member were required to prove its claim individually at trial, each would rely on the same proof to show that all of the Defendants participated in a conspiracy to fix, maintain and increase prices for packaged tuna sold in the United States between November 2010 and July 2015. Each Class Member would use the same type of proof detailed in the factual discussion above, including the guilty pleas, and other documents memorializing communications between competitors. *See In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90, 109 (E.D.N.Y. 2012) (finding that in actions alleging a horizontal price-fixing conspiracy, "courts have frequently held that the predominance requirement is satisfied because the existence and effect of the conspiracy are the prime issues in the case and are common across the class"); *Giuliano v. Sandisk Corp.*, No. C 10-02787 SBA, 2015 WL 10890654, at *17 (N.D. Cal. May 14, 2015) ("The question of whether there has been an antitrust violation is a common issue rather than an individual one. In no event will the individual circumstances of particular class members be relevant to the inquiry of whether such a violation has occurred.").

### 2. Common Issues Predominate as to Antitrust Impact

Antitrust impact as a result of Defendants' conspiracy is reflected in common, classwide evidence, including: (a) Defendants' collusive price increases and price maintenance, (b) the characteristics of the packaged tuna industry, and (c) the economic analysis of Defendants' transactional sales data. Here, Defendants' own conduct, as well as Dr. Mangum's expert analysis, demonstrates that all or nearly all members of the DPP

1  Class suffered injury as a result of the claimed conspiracy.

2  ### a. Defendants' Conduct Supports Common Impact

3      The common evidence establishes that Defendants repeatedly agreed ███████

4  ████████████████████████████████████████████████████████████████

5  which in turn indicates that all Class members paid higher prices. For example, in *In re*

6  *Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188 (E.D. Pa. 2017), there was evidence

7  that the defendants agreed to announce collusive price increases on two occasions, as well

8  as evidence from which the jury "could conclude that Defendants intended for the price

9  increases to apply to all customers nationally, and . . . that Defendants were pleased with

10 the widespread effect of the increase." *Id*. at 222.

11      Furthermore, numerous courts in the Ninth Circuit and elsewhere have recognized

12 that Defendants' pricing conspiracy—which started with conspiratorially-set list or net

13 prices—is well-suited to proof of classwide antitrust impact. *In re TFT-LCD (Flat Panel)*

14 *Antitrust Litig.*, 267 F.R.D. 291, 313 (N.D. Cal. 2010) ("*LCD I*"), *abrogated on other*

15 *grounds by In re ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012) (noting that

16 "even if there is considerable individual variety in pricing because of individual price

17 negotiations, class plaintiffs may succeed in proving classwide impact by showing that the

18 minimum baseline for beginning negotiations, or the range of prices which resulted from

19 negotiation, was artificially raised (or slowed in its descent) by the collusive actions of

20 defendants." (quoting *In re Commercial Tissue Prods.*, 183 F.R.D. 589, 595 (N.D. Fla.

21 1998) (collecting cases holding same)). Thus, the fact that the net prices that Class

22 members paid reflect certain discounts or rebates does not diminish the common impact.

23 *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374, 383 (S.D.N.Y. 1996) ("[I]f a

24 plaintiff proves that the alleged conspiracy resulted in artificially inflated list prices, a jury

25 could reasonably conclude that each purchaser who negotiated an individual price

26 suffered some injury."). *Accord Kleen Prods. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929

27 (7th Cir. 2016); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1254 (10th Cir. 2014)

28 ("*Urethane*").

---

**b.  Industry Characteristics Support Common Impact**

The characteristics of the packaged tuna industry also demonstrate that Defendants' price-fixing resulted in overcharges that had a common impact on Class members. Economic analyses of industry structure is a well-recognized type of common proof that many courts in price fixing cases have relied on to find that antitrust injury is susceptible to classwide proof within the meaning of Rule 23(b)(3). *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 370-72 (C.D. Cal. 2011) ("*Auto Lighting*"). Industry characteristics similar to those in the tuna industry have been found to be highly probative of common impact and predominance by numerous courts certifying classes in antitrust cases. *See, e.g.*, *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. C 07-1819 CW, 2008 WL 4447592, at *5-6 (N.D. Cal. Sept. 29, 2008) ("*SRAM I*"); *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 171, 184-86 (E.D. Pa. 2015) ("*Eggs*") (industry characteristics were "highly probative of the extent to which the alleged conspiracy, if shown to be successful, would have affected virtually every member of the proposed shell eggs subclass.").

