UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: PACKAGED SEAFOOD
PRODUCTS ANTITRUST LITIGATION

Case No.: 15-MD-2670 JLS (MDD)

**ORDER GRANTING MOTION TO DISMISS**

(ECF No. 983)

Presently before the Court is Defendants StarKist Co., Dongwon Industries, Co., Bumble Bee Foods LLC, Del Monte Corporation, Tri-Union Seafoods LLC d/b/a Chicken of the Sea International Inc., and Thai Union Group PCL's ("Defendants") Joint Motion to Dismiss, ("MTD," ECF No. 983).   Also before the Court are Plaintiff the Cherokee Nation's Opposition to, ("Opp'n," ECF No. 1267), and Defendants' Reply in Support of, ("Reply," ECF No. 1284), the Motion.  The Court heard oral argument on July 30, 2018. Having considered the parties' arguments and the law, the Court rules as follows.

## BACKGROUND

This case concerns an alleged conspiracy to fix the prices of packaged seafood throughout the United States.  Plaintiff the Cherokee Nation is a federally recognized sovereign Indian nation and brings this action in its proprietary capacity and under its *parens patriae* authority against Defendants as part of a broader multi-district litigation ("MDL") currently pending before this Court.  (First Am. Compl. ("FAC"), ECF No. 823,

¶¶ 11–12.)[1]  This particular aspect of the MDL concerns whether the Court has subject matter jurisdiction over Plaintiff's claims.

In 2015, various plaintiffs across the country brought civil suits concerning defendants StarKist, Chicken of the Sea, and Bumble Bee's conduct.  The several civil actions relating to this alleged conspiracy were consolidated in an MDL and the judicial panel on MDLs centralized pretrial proceedings to this Court on December 9, 2015, (*see* Transfer Order, ECF No. 1).  The Cherokee Nation was a latecomer to this litigation and filed suit on November 16, 2017, (*see* No. 17-CV-2332, ECF No. 1), which was then consolidated with the MDL.  Plaintiff originally requested the Court create a track solely for itself, (ECF No. 751-1, at 3), but later amended its motion to request placement in the indirect End Purchaser Payer ("EPP") track, while also maintaining its own complaint, (ECF No. 798-1, at 2).  On February 5, 2018, Plaintiff filed a First Amended Complaint, (ECF No. 823), and on February 23, 2018, the Court granted Plaintiff's amended motion and assigned Plaintiff to the EPP track, (ECF No. 859).

Plaintiff's amended Complaint sets forth detailed allegations concerning alleged price-fixing schemes in the packaged seafood industry, which has resulted in a Department of Justice investigation into Defendants' activities and guilty pleas by several packaged seafood executives.  (FAC ¶¶ 213, 221–28.)  Defendants are major producers of packaged seafood.  The complaint presents allegations of increased packaged seafood prices resulting from anticompetitive behavior on the part of Defendants.  (*See id.* ¶¶ 205, 208–10.) Plaintiff's citizens, members of the Cherokee Nation, are indirect purchasers of packaged tuna.  (*Id.* ¶ 10.)  Plaintiff alleges that Defendants' anticompetitive behavior has resulted in fixed or higher prices of packaged seafood, that indirect purchasers of packaged seafood have been deprived of free and open competition, and that indirect purchasers paid artificially inflated prices.  (*Id.* ¶ 229.)

---

[1] The sealed version of The Cherokee Nation's First Amended Complaint is located at ECF No. 825.

Plaintiff's amended Complaint brings the following claims. First, Plaintiff asserts a cause of action under section 1 of the Sherman Act, 15 U.S.C. § 1, which is Plaintiff's only federal cause of action. Second, Plaintiff asserts causes of action for violation of State law; specifically, California, Kansas, Arizona, Colorado, New Mexico, Oklahoma, and Florida. Third, Plaintiff brings two causes of action under Cherokee Nation law—Unfair and Deceptive Practices Act ("CNUDPA"), 12 CNCA § 21 *et seq.*, and unjust enrichment. (*See generally* FAC.) Defendants have filed the present joint motion to dismiss, (ECF No. 983), challenging this Court's jurisdiction to hear Plaintiff's claims under Rule 12(b)(1) and asserting, in the alternative, that the amended Complaint fails to state a claim under Rule 12(b)(6).

## LEGAL STANDARD

### I. Rule 12(b)(1)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) challenges a court's subject matter jurisdiction. Federal district courts are courts of limited jurisdiction that "may not grant relief absent a constitutional or valid statutory grant of jurisdiction" and are "presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *A–Z Int'l v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotations and citations omitted). The plaintiff bears the burden of establishing jurisdiction. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377; *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, 538 F.3d 1107, 1110 (9th Cir. 2008).

Rule 12(b)(1) motions may challenge jurisdiction facially or factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* To adjudicate the factual challenge, the Court may review evidence beyond the complaint without converting the Rule 12(b)(1) motion into one for summary judgment. *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa Cnty.*, 343 F.3d 1036, 1039 n.2 (9th

Cir. 2003); *David v. Giurbino*, 488 F. Supp. 2d 1048, 1054 (S.D. Cal. 2007). Once the moving party makes a factual challenge by bringing evidence before the Court, the opposing party must furnish its own affidavits or other evidence to establish subject matter jurisdiction. *Safe Air*, 373 F.3d at 1039; *Savage*, 343 F.3d at 1039 n.2. Without assuming the truth of the complaint's factual allegations, the Court nonetheless resolves factual disputes in favor of the non-moving party. *Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996); *Farrah v. Monterey Transfer & Storage, Inc.*, 555 F. Supp. 2d 1055, 1067-68 (N.D. Cal. 2008).

Alternatively, in a facial challenge, the defendant asserts the insufficiency of the complaint's allegations to invoke federal jurisdiction as a matter of law. *Whisnant v. United States*, 400 F.3d 1177, 1179 (9th Cir. 2005); *Cross v. Pac. Coast Plaza Invs., L.P.*, No. 6 CV 2543 JM (RBB), 2007 WL 951772, at *1 (S.D. Cal. Mar. 6, 2007). To adjudicate the facial challenge, the Court assumes the truth of the allegations in the complaint and draws all reasonable inferences in favor of the plaintiff. *Whisnant*, 400 F.3d at 1177; *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

## II.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A

complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## ANALYSIS

### I.     The Cherokee Nation's Standing to Bring a *Parens Patriae* Action

Plaintiff brings its claims as *parens patriae* on behalf of its citizens harmed by Defendants' alleged conduct. Defendants challenge Plaintiff's standing to bring a *parens patriae* civil action. Article III of the Constitution vests federal courts with the authority to hear "Cases" and "Controversies." U.S. Const., art. III, § 2. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." *Spokeo, Inc. v.*

*Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016). "The doctrine limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Id.* (citations omitted). "[S]tanding jurisprudence contains two strands: Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing,[2] which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (citation omitted), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014).

One particular aspect of the standing doctrine is *parens patriae[3]* standing. States or Indian nations asserting *parens patriae* standing must establish Article III standing and meet the "unique requirements" of the *parens patriae* doctrine. *Missouri ex rel. Koster v. Harris*, 847 F.3d 646, 651 (9th Cir. 2017) (citing *Table Bluff Reservation (Wiyot Tribe) v. Philip Morris, Inc.*, 256 F.3d 879, 885 (9th Cir. 2001)). Generally, there are two elements to establish standing to bring a *parens patriae* claim. First, "the State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party." *Id.* (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982) ("*Snapp*")). Second, "[t]he State must express a quasi-sovereign interest." *Id.* (alteration in original) (quoting *Snapp*, 458 U.S. at 607).

### A. Parties' Arguments

Defendants advance three arguments why Plaintiff does not have *parens patriae* standing.[4] First, the Cherokee Nation does not have a quasi-sovereign interest because the

---

[2] Prudential standing is not derived from Article III and encompasses at least three broad principles: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (quoting *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004)).

[3] "*Parens patriae* means literally 'parent of the country.'" *Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 600 (1982) (footnote omitted).

