# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION

Case No.: 15-MD-2670 JLS (MDD)

**ORDER OVERRULING SYSCO CORPORATION AND US FOOD INC.'S OBJECTION TO THE MAGISTRATE JUDGE'S ORDER**

(ECF No. 1312)

Presently before the Court is Sysco Corporation and US Food Inc.'s Objection to Magistrate Judge Dembin's July 23, 2018 Order, ("Obj.," ECF No. 1312). Defendants have filed an Opposition to the Objection, ("Opp'n," ECF No. 1331) and Plaintiffs have filed a Reply, ("Reply," ECF No. 1352). After careful consideration of the Parties' submissions, the record in this matter, and the applicable law, the Court **OVERRULES** Sysco and US Food's Objection.

## BACKGROUND

On June 29, 2018, the Parties filed a Joint Motion for Determination of Discovery Dispute, (ECF No. 1260), because Defendants sought to compel discovery of "[a]ll [c]ommunications regarding Packaged Tuna between [a Plaintiff] and any . . . competing food suppliers." (*Id.* at 4.)[1] Plaintiffs opposed this discovery request because their

---

[1] Pin citations to docketed material refer to the CM/ECF page numbers electronically stamped at the top of each page.

"communications with their competitors unrelated to the claims in this case are irrelevant to whether Defendants violated Section 1 of the Sherman Act." (*Id.* at 2 (emphasis omitted).) On July 23, 2018, Magistrate Judge Mitchell Dembin issued an order that requires Plaintiffs to respond to Production No. 16 (Third Set). ("Discovery Order," ECF No. 1293.) Plaintiffs then filed the present objection to Judge Dembin's Order.

**LEGAL STANDARD**

**I.      Review of Magistrate Judge's Order**

A party may object to a non-dispositive pretrial order of a magistrate judge within fourteen days after service of the order. Fed. R. Civ. P. 72(a). The magistrate judge's order will be upheld unless it is "clearly erroneous or is contrary to law." *Id.*; *see* 28 U.S.C. § 636(b)(1)(A). The "clearly erroneous" standard of review applies to factual findings and discretionary decisions made concerning nondispositive pretrial discovery. *See F.D.I.C. v. Fid. & Deposit Co. of Md.*, 196 F.R.D. 375, 378 (S.D. Cal. 2000). The "clearly erroneous" standard is "significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Concrete Pipe & Prods. of Cal., Inc., v. Constr. Laborers Pension Tr. of S. Cal.*, 508 U.S. 602, 623 (1993) (internal quotation marks omitted).

**II.     Discovery**

Federal Rule of Civil Procedure 26 generally allows for broad discovery and authorizes parties to obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Further, "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.* Relevant information for discovery purposes includes any information "reasonably calculated to lead to the discovery of admissible evidence," and need not be admissible at trial to be discoverable. *Id.* Relevance encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be [presented] in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005) (citing *Hallett*

*v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)).

Courts must also weight the burden of the discovery sought with its likely benefit. District courts have broad discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). Limits should be imposed where the burden or expense of the proposed discovery outweighs the likely benefits. *Id.*

**ANALYSIS**

**I. Relevance**

Plaintiffs' primary contention is that discovery concerning their own internal communications is not relevant because "the case is not about how Plaintiffs conduct their affairs in matters unrelated to their claims." (Obj. 5.) Plaintiffs argue that the Supreme Court's decision in *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons, Inc.*, 340 U.S. 211 (1951), *overruled on other grounds by Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 781–82 (1984), makes clear that an antitrust defendant cannot shield itself from liability by raising allegedly similar behavior by the antitrust plaintiff. (Obj. 5.) From this premise, Plaintiffs contend that Judge Dembin's Order relied on an incorrect assumption that antitrust defendants could raise a "they-did-it-too" defense. (*Id.*) Plaintiffs also raise a public policy argument that permitting this type of discovery would discourage antitrust plaintiffs from undertaking private enforcement of the antitrust laws. (*See id.* at 6.)

Defendants contend that Judge Dembin's Order is consistent with opinions from district courts in this Circuit that have considered identical issues and rejected arguments identical to those Plaintiffs advance. (Opp'n 6.) Defendants contend that their discovery request is relevant because it speaks to a highly probative issue in the case: whether a jury should infer collusion based on innocuous competitor communications. (*Id.* at 11.) Defendants maintain that the discovery sought is not a "they-did-it-too" argument, but rather a comparison that many businesses have legitimate reasons to communicate with

competitors. (*Id.* at 13.)

