1  John Roberti (DC 495718)
2  ALLEN & OVERY LLP
   1101 New York Avenue N.W.
3  Washington, D.C., 20005
   Telephone:  +1.202.683.3800
4  Facsimile:   +1.202.683.3999
   john.roberti@allenovery.com
5
6  Joshua L. Shapiro (NY 4499695)
   ALLEN & OVERY LLP
7  1221 Avenue of the Americas
   New York, NY 10020
8  Telephone: +1.212.610.6300
   Facsimile:  +1.212.610.6399
9  joshua.shapiro@allenovery.com
10
   *Counsel for Defendants Tri-Union Seafoods*
11 *LLC d/b/a Chicken of the Sea International*
   *and Thai Union Group PCL*
12
13 (Additional Counsel on Signature Pages)

14

15                UNITED STATES DISTRICT COURT

16           SOUTHERN DISTRICT OF CALIFORNIA

17

| | |
|---|---|
| 18 IN RE PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No.: 15-MD-2670 JLS (MDD) |
| 19 | **DEFENDANTS' OPPOSITION TO COMMERCIAL FOOD PREPARER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| 20 | |
| 21 This document relates to: | |
| 22 | **(FILED UNDER SEAL)** |
| 23 The Commercial Food Preparer Actions | **Date:      December 20, 2018** |
| 24 | **Time:      9:00 a.m.** |
| 25 | **Court:     Room 4D** |
| 26 | **Judge:     Hon. Janis L. Sammartino** |

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................... - 1 -

BACKGROUND ............................................................................................. - 5 -

LEGAL STANDARD ..................................................................................... - 7 -

ARGUMENT .................................................................................................. - 9 -



III.   CHOICE OF LAW PRINCIPLES BAR THE APPLICATION OF CALIFORNIA LAW TO THE PROPOSED MULTI-STATE CLASS. - 24 -

    A.   Material differences exist between the Cartwright Act and the state laws under which CFPs assert claims .................................... - 26 -

    B.   These differences present true conflicts ........................................ - 31 -

    C.   California loses the comparative impairment analysis ................. - 31 -

IV.   THE ALTERNATIVE CLASS PROPOSED BY THE CFPS ALSO FAILS ........................................................................................................ - 32 -

V.    THE NAMED CFPS ARE INADEQUATE REPRESENTATIVES ..... - 34 -

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Amarel v. Connell*,
102 F.3d 1494 (9th Cir. 1997) ...................................................................... 26

*Am. Express Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ...................................................................................... 7

*Associated General Contractors v. California State Council of Carpenters*, 459
U.S. 519 (1983) ............................................................................................ 26

*Berger v. Compaq Comp. Corp.*,
257 F.3d 475 (5th Cir.), rehearing and rehearing en banc denied, 279 F.3d 313
(5th Cir. 2002) .............................................................................................. 34

*Clayworth v. Pfizer, Inc.*,
49 Cal. 4th 758 (2010) ...................................................................... 17, 30, 33

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .............................................................................. 7, 8, 10

*Conde v. Sensa*,
Civ. No. 14-51, 2018 WL 4297056 (S.D. Cal. Sept. 10, 2018) ...................... 31

*Cox v. F. Hoffman-La Roche*,
Civ. No. 00-1890, 2003 WL 24471996 (Kan. Dist. Ct. Oct. 10, 2003) ............. 30

*Crouch v. Crompton Corp.*,
Civ. Nos. 02-4375, 03-2514, 2004 WL 2414027(N.C. Super. Ct. Oct. 28, 2004)
........................................................................................................... 27

*Danielson v. DBM, Inc.*,
Civ No. 05-2091, 2007 WL 9701055 (N.D. Ga. Mar. 15, 2007)...................... 34

*Doninger v. Pacific Northwest Bell, Inc.*,
564 F.2d 1304 (9th Cir. 1977) ...................................................................... 34

*Ellis v. Costco Wholesale*,
657 F.3d 970 (9th Cir. 2011) .......................................................................... 8

*Evon v. Law Offices of Sidney Mickell*,
688 F.3d 1015 (9th Cir. 2012) ...................................................................... 34

*Food Lion, LLC v. Dean Foods Co.*,
312 F.R.D. 472 (E.D. Tenn. 2006) ................................................................ 21

*Fucile v. Visa U.S.A., Inc.*,
Civ. No. S1560-03, 2004 WL 3030037 (Vt. Super. Dec. 27, 2004)........... 27, 29

ii

*Gent Tele. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ................................................................................... 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................. 34

*In re Auto Parts Antitrust Litig.*,
   29 F. Supp. 3d 982 (E.D. Mich. 2014) .................................................... 29

*In Re Capacitors Antitrust Litigation*,
   106 F. Supp. 3d 1051 (N.D. Cal. 2015) ................................................... 28

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ................................................................... 38

*In re Flash Memory Antitrust Litig.*,
   Civ. No. 07-86, 2010 WL 2332081 (N.D. Cal. Jun. 9, 2010) ................. 9, 19, 20

*In re Graphics Processing Units Antitrust Litig ("GPU").*,
   253 F.R.D. 478 (N.D. Cal. 2008) ....................................................... 10, 18, 19, 20

*In re High-Tech Emps. Antitrust Litig.*,
   289 F.R.D. 555 (N.D. Cal. 2013) ............................................................ 14

*In re Korean Ramen Antitrust Litigation*,
   Civ. No. 17-4115, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ............... 24

*In re Kosmos Energy Ltd. Secs. Litig.*,
   299 F.R.D. 133 (N.D. Tex. Mar. 19, 2014) ............................................. 35

*In re Lidoderm Antitrust Litigation*,
   Civ. No. 14-02521, 2017 WL 679367, (N.D. Cal. Feb. 21, 2017) ........... 14

*In re Lithium Ion Batteries Antirust Litig.*,
   Civ. No. 13-2420, 2014 WL 4955377 (N.D. Cal. 2004) ........................ 27

*In re Live Concert Antitrust Litigation*,
   863 F. Supp. 2d 966 (C.D. Cal. 2012) ..................................................... 15

*In re Methionine Antitrust Litig.*,
   204 F.R.D. 161 (N.D. Cal. 2001) ..................................................... 10, 17, 23

*In re Monster Worldwide Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ............................................................. 34

*In re Optical Disk Drive Antitrust Litig.*,
   303 F.R.D. 311 (N.D. Cal. 2014) ......................................................... 9, 20

*In re Optical Disk Drive Antitrust Litig.*,
   Civ. No. 10-2143, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016) ............. 25, 29, 32

*In re Packaged Seafood Products Antitrust Litig.*,
   242 F. Supp. 3d 1033 (S.D. Cal. 2017) .................................................... 32

