# EXHIBIT 25

# Econometrics

## Legal, Practical, and Technical Issues

### Second Edition





This volume should be officially cited as:

ABA SECTION OF ANTITRUST LAW,
ECONOMETRICS, SECOND EDITION (2014)

Cover design by ABA Publishing.

The materials contained herein represent the opinions of the authors and editors and should not be construed to be the views or opinions of the law firms or companies with whom such persons are in partnership with, associated with, or employed by, nor of the American Bar Association or the Section of Antitrust Law unless adopted pursuant to the bylaws of the Association.

Nothing contained in this book is to be considered as the rendering of legal advice for specific cases, and readers are responsible for obtaining such advice from their own legal counsel. This book and any forms and agreements herein are intended for educational and informational purposes only.

© 2014 American Bar Association.  All rights reserved. No part of this publication may be reproduced, stored in a retrieval system, or transmitted in any form or by any means, electronic, mechanical, photocopying, recording, or otherwise, without the prior written permission of the publisher. For permission contact the ABA Copyrights & Contracts Department, copyright@americanbar.org or via fax at (312) 988-6030, or complete the online form at http://www.americanbar.org/utility/reprint.html.

Printed in the United States of America.

18 17 16 15 14  5 4 3 2 1

ISBN: 978-1-61438-935-4
Library of Congress Catalog Number: 2014933353

Discounts are available for books ordered in bulk.  Special consideration is given to state bars, CLE programs, and other bar-related organizations. Inquire at Book Publishing, ABA Publishing, American Bar Association, 321 N. Clark Street, Chicago, Illinois 60654-7598.

class because of the largely fixed difference in prices among customers over time, which is a "rising tide raises all boats" argument.

Multivariate regression analysis is used to test for a common price structure because, as discussed in the previous section, it can help the economist hold potentially confounding factors constant. Suppose, for example, that one variable has a direct effect on price and that the effect varies by customer. It is possible that differences in prices across customers that result from that variable might mask the fact that, once the variable is controlled for, customers pay prices that move in the same way over time. A regression analysis that controlled for that variable might reveal this type of price structure.

The hypothetical structure could be revealed by regressing prices on a set of explanatory variables and then analyzing the residuals from the regression. For each observation in the regression, the residual is the difference between the price that a customer paid and what the regression predicted the customer would pay based on the systematic factors included in the model. If the prices that customers pay move together once those factors are controlled for, estimated residuals for different customers should be positively correlated. The economist can determine that by taking the time series of residuals for specific customers, and then calculating correlation coefficients between those time series. Very high correlation coefficients may be consistent with a price structure. (That price structure, however, might not be maintained in the event of anticompetitive behavior. Thus, the existence of a price structure before an anticompetitive act does not necessarily imply common impact.)

A practical constraint that can arise in using regression analysis to test for the existence of a price structure is data availability. In some cases, many class members will have purchased only in one period, which means they cannot be included in the regression analyses described above. If too many purchased in only one period, applying the regression results to them may be problematic. An expert may also want to assess the extent to which some customers purchased infrequently or only once during the alleged class period and how the prices paid by such customers may or may not relate to the purchase prices of customers who purchased relatively frequently.

c.  Testing for Classwide Impact

Plaintiffs' class experts often argue that a common method of proof exists because a regression analysis can be implemented. However, as

noted earlier, regression analysis will always yield a result. Whether a regression is useful for assessing classwide impact is a different question.

A test of classwide impact requires the estimation of "but-for prices" (i.e., prices that would have prevailed but for the alleged anticompetitive act). [51] Benchmark and before-and-after analyses are empirical methodologies used to estimate but-for prices using counterfactuals or but-for worlds that are as similar to the allegedly collusive market as possible, except for the alleged anticompetitive behavior. [52] Regression can be helpful because potential competitive benchmarks are almost never identical to an alleged collusive market. [53] For example, prices and competitive interactions are rarely fixed over time, which makes before-and-after analyses difficult without controlling for other time-varying factors. [54]

More specifically, regression analysis may supplement a detailed marketplace analysis and a review of customer-specific data while accommodating the simultaneous and systematic influences of numerous economic factors. Regression analyses may also be employed to test for classwide impact directly, to help identify potential subclasses, or to help demonstrate the existence or absence of a common method of proof altogether.

