Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Christopher L. Lebsock (Cal. Bar No. 184546)
Samantha Stein (Cal. Bar. No. 302034)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
Email: mlehmann@hausfeld.com
Email: bsweeney@hausfeld.com
Email: clebsock@hausfeld.com
Email: sstein@hausfeld.com

*Counsel for Olean Wholesale Grocery Cooperative, Inc.*
*and Interim Lead Counsel for the Proposed Direct Purchaser Class*
[Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-JLS-MDD<br>MDL No. 2670<br><br>**DIRECT PURCHASER CLASS PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br>**[Redacted Version]** |
| This document relates to:<br>DIRECT PURCHASER CLASS PLAINTIFFS TRACK | DATE: Dec. 20, 2018<br>TIME: 9:00 a.m.<br>JUDGE: Janis L. Sammartino<br>CTRM: 4D |

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................. 1

II.  ARGUMENT ...................................................................... 2

    Single Overcharge Estimate ............................................ 2

    Allegedly "Uninjured" Class Members and False Positives ........... 6

    Using An Indicator Variable For 2008-10 ............................ 8

    Treatment Of Defendants' Costs ...................................... 9

III. CONCLUSION .................................................................. 10

**Cases**

*In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*,
   276 F.R.D. 364 (C.D. Cal. 2011)....................................................................4

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-MD-1775 (JG)(VVP), 2014 WL 7882100 (E.D.N.Y. Oct.
   15, 2014) ....................................................................................................1, 4

*In re Asacol Antitrust Litig.*,
   907 F.3d 42 (1st Cir. 2018) ..........................................................................6

*In re Blood Reagents Antitrust Litig.*,
   MDL No. 09-2081, 2015 WL 6123211 (E.D. Pa. Oct. 19, 2015).......................9

*In re Capacitors Antitrust Litig. (No. III)*,
   No. 17-MD-02801-JD, 2018 WL 5980139 (N.D. Cal. Nov. 14,
   2018) ........................................................................................................2, 5

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   308 F.R.D. 606 (N.D. Cal. 2015) ..................................................................4

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   No. C-07-5944-SC, 2014 WL 4181732 (N.D. Cal. Aug. 20, 2014) ..................6

*In re Chocolate Confectionary Antitrust Litig.*,
   No. 1:08-MDL-1935, 2013 WL 11305184 (M.D. Pa. May 10, 2013)..................2

*In re Domestic Drywall Antitrust Litig.*,
   322 F.R.D. 188 (E.D. Pa. 2017) ....................................................................3

*Ellis v. Costco Wholesale Corp.*,
   285 F.R.D. 492 (N.D. Cal. 2012) ..................................................................5

*Fond du Lac Bumper Exchge., Inc. v. Jui Li Enter. Co.*,
   No. 09-cv-0852, 2016 WL 3579953 (E.D. Wis. June 24, 2016) .......................3

*Food Lion, LLC v. Dean Foods Co.*,
   312 F.R.D. 472 (E.D. Tenn. 2016) ................................................................4

*In re High-Tech Employees Antitrust Litigation*,
    289 F.R.D. 555 (N.D. Cal. 2013) ...........................................................5

*Kleen Prods. LLC v. Int'l Paper Co.*,
    306 F.R.D. 585 (N.D. Ill. 2015) .............................................................8

*In re Korean Ramen Antitrust Litig.*,
    No. 13-cv-04115-WHO, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017)...........3, 10

*In re Lidoderm Antitrust Litig.*,
    No. 14-md-02521-WHO, 2017 WL 679367 (N.D. Cal. Feb. 27,
    2017) ...............................................................................................4, 7, 8

*Messner v. Northshore Univ. HealthSystem*,
    669 F.3d 802 (7th Cir. 2012) ..................................................................8

*In re Mushroom Direct Purchaser Antitrust Litig.*,
    319 F.R.D. 158 (E.D. Pa. 2016) ..............................................................2

*In re Mushroom Direct Purchaser Antitrust Litig.*,
    No. 06-0620, 2015 WL 5775600 (E.D. Pa. Aug. 5, 2015)......................9

*In re Nexium (Esomeprazole) Antitrust Litig.*,
    296 F.R.D. 47 (D. Mass. 2013) ..............................................................2

*In re Optical Disk Drive Antitrust Litig.*,
    No. 3:10-md-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016)..................1, 8

