1   LATHAM & WATKINS LLP
      Alfred C. Pfeiffer (CA 120965)
2     Christopher S. Yates (CA 161273)
      Belinda S Lee (CA 199635)
3     Niall E. Lynch (CA 157959)
      Ashley M. Bauer (CA 231626)
4   505 Montgomery Street, Suite 2000
    San Francisco, California 94111-6538
5   Telephone:  +1.415.391.0600
    Facsimile:   +1.415.395.8095
6   *Al.Pfeiffer@lw.com*
    *Chris.Yates@lw.com*
7   *Belinda.Lee@lw.com*
    *Niall.Lynch@lw.com*
8   *Ashley.Bauer@lw.com*

9   *Counsel for Defendants StarKist Co. and*
    *Dongwon Industries Co., Ltd.*
10
    (Additional Parties and Counsel on
11  Signature Pages)

12            **UNITED STATES DISTRICT COURT**
13            **SOUTHERN DISTRICT OF CALIFORNIA**

14
    | | |
    |---|---|
    | IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-JLS-MDD |

15
16

17  This Document Relates to:

18  (1)  Commercial Food Preparer Plaintiffs

19  (2)  End Payer Plaintiffs

20  (3)  *W. Lee Flowers & Co, Inc. v. Bumble Bee Foods, LLC, et al.*, Case No. 3:16-cv-01226

21

22  (4)  *Associated Wholesale Grocers, Inc. v. Bumble Bee Foods LLC, et al.*, Case No. 3:18-cv-02212

23

24  (5)  *Affiliated Foods, Inc., et al. v. Tri-Union Seafoods, LLC, et al.* (re: claims by Affiliated Foods Midwest Cooperative, Inc. only), Case No. 3:15-cv-02787

25

26

27

28

Case No. 3:15-md-02670-JLS-MDD

MDL No. 2670

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON CERTAIN STATE LAW CLAIMS**

Special Briefing Schedule Ordered

**Hearing**:
Date:     March 18, 2020
Time:     9:00 a.m.
Place:    Courtroom 4D
Judge:    Hon. Janis L. Sammartino

1

## <u>TABLE OF CONTENTS</u>

2                                                                                    **Page**

3    I.      INTRODUCTION .................................................................................... 1

4    II.     PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER
             OF LAW ................................................................................................. 1

5

6            A.    The Court Should Reconsider Its Application of *Shady
                   Grove* and Hold that EPPs' and CFPs' South Carolina
                   Consumer Protection Claims Fail as a Matter of Law ....................... 2

7

8                  1.    Under a Proper *Marks* Analysis, the Operative
                         Rule of *Shady Grove* Is that a Federal Procedural
9                        Rule Cannot Displace a State Law that Functions
                         to Define the Scope of a State-Created Right ........................... 4

10                 2.    Under the Correct *Shady Grove* Rule and the Plain
                         Text of the Rules Enabling Act, South Carolina's
11                       Restriction on Its Consumer Protection Law Must
                         Be Given Effect .......................................................................... 9

12

13           B.    Indirect Purchaser Claims for Unjust Enrichment Under
                   South Carolina Law Fail as a Matter of Law .................................... 12

14           C.    EPPs' and CFPs' Class Claims Under California's
                   Cartwright Act and CFPs' Alternative Class Claim Fail
15                 as a Matter of Law ............................................................................ 13

16           D.    DAP Flowers' South Carolina Antitrust Act Claim Fails
                   as a Matter of Law ............................................................................ 14

17           E.    DAPs AWG and AFMC Are Not Entitled to Prejudgment
18                 Interest ............................................................................................... 16

19   III.    CONCLUSION ....................................................................................... 18

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Balla v. Idaho State Bd. of Corrections*,
  869 F.2d 461 (9th Cir. 1989) .............................................................. 3

*Conde v. Sensa*,
  No. 14-cv-51 JLS WVG, 2018 WL 4297056 (S.D. Cal. Sept. 10,
  2018) ................................................................................................ 14

*Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*,
  No. CV 03-992 AJW, 2010 WL 2132378 (C.D. Cal. May 24,
  2010) ................................................................................................ 16

*Davidson v. Apple, Inc.*,
  No. 16-CV-04942-LHK, 2018 WL 2325426 (N.D. Cal. May 8,
  2018) ............................................................................................. 4, 8

*In re Exxon Valdez*,
  484 F.3d 1098 (9th Cir. 2007) ........................................................... 16

*Farmers State Bank v. Prod. Credit Ass'n of St. Cloud*,
  755 P.2d 518 (Kan. 1988) .................................................................. 18

*Fejzulai v. Sam's West, Inc.*,
  205 F. Supp. 3d 723 (D.S.C. 2016) .................................................... 11

*Fid. & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*,
  216 F. Supp. 2d 1240 (D. Kan. 2002) ............................................... 18

*Garman v. Campbell Cnty. Sch. Dist.*,
  630 F.3d 977 (10th Cir. 2010) ............................................................. 8

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010) ................................................................. 8

*Green Constr. Co. v. Kan. Power & Light Co.*,
  1 F.3d 1005 (10th Cir. 1993) ............................................................. 17

*Greene v. Gerber Prods. Co.*,
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................... 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
299 F.R.D. 648 (S.D. Cal. 2014) .......................................................... 4, 8

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) .................................................................. 13

*Illinois Brick Co. v. Illinois*,
431 U.S. 720 (1977) ............................................................................... 12

*Isis Pharm., Inc. v. Santaris Pharma A/S Corp.*,
No. 3:11-CV-2214-GPC-KSC, 2014 WL 794811 (S.D. Cal. Feb. 27, 2014) ................................................................................................... 3

*Kearney v. Kan. Pub. Serv. Co.*,
665 P.2d 757 (Kan. 1983) ................................................................ 17, 18

*Kilner v. State Farm Mut. Auto. Ins. Co.*,
847 P.2d 1292 (Kan. 1993) ..................................................................... 17

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) .................................................................. 4

*Lightcap v. Mobil Oil Corp.*,
562 P.2d 1 (Kan.), *cert denied*, 434 U.S. 876 (1977) ..................... 17, 18

*Marks v. United States*,
430 U.S. 188 (1977) ........................................................................*passim*

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ........................................................... 13, 14

*Miller v. Cnty. of Santa Cruz*,
796 F. Supp. 1316 (N.D. Cal. 1992), *aff'd*, 39 F.3d 1030 (9th Cir. 1994), *cert. denied*, 515 U.S. 1160 (1995) ............................................ 1

*Mississippi Pub. Corp. v. Murphree*,
326 U.S. 438 (1946) .......................................................................... 2, 10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..................................................................................... 7

*In re Myford Touch Consumer Litig.*,
No. 13-cv-03072-EMC, 2016 WL 7734558 (N.D. Cal. Sept. 14, 2016) ........................................................................................................ 8

