*s/ Patrick Ahern*
Patrick Ahern
Theodore Bell
Ahern and Associates, P.C.
8 South Michigan Ave., Suite 3600
Chicago, IL 60603
(312) 404-3760
Patrick.j.ahern@ahernandassociatespc.com

*Counsel for Direct Action Plaintiff Winn-Dixie Stores, Inc.*
 [Additional Counsel Listed on Signature Page]

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACKAGED SEAFOOD ANTITRUST LITIGATION, | Case No.: 3:15-md-02670-JLS-MDD MDL No. 2670 |
| This document relates to: <br> • Direct Action Plaintiff Winn-Dixie Stores, Inc. <br> • Direct Action Plaintiff Associated Wholesale Grocers, Inc. <br> • Direct Action Plaintiff W. Lee Flowers & Co. | **PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST STARKIST CO.** <br><br> **[PUBLIC REDACTED VERSION]** <br><br> DATE:   [TBD] <br> TIME:   [TBD] <br> JUDGE:  JANIS L. SAMMARTINO <br> CTRM:   4D |

## TABLE OF CONTENTS

I.     STARKIST'S GUILTY PLEA AND ITS EFFECT IN THIS
       CASE……………………………………………………..   2

II.    STARKIST'S GUILTY PLEA HAS A COLLATERAL
       ESTOPPEL EFFECT IN THIS CASE……………………………   5

III.   STARKIST'S GUILTY PLEA IS PRIMA FACIE EVIDENCE
       THAT IT ENGAGED IN HORIZONTAL PRICE-FIXING IN
       VIOLATION OF SECTION
       1…………………………………………………...………..8

IV.    STARKIST ADMITTED IN SWORN INTERROGATORY
       RESPONSES TO PARTICIPATING IN THE CONSPIRACY……9

V.     THE RECORD EVIDENCE FURTHER SUPPORTS
       SUMMARY JUDGMENT AGAINST STARKIST…………………11

VI.    STARKIST'S ADMITTED PRICE-FIXING VIOLATES
       SECTION 1 OF THE SHERMAN ACT……………………………..13

VII.   STARKIST HAS NOT PRODUCED ANY EVIDENCE THAT IT
       WITHDREW FROM THE CONSPIRACY OR THAT IT
       TERMINATED IN DECEMBER 2013.…………………………..15

VIII.  STARKIST IS LIABLE FOR THE ACTS AND EFFECTS OF
       THE CONSPIRACY THAT OCCURRED BEFORE IT
       JOINED………………………………………………………...18

IX.    CONCLUSION…………………………………...…………………25

i

# TABLE OF AUTHORITIES

**Cases**

*Bradley v. Allstate Ins. Co.*, 620 F.3d 509, 527 (5th Cir. 2010) ...............................11

*Buchanan Cty., Virginia v. Blankenship*, 496 F. Supp. 2d 715, 720 (W.D.Va. 2007) ....................................................................................................................5

*Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643 (1980).................................1, 14

*Hui Hsiung*, 778 F.3d at 749 ..............................................................................2, 14

*In re Cathode Ray Tube (CRT) Antitrust Litig.*, 2013 WL 5391159 (N.D. Cal. Sept. 24, 2013)......................................................................................................13

*In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651 (7th Cir. 2002) .....13

*Leegin Creative Leather Prods. Inc. v. PSKS Inc.*, 551 U.S. 877 (2007)............1, 14

*Levine* ...................................................................................................................14

*N. Pac. Ry. Co. v. United States*, 356 U.S. 1 (1958)..........................................1, 14

*Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.,* 468 U.S. 85 (1984) .................................................................................................................14

*Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911, 912 (2008)...................12

*Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284(1985) ........................................................................................................1, 14

*United States v. Socony-Vacuum Oil Co. Inc.*, 310 U.S. 150(1940) ...................1, 14

*United States v. StarKist Co., U.S.D.C. Northern District of California*, Case No. 18 CR 513.........................................................................................................3, 8

*United States v. StarKist Company*, No. 18-cr-00513 EMC (N.D. Cal. Nov. 14, 2018)......................................................................................................................5

Plaintiffs' motion for partial summary judgment under Section 1 of the Sherman Act against StarKist should be granted for two reasons. First, StarKist pleaded guilty to horizontal price-fixing of packaged tuna in violation of Section 1 "beginning at least as early as November 2011 and continuing through at least as late as December 2013" (the "plea period"). As seen below, its guilty plea is prima facie evidence of a violation of Section 1 and also has a collateral estoppel effect which establishes that StarKist engaged in price-fixing with its competitors during the plea period, an issue that StarKist may not relitigate in this case. In addition, its guilty plea constitutes an admission under oath by StarKist that it engaged in price-fixing with its competitors in violation of Section 1 during the plea period. Finally, this Court should grant Plaintiffs summary judgment on the issue of StarKist's participation in the conspiracy from January 2014 through July 2015, and on StarKist's liability for the conspiracy prior to November 2011.

