1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 15-MD-2670 JLS (MDD) |
| This Document Relates To: | **DECLARATION OF JEANNE C. FINEGAN, APR CONCERNING CLASS MEMBER NOTIFICATION** |
| All Commercial Food Preparer Plaintiff Actions | |

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, JEANNE C. FINEGAN declare as follows:

## **INTRODUCTION**

1.      I am Chief Media Officer of HF Media, LLC, Inc. a division of Heffler Claims Group LLC ("Heffler")[1]. This Declaration is based upon my personal knowledge as well as information provided to me by my associates and staff, including information reasonably relied upon in the fields of advertising media and communications.

2.      Heffler has been engaged by the parties to this litigation to develop and implement a proposed legal notice program as part of the parties' proposed class action settlement. This proposed program is highly targeted and well-designed to reach Settlement Class Members by employing significant direct notice efforts and best-in-class media resources, tools and technology.  It applies the most current approach to notice by combining direct mailed notice, directed publications and banner ads in e-newsletters with circulations totaling over 274,000, along with a press release.

3.      This Declaration describes my experience in designing and implementing notices and notice programs, as well as my credentials to opine on the overall adequacy of the proposed notice effort.  This Declaration will also describe the proposed notice program and address why this proposed program is consistent with other best practicable court-approved notice programs and the requirements of Fed. Civ. P. 23(c)(2)(B) and the Federal Judicial Center ("FJC") guidelines[2]  for Best Practicable Due Process notice.

---

[1] All capitalized terms will take their meaning as defined in the Settlement Agreement unless defined in this document.

[2] Notice Checklist and Plain Language Guide (2010) ("Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide").

4.     We understand that the proposed class in this case consists of persons or entities who would have purchased packaged tuna products in containers 40 ounces or greater from DOT Foods, Sysco, US Foods, Sam's Club, Walmart, or Costco.  The notice here has been targeted to reach and inform the Commercial Food Preparer Class ("CFP Class").  The estimated reach of the program is anticipated to be over 75% percent of this target audience.

## QUALIFICATIONS

5.     I have more than 30 years of relevant communications and advertising experience. I am a member of the Board of Directors for the Alliance for Audited Media ("AAM"). I am the only Notice Expert accredited in Public Relations (APR) by the Universal Accreditation Board, a program administered by the Public Relations Society of America. Further, I have provided testimony before Congress on issues of notice.  I have lectured, published and been cited extensively on various aspects of legal noticing, product recall, and crisis communications, and have served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the CPSC can increase the effectiveness of its product recall campaigns. More recently, I have been extensively involved as a contributing author for "Guidelines and Best Practices Implementing 2018 Amendments to Rule 23 Class Action Settlement Provisions" published by Duke University School of Law.

6.     I have served as an expert, with day-to-day operational responsibilities and direct responsibilities for the design and implementation of hundreds of class action notice programs, some of which are the largest and most complex programs ever implemented in both the United States and Canada. My work includes a wide range of class actions and regulatory and consumer matters, the subject matters of which include product liability, construction defect, antitrust, asbestos, medical, pharmaceutical, human rights, civil rights, telecommunications, media, environmental, securities, banking, insurance and bankruptcy.

7.     Relevant to the matter at hand, my colleagues and I have extensive

DECL. OF JEANNE C. FINEGAN                                    CASE NO. 15-MD-2670-JLS (MDD)

experience working on cases where class certification may have occurred after an initial settlement and there are more than one defendant; by way of example, *In re: Processed Egg Prods. Antitrust Litig.*, MDL No. 08-md-02002 (E.D.P.A.) and *In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

8.    Additionally, I have been at the forefront of modern notice, including plain language as noted in a RAND study[3], and importantly, I was the first Notice Expert to integrate digital media and social media into court approved legal notice programs. My recent work includes:

- *Chapman v. Tristar Products*, No. 1:16-cv-1114, JSG (N.D. Ohio 2018);

- *Cook et. al v. Rockwell International Corp. and the Dow Chemical Co.*, No. 90-cv-00181- KLK (D.Colo. 2017);

- *Warner v. Toyota Motor Sales, U.S.A. Inc.*, No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017);

- *Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.*, No. 1:13-CV-24583 PAS (S.D. Fla. 2016);

- *In re: Blue Buffalo Marketing and Sales Practices Litigation*, No. 14-md-02562-RWS (E.D. Mo. 2016); and

- *In re: TracFone Unlimited Service Plan Litigation*, No. C-13-3440 EMC (N.D. Cal. 2015).

9.    As further reference, in evaluating the adequacy and effectiveness of my notice programs, courts have repeatedly recognized my work as an expert.  For example, in:

---

3 Deborah R. Hensler et al., CLASS ACTION DILEMMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN,  RAND (2000).

a) ***Simerlein et al., v. Toyota Motor Corporation,*** Case No. 3:17-cv-01091-VAB (District of CT 2019). In the Ruling and Order on Motion for Preliminarily Approval, dated January 14, 2019, p. 30, the Honorable Victor Bolden stated:

*"In finding that notice is sufficient to meet both the requirements of Rule 23(c) and due process, the Court has reviewed and appreciated the high-quality submission of proposed Settlement Notice Administrator Jeanne C. Finegan. See Declaration of Jeanne C. Finegan, APR,  Ex. G to Agrmt., ECF No. 85-8."*

b) ***Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.,*** Case No. 1:13-CV-24583 PAS (S.D. Fla. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

*"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. ...There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers... Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. ...The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

Additionally, in the January 20, 2016, ***Carter v Forjas Taurus S.S., Taurus International Manufacturing, Inc.,*** Case No. 1:13-CV-24583 PAS (S.D. Fla. 2016), transcript of Class Notice Hearing, p. 5 Judge Seitz, noted:

*"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

c) ***In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation***, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015), (Hearing for Final Approval, May 19, 2016 transcript p. 49).  During the Hearing for Final Approval, the Honorable Rodney Sippel said:

*"It is my finding that notice was sufficiently provided to class members in*

*the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations."*

d) ***In re: Skechers Toning Shoes Products Liability Litigation*, No. 3:11-MD-2308-TBR** (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

*"… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement."*

10. Additionally, I have published extensively on various aspects of legal noticing, including the following publications and articles:

(a) Co-Author, Digital Ad Fraud, Impact on Class Action Settlements, SlideShare, October 2018. https://bit.ly/2SHqB5D.

(b) Author, "Creating a Class Notice Program that Satisfies Due Process" Law360 New York (February 13, 2018 12:58 PM ET).

(c) Author, "3 Considerations for Class Action Notice Brand Safety," Law360 New York (October 2, 2017 12:24 PM ET).

(d) Author, "What Would Class Action Reform Mean for Notice?" Law360, New York, (April 13, 2017 11:50 AM ET).

(e) Author, "Bots Can Silently Steal your Due Process Notice." Wisconsin Law Journal, April 2017.

(f) Author, "Don't Turn a Blind Eye to Bots. Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

(g) Co- Author, "Modern Notice Requirements Through the Lens of Eisen and Mullane" – Bloomberg BNA Class Action Litigation Report. 17 CLASS 1077. (October 14, 2016).

(h) Author, "Think All Internet Impressions are the Same? Think

Again" – Law360.com, New York (March 16, 2016).

(i)    Author, "Why Class Members Should See An Online Ad More Than Once" – Law360.com, New York (December 3, 2015).

(j)    Author, 'Being Media -Relevant — What It Means And Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

(k)    Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, November 2011.

(l)    Quoted Expert, "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review, (2011), 53 S.C.L.R. (2d).

(m)    Co-Author, with Hon. Dickran Tevrizian, "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, 5/27/11.

(n)    Co-Author, with Hon. Dickran Tevrizian, "Your Insight: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape, TXLR, Vol. 26, No. 21, 5/26/2011.

(o)    Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, 4/9/10 Vol. 11, No. 7 p. 343.

(p)    Quoted: Technology Trends Pose Novel Notification Issues for Class Litigators, BNA Electronic Commerce and Law Report, 15, ECLR 109, 1/27/10.

(q)    Author, Legal Notice: R U ready 2 adapt?  BNA Class Action

Litigation Report, Vol. 10, No. 14, 7/24/2009, pp. 702-703.

(r)     Author, On Demand Media Could Change the Future of Best Practicable Notice, BNA Class Action Litigation Report, Vol. 9, No. 7, 4/11/2008, pp. 307-310.

(s)     Quoted in, Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty, Warranty Week, February 28, 2007, available at www.warrantyweek.com/archive/ww20070228.html.

(t)     Co-Author, Approaches to Notice in State Court Class Actions, For The Defense, Vol. 45, No. 11, November, 2003.

(u)     Author, The Web Offers Near, Real-Time Cost Efficient Notice, American Bankruptcy Institute Journal, Vol. XXII, No. 5, 2003.

(v)     Author, Determining Adequate Notice in Rule 23 Actions, For The Defense, Vol. 44, No. 9, September, 2002.

(w)     Co-Author, The Electronic Nature of Legal Noticing, American Bankruptcy Institute Journal, Vol. XXI, No. 3, April, 2002.

(x)     Author, Three Important Mantras for CEO's and Risk Managers in 2002, International Risk Management Institute, irmi.com/, January, 2002.

(y)     Co-Author, Used the Bat Signal Lately, The National Law Journal, Special Litigation Section, February 19, 2001.

(z)     Author, How Much is Enough Notice, Dispute Resolution Alert, Vol. 1, No. 6, March, 2001.

(aa)    Author, High-Profile Product Recalls Need More Than the Bat Signal, International Risk Management Institute, irmi.com/, July 2001.

(bb)    Author, The Great Debate - How Much is Enough Legal Notice? American Bar Association -- Class Actions and Derivatives Suits

Newsletter, Winter 1999.

    (cc)   Author, What are the best practicable methods to give notice? Georgetown University Law Center Mass Tort Litigation Institute, CLE White Paper: Dispelling the communications myth -- A notice disseminated is a notice communicated, November 1, 2001.

11.    In addition, I have lectured or presented extensively on various aspects of legal noticing.  A sample list includes the following:

    (a)   Webinar Rule 23 Changes: Are You Ready for the Digital Wild, Wild West?"  CLE broadcast October 23, 2018.

    (b)   American Bar Association Faculty Panelist, 4th Annual Western Regional CLE Class Actions: "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape," San Francisco, CA, June, 2017.

    (c)   Miami Law Class Action & Complex Litigation Forum, Faculty Panelist, "Settlement and Resolution of Class Actions." Miami. FL, December 2, 2016.

    (d)   The Knowledge Group, Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org/, October 2016.

    (e)   BA National Symposium, Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA March 2016.

    (f)   SF Banking Attorney Association, Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA May 2015.

    (g)   Perrin Class Action Conference, Faculty Panelist, "Being Media

Relevant, What it Means and Why It Maters – The Social Media Evolution: Trends Challenges and Opportunities," Chicago, IL May 2015.

(h)     Bridgeport Continuing Ed.  Faculty Panelist, "Media Relevant in the Class Notice Context," April 2014.

(i)     CASD 5th Annual Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012.

(j)     Law Seminars International, Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011.

(k)     CLE International, Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011.

(l)     Consumer Attorneys of San Diego (CASD), Faculty    Panelist, "21st Century Class Notice and Outreach," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010.

(m)     Consumer Attorneys of San Diego (CASD), Faculty    Panelist, "The Future of Notice," 2nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2009.

(n)     American Bar Association, Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard."

(o)   American Bar Association, Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008.

(p)   Faculty Panelist, Women Lawyers Association of Los Angeles (WLALA) CLE Presentation, "The Anatomy of a Class Action." Los Angeles, CA, February 2008.

(q)   Faculty Panelist, Practicing Law Institute (PLI) CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures -- "Evolving Notice Standards in the Internet Age."   New York/Boston (simulcast) March, 2006; Chicago, April, 2006; and San Francisco, May 2006.

(r)   Expert Panelist, U.S. Consumer Product Safety Commission.  I was the only legal notice expert invited to participate as an expert to the Consumer Product Safety Commission to discuss ways in which the CPSC could enhance and measure the recall process. As an expert panelist, I discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts. Bethesda, MD, September 2003.

(s)   Expert Speaker, American Bar Association.  Presentation: "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits, Chicago, August 6, 2001.

12.   A comprehensive description of my credentials and experience that qualify me to provide expert opinions on the adequacy of class action notice programs is attached as **Exhibit A**.

## NOTICE PROGRAM

13.     Heffler has been engaged by Counsel for the CFP Class in this action to design and implement a notice and supplemental publication program appropriately reaching Settlement Class Members in this matter. Heffler has also been engaged to handle other administrative duties for the complete implementation of the Settlement Agreement such as claims review and validation, calculation of awards based upon an approved Plan of Allocation, and distribution of funds to approved valid claims.

14.     We understand that the Settlement Class includes:

> All persons and entities in 27 named states including Arizona, Arkansas, California, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, Wisconsin and D.C., that indirectly purchased packaged tuna products produced in packages of 40 ounces or more that were manufactured by any Defendant ( or any current or former subsidiary or any Affiliate thereof) and that were purchased directly from DOT Foods, Sysco, US Foods, Sams Club, Wal-Mart, or Costco (other than inter-company purchases among these distributors) from June 2011 through December 2016 (the "Class Period").

15.     DOT Foods and US Foods have provided transactional data that includes customer identifying information showing specific purchase values, and CFPs are in discussions with Sysco and Costco about turning over similar customer identifying information that would include purchase totals. These discussions are showing promise, and CFPs are in discussions with Walmart and Sam's Club about potentially providing customer identifying information as well.   If the discussions

DECL. OF JEANNE C. FINEGAN                    CASE NO. 15-MD-2670-JLS (MDD)

with Sysco and Costco are concluded successfully, I understand that name and address information records would be available for at least 75% of class members, and perhaps transaction information as well.   Based on Heffler's analysis and experience with direct notice programs and the availability of updating contact information for Class Members through advanced address search mechanisms, we are conservatively estimating that at least 75% of the class will be reached through direct notice. Further, the parties are enhancing the direct notice program by providing additional supplemental notice via e-newsletter publications and a press release, along with a dedicated settlement website and toll-free helpline. The purpose of the supplemental notice is to provide additional reminders for class members to file claims and reach class members who may not get direct notice.  The proposed notice program includes the following components:

- Direct notice to all known class members via U.S. First Class Mail;

- E-Newsletter display banner ad notice in specifically targeted e-magazines selected to reach Class Members;

- A press release across PR Newswires US1 Newslines;

- A dedicated informational website will be established on which the notices and other important Court documents will be posted, along with answers to frequently asked questions and updates on the status of the case; and

- A toll-free information line will be established by which Class Members can call 24/7 for more information about the Settlement, including, but not limited to, requesting copies of the Long Form Notice or Claim Form.

