# Exhibit 8
## (Stein Decl.)

LESLIE A. WULFF (CSBN 277979)
MANISH KUMAR (CSBN 269493)
ANN CHO LUCAS (CSBN 309026)
United States Department of Justice
Antitrust Division
450 Golden Gate Avenue
Box 36046, Room 10-0101
San Francisco, California 94102
Telephone: (415) 934-5300
Facsimile: (415) 934-5399
Leslie.Wulff@usdoj.gov

Attorneys for the United States

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>BUMBLE BEE FOODS, LLC,<br><br>Defendant. | No: 4:17-CR-000249-EMC<br><br>**UNREDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**<br><br>**UNITED STATES' SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE**<br><br>DATE: August 2, 2017<br>TIME: 2:30 pm<br>JUDGE: Hon. Edward M. Chen |

U.S. SENTENCING MEMO.

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...................................................................................................1

II.   BACKGROUND ...................................................................................................1

    A.   Product .........................................................................................................1

    B.   Conspiracy ....................................................................................................2

    C.   The Investigation ..........................................................................................3

III.  BUMBLE BEE ......................................................................................................4

    A.   Company Background ...................................................................................4

    B.   Role in Conspiracy .......................................................................................4

    C.   Plea Agreement ............................................................................................5

IV.   LEGAL STANDARDS .........................................................................................5

V.    RECOMMENDED SENTENCE ..........................................................................6

    A.   Criminal Fine ...............................................................................................6

        1.   Determining the Base Fine...............................................................6

        2.   Calculating the Guidelines Fine ......................................................8

        3.   Inability to Pay ...............................................................................11

        4.   Additional Fine in Event of Sale....................................................14

        5.   Motion for Substantial Assistance Departure .................................16

    B.   Probation .....................................................................................................19

    C.   Restitution ...................................................................................................19

VI.   CRIME VICTIMS ...............................................................................................20

VII.  CONCLUSION....................................................................................................20

U.S. SENTENCING MEMO.

## I.   INTRODUCTION

Bumble Bee Foods, LLC ("Bumble Bee") has agreed to plead guilty to a one-count violation of the Sherman Antitrust Act, 15 U.S.C. § 1, for its role in a conspiracy to fix the prices of packaged seafood sold in the United States.  Bumble Bee has agreed to pay a $25 million criminal fine, which will increase to a maximum fine of $81.5 million to be paid by Big Catch Cayman L.P. ("Big Catch"), a related entity, only in the event of a sale of Bumble Bee subject to certain terms and conditions.  Both fine amounts are below the guidelines fine range.  The $25 million fine represents a reduction below the guidelines fine range due to Bumble Bee's inability to pay a full criminal fine without substantially jeopardizing the continued viability of the organization pursuant to §8C3.3 of the guidelines.  The $81.5 million fine represents a reduction due to Bumble Bee's substantial assistance in the ongoing packaged-seafood investigation pursuant to §8C4.1 of the guidelines, but without an inability-to-pay reduction.  Bumble Bee has provided significant assistance in furthering the investigation of the price-fixing conspiracy in the packaged-seafood industry, a conspiracy to which three executives have pleaded guilty. Bumble Bee accepts responsibility for its criminal conduct, acknowledges its wrongdoing, and has pledged to provide continuing cooperation in the ongoing investigation.

Accompanying this memorandum are: (1) declaration of Leslie Wulff ("Wulff Declaration") attaching as Exhibit A the plea agreement between the United States and Bumble Bee; (2) declaration of Dale Zuehls ("Zuehls Declaration"); and (3) motion, proposed order, and declaration to file portions of the sentencing memorandum and Exhibit A to the Wulff Declaration and the entire the Zuehls Declaration under seal.

Bumble Bee does not oppose the government's sentencing memorandum and is filing concurrently its sentencing memorandum with the supporting declaration of its financial expert.

## II.   BACKGROUND

### A.   Product

As described in the criminal Information filed in this case, packaged seafood consists of shelf-stable tuna fish, which can be packaged in cans or foil pouches.  Shelf-stable tuna fish is generally classified into two varieties: (1) albacore also known as "white meat" and (2) skipjack

U.S. SENTENCING MEMO.

or yellowfin also known as "light meat." White and light meat tuna is sold in a can as either "solid" or "chunk" and white meat is generally sold at a higher price point than light meat tuna. Packaged seafood is purchased by grocery stores, club stores, drug stores, and other retail channels for sale to consumers across the United States.

