# Exhibit 263
## (Stein Decl.)

| OMB APPROVAL | |
| --- | --- |
| OMB Number: | 3235-0049 |
| Expires: | August 31, 2020 |
| Estimated average burden hours per response | 23.77 |

# FORM ADV (Paper Version)

- **UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION AND**
- **REPORT FORM BY EXEMPT REPORTING ADVISERS**

**Form ADV:  General Instructions**

Read these instructions carefully before filing Form ADV.  Failure to follow these instructions, properly complete the form, or pay all required fees may result in your application or report being delayed or rejected.

In these instructions and in Form ADV, "you" means the investment adviser (*i.e.*, the advisory firm).

If you are a "separately identifiable department or division" (SID) of a bank, "you" means the SID, rather than your bank, unless the instructions or the form provide otherwise.

If you are a *private fund* adviser filing an *umbrella registration*, "you" means the *filing adviser* and each *relying adviser*, unless the instructions or the form provide otherwise.  The information in Items 1, 2, 3 and 10 (including corresponding schedules) should be provided for the *filing adviser* only.

Terms that appear in *italics* are defined in the Glossary of Terms to Form ADV.

1.      **Where can I get more information on Form ADV, electronic filing, and the IARD?**

The SEC provides information about its rules and the Advisers Act on its website: http://www.sec.gov/iard.

NASAA provides information about state investment adviser laws and state rules, and how to contact a *state securities authority*, on its website:  http://www.nasaa.org.

FINRA provides information about the IARD and electronic filing on the IARD website: http://www.iard.com.

2.      **What is Form ADV used for?**

Investment advisers use Form ADV to:

- Register with the Securities and Exchange Commission
- Register with one or more *state securities authorities*
- Amend those registrations;

- Report to the SEC as an *exempt reporting adviser*
- Report to one or more *state securities authorities* as an *exempt reporting adviser*
- Amend those reports; and

- Submit a final report as an *exempt reporting adviser*

**3.      How is Form ADV organized?**

Form ADV contains four parts:

- Part 1A asks a number of questions about you, your business practices, the *persons* who own and *control* you, and the *persons* who provide investment advice on your behalf.
  - o   All advisers registering with the SEC or any of the *state securities authorities* must complete Part 1A.
  - o   *Exempt reporting advisers* (that are not also registering with any *state securities authority*) must complete only the following Items of Part 1A:  1, 2, 3, 6, 7, 10, and 11, as well as corresponding schedules.  *Exempt reporting advisers* that are registering with any *state securities authority* must complete all of Form ADV.

  Part 1A also contains several supplemental schedules.  The items of Part 1A let you know which schedules you must complete.

  - o   Schedule A asks for information about your direct owners and executive officers.
  - o   Schedule B asks for information about your indirect owners.
  - o   Schedule C is used by paper filers to update the information required by Schedules A and B (see Instruction 18).
  - o   Schedule D asks for additional information for certain items in Part 1A.
  - o   Schedule R asks for additional information about *relying advisers*.
  - o   Disclosure Reporting Pages (or DRPs) are schedules that ask for details about disciplinary events involving you or your *advisory affiliates*.

- Part 1B asks additional questions required by *state securities authorities*.  Part 1B contains three additional DRPs.  If you are applying for SEC registration or are registered only with the SEC, you do not have to complete Part 1B.  (If you are filing electronically and you do not have to complete Part 1B, you will not see Part 1B).

- Part 2A requires advisers to create narrative *brochures* containing information about the advisory firm.  The requirements in Part 2A apply to all investment advisers registered with or applying for registration with the SEC, but do not apply to *exempt reporting advisers*.  Every application for registration must include a narrative brochure prepared in accordance with the requirements of Part 2A of Form ADV.  See Advisers Act Rule 203-1.

- Part 2B requires advisers to create *brochure supplements* containing information about certain *supervised persons*.  The requirements in Part 2B apply to all investment advisers registered with or applying for registration with the SEC, but do not apply to *exempt reporting advisers*.

**4.      When am I required to update my Form ADV?**

- SEC- and State-Registered Advisers:

  o *Annual updating amendments*:  You must amend your Form ADV each year by filing an *annual updating amendment* within 90 days after the end of your fiscal year. When you submit your *annual updating amendment*, you must update your responses to all items, including corresponding sections of Schedules A, B, C, and D and all sections of Schedule R for each *relying adviser*.  You must submit your summary of material changes required by Item 2 of Part 2A either in the *brochure* (cover page or the page immediately thereafter) or as an exhibit to your *brochure*.

  o Other-than-annual amendments:  In addition to your *annual updating amendment*, if you are registered with the SEC or a *state securities authority*, you must amend your Form ADV, including corresponding sections of Schedules A, B, C, D, and R, by filing additional amendments (other-than-annual amendments) promptly, if:

    ▪ you are adding or removing a *relying adviser* as part of your *umbrella registration;*

    ▪ information you provided in response to Items 1 (except 1.O. and Section 1.F. of Schedule D), 3, 9 (except 9.A.(2), 9.B.(2), 9.E., and 9.F.), or 11 of Part 1A or Items 1, 2.A. through 2.F., or 2.I. of Part 1B or Sections 1 or 3 of Schedule R becomes inaccurate in any way;

    ▪ information you provided in response to Items 4, 8, or 10 of Part 1A, or Item 2.G. of Part 1B, or Section 10 of Schedule R becomes materially inaccurate; or

    ▪ information you provided in your *brochure* becomes materially inaccurate (see note below for exceptions).

  **Notes**:  Part 1:  If you are submitting an other-than-annual amendment, you are not required to update your responses to Items 2, 5, 6, 7, 9.A.(2), 9.B.(2), 9.E., 9.F., or 12 of Part 1A, Items 2.H. or 2.J. of Part 1B, Section 1.F. of Schedule D or Section 2 of Schedule R even if your responses to those items have become inaccurate.

  Part 2:  You must amend your *brochure supplements* (see Form ADV, Part 2B) promptly if any information in them becomes materially inaccurate.  If you are submitting an other-than-annual amendment to your *brochure*, you are not required to update your summary of material changes as required by Item 2.  You are not required to update your *brochure* between annual amendments solely because the amount of *client* assets you manage has changed or because your fee schedule has changed.  However, if you are updating your *brochure* for a separate reason in between annual amendments, and the amount of *client* assets you manage listed in response to Item 4.E. or your fee schedule listed in

3

response to Item 5.A. has become materially inaccurate, you should update that item(s) as part of the interim amendment.

- _If you are an SEC-registered adviser_, you are required to file your _brochure_ amendments electronically through IARD.  You are not required to file amendments to your _brochure supplements_ with the SEC, but you must maintain a copy of them in your files.

- _If you are a state-registered adviser_, you are required to file your _brochure_ amendments and _brochure supplement_ amendments with the appropriate _state securities authorities_ through IARD.

- _Exempt reporting advisers_:

  o _Annual Updating Amendments_:  You must amend your Form ADV each year by filing an _annual updating amendment_ within 90 days after the end of your fiscal year. When you submit your _annual updating amendment_, you must update your responses to all required items, including corresponding sections of Schedules A, B, C, and D.

  o _Other-than-Annual Amendments_:  In addition to your _annual updating amendment_, you must amend your Form ADV, including corresponding sections of Schedules A, B, C, and D, by filing additional amendments (other-than-annual amendments) promptly if:

    ▪ information you provided in response to Items 1 (except Item 1.O. and Section 1.F. of Schedule D), 3, or 11 becomes inaccurate in any way; or

    ▪ information you provided in response to Item 10 becomes materially inaccurate.

**Failure to update your Form ADV, as required by this instruction, is a violation of SEC rules or similar state rules and could lead to your registration being revoked.**

5. **What is SEC _umbrella registration_ and how can I satisfy the requirements of filing an _umbrella registration_?**

An _umbrella registration_ is a single registration by a _filing adviser_ and one or more _relying advisers_ who advise only _private funds_ and certain separately managed account _clients_ that are _qualified clients_ and collectively conduct a single advisory business.  Absent other facts suggesting that the _filing adviser_ and _relying adviser_(s) conduct different businesses, _umbrella registration_ is available under the following circumstances:

i.  The _filing adviser_ and each _relying adviser_ advise only _private funds_ and _clients_ in separately managed accounts that are _qualified clients_ and are otherwise eligible to invest in the _private funds_ advised by the _filing adviser_ or a _relying adviser_ and whose accounts

pursue investment objectives and strategies that are substantially similar or otherwise related to those *private funds*.

ii.   The *filing adviser* has its *principal office and place of business* in the United States and, therefore, all of the substantive provisions of the Advisers Act and the rules thereunder apply to the *filing adviser's* and each *relying adviser's* dealings with each of its *clients*, regardless of whether any *client* of the *filing adviser* or *relying adviser* providing the advice is a *United States person*.

iii.   Each *relying adviser*, its *employees* and the *persons* acting on its behalf are subject to the *filing adviser's* supervision and *control* and, therefore, each *relying adviser*, its *employees* and the *persons* acting on its behalf are "persons associated with" the *filing adviser* (as defined in section 202(a)(17) of the Advisers Act).

iv.   The advisory activities of each *relying adviser* are subject to the Advisers Act and the rules thereunder, and each *relying adviser* is subject to examination by the SEC.

v.   The *filing adviser* and each *relying adviser* operate under a single code of ethics adopted in accordance with SEC rule 204A-1 and a single set of written policies and procedures adopted and implemented in accordance with SEC rule 206(4)-7 and administered by a single chief compliance officer in accordance with that rule.

