Mary C. Eldridge (D.S.C. No. 12540)
HAYNSWORTH SINKLER BOYD, P.A.
1201 Main Street
Suite 2200
P.O. Box 11889 (29211)
Columbia, South Carolina
Telephone: (803) 779-3080
Facsimile: (803) 765-1243
mgrier@hsblawfirm.com
bknowlton@hsblawfirm.com
eblack@hsblawfirm.com
meldridge@hsblawfirm.com

*Counsel for Direct Action Plaintiff W. Lee Flowers & Co., Inc.*
*(additional counsel listed on signature page)*

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-JLS-MDD<br>MDL No. 2670<br><br>**PLAINTIFFS' JOINT REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST STARKIST CO., INC.** |
| This document relates to:<br>• Direct Action Plaintiff Winn-Dixie Stores, Inc.<br>• Direct Action Plaintiff Bi-Lo Holding, LLC<br>• Direct Action Plaintiff Associated Wholesale Grocers, Inc.<br>• Direct Action Plaintiff Affiliated Foods Midwest Cooperative, Inc.<br>• Direct Action Plaintiff W. Lee Flowers & Co., Inc. | DATE:    TBD<br>TIME:    9:00 a.m.<br>JUDGE:   Janis L. Sammartino<br>COURT:   4D |

1

# TABLE OF CONTENTS

2

3

I.      INTRODUCTION ..........................................................................1

4

II.     ARGUMENT................................................................................2

5

       A.     STARKIST IS COLLATERALLY ESTOPPED FROM

6

            ARGUING THAT IT DID NOT ENGAGE IN PRICE-FIXING

7

            DURING THE GUILTY PLEA PERIOD ..............................2

8

       B.     PLAINTIFFS HAVE ESTABLISHED THE EXISTENCE OF AN

            OVERARCHING CONSPIRACY............................................4

9

       C.     PLAINTIFFS HAVE SUFFICIENTLY DEMONSTRATED THAT

10

            STARKIST ENTERED THE CONSPIRACY NO LATER THAN

11

            NOVEMBER 2011 WITH KNOWLEDGE OF THE PRIOR

12

            CONSPIRATORIAL ACTS..................................................7

13

       D.     STARKIST DID NOT EFFECTIVELY WITHDRAW FROM

14

            THE CONSPIRACY.............................................................9

15

III.    CONCLUSION................................................................11

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Dahl v. Bain Capital Partners, LLC*,
    937 F. Supp. 2d 119 (D. Mass. 2013)................................................................5

*Doe Ex rel. Rudy-Glanzer v. Glanzer*,
    232 F.3d 1258 (9th Cir. 2000) ..............................................................................8

*In re Citric Acid Litig.*,
    191 F.3d 1090 (9th Cir. 1999) ..............................................................................9

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
    768 F. Supp. 2d 961 (N.D. Iowa 2011) ...............................................................5

*In re Packaged Ice Antitrust Litig.*,
    723 F. Supp. 2d 987 (E.D. Mich. 2010) ..............................................................4

*In re Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) .............................................................................2

*In re Vitamins Antitrust Litig.*,
    No. 99-misc-197, 2000 WL 1475705 (D.D.C. May 9, 2010) .............................4

*Precision Associates, Inc. v. Panalpina World Transport (Holding)
    Ltd.*,
    No. 08-CV-42, 2011 WL 7053807 (S.D.N.Y. Aug. 15, 2018) ...........................5

*United States v. Jimenez Recio*,
    537 U.S. 270 (2003) ..............................................................................................9

*United States v. Nippon Paper Industries Co., Ltd.*,
    62 F. Supp. 2d 173...........................................................................................10-11

*United States  v. Real Property Located at Section 18*,
    976 F.2d 515 (9th Cir. 1992) ................................................................................3

Plaintiffs[1] submit this Reply Memorandum of Law in Further Support of their Joint Motion for Partial Summary Judgment Against StarKist Co., Inc. ("StarKist") (the "Motion").  (ECF No. 2029.)

