UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No.: 15-MD-2670 JLS (MDD)<br><br>**ORDER (1) GRANTING LISCHEWSKI'S MOTION TO DISMISS; AND (2) DENYING AS MOOT AWG'S MOTION TO LIFT STAY**<br><br>(ECF Nos. 1525, 2275) |

Presently before the Court is Defendant Christopher D. Lischewski's Motion to Dismiss ("Mot.," ECF No. 1525) Direct Action Plaintiff Associated Wholesale Grocers' Second Amended Complaint. Also before the Court is Plaintiff's Response in Opposition to ("Opp'n," ECF No. 1715), and Defendant's Reply in Support of ("Reply," ECF No. 1730) the Motion. Having considered the Parties' arguments and the law, the Court rules as follows.

## BACKGROUND

This case concerns an alleged conspiracy to fix the prices of shelf-stable tuna throughout the United States. The various civil actions relating to this conspiracy were consolidated in a multi-district litigation ("MDL"), and centralized pretrial proceedings began in this Court on December 9, 2015 (*see* ECF No. 1). This motion concerns

Associated Wholesale Grocers' ("AWG") Second Amended Complaint ("SAC," ECF No. 1437), which is the only remaining complaint that names Christopher Lischewski as a defendant.

AWG is a Kansas corporation with its headquarters and principal place of business in Kansas City, Kansas. (SAC ¶ 38.) AWG is a wholesale distributor that "provides over 3,800 grocery stores and other retail outlets" with various grocery items throughout the Midwest. (*Id.*)

Defendant Lischewski is the former Chief Executive Officer of Bumble Bee Foods, LLC. (*Id.* ¶ 64.) During the period relevant to this suit, Mr. Lischewski was a California resident living and working in San Diego, California, where Bumble Bee is headquartered. (*Id.* ¶¶ 42, 63.)

AWG's central allegation in this case is that the three largest domestic producers of shelf-stable tuna—Defendants Bumble Bee, Chicken of the Sea, and StarKist, as well as their respective parent companies—conspired from May 2004 until at least July 2015 to increase and maintain prices of canned tuna above competitive levels in violation of state and federal antitrust and consumer protection laws. (*Id.* ¶¶ 1, 3, 13.) The Defendants allegedly "coordinat[ed] price increase announcements or pricing terms, secretly and collusively exchang[ed] pricing information and prospective pricing announcements and business plans, and collectively reduc[ed] quantity and restrain[ed] output." (*Id.* ¶¶ 2, 13.) "From its Kansas corporate headquarters, AWG purchased canned tuna sold by" the members of the price-fixing cartel at "supra-competitive prices." (*Id.* ¶ 10.)

Throughout the entirety of the conspiracy, Mr. Lischewski was Bumble Bee's CEO and a "primary participant in the price-fixing" scheme. (*Id.* ¶ 64.) Mr. Lischewski personally "directed and supervised the sales, manufacturing, advertising, and distribution of Bumble Bee's price-fixed shelf-stable tuna products" sold to Bumble Bee's customers, including to AWG in Kansas. (*Id.*) After the conspiracy was uncovered, the United States Department of Justice investigated and charged Mr. Lischewski for a violation of

///

the Sherman Antitrust Act. (*Id.* ¶ 65.) A federal grand jury returned the indictment against him in May of 2018.[1] (*Id.* ¶ 230.)

AWG filed its original complaint in the District of Kansas on April 30, 2018, naming, among others, Mr. Lischewski as a defendant. *See Associated Wholesale Grocers, Inc. v. Bumble Bee Foods*, No. 2:18-cv-02212-CM-JPO (D. Kan.). On May 22, 2018, AWG's suit was consolidated with the MDL. (ECF No. 1015.) AWG subsequently filed a first amended complaint, followed by the operative SAC. (*See generally* SAC.) After AWG filed its SAC, the United States Department of Justice requested the Court stay all discovery pertaining to Mr. Lischewski during the criminal proceedings. (ECF No. 1365.) The Court granted this request and discovery remains stayed.[2] (ECF No. 1632.)

Mr. Lischewski now brings this Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2), 16(f), and 41(b), arguing that this Court lacks personal jurisdiction over him and that the complaint should be dismissed for failing to comply with the Court's Scheduling Order. (*See generally* Mot.)

