1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>All Actions | Case No.:  15-MD-2670 JLS (MDD)<br><br>CLASS ACTION<br><br>ORDER DENYING DEFENDANTS' MOTION TO STAY PENDING APPEAL<br><br>(ECF No. 2264) |

Pending before the Court in this multidistrict litigation is Defendants' motion to stay pending appeal of the Order Granting Motions for Class Certification.  Plaintiffs oppose. The motion was taken under submission without oral argument.  *See* Civ. Loc. R. 7.1.d.1. For the reasons discussed below, Defendants' motion is denied.

**I.     Background**

Plaintiffs initiated this action in 2015, alleging an antitrust conspiracy by Defendants to fix and maintain packaged tuna prices above competitive levels in violation of state and federal antitrust laws.  Related to the same allegations, Defendants were prosecuted by the United States Department of Justice.  The three main Defendants admitted their guilt with respect to the antitrust conspiracy.

/ / /

1

On December 9, 2015, various parallel civil actions relating to the conspiracy were consolidated in a multidistrict litigation for pretrial proceedings before this Court. The Court divided Plaintiffs into four tracks: (1) Direct Action Plaintiffs ("DAPs"), who are direct purchasers proceeding individually against Defendants; (2) Direct Purchaser Plaintiffs (DPPs), who are proceeding on behalf of a putative class; (3) Commercial Food Preparer Plaintiffs ("CFPs"), who are indirect purchasers proceeding on behalf of a putative class; and (4) End Payer Plaintiffs ("EPPs"), who are consumers proceeding on behalf of a putative class (together, Plaintiffs; DPPs, CFPs and EPPs together are referred to as "Class Plaintiffs"). Defendants are the three largest domestic producers of packaged tuna products—Tri-Union Seafoods LLC d/b/a Chicken of the Sea International and Thai Union Group PCL (together, "COSI");[1] Bumble Bee Foods LLC,[2] Lion Capital LLP, Lion Capital (Americas), Inc. and Big Catch Cayman LP (together, "Bumble Bee");[3] as well as StarKist Company and Dongwon Enterprises Co. Ltd. (together, "StarKist").

On July 30, 2019, the Court granted Class Plaintiffs' motions for class certification. (Order Granting Mots. for Class Certif. ("Class Certif. Order"), ECF No. 1931.) On August 13, 2019, Defendants petitioned the Ninth Circuit Court of Appeals for permission to

---

[1] On May 24, 2019, CFPs filed a motion for preliminary approval of settlement with COSI, which included a stipulated certification of a settlement class. (ECF No. 1910.) The settlement and related class certification are not included in Defendants' pending appeal. (Defs' Notice Pursuant to Para. 5 of Ct.'s Order Following Jan. 7, 2020 Status Conference, ECF No. 2257.) On January 17, 2020, the Court denied without prejudice CFPs' motion for preliminary approval of settlement as well as their related motion to approve notice plan. (ECF Nos. 2263 and 2044, respectively.)

[2] On November 21, 2019, Bumble Bee Foods LLC filed for bankruptcy protection. *See In re: Bumble Bee Parent, Inc. et al.,* Case No. 19-12502-LSS (Bankr. D. Del.). Proceedings against Bumble Bee Foods LLC in this Court are stayed pursuant to 11 U.S.C. § 362.

[3] Lion Capital LLP and Big Catch Cayman LP have been dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Order Granting Defs' Mot. to Dismiss, ECF No. 2270.) A motion for reconsideration is pending. (ECF No. 2285.)

2

appeal the Class Certification Order pursuant to Federal Rule of Civil Procedure 23(f). (ECF No. 1935; *see also Olean Wholesale Grocery Coop v. Bumble Bee Foods, LLC,* Case no. 19-80108 (9th Cir.), Pet. for Permission to Appeal Class Certif. Decision Pursuant to Fed. R. Civ. Proc. 23(f) ("Pet. to Appeal"), ECF No. 1.)   The petition was granted on December 20, 2019.  (*See* ECF No. 2247.)   Numerous summary judgment motions and motions to exclude expert witness testimony were filed and opposed after Defendants' Petition to Appeal was filed.  On January 3, 2020, Defendants informed the Court for the first time of their intent to move for a stay pending appeal.  (*See* Defs' Proposed Agenda, ECF No. 2252.)  Shortly after this motion was filed, and based on the pending appeal, the Court denied as premature DPPs' and EPPs' motions related to their respective class notices.  (*See* ECF Nos. 2271, 2272.)  Accordingly, all case activity related directly to class certification has already been stayed pending appeal.

