LATHAM & WATKINS LLP
   Alfred C. Pfeiffer (CA 120965)
   Christopher S. Yates (CA 161273)
   Belinda S Lee (CA 199635)
   Niall E. Lynch (CA 157959)
   Ashley M. Bauer (CA 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: 415-391-0600
Facsimile: 415-395-8095
al.pfeiffer@lw.com
chris.yates@lw.com
belinda.lee@lw.com
niall.lynch@lw.com
ashley.bauer@lw.com

*Counsel for Defendants StarKist Co. and Dongwon Industries Co., Ltd.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>ALL ACTIONS | Case No. 3:15-md-02670-JLS-MDD<br><br>MDL No. 2670<br><br>**DECLARATION OF ANDRAS MECS IN SUPPORT OF DEFENDANTS STARKIST CO. AND DONGWON INDUSTRIES CO., LTD.'S MOTION TO SEAL** |

I, Andras Mecs, declare as follows:

1. I am currently employed as the Vice President for Marketing and Innovation at StarKist, Co. ("StarKist").

2. I was employed by Del Monte Foods, Inc. ("Del Monte") from March 1, 2004 to October 31, 2010. During my time at Del Monte, I worked on the StarKist packaged tuna business with the exception of May 2005 to February 2007; however, during this time period, I worked in the same department as colleagues who worked directly on the StarKist line. I was then hired by StarKist Co. on November 1, 2010 and have worked there ever since with responsibility for StarKist packaged tuna.

3. StarKist was a business unit of Del Monte until October 2008, when StarKist was purchased by Dongwon Industries Co., Ltd. ("DWI").

4. My roles over the last sixteen (16) years have varied, ranging from field sales to trade and consumer marketing.

5. From approximately March 2004 to April 2005, I was the Trade Marketing Manager at Del Monte responsible for StarKist products. In this role, I was on the headquarter-based Trade Marketing team that approved pricing and promotional activity for "the field," which includes our brokers, sales managers, and customers; the field is also known "the trade."

6. From approximately May 2005 to February 2007, I was a Field Customer Marketing Manager for East Area Grocery at Del Monte. In this role, my focus was on managing effective promotional pricing activity for Del Monte Fruits and Vegetables and Del Monte Pet Products for Eastern Zone Sales. My counterparts in the same department were responsible for StarKist products, and I was exposed to many of their discussions with the field.

7. From approximately March 2007 to May 2008, I was a Customer Development Manager for the SuperValu Central Region at Del Monte. In this role, I was a Regional Sales Manager responsible for the full Del Monte

portfolio—Del Monte Fruits and Vegetables, Del Monte Pet Products, and StarKist products. In this role, I directly managed sales of all Del Monte products, including StarKist, to SuperValu's Central Region customers. I authorized pricing to our customers with the approval of Trade Marketing.

8. From approximately June 2008 to October 2010, I was the Business Development Manager at Del Monte responsible for the SuperValu Eastern Region, Shaw's, and Acme Markets. I was responsible for the full Del Monte portfolio—including Del Monte Fruits and Vegetables and Del Monte Pet Products—and also for StarKist products. In this role, I directly managed sales of all Del Monte and StarKist products to SuperValu's Eastern Region customers and the Shaw's and Acme banners. I communicated pricing to our customers with the approval of Trade Marketing.

9. I was hired by StarKist Co. on November 1, 2010. From approximately November 2010 to October 2011, I was the Regional Sales Manager at StarKist responsible for the Minneapolis region. In this role, I directly managed sales for StarKist to Minneapolis regional customers including Target Corp., SuperValu, Inc., and the Nash Finch Company.

10. From approximately November 2011 to February 2016, I was the Director of Trade Marketing at StarKist. In this role, I led a team whose primary function was to manage efficient and effective promotional spending for StarKist branded tuna, which meant working with field sales representatives to most effectively utilize their trade dollars to deliver the optimal return on investment for the company. I also was involved in setting StarKist's Promotional Guidance and National Price Lists, and I acted as a liaison amongst the Finance, Marketing, and Supply Chain Departments with respect to pricing issues. And from approximately February 2014 to January 2016, I was also StarKist's Director of Military Sales.

11. From approximately November 2015 to December 2017, in addition to the responsibilities described above, I also served as StarKist's Director of

Marketing and Innovation. In this role, I led a team that was responsible for marketing, innovation, research and development, packaging, and corporate affairs.

