Jonathan W. Cuneo
Joel Davidow
Blaine Finley
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Tel: 202.789.3960
jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com

*Counsel for Commercial Food Preparer Plaintiffs*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 15-MD-2670 DMS (MDD) |
| | **MEMORANDUM IN SUPPORT OF COMMERCIAL FOOD PREPARER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT WITH DEFENDANTS TRI-UNION SEAFOODS LLC D/B/A CHICKEN OF THE SEA INTERNATIONAL AND THAI UNION GROUP PCL AND PROVISIONAL CERTIFICATION OF SETTLEMENT CLASS** |
| This Document Relates To: The Commercial Food Preparer Actions | DATE:    January 28, 2022<br>TIME:    1:30 p.m.<br>JUDGE:   Hon. Dana M. Sabraw<br>COURT:   13A (13th Floor) |

## TABLE OF CONTENTS

I.   INTRODUCTION ......................................................................................1

II.  LITIGATION HISTORY AND SETTLEMENT NEGOTIATION
     BACKGROUND ......................................................................................3

III. SUMMARY OF KEY SETTLEMENT TERMS & NOTICE .......................6

     A.   The Proposed Settlement Class ...............................................6
     B.   The Settlement Consideration .................................................7
     C.   Release of Claims ...................................................................7
     D.   Notice and Claims Administration Process..............................8

IV.  ARGUMENT............................................................................................8

     A.   The Proposed Settlement Should Be Preliminarily Approved ............8

          1.   The Settlement Is the Result of Non-Collusive, Informed,
               Arm's Length Negotiations........................................................10

          2.   The Settlement Does Not Suffer from Any Obvious
               Deficiencies............................................................................12

          3.   The Settlement Does Not Provide Preferential Treatment for
               Segments of the Class or the Class Representatives.................13

          4.   Fairness of the Plan of Allocation of the Settlement Funds .....13

          5.   The Service Awards for Class Representatives Reflect the Work
               They Undertook on Behalf of the Class....................................14

          6.   The Settlement Falls Within the Range of Possible Approval .15

     B.   The Proposed Settlement Class Satisfies Rule 23 and Should Be
          Certified ............................................................................................16

          1.   Rule 23(a): Numerosity is Met ..................................................17

2.   Rule 23(a): The Case Involves Questions of Law or Fact Common to the Class ..................................................18

3.   Rule 23(a): Named Plaintiffs' Claims Are Typical of the Claims of the Class ..................................................19

4.   Rule 23(a): Plaintiffs Will Fairly and Adequately Represent the Interests of the Class ..................................................21

5.   The Requirements of Rule 23(b)(3) Are Met ...........................22

C.   The Court Should Reaffirm the Appointment of Class Counsel ........23

VI.   CONCLUSION.............................................................24

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952 (9th Cir. 2013) ...................................18

*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997)......................................16

*Bickley v. Schneider Nat'l Inc.*, No. 08-cv-05806, 2016 WL 4157355 (N. D. Cal. Apr. 25, 2016) ..............................................................................................9

*Brown v. Wal-Mart Stores, Inc.*, No. 09-cv-03339, 2012 WL 3672957 (N.D. Cal. Aug. 24, 2012)......................................................................................18

*Carr v. Tadin, Inc.*, No. 12-CV-3040 JLS JMA, 2014 WL 7497152 (S.D. Cal. Apr. 18, 2014)............................................................................... 17, 19, 21

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011)..............8

*Costelo v. Chertoff*, 258 F.R.D. 600 (C.D. Cal. 2009) ............................................20

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970 (9th Cir. 2011) ....................... 19, 21

*Evans v. Linden Research, Inc.*, No. 11-01078, 2012 WL 5877579 (N.D. Cal. Nov. 20, 2012)............................................................................................17

*Fraley v. Facebook, Inc.*, No. 11-1726, 2012 WL 5838198 (N.D. Cal. Aug. 17, 2012)................................................................................................ 9, 15

*Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183 (N.D. Cal. Nov. 23, 2015) ............................................................................................13

*Haley v. Medtronic, Inc.*, 169 F.R.D. 643 (C.D. Cal. 1996)....................................18

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................. 17, 19, 21, 23

*Hartman v. United Bank Card Inc.*, No. C 11-1753, 2012 WL 4758052 (W.D. Wash. Oct. 4, 2012)...............................................................................................17

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166 (N.D. Cal. June 5, 2006) ...............................................19

*In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015).................................................................................. 15, 18

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ............................10

*In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967, 2013 WL 5979327 (N.D. Cal. Nov. 8, 2013) .......................................................19

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) ......... 14, 15

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005).......... 18, 22

*In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..... 8, 9, 15

*In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)...........13

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 3648478 (N.D. Cal. July 7, 2016) .......................................................................................13

*Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 WL 450064 (N.D. Cal. July 18, 1997)........................................................................................................9

*Marilley v. Bonham*, No. C-11-02418, 2012 WL 851182 (N.D. Cal. Mar. 13, 2012) ......................................................................................................................17

*Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-cv-04062 (N.D. Cal. 2016)...14

*Nobles v. MBNA Corp.*, No. C 06-3723, 2009 WL 1854965 (N.D. Cal. June 29, 2009).....................................................................................................................9

*Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018 (S.D. Cal. 2017)................................................................................................. 18, 19, 21

*Officers for Justice v. San Fran. Civ. Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) 9

