BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile:   619/234-4599

*Class Counsel for the End Payer Plaintiffs*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No.:  15-MD-2670 DMS (MDD) |
| | **UNREDACTED VERSION [ECF 1993-1] END PAYER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| This Document Relates to: | |
| Indirect Purchaser End Payer Actions | |
| | DATE:        TBD |
| | TIME:        TBD |
| | JUDGE:      Hon. Dana M. Sabraw |
| | COURT:     13A (13th Floor) |

No. 15-MD-2670 DMS (MDD)

# **TABLE OF CONTENTS**

**Page No.**

I.     INTRODUCTION ........................................................................1

II.    ARGUMENT .........................................................................2

    A.     Defendants' Guilty Pleas Are Conclusive As To The
Facts Therein And Defendants Are Collaterally Estopped
From Disputing Them...............................................................2

    B.     Defendants' Prior Admissions In Their Guilty Pleas Are
Highly Probative Evidence In Favor Of Summary Judgment
For The Entire Class Period.........................................................6

        1.     Defendants Have Admitted In Sworn Interrogatory
Responses To Participating In The Conspiracy During
And Beyond The Plea Periods...............................................6

        2.     All Three Firms Were In The Conspiracy At The Start
Of The EPP Class Period...................................................10

    C.     The Conspiracy Continued Through The End of the
Class Period..........................................................................13

    D.     The Undisputed Issues Resolve Liability Under The
Law Applicable To Every Class ................................................14

III.   CONCLUSION .......................................................................15

# <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

## Cases

*Anderson v. Sutton*,
  No. 5:14-cv-1272, 2016 U.S. Dist.
  LEXIS 43902 (N.D. Ohio Mar. 31, 2016) ......................................................... 12

*Armco Steel Corp. v. State of N.D. for Use &*
*Benefit of State Highway Fund ex rel. Hjelle*,
  376 F.2d 206 (8th Cir. 1967) .............................................................................. 4

*AT&T Mobility LLC v. AU Optronics Corp.*,
  707 F.3d 1106 (9th Cir. 2013) .......................................................................... 15

*Brink's, Inc. v. New York*,
  717 F.2d 700 (2nd Cir. 1983) ............................................................................ 11

*Carballo Rodriguez v. Clark Equip. Co.*,
  147 F. Supp. 2d 66, (D.P.R. 2001) .................................................................... 12

*Celotex Corp. v. Cartrett*,
  477 U.S. 317 (1986) ............................................................................................ 7

*City of Burbank v. Gen. Elec. Co.*,
  329 F.2d 825 (9th Cir. 1964) .............................................................................. 4

*City of Carlsbad v. Shah*,
  666 F. Supp. 2d 1159 (S.D. Cal. 2009) ............................................................. 10

*Cotton v. City of Eureka*,
  No. C-08-04386 SBA (EDL), 2010 U.S. Dist.
  LEXIS 79649 (N.D. Cal. Jul. 21, 2010) ............................................................ 11

*Daimler AG v. A-Z Wheels LLC*,
  334 F. Supp. 3d 1087 (S.D. Cal. 2018) .............................................................. 7

*Eagle Lion Studios, Inc v. Loew's, Inc*,
  248 F.2d 438 (2d Cir. 1957) ............................................................................... 5

*Emich Motors Corp. v. Gen. Motors Corp.*,
  340 U.S. 558 (1951) ............................................................................................ 2

*Esco Corp. v. United States*,
  340 F.2d 1000 (9th Cir. 1965) ........................................................................... 13

- ii -

No. 15-MD-2670 DMS (MDD)

*In re Capacitors Antitrust Litig.* (*No. III*),
No. 17-md-02801-JD, 2018 U.S. Dist.
LEXIS 195310 (N.D. Cal. Nov. 14, 2018) ............................................................ 4

*In re Ethylene Propylene Diene Monomer
(EPDM) Antitrust Litig.*,
681 F. Supp. 2d 141 (D. Conn. 2009) ................................................................ 12

*In re Flat Glass Antitrust Litig.*,
385 F.3d 350 (3d Cir. 2004) ................................................................................ 7

*In re Polyurethane Foam Antitrust Litig.*,
152 F. Supp. 3d 968 (N.D. Ohio 2015) ................................................................ 7

*In re Polyurethane Foam Antitrust Litig.*,
No. 1:10 MD 2196, 2015 U.S. Dist.
LEXIS 183454 (N.D. Ohio Mar. 6, 2015) .......................................................... 12

*In re Polyurethane Foam Antitrust Litig.*,
314 F.R.D. 226 (N.D. Ohio 2014) ...................................................................... 14

*In re Sotheby's Holdings, Inc. Sec. Litig.*,
No. 00 Civ. 1041(DLC), 2000 U.S. Dist.
LEXIS 12504 (S.D.N.Y. Aug. 30, 2000) .............................................................. 7

