LATHAM & WATKINS LLP
  Alfred C. Pfeiffer (CA 120965)
  Christopher S. Yates (CA 161273)
  Belinda S Lee (CA 199635)
  Niall E. Lynch (CA 157959)
  Ashley M. Bauer (CA 231626)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415-391-0600
Facsimile:  415-395-8095
*al.pfeiffer@lw.com*
*chris.yates@lw.com*
*belinda.lee@lw.com*
*niall.lynch@lw.com*
*ashley.bauer@lw.com*

*Counsel for Defendant StarKist Co.*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-JLS-MDD |
| | MDL No. 2670 |
| This Document Relates To: | **DEFENDANT STARKIST CO.'S OMNIBUS OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST STARKIST CO. (ECF NO. 2707, ORIGINALLY ECF NO. 2035) AND END PAYER PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF NO. 2701, ORIGINALLY ECF NO. 1993)** |
| (1)  End Payer Plaintiffs | |
| (2)  Commercial Food Preparer Plaintiffs | |
| (3)  Direct Purchaser Plaintiffs | |
| (4)  *Affiliated Foods, Inc. v. Tri-Union Seafoods, LLC et al.*, Case No. 3:15-cv-02787 | |
| (5)  *Associated Wholesale Grocers, Inc. v. Bumble Bee Foods LLC, et al.*, Case No. 3:18-cv-01014 | **UNREDACTED VERSION REFILED PURSUANT TO ECF NO. 2654 (ORIGINALLY FILED AT ECF NO. 2129)** |
| (6)  *Winn-Dixie Stores, Inc. v. Bumble Bee Foods LLC, et al.*, Case No. 3:16-cv-00017 | Special Briefing Schedule Ordered |
| (7)  *W. Lee Flowers & Co., Inc. v. Bumble Bee Foods LLC, et al.*, Case No. 3:16-cv-01226 | **Hearing**: Date:  TBD* Time:  TBD Place:  Courtroom 4D Judge:  Hon. Janis L. Sammartino |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................... 2

    A.    Defendants' Admissions ................................................................ 2

    B.    Del Monte's Can Downsize and July 2008 List Price
          Increase Were Independent and Predated Defendant
          StarKist Co.'s Existence ................................................................ 4

    C.    StarKist's and Del Monte's 2008-2011 Pricing Decisions
          Were Independent ........................................................................... 5

    D.    After Mr. Hodge Was Fired, StarKist Acted
          Independently and Competitively ................................................. 5

    E.    The Decision Not to Fraudulently Label Packaged Tuna .................. 7

    F.    Plaintiffs' Motions and Joinders ................................................... 7

III.  LEGAL STANDARD ............................................................................... 8

IV.   ARGUMENT ............................................................................................ 9

    A.    StarKist's Guilty Plea and Other Admissions Do Not
          Satisfy All Elements of Civil Liability and, Regardless,
          Do Not Support the Breadth of Plaintiffs' Claims ......................... 9

        1.    Plaintiffs' Claims Exceed the Temporal and
              Product Scope of StarKist's Plea and Admissions ................. 10

        2.    Plaintiffs Lack Undisputed Evidence of Injury and
              StarKist's Guilty Plea and Admissions Are Silent
              on the Issue of Injury ............................................................. 12

    B.    Plaintiffs' Request for Partial Summary Judgment on
          "Liability" Is an Improper Attempt to Inflate Discrete
          and Limited Agreements into a Single Overarching
          Conspiracy Lasting Eight Years and Affecting the Entire
          Industry ....................................................................................... 13

    C.    Plaintiffs Do Not Establish Liability as a Matter of Law
          for Conduct Prior to StarKist's Plea Period ................................ 18

        1.    Plaintiffs Have Not Affirmatively Demonstrated
              that StarKist Was Involved in Any Unlawful
              Agreements Prior to Its Plea Period ....................................... 19

        2.    StarKist Is Not Liable for Conduct by Bumble Bee
              and COSI Prior to Its Plea Period ......................................... 21

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

D.    Because Plaintiffs Have Not Indisputably Proven the Existence of an Ongoing Conspiracy, StarKist Does Not Carry Any Burden to Establish Withdrawal .......................................24

     1.    Plaintiffs Do Not Prove, as a Matter of Law, that Any Agreements Did Not Culminate Prior to 2015 ...............24

     2.    StarKist Competed Vigorously After Mr. Hodge Was Fired .......................................................................27

     3.    At Minimum, the Record Reflects a Genuine Dispute of Material Fact as to Whether StarKist Withdrew Before July 2015 .......................................28

V.    CONCLUSION .......................................................................29

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

ii

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alabama v. Blue Bird Body Co., Inc.*,
573 F.2d 309 (5th Cir. 1978) ................................................................. 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ................................................... 8, 19, 20, 23

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
2007 WL 2456223 (S.D. Cal. Aug. 23, 2007) ..................................... 12

*In re Baby Food Antitrust Litig.*,
166 F.3d 112 (3d Cir. 1999) ................................................................. 23

*Bagley v. CMC Real Estate Corp.*,
923 F.2d 758 (9th Cir. 1991) ............................................................... 10

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015) ........................................................ 16

*In re Citric Acid Litig.*,
191 F.3d 1090 (9th Cir. 1999) ............................................................. 23

*Dahl v. Bain Capital Partners, LLC*,
937 F. Supp. 2d 119 (D. Mass. 2013) ..................................... 15, 17, 18

*Howard Hess Dental Laboratories, et. al. v. Dentsply Int'l Inc.*,
602 F. 3d 237 (3d Cir. 2010) ............................................................... 13

*Indus. Bldg. Materials, Inc. v. Interchemical Corp.*,
437 F.2d 1336 (9th Cir. 1970) ............................................................. 22

*In re Iowa Ready-Mix Concrete Antitrust Litig.*,
768 F. Supp. 2d 961 (N.D. Iowa 2011) ............................................... 17

*J. Truett Payne Co. v. Chrysler Motors Corp.*,
451 U.S. 557 (1981) ............................................................................... 2

*Kleen Prod. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ............................................................... 22

*Levi Strauss & Co. v. Blue Bell, Inc.*,
778 F.2d 1352 (9th Cir. 1985) ............................................................. 10

*MicroTechnologies, LLC v. Autonomy, Inc.*,
2018 WL 5013567 (N.D. Cal. Oct. 16, 2018) ..................................... 21

*Ohio Pub. Interest Campaign v. Fisher Foods, Inc.*,
546 F. Supp. 1 (N.D. Ohio 1982) ........................................................ 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

*In re Packaged Seafood Prods. Antitrust Litig.*,
  277 F. Supp. 3d 1167 (S.D. Cal. 2017) ............................................................ 25

*Precision Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*,
  2011 WL 7053807 (E.D.N.Y. Jan. 4, 2011) ...................................................... 17

*Rookaird v. BNSF Ry. Co.*,
  908 F.3d 451 (9th Cir. 2018) ......................................................................... 2, 8

*Doe ex rel. Rudy-Glanzer v. Glanzer*,
  232 F.3d 1258 (9th Cir. 2000) ........................................................................ 20

*S. California Gas Co. v. City of Santa Ana*,
  336 F.3d 885 (9th Cir. 2003) .......................................................................... 13

*S.E.C. v. Colello*,
  139 F.3d 674 (9th Cir. 1998) .......................................................................... 20

*S.E.C. v. Hilsenrath*,
  2008 WL 2225709 (N.D. Cal. May 29, 2008) .................................................. 25

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978 (9th Cir. 2007) ............................................................................ 9

*Techsavies, LLC v. WDFA Mktg. Inc.*,
  2011 WL 589809 (N.D. Cal. Feb. 10, 2011) ................................................... 22

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 1464858 (N.D. Cal. Apr. 18, 2011) ................................................. 11

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
  820 F. Supp. 2d 1055 (N.D. Cal. 2011) ........................................................... 28

*Tolan v. Cotton*,
  572 U.S. 650 (2014) ...........................................................................8, 17, 19

*Toscano v. Prof'l Golfers Ass'n*,
  258 F.3d 978 (9th Cir. 2001) ....................................................................... 8, 23

*United States v. Alston*,
  974 F.2d 1206 (9th Cir. 1992) ........................................................................ 11

*United States v. Hui Hsiung*,
  778 F.3d 738 (9th Cir. 2015) .......................................................................... 16

*United States v. Nippon Paper Indus. Co.*,
  62 F. Supp. 2d 173 (D. Mass. 1999)............................................................28, 29

*United States v. Real Property Located at Section 18*,
  976 F.3d 515 (9th Cir. 1992) ..................................................................... 10, 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

*United States v. Transfiguracion*,
    442 F.3d 1222 (9th Cir. 2006) .......................................................................... 20

*United States v. U.S. Gypsum Co.*,
    438 U.S. 422 (1978) .......................................................................................... 28

*United States v. W.A. Foote Mem'l Hosp.*,
    2017 WL 3128102 (E.D. Mich. May 31, 2017) .................................... 8, 19, 20

*In re Urethane Antitrust Litig.*,
    2013 WL 100250 (D. Kan. Jan. 8, 2013) ........................................................ 21

*Virginia v. McKesson Corp.*,
    2013 WL 1287423 (N.D. Cal. Mar. 28, 2013) ................................................ 28

*In re Volkswagen "Clean Diesel" Mktg. Sales Pracs. & Prods.*
    *Liability Litig.*,
    2017 WL 6041723 ............................................................................................ 10

*Winn-Dixie Stores, Inc. v. Southeast Milk, Inc.*,
    2019 WL 3854976, slip op. (M.D. Fla. Jan. 16, 2019) .................................... 28

### STATUTES

15 U.S.C.
    § 15(a) ......................................................................................................... 1, 9, 12
    § 15(b) .............................................................................................................. 13

Ariz. Rev. Stat. Ann § 44-1408(B) ........................................................................ 10

Cal. Bus. & Prof. Code § 16750(a) ................................................................. 10, 12

### RULES

Fed. R. Civ. P. 56(a) ................................................................................................ 8

### OTHER AUTHORITIES

Philip E. Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis*
    *of Antitrust Principles and Their Application* ¶ 1429 (4th Ed. 2018) ............... 27

