1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

10
11

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MDD |
| | **ORDER GRANTING DIRECT PURCHASER PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** |
| This filing relates to the Direct Purchaser Plaintiff Class Action Track | **RE: ECF No. 2674** |

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Pending before the Court is the Direct Purchaser Plaintiffs ("DPPs") renewed motion for preliminary approval of their proposed settlement with Defendant Chicken of the Sea International ("COSI")—as well as its parent company, Defendant Thai Union Group PCL ("TUG")—following nearly six years of litigation. The DPPs thus respectfully ask the Court for preliminary approval of this Settlement and the proposed notice, and that the Court set a hearing date for final approval. The DPPs also seek proposed $5,000 service awards for each of the Class Representatives.

The DPPs submitted their original request for preliminary approval of the proposed Settlement on March 31, 2021. ECF No. 2533. At a hearing held on December 8, 2021, the Court denied that motion without prejudice, instructing the DPPs to refile it with more information. They did so on December 1, 2021.

As described below, the proposed Settlement with COSI and TUG is likely to be approved as fair, adequate, and reasonable at a final approval hearing, and accordingly, the Court will GRANT the DPPs' renewed Motion.

## II.   BACKGROUND

The Parties have litigated this case for nearly six years, completing fact discovery, expert discovery, and dispositive motions—including with the DPPs and COSI/TUG filing cross motions for summary judgment on various issues and *Daubert* motions against the opposing experts. *See, e.g.*, ECF Nos. 1967, 1970, 1976, 1984, 2001, 2015, 2030. The DPPs hired three experts for use against COSI and TUG: Dr. Russell Mangum (economist); Dr. Gary Hamilton (sociologist); and Marianne DeMario (forensic accountant). Sweeney Decl. ¶ 10. COSI and TUG hired four experts to oppose the DPPs: Dr. Randal Heeb (economist); Dr. Michael Moore (economist); Gary Kleinrichert (accountant); and Arthur Laby (attorney). *Id.* The parties have completed all expert depositions and submitted final expert reports. *Id.* The Court has already denied Defendants' *Daubert* motion against Dr. Hamilton, who

opined on *alter ego* and agency liability of the relevant parent entities (*see* ECF No. 2407).

The Court previously certified the DPP Class in this case, following a three-day evidentiary hearing. ECF No. 1931. In December of 2019, the Ninth Circuit Court of Appeals granted Defendants' motion for leave to appeal the Court's class certification decision pursuant to Fed. R. Civ. P. 23(f). ECF No. 2246. On April 6, 2021, a panel of the Ninth Circuit vacated the class certification decision and remanded the case so that the trial court could decide which expert was more persuasive on the issue of the number of uninjured parties in each class. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021). A rehearing *en banc* was granted on August 3, 2021. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 5 F.4th 950 (9th Cir. 2021). The *en banc* rehearing was fully briefed and was argued on September 22, 2021.

In the meantime, it appears that every DAP in this case has settled with COSI and TUG, and they have dismissed their claims against these Defendants. *See, e.g.*, ECF Nos. 1871-1873, 1909, 1927-28, 2450, 2454, 2494. These entities include major direct purchasers like Wal-Mart, Kroger, Safeway, US Foods, CVS, and Target. The DPPs understand that they were the last party to settle with COSI and TUG, after years of vigorously fought litigation. Sweeney Decl. ¶ 13.

Now, following extensive discussions facilitated by the Honorable Jan Adler (retired), a former Magistrate Judge for the Southern District of California, COSI/TUG and the DPPs executed a Settlement Agreement on March 11, 2021. Sweeney Decl., Ex. A. This Settlement is the DPPs' first with any of the Defendants. Sweeney Decl. ¶ 12. The Settlement Agreement was negotiated between the Parties under the supervision of Judge Adler following multiple in-person, video conference, and telephonic mediation sessions. *Id.*

Some of the material terms of the Settlement Agreement are as follows:

**Settlement Class Definition.** The Settlement Class definition consists of all persons and entities that directly purchased packaged tuna products (excluding tuna salad kits and cups and salvage purchases) within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 1, 2015, with minor exclusions. *Id.* ¶ 1.24; *see also* ¶ 11.1.