███████████████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████ Such market domination has consistently been recognized as supporting common impact. *Urethane*, 768 F.3d at 1265; *Auto Lighting*, 276 F.R.D. at 371; *Eggs*, 312 F.R.D. at 184. █████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████ "[H]igh barriers to entry would help Defendants control prices as applied to virtually every class

member." *Eggs*, 312 F.R.D. at 185; *Auto Lighting*, 276 F.R.D. at 371.

Packaged tuna is also a commodity product. Mangum Decl. ¶ 102. Indeed, the United States Department of Labor has referred to canned tuna as a "relatively undifferentiated commodity… with widespread consumer indifference to its country of origin or brand name."[24] As such, consumer decisions are often made primarily on price, and price changes significantly affect sales volumes. ███████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████ *see also Auto Lighting*, 276 F.R.D. at 371; *Urethane*, 768 F.3d at 1265 (same).

### c. Expert Evidence Demonstrates Common Impact

"Paying an overcharge caused by the alleged anticompetitive conduct on a single purchase suffices to show—as a legal or factual matter—impact or fact of damage." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 27 (1st Cir. 2015). Here, there is classwide evidence of antitrust impact in the form of economic analysis of Defendants' sales transaction data. *See In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-2143 RS, 2016 WL 467444, at *7 (N.D. Cal. Feb. 8, 2016) ("*ODDs*") (in recent years, plaintiffs have "trended toward presenting an econometric formula or other statistical analysis to show class-wide impact . . . ." and "such analysis has often been accepted at the certification stage.") (internal quotes and cites omitted). *Accord CRT II*, 308 F.R.D. at 626-27; *In re High-Tech Emp. Antitrust Litig.*, 289 F.R.D. 555, 579-82 (N.D. Cal. 2013) (finding the same).

Dr. Mangum has set forth a methodology, based on sound econometric principles, for assessing common impact that goes far beyond minimal class certification standards. *See* Mangum Decl. ¶¶ 3, 22, 155, 158, 160, 203-05.

███████████████████████████████████████████████

---

[24] *See* https://www.dol.gov/whd/as/sec7.htm (last accessed May 25, 2018).



[25] Correlation analyses are a recognized form of econometric evidence on which courts rely in determining class certification. *E.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 81 F. Supp. 3d 412, 431 (E.D. Pa. 2015); *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 353 (N.D. Cal. 2005); *Korean Ramen*, 2017 WL 235052, at *6, 15; *SRAM I*, 2008 WL 4447502 at *6.

[26] Multiple regression analysis of this type is commonly considered in determining class certification. *See, e.g.*, *LCD I*, 267 F.R.D. at 606; *High-Tech*, 985 F. Supp. 2d at 1212; *Auto Lighting*, 276 F.R.D. at 373-74; *Korean Ramen*, 2017 WL 235052, at *16.



[28] *See also In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 89 (D. Conn. 2009) ("By expending resources to negotiate down from the supracompetive prices established by the cartel, plaintiffs who have suffered no damages may still have suffered an injury-in-fact from the antitrust conspiracy. The fact that a plaintiff may have successfully employed bargaining power to fend off the *effect* of the conspiratorial practices does not mean that it has not been put in a worse position but-for the conspiracy.") (Emphasis in original).

[29] There is no requirement that every single class member must show harm at the certification stage. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1044-45, 1050 (2016) ("*Tyson*") (affirming class certification with uninjured class members and stating that whether some "methodology will be successful in identifying uninjured class members is a question that . . . is premature" at class certification and better addressed at the allocation stage).

1  ███████████████████████████████████   Consequently, the overcharges

2  caused by Defendants' price fixing can be, and have been, measured, and such an impact

3  showing follows from the theory of anticompetitive behavior alleged.  *See Leyva v.*

4  *Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

### 3.  Damages Can be Proved by a Common Methodology

6  At the class certification stage, "plaintiffs need not supply a 'precise damage

7  formula,' but must simply offer a proposed method for determining damages that is not

8  'so insubstantial as to amount to no method at all.'"  *In re Apple iPod iTunes Antitrust*

9  *Litig.*, No. C 05-00037 JW, 2011 WL 5864036, at *3 (N.D. Cal. Nov. 22, 2011)

10 (quotation omitted).  *Accord LCD I*, 267 F.R.D. at 314.

11 The proposed method "need not be exact" but "must be consistent with [the

12 plaintiffs'] liability case."  *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013); *Korean*

13 *Ramen*, 2017 WL 235052, at *17.  "Uncertainty regarding class members' damages does

14 not prevent certification of a class as long as a valid method has been proposed for

15 calculating those damages. . . . [T]he law 'requires only that damages be capable of

16 measurement based upon reliable factors without undue speculation[.]"  *Lambert v.*

17 *Nutraceutical Corp.*, 870 F.3d 1170, 1182 (9th Cir. 2017) (internal quotations omitted)

18 (citing *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 989 (9th Cir. 2015)).