[4] Defendants also contend that Plaintiff fails to meet the Article III standing requirements to the extent that the Cherokee Nation purchased tuna in its proprietary capacity. (MTD 18–19.) Plaintiff's Opposition

alleged price fixing at issue in this case does not have anything to do with the health, safety, or welfare of the Cherokee Nation, nor is there sufficient allegations concerning protecting the Cherokee Nation's economy. (*See* MTD 15–16.)[5] Second, Defendants contend that the Cherokee Nation cannot assert *parens patriae* claims under the law of other states because it cannot bring claims under those states' laws. (*See id.* at 17.) Third, the Cherokee Nation has not alleged injury to a substantial segment of their population. (*See id.* at 17–18.)

Plaintiff contends that it does not need to meet the two requirements—interest apart from private parties and quasi-sovereign interest—for *parens patriae* standing. (Opp'n 17.) Instead, Plaintiff argues that the Cherokee Constitution and Cherokee Code creates the requisite *parens patriae* standing. (*Id.* (citing 51 CNCA § 105.B.14 (2015); 12 CNCA § 13); and *Washington v. Chimei Innolux Corp.*, 659 F.3d 842, 847 (9th Cir. 2011)).) Plaintiff also contends that the Clayton Act provides statutory *parens patriae* authority and therefore does not require it to assert "quasi-sovereign or proprietary interests." (*Id.* at 19 (quoting *Pennsylvania v. Mid-Atl. Toyota Distribs., Inc.*, 704 F.2d 125, 129–30, 132 (4th Cir. 1983)).) Instead, Plaintiff cites *Burch v. Goodyear Tire & Rubber Co.*, 554 F.2d 633, 635 (4th Cir. 1977), for the proposition that its Attorney General has authority to bring a *parens patriae* claim under federal antitrust law for non-monetary relief. (Opp'n 18.)

---

brief does not discuss proprietary standing. (*See generally* Opp'n.) At oral argument, Plaintiff cited paragraphs 339, 344, 354, 364, 369, and 376 of its amended Complaint, which address the purported harm to Cherokee businesses. (*See* ECF No. 1321, at 18.) These paragraphs state the following allegation: "Plaintiff purchased Packaged Tuna within the State of California," (FAC ¶ 339), but change each state in each cause of action, e.g., "Plaintiff purchased Packaged Tuna within the State of Kansas," (id. ¶ 344). These allegations provide no factual detail beyond such conclusory and vague statements. Furthermore, proprietary standing is appropriate when a state itself has proprietary interests, such as "own[ing] land or participat[ing] in a business venture." *Snapp*, 458 U.S. at 602. Plaintiff has not alleged any facts that, for example, the Cherokee Nation itself participated in any business venture harmed by Defendants' conduct. Therefore, Plaintiff's proprietary claims must fail. To the extent Plaintiff's vague allegations constitute proprietary causes of action the Court **GRANTS IN PART** Defendants' motion and **DISMISSES WITHOUT PREJUDICE** those claims.

[5] Pin citations to docketed material refer to the CM/ECF page numbers electronically stamped at the top of each page.

In the alternative, Plaintiff states that it has alleged the requisite harm to its population, as well as expressed a quasi-sovereign interest in the economic well-being of its citizens. (*Id.* at 18 (citing FAC ¶¶ 10, 340, 350, 355, 360, 365, 370, 376; and *New York ex rel. Spitzer v. Saint Francis Hosp.*, 94 F. Supp. 2d 399, 420 (S.D.N.Y. 2000)).)

In reply, Defendants argue Plaintiff confuses Article III standing with statutory standing. (Reply 5.) Defendants assert that *Snapp*'s *parens patriae* requirements reflect Article III standing requirements, rather than requirements that can be replaced by Congress. (*Id.*) They would distinguish Plaintiff's cases; *Chimei Innolux* required a quasi-sovereign interest, despite Plaintiff's characterization of *Chimei Innolux* as relieving Plaintiff of such a requirement. (*See id.* at 5–6.) Next, *Burch* only stands for the proposition that state attorneys general have authority to proceed *parens patriae* in suits for injunctive relief under section 16 of the Clayton Act, but does not relieve them of the *parens patriae* requirements. (*Id.* at 6.) Finally, Defendants contend that *Mid-Atlantic Toyota* is distinguishable solely because it is a 35-year-old out-of-circuit case that is contrary to binding authority. (*Id.*) Defendants reiterate their earlier position that *Snapp* applies and Plaintiff cannot meet the *Snapp* requirements. (*See id.* at 6–7.)

### A. Parens Patriae *Standing Under the Antitrust Improvements Act*

The parties differ sharply on whether Plaintiff's *parens patriae* standing requirements are constitutional or prudential. If the requirements are prudential then Congress generally can expand standing to reach the full limits of Article III. *See Gladstone, Realtors v. Vill. of Bellwood*, 441 U.S. 91, 100 (1979) (citing *Warth v. Seldin*, 422 U.S. 490, 501 (1975)). Thus, if Congress has modified the standing requirements then Plaintiff would no longer need to meet the *parens patriae* standing test articulated by the Supreme Court in *Snapp*. For reasons discussed in more depth below the line,[6] the Court

---

[6] Article III and prudential standing are distinct concepts; prudential standing is a judicially crafted doctrine and does not derive from Article III. *See Lexmark Int'l*, 134 S. Ct. at 1386 (discussing prudential standing doctrine). Some courts have determined that the *parens patriae* standing requirements are prudential and not rooted in Article III. *See Massachusetts v. EPA*, 549 U.S. 497, 540 n.1 (2007) (Roberts, C.J., dissenting); *In re Elec. Books Antitrust Litig.*, 14 F. Supp. 3d 525, 535 (S.D.N.Y. 2014) ("[S]o long

assumes without deciding that *parens patriae* standing is prudential and not constitutional. The Court makes this assumption because, as will be seen, Plaintiff cannot meet the applicable prudential standing requirements for the various causes of action alleged. Plaintiff argues two sources of authority extend its standing to the fullest extent of Article III: the Hart-Scott-Rodino Antitrust Improvements Act of 1976 and Cherokee Nation law. The Court discusses each in turn.

In 1976, Congress passed and President Ford signed into law the Hart-Scott-Rodino Antitrust Improvements Act, 90 Stat. 1394, 15 U.S.C. § 15c *et seq.* The Act created a new right of action for States under existing federal antitrust law. *Mid-Atl. Toyota Distribs.*, 704 F.2d at 128 (citing *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 n.7 (1979)). The Act provides that an "attorney general of a State[7] may bring a civil action in the name of such

---

as [the States] have shown they have standing under Article III, the standing inquiry is at an end."); *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132, 149 (D.D.C. 2002).

On the other hand, Defendants direct the Court to dicta in *Snapp* where the Supreme Court stated, "[f]ormulated so broadly, the concept [of quasi-sovereign interest] risks being too vague to survive the standing requirements of Art. III: A quasi sovereign interest must be sufficiently concrete to create an actual controversy between the State and the defendant." 458 U.S. at 602. This might suggest that *parens patriae* is rooted in Article III, but the language does not clearly hold that *parens patriae* is a constitutional consideration. Given the Supreme Court's language and this Court's finding that Plaintiff is not bringing a claim under the statutory *parens patriae* section, 15 U.S.C. § 15c, it is sufficient to assume without deciding that *parens patriae* standing is prudential, not constitutional in nature.

[7] One issue mentioned in the parties' footnotes is whether the Nation's Attorney General falls within the definition of State attorney general for purposes of § 15c. The definition section, 15 U.S.C. § 15g, defines "State attorney general" as the "chief legal officer of a State." § 15g(1). The statute then defines "State" as a "State, the District of Columbia, the Commonwealth of Puerto Rico, and any other territory or possession of the United States." § 15g(2). The statute does not explicitly mention Indian nations. Plaintiff directs the Court to an unreported district court opinion for the proposition that the United States holds title to the land in trust on behalf of the Cherokee Nation and therefore the Nation should be considered a possession of the United States. (Opp'n 18 n.9 (citing *Buzzard v. Okla. Tax Comm'n*, 1992 U.S. Dist. LEXIS 22864, at *7–8 (N.D. Okla. Mar. 3, 1992)).)