In his Order, Judge Dembin found "Defendants' theory is that Plaintiffs are elevating innocuous communications into an actionable conspiracy. If Plaintiffs engage in similar, legal communications, Defendants' theory may be supported." (Discovery Order 4.) He cited *In re Cathode Ray Tube (CRT) Antitrust Litigation*, 301 F.R.D. 449 (N.D. Cal. 2014), as on point and persuasive to the *Kiefer-Stewart* issue. (Discovery Order 3–4.) That case dealt with the same issue as Plaintiffs raise here: whether *Kiefer-Stewart* precludes all discovery into an antitrust plaintiff's internal communications. *See CRT*, 301 F.R.D. at 452. *Kiefer-Stewart* held that "the alleged illegal conduct of [a plaintiff] . . . could not legalize the unlawful combination by [the defendants] nor immunize them against liability to those they injured. 340 U.S. at 214 (citations omitted). The *CRT* court concluded, however, that an antitrust plaintiff's activities and communications are not always irrelevant. *CRT*, 301 F.R.D. at 453. Indeed, as long as discovery is not being sought to advance a "they-did-it-too" argument, then the information sought may be relevant for other purposes. *Id.* (citing *In re Polyester Staple Antitrust Litig.*, No. 3:03CV1516, 2005 WL 6457181, at *4–5 (W.D.N.C. May 9, 2005)).

The Supreme Court in *Perma Life Mufflers, Inc. v. International Parts Corp.*, 392 U.S. 134 (1968), *overruled on other grounds by Copperweld*, 467 U.S. 752, explained the purpose behind cases like *Kiefer-Stewart*. There, the Court dealt with whether the common law doctrine of in pari delicto[2] applied to bar an antitrust plaintiff from recovering damages. *Id.* at 138. The Court stated, "[w]e have often indicated the inappropriateness of invoking broad common-law barriers to relief where a private suit serves important public purposes. It was for this reason that we held *Kiefer-Stewart Co. v. Joseph E. Seagram & Sons*, 340 U.S. 211, 71 S. Ct. 259, 95 L. Ed. 219 (1951), that a plaintiff in an antitrust suit could not be barred from recovery by proof that he had engaged in an unrelated conspiracy to commit some other antitrust violation." *Perma Life*, 392 U.S. at 138. The motivating purpose

---

[2] In pari delecto means "of equal fault." *Perma Life*, 392 U.S. at 139.

behind *Kiefer-Stewart* and *Perma Life* is to allow an antitrust plaintiff to recover damages, even if that plaintiff engaged in "morally reprehensible" conduct. *Id.* at 139 ("Both *Simpson* [*v. Union Oil Co.*, 377 U.S. 13 (1964)] and *Kiefer-Stewart* were premised on a recognition that the purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws.").

The *CRT* court discussed the public policy implications, discussed in *Perma Life* and *Kiefer-Stewart*, of allowing discovery against an antitrust plaintiff in all instances. *CRT*, 301 F.R.D. at 454. The court acknowledged that some situations may arise in which "discovery sought would simply enable the defendant to shift attentions away from an otherwise illegal and actionable scheme or assert an improper pass-on defense." *Id.* Yet the policy considerations were not implicated because the discovery was relevant to the "question of how, and in what amount, any potential overcharges were passed through to other plaintiffs." *Id.* Thus, "permitting discovery here does not run the risk of chilling private enforcement of the antitrust laws." *Id.*

Here, Defendants contend that discovery is relevant because it contradicts one of Plaintiffs' theories: whether a jury should infer collusion based on innocuous competitor communications. This is not an attention-shifting defense; rather, it seeks to counter Plaintiffs' theory of the case.[3] *See In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 6216664, at *5 (N.D. Cal. Oct. 25, 2016) ("*CRT II*") (permitting antitrust defendants to "introduce evidence of exchanges of competitive information among the [direct action plaintiffs] and their competitors for the sole purpose of demonstrating that not all communications and information exchanges are necessarily illegitimate or illegal"). This purpose does not contradict the fundamental policy at issue in *Kiefer-Stewart* and *Perma Life*. Defendants are not arguing that Plaintiffs should be

---

[3] In their Reply brief, Plaintiffs contend that the *CRT* court was incorrect and failed to grapple with the *Kiefer-Stewart* arguments presented by Plaintiffs here. (Reply 4.) Given the Court's discussion of *Kiefer-Stewart* and *Perma Life* here, the *CRT* court's logic is persuasive.

barred, as a matter of law, from recovery because of Plaintiffs' own conduct. *See Kiefer-Stewart*, 340 U.S. at 214. Instead, Defendants seek discovery on a factual issue: using competitor communications to show that there are legitimate reasons to exchange information with competitors. (Opp'n 13–14.) They seek to persuade the finder of fact on what inferences to make (or not) based on competitor communications.