*In re Processed Egg Prods. Antitrust Litig.*,
   312 F.R.D. 124 (E.D. Pa. 2015) ........................................................................ 33

*In re Qualcomm Antitrust Litig.*,
   292 F. Supp. 3d 948 (N.D. Cal. 2017) ............................................................. 25

*In re Rail Freight Fuel Surcharge Antitrust Litigation*,
   725 F.3d 244 (D.C. Cir. 2013) ......................................................................... 21

*In re Visa Check/MasterMoney Antitrust Litig.*,
  280 F.3d 124 (2d Cir. 2001) ............................................................................... 8

*Jones v. CBE Grp.*,
   215 F.R.D. 558 (D. Minn. 2003) ...................................................................... 34

*J.P. Morgan & Co. v. Superior Court*,
   113 Cal. App. 4th 195 (Cal. Ct. App. 2003) .................................................... 31

*Kanne v. Visa U.S.A., Inc.*,
   723 N.W.2d 293 (Neb. 2006) ........................................................................... 27

*Knowles v. Visa U.S.A., Inc.*,
   Civ. No. 03-707, 2004 WL 2475284 (Me. Sup. Ct. Oct. 20, 2004) ................. 27

*K-S Pharmacies Inc. v. Abbott Labs.*,
   Civ. No. 94-2384, 1996 WL 33323859 (Wis. Cir. Ct. May 17, 1996) .. 30, 31, 33

*Langendorf v. Skinnygirl Cocktails, LLC*,
   306 F.R.D. 574 (N.D. Ill. 2014) ....................................................................... 38

*Levya v. Medline Indus. Inc.*,
   716 F.3d 510 (9th Cir. 2013) ........................................................................... 10

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
   Civ. No. 13-1180, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) .................... 29

*Mazza v. American Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ................................................................... *passim*

*McCann v. Foster Wheeler LLC*,
   48 Cal. 4th 68 (Cal. 2010) ............................................................................... 32

*Mullins v. Premier Nutrition Corp.*,
   Civ. No. 13-1271, 2016 WL 3440600 (N.D. Cal. June 20, 2016) .................... 32

*Nass-Romero v. Visa U.S.A., Inc.*,
   279 P.3d 772 (N.M. Ct. App. 2012) ................................................................. 27

*Peterson v. Visa U.S.A., Inc.*,
   Civ. No. 03-8080, 2005 WL 1403761, (D.C. Super. Ct. Apr. 22, 2005) ........... 28

*Southard v. Visa U.S.A. Inc.*,
   734 N.W.2d 192 (Iowa 2007) ........................................................................... 26

*State Farm Mut. Auto Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) ........................................................................ 32

*Strang v. Visa U.S.A., Inc.*,
  Civ. No. 03-011323, 2005 WL 1403769 (Wis. Cir. Ct. Feb. 8, 2005) .............. 28

*Supreme Auto Transp. LLC v. Arcelor Mittal*,
  238 F. Supp. 3d 1032 (N.D. Ill. 2017) .................................................. 27

*Tourgeman v. Collins Fin. Servs., Inc.*,
  Civ. No. 08-1392, 2011 WL 5025152 (S.D. Cal. Oct. 21, 2011) ...................... 8

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ...................................................................... 9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..................................................................... 7, 8

*Walsh v. Ford Motor Co.*,
  807 F.2d 1000 (D.C. Cir. 1986) ........................................................ 33

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .......................................................... 25

*Zlotnick v. TIE communications, Inc.*,
  123 F.R.D. 189 (E.D. Pa. 1988) ........................................................ 37

## STATUTES AND RULES

Federal Rule of Civil Procedure 23 ............................................... 1, 8, 34

Federal Rule of Civil Procedure 26 ..................................................... 13

Nevada Revised Statute Ann 598A.050 ............................................... 27

Wisconsin Statute §133.18 .............................................................. 28

## OTHER AUTHORITIES

ABA Section of Antitrust Law, Proving Antitrust Damages: Legal and Economic
  Issues (2d ed. 2010) ....................................................................... 10

Justin McCrary and Daniel L. Rubinfeld, *Measuring Benchmark Damages in
  Antitrust Litigation, Journal of Econometric Methods*, Volume 3:1
  (2014) ........................................................................................ 13

# INTRODUCTION

In their motion for class certification ("Motion"), the Commercial Food Preparer Plaintiffs ("CFPs") seek to certify a sprawling class of individuals and businesses. Putative class members would come from 27 states and the District of Columbia, and would be in the class as long as they indirectly purchased Defendants' large sizes of packaged tuna products (40 ounces or larger) from one of six specified intermediaries (the "Large Distributors") between June 2011 and December 2016. The CFPs seek to certify this class under Rule 23(b)(3) and under the banner of California state law; in the alternative, the CFPs seek to certify a class under the laws of 10 different states and the District of Columbia. The CFPs now acknowledge that their putative class would include members as disparate as distributors who bought the product for resale; restaurants, delis, nursing homes, and caterers who buy and use the product for commercial food preparation; and individuals who bought the product for personal consumption.

The CFPs fall short of carrying their heavy burden of proving that they satisfy all of the prerequisites for class certification under Federal Rule of Civil Procedure 23.

***First*, *the CFPs have not offered a reliable common method to prove that overcharges were passed through to putative class members.*** To show that "questions of law or fact common to class members predominate over any questions affecting only individual members," Fed. R. Civ. P. 23(b)(3), the CFPs must establish through common proof not only the existence of a conspiracy, but also that the alleged conspiracy impacted all or nearly all putative class members, and that a common methodology exists for determining the amount of damages for each of the putative class members.

The CFPs do not come close. They offer the expert testimony and econometric models of Dr. Michael A. Williams. The disqualifying infirmities with Dr. Williams' overcharge model and pass-through analysis include the

following:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4      *Second, the CFPs cannot certify a single class of consumers from many*

5   *states under California law because doing so would contravene choice of law*

6   *principles.*   California's choice-of-law rules preclude certification of this single

7   class of plaintiffs from 27 states and the District of Columbia  because the relevant

8   laws of the CFPs' home states (which include a wide collection of antitrust laws

9   and consumer protection statutes) differ in numerous respects from California's

10  Cartwright Act and these differences are material.  The CFPs' alternative approach,

11  to certify a single class of purchasers from 10 states and the District of Columbia to

12  pursue  claims  under  the  laws  of  each  of  those  jurisdictions  would  render

13  adjudication of this class unmanageable and cause individual issues to predominate

14  due to the material differences in the laws of these states.