### (1) Regression Analysis to Measure Average Impact

To measure the average effect of an alleged conspiracy, a regression would typically model the price paid by a given customer at a given time as a function of variables that affect the demand and supply of the product as well as a conspiracy-related dummy variable that takes the value of one during the conspiracy (or for the products subject to the conspiracy) and zero otherwise. This approach requires an understanding of industry structure, price patterns, and other factual issues that may

---

51.    See Chapter 12 for a detailed discussion of methods used to estimate damages.

52.    A benchmark market analysis uses an alternative market and the same time period as the competitive benchmark. A before-and-after analysis uses the same market but a different time period as the competitive benchmark.

53.    For example, if prices are delivered prices, differences in transportation costs would need to be considered.

54.    For example, changes in prices are likely affected by changes in manufacturing costs, including changes in input costs.

also bear on the merits of the case. As discussed earlier in this chapter some courts have considered such inquiry appropriate or even necessary while others ha e considered merits analysis to be beyond the scope of the class certification phase. (See Section A.)

If the regression described above is specified correctly and includes all appropriate control variables, the coefficient on the conspiracy-related variable will provide a measure of the average effect of the alleged conspiracy on prices. For example assuming a correct specification a positive coefficient would indicate that prices were, on average, elevated.

Whether this coefficient indicates classwide impact depends on whether the average estimated impact applies to all of the members of the proposed class. Here, the plaintiffs will often argue that documentary evidence or basic statistical analysis shows that pricing is not individualized, and/or that a price structure exists and consequently the average estimated effect of the conspiracy is a good proxy for the *individual* effect on each and every class member. By contrast, the defendants may argue that individualized pricing and the absence of a price structure render such an average meaningless because it lacks relevance for *individual* members of the class and is biased because of omitted individualized pricing factors that are necessary to explain observed price levels and movements. Further regression analysis can provide a quantitative answer, as the section below discusses.

### *(2) Regression Analysis as a Test of Classwide Impact Using a Common Method of Proof*

If correctly specified, the regression analysis just described yield an estimate of average impact. Other statistical tools, including additional regression specifications, may be used to test whether the average effect represented by a single coefficient from a classwide regression mask widely varying individual effects that require individualized inquiry, or whether it truly reflects common impact.

One such approach is to divide the proposed class into narrowly defined subgroups and construct a series of regressions to test the stability of any estimate of average impact. For example suppose there is an allegation of a conspiracy among vitamins manufacturers and suppose further that a regression of vitamin prices on product characteristics and a time dummy variable indicates that the price of Vitamin A was elevated on average by 10 percent during the alleged conspiracy period. To test the hypothesis that the alleged conspiracy resulted in classwide impact over the alleged conspiracy period the

358                                    *Econometrics*

regression could be re-estimated by including dummy variables that identify particular years. Correctly specified, this approach will estimate the average effect of the alleged conspiracy in each of the relevant years. If these estimated coefficients are stable over the entire alleged conspiracy period, this stability would provide support for the claim that the alleged conspiracy affected proposed class members in similar fashion, at least on average, in each year of the alleged conspiracy. However, a coefficient that is zero or negative in any year covered by the alleged conspiracy would suggest that proposed class members who purchased the product during those years were not harmed by the alleged conspiracy.

Further estimating the average effect of the alleged conspiracy separately for different products, geographies, time periods, suppliers, or purchaser types can yield additional insights into classwide impact and the existence and stability of a common method of proof. Estimates of average impact across groups of customers that are similar in magnitude and/or sign may suggest that the alleged misconduct resulted in common impact for all (or nearly all) members of the proposed class. Alternatively, estimated effects that vary widely or are nonsensical would suggest that the alleged misconduct did not result in common impact for all members of the proposed class.

Standard statistical tests can be applied to test the stability of coefficients among subgroups of customers, products, time, geographies, or other subsamples, and to determine whether it is appropriate to pool potential subgroups when estimating the average effect of the alleged conspiracy. For example, a Chow test can be implemented to determine whether the effect of an alleged conspiracy should be estimated separately for two or more potential subgroups of customers, products or periods.

To illustrate this point, suppose that in the vitamins example discussed above, two types of vitamins (A and B) are implicated in an alleged conspiracy that covered two distinct time periods (1 and 2). Suppose further that the expert begins by regressing the logarithm of vitamin prices on vitamin type, time, and conspiracy dummy variables, and that the estimated average effect of the conspiracy is 5 percent (that is, the coefficient on the conspiracy dummy variable is 0.05). Suppose now that separate conspiracy dummy variables are introduced for each vitamin type and that the estimated effect of the alleged conspiracy is 0 percent for Vitamin A and 10 percent for Vitamin B. This second regression would reveal that the initial estimated average effect of 5 percent lumped together some prices that may not have been inflated