*In re Optical Disk Drive Antitrust Litigation*,
    303 F.R.D. 311 (N.D. Cal. 2014) ...........................................................1, 4

*Paige v. Cal.*,
    291 F.3d 1141 (9th Cir. 2002)..................................................................5

*In re Plastics Additives Antitrust Litig.*,
    No. 03-CV-2038, 2010 WL 3431837 (E.D. Pa. Aug. 31, 2010)...........................4

*In re Polyurethane Foam Antitrust Litig.*,
    314 F.R.D. 226 (N.D. Ohio 2014)...........................................................3, 4

*In re Pool Prods. Distrib. Market Antitrust Litig.*,
    MDL No. 2328, 2016 WL 2756437 (S.D. La. May 12, 2016) ...........................3

*In re Processed Egg Prods. Antitrust Litig.*,
312 F.R.D. 171 (E.D. Pa. 2015) ................................................................3, 4, 10

*In re Qualcomm Antitrust Litig.*,
No. 17-MD-02773-LHK, 2018 WL 4680214 (N.D. Cal. Sept. 27,
2018) ........................................................................................................2, 8

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
292 F. Supp. 3d 14, 138 (D.D.C. 2017) ...............................................................6

*In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*,
No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) .....................2, 7

*Story Parchment Co. v. Paterson Parchment Paper Co.*,
282 U.S. 555 (1931) ...........................................................................................4

*Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016) ............................................................................8

*In re Urethane Antitrust Litig.*,
768 F.3d 1245 (10th Cir. 2014) ..........................................................................9

*Wortman v. Air New Zealand*,
326 F.R.D. 549 (N.D. Cal. 2018) ........................................................................3

**Other Authorities**

AMERICAN BAR ASSOCIATION, ECONOMETRICS: LEGAL, PRACTICAL, AND
TECHNICAL ISSUES (2nd ed. 2014) .....................................................................5

Fed. R. Civ. P. 23(a) ..............................................................................................2

# GLOSSARY OF CITED TERMS

| Abbreviation/Acronym | Term |
|---|---|
| DPPs' MP&A | Direct Purchaser Plaintiffs' (Corrected) Memorandum of Points and Authorities in Support of their Motion for Class Certification (initially filed on May 29, 2018; corrected version filed on June 1, 2018, *see* ECF No. 1190) |
| FACC | Direct Purchaser Plaintiffs' Fourth Amended Consolidated Complaint, filed on October 5, 2018, ECF No. 1460 |
| Johnson Dep. | Deposition Transcript of Dr. John Johnson IV, dated October 30, 2018, filed as Exhibit 77 to the Suppl. Stein Decl. (see below) |
| MCD | Mangum Class Declaration – Dr. Russell Mangum's (Corrected) Declaration in Support of Class Certification (initially filed on May 29, 2018; corrected version filed on June 1, 2018, *see* ECF No. 1190) |
| MCRD | Accompanying Mangum Class Reply Declaration - Dr. Russell Mangum's Declaration in Support of Class Certification Reply, filed on November 27, 2018 |
| Opp'n | Defendants' Opposition to Direct Purchaser Plaintiffs' Class Certification Motion, filed on October 16, 2018, ECF No. 1515 |
| Suppl. Stein Decl. | Accompanying Supplemental Declaration of Samantha Stein in Support of Direct Purchaser Plaintiffs' Motion for Class Certification, filed on November 27, 2018 |

# I.   **INTRODUCTION**

This is a case where: (a) Chicken of the Sea ("COSI") has admitted the felony of price-fixing of packaged tuna products to the Department of Justice and provided cooperation to the Direct Purchaser Plaintiffs ("DPPs"); (b) Bumble Bee has pled guilty to that offense and been criminally fined; (c) two of Bumble Bee's senior executives have also pled guilty and its CEO has been indicted and will be tried; (d) StarKist has pled guilty as well and will be criminally fined; and (e) one of its senior executives has also pled guilty. Despite all of this, Defendants assert that ███ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████ ████████████████████████████ ███████████████████████████ Opp'n at 11, 18-20.