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1
2
*Royal Coll. Shop, Inc. v. N. Ins. Co. of N.Y.*,
    895 F.2d 670 (10th Cir. 1990) .......................................................... 17

3
4
*Shady Grove Orthopedics Assocs., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) ..................................................................*passim*

5
6
*Stalvey v. Am. Bank Holdings, Inc.*,
    No. 4:13-cv-714, 2013 WL 6019320 (D.S.C. Nov. 13, 2013) ........................... 12

7
8
*State Farm Mut. Auto. Ins. Co. v. Campbell*,
    538 U.S. 408 (2003) .................................................................. 13

9
*State v. Virginia-Carolina Chem. Co.*,
    51 S.E. 455 (S.C. 1905) .............................................................. 14

10
11
*In re Target Corp. Data Sec. Breach Litig.*,
    66 F. Supp. 3d 1154 (D. Minn. 2014) .................................................. 8

12
13
*In re TD Bank, N.A.*,
    150 F. Supp. 3d 593 (D.S.C. 2015) ................................................... 11

14
15
16
*Three J Farms, Inc. v. Alton Box Bd. Co.*,
    No. 78-1257, 1978 WL 1459 (D.S.C. 1978), *rev'd on other
    grounds*, 609 F.2d 112 (4th Cir. 1979), *cert. den.*, 445 U.S.
    911(1980)............................................................................. 14

17
18
*United States v. Davis*,
    825 F.3d 1014 (9th Cir. 2016) ........................................................ 7

19
20
*United States v. Donovan*,
    661 F.3d 174 (3d Cir. 2011) ......................................................... 7

21
22
*United States v. Houser*,
    804 F.2d 565 (9th Cir. 1986) ......................................................... 3

23
24
*United States v. Jacobsen*,
    466 U.S. 109 (1984) .................................................................. 7

25
26
*United States v. Williams*,
    435 F.3d 1148 (9th Cir. 2006) ........................................................ 4

27
*Walter v. United States*,
    447 U.S. 649 (1980) .................................................................. 7

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

*Washington v. Garcia,*
    977 F. Supp. 1067 (S.D. Cal. 1997) ............................................................... 3

*In re Wellbutrin XL Antitrust Litig.,*
    756 F. Supp. 2d 670 (E.D. Pa. 2010) .............................................................. 8

*In re Wiring Device Antitrust Litig.,*
    498 F. Supp. 79 (E.D.N.Y. 1980) ................................................................... 15

**STATUTES**

15 U.S.C. § 15(a) ............................................................................................... 17

28 U.S.C. § 2072(b) ............................................................................................ 2

Kan. Stat. Ann. § 16-201 ............................................................................. 16, 17

N.Y. C.P.L.R. § 901(b) ............................................................................... 5, 6, 11

S.C. Code Ann. §§ 39-3-10—39-3-40 ......................................................... 14, 15

S.C. Code Ann. § 39-5-140(a) ................................................................... 2, 9, 10

**RULES**

Fed. R. Civ. P. 23 ....................................................................................... *passim*

Fed. R. Civ. P. 54(b) ........................................................................................... 3

Fed. R. Civ. P. 56(a) ........................................................................................... 1

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW: AN
    ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR APPLICATION (4th
    Ed. 2018) ......................................................................................................... 17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

## I.      INTRODUCTION

Certain of Plaintiffs' South Carolina, California, and Kansas state law claims fail as a matter of law, and the Court should enter judgment for Defendants on all of them.[1]  *First*, the EPP and CFP Classes South Carolina claims fail because South Carolina's consumer protection statute expressly bars class action claims. Their South Carolina unjust enrichment claims are also precluded because, as this Court has previously held, a claim for unjust enrichment cannot stand where a state bars indirect purchaser recovery.  *Second*, this failure is also fatal to EPPs' and CFPs' multistate classes under California's Cartwright Act because the inclusion of South Carolina claimants in such classes presents a material conflict-of-law that cannot be ignored under Ninth Circuit precedent.  *Third*, DAP Flowers' claim pursuant to the South Carolina antitrust statute fails as a matter of law because the statute applies to conduct affecting only intrastate commerce and provides no relief or remedy for the interstate commerce at issue in this case.  *Fourth,* DAPs AWG and AFMC are not entitled to prejudgment interest under Kansas law because:  (1) AFMC asserts no violation of Kansas state law; and (2) prejudgment interest does not apply to the unliquidated claims at issue here.

## II.     PLAINTIFFS' STATE LAW CLAIMS FAIL AS A MATTER OF LAW

Summary judgment is appropriate when there is "no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  This is especially true when no genuine disputes of fact exist and purely legal questions remain.  *Miller v. Cty. of Santa Cruz*, 796 F. Supp. 1316, 1317-18 (N.D. Cal. 1992), *aff'd*, 39 F.3d 1030 (9th Cir. 1994), *cert. denied*, 515 U.S. 1160 (1995).

---

[1] COSI and TUG have reached settlements with all Plaintiffs subject to this Motion except for AWG.  Accordingly, COSI and TUG only join the portions of Section II.E of this Motion that relate to AWG (but not AFMC).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEM. OF P. & A. IN SUPP. OF. DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

**A.** **The Court Should Reconsider Its Application of *Shady Grove* and Hold that EPPs' and CFPs' South Carolina Consumer Protection Claims Fail as a Matter of Law**

EPPs' and CFPs' claims under the South Carolina Unfair Trade Practices Act ("SCUTPA")—a consumer protection statute—fail as a matter of law because SCUTPA explicitly bars class action claims.  S.C. Code Ann. § 39-5-140(a).

The Rules Enabling Act dictates that Federal Rule of Civil Procedure 23 cannot "abridge, enlarge or modify any substantive right."  28 U.S.C. § 2072(b).  Accordingly, while Rule 23 may affect "the manner and the means by which a right to recover is enforced," it cannot create new rights or alter existing rights created by state law.  *Mississippi Pub. Corp. v. Murphree*, 326 U.S. 438, 446 (1946).  EPPs' and CFPs' substantive claim arises under SCUTPA, which permits "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of" conduct prohibited by the statute to "bring an action *individually, but not in a representative capacity*, to recover actual damages."  S.C. Code Ann. § 39-5-140(a) (emphasis added).  So, while SCUTPA creates a private right of action for violations of the statute, it does *not* create any private right of action for individuals to bring suit "in a representative capacity."  *Id.*  In fact, SCUTPA expressly *precludes* the right to bring a "representative action" for violations of the statute.  *Id.*  Both the plain text of the Rules Enabling Act and the controlling opinion in the Supreme Court's decision in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) dictate that Rule 23 cannot supply EPPs and CFPs with a cause of action that the South Carolina legislature expressly precluded.  The SCUTPA claims must accordingly be dismissed.