Second, a conspiracy to engage in a horizontal price-fixing is a *per se* violation of Section 1.[1] Certain categories of agreements have been held to be *per se* illegal, because they "would always or almost always tend to restrict competition and decrease output."[2] Horizontal price-fixing falls into this category.[3] Finally, the Ninth

---

[1] *See, e.g.*, *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958) (horizontal price-fixing agreements are "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use"); *Leegin Creative Leather Prods. Inc. v. PSKS Inc.,* 551 U.S. 877, 886 (2007) ("Restraints that are per se unlawful include horizontal agreements among competitors to fix prices.").

[2] *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289-90(1985).

[3] *United States v. Socony-Vacuum Oil Co. Inc.*, 310 U.S. 150, 213 (1940). *See also Catalano, Inc. v. Target Sales, Inc*., 446 U.S. 643, 647 (1980) ("'[A] combination

1

Circuit recently reiterated that the Supreme Court's "directive … is unequivocal: A horizontal cartel among compet[itors] that decreases output or reduces competition in order to increase price is, and ought to be, *per se* unlawful."[4] Thus, StarKist's agreement with its competitors to fix the prices of packaged tuna violates Section 1 of the Sherman Act under the *per se* standard.  Therefore, Plaintiffs' motion for partial summary judgment should be granted.

## I.   STARKIST'S GUILTY PLEA AND ITS EFFECT IN THIS CASE

StarKist pleaded guilty to horizontal price-fixing of packaged tuna in violation of Section 1 of the Sherman Act from "beginning at least as early as November 2011 and continuing through at least as late as December 2013." The plea agreement provides in pertinent part:

> 4. ***The defendant, through its corporate representatives***, has fully discussed the facts of this case with defense counsel and ***admits that the following facts are true and undisputed***:
>
> (a) For purposes of this Plea Agreement, the "relevant period" is that period beginning at least as early as November 2011 and continuing through at least as late as December 2013. During the relevant period, the defendant was a corporation organized and existing under the laws of Delaware. The defendant had its principal place of business in Pittsburgh, Pennsylvania. During the relevant period, the defendant was a producer of packaged seafood, was engaged in the sale of packaged seafood in the United States, and employed *50* or more individuals. For purposes of this Plea Agreement, packaged seafood consists of canned tuna fish. During the relevant period, the defendant's sales of packaged seafood affecting U.S. customers totaled at least $600 million.

---

formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate … commerce is illegal *per se*.'").

[4] *United States v. Hui Hsiung*, 778 F.3d 738, 749 (9th Cir. 2015)(scheme to raise price of LCD panels was subject to per se analysis under the Sherman Act).

(b) During the relevant period, the defendant, through its officers and employees, including high-level personnel of the defendant, participated in a conspiracy among major packaged-seafood-producing firms, the primary purpose of which was to fix, raise, and maintain the prices of packaged seafood sold in the United States. In furtherance of the conspiracy, the defendant, through its officers and employees, engaged in conversations and discussions and attended meetings with representatives of other major packaged-seafood-producing firms. During these conversations, discussions, and meetings, agreements and mutual understandings were reached to fix, raise, and maintain the prices of packaged seafood sold in the United States. Defendant, through its officers and employees, negotiated prices with customers and issued price announcements for packaged seafood in accordance with the agreements and mutual understandings reached.

(c) During the relevant period, packaged seafood sold by one or more of the conspirator firms, and equipment and supplies necessary to the production and distribution of packaged seafood, as well as payments for packaged seafood, traveled in interstate commerce. The business activities of the defendant and its coconspirators in connection with the production and sale of packaged seafood that was the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce.[5]

Thus, pursuant to the plea agreement, StarKist admitted that it engaged in price-fixing of packaged tuna with its competitors in violation of Section 1 of the Sherman Act during the plea period.

In addition, at the plea hearing, StarKist agreed to the facts stated on the record by the DOJ, as follows:

**THE COURT:** All right. Could you state the elements of the charge that need to be legally proved here?

---

[5] Plea Agreement, *United States v. StarKist Co.*, U.S.D.C. Northern District of California, Case No. 18 CR 513, November 14, 2018, at pp. 3-4 (emphasis added).

**MS. WULFF:** The United States would prove beyond a reasonable doubt the existence of the charged conspiracy, that the defendant knowingly participated in that conspiracy, and that the conspiracy substantially affected interstate commerce.

**THE COURT:** All right. Now, Mr. Meece, you have reviewed the agreement, including Paragraph 4, which sets forth the factual basis for the charged offense. Can you tell me whether -- can you affirm that all of those facts are true and accurate?

**MR. MEECE:** Yes. I have reviewed the agreement. And I confirm that, Your Honor.

**THE COURT:** All right. **Counsel**, could you give just a brief summary of the main points so we can verbalize that, and Mr. Meece can confirm.

**MS. WULFF:** Sure, Your Honor. The relevant period is the period beginning at least as **early** as November of 2011, and continuing through at least as late as December of 2013. During this time period, defendant was a corporation organized and existing under the laws of the State of Delaware, with the principal place of business in Pittsburgh, Pennsylvania. Defendant was a producer of packaged seafood, and was engaged in the sale of packaged seafood. Defendant employed 50 or more individuals. And "packaged seafood" in this instance consists of canned tuna fish.