### **DIRECT NOTICE**

16.    The primary method for outreach in this matter will be through direct mail.  While we anticipate possibly receiving contact information from at least four

of the six intermediaries, it is possible that that we will not have transaction purchase data from some of these. If that is the case, there will be two different postcards going out to over 75% of the class. The first will be mailed to persons or entities identified in the intermediaries records that include transaction information of purchases of Packaged Tuna Products (i.e., those products 40 ounces or larger). This group will need to do nothing in order to receive payment unless they want to dispute the intermediary records we have been given and then they can dispute the transaction total and provide proof of purchase for their claimed amount. The second group will receive direct notice and will need to file a claim as we will not have transactional purchases for them. Attached as **Exhibit B** are the two postcard notices and claim form language.

17.    We anticipate filing a supplemental declaration when these negotiations are concluded to fully advise the Court of the direct mail program.

18.    Heffler intends to first update all address information by running addresses through the National Change of Address database maintained by the U.S. Postal Service. This database is a compilation of all address changes of which the U.S. Postal Service is notified and is kept for four years. It will allow Heffler to update addresses to the most current address known by the U.S. Postal service before sending notice.

19.    Additionally, if mail is returned as undeliverable with no further forwarding address, Heffler will run these records through an advanced address locator database to obtain additional contact information and remail notice. Likewise, if mail is returned with a forwarding address, Heffler will remail the notice to the newly provided address.

## SUPPLEMENTAL E-PUBLICATION AND INTERNET NOTICE

20.    To appropriately design and target the publication component of the notice program, HF Media utilized a methodology accepted by the advertising industry and embraced by courts in the United States.

21.     Accordingly, we are guided by well-established principles of communication and utilize best-in-class nationally syndicated media research data provided by GfK Mediamark Research and Intelligence LLC, among others, to provide media consumption habits and audience delivery verification of the potentially affected population.  Based on this research, our cutting-edge approach to notice focuses on the quality of media exposure, engagement, and appropriate media environment.

22.     These data resources are used by advertising agencies nationwide as the basis to select the most appropriate media to reach specific target audiences.  Specifically, this research identifies which media channels are favored by the target audience (i.e., the Class Members).  For instance, browsing behaviors on the Internet, social media channels that are used, and which magazines Class Members are reading.

23.     It is our understanding that Class Members reside throughout the United States and this supplemental media program has been designed to be inclusive of these locations.

## **TRADE E-NEWSLETTERS**

24.     Notice will be published in five trade e-newsletters targeted to further reach this specific group of CFP Class members.  These multi-times per week e-newsletters were chosen as they are commonly read by the CFP Class.  Attached as **Exhibit C** is the display banner ad.

25.     First, notice will be published in the *FoodService Director* ("FSD") E-Newsletter FSD Update, a tri-weekly newsletter that delivers content about the foodservice market and reports on issues impacting foodservice professionals in hospitals, nursing homes, colleges, schools, business & industry, correctional locations & military installations.  FSD has a circulation of over 33,000 members.

26.     The second e-notice will be published in *Food Management Today* ("FM Today").  FM Today provides ideas for foodservice directors and managers

through coverage of industry issues. FM Today has a circulation of 30,000. This e-newsletter is circulated four times a week.

27.     Third, we will publish in *Restaurant Business's RB Daily*, which is edited for executives of commercial foodservice who have responsibility for operating decisions. The circulation is 94,000 and is circulated daily.

28.     Fourth, we will publish in *Restaurant Hospitality* (also known as Eat Beat) which is edited for commercial food service professionals including those operating restaurants, hotels, clubs and catering operations. It has a circulation of over 90,000 and runs five days per week.

29.     And fifth, *SN Express* which reaches school foodservice professionals and covers industry issues, trends and food, has a circulation of 40,000. *SN Express* is a weekly publication.

## PRESS RELEASE

30.     A press release distributed over PR Newswire's US1 Newslines with additional outreach targeting over 182 influencers and bloggers who cover the food industry. PR Newswire delivers to thousands of print and broadcast newsrooms nationwide, as well as websites, databases and online services including featured placement in news sections of leading portals. Attached as **Exhibit D** is the press release.

## MEDIA MONITORING

31.     HF Media intends to monitor various media channels for subsequent news articles and various social mentions as a result of the press release efforts. A complete report on the results will be filed with the Court upon completion of the notice program.

## OFFICIAL SETTLEMENT WEBSITE

32.     A dedicated settlement website, www.PackagedSeafoodAntitrustCFP Class.com, will be established and maintained by Heffler. The Settlement website will serve as a "landing page for the banner advertising," where Class Members may

get information about the Settlement and obtain and/or submit a Claim Form, along with other information including information about the class action, Class Member rights, the Long Form Notice, Summary Notice, and related information, including the Settlement Agreement, Court Orders, and Plaintiff's Motion for Approval of Fees, Expenses, and Class Representative Payments once it has been filed with the Court.   The website will be available 24 hours a day and 7 days a week.  It will be optimized for visitors using mobile devices and is also designed to maximize search engine optimization.   It will be updated with current information and status of the action as appropriate with direction from Counsel or the Court. Attached as **Exhibit E** is the Long Form Notice.

## TOLL FREE INFORMATION LINE

33.     Additionally, Heffler will establish and maintain a 24-hour toll-free Interactive Voice Response ("IVR") telephone line, where callers may obtain information about the class action.  Heffler will also have available live operator support to answer questions during normal business hours.  These operators will be trained to answer questions on the settlement and help people with any questions on filing a claim.

## DEDICATED POST OFFICE BOX

34.     Heffler will secure and monitor a dedicated post office box for all mail and written communications from Class Members.   Mail will be scanned and uploaded into Heffler's dedicated database for this Settlement so that it can be tracked.  All written correspondence will be monitored and responded to promptly.

## CONCLUSION

35.     In my opinion, the outreach efforts described above reflect a particularly appropriate, highly targeted, and contemporary way to employ notice to this class. We estimate over 75% percent of targeted Class Members will be reached by the direct mail outreach program.  In my opinion, the efforts to be used in this proposed notice program are of the highest modern communication standards to provide

notice, and are consistent with best practicable court-approved notice programs in similar matters and the Federal Judicial Center's guidelines concerning appropriate reach.

36.     I declare under the penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.  Executed on September 30, 2019 in Tigard, Oregon.

37.     Dated September 30, 2019

Respectfully submitted,

Jeanne C. Finegan

# Exhibit A



**Heffler Claims**
Group

# JEANNE C. FINEGAN, APR

### BIOGRAPHY

Jeanne Finegan, APR, is President and Chief Media Officer of HF Media, LLC, a division of Heffler Claims Group. She is a member of the Board of Directors for the prestigious Alliance for Audited Media (AAM), and was named by *Diversity Journal* as one of the "Top 100 Women Worth Watching." She is a distinguished legal notice and communications expert with more than 30 years of communications and advertising experience.

She was a lead contributing author for Duke University's School of Law, *"Guidelines and Best Practices  Implementing  Amendments to Rule 23 Class Action Settlement Provisions."* And more recently, she has been involved with New York School of Law and The Center on Civil Justice (CCJ) assisting with a class action settlement data analysis and comparative visualization tool called the *Aggregate Litigation Project*, designed to help judges make decisions in aggregate cases on the basis of data as opposed to anecdotal information. Moreover, her experience also includes working with the Special Settlement Administrator's team to assist with the outreach strategy for the historic Auto Airbag Settlement, In re: *Takata Airbag Products Liability Litigation* MDL 2599.

During her tenure, she has planned and implemented over 1,000 high-profile, complex legal notice communication programs.  She is a recognized notice expert in both the United States and in Canada, with extensive international notice experience spanning more than 170 countries and over 40 languages.

Ms. Finegan has lectured, published and has been cited extensively on various aspects of legal noticing, product recall and crisis communications. She has served the Consumer Product Safety Commission (CPSC) as an expert to determine ways in which the Commission can increase the effectiveness of its product recall campaigns. Further, she has planned and implemented large-scale government enforcement notice programs for the Federal Trade Commission (FTC) and the Securities and Exchange Commission (SEC).

Ms. Finegan is accredited in Public Relations (APR) by the Universal Accreditation Board, which is a program administered by the Public Relations Society of America (PRSA), and is also a recognized member of the Canadian Public Relations Society (CPRS). She has served on examination panels for APR candidates and worked *pro bono* as a judge for prestigious PRSA awards.

Ms. Finegan has provided expert testimony before Congress on issues of notice, and expert testimony in both state and federal courts regarding notification campaigns. She has conducted

Heffler Claims
Group

numerous media audits of proposed notice programs to assess the adequacy of those programs under Fed R. Civ. P. 23(c)(2) and similar state class action statutes.

She was an early pioneer of plain language in notice (as noted in a RAND study,[1]) and continues to set the standard for modern outreach as the first notice expert to integrate social and mobile media into court approved legal notice programs.

In the course of her class action experience, courts have recognized the merits of, and admitted expert testimony based on, her scientific evaluation of the effectiveness of notice plans.  She has designed legal notices for a wide range of class actions and consumer matters that include product liability, construction defect, antitrust, medical/pharmaceutical, human rights, civil rights, telecommunication, media, environment, government enforcement actions, securities, banking, insurance, mass tort, restructuring and product recall.

### JUDICIAL COMMENTS AND LEGAL NOTICE CASES

In evaluating the adequacy and effectiveness of Ms. Finegan's notice campaigns, courts have repeatedly recognized her excellent work. The following excerpts provide some examples of such judicial approval.

*In re: The Bank of New York Mellon ADR FX Litigation*, 16-CV-00212-JPO-JLC (S.D.N.Y. 2019).  In the Final Order and Judgement, dated June 17, 2019, para 5,  the Honorable J. Paul Oetkin stated:

> *"The dissemination of notice constituted the best notice practicable under the circumstances."*

*Simerlein et al., v. Toyota Motor Corporation,* Case No. 3:17-cv-01091-VAB (District of CT 2019). In the Ruling and Order on Motion for Preliminarily Approval, dated January 14, 2019, p. 30, the Honorable Victor Bolden stated:

> *"In finding that notice is sufficient to meet both the requirements of Rule 23(c) and due process, the Court has reviewed and appreciated the high-quality submission of proposed Settlement Notice Administrator Jeanne C. Finegan. See  Declaration of Jeanne C. Finegan, APR,  Ex. G to Agrmt., ECF No. 85-8."*

*Fitzhenry- Russell et al., v Keurig Dr. Pepper Inc.,* Case No. :17-cv-00564-NC, (ND Cal). In the Order Granting Final Approval of Class Action Settlement,  Dated April 10, 2019, the Honorable Nathanael Cousins stated:

> *"...the reaction of class members to the proposed Settlement is positive. The parties anticipated that 100,000 claims would be filed under the Settlement (see Dkt. No. 327-*

---

[1] Deborah R. Hensler et al., CLASS ACTION DILEMAS, PURSUING PUBLIC GOALS FOR PRIVATE GAIN.  RAND (2000).

**Heffler Claims**
Group

> *5 ¶ 36)—91,254 claims were actually filed (see Finegan Decl ¶ 4). The 4% claim rate was reasonable in light of Heffler's efforts to ensure that notice was adequately provided to the Class."*

***Pettit et al.,  v.  Procter & Gamble Co.,*** Case No. 15-cv-02150-RS ND Cal**.** In the Order Granting Final Approval of the Class Action Settlement and Judgement, Dated March 28, 2019, p. 6,  the Honorable Richard Seeborg stated:

> *"The Court finds that the Notice Plan set forth in the Settlement Agreement, and effectuated pursuant to the Preliminary Approval Order, constituted the best notice practicable under the circumstances and constituted due and sufficient notice to the Settlement Class. …the number of claims received equates to a claims rate of 4.6%, which exceeds the rate in comparable settlements."*

***Carter v Forjas Taurus S.S., Taurus International Manufacturing***, Inc., Case No. 1:13-CV-24583 PAS (S.D. Fl. 2016). In her Final Order and Judgment Granting Plaintiffs Motion for Final Approval of Class Action Settlement, the Honorable Patricia Seitz stated:

> *"The Court considered the extensive experience of Jeanne C. Finegan and the notice program she developed. …There is no national firearms registry and Taurus sale records do not provide names and addresses of the ultimate purchasers… Thus the form and method used for notifying Class Members of the terms of the Settlement was the best notice practicable. …The court-approved notice plan used peer-accepted national research to identify the optimal traditional, online, mobile and social media platforms to reach the Settlement Class Members."*

Additionally, in January 20, 2016, Transcript of Class Notice Hearing, p. 5 Judge Seitz, noted:

> *"I would like to compliment Ms. Finegan and her company because I was quite impressed with the scope and the effort of communicating with the Class."*

***Cook et. al v. Rockwell International Corp. and the Dow Chemical Co.,*** *No. 90-cv-00181- KLK (D.Colo. 2017)., aka, Rocky Flats Nuclear Weapons Plant Contamination***.** In the Order Granting Final Approval, dated April 28, 2017, p.3, the Honorable John L. Kane said:

> *The Court-approved Notice Plan, which was successfully implemented by [HF Media- emphasis added] (see Doc. 2432), constituted the best notice practicable under the circumstances. In making this determination, the Court finds that the Notice Plan that was implemented, as set forth in Declaration of Jeanne C. Finegan, APR Concerning Implementation and Adequacy of Class Member Notification (Doc. 2432), provided for individual notice to all members of the Class whose identities and addresses were identified through reasonable efforts, … and a comprehensive national*

*publication notice program that included, inter alia, print, television, radio and internet banner advertisements. …Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, the Court finds that the Notice Plan provided the best notice practicable to the Class.*

*In re: Domestic Drywall Antitrust Litigation,* MDL. No. 2437, in the U.S. District Court for the Eastern District of Pennsylvania. For each of the four settlements, Finegan implemented and extensive outreach effort including traditional, online, social, mobile and advanced television and online video. In the Order Granting Preliminary Approval to the IPP Settlement, Judge Michael M. Baylson  stated:

> *"The Court finds that the dissemination of the Notice and summary Notice constitutes the best notice practicable under the circumstances; is valid, due, and sufficient notice to all persons… and complies fully with the requirements of the Federal rule of Civil Procedure."*

*Warner v. Toyota Motor Sales, U.S.A. Inc., Case No 2:15-cv-02171-FMO FFMx (C.D. Cal. 2017).* In the Order Re: Final Approval of Class Action Settlement; Approval of Attorney's Fees, Costs & Service Awards, dated May 21, 2017, the Honorable Fernando M. Olguin stated:

> *Finegan, the court-appointed settlement notice administrator, has implemented the multiprong notice program. …the court finds that the class notice and the notice process fairly and adequately informed the class members of the nature of the action, the terms of the proposed settlement, the effect of the action and release of claims, the class members' right to exclude themselves from the action, and their right to object to the proposed settlement. (See Dkt. 98, PAO at 25-28).*

*Michael Allagas, et al., v. BP Solar International, Inc., et al., BP Solar Panel Settlement*, Case No. 3:14-cv-00560- SI (N.D. Cal., San Francisco Div. 2016). In the Order Granting Final Approval, Dated December 22, 2016, The Honorable Susan Illston stated:

> *Class Notice was reasonable and constituted due, adequate and sufficient notice to all persons entitled to be provided with notice; and d. fully satisfied the requirements of the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable law.*

*Foster v. L-3 Communications EOTech*, Inc. et al (6:15-cv-03519), Missouri Western District Court.
> *In the Court's  Final Order, dated July 7, 2017, The Honorable Judge Brian Wimes stated: "The Court has determined that the Notice given to the Settlement Class fully*

*and accurately informed members of the Settlement Class of all material elements of the Settlement and constituted the best notice practicable."*

***In re: Skechers Toning Shoes Products Liability Litigation***, No. 3:11-MD-2308-TBR (W.D. Ky. 2012). In his Final Order and Judgment granting the Motion for Preliminary Approval of Settlement, the Honorable Thomas B. Russell stated:

> *… The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.*

***Brody v. Merck & Co., Inc., et al,*** No. 3:12-cv-04774-PGS-DEA (N.J.) (Jt Hearing for Prelim App, Sept. 27, 2012, transcript page 34). During the Hearing on Joint Application for Preliminary Approval of Class Action, the Honorable Peter G. Sheridan acknowledged Ms. Finegan's work, noting:

> *Ms. Finegan did a great job in testifying as to what the class administrator will do. So, I'm certain that all the class members or as many that can be found, will be given some very adequate notice in which they can perfect their claim.*

***Quinn v. Walgreen Co., Wal-Mart Stores Inc.,*** 7:12 CV-8187-VB (NYSD) (Jt Hearing for Final App, March. 5, 2015, transcript page 40-41).  During the Hearing on Final Approval of Class Action, the Honorable Vincent L. Briccetti stated:

> *"The notice plan was the best practicable under the circumstances.  … [and] "the proof is in the pudding. This settlement has resulted in more than 45,000 claims which is 10,000 more than the Pearson case and more than 40,000 more than in a glucosamine case pending in the Southern District of California I've been advised about.  So the notice has reached a lot of people and a lot of people have made claims."*

***In Re: TracFone Unlimited Service Plan Litigation,*** *No. C-13-3440 EMC (ND Ca).* In the Final Order and Judgment Granting Class Settlement, July 2, 2015, the Honorable Edward M. Chen noted:

> *"…[D]epending on the extent of the overlap between  those class members who will automatically receive a payment and those who filed claims, the total claims rate is estimated to be approximately 25-30%. This is an excellent result...*

***In Re:  Blue Buffalo Company, Ltd., Marketing and Sales Practices Litigation***, Case No. 4:14-MD-2562 RWS (E.D. Mo. 2015),  (Hearing for Final Approval, May 19, 2016 transcript p. 49). During the Hearing for Final Approval, the Honorable Rodney Sippel said:

> *It is my finding that notice was sufficiently provided to class members in the manner directed in my preliminary approval order and that notice met all applicable requirements of due process and any other applicable law and considerations.*

*DeHoyos, et al. v. Allstate Ins. Co.*, No. SA-01-CA-1010 (W.D.Tx. 2001). In the Amended Final Order and Judgment Approving Class Action Settlement, the Honorable Fred Biery stated:

> *[T]he undisputed evidence shows the notice program in this case was developed and implemented by a nationally recognized expert in class action notice programs. … This program was vigorous and specifically structured to reach the African-American and Hispanic class members. Additionally, the program was based on a scientific methodology which is used throughout the advertising industry and which has been routinely embraced routinely [sic] by the Courts. Specifically, in order to reach the identified targets directly and efficiently, the notice program utilized a multi-layered approach which included national magazines; magazines specifically appropriate to the targeted audiences; and newspapers in both English and Spanish.*

*In re: Reebok Easytone Litigation*, No. 10-CV-11977 (D. MA. 2011). The Honorable F. Dennis Saylor IV stated in the Final Approval Order:

> *The Court finds that the dissemination of the Class Notice, the publication of the Summary Settlement Notice, the establishment of a website containing settlement-related materials, the establishment of a toll-free telephone number, and all other notice methods set forth in the Settlement Agreement and [Ms. Finegan's] Declaration and the notice dissemination methodology implemented pursuant to the Settlement Agreement and this Court's Preliminary Approval Order… constituted the best practicable notice to Class Members under the circumstances of the Actions.*

**Bezdek v. Vibram USA and Vibram FiveFingers** LLC, No 12-10513 (D. MA) The Honorable Douglas P. Woodlock stated in the Final Memorandum and Order:

> *…[O]n independent review I find that the notice program was robust, particularly in its online presence, and implemented as directed in my Order authorizing notice. …I find that notice was given to the Settlement class members by the best means "practicable under the circumstances." Fed.R.Civ.P. 23(c)(2).*

*Gemelas v. The Dannon Company Inc.,* No. 08-cv-00236-DAP (N.D. Ohio). In granting final approval for the settlement, the Honorable Dan A. Polster stated:

> *In accordance with the Court's Preliminary Approval Order and the Court-approved notice program, [Ms. Finegan] caused the Class Notice to be distributed on a nationwide basis in magazines and newspapers (with circulation numbers exceeding 81 million) specifically chosen to reach Class Members. … The distribution of Class Notice constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. 1715, and any other applicable law.*

*Pashmova v. New Balance Athletic Shoes, Inc.*, 1:11-cv-10001-LTS (D. Mass.). The Honorable Leo T. Sorokin stated in the Final Approval Order:

> *The Class Notice, the Summary Settlement Notice, the web site, and all other notices in the Settlement Agreement and the Declaration of [Ms Finegan], and the notice methodology implemented pursuant to the Settlement Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Actions, the terms of the Settlement and their rights under the settlement … met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 28 U.S.C. § 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices.*

*Hartless v. Clorox Company*, No. 06-CV-2705 (CAB) (S.D.Cal.).  In the Final Order Approving Settlement, the Honorable Cathy N. Bencivengo found:

> *The Class Notice advised Class members of the terms of the settlement; the Final Approval Hearing and their right to appear at such hearing; their rights to remain in or opt out of the Class and to object to the settlement; the procedures for exercising such rights; and the binding effect of this Judgment, whether favorable or unfavorable, to the Class. The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

*McDonough et al v. Toys 'R' Us et al,* No. 09:-cv-06151-AB (E.D. Pa.).  In the Final Order and Judgment Approving Settlement, the Honorable Anita Brody stated:

> *The Court finds that the Notice provided constituted the best notice practicable under the circumstances and constituted valid, due and sufficient notice to all persons entitled thereto.*

*In re: Pre-Filled Propane Tank Marketing & Sales Practices Litigation,* No. 4:09-md-02086-GAF (W.D. Mo.)  In granting final approval to the settlement, the Honorable Gary A. Fenner stated:

> *The notice program included individual notice to class members who could be identified by Ferrellgas, publication notices, and notices affixed to Blue Rhino propane tank cylinders sold by Ferrellgas through various retailers. ... The Court finds the notice program fully complied with Federal Rule of Civil Procedure 23 and the requirements of due process and provided to the Class the best notice practicable under the circumstances.*

*Stern v. AT&T Mobility Wireless*, No. 09-cv-1112 CAS-AGR (C.D.Cal. 2009).  In the Final Approval Order, the Honorable Christina A. Snyder stated:

*[T]he Court finds that the Parties have fully and adequately effectuated the Notice Plan, as required by the Preliminary Approval Order, and, in fact, have achieved better results than anticipated or required by the Preliminary Approval Order.*

*In re: Processed Egg Prods. Antitrust Litig.*, MDL No. 08-md-02002 (E.D.P.A.).  In the Order Granting Final Approval of Settlement, Judge Gene E.K. Pratter stated:

*The Notice appropriately detailed the nature of the action, the Class claims, the definition of the Class and Subclasses, the terms of the proposed settlement agreement, and the class members' right to object or request exclusion from the settlement and the timing and manner for doing so.… Accordingly, the Court determines that the notice provided to the putative Class Members constitutes adequate notice in satisfaction of the demands of Rule 23.*

*In re Polyurethane Foam Antitrust Litigation*, 10- MD-2196 (N.D. OH). In the Order Granting Final Approval of Voluntary Dismissal and Settlement of Defendant Domfoam and Others, the Honorable Jack Zouhary stated:

*The notice program included individual notice to members of the Class who could be identified through reasonable effort, as well as extensive publication of a summary notice. The Notice constituted the most effective and best notice practicable under the circumstances of the Settlement Agreements, and constituted due and sufficient notice for all other purposes to all persons and entities entitled to receive notice.*

*Rojas v Career Education Corporation*, No. 10-cv-05260 (N.D.E.D. IL) In the Final Approval Order dated October 25, 2012, the Honorable Virgina M. Kendall stated:

*The Court Approved notice to the Settlement Class as the best notice practicable under the circumstance including individual notice via U.S. Mail and by email to the class members whose addresses were obtained from each Class Member's wireless carrier or from a commercially reasonable reverse cell phone number look-up service, nationwide magazine publication, website publication, targeted on-line advertising, and a press release.  Notice has been successfully implemented and satisfies the requirements of the Federal Rule of Civil Procedure 23 and Due Process.*

*Golloher v Todd Christopher International, Inc. DBA Vogue International (Organix)*, No. C 1206002 N.D CA.  In the Final Order and Judgment Approving Settlement, the Honorable Richard Seeborg stated:

*The distribution of the notice to the Class constituted the best notice practicable under the circumstances, and fully satisfied the requirements of Federal Rule of Civil Procedure 23, the requirements of due process, 28 U.S.C. §1715, and any other applicable law.*

***Stefanyshyn v. Consolidated Industries***, No. 79 D 01-9712-CT-59 (Tippecanoe County Sup. Ct., Ind.). In the Order Granting Final Approval of Settlement, Judge Randy Williams stated:

> *The long and short form notices provided a neutral, informative, and clear explanation of the Settlement. … The proposed notice program was properly designed, recommended, and implemented … and constitutes the "best practicable" notice of the proposed Settlement. The form and content of the notice program satisfied all applicable legal requirements. … The comprehensive class notice educated Settlement Class members about the defects in Consolidated furnaces and warned them that the continued use of their furnaces created a risk of fire and/or carbon monoxide. This alone provided substantial value.*

***McGee v. Continental Tire North America, Inc. et al***, No. 06-6234-(GEB) (D.N.J.).

> *The Class Notice, the Summary Settlement Notice, the web site, the toll-free telephone number, and all other notices in the Agreement, and the notice methodology implemented pursuant to the Agreement: (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated to apprise Class Members of the pendency of the Action, the terms of the settlement and their rights under the settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and to appear at the Fairness Hearing; (c) were reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notification; and (d) met all applicable requirements of law, including, but not limited to, the Federal Rules of Civil Procedure, 20 U.S.C. Sec. 1715, and the Due Process Clause(s) of the United States Constitution, as well as complied with the Federal Judicial Center's illustrative class action notices,*

***Varacallo, et al. v. Massachusetts Mutual Life Insurance Company, et al***., No. 04-2702 (JLL) (D.N.J.).  The Court stated that:

> [A]*ll of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices. … By working with a nationally syndicated media research firm, [Finegan's firm] was able to define a target audience for the MassMutual Class Members, which provided a valid basis for determining the magazine and newspaper preferences of the Class Members. (Preliminary Approval Order at p. 9). . . . The Court agrees with Class Counsel that this was more than adequate. (Id. at § 5.2).*

***In re: Nortel Network Corp., Sec. Litig.***, No. 01-CV-1855 (RMB) Master File No. 05 MD 1659 (LAP) (S.D.N.Y.).  Ms. Finegan designed and implemented the extensive United States and Canadian notice programs in this case.  The Canadian program was published in both French and English, and targeted virtually all investors of stock in Canada.  *See*

**Heffler Claims**
Group

www.nortelsecuritieslitigation.com.  Of the U.S. notice program, the Honorable Loretta A. Preska stated:

> *The form and method of notifying the U.S. Global Class of the pendency of the action as a class action and of the terms and conditions of the proposed Settlement … constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.*

Regarding the B.C. Canadian Notice effort: *Jeffrey v. Nortel Networks*, [2007] BCSC 69 at para. 50, the Honourable Mr. Justice Groberman said:

> *The efforts to give notice to potential class members in this case have been thorough. There has been a broad media campaign to publicize the proposed settlement and the court processes.  There has also been a direct mail campaign directed at probable investors.  I am advised that over 1.2 million claim packages were mailed to persons around the world.  In addition, packages have been available through the worldwide web site nortelsecuritieslitigation.com  on the Internet.  Toll-free telephone lines have been set up, and it appears that class counsel and the Claims Administrator have received innumerable calls from potential class members. In short, all reasonable efforts have been made to ensure that potential members of the class have had notice of the proposal and a reasonable opportunity was provided for class members to register their objections, or seek exclusion from the settlement.*

*Mayo v. Walmart Stores and Sam's Club*, No. 5:06 CV-93-R (W.D.Ky.).  In the Order Granting Final Approval of Settlement, Judge Thomas B. Russell stated:

> *According to defendants' database, the Notice was estimated to have reached over 90% of the Settlement Class Members through direct mail. The Settlement Administrator … has classified the parties' database as 'one of the most reliable and comprehensive databases [she] has worked with for the purposes of legal notice.'… The Court thus reaffirms its findings and conclusions in the Preliminary Approval Order that the form of the Notice and manner of giving notice satisfy the requirements of Fed. R. Civ. P. 23 and affords due process to the Settlement Class Members.*

*Fishbein v. All Market Inc*., (d/b/a **Vita Coco**) No. 11-cv-05580  (S.D.N.Y.).  In granting final approval of the settlement, the Honorable J. Paul Oetken stated:

> *"The Court finds that the dissemination of Class Notice pursuant to the Notice Program…constituted the best practicable notice to Settlement Class Members under the circumstances of this Litigation … and was reasonable and constituted due, adequate and sufficient notice to all persons entitled to such notice, and fully satisfied the requirements of the Federal Rules of Civil Procedure, including Rules 23(c)(2) and (e), the United States Constitution (including the Due Process Clause), the Rules of this Court, and any other applicable laws."*

*Lucas, et al. v. Kmart Corp.*, No. 99-cv-01923 (D.Colo.), wherein the Court recognized Jeanne Finegan as an expert in the design of notice programs, and stated:

> *The Court finds that the efforts of the parties and the proposed Claims Administrator in this respect go above and beyond the "reasonable efforts" required for identifying individual class members under F.R.C.P. 23(c)(2)(B).*

*In re: Johns-Manville Corp.* **(Statutory Direct Action Settlement, Common Law Direct Action and Hawaii Settlement)**, No 82-11656, 57, 660, 661, 665-73, 75 and 76 (BRL) (Bankr. S.D.N.Y.). The nearly half-billion dollar settlement incorporated three separate notification programs, which targeted all persons who had asbestos claims whether asserted or unasserted, against the Travelers Indemnity Company. In the Findings of Fact and Conclusions of a Clarifying Order Approving the Settlements, slip op. at 47-48 (Aug. 17, 2004), the Honorable Burton R. Lifland, Chief Justice, stated:

> *As demonstrated by Findings of Fact (citation omitted), the Statutory Direct Action Settlement notice program was reasonably calculated under all circumstances to apprise the affected individuals of the proceedings and actions taken involving their interests, Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950), such program did apprise the overwhelming majority of potentially affected claimants and far exceeded the minimum notice required. . . . The results simply speak for themselves.*

*Pigford v. Glickman and U.S. Department of Agriculture*, No. 97-1978. 98-1693 (PLF) (D.D.C.). This matter was the largest civil rights case to settle in the United States in over 40 years. The highly publicized, nationwide paid media program was designed to alert all present and past African-American farmers of the opportunity to recover monetary damages against the U.S. Department of Agriculture for alleged loan discrimination. In his Opinion, the Honorable Paul L. Friedman commended the parties with respect to the notice program, stating;

> *The parties also exerted extraordinary efforts to reach class members through a massive advertising campaign in general and African American targeted publications and television stations. . . . The Court concludes that class members have received more than adequate notice and have had sufficient opportunity to be heard on the fairness of the proposed Consent Decree.*

*In re: Louisiana-Pacific Inner-Seal Siding Litig.*, Nos. 879-JE, and 1453-JE (D.Or.). Under the terms of the Settlement, three separate notice programs were to be implemented at three-year intervals over a period of six years. In the first notice campaign, Ms. Finegan implemented the print advertising and Internet components of the Notice program. In approving the legal notice communication plan, the Honorable Robert E. Jones stated:

*The notice given to the members of the Class fully and accurately informed the Class members of all material elements of the settlement…[through] a broad and extensive multi-media notice campaign.*

Additionally, with regard to the third-year notice program for Louisiana-Pacific, the Honorable Richard Unis, Special Master, commented that the notice was:

*…well formulated to conform to the definition set by the court as adequate and reasonable notice.  Indeed, I believe the record should also reflect the Court's appreciation to Ms. Finegan for all the work she's done, ensuring that noticing was done correctly and professionally, while paying careful attention to overall costs.  Her understanding of various notice requirements under Fed. R. Civ. P. 23, helped to insure that the notice given in this case was consistent with the highest standards of compliance with Rule 23(d)(2).*

*In re: Expedia Hotel Taxes and Fees Litigation*, No. 05-2-02060-1 (SEA) (Sup. Ct. of Wash. in and for King County).  In the Order Granting Final Approval of Class Action Settlement, Judge Monica Benton stated:

*The Notice of the Settlement given to the Class … was the best notice practicable under the circumstances.  All of these forms of Notice directed Class Members to a Settlement Website providing key Settlement documents including instructions on how Class Members could exclude themselves from the Class, and how they could object to or comment upon the Settlement.  The Notice provided due and adequate notice of these proceeding and of the matters set forth in the Agreement to all persons entitled to such notice, and said notice fully satisfied the requirements of CR 23 and due process.*

*Thomas A. Foster and Linda E. Foster v. ABTco Siding Litigation*, No. 95-151-M (Cir. Ct., Choctaw County, Ala.).  This litigation focused on past and present owners of structures sided with Abitibi-Price siding.  The notice program that Ms. Finegan designed and implemented was national in scope and received the following praise from the Honorable J. Lee McPhearson:

*The Court finds that the Notice Program conducted by the Parties provided individual notice to all known Class Members and all Class Members who could be identified through reasonable efforts and constitutes the best notice practicable under the circumstances of this Action.  This finding is based on the overwhelming evidence of the adequacy of the notice program.  … The media campaign involved broad national notice through television and print media, regional and local newspapers, and the Internet (see id. ¶¶9-11) The result: over 90 percent of Abitibi and ABTco owners are estimated to have been reached by the direct media and direct mail campaign.*

*Wilson v. Massachusetts Mut. Life Ins. Co.*, No. D-101-CV 98-02814 (First Judicial Dist. Ct., County of Santa Fe, N.M.). This was a nationwide notification program that included all persons

in the United States who owned, or had owned, a life or disability insurance policy with Massachusetts Mutual Life Insurance Company and had paid additional charges when paying their premium on an installment basis. The class was estimated to exceed 1.6 million individuals. www.insuranceclassclaims.com.  In granting preliminary approval to the settlement, the Honorable Art Encinias found:

> [T]he Notice Plan [is] the best practicable notice that is reasonably calculated, under the circumstances of the action.  …[and] meets or exceeds all applicable requirements of the law, including Rule 1-023(C)(2) and (3) and 1-023(E), NMRA 2001, and the requirements of federal and/or state constitutional due process and any other applicable law.

**Sparks v. AT&T Corp.**, No. 96-LM-983 (Third Judicial Cir., Madison County, Ill.). The litigation concerned all persons in the United States who leased certain AT&T telephones during the 1980's. Ms. Finegan designed and implemented a nationwide media program designed to target all persons who may have leased telephones during this time period, a class that included a large percentage of the entire population of the United States.
In granting final approval to the settlement, the Court found:

> The Court further finds that the notice of the proposed settlement was sufficient and furnished Class Members with the information they needed to evaluate whether to participate in or opt out of the proposed settlement. The Court therefore concludes that the notice of the proposed settlement met all requirements required by law, including all Constitutional requirements.

**In re: Georgia-Pacific Toxic Explosion Litig.**, No. 98 CVC05-3535 (Ct. of Common Pleas, Franklin County, Ohio).  Ms. Finegan designed and implemented a regional notice program that included network affiliate television, radio and newspaper.  The notice was designed to alert adults living near a Georgia-Pacific plant that they had been exposed to an air-born toxic plume and their rights under the terms of the class action settlement.   In the Order and Judgment finally approving the settlement, the Honorable Jennifer L. Bunner stated:

> [N]otice of the settlement to the Class was the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  The Court finds that such effort exceeded even reasonable effort and that the Notice complies with the requirements of Civ. R. 23(C).

**In re: American Cyanamid**, No. CV-97-0581-BH-M (S.D.Al.).   The media program targeted Farmers who had purchased crop protection chemicals manufactured by American Cyanamid. In the Final Order and Judgment, the Honorable Charles R. Butler Jr. wrote:

> The Court finds that the form and method of notice used to notify the Temporary Settlement Class of the Settlement satisfied the requirements of Fed. R. Civ. P. 23 and due process, constituted the best notice practicable under the circumstances, and

**Heffler Claims Group**

*constituted due and sufficient notice to all potential members of the Temporary Class Settlement.*

*In re: First Alert Smoke Alarm Litig.*, No. CV-98-C-1546-W (UWC) (N.D.Al.).  Ms. Finegan designed and implemented a nationwide legal notice and public information program.  The public information program ran over a two-year period to inform those with smoke alarms of the performance characteristics between photoelectric and ionization detection.  The media program included network and cable television, magazine and specialty trade publications.  In the Findings and Order Preliminarily Certifying the Class for Settlement Purposes, Preliminarily Approving Class Settlement, Appointing Class Counsel, Directing Issuance of Notice to the Class, and Scheduling a Fairness Hearing, the Honorable C.W. Clemon wrote that the notice plan:

> *…constitutes due, adequate and sufficient notice to all Class Members; and (v) meets or exceeds all applicable requirements of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Alabama State Constitution, the Rules of the Court, and any other applicable law.*

*In re: James Hardie Roofing Litig.,* No. 00-2-17945-65SEA (Sup. Ct. of Wash., King County). The nationwide legal notice program included advertising on television, in print and on the Internet.  The program was designed to reach all persons who own any structure with JHBP roofing products.  In the Final Order and Judgment, the Honorable Steven Scott stated:

> *The notice program required by the Preliminary Order has been fully carried out… [and was] extensive.  The notice provided fully and accurately informed the Class Members of all material elements of the proposed Settlement and their opportunity to participate in or be excluded from it; was the best notice practicable under the circumstances; was valid, due and sufficient notice to all Class Members; and complied fully with Civ. R. 23, the United States Constitution, due process, and other applicable law.*

*Barden v. Hurd Millwork Co. Inc., et al,* No. 2:6-cv-00046 (LA) (E.D.Wis.) (*"The Court approves, as to form and content, the notice plan and finds that such notice is the best practicable under the circumstances under Federal Rule of Civil Procedure 23(c)(2)(B) and constitutes notice in a reasonable manner under Rule 23(e)(1)."*)

*Altieri v. Reebok*, No. 4:10-cv-11977 (FDS) (D.C.Mass.) (*"The Court finds that the notices … constitute the best practicable notice... The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices."*)

*Marenco v. Visa Inc.,* No. CV 10-08022 (DMG) (C.D.Cal.) (*"[T]he Court finds that the notice plan…meets the requirements of due process, California law, and  other applicable precedent. The Court finds that the proposed notice program is designed to provide the Class with the best notice practicable, under the circumstances of this action, of the pendency of this*

*litigation and of the proposed Settlement's terms, conditions, and procedures, and shall constitute due and sufficient notice to all persons entitled thereto under California law, the United States Constitution, and any other applicable law."*)

*Palmer v. Sprint Solutions, Inc.,* No. 09-cv-01211 (JLR) (W.D.Wa.) (*"The means of notice were reasonable and constitute due, adequate, and sufficient notice to all persons entitled to be provide3d with notice."*)

*In re: Tyson Foods, Inc., Chicken Raised Without Antibiotics Consumer Litigation*, No. 1:08-md-01982 RDB (D. Md. N. Div.) (*"The notice, in form, method, and content, fully complied with the requirements of Rule 23 and due process, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons entitled to notice of the settlement."*)

*Sager v. Inamed Corp. and McGhan Medical Breast Implant Litigation*, No. 01043771 (Sup. Ct. Cal., County of Santa Barbara) (*"Notice provided was the best practicable under the circumstances."*).

*Deke, et al. v. Cardservice Internat'l,* Case No. BC 271679, slip op. at 3 (Sup. Ct. Cal., County of Los Angeles) (*"The Class Notice satisfied the requirements of California Rules of Court 1856 and 1859 and due process and constituted the best notice practicable under the circumstances."*).

*Levine, et al. v. Dr. Philip C. McGraw, et al*., Case No. BC 312830 (Los Angeles County Super. Ct., Cal.) (*"[T]he plan for notice to the Settlement Class … constitutes the best notice practicable under the circumstances and constituted due and sufficient notice to the members of the Settlement Class … and satisfies the requirements of California law and federal due process of law."*).

*In re: Canadian Air Cargo Shipping Class Actions*,  Court File No. 50389CP, Ontario Superior Court of Justice, Supreme Court of British Columbia, Quebec Superior Court (*"I am satisfied the proposed form of notice meets the requirements of s. 17(6) of the CPA  and the proposed method of notice is appropriate."*).

*Fischer et al v. IG Investment Management, Ltd. et al*, Court File No. 06-CV-307599CP, Ontario Superior Court of Justice.

*In re: Vivendi Universal, S.A. Securities Litigation*, No. 02-cv-5571 (RJH)(HBP) (S.D.N.Y.).

*In re: Air Cargo Shipping Services Antitrust Litigation*, No. 06-MD-1775 (JG) (VV) (E.D.N.Y.).

*Berger, et al., v. Property ID Corporation, et al.*, No. CV 05-5373-GHK (CWx) (C.D.Cal.).

*Lozano v. AT&T Mobility Wireless*, No. 02-cv-0090 CAS (AJWx) (C.D.Cal.).

*Howard A. Engle, M.D., et al., v. R.J. Reynolds Tobacco Co., Philip Morris, Inc., Brown & Williamson Tobacco Corp.,* No. 94-08273 CA (22) (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Royal Dutch/Shell Transport Securities Litigation,* No. 04 Civ. 374 (JAP) (Consolidated Cases) (D. N.J.).

*In re: Epson Cartridge Cases, Judicial Council Coordination Proceeding*, No. 4347 (Sup. Ct. of Cal., County of Los Angeles).

*UAW v. General Motors Corporation*, No: 05-73991 (E.D.MI).

*Wicon, Inc. v. Cardservice Intern'l, Inc.*, BC 320215 (Sup. Ct. of Cal., County of Los Angeles).

*In re: SmithKline Beecham Clinical Billing Litig.*, No. CV. No. 97-L-1230 (Third Judicial Cir., Madison County, Ill.).  Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning billings for clinical laboratory testing services.

*MacGregor v. Schering-Plough Corp.,* No. EC248041 (Sup. Ct. Cal., County of Los Angeles).  This nationwide notification program was designed to reach all persons who had purchased or used an aerosol inhaler manufactured by Schering-Plough.  Because no mailing list was available, notice was accomplished entirely through the media program.

*In re: Swiss Banks Holocaust Victim Asset Litig.*, No. CV-96-4849 (E.D.N.Y.).  Ms. Finegan managed the design and implementation of the Internet site on this historic case.  The site was developed in 21 native languages.  It is a highly secure data gathering tool and information hub, central to the global outreach program of Holocaust survivors. www.swissbankclaims.com.

*In re: Exxon Valdez Oil Spill Litig.*, No. A89-095-CV (HRH) (Consolidated) (D. Alaska).  Ms. Finegan designed and implemented two media campaigns to notify native Alaskan residents, trade workers, fisherman, and others impacted by the oil spill of the litigation and their rights under the settlement terms.

*In re: Johns-Manville Phenolic Foam Litig.*, No. CV 96-10069 (D. Mass).  The nationwide multi-media legal notice program was designed to reach all Persons who owned any structure, including an industrial building, commercial building, school, condominium, apartment house, home, garage or other type of structure located in the United States or its territories, in which Johns-Manville PFRI was installed, in whole or in part, on top of a metal roof deck.

*Bristow v Fleetwood Enters Litig.*, No Civ 00-0082-S-EJL (D. Id).  Ms. Finegan designed and implemented a legal notice campaign targeting present and former employees of Fleetwood Enterprises, Inc., or its subsidiaries who worked as hourly production workers at Fleetwood's

housing, travel trailer, or motor home manufacturing plants. The comprehensive notice campaign included print, radio and television advertising.

***In re: New Orleans Tank Car Leakage Fire Litig.***, No 87-16374 (Civil Dist. Ct., Parish of Orleans, LA) (2000). This case resulted in one of the largest settlements in U.S. history.  This campaign consisted of a media relations and paid advertising program to notify individuals of their rights under the terms of the settlement.

***Garria Spencer v. Shell Oil Co.***, No. CV 94-074(Dist. Ct., Harris County, Tex.).  The nationwide notification program was designed to reach individuals who owned real property or structures in the United States, which contained polybutylene plumbing with acetyl insert or metal insert fittings.

***In re: Hurd Millwork Heat Mirror™ Litig.***, No. CV-772488 (Sup. Ct. of Cal., County of Santa Clara).  This nationwide multi-media notice program was designed to reach class members with failed heat mirror seals on windows and doors, and alert them as to the actions that they needed to take to receive enhanced warranties or window and door replacement.