The three main producers of packaged seafood in the United States are Bumble Bee; Tri-Union Seafoods LLC, d/b/a Chicken of the Sea International; and StarKist Company.

**B.    Conspiracy**

As charged in the criminal Information, a conspiracy existed among the producers of packaged seafood sold in the United States dating from at least as early as the first quarter of 2011 through at least as late as the fourth quarter of 2013. The primary purpose of the conspiracy was to fix, raise, and maintain the prices of packaged seafood sold in the United States.

The price-fixing conspiracy in the packaged-seafood industry was effectuated through several anticompetitive means.

U.S. SENTENCING MEMO.



1

2

3

4

5

6

7

8

9

10

11

12

13

14

15      **C.**     **The Investigation**

16

17

18

19

20

21     The investigation is ongoing.

22        To date, three individuals have been charged and pleaded guilty before this Court. W.

23 Scott Cameron, then-Senior Vice President of Sales for Bumble Bee, pleaded guilty on

24 January 25, 2017. Kenneth Worsham, then-Senior Vice President of Trade Marketing for

25 Bumble Bee, pleaded guilty on March 15, 2017.[1] Stephen Hodge, former Senior Vice President

26 of Sales for ▮▮▮▮ pleaded guilty on June 28, 2017.

27

28

---

[1] Bumble Bee terminated Cameron and Worsham effective May 12, 2017.

U.S. SENTENCING MEMO.

3

1 ██████████████████████████████████

2 ████████████████

## III. BUMBLE BEE

### A. Company Background

Bumble Bee is a limited liability corporation headquartered in San Diego, California owned by the private-equity firm Lion Capital LLP.

Bumble Bee's customers include major retailers across the United States such as Walmart, Safeway, Kroger, and Costco. Nationwide, Bumble Bee has the largest market share of white meat canned tuna-fish products. It is a widely-recognized brand among American consumers. In addition to shelf-stable tuna fish, Bumble Bee also produces shelf-stable salmon and other shelf-stable specialty fish and meat products for sale in the United States.

### B. Role in Conspiracy

██████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

███████████████████████████████████████

████████████████████████████████████

████████████████████████

█████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

██████████████████████████████

█████████████████████████████████████████

███████████████████████████████████

████████████████████████████████████

U.S. SENTENCING MEMO.

███████████████████████████████████████████████

███████████████████████████████████████

████████████████████████

### C. Plea Agreement

The proposed plea agreement between the United States and Bumble Bee is attached as Exhibit A to the Wulff Declaration. Under the Rule 11(c)(1)(C) plea agreement, Bumble Bee will plead guilty to participating in a price-fixing conspiracy involving packaged seafood beginning at least as early as the first quarter of 2011 continuing until at least as late as the fourth quarter of 2013. The parties are jointly recommending a minimum criminal fine of $25 million payable by Bumble Bee, which increases to a maximum criminal fine of $81.5 million, payable by Big Catch, only in the event of a sale of Bumble Bee subject to certain terms and conditions described in Attachment A to the plea agreement. Additionally the parties jointly recommend no order of restitution and a special assessment of $400. Bumble Bee has agreed to continue cooperating in the ongoing investigation. The United States has agreed that it will not bring further charges against Bumble Bee; its current directors, officers, or employees; its parent companies or related funds; the current directors, officers, or employees of its parent companies; and the individuals identified in Paragraph 1 of Attachment B to the plea agreement for any antitrust conspiracy involving the sale or production of packaged seafood in the United States.[2] These nonprosecution protections do not apply to individuals identified in Paragraph 2 of Attachment B to the plea agreement.

## IV. LEGAL STANDARDS

A district court judge should begin all sentencing proceedings by correctly calculating the applicable range under the sentencing guidelines. *Gall v. United States*, 552 U.S. 38, 49-50 (2007). While the guidelines are now advisory, the district court must consider them along with the other sentencing factors listed in 18 U.S.C. § 3553(a). *United States v. Booker*, 543 U.S. 220,

---

[2] Bumble Bee's parent companies are defined in Paragraph 13 of the Plea Agreement to include Lion Capital LLP; Lion Capital (Americas) Inc.; Bumble Bee Parent, Inc.; Bumble Bee Holdings, Inc.; Big Catch Cayman L.P.; and Lion/Latimer GP II (Guernsey) Limited. Bumble Bee's related funds are defined in Paragraph 13 of the Plea Agreement to include the investment vehicles and funds that sit between Bumble Bee and Lion Capital.