To satisfy the requirements of Form ADV while using *umbrella registration* the *filing adviser* must sign, file, and update as required, a single Form ADV (Parts 1 and 2) that relates to, and includes all information concerning, the *filing adviser* and each *relying adviser* (*e.g.*, disciplinary information and ownership information), and must include this same information in any other reports or filings it must make under the Advisers Act or the rules thereunder (*e.g.*, Form PF). The *filing adviser* and each *relying adviser* must not be prohibited from registering with the SEC by section 203A of the Advisers Act (*i.e.*, the *filing adviser* and each *relying adviser* must individually qualify for SEC registration).

Unless otherwise specified, references to "you" in Form ADV refer to both the *filing adviser* and each *relying adviser*. The information in Items 1, 2, 3 and 10 (including corresponding schedules) should be provided for the *filing adviser* only. A separate Schedule R should be completed for each *relying adviser*. References to "you" in Schedule R refer to the *relying adviser* only.

A *filing adviser* applying for registration with the SEC should complete a Schedule R for each *relying adviser*. If you are a *filing adviser* registered with the SEC and would like to add or delete *relying advisers* from an *umbrella registration*, you should file an other-than-annual amendment and add or delete Schedule Rs as needed.

Note: *Umbrella registration* is not available to *exempt reporting advisers*.

**6.   Where do I sign my Form ADV application or amendment?**

You must sign the appropriate Execution Page.  There are three Execution Pages at the end of the form.  Your initial application, your initial report (in the case of an *exempt reporting adviser*), and all amendments to Form ADV must include at least one Execution Page.

- If you are applying for or are amending your SEC registration, or if you are reporting as an *exempt reporting adviser* or amending your report, you must sign and submit either a:

  o Domestic Investment Adviser Execution Page, if you (the advisory firm) are a resident of the United States; or
  o *Non-Resident* Investment Adviser Execution Page, if you (the advisory firm) are not a resident of the United States.

- If you are applying for or are amending your registration with a *state securities authority*, you must sign and submit the State-Registered Investment Adviser Execution Page.

**7.      Who must sign my Form ADV or amendment?**

The individual who signs the form depends upon your form of organization:

- For a sole proprietorship, the sole proprietor.
- For a partnership, a general partner.
- For a corporation, an authorized principal officer.
- For a "separately identifiable department or division" (SID) of a bank, a principal officer of your bank who is directly engaged in the management, direction, or supervision of your investment advisory activities.
- For all others, an authorized individual who participates in managing or directing your affairs.

The signature does not have to be notarized, and in the case of an electronic filing, should be a typed name.

**8.      How do I file my Form ADV?**

Complete Form ADV electronically using the Investment Adviser Registration Depository (IARD) if:

- You are filing with the SEC (and submitting *notice filings* to any of the *state securities authorities*), or

- You are filing with a *state securities authority* that requires or permits advisers to submit Form ADV through the IARD.

  **Note:**  SEC rules require advisers that are registered or applying for registration with the SEC, or that are reporting to the SEC as an *exempt reporting adviser*, to file electronically through the IARD system.  See SEC rules 203-1 and 204-4.

To file electronically, go to the IARD website (<www.iard.com>), which contains detailed instructions for advisers to follow when filing through the IARD.

Complete Form ADV (Paper Version) on paper if:

- You are filing with the SEC or a *state securities authority* that requires electronic filing, but you have been granted a continuing hardship exemption. Hardship exemptions are described in Instruction 17.

- You are filing with a *state securities authority* that permits (but does not require) electronic filing and you do not file electronically.

**9.      How do I get started filing electronically?**

First, obtain a copy of the IARD Entitlement Package from the following website: http://www.iard.com/GetStarted.asp. Second, request access to the IARD system for your firm by completing and submitting the IARD Entitlement Package. The IARD Entitlement Package explains how the form may be submitted. Mail the forms to: FINRA Entitlement Group, 9509 Key West Avenue, Rockville, MD 20850.

When FINRA receives your Entitlement Package, they will assign a *CRD* number (identification number for your firm) and a user I.D. code and password (identification number and system password for the individual(s) who will submit Form ADV filings for your firm). Your firm may request an I.D. code and password for more than one individual. FINRA also will create a financial account for you from which the IARD will deduct filing fees and any state fees you are required to pay. If you already have a *CRD* account with FINRA, it will also serve as your IARD account; a separate account will not be established.

Once you receive your *CRD* number, user I.D. code and password, and you have funded your account, you are ready to file electronically.

Questions regarding the Entitlement Process should be addressed to FINRA at 240.386.4848.

**10.     If I am applying for registration with the SEC, or amending my SEC registration, how do I make *notice filings* with the *state securities authorities*?**

If you are applying for registration with the SEC or are amending your SEC registration, one or more *state securities authorities* may require you to provide them with copies of your SEC filings. We call these filings "*notice filings*." Your *notice filings* will be sent electronically to the states that you check on Item 2.C. of Part 1A. The *state securities authorities* to which you send *notice filings* may charge fees, which will be deducted from the account you establish with FINRA. To determine which *state securities authorities* require SEC-registered advisers to submit *notice filings* and to pay fees, consult the relevant state investment adviser law or *state securities authority*. See General Instruction 1.

If you are granted a continuing hardship exemption to file Form ADV on paper, FINRA will enter your filing into the IARD and your *notice filings* will be sent electronically to the *state securities authorities* that you check on Item 2.C. of Part 1A.

**11.     I am registered with a state.  When must I switch to SEC registration?**

If at the time of your *annual updating amendment* you meet at least one of the requirements for SEC registration in Item 2.A.(1) to (12) of Part 1A, you must apply for registration with the SEC within 90 days after you file the *annual updating amendment*.  Once you register with the SEC, you are subject to SEC regulation, regardless of whether you remain registered with one or more states.  See SEC rule 203A-1(b)(2).  Each of your *investment adviser representatives*, however, may be subject to registration in those states in which the representative has a place of business.  See Advisers Act section 203A(b)(1); SEC rule 203A-3(a).  For additional information, consult the investment adviser laws or the *state securities authority* for the particular state in which you are "doing business."  See General Instruction 1.

**12.     I am registered with the SEC.  When must I switch to registration with a *state securities authority*?**

If you check box 13 in Item 2.A. of Part 1A to report on your *annual updating amendment* that you are no longer eligible to register with the SEC, you must withdraw from SEC registration within 180 days after the end of your fiscal year by filing Form ADV-W.  See SEC rule 203A-1(b)(2).  You should consult state law or the *state securities authority* for the states in which you are "doing business" to determine if you are required to register in these states.  See General Instruction 1.  Until you file your Form ADV-W with the SEC, you will remain subject to SEC regulation, and you also will be subject to regulation in any states where you register.  See SEC rule 203A-1(b)(2).

**13.     I am an *exempt reporting adviser*.  When must I submit my first report on Form ADV?**

- All *exempt reporting advisers*:
  You must submit your initial Form ADV filing within 60 days of relying on the exemption from registration under either section 203(l) of the Advisers Act as an adviser solely to one or more venture capital funds or section 203(m) of the Advisers Act because you act solely as an adviser to private funds and have assets under management in the United States of less than $150 million.

- Additional instruction for advisers switching from being registered to being *exempt reporting advisers*:
  If you are currently registered as an investment adviser (or have an application for registration pending) with the SEC or with a *state securities authority*, you must file a Form ADV-W to withdraw from registration in the jurisdictions where you are switching.  You must submit the Form ADV-W <u>before</u> submitting your first report as an *exempt reporting adviser*.

14.     **I am an *exempt reporting adviser*.  Is it possible that I might be required to also register with or submit a report to a *state securities authority*?**

Yes, you may be required to register with or submit a report to one or more *state securities authorities*.  If you are required to register with one or more *state securities authorities*, you must complete all of Form ADV.  See General Instruction 3.  If you are required to submit a report to one or more *state securities authorities*, check the box(es) in Item 2.C. of Part 1A next to the state(s) you would like to receive the report.  Each of your *investment adviser representatives* may also be subject to registration requirements.  For additional information about the requirements that may apply to you, consult the investment adviser laws or the *state securities authority* for the particular state in which you are "doing business."  See General Instruction 1.

15.     **What do I do if I no longer meet the definition of "*exempt reporting adviser*"?**

- Advisers Switching to SEC Registration:

  o  You may no longer be an *exempt reporting adviser* and may be required to register with the SEC if you wish to continue doing business as an investment adviser.  For example, you may be relying on section 203(l) and wish to accept a *client* that is not a venture capital fund as defined in SEC rule 203(l)-1, or you may have been relying on SEC rule 203(m)-1 and reported in Section 2.B. of Schedule D to your *annual updating amendment* that you have *private fund* assets of $150 million or more.

    ▪  If you are relying on section 203(l), unless you qualify for another exemption, you would violate the Advisers Act's registration requirement if you accept a *client* that is not a venture capital fund as defined in SEC rule 203(l)-1 before the SEC approves your application for registration.  You must submit your final report as an *exempt reporting adviser* and apply for SEC registration in the same filing.