## I.    INTRODUCTION

StarKist has admitted to "participating in a conspiracy to suppress and eliminate competition by reaching agreements to fix, raise, and maintain the prices of packaged seafood sold in the United States beginning *at least as early as* November 2011 and continuing through *at least as late as* December 2013 in violation of the Sherman Antitrust Act."  (Declaration of Belinda S Lee in Support of Defendants' Omnibus Opposition to Plaintiffs' Motion for Partial Summary Judgment Against StarKist ("Lee Opp. Decl.") Ex. 36, at ¶ 4(a) (emphasis added).)  At a minimum and based on the unambiguous language of the plea agreement alone Plaintiffs are entitled to summary judgment on the issue of whether StarKist engaged in price-fixing in violation of the Sherman Act during this time period.

Plaintiffs are also entitled to summary judgment for the full temporal scope in their Motion—December 2007 through July 2015—because the uncontroverted evidence in this case demonstrates that the conspiracy described in the plea agreement began at least as early as December 2007 and continued until the Department of Justice announced its investigation into the packaged tuna industry in July 2015.  In arguing to the contrary, StarKist asks this court to ignore the phrases "at least as early as" and "at least as late as" in its plea agreement and find that its plea agreement limits the scope of the conspiracy to a period lasting from November 2011 through

---

[1] For the purposes of this Motion, "Plaintiffs" means Associated Wholesale Grocers, Inc., Affiliated Foods Midwest Cooperative, Inc., W. Lee Flowers & Co., Inc., Winn-Dixie Stores, Inc., and Bi-Lo Holding, LLC.  Other Plaintiffs may file joinders.

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST STARKIST                                    CASE NO. 15-MD-2670-JLS-MDD

1

December 2013.  The plain language of StarKist's plea agreement contradicts StarKist's argument.  StarKist further ignores Plaintiffs' evidence and misinterprets the scope of Plaintiffs' Motion in an effort to dissuade this Court from granting the relief to which Plaintiffs are entitled.

## II.  ARGUMENT

### A.  StarKist is collaterally estopped from arguing that it did not engage in price-fixing during the guilty plea period.

StarKist argues that "the 'issue' for which Plaintiffs offer [StarKist's] guilty plea and admissions is *the entire breadth and scope of Plaintiffs' claims*." (StarKist Opposition ("Opp.") p. 10 (emphasis added).)  This is a blatant mischaracterization of Plaintiffs' Motion.  A plaintiff must establish the following elements in order to prove that a defendant violated Section 1 of the Sherman Act: (1) that that there was a conspiracy to fix prices in violation of the antitrust laws; (2) the fact of damage or impact of the defendant's unlawful activities; and (3) the amount of damages plaintiff sustained as a result of the defendant's antitrust violations.  *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 257 (D.D.C. 2002).  Plaintiffs' Motion makes clear that they seek partial summary judgment *as to the first element only* for the period spanning December 2007 through July 2015.  (Motion p. 10.)

Moreover, the Motion explicitly states that the only issue for which Plaintiffs seek to apply collateral estoppel is for the fact that StarKist engaged in a price-fixing conspiracy with its competitors during the plea period.  (Motion pp. 5-8.)  StarKist's plea agreement defines the "relevant period" as the "period beginning at least as early as November 2011 and continuing through at least as late as December 2013." (Lee Opp. Decl. Ex. 36, ¶ 4(a).)  Plaintiffs are not seeking to expand the plea's temporal scope; they are simply noting that StarKist's guilty plea prevents it from re-litigating the issue of whether it engaged in a price-fixing conspiracy from at least as early as

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST STARKIST                                         CASE NO. 15-MD-2670-JLS-MDD

2

1    November 2011 through at least December 2013.  The fact of StarKist's price fixing

2    during this time period is the exact issue decided in the guilty plea.  Thus, Plaintiffs

3    have demonstrated that "the issue on which the prior conviction is offered must of

4    necessity have been decided in the criminal trial," and StarKist is collaterally estopped

5    from arguing that it did not engage in a price-fixing conspiracy from at least as early

6    as November 2011 through at least as late as December 2013.  *See U.S.  v. Real*

7    *Property Located at Section 18*, 976 F.2d 515, 519 (9th Cir. 1992).