## LEGAL STANDARDS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) challenges the court's personal jurisdiction over a party. In an MDL case, the MDL court applies the law of the transferor forum to determine personal jurisdiction. *In re Hydroxycut Mktg. & Sales Practices Litig.*, 810 F. Supp. 2d 1100, 1106 (S.D. Cal. 2011). Because Plaintiff filed its original complaint in the District of Kansas, (*see* ECF No. 1339), the Court will click its heels three times and apply the law as if it were home in Kansas.

A plaintiff opposing a motion brought under Rule 12(b)(2) bears the burden of establishing that jurisdiction is proper. *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286–87 (10th Cir. 2007). If the court decides the motion on the basis

---

[1] On December 3, 2019, after a month-long trial in the Northern District of California, Mr. Lischewski was found guilty. (*See* ECF No. 2304 at 11.) Mr. Lischewski plans to appeal his conviction. (*Id.*)

[2] AWG filed a Motion for Order to Lift Stay of Discovery (ECF No. 2275) after the criminal trial ended.

of the complaint and affidavits, without an evidentiary hearing, "the plaintiff need only make a prima facie showing of personal jurisdiction," *id.*, "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998). The court must "take[] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) . . . facts alleged in plaintiffs' complaint," and resolve "any factual disputes between the parties . . . in plaintiffs' favor." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F3d. 1063, 1070 (10th Cir. 2008) (citations omitted).

## DISCUSSION

"To exercise personal jurisdiction over a nonresident defendant, the court must ensure that 'the exercise of jurisdiction is sanctioned by the long-arm statute of the forum state,' and that the due process requirements of the Constitution are satisfied." *Thermal Components Co. v. Griffith*, 98 F. Supp. 2d 1224, 1227 (D. Kan. 2000) (quoting *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1304–05 (10th Cir. 1994)). "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, [the Court] proceed[s] directly to the constitutional issue." *OMI Holdings*, 149 F.3d at 1090 (quotation omitted).

"The Supreme Court has held that, to exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.'" *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Plaintiffs may show a defendant has the necessary minimum contacts through either general or specific jurisdiction. *OMI Holdings*, 149 F.3d at 1090–91. Because Plaintiff does not contend general jurisdiction is appropriate in this case, the Court's inquiry is narrowed to just specific jurisdiction.

The minimum contacts standard for specific jurisdiction "requires, first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related

activities." *Dudnikov*, 514 F.3d at 1071 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Last, "[e]ven if the plaintiff satisfies the above two requirements, the defendant can defeat jurisdiction by presenting a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833 (10th Cir. 2020) (quoting *Burger King*, 471 U.S. at 477).

In the Tenth Circuit, the standard for the purposeful direction requirement depends on the nature of the claims (e.g., contract or tort), *see Dudnikov*, 514 F.3d at 1072, and the type of contacts at issue (e.g., continuing relationships, market exploitation, or intentional conduct), *see Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 905 (10th Cir. 2017). In this case, the Parties agree on the proper standard—they agree that "[i]n tort-based lawsuits such as this one," *see Newsome v. Gallacher*, 722 F.3d 1257, 1264–65 (10th Cir. 2013), the harmful effects test applies. (*See* Mot. at 14; Opp'n at 15.)[3] The effects test "requires three elements: '(a) an intentional action . . . that was (b) expressly aimed at the forum state . . . with (c) knowledge that the brunt of the injury would be felt in the forum state.'" *Old Republic*, 877 F.3d at 907 (quoting *Dudnikov*, 514 F.3d at 1072) (alterations in original). When considering these elements, the court must analyze each defendant individually, *Newsome*, 722 F.3d at 1265, and the focus must be on "the relationship among the defendant, the forum, and the litigation," *Calder v. Jones*, 465 U.S. 783, 788 (1984).

Mr. Lischewski does not seriously contest the first element of the effects test regarding intentional actions. (*See* Mot. at 14.) Nor could he. AWG includes a laundry list of actions he allegedly took to further the price-fixing conspiracy. *See* Opp'n at 7–11 (citing SAC ¶¶ 17–18, 31, 37–38, 40, 61–70, 124–25 132, 157, 163–64, 167, 201–02, 204–05, 207–08, 210, 239–41). These alleged actions are "intentional and wrongful act[s] . . . on which jurisdiction may permissibly be founded." *Dudnikov*, 514 F.3d at 1074.