Defendants' motion is more encompassing, however.  They contend that "[a] broad stay of all summary judgment and *Daubert* motions is the only prudent solution."  (Mem. of P. & A. in Supp. of Defs' Mot. to Stay Certain Proceedings ("Stay Mot.") 14, ECF No. 2264-1 (footnote omitted).)   When their motion was filed, fact discovery had closed. (Reply Mem. of P. & A. in Supp. of Defs' Mot. to Stay Certain Proceedings ("Reply") 1 n.1, ECF No. 2280.)  Fourteen summary judgment motions and six related *Daubert* motions had been fully briefed.  (Stay Mot. 1, 4.)  Arguing that all these motions are interrelated among themselves as well with issues raised on appeal, Defendants seek to stay all of them, whether they were filed or opposed by the parties to the appeal or not.  Accordingly, two groups of Plaintiffs oppose the stay—Class Plaintiffs, the prevailing parties in the Class Certification Order which is on appeal, and DAPs, who are not parties to any of the class actions or the appeal.

## II.   Discussion

An appeal pursuant to Federal Rule of Civil Procedure 23(f) "does not stay proceedings in the district court unless the district judge or the court of appeals so orders." Fed. R. Civ. Proc. 23(f).  This provision was included to avoid unnecessary disruption and

15-MD-2670 JLS (MDD)

delay in district court proceedings. *Microsoft Corp. v. Baker,* __ U.S. __; 137 S. Ct. 1702, 1713 n.9 (2017).

"The Ninth Circuit has not articulated a specific standard for evaluating a proposed stay pending decision of a Rule 23(f) appeal. Most district courts in this circuit apply the standard articulated in *Nken v. Holder*, 556 U.S. 418 (2009), and *Hilton v. Braunskill,* 481 U.S. 770 (1987)." *Romero v. Securus Technols, Inc.,* 383 F.Supp.3d 1069, 1072-73 (S.D. Cal. 2019).[4] The parties do not dispute the applicable standard. (*See* Stay Mot. 7; Pl. Classes Opp'n to Defs' Mot. to Stay Certain Proceedings ("Class Opp'n") 4-5, ECF No. 2276.)

The need for a stay pending appeal may arise because "[i]t takes time to decide a case on appeal. . . . [I]f the court takes the time it needs, the court's decision may in some cases come too late for the party seeking review." *Nken*, 556 U.S. at 421; *see also id.* at 427. However, "[a] stay is also an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Id.* at 427; *see also id.* at 433. Instead, it is "an exercise of judicial discretion and the propriety of its issue is dependent upon the circumstances of the particular case." *Id.* at 433. "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Id.* at 433-34.

Under the traditional standard for a stay,

a court considers four factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 426; *see also id.* at 434.

/ / /

---

[4]    Unless otherwise noted, internal quotation marks, citations, and footnotes are omitted throughout.

### A.   Irreparable Harm to Defendants

Because irreparable harm to the appellant is a "bedrock requirement," *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011), the Court turns to this factor first.  "[S]tays must be denied to all petitioners who [do] not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors." *Id.*  To clear the threshold, Defendants must show "that an irreparable injury is the more probable or likely outcome." *Id.* at 968.  "[S]imply showing some possibility of irreparable injury" is not enough.  *Nken*, 556 U.S. at 434-35.

### 1.   One-Way Intervention

Defendants claim they will suffer irreparable harm in the absence of stay because they will be "forced to bear the risk of litigating summary judgment motions without the ability to bind absent class members."  (Reply 3-6.)  They argue a stay is consistent with case law relating to what they refer to as the "one-way intervention rule."  (Stay Mot. 1.)

The potential for the "so-called one-way intervention" was first discussed in the context of the pre-1966 version of Rule 23.  *Am. Pipe & Construction Co. v. Utah*, 414 U.S. 538, 547 (1974).  Under that version of Rule 23, there was

> no mechanism for determining at any point in advance of final judgment which . . . potential members of the class claimed in the complaint were actual members and would be bound by the judgment.  Rather, when a suit was brought by or against such a class, it was merely an invitation to joinder—an invitation to become a fellow traveler in the litigation, which might or might not be accepted.  A recurrent source of abuse under the former Rule lay in the potential that members of the claimed class could in some situations await developments in the trial or even final judgment on the merits in order to determine whether participation would be favorable to their interests.  If the evidence at the trial made their prospective position as actual class members appear weak, or if a judgment precluded the possibility of a favorable determination, such putative members of the class who chose not to intervene or join as parties would not be bound by the judgment.  This situation—the potential for so-called "one-way intervention"—aroused considerable criticism upon the ground that it was unfair to allow members of a class to

/ / /

5

benefit from a favorable judgment without subjecting themselves to the binding effect of an unfavorable one.