12. I have been employed in my current role as Vice President of Marketing and Innovation at StarKist since January 2018. In this role, I serve as StarKist's Chief Marketing and Innovation Officer, and am responsible for marketing, innovation, research and development, and e-commerce sales

13. In my current role, I am also a member of StarKist's Executive Team, comprising the department heads who report directly to the CEO. I attend weekly Executive Team meetings and am generally familiar with how the company runs. As a member of the Executive Team, I also have knowledge about how StarKist prices its products.

14. My employment experience provides me with knowledge of, among other things, (1) how StarKist prices different categories of packaged tuna for sale, including both branded tuna and private label, (2) how StarKist disseminates pricing information to customers, (3) how StarKist markets its products to customers; and (4) how StarKist researches and develops new products and product lines. In addition, because I have worked in the StarKist business for over a decade, I also have knowledge of how StarKist's pricing, marketing, sales, and other strategic business practices have changed over time. The information provided below is based on my personal knowledge of StarKist's business and StarKist's pricing practices and policies, including during the time periods set forth in Plaintiffs' allegations.

15. It is my understanding that StarKist and its parent company, DWI, seek to seal a number of commercially sensitive documents that have been filed in this litigation.

16. It is also my understanding that many of those documents include information that originated or was communicated over ten years ago.

17. As a general matter, it is true that the raw and canned tuna markets have evolved since I first started working for StarKist. For instance, StarKist has developed a number of innovations (such as microwavable pouch tuna) over that time period. However, StarKist's sales, marketing, pricing, and other business development strategies have remained largely consistent during my time working on the StarKist business.

18. As one example, it is my understanding that StarKist seeks to seal Exhibit 12 to StarKist, Del Monte, and DWI's Motion for Partial Summary Judgment Dismissing All Claim for Purchases Made Prior to May 30, 2011 (ECF No. 2023). That document, which is dated January 22, 2008, includes information related to Del Monte's decision to downsize StarKist's cans from six ounces to five ounces. Included in that document are, among other things, notes regarding customer communications and sales plans. The customers listed in Exhibit 12 are customers StarKist has today. And, the sales plans discussed are consistent with strategies that StarKist continues to implement in 2020—in particular, when StarKist develops a new product or product line.

19. As another example, it is my understanding that StarKist seeks to seal Exhibit 68 to StarKist, Del Monte, and DWI's Motion for Partial Summary Judgment Dismissing All Claim for Purchases Made Prior to May 30, 2011 (ECF No. 2023). That document, which is dated April 2, 2008, includes details regarding a sales presentation to one of StarKist's largest customers, Wal-Mart. The strategies discussed, the concerns raised, and the solutions posited are reflective of StarKist's current relationship with Wal-Mart.

20. As another example, it is my understanding that StarKist and DWI seek to seal Exhibit 100 to Plaintiffs' Joint Opposition to the Parent Entities' Summary Judgment Motions (ECF No. 2139). That document, which is dated April 9, 2011, contains detailed pricing and cost information related to discounted and non-discounted StarKist products. It even contains an in-depth breakdown of

that information with respect to certain customers.  Although the prices, costs, and margins detailed in this exhibit may have themselves changed since the document was created, StarKist's cost and price structures have remained the largely the same.  Thus, this information is still relevant and strategically valuable to this day.

21.  As another example, it is my understanding that StarKist seeks to seal Exhibit 126 to Plaintiffs' Joint Opposition to the Parent Entities' Summary Judgment Motions (ECF No. 2139).  That document, which is dated February 16, 2012, includes an email from me with certain attachments.  The document contains strategic pricing details—as well as customer-specific pricing information—that is still relevant today.

22.  As a final example, it is my understanding that StarKist seeks to seal Exhibit 13 to Defendants' Motion for Partial Summary Judgment on Plaintiffs' Private Label Claims (ECF No. 2015).  That document, which is dated November 3, 2008, also contains detailed strategic choices related to StarKist's pricing, sales, and marketing.  The methods, goals, and action items discussed in Exhibit 13 are consistent with the same strategic decision-making that my department (and others at StarKist) currently utilize.

23.  While I have not personally reviewed all of the documents StarKist and DWI seek to seal, based on my experience at StarKist and my review of many documents produced in this case, I can confirm that the information reflected in internal StarKist communications from 2008-2015 is still relevant to StarKist's business today, and the public revelation of that information would be detrimental to StarKist's business.

1 | I declare under penalty of perjury under the laws of the United States of
2 | America that the foregoing is true and correct, and that this Declaration was
3 | executed on September  8 , 2020 in Pittsburgh, Pennsylvania.

By: /s/ Andras Mecs
Andras Mecs