*Pulaski & Middleman, LLC v. Google, Inc.*, No. 12-16752, 802 F.3d 979 (9th Cir. 2015)..................................................................................................22

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ...............................9

*Slaven v. BP America, Inc.*, 190 F.R.D. 649 (C.D. Cal. 2000)................................18

*Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2015 WL 4498571 (N.D. Cal. July 23, 2015)..........................................................................................8, 9

*Staton v. Boeing Co.*, 327 F. 3D 938 (9th Cir. 2003) ................................................8

*Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356 (N.D. Cal. 2010) ............................19

*White v. NCAA*, No. CV-0999, 2006 WL 8066803 (C.D. Cal. Oct. 19, 2006) .......20

*Yokoyama v. Midland National Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010) ........22

*Zepeda v. PayPal, Inc.*, No. C 10-2500, 2015 WL 6746913 (N.D. Cal. Nov. 5, 2015)......................................................................................... 9, 13, 15

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632 (2004).......................................8

Northern District of California Procedural Guidance for Class Action Settlements.6

**Rules**

Fed. R. Civ. P. 23 ........................................................... 15, 16, 18, 19, 23

## I.     INTRODUCTION

Commercial Food Preparer Plaintiffs ("Plaintiffs"), who represent a putative class of indirect purchasers of Foodservice-Size Packaged Tuna Products ("Packaged Tuna"), seek preliminary approval under Rule 23 of the Federal Rules of Civil Procedure of a Settlement Agreement (attached hereto as **Exhibit A**). CFPs' previous motion for preliminary approval was denied by the Court. *See* Order Denying Without Prejudice Commercial Food Preparers' Motions For (1) Preliminary Approval of Class Action Settlement; And (2) Approval of Class Action Notice Plan (the "Order") (Dkt 2263).   Pursuant to the agreement, Defendants Tri-Union Seafoods LLC d/b/a Chicken of the Sea International and Thai Union Group PCL (together, "COSI") will collectively pay USD $6,500,000 in three installments, which (after deduction of fees and expenses) will be disbursed to purchasers of Packaged Tuna from Sysco, US Foods, Costco, Wal-Mart, Sam's Club, and/or DOT Foods in the Indirect Purchaser States (defined below in the proposed class definition and footnote 1).

## **Request for a Hearing**

The proposed settlement requires certification by this Court of the proposed settlement class.  The court has previously approved this class, and COSI has not appealed this ruling.  Plaintiffs request a hearing on the motion for preliminary approval.  In addition to financial consideration, the settlement requires that Defendants, for a period of 24 months from the date of the final judicial approval of the settlement, will continue not to engage in conduct that constitutes a *per se* violation of various state unfair competition, antitrust, unjust enrichment, and consumer protection laws (whether characterized as price fixing, or otherwise) set forth in Commercial Food Preparer Plaintiffs' Fourth Amended Complaint (No. 3:15-cv-02670, Doc. No. 1470) with respect to Foodservice-Size Packaged Tuna Products.

1

This settlement will provide substantial relief to Plaintiffs and the proposed class. CFP expert Dr. Michael A. Williams, Ph.D., estimated a total damage amount of approximately $20.5 million, and the $6,500,000 value of the all-cash settlement represents nearly one third of the total damages. The CFP settlement is proportional to the settlements reached by other classes operating completely independent from the CFPs, further demonstrating the reasonableness of the settlement.

The settlement is the result of extensive litigation and arm's length negotiations between the parties. **Exhibit B**, Declaration of Jonathan W. Cuneo ("Cuneo Decl.") at ¶ 3, 4. Plaintiffs' counsel have investigated the facts and laws at stake in the case and concluded that resolving the claims against these Defendants, according to the terms set forth below, is fair, adequate, reasonable, and in the best interests of Plaintiffs and the proposed class. Cuneo Decl. at ¶ 3. Plaintiffs' counsel, who have litigated numerous antitrust and other class action matters, recommend this settlement to the Court. Defendants have presented a variety of challenges to the indirect purchasers' claims beyond the core liability questions. This case has been through multiple rounds of motions to dismiss, and both Plaintiffs and Defendants have devoted significant resources to vigorously litigating preliminary issues, including class certification. Notably, COSI's damages are limited because of its status as the leniency applicant at the DOJ. And, while the CFPs have a very strong case, issues such as class certification and damages would be highly contested. Finally, COSI's settlement represents a first settlement for the CFPs. The monetary and injunctive relief components of the settlement are major benefits to the class and the public, and the likelihood of near-term payout is significant.

Plaintiffs respectfully request an order: (1) preliminarily approving the proposed class action settlement with COSI; (2) provisionally approving the proposed Settlement Class; (3) staying the proceedings against COSI in accordance with the terms of the Settlement Agreement; (4) authorizing Commercial Food

Preparer Plaintiffs to provide notice of the Settlement Agreement to members of the Settlement Class as provided by the attached **Exhibit C**, Declaration of Jeanne C. Finegan, APR Concerning Class Member Notification And Claims Administration ("Finegan Decl."); and (5) appointing Cuneo Gilbert & LaDuca, LLP as Settlement Class Counsel for purposes of this settlement.