*In re Volkswagen "Clean Diesel" Mktg., Sales Prac.,
& Prods. Liab. Litig.*,
MDL No. 2672 CRB (JSC), 2017 U.S. Dist
LEXIS 202487 (N.D. Cal. Dec. 6, 2017) .............................................................. 3

*In re: Processed Egg Prods. Antitrust Litig.*,
No. 08-md-2002, 2016 U.S. Dist.
LEXIS 122894 (E.D. Pa. Sept. 12, 2016) .......................................................... 14

*Jack v. Trans World Airlines, Inc.*,
854 F. Supp. 654 (N.D. Cal. 1994) .................................................................... 10

*Law v. Nat'l Collegiate Athletic Ass'n*,
5 F. Supp. 2d 921 (D. Kan. 1998) ...................................................................... 14

*LiButti v. United States*,
107 F.3d 110 (1997) ............................................................................................ 11

*Nationwide Life Ins. Co. v. Richards*,
541 F.3d 903 (2008) ............................................................................................ 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Rad Servs., Inc. v. Aetna Casualty & Surety Co.*,
    808 F.2d 271 (3rd Cir. 1986) ................................................................... 11

*Rosebud Sioux Tribe v. A & P Steel, Inc.*,
    733 F.2d 509 (8th Cir. 1984) ................................................................... 11

*Schoenmann v. Salevouris*,
    No. 15-cv-05193-JSC, 2016 U.S. Dist.
    LEXIS 147089 (N.D. Cal. Oct. 24, 2016) ............................................... 11

*SEC v. Bilzerian*,
    29 F.3d 689 (D.C. Cir. 1994) ..................................................................... 2

*SEC v. Everest Mgmt. Corp.*,
    466 F. Supp. 167 (S.D.N.Y. 1979) ............................................................. 2

*SEC v. Gruenberg*,
    989 F.2d 977 (8th Cir. 1993) ..................................................................... 2

*SEC v. Hilsenrath*,
    No. C 03-03252 WHA, 2008 U.S. Dist.
    LEXIS 50021 (N.D. Cal. May 30, 2008),
    *aff'd*, 406 F. App'x 197 (9th Cir. 2010) ..................................................... 6

*Smith v. United States*,
    568 U.S. 106 (2013) ................................................................................. 13

*T.C. Theatre Corp. v. Warner Bros. Pictures, Inc.*,
    113 F. Supp. 265 (S.D.N.Y. 1953) ............................................................. 5

*United States v. Real Prop. Located at Section 18, Twp. 23, Range 9,*
*Sunnyview Plat, Lots 4 & 5, Block 4, Lakeview Dr.,*
* Quinault Lake, Olympic Nat'l Park, Grays Harbor Cnty., WA.*,
    976 F.2d 515 (9th Cir. 1992) .................................................................. 3, 4

*Valentich v. United States*,
    194 F. Supp. 3d 1033 (E.D. Cal. 2016) .................................................... 10

## Statutes

15 U.S.C.
    § 1 ................................................................................................ 2, 3, 7

    § 16 .................................................................................................... 4

    § 16(a) ................................................................................................. 1

Antitrust Criminal Penalty Enhancement Reform Act of 2004 (ACPERA)
    Pub. L. No. 108-237, Title II, 118 Stat 661, et seq.,
    as extended by Pub. L. 111-190, 124 Stat. 1275 (June 9, 2010) .......................... 7

Cal. Bus. & Prof. Code
    § 16720(a) ......................................................................................... 14
    § 16720(b) ......................................................................................... 14
    § 16720(e) ......................................................................................... 14

## Rules

Fed. R. Civ. P.
    56(a) ................................................................................................. 6
    56(c)(1)(A) ......................................................................................... 6

No. 15-MD-2670 DMS (MDD)

## I.   INTRODUCTION

End Payer Plaintiffs ("EPPs") move for partial summary judgment against defendants Bumble Bee Foods, LLC ("Bumble Bee") and StarKist Company ("StarKist") as to liability.[1]  The main issue in this case need not be tried against these manufacturers.   Their criminal convictions and admissions in the parallel criminal action result in only one outcome here: the three Defendant producers of packaged tuna entered into felonious, anticompetitive agreements to coordinate price increases and to refrain from discounting so as to retain the supracompetitive profits from those increases.  This is true for the entirety of the Class Period of June 1, 2011 through July 1, 2015 as certified by the Court.

A criminal investigation resulting in conviction is intended to, and does, also resolve civil liability for the same conduct.  15 U.S.C. § 16(a).  Here, Bumble Bee and StarKist each pled guilty to felonies for conspiring with each other and with COSI to increase prices.  Furthermore, while the guilty pleas cover only part of the Class Period, each defendant has responded with admissions in their verified interrogatory responses that collectively prove the existence of an agreement starting on or before the beginning of the Class Period.