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

## LIST OF CITATIONS AND ABBREVIATIONS

| NAME | ABBREVIATION | CITATION |
|---|---|---|
| **PARTIES** | | |
| Affiliated Foods Midwest Cooperative | AFMC | |
| Associated Wholesale Grocers, Inc. | AWG | |
| Bumble Bee Foods, LLC | Bumble Bee | |
| Commercial Food Preparer Plaintiffs | CFP | |
| Chicken of the Sea International, Inc. | COSI | |
| Del Monte Corporation | Del Monte | |
| Direct Purchaser Plaintiff | DPP | |
| Dongwon Industries Co., Ltd. | DWI | |
| End Payer Plaintiffs | EPP | |
| StarKist Co. | StarKist | |
| **MOTIONS AND OTHER FILINGS** | | |
| Associated Wholesale Grocers, Inc. Second Amended Complaint | AWG's Compl. | ECF No. 1437 |
| Commercial Food Preparer Plaintiffs Fourth Amended Complaint | CFPs' Compl. | ECF No. 1470 |
| Plaintiffs' Motion for Partial Summary Judgment Against StarKist Co. | DAP Motion | ECF No. 2029 |
| Declaration of Belinda S Lee in Support of Defendants' Omnibus Opposition to Plaintiffs' Motions for Partial Summary Judgment Against StarKist | Lee Opp'n Decl. | Filed concurrently herewith |
| [Proposed] Order Granting Plaintiffs' Motions for Partial Summary Judgment Against StarKist on Liability | DAP Proposed Order | Lee Opp'n Decl. Ex. 1 |
| End Payer Plaintiffs' Motion for Partial Summary Judgment | EPP Motion | ECF No. 1993 |

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

vi

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

| [Proposed] Order Granting End Payer Plaintiffs' Motion for Partial Summary Judgment Against Bumble Bee and StarKist on Liability | EPP Proposed Order | Lee Opp'n Decl. Ex. 2 |
|---|---|---|
| Defendants' Motion for Partial Summary Judgment on Plaintiffs' Gear-Type Claims | Gear-Type Claims Motion | ECF No. 1999 |
| (1) DAP Motion; and<br><br>(2) EPP Motion | Plaintiffs' Motions | ECF Nos. 1993 & 2029 |
| 1) Plaintiff Associated Wholesale Grocers, Inc.'s Notice of Joinder;<br><br>(2) Direct Purchaser Plaintiffs' Amended Joinder to Plaintiffs' Summary Judgment Motions;<br><br>(3) Commercial Food Preparer Plaintiffs' Amended Joinder to Plaintiffs' Summary Judgment; and Motions<br><br>(4) End Payer Plaintiffs' Joinder in Plaintiffs' Summary Judgment Motions (ECF Nos. 2009 and 2035) | Plaintiffs' Joinders | ECF Nos. 1997 (AWG); 2043 (DPPs); 2046 (CFPs); and 2039 (EPPs) |
| Defendants' Motion for Partial Summary Judgment on Plaintiffs' Private Label Claims | Private Label Motion | ECF No. 2015 |
| StarKist Co., Del Monte Corporation, and Dongwon Industries Co., Ltd.'s Motion for Partial Summary Judgment Dismissing All Claims for Purchases Made Prior to May 30, 2011 | Pre-2011 Motion | ECF No. 2023 |
| StarKist Co. and Bumble Bee Foods LLC's Motion for Partial Summary Judgment on Statute of Limitations Grounds (Class Plaintiffs) | SOL Motion (Classes) | ECF No. 2007 |
| Defendants Motion for Partial Summary Judgment on Statute of Limitations Grounds | SOL Motion (DAPs) | ECF No. 2010 |
| Defendants' Motion for Partial Summary Judgment on Certain State Law Claims | State Law Motion | ECF No. 1992 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

| | | |
|---|---|---|
| StarKist Co.'s Opposition to Plaintiffs' Statement of Undisputed Facts in Support of Rule 56 Motion for Partial Summary Judgment Against StarKist Co. (ECF No. 2036) and StarKist Co.'s Statement of Additional Material Facts | StarKist's DAP SUF Opp'n | Filed concurrently herewith |
| StarKist Co.'s Opposition to Plaintiffs' Joint Statement of Undisputed Facts in Support of Rule 56 Motions (ECF No. 2008) and StarKist Co.'s Statement of Additional Material Facts | StarKist's EPP SUF Opp'n | Filed concurrently herewith |
| StarKist Co.'s Statement of Additional Material Facts In Support of StarKist Co.'s Opposition to Plaintiffs' Motions for Partial Summary Judgment *appended to* StarKist's DAP SUF Opp'n and StarKist's EPP SUF Opp'n | SAMF | Filed concurrently herewith |
| **EXPERT REPORTS** | | |
| Expert Report of Dr. Andres Lerner | Lerner Report | Lee Opp'n Decl. Ex 3 |
| **DEPOSITIONS** | | |
| Deposition of Shue Wing Chan | Chan Dep. | Lee Opp'n Decl. Ex. 4 |
| Deposition of Daniel Hofmeister dated February 13, 2019 | Hofmeister Dep. | Lee Opp'n Decl. Ex. 5 |
| 30(b)(6) Deposition of StarKist Co. Corporate Designee, Robert Meece | Meece Dep. | Lee Opp'n Decl. Ex. 6 |
| Deposition of John Sawyer | Sawyer Dep. | Lee Opp'n Decl. Ex. 7 |
| Deposition of Hubert Tucker | Tucker Dep. | Lee Opp'n Decl. Ex. 8 |
| Deposition of Michael Ray White | White Dep. | Lee Opp'n Decl. Ex. 9 |
| **OTHER DOCUMENTS & ABBREVIATIONS** | | |
| Bumble Bee Foods, LLC's Corrected Fifth Supplemental Objections and | Bumble Bee Interrog. Resps. | Lee Opp'n Decl. Ex. 10 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

| | | |
|---|---|---|
| Responses To Plaintiffs' Second Set of Interrogatories | | |
| Tri-Union Seafoods LLC d/b/a Chicken of the Sea International's Second Supplemental Responses and Objections To Plaintiffs' Second Set of Interrogatories | COSI Interrog. Resps. | Lee Opp'n Decl. Ex. 11 |
| Decl. of Andras Mecs in Supp. of Defendants' Motions for Partial Summary Judgment | Mecs Decl. | Lee Opp'n Decl. Ex. 12 |
| Transcript of Proceedings, *United States v. StarKist Company*, Case No. CR 18-513 EMC (N.D. Cal. Nov. 14, 2018) | StarKist Plea Colloquy | Lee Opp'n Decl. Ex. 13 |
| Internal Bumble Bee email dated April 23, 2010 (BB_Civil_001118188) | Ex. 14 | Lee Opp'n Decl. Ex. 14 |
| Internal Bumble Bee email dated January 12, 2011 (BB_Civil_000103338) | Ex. 15 | Lee Opp'n Decl. Ex. 15 |
| Email from Molly Sorensen dated January 17, 2012 (BB_Civil_000005927) | Ex. 16 | Lee Opp'n Decl. Ex. 16 |
| Email from Molly Sorensen dated May 25, 2012 (BB_Civil_001049373) | Ex. 17 | Lee Opp'n Decl. Ex. 17 |
| Email from Hubert Tucker dated January 18, 2012 (COSI-CIV-000296661) | Ex. 18 | Lee Opp'n Decl. Ex. 18 |
| Internal Bumble Bee email dated December 19, 2013 (BB_Civil_000041006) | Ex. 21 | Lee Opp'n Decl. Ex. 21 |
| StarKist Board of Directors Meeting Minutes dated August 20, 2014 (DWI_000066645E) | Ex. 22 | Lee Opp'n Decl. Ex. 22 |
| Fish-Aggregating Device | FAD | |
| National Fisheries Institute | NFI | |
| StarKist Co.'s Third Supplemental Objections and Responses to Plaintiffs' Second Set of Interrogatories | StarKist Interrog. Resps. | Lee Opp'n Decl. Ex. 19 |

| | | |
|---|---|---|
| Transcript of Proceedings, *United States v. Christopher Lischewski*, Case No. 18-cr-302-EMC (N.D. Cal. Nov. 4, 2019) | Lischewski Tr. | Lee Opp'n Decl. Ex. 20 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1    Defendant StarKist Co. files this Opposition to DAPs' Motion (ECF 2029)

2  and EPPs' Motion (ECF No. 1993).[1]

3  **I.    INTRODUCTION**

4    StarKist pled guilty to a criminal violation of the Sherman Act because,

5  during a period of just over two years (November 2011 through December 2013), a

6  former employee agreed with two competitors on the *timing* of two 2012 list price

7  announcements for certain branded canned tuna products.  Yet Plaintiffs seek

8  judgment as a matter of law on claims ranging from March 2008 through July 2015

9  (nearly ***four years prior*** and another ***two years after*** StarKist's plea period) and on

10  ***all types*** of tuna products (branded, private label, pouch, food service, etc.).  A

11  limited admission covering only two years and a limited set of products does not

12  establish liability as a matter of law for a nearly eight-year conspiracy on all

13  products.  If anything, the limited scope of StarKist's plea undermines the broader

14  claims upon which Plaintiffs now seek summary judgment.  That alone is reason to

15  deny Plaintiffs' Motions.

16    Plaintiffs fail to prove there is no genuine dispute of material fact on each

17  element of their claims, particularly given that every inference must be drawn in

18  StarKist's favor on these Motions.  Plaintiffs ignore the voluminous evidentiary

19  record disputing StarKist's liability for products and periods not covered by

20  StarKist's admissions.  For example, there are factual disputes about:  (1) whether

21  the scope of those agreements extends beyond what StarKist has pled, including to

22  conduct before the two-year plea period and to products other than canned tuna;

23  and (2) whether and when Plaintiffs were injured—neither of which was addressed

24  in StarKist's plea, but both of which are essential elements of Plaintiffs' claims.[2]

25

26  [1] This Opposition also applies to Plaintiffs' Joinders.  ECF No. 1997 (AWG); ECF
   No. 2043 (DPPs); ECF No. 2046 (CFPs); and ECF No. 2039 (EPPs).

27  [2] Section 4 of the Clayton Act, 15 U.S.C. § 15(a), provides a private cause of

28  action for damages to "any person . . . injured in his business or property by reason

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1   Likewise, Plaintiffs cannot prove beyond dispute that any conspiracy existed or

2   continued to exist after 2013.  To prevail on their Motions, EPPs must indisputably

3   prove the existence of one overarching five-year, industry-wide conspiracy.  The

4   bar is even higher for DAPs, who must prove one overarching eight-year, industry-

5   wide conspiracy.  But, Plaintiffs come nowhere near that proof and, at a minimum,

6   there are genuine disputes of material facts about the scope and duration of the

7   agreements Plaintiffs allege.

8        Plaintiffs bear the ultimate burden of proof on the issue of "liability," the

9   claims on which they now seek summary judgment.  As such, the Court must deny

10  Plaintiffs' Motions unless Plaintiffs "affirmatively demonstrate that no reasonable

11  trier of fact could find" for Defendants.  *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451,

12  459 (9th Cir. 2018).  Plaintiffs have failed to clear this high bar, and their Motions

13  should be denied.