**Benefits.** In exchange for releasing claims against COSI and TUG in this litigation, COSI and TUG have agreed to pay 3.2% of the combined sales of Packaged Tuna Products that COSI and TUG sold to Settlement Class Members. *Id.* ¶ 11.1. Analyzing the relevant sales, DPPs have determined that the settlement is expected to provide approximately $13 million in relief for the Settlement Class Members after accounting for all of the anticipated opt outs. Sweeney Decl. ¶ 7.

**Release.** In exchange for the foregoing relief, the DPPs have agreed to release "all Claims, . . . on account of, arising out of, resulting from, or in any way related to any conduct concerning the pricing, selling, discounting, promotion, or marketing of Packaged Tuna during the period from June 1, 2011 to July 31, 2015 that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint." *Id.*, Ex. A ¶ 9.1.

**Attorneys' Fees and Costs.** COSI/TUG and the DPPs agreed to a separate, contested arbitration of legal fees and costs before a neutral arbitrator, with a total limit on potential fees and costs capped at $7 million. Sweeney Decl., Ex. A ¶ 11.2. The ultimate determination of fees and expenses will be decided upon by this Court (*see* Fed. R. Civ. P. 23(h)), but Class Counsel agreed that they will not ask for more than the amount awarded in arbitration. The arbitrator selected was former federal judge Layn Phillips, who held a hearing on June 22, 2021 and issued an order on June 25. He ruled that DPP Class Plaintiffs were entitled to $4,410,636.71 in past out of pocket expenses and fees of $1,539,363.29, for a total of $5.95 million. That order is attached as Exhibit C to the Sweeney Declaration and will be posted on the dedicated Settlement website and will be referenced in the Settlement Class notice. Obviously,

this Court will ultimately decide whether it will adopt Judge Phillips' findings. Additionally, the Parties agreed that if COSI and TUG reach a separate agreement to settle with any potential Settlement Class Member, they will allocate 25% of the total monetary value for such settlement or other resolution obtained in the manner described in the DPPs' pending set aside motion, ECF No. 2446, and they stipulate to the entry of an order substantially in the form as the one proposed by the DPPs in that motion. *Id.*, Ex. A ¶ 11.3. This amount is separate and independent of the Settlement Fund and the related cap on fees and costs in the Agreement. *Id.*

**Notice Payment.** COSI has agreed to advance, within five business days after preliminary approval of the Settlement is granted by the Court, up to $75,000 to be credited against the Settlement Fund, to pay for the reasonable costs for notice and related administration following preliminary approval of this Settlement, but that sum shall not be reimbursable in the event that final approval is not granted. *Id.* ¶ 11.4. Although the DPPs anticipate that notice and claims administration *together* will not cost approximately more than $100,000, the Settlement Agreement provides that Settlement Class Counsel may withdraw funds as necessary for notice and administration from the Settlement Fund up to $500,000. *See id.* ¶ 5.2; *see also* Sweeney Decl. ¶ 16.

Apart from the Settlement Agreement, the DPPs recommend notice and distribution using the services of settlement and notice administrator, JND. According to JND, notice of the settlement will be provided directly via mail to the DPP Class as well as by email for those Settlement Class Members for whom the DPPs have email addresses. *See* Declaration of Gina Intrepido-Bowden ("Intrepido-Bowden Decl."). There will also be a Press Release providing additional notice of the Settlement. *Id.* The DPPs' proposed notice plan also encourages Settlement Class Members to go to the dedicated case website and register for further direct updates via email for future important events. *Id.*