19 Because the precise economics of a world absent the alleged anticompetitive conduct

20 cannot be known with certainty, courts only require antitrust plaintiffs to put forth

21 "reasonable estimates" of antitrust damages.  *Story Parchment Co. v. Paterson Parchment*

22 *Paper Co.*, 282 U.S. 555, 562 (1931).

23 Plaintiffs easily meet that standard here.  ████████████████████

24 ████████████████████████████████████████████

25 ████████████████████████████████████████

26 ████████████████████████████████████████████

27 ██████████████████████████████████████████████

28 ████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████    The overcharge regressions done by Plaintiffs' expert economist are standard in antitrust economics and follow methodologies previously accepted by this Circuit. *See, e.g.*, *LCD II*, 267 F.R.D. at 606 (finding a "feasible" methodology for determining overcharge).

Thus, the merits of Dr. Mangum's methodology ultimately "will be adjudicated at trial based upon economic theory, data sources, and statistical techniques that are entirely common to the class." *SRAM I*, 2008 WL 4447592, at *6 (internal quotations omitted); *ODDs*, 2016 WL 467444, at *4 (alleged flaws in plaintiffs' expert's model "may appropriately be considered by the trier of fact, and do not rise to a level that would require denial of certification"). *See also Tyson*, 136 S. Ct. at 1047 (critique of classwide model was "itself common to the claims made by all class members"). Finally, to the extent damage calculations may have individualized elements, that fact will not defeat class certification. *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016) (citing cases). Plaintiffs have constructed a working model that can be applied to determine damages on a classwide basis and to calculate individual damages for all Class members. *See* Order Regarding Motion for Class Certification at 10, *Edwards v. Nat'l Milk Producers Fed'n*, No. C 11-04766 JSW (N.D. Cal. Sept. 16, 2014), ECF No. 266.

Common issues regarding damages thus predominate.

**B. A Class Action Is the Superior Method to Determine Plaintiffs' Claims**

Rule 23(b)(3) requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy." "[I]f common questions are found to predominate in an antitrust action, . . . courts generally have ruled that the superiority prerequisite of Rule 23(b)(3) is satisfied." *Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-CV-04062-LHK, 2016 WL 4424965, at *4 (N.D. Cal. July 6, 2016) (quoting *LCD I*, 267 F.R.D. at 314). Given the substantial common proof at issue, requiring all class members to proceed individually "would merely multiply the number of trials with the

1    same issues and evidence." *High-Tech*, 985 F. Supp. 2d at 1228.

2    Although a number of the largest direct purchasers in the proposed Class have filed

3    individual actions, certification of the Class remains critical for the thousands of Class

4    members that have not filed individual actions, and for which the costs of litigation would

5    be prohibitive. *See Lidoderm*, 2017 WL 677367, at *12 n.17 (fact that big three

6    wholesalers assigned one-third of their claims to opt-outs did not preclude superiority); *In*

7    *re Polyester Staple Antitrust Litig.*, No. 3:03CV1516, 2007 WL 2111380, at *31

8    (W.D.N.C. July 19, 2017) (fact that 37 large textile buyers filed separate suits did not

9    preclude superiority; "[t]he fact that a substantial putative class remains weighs in favor of

10    certification"). Thus, "certification . . . would be far superior to, and more manageable

11    than, any other procedure available for the treatment of the factual and legal issues raised

12    by Plaintiffs' claims." *Auto Lighting*, 276 F.R.D. at 375.

13    <u>**CONCLUSION**</u>

14    For the foregoing reasons, Plaintiffs respectfully request that the Court grant class

15    certification to the proposed DPP Class under Rules 23(a) and 23(b)(3), appoint Hausfeld

16    LLP as Class Counsel pursuant to Rule 23(g), appoint the Plaintiffs as Class

17    Representatives, and direct the parties to establish a notice procedure for members of the

18    Class.

19

20    Dated: May 29, 2018                   Respectfully submitted,

21

22                                   By:  */s/ Bonny E. Sweeney*
23                                        Michael P. Lehmann (Cal. Bar No. 77152)
                                         Bonny E. Sweeney (Cal. Bar No. 176174)
24                                        Christopher L. Lebsock (Cal. Bar No. 184546)
                                         Samantha J. Stein (Cal. Bar No. 302034)
25                                        HAUSFELD LLP
                                         600 Montgomery Street, Suite 3200
26                                        San Francisco, CA 94111
27                                        Tel:   (415) 633-1908
                                         Fax:  (415) 358-4980
28