The Court is not persuaded that holding title to land translates to the Cherokee Nation being a possession under the federal antitrust statute. In *Wilson v. Marchington*, the Ninth Circuit discussed two Supreme Court decisions relating to whether Indian nations are territories or possession—the cases have diverging conclusions. *See* 127 F.3d 805 (9th Cir. 1997). In *United States ex rel. Mackey v. Coxe*, 59 U.S. (18 How.) 100, 103–04 (1855), the Supreme Court "held the Cherokee nation was a territory as that term was used in a federal letters of administration statute." *Wilson*, 127 F.3d at 808. By contrast, in *New York ex rel. Kopel v. Bingham*, 211 U.S. 468, 474–75 (1909), the Court cited with approval a district court opinion that held the Cherokee Nation was not a "territory" under the federal extradition statute. *Wilson*,

State, as parens patriae on behalf of natural persons residing in such State, in any district court of the United States having jurisdiction of the defendant, to secure *monetary relief* as provided in this section for injury sustained by such natural persons to their property by reason of any violation of sections 1 to 7 of this title." 15 U.S.C. § 15c(a)(1) (emphasis added).

Thus, Congress has expressly authorized state attorneys general to bring suit under the Antitrust Improvements Act and Plaintiff need not demonstrate prudential standing, so long as it brings a claim for monetary relief under § 15c. But here is the critical point: Plaintiff does not bring an action under § 15c. Its amended Complaint clearly states that it only seeks injunctive relief under the Sherman Act, (FAC ¶ 252); § 15c only allows monetary relief. To the extent it seeks monetary relief, Plaintiff does so under Cherokee Nation law. (*Id.*, Prayer for Relief, ¶ b.) Logically, Plaintiff cannot rely on § 15c to provide standing when it has no claim under that section.

Nonetheless, the Nation argues that the Antitrust Improvements Act, codified in § 15c, provides standing to bring a non-monetary, i.e., injunctive, relief claim. (*See* Opp'n 18–19.) Plaintiff's reading of the law in incorrect. The Antitrust Improvements Act did not amend section 16 of the Clayton Act, codified at 15 U.S.C. § 26, which provides a private cause of action for injunctive relief. The plain language of the § 15c only mentions monetary—not injunctive—relief. Section 15c only created a new procedural means—the *parens patriae* civil action—through which a State could enforce already existing rights of

---

127 F.3d at 808. In *Wilson*, the Ninth Circuit declined to extend full faith and credit to tribal court decisions because the court construed the term "territory or possession of the United States" in 28 U.S.C. § 1738 to not include Indian tribes. *Id.* at 809. At oral argument, Plaintiff maintained that *Coxe* is on point for the issue whether the Cherokee Nation is a territory or possession. (ECF No. 1321, at 14.) *Coxe*'s applicability to the federal antitrust statute is far from certain, especially in light of the reasoning in *Bingham* and *Wilson*.

The Court notes that should Plaintiff amend its complaint to rely on 15 U.S.C. § 15c it will likely need to more thoroughly discuss this issue. Because Plaintiff does not explicitly rely on § 15c, the Court will proceed with its analysis, assuming that Plaintiff could eventually demonstrate it has standing under § 15c.

15-MD-2670 JLS (MDD)

recovery under section 4 of the Clayton Act.  *See Ill. Brick v. Illinois*, 431 U.S. 720, 733 n.14 (1977).

Plaintiff cites dicta in *Burch*, where the Fourth Circuit said that "the congressional intent regarding the Hart-Scott-Rodino Antitrust Improvements Act of 1976 disclosed congressional recognition that state attorneys general suing as parens patriae clearly have standing to seek injunctive relief under Section 16 of the Clayton Act."  554 F.2d at 635 (citations omitted).  The *Burch* court's statement did not hold that § 15c extends to injunctive relief, but merely recognized that the Supreme Court already allowed *parens patriae* actions for injunctive relief under section 16, *id.* at 635 n.3 (citing *Georgia v. Pa. R.R.*, 324 U.S. 439 (1945)), and the Act did not disturb the Supreme Court's holding.  Thus, the Antitrust Improvement Act, 15 U.S.C. § 15c, does not supply the requisite standing for Plaintiff to request injunctive relief.

### B.  Parens Patriae *Standing Under Cherokee Nation Law*

The Cherokee Nation advances a second ground by which it has standing to assert a *parens patriae* action under both federal and state law without meeting the *Snapp* test.  It argues that the Nation's Attorney General has authority to initiate a civil action on behalf of the citizens of the Cherokee Nation under 51 CNCA § 105.B.2[8] and under the Cherokee Constitution, Article VII, § 13, which authorizes the Attorney General to represent the Nation in all civil actions "wherein the Cherokee Nation is named as a party."  (Opp'n 17.) Plaintiff also argues the Cherokee Nation Attorney General has standing to bring a *parens*

_____

[8] Plaintiff's Opposition brief cites to 12 CNCA § 13 and 51 CNCA § 105.B.14 as providing the requisite statutory standing.  These citations to the Cherokee Nation Code do not appear to be correct.  For example, 12 CNCA § 13 concerns the tolling of the limitations period for minors or incompetents.  51 CNCA § 105.B.14 provides the Attorney General with authorization to prosecute all civil and criminal actions against or within the jurisdiction of the Cherokee Nation.  The Court believes title 51, section 105.B.2 is the appropriate citation, which authorizes the Attorney General to "initiate or appear . . . in any action in which the interests of the Nation or the People of the Nation are at issue."  If Plaintiff cites Cherokee Nation Code going forward in this litigation, it should provide a copy of the relevant section, either by reference or judicial notice, for the Court.  The Code is not available on the commercial reporters and the Cherokee Nation's website only contains a copy of the Code from 2015.

*patriae* civil action under the laws of other states. (*Id.* at 31.) To that end, recently enacted Cherokee Nation law provides that:

> The Cherokee Nation Attorney General acting as parens patriae, may bring a civil cause of action in any district court of the United States . . . having jurisdiction over a defendant, to secure monetary or injunctive relief based on any *applicable* federal statute, common law, or the laws of any state.

12 CNCA § 7 (2018) (emphasis added). Similarly, 51 CNCA § 105.B.2 authorizes the Attorney General to "initiate or appear . . . in any action in which the interests of the Nation or the People of the Nation are at issue." Thus, the issue is whether these constitutional and statutory sections allow the Cherokee Nation to displace the general rule articulated in *Snapp*.

The Court reads the foregoing Cherokee Nation provisions as authorizing the Attorney General to bring a suit under *applicable* substantive law, whether federal or state. That is half the equation; the other half is what constitutes "applicable" law. Can the Cherokee Nation Attorney General bring suit as if he is the Kansas attorney general simply because Cherokee Nation law authorizes parens patriae but the Kansas legislature does not explicitly do so? Plaintiff cites no authority for such a proposition. The proper inquiry is whether the Nation's Attorney General is within the scope of the cause of action authorized by Congress or a state legislature. *See D.R. Ward Const. Co. v. Rohm & Haas Co.*, 470 F. Supp. 2d 485, 495 (E.D. Pa. 2006) (noting that "the concept of prudential standing in the antitrust context is intertwined with the substantive content of and intent behind the particular statute authorizing the cause of action").

In sum, it is not enough that Cherokee Nation law authorizes the Attorney General to bring suit; the Nation must also demonstrate that it meets the prudential standing requirements of the state or federal substantive law in question, i.e., that it is within the class of persons who can sue under a statute. The Court will shortly discuss Plaintiff's standing under section 16 of the Clayton Act, *see infra* section I.C, to request declaratory

relief, *see infra* section I.D, and standing under various state substantive law, *see infra* section II.

## C. Parens Patriae *Standing Under Section 16 of the Clayton Act*

Plaintiff's amended Complaint seeks injunctive relief for violation of section 1 of the Sherman Act. (FAC ¶ 252.) Injunctive relief is governed by section 16 of the Clayton Act, which provides "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26.