Finally, Plaintiffs raise a series of potential scenarios where the parties may use the competitor communications to prove or disprove the proposition that such communications are "innocuous." (Obj. 7–8; Reply 3.) Judge Dembin stated, "[i]t is not for this Court to determine whether the communications sought may be admissible and for what purpose. The question is relevance." (Discovery Order 3–4.) The Court agrees with Judge Dembin. Plaintiffs' hypotheticals are better suited for an admissibility determination before trial. Considering both the broad scope of discovery and the deferential clearly erroneous standard of review, Magistrate Judge Dembin did not err by concluding that the discovery sought was relevant.

## II. Burden and Benefits of Discovery

Plaintiffs also contend that Judge Dembin's Order is contrary to law because it did not consider whether the discovery sought is proportional to the burden on the Plaintiffs. Plaintiffs first contend that Judge Dembin should have weighed the likelihood the evidence would be admitted at trial because the "more dubious the prospect of admissibility of the documents at issue, the less justifiable the imposition of a discovery burden." (Obj. 9.) Next, Plaintiffs maintain that Judge Dembin ignored a declaration submitted by Plaintiffs substantiating the burden likely involved in searching for and producing responsive documents. (*Id.* at 10 (citing Declaration of Kyle Smith, ECF No. 1260-1).)

Defendants respond that Judge Dembin's finding is supported by those of other district courts in this Circuit that have compelled plaintiffs to produce their own competitor communications. (Opp'n 17.) Next, the declaration submitted by Plaintiffs merely explains a standard document collection, review, and production process and should not be dispositive considering that all Defendants in this case have engaged in multiple similar

1 document collections, reviews, and productions in response to Plaintiffs' discovery
2 requests. (*Id.* at 18.) Finally, Defendants contend that a discovery ruling is necessarily a
3 balancing decision and Judge Dembin's logic is sound. (*Id.*)

4 Judge Dembin cited *CRT II*, where the district court admitted into evidence certain
5 communications between antitrust plaintiffs. (Discovery Order 3 (citing *CRT II*, 2016 WL
6 6216664, at *6).) Judge Dembin found that "the discovery sought is proportional as it
7 bears directly on an asserted defense in the case." (*Id.* at 4.) The Court agrees with Judge
8 Dembin—*CRT II* is persuasive as to Plaintiffs' admissibility argument. There, the court
9 considered a motion *in limine* concerning evidence of the plaintiff's competitor
10 communications. The court was persuaded that the defendants were not offering the
11 evidence to demonstrate that the plaintiffs violated antitrust laws. *CRT II*, 2016 WL
12 6216664, at *5. Instead, the court admitted the evidence, finding "information exchanges
13 among the [direct action plaintiffs] and their competitors is relevant and not unfairly
14 prejudicial so long as it is introduced to demonstrate that such information exchanges can
15 have a legitimate purpose." *Id.* at *6 (footnote omitted) (citing *In re Urethane Antitrust
16 Litig.*, MDL No. 1616, 2011 WL 1327988, at *6 (D. Kan. Apr. 5, 2011)). That reasoning
17 is sound and illustrates how similar evidence in this case could be admissible at trial. Thus,
18 the Court agrees with Judge Dembin that the discovery sought is proportional because it
19 bears directly on an asserted defense in this case.

20 Plaintiffs submitted a declaration substantiating the burden this discovery will have
21 on their counsel and business personnel. (ECF No. 1260-1.) The declaration states that
22 there would be two tasks to meet the discovery request. The first task will take at least
23 twenty hours of outside counsel time and "numerous hours" of in-house and business
24 personnel time. (*Id.* at 5.) The second task will require "many hours" to complete and will
25 result in "many gigabytes of electronic data." (*Id.*) The Court acknowledges this burden,
26 but Plaintiffs' rely too heavily on a declaration that does not quantify a disproportionate
27 burden. References to "many hours" and "many gigabytes" do not support a conclusion
28 that Judge Dembin's decision was clearly erroneous. Balancing discovery requests and

weighing the burdens are tasks that magistrate judges routinely decide. Judge Dembin cited case law directly on point to Plaintiffs' issue and his reasoning is sound. The Court finds Judge Dembin's Order is not clearly erroneous.

## CONCLUSION

For the foregoing reasons, the Court **OVERRULES** Plaintiffs' objection to Judge Dembin's Order.

**IT IS SO ORDERED.**

Dated: September 10, 2018

Hon. Janis L. Sammartino
United States District Judge