15      *Third, the named CFPs have not met their burden of showing that they are*

16  *adequate representatives under Rule 23(a).*   Discovery has demonstrated that the

17  named CFPs are not equipped to serve as representatives for the class because they

18  are  in  the  dark  about  even  the  most  basic  aspects  of  this  litigation,  do  not

19  understand their fiduciary duties, have been grossly deficient in terms of meeting

20  their  discovery  obligations,  and,  in  at  least  one  case,  have  a  familial  conflict.[2]

21

22

23

24

25

26

27

28

1    They are inadequate class representatives.

2         For these reasons, and as further explained below, the Court should deny the

3    CFPs' Motion.

### BACKGROUND

5         On April 17, 2018, the CFPs filed their most recent Complaint, alleging that

6    Defendants' anticompetitive conduct "was in existence by May 1, 2004 and

7    continued until at least July of 2015." (Complaint ¶ 1). They purported to

8    represent a class composed of "all persons and entities engaged in food

9    preparation" in 27 States and the District of Columbia that indirectly purchased

10   packaged tuna products produced by any Defendant "for their own use in

11   commercial food preparation, including institutional purchasers such as hospitals,

12   nursing homes, and schools, and not for resale as such, during the Class Period

13   (from at least July 1, 2004 to May 8, 2017)." ( *Id.* at ¶ 201).[3]

14        But, less than **2 months** later, the CFPs sought to certify a very different

15   class.

16   • *Purchases of 40 ounces or larger*. The class alleged in the Complaint

17        covers any indirect purchases of package tuna in any size for use in

18        commercial food preparation and not resale. (*Id.*) It now

19        encompasses "all persons and entities" that indirectly purchased

20        packaged tuna products **in packages of 40 ounces or more**

21        irrespective of intent to resell or use for personal consumption.

22        (Motion p. 2).

23   • *Purchases through specified intermediaries*. The class set forth in the

24        Complaint contains indirect purchasers who purchased packaged tuna

25   _____

26   ████████████████████████████████████

27   [3] The CFPs have called this putative class the "*Illinois Brick* Repealer Cartwright
     Act class." The CFPs present an alternative putative class, the "Damages Class,"

28   which is identical in all respects except it includes members from 12 States and the
     District of Columbia.

manufactured by Defendants.  (Complaint ¶ 201).  The class the CFPs now seek to certify has been redefined as plaintiffs who purchased through the six Large Distributors (Dot Foods, Sysco, US Foods, Sam's Club, Wal-Mart or Costco).  (Motion p. 2).

- *Damages period changed by over 7 years*.  The Complaint alleges a conspiracy spanning 13 years.  (Complaint ¶ 201).  The CFPs now seek to certify a class only for a 5-year segment of that alleged conspiracy.  (Motion p. 2).

Interim class counsel retained Dr. Williams to determine whether the CFPs could establish, on the basis of common evidence, the following:

Defendants offer the testimony of Dr. Laila Haider, an experienced economist who has testified numerous times on class certification issues.  (*See generally* Haider Rebuttal).

## **LEGAL STANDARD**

The CFPs state that the Rule 23 standards are met and suggest that actions "such as this one" are "routinely certified." (Motion p. 6)  But the U.S. Supreme Court has held in no uncertain terms that class certification is not the routine check-the-box exercise as the CFPs suggest. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013) ("Rule [23] imposes stringent requirements for certification that in practice exclude most claims.").  As such, to come within the exception, a party seeking to maintain a class action "must affirmatively demonstrate his compliance" with Rule 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  In other words, "Rule 23 does not set forth a mere pleading standard." *Id.*

To achieve certification, the CFPs must prove that their putative class complies with all of the prerequisites of Federal Rule 23(a) (numerosity, commonality, typicality, and adequacy).  Only if all four prongs are satisfied may a district court proceed to consider whether plaintiffs have proven at least one of the requirements laid out in Rule 23(b).  At each step, a district court must conduct a "rigorous analysis" to determine whether plaintiffs have satisfied their burden of proving each of Rule 23's prerequisites. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) ("[A] party must not only 'be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)," but "[t]he party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).").  For these reasons, "[a]ctual, not presumed, conformance" with Rule 23 "remains … indispensible." *Wal-Mart Stores, Inc.*, 564 U.S. at 351 (quoting *Gent Tele. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).  The rigorous and demanding analysis required at the class certification stage "will entail some overlap with the merits of the plaintiff's underlying claim." *Id.* at 351.  The Court must resolve "any factual disputes necessary to determine

1  whether there was a common pattern and practice that could affect the class as a
2  whole." *Ellis v. Costco Wholesale*, 657 F.3d 970, 983 (9th Cir. 2011).

3  The CFPs make no claim that any of the Rule 23(b) prerequisites are
4  satisfied, aside from Rule 23(b)(3).  To meet their burden of proof under this
5  provision, the CFPs must show that "questions of law or fact common to class
6  members predominate over any questions affecting only individual members."
7  Fed. R. Civ. P. 23(b)(3).  As the Supreme Court has observed, the predominance
8  requirement is "even more demanding" than Rule 23(a)(2)'s commonality
9  requirement, which it incorporates.  *Comcast*, 569 U.S. at 34.

10  Rule 23(b)(3) requires the CFPs to establish through common proof the (i)
11  existence of a conspiracy to fix prices in violation of antitrust laws; (ii) impact to
12  all or nearly all putative class members resulting from the alleged conspiracy; and
13  (iii) a methodology for determining the amount of damages, if any, to each putative
14  class member.  The CFPs must raise more than common questions.  Instead, the
15  common questions raised by the CFPs must prove capable of "generat[ing]
16  common answers" that apply across the putative class and predominate over
17  individualized liability and damages questions.  *Ellis*, 657 F.3d at 981 (quoting
18  *Wal-Mart Stores, Inc.*, 564 U.S. at 350).  Put another way, the Rule 23(b)(3)
19  inquiry tests whether "the issues in the class action that are subject to generalized
20  proof, and thus applicable to the class as a whole ... predominate over those issues
21  that are subject to only individualized proof."  *Tourgeman v. Collins Fin. Servs.,*
22  *Inc.*, Civ. No. 08-1392, 2011 WL 5025152, at *13 (S.D. Cal. Oct. 21, 2011)
23  (Sammartino, J.) (quoting *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d
24  124, 137 (2d Cir. 2001)).  To that end, courts are prohibited from merely rubber
25  stamping "any method of measur[ing] [harm] … so long as it can be applied
26  classwide," as that approach to class certification would render Rule 23(b)(3) a
27  "nullity."  *Comcast*, 569 U.S. at 35-36.

28  To meet this burden on the issue of impact, the CFPs must put forth reliable

expert methodology to establish (1) the existence of an overcharge; (2) that the overcharge was passed through to all or nearly all members of the class; and (3) that damages and quantification of damages can be proved with evidence common to the class.  Courts must "give careful scrutiny" to plaintiffs' proffered method, and deny certification where the proposed class is not "sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).