These arguments ignore the record and defy common sense. Companies conspire to fix prices in order to *make more money*. This conspiracy lasted for years and was a success, not a failure that caused Defendants to *lose* money. Courts have recognized that plea agreements are powerful evidence of the predominant common issue of a conspiracy to fix prices. *See, e.g.*, *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775-JG-VVP, 2014 WL 7882100, at *38-40 (E.D.N.Y. Oct. 15, 2014), *aff'd*, 2015 WL 5093503 (E.D.N.Y. July 10, 2015) ("*AC*").[2]

Defendants have chosen to fight class certification on a very narrow ground. They do not deny the existence of a conspiracy or the common evidence

---

[1] DPPs' proposed class period is June 1, 2011 through July 31, 2015.  FACC ¶ 2.
[2] Defendants cite *In re Optical Disk Drive Antitrust Litigation*, 303 F.R.D. 311 (N.D. Cal. 2014) ("*ODD I*") as an example of a case in this Circuit where certification was denied, despite a guilty plea. Opp'n at 8 n.3. They neglect to note that the court there later *did* certify a class and then *denied* a decertification motion. *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-md-2143 RS, 2016 WL 467444 (N.D. Cal. Feb. 8, 2016), *decertification denied*, 2017 WL 6448192 (N.D. Cal. Dec. 18, 2017) ("*ODD II*").

demonstrating it. They do not contest that the requirements of Fed. R. Civ. P. 23(a) and the superiority requirement of 23(b)(3) are satisfied. Their *sole* argument is that common issues do not predominate under Rule 23(b)(3). They attack Dr. Mangum's report for: ████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████ Opp'n at 10-25.[3] To support their contentions, Defendants rely on an expert (Dr. John H. Johnson, IV), who has unsuccessfully made similar arguments in other cases where class certification was wholly or partially granted.[4] None of Dr. Johnson's arguments is persuasive in this case either. Consequently, the Court should grant class certification.

## II.    ARGUMENT

**Single Overcharge Estimate**. Defendants assert that Dr. Mangum "assumed" classwide injury by using a pooled model with a single overcharge coefficient for the entire Class and that the model should have been "de-pooled" to analyze damages for subsets of Class members. These charges are meritless.

_____

[3] Defendants, in passing, suggest that Dr. Mangum's evidence may not be admissible under *Daubert*, but the one case they cite does not support that conclusion. *See* Opp'n at 10 n.5. They present no further *Daubert* arguments.

[4] *See*, *e.g.*, *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 171, 192-93 (E.D. Pa. 2016); *In re Nexium (Esomeprazole) Antitrust Litig.*, 296 F.R.D. 47, 57-59 (D. Mass. 2013); *In re Capacitors Antitrust Litig. (No. III)*, No. 17-MD-02801-JD, 2018 WL 5980139, at *8 n.4 (N.D. Cal. Nov. 14, 2018) ("*Capacitors*"); *In re Qualcomm Antitrust Litig.*, No. 17-MD-02773-LHK, 2018 WL 4680214, at *21-23 (N.D. Cal. Sept. 27, 2018) ("*Qualcomm*"); *In re Solodyn (Minocycline Hydrochloride) Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *8 (D. Mass. Oct. 16, 2017) ("*Solodyn*"); *In re Chocolate Confectionary Antitrust Litig.*, No. 1:08-MDL-1935, 2013 WL 11305184, at *8-11 (M.D. Pa. May 10, 2013).



As Dr. Mangum explains in his reply report, ████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
██████████████████ *Id.* ¶¶ 133-35 (citing *In re Pool Prods. Distrib. Market Antitrust Litig.*, MDL No. 2328, 2016 WL 2756437, at *4-5 (S.D. La. May 12, 2016)).

At bottom, Defendants' arguments against Dr. Mangum's pooled analysis are premised on a basic misunderstanding of an expert's role at class certification. Just as the court in *ODD II* said with respect to plaintiffs' expert there, "[n]or does it appear that it would be legitimate to characterize [plaintiffs' expert's] . . . analysis as one which assumes class-wide impact. Rather, he has presented theories that explain why, in his view, class-wide impact would have existed, and he has offered means for testing the data to demonstrate that it did, and to calculate what he believes the overcharges were." 2016 WL 467444, at *7. Dr. Mangum's rigorous analysis does just that.