This Court previously considered whether SCUTPA's prohibition against "representative" claims precludes the pursuit of those claims under Rule 23, but it did so prior to class certification and in the context of limited briefing.  *In re Packaged Seafood Prods. Antirust Litig. ("PSP II")*, 242 F. Supp. 3d 1033, 1085-

1  86 (S.D. Cal. 2017).  This Court has the "inherent power to modify [its]

2  interlocutory orders before entering a final judgment." *Balla v. Idaho State Bd. of*

3  *Corr.*, 869 F.2d 461, 465 (9th Cir. 1989) (citing *Marconi Wireless Tel. Co. v.*

4  *United States*, 320 U.S. 1, 47-48 (1943); *John Simmons Co. v. Grier Bros. Co.*, 258

5  U.S. 82 (1922)); *see also* Fed. R. Civ. P. 54(b) (any order that adjudicates fewer

6  than all the claims as to all the parties "may be revised at any time before the entry

7  of [final] judgment").  Because the denial of a motion to dismiss is an interlocutory

8  order, this Court "is free to reconsider and reverse its decision for any reason it

9  deems sufficient, even in the absence of new evidence or an intervening change in

10  or clarification of the substantive law." *Washington v. Garcia*, 977 F. Supp. 1067,

11  1068-69 (S.D. Cal. 1997) (citations omitted); *see also Isis Pharm., Inc. v. Santaris*

12  *Pharms A/S Corp*., No. 3:11-cv-2214-GPC-KSC, 2014 WL 794811, at *5 n.3 (S.D.

13  Cal. Feb. 27, 2014) ("All rulings of a trial court are 'subject to revision at any time

14  before the entry of judgment.'") (quoting *United States v. Houser*, 804 F.2d 565,

15  568 (9th Cir. 1986)).

16      Reconsideration should, of course, be invoked only sparingly.  But the

17  context of this case supports the exercise of this Court's discretion to reconsider its

18  prior ruling for several reasons.  *First*, at the time of the Court's prior ruling, the

19  issue of whether SCUTPA claims could proceed on a class basis was necessarily

20  tentative, because no class had been certified.  Now that a class has been certified,

21  the issue takes on renewed urgency and warrants further, more detailed scrutiny.

22  Since the Court's initial ruling, the number of issues and claims before the Court

23  also have been winnowed significantly, allowing for more thorough briefing of this

24  issue and thus a more extensive analysis of the issue.  *Second*, the Court's earlier

25  decision failed to consider a significant legal question predicate to resolution of the

26  issue:  whether, in the context of a fractured Supreme Court opinion, a concurrence

27  and a dissent may validly constitute the Court's legal holding.  Because properly

28  resolving that threshold question is of critical importance to resolving the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1   underlying claims, this Court should, at a minimum, update its analysis to address

2   that issue.  *Finally*, the Court's earlier ruling relied principally on a case, *In re*

3   *Hydroxycut Marketing & Sales Practices Litigation*, 299 F.R.D. 648 (S.D. Cal.

4   2014), that has in recent years been criticized for its incomplete analysis, including

5   by decisions which post-date the Court's prior holding.  And, like this Court,

6   *Hydroxycut* did not consider whether the concurrence and dissent could together

7   form a common holding of the Court.  *Id.* at 652-53.  In the words of one recent

8   decision, *Hydroxycut* now reflects the "minority view."  *Davidson v. Apple, Inc.*,

9   No. 16-CV-04942-LHK, 2018 WL 2325426, at *11 (N.D. Cal. May 8, 2018).  In

10  light of the new weight of authority, this important issue warrants a second look.

11
12
13

    **1.    Under a Proper *Marks* Analysis, the Operative Rule of *Shady Grove* Is that a Federal Procedural Rule Cannot Displace a State Law that Functions to Define the Scope of a State-Created Right**

14      As this Court has previously recognized, *see PSP II*, 242 F. Supp. 3d at

15  1085, the Supreme Court addressed this issue in its fractured, 4-1-4 decision in

16  *Shady Grove*.  Because there is no majority opinion in *Shady Grove*, this Court

17  must apply the analysis set forth in the Supreme Court's opinion in *Marks v.*

18  *United States*, 430 U.S. 188 (1977) in order to determine whether there is

19  nonetheless a controlling rule that may be drawn.  *Marks* dictates that "[w]hen a

20  fragmented Court decides a case and no single rationale explaining the result

21  enjoys the assent of five justices, the holding of the Court may be viewed as that

22  position taken by those Members who concurred in the judgments on the narrowest

23  grounds[.]"  *Id.* at 193 (citation omitted).  The Ninth Circuit has explained that a

24  *Marks* analysis involves finding "a common denominator" of reasoning between

25  five Justices.  *Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012).  A controlling

26  rule is any "legal standard which, when applied, will necessarily produce results

27  with which a majority of the Court from that case would agree."  *United States v.*

28  *Williams*, 435 F.3d 1148, 1157 (9th Cir. 2006) (citation omitted).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1    In *Shady Grove*, the Supreme Court considered whether it would be

2    permissible to certify a class under Rule 23 that sought recovery of statutory

3    penalties under a New York law, when New York itself had enacted a generally-

4    applicable provision, N.Y. C.P.L.R. § 901(b) ("CPLR"), that specifically barred

5    class action suits seeking to recover statutory penalties. *Shady Grove*, 559 U.S. at

6    397. Justice Scalia's plurality opinion, on behalf of four Justices, would have held

7    that, because Rule 23 is "procedural only," "it is authorized by [the Rules Enabling

8    Act] and is valid"—*irrespective* of whether Rule 23 conflicts with a state law that

9    seeks to substantively limit class recovery for certain categories of claims. *Id.* at

10   409-10.

11   But *five Justices disagreed* with that rule. Justice Ginsburg's dissent, also

12   on behalf of four Justices, would have held that there was no "conflict" between

13   Rule 23 and the New York law because "Rule 23 describes a method of enforcing

14   a claim for relief, while § 901(b) defines the dimensions of the claim itself." *Id.* at

15   446-47 (Ginsburg, J., dissenting). And Justice Stevens, who concurred in the

16   judgment, expressly agreed with the dissent that application of Rule 23 is

17   impermissible if it would have the effect of altering or "defin[ing] the dimensions

18   of a state-created claim." *Id.* at 429 (Stevens, J., concurring in part and concurring

19   in the judgment) (citation omitted). In Justice Stevens's view, a "federal rule . . .

20   cannot govern a particular case in which the rule would displace a state law"—

21   even one "that is procedural in the ordinary use of the term"—when that state law

22   "functions *to define the scope of the state-created right*." *Id.* at 423 (emphasis

23   added); *see id.* at 443 n.2 (Ginsburg, J., dissenting) (discussing agreement between

24   the dissent and Justice Stevens on the interplay between Federal Rules and state

25   law).