And during the relevant time period, defendant's sales of packaged seafood totaled at least $600 million. Defendant, through its officers and employees, including high-level personnel, participated in a conspiracy among major packaged seafood-producing firms. And in furtherance of that conspiracy, defendant engaged in conversations and discussions and attended meetings.

**THE COURT:** And the purpose of that conspiracy was to fix prices?

**MS. WULFF:** Yes, Your Honor, was to fix prices. And the packaged seafood that was the subject of that agreement traveled in interstate commerce.

**THE COURT:** *Are all those facts* true, *Mr. Meece?*

**MR. MEECE:** *Yes, Your Honor.*

**THE COURT:** All right. Then I find that there is a factual basis for the plea in this matter, that the elements necessary to support a conviction under -- is it the sole count or is it Count 1 of the information? Sole count of the information?

**MS. WULFF:** Sole count of the information.

**THE COURT:** -- sole count of the information have been satisfied, that the defendant understands its rights, knowingly waives those, rights and knowingly and intelligently can enter a guilty plea, and that the plea agreement has been signed by an authorized representative.

And so why don't we go ahead and take the plea.

Mr. Meece, on behalf of StarKist, how do you plead to the sole count of the information charging StarKist with the violation of Section 1 of the Sherman Antitrust Act? Guilty or not guilty?

**MR. MEECE:** *Guilty, Your Honor.*

**THE COURT:** All right. A guilty plea will be recorded.[6]

Thus, at the plea hearing, StarKist admitted that it engaged in price-fixing of packaged tuna with its competitors in violation of Section 1 of the Sherman Act during the plea period. Finally, as seen below, StarKist's plea collaterally estops StarKist from denying such conduct in this case and relitigating that issue here, and StarKist's statements at the plea hearing constitute binding admissions in this case.[7]

## II.   STARKIST'S GUILTY PLEA HAS A COLLATERAL ESTOPPEL EFFECT IN THIS CASE.

---

[6] Transcript of Proceedings, ECF No. 26 in *United States v. StarKist Company,* No. 18-cr-00513 EMC (N.D. Cal. Nov. 14, 2018) at 13-14 (emphasis added).

[7] *Buchanan Cty., Virginia v. Blankenship*, 496 F. Supp. 2d 715, 720 (W.D.Va. 2007) (a court may look to "facts presented by the government during a Rule 11 hearing").

StarKist's guilty plea has a collateral estoppel effect in this case which establishes as a matter of law that StarKist engaged in price-fixing with its competitors during the plea period. The Clayton Act provides that any final judgment or decree rendered in a criminal proceeding "brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant" in any subsequent civil proceedings "as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto." 15 U.S.C. § 16(a). Moreover, the Act expressly states that "[n]othing contained in this section shall be construed to impose any limitation on the application of collateral estoppel." *Id.* "[I]t is settled law in [the Ninth Circuit] that a guilty plea may be used to establish issue preclusion in a subsequent civil suit." *U.S. v. Real Property Located at Section 18*, 976 F.2d 515, 519 (9th Cir. 1992). The Ninth Circuit has set forth the following factors to establish issue preclusion:

1) The prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges;
2) There must have been a full and fair criminal proceeding to prevent convictions of dubious validity from being used;
3) The issue on which the prior conviction is offered must of necessity have been decided at the criminal trial;
4) The party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial.

Prongs one, two, and four are generally not subject to dispute in civil antitrust cases following guilty pleas. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2017 WL 6041723, at *5 (N.D. Cal. 2017). In addition, a violation of Section 1 Sherman Act is a felony and carries up to ten years of jail time for individuals and up to $100 million fines for corporations, 15 U.S.C. § 1 et seq., satisfying prong one. StarKist pleaded guilty to a one-count violation of Section 1 of the Sherman Act and agreed to pay a fine of

$100 million. Thus, the offense to which StarKist pleaded guilty was a serious offense that StarKist was motivated to fully litigate. *Real Property*, 976 F.2d at 518 ("no dispute" that the offense, which was a felony, was a serious one).

For prong two, there is no contention that the plea agreements are not valid. *Id.* at 518 ("guilty plea admitted the truth of all of the elements charged in the offense, and thus established the validity of those facts for purposes of collateral estoppel"). Moreover, guilty pleas qualify as final judgments under the Act: "[t]he criminal judgments … followed from… guilty pleas …."" *In re Capacitors Antitrust Litig.* (No. III), No. 14-CV-03264-JD, 2018 WL 5980139, at *8 (N.D. Cal. Nov. 14, 2018)(relying on prior antitrust criminal guilty pleas in subsequent civil antitrust action); *see also City of Burbank v. Gen. Elec. Co.*, 329 F.2d 825, 834 (9th Cir. 1964). Courts have long held that private litigants can rely on final judgments in government cases in subsequent antitrust civil lawsuits. *Eagle Lion Studios, Inc v. Loew's, Inc*, 248 F.2d 438, 442 (2d Cir. 1957)("A government (anti-trust) suit … if successful, also accrues to the immediate benefit of these injured by the wrongful conduct")*, quoting T. C. Theatre Corp. v. Warner Bros. Pictures*, 113 F. Supp. 265, 269 (S.D.N.Y. 1953). Thus, StarKist's guilty plea qualifies as a final judgment. For prong four, Defendant StarKist Company is the same entity that pleaded guilty.