***Laborers Dist. Counsel of Alabama Health and Welfare Fund v. Clinical Lab. Servs., Inc***, No. CV–97-C-629-W (N.D. Ala.). Ms. Finegan designed and developed a national media and Internet site notification program in connection with the settlement of a nationwide class action concerning alleged billing discrepancies for clinical laboratory testing services.

***In re: StarLink Corn Prods. Liab. Litig.***, No. 01-C-1181 (N.D. Ill)..  Ms. Finegan designed and implemented a nationwide notification program designed to alert potential class members of the terms of the settlement.

***In re: MCI Non-Subscriber Rate Payers Litig.***, MDL Docket No. 1275, 3:99-cv-01275 (S.D.Ill.). The advertising and media notice program, found to be "more than adequate" by the Court, was designed with the understanding that the litigation affected all persons or entities who were customers of record for telephone lines presubscribed to MCI/World Com, and were charged the higher non-subscriber rates and surcharges for direct-dialed long distance calls placed on those lines. www.rateclaims.com.

***In re: Albertson's Back Pay Litig.***, No. 97-0159-S-BLW (D.Id.).  Ms. Finegan designed and developed a secure Internet site, where claimants could seek case information confidentially.

***In re: Georgia Pacific Hardboard Siding Recovering Program***, No. CV-95-3330-RG (Cir. Ct., Mobile County, Ala.).  Ms. Finegan designed and implemented a multi-media legal notice program, which was designed to reach class members with failed G-P siding and alert them of the pending matter. Notice was provided through advertisements, which aired on national cable networks, magazines of nationwide distribution, local newspaper, press releases and trade magazines.

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.**, Nos. 1203, 99-20593.   Ms. Finegan worked as a consultant to the National Diet Drug Settlement Committee on notification issues.   The resulting notice program was described and complimented at length in the Court's Memorandum and Pretrial Order 1415, approving the settlement,

*In re: Diet Drugs* **(Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.**, 2000 WL 1222042, Nos. 1203, 99-20593 (E.D.Pa. Aug. 28, 2002).

Ms. Finegan designed the Notice programs for multiple state antitrust cases filed against the Microsoft Corporation.  In those cases, it was generally alleged that Microsoft unlawfully used anticompetitive means to maintain a monopoly in markets for certain software, and that as a result, it overcharged consumers who licensed its MS-DOS, Windows, Word, Excel and Office software. The multiple legal notice programs designed by Jeanne Finegan and listed below targeted both individual users and business users of this software.  The scientifically designed notice programs took into consideration both media usage habits and demographic characteristics of the targeted class members.

*In re: Florida Microsoft Antitrust Litig. Settlement*, No.  99-27340 CA 11 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

*In re: Montana Microsoft Antitrust Litig. Settlement*, No. DCV 2000 219 (First Judicial Dist. Ct., Lewis & Clark Co., Mt.).

*In re: South Dakota Microsoft Antitrust Litig. Settlement*, No. 00-235(Sixth Judicial Cir., County of Hughes, S.D.).

*In re: Kansas Microsoft Antitrust Litig. Settlement*, No. 99C17089 Division No. 15 Consolidated Cases (Dist. Ct., Johnson County, Kan.) ("The Class Notice provided was the best notice practicable under the circumstances and fully complied in all respects with the requirements of due process and of the Kansas State. Annot. §60-22.3.").

*In re: North Carolina Microsoft Antitrust Litig. Settlement*, No. 00-CvS-4073 (Wake) 00-CvS-1246 (Lincoln) (General Court of Justice Sup. Ct., Wake and Lincoln Counties, N.C.).

*In re: ABS II Pipes Litig.*, No. 3126 (Sup. Ct. of Cal., Contra Costa County). The Court approved regional notification program designed to alert those individuals who owned structures with the pipe that they were eligible to recover the cost of replacing the pipe.

*In re: Avenue A Inc. Internet Privacy Litig.*, No: C00-1964C (W.D. Wash.).

*In re: Lorazepam and Clorazepate Antitrust Litig.*, No. 1290 (TFH) (D.C.C.).

*In re: Providian Fin. Corp. ERISA Litig.*, No C-01-5027 (N.D. Cal.).

***In re: H & R Block., et al Tax Refund Litig.***, No. 97195023/CC4111 (MD Cir. Ct., Baltimore City).

***In re: American Premier Underwriters, Inc, U.S. Railroad Vest Corp.***, No. 06C01-9912 (Cir. Ct., Boone County, Ind.).

***In re: Sprint Corp. Optical Fiber Litig.***, No: 9907 CV 284 (Dist. Ct., Leavenworth County, Kan).

***In re: Shelter Mutual Ins. Co. Litig.***, No. CJ-2002-263 (Dist.Ct., Canadian County. Ok).

***In re: Conseco, Inc. Sec. Litig.***, No: IP-00-0585-C Y/S CA (S.D. Ind.).

***In re: Nat'l Treasury Employees Union, et al.***, 54 Fed. Cl. 791 (2002).

***In re: City of Miami Parking Litig.***, Nos. 99-21456 CA-10, 99-23765 – CA-10 (11th Judicial Dist. Ct. of Miami-Dade County, Fla.).

***In re: Prime Co. Incorporated D/B/A/ Prime Co. Personal Comm.***, No. L 1:01CV658 (E.D. Tx.).

***Alsea Veneer v. State of Oregon A.A.***, No. 88C-11289-88C-11300.

**HEFFLER CLAIMS**
Group

**INTERNATIONAL EXPERIENCE**

*Bell v. Canadian Imperial Bank of Commerce*, et al, Court File No.: CV-08-359335 (Ontario Superior Court of Justice); (2016).

*In re: Canadian Air Cargo Shipping Class Actions* (Ontario Superior Court of Justice, Court File No. 50389CP, Supreme Court of British Columbia.

*In re: Canadian Air Cargo Shipping Class Actions*  Québec Superior Court).

*Fischer v. IG Investment Management LTD.*, No. 06-CV-307599CP (Ontario Superior Court of Justice).

*In Re Nortel I & II Securities Litigation*, Civil Action No. 01-CV-1855 (RMB), Master File No. 05 MD 1659 (LAP) (S.D.N.Y. 2006).

*Frohlinger v. Nortel Networks Corporation* et al., Court File No.: 02-CL-4605 (Ontario Superior Court of Justice).

*Association de Protection des Épargnants et Investissuers du Québec v. Corporation Nortel Networks*, No.: 500-06-0002316-017 (Superior Court of Québec).

*Jeffery v. Nortel Networks Corporation* et al., Court File No.: S015159 (Supreme Court of British Columbia).

*Gallardi v. Nortel Networks Corporation*, No. 05-CV-285606CP (Ontario Superior Court).

*Skarstedt v. Corporation Nortel Networks*, No. 500-06-000277-059 (Superior Court of Québec).

**SEC ENFORCEMENT NOTICE PROGRAM EXPERIENCE**

*SEC v. Vivendi Universal, S.A., et al.,* Case No. 02 Civ. 5571 (RJH) (HBP) (S.D.N.Y.).
The Notice program included publication in 11 different countries and eight different languages.

*SEC v. Royal Dutch Petroleum Company*, No.04-3359 (S.D. Tex.)

**Heffler Claims**
Group

### FEDERAL TRADE COMMISSION NOTICE PROGRAM EXPERIENCE

***FTC v. TracFone Wireless, Inc.****,* Case No. 15-cv-00392-EMC.

***FTC v. Skechers U.S.A., Inc.,*** No. 1:12-cv-01214-JG (N.D. Ohio).

***FTC  v. Reebok International Ltd.***,  No. 11-cv-02046 (N.D. Ohio)

***FTC v. Chanery and RTC Research and Development LLC [Nutraquest]***, No :05-cv-03460 (D.N.J.)

### BANKRUPTCY EXPERIENCE

Ms. Finegan has designed and implemented hundreds of domestic and international bankruptcy notice programs.  A sample case list includes the following:

**In Re: PG&E Corporation Case**  No . 19-30088 Bankr. N.D. Cal. 2019). Hearing Establishing, Deadline for Filing Proofs of Claim, (II) establishing the  Form and Manner of  Notice Thereof, and (III) Approving Procedures for Providing Notice of Bar  Date and Other Information to all Creditors and Potential  Creditors PG&E. *June 26, 2019,  Transcript of Hearing  p. 21:1, the Honorable Dennis Montali stated: **…the technology and the thought that goes into all these plans is almost incomprehensible.  He further stated,   p. 201:20 … Ms. Finegan has really impressed me today…***

***In re AMR Corporation [American Airlines], et al.***, No. 11-15463 (SHL) (Bankr. S.D.N.Y.) **(***"due and proper notice [was] provided, and … no other or further notice need be provided."*)

***In re Jackson Hewitt Tax Service Inc.***, et al., No 11-11587 (Bankr. D.Del.) (2011). The debtors sought to provide notice of their filing as well as the hearing to approve their disclosure statement and confirm their plan to a large group of current and former customers, many of whom current and viable addresses promised to be a difficult (if not impossible) and costly undertaking. The court approved a publication notice program designed and implemented by Finegan and the administrator, that included more than 350 local newspaper and television websites, two national online networks (24/7 Real Media, Inc. and Microsoft Media Network), a website notice linked to a press release and notice on eight major websites, including CNN and Yahoo. These online efforts supplemented the print publication and direct-mail notice provided to known claimants and their attorneys, as well as to the state attorneys general of all 50 states. The *Jackson Hewitt* notice program constituted one of the first large chapter 11 cases to incorporate online advertising.

***In re: Nutraquest Inc.***, No. 03-44147 (Bankr. D.N.J.)

***In re: General Motors Corp. et al***, No. 09-50026 (Bankr. S.D.N.Y.).  This case is the 4th largest bankruptcy in U.S. history.   Ms. Finegan and her team worked with General Motors restructuring attorneys to design and implement the legal notice program.

*In re: ACandS, Inc.,* No. 0212687 (Bankr. D.Del.) (2007) (*"Adequate notice of the Motion and of the hearing on the Motion was given."*).

*In re: United Airlines*, No. 02-B-48191 (Bankr. N.D Ill.).  Ms. Finegan worked with United and its restructuring attorneys to design and implement global legal notice programs.  The notice was published in 11 countries and translated into 6 languages. Ms. Finegan worked closely with legal counsel and UAL's advertising team to select the appropriate media and to negotiate the most favorable advertising rates. www.pd-ual.com.

*In re: Enron*, No. 01-16034 (Bankr. S.D.N.Y.).  Ms. Finegan worked with Enron and its restructuring attorneys to publish various legal notices.

*In re: Dow Corning,* No. 95-20512 (Bankr. E.D. Mich.).  Ms. Finegan originally designed the information website.  This Internet site is a major information hub that has various forms in 15 languages.

*In re: Harnischfeger Inds.*, No. 99-2171 (RJW) Jointly Administered (Bankr. D. Del.).  Ms. Finegan designed and implemented 6 domestic and international notice programs for this case. The notice was translated into 14 different languages and published in 16 countries.

*In re: Keene Corp.*, No. 93B 46090 (SMB), (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple domestic bankruptcy notice programs including notice on the plan of reorganization directed to all creditors and all Class 4 asbestos-related claimants and counsel.

*In re: Lamonts*, No. 00-00045 (Bankr. W.D. Wash.).  Ms. Finegan designed an implemented multiple bankruptcy notice programs.

*In re: Monet Group Holdings*, Nos. 00-1936 (MFW) (Bankr. D. Del.).  Ms. Finegan designed and implemented a bar date notice.

*In re: Laclede Steel Co.*, No. 98-53121-399 (Bankr. E.D. MO.).  Ms. Finegan designed and implemented multiple bankruptcy notice programs.

*In re: Columbia Gas Transmission Corp.*, No. 91-804 (Bankr. S.D.N.Y.).  Ms. Finegan developed multiple nationwide legal notice notification programs for this case.

*In re: U.S.H. Corp. of New York, et al*. (Bankr. S.D.N.Y)  Ms. Finegan designed and implemented a bar date advertising notification campaign.

*In re: Best Prods. Co., Inc.,* No. 96-35267-T, (Bankr. E.D. Va.). Ms. Finegan implemented a national legal notice program that included multiple advertising campaigns for notice of sale, bar date, disclosure and plan confirmation.

**Heffler Claims Group**

*In re: Lodgian, Inc., et al.*, No. 16345 (BRL) Factory Card Outlet – 99-685 (JCA), 99-686 (JCA) (Bankr. S.D.N.Y.)

*In re: Internat'l Total Servs, Inc., et al.*, Nos. 01-21812, 01-21818, 01-21820, 01-21882, 01-21824, 01-21826, 01-21827 (CD) Under Case No: 01-21812 (Bankr. E.D.N.Y.)

*In re: Decora Inds., Inc. and Decora, Incorp.*, Nos. 00-4459 and 00-4460 (JJF) (Bankr. D. Del.).

*In re: Genesis Health Ventures, Inc., et al*, No. 002692 (PJW) (Bankr. D. Del.).

*In re: Tel. Warehouse, Inc., et al*, No. 00-2105 through 00-2110 (MFW) (Bankr. D. Del.).

*In re: United Cos. Fin. Corp., et al*, No. 99-450 (MFW) through 99-461 (MFW) (Bankr. D. Del.).

*In re: Caldor, Inc. New York, The Caldor Corp., Caldor, Inc. CT, et al.*, No. 95-B44080 (JLG) (Bankr. S.D.N.Y.).

*In re: Physicians Health Corp., et al.*, No. 00-4482 (MFW) (Bankr. D. Del.).

*In re: GC Cos., et al.*, Nos. 00-3897 through 00-3927 (MFW) (Bankr. D. Del.).

*In re: Heilig-Meyers Co., et al.*, Nos. 00-34533 through 00-34538 (Bankr. E.D. Va.).

## PRODUCT RECALL AND CRISIS COMMUNICATION EXPERIENCE

***Reser's Fine Foods.*** Reser's is a nationally distributed brand and manufacturer of food products through giants such as Albertsons, Costco, Food Lion, WinnDixie, Ingles, Safeway and Walmart. Ms. Finegan designed an enterprise-wide crisis communication plan that included communications objectives, crisis team roles and responsibilities, crisis response procedures, regulatory protocols, definitions of incidents that require various levels of notice, target audiences, and threat assessment protocols.  Ms. Finegan worked with the company through two nationwide, high profile recalls, conducting extensive media relations efforts.

***Gulf Coast Claims Facility Notice Campaign.*** Finegan coordinated a massive outreach effort throughout the Gulf Coast region to notify those who have claims as a result of damages caused by the Deep Water Horizon Oil spill.  The notice campaign included extensive advertising in newspapers throughout the region, Internet notice through local newspaper, television and radio websites and media relations. The Gulf Coast Claims Facility (GCCF) was an independent claims facility, funded by BP, for the resolution of claims by individuals and businesses for damages incurred as a result of the oil discharges due to the Deepwater Horizon incident on April 20, 2010.