U.S. SENTENCING MEMO.

5

256-60 (2005).  Section 3553(a) directs the district court to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes set forth in subparagraph two, that is, the need for the sentence imposed to, among other things, reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, and afford adequate deterrence.  Section 3553(a) further directs the district court to consider additional factors such as the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to avoid unwarranted sentencing disparities.

## V.    RECOMMENDED SENTENCE

### A.    Criminal Fine

The sentencing guidelines provide a multistep process for determining the guidelines range and sentence for organizations such as Bumble Bee that are not operated primarily for criminal purposes.  U.S.S.G. §§8C2.1-2.8.  First, the court determines the base fine.  *Id.* §8C2.4.  Second, it calculates a culpability score, uses that score to determine minimum and maximum multipliers, and applies those multipliers to the base fine to yield a guidelines fine range.  *Id.* §§8C2.5-2.7.  Third, the court considers various factors in choosing a guidelines fine within that range.  *Id.* §8C2.8.  Fourth, the court may consider a reduction of the fine based on the defendant's inability to pay a guidelines range fine.  *Id.* §8C3.3.  Finally, the court may consider various departures from the guidelines fine range, including departures for substantial assistance to authorities in the investigation or prosecution of coconspirators.  *Id.* §8C4.1.

#### 1.    Determining the Base Fine

Section 8C2.4 is the starting point for determining the base fine for an organization.  That section states that the base fine is the greatest of three alternatives: (1) an amount based on the table in subsection 8C2.4(d) corresponding to the organization's offense level, (2) the pecuniary gain to the organization from the offense, or (3) the pecuniary loss from the offense.  U.S.S.G. §8C2.4(a).  Section 2R1.1, which sets the base offense level for antitrust offenses, contains a special instruction stating that 20% of the volume of affected commerce should be used as a proxy for the pecuniary loss.  *Id.* §§2R1.1(d)(1) and 8C2.4(b).

U.S. SENTENCING MEMO.

6

Before determining which method produces the highest base fine, the sentencing court must determine the volume of affected commerce. To determine Bumble Bee's volume of affected commerce, the government examined sales data provided by Bumble Bee broken down by product. The starting point for this analysis is all of Bumble Bee's sales of shelf-stable tuna fish sold from the beginning of 2011 through the end of 2013, the period for which Bumble Bee has been charged with a conspiracy. According to the company's sales data, Bumble Bee sold $1.389 billion of shelf-stable tuna fish in the United States during the charge period. The parties have agreed to exclude two categories of that commerce under §1B1.8.

Section 1B1.8 provides that the government may agree that self-incriminating information provided by a defendant, as part of that defendant's cooperation against others, will not be used against that defendant where the government did not already know that same information. Bumble Bee provided two important categories of self-incriminating information that were previously unknown to the government. Both of those categories of commerce have been excluded from Bumble Bee's volume of affected commerce.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████ This commerce has been excluded from Bumble Bee's affected commerce under §1B1.8.

███████████████████████████████████████

██████████████████████████████████████████ ▪

██████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████████████

─────────────────────

▪ ████████████████████████████████████████

██████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████

█████████████████████████████

U.S. SENTENCING MEMO.

Following the application of §1B1.8, Bumble Bee's volume of affected commerce is $567.7 million. As part of the negotiated outcome, the parties agree that using the pecuniary loss results in the highest readily-ascertainable base fine of the three options presented in §8C2.4. First, Bumble Bee's base fine according to the table in subsection 8C2.4(d) is $1.2 million.[4] Second, calculation of the pecuniary gain would require expert economic analysis and thus, in the context of this negotiated resolution, would unduly complicate and prolong the sentencing process. Therefore, the parties have agreed that Bumble Bee's pecuniary gain should not be used to determine the base fine. *Id.* §8C2.4(c). Third, as explained above, the instruction in subsection 2R1.1(d)(1) states that 20% of the volume of affected commerce is an appropriate proxy for the pecuniary loss. Twenty percent of Bumble Bee's volume of affected commerce is $113.5 million. As the largest and most readily-ascertainable of the three options, the parties agree that $113.5 million is the appropriate base fine.