    ▪  If you were relying on SEC rule 203(m)-1 and you reported in Section 2.B. of Schedule D to your *annual updating amendment* that you have *private fund* assets of $150 million or more, you must register with the SEC unless you qualify for another exemption.  If you have complied with all SEC reporting requirements applicable to an *exempt reporting adviser* as such, you have up to 90 days after filing your *annual updating amendment* to apply for SEC registration, and you may continue doing business as a *private fund* adviser during this time.  You must submit your final report as an *exempt reporting adviser* and apply for SEC registration in the same filing.  Unless you qualify for another exemption, you would violate the Advisers Act's registration requirement if you accept a *client* that is not a *private fund* during this transition period before the SEC approves your application for registration, and you must comply with all SEC reporting requirements applicable to an *exempt reporting adviser* as such during this 90-day transition period.  If you

have not complied with all SEC reporting requirements applicable to an *exempt reporting adviser* as such, this 90-day transition period is not available to you.  Therefore, if the transition period is not available to you, and you do not qualify for another exemption, your application for registration must be approved by the SEC before you meet or exceed SEC rule 203(m)-1's $150 million asset threshold.

o   You will be deemed in compliance with the Form ADV <u>filing</u> and <u>reporting</u> requirements until the SEC approves or denies your application.  If your application is approved, you will be able to continue business as a registered adviser.

o   If you register with the SEC, you may be subject to state *notice filing* requirements.  To determine these requirements, consult the investment adviser laws or the *state securities authority* for the particular state in which you are "doing business."  See General Instruction 1.

**Note**:  If you are relying on SEC rule 203(m)-1 and you accept a *client* that is not a *private fund*, you will lose the exemption provided by SEC rule 203(m)-1 immediately.  To avoid this result, you should apply for SEC registration in advance so that the SEC has approved your registration <u>before</u> you accept a *client* that is not a *private fund*.

The 90-day transition period described above also applies to investment advisers with their *principal offices and places of business* outside of the United States with respect to their *clients* who are *United States persons* (*e.g.*, the adviser would not be eligible for the 90-day transition period if it accepted a *client* that is a *United States person* and is not a *private fund*).

•   <u>Advisers Not Switching to SEC Registration</u>:

o   You may no longer be an *exempt reporting adviser* but may not be required to register with the SEC or may be prohibited from doing so.  For example, you may cease to do business as an investment adviser, become eligible for an exemption that does not require reporting, or be ineligible for SEC registration.  In this case, you must submit a final report as an *exempt reporting adviser* to update only Item 1 of Part 1A of Form ADV.

o   You may be subject to state registration requirements.  To determine these requirements, consult the investment adviser laws or the *state securities authority* for the particular state in which you are "doing business."  See General Instruction 1.

**16.   Are there filing fees?**

Yes.  These fees go to support and maintain the IARD.  The IARD filing fees are in addition to any registration or other fee that may be required by state law.  You must pay an IARD filing fee for your initial application, your initial report, and each *annual updating amendment*.  There is no filing fee for an other-than-annual amendment, a final report as an

*exempt reporting adviser*, or Form ADV-W.  The IARD filing fee schedule is published at http://www.sec.gov/iard; http://www.nasaa.org; and http://www.iard.com.

If you are submitting a paper filing under a continuing hardship exemption (see Instruction 17), you are required to pay an additional fee.  The amount of the additional fee depends on whether you are filing Form ADV or Form ADV-W.  (There is no additional fee for filings made on Form ADV-W.)  The hardship filing fee schedule is available by contacting FINRA at 240.386.4848.

**17.      What if I am not able to file electronically?**

If you are required to file electronically but cannot do so, you may be eligible for one of two types of hardship exemptions from the electronic filing requirements.

- A **temporary hardship exemption** is available if you file electronically, but you encounter unexpected difficulties that prevent you from making a timely filing with the IARD, such as a computer malfunction or electrical outage.  This exemption does <u>not</u> permit you to file on paper; instead it extends the deadline for an electronic filing for seven business days.  See SEC rules 203-3(a) and 204-4(e).

- A **continuing hardship exemption** may be granted if you are a small business and you can demonstrate that filing electronically would impose an undue hardship.  You are a small business, and may be eligible for a continuing hardship exemption, if you are required to answer Item 12 of Part 1A (because you have assets under management of less than $25 million) <u>and</u> you are able to respond "no" to each question in Item 12.  See SEC rule 0-7.

  If you have been granted a continuing hardship exemption, you must complete and submit the paper version of Form ADV to FINRA.  FINRA will enter your responses into the IARD.  As discussed in General Instruction 16, FINRA will charge you a fee to reimburse it for the expense of data entry.

**18.      I am eligible to file on paper.  How do I make a paper filing?**

When filing on paper, you must:

- Type all of your responses.
- Include your name (the same name you provide in response to Item 1.A. of Part 1A) and the date on every page.
- If you are amending your Form ADV:
  - complete page 1 and circle the number of any item for which you are changing your response.
  - include your SEC 801-number (if you have one), or your 802-number (if you have one), and your *CRD* number (if you have one) on every page.
  - complete the amended item in full and circle the number of the item for which you are changing your response.

o   to amend Schedule A or Schedule B, complete and submit Schedule C.

Where you submit your paper filing depends on why you are eligible to file on paper:

- If you are filing on paper because you have been granted a continuing hardship exemption, submit one manually signed Form ADV and one copy to:  IARD Document Processing, FINRA, P.O. Box 9495, Gaithersburg, MD 20898-9495.

   **If you complete Form ADV on paper and submit it to FINRA but you do not have a continuing hardship exemption, the submission will be returned to you.**

- If you are filing on paper because a state in which you are registered or in which you are applying for registration allows you to submit paper instead of electronic filings, submit one manually signed Form ADV and one copy to the appropriate *state securities authorities*.

**19.   Who is required to file Form ADV-NR?**

Every *non-resident* general partner and *managing agent* of all SEC-registered advisers and *exempt reporting advisers*, whether or not the adviser is resident in the United States, must file Form ADV-NR in connection with the adviser's initial application or report.  A general partner or *managing agent* of an SEC-registered adviser or *exempt reporting adviser* who becomes a *non-resident* after the adviser's initial application or report has been submitted must file Form ADV-NR within 30 days.  Form ADV-NR must be filed on paper (it cannot be filed electronically).

Submit Form ADV-NR to the SEC at the following address:

   Securities and Exchange Commission, 100 F Street, NE, Washington, DC 20549; Attn:  OCIE Registrations Branch.

**Failure to file Form ADV-NR promptly may delay SEC consideration of your initial application.**

<u>Federal Information Law and Requirements</u>

Sections 203 and 204 of the Advisers Act [15 U.S.C. §§ 80b-3 and 80b-4] authorize the SEC to collect the information required by Form ADV.  The SEC collects the information for regulatory purposes, such as deciding whether to grant registration.  Filing Form ADV is mandatory for advisers who are required to register with the SEC and for *exempt reporting advisers*.  The SEC maintains the information submitted on this form and makes it publicly available.  The SEC may return forms that do not include required information.  Intentional misstatements or omissions constitute federal criminal violations under 18 U.S.C. § 1001 and 15 U.S.C. § 80b-17.

<u>SEC's Collection of Information</u>

An agency may not conduct or sponsor, and a person is not required to respond to, a collection of information unless it displays a currently valid control number.  The Advisers Act authorizes the SEC to collect the information on Form ADV from investment advisers.  See 15 U.S.C. §§ 80b-3 and 80b-4.  Filing the form is mandatory.

The form enables the SEC to register investment advisers and to obtain information from and about *exempt reporting advisers*.  Every applicant for registration with the SEC as an adviser, and every *exempt reporting adviser*, must file the form.  See 17 C.F.R. §§ 275.203-1 and 204-4. By accepting a form, however, the SEC does not make a finding that it has been completed or submitted correctly.  The form is filed annually by every adviser, no later than 90 days after the end of its fiscal year, to amend its registration or its report.  It is also filed promptly during the year to reflect material changes.  See 17 C.F.R. § 275.204-1.  The SEC maintains the information on the form and makes it publicly available through the IARD.

Anyone may send the SEC comments on the accuracy of the burden estimate on page 1 of the form, as well as suggestions for reducing the burden.  The Office of Management and Budget has reviewed this collection of information under 44 U.S.C. § 3507.

The information contained in the form is part of a system of records subject to the Privacy Act of 1974, as amended.  The SEC has published in the Federal Register the Privacy Act System of Records Notice for these records.

# FORM ADV (Paper Version)

- **UNIFORM APPLICATION FOR INVESTMENT ADVISER REGISTRATION AND**
- **REPORT BY EXEMPT REPORTING ADVISERS**

**Form ADV:  Instructions for Part 1A**

These instructions explain how to complete certain items in Part 1A of Form ADV.

**1.  Item 1:  Identifying Information**

**Separately Identifiable Department or Division of a Bank.**  If you are a "separately identifiable department or division" (SID) of a bank, answer Item 1.A. with the full legal name of your bank, and answer Item 1.B. with your own name (the name of the department or division) and all names under which you conduct your advisory business.  In addition, your *principal office and place of business* in Item 1.F. should be the principal office at which you conduct your advisory business.  In response to Item 1.I., the website addresses and social media information you list on Schedule D should be those that provide information about your own activities, rather than general information about your bank.