8        StarKist's contention that Plaintiffs failed to set forth undisputed evidence of

9    injury is irrelevant to the Motion.  As discussed above, Plaintiffs' request for partial

10   summary judgment applies to only one element of a cause of action under the

11   Sherman Act: the requirement that Plaintiffs show a conspiracy to fix prices in

12   violation of the antitrust laws.  (Motion pp. 5-8.)  Plaintiffs do not set forth undisputed

13   evidence of injury because such a showing is not necessary to prevail on their

14   Motion—all Plaintiffs must demonstrate is that StarKist engaged in a price-fixing

15   conspiracy.  StarKist clearly admitted as much in its guilty plea.  As a result, the Court

16   should, at a minimum, grant Plaintiffs' Motion for the time period covered by

17   StarKist's guilty plea.[2]

18       Finally, StarKist's argument that its plea agreement undermines Plaintiffs'

19   claims simply because it does not cover the full temporal and product scope of

20   Plaintiffs' claims ignores the settled law that civil litigation cannot "be circumscribed

21

22   _____

     [2] StarKist also notes that its guilty plea covers only "canned tuna" products. Opp. at

23   11. Although the undisputed evidence shows that the conspiracy covered far more

24   than canned tuna products, the Court should, at a minimum, grant Plaintiffs' Motion
     with respect to canned tuna products in the guilty plea period.  The plea agreement is

25   of limited help to StarKist because its definition of "packaged seafood" as "canned
     tuna fish" is limited to "the purposes of this Plea Agreement."  (Lee Opp. Decl. Ex.

26   36, ¶ 4(a).)

27   PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
     THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

28   AGAINST STARKIST                                    CASE NO. 15-MD-2670-JLS-MDD
                                          3

1   or defined by the boundaries of the criminal investigations or plea agreements." *In re*

2   *Packaged Ice Antitrust Litig.*, 723 F. Supp. 2d 987, 1011 (E.D. Mich. 2010). Indeed,

3   guilty pleas "are negotiated instruments which take into account not only the

4   culpability of the accused but the Justice Department's resources and other cases

5   requiring the government's attention." *Id.* at 1012 (citing *In re Vitamins Antitrust*

6   *Litig.*, No. 99-misc-197, 2000 WL 1475705, at *11 (D.D.C. May 9, 2010)).   In

7   addition, StarKist's plea agreement specifically states that the conspiracy began "*at*

8   *least as early as* November 2011 and continuing through *at least as late as* December

9   2013." (Lee Opp Decl. Ex. 36, ¶ 4(a) (emphasis added).) The language of the plea

10  agreement is not nearly as restrictive as StarKist claims.

11  **B.    Plaintiffs have established the existence of an overarching**

12  **conspiracy.**

13  StarKist argues that Plaintiffs' Motion should be denied because Plaintiffs have

14  failed to point to evidence of an overall scheme of which each bilateral agreement

15  between Defendants was part.  (Opp. at 17.)  This contention ignores the record

16  evidence in this case, which demonstrates that ███████████████████████████

17  ██████████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████. Thus,

19  Plaintiffs have properly pointed to evidence that demonstrates as a matter of law that

20  a single, overarching conspiracy to raise profits by fixing the prices of packaged tuna

21  existed.

22  StarKist relies on three cases—*Dahl*, *Iowa Ready-Mix Concrete*, and *Precision*

23  *Associates, Inc.*—in support of its argument that Plaintiffs have not demonstrated the

24  existence of a "larger picture."  The facts in those cases are distinguishable from the

25  facts here, as the purported conspiracies involved numerous different defendants or

26  were premised *only* on facts gleaned from guilty pleas, whereas Plaintiffs here argue

27

28

1   that the same three defendants conspired to fix the price of packaged tuna—StarKist,

2   Bumble Bee, and COSI.[3]  In *In re Iowa Ready-Mix Concrete Antitrust Litigation*, 768

3   F. Supp. 2d 961 (N.D. Iowa 2011), for instance, the plaintiffs' factual allegations

4   about the nature and operation of the alleged conspiracy were derived solely from the

5   facts in three plea agreements of individual defendants.  *Id.* at 974-75.  Also, *Precision*

6   *Associates, Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08-CV-42, 2011

7   WL 7053807 (S.D.N.Y. Aug. 15, 2018) involved multiple local conspiracies

8   regarding surcharges that were "made on different routes during different time

9   periods," and involved different defendants in each local conspiracy.  *Id.* at *30.  In

10  addition, the purported conspirators held meetings in furtherance of the local

11  conspiracies "in different parts of the world at different times and with different

12  participants, and there is no indication that the meeting participants in local

13  conspiracies knew the individuals or defendants involved in other conspiracies."  *Id.*

14  Finally, the *Dahl* court found that the plaintiffs failed to show a "larger picture"

15  because "unlike other cases where an overarching conspiracy was found, here there

16  is no single Defendant that was involved in every transaction or other indication that

17  the transactions were independent."  *Dahl*, 937 F. Supp. 2d at 137.