To establish jurisdiction over Mr. Lischewski, however, AWG must also show those intentional actions were "expressly aimed" at Kansas. *See id.* at 1072. On this point,

---

[3] Page numbers for docketed materials cited in this Order refer to those imprinted by the court's electronic case filing system.

Mr. Lischewski argues that AWG's allegations are conclusory and provide no details about any "action that [he] took in or directed toward Kansas—let alone any action that he directed towards AWG." (Mot. at 15.) Further, Mr. Lischewski asserts, while AWG alleged specific facts that other Defendants "knew that the 'brunt of the injury would be felt in the forum state,'" (*id.* at 16 (quoting *Dudnikov*, 514 F.3d at 1072)), it "failed to make any similar allegations against Mr. Lischewski," specifically, (*id.*).

AWG responds by arguing that its SAC is "replete" with examples of Mr. Lischewski's purposeful acts directed at Kansas that are sufficient to establish the express aiming prong. (Opp'n at 7–11, 16–18.) AWG alleges that Mr. Lischewski "conspired with competitors" to decrease tuna can sizes, (SAC ¶¶ 17, 163–64, 167), communicated with trade groups and competitors to illegally coordinate promotional pricing and price-list increases, (*id.* ¶¶ 31, 124–25, 132), and personally directed Bumble Bee's sales, marketing, advertising, and price list announcements to Bumble Bee's customers, including AWG (*id.* ¶ 64). AWG also points to the allegations in Mr. Lischewski's "indictment detailing his direct participation in the . . . conspiracy" as evidence that he directed his actions at Kansas. (Opp'n at 18.) AWG asserts that these allegations, which are mirrored in its SAC, "cover the time [Mr. Lischewski] was supervising and directing the prices for packaged tuna his company sold . . . to AWG in Kansas." (*Id.*) AWG alleges that Mr. Lischewski carried out all of these actions with the knowledge that AWG received the pricing information and purchased the price-fixed tuna in Kansas, establishing he purposefully directed the effects of the conspiracy at Kansas. (*Id.*)

AWG relies heavily on *Calder* to support its argument. (*Id.* at 15–17.) In *Calder*, the Supreme Court assessed whether specific jurisdiction was appropriate in California for a defamation suit brought by a well-known actress against the writer and editor of an allegedly libelous article. 465 U.S. at 788. Although the writer and editor researched, wrote, and edited the article in Florida, *id.* at 785–86, the Court found specific jurisdiction

///

over the defendants was "proper in California based on the 'effects' of their Florida conduct in California." *Id.* at 789.

The Supreme Court has since clarified *Calder*'s holding in *Walden v. Fiore*, 571 U.S. 277 (2014), revealing that *Calder* cannot bear the weight AWG places on it. In *Walden*, the Court examined whether a Nevada court had jurisdiction over a Georgia police officer who, after searching the plaintiffs and seizing a large amount of their cash in Georgia, submitted an allegedly false probable cause affidavit "with knowledge that it would affect persons with a 'significant connection' to Nevada." *Id.* at 281–82. Applying *Calder*, *id.* at 286–88, the Court found jurisdiction lacking, *id.* at 291. The Court noted that jurisdiction in *Calder* was predicated in part on the "ample" connections with California the defendants had created with the state itself, not just the plaintiff that resided there. *Id.* In addition to these connections, jurisdiction in *Calder* was proper because of the "strength of the connection" with California that the "reputation-based 'effects' of the alleged libel" had created, attributable to the plaintiff's fame. *Id.* at 287. That connection was "a function of the nature of the libel tort" itself—the effects of the defendant's tortious actions caused the "injury to the plaintiff's reputation in the estimation of the California public," thereby connecting "the defendants' conduct to California, not just to a plaintiff who lived there." *Id.* at 287.

The plaintiffs in *Walden*, on the other hand, failed to show the defendant officer had any similar connections with Nevada. The Court rejected the *Walden* plaintiffs' argument that jurisdiction was proper under *Calder* because "they suffered the 'injury' caused by [the defendant]'s allegedly tortious conduct . . . while they were residing in the forum." *Id.* at 289. It held that, for the minimum contacts analysis,

> an injury is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State. The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way.