*Id.* at 545-47.

In 1966, Rule 23 was amended to remedy the unfairness. It provided for class certification "as soon as practicable after the commencement of the action." *Am. Pipe,* 414 U.S. at 547 & n.11. The class membership was determined before final judgment by sending notice of class certification with the option for absent class members to exclude themselves. *Id.* at 547-48. All class members who did not request exclusion were bound by the final judgment. *Id.* at 548-49. The same framework is included in Rule 23(c) today.

Defendants cite to no binding authority in the post-1966 class action practice to articulate a one-way intervention "rule." Instead, one-way intervention is used to describe an argument under the amended Rule 23. The argument is often raised when the parties disagree whether a summary judgment motion should be decided before or after class certification.

The one-way-intervention argument was considered in *Wright v. Shock*, 742 F.2d 541 (9th Cir. 1984). There, with the defendants' acquiescence, the district court granted a defense summary judgment motion and dismissed some of the defendants before deciding whether to certify a class action. *Id.* at 542-43. The court certified the summary judgment ruling as a partial final judgment to allow an immediate appeal. The plaintiffs appealed seeking to vacate the summary judgment ruling. Citing Rule 23(c)(1), which directed the district court to decide class certification "[a]s soon as practicable after the commencement" of the action, the plaintiffs argued on appeal that it was not "proper for the district court to order summary judgment on the liability question without first ruling on class certification." *Id.* at 543; *see also id.* at 542.

The court noted this was an issue of first impression in the Ninth Circuit. *Wright*, 742 F.2d at 543. It started its analysis by observing that Rule 23(c)(1) does not require district courts to take up class certification before making any rulings on the merits, but

/ / /

instead "deliberately avoids a mechanical approach and calls upon judges to weigh the particular circumstances of particular cases . . .." *Id.*

> [T]he timing of Rule 23 is not absolute.  Under the proper circumstances— where it is more practicable to do so and where the parties will not suffer significant prejudice—the district court has discretion to rule on a motion for summary judgment before it decides the certification issue.

*Id.* at 543-44.

Next, *Wright* discussed a split among the circuits.  While some circuits affirmed pre-class certification summary judgment rulings, others held, based on one-way-intervention considerations, that "no decision on the merits of a class action can precede a determination on class certification."  *Wright,* 742 F.2d at 543-44.  Some of the latter circuits, however, recognized an exception if a defendant "waive[d] the protection afforded by an early ruling on class certification."  *Id.* at 544.  The district court in *Wright* did not abuse its discretion under either line of authority.  *Id.* [5]

Based on the foregoing, and acknowledging that the outcome may be influenced by prejudice to either the defendants or the plaintiffs, *id.* at 544, 545, the appellate court was persuaded by the defendants' acquiescence and limited its holding to the facts of the case:

> Neither Fed.R.Civ.P. 23 nor due process necessarily requires that the district court rule on class certification before granting or denying a motion for summary judgment.  Rule 23 clearly favors early determination of the class issue, but where considerations of fairness and economy dictate otherwise, and where the defendant consents to the procedure, it is within the discretion

/ / /

---

[5]    As to the former line of authority, *Wright* concluded that under the circumstances of that case, "we cannot say that the course chosen by the district court manifested an abuse of discretion," and as to the latter line of authority that "[w]here the defendant assumes the risk that summary judgment in his favor will have only stare decisis effect on the members of the putative class, it is within the discretion of the district court to rule on the summary judgment motion first."  742 F.2d at 544.

of the district court to decide the motion for summary judgment first.  Under the facts of the present case, the district court did not abuse its discretion.

*Id.* at 545-46.

Similarly, *Schwartzchild v. Tse*, 69 F.3d 293 (9th Cir. 1995), rejected the defendants' one-way-intervention argument and reached the same conclusion.  It held that "[b]y obtaining summary judgment before notice had been sent to the class, the defendants waived their right to have such notice given and to obtain a judgment that was binding upon the class.  *Id.* at 297.[6]

Defendants here seize on the out-of-circuit authority discussed in *Wright* and *Schwartzchild*.  As here, the parties there argued the disadvantage which may result if summary judgment is granted for the defense before class certification and notice.  The judgment in favor of the dismissed defendants is not res judicata as to anyone other than the named plaintiffs and the absent class members remain free to assert their claims against the dismissed defendants subject to the stare decisis effect of the prior summary judgment ruling.  *Wright*, 742 F.2d at 544, 545; *Schwartzchild*, 96 F.3d at 295-96; *see also id.* at 297.  To avoid this outcome, some circuits prohibit, at least in the absence of waiver, a decision on the merits before class certification.  *Wright*, 742 F.2d at 544; *Schwartzchild* at 297.  Because the defendants in *Wright* and *Schwartzchild* had waived the protection afforded by early class certification, neither court had a reason to adopt this approach.  Defendants argue this Court should.