## II. LITIGATION HISTORY AND SETTLEMENT NEGOTIATION BACKGROUND

Plaintiffs filed this action on September 11, 2015. Plaintiffs' counsel, Cuneo Gilbert & LaDuca, LLP, was appointed Interim Lead Counsel on March 24, 2016. Plaintiffs' counsel have engaged in extensive discovery, with regard to both liability and class certification issues. Defendants have produced hundreds of thousands of pages of discovery to Plaintiffs, and scores of depositions have taken place. Class certification motion practice along with expert reports and other related materials totaling more than 1,000 pages have been filed with the Court to date. On July 30, 2019, the Court granted class certification. *See* Order Granting Motions for Class Certification ("Class Certification Order") (Dkt. 1931). Defendants' petition to appeal the Class Certification Order was granted by the Ninth Circuit on December 20, 2019. (Dkt. 2247). On April 6, 2021, the Ninth Circuit Court of Appeals issued an opinion vacating the Court's order certifying the classes and remanding with instruction to determine the number of uninjured parties in the proposed class. Subsequently, *en banc* rehearing has been granted, fully briefed, and argued.

Plaintiffs previously moved for preliminary approval of a settlement with the COSI Defendants, which the Court denied. Subsequently, Plaintiffs met with counsel for COSI and agreed to resettle this matter with COSI for consideration of $6,500,000. Cuneo Decl. at ¶ 4. In resettling this case with COSI, Plaintiffs have attempted to address all points raised by the Order. A summary of changes and clarifications is as follows:

**<u>Arm's Length Negotiation</u>**

The Court noted that the previous declaration was "not accompanied by any declaration in support of its factual assertions, including the assertion that the settlement was negotiated at arm's length." Order at 2. The instant motion, which is accompanied by a declaration that addresses the parties' negotiations, is responsive to this point. Cuneo Decl. at ¶ 3. In reaching the settlement, the parties have engaged in extensive negotiations, which have occurred both in person and through telephonic sessions. The negotiations have been at arm's length at all times.  Cuneo Decl. at ¶ 3, 4.

**<u>Attorneys' Fees and Expenses</u>**

The Court reasoned that the previous settlement "provides for payment of $6.5 million from COSI to be distributed as follows: (1) $3 million for attorneys' fees; (2) $2 million for costs and expenses; and (3) the remainder to the CFP class." Order at 2. CFPs have clarified that the proposed settlement does not call for CFPs' legal team to receive $3 million in fees plus $2 million in expenses.  Cuneo Decl. at ¶ 2. Instead, as was our group's intent under its original proposal, the $2 million in expenses is not in addition to the $3 million cap, which is a $3 million cap for the sum of fees, expenses, notice and settlement and claims administration costs, and named plaintiff incentive awards (together, the "Fee Award"). *Id.*

**<u>Affirmation of Absence of Side Agreements</u>**

The Court noted that "[s]o far, CFPs have not disclosed any side agreement, nor have they provided a counsel's declaration stating that no such agreements exist." Order at 5. CFPs have clarified that no side agreement exist. Cuneo Decl. at ¶ 5.

**<u>Settlement Size MFN Provision Eliminated</u>**

The Court described as an unreasonable provision of the previously-proposed settlement that "except under certain conditions, [it] precludes CFPs

from settling with other Defendants for a lesser sum." Order at 3 (internal footnote and citation omitted). This clause has been removed from the settlement agreement now proposed to the Court. Cuneo Decl. at ¶ 8.

**<u>Injunctive Relief</u>**

The Court noted that "CFPs have not shown that this provision adds anything to COSI's obligation to comply with the law in the absence of the settlement." Order at 4. CFPs have clarified the potential usefulness of this provision, including by noting that it would potentially be enforceable via an action supported by attorneys' fee and cost shifting. Cuneo Decl. at ¶ 7.

**<u>Future Claims</u>**

The Court noted that under the previously-proposed settlement agreement, "the class members would release claims that 'may exist in the future.'" Order at 4. This provision is not present in the currently-proposed settlement agreement.

**<u>Claim Administration Plan</u>**

The Court noted that "[n]either the settlement nor the underlying motion describes a claim administration plan, although this information is relevant to the settlement fairness determination." Order at 4. Accordingly, CFPs describe a proposed notice plan and claim administration plan, noting that the settlement funds will be distributed on a *pro rata* basis. Finegan Decl. at ¶¶ 57-63.

**<u>Escrow Account Holdings</u>**

The Court noted that it was not inclined to approve the previously proposed settlement "in the absence of an explanation why the settlement fund should be subject to the risk and expense of investment management." Order at 5. The settlement funds that have been transferred currently reside in a business premium money market account and ICS sweep account, both of

which are prudent and conservative investments that bear minimal fees and are insured from loss by the FDIC. Cuneo Decl. at ¶ 6.

Plaintiffs subsequently moved again for preliminary approval, and the Court denied the motion without prejudice (Dkt. 2651), requesting specific clarifications that are made in the attached papers. In response to the Court's order, additional detail is provided about how the proposed claims administration process will unfold. Finegan Decl. at ¶¶ 57-63. In addition, proposed expense reimbursement and attorneys' fee figures are now set forth in the long form notice in more granular detail. *See* Finegan Decl., Long Form Notice at ¶ 13.

## III.    SUMMARY OF KEY SETTLEMENT TERMS & NOTICE

### A.    The Proposed Settlement Class

The proposed class is defined as follows:

All persons and entities in 27 named states[1] and D.C., that indirectly purchased packaged tuna products produced in packages of 40 ounces or more that were manufactured by any Defendant (or any current or former subsidiary or any affiliate thereof) and that were purchased directly from DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco (other than inter-company purchases among these distributors) from June 2011 through December 2016 (the "Class Period").