The admissions and convictions, taken together, are dispositive within the four corners of what they admit.   The three conspiring firms' admissions are admissible against each other.  With the cartel members' collective admissions, no jury could reasonably find otherwise than that both StarKist and Bumble Bee made unlawful, anticompetitive agreements to increase prices and to refrain from discounting them down.

---

[1]    "Defendants" herein refers to Bumble Bee and StarKist.  Tri-Union Seafoods LLC d/b/a Chicken of the Sea International ("COSI") is not subject to this motion given its agreement with EPPs.  July 12, 2019 Order Granting Joint Motion for Stipulation Holding Deadlines in Abeyance, ECF No. 1923.

discounting them down.

Through three increases (one announced in 2011 and two in 2012), Defendants acted in compliance with the cartel's agreement.  They both continued to abide by their agreements through the profitable years at the end of the Class Period.  Having agreed not to discount their gains away and having proved to each other their ability to monitor deviation from that pact, StarKist and Bumble Bee kept on refraining from discounting their profits away right through the public revelation of a federal, criminal investigation in July 2015.

## II.   ARGUMENT

### A.   Defendants' Guilty Pleas Are Conclusive As To The Facts Therein And Defendants Are Collaterally Estopped From Disputing Them

Bumble Bee's and StarKist's guilty pleas and allocutions are admissions to felony violations of the Sherman Act, 15 U.S.C. § 1, occurring during the Class Period.  SUF ¶¶ 78, 87-89.  Such admissions are conclusive here as well, and these Defendants are estopped from denying any of the facts encompassed by those pleas.

"It is well established that a prior criminal conviction may work an estoppel . . . in a subsequent civil proceeding."  *Emich Motors Corp. v. Gen. Motors Corp.*, 340 U.S. 558, 568–69 (1951) (citations omitted); *accord SEC v. Bilzerian*, 29 F.3d 689, 694 (D.C. Cir. 1994); *SEC v. Gruenberg*, 989 F.2d 977, 978 (8th Cir. 1993); *SEC v. Everest Mgmt. Corp.*, 466 F. Supp. 167, 172 (S.D.N.Y. 1979). The Ninth Circuit has established the following criteria for issue preclusion based on prior final judgments:

1)   The prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges;

2)   There must have been a full and fair criminal proceeding to prevent convictions of dubious validity from being used;

3)   The issue on which the prior conviction is offered must of necessity have been decided at the criminal trial;

4)   The party against whom the collateral estoppel is asserted was a party or in privity with a party to the prior trial.

*See United States v. Real Prop. Located at Section 18, Twp. 23, Range 9, Sunnyview Plat, Lots 4 & 5, Block 4, Lakeview Dr., Quinault Lake, Olympic Nat'l Park, Grays Harbor Cnty., WA.*, 976 F.2d 515, 518 (9th Cir. 1992) (the "*Real Property* test").

All the prongs are satisfied here.  Indeed, prongs one, two, and four are generally not subject to dispute in civil antitrust cases following guilty pleas.  *See In re Volkswagen "Clean Diesel" Mktg., Sales Prac., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 U.S. Dist LEXIS 202487, at *672 (N.D. Cal. Dec. 6, 2017).  Violations of the Sherman Act are, by definition, felonies that carry up to ten years of jail time for individuals and up to $100 million fines for corporations, 15 U.S.C. § 1, *et seq.*, satisfying element one.  In fact, both Bumble Bee and StarKist pled guilty to a one-count violation of the Sherman Act, 15 U.S.C. § 1.  SUF ¶¶ 78, 87-89.[2]

For prongs two and four, there is no dispute that the plea agreements are valid, nor that the Defendants in the criminal antitrust cases are the same as those in the present case.  Defendants were highly motivated to fully litigate the antitrust charges brought against them, and their ultimate pleas included their signing of

---

[2]   StarKist was fined $100 million, the maximum, by Northern District of California District Court Judge Edward M. Chen, on September 11, 2019.  *United States v. StarKist Co.*, No. 18-cr-00513-EMC (N.D. Cal.) ("*U.S. v. StarKist*") ECF Nos. 180 (Sept. 11, 2019 minute entry), 181 (Sept. 12, 2019 Judgment).  Bumble Bee was fined $25 million in July 2017, with a provision that expands the fine to $81.5 million in the event of a sale of the Company meeting certain conditions.  *United States v. Bumble Bee Foods, LLC*, 17-cr-00249-EMC (N.D. Cal.) ("*U.S. v. Bumble Bee*") ECF No. 42 at 3 (Aug. 7, 2017 Judgment).

- 3 -

No. 15-MD-2670 DMS (MDD)

acknowledgments that their pleas would be final and not subject to appeal.