14  **II.    FACTUAL BACKGROUND**

15       **A.    Defendants' Admissions**

16       ***StarKist's Admissions.***  On November 14, 2018, StarKist entered into a plea

17  agreement acknowledging that it violated the Sherman Act between at least

18  November 2011 through December 2013.[3]  *See* SAMF ¶ 110.  StarKist pled to

19  conduct relating to "canned tuna" only.  *Id.* ¶ 111.  StarKist's plea mentions:

20  (1) no conduct outside of the plea period; and (2) no products other than canned

21

22  of anything forbidden in the antitrust laws."  As such, "injury" is an required
    element of every claim for damages from a violation of Section 1 of the Sherman

23  Act, as Plaintiffs here have alleged.  *See J. Truett Payne Co. v. Chrysler Motors*

24  *Corp.*, 451 U.S. 557, 562 (1981) ("To recover treble damages [under the Clayton
    Act] a plaintiff must make some showing of actual injury attributable to something

25  the antitrust laws were designed to prevent.").

26  [3] StarKist's plea period is the shortest of all pleas entered in the tuna investigation.
    Bumble Bee's plea began "at least as early as the first quarter of 2011."  SAMF

27  ¶ 118.  The plea for Mr. Hodge (the only StarKist-related individual to plead)
    refers to "2011" through "2013," without reference to any specific months or

28  quarters.  *Id.* ¶ 119.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

tuna. *Id.* ¶ 110-11.  On January 30, 2019, StarKist served interrogatory responses identifying all agreements with Bumble Bee and COSI:

> StarKist participated in two ***separate*** agreements with Bumble Bee and Chicken of the Sea during the time period between November 2011 and December 2013.

> First, ***acting on his own***, Stephen L. Hodge coordinated ***the timing*** of two 2012 StarKist list price announcements relating to certain canned tuna products through a series of ***bilateral*** communications with executives at Bumble Bee and Chicken of the Sea that occurred ***in the first half of 2012***.

> StarKist issued two national list prices during the relevant period (on January 13, 2012 [effective March 26, 2012], and April 26, 2012 [effective July 30, 2012]). . . . Mr. Hodge is a former StarKist employee, and he is the only StarKist employee with personal knowledge related to these communications.

> Second, as part of discussions at meetings of the National Fisheries Institute, StarKist, Chicken of the Sea, and Bumble Bee decided to not fraudulently label their respective branded skipjack canned tuna products as FAD-free during a time period when packaged seafood producers had no way to guarantee whether the source of skipjack tuna was FAD-free.

*Id.* ¶¶ 112-114, 116-117 (emphasis added).  StarKist also explained, in Rule 30(b)(6) testimony, that the two agreements about the timing of two 2012 list price increases related only to five-ounce cans. *See id.* ¶¶ 113, 115.  StarKist's admissions thus encompass only a fraction of the period and products for which Plaintiffs seek summary judgment.

   ***Bumble Bee's Admissions.***  Bumble Bee admitted to agreements "between the first quarter of 2011 and the fourth quarter of 2013," including "coordinating ***certain list price increases*** relating to ***certain canned tuna*** products through a series of ***bilateral*** communications."  SAMF ¶ 121 (emphasis added).

   ***COSI's Admissions.***  COSI (the ACPERA cooperator) admitted to seven agreements—only three involving StarKist and none involving specific prices:

COSI's knowledge of agreements responsive to this interrogatory is summarized as follows:

| Nature of Agreement | Time Period | Individuals with Information |
|---|---|---|
| Agreement between Bumble Bee and COSI to reduce the size of cans from 6 oz to 5 oz for branded tuna products | As early as March 2008 | John Sawyer, Shue Wing Chan |
| Agreement among Bumble Bee and COSI on timing of list price increase for branded tuna products | As early as June 2008 | Mike White, John Sawyer, Shue Wing Chan |
| Agreement among Bumble Bee and COSI on timing of net price increase for branded tuna products | As early as May 2010 | Mike White, John Sawyer, Shue Wing Chan |
| Agreement among Starkist, Bumble Bee and COSI on timing of list and/or net price increase for branded tuna products | As early as February 2011 | Mike White, John Sawyer, Shue Wing Chan |
| Agreement among Starkist, Bumble Bee and COSI on timing of list price increase for branded tuna products | As early as November 2011 | Mike White, John Sawyer, Shue Wing Chan |
| Agreement among Bumble Bee and COSI not to aggressively discount products through promotions for branded tuna products | As early as November 2011 | Shue Wing Chan |
| Agreement among Starkist, Bumble Bee and COSI not to produce a branded, FAD-Free Product | As early as February 2012 | John Sawyer, Shue Wing Chan |

*See id.* ¶ 120; Private Label Motion at 9-10.

**B.    Del Monte's Can Downsize and July 2008 List Price Increase Were Independent and Predated Defendant StarKist Co.'s Existence**

The earliest conduct addressed in Plaintiffs' Motions relates to an alleged conspiracy to reduce the size of six-ounce tuna cans in 2008.  At that time, Defendant StarKist Co. did not even exist; Del Monte sold tuna products under the "StarKist" brand name.  StarKist Co. did not begin operations until October 2008, when DWI purchased Del Monte's StarKist assets.  *See* Pre-2011 Motion § IV.C. The undisputed evidence demonstrates that Del Monte's decision to downsize its cans was unilateral and competitive.  As was Del Monte's decision to increase list prices in July 2008.  The legitimate and well-documented business rationale behind both decisions are detailed in the Pre-2011 Motion.  *Id.* §§ II.C, II.D.2, IV.B.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

### C. StarKist's and Del Monte's 2008-2011 Pricing Decisions Were Independent

Del Monte's August 2008 decision to increase list prices, StarKist's decision to decrease list prices in 2009, and StarKist's decision to increase net prices in 2010 were all unilateral decisions and were justified by legitimate business concerns—namely, fluctuations in fish costs. *Id.* §§ II.C, II.D.

Although StarKist did not move for summary judgment on its May 2011 National Price List increase, that decision was also independent and justified by significant "cost pressures."[4]  SAMF ¶ 123; *see also id.* ¶¶ 122; 124, 125.  In the months leading up to the increase, fish prices reached "unprecedented" levels that "nobody anticipated." *Id.* ¶ 127.  StarKist's "inventory levels" were also "critical[ly]" low. *Id.* ¶ 130.  These challenges had serious repercussions for StarKist's budgets, operating income, and profit projections. *See, e.g.*, *id.* ¶ 126 ("[O]ur [operating income] issues are staggering.  We're looking at a $30M hole right now . . . .").  So, StarKist made the unilateral decision to increase its list prices, which it announced on March 2, 2011 with an effective date of May 30, 2011. *See id.* ¶ 128.

### D. After Mr. Hodge Was Fired, StarKist Acted Independently and Competitively

StarKist fired Steve Hodge in December 2013. *Id.* ¶ 138.  With that, competitors knew that any conspiratorial agreement was over and that StarKist would no longer be part of any illegal agreement in the future. *Id.* ¶ 139.  This is not speculation—it was reflected in Bumble Bee's internal emails.  On December 18, 2013, Ken Worsham (Bumble Bee) emailed his Bumble Bee colleagues (including Chris Lischewski and Jan Tharp) informing them that Mr. Hodge had

---

[4] StarKist denies this price increase was collusive, but did not move as to this list price adjustment because COSI's admissions (with which StarKist disagrees) raise a dispute of material fact as to that issue.  *See* Pre-2011 Motion at 3, n.1.

been fired and that Bob Roberts was the new VP Sales at StarKist.  Ex. 21.  Mr.

Lischewski responded, "If that's true you can kiss goodbye a reasonable

competitor."  *Id*.  Scott Cameron (Bumble Bee) added, "This does not bode well

for a reasonable 2014."  *Id*.

StarKist was not aware of Mr. Hodge's conspiratorial agreements at the time

of his firing and, going forward, conducted its business competitively by pricing its

products in response to changing fish costs.  StarKist competed aggressively after

Mr. Hodge's departure, reducing prices through additional discounts, trade dollars,

and promotions.  For example, on December 13, 2013, Andras ("Andy") Mecs,

StarKist's then-Director of Trade Marketing, wrote to the StarKist Sales Group

about "2014 Guidance and Fish Cost Updates."  *See* SAMF ¶ 141.  Mr. Mecs

wrote, "StarKist is revising guidance once again.  We are looking to pass along

continued savings from lower fish costs and to strategically become more

aggressive.  Get ready to take swift action and to blitz the marketplace."  *Id*.  In

response to Mr. Mecs' instructions, StarKist's sales team immediately

implemented lower prices.  For instance, on December 18, 2013, Kelli Snell

(StarKist's sales lead for Wal-Mart) responded to Mr. Mecs's email with

reductions on pricing to Wal-Mart for various products.  *See id*. ¶ 142.  StarKist

was also aggressively pursuing opportunities to take market share from Bumble

Bee and COSI during this period.  In a January 2014 presentation, Mr. Mecs

emphasized vigorous competition, proposing a strategy to "pursue deletion of

Chicken of the Sea."  *See id.* ¶ 143.  Later the same month, Mr. Mecs proposed an

additional $1 million in growth incentives to convince Sam's Club stores to switch

from Bumble Bee to StarKist.  *See id.* ¶ 144.  StarKist's senior management

approved the plan, and StarKist implemented it with a target for shipment to stores

in the first half of 2014.  *See id.* ¶ 145.  Noting aggressive promotional activity

from Bumble Bee at multiple retailers, StarKist approved additional promotions

and discounts in order to grow its share.  *See id.* ¶ 146.  StarKist's Regional Sales

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1  Managers revised their pricing plans in order to compete aggressively in 2014.

2  *See, e.g., id.* ¶ 147 (approving reduced pricing and writing "[h]ope you have your

3  boxing gloves ready cause BBs gonna come back swinging"), ¶ 148 (February

4  2014 emails among Sales Group discussing near-term decreases to pricing and

5  increased promotions for Delhaize).  In February 2014, Mr. Mecs again wrote to

6  the Sales Group that StarKist was "looking to pass along continued savings from

7  lower skipjack fish costs" in the form of lower prices.  *See id.* ¶ 149.  He

8  encouraged offering discounts to ensure that StarKist was "competitively priced on

9  the shelf on an everyday basis" and increasing the duration or depth of existing

10  promotions.  *Id.*; *see also id.* ¶ 150.