Under the DPPs' proposed plan of allocation, Settlement Class Members will be able to make claims for their *pro rata* share of the Settlement. If possible, the Claims Administrator intends to set up an online portal or other mechanism by which Settlement Class members will be able to check the volume of commerce assigned to them by the Claims Administrator, and in the event that their own data suggests that a different claimed volume of commerce is appropriate, any Settlement Class member can provide that information, and it will be considered by the Claims Administrator, subject to audit. In the event that they believe a different amount of commerce is correct, they can dispute that amount, in which case their claim will be subject to an audit. *Id.* This plan eases the verification process for Settlement Class Members and reduces the burden on them. *Id.* The proceeds of the Settlement will be distributed at a reasonable time in the future after consideration of the costs associated with such a distribution and the amounts of other settlements, if any, available to distribute. *Id.* This information will be included on the Settlement website and in the Settlement Class notice. In both, it will be explained that distribution to Settlement Class Members will occur at an appropriate time in the future, either in combination with another settlement, after trial, or at the conclusion of any appeals. To the extent there are any undistributed funds following an initial distribution to Settlement Class Members, the Claims Administrator, upon the recommendation of Class Counsel and approval by the Court, will either make subsequent distributions to Settlement Class Members, or, if it is infeasible to do so in light of the amount of undistributed funds and the costs of Administration, distribute those funds on a *cy pres* basis to the Center for Public Interest Law at the University of San Diego School of Law. Sweeney Decl. ¶ 18.

## III.  DISCUSSION

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556

(9th Cir. 2019) ("*Hyundai*") (*en banc*) (internal quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In December of 2018, the Rules Committee revised Federal Rule of Civil Procedure 23 to formalize the preliminary approval process for district courts when first evaluating a proposed class action settlement. *See* Fed. R. Civ. P. 23(e)(1). Under the new rule, "[t]he court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## IV.   DISCUSSION

### A. The Proposed Settlement Class Satisfies The Requirements Of Rules 23(a) And (b)(3).

The Supreme Court has long recognized that antitrust class actions are a vital component of antitrust enforcement. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972). Thus, courts "resolve doubts in these actions in favor of certifying the class." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) ("*CRT II*").

To certify a settlement class under Fed. R. Civ. P. 23, plaintiffs must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—as well as at least one of the three subsections of Rule 23(b). *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018) ("*Sali*") (citing Fed. R. Civ. P. 23(c)(1)(A)). A plaintiff seeking Rule 23(b)(3) certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The manageability requirement inherent in Rule 23(b)(3) does not apply to settlement classes. "[T]he criteria for class certification are applied differently in litigation classes and settlement classes." *Hyundai*, 926 F.3d at 556.

**Rule 23(a) Requirements**.

*Numerosity* is satisfied by a class as small as 40 entities. *Lo v. Oxnard European Motors, LLC*, No. 11CV1009 JLS (MDD), 2011 WL 6300050, at *2 (S.D. Cal. Dec. 15, 2011) ("*Lo*"). Here, the proposed Settlement Class is expected to contain after opt outs between 500 to 600 entities.

*Commonality*. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Nitsch v. Dreamworks Animation SKG Inc*., 315 F.R.D. 270, 283 (N.D. Cal. 2016) ("*Nitsch*") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Where, as here, the focus is on Defendants' anticompetitive conduct, questions of law and fact are common to the class. "Where an antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" *In re High-Tech Emp. Antitrust Litig*., 985 F.Supp.2d 1167, 1180 (N.D. Cal. 2013) ("*High-Tech*") (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig*., 267 F.R.D. 583, 593 (N.D. Cal. 2010), *amended in part by* No. 07-1827, 2011 WL 3268649 (N.D. Cal. July 28, 2011) ("*LCD*")). In this case, there are numerous common issues, including: (1) whether Defendants participated in a conspiracy to fix prices in violation of the antitrust laws; (2) the scope of that conspiracy; and (3) whether the Settlement Class members suffered antitrust injury as a result of Defendants' conspiracy.

*Typicality*. The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named

plaintiffs, and whether other class members have been injured by the same course of conduct." *Sali*, 909 F.3d 1006 (quotation omitted). "In antitrust cases, typicality usually 'will be established by plaintiffs and all class members alleging the same antitrust violations by defendants.'" *High-Tech*, 985 F. Supp. 2d at 1181; *see also Lo*, 2011 WL 6300050, at *2. The claims of Plaintiffs and the proposed Settlement Class are all based on the same antitrust violations, and they each have suffered injury as a result of Defendants' antitrust conspiracy. Any factual differences among Settlement Class members do not preclude a finding of typicality.[1]

**Adequacy of Representation**. Adequacy requires that Plaintiffs "(1) have no interests that are antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel able to vigorously prosecute their interests." *CRT II*, 308 F.R.D. at 618. "The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 541 (N.D. Cal. 2015) (quotation omitted). There is no conflict between Plaintiffs' interests and those of absent Settlement Class members. Plaintiffs and their expert have shown that all Class members were injured by having to pay supracompetitive prices for packaged tuna products.