1
2
3
4
5

San Francisco, CA 94111
Tel:   (415) 633-1908
Fax:  (415) 358-4980
E-mail:  mlehmann@hausfeld.com
E-mail:  bsweeney@hausfeld.com
E-mail:  clebsock@hausfeld.com
E-mail:  sstein@hausfeld.com

6
7
8
9
10
11

Michael D. Hausfeld
James J. Pizzirusso
HAUSFELD LLP
1700 K Street NW, Suite 650
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
E-mail:   mhausfeld@hausfeld.com
E-mail:   jpizzirusso@hausfeld.com

12
13

*Counsel for Plaintiff Olean Wholesale Grocery Cooperative, Inc. and Interim Lead Counsel for the Direct Purchaser Class*

14
15
16
17
18
19
20

Arthur N. Bailey
Marco Cercone
RUPP BASE PFALZGRAF CUNNINGHAM LLC
1600 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 664-2967
Facsimile: (716) 664-2983
E-mail: bailey@ruppbaase.com
E-mail: cercone@ruppbaase.com

21
22
23
24

Lesley E. Weaver
BLEICHMAR FONT & AULD LLP
1901 Harrison St., Suite 1100
Oakland, CA 94612
Telephone:  (510) 844 7759
Facsimile:  (510) 844-7710
E-mail: lweaver@bfalaw.com

25
26

*Additional Counsel for Plaintiff Olean Wholesale Grocery Cooperative, Inc.*

27
28

Barbara J. Hart
Sung-Min Lee

LOWEY DANNENBERG COHEN
& HART, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601-2301
Telephone:  (914) 997-0500
Facsimile:   (914) 997-0035
E-Mail: bhart@lowey.com
E-Mail: slee@lowey.com

*Counsel for Plaintiff Pacific Groservice Inc. d/b/a PITCO Foods and Member of Direct Purchaser Plaintiffs' Steering Committee*

Solomon B. Cera (Cal. Bar No. 99467)
Thomas C. Bright (Cal. Bar No. 169713)
Louis A. Kessler (Cal. Bar No. 243703)
CERA LLP
595 Market Street, Suite 2300
San Francisco, California 94105
Tel: (415) 777-2230
Fax: (415) 777-5189

C. Andrew Dirksen (Cal. Bar No. 130064)
CERA LLP
800 Boylston St., 16th Floor
Boston, MA 02199
Tel: (857) 453-6555
Fax: (415) 777-5189

*Counsel for Plaintiffs Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc. and Piggly Wiggly Alabama Distributing Co., Inc. and Member of Direct Purchaser Plaintiffs' Steering Committee*

Jason S. Hartley (CA Bar No. 192514)
Jason M. Lindner (CA Bar No. 211451)
HARTLEY LLP
550 West C Street, Suite 1750
San Diego, CA 92101
Phone: (619) 400-5822
Fax: (619) 400-5832
E-mail:  hartley@hartleyllp.com
E-mail:  lindner@hartleyllp.com

*Counsel for Plaintiff Trepco Imports & Distribution, Ltd.*

27

Stephen R. Neuwirth
Sami H. Rashid
Joseph N. Kiefer
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
E-mail:  stephenneuwirth@quinnemanuel.com
E-mail:  samirashid@quinnemanuel.com
E-mail: juliapeck@quinnemanuel.com
E-mail: josephkiefer@quinnemanuel.com

Dana Statsky Smith
BERNSTEIN LIEBHARD LLP
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
E-mail:  aranoff@bernlieb.com
E-mail:  dsmith@bernlieb.com
*Counsel for Plaintiff Benjamin Foods LLC
And Members of Direct Purchaser Plaintiffs'
Steering Committee*

Whitney E. Street (Cal. Bar No. 223870)
BLOCK & LEVITON LLP
520 Third Street, Suite 108
Oakland, CA 94607
Telephone: (415) 968-8999
Facsimile:  (617) 507-6020
E-mail: whitney@blockesq.com

*Member of Direct Purchaser Plaintiffs' Steering
Committee*

Allan Steyer (Cal. Bar No. 100318)
D. Scott Macrae (Cal. Bar No. 104663)
Jill M. Manning (Cal. Bar No. 178849)
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

E-mail: asteyer@steyerlaw.com
E-mail: smacrae@steyerlaw.com
E-mail: jmanning@steyerlaw.com

*Counsel for Plaintiff John Gross &
Company*

## **CERTIFICATE OF SERVICE**

I certify that on May 29, 2018, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system, and also served counsel of record via this Court's CM/ECF system.

By: s/ *Bonny E. Sweeney*
       HAUSFELD LLP
       bsweeney@hausfeld.com