### 1. The Parties' Arguments

Defendants state that Plaintiff's only federal claim is for an injunction under the Sherman Act. (MTD 22 (citing FAC Prayer for Relief, ¶ d; *id.* ¶¶ 247–52).) Defendants contend that Plaintiff has failed to state a claim such that the Court does not have subject matter jurisdiction. Defendants also point out that this Court previously dismissed identical claims made by other plaintiffs in this MDL for failing to "plead facts that plausibly establish the continuing risk of threatened injury." (*Id.* (citing *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-2670, 2017 WL 35571, at *12 (S.D. Cal. Jan. 3, 2017); and *In re Packaged Seafood Prod. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1176 (S.D. Cal. 2017)).) They argue that Plaintiff, like the plaintiffs in the previous orders, have pleaded no facts supporting an ongoing conspiracy and to the extent Plaintiff has pleaded facts, the facts are inconsistent with an ongoing conspiracy or any real or immediate threat of harm in the future. (*Id.* at 11–12 (citing FAC ¶¶ 2, 252).) Defendants conclude that Plaintiff's sole federal claim is defective and urge the Court to dismiss the entire complaint for lack of subject matter jurisdiction. (*Id.* at 12.)

Plaintiff argues that jurisdictional dismissal is warranted only "where the alleged claim under the Constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction or where such a claim is wholly insubstantial and frivolous." (Opp'n 12 (quoting *Bell v. Hood*, 327 U.S. 678, 682–83

(1946)).) Plaintiff would apply *Hood* in this case because the Court's prior rulings determined that claims similar to Plaintiff's claims were not frivolous. (*Id.* at 13 (citing ECF Nos. 283, 295, 492).) Plaintiff advances a second argument; that injunctive relief is appropriate to eliminate the "lingering effects" of illegal conduct. (*Id.* (quoting *In re Multidistrict Vehicle Air Pollution*, 538 F.2d at 234).) Plaintiff avers that this Court's previous rulings should not apply here because Plaintiff has plausibly alleged lingering effects from which Defendants continue to benefit. (*Id.* (citing FAC ¶¶ 131–33).)

Defendants respond that they only seek dismissal of Plaintiff's injunctive relief claim because the Nation fails to plead facts to support a claim. (Reply 2.) That is, they do not seek dismissal on jurisdictional grounds; thus *Bell v. Hood* and its progeny are inapplicable. (*Id.*)

### 2. Parens Patriae *Standing for Injunctive Relief*

Thus far in the analysis, Plaintiff's federal antitrust claim has not cleared the first hurdle—standing. Is § 15c sufficient to confer standing for injunctive relief? The answer is no. Does Cherokee Nation law confer standing: yes, but only if the substantive law in question, state or federal, allows standing by a *parens patriae* plaintiff. This section deals with the question of whether Plaintiff may proceed with a federal antitrust injunctive relief claim under *parens patriae* standing.

The Supreme Court's decisions, in particular *Georgia v. Pennsylvania Railroad* and *Snapp*, demonstrate that a *parens patriae* plaintiff must meet the two-part test outlined in *Snapp*. In *Pennsylvania Railroad*, the state of Georgia alleged that twenty railroad companies conspired to fix freight rates in violation of federal antitrust laws. *See* 324 U.S. at 443–44. Georgia brought suit in its capacity as quasi-sovereign, i.e., *parens patriae*, and in its proprietary capacity seeking both damages and injunctive relief. *Id.* at 443. The Supreme Court surveyed the relevant authority to determine whether Georgia could maintain the action under the Court's original jurisdiction. *See id.* at 447–50 (citing, e.g., *Pennsylvania v. West Virginia*, 262 U.S. 553 (1923); *Georgia v. Tenn. Copper Co.*, 206 U.S. 230 (1907); and *Kansas v. Colorado*, 206 U.S. 46 (1907)). The Court held that

"Georgia may maintain this suit as parens patriae acting on behalf of her citizens." *Id.* at 450. And, the Court also determined that Georgia stated a claim for injunctive relief under section 16 of the Clayton Act. *See id.* at 460–62.

More than thirty years later, the Court revisited the requirements for *parens patriae* in *Snapp*. The question presented was whether Puerto Rico could maintain a *parens patriae* action seeking injunctive and declaratory relief based on harm to migrant workers who had been recruited to work an apple harvest in the continental United States. *See Snapp*, 458 U.S. at 597–99. The Court again reviewed the line of cases permitting a *parens patriae* action, focusing on the same authorities discussed in *Pennsylvania Railroad*, as well as the holding of *Pennsylvania Railroad* itself. *See id.* at 600–06. The conclusion is worth quoting:

> This summary of the case law involving *parens patriae* actions leads to the following conclusions. In order to maintain such an action, the State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party. The State must express a quasi-sovereign interest.

*Id.* at 607. The upshot of *Pennsylvania Railroad*, *Snapp*, and similar cases is clear; where a sovereign seeks to maintain a *parens patriae* action under section 16 of the Clayton Act, it must meet the requirements outlined in *Snapp*.

This view was implicitly recognized by a district court considering similar issues in *New York v. Microsoft Corp.*, 209 F. Supp. 2d 132 (D.D.C. 2002). There, the United States and several individual States filed suit against Microsoft alleging antitrust violations. *Id.* at 136. Microsoft argued that the States did not meet the standing requirements under section 16 of the Clayton Act to bring a *parens patriae* action. *Id.* at 150. In making this argument, Microsoft proposed a rule that a state alleging a *parens patriae* action must establish it is seeking to remedy some state-specific injury and must distinguish the injury to its citizenry from the injury shared in common by all citizens of the United States. *Id.* at 151. The court rejected this proposed rule relying on *Snapp* and *Pennsylvania Railroad*.

15

*Id.* Instead, the court found the plaintiff States had standing because they had proven a significant harm to their citizens:

> It cannot, therefore, be said that this is a case where the "primary thrust of an alleged wrong is injury to a narrowly limited class of individuals, and the harm to the economy as a whole is insignificant by comparison." At a minimum, this is a case where "the direct impact of the alleged wrong [is] felt by a substantial majority, though less than all, of the state's citizens, so that the suit can be said to be for the benefit of the public."

*Id.* at 152 (alteration in original) (quoting *Pennsylvania ex rel. Shapp v. Kleppe*, 533 F.2d 668, 675 (D.C. Cir. 1976)).

This Court sees no reason to depart from the general rule articulated in *Snapp*. Plaintiff must demonstrate the *parens patriae* standing requirements outlined in *Snapp* to bring a section 16 claim.

### 3. Applying Snapp*'s Framework to Plaintiff's Amended Complaint*

Because section 16 does not explicitly confer Plaintiff standing to bring an injunctive relief claim, Plaintiff must demonstrate it meets the standing requirements outlined by the Supreme Court in *Snapp*. *See* 458 U.S. at 607. Defendants argue that the Cherokee Nation has not alleged injury to a sufficiently substantial segment of its population. (MTD 17.) Plaintiff argues that it has sufficiently alleged a quasi-sovereign interest in the economic well-being of its citizens and has alleged such harm to its population. (Opp'n 18.)

The Court agrees with Defendants. While the Supreme Court "has not attempted to draw any definitive limits on the proportion of the population of the State that must be adversely affected by the challenged behavior," the Court does require that "more must be alleged than injury to an identifiable group of individual residents." *Snapp*, 458 U.S. at 607. Plaintiff's amended Complaint alleges that its citizens, "indirect purchasers of Packaged Tuna, have overpaid for Packaged Tuna as a direct result of Defendants' conspiracy and conduct." (FAC ¶ 10; *see also id.* ¶ 340 ("Defendants unlawfully overcharged end payers, who made purchases of Defendants' Packaged Tuna in California at prices that were more than they would have been but for Defendants' actions); ¶¶ 345,

350, 355, 365, 370, 376 (copying allegation in paragraph 340 and changing the name of the relevant state).)  The allegations do not describe in any further depth the proportion or magnitude of the injury to the Cherokee Nation.

One could imagine a case where the line between a significant proportion and an insignificant proportion of a population is a close call.  This is not one of those cases.  The Court cannot adjudicate whether Plaintiff has alleged injury to a *significant* proportion of its population because Plaintiff has not alleged facts about *any* proportion of its population.  Rather, Plaintiff states, in conclusory fashion, that its citizens "have overpaid for Packaged Tuna."  (*Id.* ¶ 10.)  In an effort to fend off this conclusion, Plaintiff argues that it cannot allege with more specificity the magnitude of the injury or the number of citizens injured because of Defendants' fraudulent concealment of their anticompetitive scheme.  (Opp'n 18 n.8 (citing FAC ¶¶ 231–46).)  Those fraudulent concealment allegations concern actions by Defendants to conceal their own activities; such activities do not prevent Plaintiff from gathering and alleging information about its own population.  If Plaintiff cannot explain how Defendants have injured a significant portion of the Cherokee Nation then perhaps the proper recourse is for individual consumers to join putative class actions against Defendants or bring their own claims.