## ARGUMENT

### I.   DR. WILLIAMS' OVERCHARGE MODEL IS UNRELIABLE BECAUSE HIS BENCHMARK, CONTAMINATED AND DAMAGES PERIODS ARE ARBITRARILY SELECTED AND WITHOUT SUPPORT IN ECONOMIC THEORY

The CFPs claim that they satisfy their predominance burden under Rule 23(b)(3) by showing only that a few common issues exist, namely "whether Defendants colluded; which Defendants colluded; whether the conduct generally resulted in overcharges; and the measure of aggregate damages."  (Motion at 15-16).  This is false.  If accepted, it would render the predominance requirement a dead letter.  All price-fixing cases will involve, for instance, the question of "whether Defendants colluded."  But in fact, courts in this Circuit often deny class certification for price-fixing plaintiffs on predominance grounds.  *See, e.g.*, *In re Optical Disk Drive Antitrust Litig.*, 303 F.R.D. 311, 322 (N.D. Cal. 2014) ("In summary, while the DPPs likely have made a sufficient showing that common issues predominate and at least theoretically could be subject to common proof as to the existence of an antitrust conspiracy and damages, their present approach of attempting to show a class-wide impact is problematic, and precludes granting certification."); *In re Flash Memory Antitrust Litig.*, Civ. No. 07-86, 2010 WL 2332081, at *10 (N.D. Cal. Jun. 9, 2010) ("To satisfy Rule 23(b)(3), an indirect purchaser plaintiff must establish a reliable method for proving common impact—

1   the overcharge pass-through—on indirect purchasers as a class. Absent such a

2   showing, a motion for class certification should be denied.") (internal citations

3   omitted); *In re Graphics Processing Units Antitrust Litig.* (*"GPU"*), 253 F.R.D.

4   478, 507 (N.D. Cal. 2008) (denying class certification when plaintiffs' "method for

5   proving impact to indirect purchasers is fatally flawed"); *In re Methionine Antitrust*

6   *Litig.*, 204 F.R.D. 161, 165 (N.D. Cal. 2001) (denying class certification because

7   "[w]hile the issue of the conspiracy is a common question, the question of injury in

8   fact is an individual question").

9        Here too, the central issue is the failure of the CFPs' expert Dr. Michael

10  Williams to construct a reliable methodology to show that the proposed class—a

11  hodgepodge of delis, nursing homes, and food-service middlemen who happened

12  to buy large packages of tuna from six select distributors—were impacted in

13  common ways.  As a threshold matter, it is appropriate to reject Dr. Williams'

14  model because ███████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ███████████████████████████  The U.S. Supreme Court articulated in *Comcast*

19  *Corp. v. Behrend*, "at the class-certification stage (as at trial), any model

20  supporting a 'plaintiff's damages case must be consistent with its liability case,

21  particularly with respect to the alleged anticompetitive effect of the violation.'"

22  569 U.S. at 35 (2013) (citing and quoting ABA Section of Antitrust Law, Proving

23  Antitrust Damages: Legal and Economic Issues 57, 62 (2d ed. 2010)); *see also*

24  *Levya v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) ("[P]laintiffs must

25  be able to show that damages stemmed from defendant's actions that created the

26  legal liability.") (citing *Comcast*, 569 U.S. at 38). ████████████████████████

27  ████████████████████████████████████████████████████████████

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



[10] As discussed infra in Section III, California allows for a pass-on defense where, as here, "multiple levels of purchasers have sued." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) ("In such cases, if damages must be allocated among the various levels of injured purchasers, the bar on consideration of pass-on evidence must necessarily be lifted; defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages").  Other states, however, including the state of a putative class representative, do not allow a pass-on defense at all.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

This underscores why the CFPs' efforts to certify such a diverse class under the laws of a single jurisdiction – California – are problematic.

In *Flash Memory*, the court was "unpersuaded by Plaintiffs' reliance on [an expert] regression analysis to explain the variations in individual transaction prices." 2010 WL 2332081 at *9. The court found that "[b]y looking only at an average price trend, [the expert's] model obscures individual variations over time among the prices that different customers pay for the same or different products that appear in the data." *Id.* at 10. As a consequence, the plaintiffs could not show antitrust impact on a common, formulaic basis and "[t]hat alone is grounds for concluding that Plaintiffs have not satisfied the predominance requirement of Rule 23(b)(3)." *Id.; see also Optical Disk Drive*, 303 F.R.D. at 324 (denying class certification in part because the expert applied "a model in which the alleged conspiratorial overcharge is assumed to be the same for all purchasers across all models . . . and through the entire class period"); *GPU*, 253 F.R.D. at 493 (denying same when expert "mysteriously chose to *average* certain products and then correlate instead of correlating disaggregated data for individual products and particular customers" and finding that this "evaded the very burden that [the class] was supposed to shoulder—i.e., that there is a common methodology to measure impact across individual products and specific direct purchasers").

For example, in *In re Rail Freight Fuel Surcharge Antitrust Litigation*, the plaintiffs' damages model yielded positive damages when applied to customers whose rates were set by contracts signed before the commencement of the alleged anticompetitive behavior and thus should not have been affected by the alleged conspiracy under the plaintiffs' theory. 725 F.3d 244, 253 (D.C. Cir. 2013). Reviewing the model in light of the then-recent *Comcast* decision, the D.C. Circuit vacated the grant of class certification and remanded for further consideration of the damages model's statistical flaws. In doing so, the D.C. Circuit observed "[i]t is now clear . . . that Rule 23 not only authorizes a hard look at the soundness of statistical models that purport to show predominance—the rule commands it." *Id.* at 255; *see also Food Lion, LLC v. Dean Foods Co.*, 312 F.R.D. 472, 495-96 (E.D. Tenn. 2006) (finding plaintiffs' damages model as unreliable because of its propensity to yield false positives).

Because Dr. Williams' overcharge model is capturing price effects unrelated to the alleged conduct, it is incapable of proving whether or not Defendants' alleged conduct caused impact to all or nearly all proposed class members. Dr. Williams' "false positives" invalidate his overcharge model.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



## III. CHOICE OF LAW PRINCIPLES BAR THE APPLICATION OF CALIFORNIA LAW TO THE PROPOSED MULTI-STATE CLASS

The CFPs seek the blanket application of California law to a sprawling proposed class that includes members from 27 jurisdictions outside California. Choice of law principles forbid this.