Dr. Mangum's analysis of classwide impact is also grounded in legal precedent. Indeed, the use of a single overcharge figure across a class is a well-accepted practice at class certification.[5] For example, the court in *Foam* said it was

---

[5] *See, e.g.*, *In re Domestic Drywall Antitrust Litig.*, 322 F.R.D. 188, 234-35 (E.D. Pa. 2017); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 267-68 (N.D. Ohio 2014) ("*Foam*"); *In re Processed Egg Prods. Antitrust Litig.*, 312 F.R.D. 171, 199 (E.D. Pa. 2015) ("*Eggs*"); *Wortman v. Air New Zealand*, 326 F.R.D. 549, 560 (N.D. Cal. 2018); *In re Korean Ramen Antitrust Litig.*, No. 13-cv-04115-WHO, 2017 WL 235052, at *17 (N.D. Cal. Jan. 19, 2017) ("*Ramen*"); *Fond du Lac*

not its role on a class certification motion to decide whether an "unpooling" approach was more "statistically appropriate." 314 F.R.D. at 283. It distinguished between the calculation of damages on a classwide basis versus the award of damages to class members after trial. *Id*. at 269. Likewise, in *AC*, the court declined to resolve the battle over unpooling, saying "the mere fact that the parties' experts disagree on the best way to test the model is no basis for excluding one expert's approach." 2014 WL 7882100, at *17. And while considering the unpooling subregressions of the defense expert, it deemed them not to be "particularly compelling." *Id*. As the court in *AC* explained, damages need only be calculated as a matter of "just and reasonable inference" but do not require estimation of but-for prices for each individual transaction. *Id*. at *62 (citing, *inter alia*, *Story Parchment Co. v. Paterson Parchment Paper Co.*, 282 U.S. 555, 563 (1931)).[6] *See also Eggs*, 312 F.R.D. at 189 (finding unconvincing defense expert's efforts to test plaintiffs' expert's regression on subsets of data in an attempt to achieve anomalous results).

Conversely, Dr. Johnson's overall methodology of slicing the data into small subparts and focusing in on the alleged lack of harm to specific direct purchasers has been criticized. As the American Bar Association has said in a leading monograph

---

*Bumper Exchge., Inc. v. Jui Li Enter. Co.*, No. 09-cv-0852, 2016 WL 3579953, at *9-10 (E.D. Wis. June 24, 2016). ██████████████████████████████████████

[6] Defendants rely extensively on *ODD I*, *In re Plastics Additives Antitrust Litig.*, No. 03-CV-2038, 2010 WL 3431837 (E.D. Pa. Aug. 31, 2010) ("*Plastics*") and *Food Lion, LLC v. Dean Foods Co.*, 312 F.R.D. 472 (E.D. Tenn. 2016) ("*Food Lion*"). Opp'n at 11-13. They neglect to mention, however, that those cases have been distinguished by cases in this Circuit. *See, e.g.*, *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 627 n.43 (N.D. Cal. 2015) (declining to apply *Plastics*); *In re Aftermarket Automotive Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 372-73 (C.D. Cal. 2011) (same). As the Court in *In re Lidoderm Antitrust Litig.*, No. 14-md-02521-WHO, 2017 WL 679367, at *10 n.16 (N.D. Cal. Feb. 27, 2017) ("*Lidoderm*") said of *ODD I* and *Food Lion*, they "addressed *materially different* antitrust theories in materially different markets." (emphases in original).

that explains the consequences of misapplying regression models:

> [B]ecause the number of observations per grouping declines as transactions are divided into more and more subgroups, coefficients become less precise, which makes a test of coefficient stability or robustness less reliable. . . . [T]he effects of potential outliers on regression estimates increase as the number of observations available to estimate each separate coefficient decreases. As a result, estimated coefficients may make little economic sense even if they have been estimated precisely.

ABA Section of Antitrust Law, *Econometrics: Legal, Practical, and Technical Issues*, at 359-60 (2nd Ed. 2014). Indeed, Dr. Johnson used a similar approach in *Capacitors*, where the court agreed with the plaintiffs in that case that "Dr. Johnson chops the data into tiny datasets -- running more than one regression per class member -- thereby reaching no statistically significant results for most class members and unreliable results purportedly suggesting no injury to others." 2018 WL 5980139, at *8 n.4 (internal quotations omitted). *See* MCRD ¶ 159 n.225.