26   Justice Stevens made clear that he "agree[d] with Justice Ginsburg that there

27   are some state procedural rules that federal courts must apply in diversity cases

28   because they function as part of the State's definition of substantive rights and

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

5

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

remedies." *Id.* at 416 (Stevens, J., concurring).  He parted company with the dissent only in terms of how to *apply* that principle to the New York law at issue in *Shady Grove*.  Specifically, Justice Stevens concluded that CPLR § 901(b) did not "serve[] the function of defining New York's rights or remedies[,]" because it applied "not only to claims based on New York law but also to claims based on federal law or the law *of any other State*." *Id.* at 432 (emphasis added).  In Justice Stevens's view, therefore, CPLR § 901(b) was a solely procedural limitation on the power of New York courts to certify certain classes, not a limitation on any right created by the New York legislature.  *Id.*

Notwithstanding this disagreement about the rule's application to the particular New York law at issue in *Shady Grove*, however, five Justices in *Shady Grove* agreed that a class may not be certified under Rule 23 if doing so would have the effect of defining or expanding "the scope of [a] state-created right." *Id.* at 423 (Stevens, J., concurring); *id.* at 453-58 (Ginsburg, J. dissenting) (reasoning that CPLR § 901(b) could not be displaced by Rule 23 in a diversity action because it operates as a "state-law limitation on [a] state-created remed[y]").  That legal rule is a "common denominator" of reasoning between five Justices and thus represents the legal holding of the case under the *Marks* principle.

In originally denying Defendants' motion to dismiss, this Court correctly recognized that there was no "common denominator" of reasoning between the concurrence and *the plurality* that could constitute a holding of the Court.  *PSP II*, 242 F. Supp. 3d at 1085.  Unlike the dissent and Justice Stevens—which, as discussed, agreed that a federal court must determine whether the particular state law rule at issue "functions *to define the scope of the state-created right*[,]" *Shady Grove*, 559 at 423 (Stevens, J., concurring) emphasis added), the plurality sharply rejected this provision-specific and state-law sensitive approach.  *See id.* at 411 & nn.9-10 (rejecting Justice Stevens' focus on the extent to which the state law at issue "'defines the scope of th[e] substantive right or remedy" and arguing such an

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1   inquiry based on the "idiosyncracies of state law" was precluded by the Court's

2   precedent) (plurality opinion).  Thus, while the dissent and Justice Stevens agreed

3   on the governing rule but simply parted ways over its application to the New York

4   law in *Shady Grove*, the plurality and Justice Stevens disagreed on the analysis but

5   happened to arrive at the same conclusion as to New York law based on the

6   different rules they applied.

7          In its initial consideration of this issue, this Court did not consider whether

8   there was a common holding between the concurrence *and the dissent*, such that

9   the common holding supplied the rule of decision under the *Marks* analysis.  *PSP*

10  *II*, 242 F. Supp. 3d at 1085-86.  The Ninth Circuit has reserved the question of

11  whether a combined concurrence and dissent may constitute a holding under

12  *Marks*.  *United States v. Davis*, 825 F.3d 1014, 1024-25 (9th Cir. 2016).  The

13  Supreme Court itself, however, has consistently recognized that such a

14  combination qualifies as a binding opinion.  *See, e.g.*, *United States v. Jacobsen*,

15  466 U.S. 109, 115-17 (1984) (relying on a dissenting opinion to derive the rule in

16  *Walter v. United States*, 447 U.S. 649 (1980)); *Moses H. Cone Mem'l Hosp. v.*

17  *Mercury Constr. Corp*., 460 U.S. 1, 16-17 (1983) (holding that *Will v. Calvert Fire*

18  *Insurance*, 437 U.S. 655 (1978) did not overrule the "*Colorado River* test" because

19  *Will*'s four dissenting Justices agreed with the concurring opinion that the test

20  remained in effect); *see also United States v. Donovan*, 661 F.3d 174, 182 (3d Cir.

21  2011) (explaining the court "look[s] to the votes of dissenting Justices if they,

22  combined with votes from plurality or concurring opinions, establish a majority

23  view on the relevant issue").[2]

24  _____

25  [2] In reserving this issue, the Ninth Circuit observed that although language in
    *Marks* refers to consideration of the opinions of "those Members who *concurred in*
26  *the judgments*," "the Supreme Court and our sister circuits have considered
    dissenting opinions when interpreting fragmented Supreme Court decisions," as
27  well.  *Davis*, 825 F.3d at 1024 (emphasis added) (citations omitted).  This Court
    should be guided by those Supreme Court *decisions* as the authoritative treatment
28  of the rule, rather than the *language* in *Marks*.  That language is understandable

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                    7
MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1    In keeping with this analysis, the Tenth Circuit has expressly held that the
2  reasoning in Justice Stevens' concurring opinion constitutes the holding of the
3  Court in *Shady Grove* under a *Marks* analysis.  *Garman v. Campbell Cnty. Sch.*
4  *Dist. No. 1*, 630 F.3d 977, 983 n.6 (10th Cir. 2010), *cert. denied*, 565 U.S. 816
5  (2011).  Likewise, the First Circuit found that Justice Stevens was joined by the
6  four dissenting justices and, thus, described the controlling analysis when he held
7  that "whether a Federal Rule is valid under the Rules Enabling Act depends not on
8  the Federal Rule alone, but also on the nature of the state rule it seeks to displace."
9  *Godin v. Schencks*, 629 F.3d 79, 87 (1st Cir. 2010) (citing *Shady Grove*, 559 U.S.
10  at 423-25).  And numerous district courts both inside and outside the Ninth Circuit
11  have likewise recognized Justice Stevens's opinion as establishing the controlling
12  rule under *Marks*.  *See, e.g.*, *Davidson*, 2018 WL 2325426, at *11; *In re Myford*
13  *Touch Consumer Litig.*, No. 13-cv-03072-EMC, 2016 WL 7734558, at *26-27
14  (N.D. Cal. Sept. 14, 2016); *In re Wellbutrin XL Antitrust Litig.*, 756 F. Supp. 2d
15  670, 675 (E.D. Pa. 2010) (collecting cases); *Greene v. Gerber Prods. Co.*, 262 F.
16  Supp. 3d 38, 60-61 (E.D.N.Y. 2017) (collecting cases); *In re Target Corp. Data*
17  *Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1165 (D. Minn. 2014).

18    In its initial consideration of this issue, this Court relied on *Hydroxycut* to
19  reach the contrary conclusion.  *PSP II*, 242 F. Supp. 3d at 1085.  But *Hydroxycut*
20  did not consider whether the concurrence and dissent could together form a
21  common holding of the Court.  299 F.R.D at 653.  Moreover, *Hydroxycut* was
22  decided before most of the cases addressing this topic.  As the district court in
23  *Davidson* recently recognized—in a decision that postdates this Court's prior
24  decision—*Hydroxycut* "appears to be the minority view."  2018 WL 2325426, at
25  *11 (citation omitted).