For prong three, the party asserting collateral estoppel "must show that the estopped issue is identical to an issue actually litigated and decided in the previous action." *Pool Water Prods. V. Olin Corp.*, 258 F.3d 1024, 1031 (9th Cir. 2001). Where a "guilty plea admitted the truth of all the elements charged in the offense," it "thus established the validity of those facts for purposes of collateral estoppel[.]" *Real Property*, 972 F.2d at 518. Here, it cannot be disputed that the issue on which Plaintiffs seek to establish collateral estoppel – the fact of StarKist's price-

fixing with its competitors – was the explicit issue stated in its guilty plea. Specifically, StarKist admitted the following:

- StarKist participated in "a conspiracy among major packaged-seafood-producing firms, the primary purpose of which was to fix, raise, and maintain the prices of packaged seafood sold in the United States";

- StarKist communicated with its competitors "in furtherance of the conspiracy" and reached "agreements and mutual understandings . . . to fix, raise, and maintain the prices of packaged seafood sold in the United States";

- StarKist, through its officers and employees, negotiated prices with customers and issued price announcements for packaged seafood in accordance with the agreements and mutual understandings reached.; and

- "The business activities of the defendant . . . that were the subject of this conspiracy were within the flow of, and substantially affected, interstate trade and commerce."[8]

Therefore, StarKist's guilty plea has a collateral estoppel effect in this case and StarKist is collaterally estopped from denying or relitigating the fact that it engaged in price-fixing of packaged tuna with its competitors in violation of Section 1 of the Sherman Act during the plea period.

## III. STARKIST'S GUILTY PLEA IS PRIMA FACIE EVIDENCE THAT IT ENGAGED IN HORIZONTAL PRICE-FIXING IN VIOLATION OF SECTION 1.

---

[8] Plea Agreement, *United States v. StarKist Co.*, U.S.D.C. Northern District of California, Case No. 18 CR 513, November 14, 2018, at pp. 3-4.

Even if collateral estoppel does not apply, Plaintiffs are still entitled to partial summary judgment on StarKist's liability for the plea period because its guilty plea is prima facie evidence establishing its liability and there is no evidence creating an issue of fact with respect to its liability during the guilty plea period. As set forth above, the admissions and findings from the criminal proceeding are prima facie evidence that StarKist engaged in horizontal price-fixing of shelf stable packaged tuna during the plea period. *See* 15 U.S.C. § 16(a). In light of those admissions and findings in the criminal proceedings, Plaintiffs have established a prima facie case against StarKist regarding its participation in the conspiracy. As explained in *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 570–71 (1951)(emphasis added):

> We are, therefore, of opinion that the criminal judgment was prima facie evidence of the general conspiracy for the purpose of monopolizing the financing of General Motors cars, and also of its effectuation by coercing General Motors dealers to use GMAC. **To establish their prima facie case it therefore was necessary for petitioners only to introduce, in addition to the criminal judgment, evidence of the impact of the conspiracy on them, such as the cancellation of their franchises and the purpose of General Motors in cancelling them, and evidence of any resulting damages.**

The same principle applies here. While StarKist's criminal conviction does not, by itself, establish impact from the conspiracy, it does establish that StarKist engaged in horizontal price-fixing of packaged tuna during the plea period, and that this conduct occurred in interstate commerce. Because StarKist cannot point to any evidence that creates a question of fact on these issues, the Court should enter partial summary judgment against StarKist for the period covered by its guilty plea.

## IV.   STARKIST ADMITTED IN SWORN INTERROGATORY RESPONSES TO PARTICIPATING IN THE CONSPIRACY.

Summary judgment is proper "if the pleadings, depositions, *answers to interrogatories*, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(c) (emphasis added); *see also Celotex v. Cartrett*, 477 U.S. 317, 324 (1986) ("a summary judgment motion may properly made in reliance solely on the "answers to interrogatories, and admissions on file"); *Daimler AG v. A-Z Wheels, LLC, d/b/a USArim.com, et al.*, 334 F. Supp. 3d 1087, 1094 (S.D. Cal. 2018) (summary judgment may be won "by identifying the portions of…answers to interrogatories…that show an absence of dispute regarding a material fact"). In its sworn responses to interrogatories, StarKist admitted that it:

> "participated in … agreements with Bumble Bee and Chicken of the Sea during the time period between November 2011 and December 2013[,]" including "two 2012 StarKist list price announcements relating to certain canned tuna products through a series of bilateral communications with executives at Bumble Bee and Chicken of the Sea that occurred in the first half of 2012. StarKist issued two national list prices during the relevant period (on January 13, 2012, and April 26, 2012)."[9]

StarKist's interrogatory responses constitute the very type of evidence upon which courts rely to grant summary judgment. "Interrogatory responses are admissible for summary judgment purposes;" where a plaintiff signed the answers and has never amended the response to interrogatory, that "concession is accepted as the truth and thus no genuine dispute of material fact exists on the question.'"