**Heffler Claims Group**

***City of New Orleans Tax Revisions, Post-Hurricane Katrina.***  In 2007, the City of New Orleans revised property tax assessments for property owners.  As part of this process, it received numerous appeals to the assessments.  An administration firm served as liaison between the city and property owners, coordinating the hearing schedule and providing important information to property owners on the status of their appeal.  Central to this effort was the comprehensive outreach program designed by Ms. Finegan, which included a website and a heavy schedule of television, radio and newspaper advertising, along with the coordination of key news interviews about the project picked up by local media.

<u>**ARTICLES**</u>

Author, "Creating a Class Notice Program that Satisfies Due Process" Law360, New York, (February 13, 2018 12:58 PM ET).

Author, "3 Considerations for Class Action Notice Brand Safety" Law360, New York, (October 2, 2017  12:24 PM ET).

Author, "What Would Class Action Reform Mean for Notice?"  Law360, New York, (April 13, 2017 11:50 AM ET).

Author, "Bots Can Silently Steal your Due Process Notice."  Wisconsin Law Journal, April 2017.

Author, "*Don't Turn a Blind Eye to Bots*. Ad Fraud and Bots are a Reality of the Digital Environment." LinkedIn article March 6, 2107.

Co-Author,  "Modern Notice Requirements Through the Lens of *Eisen* and *Mullane"* – Bloomberg - BNA Class Action Litigation Report, 17 CLASS 1077, (October 14, 2016).

Author, "Think All Internet Impressions Are The Same? Think Again" – Law360.com, New York (March 16, 2016, 3:39 ET).

Author, "Why Class Members Should See an Online Ad More Than Once" – Law360.com, New York, (December 3, 2015, 2:52 PM ET).

Author, 'Being 'Media-Relevant' — What It Means and Why It Matters - Law360.com, New York (September 11, 2013, 2:50 PM ET).

Co-Author, "New Media Creates New Expectations for Bankruptcy Notice Programs," ABI Journal, Vol. XXX, No 9, (November 2011).

Quoted Expert,  "Effective Class Action Notice Promotes Access to Justice: Insight from a New U.S. Federal Judicial Center Checklist," Canadian Supreme Court Law Review,  (2011), 53 S.C.L.R. (2d).

Co-Author, with Hon. Dickran Tevrizian – "Expert Opinion: It's More Than Just a Report…Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," BNA Class Action Litigation Report, 12 CLASS 464, May 27, 2011.

Co-Author, with Hon. Dickran Tevrizian, Your Insight, "Expert Opinion: It's More Than Just a Report -Why Qualified Legal Experts Are Needed to Navigate the Changing Media Landscape," TXLR, Vol. 26, No. 21, May 26, 2011.

Quoted Expert, "Analysis of the FJC's 2010 Judges' Class Action Notice and Claims Process Checklist and Guide:  A New Roadmap to Adequate Notice and Beyond," BNA Class Action Litigation Report, 12 CLASS 165, February 25, 2011.

Author, Five Key Considerations for a Successful International Notice Program, BNA Class Action Litigation Report, April, 9, 2010 Vol. 11, No. 7 p. 343.

Quoted Expert, "Communication Technology Trends Pose Novel Notification Issues for Class Litigators," BNA Electronic Commerce and Law, 15 ECLR 109 January 27, 2010.

Author, "Legal Notice: R U ready 2 adapt?" BNA Class Action Report, Vol. 10 Class 702, July 24, 2009.

Author, "On Demand Media Could Change the Future of Best Practicable Notice," BNA Class Action Litigation Report, Vol. 9, No. 7, April 11, 2008, pp. 307-310.

Quoted Expert, "Warranty Conference: Globalization of Warranty and Legal Aspects of Extended Warranty," Warranty Week, warrantyweek.com/archive/ww20070228.html/ February 28, 2007.

Co-Author, "Approaches to Notice in State Court Class Actions," For The Defense, Vol. 45, No. 11, November, 2003.

Citation, "Recall Effectiveness Research: A Review and Summary of the Literature on Consumer Motivation and Behavior," U.S. Consumer Product Safety Commission, CPSC-F-02-1391, p.10, Heiden Associates, July 2003.

Author, "The Web Offers Near, Real-Time Cost Efficient Notice," American Bankruptcy Institute, ABI Journal, Vol. XXII, No. 5., 2003.

Author, "Determining Adequate Notice in Rule 23 Actions," For The Defense, Vol. 44, No. 9 September, 2002.

Author, "Legal Notice, What You Need to Know and Why," Monograph, July 2002.

Co-Author, "The Electronic Nature of Legal Noticing," The American Bankruptcy Institute Journal, Vol. XXI, No. 3, April 2002.

Author, "Three Important Mantras for CEO's and Risk Managers," - International Risk Management Institute, irmi.com, January 2002.

Co-Author, "Used the Bat Signal Lately," The National Law Journal, Special Litigation Section, February 19, 2001.

Author, "How Much is Enough Notice," Dispute Resolution Alert, Vol. 1, No. 6. March 2001.

Author, "Monitoring the Internet Buzz," The Risk Report, Vol. XXIII, No. 5, Jan. 2001.

Author, "High-Profile Product Recalls Need More Than the Bat Signal," - International Risk Management Institute, irmi.com, July 2001.

Co-Author, "Do You Know What 100 Million People are Buzzing About Today?" Risk and Insurance Management, March 2001.

Quoted Article, "Keep Up with Class Action," Kentucky Courier Journal, March 13, 2000.

Author, "The Great Debate - How Much is Enough Legal Notice?" American Bar Association – Class Actions and Derivatives Suits Newsletter, winter edition 1999.

## SPEAKER/EXPERT PANELIST/PRESENTER

| | |
|---|---|
| Chief Litigation Counsel Association (CLCA) | Speaker, "Four Factors Impacting the Cost of Your Class Action Settlement and Notice," Houston TX, May 1, 2019 |
| CLE Webinar | "Rule 23 Changes to Notice, Are You Ready for the Digital Wild, Wild West?" October 23, 2018,  https://bit.ly/2RIRvZq |
| American Bar Assn. | Faculty Panelist, 4th Annual Western Regional CLE Class Actions, "Big Brother, Information Privacy, and Class Actions: How Big Data and Social Media are Changing the Class Action Landscape" San Francisco, CA  June, 2018. |
| Miami Law Class Action & Complex Litigation Forum | Faculty Panelist, " Settlement and Resolution of Class Actions," Miami, FL December 2, 2016. |
| The Knowledge Group | Faculty Panelist, "Class Action Settlements: Hot Topics 2016 and Beyond," Live Webcast, www.theknowledgegroup.org, October 2016. |

**Heffler Claims** Group

| | |
|---|---|
| ABA National Symposium | Faculty Panelist, "Ethical Considerations in Settling Class Actions," New Orleans, LA, March 2016. |
| S.F. Banking Attorney Assn. | Speaker, "How a Class Action Notice can Make or Break your Client's Settlement," San Francisco, CA, May 2015. |
| Perrin Class Action Conf. | Faculty Panelist, "Being Media Relevant, What It Means and Why It Matters – The Social Media Evolution: Trends, Challenges and Opportunities," Chicago, IL May 2015. |
| Bridgeport Continuing Ed. | Speaker, Webinar "Media Relevant in the Class Notice Context." July, 2014. |
| Bridgeport Continuing Ed. | Faculty Panelist, "Media Relevant in the Class Notice Context." Los Angeles, California, April 2014. |
| CASD 5th Annual | Speaker, "The Impact of Social Media on Class Action Notice." Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, September 2012. |
| Law Seminars International | Speaker, "Class Action Notice: Rules and Statutes Governing FRCP (b)(3) Best Practicable… What constitutes a best practicable notice? What practitioners and courts should expect in the new era of online and social media."  Chicago, IL, October 2011. ***Voted by attendees as one of the best presentations given.*** |
| CASD 4th Annual | Faculty Panelist, "Reasonable Notice - Insight for practitioners on the FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. Consumer Attorneys of San Diego Class Action Symposium, San Diego, California, October 2011. |
| CLE International | Faculty Panelist, Building a Workable Settlement Structure, CLE International, San Francisco, California May, 2011. |
| CASD | Faculty Panelist, "21st Century Class Notice and Outreach." 3nd Annual Class Action Symposium CASD Symposium, San Diego, California, October 2010. |
| CASD | Faculty Panelist, "The Future of Notice." 2nd Annual Class Action Symposium CASD Symposium, San Diego California, October 2009. |
| American Bar Association | Speaker, 2008 Annual Meeting, "Practical Advice for Class Action Settlements:  The Future of Notice In the United States and Internationally – Meeting the Best Practicable Standard." |

**Heffler Claims**
Group

|  | Section of Business Law Business and Corporate Litigation Committee – Class and Derivative Actions Subcommittee, New York, NY, August 2008. |
|---|---|
| Women Lawyers Assn. | Faculty Panelist, Women Lawyers Association of Los Angeles "The Anatomy of a Class Action." Los Angeles, CA, February, 2008. |
| Warranty Chain Mgmt. | Faculty Panelist, Presentation Product Recall Simulation.  Tampa, Florida, March 2007. |
| Practicing Law Institute. | Faculty Panelist, CLE Presentation, 11th Annual Consumer Financial Services Litigation. Presentation: Class Action Settlement Structures – Evolving Notice Standards in the Internet Age.  New York/Boston (simulcast), NY March 2006; Chicago, IL April 2006 and San Francisco, CA, May 2006. |
| U.S. Consumer Product Safety Commission | Ms. Finegan participated as an invited expert panelist to the CPSC to discuss ways in which the CPSC could enhance and measure the recall process. As a panelist, Ms Finegan discussed how the CPSC could better motivate consumers to take action on recalls and how companies could scientifically measure and defend their outreach efforts.  Bethesda, MD, September 2003. |
| Weil, Gotshal & Manges | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." New York, June 2003. |
| Sidley & Austin | Presenter, CLE presentation, "A Scientific Approach to Legal Notice Communication." Los Angeles, May 2003. |
| Kirkland & Ellis | Speaker to restructuring group addressing "The Best Practicable Methods to Give Notice in a Tort Bankruptcy." Chicago, April 2002. |
| Georgetown University Law | Faculty, CLE White Paper: "What are the best practicable methods to Center Mass Tort Litigation give notice? Dispelling the communications myth – A notice Institute disseminated is a notice communicated," Mass Tort Litigation Institute. Washington D.C., November, 2001. |
| American Bar Association | Presenter, "How to Bullet-Proof Notice Programs and What Communication Barriers Present Due Process Concerns in Legal Notice," ABA Litigation Section Committee on Class Actions & Derivative Suits. Chicago, IL, August 6, 2001. |

**Heffler Claims**
Group

| McCutchin, Doyle, Brown | Speaker to litigation group in San Francisco and simulcast to four other McCutchin locations, addressing the definition of effective notice and barriers to communication that affect due process in legal notice.  San Francisco, CA, June 2001. |
| --- | --- |
| Marylhurst University | Guest lecturer on public relations research methods. Portland, OR, February 2001. |
| University of Oregon | Guest speaker to MBA candidates on quantitative and qualitative research for marketing and communications programs. Portland, OR, May 2001. |
| Judicial Arbitration & Mediation Services (JAMS) | Speaker on the definition of effective notice.  San Francisco and Los Angeles, CA, June 2000. |
| International Risk Management Institute | Past Expert Commentator on Crisis and Litigation Communications. www.irmi.com. |
| The American Bankruptcy Institute Journal (ABI) | Past Contributing Editor – Beyond the Quill. www.abi.org. |

## BACKGROUND

Ms Finegan's past experience includes working in senior management for leading Class Action Administration firms including The Garden City Group ("GCG") and Poorman-Douglas Corp., ("EPIQ"). Ms. Finegan co-founded Huntington Advertising, a nationally recognized leader in legal notice communications.  After Fleet Bank purchased her firm in 1997, she grew the company into one of the nation's leading legal notice communication agencies.

Prior to that, Ms. Finegan spearheaded Huntington Communications, (an Internet development company) and The Huntington Group, Inc., (a public relations firm).  As a partner and consultant, she has worked on a wide variety of client marketing, research, advertising, public relations and Internet programs.  During her tenure at the Huntington Group, client projects included advertising (media planning and buying), shareholder meetings, direct mail, public relations (planning, financial communications) and community outreach programs. Her past client list includes large public and privately held companies: Code-A-Phone Corp., Thrifty-Payless Drug Stores, Hyster-Yale, The Portland Winter Hawks Hockey Team, U.S. National Bank, U.S. Trust Company, Morley Capital Management, and Durametal Corporation.

Prior to Huntington Advertising, Ms. Finegan worked as a consultant and public relations specialist for a West Coast-based Management and Public Relations Consulting firm.

Additionally, Ms. Finegan has experience in news and public affairs. Her professional background includes being a reporter, anchor and public affairs director for KWJJ/KJIB radio in

**Heffler Claims**
Group

Portland, Oregon, as well as reporter covering state government for KBZY radio in Salem, Oregon. Ms. Finegan worked as an assistant television program/promotion manager for KPDX directing $50 million in programming.  She was also the program/promotion manager at KECH-22 television.

Ms. Finegan's multi-level communication background gives her a thorough, hands-on understanding of media, the communication process, and how it relates to creating effective and efficient legal notice campaigns.

## MEMBERSHIPS, PROFESSIONAL CREDENTIALS

**APR**     Accredited. Universal Board of Accreditation Public Relations Society of America
- **Member of the Public Relations Society of America**
- **Member Canadian Public Relations Society**


**Board of Directors - Alliance for Audited Media**
Alliance for Audited Media ("AAM") is the recognized leader in cross-media verification. It was founded in 1914 as the Audit Bureau of Circulations (ABC) to bring order and transparency to the media industry. Today, more than 4,000 publishers, advertisers, agencies and technology vendors depend on its data-driven insights, technology certification audits and information services to transact with trust.

---

## SOCIAL MEDIA

*LinkedIn:* **www.linkedin.com/in/jeanne-finegan-apr-7112341b**

# Exhibit B



*Packaged Seafood Products Antitrust Litigation*
c/o Settlement Administrator
PO Box 8267
Philadelphia, PA 19101-8267

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, ST
PERMIT NO. XXXX

**Deadline to Submit Claim: Month Day, 2020**

Personalized Claim Form Enclosed

Did You Purchase Packaged Tuna Products in
containers 40 oz or more from Costco, DOT
Foods, Sysco, US Foods, Sam's Club, or
Wal-Mart between June 1, 2011
through December 31, 2016.