## 2. Calculating the Guidelines Fine

Once the base fine has been determined, the Sentencing Guidelines provide instructions for determining a culpability score, which is used to determine a minimum and maximum fine range. *Id.* §8C2.5. As stated above, Bumble Bee's base fine is $113.5 million, which represents 20% of Bumble Bee's volume of affected commerce as a proxy for determining the pecuniary loss caused by the conspiratorial conduct. The table below illustrates the application of the factors in §8C2.5 to Bumble Bee.

---

[4] Section 2R1.1 sets forth the mechanism to determine Bumble Bee's offense level. Because Bumble Bee's volume of affected commerce is $567.7 million, its offense level is 22. The offense level fine table in §8C2.4(d) shows a base fine of $1.2 million for an offense level 22. As directed by §8C2.4(e)(1) of the 2016 Guidelines, the government looks to the offense level fine table in the sentencing guidelines in effect on November 1, 2014.

U.S. SENTENCING MEMO.

(a) **Base Fine:** The base fine is 20% of the volume of affected commerce of $567.7 million (§2R1.1(d)(1) and §8C2.4(b)).  **$113.5 million**

(b) **Culpability Score**

    i.    **Base:** Five points are assigned as a starting point for calculating the culpability score (§8C2.5(a)).  **+5**

    ii.   **Involvement in or Tolerance of Criminal Activity:** The parties have agreed that Bumble Bee had more than 200 employees but fewer than 1,000 employees and that an individual within high-level personnel of the unit participated in, condoned, or was willfully ignorant of the offense (§8C2.5(b)(3)(A)). Therefore, the parties agree that a three-level upward adjustment is warranted.  **+3**

    iii.  **Prior History:** Bumble Bee does not have any prior history of misconduct (§8C2.5(c)).  **0**

    iv.  **Violation of Order:** Bumble Bee has not violated any orders (§8C2.5(d)).  **0**

    v.   **Obstruction of Justice:** The government is not aware of any conduct by Bumble Bee that impeded or obstructed justice (§8C2.5(e)).  **0**

    vi.  **Effective Compliance and Ethics Program:** Bumble Bee did not have an effective compliance and ethics program with respect to antitrust violations at the time the offense occurred. The parties agree that no downward adjustment is warranted (§8C2.5(f)).  **0**

    vii. **Self-Reporting, Cooperation, and Acceptance of Responsibility:** Bumble Bee has fully cooperated in the investigation and clearly demonstrated recognition and affirmative acceptance of responsibility for its criminal conduct. The parties agree that a two-point reduction is warranted (§8C2.5(g)(2)).  **-2**

(c) **Total Culpability Score**  **6**

(d) **Minimum and Maximum Multipliers:** Based on a culpability score of 6, the minimum multiplier is 1.2 and the maximum multiplier is 2.4 (§8C2.6).  **1.2 – 2.4**

U.S. SENTENCING MEMO.

9

| | |
|---|---|
| (e) **Minimum and Maximum Fine Range:** Applying the minimum and maximum multipliers to the base fine of $113.5 million, the fine range is between $136.2 million and $272.4 million (§8C2.7). | **$136.2 – $272.4 million** |

After determining the appropriate guidelines range, the sentencing court looks to the factors in §8C2.8 to determine the appropriate starting point for the fine within the guidelines range from which to apply the adjustments discussed below.  The parties have agreed that the starting point for Bumble Bee's fine calculation should be the bottom of the fine range, $136.2 million.  It is appropriate to calculate Bumble Bee's fine from the bottom of the guidelines fine range for several reasons.

Bumble Bee provided timely and valuable cooperation to the government.  It would be unjust under §8C2.8(a)(1) to adjust upward in the guidelines fine range in light of the speed with which Bumble Bee accepted responsibility for its conduct and began providing cooperation to the government. ██████████████████████████████████  ██████████████████  The government has an interest in encouraging companies to timely accept responsibility for their conduct and to begin cooperating in an ongoing investigation.  Adjusting upward in the guidelines range for Bumble Bee would discourage other companies from providing timely cooperation.

Additionally, none of the other factors in §8C2.8(a) warrant an adjustment upward from the bottom of the guidelines fine range.  Bumble Bee faces exposure in the follow-on civil litigation consolidated in the Southern District of California.  *Id.* §8C2.8(a)(3).  The government does not have any evidence of any nonpecuniary loss caused by the conduct.  *Id.* §8C2.8(a)(4).  Nor is there evidence of a vulnerable victim.  *Id.* §8C2.8(a)(5).  Further, Bumble Bee does not have a history of any other antitrust misconduct.  *Id.* §8C2.8(a)(7).  Nor is there evidence of a criminal record for any of Bumble Bee's relevant employees.  *Id.* §8C2.8(6).  As a result, the parties agree that the starting point for Bumble Bee's fine calculation is the bottom of the guidelines fine range, or $136.2 million.