**2.  Item 2:  SEC Registration and SEC Report by *Exempt Reporting Advisers***

If you are registered or applying for registration with the SEC, you must indicate in Item 2.A. why you are eligible to register with the SEC by checking <u>at least one</u> of the boxes.

a.  **Item 2.A.(1):  Adviser with Regulatory Assets Under Management of $100 Million or More.**  You may check box 1 <u>only</u> if your response to Item 5.F.(2)(c) is $100 million or more, or you are filing an *annual updating amendment* with the SEC and your response to Item 5.F.(2)(c) is $90 million or more.  While you <u>may</u> register with the SEC if your regulatory assets under management are at least $100 million but less than $110 million, you <u>must</u> apply for registration with the SEC if your regulatory assets under management are $110 million or more.  If you are a SEC-registered adviser, you <u>may</u> remain registered with the SEC if your regulatory assets under management are $90 million or more.  See SEC rule 203A-1(a).  Part 1A Instruction 5.b. explains how to calculate your regulatory assets under management.

If you are a state-registered adviser and you report on your *annual updating amendment* that your regulatory assets under management increased to $100 million or more, you <u>may</u> register with the SEC.  If your regulatory assets under management increased to $110 million or more, you <u>must</u> apply for registration with the SEC within 90 days after you file that *annual updating amendment*.  See SEC rule 203A-1(b)(1) and Form ADV General Instruction 11.

b.  **Item 2.A.(2):  Mid-Sized Adviser.**  You may check box 2 <u>only</u> if your response to Item 5.F.(2)(c) is $25 million or more but less than $100 million, <u>and</u> you satisfy one of the

requirements below.  Part 1A Instruction 5.b. explains how to calculate your regulatory assets under management.

You must register with the SEC if you <u>meet at least one</u> of the following requirements:

- You are not required to be registered as an investment adviser with the *state securities authority* of the state where you maintain your *principal office and place of business* pursuant to that state's investment adviser laws.  If you are exempt from registration with that state or are excluded from the definition of investment adviser in that state, you <u>must</u> register with the SEC.  You should consult the investment adviser laws or the *state securities authority* for the particular state in which you maintain your *principal office and place of business* to determine if you are required to register in that state.  See General Instruction 1.

- You are not subject to examination by the *state securities authority* of the state where you maintain your *principal office and place of business*.  To determine whether such *state securities authority* does not conduct such examinations, see: http://www.sec.gov/divisions/investment/midsizeadviserinfo.htm.

See section 203A(a)(2) of the Advisers Act.

c. **Item 2.A.(5):  Adviser to an Investment Company.**  You may check box 5 <u>only</u> if you currently provide advisory services under an investment advisory contract to an investment company registered under the Investment Company Act of 1940 and the investment company is operational (i.e., has assets and shareholders, other than just the organizing shareholders).  See sections 203A(a)(1)(B) and 203A(a)(2)(A) of the Advisers Act.  Advising investors about the merits of investing in mutual funds or recommending particular mutual funds does not make you eligible to check this box.

d. **Item 2.A.(6):  Adviser to a Business Development Company.**  You may check box 6 <u>only</u> if your response to Item 5.F.(2)(c) is $25 million or more of regulatory assets under management, and you currently provide advisory services under an investment advisory contract to a company that has elected to be a business development company pursuant to section 54 of the Investment Company Act of 1940, that has not withdrawn the election, and that is operational (i.e., has assets and shareholders, other than just the organizing shareholders).  See section 203A(a)(2)(A) of the Advisers Act.  Part 1A Instruction 5.b. explains how to calculate your regulatory assets under management.

e. **Item 2.A.(7):  Pension Consultant.**  You may check box 7 <u>only</u> if you are eligible for the pension consultant exemption from the prohibition on SEC registration.

- You are eligible for this exemption if you provided investment advice to employee benefit plans, governmental plans, or church plans with respect to assets having an aggregate value of $200 million or more during the 12-month period that ended within 90 days of filing this Form ADV.  You are <u>not</u> eligible for this exemption if

you only advise plan participants on allocating their investments within their pension plans.  See SEC rule 203A-2(a).

- To calculate the value of assets for purposes of this exemption, aggregate the assets of the plans for which you provided advisory services at the end of the 12-month period. If you provided advisory services to other plans during the 12-month period, but your employment or contract terminated before the end of the 12-month period, you also may include the value of those assets.

f.  **Item 2.A.(8):  Related Adviser.**  You may check box 8 <u>only</u> if you are eligible for the related adviser exemption from the prohibition on SEC registration.  See SEC rule 203A-2(b).  You are eligible for this exemption if you *control*, are *controlled* by, or are under common *control* with an investment adviser that is registered with the SEC, <u>and</u> you have the same *principal office and place of business* as that other investment adviser.  Note that you may not rely on the SEC registration of an Internet adviser under rule 203A-2(e) in establishing eligibility for this exemption.  See SEC rule 203A-2(e)(1)(iii).  If you check box 8, you also must complete Section 2.A.(8) of Schedule D.

g.  **Item 2.A.(9):  Adviser Expecting to be Eligible for Registration within 120 Days.**  You may check box 9 <u>only</u> if you are eligible for the exemption from the prohibition on SEC registration available to advisers expecting to be eligible for SEC registration within 120 days, such as a newly formed adviser.  See SEC rule 203A-2(c).  You are eligible for this exemption if immediately before you file your application for registration with the SEC:

- you were not registered or required to be registered with the SEC or a *state securities authority*; <u>and</u>

- you have a reasonable expectation that you will be eligible to register with the SEC within 120 days after the date that your registration with the SEC becomes effective.

If you check box 9, you also must complete Section 2.A.(9) of Schedule D.

You must file an amendment to Part 1A of your Form ADV that updates your response to Item 2.A. within 120 days after the SEC declares your registration effective.  You may not check box 9 on your amendment; since this exemption is available only if you are not registered, you may not "re-rely" on this exemption.  If you indicate on that amendment (by checking box 13) that you are not eligible to register with the SEC, you also must file a Form ADV-W to withdraw your SEC registration no later than 120 days after your registration was declared effective.  You should contact the appropriate *state securities authority* to determine how long it may take to become state-registered sufficiently in advance of when you are required to file Form ADV-W to withdraw from SEC registration.

*Note*:  If you expect to be eligible for SEC registration because of the amount of your regulatory assets under management, that amount must be $100 million or more no later than 120 days after your registration is declared effective.

h.  **Item 2.A.(10):  Multi-State Adviser.**  You may check box 10 <u>only</u> if you are eligible for the multi-state adviser exemption from the prohibition on SEC registration.  See SEC rule 203A-2(d).  You are eligible for this exemption if you are required to register as an investment adviser with the *state securities authorities* of 15 or more states.  If you check box 10, you must complete Section 2.A.(10) of Schedule D.  You must complete Section 2.A.(10) of Schedule D in each *annual updating amendment* you submit.

If you check box 10, you also must:
- create and maintain a list of the states in which, but for this exemption, you would be required to register;
- update this list each time you submit an *annual updating amendment* in which you continue to represent that you are eligible for this exemption; and
- maintain the list in an easily accessible place for a period of not less than five years from each date on which you indicate that you are eligible for the exemption.

If, at the time you file your *annual updating amendment*, you are required to register in less than 15 states and you are not otherwise eligible to register with the SEC, you must check box 13 in Item 2.A.  You also must file a Form ADV-W to withdraw your SEC registration.  See Part 1A Instruction 2.j.

i.  **Item 2.A.(11):  Internet Adviser.**  You may check box 11 <u>only</u> if you are eligible for the Internet adviser exemption from the prohibition on SEC registration.  See SEC rule 203A-2(e).  You are eligible for this exemption if:

- you provide investment advice to your *clients* through an interactive website.  An <u>interactive</u> <u>website</u> means a website in which computer software-based models or applications provide investment advice based on personal information each *client* submits through the website.  Other forms of online or Internet investment advice do not qualify for this exemption;

- you provide investment advice to all of your *clients* exclusively through the interactive website, except that you may provide investment advice to fewer than 15 *clients* through other means during the previous 12 months; and

- you maintain a record demonstrating that you provide investment advice to your *clients* exclusively through an interactive website in accordance with these limits.

j.  **Item 2.A.(13):  Adviser No Longer Eligible to Remain Registered with the SEC.** You <u>must</u> check box 13 if:

- you are registered with the SEC;

- you are filing an *annual updating amendment* to Form ADV in which you indicate in response to Item 5.F.(2)(c) that you have regulatory assets under management of less than $90 million; and
- you are not eligible to check any other box (other than box 13) in Item 2.A. (and are therefore no longer eligible to remain registered with the SEC).

You must withdraw from SEC registration within 180 days after the end of your fiscal year by filing Form ADV-W.  Until you file your Form ADV-W, you will remain subject to SEC regulation, and you also will be subject to regulation in the states in which you register.  See SEC rule 203A-1(b)(2).

k.  **Item 2.B.:  Reporting by *Exempt Reporting Advisers*.**  You may check box 2.B.(1) only if you qualify for the exemption from SEC registration as an adviser solely to one or more venture capital funds.  See SEC rule 203(l)-1.  You may check box 2.B.(2) only if you qualify for the exemption from SEC registration because you act solely as an adviser to *private funds* and have assets under management in the United States of less than $150 million.  See SEC rule 203(m)-1.  You may check both boxes to indicate that you qualify for both exemptions.  You should check box 2.B.(3) if you act solely as an adviser to *private funds* but you are no longer eligible to check box 2.B.(2) because you have assets under management in the United States of $150 million or more.  If you check box 2.B.(2) or (3), you also must complete Section 2.B. of Schedule D.