18          Here, it is unquestioned that the same three Defendants—StarKist, Bumble

19  Bee, and COSI—are the entities that participated in a conspiracy to fix the price of

20  packaged tuna throughout the United States.  ████████████████████████████

21  ███████████████████████████████████████████████████████████████████████

22

23  _____

    [3] With the exception of *Dahl v. Bain Capital Partners, LLC*, 937 F. Supp. 2d 119 (D.

24  Mass. 2013), the cases on which StarKist relies in support of this argument address

    the *plausibility* of an overarching conspiracy at the motion to dismiss stage.  Here, the

25  Court has already ruled that Plaintiffs pled a plausible overarching conspiracy in their

    various complaints.  Accordingly, the cases are of limited relevance to the issues

26  currently before the Court.

27



Based on these undisputed facts, the conspiracy here does not remotely resemble the purported conspiracies in *Dahl*, *Iowa Ready-Mix Concrete*, or *Precision Associates*.

, and is backed up by substantial evidence independent of StarKist's plea agreement.  Accordingly, Plaintiffs have sufficiently demonstrated that the conspiracy to fix the price of packaged tuna products constitutes a single, ongoing conspiracy.

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST STARKIST                                   CASE NO. 15-MD-2670-JLS-MDD

1

2      **C.      Plaintiffs have sufficiently demonstrated that StarKist entered the**

3              **conspiracy before November 2011 with knowledge of the prior**

4              **conspiratorial acts.**

5              StarKist argues that Plaintiffs have failed to set forth any evidence sufficient to

6      show that StarKist was either directly involved in or had knowledge of the acts of the

7      conspiracy that took place prior to the plea period.  StarKist's argument intentionally

8      ignores the abundant evidence Plaintiffs cite—including StarKist's own guilty plea,

9      Cameron's guilty plea, witness testimony, Fifth Amendment invocations, and

10     documentary evidence—that affirmatively demonstrate that, at the very least, StarKist

11     entered the conspiracy in November 2011 with knowledge of and intent to further the

12     conspiracy and is therefore jointly and severally liable for the actions that occurred

13     prior to its entry.[4]

14             As set forth in Plaintiffs' Motion, the uncontroverted evidence in this case

15     demonstrates that StarKist was aware of the conspiracy since at least as early as

16     December 2007. ████████████████████████████████████████

17     ████████████████████████████████████████████████████

18     ████████████████████████████████████████████████████

19     ██████████████████████████ (*Id.* pp. 19-20.)  Moreover, Plaintiffs point to

20     continued communications and evidence demonstrating StarKist's awareness of the

21     conspiracy through 2011.  (*Id.* pp. 20-25.)  Notably, StarKist does not dispute the

22     veracity of the documentary evidence or otherwise set forth *any* substantive dispute

23     regarding the evidence Plaintiffs cite.  Instead, StarKist argues that this Court should

24

25     [4] The Motion does not address the question of StarKist's direct involvement in the
       conspiracy prior to the plea period.  Thus, StarKist's argument regarding its *direct*
26     participation is moot.

27

1   disregard Plaintiffs' evidence because (1) drawing adverse inferences against StarKist

2   based on the Fifth Amendment invocations is inappropriate and (2) Plaintiffs have not

3   demonstrated that COSI and Bumble Bee engaged in any collusive agreements prior

4   to 2011.  StarKist is incorrect on both counts.

5        Regarding the Fifth Amendment invocations, StarKist ignores that Plaintiffs

6   cite to the invocations in conjunction with separate documentary evidence supporting

7   the facts about which the witnesses refused to testify.  ███████████████

8   ████████████████████████████████████████

9   ████████████████████████████████████████

10  ████████████████████████████████████████

11  ████████████████████████████████████████

12  ████████████████████████████████████████

13  ████████████ Because Plaintiffs have set forth independent documentary

14  evidence in support of the facts to which the various witnesses refused to answer, the

15  Court should draw an adverse inference to the Fifth Amendment invocations as a

16  matter of law.  *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1264 (9th Cir.