571 U.S. at 290. Ultimately, the Court found that the "mere fact [the defendant's] conduct

affected plaintiffs with connections to the forum State d[id] not suffice to authorize jurisdiction." *Id.* at 291.

AWG contends jurisdiction in this case is "even more easily established than in *Calder*." (Opp'n at 16.) AWG asserts that Mr. Lischewski intentionally directed sales and pricing information at AWG, which created contacts with Kansas. (*Id.*) According to AWG, these contacts, in combination with the fact that Mr. Lischewski caused and was aware of the tortious effects that AWG felt in Kansas, more than suffice under *Calder*. (*Id.* at 16–17.) Additionally, AWG contends that Bumble Bee's actions directed at AWG, as well as Mr. Lischewski's participation in the overall conspiracy with other defendants that were subject to Kansas jurisdiction, establish Mr. Lischewski's minimum contacts. (*Id.* at 17 n.3.) Applying the principles in *Walden*, however, the Court concludes that AWG's allegations do not show contacts with Kansas sufficient to establish jurisdiction over Mr. Lischewski.

First, AWG has failed to allege any contacts Mr. Lischewski created with *Kansas*, "and not just with [AWG]," that expressly tie Mr. Lischewski to the forum. *See Walden*, 571 U.S. at 287. AWG does not allege that Mr. Lischewski was ever physically present in Kansas or ever reached out to any forum resident. There are no allegations that Mr. Lischewski directed the actions of other individuals for the purpose of doing business within the State. In fact, there is no indication anywhere in the SAC that Mr. Lischewski ever thought about Kansas before taking any of the alleged actions, whether they were to further the conspiracy or otherwise. And, as for the indictment, there is no mention of AWG or Kansas anywhere. (*See* SAC ¶¶ 239–40; *see also* Reply at 4.) At most, AWG's allegations show a connection between Mr. Lischewski and AWG. "But [AWG] cannot be the only link between [Mr. Lischewski] and the forum." *See Walden*, 571 U.S. at 285. AWG must meet its burden by showing Mr. Lischewski's "contacts with . . . [Kansas] itself, not [his] contacts with" AWG. *Id.*; *see also Dudnikov*, 514 F.3d at 1075 n.9 ("[T]he forum state itself must be the 'focal point of the tort.'").

///

Next, AWG's emphasis on the "financial harm Mr. Lischewski caused" to AWG in the forum is misplaced. (*See* Opp'n at 16.) AWG contends that, like the writer and editor in *Calder*, Mr. Lischewski knew the "brunt of the injury would be felt" by AWG in the forum State, making jurisdiction proper. (*Id.* (quoting *Calder*, 465 U.S. at 789–90).) AWG has not, however, shown its injury is "the sort of effect" caused by Mr. Lischewski's actions "that is tethered to [Kansas] in any meaningful way." *Walden*, 571 U.S. at 290. "The crux of *Calder* was that the reputation-based 'effects' of the alleged libel connected the defendants to California, not just to the plaintiff." *Walden*, 571 U.S. at 287. In contrast, the effects from the nation-wide price-fixing conspiracy alleged here create no connection to any particular forum. Mr. Lischewski and the other Defendants did not conspire to run a Kansas-focused price-fixing scheme—they intended to reach every customer nationwide. (*See, e.g.*, SAC ¶ 132 ("[Mr.] Lischewski used . . . communications [between himself and the CEOs of Chicken of the Sea and StarKist] to reinforce their collusive scheme to increase prices of canned tuna *in the United States*.") (emphasis added).) Thus, AWG "would have experienced" the same injury from overpaying "in California, Mississippi, or wherever else" it might have purchased the price-fixed tuna. *See Walden*, 571 U.S. at 290. Without a connection to Kansas, specifically, the "effects of [Mr. Lischewski]'s conduct on [AWG] are not . . . a proper basis for jurisdiction." *Id.*

Likewise, AWG's allegation regarding Mr. Lischewski's awareness of AWG's injury in the forum fails to establish express aiming. AWG argues that Mr. Lischewski directed the pricing and sales of Bumble Bee, which sold price-fixed tuna to AWG, which in turn caused injury to AWG in Kansas, all of which establishes Mr. Lischewski expressly aimed his allegedly tortious actions at the forum. (Opp'n at 16–17.) But "mere awareness" that Bumble Bee sold tuna to AWG in Kansas "does not amount to targeting [Kansas]." *See Old Republic*, 877 F.3d at 917 (applying *Calder* post-*Walden* and finding specific jurisdiction lacking where the defendant's only contact with the forum was the resident plaintiff's purchase of its product). Moreover, under *Calder*, AWG must "allege . . . 'something more' than foreseeability" of an injury "to establish personal jurisdiction."