The course Defendants advocate would be contrary to the interpretation of Rule 23(c)(1) in *Wright*:

According to Fed.R.Civ.P. 23(c)(1), the district court must rule on the issue of class certification "[a]s soon as practicable after the commencement of an

---

[6]    If Defendants here did not waive the right to raise the one-way-intervention argument, as Plaintiffs argue (Class Opp'n 16-18), they surely came close by filing summary judgment motions before the Court ruled on the then-pending motions to approve class notice.

action brought as a class action[.]"  The Wrights contend that this language requires the district court to decide the class certification issue before making any rulings on the merits.  The history of Rule 23, however, shows that its framers considered and rejected a provision imposing just such a requirement.  The key word of section (c)(1) in its final form is "practicable," a term that deliberately avoids a mechanical approach and calls upon judges to weigh the particular circumstances of particular cases and decide concretely what will work[.]   In short, the language of section (c)(1) leaves much room for discretion.

*Wright*, 742 F.2d at 543 (brackets added).

Defendants' argument is also contrary to the holdings of subsequent appellate opinions.  *See, e.g., Corbin v. TWEAN,* 821 F.3d 1069, 1084-85 (9th Cir. 2016) (applying *Wright*[7] and affirming summary judgment on class representative's claim entered before deciding motion to reconsider class certification); *Saeger v. Pac. Life Ins. Co.*, 305 Fed. Appx. 492, 493 (9th Cir. 2008) (citing *Wright*[8] and affirming denial as moot of class certification motion based on a prior summary judgment ruling).  The Federal Judicial Center's guidance to the judiciary is consistent with the interpretation of Rule 23(c)(1) in *Wright* and its progeny: "The amended rule allows [ruling] on motions . . . for summary judgment before ruling on class certification."  *Managing Class Action Litigation: A Pocket Guide for Judges* (Third) 9 (2010).  To the extent Defendants retreat from their position in the reply by reframing it to argue that the sequence of summary judgment and class

---

[7]    *Wright* "affirm[ed] a district court's decision to decline to rule on a class certification motion after granting summary judgment to defendants 'where considerations of fairness and economy [so] dictate.'"  *Corbin,* 821 F.3d at 1085 (quoting *Wright,* 742 F.2d at 545-46) (brackets added in *Corbin*).

[8]    "We have previously held that, '[u]nder proper circumstances—where it is more practicable to do so and where the parties will not suffer significant prejudice—the district court has discretion to rule on a motion for summary judgment before it decides the certification issue.'"  *Saeger,* 305 Fed. Appx. 492 (quoting *Wright*, 742 F.2d at 543-44) (brackets added in *Saeger*).

15-MD-2670 JLS (MDD)

certification rulings "may be flipped in rare circumstances" (Reply 5 n.7), the position is equally unsupported. *See id.* ("Given the flexibility of the rules, the most efficient practice is to rule on motions to dismiss and motions for summary judgment *before* ruling on class certification." (emphasis added)).

Furthermore, Defendants urge this Court to extend consideration of the one-way-intervention argument beyond its established context to a stay pending a Rule 23(f) appeal. Courts evaluate the one-way-intervention argument by considering practical case management issues and prejudice to the parties. *See Wright*, 742 F.2d at 543; *see also id.* at 544, 545. On the other hand, to meet the standard for stay pending appeal, Defendants are faced with a heavier burden. They must show probability of irreparable harm. *Leiva-Perez*, 640 F.3d at 968. If Defendants do not meet this standard, "a stay may not issue, regardless of the [moving party's] proof regarding the other stay factors" such as prejudice to the opposing party. *Id.* at 965. Defendants have cited no binding authority holding that one-way intervention constitutes sufficient irreparable harm[9] to stay proceedings pending appeal, or that it constitutes irreparable harm at all.[10] This Court is aware of none.