Ex. A, Settlement Agreement at ¶ 14. Although not binding in this District, the Northern District of California Procedural Guidance for Class Action Settlements is informative. Here, the proposed Settlement Class is identical to the proposed class found in the operative complaint.

---

[1] Arizona, Arkansas, California, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

### B.    The Settlement Consideration

The Settlement Agreement provides for Defendants to pay $6,500,000 and includes an injunction requiring Defendants, for a period of 24 months from the date of the final judicial approval of the settlement, to continue not to engage in conduct that constitutes a *per se* violation of various state unfair competition, antitrust, unjust enrichment, and consumer protection laws (whether characterized as price fixing, or otherwise) set forth in Commercial Food Preparer Plaintiffs' Fourth Amended Complaint (No. 3:15-cv-02670, Doc. No. 1470) with respect to Foodservice-Size Packaged Tuna Products.  The COSI Defendants have already paid $2,000,000 (two million U.S. dollars) of the Settlement Amount into an escrow account. Within 30 days after preliminary approval by the Court of the settlement, COSI Defendants will deposit $2,500,000 (two million five hundred thousand U.S. dollars) into the escrow account. In addition, within 30 days after final approval of the settlement, COSI Defendants will deposit U.S. $2,000,000 (two million U.S. dollars) into the escrow account.

### C.    Release of Claims

Once the Settlement Agreement is final and effective, the class representatives and settlement class members who have not opted out will release COSI, and their current and former subsidiaries, affiliates, parents, employees, directors, officers, board members and agents from claims Plaintiffs have asserted or may have asserted related to the sale or manufacture of Foodservice-Size Packaged Tuna Products.  The released claims do not include (1) any claims made by direct purchasers of Foodservice-Size Packaged Tuna Products; (2) any claims made by end payors that are indirect purchasers of Foodservice-Size Packaged Tuna Products; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, false advertising or fraud other than as alleged in the CFP Complaint, bailment, failure

to deliver lost goods, damaged or delayed goods, product defect, securities, or similar claim relating to Foodservice-Size Packaged Tuna Products; (5) claims concerning any packaged seafood product other than Foodservice-Size Packaged Tuna Products; (6) claims under laws other than those of the United States relating to purchases of Foodservice-Size Packaged Tuna Products made by any Releasor, as defined in the Settlement Agreement, outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than the D.C. and/or the relevant in 27 named states.  Ex. A, Settlement Agreement at ¶ 25, 26.

### D.    Notice and Claims Administration Process

As set forth in the supporting Finegan Declaration—notice of the settlement will be provided directly via mail to the known CFP class members.  Finegan Decl. at ¶¶ 18-25. There will also be supplemental publication and Internet notice. Finegan Decl. at ¶¶ 26-39.  Under the CFPs' registration and claim process plan, CFP settlement class members will be able to make claims for their *pro rata* share of the Settlement Amount.  Finegan Decl. at ¶¶ 57-63.  The proceeds of the Settlement will be distributed at a reasonable time in the future after consideration of the costs associated with such a distribution and the amounts of other settlements, if any, available to distribute.  Finegan Decl. at ¶¶ 61-63.

## IV.    ARGUMENT

### A.    The Proposed Settlement Should Be Preliminarily Approved

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims.  Approval of a settlement requires multiple steps, beginning with (i) preliminary approval, which then allows (ii) notice to be given to the class and objections to be filed, after which there is (iii) a

motion for final approval and fairness hearing.[2]  Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether it falls within the "range of possible approval."[3] Preliminary approval establishes an "initial presumption" of fairness[4] such that notice may be given to the class.  The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."[5]

Preliminary approval of a settlement is appropriate if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls with the range of possible approval.[6]  When proposed counsel are experienced and support the settlement, which was the result of arm's length negotiations, the "presumption [is] that the agreement is fair."[7] All factors weigh in favor of preliminary approval here.

--------

[2] *Staton v. Boeing Co.*, 327 F. 3D 938, 952 (9th Cir. 2003); *see* Manual for Complex Litigation (Fourth) § 21.632, 320-21 (2004).

[3] *Id.*; *see Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301-302 (E.D. Cal. 2011).

[4] *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted). *See also Smith v. Am. Greetings Corp.*, No. 14-cv-02577, 2015 WL 4498571, at *6 (N.D. Cal. July 23, 2015) (same).

[5] *Officers for Justice v. San Fran. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982).

[6] *Bickley v. Schneider Nat'l Inc.*, No. 08-cv-05806, 2016 WL 4157355, at *1 (N.D. Cal. Apr. 25, 2016); *Zepeda v. PayPal, Inc.*, No. C 10-2500, 2015 WL 6746913, at *4 (N.D. Cal. Nov. 5, 2015); *Fraley v. Facebook, Inc.*, No. 11-1726, 2012 WL 5838198, at *1 n.1 (N.D. Cal. Aug. 17, 2012); *Tableware,* 484 F. Supp. 2d at 1079.

[7] *Am. Greetings Corp.*, 2015 WL 4498571, at *6 (also stating "[t]he proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class."); *Nobles v. MBNA Corp.*, No. C 06-

### 1.   The Settlement Is the Result of Non-Collusive, Informed, Arm's Length Negotiations

The Ninth Circuit has stated, "We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution."[8]  The proposed Settlement Agreement arises out of extended, informed, arm's length negotiations between experienced counsel for the parties.  Cuneo Decl. ¶¶ 3,4.  The parties reached agreement after years of litigation.  Plaintiffs' "significant investigation, discovery[,] and research" weigh in favor of finding that the settlement was adequately informed.[9]  Counsel for both sides are experienced and nationally recognized for competently handling large-scale, complex antitrust class action litigation.