Prong three of the *Real Property* test requires that, "an element of the crime to which the defendant pled guilty or of which he was convicted was at issue in the second suit." *Id.*, 976 F.2d at 519. In other words, "matters necessarily decided in the prior action are barred from relitigation by collateral estoppel." *Id.* "In determining what facts and issues are precluded in a civil action that is based on an underlying criminal conviction, a court may look to the judgments of conviction, plea agreements, and facts presented by the government during a Rule 11 hearing." *Buchanan Cnty., Va. v. Blankenship*, 496 F. Supp. 2d 715, 720 (W.D. Va. 2007).

Preclusion is particularly appropriate here, because the statutory scheme governing antitrust specifically provides for it. Section 5(a) of the Clayton Act, 15 U.S.C. § 16, states that a final judgment or decree — in a criminal proceeding by the United States — that a party has violated the antitrust laws "shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel."[3]

Guilty pleas qualify as final judgments under the Clayton Act: "[t]he criminal judgments that followed from . . . guilty pleas are admissible at trial as 'prima facie evidence of the violation of antitrust laws.'" *In re Capacitors Antitrust Litig.* (*No. III*), No. 17-md-02801-JD, 2018 U.S. Dist. LEXIS 195310, at *62-63 (N.D. Cal. Nov. 14, 2018) (quoting *City of Burbank v. Gen. Elec. Co.*, 329 F.2d 825, 834 (9th Cir. 1964)); *see also Armco Steel Corp. v. State of N.D. for Use & Benefit of State Highway Fund ex rel. Hjelle*, 376 F.2d 206 (8th Cir. 1967). Courts have long held

---

[3] To the extent Defendants argue that the convictions should be only prima facie evidence, and not preclusive, that argument is untenable on these facts. Their own and their co-conspirators' admissions in verified interrogatory responses, discussed below (and leaving aside the individual criminal pleas, witness testimony, phone records and emails), foreclose any attempt to undermine their own pleas.

that private litigants can rely on final judgments in antitrust lawsuits: "A government (anti-trust) suit, while primarily in the public interest, if successful, also accrues to the immediate benefit of these injured by the wrongful conduct." *Eagle Lion Studios, Inc v. Loew's, Inc*, 248 F.2d 438, 442 (2d Cir. 1957) (quoting *T.C. Theatre Corp. v. Warner Bros. Pictures*, *Inc.*, 113 F. Supp. 265, 269 (S.D.N.Y. 1953)).   As Bumble Bee and StarKist have pled guilty to price-fixing under the Sherman Act, their plea agreements qualify as final judgments under the Clayton Act.

Specifically, Bumble Bee has admitted its participation, "in a conspiracy to suppress and eliminate competition by reaching agreements to fix, raise and maintain the prices of packaged seafood sold in the United States beginning at least as early as the first quarter of 2011 and continuing through at least as late as the fourth quarter of 2013."   Bumble Bee Plea Agreement, SUF ¶ 78, Tab 74 at 2-3. StarKist admitted that from at least November 2011 through at least December 2013, the company, "participated in a conspiracy among major packaged-seafood-producing firms, the primary purpose of which was to fix, raise, and maintain the prices of packaged seafood sold in the United States."   StarKist Nov. 14, 2018 Plea Agreement, *U.S. v. StarKist*, ECF No. 24 at 3.   In signing these guilty pleas, Defendants stipulated to the truth and accuracy of these admissions in the Factual Basis for Offense Charged included in the plea agreements.

Accordingly, Bumble Bee and StarKist are collaterally estopped from denying liability for price-fixing under the *Real Property* test because they have admitted to the conspiracy to fix packaged tuna prices during the 2011 to 2013 period, and that the facts surrounding the price-fixing were central to the antitrust charges to which they pled guilty.   *See* Plea Agreements, SUF Tab 74; *U.S. v. StarKist*, ECF No. 24.   The admitted Factual Basis for Offense Charged in each of these guilty pleas describes in detail these Defendants' deliberate actions to fix the

prices of packaged tuna to their benefit and the detriment of their direct and indirect customers. *Id.* These admissions thus establish as a matter of law that Defendants are guilty of antitrust violations for the time period admitted to in the guilty pleas. It is beyond dispute that Defendants engaged in price-fixing from 2011-2013 because Defendants have admitted to doing exactly that.

**B.      Defendants' Prior Admissions In Their Guilty Pleas Are Highly Probative Evidence In Favor Of Summary Judgment For The Entire Class Period**

Courts view a defendant's admissions in a prior plea agreement as "extremely probative" evidence to support summary judgment even beyond the bounds of absolute estoppel. *See SEC v. Hilsenrath*, No. C 03-03252 WHA, 2008 U.S. Dist. LEXIS 50021, at *13-14 (N.D. Cal. May 30, 2008), *aff'd*, 406 F. App'x 197 (9th Cir. 2010) (plea preclusive for the period covered, but also "extremely probative as a party admission and evidence" for a subsequent period).