11  ### E.  The Decision Not to Fraudulently Label Packaged Tuna

12  Consistent with the policy position of the National Fisheries Institute

13  ("NFI"), StarKist and the other members of NFI's Tuna Council decided that none

14  would label or market any of their branded tuna products by reference to fish

15  aggregating device ("FAD") usage—a fishing technique, the merits of which NFI,

16  Defendants, and environmental groups dispute.  StarKist incorporates by reference

17  Defendants' Gear-Type Claims Motion.

18  ### F.  Plaintiffs' Motions and Joinders

19  Plaintiffs' Motions and Joinders seek partial summary judgment against

20  StarKist[5] on the issue of "liability," although for different time periods:  June 2011

21  through July 2015 (EPPs, DPPs, CFPs) and November 2011 through July 2015

22  (DAPs).[6]  DAP Motion §§ I-V; EPP Motion at 1.  The DAP Motion also asks the

---

[5] The EPP Motion also seeks partial summary judgment as to Bumble Bee.  This Opposition responds to EPPs' arguments only to the extent they apply to StarKist.

[6] Although Plaintiffs' Motions appear to seek summary judgment on "liability," their Proposed Orders effectively concede that the evidence does not conclusively establish all of the elements of liability—in particular, the essential element of injury.  *See* Ex. 2 (EPP Proposed Order), at 2-3 (listing four elements of liability and seeking summary judgment only on the first three but not the fourth element of injury), Ex. 1 (DAP Proposed Order), at 4-5 (same).  Plaintiffs' Motions for Summary Judgment on "liability" should be denied for this reason alone.

1  Court to rule as a matter of law that StarKist:  (1) "was aware of the conspiracy

2  between Bumble Bee and COSI at least as early as March 2008"; (2) "joined the

3  conspiracy with the intent to pursue the same objective"; and (3) "is thus liable for

4  the acts of the conspiracy that occurred before November 2011."  *See* Ex. 1 (DAP

5  Proposed Order), at 5.  In EPPs' Proposed Order, EPPs ask the Court to grant

6  summary judgment on federal claims under the Sherman Act, *see* Ex. 2 (EPP

7  Proposed Order), at 2, but neither EPPs nor CFPs assert any federal claims.  As

8  indirect purchasers, their claims are asserted under various state antitrust,

9  consumer protection, and unjust enrichment laws only—the elements of which

10  vary widely in substance and number compared to the Sherman Act.  *See* App. A

11  to EPP Motion, ECF 1993-2.

## III.   LEGAL STANDARD

13        Plaintiffs are not entitled to summary judgment unless they can establish

14  there are no genuine disputes of material fact as to *any* of the elements of their

15  claims such that they are entitled to judgment as a matter of law.  Fed. R. Civ. P.

16  56(a).  Under Ninth Circuit law, Plaintiffs "must affirmatively demonstrate that no

17  reasonable trier of fact could find" in StarKist's favor.  *Rookaird*, 908 F.3d at 459.

18  Plaintiffs must make that showing without the benefit of any inferences—all of

19  which must be drawn *against Plaintiffs* and in favor of StarKist as the non-moving

20  party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

21  Circumstantial evidence, which by definition requires the drawing of inferences, is

22  insufficient as a matter of law to carry Plaintiffs' burden.  *See id.*; *Toscano v.*

23  *Prof'l Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001); *see also Tolan v. Cotton*,

24  572 U.S. 650, 657-60 (2014) (holding lower court erred by weighing the evidence

25  and drawing inferences in favor of the moving party); *United States v. W.A. Foote*

26  *Mem'l Hosp.*, No. 15-CV-12311, 2017 WL 3128102, at *4 (E.D. Mich. May 31,

27  2017) (denying plaintiff's summary judgment motion in an antitrust case where

28  "weighing of the evidence" and "credibility judgments" were necessary).  And,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1    Plaintiffs cannot win summary judgment by relying on the *absence* of evidence on

2    any issues for which they bear the burden of proof at trial, such as liability and

3    damages.  Rather, Plaintiffs must affirmatively prove each element of their claims.

4    *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

5    **IV.   ARGUMENT**

6        **A.    StarKist's Guilty Plea and Other Admissions Do Not Satisfy All
             Elements of Civil Liability and, Regardless, Do Not Support the
7            Breadth of Plaintiffs' Claims**

8            Neither StarKist's guilty plea nor its admissions are sufficient to establish

9    liability on Plaintiffs' claims for civil damages as a matter of law.  *First*, these

10   admissions are limited in time and product scope and cannot be extended (via

11   collateral estoppel or any other doctrine) to serve as undisputed evidence of

12   "liability" beyond their terms.[7]  *Second*, StarKist's guilty plea and admissions say

13   nothing about injury—an additional and essential element of Plaintiffs' civil claims

14   under the Clayton Act.[8]  Plaintiffs' attempts to invoke collateral estoppel fail as a

15   result, and Plaintiffs' Motions should be denied.

16   _____

17   [7] This failure to prove the temporal and product scope of their claims beyond
     dispute prevents summary judgment on Plaintiffs' antitrust claims, as well as their
18   various state consumer protection and unjust enrichment claims.  Additional
     deficiencies in Plaintiffs' state law claims are explained in Defendants' State Law
19   and Private Label Motions and are incorporated by reference.

20   [8] Section 4 of the Clayton Act allows parties to recover damages for violations of
     the federal antitrust laws.  In addition to proving the underlying antitrust violation
21   (here, a Sherman Act Section 1 violation), Section 4 of the Clayton Act also
     requires private plaintiffs (such as DPPs and DAPs) to prove "an injury in [its]
22   business or property by reason of anything forbidden in the antitrust laws."  15
     U.S.C. § 15(a).  This injury requirement is two-fold:  (1) DPPs and DAPs must
23   prove an injury-in-fact that was materially caused by Defendants' antitrust
     violation, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, n.9
24   (1969); and (2) they must prove an "injury of the type the antitrust laws were
     intended to prevent and that flows from that which makes the defendant's acts
25   unlawful," *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334 (1990).
     As AWG notes in its Joinder, the elements of its Kansas state claim are the same.
26   ECF No. 1997 at 2.  CFPs and EPPs bring their claims under California's
     Cartwright Act, and in the alternative, under the laws of various states, and injury
27   is a required element under those state laws as well.  *See, e.g.*, Cal. Bus. & Prof.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

### 1. Plaintiffs' Claims Exceed the Temporal and Product Scope of StarKist's Plea and Admissions

Plaintiffs cannot rely upon StarKist's plea and admissions as incontrovertible evidence of liability because their claims far exceed the limited time and product scope of those admissions. It is true a prior criminal conviction can collaterally estop a party from contesting a particular issue in a later matter, but only when the issue was, of necessity, decided in the prior criminal proceeding.[9] *See United States v. Real Property Located at Section 18*, 976 F.3d 515, 518 (9th Cir. 1992). The Ninth Circuit takes an exacting view when applying this standard. "Similarity between issues does not suffice; collateral estoppel is applied only when the issues are identical." *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1357 (9th Cir. 1985) (citations omitted); *see In re Volkswagen "Clean Diesel" Mktg. Sales Pracs. & Prods. Liability Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 6041723, at *4 (holding same issue must have been "directly determined in [the] previous criminal action.") (quoting *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 762 (9th Cir. 1991)).

Here, the "issue" for which Plaintiffs offer the guilty plea and admissions is *the entire breadth and scope of Plaintiffs' claims*. Plaintiffs' claims were *not*

---

Code § 16750(a) ("Any person who is injured in his or her business or property by reason of anything forbidden or declared unlawful by [the Cartwright Act], may sue therefor[.]"); Ariz. Rev. Stat. Ann § 44-1408(B) ("A person . . . injured in his business or property by violation of [Arizona Uniform State Antitrust Act] may bring an action for . . . damages sustained[.]"); App. A to EPP Motion, ECF 1993-2 (requiring "harm", "an impoverishment", or other form of injury); Private Label Motion at Apps. A-F (detailing state harmonization with federal antitrust law, which requires injury).

[9] The Ninth Circuit considers four factors: (1) the prior conviction must have been for a serious offense so that the defendant was motivated to fully litigate the charges; (2) there must have been a full and fair criminal proceeding to prevent convictions of doubtful validity from being used; (3) the issue on which the prior conviction is offered must of necessity have been decided in the criminal proceeding; and (4) the party against whom the collateral estoppel is asserted was a party or a party in privity to the prior proceeding. *Real Property*, 976 F.2d at 518 (citation omitted). StarKist does not dispute that factors 1, 2, and 4 are met here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1   decided in the criminal proceeding.  The only things "necessarily" decided by

2   StarKist's plea were the elements of a *criminal* Sherman Act violation in the Ninth

3   Circuit:  "[1] that the conspiracy charged existed at or about the time stated in the

4   indictment [here, between November 2011 and December 2013]; [2] that the

5   defendant knowingly . . . became a member of the conspiracy . . . ; [3] that

6   interstate commerce was involved."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*,

7   No. CR 09-110 SI, 2011 WL 1464858, at *4 (N.D. Cal. Apr. 18, 2011) (citing

8   *United States v. Alston*, 974 F.2d 1206, 1210 (9th Cir. 1992)).  Nothing more about

9   the conspiracy's scope was decided in the criminal matter.

10       Additionally, to the extent the scope of the conspiracy was described in the

11   criminal plea at all, it was *different* than the scope that Plaintiffs now claim is

12   beyond dispute.  Thus, while the guilty plea has no preclusive effect on issues that

13   were not "actually litigated and necessarily decided," if it is probative of StarKist's

14   conduct at all, it actually *undermines* Plaintiffs' claims.  *See Real Property*, 976

15   F.2d at 517-18.  The StarKist plea agreement is limited to two years and canned

16   tuna—far narrower than Plaintiffs' claims.

17       Further, nothing in StarKist's plea colloquy widens the scope of StarKist's

18   admissions, either temporally or in terms of product scope.  StarKist did not testify

19   that any agreements continued through 2013, it only affirmed its participation in

20   agreements that occurred *between* 2011 and 2013, leaving open the possibility that

21   those agreements culminated prior to December 2013.  *See* Ex. 13 (StarKist Plea

22   Colloquy), at 13-14.  Taking all inferences in StarKist's favor, this is insufficient to

23   establish the necessary elements of Plaintiffs' civil claims as a matter of law.  This

24   alone is sufficient grounds to deny Plaintiffs' Motions.

25       Finally, EPPs invite the Court to rule that all of the elements of liability for

26   their 58 different state antitrust, consumer protection, and unjust enrichment claims

27   have been met *as a matter of law* based on a bare recitation of the elements of

28   those claims provided in an appendix.  *See* App. A to EPP Motion, ECF 1993-2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1  EPPs provide *zero* explanation, analysis, or authority connecting the evidence in

2  this case with the different elements of each of their diverse state law claims.[10]

3  The Court should deny EPPs' Motion for that reason alone.  *See Antoninetti v.*

4  *Chipotle Mexican Grill, Inc.,* No. 05CV1660-J(WMC), 2007 WL 2456223, at *3

5  (S.D. Cal. Aug. 23, 2007) (collecting Ninth Circuit cases on the rule that

6  "arguments not raised by a party in its opening brief are deemed waived").