The DPPs and their counsel, Hausfeld, have vigorously prosecuted this case on behalf of the DPP Class. Hausfeld was the first firm to file suit on behalf of the first filed Plaintiff in this litigation, Olean Wholesale Grocery Cooperative ("Olean"). Olean and the other class representatives, with the assistance of Class Counsel, have more than adequately represented the DPP Class. Sweeney Decl. ¶ 21. They have driven this litigation forward in all aspects for the betterment of all Plaintiffs. *Id.*

---

[1] *See, e.g.*, *In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115-WHO, 2017 WL 235052, at *20 (N.D. Cal. Jan. 19, 2017); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009); *see also LCD*, 267 F.R.D. at 593.

Among other things, Class Counsel have conducted extensive discovery, reviewing millions of pages of documents and taking depositions of dozens of witnesses. *Id.* ¶ 8. As a result of these and other efforts, Class Counsel were able to secure relief from COSI/TUG for a period of time beyond the period for which the DOJ has secured guilty pleas. *Id.* Class Counsel have also investigated and litigated claims against the parent entity Defendants in this case, and as a result of those efforts, TUG is settling with the DPPs as well. *Id.* ¶ 9.

Particularly in light of the late stage of the litigation, Class Counsel have more than sufficient information to make an informed decision as to the value of the Settlement compared to the risks of continued litigation. The Parties have exchanged all merits expert reports and completed expert discovery; briefed four summary judgment motions and four *Daubert* motions; briefed, argued and participated in an evidentiary hearing on class certification; briefed and argued a class certification appeal; briefed and argued multiple motions to dismiss; and conducted extensive fact discovery. All of this allows Class Counsel to make an informed judgment in favor of the Settlement, a factor which the Court should consider.[2] In addition, Class Counsel have observed that the other Class Plaintiffs and all of the DAPs—which comprise the largest members of the DPP Class and collectively account for around 80% of the purchases by DPP Class members—have already entered into settlements with COSI and TUG. Sweeney Decl. ¶ 13.

Class Counsel are experienced lawyers who have successfully litigated many prior complex antitrust class actions such as this one, including with ACPERA

---

[2] *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *see also In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007).

leniency applicants, and have successfully resolved many of those cases in this Circuit. *Id.* ¶ 5. Class Counsel have brought that experience and knowledge to bear on behalf of the Class and in this proposed Settlement. *Id.*[3]

**Rule 23(b)(3) Requirements**. "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Courts commonly find Rule 23's "predominance" requirement satisfied in direct purchaser horizontal price fixing cases. *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012); *Nitsch*, 315 F.R.D. at 315.

Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to class-wide proof.' What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen*, *Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (citation omitted; brackets in original). Predominance is satisfied when "common questions present a significant aspect of the case" such that significant facts and issues underlying the proposed class' claims are subject to common proof. *CRT II*, 308 F.R.D. at 620 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

Here, the common questions identified above predominate over any individual ones. The existence and scope of Defendants' horizontal price-fixing conspiracy is a class-wide issue that can be proved for each Settlement Class Member through common evidence. "In price-fixing cases, courts repeatedly have held that the

---

[3] *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal citation omitted); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413-W-AJB, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) (same).

existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." *Nitsch*, 315 F.R.D. at 315 (quotation and internal marks omitted); *CRT II*, 308 F.R.D. at 620, 625 (holding the same); *High-Tech*, 985 F. Supp. 2d at 1217 (holistic examination of liability, not just econometric analysis, justified certification).

This is especially true in the context of a settlement class, such as this one. In *Hyundai*, it was argued that the differences in applicable state laws defeated predominance, but the Ninth Circuit, sitting *en banc*, said that in the context of a settlement class, that is viewed as an issue of manageability, which is a requirement that does not apply. 926 F.3d at 559-60. *Accord Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020).