By way of comparison, in the *Microsoft* case, the district court found that "millions of citizens of, and hundreds, if not thousands, of enterprises in each of the United States and the District of Columbia utilize PCs running on Microsoft software."  209 F. Supp. 2d at 152 (quoting *United States v. Microsoft Corp.*, 87 F. Supp. 2d 30, 55 (D.D.C. 2000)).  The court went on to state, "[a]t a minimum, this is a case where 'the direct impact of the alleged wrong [is] felt by a substantial majority, though less than all, of the state's citizens, so that the suit can be said to be for the benefit of the public.'"  *Id.* (second alteration in original) (quoting *Kleppe*, 533 F.2d at 675).  Here, we do not have similar information that would demonstrate injury to the Cherokee Nation's citizens.

The Court does not determine whether Plaintiff has a quasi-sovereign interest because Plaintiff's amended Complaint fails the first element of the *Snapp* standing test.

The Court finds Plaintiff fails to meet its burden to demonstrate it has standing to bring an injunctive relief claim under federal antitrust law.

### D. **Parens Patriae** *Standing Under the Declaratory Relief Act*

Plaintiff also contends that this Court has jurisdiction to hear its claims under the Sherman Act because it seeks declaratory relief. (Opp'n 13 (citing FAC Prayer for Relief ¶ a).) To that end, Plaintiff cites several cases where courts have held that a declaratory relief action under the Sherman Act is sufficient to provide federal question jurisdiction. (*Id.* at 14 (citing, e.g., *S. Side Theatres, Inc. v. United W. Coast Theatres Corp.*, 178 F.2d 648, 651 (9th Cir. 1949)).) Plaintiff urges the Court to find subject matter jurisdiction based on its declaratory relief claim.

Defendants respond that a declaratory relief claim must satisfy Article III's standing requirements. (Reply 2 (citing, e.g., *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (en banc)).) They assert Plaintiff does not meet the requirement because Plaintiff fails to plead an ongoing conspiracy and the cases Plaintiff cites all involved a party to an ongoing agreement. (*Id.* at 2–3.) Defendants also contend that Article III requires ripeness and a declaratory action must raise "a substantial controversy, . . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." (*Id.* at 3 (emphasis omitted) (quoting *In re Coleman*, 560 F.3d 1000, 1005 (9th Cir. 2009)).) Defendants argue that Plaintiff has not plead immediacy here because the amended Complaint does not plausibly plead an ongoing conspiracy. (*See id.*)

A court may grant declaratory relief "[i]n a case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a). Accordingly, a district court must determine at the outset whether the parties have presented an actual case or controversy within the court's jurisdiction. *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 669 (9th Cir. 2005). The Declaratory Judgment Act is a "procedural device only; it does not confer an independent basis of jurisdiction on the federal court." *Guaranty Nat'l Ins. Co. v. Gates*, 916 F.2d 508, 511 (9th Cir. 1990) (citing, e.g., *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)). "A declaratory judgment action may be entertained in federal court only

if the coercive action that would have been necessary, absent the declaratory judgment procedure, could have been heard in a federal court." *Id.*; *see also Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376 1382–83 (9th Cir. 1988) ("The Declaratory Judgment Act merely creates a remedy in cases otherwise within the court's jurisdiction; it does not constitute an independent basis for jurisdiction." (citing *Fiedler v. Clark*, 714 F.2d 77, 79 (9th Cir. 1983) (per curiam)).

Declaratory relief is a remedy and does not modify standing requirements. In order for Plaintiff to seek declaratory relief, it must still meet the *parens patriae* requirements outlined in *Snapp*. Indeed, the respondent in *Snapp* "sought declaratory relief with respect to the past practices of petitioners" and the Court applied the two-part test to the declaratory relief claim. 458 U.S. at 598–99. As previously discussed, Plaintiff has not alleged an interest apart from the interest of private parties. *See id.* at 607; *supra* section I.C.3. Thus, Plaintiff does not have standing under the Sherman and Clayton Acts, as currently pled.

The Court finds that Plaintiff does not have standing to seek declaratory relief. Plaintiff has no basis for standing under the Sherman Act. Accordingly, the Court **GRANTS IN PART** Defendants' Motion and **DISMISSES WITHOUT PREJUDICE** Plaintiff's first cause of action under the Sherman Act.

### E. Parens Patriae *Standing Under Laws of Other States*

Plaintiff brings substantive claims not just under 15 U.S.C. § 1, but also under the laws of several states, including California, Kansas, Arizona, Colorado, New Mexico, Oklahoma, Florida and the Cherokee Nation's own laws. This raises, as previously discussed, the issue of whether the Cherokee Nation's Attorney General needs authorization to bring a *parens patriae* claim under the laws of other states. The Court briefly discusses the relevance of this section; Plaintiff's sole federal question claim has been dismissed. Therefore, the Court must determine whether to exercise supplemental jurisdiction over Plaintiff's remaining State and Indian law claims. Before doing so, the Court analyzes whether Plaintiff can bring any claim under State law.

Defendants argue that California, Oklahoma, Colorado, and Florida law only allow *parens patriae* actions pursuant to statutory grants of authority and the relevant authority in each state only allows that state's attorney general to bring a claim under state law. (MTD 17.) As to the remaining states—Kansas, Arizona, and New Mexico—Defendants cite *California v. Infineon Technologies AG*, 531 F. Supp. 2d 1124, 1165–66 (N.D. Cal. 2007), for the proposition that courts dismiss claims under state law when the plaintiff cannot supply state authority that "expressly authorizes" a state attorney general to bring a *parens patriae* claim. (MTD 17.) Defendants contend that the Cherokee Nation cannot point to any such authority. (*Id.*)

As discussed, Plaintiff argues that the Cherokee Nation's Attorney General has statutory authority to bring a *parens patriae* action on behalf of all Nation citizens. (Opp'n 19.) It acknowledges that the Nation does not seek to represent its citizens of other states, but the Nation would represent citizens who reside in other states and hold dual citizenship with both the Cherokee Nation and the state in which they reside. (*Id.* at 20.) Plaintiff advances two arguments concerning *Infineon*. First, *Infineon* held that if there is legal authority in a state that expressly authorized a *parens patriae* action, then courts presume the existence of such authority, and, here, the Cherokee Nation Attorney General has such authorization under Cherokee Nation law. (*Id.* (citing *Infineon*, 531 F. Supp. 2d at 1165); *see also id.* at 31 (citing 12 CNCA § 7).) Second, at oral argument, Plaintiff maintained that *Infineon* does not apply because it was generally discussing California's Cartwright Act. (ECF No. 1321, at 16.)

Defendants respond by arguing Plaintiff ignores *Infineon*'s reasoning that prohibits foreign attorneys general from bringing claims under the laws of states that limit parens patriae authority to their own attorneys general. (Reply 5 (citing *Infineon*, 531 F. Supp. 2d at 1133, 1140).)

*1. California*

Plaintiff's second cause of action is for violation of the California Cartwright Act, which is the State's antitrust statute. (FAC ¶ 254.) The Act specifically authorizes the

California Attorney General to bring suit on behalf of the people of California. *See* Cal. Bus. & Prof. Code § 16760(a)(1) ("The Attorney General may bring a civil action in the name of the people of the State of California, as parens patriae on behalf of natural persons residing in the state, . . . ."). As the *Infineon* court observed,

> This provision could not be plainer: where the Attorney General is empowered to bring a damages action seeking relief for violation(s) of the Cartwright Act, it is only the *California* Attorney General who is so empowered, and on behalf of *California* residents only. The out-of-state Attorneys General therefore have no parens patriae authority under the Act.

531 F. Supp. 2d at 1133.

The Court agrees with the *Infineon* court; the plain language of the Cartwright Act belies no statutory authorization for a foreign attorney general to bring a *parens patriae* suit under California antitrust law. The plain language of the statute only discusses a singular attorney general, i.e., *the* attorney general. This is different from statutory language that authorizes multiple attorneys general. *Cf.* 15 U.S.C. § 15c ("Any attorney general of a State . . . ."). Thus, only the California Attorney General can bring suit under section 16760.