Mindful that California's choice of law rules operate as a formidable obstacle, the CFPs downplay any possible differences between California and the multitude of foreign jurisdictions from which members of the putative class hail. (*See* Motion p. 34). Instead, the CFPs make cursory claims that, because each of the jurisdictions have prohibitions on price-fixing and permit actions by indirect purchasers, no material differences exist. *Id.*[14]   That the CFPs seek to divert

---

[14] The CFPs suggest that because other courts have certified similar classes, there is no need to look any further. The examples cited by CFPs are distinguishable and misleading. *In re Korean Ramen Antitrust Litigation*, Civ. No. 17-4115, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017), is a red herring as the court there found that defendants, whose burden it was to identify conflicts, had identified only a single conflict—that some states had repealed *Illinois Brick* while others had not. *Id.* at *22. Consequently, the court certified a multistate class that covered only 24 *Illinois Brick* repealer jurisdictions. *Id.* at *23. Here, in contrast, and as explained

attention from the many – and **material** – differences between California law and the 27 other jurisdictions is not surprising: these differences are fatal to the CFPs' claims.

Here, the class proposed by the CFPs **cannot be certified** under California choice of law rules because the interests of other states outweigh California's interest in having its laws applied to the claims of non-resident class members. *See, e.g.*, *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 590-91 (9th Cir. 2012) (applying California's choice of law rules).   Specifically, a court must apply a three-part "governmental interest" test to determine whether conflicts of law preclude certification under California law.  *See Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001).

This three-step analysis applies to **each of the potentially affected jurisdictions with respect to each claim**. *See Mazza*, 666 F.3d at 591-92.  **First**, the court must decide whether there are material differences between California and other states' laws that could "spell the difference between the success and failure of a claim."  *In re Qualcomm Antitrust Litig.*, 292 F. Supp. 3d 948, 978-79 (N.D. Cal. 2017) (quoting *Mazza*, 666 F.3d at 591).  **Second**, this court must determine "whether a true conflict exists" by considering whether each state has an interest in having its own law applied to the claims in question. *Id.* at 978.  **Third**, if a true conflict does exist, this court must decide "which states' interest would be most impaired if its policy were subordinated to the law of another state." *Id.*  By any reasonable measure, the governmental interest test shows that true conflicts belie certification.

---

below, Defendants identify several material differences between the *Illinois Brick* repealer jurisdictions, all of which amount to true conflicts that preclude application of California law to the proposed multistate class.  Notably, the other case on which the CFPs rely—*In re Optical Disk Drive*—explicitly supports Defendants' arguments on this point. Civ. No. 10-2143, 2016 WL 467444, at *14 n.14 (N.D. Cal. Feb. 8, 2016) (if *AGC* were "applied under local law to preclude IPP recovery," then "that would present a conflict similar to that existing in non-*Illinois Brick* repealer jurisdictions").

### A. Material differences exist between the Cartwright Act and the state laws under which CFPs assert claims

The CFPs assert, but do not show, that there are "no material differences between California law and foreign law." (Motion p. 34)  However, a detailed review of the foreign laws at issue (which cover 27 other jurisdictions and implicate 31 separate state statutes) shows that there are many differences that are potentially dispositive as to the claims of certain class members or groups of class members.  Because they can "spell the difference between . . . success and failure" for the CFPs' claims, they are clearly material.  *Mazza*, 666 F.3d at 591.  The most striking (but not the only) differences involve the treatment of indirect purchaser standing, temporal limitations on recovery by indirect purchasers, and the availability of pass-on defenses.

**Indirect purchaser standing**.  At least nine of the relevant jurisdictions impose **additional burdens** on indirect purchasers when it comes to demonstrating antitrust standing.  Specifically, claimants in these states must satisfy the five-factor test set forth by the U.S. Supreme Court in *Associated General Contractors v. California State Council of Carpenters* ("*AGC*"), which evaluates "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship between them" to determinate whether a plaintiff is a proper party to bring an antitrust claim.  *Amarel v. Connell*, 102 F.3d 1494, 1507 (9th Cir. 1997) (quoting *AGC*, 459 U.S. 519, 535 (1983)).[15]  This is a fact intensive inquiry that involves a "case-by-case" analysis.  *Id.*  These nine States following the *AGC* test are as follows:

- **Iowa** (home state of class representative Maquoketa Care Center).  *See, e.g.*, *Southard v. Visa U.S.A. Inc*., 734 N.W.2d 192 (Iowa 2007) ("[W]e apply the *AGC* factors to determine whether the plaintiffs

---

[15] In detail, these factors are: "(1) the nature of the plaintiff's alleged injury; that is, whether it was the type the antitrust laws were intended to forestall; (2) the directness of the injury; (3) the speculative measure of the harm; (4) the risk of duplicative recovery; and (5) the complexity in apportioning damages." *Amarel*, 102 F.3d at 1507.

1    may recover under Iowa law.") (holding that indirect purchasers'
2    injuries were too remote for standing).

3    • **Maine** (home state of class representative A-1 Diner). *See, e.g.*,
4    *Knowles v. Visa U.S.A., Inc*., Civ. No. 03-707, 2004 WL 2475284, at
5    *3-5 (Me. Sup. Ct. Oct. 20, 2004); *Supreme Auto Transp. LLC v.*
6    *Arcelor Mittal*,  238 F. Supp. 3d 1032, 1039 n.3 (N.D. Ill. 2017).

7    • **Nebraska**. *See, e.g.*, *Kanne v. Visa U.S.A., Inc*., 723 N.W.2d 293,
8    297-300 (Neb. 2006) (applying *AGC* and finding that indirect
9    purchaser plaintiffs lacked standing to recover under the Nebraska
10   Antitrust Act).

11   • **Nevada.** *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig*., Civ.
12   No. 13-2420, 2014 WL 4955377 at *11 (N.D. Cal. 2004) (applying
13   *AGC* to Nevada "without significant modification") (citing Nev.
14   Rev. Stat. Ann 598A.050).

15   • **New Mexico**. *See, e.g., Nass-Romero v. Visa U.S.A., Inc*., 279 P.3d
16   772, 778-80 (N.M. Ct. App. 2012) (applying *AGC* to the New
17   Mexico Antitrust Act and concluding that plaintiff lacked standing).

18   • **North Carolina** (home state of class representative Groucho's Deli
19   of Raleigh). *Crouch v. Crompton Corp*., Civ. Nos. 02-4375, 03-
20   2514, 2004 WL 2414027, at *10 (N.C. Super. Ct. Oct. 28, 2004)
21   ("The statutory direction to follow federal guidance has a bearing on
22   this Court's decisions . . ., requiring the Court to reconcile the
23   indirect purchaser standing statute with the federal standing
24   requirements enunciated in *AGC*.").

25   • **Vermont.** *See, e.g*, *Fucile v. Visa U.S.A., Inc*., Civ. No. S1560-03,
26   2004 WL 3030037, at *3 (Vt. Super. Dec. 27, 2004) (applying *AGC*
27   and finding plaintiff did not have standing under the Vermont
28   Consumer Fraud Act).