The Ninth Circuit has also frowned on the practice of taking an overarching regression analysis, cherry-picking selected data in creating it, and running new regressions on that selected data. "[I]t is a generally accepted principle that aggregated statistical data may be used where it is more probative than subdivided data." *Paige v. Cal.*, 291 F.3d 1141, 1148 (9th Cir. 2002), *cert. denied*, 537 U.S. 1189 (2003) (citation omitted). The use of "aggregate numbers" may "allow for a [more] robust analysis and yield more reliable and more meaningful statistical results." *Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 523 (N.D. Cal. 2012).[7]

---

[7] This point has been applied in the antitrust context in *In re High-Tech Employees Antitrust Litig.*, 289 F.R.D. 555 (N.D. Cal. 2013). There, defendants argued that plaintiffs' expert in a wage-fixing case should have used disaggregated data in his regression analyses, and that, if he had, it would have shown over-compensation rather than under-compensation for certain employees. The district court rejected the argument. *Id*. at 580. It specifically noted that the decision of plaintiffs' expert to refrain from analyzing disaggregated data was not an error in methodology. *Id*.

█████████████████████████████████████████████████████

**Allegedly "Uninjured" Class Members and False Positives**. Dr. Mangum has stated that ████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ MCD ¶ 205 (footnote omitted).

These numbers are in stark contrast to those at issue in the cases Defendants cite: *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 292 F. Supp. 3d 14, 138 (D.D.C. 2017), *petition for review granted* (12.7% of class members deemed uninjured) and *In re Asacol Antitrust Litig.*, 907 F.3d 42, 47 (1st Cir. 2018) (10% of class members deemed uninjured). *See* Opp'n at 9. And in those cases, the courts believed that the plaintiffs' respective experts *conceded* these numbers. Dr. Mangum has made no such concession, and in fact, his model shows otherwise.

In their attempts to make it seem that a significant portion of the class was uninjured, Defendants distort the data and the facts by: ████████████████

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████ █ ████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

---

[8] *See* DPPs' MP&A at 1 n.1 (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 4181732, at *5 (N.D. Cal. Aug. 20, 2014), *recon. denied*, 2014 WL 4446294 (N.D. Cal. Sept. 8, 2014)). Defendants provide no case law or other basis to refute this position.



Thus, Defendants' "uninjured" class member and "false positive" arguments are unpersuasive. In *Solodyn*, for example, the direct purchaser class consisted of 48 members, and although defendants contended that 18 members of the class (37.5%) were uninjured, the court rejected these arguments, because they "d[id] not account for the but-for world *consistent with* DPPs' liability theory." 2017 WL 4621777, at *3, 11 (emphases added). The same is true here. Likewise, in *Lidoderm*, the experts

dueled over how many uninjured members of the class there were; the former said 6.1%; the latter said 24%. 2017 WL 679367, at *19. The court found that while there was a dispute, it did "not undermine the fact that both experts rely on common proof" to identify the uninjured and that the issue could be dealt with at the claims administration phase of the case. *Id*. Again, the same is true here.

As said in a different context in the 2016 opinion granting class certification in *ODD II*, which Defendants fail to mention, "[t]he crucial point is that whether the [plaintiffs'] theory is right or wrong, it is something that can be decided on a class-wide basis…. defendant's attacks on the completeness and accuracy of [plaintiffs' expert's] … studies [] present issues to be decided on the merits." 2016 WL 467444, at *11. The same principle should apply here as well.[9]

**Using An Indicator Variable For 2008-10**. In his regression analysis, ████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

Defendants attack this aspect of Dr. Mangum's model, saying it deliberately distorts his overcharge analysis. Opp'n at 18-19. This argument is spurious and has no legal support.[10] █████████████████████████████████████████████████████████████████

---

[9] Despite Defendants' argument about "uninjured" class members, "a well-defined class may inevitably contain some individuals who have suffered no harm as a result of a defendant's unlawful conduct." *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1136 (9th Cir. 2016) (citations omitted). The predominance inquiry does not focus on the potential for some uninjured class members but whether the "class is defined so broadly as to include a great number of members who for some reason *could not have been harmed by the defendant's allegedly unlawful conduct*." *Qualcomm*, 2018 WL 4680214, at *25 (quoting *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 824 (7th Cir. 2012)) (emphases added). As with his opinions in *Qualcomm*, Dr. Johnson's criticism in this case about uninjured class members is misplaced.

[10] *See, e.g.*, *Kleen Prods. LLC v. Int'l Paper Co.*, 306 F.R.D. 585, 603 (N.D. Ill.