26

27

28  given that the *Marks* Court was addressing the overlap between a plurality and concurrence, and should not be read to foreclose reliance on other configurations— as other courts, and even the Supreme Court itself, have recognized.  *See id.*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1    In light of the growing weight of authority recognizing that Justice Stevens'

2  concurring opinion in *Shady Grove* establishes the controlling opinion, and the fact

3  that the Court's prior analysis was necessarily incomplete, this Court should revisit

4  its prior decision and hold that the concurrence and dissent in *Shady Grove*

5  constitute the controlling rule under the *Marks* analysis.

6           **2.     Under the Correct *Shady Grove* Rule and the Plain Text of
                  the Rules Enabling Act, South Carolina's Restriction on Its
7                  Consumer Protection Law Must Be Given Effect**

8    Under the controlling rule of *Shady Grove*, it is clear that certifying a class

9  under SCUTPA would violate the Rules Enabling Act and is thus impermissible.

10  Indeed, whether by applying Justice Stevens's reasoning or simply assessing the

11  question *de novo* in light of the plain text of the Rules Enabling Act, this Court

12  should hold that no class may be certified seeking recovery under SCUTPA.

13    As discussed above, in *Shady Grove*, five Justices (Justice Stevens and the

14  four dissenting Justices) agreed that a federal rule cannot "displace a state law" if

15  that state law "functions to *define the scope of the state-created right*."  *Shady*

16  *Grove*, 559 U.S. at 423 (Stevens, J., concurring in part) (emphasis added); *see*

17  *supra* at 5.  The key question in this case, therefore, is whether permitting a class

18  action under Rule 23 would alter the "scope" of the "right" that the South Carolina

19  legislature created when it enacted SCUTPA.  The answer is plainly yes—and for

20  reasons that clearly distinguish the state law here from the one in *Shady Grove*.

21    In enacting SCUTPA, South Carolina's legislature did not provide an

22  unfettered right to recover for false and misleading conduct.  Rather, it carefully

23  defined the scope of the private right of action it created with four separate and

24  distinct limitations.  A person has a right to recover under SCUTPA if (and only

25  if):  (1) that person has lost "money or property"; (2) his loss is "as a result of" the

26  challenged conduct; (3) he is seeking only "actual damages"; and (4) he is bringing

27  his "action *individually, but not in a representative capacity*."  S.C. Code Ann.

28  § 39-5-140(a) (emphasis added).  If an individual does not meet all four of these

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1  requirements, then South Carolina law does not provide that person any right to

2  sue for violations of SCUTPA.

3        Under SCUTPA's plain language, individuals seeking to recover "in a

4  representative capacity" cannot state a SCUTPA claim.  Rule 23 does not—and

5  cannot—alter that conclusion.  While Rule 23 may validly regulate the "manner

6  and means" through which individuals *with a valid cause of action* can recover, it

7  cannot supply a cause of action for individuals who do not have one under state

8  law.  *Mississippi Pub.*, 326 U.S. at 446.  South Carolina elected to specifically

9  limit the scope of the cause of action under SCUTPA to individuals who proceed

10  in an individual capacity—and expressly precluded representative claims.  S.C.

11  Code Ann. § 39-5-140(a).  Even if that limitation is "procedural in the ordinary use

12  of the term," it plainly "functions to define the scope of the state-created right."

13  *Shady Grove*, 559 U.S. at 423 (Stevens, J., concurring).  Applying Rule 23 here

14  would, in effect, create a new individual "right" to recover *as a class*

15  *representative*—a right which the South Carolina legislature expressly precluded

16  by law.

17        This conclusion is well illustrated by considering whether a federal rule

18  could override SCUTPA's other limitations on its private right of action.  If there

19  were, for example, a federal rule stating that "punitive damages may be recovered"

20  in cases filed in federal court, no one would seriously believe that the federal rule

21  would create a right in a diversity action to recover punitive damages *under*

22  *SCUTPA*, when the statute expressly limits recovery to "actual damages."  S.C.

23  Code Ann. § 39-5-140(a).  Nor would anyone seriously think that a federal rule

24  conferring standing in federal court for individuals suffering "intangible injuries"

25  could permit recovery *under SCUTPA* for such injuries—in disregard of the state

26  statute's limitation to those who have lost "money or property."  *Id.*  The class

27  action bar is no different.  Permitting class-wide recovery under Rule 23 for

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1   SCUTPA violations impermissibly creates a right to recover that the South

2   Carolina legislature expressly precluded and violates the Rules Enabling Act.

3          That stands in marked contrast to the New York law at issue in *Shady Grove*.

4   Unlike here, the statute in *Shady Grove* did not limit the scope of the relevant

5   cause of action—indeed, it *could not* have done so because it applied even to

6   causes of action created by other jurisdictions, which New York was not

7   empowered to amend. *See Shady Grove*, 559 U.S. at 432 (Stevens, J., concurring)

8   ("CPLR § 901(b) expressly and unambiguously applies not only to claims based on

9   New York law but also to claims based on federal law or the law *of any other*

10  *State*[]") (emphasis added).  Because the New York law limited class actions

11  irrespective of the *source* of the underlying law, it is clear that the law served as a

12  limitation on the power of New York courts, not a limitation on the substantive

13  scope of the underlying cause of action.  *See id.* at 432 n.16.  But when, as here, a

14  class action bar applies as a legislature's express modification on the scope of the

15  State's own cause of action, it functions as a substantive limitation on the scope of

16  a "state-created right" to sue.  A federal procedural rule cannot overcome that

17  limitation without impermissibly "'defin[ing] the dimensions' of a state-created

18  claim[,]" in violation of the Rules Enabling Act.  *Id.* at 429 (citation omitted).

19         Notably, South Carolina district courts have reached this very conclusion in

20  interpreting the reach of South Carolina law.  As one court explained—in an

21  opinion this Court has yet to consider—"South Carolina has deliberately defined

22  consumers' SCUTPA rights in a manner that limits their procedural redress to

23  individual claims.  To allow Rule 23 to supplant that definition would be to

24  displace the State's effort to narrow the potential scope of the right." *Fejzulai v.*

25  *Sam's W., Inc.*, 205 F. Supp. 3d 723, 727 (D.S.C. 2016).  Such an "*enlargement*

26  and/or *modification* of the underlying state-legislature-created right is precisely

27  what the Rules Enabling Act is designed to prevent."  *Id.* at 729; *see also In re TD*

28  *Bank, N.A.*, 150 F. Supp. 3d 593, 635 (D.S.C. 2015) ("SCUTPA's class action bar

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1  survives *Shady Grove*."); *Stalvey v. Am. Bank Holdings, Inc.*, No. 4:13-cv-714,

2  2013 WL 6019320, at *4 (D.S.C. Nov. 13, 2013) ("[T]he prohibitions against class

3  actions ingrained in the very text of the SCUTPA and Consumer Protection code

4  are substantive portions of South Carolina law and are not trumped by Federal

5  Rule of Civil Procedure 23, even in light of the *Shady Grove* decision.").

6       In short, whether SCUTPA is described as "procedural" or "substantive," it

7  clearly "functions to define the scope of the state-created right."  *See Shady Grove*,

8  559 U.S. at 423 (Stevens, J., concurring in part).  It must be given effect in this

9  diversity action under Justice Stevens's rule, notwithstanding Rule 23.  And, even

10  if this Court finds that Justice Stevens's rule is not controlling, the plain text of the

11  Rules Enabling Act dictates that Rule 23 cannot create a cause of action to sue in a

12  representative capacity that the South Carolina legislature expressly precluded.