---

[9] SOF ¶ 34, StarKist Co.'s Third Supplemental Objections & Responses to Plaintiffs' Second Set of Interrogatories, Interrogatory No. 1, dated January 30, 2019, verified under penalty of perjury, February 7, 2019 by its General Counsel R. Scott Meece; *see also* SOF ¶¶ 30-33.

*Valentich v. United States*, 194 F. Supp. 3d 1033, 1036, 1037 (E.D. Cal. 2016).[10] Moreover, in moving for summary judgment, a party may rely alone on information it had received in responses to interrogatories. *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 658 (N.D. Cal. 1994) *see also City of Carlsbad v. Shah*, 666 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009)(granting summary judgment for plaintiff based on defendant's interrogatory responses in unfair competition action); *Robinson v. G.D. Searle & Co.*, 286 F. Supp. 2d 1216, 1221 (N.D. Cal. 2003)(granting summary judgment for defendant based on plaintiff's interrogatory responses). Finally, StarKist provided interrogatory responses, sworn under penalty of perjury by its general counsel, and has not amended its responses to withdraw its admissions or indicated they were in error.  Therefore, this Court is entitled to rely on the interrogatory responses, along with StarKist's guilty plea, as undisputed evidence of the conspiracy.

## V.   THE RECORD EVIDENCE FURTHER SUPPORTS SUMMARY JUDGMENT AGAINST STARKIST.

The record evidence further supports summary judgment against StarKist for the period from at least as early as 2011 through at least as late as 2013.  For example, individuals directly implicated by StarKist's admission have pleaded guilty to participating in the same conspiracy, including Steve Hodge (StarKist's Senior VP of Sales), Scott Cameron (Senior VP of Sales for Bumble Bee ("BB"), and Ken Worsham (BB's Senior VP of Trade Marketing).[11] ███████████████████

████████████████████████████████████████

---

[10] *Bradley v. Allstate Ins. Co.,* 620 F.3d 509, 527 (5th Cir. 2010)(affirming grant of summary judgment based upon "concessions in [] interrogatory responses" and failure to advance Rule 56(c) proof).

[11] SOF ¶ 35-37, Ex. 350 (Scott Cameron Amended Plea Agreement); Ex. 391 (Ken Worsham Plea Agreement); Ex. 1221 (Steve Hodge Plea Agreement).

[12] District courts in the Ninth Circuit have discretion to draw adverse inferences from

1

2

3

4

5   Furthermore, Mike White of Chicken of the Sea ("COS") testified about the

6   2011 price increase that:



22   ...

23

24   a party's assertion of the privilege against self-incrimination in civil cases where the
25   party refuses to testify. *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911,
     912 (2008). The invoking witness's employer may also be charged with the
26   inference.
27   [13] Scott Cameron Dep., *passim*; Ken Worsham Dep., *passim*; Steve Hodge Dep.
     *passim*.
28   [14] Charles Handford Dep. *passim*; Dan Gerlach Dep. *passim*.

Q And what about Bumble Bee, who did you talk to at Bumble Bee?

THE WITNESS: Don George and Ken Worsham.[15]

Therefore, the record evidence establishes that StarKist engaged in price-fixing with its competitors from at least as early as 2011 through at least as late as 2013.

## VI.   STARKIST'S ADMITTED PRICE-FIXING VIOLATES SECTION 1 OF THE SHERMAN ACT.

StarKist's guilty plea and admissions conclusively establish, as a matter of law, that it engaged in price-fixing during the plea period. Section 1 provides in relevant part that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce … is declared to be illegal."[16] To establish a violation of Section 1, a plaintiff must show: (1) a conspiracy to reduce output in violation of the antitrust laws; (2) an antitrust injury – *i.e.*, the impact of the defendants' unlawful activity; and (3) damages caused by the antitrust violations.[17] Plaintiffs' motion focuses on the first element.

If a plaintiff can demonstrate a conspiracy directly through admissions by the defendant competitors that they agreed to fix prices; that is all the proof a plaintiff needs.[18]   A conspiracy to engage in a horizontal price-fixing is a *per se* violation of

---

[15] SOF ¶ 28, Mike White Dep. at 119:22 –122:8.

[16] 15 U.S.C. § 1.

[17] *In re Cathode Ray* Tube *(CRT) Antitrust Litig.,* 2013 WL 5391159, at *3 (N.D. Cal. 2013).

[18] *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 654 (7th Cir. 2002).

Section 1.[19] As the Supreme Court has explained, certain categories of agreements have been held to be *per se* illegal, because they "would always or almost always tend to restrict competition and decrease output."[20] Horizontal price-fixing falls into this category.[21] Indeed, the Court emphasized that "[r]estrictions on price and output are the paradigmatic examples of restraints of trade that the Sherman Act was intended to prohibit." [22] Finally, the Ninth Circuit recently reiterated that the Supreme Court's "directive … is unequivocal: A horizontal cartel among compet[itors] that decreases output or reduces competition in order to increase price is, and ought to be, *per se* unlawful."[23]  Therefore, based on its guilty plea and its admissions at the plea hearing, StarKist committed a per se violation of Section 1 of the Sherman Act.