You may be Eligible for Payment

www.PackagedSeafoodAntitrustCFPClass.com

<<Barcode>>

Class Member ID: <<Refnum>>

<<FirstName>> <<LastName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

[BARCODE AREA]

**We have records showing that you or your company purchased Foodservice-Size Packaged Tuna Products (40-ounces or larger) from DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco, and may be entitled to a litigation class action and settlement.**

**What is this about?** The lawsuit, known *as In re: Packaged Seafood Products Antitrust Litigation*, No. 15-2670 (S.D. Cal.), alleges that Defendants Tri-Union Seafoods, LLC d/b/a Chicken of the Sea International and Thai Union Group PCL (collectively, "COSI Defendants") along with defendants Bumble Bee Foods, LLC, StarKist Company, and certain related parent entities of Bumble Bee and StarKist (collectively "Defendants") conspired to fix, raise, and maintain the prices of Packaged Tuna Products and that this resulted in purchasers paying more than they otherwise would have. The Court has certified a Litigation Class in the lawsuit, and you have been identified as a Commercial Food Preparer ("CFP") Class Member. While denying liability, the COSI Defendants have agreed to a Settlement with the CFP Class to avoid the time and expense of legal proceedings. The Court has not yet ruled on approval of the Settlement.

**Who is a Class Member?** You have been identified as a Class Member as a purchaser of Foodservice-Size Packaged Tuna Products from DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco from June 1, 2011 through December 31, 2016.

**What are the benefits?** The COSI Defendants have agreed to pay $6,500,000 to provide for eligible Claim benefits, Class Counsel fees, administration fees and expenses, and Representative Service Awards. Payments will be based on a plan of allocation which is detailed on the Settlement website.

**What are my rights? Do Nothing:** You will receive a pro rata share of the Net Settlement Funds based on purchase noted below and your claims will be resolved through this action and settlement.

**File a Claim:** To receive payment from this Settlement, you do not need to do anything if you agree with the below purchase values. These purchases values are from DOT, US Foods, _____, and _____ and will be used to determine your pro rata percentage of the Net Settlement Fund. If you do not agree with your purchase values, you must file a claim online or by mail postmarked by MONTH DAY 2020. **Exclude from the Litigation Class:** Receive no benefits from this litigation by excluding yourself from the Litigation Class, but you keep your right to sue any or all of the defendants about these same claims. **Exclude from the Settlement, but not the Litigation Class:** You will be included in future settlements with the non-settling Defendants and keep your right to sue COSI Defendants but will get nothing from this Settlement. All exclusions must be postmarked by MONTH DAY 2020. **Object to the Settlement:** Objections must be postmarked by MONTH DAY 2020.

**Further information about Filing a Claim, Excluding, and Objecting are on the website.**

The Fairness Hearing will be held at the Edward J. Schwartz Courthouse, 221 West Broadway, San Diego, CA 92101 in Courtroom _____, on MONTH DAY 2020 at 00:00 a./p.m. to determine approval of the Settlement, award of attorneys' fees and expenses plus Representative Service Awards of up to $10,000 per class representative, altogether not to exceed $3,000,000, less than half of the $6,500,000 Settlement Fund. The motion for fees and expenses will be posted on the website below after they are filed. Call 1-833-927-0821 or write: Packaged Seafood Products Antitrust Litigation – CFP Class, c/o Settlement Administrator, P.O. Box 8267, Philadelphia, PA 19101-8267 for more information.

**This is only a summary.**   **Visit:** www.PackagedSeafoodAntitrustCFPClass.com   or   **Call:** 1-833-927-0821

*Packaged Seafood Products Antitrust Litigation*
c/o Settlement Administrator
PO Box 8267
Philadelphia, PA 19101-8267

<<Barcode>>

Class Member Id: <<RefNum>>

**CLAIM FORM**

Entity / Name: _____

Phone Number: (_____)_____-_____Email Address_____@_____._____

☐ Check Box if you have a new address and provide: _____

_____

**Instructions: To receive payment, you do not need to do anything if you agree with the purchase values below that were obtained from DOT, US Foods, ____, and _____. If you do not, then you must fill out the dispute option below, provide proof of purchase for the amount you claim, sign and return this card with your documentation.**

**Purchase amounts from DOT, US Foods, _____, and _____:** $_____

☐ **I dispute the purchase values above:** I do not agree with the above amount being used for my pro rata determination and am submitting documentation which includes proof of purchases to support my claim of purchases totaling:

$_____

**By checking the box above, I am disputing the above purchase value and providing documentation. Should I fail to support my asserted claim value, my purchase value will revert to the amount listed above.**

Signature:_____ Date:_____/_____/_____

Printed Name:_____ Title: _____



*Packaged Seafood Products Antitrust Litigation*
c/o Settlement Administrator
PO Box 8267
Philadelphia, PA 19101-8267

FIRST-CLASS MAIL
U.S. POSTAGE PAID
CITY, ST
PERMIT NO. XXXX

**Deadline to Submit Claim: Month Day, 2020**

Personalized Claim Form Enclosed

Did You Purchase Packaged Tuna Products in
containers 40 oz or more from Costco, DOT
Foods, Sysco, US Foods, Sam's Club, or
Wal-Mart between June 1, 2011
through December 31, 2016.

You may be Eligible for Payment

www.PackagedSeafoodAntitrustCFPClass.com

<<Barcode>>

Class Member ID: <<Refnum>>

<<FirstName>> <<LastName>>
<<Address>>
<<Address2>>
<<City>>, <<ST>> <<Zip>>-<<zip4>>

[BARCODE AREA]

**We have records showing that you or your company purchased Foodservice-Size Packaged Tuna Products (40-ounces or larger) from DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco from 2011 and may be affected by a litigation class action and settlement.**

**What is this about?** The lawsuit, known *as In re: Packaged Seafood Products Antitrust Litigation*, No. 15-2670 (S.D. Cal.), alleges that Defendants Tri-Union Seafoods, LLC d/b/a Chicken of the Sea International and Thai Union Group PCL (collectively, "COSI" Defendants") along with defendants Bumble Bee Foods, LLC, StarKist Company, and certain related parent entities of Bumble Bee and StarKist (collectively "Defendants") conspired to fix, raise, and maintain the prices of Packaged Tuna Products and that this resulted in purchasers paying more than they otherwise would have. The Court has certified a Litigation Class in the lawsuit, and you have been identified as a Commercial Food Preparer ("CFP") Class Member. While denying liability, the COSI Defendants have collectively agreed to a Settlement with the CFP Class to avoid the time and expense of legal proceedings. The Court has not yet ruled on approval of the Settlement.

**Who is a Class Member?** You have been identified as a Class Member as a purchaser of Foodservice-Size Packaged Tuna Products from DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco from June 1, 2011 through December 31, 2016.

**What are the benefits?** The COSI Defendants have agreed to pay $6,500,000 to provide for eligible Claim benefits, Class Counsel fees, administration fees and expenses, and Representative Service Awards. Payments will be based on a plan of allocation which is detailed on the Settlement website.

**What are my rights? Do Nothing:** You will not receive a pro rata share of the Net Settlement Funds and you will lose your right to sue the COSI Defendants for these claims in a separate action.

**File a Claim:** To receive payment from this Settlement, you must file a Claim and include proof of the purchases you claim. You can file a claim online or by mail postmarked by MONTH DAY 2020.

**Exclude from the Litigation Class:** Receive no benefits from this litigation by excluding yourself from the Litigation Class, but you keep your right to sue any or all of the defendants about these same claims.

**Exclude from the Settlement, but not the Litigation Class:** You will be included in future settlements with the non-settling Defendants and keep your right to sue COSI Defendants, but will get nothing from this Settlement. All exclusions must be postmarked by MONTH DAY 2020.

**Object to the Settlement:** Objections must be postmarked by MONTH DAY 2020.

**Further information about Filing a Claim, Excluding, and Objecting are on the website.**

The Fairness Hearing will be held at the Edward J. Schwartz Courthouse, 221 West Broadway, San Diego, CA 92101 in Courtroom ____, on MONTH DAY 2020 at 00:00 a./p.m. to determine approval of the Settlement, award of attorneys' fees and expenses plus Representative Service Awards of up to $10,000 per class representative, altogether not to exceed $3,000,000, less than half of the $6,500,000 Settlement Fund. The motion for fees and expenses will be posted on the website before they are filed. Call 1-833-927-0821 or write: Packaged Seafood Products Antitrust Litigation – CFP Class, c/o Settlement Administrator, P.O. Box 8267, Philadelphia, PA 19101-8267 for more information.

**This is only a summary.**     **Visit:** www.PackagedSeafoodAntitrustCFPClass.com     **Call:** 1-833-927-0821

*Packaged Seafood Products Antitrust Litigation*
c/o Settlement Administrator
PO Box 8267
Philadelphia, PA 19101-8267

<<Barcode>>

**CLAIM FORM**

Class Member Id: <<RefNum>>

Entity / Name:

Phone Number: (_____)_____-_____ Email Address_____@_____ . _____

☐ Check Box if you have a new address and provide:

**Instructions: To receive payment, you must file a claim. You have been listed as a purchaser in the DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco records. If you file a claim, you will receive a pro rata share of the Net Settlement Fund based on your validated purchases of Foodservice-Size Packaged Tuna Products (40-ounces or larger) from DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco.**

**Claimed Purchase amounts**: $_____

I am submitting, along with this card, business records to validate the claim amount above. Such records may include purchase orders, receipts, business records, or the like.

Signature:_____ Date:_____/_____/ _____

Printed Name:_____ Title: _____

# Exhibit C



# Exhibit D

**If you or your company purchased Foodservice-Size Packaged Tuna Products directly from DOT Foods, Sysco, US Foods, Sam's Club, Walmart, or Costco from June 1, 2011 through December 31, 2016, you could be affected by a Class Action Lawsuit**

City, State, Month Day, year /PR Newswire/ -- The following statement is being issued by Cuneo Gilbert & LaDuca, LLP regarding the certification of a litigation class and a class action settlement in *In re Packaged Seafood Products Antitrust Litigation*, No. 15-2670.

A litigation class ("Litigation Class") has been certified by the Court, and a proposed settlement ("Settlement") has been reached between Defendants Tri-Union Seafoods, LLC d/b/a Chicken of the Sea International and Thai Union Group PCL (together, the "COSI Defendants") and the Commercial Food Preparer ("CFP") Plaintiff Class.  CFPs have moved for preliminary approval of the settlement between CFPs and the COSI Defendants in this lawsuit, which relates to alleged price fixing of "Foodservice-Size" Packaged Tuna Products that were purchased from certain intermediaries.  The Court has not yet ruled on approval of the Settlement.

**What is this about?**
The CFP lawsuit alleges that the COSI Defendants along with Bumble Bee Foods, LLC, StarKist Company, and certain related parent entities of Bumble Bee and StarKist (collectively "Defendants") conspired to fix, raise, and maintain the prices of Packaged Tuna Products and that this resulted in purchasers paying more for these products than they otherwise would have.  The Court has certified the CFP lawsuit as a class action, and you have been identified as a potential Class Member. All Defendants deny liability.  While denying liability, the COSI Defendants have collectively agreed to a Settlement to avoid the time and expense of additional legal proceedings.  You may be eligible to file a Claim.

**Who is a Class Member?**
You are a Class Member if you or your company purchased Foodservice-Size Packaged Tuna Products (i.e., products in cans or pouches sized 40 ounces or greater) from DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco from June 1, 2011 through December 31, 2016. This Settlement only applies to purchases made in 27 states and the District of Columbia. Visit **www.PackagedSeafoodAntitrustCFPClass.com** for more details on the exact states that are covered.

**What are the benefits?**
Eligible Class Members who file a Claim will receive payment.  Class members that purchased from DOT Foods, US Foods, _____, or _____ need not file a claim with respect to purchases from these intermediaries and will receive checks relating to these purchases automatically as a matter of course.  Payments will be based on a plan of allocation that is detailed on the Settlement website.  The COSI Defendants have agreed to pay $6,500,000 to provide for eligible Claim benefits, Class Counsel fees, administration fees and expenses, and Representative Service Awards.

**What are my rights?**
**Do Nothing**:  Unless you purchased from DOT Foods, US Foods, _____, or _____, you will receive no payment and have no right to sue Defendants later for the claims covered by this litigation.  **File a Claim**:  To receive payment from the Settlement, you must file a Claim, either online or by mail postmarked, by MONTH DAY 2020.  **Exclude yourself** from the Litigation Class or the Settlement. You get no benefits from any settlement if you exclude yourself from the Litigation Class, but you keep your right to sue the defendants about these claims. If you exclude yourself from the Settlement, but not the Litigation Class, you will be included in future settlements with the non-settling Defendants.  Your request for exclusion must state clearly whether you are excluding from the Litigation Class and/or Settlement class and be postmarked by MONTH DAY 2020. If you do not agree with the Settlement and did not exclude, you may **Object**:  Your objection must be postmarked by MONTH DAY 2020.   Complete details about filing a Claim, Excluding, and Objecting are available on the website.

A Fairness Hearing will be held at the Edward J. Schwartz Courthouse, 221 West Broadway, San Diego, CA 92101 in Courtroom _____, on MONTH DAY 2020 at 00:00 a./p.m. to determine approval of the Settlement, award of attorneys' fees plus expenses and Representative Service Awards of up to $10,000 per class representative, altogether not to exceed $3,000,000, which is less than half of the $6,500,000 settlement value. The motion for fees and expenses will be posted on the website noted below after they are filed. You may attend this hearing at your own expense, but you are not required to attend.

Visit **www.PackagedSeafoodAntitrustCFPClass.com**, call 1-833-927-0821, or write to: *Packaged Seafood Products Antitrust Litigation – CFP Class*, c/o Settlement Administrator, P.O. Box 58267, Philadelphia, PA 19101-8267 for more information.

---

**Source:** Cuneo Gilbert & LaDuca, LLP
**Media Contact(s):** [NAME], Cuneo Gilbert & LaDuca, LLP (xxx)xxx-xxxx

# Exhibit E

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA

**PLEASE READ THIS NOTICE CAREFULLY**
YOUR LEGAL RIGHTS MAY BE AFFECTED IF YOU ACT OR DON'T ACT.

***In re: Packaged Seafood Products Antitrust Litigation*, No. 15-2670**

---

If you or your company purchased Packaged Tuna products directly from DOT Foods, Sysco, US Foods, Sam's Club, Walmart, or Costco (collectively "Distributors") from June 1, 2011 through December 31, 2016, you could be affected by a Class Action Lawsuit.