U.S. SENTENCING MEMO.

### 3.   Inability to Pay

The guidelines permit a sentencing court to adjust a criminal fine after taking into consideration the organization's ability to pay.  U.S.S.G. §8C3.3.  Specifically, a sentencing court may impose a fine below the guidelines range where an organization would be unable to pay the minimum fine required by §8C2.7, even with adjustments for a reasonable payment schedule.  §8C3.3(b).  Further, a fine reduction is required to the extent a guidelines fine would impair the defendant's ability to make restitution to victims in the civil lawsuits.  §8C3.3(a); 18 U.S.C. § 3572(b); *see also U.S. v. Eureka Laboratories, Inc.*, 103 F.3d 908, 912 (9th Cir. 1996). The defendant bears the burden of proving its inability to pay.  *U.S. v. Nathan*, 188 F.3d 190, 215 (3d Cir. 1999).

During plea negotiations, Bumble Bee asserted an inability to pay a guidelines range criminal fine.  To support its claim, Bumble Bee hired accounting expert Dr. Mark Zmijewski of the economic consulting firm Charles River Associates to analyze the company's finances, including its debt covenants, leverage ratios, and financial performance.[5] ████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████ █████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████████████████████████████████████
███████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████

---

[5] Dr. Zmijewski's declaration accompanies Bumble Bee's Sentencing Memorandum.

█████████████████████████████████████████████████████
████████████████████████████████████

U.S. SENTENCING MEMO.

11



The government retained Dr. Dale Zuehls, a forensic accounting expert, to independently evaluate the veracity of Bumble Bee's claims. Zuehls is a principal at the consulting firm of Zuehls, Legaspi & Company. He is a Certified Public Accountant with a PhD in Accounting and a Juris Doctor degree. He has over 40 years of experience in complex accounting, fraud, forensic, tax, and consulting matters. Zuehls was originally in the audit practice with Arthur Anderson and later became a partner with the international accounting firm of KPMG. At KPMG, Zuehls was the National Partner in Charge of Class Action Services and in that role, he consulted with major law firms throughout the country on complex forensic accounting, valuation, tax, and litigation matters. The Department of Justice Antitrust Division has retained Zuehls on multiple occasions to assess ability-to-pay claims by defendants in matters involving, for example, the airline cargo and passenger industries, the computer memory industry, the domestic freight industry, the aftermarket auto lights industry, and the electrolytic capacitors industry. Zuehls has also handled projects for other government agencies including the Federal

U.S. SENTENCING MEMO.

12

Bureau of Investigation, United States Customs and Border Protection, and the Los Angeles

Police Department.  Zuehls' resume is attached as Exhibit A to the Zuehls Declaration.

In this instant matter, Zuehls reviewed extensive documentation provided by Bumble Bee

and by its owner, Lion Capital, over a nearly nine-month period.  Zuehls Decl. ¶ 12.  Zuehls

attended presentations made by Zmijewski regarding his assessment of Bumble Bee's ability to

pay.  Zuehls Decl. ¶ 8.  During this time, Zuehls performed an analysis of Bumble Bee's

financial health by analyzing the company's (1) historic performance, (2) current financial

position and strength of its balance sheet, and (3) future forecasts and prospects for the company

and for the packaged-seafood industry as a whole.  Zuehls Decl. ¶ 10.  Zuehls' findings are

largely consistent with those of Zmijewski.

U.S. SENTENCING MEMO.

13

1 ████████████████████████████████████████████████

2 ████████████████████████████████████████████████

3 ███

In light of the financial information presented by Bumble Bee and its expert, the parties agree that Bumble Bee does not have the ability to pay a guidelines range fine.  As a result of information presented by the company, the parties agree that $25 million without interest represents the fine that Bumble Bee can pay without substantially jeopardizing its continued viability.

Further, Bumble Bee is the only entity that the government can legally obligate to pay a criminal fine in light of the conduct under investigation.  ███████████████████

████████████ Lion Capital cannot be held criminally liable for Bumble Bee's corporate acts since it is a separate legal entity.  Therefore, the financial condition of Bumble Bee, not Lion Capital, should be used to assess the company's ability to pay a guidelines range criminal fine.