## 3.  Item 3:  Form of Organization

If you are a "separately identifiable department or division" (SID) of a bank, answer Item 3.A. by checking "other."  In the space provided, specify that you are a "SID of" and indicate the form of organization of your bank.  Answer Items 3.B. and 3.C. with information about your bank.

## 4.  Item 4:  Successions

a.  **Succession of an SEC-Registered Adviser.**  If you (1) have taken over the business of an investment  adviser or (2) have changed your structure or legal status (e.g., form of organization or state of incorporation), a new organization has been created, which has registration obligations under the Advisers Act.  There are different ways to fulfill these obligations.  You may rely on the registration provisions discussed in the General Instructions, or you may be able to rely on special registration provisions for "successors" to SEC-registered advisers, which may ease the transition to the successor adviser's registration.

To determine if you may rely on these provisions, review "Registration of Successors to Broker-Dealers and Investment Advisers," Investment Advisers Act Release No. 1357 (Dec. 28, 1992).  If you have taken over an adviser, follow Part 1A Instruction 4.a.(1), Succession by Application.  If you have changed your structure or legal status, follow Part 1A, Instruction 4.a.(2), Succession by Amendment.  If either (1) you are a "separately identifiable department or division" (SID) of a bank that is currently

18

registered as an investment adviser, and you are taking over your bank's advisory business; or (2) you are a SID currently registered as an investment adviser, and your bank is taking over your advisory business, then follow Part 1A Instruction 4.a.(1), Succession by Application.

(1) **Succession by Application.**  If you are not registered with the SEC as an adviser, and you are acquiring or assuming substantially all of the assets and liabilities of the advisory business of an SEC-registered adviser, file a new application for registration on Form ADV.  You will receive new registration numbers.  You must file the new application within 30 days after the succession.  On the application, make sure you check "yes" to Item 4.A., enter the date of the succession in Item 4.B., and complete Section 4 of Schedule D.

Until the SEC declares your new registration effective, you may rely on the registration of the adviser you are acquiring, but only if the adviser you are acquiring is no longer conducting advisory activities.  Once your new registration is effective, a Form ADV-W must be filed with the SEC to withdraw the registration of the acquired adviser.

(2) **Succession by Amendment.**  If you are a new investment adviser formed solely as a result of a change in form of organization, a reorganization, or a change in the composition of a partnership, and there has been no practical change in *control* or management, you may amend the registration of the registered investment adviser to reflect these changes rather than file a new application.  You will keep the same registration numbers, and you should not file a Form ADV-W.  On the amendment, make sure you check "yes" to Item 4.A., enter the date of the succession in Item 4.B., and complete Section 4 of Schedule D.  You <u>must</u> submit the amendment within 30 days after the change or reorganization.

b. **Succession of a State-Registered Adviser.**  If you (1) have taken over the business of an investment adviser <u>or</u> (2) have changed your structure or legal status (e.g., form of organization or state of incorporation), a new organization has been created, which has registration obligations under state investment adviser laws.  There may be different ways to fulfill these obligations.  You should contact each state in which you are registered to determine that state's requirements for successor registration.  See Form ADV General Instruction 1.

## 5.  Item 5:  Information About Your Advisory Business

a. **Newly-Formed Advisers:**  Several questions in Item 5 that ask about your advisory business assume that you have been operating your advisory business for some time.  Your response to these questions should reflect your current advisory business (i.e., at the time you file your Form ADV), with the following exceptions:

- base your response to Item 5.E. on the types of compensation you expect to accept;

19

- base your response to Item 5.G. and Item 5.J. on the types of advisory services you expect to provide during the next year; and
- skip Item 5.H.

b. **Item 5.F.: Calculating Your Regulatory Assets Under Management.** In determining the amount of your regulatory assets under management, include the securities portfolios for which you provide continuous and regular supervisory or management services as of the date of filing this Form ADV.

(1) **Securities Portfolios.** An account is a securities portfolio if at least 50% of the total value of the account consists of securities. For purposes of this 50% test, you may treat cash and cash equivalents (i.e., bank deposits, certificates of deposit, bankers acceptances, and similar bank instruments) as securities. You must include securities portfolios that are:

(a) your family or proprietary accounts;

(b) accounts for which you receive no compensation for your services; and

(c) accounts of *clients* who are not *United States persons*.

For purposes of this definition, treat all of the assets of a *private fund* as a securities portfolio, regardless of the nature of such assets. For accounts of *private funds*, moreover, include in the securities portfolio any uncalled commitment pursuant to which a *person* is obligated to acquire an interest in, or make a capital contribution to, the *private fund*.

(2) **Value of Portfolio.** Include the entire value of each securities portfolio for which you provide continuous and regular supervisory or management services. If you provide continuous and regular supervisory or management services for only a portion of a securities portfolio, include as regulatory assets under management only that portion of the securities portfolio for which you provide such services. Exclude, for example, the portion of an account:

(a) under management by another *person*; or

(b) that consists of real estate or businesses whose operations you "manage" on behalf of a *client* but not as an investment.

Do not deduct any outstanding indebtedness or other accrued but unpaid liabilities.

(3) **Continuous and Regular Supervisory or Management Services.**

**General Criteria.** You provide continuous and regular supervisory or management services with respect to an account if:

(a) you have *discretionary authority* over and provide ongoing supervisory or management services with respect to the account; or

(b) you do not have *discretionary authority* over the account, but you have ongoing responsibility to select or make recommendations, based upon the needs of the *client*, as to specific securities or other investments the account may purchase or sell and, if such recommendations are accepted by the *client*, you are responsible for arranging or effecting the purchase or sale.

**Factors.**  You should consider the following factors in evaluating whether you provide continuous and regular supervisory or management services to an account.

(a) **Terms of the advisory contract.**  If you agree in an advisory contract to provide ongoing management services, this suggests that you provide these services for the account.  Other provisions in the contract, or your actual management practices, however, may suggest otherwise.

(b) **Form of compensation.**  If you are compensated based on the average value of the *client's* assets you manage over a specified period of time, that suggests that you provide continuous and regular supervisory or management services for the account.  If you receive compensation in a manner similar to either of the following, that suggests you d<u>o</u> <u>not</u> provide continuous and regular supervisory or management services for the account --

   (i) you are compensated based upon the time spent with a *client* during a *client* visit; or

   (ii) you are paid a retainer based on a percentage of assets covered by a financial plan.

(c) **Management practices.**  The extent to which you actively manage assets or provide advice bears on whether the services you provide are continuous and regular supervisory or management services.  The fact that you make infrequent trades (e.g., based on a "buy and hold" strategy) does not mean your services are not "continuous and regular."

**Examples.**  You <u>may</u> provide continuous and regular supervisory or management services for an account if you:

(a) have *discretionary authority* to allocate *client* assets among various mutual funds;

(b) do not have *discretionary authority*, but provide the same allocation services, and satisfy the criteria set forth in Instruction 5.b.(3);

    (c) allocate assets among other managers (a "manager of managers"), but only if you have *discretionary authority* to hire and fire managers and reallocate assets among them; or

    (d) you are a broker-dealer and treat the account as a brokerage account, but only if you have *discretionary authority* over the account.

You <u>do</u> <u>not</u> provide continuous and regular supervisory or management services for an account if you:

    (a) provide market timing recommendations (i.e., to buy or sell), but have no ongoing management responsibilities;

    (b) provide only *impersonal investment advice* (e.g., market newsletters);

    (c) make an initial asset allocation, without continuous and regular monitoring and reallocation; or

    (d) provide advice on an intermittent or periodic basis (such as upon *client* request, in response to a market event, or on a specific date (e.g., the account is reviewed and adjusted quarterly)).

(4) **Value of Regulatory Assets Under Management.**  Determine your regulatory assets under management based on the current market value of the assets as determined within 90 days prior to the date of filing this Form ADV.  Determine market value using the same method you used to report account values to *clients* or to calculate fees for investment advisory services.

In the case of a *private fund*, determine the current market value (or fair value) of the *private fund's* assets and the contractual amount of any uncalled commitment pursuant to which a *person* is obligated to acquire an interest in, or make a capital contribution to, the *private* fund.

(5) **Example.**  This is an example of the method of determining whether an account of a *client* other than a *private fund* may be included as regulatory assets under management.

The *client's* portfolio consists of the following:

| | |
|---|---|
| $6,000,000 | stocks and bonds |
| $1,000,000 | cash and cash equivalents |
| <u>$3,000,000</u> | non-securities (collectibles, commodities, real estate, etc.) |
| <u>$10,000,000</u> | Total Assets |

**First, is the account a securities portfolio?**  The account is a securities portfolio because securities as well as cash and cash equivalents (which you have chosen to

include as securities) ($6,000,000 + $1,000,000 = $7,000,000) comprise at least 50% of the value of the account (here, 70%).  (See Instruction 5.b.(1)).

**Second, does the account receive continuous and regular supervisory or management services?**  The entire account is managed on a *discretionary basis* and is provided ongoing supervisory and management services, and therefore receives continuous and regular supervisory or management services.  (See Instruction 5.b.(3)).

**Third, what is the entire value of the account?**  The entire value of the account ($10,000,000) is included in the calculation of the adviser's total regulatory assets under management.