17  2000).

18       As to the second issue, the undisputed evidence demonstrates that COSI and

19  Bumble Bee entered into collusive agreements prior to 2011.[5] ████████████

20  ████████████████████████████████████████

21  ████████████████████████████████████████

22  ████████████████████████████████████████

23  _____

24  [5] The evidence showing a conspiracy between Bumble Bee and COSI dating back to

25  at least 2008 is exhaustively addressed in the Motion for Partial Summary Judgment
    Against Bumble Bee (ECF No. 1999) and Motion for Partial Summary Judgment

26  Against COSI (ECF No. 1976.), filed by various plaintiffs, and which Plaintiffs
    incorporate here.

27

1 ████████████████████████████████████████████████

2    StarKist also argues that, even assuming the Court finds that such a conspiracy

3 existed, Plaintiffs' evidence does not demonstrate that StarKist knowingly joined any

4 conspiracy.  StarKist's reliance on *In re Citric Acid Litigation* for this argument is

5 misplaced.  In that case, the plaintiff "ask[ed] the court to infer [defendant] Cargill's

6 role in the conspiracy from the fact that representatives of Cargill attended meetings

7 and had telephone conversations with individuals who have been identified as masters

8 and sherpas.  [Plaintiff] *does not offer any specific details with regard to illegal*

9 *discussions, but merely asks us to infer participation in the conspiracy from the*

10 *opportunity to do so*."  *Citric Acid*, 191 F.3d 1090, 1103 (9th Cir. 1999) (emphasis

11 added).  Based on these facts, the Ninth Circuit noted that "[s]uch meetings, *at least*

12 *in and of themselves*, do not tend to exclude the possibility of legitimate activity."  *Id.*

13 (emphasis added).  ████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████████████████████████████

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████  As a result, StarKist's arguments that Plaintiffs have not met their burden

19 in demonstrating that StarKist is liable for the acts of the conspiracy that occurred

20 prior to the commencement of the plea period are unavailing.

21    **D.    StarKist did not effectively withdraw from the conspiracy.**

22    StarKist's guilty plea unquestionably establishes that the conspiracy lasted

23 from "*at least as early as* November 2011" and continued through "*at least as late*

24 *as*" December 2013.  (Lee Opp. Decl. Ex. 36, at ¶ 4(a).)  Accordingly, StarKist's role

25 in the conspiracy is presumed to continue until there is affirmative evidence of its

26 withdrawal from the conspiracy.  *United States v. Jimenez Recio*, 537 U.S. 270, 274

1    (2003).  StarKist has not set forth evidence sufficient to establish that it withdrew

2    from the price-fixing conspiracy.

3         Evidence demonstrates that StarKist continued to conspire with Defendants

4    throughout 2014 and 2015. ███████████████████████████████████████████

5    █████████████████████████████████████████████████████████████████████

6    █████████████████████████████████████████████████████████████████████

7    █████████████████████████████████████████████████████████████████████

8    █████████████████████████████████████████████████████████████████████

9    █████████████████████████████████████████████████████████████████████

10   █████████████████████████████████████████████████████████████████████

11   █████████████████████████████████████████████████████████████████████

12   █████████████████████████████████████████████████████████████████████

13   █████████████████████████████████████████████████████████████████████

14   █████████████████████████████████████████████████████████████████████

15   █████████████████████████████████████████████████████████████████████

16   ████████████    Accordingly, StarKist has failed to show a lack of genuine issue of

17   material fact that it continued to conspire with Defendants until July 2015.

18        StarKist incorrectly claims that the purpose of the conspiracy was completed—

19   and, thus, that it was no longer actionable—██████████████████████████████

20   █████████████████████████████████████████████████████████████████████

21   █████████████████████████████████████████████████████████████████████

22   █████████████████████████████████████████    StarKist's reliance on

23   *United States v. Nippon Paper Industries Co., Ltd.*, 62 F. Supp. 2d 173 (D. Mass.