1  *Dudnikov*, 514 F.3d at 1077.  As noted above, AWG has shown no other "meaningful"
2  connections Mr. Lischewski created with Kansas.  *See Walden*, 571 U.S. at 290.

3  AWG's attempt to establish minimum contacts through "Mr. Lischewski's
4  company," Bumble Bee, also fails.  (*See* Opp'n at 9.)  AWG alleges Bumble Bee "sent
5  price lists to AWG in Kansas, sold price-fixed tuna to it in Kansas, [and] delivered tuna to
6  it in Kansas, all causing AWG financial injury at its headquarters in Kansas." (*Id.* at 9, 16
7  (citing SAC ¶¶ 38, 61, 62, 239, 240–41).)  But allegations pertaining to *Bumble Bee's*
8  actions do not establish that the Court has jurisdiction over *Mr. Lischewski*, as the Court
9  must analyze the contacts of each defendant individually.  *See Newsome*, 722 F.3d at 1266.
10 Indeed, "[e]mployees' 'contacts with [the forum state] are not to be judged according to
11 their employer's activities there.'"  *See id.* at 1275 (quoting *Calder*, 465 U.S. at 790).
12 Simply because Mr. Lischewski was the CEO of Bumble Bee while it sold price-fixed tuna
13 to AWG in Kansas does not mean he is subject to personal jurisdiction there.

14 Finally, in a footnote, AWG contends that "jurisdiction is also established through
15 Defendants' conspiracy."  (*See* Opp'n at 17 n.3.)  AWG argues that because "other
16 defendants" who did not challenge personal jurisdiction "knew their price fixed tuna was
17 sold to AWG and that it was foreseeable that it would cause financial harm in Kansas,"
18 Mr. Lischewski, as co-conspirator of these Defendants, is also subject to jurisdiction. (*Id.*)
19 AWG points to dicta from the Tenth Circuit in *Newsome* for the proposition "that a
20 conspiracy conducted outside of the forum state but with effects in the forum state c[an]
21 subject the conspirators to personal jurisdiction." (*Id.* (citing 722 F.3d at 1265).)  This
22 argument is without merit.  Allegations concerning one conspirator cannot subject his
23 accomplices to personal jurisdiction as well, absent specific allegations that each of the
24 conspirators aimed their jurisdictionally relevant conduct at the forum.  *See Walden*, 571
25 U.S. at 284 ("[The Supreme Court] ha[s] consistently rejected attempts to satisfy the
26 defendant-focused 'minimum contacts' inquiry by demonstrating contacts between . . .
27 third parties . . . and the forum State.").
28 ///

In sum, AWG has failed to allege Mr. Lischewski's "conduct connects him" to Kansas "in a meaningful way." *See id.* at 290. The Court therefore finds, based on the allegations of the SAC, Mr. Lischewski "lacks the 'minimum contacts' with [Kansas] that are a prerequisite to the exercise of jurisdiction over him." *See id.* at 288. Having found Mr. Lischewski lacks minimum contacts with forum State, the Court need not address the remaining portions of the personal jurisdiction test. *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1299 n.1 (10th Cir. 1999). The Court therefore **GRANTS** Mr. Lischewski's motion and **DISMISSES** AWG's claims against Mr. Lischewski under Rule 12(b)(2) for lack of personal jurisdiction.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Mr. Lischewski's Motion to Dismiss under Rule 12(b)(2) and **DISMISSES** AWG's claims against Mr. Lischewski. The SAC, as it pertains to Mr. Lischewski, is dismissed **WITHOUT PREJUDICE** so that AWG may refile in a proper forum. AWG's Motion for Order to Lift Stay of Discovery (ECF No. 2275) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: May 26, 2020

Hon. Janis L. Sammartino
United States District Judge