---

[9]     Defendants have not shown that one-way intervention is "the more probable or likely outcome." *Leiva-Perez*, 640 F.3d at 968. It is a possibility only if the Class Certification Order is affirmed *and* Defendants secure a favorable outcome on the pending summary judgment motions. Only if both conditions are met do Defendants have a reason to ensure that the favorable motion rulings pending appeal bind the entire classes when the absent class members can no longer opt out. If Defendants are successful on appeal and the Class Certification Order is reversed, their one-way-intervention argument becomes moot. In that case, nothing keeps absent class members from pursuing their individual claims against Defendants because without a class action any judgment will bind only named plaintiffs no matter when the summary judgment motions are decided.

[10]     One-way intervention is always a possibility. For example, if a class certification ruling is modified or set aside under Rule 23(c)(1)(C) after ruling on liability issues or it is reversed on appeal after judgment on the merits, the absent class members may learn the outcome before deciding whether to participate or sue the defendant individually. *See Rodriguez v. Banco Central,* 790 F.2d 172 (1st Cir. 1986).

Finally, Defendants seek to apply the one-way-intervention argument to pending third-party actions which are not on appeal, such as DAP actions here.  Defendants have cited no binding authority, and the Court is aware of none, supporting the argument that the possibility of one-way intervention is a valid reason to stay merits proceedings in a third-party action.

For the foregoing reasons, the possibility of one-way intervention does not meet Defendants' burden of showing they will suffer irreparable harm.

## 2. Unnecessary Legal Fees

Defendants next contend they will suffer irreparable harm of incurring unnecessary legal fees if they have to "litigat[e] potentially unnecessary motions." (Stay Mot. 10.)  They do not explain why incurring legal fees would constitute irreparable harm.  Monetary injury alone "is not normally considered irreparable."  *hiQ Labs, Inc. v. LinkedIn Corp.,* 938 F.3d 985, 993 (9th Cir. 2019).

Moreover, the potential harm Defendants protest is entirely of their own doing.  On July 25, 2019, they requested the Court to extend the due date for all parties to file dispositive motions.  (ECF No. 1926.)  On July 30, 2019, the Court issued the Class Certification Order.  On August 9, 2019, it granted Defendants' request for extension of time and moved the due date for substantive motions to September 19, 2019.  On August 13, 2019, Defendants petitioned the Ninth Circuit Court of Appeals for permission to appeal the Class Certification Order.  Knowing that the dispositive motion due date was approaching, Defendants did not move to continue it until the ruling on their Petition to Appeal and did not put anyone on notice that they will seek to stay the motions should their petition be granted.  Together with all other parties, Defendants filed their dispositive motions on September 19, 2019.  Collectively, the parties filed fourteen summary judgment motions and six related *Daubert* motions.  (Stay Mot. 1, 4.)  Defendants let these motions be briefed in full before making their intention known that they would move to stay them pending appeal as unnecessary.

/ / /

15-MD-2670 JLS (MDD)

Aside from the fact that Defendants could easily have avoided any unnecessary motion briefing by timely disclosing their intentions, they have not established that deciding the pending motions during appeal would be unnecessary or wasteful. They concede that "questions raised in summary judgment motions are not identical to questions presented in Rule 23(f) appeals, *which are necessarily confined to class certification*." (Reply 6 n.10 (emphasis added).) Nevertheless, they claim the pending motions are "potentially unnecessary," may become moot, or "have to be re-litigated entirely" if the classes are modified or decertified on appeal. (*See, e.g.,* Stay Mot. 10, 11; Reply 6, 7.) The Court is not persuaded.

On appeal Defendants argue that the law regarding use of representative evidence in establishing class-wide impact, and the District Court's role in determining this issue at the class certification stage, are unsettled. (*See* Pet. to Appeal.)[11] Specifically, they argue "whether plaintiffs can satisfy [Rule] 23(b)(3)'s predominance requirement by relying on a statistical methodology that assumes that all class members have suffered the same impact from a defendant's alleged misconduct," and "whether a district court is required to determine [before certifying the class] if the fact or extent of uninjured members in the class defeats predominance." (Stay Mot. 3-4 (citing Pet. to Appeal).)

Defendants claim the Court of Appeals could "rule in a way that changes who, what products, and what time periods are covered by the classes"—issues raised in the pending motions. (Reply 1; Stay Mot. 1, 10; *see also id.* at 5.) However, they offer only vague generalities, and do not explain how a decision on the issues they raise on appeal could moot an intervening ruling on any of the pending motions.

/ / /

---

[11]   Defendants' opening brief on appeal has not been made available as of this writing. (*See Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods, LLC,* Case no. 19-56514 (9th Cir.).)