The Settlement brings substantial value to the class.  The cash component of the Settlement, alone, represents nearly one-third of the maximum damages Dr. Williams, the class plaintiffs' testifying economist calculated to be COSI Defendants' exposure for its own, class-wide damages of $20.5 million from COSI. Chicken of the Sea International has been accepted into the Department of Justice's Antitrust Division's corporate leniency program,[10] which means that it is liable only

_____

3723, 2009 WL 1854965, at *6 (N.D. Cal. June 29, 2009); *Linney v. Cellular Alaska P'ship*, No. C-96-3008, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997).

[8] *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

[9] *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery and research" supported the district court's conclusion "that the Plaintiffs had sufficient information to make an informed decision about the Settlement").

[10] Because of their cooperation with the federal government in the companion criminal antitrust prosecution pending before Judge Edward M. Chen in the Northern District of California, defendant Chicken of the Sea International is subject to the provisions of the Antitrust Criminal Penalty Enhancement and Reform Act of 2004 ("ACPERA"), Pub. L. 108-237, § 201 et seq., 118 Stat. 661, 665 (2004), as amended.

for single damages based on its own sales: the other defendants are jointly and severally liable and face treble damages.

Although the CFP's case is very strong, the CFPs recognize the potential risks. COSI would likely have contested the extent of damages, for example, with expert reports that would have required time and expense to respond to. In addition, the CFPs recognize there is always a risk around class certification. The case originally settled prior to the Court's ruling granting class certification, but the very fact that litigation on this point continues underscores the risk and the value of certainty to the CFPs.

The substance of the Settlement Agreement underscores that it is not the result of any collusion or conflict. There are three factors courts look for when evaluating whether collusion exists: (1) a disproportionate distribution of the settlement fund to counsel; (2) the presence of an agreement providing for the payment of attorneys' fees separate and apart from class funds; and (3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.[11] None of these is present here.

Plaintiffs' counsel may seek fees, expenses, notice and settlement and claims administration costs, and named plaintiff incentive awards totaling not more than $3,000,000 (the "Fee Award"), which is less than half of the settlement amount. Cuneo Decl. at ¶ 2. This will leave $3.5 million to be distributed immediately to the class. Currently, Plaintiffs' counsel's lodestar exceeds $10 million, and expenses are over $2 million. *Id.* As under Plaintiffs' original proposal, the $2 million in expenses is not in addition to the $3 million cap for the sum of fees,

---

Section 213(a) of the act allows a DOJ leniency applicant to limit its civil damage exposure to single damages from its own sales, avoiding joint and several liability and treble damages.

[11] *Id.* at 947.

11

expenses, and incentive awards. *Id.* The same goes for the named plaintiff incentive awards—those will also be a component of the total $3 million fees, expenses, and incentive awards Fee Award. *Id.* In addition to the $2 million in estimated expenses and the named plaintiff incentive awards, the notice costs and any settlement and claims administration costs will also be a component of the $3 million Fee Award. *Id.* It is likely that Plaintiffs will ask the Court to set aside any relatively small remaining balance of the $3 million Fee Award for use in paying future expenses in this litigation. *Id.*

Any fee petition must be reviewed and approved by this Court, and the proposed class notices will inform class members that class counsel plans to make a reasonable request for attorneys' fees, expense reimbursements and incentive awards from the gross settlement fund. Second, there is no provision allowing for payment of fees separate and apart from the class funds. The proposed settlement is a common fund settlement, and there is no "kicker" provision that would allow unawarded fees to revert to the Defendants. The Settlement Agreement is therefore entitled to a presumption of fairness.

### 2. The Settlement Does Not Suffer from Any Obvious Deficiencies

The Settlement Agreement is the product of a thorough assessment and evaluation of the strengths and weaknesses of Plaintiffs' case. The parties have litigated important threshold issues in this case for several years. Defendants have produced hundreds of thousands of pages of discovery to Plaintiffs. Dozens of depositions have proceeded. Plaintiffs have engaged expert witnesses, and fully briefed and argued a motion for class certification. Motions for summary judgment are pending before the Court.

The Settlement Agreement reflects risks that Plaintiffs must consider in continuing to litigate, including defending procedural and substantive pre-trial motions and the inherent risks of a jury trial should the case proceed that far.

Weighing the stage of litigation against the risks that Plaintiffs face in this litigation, there are no obvious deficiencies regarding the settlement.  This factor also supports preliminary approval.

### 3.    The Settlement Does Not Provide Preferential Treatment for Segments of the Class or the Class Representatives

The third factor to consider is whether the Settlement Agreement grants preferential treatment to class representatives or segments of the class.[12]  The Settlement Agreement here does not.  All class members who make claims will receive the same reimbursement rate per unit of Packaged Tuna.

### 4.    Fairness of the Plan of Allocation of the Settlement Funds

A plan of distribution of class settlement funds must meet the "fair, reasonable and adequate" standard that applies to approval of class settlements.[13] A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable.[14]  CFPs propose that allocation of the settlement funds will be on a *pro rata* basis, based on the type and extent of injury suffered by each class member in those states which permit indirect purchaser antitrust claims. Finegan Decl. ¶¶ 57-63.  More precisely, the settlement funds will

---

[12] *Zepeda*, 2015 WL 6746913, at *4.