Here, while Defendants' guilty pleas cover a smaller time period than that alleged by Plaintiffs, when considered along with Defendants' own admissions and other sources of compelling evidence of Defendants' guilt, they are highly probative and prima facie evidence of antitrust violations spanning the entire Class Period.

**1.      Defendants Have Admitted In Sworn Interrogatory Responses To Participating In The Conspiracy During And Beyond The Plea Periods**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law . . . by: citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

*interrogatory answers*, or other materials . . . ."  Fed. R. Civ. P. 56(a) & (c)(1)(A) (emphasis added); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 324 (1986) ("a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file'); *Daimler AG v. A-Z Wheels LLC*, 334 F. Supp. 3d 1087, 1094 (S.D. Cal. 2018) (Sammartino, J.) (summary judgment may be won "by identifying the portions of . . . answers to interrogatories . . . that show an absence of dispute regarding a material fact") (internal quotations omitted).

In addition to Bumble Bee's, StarKist's and their executives' guilty pleas and allocutions, as well as COSI's leniency application to the Department of Justice ("DOJ") under ACPERA[4], all three companies provided responses to interrogatories, sworn under penalty of perjury, admitting to their participation in the conspiracy.  SUF ¶¶ 79-83, 86-91; *U.S. v. StarKist*, ECF No. 24.  Both Bumble

---

[4]    Antitrust Criminal Penalty Enhancement Reform Act of 2004, Pub. L. No. 108-237, Title II, 118 Stat. 661, *et seq.* as extended by Pub. L. 111-190, 124 Stat. 1275 (June 9, 2010), (15 U.S.C. § 1) ("ACPERA").  On summary judgment, a reasonable factfinder may infer an illegal price-fixing agreement from such admissions, even if the admissions are insufficient to join the DOJ's program.  *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 363 (3d Cir. 2004) (defendant's leniency correspondence was "[t]he most compelling basis for [the] conclusion" that "the record undoubtedly evidences that several of the . . . defendants conspired to fix prices"); *In re Polyurethane Foam Antitrust Litig.*, 152 F. Supp. 3d 968, 986 (N.D. Ohio 2015) (in denying defendants' motions for summary judgment, court considered the evidence and testimony submitted by defendants who were applicants under the ACPERA program for "admitted antitrust violators" to be "admissions").  Indeed, DOJ leniency is allowed only if the applicant "reports 'illegal activity' and 'reports the wrongdoing with candor and completeness.'"  *In re Sotheby's Holdings, Inc. Sec. Litig.*, No. 00 Civ. 1041(DLC), 2000 U.S. Dist. LEXIS 12504, at *7 (S.D.N.Y. Aug. 30, 2000) (quotation omitted in original); *see also Corporate Leniency Policy*, DOJ, https://www.justice.gov/atr/corporate-leniency-policy (last visited Sept. 17, 2019).

Bee and COSI admit that the coordination between all three companies commenced at the beginning of 2011:

> Specifically, Bumble Bee admits:

> First, Senior Vice Presidents of the Sales and Trade Marketing departments at Bumble Bee coordinated certain list price increases relating to certain canned tuna products[5] through a series of bilateral communications with executives at the other companies (including, at various times, communications with Steve Hodge and Chuck Handford of StarKist) that occurred between the first quarter of 2011 and the fourth quarter of 2013....Bumble Bee announced three list price increases during the relevant period (on March 10, 2011, January 17, 2012, and March 30, 2012) that were the result of such coordination.

> Second, Senior Vice Presidents of the Sales and Trade Marketing departments at Bumble Bee coordinated certain promotional levels and changes to certain pricing guidance on certain canned tuna products through a series of bilateral communications with executives at the other companies (including, at various times, communications with Steve Hodge and Chuck Handford of StarKist and Mike White of Chicken of the Sea) between the first quarter of 2011 and the fourth quarter of 2013.[6]

> COSI likewise admits that starting "[a]s early as February 2011" there was an

---

[5]     Despite limiting this interrogatory response to "canned" tuna products (SUF ¶ 79, Tab 75), in the parallel criminal proceeding, Bumble Bee and its executives refer to "packaged" seafood in their guilty pleas.  SUF ¶ 77, Tab 74 (Bumble Bee Plea Agreement); SUF ¶ 94, Tab 81( Kenneth Worsham Plea Agreement); SUF ¶ 95, Tab 82 (Walter Scott Cameron Plea Agreement).

[6]     SUF ¶ 79 (Defendant Bumble Bee Foods, LLC's Corrected Fifth Supplemental Objections and Responses to Plaintiffs' Second Set of Interrogatories During the Limited Discovery Stay Period – Interrogatory No. 1, dated and verified under penalty of perjury on May 18, 2018 by Bumble Bee's General Counsel, Senior Vice President Jill Irvin).  General Counsel Irvin also signed Bumble Bee's plea agreement as its representative.  *See* SUF Tab 74.