7      **2.**    **Plaintiffs Lack Undisputed Evidence of Injury and**
           **StarKist's Guilty Plea and Admissions Are Silent on the**

8             **Issue of Injury**

9         The doctrine of collateral estoppel also does not prevent StarKist from

10  challenging Plaintiffs' lack of injury.  Plaintiffs' *civil* claims require the additional

11  element of injury, which was not decided or even considered in the criminal

12  matter.  *See, e.g.*, 15 U.S.C. § 15(a) (Section 4 of the Clayton Act creates a private

13  cause of action for damages from violations of the Sherman Act only where a

14  plaintiff was "injured in [its] business or property"); Cal. Bus. & Prof. Code

15  § 16750(a) ("Any person who is injured in his or her business or property by

16  reason of anything forbidden or declared unlawful by [the Cartwright Act], may

17  sue therefor[.]"); *see also Alabama v. Blue Bird Body Co., Inc.*, 573 F.2d 309, 320

18  (5th Cir. 1978) ("[T]he issue of liability in antitrust cases includes not only the

19  question of violation, but also the question of fact of injury.").  Thus, "[t]he fact

20  ――――――――――――――

21  [10] For example, several consumer protection statutes require fraudulent intent.  *See*
*e.g.*, App. A to EPP Motion, ECF 1993-2 at 1 (Arkansas), 7 (Missouri).  Arizona's

22  unjust enrichment law requires the absence of a contract remedy.  *Id.* at 1.  South
Carolina requires proof of a "non-gratuitous benefit."  *Id.* at 14.  Vermont requires

23  proof that the benefit should be returned "in light of the totality of the

24  circumstances."  *Id.* at 16.  Many laws also require an agreement on prices
themselves (*see, e.g.*, *id.*, at 3 (Guam), 4 (Kansas), 6 (Minnesota), 9 (New

25  Hampshire), 13 (Rhode Island), 15 (Tennessee), 17 (West Virginia)), but StarKist
only admitted to an agreement regarding the *timing* of two list prices.  That such an

26  agreement may be an unreasonable restraint of trade under the Sherman Act does
not mean it amounts to an agreement to *raise* particular prices as required under

27  the laws of various states.  And, in any event, Plaintiffs fail to conclusively prove
all of these different elements of their more than 50 state law claims.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1    that [StarKist's] antitrust violation may be a per se offense under the criminal

2    provisions of section 1 of the Sherman Act does not satisfy all the elements

3    necessary for [civil] recovery under . . . the Clayton Act."  *Ohio Pub. Interest*

4    *Campaign v. Fisher Foods, Inc.*, 546 F. Supp. 1, 7 (N.D. Ohio 1982); *see also*

5    *Howard Hess Dental Laboratories, et. al. v. Dentsply Int'l Inc.*, 602 F. 3d 237, 248

6    (3d Cir. 2010) (affirming that the issue of injury to private plaintiffs was not

7    necessary to the judgment in favor of the government in previous case).  Indeed,

8    StarKist contests whether most of these Plaintiffs were injured.[11]  *See* Ex. 3 (Lerner

9    Report), at 202, Table 42.

10        Plaintiffs' Motions do not even address, much less foreclose the existence of

11   triable issues related to, the existence of injury—an essential element of their

12   claims.  Because Plaintiffs do not address the element of injury, they surely have

13   not affirmatively demonstrated all elements of their claims beyond dispute.  *See S.*

14   *California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003) ("As

15   the party with the burden of persuasion at trial, the Gas Company must establish

16   'beyond controversy *every essential element* of its' . . . claim.") (emphasis added).

17   Again, this failure is an independent ground to deny Plaintiffs' Motions.

18        **B.    Plaintiffs' Request for Partial Summary Judgment on "Liability"**
             **Is an Improper Attempt to Inflate Discrete and Limited**
19           **Agreements into a Single Overarching Conspiracy Lasting Eight**
             **Years and Affecting the Entire Industry**
20

21        Plaintiffs ask this Court to grant partial summary judgment on "liability" for

22   a conspiracy they claim stretched across almost five years (EPPs) or eight years

23

24   [11] StarKist also contests that the full scope of Plaintiffs' claims are timely under the
     Clayton Act's four-year statute of limitations and the limitations periods applicable
25   to Plaintiffs' state law claims and incorporates by reference its motions for
     summary judgment on statute of limitations grounds.  *See* 15 U.S.C. § 15(b); SOL
26   Motion (DAPs) (DAPs' pre-August 3, 2011 claims for damages are time-barred);
     SOL Motion (Classes) (same for DPPs' June 1, 2011 to August 3, 2011 claims and
27   CFPs' and EPPs' June 1, 2011 to August 24, 2014 claims).  These disputes also
     foreclose Plaintiffs' Motions as a matter of law.
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1   (DAPs) and affected all types and sizes of tuna products.  To do so, this Court

2   would need to find that the undisputed facts affirmatively demonstrate a single

3   overarching conspiracy that, in fact, lasted for five or eight years and affected all

4   tuna products—and that no reasonable juror could find otherwise.  But Plaintiffs'

5   Motions come nowhere near that showing.  Where is Plaintiffs' evidence of an

6   agreement (or even multiple agreements) that lasted for eight years?  Or the

7   agreement that Defendants would raise the price of all types and all sizes of tuna

8   products to all of their customers?  There is none, and Plaintiffs (tellingly) do not

9   even try to make this showing.[12]

10       Instead, Plaintiffs *assume* the existence of a single five- or eight-year,

11   industry-wide conspiracy.  For example, embedded in DAPs' argument that

12   StarKist should be liable for Bumble Bee's and COSI's 2008-2011 collusion is the

13   *assumption* that Bumble Bee's and COSI's 2008-2011 conduct and StarKist's

14   agreement regarding the timing of its 2012 list prices are all part of the same

15   overarching conspiracy.  Likewise, Plaintiffs' argument that the Court should

16   *presume* Defendants' alleged conspiracy continued beyond StarKist's plea period

17   indefinitely into the future *assumes* the existence of a single overarching

18   conspiracy regarding the prices of all tuna products, as opposed to StarKist's

19   admitted agreements, which are discrete and limited to the *timing* of its 2012

20   announcements in particular.  Finally, Plaintiffs' claims for *all* tuna products fall

21   apart unless one again *assumes* a single overarching conspiracy regarding all tuna

22   products, as opposed to distinct agreements regarding the announcement of

23

24   [12] The Department of Justice recently made clear at the ongoing trial of former
25   Bumble Bee CEO Chris Lischewski that the conspiracy began in 2011 and ended
     in 2013.  *See* Ex. 20 (Lischewski Tr.), at 335:11-17 ("The evidence will show that
26   the defendant and his two deputies started this conspiracy and then kept the
     conspiracy going for three years.  The conspiracy only ended when key
27   conspirators at StarKist and Chicken of the Sea left those companies or were
     transferred to different roles and when no one, not even the defendant, could
28   convince new people to take their place.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1    particular pricing actions, which related to prices on only some products.  Put most

2    simply, all of the pleas, admissions, and testimony in this case about discrete

3    agreements do not add up to match the scope of Plaintiffs' supposed five or eight

4    year industry-wide conspiracy.  This failure of proof prevents this Court from

5    granting partial summary judgment on "liability."

6           Plaintiffs sweep the various discrete agreements in this case under the

7    general moniker of "liability" in an effort to avoid carrying their burden as to each.

8    There is no legal basis for Plaintiffs' approach, and it is why Plaintiffs' Motions

9    fail to identify a single price-fixing case granting the type of relief they seek.

10   Plaintiffs' claimed evidence involves assorted and unrelated business decisions

11   made by many different individuals about completely different issues, such as a

12   can downsize, price increases, and a ban on FAD-free labeling.  Such wide-ranging

13   allegations of different interactions among different individuals weighs against a

14   finding of a single, overarching conspiracy.  *See Dahl v. Bain Capital Partners,*

15   *LLC*, 937 F. Supp. 2d 119, 137 (D. Mass. 2013) (evidence of "a kaleidoscope of

16   interactions among an ever-rotating, overlapping cast of Defendants" did not

17   suggest that "any single interaction was the result of a larger scheme" despite

18   evidence that "some groups of transactions and Defendants could be connected").

19          For instance, Plaintiffs' earliest allegations are about Del Monte's allegedly

20   collusive decision to reduce the standard can size from six ounces to five ounces.

21   EPPs' Compl. ¶¶ 243-268; AWG's Compl. ¶¶ 155-171.  Del Monte's decision had

22   nothing to do with prices or price lists, and it took place in 2007, before StarKist

23   Co. even existed.  It allegedly involved a different set of individuals and different

24   companies than those implicated in allegedly collusive list price increases *four*

25   *years later* in 2012.  *See* Pre-2011 Motion §§ II.C, IV.A; SAMF ¶ 113.  To suggest

26   that those two acts are part of a single, overarching conspiracy is illogical.

27   Plaintiffs go so far as to include claims regarding an agreement among Defendants

28   to refrain from labeling tuna "FAD free."  This agreement (which Defendants

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1    maintain was a pro-competitive decision of a trade association to accurately label

2    tuna)[13] has *nothing* to do with can sizes, list prices, or price announcements.

3    Plaintiffs advance no cogent argument as to how these various, unrelated actions,

4    involving separate groups of employees from various different parts of the

5    organizations, could possibly form a single conspiracy.  Yet, Plaintiffs' Motions

6    rest on the Court's willingness to improperly infer such a single eight-year,

7    industry-wide conspiracy *as a matter of law*.  Plaintiffs' claims and the evidentiary

8    record are in stark contrast to the facts in other antitrust cases where courts in this

9    Circuit found a single, overarching conspiracy.  Those cases included evidence of

10   *regimented* meetings with *repeat* players seeking to achieve *related* goals—such as

11   to set prices, production levels, and market shares.  *See In re Cathode Ray Tube*

12   *(CRT) Antitrust Litig.*, 308 F.R.D. 606, 611, 622 (N.D. Cal. 2015); *see also United*

13   *States v. Hui Hsiung*, 778 F.3d 738, 743 (9th Cir. 2015).