**B. The Settlement is Likely to be Approved.**

The Court finds that the Proposed Settlement meets all the relevant factors to demonstrate that preliminary approval is appropriate.

As amended, Rule 23 now provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018) (although the Ninth Circuit previously used lists of factors to be considered, the revised Rule 23 now "directs the parties to present [their] settlement … in terms of [this new] shorter list of core concerns."). Ultimately, as the Ninth Circuit has admonished, the key "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

### 1. The Settlement Class Representatives and Settlement Class Counsel have adequately represented the Settlement Class.

For the reasons explained above, Court finds that Class Counsel, Hausfeld LLP, and the Class Representatives have adequately represented the Class, including in this Proposed Settlement. Class Counsel are experienced class action lawyers.

After six years, Class Counsel have also conducted extensive discovery and have more than sufficient information to make an informed decision as to the value of the Settlement compared to the risks of continued litigation. The Parties have exchanged all merits expert reports and completed expert discovery; briefed four summary judgment motions and four *Daubert* motions; briefed, argued and participated in an evidentiary hearing on class certification; briefed and argued a class certification appeal; and briefed and argued multiple motions to dismiss. *See In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 2672 CRB (JSC), 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("extensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *see also Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ("the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight"); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation") (internal citation omitted).

### 2.  The Parties negotiated the proposed settlement at arm's length.

The Court also finds that the Settlement satisfies the second Rule 23(e)(2) factor, which asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("*Rodriguez*") ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Settlement was reached only after prolonged, well-informed, and extensive arm's-length negotiations—including two in-person mediation sessions and additional negotiations—between experienced and knowledgeable counsel facilitated by the Honorable Jan Adler. Sweeney Decl. ¶ 12. The use of a mediator supports the

conclusion that settlement process was not collusive. *See* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note (2018) ("[T]he involvement of a neutral . . . in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"); *see also In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (use of mediator and fact that some discovery had been completed "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement") (internal citation omitted).

Moreover, neither COSI nor TUG has promised the Class Representatives or Settlement Class Counsel preferential treatment in exchange for the settlement. Sweeney Decl. ¶ 15. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (preferential treatment for class representatives can create a conflict of interest). Here, the settlement funds will be distributed *pro rata*, and DPP Class Counsel will be reimbursed expenses and fees from the separate fund preliminarily awarded by Judge Phillips, subject to the Court's approval. Class Counsel will ask the Court to approve a nominal service award to the Class Representatives out of the settlement funds to reimburse them for their efforts on behalf of the settlement class over the past six years, but neither Settlement Class Counsel nor COSI or TUG made any promises about requesting such awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[T]he class settlement agreement provided no guarantee that the class representatives would receive incentive payments").

### 3.   The quality of relief to the Settlement Class weighs in favor of approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the

method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note (2018).

### a. Costs, risks, and delay of trial and appeal.

The Court finds that the costs, risks, and delay of trial and appeal favor the Settlement. COSI has admitted violations of antitrust laws, but TUG moved for summary judgment as to its inclusion in this case. Even as to the claims against COSI, the experts in this case have serious disputes about the likely overcharge percentage, among other things. There are thus real and significant risks in antitrust class actions such as this one. *Rodriguez*, 563 F.3d at 966 (summarizing risks of litigating antitrust class actions); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" (quoting *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998))); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F.Supp.2d 336, 341 (E.D. Pa. 2007) (approving settlements in part because the "antitrust class action is arguably the most complex action to prosecute[;] [t]he legal and factual issues involved are always numerous and uncertain in outcome") (internal quotation omitted).

Moreover, there remains some risk on Defendants' class certification appeal, and that appeal has also drawn out the length of the litigation. Under these circumstances, while the DPPs have "strong claims," "significant risk and uncertainty remain such that continuing the case could lead to protracted and contentious litigation." *Howell v. Advantage RN, LLC*, 17-CV-883 JLS (BLM), 2020 WL 3078522, at *4 (S.D. Cal. June 9, 2020).