Plaintiff argues that it is not bringing a claim under California Business and Profession Code § 16760, but is instead bringing a claim under § 16570(a), which supplies a cause of action to "any person" who is injured. (Opp'n 30.) Thus, the Cherokee Nation seeks to represent those persons, living in California, but having dual citizenship with the Cherokee Nation, who would have a cause of action under § 16570(a).

This is an interesting argument considering dicta in the Supreme Court's opinion in *Standard Oil*, states: "Hawaii plainly qualifies as a person under both sections [4 and 16] of the [Clayton Act], whether it sues in its proprietary capacity or as parens patriae." 405 U.S. at 261 (citing *Pa. R.R.*, 324 U.S. at 447). The issue then becomes, does this reasoning extend to California law? The *Infineon* court said no. There, the court reasoned that the California legislature provided a *parens patriae* cause of action in § 16760, which only

authorized the California attorney general to bring such a claim.  531 F. Supp. 2d at 1132–33.  This Court thinks such reasoning sound.  The California legislature clearly provided a *parens patriae* cause of action under § 16760.  It would not make sense for it to create the same cause of action, *sub silentio*, in § 16570.  Or, at least, the Court cannot assume the legislature did so without some authority saying as much, which Plaintiff has not provided.  Accordingly, the Court finds Plaintiff has no standing to bring a *parens patriae claim* for violation of the California Cartwright Act.

Plaintiff also brings a cause of action under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.  (FAC ¶ 260.)  Like the Cartwright Act, the Unfair Competition Law authorizes damages "which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General."  Cal. Bus. & Prof. Code § 17206(a); *see also* Cal. Bus. & Prof. Code § 17204 ("Actions for relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General . . . in the name of the people of the State of California . . . .").  For the same reasons as discussed in the Cartwright Act analysis, the Unfair Competition Law does not authorize foreign attorneys general to bring a *parens patriae* suit.  Thus, the Court finds Plaintiff has no standing to bring a *parens patriae* claim for violation of the California Unfair Competition law.

Finally, Plaintiff brings a cause of action under California law for "unjust enrichment."  (*See* FAC ¶¶ 338–42.)  "[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"  *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citing *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Ct. App. 2010); and *Jogani v. Superior Court*, 81 Cal. Rptr. 3d 503, 511 (Ct. App. 2008)).  "Rather, [California courts] describe the theory underlying a claim that a defendant has been unjustly conferred a benefit 'through mistake, fraud, coercion, or request.'"  *Id.* (citing 55 Cal. Jur. 3d Restitution § 2).  A court may construe an unjust enrichment claim as a quasi-contract claim seeking restitution.  *Id.* (citing *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Ct. App. 2014)).

Because no statute authorizes standing to bring an unjust enrichment claim, Plaintiff must demonstrate it meets the prudential standing requirements outlined by the Supreme Court in *Snapp*. *See* 458 U.S. at 607 ("[T]he State must articulate an interest apart from the interests of particular private parties, *i.e.*, the State must be more than a nominal party."). The Court previously determined Plaintiff fails to do so and reiterates prior finding here. *See supra* section I.C.3. Accordingly, the Court finds Plaintiff does not have standing to bring a *parens patriae* claim for unjust enrichment under California law.

### 2. Kansas

Plaintiff's fourth cause of action is for violation of the Kansas Restraint of Trade Act, Kan. Stat. Ann. § 50-101, *et seq.* (FAC ¶ 271.) The Act authorizes "[t]he attorney general" to bring an action. Kan. Stat. Ann. § 50-103(a); *see also* § 50-109 ("The attorney general shall: (a) Enforce this act throughout the state; . . . ."). The statute does not explicitly authorize a foreign attorney general as evidenced by the use of the term "[t]he attorney general" rather than "an" or "any" attorney general. Plaintiff directs the court to a district court opinion that characterizes section 50-103 as the "functional equivalent of *parens patriae*." *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 386 (D.D.C. 2002). Even assuming the district court's characterization of the statute was correct, it provides no help to Plaintiff. In that case, the State of Kansas was a party to the litigation and Kansas law conferred authority on the Kansas attorney general to bring an action—the opinion did not discuss authorizing a foreign attorney general to bring an action under Kansas law. *See id.* Thus, the Court finds Plaintiff does not have standing to bring a *parens patriae* claim for violation of the Kansas Restraint of Trade Act.

Plaintiff also argues that Cherokee Nation citizens are persons as defined by the Act, (Opp'n 33 (citing Kan. Stat. Ann. § 50-148)), and its Attorney General can bring suit on their behalf, (*id.* (citing Kan. Stat. Ann. § 50-161(b)). Defendants argue that section 50-148 does not explicitly reference attorneys general and a *parens patriae* action must have some sort of affirmative statutory authorization. (Reply 4–5.)

15-MD-2670 JLS (MDD)

The Court agrees with Defendants. Kansas law allows the Kansas attorney general to bring a representative action. Kan. Stat. Ann. § 50-103. It also allows private parties to assert a private cause of action. § 50-148. It does not follow, however, that a private cause of action allows a foreign attorney general, suing on behalf of a different sovereign, to vindicate the public rights of the Cherokee Nation. *See Infineon*, 531 F. Supp. 2d at 1133 ("[A] parens patriae action is expressly defined as a means for a state to seek redress for wrongs affecting the *public* at large, while a class action is generally a means by which individual *private* rights may be collectively enforced." (citing *Standard Oil*, 405 U.S. at 257–58)).[9] The Court does not doubt that individual private citizens, residing in Kansas and holding dual Cherokee-Kansan citizenship, could bring an action, but the Court will not bootstrap the statutory language to presume a sovereign entity could bring a public action under the same private provision without express authorization.

Finally, Plaintiff points to a harmonization provision in Kansas law that requires the Act to be "construed in harmony with ruling judicial interpretations of federal antitrust law by the United States supreme court." Kan. Stat. Ann. § 50-163(b). Plaintiff argues that although Kansas law does not explicitly contain the words "*parens patriae*" it is appropriate, using the harmonization provision, to allow all types of actions permitted by the Sherman Act. (Opp'n 34 (citing 15 U.S.C. § 15c).) This argument is unpersuasive. Section 15c is a statutory provision, not a "judicial interpretation of federal antitrust law." Kan. Stat. Ann. § 50-163(b).

Plaintiff's thirteenth cause of action is for unjust enrichment under Kansas law. (FAC ¶¶ 343–47.) In Kansas, unjust enrichment is an equitable doctrine, a "modern designation for the older doctrine of quasi-contracts." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 269 Kan. 166, 176 (1996) (citing *Peterson v. Midland Nat'l Bank*, 242

---

[9] Plaintiff argues that *Infineon* does not address Kansas law and, presumably, is inapplicable. (Opp'n 34 n.21.) Simply because the *Infineon* court did not apply Kansas law does not also mean its reasoning is inapplicable. The fundamental issue at the core of all Plaintiff's state law claims is whether a foreign attorney general can bring a *parens patriae* suit under the law of a state other than the one he represents. *Infineon* dealt directly with that issue and the Court finds its reasoning sound.

Kan. 266, 275 (1987)).  Because unjust enrichment is not statutory, *Snapp* applies.  For reasons stated above, *see supra* section I.C.3, the Court finds Plaintiff cannot meet the prudential *parens patriae* standing requirements for a Kansas unjust enrichment claim.

### 3. Arizona

Plaintiff's fifth cause of action is for violation of the Arizona Uniform State Antitrust Act.  (FAC ¶ 277.)  The Arizona Uniform State Antitrust Act, Ariz. Rev. Stat. § 44-1401, *et seq.*, provides that "[t]he attorney general . . . may bring an action for appropriate injunctive or other equitable relief and civil penalties . . . in the name of the state for a violation of this article."  Ariz. Rev. Stat. § 44-1407.  The plain language of the statute references *the* attorney general and authorizes the attorney general to bring suit in the name of *the* state.  As with other statutes previously discussed, Arizona law does not authorize a foreign attorney general to bring a *parens patriae* action under Arizona law.