- **Washington, D.C**. (home state of class representative Capitol Hill Supermarket). *See, e.g.*, *Peterson v. Visa U.S.A., Inc.*, Civ. No. 03-8080, 2005 WL 1403761, at *2-5 (D.C. Super. Ct. Apr. 22, 2005) ("Application of these [*AGC*] factors convinces the Court that D.C. plaintiff lacks standing under § 28-4508.").

- **Wisconsin** (home state of class representative Erbert & Gerbert). *See, e.g.*, *Strang v. Visa U.S.A., Inc.*, Civ. No. 03-011323, 2005 WL 1403769, at *3 (Wis. Cir. Ct. Feb. 8, 2005) (holding that even though indirect purchaser had a claim under Wisconsin law, she lacked antitrust standing as her injuries were "derivative, remote, and highly speculative").

In contrast to these nine states, ***AGC* does not apply under California law** to indirect purchaser claims. *See In Re Capacitors Antitrust Litigation*, 106 F. Supp. 3d 1051, 1073 (N.D. Cal. 2015) (joining "other courts in this district that have concluded that the federal standing test under *AGC* has not been clearly applied by the California Supreme Court to claims brought under California's Cartwright Act") (collecting cases). This is a significant and material difference that is outcome determinative. For example, a Vermont trial court dismissed an indirect purchaser claim on the basis that the injuries were too speculative and remote under *AGC* (even though Vermont is an *Illinois Brick* repealer state), observing:

> [Plaintiff] would have to demonstrate that the merchants actually passed their costs along to consumers through the price of their goods, rather than absorbing them by other means. The court would need to consider all other potential causes of inflated costs, such as the number of supply problems that affected the price of each differentiated product the plaintiff class bought in Vermont during the relevant time period. . . . Although causation may be indirect, given the indirect purchaser

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> rule in Vermont, it cannot extend beyond a reasonable
> length, as it does here.

*Fucile*, 2004 WL 3030037 at \*3.  Application of the *AGC* factors thus serves as a significant limitation on indirect purchaser standing and, as such, could "spell the difference between . . . success and failure" for CFPs' claims.  *Mazza*, 666 F.3d at 591; *see also Optical Disk*, 2016 WL 467444, at \*14 n. 14 ("[AGC] might be applied under local law to preclude … [indirect purchaser's] recovery.  If so, that would present a conflict similar to that existing in non-*Illinois Brick* repealer jurisdictions."); *see also Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, Civ. No. 13-1180, 2015 WL 4755335, at \*20 (N.D. Cal. Aug. 11, 2015) (concluding that plaintiffs' state-law antitrust claims were barred in four jurisdictions that had adopted *AGC* and, as a consequence, dismissing those claims for lack of antitrust standing while allowing plaintiffs' other twelve state-law antitrust claims to proceed).

It is particularly noteworthy that, for the CFPs' alternative class, **half** of the jurisdictions from which the putative class hails apply *AGC* factors: Iowa, Maine North Carolina, Washington, D.C., and Wisconsin.  By contrast, no such inquiry is required under California law.  By this measure alone, California's choice of law rules militate against certifying such a class.

**Temporal limitations.**  Other states' laws also include various time-based restrictions that are inconsistent with the Cartwright Act.  For example, this Court has held that Rhode Island does not permit recovery by indirect purchasers for pre-2013 conduct.  Order Granting in Part and Denying in Part Defendants' Remaining Motions to Dismiss at 30-31 (Dkt. No. 295).  Meanwhile, New Hampshire bars recovery by indirect purchasers for pre-2008 conduct.  *See In re Auto Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1004 (E.D. Mich. 2014).  Here, CFPs' complaint alleges antitrust violations spanning 2004 to 2017, and their motion for

class certification seemingly narrows their allegations to a time period spanning from 2011 to 2016. Thus, Rhode Island plaintiffs could not recover under their state law for part of this narrower timeframe. And unless plaintiffs clarify the time period that would be relevant at trial, it is unclear whether other state temporal limitations such as New Hampshire's would give rise to other issues that would be unique to individual state law classes.

**Pass-on defenses.** Finally, material differences can be found with respect to the treatment of "pass on" of indirect purchaser claims. For example, California allows pass-on defenses where "multiple levels of purchasers have sued." *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (Cal. 2010) ("In such cases, if damages must be allocated among the various levels of injured purchasers, the bar on consideration of pass-on evidence must necessarily be lifted; defendants may assert a pass-on defense as needed to avoid duplication in the recovery of damages."). The pass-on defense under California law should apply here since three different levels of purchasers in the distribution chain are each seeking recovery for the same overcharge in the same multi-district litigation: direct purchasers, indirect purchasers, and end payer purchasers.[16] *See id.*

But other states, including the state of a putative class representative, do not allow a pass-on defense at all. *See, e.g., Cox v. F. Hoffman-La Roche,* Civ. No. 00-1890, 2003 WL 24471996 at *3 (Kan. Dist. Ct. Oct. 10, 2003) (noting many states do not allow pass-on defense); *K-S Pharmacies Inc. v. Abbott Labs.*, Civ. No. 94-2384, 1996 WL 33323859, at *12 (Wis. Cir. Ct. May 17, 1996) (citing Wis. Stat.

§133.18) ("In the absence of express statutory language creating a 'pass-on' defense, or Wisconsin authority indicating the existence of such defense, §133.18 will not be read as creating one."). These are significant and material differences that cannot be ignored by CFPs.

## B.   These differences present true conflicts

These material differences in the application of foreign law (*AGC* five-factor test, temporal limitations, and pass-on defenses) present true conflicts. These conflicts demonstrate that many of the potentially affected jurisdictions have independent interests in having their own laws applied to claims by resident members. *See, e.g., Mazza*, 666 F.3d at 592 ("[E]ach state has an interest in setting the appropriate level of liability for companies conducting business within its territory."); *Conde v. Sensa*, Civ. No. 14-51, 2018 WL 4297056, at *13 (S.D. Cal. Sept. 10, 2018) (Sammartino, J.) ("The Court finds that all states have an interest in applying their own laws to protect their residents.").