**Treatment Of Defendants' Costs**. Defendants next argue that Dr. Mangum failed to take into account the variations in their respective production costs. Opp'n at 20-25. Again, Defendants' argument is misplaced and their suggestion that Dr. Mangum should analyze Defendants' accounting costs instead is inappropriate and fundamentally misinterprets the issue before the Court. Specifically, as Dr. Mangum points out, ████████████████████████████████████████ ████████████████████████████████████████

2015), *aff'd*, 831 F.3d 919 (7th Cir. 2016) (defendants' argument that expert's model was unreliable because it used the class period alleged in amended complaint, not the period initially alleged, went to weight of the testimony, not admissibility); *In re Urethane Antitrust Litig.*, 768 F.3d 1245, 1262-63 (10th Cir. 2014) (defendants' "benchmark-shopping argument" did not implicate reliability of expert's methodology; refusing to reverse district court based on changed class period start date); *In re Blood Reagents Antitrust Litig.*, MDL No. 09-2081, 2015 WL 6123211, at *12 (E.D. Pa. Oct. 19, 2015) (plaintiffs' expert's selection of a benchmark period "implicates the weight a jury may give [his] testimony not its admissibility") (citation omitted); *In re Mushroom Direct Purchaser Antitrust Litig.*, No. 06-0620, 2015 WL 5775600, at *7 (E.D. Pa. Aug. 5, 2015) (plaintiffs' expert's choice of a "more competitive" benchmark had a "reasonable basis").



*See Eggs*, 312 F.R.D. at 199-200.

Dr. Mangum's approach is reasonable, as suggested by the analogy of the *Ramen* class certification decision. There, Dr. Mangum used a weighted cost analysis that the defense experts heavily criticized. 2017 WL 235052, at *6-12. The court denied a *Daubert* challenge and certified the class, saying: "Defendants' criticisms as to Mangum's costs, and the role they play in setting his but-for price, rest primarily on disputes of fact and the reasonableness of assumptions made by the experts on both sides. There is nothing in Mangum's approach that fatally undermines the reliability of his methodology or model such that Mangum's opinion should be excluded under *Daubert* or his determination of classwide impact significantly discounted." *Id*. at *13.

III. **CONCLUSION**

For all of the reasons expressed in this brief, the MCD, the MCRD, and the DPPs' prior filings, the Court should grant their motion for class certification.

| 1 | Date: November 27, 2018 | Respectfully Submitted, |
| 2 | | |
| 3 | | By: _s/ *Michael P. Lehmann*_ |
| | | Michael P. Lehmann (Cal. Bar No. 77152) |
| 4 | | Bonny E. Sweeney (Cal. Bar No. 176174) |
| 5 | | Christopher L. Lebsock (Cal. Bar No. 184546) |
| 6 | | Samantha J. Stein (Cal. Bar No. 302034) |
| 7 | | HAUSFELD LLP |
| | | 600 Montgomery Street, Suite 3200 |
| 8 | | San Francisco, CA 94111 |
| 9 | | Tel:  (415) 633-1908 |
| | | Fax:  (415) 358-4980 |
| 10 | | San Francisco, CA 94111 |
| 11 | | Tel:  (415) 633-1908 |
| | | Fax:  (415) 358-4980 |
| 12 | | E-mail:  mlehmann@hausfeld.com |
| 13 | | E-mail:  bsweeney@hausfeld.com |
| | | E-mail:  clebsock@hausfeld.com |
| 14 | | E-mail:  sstein@hausfeld.com |
| 15 | | |
| 16 | | Michael D. Hausfeld |
| | | James J. Pizzirusso |
| 17 | | HAUSFELD LLP |
| 18 | | 1700 K Street NW, Suite 650 |
| | | Washington, DC 20006 |
| 19 | | Telephone: (202) 540-7200 |
| | | Facsimile: (202) 540-7201 |
| 20 | | E-mail:   mhausfeld@hausfeld.com |
| 21 | | E-mail:   jpizzirusso@hausfeld.com |
| 22 | | |
| 23 | | *Counsel for Plaintiff Olean Wholesale Grocery Cooperative, Inc. and Interim Lead Counsel for the Direct Purchaser Class* |
| 24 | | |
| 25 | | Arthur N. Bailey |
| 26 | | Marco Cercone |
| | | RUPP BASE PFALZGRAF CUNNINGHAM |
| 27 | | LLC |
| 28 | | |