13       Because permitting the EPPs' and CFPs' SCUTPA class claims would

14  violate the Rules Enabling Act, those claims should be dismissed.

15  **B.    Indirect Purchaser Claims for Unjust Enrichment Under South**
**Carolina Law Fail as a Matter of Law**
16

17       This Court should grant judgment on CFPs' and EPPs' South Carolina

18  claims for unjust enrichment.  This Court previously dismissed CFPs' South

19  Carolina antitrust claims because South Carolina did not enact a "repealer" statute

20  after *Illinois Brick Co. v. Illinois*, 431 U.S. 720 (1977).  *See In re Packaged*

21  *Seafood Products Antitrust Litig. ("PSP III")*, 277 F. Supp. 3d 1167, 1177 ("South

22  Carolina follow[s] the rule of *Illinois Brick* limiting recovery under the South

23  Carolina Antitrust statute to direct purchasers.") (citation omitted).  The Court also

24  granted "Defendants' Motion to Dismiss regarding all . . . unjust enrichment claims

25  where the state otherwise bars indirect-purchaser recovery." *PSP II*, 242 F. Supp.

26  3d at 1088.  As stated above, South Carolina does not allow for indirect-purchaser

27  recovery, at least in a class-action capacity, and CFPs' and EPPs' South Carolina

28  unjust enrichment claims necessarily fail.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

## C. EPPs' and CFPs' Class Claims Under California's Cartwright Act and CFPs' Alternative Class Claim Fail as a Matter of Law

CFPs' and EPPs' class claims under California's Cartwright Act (Cal. Bus. & Prof. Code Sections 16720-16728) (CFP Fourth Am. Compl. ¶¶ 158-170; EPP Sixth Am. Compl. ¶¶ 141-50, ¶¶ 429-35) fail as a matter of law because they include purchasers from South Carolina—which, as established above, bars class actions of the very sort CFPs and EPPs advance here.  This conflict offends California's choice of law principles.  Under *Mazza v. America Honda Motor Company*, 666 F.3d 581 (9th Cir. 2012), the inclusion of South Carolina in the putative classes presents a material, fatal conflict of law.

*Mazza* requires a three-step choice of law analysis to determine whether the application of California law to non-residents is appropriate:  (1) determine whether the laws of the affected jurisdictions are "the same or different"; (2) if different, "examine[] each jurisdiction's interest in the application of its own law" to determine whether a "true conflict" exists; and (3) if a true conflict exists, determine "which state's interest would be more impaired if its policy were subordinated to the policy of the other state."  666 F.3d at 589-90 (citation omitted); *see also In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 561-62 (9th Cir. 2019) (*en banc*).  *First*, South Carolina plainly does not allow for class action indirect-purchaser recovery.  *See supra* at 9-12.  Pursuant to this Court's previous Order, making California-law claims available to multistate classes "would necessarily extend California's indirect-purchaser recovery to [a state] which ha[s] not enacted legislation allowing for the same."  *PSP II*, 242 F. Supp. 3d at 1085.  The multistate class allegations "create a clear, material conflict of law[]."  *Id.*

*Second*, "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders[.]"  *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).  "[E]very state has an interest in

1  having its law applied to its resident claimants." *Mazza*, 666 F.3d at 591-92

2  (citation omitted); *Conde v. Sensa*, No. 14-cv-51 JLS WVG, 2018 WL 4297056, at

3  *13 (S.D. Cal. Sept. 10, 2018) (Sammartino, J.) ("'[E]ach state has an interest in

4  setting the appropriate level of liability for companies conducting business within

5  its territory.'") (quoting *Mazza*, 666 F.3d at 592)).  This Court held it is "clear that

6  foreign jurisdictions have strong interests in seeing their particular legislative

7  decisions regarding *Illinois Brick* honored." *PSP II*, 242 F. Supp. 3d at 1067.

8  California permits class action indirect-purchaser recovery; South Carolina does

9  not.  The statutory schemes present a "true conflict." *See Mazza*, 666 F.3d at 589-

10  90.

11          *Third*, the Court dismissed EPPs' multistate class claim because it included

12  plaintiffs "in states without legislation or interpretation permitting indirect-

13  purchaser recovery." *PSP II*, 242 F. Supp. 3d at 1068.  In states such as South

14  Carolina, "such choices evince a policy judgment . . . that should not be cast

15  aside." *Id.*  Including Plaintiffs from South Carolina is fatal to any multistate class

16  brought under the California Cartwright Act.  Both CFPs' and EPPs' Classes

17  therefore fail as a matter of law.  To the extent CFPs alternatively seek to proceed

18  as a smaller class encompassing only ten states (CFP Fourth Am. Compl. ¶ 158,

19  n.11), this class also fails because it similarly includes South Carolina.

20
   **D.    DAP Flowers' South Carolina Antitrust Act Claim Fails as a
21          Matter of Law**

22          Flowers's South Carolina Antitrust Act ("SCAA") claim (S.C. Code Ann.

23  §§ 39-3-10—39-3-40) fails because the SCAA applies only to *intrastate*

24  commerce. *See State v. Virginia-Carolina Chem. Co.*, 51 S.E. 455, 461 (S.C.

25  1905) (holding that South Carolina antitrust law cannot regulate imported goods);

26  *Three J Farms, Inc. v. Alton Box Bd. Co.*, No. 78-1257, 1978 WL 1459, at *6

27  (D.S.C. 1978), *rev'd on other grounds*, 609 F.2d 112 (4th Cir. 1979), *cert. den.*,

28  445 U.S. 911(1980) (application of section SCAA § 39-3-10 "was limited many

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1 years ago to exclude activities having an effect on interstate commerce"); *In re*

2 *Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 84 (E.D.N.Y. 1980) ("South

3 Carolina's Supreme Court has held that section 39-3-10 does not apply to activities

4 which are primarily interstate in nature.").

5 Flowers affirmatively admits that "Defendants . . . imported canned tuna for

6 sale in South Carolina from outside of state of South Carolina." Third Am. Compl.