---

[19] *See, e.g.*, *N. Pac. Ry. Co. v. United States*, 356 U.S. 1, 5 (1958) (horizontal price-fixing agreements are "conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use"); *Leegin Creative Leather Prods. Inc. v. PSKS Inc.,* 551 U.S. 877, 886 (2007) ("Restraints that are per se unlawful include horizontal agreements among competitors to fix prices.").

[20] *Nw. Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.*, 472 U.S. 284, 289-90(1985).

[21] *United States v. Socony-Vacuum Oil Co. Inc.*, 310 U.S. 150, 213 (1940). *See also Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 647 (1980) ("'[A] combination formed for the purpose and with the effect of raising, depressing, fixing, pegging, or stabilizing the price of a commodity in interstate … commerce is illegal *per se*.'").

[22] *Nat'l Collegiate Athletic Ass'n v. Bd. of Regents of Univ. of Okla.*, 468 U.S. 85, 107-08 (1984).

[23] *Hui Hsiung*, 778 F.3d at 749 (scheme to raise price of LCD panels was subject to per se analysis under the Sherman Act).

## VII. STARKIST HAS NOT PRODUCED ANY EVIDENCE THAT IT WITHDREW FROM THE CONSPIRACY OR THAT IT TERMINATED IN DECEMBER 2013.

Through its guilty plea, StarKist's participation in the price-fixing conspiracy is established through at least December 2013. Based on that, it is StarKist's burden to demonstrate that the conspiracy ended prior to July 2015, when the DOJ investigation began. Since StarKist cannot do so, Plaintiffs are entitled to partial summary judgment for StarKist's liability during the period between January 2014 and July 2015.

Once a conspiracy is established and that a party participated in it, the law presumes that the conspiracy continues until it is demonstrated that either the conspiracy was terminated or the party withdrew from it. *United States v. Jimenez Recio*, 537 U.S. 270, 274 (2003) (a conspiracy "is presumed to continue until there is affirmative evidence of abandonment, withdrawal, [or] disavowal"); *see also United States v. Inryco*, 642 F.2d 290, 293 (9th Cir. 1981) (a conspiracy "remains actionable until its purpose has been achieved or abandoned"). A party cannot point to "[p]assive nonparticipation in the continuing scheme" to "sever the meeting of the minds that constitutes the conspiracy." *Smith v. U.S.*, 568 U.S. 106, 112-13 (2013). Rather, to show withdrawal, a party must show, "[a]t a minimum," that it took "'[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators.'" *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 820 F. Supp. 2d 1055, 1060 (N.D.Cal. 2011) (quoting *U.S. v. Gypsum Co.*, 438 U.S., 422, 464-65 (1978)). Specifically, "'the defendant must prove that he undertook affirmative steps . . . *to disavow or defeat the conspiratorial objectives*, and either communicated those acts in a manner reasonably calculated to reach his co-conspirators or disclosed the illegal scheme to

law enforcement authorities.'" *Id.* (quoting *United States v. Finestone*, 816 F.2d 583, 589 (11th Cir. 1987)).

In *Winn-Dixie Stores, Inc. v. Southeast Milk, Inc., et al.,* Civil Action No. 15-cv-1143, slip op. (M.D. Fla. January 16, 2019), the court held that the defendants had not put forth any evidence of withdrawal and, by contrast, plaintiffs had put forth evidence that the higher prices from the conspiracy continued:

> Here, however, there is no evidence to support that Defendants affirmatively and completely disassociated themselves from the continued operation of the conspiracy involving increased milk prices caused by the HRP. Rather, Plaintiff provides evidence to support that the milk prices continued to increase after the 2010 herd retirement. Additionally … there is no evidence that Defendants made reasonable efforts to communicate the conclusion of [the conspiracy], or that Plaintiff knew or should have known that [the conspiracy] was going to conclude …."

*Id.* at p. 11. Here, there is no evidence that StarKist ceased its participation in the conspiracy after 2013.  In addition, there is no evidence that the higher prices that occurred as a result of the conspiratorial conduct from 2011-2013 changed or abated in any way.  By contrast, Plaintiffs have put forth expert analysis and testimony that the higher prices did not change.[24] Moreover, SK did not change the can size back to 6 oz. from 5 oz. Furthermore, there is no evidence that the agreement not to compete aggressively with respect to promotions ceased or was altered in any way. Finally, there is no evidence that SK communicated to Plaintiffs or to the public that it had ceased its participation in the conspiracy.  Thus, based on the above, this Court should grant summary judgment in Plaintiffs' favor on the issue whether the conspiracy continued after 2013 and until July 2015, as well as StarKist's participation in it.

---

[24] *See, e.g.*, Macartney Expert Report ¶ 128, p.86.