---

*A Federal Court authorized this notice. This is not a solicitation from a lawyer.*

A Federal Court has certified a class action, and you or your company have been identified as a member of that Class. A motion for preliminarily approval has been filed with regard to a settlement ("Settlement") between Defendants Tri-Union Seafoods, LLC d/b/a Chicken of the Sea International and Thai Union Group PCL (together, the "COSI" or "COSI Defendants") and the Commercial Food Preparer Plaintiffs ("Plaintiffs"), who represent a Class of indirect purchasers of Foodservice-Size Packaged Tuna Products.  The purpose of this notice is to:

- Announce the Order certifying a Litigation Class, inform you of your rights and options regarding the certified Litigation Class, and the deadline to exclude yourself;

- Provide information regarding the Settlement reached with the COSI Defendants; notify you of the process and deadline for submitting a claim form to receive payment in the Settlement; detail the process and deadline for objecting or commenting on the Settlement agreement along with attorney fees and expenses; and inform you of the process and deadline for excluding yourself from the Settlement.

| YOUR RIGHTS AND OPTIONS AT THIS TIME | | DEADLINE |
|---|---|---|
| Do Nothing | **If you did not receive a personalized postcard with purchase values** included in it, you will remain a member of the Litigation Class; however, you will not receive any payment from this Settlement, and you will have no right to sue later for the claims released by the Settlement.<br><br>**If you did receive a postcard notice directly listing your purchase transaction amounts,** then you will automatically receive a pro rata distribution from the Net Settlement Fund using the listed amounts. | |
| Opt-Out of the Litigation Class | Get out of the lawsuit.  This is the only option that allows you to bring or join another lawsuit raising the same legal claims against the Defendants. You will receive no payment from this Settlement or any other future settlements in this action. | Month     Day, Year |
| Opt Out of the Settlement | Get out of the Settlement.  This is the only option that allows you to bring or join another lawsuit raising the same legal claims against the COSI Defendants. You will receive no payment from this Settlement, but you can choose to participate in future settlements if you do not also opt out of the Litigation Class. | Month     Day, Year |
| Object to the Settlement | Write to the Court about any aspect of the Settlement. (If you object to any aspect of the Settlement, you must submit a written Objection by the Objection Deadline to the right and cannot exclude yourself from the Settlement or Class.) | Month     Day, Year |
| Submit a Claim Form | The only way to receive payment under the COSI Settlement for your purchases if you did not receive a postcard notice detailing your purchase transaction amounts. | Month     Day, Year |
| Go to a Hearing | Speak in Court about the Settlement.  (If you object to any aspect of the Settlement, you **must** submit a written Objection by the Objection Deadline of Month Day, Year.) | Month     Day Year   at   0:00 |

- **These rights and options—and the deadlines to exercise them—are explained in this notice.**

## What this Notice Contains

1.  Why did I receive this notice? ........................................................................... 3

2.  What is this lawsuit about? .............................................................................. 3

3.  Who is included in the Class? .......................................................................... 3

4.  What Products are included in this Settlement? ............................................. 3

5.  What does the Settlement provide? .................................................................. 4

6.  How does the Settlement benefit me? ............................................................. 4

7.  How do I make a claim? ................................................................................... 4

8.  What am eligible for if I file a Claim? ............................................................ 5

9.  What does it mean to Exclude myself from the Class? ................................... 5

10. How do I Exclude myself from the Class? ...................................................... 5

11. What if I disagree with the Settlement? .......................................................... 5

12. How do I Object to the Settlement? ................................................................ 5

13. Who represents me? ......................................................................................... 6

14. Should I get my own lawyer? .......................................................................... 6

15. What happens if I do nothing? ........................................................................ 6

16. When will the Court decide if the Settlement is Approved? ........................... 6

17. How do I get more information? ...................................................................... 7

## Important Dates

| | |
|---|---|
| **Month Day Year** | Claims Deadline |
| **Month Day Year** | Objection Deadline |
| **Month Day Year** | Opt-Out Deadline |
| **Month Day Year** | Fairness Hearing |

## 1. Why did I receive this notice?

You or your company may have purchased Foodservice-Size Packaged Tuna Products indirectly from Bumble Bee Foods, LLC, Tri-Union Seafoods, LLC d/b/a Chicken of the Sea International, or StarKist Company (together with Thai Union Group PCL and certain related parent entities of Bumble Bee and StarKist, the "Defendants") and directly from DOT Foods, Sysco, US Foods, Sam's Club, Walmart, or Costco from June 1, 2011 through December 31, 2016.

A Litigation Class has been certified by the Court and a proposed Settlement has been reached between the COSI Defendants and the Commercial Food Preparer ("CFP") Class.  You may be eligible to receive benefits from this proposed Settlement.  This notice is to provide you with information so that you can act.

## 2. What is this lawsuit about?

The CFP lawsuit alleges that the COSI Defendants along with Bumble Bee Foods, LLC, StarKist Company, and certain related parent entities of Bumble Bee and StarKist conspired to fix, raise, and maintain the prices of Packaged Tuna Products and that this resulted in purchasers paying more for these products than they otherwise would have. The Court has certified the CFP lawsuit as a class action, and you have been identified as a potential Class Member.  Additionally, while denying liability, the COSI Defendants have collectively agreed to a Settlement to avoid the time and expense of legal proceedings. You may be eligible to file a Claim.

## 3. Who is included in the Class?

On July 30, 2019, the Court certified a Class of Commercial Food Preparers ("CFP").  You are a member of the CFP Class certified by the Court if you fit the following definition:

> All persons and entities in 27 named states and DC that indirectly purchased packaged tuna products, produced in packages of 40 ounces or greater that were manufactured by any Defendant (or any current of former subsidiary or any Affiliate thereof) and that were purchased directly from DOT Foods, Sysco, US Foods, Sam's Club, Walmart, or Costco (other than inter-company purchases among these distributors) from June 1, 2011 through December 31, 2016 (the "Class Period").

Only purchases made in the following 27 states and DC apply to this Settlement. The relevant territory and states are the District of Columbia and Arizona, Arkansas, California, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

## 4. What Products are included in this Settlement?

The products at issue for the CFP Class are the "Foodservice-size" packaged tuna products, which are packaged tuna products 40 ounces and larger. Definitionally, the class consists of entities that

Questions? Visit www.PackagedSeafoodAntitrustCFPClass.com or call 1-833-927-0821

3

purchased these Foodservice-size packaged tuna products from six large distributors—Sysco, US Foods, Walmart, Sam's Club, Costco, and DOT Foods (together, the "Distributors"). Only purchases made in the 27 states and DC detailed in question 3 apply to this Settlement.

## 5.   What does the Settlement provide?

Plaintiffs and their counsel believe that the terms and conditions of the Settlement are fair, reasonable, adequate, and equitable, and that the Settlement is in the best interest of the Class Members. The COSI Defendants have agreed to provide a Settlement Fund of $6,500,000.

The Settlement fund will provide payments to Class Members whose transactional purchase histories are found in the Distributors' records and to Class Members who file valid claims and pay for Settlement Administration costs and expenses, Class Counsel fees and expenses, and Class Representative Service Awards. Unused Settlement funds may be awarded to a *cy pres* recipient to be approved by the Court.

## 6.   How does the Settlement benefit me?

Eligible Class Members who file a valid claim along with eligible Class Members that receive a postcard noting their purchases from Distributor records do not dispute those amounts will be eligible to receive a pro rata payment issued from the Net Settlement Fund.  Payments will be made on a pro rata basis.

## 7.   How do I make a claim?

**To make a Claim**, you can fill out the Claim Form available on the Settlement website noted below or return the claim form sent with your mailed notice, if you received one.

**If you did not receive a personalized mailed notice that includes purchase totals from the Distributors,** you must file a claim submitted online or postmarked by the deadline and include documentation of claimed purchases through the production of business records, purchase order, or receipts in order to receive payment from the Settlement.

**If you received a postcard notice and it included purchase values** from the Distributors and you agree with the noted purchase values, you do not need to do anything to receive payment from the Settlement.  You will be sent a check, and the purchase data from the listed Distributors will be used to determine your pro rata share of the Settlement.  You should keep all documentation, however, in case the administrator has questions for you.  If you do not agree with the purchase values from the Distributors' records, you will need to submit your claim with documentation to support the value of purchases you are claiming.

**If you did not receive a mailed notice** and believe you are a Class Member and want to receive payment from the settlement, you must file a claim.  Feel free to call the toll-free number below, and they will assist you with any questions.  Remember, the Settlement only covers purchases made in the 27 states and DC from the above-noted six Distributors for Packaged Tuna Products in containers 40 ounces or more.

You can submit the Claim Form online, or you can mail it to the Settlement Administrator at: *Packaged Seafood Products Antitrust Litigation – CFP Class*, c/o Heffler, Settlement Administrator, P.O. Box 8267, Philadelphia, PA 19101-8267.  Claim Forms must be submitted online or postmarked by 11:59 p.m. Eastern Time on Month Day, Year.

Benefit Checks will be issued only if the Court grants final approval to the proposed Settlement and after the final approval is no longer subject to appeal.  Please be patient as this may take months, or even years, in the event of an appeal.  As soon as the Settlement becomes effective, checks will be

mailed.

### 8. What am I eligible for if I file a Claim?

Class Members who file a valid claim will be eligible to receive a pro rata payment from the Settlement fund after all expenses and attorney fees are paid.  See the Settlement website for more details.

### 9. What does it mean to Exclude myself from the Litigation Class or the Settlement?

If you are included in the definition of the Class (Question 3, above) and you want to sue all of the Defendants separately about any of the claims in this lawsuit, you must exclude yourself from the Litigation Class. If you exclude yourself, you will not be entitled to any money from potential future distributions if the Litigation Class obtains any money as a result of a trial or from any settlements.

You may also exclude yourself from just the Settlement.  If you exclude yourself from the Settlement, you will be included in the Class for all non-settling Defendants, but keep your right to bring a lawsuit in an individual capacity against COSI Defendants. You will not be able to sue any of the non-settling Defendants in an individual capacity if you only exclude from the proposed Settlement.

### 10. How do I Exclude myself from the Class or the Settlement?

If you are a Class Member, and you decide that you want to exclude yourself from the Litigation Class, you must send an "Exclusion Request". The Exclusion Request must be contain (1) your full name, address, and phone number(s); (2) the number of Foodservice-Size Packaged Tuna Products that you purchased from the Distributors from June 1, 2011 through December 31, 2016; (3) the following statement: "I/We request to Exclude myself/ourselves from the Litigation Class in the *Packaged Seafood Products Antitrust Litigation*."; and (4) your signature. The Exclusion Request must be postmarked by Month Day, Year and sent to the Settlement Administrator at:

> *Packaged Seafood Products Antitrust Litigation*
> c/o Heffler, Settlement Administrator- Exclusion Request
> P.O. Box 8267
> Philadelphia, PA 19101-8267

Similarly, if you are a Class Member, and you decide that you want to exclude yourself from only the Settlement, you must send an "Exclusion Request". The Exclusion Request must be contain (1) your full name, address, and phone number(s); (2) the number of Foodservice-Size Packaged Tuna Products that you purchased from the Distributors from June 1, 2011 through December 31, 2016; (3) the following statement: "I/We request to Exclude myself/ourselves from the Settlement with the COSI Defendants in the *Packaged Seafood Products Antitrust Litigation*."; and (4) your signature. The Exclusion Request must be postmarked by Month Day, Year and sent to the Settlement Administrator at the above address.

### 11. What if I disagree with the Settlement?

If you do not exclude yourself, and you disagree with or are dissatisfied with any part of the Settlement, you may object or comment on the Settlement. Even if you object to the Settlement, if you file a valid claim, you will still be eligible to receive benefits from the Settlement.

### 12. How do I Object or Comment on the Settlement?

If you do not agree with any part of the Settlement or wish to provide comments, you may write to the

Questions? Visit www.PackagedSeafoodAntitrustCFPClass.com or call 1-833-927-0821

5

Court. If you object to or comment on the Settlement, you may also still file a Claim. An objection must be written and include: (1) your full legal name, the name of the company you represent, your position at that company, your authorization to act on behalf of the company, your contact address, and contact telephone number; (2) the words "Notice of Objection"; (3) the case name and number, which are *In re: Packaged Seafood Products Antitrust Litigation*, No. 15-2670; (4) a list of the Foodservice-size Packaged Tuna Products that you or your company purchased from the Distributors from June 1, 2011 through December 31, 2016; (5) your objections to or comments on the settlement; and (6) your signature as an authorized representative of the company. The Objection must be sent to the Settlement Administrator at the below address and must be postmarked by Month, Day Year:

> *Packaged Seafood Products Antitrust Litigation*
> c/o Heffler, Settlement Administrator- Exclusion Request
> P.O. Box 8267
> Philadelphia, PA 19101-8267

## 13. Who represents me?

The Court appointed the law firm of Cuneo Gilbert & LaDuca, LLP to represent the CFP Class as Class Counsel. You are not personally responsible for payment of attorneys' fees or expenses for Class Counsel.  If the Settlement is preliminarily approved, Class Counsel may ask the Court for Counsel's fees and expenses along with Representative Service Awards of up to $10,000 per class representative to be issued from the Settlement fund, altogether not to exceed $3,000,000, which is less than half of the $6,500,000 settlement value. If the Court grants Class Counsels' request, the attorneys' fees, expenses, and Representative Service Awards would be deducted from any money obtained for the Class. A motion for these fees and expenses will be posted on the Settlement website after they are filed, MONTH DAY 2020.

## 14. Should I get my own lawyer?

If you stay in the Class, you do not need to hire your own lawyer because Class Counsel is working on your behalf. However, if you want to be represented by your own lawyer, you may hire one at your own expense and cost.

## 15. What happens if I do nothing?

If you do nothing, you will remain a member of the Class.  You will also not be able to sue, continue to sue, or be part of any other lawsuit against the defendants regarding these matters.

Additionally, if you did not receive a postcard that lists a purchase value from the Distributors and do nothing, will also **not** receive any payment from this settlement. The only way to receive benefits from this settlement if you did not receive a postcard notice that includes purchase values is to file a Claim by the deadline. If you received a postcard that includes a purchase value from the Distributors and do nothing, you will still receive a payment in this Settlement, and the noted purchase value will be used to determine your pro rata share of the Net Settlement Fund if you do not file a claim.

## 16. When will the Court decide if the Settlement is Approved?

The Court will hold a hearing on Month Day Year, to consider whether to approve the Settlement. The hearing will be held in the United States District Court for the Southern District of California, before the Honorable Janis L. Sammartino, in the Edward J. Schwartz United States Courthouse, 221 West Broadway, San Diego, CA 92101 in Courtroom _____  at ____ a/pm or such other judge assigned by the Court.

Questions? Visit www.PackagedSeafoodAntitrustCFPClass.com or call 1-833-927-0821

6

You do not have to appear at this hearing, but you may if you want to. This hearing date may change without further written notice to you. Consult the Settlement Website below or the Court docket in this case available through Public Access to Court Electronic Records PACER (http://www.pacer.gov), for updated information on the hearing date and time. The Settlement Website will be updated as new or changing information is received.

## 17. How do I get more information?

For more information, including Claim Forms, Frequently Asked Questions, and Court Documents visit the Settlement Website at www.PackagedSeafoodAntitrustCFPClass.com.   You may also call toll-free 1-833-927-0821, or write to: *Packaged Seafood Products Antitrust Litigation*, c/o Settlement Administrator, P.O. Box 8267, Philadelphia, PA 19101-8267.

**Please note:**  If your present address is different from the address on the envelope in which you received a notice, or if you did not receive a notice directly but believe you should have, please call the toll-free helpline and update your information.

If you have any questions, please contact the Claims Administrator or Class Counsel.

Please do not contact the Court.

Questions? Visit www.PackagedSeafoodAntitrustCFPClass.com or call 1-833-927-0821

7