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████ Thus, the parties have agreed to the following installment schedule: within thirty days of imposition of a sentence – $2 million; at the one-year anniversary of the imposition of sentence ("anniversary") – $2 million; at the two-year anniversary – $4 million; at the three-year anniversary – $4 million; at the four-year anniversary – $6 million; and at the five-year anniversary – $7 million.  Wulff Decl. Ex. A, Plea Agreement ¶ 9(a).  ███████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████

### 4.    Additional Fine in Event of Sale

Bumble Bee is currently owned by the private-equity firm Lion Capital.  Lion Capital purchased Bumble Bee in the fall of 2010.  █████████████████████

████████████████████████████████████████████████

U.S. SENTENCING MEMO.

1 ██████████████████████████████████████████████████████

2 ██████████

3     To prevent an unjust outcome whereby Bumble Bee receives a reduction in its criminal

4 fine due to its inability to pay and then shortly thereafter is sold, thereby eliminating the inability

5 to pay, the parties have agreed to an additional fine to be paid in the event of such a sale. The

6 government has an interest in preventing a defendant that has obtained a reduction in its criminal

7 fine from reaping a windfall if the defendant is able to subsequently enter into a transaction that

8 cures its financial infirmity. To address the government's concerns, the parties have negotiated

9 the terms and conditions of a qualifying sale that would trigger the additional fine, which can be

10 found in Attachment A to the plea agreement.

11     First, the parties agree that Big Catch is the appropriate entity to pay the additional fine.

12 Big Catch is the ultimate owner of Bumble Bee and the entity that would receive all proceeds of

13 any sale of the company. Big Catch is a holding company with no assets in the United States

14 other than Bumble Bee, Bumble Bee's intermediate parent holding companies, and Bumble

15 Bee's subsidiaries. By having Big Catch pay any additional fine, the government is essentially

16 making a claim to a portion of the proceeds of a qualifying sale of Bumble Bee and ensuring that

17 such payment would be made before any distribution of the proceeds of the sale to investors.

18 This payment structure ensures that the government would be able to capture the additional fine

19 in event of a qualifying sale.

20     ████████████████████████████████████████████████

21 ██████████████████████████████████████████████████

22 ██████████████████████████████████████████████████

23 ████████████████████████████████████████████████

24 ██████████████████████████████████████████████████

25 ██████████████████████████████████████████

26 ████████████████████████████████████████████████

27 ██████████████████████████████████████████████████

28 ████████████████████████████████████████████

U.S. SENTENCING MEMO.

1 ███████████████████████████████████████████████████

2 ██████████████████████████████████████████

3 ██████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ███████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████████

8 █████████████████████████████████████████████████████

9 ████████████████████

10 ████████████████████████████████████████████

11 ██████████████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 █████████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ██████████████████████████████████████████████████████

16 ████████

17     **5.    Motion for Substantial Assistance Departure**

18     Section 8C4.1 permits a sentencing court to depart from a guidelines fine "[u]pon motion

19 of the government stating that the defendant provided substantial assistance in the investigation

20 or prosecution of another organization that has committed an offense, or in the investigation or

21 prosecution of an individual not directly affiliated with the defendant who has committed an

22 offense."  The size of the departure is based on (1) the significance and usefulness of the

23 defendant's cooperation, (2) the nature and extent of the defendant's assistance, and (3) the

24 timeliness of that assistance.  U.S.S.G. §8C4.1(b).

25     A downward departure is appropriate here because Bumble Bee provided substantial

26 assistance.  The government relies heavily on insider cooperation to break up cartels which, by

27 their nature, are secretive.  █████████████████████████████████████████

28 ████████████████████████████████████████████████

U.S. SENTENCING MEMO.



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

U.S. SENTENCING MEMO.



Bumble Bee has agreed to provide continuing cooperation in the ongoing investigation. Paragraph 13 of the plea agreement requires Bumble Bee's full, truthful, and continuing cooperation.  This may include, among other things, making additional witnesses available for interviews with the government and providing additional documents.  Failure to provide such cooperation is a breach of the plea agreement.  Should any disputes arise as to Bumble Bee's continuing cooperation, the government will bring those disputes to the Court's attention.