## 6.  Item 7:  Financial Industry Affiliations and Private Fund Reporting

Item 7.A. and Section 7.A. of Schedule D ask questions about you and your *related persons'* financial industry affiliations.  If you are filing an *umbrella registration*, you should not check Item 7.A.(2) with respect to your *relying advisers*, and you do not have to complete Section 7.A. in Schedule D for your *relying advisers*.  You should complete Schedule R with respect to your *relying advisers*.  Item 7.B. and Section 7.B. of Schedule D ask questions about the *private funds* that you advise.  You are required to complete a Section 7.B.(1) of Schedule D for each *private fund* that you advise, except in certain circumstances described under Item 7.B. and below.

a.  If your *principal office and place of business* is outside the United States, for purposes of Item 7 and Section 7.B. of Schedule D you may disregard any *private fund* that, during your last fiscal year, was not a *United States person*, was not offered in the United States, and was not beneficially owned by any *United States person*.

b.  When filing Section 7.B.(1) of Schedule D for a *private fund*, you must acquire an identification number for the fund by logging onto the IARD website and using the private fund identification number generator.  You must continue to use the same identification number whenever you amend Section 7.B.(1) for that fund.  If you file a Section 7.B.(1) for a *private fund* for which an identification number has already been acquired by another adviser, you must not acquire a new identification number, but must instead utilize the existing number.  If you choose to complete a single Section 7.B.(1) for a master-feeder arrangement under Instruction 6.d. below, you must acquire an identification number also for each feeder fund.

c.  If any *private fund* has issued two or more series (or classes) of equity interests whose values are determined with respect to separate portfolios of securities and other assets, then each such series (or class) should be regarded as a separate *private fund*.  In Section 7.B.(1) and 7.B.(2) of Schedule D, next to the name of the *private fund*, list the name and identification number of the specific series (or class) for which you are filing the sections.  This only applies with respect to series (or classes) that you manage as if they were separate funds and not a fund's side pockets or similar arrangements.

d.  In the case of a master-feeder arrangement (see questions 6-7 of Section 7.B.(1) of Schedule D), instead of completing a Section 7.B.(1) for each of the master fund and each feeder fund, you may complete a single Section 7.B.(1) for the master-feeder arrangement under the name of the master fund if the answers to questions 8, 10, 21 and 23 through 28 are the same for all of the feeder funds (or, in the case of questions 24 and 25, if the feeder funds do not use a prime broker or custodian).  If you choose to complete a single Section 7.B.(1), you should disregard the feeder funds, except for the following:

(1)  **Question 11:**  State the gross assets for the master-feeder arrangement as a whole.

(2)  **Question 12:**  List the lowest minimum investment commitment applicable to any of the master fund and the feeder funds.

(3)  **Questions 13-16:**  Answer by aggregating all investors in the master-feeder arrangement (but do not count the feeder funds themselves as investors).

(4)  **Questions 19-20:**  For purposes of these questions, the *private fund* means any of the master fund or the feeder funds.  In answering the questions, moreover, disregard the feeder funds' investment in the master fund.

(5)  **Question 22:**  List all of the Form D SEC file numbers of any of the master fund and feeder funds.

e.  Additional Instructions:

(1)  **Question 9:  Investment in Registered Investment Companies:**  For purposes of this question, disregard any open-end management investment company regulated as a money market fund under rule 2a-7 under the Investment Company Act if the *private fund* invests in such a company in reliance on rule 12d1-1 under the same Act.

(2)  **Question 10:  Type of *Private Fund*:**  For purposes of this question, the following definitions apply:

"Hedge fund" means any *private fund* (other than a securitized asset fund):

(a)  with respect to which one or more investment advisers (or *related persons* of investment advisers) may be paid a performance fee or allocation calculated by taking into account unrealized gains (other than a fee or allocation the calculation of which may take into account unrealized gains solely for the purpose of reducing such fee or allocation to reflect net unrealized losses);

(b)  that may borrow an amount in excess of one-half of its net asset value (including any committed capital) or may have gross notional exposure in excess of twice its net asset value (including any committed capital); or

    (c) that may sell securities or other assets short or enter into similar transactions (other than for the purpose of hedging currency exposure or managing duration).

A commodity pool is categorized as a hedge fund solely for purposes of this question. For purposes of this definition, do not net long and short positions.  Include any borrowings or notional exposure of another *person* that are guaranteed by the *private fund* or that the *private fund* may otherwise be obligated to satisfy.

"Liquidity fund" means any *private fund* that seeks to generate income by investing in a portfolio of short-term obligations in order to maintain a stable net asset value per unit or minimize principal volatility for investors.

"Private equity fund" means any *private fund* that is not a hedge fund, liquidity fund, real estate fund, securitized asset fund, or venture capital fund and does not provide investors with redemption rights in the ordinary course.

"Real estate fund" means any *private fund* that is not a hedge fund, that does not provide investors with redemption rights in the ordinary course, and that invests primarily in real estate and real estate related assets.

"Securitized asset fund" means any *private fund* whose primary purpose is to issue asset backed securities and whose investors are primarily debt-holders.

"Venture capital fund" means any *private fund* meeting the definition of venture capital fund in rule 203(l)-1 under the Advisers Act.

"Other *private fund*" means any *private fund* that is not a hedge fund, liquidity fund, private equity fund, real estate fund, securitized asset fund, or venture capital fund.

(3) **Question 11:  Gross Assets.**  Report the assets of the *private fund* that you would include in calculating your regulatory assets under management according to Instruction 5.b. above.

(4) **Questions 19-20:  Other *clients'* investments:**  For purposes of these questions, disregard any feeder fund's investment in its master fund.  (See questions 6-7 for the definition of "master fund" and "feeder fund").

**7.  Item 10:  *Control Persons***

If you are a "separately identifiable department or division" (SID) of a bank, identify on Schedule A your bank's executive officers who are directly engaged in managing, directing, or supervising your investment advisory activities, and list any other *persons* designated by your bank's board of directors as responsible for the day-to-day conduct of your investment advisory activities, including supervising *employees* performing investment advisory activities.

**8.  Additional Information**

If you believe your response to an item in Form ADV Part 1A requires further explanation, or if you wish to provide additional information, you may do so on Schedule D, in the Miscellaneous section.  Completion of this section is optional.

# GLOSSARY OF TERMS

1. **Advisory Affiliate:**  Your advisory affiliates are (1) all of your officers, partners, or directors (or any *person* performing similar functions); (2) all *persons* directly or indirectly *controlling* or *controlled* by you; and (3) all of your current *employees* (other than *employees* performing only clerical, administrative, support or similar functions).

   If you are a "separately identifiable department or division" (SID) of a bank, your *advisory affiliates* are:  (1) all of your bank's *employees* who perform your investment advisory activities (other than clerical or administrative *employees*); (2) all *persons* designated by your bank's board of directors as responsible for the day-to-day conduct of your investment advisory activities (including supervising the *employees* who perform investment advisory activities); (3) all *persons* who directly or indirectly *control* your bank, and all *persons* whom you *control* in connection with your investment advisory activities; and (4) all other *persons* who directly manage any of your investment advisory activities (including directing, supervising or performing your advisory activities), all *persons* who directly or indirectly *control* those management functions, and all *persons* whom you *control* in connection with those management functions.  *[Used in:  Part 1A, Items 7, 11, DRPs; Part 1B, Item 2]*

2. **Annual Updating Amendment:**  Within 90 days after your firm's fiscal year end, your firm must file an "annual updating amendment," which is an amendment to your firm's Form ADV that reaffirms the eligibility information contained in Item 2 of Part 1A and updates the responses to any other item for which the information is no longer accurate.  *[Used in: General Instructions; Part 1A, Instructions, Introductory Text, Item 2; Part 2A, Instructions, Appendix 1 Instructions; Part 2B, Instructions]*

3. **Borrowings:**  Borrowings include secured borrowings and unsecured borrowings, collectively.  Secured borrowings are obligations for borrowed money in respect of which the borrower has posted collateral or other credit support and should include any reverse repos (i.e., any sale of securities coupled with an agreement to repurchase the same (or similar) securities at a later date at an agreed price).  Unsecured borrowings are obligations for borrowed money in respect of which the borrower has not posted collateral or other credit support.  *[Used in:  Part 1A, Instructions, Item 5, Schedule D]*

4. **Brochure:**  A written disclosure statement that you must provide to *clients* and prospective *clients*.  See SEC rule 204-3; Form ADV, Part 2A.  *[Used in:  General Instructions; Used throughout Part 2]*

5. **Brochure Supplement:**  A written disclosure statement containing information about certain of your *supervised persons* that your firm is required by Part 2B of Form ADV to provide to *clients* and prospective *clients*.  See SEC rule 204-3; Form ADV, Part 2B.  *[Used in: General Instructions; Used throughout Part 2]*

6. **Charged:**  Being accused of a crime in a formal complaint, information, or indictment (or equivalent formal charge).  *[Used in:  Part 1A, Item 11; DRPs]*

7. **Client:**  Any of your firm's investment advisory clients.  This term includes clients from which your firm receives no compensation, such as family members of your ***supervised persons***.  If your firm also provides other services (e.g., accounting services), this term does not include clients that are not investment advisory clients.  *[Used throughout Form ADV and Form ADV-W]*

8. **Commodity Derivative:**  Exposures to commodities that you do not hold physically, whether held synthetically or through derivatives (whether cash or physically settled).  *[Used in:  Part 1A, Schedule D]*

9. **Control:**  The power, directly or indirectly, to direct the management or policies of a ***person***, whether through ownership of securities, by contract, or otherwise.