24   1999) for the proposition that certain individualized price negotiations demonstrate

25   that it withdrew for the conspiracy does not help it make this showing.  In that case,

26   plaintiffs alleged that Jujo Paper Company, Ltd. ("Jujo") conspired with certain

27   PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
     THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
28   AGAINST STARKIST                              CASE NO. 15-MD-2670-JLS-MDD

1    manufacturers to fix the price of thermal fax paper in violation of the Sherman Act.

2    *Id.* at 177.  While the court noted that individualized negotiations can pave the way

3    for a competitive market, the court also noted "they are the way in which former

4    conspirators break ranks and start to engage in a price war to save their customer

5    base." *Id.* at 191.  Numerous witnesses testified that a price war began among *all* of

6    the conspirators after Jujo engaged in individualized negotiations with its customers,

7    with one government witness admitting that the price war created a "wickedly

8    competitive" market in which prices were going "down, down, down." *Id.*

9    ████████████████████████████████████████████████

10   ████████████████████████████    This does not demonstrate that "prices in fact

11   consistently [went] down," as happened in *Nippon Paper*, particularly where the court

12   acknowledge that individualized negotiations "are compatible with a flexible

13   approach to price-fixing." *Nippon*, 62 F. Supp. 2d at 191.  Thus, StarKist has failed

14   to show a genuine issue of material fact to show that it effectively withdrew from the

15   conspiracy after December 2013.

16   **III.    CONCLUSION.**

17        For the foregoing reasons, as well as those contained in Plaintiffs' Motion for

18   Partial Summary Judgment Against StarKist, Plaintiffs respectfully request that the

19   Court grant their Motion.  In the alternative, and at a minimum, the Court should grant

20   partial summary judgment that StarKist participated in a price-fixing conspiracy with

21   respect to canned tuna products during the period covered by its guilty plea.

22

23   Date: December 12, 2019               Respectfully Submitted,

24                                         HAYNSWORTH SINKLER BOYD, P.A.

25

26                                         By: s/ *Mary C. Eldridge*

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Manton M. Grier (D.S.C. No. 2461)
Robert Y. Knowlton (D.S.C. No. 2380)
Elizabeth H. Black (D.S.C. No. 10088)
Mary C. Eldridge (D.S.C. No. 12540)
1201 Main Street
Suite 2200
P.O. Box 11889 (29211)
Columbia, South Carolina
Telephone: (803) 779-3080
Facsimile: (803) 765-1243
mgrier@hsblawfirm.com
bknowlton@hsblawfirm.com
eblack@hsblawfirm.com
meldridge@hsblawfirm.com

*Counsel for W. Lee Flowers & Co., Inc.*

*s/ Patrick J. Stueve*
Patrick J. Stueve (KS 13847)
Steve N. Six (KS 16151)
C. Curtis Shank (KS 26306)
STUEVE SIEGEL HANSON LLP
460 Nichols Road, Suite 200
Kansas City, Missouri 64112
Telephone:  816-714-7100
Facsimile:  816-714-7101
stueve@stuevesiegel.com
six@stuevesiegel.com
shank@stuevesiegel.com

*Counsel for Direct Action Plaintiff*
*Associated Wholesale Grocers, Inc. and*
*Affiliated Foods Midwest Cooperative*

By: *s/ Patrick J. Ahern*
Patrick J. Ahern
Theodore B. Bell
AHERN AND ASSOCIATES, P.C.

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST STARKIST                                      CASE NO. 15-MD-2670-JLS-MDD

12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Willoughby Tower
8 South Michigan Avenue Suite 3600
Chicago, Illinois 60603
(312) 404-3760
patrick.ahern@ahernandassociatespc.com
theo.bell@ahernandassociatespc.com

*Counsel for Direct Action Plaintiffs*
*Winn-Dixie Stores, Inc. and Bi-Lo Holdings,*
*LLC*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIGNATURE ATTESTATION

Under Section 2.F.4 of the Court's CM/ECF Administrative Policies, I hereby certify that authorization for filing this document has been obtained from each of the other signatories shown above, and that all signatories have authorized placement of their electronic signature on this document.

Dated: December 12, 2019                    By: s/ *Mary C. Eldridge*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I certify that on December 12, 2019, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

Dated: December 12, 2019                    By: s/ *Mary C. Eldridge*

---

PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT
AGAINST STARKIST                                    CASE NO. 15-MD-2670-JLS-MDD

15