Defendants' own examples (Stay Mot. 11-14) underscore this point:

1.  Defendants' summary judgment motions directed at Class Plaintiffs and DAPs (ECF Nos. 2007, 2010):  The motions seek to delay the commencement date of Plaintiffs' claims by two months, from June 1, 2011 to August 3, 2011, by arguing that Plaintiffs had sufficient knowledge for the statute of limitations to accrue at an earlier time, and that the injury rule, rather than discovery rule, applies to Plaintiffs' claims.

2.  Class Plaintiffs' and DAPs' motions against StarKist Company (ECF Nos. 1993, 2035):  The motions seek a finding that the guilty plea in the criminal antitrust case satisfies each of the elements of civil antitrust liability, and that the agreement to fix prices is established for the period before and after the guilty plea.

3.  Defendants' motions arguing that DAPs do not have sufficient evidence to support their claims for the period prior to 2011.  (ECF Nos. 2023, 2025.)

4.  DAPs' motion to exclude the opinions of Del Monte's expert Dr. Kevin Murphy.  (ECF No. 2034.)

The issues Defendants raise on appeal do not intersect with the pending motions.

This is particularly evident with respect to Defendants' motions regarding pre-2011 liability (example 3), because the classes are certified for a period starting in July 2011. (Class Cert. Order 5, 26, 46, 58.)  Not surprisingly, Class Plaintiffs did not oppose these motions, as the motions implicate only DAPs, who are not parties to any of the class actions.  Similarly, Class Plaintiffs are not implicated in DAPs' *Daubert* motion (example 4), directed at an expert opinion not presented in relation class certification.

Next, Defendants do not explain how Plaintiffs' arguments that the StarKist guilty plea established each of the elements of civil antitrust liability (example 2) can be disposed of in the pending appeal.  Implicit in Defendants' argument is the premise that the appeal will entail an extensive merits inquiry.  Although class certification may "entail some overlap with the merits of the plaintiff's underlying claim," *Wal-Mart Stores, Inc. v. Dukes,*

15-MD-2670 JLS (MDD)

564 U.S. 338, 351 (2011), "[m]erits questions may be considered . . . only to the extent[]that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds,* 568 U.S. 455, 466 (2013). Defendants concede this. (Reply 6 n.10.) The mere fact that the pending summary judgment motions touch on the causes of action which were certified for class treatment is not a sufficient basis to find that the summary judgment motions will be mooted or would have to be re-litigated if they are decided pending appeal.

Defendants' motions to delay the statute of limitations accrual to August 3, 2011 (example 1), and a part of Plaintiffs' motions arguing that the StarKist guilty plea establishes the price-fixing agreement for a period after the plea (example 2), may reach into the class period. However, Defendants do not explain how these issues could be decided on appeal, as they are not included in their Petition to Appeal.

Even if the class certification appeal results in a change in the class period, none of the pending motions will become moot. The statute of limitations issues Defendants raise against DAPs and Class Plaintiffs (example 1), the effect of guilty plea DAPs and Class Plaintiffs raise against StarKist (example 2), as well as the issues raised in other pending motions, will have to be decided as to the DAPs, who are not parties to any of the class actions, and the Class Plaintiffs individually regardless of the outcome of the appeal.

Finally, Defendants fear that they may be disadvantaged by any unfavorable rulings in this Court during the pendency of their appeal. One example they cite is the possibility that this Court could grant DAPs' motion regarding the effect of the StarKist guilty plea (example 2). (Stay Mot. 13; *see also id.* 13-14 (example 3 raising a similar argument); Reply 7 (same).) Defendants maintain that if this happens, and the classes are decertified or modified on appeal, and the Court then takes up the Class Plaintiffs' motion regarding the same guilty plea issues, the Class Plaintiffs will have the benefit of the prior ruling on the DAPs' motion. (Stay Mot.13.) This argument does not establish irreparable harm, but
/ / /

merely identifies a possible loss of litigation advantage stemming from the sequence in which the Court takes up the pending summary judgment motions.[12]

In the context of the pending appeal, the alleged harm is Defendants' own doing, as they allowed extensive motion briefing to proceed without putting anyone on notice that they will seek to stay the motions as "unnecessary." Moreover, the argument is speculative, as it requires several conditions, all uncertain at this time, before the claimed prejudice occurs. Defendants' argument falls short of showing harm, that the harm would be irreparable, or that the harm is not merely "possible," *Nken*, 556 U.S. at 434-35, but "the more probable or likely outcome," *Leiva-Perez*, 640 F.3d at 968.