[13] *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 3648478, at *11 (N.D. Cal. July 7, 2016) (on appeal on other grounds) (citing *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001)); *In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) (stating same).

[14] *Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries.") (Internal citation omitted.)

be allocated proportionately to the dollar volume of qualifying purchases made by class members: 1) whose purchase history information is contained in transactional data produced by certain intermediaries or 2) submit valid claim forms attesting to their qualifying purchases. *Id.* There will be no reversion of unclaimed funds to Defendants.

### 5.     The Service Awards for Class Representatives Reflect the Work They Undertook on Behalf of the Class

The Settlement Agreement permits the Settlement Class counsel to submit an application to the District Court for "incentive awards, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the "Fee and Expense Award")." Ex. A, Settlement Agreement at ¶ 37.  The Settlement Agreement further provides that Settlement Class Counsel "reserve the right to make additional applications for Court approval of fees and expenses incurred or likely to be incurred and reasonable incentive awards," which may be paid out of the Settlement Fund. *Id.*  The incentive awards for the class representatives contemplated by the Settlement Agreement reflect the work they undertook on behalf of the Class. Class representatives have had an opportunity to review the complaints, communicated with counsel, reviewed their records, engaged in discovery, and sat for depositions.  Plaintiffs will propose that each settlement class representative receive an incentive award in the amount of $5,000.

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"[15] Based on the contributions and commitments by the settlement class representatives, the Settlement Agreement contemplates an award to each

---

[15] *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015).

settlement class representative.  There is no bright line minimum or maximum for service awards, and courts have awarded service awards in the amount sought here. For example, the court in *Nitsch v. Dreamworks Animation SKG Inc.*, granted preliminary approval of class settlement agreements that provided $10,000 for the class representatives.[16]

### 6.     The Settlement Falls Within the Range of Possible Approval

To grant preliminary approval, this Court must decide that the Settlement Agreement falls within the approved range for preliminary approval.[17]   To determine whether a settlement "falls within the range of possible approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]"[18] The amount of recovery for the class certainly falls within a reasonable range given that the class faces the possibility of no recovery if class certification is overturned.   The settlement properly accounts for these risks and is inherently equitable and adequate and thus in the approved range for preliminary approval.

------

[16] No. 14-cv-04062 (N.D. Cal.), ECF Nos. 338 (motion for preliminary approval of settlement proposing $10,000 service award), 353 (granting motion for preliminary approval). *See also In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (recognizing $20,000 service awards in partial settlement agreements with other defendants and awarding additional service awards in the range of $80,000 to $120,000); *Online DVD-Rental Antitrust Litigation*, 779 F.3d at 943 (affirming approval of "incentive awards of $5,000 each for nine class representatives" as "well within the usual norms of modest compensation paid to class representatives.").

[17] *Zepeda*, 2015 WL 6746913, at *4; *Fraley*, 2012 WL 5838198, at *1 n.1; *Tableware*, 484 F. Supp. 2d at 1079.

[18] *Tableware*, 484 F. Supp. 2d at 1080.

## B.    The Proposed Settlement Class Satisfies Rule 23 and Should Be Certified

Rule 23(a) sets forth four prerequisites for class certification:

> (1) that "the class is so numerous that joinder of all parties is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."[19]

The proposed settlement class seeks monetary damages, so Rule 23(b)(3) must also be met.  Rule 23(b)(3) requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) the class action must be "superior to other available methods for fairly and efficiently adjudicating the controversy."[20]  Unlike in a contested class certification process, a proposed settlement class does not require a showing that a trial on class claims would be manageable because there will be no trial with the defendant that needs to be managed.[21]  Similar considerations apply to the analysis of whether common issues predominate over individual ones under Federal Rule 23(b)(3). For the purposes of Rule 23, Plaintiffs adopt all argument made in their motion for class certification briefing.

This proposed settlement class meets all Rule 23(a) and (b)(3) requirements for certification in this context.  Indeed, the Court previously certified the CFP class in a thorough and careful order.  COSI has not appealed this order.  See ECF No. 1931.  The Court need only determine whether it will likely be able to approve the settlement proposal at final approval. See Fed. R. Civ. P. 23(e)(1) advisory

---

[19] Fed. R. Civ. P. 23(a).

[20] Fed. R. Civ. P. 23(b)(3).

[21] *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

committee's note (2018) ("The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object.").

### 1.    Rule 23(a): Numerosity is Met

The first requirement for maintaining a class action is that its members are so numerous that joinder would be "impracticable."[22]   Numerosity depends on the facts and circumstances of each case and does not require any specific minimum number of class members.[23]   Courts generally find numerosity when a class includes at least forty members,[24] and geographic disparity favors a finding of numerosity.[25]   Class size does not have to be "exactly determined" at the certification stage; "a class action may proceed upon estimates as to the size of the proposed class."[26]

---

[22] Fed. R. Civ. P. 23(a)(1); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).

[23] *Marilley v. Bonham*, No. C-11-02418, 2012 WL 851182, at *3 (N.D. Cal. Mar. 13, 2012) (citing *Arnold v. United Artists Theatre Circuit, Inc.*, 158 F.R.D 439, 448 (N.D. Cal. 1994)).