"Agreement among Starkist, Bumble Bee and COSI on timing of list and/or net price increase for branded tuna products" and that starting "[a]s early as November 2011" there was an "Agreement among Starkist, Bumble Bee and COSI on timing of list price increase for branded tuna products" and that its CEO Shue Wing Chan, amongst others, had knowledge of these agreements.[7]

StarKist admits that it, too, "participated in two separate agreements with Bumble Bee and Chicken of the Sea during the time period between November 2011 and December 2013[,]" including "the timing of two 2012 StarKist list price announcements relating to certain canned tuna products[8] through a series of bilateral communications with executives at Bumble Bee and Chicken of the Sea that occurred in the first half of 2012. StarKist issued two national list price increases during the relevant period (on January 13, 2012, and April 26, 2012)."[9]

Defendants' interrogatory responses, verified under penalty of perjury by their respective in-house attorneys, constitute the very type of evidence upon which courts rely in granting summary judgment. "Interrogatory responses are admissible for summary judgment purposes" and where a party signed the answers and has

---

[7]     SUF ¶¶ 80-81, 83-84; Tab 12 at 4 (Tri-Union Seafoods d/b/a Chicken of the Sea International's Second Supplemental Responses and Objections to Plaintiffs' Second Set of Interrogatories, Interrogatory No. 1, dated and verified under penalty of perjury on October 18, 2018 by COSI's general counsel at the time, Christianna Reed).

[8]     Despite limiting this interrogatory response to "canned" tuna products (SUF ¶ 91, Tab 79), in the parallel criminal proceeding StarKist and its executive Steve Hodge refer to "packaged" seafood in their guilty pleas. *U.S. v. StarKist*, ECF No. 24; *United States v. Hodge*, No. 17-cr-00297-EMC (N.D. Cal.), ECF No. 13.

[9]     SUF ¶ 91; Tab 79 at 3 (StarKist Co.'s Third Supplemental Objections & Responses to Plaintiffs' Second Set of Interrogatories, Interrogatory No. 1, dated January 30, 2019, verified under penalty of perjury on February 7, 2019 by StarKist's General Counsel R. Scott Meece).

never amended the response to an interrogatory, "[h]er concession is accepted as the truth, and thus, no genuine dispute of material fact exists on the question.'" *Valentich v. United States*, 194 F. Supp. 3d 1033, 1036, 1037 (E.D. Cal. 2016).[10]

Here, Defendants provided interrogatory responses sworn under penalty of perjury by their respective general counsel.  Defendants have not amended their responses to withdraw their admissions nor indicated they were in error.  Plaintiffs and the Court are therefore entitled to rely on the interrogatory responses, along with Defendants' guilty pleas, as undisputed evidence of the conspiracy.

### 2. All Three Firms Were In The Conspiracy At The Start Of The EPP Class Period

Bumble Bee and COSI admit that the conspiracy with StarKist operated from the first quarter of 2011.  SUF ¶¶ 76-77, 80.  StarKist has negotiated a plea agreement admitting that "through its officers and employees, including high-level personnel, participated in a conspiracy among major packaged seafood-producing firms" beginning in late 2011,[11] which has preclusive effect, and concedes specifically that StarKist employee Steve Hodge (who pleaded guilty personally) participated in the conspiracy.  SUF ¶¶ 90, 93.  Bumble Bee admits that it colluded directly with an additional StarKist employee, Chuck Handford, and that it

---

[10]    In moving for summary judgment, a party has no duty to use different discovery tools such as depositions and requests for admission to confirm information it had received in responses to interrogatories.  *Jack v. Trans World Airlines, Inc.*, 854 F. Supp. 654, 658 (N.D. Cal. 1994); *see also City of Carlsbad v. Shah*, 666 F. Supp. 2d 1159, 1166 (S.D. Cal. 2009) (Sammartino, J.) (defendant's responses to interrogatories provided basis for granting plaintiff's summary judgment motion in unfair competition action)

[11]    In entering StarKist's guilty plea on the record, its general counsel confirmed that "the purpose of that conspiracy was to fix prices" and verified that all such facts were "true" on the record in the Northern District of California.  *See* SUF ¶ 88; Tab 78 (Nov. 20, 2018 Tr. in *U.S. v. StarKist*).

conspired with StarKist beginning in the first quarter of 2011 (SUF ¶ 79) — that is, in the preparation of the collusive price increase, effective June 2011, which starts the EPP Class Period, and which StarKist issued as well.  SUF ¶¶ 59-63.  Bumble Bee's own Interrogatory Response says twice that the improper communications with Handford began in the first quarter of 2011.  SUF ¶ 79.  StarKist also admits in its answer that Handford had calls with COSI at that time as well.[12]

Handford also asserted his Fifth Amendment privilege to questions asked at his deposition, including questions regarding his involvement in the 2011 price increase that all three manufacturers discussed in the first quarter.[13]   SUF ¶ 99.