14          There is nothing regimented, repeated, or related here.  At most, the

15   evidence in this case depicts seven distinct bilateral agreements,[14] only three of

16   which—regarding the timing of two list price announcements in 2011 and 2012

17   and the "FAD free" agreement—involved StarKist.  *See, e.g.*, SAMF ¶ 120 (listing

18   out seven discrete agreements), ¶ 121 (describing discrete bilateral agreements),

19   ¶¶ 113 (same).  Even witnesses from COSI (the ACPERA cooperator) testified that

20   COSI's agreements occurred at distinct points in time, were unrelated, and were

21   finite in duration.[15]  StarKist disputes that many of these supposed agreements took

---

[13] *See* Gear Type Claims Motion at 2-9.

[14] COSI describes three of these agreements as "among Starkist [sic], Bumble Bee, and COSI," but its admissions do not address whether they were different bilateral agreements or one multilateral agreement.  SAMF ¶ 120.  However, both StarKist and Bumble Bee have described their agreements with other Defendants as solely bilateral agreements.  SAMF ¶¶ 112, 121.  This is yet another disputed issue of material fact.

[15] *See* Ex. 9 (White Dep.), at 247:21–248:15 (agreements occurred at different points in time, involving different people on different subject matters); Ex. 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1    place at all or that it knew about others.  SAMF ¶¶ 112-114; Pre-2011 Motion §

2    IV.  These disputes, alone, are enough to defeat Plaintiffs' request for partial

3    summary judgment on "liability."  But, even if they were not, discrete agreements

4    are insufficient to establish a single overarching conspiracy as a matter of law.  *See*

5    *In re Iowa Ready-Mix Concrete Antitrust Litig.*, 768 F. Supp. 2d 961, 974-76 (N.D.

6    Iowa 2011) (holding that three guilty pleas relating to bilateral agreements were

7    insufficient to establish a single overarching conspiracy); *see also Precision*

8    *Assocs., Inc. v. Panalpina World Transport (Holding) Ltd.*, No. 08-CV-42, 2011

9    WL 7053807, at *30 (E.D.N.Y. Jan. 4, 2011) (noting "it is not plausible that

10   defendants *who met in different years* . . . intended to raise the uniform base rate

11   for freight forwarding services overall") (emphasis added).

12        Nor can Plaintiffs point to evidence of a "larger picture" or overall scheme

13   "from which inferences of a wider conspiracy can be drawn" or of which each

14   agreement was a part.  *See Dahl*, 937 F. Supp. 2d at 135.  As an initial matter,

15   Plaintiffs (as the moving parties) are not entitled to the benefit of any inferences on

16   these Motions.  *See Tolan v. Cotton*, 572 U.S. 650, 651 (2014) ("[I]n ruling on a

17   motion for summary judgment, [t]he evidence of the nonmovant is to be believed,

18   and all justifiable inferences are to be drawn in [its] favor.").  And, even if they

19   were, courts consistently refuse to infer a single overarching conspiracy from these

20   types of isolated acts.  *See Ready-Mix Concrete*, 768 F. Supp. 2d at 975 (granting

21   defendants' motion and declining to infer a single overarching conspiracy from

22   "certain bilateral agreements" where the "larger picture" was missing).  Plaintiffs

23   _____

24   (Sawyer Dep.), at 227:25–230:2 ("[t]here is different timing and different
     individuals—or should I say 'companies'—that are within each one of the

25   agreements" and responding "[c]orrect" to questions about whether the agreements
     were different, whether they occurred at distinct points in time, whether they

26   involved different people, and whether they involved different companies); Ex. 4
     (Chan Dep.), at 275:5-276:2 (agreeing that every conspiracy "represents a separate

27   and distinct agreement," that "there is seven different episodes," that the alleged
     agreements are different from each other, and that they "are distinct periods of

28   time").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1   offer no evidence of the existence of a common objective, nor communications,

2   meetings, information exchanges, or collusion *across* agreements that would

3   establish a common scheme, and of course, Defendants' goal to increase profits—

4   shared by every for-profit entity—could not be sufficient without swallowing the

5   rule.  Nor do Plaintiffs offer evidence that any "single interaction was the result of

6   a larger scheme."  *Dahl*, 937 F. Supp. 2d at 137.  And, Plaintiffs' Motions ignore

7   evidence to the contrary:  for example, one cooperating witness testified that "there

8   is no . . . big agreement or something," Ex. 4 (Chan Dep.), at 184:16-185:2, and

9   two others testified that they had no knowledge of any agreement other than the

10  seven distinct agreements in COSI's interrogatory responses.  *See id.* Ex. 7

11  (Sawyer Dep.), at 230:4-10; Ex. 9 (White Dep.), at 248:17-22 .

12       Finally, Plaintiffs do not show that the discrete agreements were

13  interdependent.  *See Dahl,* 937 F. Supp. 2d at 135.  COSI's interrogatory responses

14  establish that each agreement was specific to a particular pricing event or strategic

15  action, such as a can downsize or a decision not to fraudulently label its products.

16  *See* SAMF ¶ 120.  The success, or even existence, of one agreement was not

17  necessary for the success or existence of any other, *i.e.* whether Defendants' cans

18  were five ounces or six had no effect on whether they were labeled FAD free,

19  which in turn had no effect on what their list prices were and when those list prices

20  were announced.

21       In sum, Plaintiffs offer no factual support for the single overarching

22  conspiracy that this Court must find existed, beyond dispute, before granting

23  partial summary judgment on "liability."  And, what evidence does exist points to

24  disputed issues of material fact.  Either way, Plaintiffs' Motions should be denied.

25  **C.   Plaintiffs Do Not Establish Liability as a Matter of Law for
          Conduct Prior to StarKist's Plea Period**
26

27       Plaintiffs also cannot affirmatively demonstrate StarKist's direct

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1   participation in any conspiracy prior to its plea period[16] or StarKist's knowledge

2   about (and thus potential liability for) a series of agreements between COSI and

3   Bumble Bee during that timeframe.  Their Motions should be denied.

### 1. Plaintiffs Have Not Affirmatively Demonstrated that StarKist Was Involved in Any Unlawful Agreements Prior to Its Plea Period

6   Plaintiffs do not have *any* proof, let alone proof sufficient to show that

7   StarKist's conduct was *indisputably* collusive for the pre-2011 time period.  As

8   explained in the Pre-2011 Motion, there is no direct evidence that StarKist was

9   involved in any of the agreements between COSI and Bumble Bee before 2011.

10  Pre-2011 Motion §§ II.C-D, IV; *see* Ex. 11 (COSI Interrog. Resps.), at 4.  And

11  here, as the moving parties, Plaintiffs cannot rely on circumstantial evidence

12  because all inferences must be drawn *against* Plaintiffs on *their* Motions for partial

13  summary judgment.  *See Liberty Lobby*, 477 U.S. at 255; *Tolan*, 572 U.S. at 657-

14  60; *W.A. Foote Mem'l Hosp.*, 2017 WL 3128102, at *4.

15  Even as to StarKist's May 30, 2011 list price increase, which predates

16  StarKist's plea period, but was not raised in StarKist's Pre-2011 Motion, Plaintiffs

17  cannot establish, as a matter of law, that it was collusive.  Plaintiffs ignore

18  unequivocal testimony denying that collusion played any role in that particular

19  pricing action.[17]  *See, e.g.*, SAMF ¶ 125.  They also fail to acknowledge—and in

20  some instances affirmatively misrepresent—the fact that StarKist's plea and

21  corporate admissions *exclude* pre-November 2011 conduct.  SAMF ¶¶ 110, 112-

22  114.  Thus, there are disputed facts regarding that price increase, and Plaintiffs'

23  Motions as to the pre-November 2011 period should be rejected.

24  Plaintiffs also cannot use Steve Hodge's guilty plea to expand the scope of

25  StarKist's admissions.  Mr. Hodge's plea encompasses the 2011-2013 time period

---

27  [16] For DAPs' Motion, 2008-2011.  For EPPs' Motion, June-October 2011.

28  [17] Plaintiffs similarly ignore the record evidence detailing the many justifiable business reasons in support of the May 2011 list price increase.  *See* Section II.C.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

19

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1  generally, without specifying any month in 2011.  SAMF ¶ 119.  Yet Plaintiffs ask

2  the Court to *infer* that Mr. Hodge's plea *necessarily* encompasses pre-November

3  2011 conduct.  Again, as the moving parties, Plaintiffs are not entitled to such an

4  inference, and Mr. Hodge's plea does not support their effort to hold StarKist liable

5  *as a matter of law.  See Liberty Lobby*, 477 U.S. at 255; *see also United States v.*

6  *Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006) (explaining that ambiguities

7  in plea agreements must be construed "in favor of the defendant").  Plaintiffs also

8  point to the guilty pleas and admissions of Bumble Bee, COSI, and their

9  employees.  *See* EPP Motion at 7-12; DAP Motion at 14-16.[18]  However,

10  admissions by a *different* party do not foreclose a dispute of fact as to StarKist.[19]

11  *See W.A. Foote Mem'l Hosp.*, 2017 WL 3128102, at *4.

12           Finally, Plaintiffs rely on Fifth Amendment invocations by individuals who

13  no longer are—and in several cases, never were—associated with StarKist.  *See*

14  DAP Motion at 14-16; EPP Motion at 11.  But, the Ninth Circuit has made clear

15  that adverse inferences from Fifth Amendment invocations alone are insufficient to

16  establish the absence of a genuine dispute of material fact.  *See S.E.C. v. Colello*,

17  139 F.3d 674, 678 (9th Cir. 1998) (holding that adverse inferences from Fifth

18  Amendment invocations are not enough to succeed at summary judgment).

19  Plaintiffs fail to explain why it would be permissible to draw adverse inferences

20  against the non-moving party (StarKist) under these circumstances, or how such

21  inferences could be sufficient to establish liability as a matter of law.  *See Doe ex*

22  *rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1265 (9th Cir. 2000) (explaining that

23

24  _____

25  [18] DAPs failed to paginate their motion.  All cites to DAPs' motion refer to the ECF file-stamped page numbers.

26  [19] Moreover, Mike White of COSI testified that StarKist *publicly* announced its

27  May 2011 list price increase before COSI decided whether it would increase its list prices too.  Ex. 9 (White Dep.), at 218:10-21.  He also testified that as to that

28  particular increase, he "never discussed specific prices or price levels" with StarKist.  *Id.* at 222:6-223:10.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1   whether an adverse inference can be drawn must be evaluated "on a case-by-case

2   basis under the microscope of the circumstances of that particular civil litigation").