### b. The effectiveness of any proposed method of distributing relief to the Class.

The Settlement provides the Settlement Class Members with significant relief. And this relief is comparable, and in some cases superior, to other publicly reported settlements. The Settlement Class Members are mostly comprised of smaller companies, with other larger retailers having effectively opted out of the Class by filing their own suits or separately settling with COSI. The expected Settlement Class Members represent around 20% of the purchases of packaged tuna products during the relevant period. *See* Sweeney Decl. ¶ 7. The proposed settlement provides a 3.2% overcharge on all purchases from COSI and TUG by the settlement class members, which is expected to total approximately $13 million. *Id.*

While the DPPs may have been able to recover more from COSI and TUG if they had ultimately prevailed against these Defendants at trial, the settlement figure is nonetheless significant. *Schaffer v. Litton Loan Servicing, LP.*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected delay in recovery (often measured in years).").

### c. The method for processing claims.

The DPPs have advised the Court regarding their proposed method for processing claims. Specifically, Settlement Class Members who make a claim will be entitled to receive cash, with the actual amount received dependent on the number of claims and the volume of commerce represented in those claims. The proceeds from the Settlement Amount will ultimately be distributed on a *pro rata* basis. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "'fairly treats class members by awarding a *pro rata* share' to the class members based on the extent of their injuries.' (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005

WL 1594403, at *11 (C.D. Cal. June 10, 2005))); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (approving *pro rata* distribution of fractional share based upon class member's total base salary as fair and reasonable); *Four in One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable"); *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1045-46 (N.D. Cal. 2008) (approving securities class action settlement allocation on a "per-share basis").

### d. The terms of any proposed award of attorneys' fees, including timing of payment.

The Court also finds that the methodology used for determining the proposed fee and cost award—a contested arbitration before a neutral arbitrator—is fair and reasonable. It does not detract from relief for the Class in any way. And this Court will have ultimate say over whether to award the arbitrator's recommended sums. The arbitrator's award is included in the notices for the Class, and Settlement Class Counsel's motion for approval of that award and payment of their fees and costs will also be posted on the case website prior to the deadline for objections.

### e. Any agreement required to be identified under Rule 23(e)(3).

Courts also must evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). The DPPs have represented that the Settlement Agreement before the Court is the only agreement between the Parties. Sweeney Decl. ¶ 15.

### 4. The Settlement treats all Settlement Class Members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of

1    the release may affect class members in different ways that bear on the apportionment
2    of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note (2018).

3    Here, the Settlement treats all Settlement Class members equitably, and there
4    are no differences between the scope of relief between any Class members. While
5    Class Counsel has requested nominal service awards for the Class Representatives for
6    their efforts on behalf of the Class to date, such awards are well-established in the
7    Ninth Circuit. *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2012 WL 381202,
8    at *6 (N.D. Cal. Feb. 6, 2012) ("It is well-established in this circuit that named
9    plaintiffs in a class action are eligible for reasonable incentive payments, also known
10   as service awards. In fact, the Ninth Circuit recently noted that incentive payments to
11   named plaintiffs have become 'fairly typical' in class actions."); *see also Boyd v. Bank
12   of Am. Corp.*, No. 13-cv-0561-DOC, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18,
13   2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)).

14   In light of all of the foregoing, the proposed Settlement merits preliminary
15   approval as it is likely to be finally approved after the Fairness Hearing.

16   **C. The Proposed Notice is the Best Practicable Under the Circumstances.**

17   Where there is a class settlement, Rule 23(e)(1) requires the court to "direct
18   notice in a reasonable manner to all class members who would be bound by the
19   proposal." "Notice is satisfactory if it 'generally describes the terms of the settlement
20   in sufficient detail to alert those with adverse viewpoints to investigate and to come
21   forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v.
22   Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

23   In Rule 23(b)(3) actions, "the court must direct to class members the best notice
24   that is practicable under the circumstances," and that notice "must clearly and
25   concisely state in plain, easily understood language:" (1) the nature of the action; (2)
26   the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a
27   class member may enter an appearance through an attorney if the member so desires
28   (5) that the court will exclude from the class any member who requests exclusion; (6)