Plaintiff also argues that it could bring a cause of action under section 44-108, which provides a cause of action to any "person threatened with injury or injured" by a violation of the Act.  (Opp'n 36 (quoting Ariz. Rev. Stat. § 44-1408(B)).)  The Act elsewhere defines person as "an individual, corporation, business trust, partnership, association or any other legal entity."  Ariz. Rev. Stat. § 44-1401.  Plaintiff is thus arguing that the Attorney General is bringing a *parens patriae* claim on behalf of those persons who were allegedly harmed.  The plain language does not authorize such representative actions.  The structure of the statute confirms the plain language.  Section 44-108(A) allows "[t]he state" to bring an action for appropriate relief and, as previously discussed, section 44-107 authorizes the Arizona attorney general to bring an action.  Thus, the statute provides for public causes of action in sections 44-108(A) and 44-107 and a private cause of action in section 44-108(B).  Because the structure distinguishes the causes of action, the Arizona legislature likely did not intend to allow a representative type action in a private cause of action.  Or, at least, the Court does not make such a finding without authority saying so.

Thus, the Arizona Uniform State Antitrust Act provides no authorization for a foreign attorney general to bring a *parens patriae* suit and the Court finds Plaintiff cannot bring a *parens patriae* claim for violation of the Arizona Uniform State Antitrust Act.

Plaintiff also alleges a cause of action for unjust enrichment under Arizona law. (FAC ¶¶ 348–52.) In Arizona, unjust enrichment is a form of restitution to enforce contract rights when there exists no valid contract. *See Murdock-Bryant Const., Inc. v. Pearson*, 146 Ariz. 48, 52–53 (1985). For reasons previously discussed, the Court finds Plaintiff has not alleged sufficient facts for *parens patriae* standing, *see supra* section I.C.3.

### 4. Colorado

Plaintiff's sixth cause of action is for violation of section 6-4-104 of the Colorado Antitrust Act of 1992. (FAC ¶ 283.) Colorado law explicitly authorizes a *parens patriae* civil action, but only "[t]he attorney general may bring" such an action. Colo. Rev. Stat. Ann. § 6-4-111(3)(a). As was true with the statutes previously discussed, the reference to "[t]he attorney general" means the Colorado attorney general, not foreign attorneys general. Plaintiff contends that Cherokee Nation law authorizes the Cherokee Nation Attorney General to bring an action under Colorado law and the right of the Colorado attorney general should be extended to the Nation's Attorney General. (Opp'n 35.) It is not enough that Cherokee Nation law authorizes the Nation's Attorney General to bring an action under Colorado law; Colorado law must also authorize such a suit. The plain language of the statute does not authorize such an action. The Court finds Plaintiff cannot bring a *parens patriae* action under Colorado antitrust law.

Plaintiff's fifteenth cause of action is for unjust enrichment under Colorado law. (FAC ¶¶ 353–57.) Unjust enrichment is a judicially-created remedy under Colorado law. *Lewis v. Lewis*, 189 P.3d 1134, 1141 (Colo. 2008), *as modified on denial of reh'g* (Aug. 18, 2008) (citing *Salzman v. Bachrach*, 996 P.2d 1263, 1265 (Colo. 2000)). Thus, the Court finds Plaintiff has not alleged sufficient facts for *parens patriae* standing, *see supra* section I.C.3.

/ / /

15-MD-2670 JLS (MDD)

5. *New Mexico*

Plaintiff's seventh cause of action is for violation of section 57-1-1 of the New Mexico Antitrust Act. (FAC ¶ 289.) The Act states "[t]he attorney general may bring an action in the name of the state against any person." N.M. Stat. Ann. § 57-1-8. Like the statutes previously discussed, the reference to "[t]he attorney general" means the New Mexico attorney general, not foreign attorneys general. Plaintiff also argues that it can bring a claim on behalf of persons threatened with injury under the New Mexico Antitrust Act. (Opp'n 37 (citing N.M. Stat. Ann. § 57-1-3(A)).) Further, section 57-1-1.2 includes "any governmental or other legal entity with the exception of the state" within its definition of a person. Plaintiff contends that it is a governmental or other legal entity and thus the statute can encompass the Nation's Attorney General. (*Id.* at 37–38.)

This is a novel argument based on the unique language in the New Mexico statute; indeed, no other statute examined in this order mentions any governmental entity. However, a critical distinction should not be overlooked. The Nation's Attorney General, who would qualify as the "governmental entity," is not the party who was injured. It is his fellow Cherokee citizens who are injured and are the "persons" as defined by the Act. Those persons have a cause of action under section 57-1-3; the New Mexico attorney general has a cause of action under section 57-1-8. No provision or authority demonstrates that a foreign attorney general may use either cause of action. Accordingly, the Court finds Plaintiff cannot bring a *parens patriae* action under the New Mexico Antitrust Act.

Plaintiff's sixteenth cause of action is for unjust enrichment under New Mexico law. (FAC ¶¶ 358–62.) Under New Mexico law, unjust enrichment is a form of restitution cutting across contract and tort law. *See Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 178 (1990). Thus, the Court finds Plaintiff has not alleged sufficient facts for *parens patriae* standing, *see supra* section I.C.3.

6. *Oklahoma*

Plaintiff's ninth cause of action is for violation of the Oklahoma Consumer Protection Act. (FAC ¶ 302.) In its Opposition brief, Plaintiff states that it agrees to

withdraw its ninth cause of action. (Opp'n 35.) Even if the Court were to consider, the Consumer Protection Act, it states "[t]he attorney general or a district attorney may bring an action." Okla. Stat. Ann. tit. 15, § 756.1(A). As with the statutes previously discussed, the reference to "[t]he attorney general" means the Oklahoma attorney general, not foreign attorneys general. The Court finds Plaintiff cannot bring a *parens patriae* action under the Oklahoma Consumer Protection Act.

Plaintiff's eighteenth cause of action is for unjust enrichment under Oklahoma law. (FAC ¶¶ 368–73.) Oklahoma treats unjust enrichment as an equitable remedy, not based in statute. *See French Energy, Inc. v. Alexander*, 818 P.2d 1234, 1237 (Ok. 1991). For reasons discussed above, the Court finds Plaintiff has not alleged sufficient facts for *parens patriae* standing, *see supra* section I.C.3.

### 7. Florida

Plaintiff's tenth cause of action is for violation of the Florida Deceptive and Unfair Trade Practices Act. (FAC ¶ 314.) Unlike other states, Florida's Deceptive and Unfair Trade Practices Act does not empower the state attorney general; instead, the Act authorizes "[t]he enforcing authority" to bring various remedies. *See* Fla. Stat. Ann. § 501.207(1). The Act defines "enforcing authority" as either the office of the state attorney or the Department of Legal Affairs depending on the type of violation. § 501.203(2). Neither of these entities is a government entity outside Florida and the law does not reference language indicative of a *parens patriae* action.

Plaintiff argues, however, that it is availing itself of the section of the Act whereby "anyone aggrieved by a violation of this part may bring an action." (Opp'n 33 (quoting Fla. Stat. Ann. § 501.211(1), (2)).) The Nation's Attorney General is not a person who was aggrieved; the individual and private citizens of the Nation, residing in Florida, are the aggrieved persons. As is the theme throughout these state law claims, Plaintiff conflates a *public* action—*parens patriae*—with the *private* causes of action created under state law. Accordingly, the Court finds Plaintiff cannot bring a *parens patriae* action under Florida's unfair trade practices law.

15-MD-2670 JLS (MDD)

Plaintiff's seventeenth cause of action is for unjust enrichment under Florida law. (FAC ¶¶ 363–67.) As with other states, Florida treats unjust enrichment as an equitable remedy. *See Henry M. Butler, Inc. v. Trizec Props., Inc.*, 524 So. 2d 710, 711–12 (Fla. Ct. App. 1988). Thus, the Court finds Plaintiff has not alleged sufficient facts for *parens patriae* standing, *see supra* section I.C.3.