## C.   California loses the comparative impairment analysis

Under California choice-of-law doctrine, the laws of the CFPs' home states should apply to non-California class members' claims. California state courts look to whether California's contacts with the particular claims of a particular plaintiff "gave rise to a significant interest on the part of California in applying its own laws to these classwide claims." *J.P. Morgan & Co. v. Superior Court*, 113 Cal. App. 4th 195, 221 (Cal. Ct. App. 2003). In *Mazza*, the Ninth Circuit emphasized the "strong interest" that other states have "in the application of their laws to transactions between their citizens and corporations doing business within their state." *Mazza*, 666 F.3d at 594. The Ninth Circuit in *Mazza* also highlighted that "California's interest in applying its law to residents of foreign states is attenuated." *Id.* Indeed, California's Supreme Court has observed that California's interests are substantially limited with respect to out-of-state parties and out-of-state injuries. *See, e.g. McCann v. Foster Wheeler LLC*, 48 Cal. 4th 68,

1   97–102 (Cal. 2010).

2         If "doubts remain" about the conflicts-of-law test, "one of the guiding

3   principles of federalism breaks the tie: 'each State may make its own reasoned

4   judgment about what conduct is permitted or proscribed within its borders.'"

5   *Mullins v. Premier Nutrition Corp*., Civ. No. 13-1271, 2016 WL 3440600, at *5

6   (N.D. Cal. June 20, 2016) (quoting *State Farm Mut. Auto Ins. Co. v. Campbell*, 538

7   U.S. 408, 422 (2003)).   Accordingly, California law should not be used "as an end

8   run around" other states' restrictions on indirect purchaser recovery under well-

9   established conflicts-of-law rules, and CFPs' motion to certify a nationwide class

10   under California law should thus be denied.  *Optical Disk Drive*, 2016 WL 467444,

11   at *13; *see also Packaged Seafood*, 242 F. Supp. 3d at 1067–68.

12         In the end, the CFPs advance their Motion "based on a false premise that one

13   state's laws must be chosen to apply to all [28] jurisdictions."  *Mazza*, 666 F.3d at

14   594.   The Court should reject this false premise and deny the CFPs' Motion on

15   choice of law principles.

16   **IV.   THE ALTERNATIVE CLASS PROPOSED BY THE CFPS ALSO**
17            **FAILS**

18         In the alternative, the CFPs seek certification of a class of purchasers under

19   the laws of 11 jurisdictions (e.g., corresponding to jurisdictions from which the

20   proposed class representatives are located).[17]   The CFPs devote less than a page of

21   their Motion to discussion of this alternative class and do not explain how the

22   disparate antitrust and consumer protection statutes of these states could be

23   managed in a single class.   (*See* Motion p. 36).   Notably, unlike the conflict

24   analysis discussed above in Section III, the onus here is squarely on the plaintiffs

25   to show that class treatment would be manageable and superior to other forms of

26   adjudication.  *See, e.g., Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir.

---

27   [17] These jurisdictions are California, the District of Columbia, Florida, Iowa,
28   Maine, Minnesota, New York, North Carolina, South Carolina, Tennessee, and
     Wisconsin.

1986) (party moving for class certification "must credibly demonstrate, through an extensive analysis of state law variances, that class certification does not present insuperable obstacles") (internal quotations omitted).

The CFPs gloss over this critical issue and simply assert (with no authority or analysis) that "there are no meaningful distinctions in the laws of these jurisdictions." (Motion p. 36). This is a diversionary tactic. As discussed above in Section III, even when one considers this smaller subset of states, there are material differences among these state law claims. One significant difference is that the aforementioned *AGC* factors are applied in five of the eleven applicable jurisdictions: Iowa, Maine, North Carolina, Washington, Wisconsin, and the District of Columbia.[18] The *AGC* factors demand a highly individualized and fact-specific inquiry that is unsuitable to class-wide proof and may be dispositive to the claims of some or all of the plaintiffs in jurisdictions that follow *AGC*. "[D]eciphering the state of antitrust standing in each of [the relevant] states" would involve "back-breaking labor," *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 124, 149 (E.D. Pa. 2015), and runs counter to the very purpose of a Rule 23 class action.

These differences between the laws of these eleven jurisdictions make multistate class treatment of the CFPs' claims inappropriate. And, the CFPs have not met their burden of showing otherwise.

---

[18] Other differences are discussed above, as well, including the availability of a pass-on defense. As noted, California allows the pass-on defense in situations where there are "multiple levels of purchasers." *Clayworth*, 49 Cal. 4th at 787. By contrast, such defenses are not permitted in Wisconsin. *K-S Pharmacies Inc.*, 1996 WL 33323859, at *12. The CFPs have failed to even acknowledge these differences, much less explain how they would be managed at trial or made coherent to a jury. These omissions are egregious, and render CFPs' motion insufficient as a matter of law. *See Walsh*, 807 F.2d at 1016; *see also, e.g.*, *In re Processed Egg Prods.*, 312 F.R.D. at 149 (denying plaintiffs' motion for class certification in part on the grounds that plaintiffs had failed to meaningfully address variations between the antitrust laws of the relevant states).

## V.   THE NAMED CFPS ARE INADEQUATE REPRESENTATIVES

The CFPs' motion for class certification should be denied because the CFPs have not, as they must, satisfied Rule 23(a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  The adequacy of class representatives is not presumed.  The plaintiff bears the burden of establishing that the adequacy requirement has been satisfied.  *Doninger v. Pacific Northwest Bell, Inc.*, 564 F.2d 1304, 1308 (9th Cir. 1977); *see also Berger v. Compaq Comp. Corp.*, 257 F.3d 475, 479 (5th Cir.), rehearing and rehearing en banc denied, 279 F.3d 313 (5th Cir. 2002).  Ensuring that the CFPs satisfy Rule 23(a)(4) is more than a routine exercise.  Rather, it is an essential safeguard that ensures that the named CFPs  "satisfy constitutional due process concerns," such that absent class members are "afforded adequate representation before entry of a judgment, which binds them." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

In assessing adequacy under Rule 23(a)(4), courts must consider whether "the named plaintiffs and their counsel will prosecute the action vigorously on behalf of the class[.]"  *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, at 1031 (9th Cir. 2012).  Courts have denied class certification where the named plaintiffs exhibited little to no knowledge of the claims asserted or the procedural history of the action.  *See, e.g.*, *In re Monster Worldwide Sec. Litig.*, 251 F.R.D. 132, 135 (S.D.N.Y. 2008) (denying certification where the named plaintiff did not know an amended complaint had been filed or whether he ever saw the original complaint); *Danielson v. DBM, Inc.*, No. 05-cv-2091, 2007 WL 9701055, at *6 (N.D. Ga. Mar. 15, 2007) (noting that named plaintiff's failure to read the complaint before it was filed may be sufficient to defeat class certification); *Jones v. CBE Grp.*, 215 F.R.D. 558, 568-69 (D. Minn. 2003) (named plaintiff found to be inadequate because he believed he was asserting a claim that was not part of the complaint).  A class representative's ability to parrot generic details of a litigation

1   is of no avail. *See In re Kosmos Energy Ltd. Secs. Litig.*, 299 F.R.D. 133, 146

2   (N.D. Tex. Mar. 19, 2014) ("[G]eneric detail is really no detail at all, for it

3   provides naught by which to assess [the named plaintiff's] credibility, her

4   knowledge about the underlying facts of the case, or how much of what she has

5   stated may have been prompted by counsel.").