1600 Liberty Building
424 Main Street
Buffalo, New York 14202
Telephone: (716) 664-2967
Facsimile: (716) 664-2983
E-mail: bailey@ruppbaase.com
E-mail: cercone@ruppbaase.com

Lesley E. Weaver
BLEICHMAR FONT & AULD LLP
1901 Harrison St., Suite 1100
Oakland, CA 94612
Telephone:  (510) 844 7759
Facsimile:  (510) 844-7710
E-mail: lweaver@bfalaw.com

*Additional Counsel for Plaintiff Olean
Wholesale Grocery Cooperative, Inc.*

Barbara J. Hart
Grace Lee
LOWEY DANNENBERG COHEN
& HART, P.C.
44 South Broadway, Suite 1100
White Plains, NY 10601-2301
Telephone:  (914) 997-0500
Facsimile:   (914) 997-0035
E-Mail: bhart@lowey.com
E-Mail: glee@lowey.com

*Member of Direct Purchaser Plaintiffs'
Steering Committee*

Solomon B. Cera (Cal. Bar No. 99467)
Thomas C. Bright (Cal. Bar No. 169713)
Louis A. Kessler (Cal. Bar No. 243703)
CERA LLP
595 Market Street, Suite 2300
San Francisco, California 94105
Tel: (415) 777-2230

Fax: (415) 777-5189

C. Andrew Dirksen (Cal. Bar No. 130064)
CERA LLP
800 Boylston St., 16th Floor
Boston, MA 02199
Tel: (857) 453-6555
Fax: (415) 777-5189

*Counsel for Plaintiff Piggly Wiggly Alabama
Distributing Co., Inc. and Member of Direct
Purchaser Plaintiffs' Steering Committee*

Jason S. Hartley (CA Bar No. 192514)
Jason M. Lindner (CA Bar No. 211451)
HARTLEY LLP
550 West C Street, Suite 1750
San Diego, CA 92101
Phone: (619) 400-5822
Fax: (619) 400-5832
E-mail:  hartley@hartleyllp.com
E-mail:  lindner@hartleyllp.com

*Counsel for Plaintiff Trepco Imports &
Distribution, Ltd.*

Stephen R. Neuwirth
Sami H. Rashid
Joseph N. Kiefer
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
E-mail:
stephenneuwirth@quinnemanuel.com
E-mail:  samirashid@quinnemanuel.com
E-mail: josephkiefer@quinnemanuel.com

Stanley Bernstein
Joseph Seidman
BERNSTEIN LIEBHARD LLP
10 East 40th Street
New York, NY 10016
Telephone: (212) 779-1414
Facsimile: (212) 779-3218
E-mail: bernstein@bernlieb.com
E-mail: seidman@bernlieb.com

*Counsel for Plaintiff Benjamin Foods LLC
And Members of Direct Purchaser Plaintiffs'
Steering Committee*

Whitney E. Street (Cal. Bar No. 223870)
BLOCK & LEVITON LLP
520 Third Street, Suite 108
Oakland, CA 94607
Telephone: (415) 968-8999
Facsimile: (617) 507-6020
E-mail: whitney@blockesq.com

*Member of Direct Purchaser Plaintiffs'
Steering Committee*

Allan Steyer (Cal. Bar No. 100318)
D. Scott Macrae (Cal. Bar No. 104663)
Jill M. Manning (Cal. Bar No. 178849)
STEYER LOWENTHAL BOODROOKAS
ALVAREZ & SMITH LLP
One California Street, Suite 300
San Francisco, CA 94111
Telephone: (415) 421-3400
Facsimile: (415) 421-2234
E-mail: asteyer@steyerlaw.com
E-mail: smacrae@steyerlaw.com
E-mail: jmanning@steyerlaw.com

*Additional Counsel for the Direct Purchaser
Plaintiffs*

1

**<u>CERTIFICATE OF SERVICE</u>**

2        I certify that on November 27, 2018, I filed the foregoing document and

3  supporting papers with the Clerk of the Court for the United States District Court,

4  Southern District of California, by using the Court's CM/ECF system. I also served

5  counsel of record via this Court's CM/ECF system.

6

7

8                                By: <u>s/ Michael P. Lehmann</u>
                                      Michael P. Lehmann

9                                     HAUSFELD LLP

10                                    mlehmann@hausfeld.com
                                      *Interim Lead Counsel for the Proposed*

11                                    *Direct Purchaser Plaintiff Class*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28