7 at ¶ 44(e), *W. Lee Flowers & Co., Inc. v. Bumble Fee Foods, LLC et al.*, Oct. 5,

8 2018 (ECF No. 1432). This statement disposes of the issue concerning whether

9 Flowers may maintain a SCAA claim against Defendants. Indeed *all* of Flowers'

10 purchases of Defendants' packaged tuna consist solely of products manufactured

11 outside of South Carolina that are then shipped into the state. *See* Separate

12 Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Partial Summ.

13 J. on Certain State Law Claims ¶¶ 1-11. Defendants do not have any

14 manufacturing operations within South Carolina. *Id.* ¶¶ 4-6. And Flowers has not

15 adduced any evidence suggesting that Defendants' packaged tuna products

16 travelled only within South Carolina, as the SCAA requires. *Id.* ¶¶ 7-9. The

17 analysis in *In re Wiring Device* is instructive:

18 > The sole connection between the defendants and South
   > Carolina is that an insignificant portion approximately one
19 > percent of the wiring devices which they have
   > manufactured outside the state has been imported into the
20 > state. Thus, each defendant's activities in South Carolina
   > involve nothing more than "soliciting, cultivating and
21 > supervising its interstate business." This circumstance is
   > not sufficient to invoke the application of section 39-3-10.
22 > The well-established South Carolina rule that wholly
   > interstate activity is outside the scope of that section must
23 > be applied. Under Erie, the suit must be dismissed because
   > of the interstate nature of the commerce providing the
24 > foundation for the complaint.

25 498 F. Supp. at 85. Likewise, Flowers' SCAA claim is "primarily interstate in

26 nature," and therefore should be dismissed. *Id.* at 84.

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

### E.  DAPs AWG and AFMC Are Not Entitled to Prejudgment Interest

AWG and AFMC's expert Dr. Colin A. Carter purports to calculate prejudgment interest, citing Kansas Statute Annotated § 16-201.  Decl. of Keith L. Williams in Supp. of Defs.' Mot. for Partial Summ. J on Certain State Law Claims, Ex. 1 (Report of Dr. Colin A. Carter, *Associated Wholesale Grocers, Inc. v. Bumble Bee Foods, LLC, et al.*, S.D. Cal., 15-md-2670, Feb. 18, 2019 (hereinafter, "Carter AWG Report")), at ¶ 315 n.475; *id.* Ex. 2 (Addendum to Report of Dr. Colin A. Carter, *Affiliated Foods Midwest Cooperative v. Bumble Bee Foods LLC, et al.*,[3] 15-md-2670, Mar. 1, 2019 (hereinafter, "Carter AFMC Addendum")), at ¶ 45 n.19.  But prejudgment interest is not available to AWG or AFMC.

*First*, AFMC may not recover prejudgment interest under Kansas law because it asserts a claim under federal law only.  *See infra* n.3. "[P]rejudgment interest is a substantive aspect of a plaintiff's claim, rather than a merely procedural mechanism."  *In re Exxon Valdez*, 484 F.3d 1098, 1101 (9th Cir. 2007). "[S]tate law governs the applicability of prejudgment interest on all state law claims and federal law governs the applicability of prejudgment interest on all federal claims."  *Cyclone USA, Inc. v. LL & C Dealer Servs., LLC*, No. CV 03-992 AJW, 2010 WL 2132378, at *1 (C.D. Cal. May 24, 2010) (citing *In re Exxon Valdez*, 484 F.3d at 1101).  The Clayton Act—the sole basis under which AFMC seeks damages in this case (*see* Fourth Consol. Am. Compl. at ¶ 8, *Affiliated Foods*

---

[3] The title to the Carter AFMC Addendum is confusing.  There is no case captioned "*Affiliated Foods Midwest Cooperative v. Bumble Bee Foods LLC*."  Rather, AFMC is among 29 DAPs who asserted a single violation of the Sherman Act through a complaint captioned *Affiliated Foods, Inc. v. Tri-Union Seafoods, LLC, et al.* Fourth Consol. Am. Compl., Oct. 5, 2018 (ECF No. 1433) (asserting a single violation of Section 1 of the Sherman Act and asserting no claims under Kansas state law).  Defendants understand from AWG's counsel that AFMC has since assigned its interests in this action to AWG.  At no time has AFMC (or AWG as an assignee of AFMC's claims) amended its claims to include a violation of Kansas state law.  As such, AFMC's claims are limited to a single count of violation of the Sherman Act.  *See id.*; Second Am. Compl., *Associated Wholesale Grocers, Inc. v. Bumble Bee Foods, LLC et al.*, Oct. 5, 2018 (ECF No. 1437) (asserting claims on behalf of AWG only and not AFMC in its own right or as assignor to AWG).

1   *Inc. et al. v. Tri-Union Seafoods LLC, et al.*, Oct. 5, 2018 (ECF No. 1433))—

2   precludes an award of prejudgment interest unless counsel engaged in bad faith or

3   dilatory behavior.  *See* 15 U.S.C. § 15(a); *see also* Phillip E. Areeda & Herbert

4   Hovenkamp, ANTITRUST LAW:  AN ANALYSIS OF ANTITRUST PRINCIPLES AND THEIR

5   APPLICATION ¶ 393a. (4th ed. 2018) ("Federal antitrust law has never permitted an

6   award of pre-judgment interest.") (footnote omitted).  Absent a showing that

7   Defendants' counsel displayed behavior that unreasonably delayed proceedings,

8   AFMC is not entitled to prejudgment interest—in any form—on its federal claim

9   for relief.

10        *Second*, under Kansas state law, prejudgment interest does not apply to

11   unliquidated claims such as purported antitrust damages.  Specifically, "[c]reditors

12   shall be allowed to receive interest at the rate of ten percent per annum, when no

13   other rate of interest is agreed upon, for any money after it becomes due[.]"  Kan.

14   Stat. Ann. § 16-201.  The general rule in Kansas is that prejudgment interest is

15   limited to *liquidated* claims only.  *See Green Constr. Co. v. Kan. Power & Light

16   Co.*, 1 F.3d 1005, 1010 (10th Cir. 1993); Kan. Stat. Ann. § 16-201.  "A claim

17   becomes liquidated when both the amount due and the date on which it is due are

18   *fixed* and *certain*, or when the same becomes *definitely ascertainable* by

19   mathematical computation."  *Kilner v. State Farm Mut. Auto. Ins. Co.*, 847 P.2d

20   1292, 1300 (Kan. 1993) (emphasis added) (citations omitted).  As the Kansas

21   Supreme Court held, until unliquidated claims for damages are liquidated—usually

22   by judgment—those claims do not accrue interest.  *Kearney v. Kan. Pub. Serv. Co.*,

23   665 P.2d 757, 769 (Kan. 1983); *Lightcap v. Mobil Oil Corp.*, 562 P.2d 1, 15

24   (Kan.), *cert denied*, 434 U.S. 876 (1977).