Furthermore, ample evidence demonstrates that the conspiracy continued until July 2015. ████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████

Furthermore, the same individuals who colluded on pricing between 2011 and 2013 continued to communicate between January 2014 and July 2015.  For example,

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████

Moreover, while StarKist's guilty plea does not have preclusive effect after December 2013, it "is still extremely probative" of its continued participation in the conspiracy, such that summary judgment is appropriate. *S.E.C. v. Hilsenrath*, 2008 WL 2225709, at *4-*5 (N.D. Cal. 2008), *aff'd*, 406 F. App'x 197 (9th Cir. 2010) (granting summary judgment for conduct committed after period covered by guilty plea).  In *Hilsenrath*, the defendant pled guilty to a number of securities fraud

---

[25] *See* SOF ¶ 50.
[26] SOF ¶ 42, Ex. 1740E.
[27] SOF ¶ 46, Hubert Tucker Dep. at 132—135; Ex. 1402.  *See also* Phone Chart (reflecting calls between Tucker and Cameron and Tucker on the same day that Tucker reported information about BB's pricing plans for Kroger, Delhaize, and Supervalu).

violations for the period between August 1997 and March 1998. However, the record in the civil proceedings demonstrated that the conduct underlying the criminal conviction continued through January 2000. Based on this, the Court determined that the plaintiff met its initial burdens of production and persuasion under Rule 56, which shifted the burden to the defendant to demonstrate that there were material facts in dispute. Because the defendant could not meet this burden, the Court entered summary judgment in favor of the plaintiff for the entire time period from August 1997 through January 2000. As the Court explained:

> The plea agreement constituted admissions that Hilsenrath acted with scienter when he made the earlier misleading statements of material fact from August 1997 through March 1998. Considering that Hilsenrath possessed the requisite scienter at least through March 1998 and he engaged in the same conduct through January 2000, this order finds that the SEC has met its initial burden in showing that he committed these acts with scienter through January 2000. The burden now shifts to Hilsenrath to provide evidence that there is a genuine issue for trial. He has not done so. Summary judgment is therefore granted on this claim.

*Hilsenrath, 2008 WL 2225709, at *5.* Based on StarKist's guilty plea and the evidence that the conduct continued past the plea period, summary judgment should be entered in Plaintiffs' favor for the period from January 2014 through July 2015 under *Hilsenrath*. Finally, most importantly, there is no evidence of an effective withdrawal by StarKist or the termination of the conspiracy.[28] Therefore, summary judgment should be granted in Plaintiffs' favor and against StarKist for the period from January 2014 through July 2015.

## VIII. STARKIST IS LIABLE FOR THE ACTS AND EFFECTS OF THE CONSPIRACY THAT OCCURRED BEFORE IT JOINED.

---

[28]     *See* SOF ¶¶ 49-50.

If the earliest that StarKist joined the conspiracy was established by its guilty plea – beginning as early as November 2011 -- and Plaintiffs will prove at trial that StarKist joined the conspiracy earlier than November 2011, StarKist is nevertheless still liable for the acts of the conspiracy that occurred before November 2011. "One who enters a conspiracy late, with knowledge of what has gone before, and with the intent to pursue the same objective, may be charged with preceding acts in furtherance of the conspiracy." *Indus. Bldg. Materials, Inc. v. Interchemical Corp.*, 437 F.2d 1336, 1343 (9th Cir. 1970) (citing *United States v. Bausch & Lomb Optical Co.*, 34 F. Supp. 267 (S.D.N.Y. 1940), and *Rayco Mfg. Co. v. Dunn*, 234 F. Supp. 593, 598 (N.D. Ill. 1964)). For liability to attach under this principle a defendant must enter the conspiracy "with knowledge of what has gone before[,]" *id.*; *see also*, *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 930 (7th Cir. 2016) (quoting *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 554 (7th Cir. 1980) ("[A] co-conspirator who joins a conspiracy with knowledge of what has gone on before and with an intent to pursue the same objectives may, in the antitrust context, be charged with the preceding acts of its co-conspirators.") (alteration in original), *cert. denied*, 137 S.Ct. 1582). Here, there is ample evidence that StarKist had knowledge of what had transpired in the conspiracy before November 2011.



[29] SOF ¶ 1, Ex. 1517, at COSI-CIV-000094950 (COS executive reporting that he met Barry Mills (StarKist), and that StarKist "was very willing to talk about this and hoped all 3 of the canners would switch" from six ounce cans to five ounce cans.).



---

[30] SOF ¶ 2, Ex. 4002, SKC000333277; *see also* Tanner Dep. 214:21-215:23 (Del Monte believed that "it would be the most likely outcome" that its competition would follow Del Monte/StarKist in downsizing their tuna products.").

[31] SOF ¶ 3, Ex. 4004, SKC000101842.

[32] SOF ¶ 4, VZN_SF000101842.

[33] SOF ¶ 5, Hodge Dep. 57:11-58:3.

[34] *Id.*



StarKist's communications with its competitors and knowledge of the conspiracy continued even after the can size decrease and price increase were implemented.