Based on the foregoing, the government moves for a 40% downward departure from the bottom of guidelines range, resulting in a maximum fine of $81.5 million.  As explained above however, the government has agreed to recommend a fine of $25 million due to Bumble Bee's inability to pay a fine of that magnitude.  Therefore, the government's substantial assistance recommendation only takes effect in the event of a qualifying sale requiring Big Catch to pay up to a guidelines range fine.  In such instance, the maximum fine should be $81.5 million, based on a reduction for substantial assistance, rather than $136.2 million.

In conclusion, the government requests a judgment requiring Bumble Bee to pay to the United States a criminal fine of $25 million according to the installment schedule described in paragraph 9(a) of the plea agreement and alternatively requiring that Big Catch pay to the United States a maximum criminal fine of $81.5 million in the event of a qualifying sale.

U.S. SENTENCING MEMO.

**B.    Probation**

Chapter 8, Part D of the sentencing guidelines addresses corporate probation.  Probation is only mandatory when any of the circumstances outlined in subsection 8D1.1(a) are present.  The government is not recommending probation in this instance in light of the steps Bumble Bee has taken to address the conduct at issue and because none of the factors in subsection 8D1.1(a) compel the government to make such a recommendation.

Since being served with the grand jury subpoena, Bumble Bee has retained a Chief Compliance Officer.  The new Chief Compliance Officer has established an ethics hotline, available over phone and email, where employees can report potential ethical violations.  He has also undertaken a full-scale revision of the company's code of conduct.  Lastly, he has developed and implemented an antitrust training program.

Additionally, Bumble Bee has terminated the two Senior Vice Presidents who have pleaded guilty to the underlying conduct.  ████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████ ████████████████████

Based on the information currently available to the government, Bumble Bee has taken the steps legally available to the company to address the underlying conduct and implement procedural safeguards to attempt to prevent such conduct from reoccurring.  Should the government later uncover information suggesting that Bumble Bee has misrepresented the status of its compliance program, the government will bring that information to the Court's attention.

**C.    Restitution**

The parties have agreed to recommend that criminal restitution not be imposed.  Under the Clayton Act, 15 U.S.C. §§ 15, *et seq.*, victims of antitrust offenses may bring civil suits to recover treble damages for antitrust injury.  In this case, victims have filed civil suits seeking treble damages; those cases have been consolidated before U.S. District Court Judge Sammartino in the Southern District of California.  *See In Re: Packaged Seafood Products Antitrust Litigation* (15-MD-2670-JLS).  Moreover, the Mandatory Victim Restitution Act of

U.S. SENTENCING MEMO.

1996 does not mandate restitution for Title 15 offenses, but only for crimes of violence and certain Title 18 and Title 21 offenses.  18 U.S.C. § 3663A(c)(1)(A).

## VI.  CRIME VICTIMS

Under the Crime Victims' Rights Act, 18 U.S.C. § 3771, the government has notified crime victims of the plea and sentencing on August 2, 2017.  The government will continue to comply with its obligations under the Crime Victims' Rights Act, including notifying crime victims of any public court proceedings in connection with this matter.

## VII.  CONCLUSION

The parties respectfully request that the Court accept the plea agreement reached between the parties and sentence Bumble Bee to pay a minimum criminal fine of $25 million according to the installment schedule in paragraph 9(a) of the plea agreement and alternatively a maximum criminal fine of $81.5 million payable by Big Catch in the event of a qualifying sale of Bumble Bee.  Further, the parties jointly request that the Court order no restitution and a special assessment of $400.

DATED: July 19, 2017                              Respectfully submitted,


                                                  /s/ *Leslie A. Wulff*
                                                  LESLIE A. WULFF, Trial Attorney
                                                  MANISH KUMAR, Assistant Chief
                                                  ANN CHO LUCAS, Trial Attorney
                                                  U.S. Department of Justice
                                                  Antitrust Division

U.S. SENTENCING MEMO.

# CERTIFICATE OF SERVICE

I certify that on July 19, 2017, I filed the foregoing United States' Sentencing Memorandum and Motion for Departure, Declaration of Leslie A. Wulff, and Declaration of Dale Zuehls with the Clerk of the Court for the United States District Court, Northern District of California by using the Court's CM/ECF system, and also served counsel of record via this Court's CM/ECF system.

Dated: July 19, 2017                                    By:  _/s/ Benjamin Chou_

Benjamin Chou
Paralegal
U.S. Department of Justice
Antitrust Division

U.S. SENTENCING MEMO.