   - Each of your firm's officers, partners, or directors exercising executive responsibility (or ***persons*** having similar status or functions) is presumed to control your firm.

   - A ***person*** is presumed to control a corporation if the ***person***:  (i) directly or indirectly has the right to vote 25 percent or more of a class of the corporation's voting securities; or (ii) has the power to sell or direct the sale of 25 percent or more of a class of the corporation's voting securities.

   - A ***person*** is presumed to control a partnership if the ***person*** has the right to receive upon dissolution, or has contributed, 25 percent or more of the capital of the partnership.

   - A ***person*** is presumed to control a limited liability company ("LLC") if the ***person***:  (i) directly or indirectly has the right to vote 25 percent or more of a class of the interests of the LLC; (ii) has the right to receive upon dissolution, or has contributed, 25 percent or more of the capital of the LLC; or (iii) is an elected manager of the LLC.

   - A ***person*** is presumed to control a trust if the ***person*** is a trustee or ***managing agent*** of the trust.

   *[Used in:  General Instructions; Part 1A, Instructions, Items 2, 7, 10, 11, 12, Schedules A, B, C, D, R; DRPs]*

10. **Credit Derivative:**  Single name credit default swap, including loan credit default swap, credit default swap referencing a standardized basket of credit entities, including credit default swap indices and indices referencing leveraged loans, and credit default swap referencing bespoke basket or tranche of collateralized debt obligations and collateralized loan obligations (including cash flow and synthetic) other than mortgage backed securities.  *[Used in:  Part 1A, Schedule D]*

11. **Custody:**  Holding, directly or indirectly, ***client*** funds or securities, or having any authority to obtain possession of them.  You have custody if a ***related person*** holds, directly or indirectly, ***client*** funds or securities, or has any authority to obtain possession of them, in connection with advisory services you provide to ***clients***.  Custody includes:

28

- Possession of **client** funds or securities (but not of checks drawn by **clients** and made payable to third parties) unless you receive them inadvertently and you return them to the sender promptly, but in any case within three business days of receiving them;

- Any arrangement (including a general power of attorney) under which you are authorized or permitted to withdraw **client** funds or securities maintained with a custodian upon your instruction to the custodian; and

- Any capacity (such as general partner of a limited partnership, managing member of a limited liability company or a comparable position for another type of pooled investment vehicle, or trustee of a trust) that gives you or your **supervised person** legal ownership of or access to **client** funds or securities.

*[Used in:  Part 1A, Item 9; Part 1B, Instructions, Item 2; Part 2A, Items 15, 18]*

12. **Discretionary Authority or Discretionary Basis:**  Your firm has discretionary authority or manages assets on a discretionary basis if it has the authority to decide which securities to purchase and sell for the **client**.  Your firm also has discretionary authority if it has the authority to decide which investment advisers to retain on behalf of the **client**.  *[Used in: Part 1A, Instructions, Item 8; Part 1B, Instructions; Part 2A, Items 4, 16, 18; Part 2B, Instructions]*

13. **Employee:**  This term includes an independent contractor who performs advisory functions on your behalf.  *[Used in:  Part 1A, Instructions, Items 1, 5, 11; Part 2B, Instructions]*

14. **Enjoined:**  This term includes being subject to a mandatory injunction, prohibitory injunction, preliminary injunction, or a temporary restraining **order**.  *[Used in:  Part 1A, Item 11; DRPs]*

15. **Equity Derivative:**  Includes both listed equity derivative and derivative exposure to unlisted securities.  Listed equity derivative includes all synthetic or derivative exposure to equities, including preferred equities, listed on a regulated exchange.  Listed equity derivative also includes a single stock future, equity index future, dividend swap, total return swap (contract for difference), warrant and right.  Derivative exposure to unlisted equities includes all synthetic or derivative exposure to equities, including preferred equities, that are not listed on a regulated exchange.  Derivative exposure to unlisted securities also includes a single stock future, equity index future, dividend swap, total return swap (contract for difference), warrant and right.  *[Used in:  Part 1A, Schedule D]*

16. **Exempt Reporting Adviser:**  An investment adviser that qualifies for the exemption from registration under section 203(l) of the Advisers Act because it is an adviser solely to one or more venture capital funds, or under rule 203(m)-1 of the Advisers Act because it is an adviser solely to **private funds** and has assets under management in the United States of less than $150 million.  *[Used in:  Throughout Part 1A; General Instructions; Form ADV-H; Form ADV-NR]*

17. **Felony:**  For jurisdictions that do not differentiate between a felony and a ***misdemeanor***, a felony is an offense punishable by a sentence of at least one year imprisonment and/or a fine of at least $1,000.  The term also includes a general court martial.  *[Used in:  Part 1A, Item 11; DRPs; Part 2A, Item 9; Part 2B, Item 3]*

18. **Filing Adviser:**  An investment adviser eligible to register with the SEC that files (and amends) a single ***umbrella registration*** on behalf of itself and each of its ***relying advisers***. *[Used in:  General Instructions; Part 1A, Items 1, 2, 3, 10 and 11; Schedule R]*

19. **FINRA CRD** or **CRD:**  The Web Central Registration Depository ("CRD") system operated by FINRA for the registration of broker-dealers and broker-dealer representatives.  *[Used in: General Instructions; Part 1A, Item 1, Schedules A, B, C, D, R, DRPs; Form ADV-W, Item 1]*

20. **Foreign Exchange Derivative:**  Any derivative whose underlying asset is a currency other than U.S. dollars or is an exchange rate.  Cross-currency interest rate swaps should be included in foreign exchange derivatives and excluded from ***interest rate derivatives***.  *[Used in:  Part 1A, Schedule D]*

21. **Foreign Financial Regulatory Authority:**  This term includes (1) a foreign securities authority; (2) another governmental body or foreign equivalent of a ***self-regulatory organization*** empowered by a foreign government to administer or enforce its laws relating to the regulation of ***investment-related*** activities; and (3) a foreign membership organization, a function of which is to regulate the participation of its members in the activities listed above.  *[Used in:  Part 1A, Items 1, 11, DRPs; Part 2A, Item 9; Part 2B, Item 3]*

22. **Found:**  This term includes adverse final actions, including consent decrees in which the respondent has neither admitted nor denied the findings, but does not include agreements, deficiency letters, examination reports, memoranda of understanding, letters of caution, admonishments, and similar informal resolutions of matters.  *[Used in:  Part 1A, Item 11; Part 1B, Item 2; Part 2A, Item 9; Part 2B, Item 3]*

23. **Government Entity:**  Any state or political subdivision of a state, including (i) any agency, authority, or instrumentality of the state or political subdivision; (ii) a plan or pool of assets ***controlled*** by the state or political subdivision or any agency, authority, or instrumentality thereof; and (iii) any officer, agent, or employee of the state or political subdivision or any agency, authority, or instrumentality thereof, acting in their official capacity.  *[Used in:  Part 1A, Item 5]*

24. **Gross Notional Value:**  The gross nominal or notional value of all transactions that have been entered into but not yet settled as of the reporting date.  For contracts with variable nominal or notional principal amounts, the basis for reporting is the nominal or notional principal amounts as of the reporting date.  For options, use delta adjusted notional value. *[Used in:  Part 1A, Schedule D]*

25. **High Net Worth Individual:** An individual who is a ***qualified client*** or who is a "qualified purchaser" as defined in section 2(a)(51)(A) of the Investment Company Act of 1940. *[Used in: Part 1A, Item 5]*

26. **Home State:** If your firm is registered with a ***state securities authority***, your firm's "home state" is the state where it maintains its ***principal office and place of business***. *[Used in: Part 1B, Instructions]*

27. **Impersonal Investment Advice:** Investment advisory services that do not purport to meet the objectives or needs of specific individuals or accounts. *[Used in: Part 1A, Instructions; Part 2A, Instructions; Part 2B, Instructions]*

28. **Independent Public Accountant:** A public accountant that meets the standards of independence described in rule 2-01(b) and (c) of Regulation S-X (17 CFR 210.2-01(b) and (c)). *[Used in: Part 1A, Item 9; Schedule D]*

29. **Interest Rate Derivative:** Any derivative whose underlying asset is the obligation to pay or the right to receive a given amount of money accruing interest at a given rate. Cross-currency interest rate swaps should be included in ***foreign exchange derivatives*** and excluded from interest rate derivatives. This information must be presented in terms of 10-year bond equivalents. *[Used in: Part 1A, Schedule D]*

30. **Investment Adviser Representative:** Any of your firm's ***supervised persons*** (*except* those that provide only ***impersonal investment advice***) is an investment adviser representative, if --

   - the ***supervised person*** regularly solicits, meets with, or otherwise communicates with your firm's ***clients***,

   - the ***supervised person*** has more than five ***clients*** who are natural persons and not ***high net worth individuals***, and

   - more than ten percent of the ***supervised person's clients*** are natural persons and not ***high net worth individuals***.

NOTE: If your firm is registered with the ***state securities authorities*** and not the SEC, your firm may be subject to a different state definition of "investment adviser representative." Investment adviser representatives of SEC-registered advisers may be required to register in each state in which they have a place of business.