## B.   *Likelihood of Success on the Merits*

Although Defendants "need not demonstrate that it is more likely than not that they will win on the merits" of the appeal, *Leiva-Perez*, 640 F.3d at 966, they must show at least "'a reasonable probability' or 'fair prospect' of success." *F.T.C. v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019). "It is not enough that the chance of success on the merits be better than negligible." *Nken*, 556 U.S. at 434.

Defendants successfully petitioned the Court of Appeals to hear their appeal. Granting a Rule 23(f) petition is "the exception rather than the rule." *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 959 (9th Cir. 2005). To decide whether to hear the appeal, the courts have developed guidelines. *Id.* at 960.

> Review of class certification decisions will be most appropriate when: (1) there is a death-knell situation for either the plaintiff or defendant that is independent of the merits of the underlying claims, coupled with a class certification decision by the district court that is questionable; (2) the certification decision presents an unsettled and fundamental issue of law relating to class actions, important both to the specific litigation and generally,

/ / /

---

[12]   The parties extensively aired this issue at the status conference held on January 7, 2020. (*See* ECF Nos. 2250-56.)

that is likely to evade end-of-the-case review; or (3) the district court's class certification decision is manifestly erroneous.

*Id.* at 959.

In their Petition to Appeal Defendants argued that the law regarding the use of representative evidence in establishing class-wide impact, and the District Court's role in determining this issue at the class certification stage, are unsettled and that the Court's resolution of the unsettled issues was in error.  (*See* Pet. to Appeal.)  Citing *Chamberlan,* the order granting Defendants' petition does not evaluate their likelihood of success.  (*See* ECF No. 2247.)  Nevertheless, the fact a petition is granted raises a "fair prospect" of success.  *See Leiva-Perez*, 640 F.3d at 967 (discussing *O'Brien v. O'Laughlin,* 557 U.S. 1301 (2009), which noted that for purposes of stay pending appeal, the fact a certiorari petition was granted raises a "fair prospect" of success on the merits of the appeal).  Accordingly, Defendants have met the minimum necessary to show likelihood of success on the merits.  *See Leiva-Perez*, 640 F.3d at 967-68.

## C.  *Substantial Harm to Other Parties Interested in the Proceeding*

This multidistrict proceeding has been pending four and a half years.  Fact discovery has closed, and summary judgment motions have been fully briefed.

Plaintiffs argue they will be harmed by the delay resulting from the extensive stay Defendants request because many events related to the price fixing conspiracy occurred almost ten years ago.  This presents the risk of lost memories and testimony.  One key witness has already passed away.  (Class Opp'n 3; Jan. 7, 2020 Status Hearing, Tr. of Proceedings ("Tr."), 13, 34, ECF No. 2255.)

The prejudice from the delay is aggravated for DAPs.  They comprise primarily of grocery wholesalers and retailers, including large chains such as the Kroger Co., Publix Super Markets, Inc., Winn-Dixie Stores, Inc., and Associated Wholesale Grocers, Inc. Collectively, their damage claims exceed the damage claims of each of the three class actions.  (*See* DAPs' Opp'n to Defs' Mot. to Stay Proceedings 1 n.1, ECF No. 2274; *see also* Tr. 13.)  Each DAP has decided to pursue its claims on an individual basis.  Although

16

1  included in this multidistrict litigation, DAPs are not parties to any of the class actions or
2  the pending appeal.

3      Defendants counter Plaintiffs will not be prejudiced by the delay because witness
4  testimony is preserved through two hundred videotaped depositions.  (Stay Mot. 17.)  They
5  also argue that DAPs are implicated in the stay because the summary judgment motions
6  are intertwined.  (Reply 10.)

7      This does not assist any Plaintiffs who intend to rely on certain witnesses within the
8  subpoena power of the Court and will therefore not be able to rely on the deposition
9  transcripts or videos.  (Tr. 34.)  Moreover, the effectiveness and importance of live witness
10  testimony at trial cannot be overstated.  "The very ceremony of trial and the presence of
11  the factfinder may exert a powerful force for truthtelling.  The opportunity to judge the
12  demeanor of a witness face-to-face is accorded great value in our tradition." Fed. R. Civ.
13  Proc. 43, Adv. Comm. Notes to 1996 Amendment of Rule 43(a).  Neither the tendency of
14  memory to fade, nor the inability of unavailable witnesses to attend trial can be fully
15  compensated by reliance on videotaped deposition testimony.