[24] *Carr v. Tadin, Inc.*, No. 12-CV-3040 JLS JMA, 2014 WL 7497152, at *2 (S.D. Cal. Apr. 18, 2014), *amended in part,* No. 12-CV-3040 JLS JMA, 2014 WL 7499453 (S.D. Cal. May 2, 2014) (quoting *Celano v. Marriott Int'l, Inc.,* 242 F.R.D. 544, 549 (N.D.Cal.2007)); *Bonham*, 2012 WL 851182, at * 3 (citing *Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal 2008)).

[25] *Evans v. Linden Research, Inc.*, No. 11-01078, 2012 WL 5877579 at *10 (N.D. Cal. Nov. 20, 2012) (citing *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 648 (C.D. Cal. 1996)).

[26] *Hartman v. United Bank Card Inc.*, No. C 11-1753, 2012 WL 4758052, at *10 (W.D. Wash. Oct. 4, 2012).

The proposed class consists of at least tens of thousands of class members located across the country.  Courts have found the numerosity requirement met on much less.[27]  Numerosity is therefore established, as the Court found in its class certification decision.

## 2. Rule 23(a): The Case Involves Questions of Law or Fact Common to the Class

The second Rule 23(a) requirement is the existence of common questions of law or fact.[28]  A *single* issue has been held sufficient to satisfy the commonality requirement.[29]  In other words, commonality requires that class members' claims depend on a common contention that would be "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[30]

------

[27] *Nunez v. BAE Sys. San Diego Ship Repair Inc.*, 292 F. Supp. 3d 1018, 1032 (S.D. Cal. 2017) (finding numerosity met with purported class of 1,968 individuals)*; In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350 (N.D. Cal. 2005) (finding numerosity met with purported class of 1,000). *See also In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) (There is no bright-line minimum requirement for numerosity and recognizing that the class of approximately 60,000 is enough that "joinder of all members of this proposed class [would be] impracticable."); *In re Citric Acid Antitrust Litig.*, No. 95-1092, 1996 WL 655791, at *3 (N.D. Cal. Oct. 2, 1996) (citing *Welling v. Alexy*, 155 F.R.D. 654, 656 (N.D. Cal. 1994)), which awarded certification of a class less than 300).

[28] Fed. R. Civ. P. 23(a)(2).

[29] *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 957 (9th Cir. 2013); *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley*, 169 F.R.D. at 647.

[30] *Brown v. Wal-Mart Stores, Inc.*, No. 09-cv-03339, 2012 WL 3672957, at *4 (N.D. Cal. Aug. 24, 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)).

The issues of law and fact that are common to the class include: (1) whether the defendants fixed prices; (2) whether their conduct violated the law; and (3) whether their conduct inflated prices above competitive levels in general.

Nearly identical questions have been found to satisfy the commonality requirement in other antitrust class actions.[31]  The commonality requirement is similarly met here, as the Court previously held.

### 3.    Rule 23(a): Named Plaintiffs' Claims Are Typical of the Claims of the Class

The third requirement is that the "claims . . . of the representative parties are typical of the claims . . . of the class."[32]  "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'"[33]  "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought."[34]  Like commonality, typicality is to be construed permissively: "[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class

---

[31] *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, No. C 09-1967, 2013 WL 5979327, at *4 (N.D. Cal. Nov. 8, 2013) (class certification decision in case later titled *O'Bannon v. NCAA*). *See also In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. M 02-1486 PJH, 2006 WL 1530166, at *3 (N.D. Cal. June 5, 2006) ("the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.").

[32] Fed. R. Civ. P. 23(a)(3).

[33] *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *Nunez*, 292 F. Supp. 3d at 1032 (quoting same).

[34] *Id.*

members; they need not be substantially identical."[35]  The "focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff."[36]   This requirement is "to assure that the interest of the named representative align with the interests of the class."[37]

Typicality is often easily satisfied in antitrust cases like this one, where the named plaintiffs and class members allege the same antitrust violation.[38]  In this case, the claims of the representative plaintiffs are typical of the claims of the class members because they all allege the same antitrust and conspiracy violation, and the same nature of injuries.  The central question for all class members is whether Defendants conspired to fix the price of Packaged Tuna and whether Defendants' alleged conspiracy artificially inflated the prices paid by Plaintiffs and class members for Packaged Tuna containing Packaged Tuna to levels higher than what would have been paid in a competitive marketplace.

Plaintiffs' state law claims are typical of the claims of the Class and arise from the same anticompetitive conspiracy and unlawful conduct engaged in by Defendants and co-conspirators as alleged in the Fourth Amended Class Action Complaint.  The relief sought by the Plaintiffs is common to the Class.  The Court found the same in its ruling.

---

[35] *Hanlon*, 150 F.3d at 1020. *See also Carr*, 2014 WL 7497152, at *2 (stating same); *Sullivan v. Kelly Servs., Inc.*, 268 F.R.D. 356, 363 (N.D. Cal. 2010) (stating same).

[36] *Costelo v. Chertoff*, 258 F.R.D. 600, 608 (C.D. Cal. 2009) (quoting *Simpson v. Fireman's Fund Ins. Co.*, 231 F.R.D. 391, 396 (N.D. Cal. 2005))

[37] *Dataprods. Corp.*, 976 F.2d at 508.

[38] *White v. NCAA*, No. CV-0999, 2006 WL 8066803, at *2 (C.D. Cal. Oct. 19, 2006) (citing *In re Rubber Chem. Antitrust Litig.*, 232 F.R.D. 346, 351 (N.D. Cal. 2005)).