---

[12]   Defendant StarKist Co.'s Answer to the Indirect Purchaser End Payer Plaintiffs' Fifth Amended Consolidated Class Action Complaint, ECF No. 1239 at ¶¶ 277, 394 (admitting to calls and messages between Handford and Mike White of COSI in February and March of 2011).

[13]   District courts in the Ninth Circuit have discretion to draw adverse inferences from a party's assertion of the privilege against self-incrimination in civil cases where the party refuses to testify.  *See Nationwide Life Ins. Co. v. Richards*, 541 F.3d 903, 911-12 (2008).  The invoking witness's employer may also be charged with the inference.  The Second Circuit has set forth the relevant factors in *LiButti v. United States*, 107 F.3d 110, 123-24 (1997): "1. The Nature of the Relevant Relationships . . . 2. The Degree of Control of the Party Over the Non-Party Witness . . . 3. The Compatibility of the Interests of the Party and Non-Party Witness in the Outcome of the Litigation . . . 4. The Role of the Non-Party Witness in the Litigation . . . ."  *See Schoenmann v. Salevouris*, No. 15-cv-05193-JSC, 2016 U.S. Dist. LEXIS 147089, at *8-10 (N.D. Cal. Oct. 24, 2016) (granting inference and citing *LiButti* factors (1) and (4) as "particularly relevant"); *Cotton v. City of Eureka*, No. C-08-04386 SBA (EDL), 2010 U.S. Dist. LEXIS 79649, at *12 (N.D. Cal. Jul. 21, 2010).  Chuck Handford, as senior management at StarKist, easily satisfies the *LiButti* factors.  *See, e.g.*, *Rad Servs., Inc. v. Aetna Casualty & Surety Co.*, 808 F.2d 271 (3rd Cir. 1986) (inference against employer); *Brink's, Inc. v. New York*, 717 F.2d 700, 710 (2nd Cir. 1983) (same); *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 733 F.2d 509, 522-23 & n.12 (8th Cir. 1984) (citing *Brinks* and reversing district court's denial of plaintiff's application to extend inference to a company were non-party was a former chairman of a party's subsidiary).

EPPs are entitled to adverse inferences regarding Handford's specific invocations of the Fifth Amendment, including those that concern the summer 2011 price increase.

COSI also admits in interrogatory responses that it colluded with StarKist in February 2011 in preparation for the summer price increase.   SUF ¶¶ 80, 83. Because the conspirators admit that they were in the conspiracy, each co-conspirator's admissions in interrogatory answers as to which personnel they colluded with and when are admissible against each other member under Rule 807 of the Federal Rules of Evidence due to their "equivalent circumstantial guarantees of trustworthiness."  *In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*, 681 F. Supp. 2d 141, 150 (D. Conn. 2009).  Between the invocation of the Fifth Amendment by percipient witnesses and COSI's ACPERA obligations, the circumstances here provide sufficient indicia supporting their trustworthiness.

As in *Polyurethane Foam Antitrust Litigation*, COSI was "obligated to be truthful in view of its ACPERA obligations, was subject to treble civil liability in this case if it failed to provide accurate and useful information, and was subject to sanctions by this Court if it provided untruthful discovery responses."  *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015 U.S. Dist. LEXIS 183454, at *38-39 (N.D. Ohio Mar. 6, 2015) (ACPERA applicant's admission of factual matters admissible as to the remaining defendants).  *See also EPDM Antitrust Litig.*, 681 F. Supp. 2d at 151-53 (interrogatory responses admitted against another defendant where corporate representatives had invoked the Fifth Amendment); *Carballo Rodriguez v. Clark Equip. Co.*, 147 F. Supp. 2d 66, 73-75 (D.P.R. 2001) (statements and interrogatory responses admitted against alleged co-conspirator); *Anderson v. Sutton*, No. 5:14-cv-1272, 2016 U.S. Dist. LEXIS 43902, at *12-13 (N.D. Ohio Mar. 31, 2016).   The facts here demonstrate that these responses to interrogatories are trustworthy and thus admissible under Federal Rule of Evidence 807 as to all three Defendants.

## C.   The Conspiracy Continued Through The End of the Class Period

Both StarKist and Bumble Bee continued to maintain the prices that they admit to have collusively set through at least July 2015 (when the DOJ investigation became public).  SUF ¶¶ 101-109

The nature of the conspirators' agreement, as they pled, was not only to "raise" but also to "maintain" collusive pricing.  SUF ¶¶ 77, 94-96.  As such, it operated as long as the conspirators abided by it.  *See Esco Corp. v. United   States*, 340 F.2d 1000, 1008 (9th Cir. 1965) (upholding jury verdict of conspiracy finding that "any conformance to an agreed or contemplated pattern of conduct will warrant an inference of conspiracy . . . . [t]hus not only action, but even a lack of action, may be enough from which to infer a combination or conspiracy.").  All three companies admit that they colluded in setting list prices.  After the list prices were raised collusively for the last time in 2012, they remained in effect, across substantially the entire range of products.  SUF ¶¶ 101-109.  No general list price decrease was taken by any of the three firms through July 2015 when the media first reported the issuance of criminal subpoenas.  *Id.*