3         And, even if they could rely upon an adverse inference from a Fifth

4   Amendment invocation, Plaintiffs would (at a minimum) be required to point to

5   additional "independent evidence" of *each* fact about which the witnesses refused

6   to testify.  *Glanzer*, 232 F.3d at 1264.  But, Plaintiffs' Motions merely reference

7   Fifth Amendment invocations generally without offering any additional evidence

8   of the facts they hope to establish.  They also fail to adequately address the context

9   of the invocations at issue—*i.e.*, wholesale invocations to every substantive

10  question by non-parties, including *former* StarKist employees and individuals who

11  have *never* been associated with StarKist.  Drawing adverse inferences against

12  StarKist under these circumstances is inappropriate and "unfair[ly] prejudic[ial]."

13  *See MicroTechnologies, LLC v. Autonomy, Inc.*, No. 15-CV-02220-JCS, 2018 WL

14  5013567, at *3-4 (N.D. Cal. Oct. 16, 2018) (refusing to draw adverse inferences

15  from "blanket assertions of the Fifth Amendment" by "former officers"); *see also*

16  *In re Urethane Antitrust Litig.*, No. 04-1616-JWL, 2013 WL 100250, at *1, *5 (D.

17  Kan. Jan. 8, 2013) (declining to draw adverse inferences against one defendant

18  from Fifth Amendment invocations to every "substantive question[]" by employees

19  of another defendant).

### 2.  StarKist Is Not Liable for Conduct by Bumble Bee and COSI Prior to Its Plea Period

22        DAPs do not point to *any* evidence showing StarKist knew anything about

23  any pre-November 2011 agreements between COSI and Bumble Bee (which are,

24  themselves, disputed by Bumble Bee).[20]  Yet, DAPs ask the Court to find as a

[20] Contrary to COSI's admissions, Bumble Bee disputes the existence of the alleged pre-2011 agreements between COSI and Bumble Bee.  Ex 10 (Bumble Bee Interrog. Resps.), at 5-6; Ex. 5 (Hofmeister Dep.), at 69:22-70:2.  StarKist could not have known about agreements that never actually occurred.  And Bumble Bee's unequivocal denial alone creates a genuine dispute of material fact as to the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1   matter of law that StarKist knowingly joined a *pre-existing* conspiracy between

2   Bumble Bee and COSI and should be held liable for their conduct.  But, to

3   establish StarKist's liability for its *co-Defendants'* alleged pre-November 2011

4   conduct, DAPs must prove it is beyond dispute that:  (1) COSI and Bumble Bee

5   colluded from 2008-2011; (2) that COSI's and Bumble Bee's pre-November 2011

6   agreements and StarKist's agreements regarding the timing of its 2012 list price

7   announcements were all part of the same single overarching conspiracy; and

8   (3) that StarKist had knowledge of COSI's and Bumble Bee's pre-November 2011

9   agreements when it entered into agreements regarding the timing of its 2012 list

10   price announcements.  *See Indus. Bldg. Materials, Inc. v. Interchemical Corp.*, 437

11   F.2d 1336, 1343 (9th Cir. 1970).[21]  DAPs fall short on all three issues.

12          As discussed above, the record reflects a dispute over whether there were

13   any agreements at all between COSI and Bumble Bee before 2011.  *See* Section

14   IV.C.1.  Plaintiffs also fail to establish the existence of (or StarKist's participation

15   in) a single five- or eight-year, industry-wide conspiracy.  *See* Section IV.B.  DAPs

16   nevertheless ask this Court to find as a matter of law that StarKist *knew* about its

17   *competitors'* collusion and then joined it.[22]  But DAPs do not have proof of any

18

19   agreements' existence.  *See, e.g.*, *Techsavies, LLC v. WDFA Mktg. Inc.*, No. C10-
20   1213 BZ, 2011 WL 589809, at *3 (N.D. Cal. Feb. 10, 2011) ("[T]his matter is the
     quintessential 'he said, she said' dispute that is not appropriate for summary
21   judgment.").  DAPs' joining-with-knowledge argument therefore fails.

22   [21] DAPs fail to cite a *single* case holding that a late-joining conspirator was liable,
     as a matter of law, for the prior acts of its co-conspirators on the basis of the
23   latecomer's knowledge.  The best DAPs can do is cite cases in which a *defendant's*
     motion was denied without any actual analysis of its knowledge.  *See Indus. Bldg.*
24   *Materials*, 437 F.2d at 1343; *see also Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d
     919, 930 (7th Cir. 2016).
25

26   [22] In addition to trying to hold StarKist jointly and severally liable for its
     competitors' purported collusive sales from 2008 to 2011, DAPs seek summary
27   judgment on *StarKist's* sales during that same period (which were set
     competitively and were not the subject of collusion).  This is just one of the many
28   ways in which DAPs are overreaching, and those efforts should be rejected.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1  such knowledge.[23]  Instead, DAPs ask the Court to *infer*—and hold as a matter of

2  law—that StarKist knew about pre-November 2011 agreements between COSI and

3  Bumble Bee.  But again, as the moving parties, DAPs are not entitled to the benefit

4  of any inferences.  *See Toscano*, 258 F.3d at 983; *Liberty Lobby*, 477 U.S. at 255.

5  This is dispositive, and DAPs' Motion should be denied.

6       But, even if this Court were allowed to grant DAPs any evidentiary

7  inferences here, their circumstantial evidence falls far short of an inference that

8  StarKist knowingly joined a pre-existing conspiracy.  *First*, the law does not

9  permit the inferences of anticompetitive conduct that Plaintiffs seek from mere

10  competitor contacts.  *See In re Citric Acid Litig.*, 191 F.3d 1090, 1103 (9th Cir.

11  1999) (holding competitor communications "do not tend to exclude the possibility

12  of legitimate activity").  *Second,* StarKist's collection of competitive intelligence

13  about COSI's and Bumble Bee's can sizes and prices is not evidence that StarKist

14  knew about *agreements* between them.  Courts permit and recognize the pro-

15  competitive value of market intelligence.  *In re Baby Food Antitrust Litig.*, 166

16  F.3d 112, 126 (3d Cir. 1999) ("it makes common sense to obtain as much

17  information as possible of the pricing policies . . . of one's competitors").  *Third*, as

18  explained in Section IV.C.1, Plaintiffs have not met the prerequisites for the

19  adverse inferences they seek.  *Finally*, DAPs' hodgepodge of remaining evidence

20  consists of ambiguous documents that cannot support their burden to produce

21  affirmative evidence demonstrating their claims as a matter of law.  *See, e.g.*,

22  StarKist's DAP SUF Opp'n ¶¶ 1, 10.   For example, DAPs rely on documents that,

23  at most, suggest Bumble Bee and COSI learned information about StarKist's

24  prices.  *See, e.g.*, DAP Motion at 25-26 (citing Ex. 14; Ex. 15.).  Not only is

25  pricing information public after it is announced, *see* Ex. 12 (Mecs Decl.), at ¶ 25,

26  these documents have nothing to do with *StarKist's knowledge* of its co-

27  _____

28  [23] In fact, DAPs ignore the record evidence that affirmatively shows that StarKist did *not* have such knowledge.  *See, e.g.*, SAMF ¶ 136.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1  Defendants' conduct, and so do not advance DAPs' argument that StarKist joined a

2  conspiratorial scheme with knowledge of alleged agreements that came before.

3      DAPs' request for a ruling as a matter of law that StarKist knowingly

4  entered into a conspiratorial scheme should be denied.

5      **D.  Because Plaintiffs Have Not Indisputably Proven the Existence of an Ongoing Conspiracy, StarKist Does Not Carry Any Burden to Establish Withdrawal**

6

7      From 2013 to 2015, StarKist discounted its products aggressively and its net

8  prices markedly decreased as a result.  SAMF ¶ 140.  It is against that competitive

9  backdrop that DAPs request partial summary judgment against StarKist through

10  July 2015 because of StarKist's supposed failure to withdraw from the conspiracy.

11  But DAPs have not proven (and certainly not beyond dispute) the factual

12  predicates that would require StarKist to make a showing of withdrawal.  *First*, as

13  discussed above, DAPs have failed to affirmatively demonstrate the existence of an

14  overarching conspiracy.  *Second*, Plaintiffs have not established as a matter of law

15  that the agreements regarding the timing of StarKist's 2012 National List Price

16  adjustments did not culminate upon their announcements in 2012.  And, *third,*

17  Plaintiffs disregard evidence that shows (or, at the very least, creates a dispute

18  about) StarKist's withdrawal from any conspiracy prior to 2015.  Plaintiffs argue

19  "there is no evidence that StarKist ceased its participation in the conspiracy after

20  2013,"[24] (DAP Motion at 19; EPP Motion at 13), but this ignores the well-

21  developed factual record.

22      **1.  Plaintiffs Do Not Prove, as a Matter of Law, that Any Agreements Did Not Culminate Prior to 2015**

23

24      StarKist has acknowledged that (through Mr. Hodge) it participated in an

25  agreement regarding the timing of two list price increases in 2012.  But it disputes

26  _____

27  [24] EPPs also erroneously argue that StarKist admitted to "an agreement to control discounting."  EPP Motion at 13.  As discussed above, the *only* pricing agreement

28  StarKist admitted to was coordinating the timing of two list price increases.  *See* SAMF ¶ 113.

1   that there was any agreement about the prices themselves.  *See* Ex. 19 (StarKist

2   Interrog. Resps.), at 3.  Thus, the only *undisputed* object of those agreements was

3   limited to coordinating the *timing* of list price announcements.  Once that object

4   was completed, the conspiracies culminated.  *See In re Packaged Seafood Prods.*

5   *Antitrust Litig.*, 277 F. Supp. 3d 1167, 1184 (S.D. Cal. 2017) ("[O]nce a conspiracy

6   is established 'it remains actionable ***until its purpose has been achieved*** or

7   abandoned.'") (citation omitted) (emphasis added).  StarKist's purpose of

8   coordinating list price increase announcements was achieved on January 13 and

9   April 26, 2012 (the dates the list price adjustments were announced), and the

10  conspiracies were complete as soon as each announcement occurred.[25]

11  Additionally, as discussed above, there is no evidence or theory connecting the

12  timing of these 2012 list price announcements to can size decisions made over four

13  years earlier or a subsequent agreement about environmental labeling.  Plaintiffs

14  have not established beyond dispute the existence of an overarching conspiracy at

15  all, much less one that continued beyond the 2012 list price timing agreements.

16      Indeed, StarKist's plea is evidence that StarKist *did not* continue to collude

17  after 2013.  DAPs incorrectly cite *S.E.C. v. Hilsenrath* for the proposition that,

18  "while StarKist's guilty plea does not have preclusive effect after December 2013,

19  it 'is still extremely probative' of its continued participation in the conspiracy, such

20  that summary judgment is appropriate."  *See* DAP Motion at 20.  But the

21  *Hilsenrath* court did *not* find that the guilty plea was probative of continued

22  participation—just that it was "probative as a party admission and evidence" of the

23  violation alleged.  No. C 03-03252 WHA, 2008 WL 2225709, at *4 (N.D. Cal.