ORDER                                                              CASE NO. 15-MD-2670-DMS (MDD)
17

the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The notice plan proposed by the DPPs with the advice and assistance of JND provides a thorough approach to notice. Intrepido-Bowden Decl. ¶¶ 11-28; *see also, e.g.*, *Ross v. Trex Co.*, No. 09-00670-JSW, 2013 WL 791229, at *1 (N.D. Cal. Mar. 4, 2013) ("[A]ctual notice is not required . . . . Due Process does not entitle a class member to 'actual notice,' but rather to the best notice practicable, reasonably calculated under the circumstances to apprise him of the pendency of the class action and give him a chance to be heard.") (internal quotation omitted). The rigorous notice plan proposed by JND satisfies requirements imposed by Rule 23 and the Due Process clause of the United States Constitution.

Moreover, the contents of the notice satisfactorily informs Settlement Class members of their rights under the Settlement. *See* Intrepido-Bowden Decl., Exs. B-D; *see also* 4 *Newberg on Class Actions* § 11:53 (4th ed. 2002) (notice is "adequate if it may be understood by the average class member"). Accordingly, the notice program, through direct mail and email where available and the press release, as well as the accompanying forms, are reasonable and adequate and are fairly calculated to apprise Settlement Class members of their rights under the Settlement.

The Court finds that notice of the Settlement with the DPPs is appropriate at this time. As noted in the DPPs' Motion and notice plan, Settlement Class members are encouraged to register on the case website to receive direct updates about the case going forward. This is the most effective and efficient way to notify the Settlement Class of the class action and the proposed Settlement and updates about the litigation.

**D. Service Awards.**

As noted above, the DPPs also request service awards of $5,000 per Class Representative, as partial compensation for their work and efforts in this case. The Class Representatives have faithfully represented the Class for nearly six years, including producing documents, sitting for depositions, and monitoring the progress

of the case. Sweeney Decl. ¶ 21. These proposed service awards are modest and a reasonable, nominal acknowledgment of their service. *Id.* As noted, such awards are routine in the Ninth Circuit. *See Harris*, 2012 WL 381202, at *6; *Boyd*, 2014 WL 6473804, at *7. Accordingly, the Court finds such service awards are reasonable.

## V.   CONCLUSION

For the foregoing reasons, the Court hereby preliminarily approves the Settlement Agreement, and ORDERS the following:

(1)   The Court certifies, for settlement purposes, the following Settlement Class:

> All persons and entities that directly purchased packaged tuna products within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 31, 2015. Excluded from the class are all governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families, as well as any federal judges or their staffs.

(2)   The Court appoints Hausfeld LLP as Class Counsel for settlement purposes.

(3)   The Court appoints Olean Wholesale Grocery Cooperative, Inc., Pacific Groservice Inc. d/b/a PITCO Foods, Piggly Wiggly Alabama Distributing Co., Inc., Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc., Trepco Imports and Distribution Ltd., and Benjamin Foods LLC as Class Representatives, for settlement purposes.

(4)   The Court finds that the Settlement Agreement has been negotiated at arm's length.

(5)   The Court finds the Settlement Agreement fair, reasonable, and adequate, and in the best interests of the Settlement Class.

(6)   The Court approves the notice content and plan for providing notice of the to members of Settlement Class.

(7)    The Court orders COSI and TUG to provide the relevant notices as required by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*., to the extent they have not already done so.

(8)    Finally, the Court adopts and sets the following deadlines:

| | |
|---|---|
| Deadline for disseminating Settlement Class notice | February 28, 2022 |
| Deadline for filing of affidavit attesting that notice was disseminated as ordered | March 9, 2022 |
| DPPs to file a motion for award of costs and attorneys' fees | March 24, 2022 |
| Deadline for Settlement Class members to opt out of the Settlement and deadline to object to the Settlement | April 28, 2022 |
| DPPs to file a motion for final approval of the Settlement | May 10, 2022 |
| Final approval hearing | June 17, 2022, at 1:30 p.m. |

**IT IS SO ORDERED.**

Dated:  January 26, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court