### F. Standing Conclusion

In sum, injunctive relief under federal antitrust law requires a quasi-sovereign interest and an interest apart from the interests of particular private parties. Plaintiff does not meet this requirement and has no standing under federal law. With respect to Plaintiff's state statutory causes of action, no State explicitly authorizes an out-of-state attorney general to bring an action in a federal court pursuant to out-of-state law. This same observation was made by the court in *Infineon* and Judge Hamilton's reasoning is worth noting:

> Not a single source relied on by plaintiffs expressly provides or even implies that a representative action by an Attorney General may be brought pursuant to *another* state's laws, . . . . [E]ven the most expansive of the general empowerment statutes relied on by plaintiffs, while recognizing the Attorney General's ability to bring actions in out-of-state courts, stops short of actually authorizing the Attorney General to bring actions in out-of-state jurisdictions *pursuant to* out-of-state laws.

531 F. Supp. 2d at 1139. The same reasoning applies here. Plaintiff's Attorney General does not have *parens patriae* standing to bring claims based on the laws of other states. Simply because citizens of the Cherokee Nation live in other states, the Nation's Attorney General cannot borrow other sovereign State's laws. The Court **GRANTS IN PART** Defendants' Motion and **DISMISSES WITH PREJUDICE** Plaintiff's claims to the extent Plaintiff seeks to bring a *parens patriae* claim under other State's statutory law. The Court **DISMISSES WITHOUT PREJUDICE** Plaintiff's unjust enrichment claims because Plaintiff has not demonstrated prudential standing, but perhaps could amend its complaint to meet the standing requirements.

## II. Supplemental Jurisdiction

The only remaining claims are Plaintiff's eighth and eleventh causes of action for a violation of the Cherokee Nation's Unfair and Deceptive Practices Act, 12 CNCA § 21 *et seq.* and its nineteenth cause of action for unjust enrichment under Cherokee Nation law. (*See* FAC ¶¶ 296, 328, 375.) Neither cause of action arises under federal law. Further, Plaintiff has confirmed that it is not bringing a class action and it has not argued this Court's diversity jurisdiction applies. (Opp'n 15 n.4.) Thus, the only remaining basis for jurisdiction is under the Court's supplemental jurisdiction, 28 U.S.C. § 1367.

Defendants contend that the Court should decline to exercise supplemental jurisdiction over Plaintiff's pendent claims. (MTD 13.) They cite cases where other courts have declined to exercise supplemental jurisdiction in similar factual situations. (*Id.* (citing, e.g., *Bass v. Cnty. of San Diego*, No. 08-cv-2135-MMA (NLS), 2009 WL 10671992, at * 5 (S.D. Cal. Aug. 25, 2009)); Reply 3 n.2 (citing, e.g., *Empagran, S.A. v. F. Hoffman-La Roche Ltd.*, 453 F. Supp. 2d 1, 9, 13 (D.D.C. 2006)).)

Plaintiff argues that Court should retain supplemental jurisdiction even if it dismisses Plaintiff's Sherman Act claims. (Opp'n 15.) Plaintiff argues that the pendency of this case, the Court's familiarity with the issues, the overlap between Plaintiff's federal and non-federal claims, and judicial economy all weigh in favor of retaining pendent jurisdiction over Plaintiff's non-federal claims. (*See id.* at 16.) According to Plaintiff, if the Court were to dismiss its non-federal claims, then such a dismissal would lead to a duplicative action in state court. (*See id.* at 16–17.)

28 U.S.C. § 1367 allows a federal district court to hear all state law claims as long as there is an independent basis for jurisdiction. Under section 1367, a district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." § 1367(a). The Supreme Court has held that supplemental jurisdiction "may be exercised when federal and state claims have a 'common nucleus of operative fact' and would 'ordinarily be expected to [be tried] all in

one judicial proceeding.'" *Osborn v. Haley*, 549 U.S. 225, 245 (2007) (alteration in original) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). However, a Court may decline to exercise supplemental jurisdiction over any state claim if (1) "the claim raises a novel or complex issue of State law," (2) "the claim substantially predominates over the claim or claims over which the district court has original jurisdiction," (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(1)–(4).

"In *Gibbs*, the [Supreme] Court stated that "if federal claims are dismissed before trial . . . the state claims should be dismissed as well." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (second alteration in original) (quoting *Gibbs*, 383 U.S. at 726). In *Carnegie-Mellon*, the Court clarified that this was not a mandatory rule, but rather "simply recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* This is the most logical approach here for three reasons. First, the federal claims have been dismissed for lack of standing and, thus, *Gibbs*' general proposition applies. Second, Plaintiff's antitrust claim has been dismissed without prejudice and the Court will grant leave to amend. Third, there does not appear to be any reason why individual citizens of the Cherokee Nation could not join in the putative class actions, if a class is certified and, if they are not certified, could bring individual claims.

In light of the foregoing, the Court **DECLINES** to exercise its discretion to retain jurisdiction over the supplemental claims and **DISMISSES WITHOUT PREJUDICE** Plaintiff's eighth, eleventh, and nineteenth causes of action.

## III.    Leave to Amend

Pursuant to Federal Rule of Civil Procedure 15(a), a plaintiff may amend its complaint once as a matter of course within specified time limits. Fed. R. Civ. P. 15(a)(1).

"In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15 (a)(2).

While courts exercise broad discretion in deciding whether to allow amendment, they have generally adopted a liberal policy. *See United States ex rel. Ehmcke Sheet Metal Works v. Wausau Ins. Cos.*, 755 F. Supp. 906, 908 (E.D. Cal. 1991) (citing *Jordan v. Cnty. of Los Angeles*, 669 F.2d 1311, 1324 (9th Cir.), *rev'd on other grounds*, 459 U.S. 810 (1982)). Accordingly, leave is generally granted unless the court harbors concerns "such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Amendments seeking to add claims are to be granted more freely than amendments adding parties." *Union Pac. R.R. Co. v. Nev. Power Co.*, 950 F.2d 1429, 1432 (9th Cir. 1991) (citing *Martell v. Trilogy Ltd.*, 872 F.2d 322, 324 (9th Cir. 1989)). Additionally, "the party opposing amendment has the burden of showing that amendment is not warranted." *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 649–50 (W.D. Wash. 2015) (citing, e.g., *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987)).

Here, the Court **GRANTS** Plaintiff leave to amend its federal antitrust causes of action and its state unjust enrichment causes of action. However, the Court finds that Plaintiff cannot amend its complaint with regard to state statutory causes of action—Plaintiff's attorney general does not have authority under foreign state law to assert a *parens patriae* cause of action. This is a legal issue that cannot be cured by additional factual allegations. The only remaining question is whether the Court should permit amendment to Plaintiff's claims based on Cherokee Nation law.

Generally "a proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Courts

ordinarily do not consider the validity of a proposed amended pleading in deciding whether to grant leave to amend, and instead defer consideration of challenges to the merits of a proposed amendment until after leave to amend is granted and the amended pleadings are filed. *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003) (citation omitted); *accord Green Valley Corp. v. Caldo Oil Co.*, No. 09cv4028-LHK, 2011 WL 1465883, at *6 (N.D. Cal. Apr. 18, 2011) (noting "the general preference against denying a motion for leave to amend based on futility"). Arguments concerning the sufficiency of the proposed pleadings, even if meritorious, are better left for briefing on a motion to dismiss. *Lillis v. Apria Healthcare*, No. 12cv52-IEG (KSC), 2012 WL 4760908, at * 1 (S.D. Cal. Oct. 5, 2012).

Here, the Court acknowledges that Defendants raise challenges to the retroactivity and legislative jurisdiction of Cherokee Nation law. At this stage, it is not clear that the Cherokee Nation Code causes of action are futile such that no set of facts could constitute a valid cause of action. Because the Court will allow amendment of the Cherokee Nation's complaint, the factual allegations regarding the Cherokee Nation Code may shift and is better suited to a briefing on a future motion to dismiss. Accordingly, the Court **GRANTS** leave to amend the Cherokee Nation causes of action.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendants' Motion, (ECF No. 983), and **DISMISSES WITHOUT PREJUDICE** Plaintiff's First Amended Complaint, except to the extent that Plaintiff seeks to bring *parens patriae* claims under state law, such claims are **DISMISSED WITH PREJUDICE**. The Court **GRANTS LEAVE TO AMEND** Plaintiff's Complaint; Plaintiff **MAY FILE** an amended Complaint <u>within thirty (30) days of the date on which this Order is electronically docketed</u>.

**IT IS SO ORDERED.**

Dated: September 5, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

15-MD-2670 JLS (MDD)