6       Here, the CFPs make the unsubstantiated assertion that "Plaintiffs and their

7   counsel have represented and will represent the Class vigorously" and that

8   "Plaintiffs have responded appropriately to the obligations thus far imposed on

9   them, including such discovery as has been propounded." (Motion p. 11)

Moreover, the named CFPs have made woefully deficient document searches and productions.   One named representative produced only a single document.[24]

[24] That representative is Rushin Gold.



*See Zlotnick v. TIE Communications, Inc.*, 123 F.R.D. 189, 193-94 (E.D. Pa. 1988) (holding that plaintiff was not an adequate representative of a proposed class because plaintiff's

1   counsel was his son); *Langendorf v. Skinnygirl Cocktails, LLC*, 306 F.R.D. 574,

2   580-81 (N.D. Ill. 2014) (denying motion for class certification in part because the

3   class representative's father had been co-counsel with class counsel in multiple

4   other class actions); *see also In re Cavanaugh*, 306 F.3d 726, 733 (9th Cir. 2002)

5   ("if the presumptive lead plaintiff has selected as counsel a family member . . . this

6   too may bear on the plaintiff's adequacy).

7       The adequacy requirement in Rule 23(a)(4) may be a modest bar, but it

8   demands at the very least an informed and vigorous representative.   The record

9   here reveals that the named plaintiffs are not up to the task.   Accordingly, the

10   Motion should be denied.

11                                   **CONCLUSION**

12       For the reasons discussed above, the CFPs' Motion for Class Certification

13   should be denied.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  October 2, 2018

By:  s/ John Roberti

**ALLEN & OVERY LLP**
John Roberti (DC 495718)
Kelse Moen (DC 1035164)
Jana Steenholdt (DC 1034459)
1101 New York Avenue N.W.
Washington, D.C. 20005
Telephone: (202) 683-3800
Facsimile: (202) 683-3999
john.roberti@allenovery.com
kelse.moen@allenovery.com
jana.steenholdt@allenovery.com

Brian Fitzpatrick (NY 4853040)
Joshua L. Shapiro (NY 4499695)
1221 Avenue of the Americas
New York, NY 10020
Telephone:  +1.212.610.6300
Facsimile:   +1.212.610.6399
brian.fitzpatrick@allenovery.com
joshua.shapiro@allenovery.com

*Counsel for Defendants Tri-Union Seafoods LLC*
*d/b/a Chicken of the Sea International and Thai*
*Union Group PCL*

1

2

3

4

5

6

7                                                    **By:**      /s/  Kenneth A. Gallo

8    Dated:  October 2, 2018                         _____

9                                                    **PAUL, WEISS, RIFKIND, WHARTON**
                                                     **& GARRISON LLP**
10                                                   Kenneth A. Gallo (NY 4484457)
                                                     Craig A. Benson (DC 473285)
11                                                   Joseph J. Bial (NY 4151528)
                                                     2001 K Street, NW
12                                                   Washington, DC  20006-1047
                                                     Telephone: 202-223-7356
13                                                   Facsimile:  202-204-7356
                                                     Email:  kgallo@paulweiss.com
14                                                   Email: cbenson@paulweiss.com
                                                     Email: jbial@paulweiss.com
15

16                                                   William B. Michael (NY 4296356)
                                                     1285 Avenue of the Americas
17                                                   New York, NY 10019-6064
                                                     Telephone: 212-373-3648
18                                                   Facsimile:  212-492-0648
                                                     Email:  wmichael@paulweiss.com
19

20                                                   *Counsel for Defendant Bumble Bee Foods,*
                                                     *LLC*
21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated:  October 2, 2018

By:  s/ Barbara T. Sicalides

**PEPPER HAMILTON LLP**
Barbara T. Sicalides (PA 57535)
Barak A. Bassman (PA 85626)
Megan Morley (PA 321706)
Benjamin J. Eichel (PA 307078)
Alexander L. Harris (PA 311382)
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750
sicalidesb@pepperlaw.com
bassmanb@pepperlaw.com
morleym@pepperlaw.com
eichelb@pepperlaw.com
harrisa@pepperlaw.com

*Counsel for Defendant Del Monte Corporation*

DEFENDANTS' OPPOSITION TO COMMERCIAL FOOD PREPARER PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
15-MD-2670-JLS-MDD

1

Dated:  October 2, 2018

By:  s/ Belinda S Lee

2

3

**LATHAM & WATKINS LLP**
Alfred C. Pfeiffer (Cal. Bar No. 120965)
Christopher S. Yates (Cal. Bar No. 161273)

4

Belinda S Lee (Cal. Bar No. 199635)
Niall E. Lynch (Cal Bar No. 157959)

5

Ashley M. Bauer (Cal. Bar No. 231626)
505 Montgomery Street, Suite 2000

6

San Francisco, CA 94111-6538
Telephone: (415) 391-0600

7

Facsimile: (415) 395-8095
Al.Pfeiffer@lw.com

8

Chris.Yates@lw.com
Belinda.Lee@lw.com

9

Niall.Lynch@lw.com
Ashley.Bauer@lw.com

10

11

*Counsel for Defendants StarKist Co. and*

12

*Dongwon Industries Co., Ltd.*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 42 -

1

## SIGNATURE ATTESTATION

2        Under Section 2.f.4 of the Court's CM/ECF Administrative Policies, I

3   hereby certify that authorization for filing this document has been obtained from

4   each of the other signatories shown above, and that all signatories have authorized

5   placement of their electronic signature on this document.

6

7                                                    /s/  John Roberti
                                                     John Roberti
8
   October 2, 2018                                 *Counsel for Defendants Tri-Union*
9                                                  *Seafoods LLC d/b/a Chicken of the*
                                                   *Sea International and Thai Union*
10                                                 *Group PCL*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on October 2, 2018, I electronically filed the foregoing

3    Defendants' Opposition to Commercial Food Preparer Plaintiffs' Motion for Class

4    Certification with the Clerk of Court for the United States District Court, Southern

5    District of California by using the Court's CM/ECF system, which will serve

6    electronic notification of this filing to all counsel of record.

7

8                                                          /s/  John Roberti
                                                          John Roberti
9
     October 2, 2018                        *Counsel for Defendants Tri-Union*
10                                           *Seafoods LLC d/b/a Chicken of the*
                                            *Sea International and Thai Union*
11                                           *Group PCL*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28