25        AWG's claims under Kansas state law are unliquidated because antitrust

26   damages—by their nature—are estimated, and consequently, the amount allegedly

27   due to AWG is not "fixed and certain."  *Kilner*, 847 P.2d at 1300.  Here, the parties

28   vigorously dispute any amount of damages owed.  Any amount of damages due is

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1  not "definitely ascertainable by mathematical computation." *Id.*  AWG's claims

2  for prejudgment interest are unliquidated and yield no interest until they become

3  liquidated.  *Kearney*, 665 P.2d at 769; *see also Green Constr.*, 1 F.3d at 1010;

4  *Royal Coll. Shop, Inc. v. N. Ins. Co. of N.Y.*, 895 F.2d 670, 675 (10th Cir. 1990).

5        This matter does not present any "unusual circumstances" that would justify

6  diverging from the general rule that prejudgment interest is not available on

7  unliquidated claims such as those brought by AWG.[4]  *Kearney*, 665 P.2d at 769.

8  Illustrating the distinction between liquidated and unliquidated claims for the

9  purposes of awarding prejudgment interest, in *Lightcap*, the Kansas Supreme Court

10  held that prejudgment interest was appropriate solely on the specific portion of

11  funds that defendant Mobil Oil Company ("Mobil") told the plaintiff royalty

12  owners would be placed in a "segregated account" for later payment.  562 P.2d at

13  15.  But the defendant Mobil retained and made use of specific and discernible

14  sums of money that it was aware belonged to the plaintiff and caused the plaintiff

15  to lose the use of that specific money.  *Id.*; *see also Fid. & Deposit Co. of Md. v.*

16  *Hartford Cas. Ins. Co.*, 216 F. Supp. 2d 1240, 1246 (D. Kan. 2002).  That is not the

17  case here, where the parties dispute the quantum of alleged overcharges.

18        AFMC (and AWG on behalf of AFMC) has not asserted any Kansas state

19  law claims and is not entitled to prejudgment interest under Kansas law.  AWG's

20  claim for prejudgment interest is barred by Kansas law, which does not provide for

21  prejudgment interest on unliquidated claims.

22  **III.   CONCLUSION**

23        Defendants respectfully request that the Court grant Defendants' motion for

24  partial summary judgment with respect to the state law claims set forth above.

25

26  [4] In Kansas, courts have discretion to award prejudgment interest on *unliquidated*
27  claims in special circumstances when:  (1) the defendant had use of the money; (2) the plaintiff has been deprived of the use of the money; and (3) an order is
28  necessary to award full compensation.  *Farmers State Bank v. Prod. Credit Ass'n of St. Cloud*, 755 P.2d 518, 528 (Kan. 1988) (citing *Lightcap*, 562 P.2d at 15-16).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1    DATED: September 19, 2019                    Respectfully submitted,

2                                                LATHAM & WATKINS LLP

3                                                By: s/ Ashley M. Bauer

4
                                                 Alfred C. Pfeiffer
5                                                Christopher S. Yates
6                                                Belinda S Lee
                                                 Niall E. Lynch
7                                                Ashley M. Bauer
8                                                LATHAM & WATKINS LLP
                                                 505 Montgomery Street
9                                                Suite 2000
10                                               San Francisco, CA 94111
                                                 Telephone: 415-391-0600
11                                               Facsimile: 415-395-8095
12                                               Email: al.pfeiffer@lw.com
                                                 Email: chris.yates@lw.com
13                                               Email: belinda.lee@lw.com
14                                               Email: niall.lynch@lw.com
                                                 Email: ashley.bauer@lw.com
15
16                                               *Counsel for Defendants StarKist Co. and*
                                                 *Dongwon Industries Co., Ltd.*
17

18

19                                               PAUL, WEISS, RIFKIND,
20                                               WHARTON & GARRISON LLP

21                                               By: s/ Joseph J. Bial
                                                 Kenneth A. Gallo
22                                               Joseph J. Bial
23                                               Craig A. Benson
                                                 2001 K Street, NW
24                                               Washington, DC 20006-1047
25                                               Telephone:  (202) 223-7356
                                                 Facsimile:  (202) 204-7356
26                                               kgallo@paulweiss.com
27                                               jbial@paulweiss.com
                                                 cbenson@paulweiss.com
28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19                    MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
                      PARTIAL SUMM. J. (STATE LAW CLAIMS)
                      Case No. 3:15-md-02670-JLS-MDD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

William B. Michael
1285 Avenue of the Americas
New York, NY 10019-6064
Telephone: 212-373-3648
Facsimile:  212-492-0648
wmichael@paulweiss.com

*Counsel for Defendant Bumble Bee
Foods, LLC*


ALLEN & OVERY LLP

By: s/ John Roberti
John Roberti
Kelse Moen
1101 New York Avenue N.W.
Washington, D.C. 20005
Telephone: (202) 683-3800
Facsimile: (202) 683-3999
john.roberti@allenovery.com
kelse.moen@allenovery.com

Joshua Shapiro
Brian Fitzpatrick
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
joshua.shapiro@allenovery.com
brian.fitzpatrick@allenovery.com

*Counsel for Defendants Tri-Union
Seafoods LLC d/b/a Chicken of the Sea
International and Thai Union Group
PCL*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

PEPPER HAMILTON LLP

By: s/ Barbara T. Sicalides
Barbara T. Sicalides
Barak A. Bassman
Megan Morley
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Telephone:  215-981-4783
Facsimile:  215-981-4750
sicalidesb@pepperlaw.com
bassmanb@pepperlaw.com
morleym@pepperlaw.com

*Counsel for Defendant Del Monte Corporation*


SULLIVAN & CROMWELL LLP

By: s/ Adam S. Paris
Adam S. Paris  (Cal. Bar No. 190693)
1888 Century Park East, Suite 2100
Los Angeles, CA 90067
Tel:  (310) 712-6600
Fax:  (310) 712-8800
parisa@sullcrom.com

*Counsel for Defendant Lion Capital (Americas), Inc. and Specially Appearing Defendants Lion Capital LLP and Big Catch Cayman LP*

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD

1
## SIGNATURE ATTESTATION

2       Under Section 2.F.4 of the Court's CM/ECF Administrative Policies, I hereby

3  certify that authorization for filing this document has been obtained from each of the

4  other signatories shown above, and that all signatories have authorized placement of

5  their electronic signature on this document.

6

7   Date:  September 19, 2019          By:  s/ Ashley M. Bauer

8                                          *Attorney for Defendants StarKist Co. and*
9                                          *Dongwon Industries Co., Ltd.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

MEM. OF P. & A. IN SUPP. OF DEFS.' MOT. FOR
PARTIAL SUMM. J. (STATE LAW CLAIMS)
Case No. 3:15-md-02670-JLS-MDD