---

[35] SOF ¶ 6, Ex. 1228.
[36] SOF ¶ 6, Hodge Dep..64:20-66:14.
[37] SOF ¶¶ 7, Ex. 1040.
[38] SOF ¶ 8, Handford Dep. 83:16-88:2.
[39] SOF ¶ 9, Ex. 1041, *see also* Handford Dep. 88:6-96:18 (taking the Fifth on any questions related to the aforementioned telephone records).
[40] SOF ¶ 10, Ex. 1235.



41 *Id.*

42 SOF ¶ 10, Handford Dep. 84:7-86:10.

43 SOF ¶ 12, Ex. 512.

44 SOF ¶ 12, Ex. 1044.

45 SOF ¶ 13, Handford Dep. 103:20-111:22.

46 SOF ¶ 14, Ex. 1047 & Handford Dep. 117:21-118:23.



---

[47] *See* SOF ¶15, Exs. 1044, 1050, 1051 & 1052.
[48] *See* SOF ¶¶ 16-17, Handford Dep. 120:7-122:14; 126:12-138:14; 139:18-143:21; & 144:5-149:15.
[49] *Id.*, Handford Dep. 122:18-126:8.
[50] SOF ¶ 18, Ex. 355.
[51] SOF ¶ 18, Ex. 1054.



StarKist continued to engage in communications with BB and COS after taking the price increase in February 2011 to ensure that they would follow it.

---

[52] SOF ¶ 19, Handford Dep. 163:16-170:25.

[53] SOF ¶ 20, Ex. 1056.

[54] SOF ¶ 21, Ex. 359; *see also* Handford Dep. 181:23-189:11 (taking the Fifth on all questions related to the phone records and e-mail, including if Worsham knew that StarKist was in the process of taking a list price increase because Handford told Cameron that StarKist was doing so).

[55] SOF ¶ 21, Cameron Dep. 146:9-147:6.

[56] SOF ¶ 22, Ex. 1057.

[57] SOF ¶ 23, Ex. 1059.

StarKist's solid white halves was the same price as BB—$65.28.[58] Handford was in communication with BB's Cameron, Gerlach, Gallagher, and Nestojko both prior to, the day of, and immediately after BB's issuance of its price increase announcement on March 11, 2011.[59] Finally, Handford spoke with both Worsham (BB) and White (COS) in mid-March 2011.[60] Notably, COS had *not* issued its own price increase announcement at that point, but was implementing a net price increase. Handford took the Fifth when asked about any of the calls made in February and March 2011, and whether they were made for the purpose of coordinating implementation of StarKist's, BB's, and COS's price increases to customers.[61]  Finally, BB and COS both admitted that these price increases were announced pursuant to an agreement between StarKist, COS, and BB.[62]

Thus, StarKist had knowledge of what had transpired in the conspiracy before November 2011, and therefore, it is liable for the violation of Section 1 by the conspiracy before November 2011, going back to July 2008.

## IX.   CONCLUSION

For the reasons stated above, Plaintiffs respectfully that this Court grant their motion.

---

[58] SOF ¶ 23, Ex. 1060.
[59] SOF ¶ 24, Ex. 1058.
[60] SOF ¶ 25, Ex. 1058.
[61] SOF ¶ 26, Handford Dep. 189:15-193:16; 193:20-199:17; 199:21-217:8; and 222:6-225:17.
[62] SOF ¶ 27, Defendant Bumble Bee Foods, LLC's Fifth Supplemental Objections And Responses To Plaintiffs' Second Set Of Interrogatories During The Limited Discovery Stay Period – Interrogatory No. 1; COSI Rog Response at 4.

Dated: September 19, 2019                    Respectfully submitted,


                                             *s/ Patrick Ahern*
                                             Ahern and Associates, P.C.
                                             8 South Michigan Ave., Suite 3600
                                             Chicago, IL 60603
                                             (312) 404-3760
                                             Patrick.j.ahern@ahernandassociatespc.com

                                             *Counsel for Direct Action Plaintiff Winn-*
                                             *Dixie Stores, Inc.*

                                             *s/ Patrick J. Stueve*
                                             Patrick J. Stueve (KS 13847)
                                             Steve N. Six (KS 16151)
                                             C. Curtis Shank (KS 26306)
                                             STUEVE SIEGEL HANSON LLP
                                             460 Nichols Road, Suite 200
                                             Kansas City, Missouri 64112
                                             Telephone:  816-714-7100
                                             Facsimile:  816-714-7101
                                             stueve@stuevesiegel.com
                                             six@stuevesiegel.com
                                             shank@stuevesiegel.com

                                             *Counsel for Direct Action Plaintiff*
                                             *Associated Wholesale Grocers, Inc.*


                                             By: *s/ Manton M. Grier*
                                             Manton M. Grier (D.S.C. No. 2461)
                                             Robert Y. Knowlton (D.S.C. No. 2380)
                                             Elizabeth H. Black (D.S.C. No. 10088)
                                             Mary C. Eldridge (D.S.C. No. 12540)
                                             HAYNSWORTH SINKLER BOYD, P.A.
                                             1201 Main Street
                                             Suite 2200
                                             P.O. Box 11889 (29211)