*[Used in: General Instructions; Part 1A, Item 5; Part 2B, Item 1]*

31. **Investment-Related:** Activities that pertain to securities, commodities, banking, insurance, or real estate (including, but not limited to, acting as or being associated with an investment adviser, broker-dealer, municipal securities dealer, government securities broker or dealer, issuer, investment company, futures sponsor, bank, or savings association). *[Used in: Part*

*1A, Items 7, 11, Schedule D, DRPs; Part 1B, Item 2; Part 2A, Items 9 and 19; Part 2B, Items 3, 4 and 7]*

32. **Involved:** Engaging in any act or omission, aiding, abetting, counseling, commanding, inducing, conspiring with or failing reasonably to supervise another in doing an act. *[Used in: Part 1A, Item 11; Part 2A, Items 9 and 10; Part 2B, Items 3 and 7]*

33. **Legal Entity Identifier:** A "legal entity identifier" assigned by a utility endorsed by the Global LEI Regulatory Oversight Committee (ROC) or accredited by the Global LEI Foundation (GLEIF). *[Used in: Part 1A, Item 1, Schedules D and R]*

34. **Management Persons:** Anyone with the power to exercise, directly or indirectly, a *controlling* influence over your firm's management or policies, or to determine the general investment advice given to the *clients* of your firm.

   Generally, all of the following are management persons:

   - Your firm's principal executive officers, such as your chief executive officer, chief financial officer, chief operations officer, chief legal officer, and chief compliance officer; your directors, general partners, or trustees; and other individuals with similar status or performing similar functions;

   - The members of your firm's investment committee or group that determines general investment advice to be given to *clients*; and

   - If your firm does not have an investment committee or group, the individuals who determine general investment advice provided to *clients* (if there are more than five people, you may limit your firm's response to their supervisors).

   *[Used in: Part 1B, Item 2; Part 2A, Items 9, 10 and 19]*

35. **Managing Agent:** A managing agent of an investment adviser is any *person*, including a trustee, who directs or manages (or who participates in directing or managing) the affairs of any unincorporated organization or association that is not a partnership. *[Used in: General Instructions; Form ADV-NR; Form ADV-W, Item 8]*

36. **Minor Rule Violation:** A violation of a *self-regulatory organization* rule that has been designated as "minor" pursuant to a plan approved by the SEC. A rule violation may be designated as "minor" under a plan if the sanction imposed consists of a fine of $2,500 or less, and if the sanctioned *person* does not contest the fine. (Check with the appropriate *self-regulatory organization* to determine if a particular rule violation has been designated as "minor" for these purposes.) *[Used in: Part 1A, Item 11]*

37. **Misdemeanor:** For jurisdictions that do not differentiate between a *felony* and a misdemeanor, a misdemeanor is an offense punishable by a sentence of less than one year

imprisonment and/or a fine of less than $1,000.  The term also includes a special court martial.  *[Used in:  Part 1A, Item 11; DRPs; Part 2A, Item 9; Part 2B, Item 3]*

38. **Non-Resident:**  (a) an individual who resides in any place not subject to the jurisdiction of the United States; (b) a corporation incorporated in or that has its ***principal office and place of business*** in any place not subject to the jurisdiction of the United States; and (c) a partnership or other unincorporated organization or association that is formed in or has its ***principal office and place of business*** in any place not subject to the jurisdiction of the United States.  *[Used in:  General Instructions; Form ADV-NR]*

39. **Notice Filing:**  SEC-registered advisers may have to provide ***state securities authorities*** with copies of documents that are filed with the SEC.  These filings are referred to as "notice filings."  *[Used in:  General Instructions; Part 1A, Item 2; Execution Page(s); Form ADV-W]*

40. **Order:**  A written directive issued pursuant to statutory authority and procedures, including an order of denial, exemption, suspension, or revocation.  Unless included in an order, this term does not include special stipulations, undertakings, or agreements relating to payments, limitations on activity or other restrictions.  *[Used in:  Part 1A, Items 2 and 11, Schedules D and R; DRPs; Part 2A, Item 9; Part 2B, Item 3]*

41. **Other Derivative:**  Any derivative that is not a ***commodity derivative***, ***credit derivative***, ***equity derivative***, ***foreign exchange derivative*** or ***interest rate derivative***.  *[Used in:  Part 1A, Schedule D]*

42. **Parallel Managed Account:**  With respect to any registered investment company or series thereof or business development company, a parallel managed account is any managed account or other pool of assets that you advise and that pursues substantially the same investment objective and strategy and invests side by side in substantially the same positions as the identified investment company or series thereof or business development company that you advise.  *[Used in:  Part 1A, Schedule D]*

43. **Performance-Based Fee:**  An investment advisory fee based on a share of capital gains on, or capital appreciation of, ***client*** assets.  A fee that is based upon a percentage of assets that you manage is not a performance-based fee.  *[Used in:  Part 1A, Item 5; Part 2A, Items 6 and 19]*

44. **Person:**  A natural person (an individual) or a company.  A company includes any partnership, corporation, trust, limited liability company ("LLC"), limited liability partnership ("LLP"), sole proprietorship, or other organization.  *[Used throughout Form ADV and Form ADV-W]*

45. **Principal Office and Place of Business:**  Your firm's executive office from which your firm's officers, partners, or managers direct, ***control***, and coordinate the activities of your firm.  *[Used in:  Part 1A, Instructions, Items 1 and 2; Schedules D and R; Form ADV-W, Item 1]*

46. **Private Fund:**  An issuer that would be an investment company as defined in section 3 of the Investment Company Act of 1940 but for section 3(c)(1) or 3(c)(7) of that Act.  *[Used in: General Instructions; Part 1A, Instructions, Items 2, 5, 7, and 9; Part 1A, Schedule D]*

47. **Proceeding:**  This term includes a formal administrative or civil action initiated by a governmental agency, ***self-regulatory organization*** or ***foreign financial regulatory authority***; a ***felony*** criminal indictment or information (or equivalent formal charge); or a ***misdemeanor*** criminal information (or equivalent formal charge).  This term does not include other civil litigation, investigations, or arrests or similar charges effected in the absence of a formal criminal indictment or information (or equivalent formal charge).  *[Used in:  Part 1A, Item 11, DRPs; Part 1B, Item 2; Part 2A, Item 9; Part 2B, Item 3]*

48. **Qualified Client:**  A ***client*** that satisfies the definition of qualified client in SEC rule 205-3. *[Used in:  General Instructions; Part 1A, Schedule D]*

49. **Related Person:**  Any ***advisory affiliate*** and any ***person*** that is under common ***control*** with your firm.  *[Used in:  Part 1A, Items 7, 8 and 9; Schedule D; Form ADV-W, Item 3; Part 2A, Items 10, 11, 12 and 14; Part 2A, Appendix 1, Item 6]*

50. **Relying Adviser:**  An investment adviser eligible to register with the SEC that relies on a ***filing adviser*** to file (and amend) a single ***umbrella registration*** on its behalf.  *[Used in: General Instructions; Part 1A, Items 1, 7 and 11; Schedules D and R]*

51. **Self-Regulatory Organization** or **SRO:**  Any national securities or commodities exchange, registered securities association, or registered clearing agency.  For example, the Chicago Board of Trade ("CBOT"), FINRA and New York Stock Exchange ("NYSE") are self-regulatory organizations.  *[Used in:  Part 1A, Item 11; DRPs; Part 1B, Item 2; Part 2A, Items 9 and 19; Part 2B, Items 3 and 7]*

52. **Sovereign Bonds:**  Any notes, bonds and debentures issued by a national government (including central government, other governments and central banks but excluding U.S. state and local governments), whether denominated in a local or foreign currency.  *[Used in:  Part 1A, Schedule D]*

53. **Sponsor:**  A sponsor of a ***wrap fee program*** sponsors, organizes, or administers the program or selects, or provides advice to ***clients*** regarding the selection of, other investment advisers in the program.  *[Used in:  Part 1A, Item 5, Schedule D; Part 2A, Instructions, Appendix 1 Instructions]*

54. **State Securities Authority:**  The securities commissioner or commission (or any agency, office or officer performing like functions) of any state of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, or any other possession of the United States. *[Used throughout Form ADV]*

55. **Supervised Person:**  Any of your officers, partners, directors (or other **persons** occupying a similar status or performing similar functions), or **employees**, or any other **person** who provides investment advice on your behalf and is subject to your supervision or **control**. *[Used throughout Part 2]*

56. **Umbrella Registration:**  A single registration by a **filing adviser** and one or more **relying advisers** who collectively conduct a single advisory business and that meet the conditions set forth in General Instruction 5.  *[Used in:  General Instructions; Part 1A, Items 1, 2, 3, 7, 10 and 11, Schedules D and R]*

57. **United States person:**  This term has the same meaning as in rule 203(m)-1 under the Advisers Act, which includes any natural person that is resident in the United States.  *[Used in:  Part 1A, Instructions, Item 5; Schedule D]*

58. **Wrap Brochure or Wrap Fee Program Brochure:**  The written disclosure statement that **sponsors** of **wrap fee programs** must provide to each of their **wrap fee program clients**. *[Used in:  Part 2, General Instructions; Used throughout Part 2A, Appendix 1]*

59. **Wrap Fee Program:**  Any advisory program under which a specified fee or fees not based directly upon transactions in a **client's** account is charged for investment advisory services (which may include portfolio management or advice concerning the selection of other investment advisers) and the execution of **client** transactions.  [*Used in:  Part 1, Item 5; Schedule D; Part 2A, Instructions, Item 4, used throughout Appendix 1; Part 2B, Instructions]*