16      Defendants seek to pre-empt Plaintiffs' substantial harm arguments by arguing the
17  stay is necessary to preserve the rights of absent class members, who also have an interest
18  in this proceeding.  Specifically, they claim Class Plaintiffs "risk losing the possibility of
19  certifying any future classes" and "[a]bsent class members could, in turn, be effectively
20  prohibited from recovering through the class mechanism," if they obtain favorable
21  summary judgment rulings during the pendency of the appeal and the Court of Appeals
22  decertifies the classes in whole or in part.  (Stay Mot. 15.)

23      Defendants' argument is based on *Costello v. BeavEx, Inc.*, 810 F.3d 1045 (7th Cir.
24  2016), which does not support it.  There, the defendant filed a summary judgment motion,
25  and the plaintiffs later filed motions for class certification and partial summary judgment.
26  *Id.* at 1048-49.  The court issued one order denying the defense summary judgment motion,
27  denying the class certification motion, and granting the plaintiffs' partial summary
28  judgment motion.  *Id.* at 1049.  On interlocutory appeal of the denial of class certification,

the defendant argued that class certification was precluded by "the rule against one-way intervention." *Id.* at 1057. The court disagreed and held class certification was not precluded because the district court ruled on class certification before ruing on the plaintiffs' summary judgment motion. *Id.* at 1058. The denial of class certification was reversed, and the case remanded. *Id.* at 1048.

On remand, the denial of the defense summary judgment motion remained undisturbed as was the grant of the plaintiffs' partial summary judgment motion. *See Costello*, 810 F.3d at 1061; *see also id.* at 1049. The appellate court opinion did not preclude class certification or distribution of class notice, which could at that point occur only *after* summary judgment motions had been decided.

Defendants here seize on *dicta*. The Court of Appeals commented that had the district court ruled on the plaintiffs' summary judgment motion first, "the rule against one-way intervention may have precluded certification." *Costello*, 810 F.3d at 1058. This comment does not address Defendants' scenario where class certification is reversed on interlocutory appeal and summary judgment motions are decided after class certification but pending appeal. It also does not address Defendants' dire prediction for absent class members. Accordingly, Defendants' argument that stay is required to protect the absent class members is rejected.

### D. Public Interest

Public interest cautions against granting the sweeping stay Defendants request. The public has an interest in the efficient prosecution of antitrust actions and seeking to hold alleged corporate wrongdoers accountable, especially in the area of consumer products. Defendants' liability has already largely been established in criminal proceedings through Defendants' own guilty pleas for the same wrongdoing. A stay would delay compensating the victims. It would also harm competition in the consumer products market, which harms the public interest. The stay would unnecessarily delay final resolution of these proceedings without much prospect of any judicial efficiencies to be gained from waiting.
/ / /

18

### E.    Analysis

The Ninth Circuit applies a sliding scale approach "to balance the various stay factors once they are established." *Leiva-Perez*, 640 F.3d at 965.  The factors "are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Id.* at 964.  Accordingly, the moving party must show

> that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor.  As has long been the case, these standards represent the outer extremes of a continuum, with the relative hardships to the parties providing the critical element in determining at what point on the continuum a stay pending review is justified.

*Id.* at 970.  "The first two factors [likelihood of success on the merits and irreparable harm to the appellant] are the most critical." *Nken*, 556 U.S. at 434.  Once an applicant satisfies the first two factors, the traditional stay inquiry calls for assessing the harm to the opposing party and weighing the public interest." *Id.* at 435.

Defendants have not made the requisite showing that they will suffer irreparable harm.  In the absence of such showing, "a stay may not issue, regardless of the petitioner's proof regarding the other stay factors." *Leiva-Perez*, 640 F.3d at 965.  This alone is sufficient to deny their motion.

Alternatively, even had Defendants met the required minimum showing of irreparable harm ("an irreparable injury is the more probable or likely outcome," *Leiva-Perez*, 640 F.3d at 968), they also made only the minimum showing of likelihood of success on the merits ("'fair prospect' of success," *Qualcomm*, 935 F.3d at 755).  Accordingly, to prevail on their motion, they also have to show "that the balance of hardships tips sharply in [their] favor." *Leiva-Perez*, 640 F.3d at 970.  Given Defendants' weak showing on the irreparable harm factor and strong probability that the stay would cause substantial harm to Plaintiffs, Defendants have not met their burden.  Finally, the public interest counsels against a stay.

III.    **Conclusion**

Defendants' motion to stay pending Rule 23(f) appeal is denied.  This order is stayed for twenty-one (21) days from the date it is issued to allow Defendants to petition the Court of Appeals.

**IT IS SO ORDERED.**

Dated:  May 26, 2020

Hon. Janis L. Sammartino
United States District Judge

15-MD-2670 JLS (MDD)