### 4.    Rule 23(a): Plaintiffs Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that the representative plaintiffs will fairly and adequately represent the interests of the class.  The relevant inquiries are: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"[39]  The first inquiry requires only that a class representative not have interests antagonistic to or in conflict with the interests of the class.[40]  As described above, the interests of the named plaintiffs and class members are aligned because they all are pursuing the claim that they suffered similar injury in the form of artificially inflated prices of Packaged Tuna due to the alleged conspiracy, and all class members seek the same relief.

As to the second inquiry, Plaintiffs and their counsel have demonstrated that they will prosecute this action vigorously and will continue to do so. Each class representative has been apprised of and provided with the Settlement Agreement. Additionally, class counsel is well qualified, possesses no conflicts of interest, and have already proven capable of prosecuting this action vigorously on behalf of the class. Plaintiffs' counsel has litigated this action since its inception over three years ago. As discussed more fully below, Cuneo Gilbert & LaDuca, LLP has extensive experience in handling complex commercial litigation, including antitrust class actions.  Adequacy is met.

---

[39] *Nunez*, 292 F. Supp. 3d at 1033 (quoting *Hanlon*, 150 F.3d at 1020); *Carr*, 2014 WL 7497152, at *3 (quoting the same); *Ellis*, 657 F.3d at 985 (quoting the same).
[40] *Hanlon*, 150 F.3d at 1020.

### 5.    The Requirements of Rule 23(b)(3) Are Met

Plaintiffs seek to certify the Settlement Class under Rule 23(b)(3), which requires predominance and superiority.  Both are met for the settlement class in this case.

### a.    Common Questions of Fact or Law Predominate

As noted above, core questions that are common to all plaintiffs and members of the class are whether the alleged conspiracy existed and whether price-fixing occurred.  Courts have found those questions alone to be sufficient to satisfy the predominance prong.[41]

Plaintiffs also contend that they will be able to establish "a reasonable method for determining, on a class-wide basis, the alleged antitrust activity's impact on class members."[42] And they allege that Defendants have acted in ways that cause similar injury to the Class as a whole, making final injunctive relief appropriate with respect to the Class.

The Ninth Circuit has opined that individualized questions of damages need not defeat predominance in a class action.  In *Pulaski & Middleman, LLC v. Google, Inc.*,[43] the court held that individualized damage calculations will not defeat class certification in cases brought under the California Unfair Competition Law and False Advertising Law, affirming its decision in *Yokoyama v. Midland National Life*

---

[41] *See, e.g., In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. at 352 ("[T]he great weight of authority suggests that the dominant issues in cases like this are whether the charged conspiracy existed and whether price-fixing occurred.").

[42] *CRT*, 308 F.R.D. at 625.

[43] No. 12-16752, 802 F.3d 979, 987-88 (9th Cir. 2015).

22

*Ins. Co.*[44]  The Ninth Circuit specifically stated that "*Yokoyama* remains the law of this court, even after *Comcast*."[45]

The Court previously held that the predominance requirement has been met.

### b.     The Class Action Mechanism Is Superior to Any Other Method of Adjudication

The "superiority" element is satisfied because, through class certification, the nature of the alleged price-fixing conspiracy can be determined in one proceeding. "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis."[46]

The alternative – tens of thousands of individual claims – "would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs[,]" thereby demonstrating the superiority of a class action.[47]  An individual case would be risky and challenging.  Individual indirect purchasers would be forced to bring separate lawsuits.

The proposed settlement class meets the requirements of Rule 23(a) and 23(b)(3), and the Court should grant provisional certification for purposes of effecting the proposed Settlement Agreement.

### C.     The Court Should Reaffirm the Appointment of Class Counsel

At the outset of this case, Judge Sammartino appointed Cuneo Gilbert & LaDuca, LLP as Interim Lead Counsel on behalf of the Commercial Food Preparer

---

[44] 594 F.3d 1087, 1094 (9th Cir. 2010).

[45] *Pulaski & Middleman*, 807 F.3d at 988.

[46] *Hanlon*, 150 F.3d at 1022.

[47] *Id.* at 1023.

Plaintiffs and the putative class.[48]  Cuneo Gilbert & LaDuca, LLP now requests that the firm's appointment be reaffirmed.

Under Rule 23, the appointment of class counsel, to "fairly and adequately represent the interests of the class" is required.[49]  In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class.[50]  As set forth in Plaintiffs' Motion to Appoint Interim Lead Counsel and as demonstrated in its firm resume, Cuneo Gilbert & LaDuca, LLP easily satisfies these requirements.  [Dkt. 69-1 (Memo. of Law in Support); Dkt. 69-2 (Firm Resume)].

## VI.   CONCLUSION

Plaintiffs respectfully request that this Court preliminarily approve the proposed Settlement Agreement, certify the proposed settlement class, and appoint Cuneo Gilbert & LaDuca, LLP, as Settlement Class Counsel.

Dated: December 1, 2021

*s/ Jonathan W. Cuneo*

Jonathan W. Cuneo
Joel Davidow
Blaine Finley
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Telephone: 202.789.3960
Facsimile: 202.589.1813
jonc@cuneolaw.com

---

[48] Dkt. No. 119.

[49] Fed. R. Civ. P. 23(g)(1)(A), (B).

[50] Fed. R. Civ. P. 23(g)(1)(A).

joel@cuneolaw.com
bfinley@cuneolaw.com

*Counsel for Commercial Food Preparer Plaintiffs*