Second, all three firms admit an agreement to control discounting.  The evidence shows that they could and did monitor both output and pricing so that, for example, Shue Wing Chan, CEO of COSI, knew full well that Bumble Bee CEO Christopher Lischewski closely monitored discounts on COSI products.  SUF ¶ 84.  An agreement to refrain from discounting away the profits of a collusively-set list price requires no affirmative acts of communication to maintain it.  *Smith v. United States*, 568 U.S. 106, 113 (2013) (withdrawal from criminal conspiracy requires affirmative act and must be affirmatively proved by conspirator).  Logically, once the cartel members know that their co-conspirators can monitor cheating, they decide to stay in the agreement by their behavior; as long as they do not withdraw from the conspiracy, it remains in effect.  *Id.*

Finally, to the extent internal records speak to whether the conspirators had withdrawn or remained within the agreement, they show the latter. *See, e.g.*, SUF ¶ 102, Ex. 1740E at 649E-650E (at an August 21, 2014, StarKist board meeting, executives refer to an agreement to control price competition and discuss whether to depart from it by discounting to gain market share.)[14]

## D.    The Undisputed Issues Resolve Liability Under The Law Applicable To Every Class

The Court has certified a multistate class of indirect purchasers pursuant to the Cartwright Act, and additionally a class for each state or territory with law supporting such a claim.   The issues of liability resolved by the pleas and admissions of the conspirators, resolves liability under each applicable law.

Of central concern is the Cartwright Act which makes it unlawful to "create or carry out restrictions in trade or commerce."   Cal. Bus. & Prof. Code § 16720(a).  It is also unlawful for any two persons to combine capital, skill or acts to "increase the price of merchandise or of any commodity." *Id.*, § 16720(b).  It is further unlawful under section 16720(e):

> To make or enter into or execute or carry out any contracts, obligations or agreements of any kind or description, by which they do all or any or any combination of any of the following:
>
> (1) Bind themselves not to sell, dispose of or transport any

---

[14]    Defendants' damages liability continues even after a conspiracy ends, provided that plaintiffs can show evidence of continuing effects (*e.g.*, continued price inflation and restraint on competition).  *See, e.g.*, *In re: Processed Egg Prods. Antitrust Litig.*, No. 08-md-2002, 2016 U.S. Dist. LEXIS 122894, at *9-12 (E.D. Pa. Sept. 12, 2016) (finding that plaintiffs had ability to recover damages caused by continued effects of conspiracy); *In re Polyurethane Foam Antitrust Litig.*, 314 F.R.D. 226, 270-71 (N.D. Ohio 2014); *Law v. Nat'l Collegiate Athletic Ass'n*, 5 F. Supp. 2d 921, 934 (D. Kan. 1998) ("A conspirator is liable for the damages caused by its unlawful conduct, even if they are sustained after the  unlawful conduct ceases.").

article or any commodity or any article of trade, use, merchandise, commerce or consumption below a common standard figure, or fixed value.

(2) Agree in any manner to keep the price of such article, commodity or transportation at a fixed or graduated figure.

The criminal guilty pleas and admissions herein satisfy these elements. By agreeing to coordinated increases in list prices, Defendants Bumble Bee and StarKist violated sections 16720(a), (b) and (e). *AT&T Mobility LLC v. AU Optronics Corp.*, 707 F.3d 1106, 1108 (9th Cir. 2013) ("The Cartwright Act provides a private cause of action for indirect purchasers of price-fixed goods.").

Each of the other state statutes at issue is likewise satisfied. While state antitrust and consumer protection laws vary somewhat, each of the states for which a Class has been certified conforms to the Cartwright Act and the federal Sherman Act in the central essentials: horizontal price fixing is unlawful, everywhere. The elements of each are set forth in the accompanying Appendix A, annexed hereto.

## III.   CONCLUSION

For the foregoing reasons, EPPs should be granted summary judgment as to liability on all counts as to Defendants Bumble Bee and StarKist.

DATED: September 19, 2019

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:     *s/ Betsy C. Manifold*
        BETSY C. MANIFOLD

BETSY C. MANIFOLD
RACHELE R. BYRD
ALEX J. TRAMONTANO
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile:   619/234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
THOMAS H. BURT
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/545-4653
burt@whafh.com

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
CARL MALMSTROM
111 West Jackson, Suite 1700
Chicago, IL 60604
Telephone: 312/984-0000
Facsimile:   312/212-4401
malmstrom@whafh.com

*Class Counsel for the Indirect Purchaser End Payer Plaintiffs*

TUNA: 25933.v7