24  May 29, 2008), *aff'd*, 406 F. App'x 197 (9th Cir. 2010).  The court went on to

25  explain that the conduct underlying the criminal conviction—defendant's material

---

[25] At the latest, the conspiracy was over when StarKist's competitors announced their price increases in 2012.  Bumble Bee's 2012 list price announcements occurred on January 17 and May 25.  Ex. 16; Ex. 17.  COSI's 2012 list price announcement occurred on January 18.  *Id.* Ex. 18.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

25

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

misstatements—continued past the plea period.  *Id.* at \*5.  The only conduct underlying StarKist's plea involved Mr. Hodge, who was fired in 2013.  *See* SAMF ¶¶ 137-38.  And Defendants' admissions, at most, support the existence of separate conspiracies of finite duration.  *See* Section IV.B.  For example, DAPs cite Bumble Bee's admission that it coordinated certain promotional levels but omit that these communications ***ended in the fourth quarter of 2013***.  *See* SAMF ¶ 121.  Again, that was when StarKist fired Mr. Hodge, whom Bumble Bee identified as a participant in that agreement.  *Id.* ¶¶ 121, 138.

Finally, the evidence DAPs cite in support of a post-2013 conspiracy (all of which is disputed and inferential)[26] is insufficient to establish the existence of such a conspiracy as a matter of law.  Plaintiffs make much of a single document— roughly translated notes from an August 2014 StarKist board meeting—where Sam Lee (former StarKist board member and CEO) states, "StarKist and Bumble Bee *had* an *implicit understanding*."  *See* Ex. 22, at 649E (emphasis added).  In addition to likely translation issues,[27] this document does not prove the existence of a conspiracy for several reasons.  *First*, and foremost, Plaintiffs ask the Court to make inferences from the document to which they are not entitled as the moving party.  *Second*, an "implicit understanding" does not establish an illegal agreement. To the contrary, the words "implicit" and "understanding" suggest the opposite, particularly in the context of an oligopoly.[28]  *See* Pre-2011 Motion § II.A; Philip E.

---

[26] DAPs claim that "ample evidence demonstrates that the conspiracy continued until July 2015," citing to four supposed paragraphs in their separate statement that are nowhere to be found.  *See* DAP Motion at 20-21.  Any argument that relies on those paragraphs is unsubstantiated.

[27] StarKist's 30(b)(6) witness, Scott Meece, noted that he had concerns about translations "from English to Korean and back" and that he sees problems with those translations "from time to time."  Ex. 6 (Meece Dep.), at 103:2-5.  Mr. Meece stated that the statement about "an implicit understanding" was "probably a translation error."  *Id*. at 102:9-10.

[28] Oligopolists often refrain from undercutting their competitors in the absence of any collusive agreement because of the interdependent nature of their decisions.

1   Areeda & Herbert Hovenkamp, *Antitrust Law: An Analysis of Antitrust Principles*

2   *and Their Application* ¶ 1429 (4th Ed. 2018). *Third*, Plaintiffs ignore that Mr.

3   Lee's statement is in the past tense—he says "had"—and thus is not evidence of an

4   ongoing agreement. *Fourth*, contrary to Plaintiffs' speculation that StarKist was

5   debating whether to cheat on an alleged agreement, the document instead shows

6   StarKist internally deciding what independent, competitive actions to take to gain

7   share in a segment that Bumble Bee historically dominated. *See* Ex. 22, at 649E.

8   Indeed, Mr. Moonsu Park, a StarKist board member, points out that StarKist

9   sacrificed profit to gain market share in the segment. *Id.*

10      Plaintiffs also argue "the same individuals who colluded on pricing between

11   2011 and 2013 continued to communicate between January 2014 and July 2015,"

12   citing Hubert Tucker as the sole StarKist participant. DAP Motion at 20. But

13   Mr. Tucker worked for ***COSI***—not StarKist—when DAPs claim he "colluded on

14   pricing" by "surreptitiously exchanging price lists" in January 2012.[29] *See*

15   StarKist's EPP SUF Opp'n ¶ 108; StarKist's DAP SUF Opp'n ¶ 46.

16      **2.    StarKist Competed Vigorously After Mr. Hodge Was Fired**

17      As discussed in Section II.D, StarKist competed aggressively between 2013

18   and 2015 by lowering net prices, notably in Q1 of 2014. The evidence shows that

19   StarKist's prices were set independently and in relation to fish costs. *See* SAMF

20   ¶ 149 (Andy Mecs writing to the Sales Group to convey that StarKist was "looking

21   to pass along continued savings from lower skipjack fish costs"); Ex. 3 (Lerner

22   Report), at ¶¶ 65–69 ("[T]he price of StarKist's . . . packaged tuna products are

23   primarily driven by changes in costs, particularly fish costs, which varied widely

24   over the relevant time period."). It also shows that StarKist was pursuing

25   _____

26   Pre-2011 Motion § II.A. That "StarKist and Bumble Bee had an implicit
    understanding that they would not attack each other's pouch and WM segments"

27   means they independently decided not to compete aggressively on price, which is
    exactly what one would expect from an oligopolist acting independently in its own

28   individual self-interests. *See id.*

[29] StarKist did not hire Mr. Tucker until July 2012. SAMF ¶ 151.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

27

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

competitive victories to take share from Bumble Bee and COSI. *See* Section II.D.

### 3. At Minimum, the Record Reflects a Genuine Dispute of Material Fact as to Whether StarKist Withdrew Before July 2015

Even if Plaintiffs had successfully carried their burden of establishing the existence of an ongoing conspiracy continuing beyond StarKist's 2012 list price announcements, the record establishes a genuine dispute over whether StarKist withdrew from Plaintiffs' alleged (but disputed) overarching conspiracy before July 2015.[30] There is no set list of factors sufficient to establish withdrawal, but, at a minimum, a defendant must show that it engaged in "affirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators." *United States v. U.S. Gypsum Co.*, 438 U.S. 422, 463-65 (1978) (finding that jury instructions requiring defendant to have affirmatively notified coconspirators of its withdrawal were "unnecessarily confining," constituting reversible error); *see also Virginia v. McKesson Corp.*, No. C 11-02782-SI, 2013 WL 1287423, at *3 (N.D. Cal. Mar. 28, 2013) ("A defendant can establish withdrawal from a conspiracy in various ways."). Withdrawal can be established when a defendant shows "individualized, customer-by-customer price negotiations" accompanied by a pattern of downward pricing. *See United States v. Nippon Paper Indus. Co.*, 62 F. Supp. 2d 173, 191-92 (D. Mass. 1999).

StarKist engaged in numerous affirmative acts *inconsistent* with a price-fixing conspiracy beginning in December 2013, when StarKist fired Mr. Hodge,

---

[30] Plaintiffs cite a number of cases that do not support the judgment they are seeking. For example, the court in *In re TFT-LCD (Flat Panel) Antitrust Litigation*, 820 F. Supp. 2d 1055 (N.D. Cal. 2011), was ruling on *defendants'* motion for partial summary judgment regarding withdrawal, not a motion by plaintiffs. There, the court found a triable issue as to whether defendants withdrew from the conspiracy. *Id.* at 1060-61. Similarly in *Winn-Dixie Stores, Inc. v. Southeast Milk, Inc.*, No. 3:15-cv-1143-J-39PDB, 2019 WL 3854976, slip op. at *6 (M.D. Fla. Jan. 16, 2019), the court was ruling on *defendants'* motion for summary judgment on statute of limitations and standing issues. The court found that a genuine issue of material fact existed as to defendants' withdrawal. *Id.*

1  the only StarKist employee who conspired.  *See* SAMF ¶¶ 137-38.  After Mr.

2  Hodge was terminated, StarKist's competitors knew that any existing

3  conspiratorial agreement was over and none would be reached in the future.  *See*

4  *id.* ¶ 139; *see also* Ex. 20 (Lischewski Tr.), at 335 ("The conspiracy only ended

5  when key conspirators at StarKist and [COSI] left those companies . . . and when

6  no one, not even defendant, could convince new people to take their place.").

7  Indeed, on December 18, 2013, Ken Worsham (Bumble Bee) emailed his Bumble

8  Bee colleagues (Chris Lischewski, Jan Tharp, and others) informing them that Mr.

9  Hodge was fired and there was a new StarKist VP Sales.  *See* Ex. 21.  Mr.

10  Lischewski responded, "if that's true you can kiss a reasonable competitor

11  goodbye."  *Id.*  Scott Cameron added, "this does not bode well for a reasonable

12  2014."  *Id.*  Further, as discussed in Section II.D., StarKist competed aggressively

13  between 2013 and 2015.  StarKist engaged in customer-by-customer negotiations,

14  resulting in decreasing net prices,[31] which are strong evidence of withdrawal.  *See*

15  *Nippon*, 63 F. Supp. 2d at 191.

16       Thus, there are (at minimum) genuine disputes of material facts regarding:

17  (1) whether there was a single overarching conspiracy, (2) what time period the

18  conspiracy (as Plaintiffs allege) or conspiracies (as the evidence shows) covered,

19  including whether there was any conspiracy at all after StarKist's 2012 list price

20  announcements, (3) what products were implicated by any agreements, and

21  (4) whether StarKist affirmatively withdrew from the disputed conspiracies.

22  Plaintiffs' Motions should be denied.

23  **V.    CONCLUSION**

24       As set forth above, StarKist respectfully requests that the Court deny

25  Plaintiffs' Motions and Joinders.

26

27  ───────────────

28  [31] *See* Ex. 3 (Lerner Report), at ¶¶ 43, 53-56 ("Price and promotional terms are negotiated frequently."), Figs. 8-12 (demonstrating decreasing net prices from 2013-2015).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

29

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD

1 | Dated:  November 7, 2019

LATHAM & WATKINS LLP

2

By:  s/ Belinda S Lee

3

4 | Alfred C. Pfeiffer (CA 120965)
Christopher S. Yates (CA 161273)

5 | Belinda S Lee (CA 199635)
Niall E. Lynch (CA 157959)

6 | Ashley M. Bauer (CA 231626)
505 Montgomery Street, Suite 2000

7 | San Francisco, CA 94111-6538
Tel:      (415) 391-0600

8 | Fax:      (415) 395-8095
Email:  Al.Pfeiffer@lw.com

9 | Email:  Chris.Yates@lw.com
Email:  Belinda.Lee@lw.com

10 | Email:  Niall.Lynch@lw.com
Email:  Ashley.Bauer@lw.com

11

12

13 | *Counsel for Defendant StarKist Co.*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OMNIBUS OPP'N TO PLS.' MOTS. FOR
SUMM. J. AGAINST STARKIST
3:15-md-02670-JLS-MDD