# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MDD |
| This filing relates to the End Payer Plaintiff Class Action Track | **ORDER GRANTING END PAYER PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT** |

## I. INTRODUCTION

Pending before the Court is the End Payer Plaintiffs ("EPPs") renewed motion for preliminary approval of their "ice-breaker" settlement with Defendant Chicken of the Sea International ("COSI") and its parent company, Defendant Thai Union Group PCL ("TUG") (collectively "COSI"). As the applicant for leniency through the Department of Justice's ("DOJ") Antitrust Division corporate leniency program, COSI was obligated to and did provide valuable cooperation to the EPPs. Manifold Decl., ¶ 1. The EPPs ask the Court for preliminary approval of the COSI Settlement and the proposed settlement class notice, and that the Court set a hearing date for final approval.

The key monetary terms of the Settlement are as follows: (1) the maximum Settlement Amount is twenty million ($20,000,000). COSI Settlement Agreement, §1.a.xxvii (ECF 2552-3 at 8); (2) under Paragraphs 11(b) and 18, up to five million ($5,000,000) out of the Maximum Settlement Amount shall be used to cover the reasonable costs of Class and Settlement Notices and administration for distribution of the Settlement Fund of fifteen million ($15,000,000) ("Settlement Fund"). ECF 2552-3 at 13 and 14; and (3) if the reasonable costs of Class and Settlement Notice is less than $5,000,000, the difference is refunded to the COSI Defendants under Paragraph 18(b) of the COSI Settlement Agreement. *Id*. at 14 and 15.

The EPPs seek reimbursement of litigation costs and expenses of $4,155,027.67 from the Settlement Fund. The EPPs also request that up to $1 million in notice costs to be incurred by the claims administrator JND be approved by the Court prior to the final approval hearing. These notice costs will be paid out of the $5 million set aside discussed above. The EPPs have waived any rights to seek an attorneys' fee award from the COSI Settlement or from the COSI Defendants but have reserved their rights to seek an award of attorney fees from any further recoveries from the non-settling defendants and to base their request on the benefits conferred by the COSI Settlement.

1    The Court previously denied without prejudice the EPPs' Motion for
2  Preliminary Approval. ECF No. 2651 (November 10, 2021 Order).  At the Court's
3  invitation, the EPPs filed a renewed Motion.  The renewed Motion specifically
4  addresses, and as discussed below resolves, the three issues raised by the Court in its
5  November 10, 2021 Order.
6    As described below, the proposed COSI Settlement is likely to be approved as
7  fair, adequate, and reasonable at a final approval hearing, and accordingly, the Court
8  GRANTS the EPPs' Motion.

## II. BACKGROUND

Before reaching the COSI Settlement, the Parties litigated this case for nearly three years, completing fact discovery, briefing and argument on class certification and engaging in expert discovery.  The EPPs hired two experts for use against COSI. Manifold Decl. ¶26. The Court also certified the EPP Class in this case, following a three-day evidentiary hearing. ECF No. 1931 ("Class Order"). In December of 2019, the Ninth Circuit granted Defendants leave to appeal the Class Order and subsequently issued a panel opinion, *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC, et. al.,* No. 19-56514 (9th Cir. Apr. 6, 2021) ("Ninth Circuit Panel Opinion). On August 3, 2021, the Ninth Circuit vacated the Ninth Circuit Panel Opinion (*Olean,* ECF No. 128).  On September 22, 2021, an *en banc* oral argument was held before the Ninth Circuit.  It is not known when the Ninth Circuit will issue its *en banc* decision or if further appeals will follow.

## III. SETTLEMENT TERMS

The Court finds that the proposed settlement was the result of contentious arms'-length negotiations.  *See* Manifold Declaration (citing multiple in-person meetings including a Los Angeles meeting with a TUG senior official from Asia, and written exchanges over the course of six months).   The COSI Settlement, referred to as an "ice breaker" Settlement, is the EPPs' first with any of the Defendants and was

reached at an early and crucial stage of the litigation before the Class Order was issued. Manifold Decl. ¶17.

Some of the material terms of the Settlement Agreement are as follows:

**Settlement Class Definition.** The Settlement Class definition is the same as the EPP Class certified by the Court (*see* ECF No. 1931.)

**Benefits.** The Settlement Agreement requires the COSI Defendants to make four payments totaling $20 million into a Settlement Fund. Manifold Decl., Ex. 1, §11. Up to $5 million will be used to cover the costs of notice to the COSI Settlement Class and for claims administration. *Id*., Ex. 1 §§ 11(b) & (c) & 18.[1] The remaining $15 million, less any award of litigation expenses by this Court, will be distributed to Authorized Claimants on a *pro rata* basis. *Id.* Ex. 1, §§ 1(b)(xiv) & 16.

The Settlement Agreement also requires the COSI Defendants to continue to cooperate fully with EPPs' case. Manifold Decl., Ex. 1 § 10. COSI's cooperation could provide substantial benefit to EPPs as they pursue their case against the other non-settling Defendants.

**Distribution.** All Settlement Class Members will be treated equally. Each Authorized Claimant in the Class shall receive a *pro rata* share of the Distribution Funds as described in the Class Notice. Declaration of Jennifer Keough (JND) ("Keough Decl."), Ex. I Payments to Authorized Claimants will not be immediately distributed but held until the claims against all non-settling Defendants have been resolved by settlement, judgment or trial including any appeals and in accordance with any subsequent Court orders. *Id*. The proposed escrow of the settlement funds is based on the EPPs belief that there is potential for additional settlement monies to be recovered from or a favorable judgment against the non-settling Defendants, which would add additional funds to be distributed. With the costs of claims administration,

---

[1] If class notice and claims administration of the COSI Settlement cost less than $5 million, then EPPs will return any remainder to the COSI Defendants. *Id.* Ex. 1, §18(b)(i).

it is more efficient to delay distribution of this partial settlement until the remaining claims are resolved. The Court agrees that the distribution of the partial settlement to Authorized Claimants should be delayed until further order of the Court.

**Release.** In exchange for the foregoing relief, the EPPs have agreed to release "all claims, . . . in any way arising out of or relating in any way to the sale or pricing of Packaged Tuna during the Class Period, including, but not limited to, any conduct alleged or causes of action in any way arising out of the Complaint or in any similar action filed in state court..." *Id.*, Ex. 1 ¶8. *See also* Ex.1, ¶9 (citing §1542 of California Civil Code, releasing under California law "with respect to the subject matter of provisions" in Paragraph 8.)

**Attorneys' Fees and Costs.** Settlement Class Counsel waived their rights to seek legal fees from the COSI Defendants or the Settlement Fund. Settlement Class Counsel will seek reimbursement for $4,155,027.67 in actual litigation costs to date. EPPs seeks permission to advance media costs of up to $1 million for the notice program from the $5 million set aside for administration costs (discussed below).

**Notice Payment.** COSI has agreed to pay $5 million into the Settlement Fund for the costs of notice and claims administration. Within thirty (30) after Preliminary Approval of the Settlement is granted by the Court, the EPPs seek permission to disburse up to $1 million prior to final approval upon receipt of valid invoices from the Claims Administrator approved by the Court. *Id.*, Ex 1, § 18.

**Notice Plan**. The EPPs retained an experienced and well-respected claims administrator who prepared a comprehensive and robust notice plan to alert Settlement Class Members of the COSI Settlement. *See* Keough Decl., ¶¶3-7, Ex. B. JND is a nationally recognized claim administration firm that has successfully handled the notice and administration service for numerous complex class actions including settlements requiring extensive media campaigns. Keough Decl., Ex. A. JND estimates that the Proposed Notice Plan will reach approximately 85% of the Settlement Class. *Id.*, ¶¶13, 28, 35, 38, and Ex. B. The FJC's *Judges' Class Action*

*Notice and Claims Process Checklist and Plain Language Guide* ("FJC Checklist") considers a Notice Plan with a high reach (above 70%) effective. *Id.*, ¶11. The Proposed Notice Plan includes a robust 12-week media campaign with an extensive digital effort, publication in *People* magazine, spots on iHeart radio, an interactive case website and a 24-hour toll-free number. Keough Decl., ¶¶13, 20-29 and Ex. B.

In response to the Court's November 10, 2021 Order (ECF No. 2651 at 2:26-27), the EPPs provided more detail about the "proposed method of distributing relief to the class, including the method for processing class member claims" as required by Federal Rule of Civil Procedure 23(e) (2) (C) (ii). The EPPs explained how JND will both efficiently process millions of Settlement Class members claims and effectively distribute monies to Authorized Claimants through the means to be elected by the claimant (usually electronic). Intrepido-Bowden Decl., ¶¶s 11-21. For example, to allow for a distribution election by an Authorized Claimant, the Claim Form was revised by adding a box for the claimant to check (check or PayPal) and confirming an email or address for distribution.

As discussed below, the effectiveness of the robust Notice Plan proposed by JND and the efficient, convenient and user-friendly online claim process and distribution methodology (based on the claimant's own preference for payment) favors approval of the settlement proposal under Federal Rule of Civil Procedure 23(e) (2) (C) (ii).

## IV. DISCUSSION

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (internal quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

1      In December of 2018, the Rules Committee revised Federal Rule of Civil Procedure 23 to formalize the preliminary approval process for district courts when first evaluating a proposed class action settlement. *See* Fed. R. Civ. P. 23(e)(1). Under the new rule, "[t]he court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

Here, although now on appeal, the Court previously certified a contested EPP Class for trial. ECF No. 1931. The Court also appointed Wolf Haldenstein as Class Counsel for the EPP Class and the named plaintiffs as the Class Representatives in this case. *Id.* Nothing in the Ninth Circuit appellate briefing or in the record before this Court would alter the Court's prior analysis on the determinations under Federal Rule of Civil Procedure Rule 23(a). Nonetheless, the EPPs took a belt and suspenders approach – both citing the Court's analysis in its class certification order on these uncontested issues and separately briefing (without the benefit of the Court's prior class certification order) that both Federal Rule of Civil Procedure 23(a) and 23(b)(3) were satisfied and warrant certification of a settlement class.

In considering whether a settlement class is appropriate, the Court need not determine whether the proposed class would present manageability concerns. *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d at 556-57 (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Instead, the Court need only determine whether the proposed Settlement Class satisfies the remaining requirements of Rules 23(a) and (b). *Id.*

The Court finds that the requirements of both Federal Rule of Civil Procedure 23(a) and 23(b)(3) have been adequately met and the Court conditionally certifies the proposed Settlement Class for purposes of judgment under Rule 23(e)(1)(B). The Court need only determine whether it will likely be able to approve the proposed

Settlement at final approval. *See* Fed. R. Civ. P. 23(e)(1) advisory committee's note (2018) ("The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object."). At any final approval hearing, the Court will need to determine whether the proposed Settlement Agreement is "fair, reasonable, and adequate" and thus merits the Court's approval under Rule 23(e)(1)(C).

As amended, Rule 23 now provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2). Ultimately, as the Ninth Circuit has admonished, the key "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

**A. The Settlement is Likely to be Approved.**

The Court finds that the Proposed Settlement meets all the relevant factors to demonstrate that preliminary approval is appropriate. The totality of the factors show that this Settlement is well within the range of possible approval.

**1. The *Churchill Village* Factors Favor Preliminary Approval**

Under the first *Churchill Village* factor, this Court considers the strength of plaintiffs' case. *See* Fed. R. Civ. P. 23(e)(2)(C). The case against the COSI Defendants regarding liability is strong. Although EPPs believe they have a powerful liability case, the EPPs must, however, balance the strength of their case against the second *Churchill* factor: the risk, expense, complexity and delay of further litigation. Fed. R. Civ. P. 23(e)(2)(C)(i). Notwithstanding the presence of an ACPERA leniency applicant and a criminal investigation, the issue of who was damaged and to what extent remains hotly contested. COSI's admissions in its leniency application and its proffers to the plaintiffs only described certain acts that occurred, not the impact of those acts. Further, the COSI Defendants maintain that those acts ended earlier than the 2015 end date of the EPP Class Period.

Furthermore, setting the risks of litigation aside, COSI Defendants have indicated that they may not be able to pay a full judgment. The harm caused by the conspiracy and the resulting damages were so large that thinly-capitalized Bumble Bee could not withstand the strain, and it filed for bankruptcy and was sold off to a fishing company during this litigation, leaving a shell from which no recovery has been achieved. These risks all weigh strongly in favor of preliminary approval.

The third factor, the risk of maintaining class certification through trial, also weighs in favor of preliminary approval. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011. Settlement was reached prior to the Court granting class certification, which the EPPs recognized had risk.  Class certification was and remains hotly contested.  It is an appropriate consideration in approving the parties' decision to achieve resolution by settlement.  The risk of any appeal after trial also weighs in favor of settlement approval.

The fourth *Churchill Village* factor, the amount obtained through the Settlement, also supports preliminary approval. *See also* Fed. R. Civ. P. 23(e)(2)(C); *Procedural Guidance for Class Action Settlements* § 1(e) (suggesting courts consider amount of settlement to potential recovery). The Settlement with COSI must be viewed in light of limits on potential recovery. COSI applied for and was granted leniency applicant status under ACPERA § 213(a), 118 Stat. at 665 (as amended). This status offers the leniency applicant, essentially a cooperator with the Government, certain civil protections.  The leniency applicant is (a) exempt from joint and several liability, which otherwise attaches by operation of law in antitrust litigation; and (b) is exempt from trebling, which is likewise automatic in antitrust cases. Accordingly, COSI's maximum exposure – by statute – was its single damages for its own sales: no single damages for the conspiracy, and nothing trebled. *Morningstar Packing Co. v. S.K. Foods, L.P.*, No. 2:09-cv-00208, 2015 WL 3797774 (E.D. Cal. June 18, 2015).

1            In assessing the amount recovered here, the Court considers that, as the "first settlement in the litigation," this agreement carries additional "significant value" because it may "'break the ice' and bring other defendants to the point of serious negotiations." *In re Linerboard Antitrust Litig.*, 292 F.Supp.2d 631 (E.D. Pa. 2003). Courts typically approve settlements that offer the first settling party a discount due to "the significant value in and of itself as an icebreaker settlement," particularly when, as here, the settling defendants have agreed to cooperate in the remaining litigation. *In re Domestic Airline Travel Antitrust Litig.*, 378 F.Supp.3d 10, 19 (D.D.C. 2019); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (finding that "assistance in the case" will "prove invaluable to the plaintiffs").

            Given these circumstances, the amount recovered is more than reasonable. The Settlement Agreement provides substantial benefits to Class Members: $5 million for notice and administration costs, and $15 million in a Settlement Fund to escrow for Settlement Class Members and to reimburse litigation expenses. COSI's total exposure was limited to $60 million based on EPPs' expert's calculations and its status as the ACPERA leniency applicant.  And, COSI has vehemently disputed the impact and the amount of damages.  Absent a settlement, COSI would proffer its own damages expert, necessitating a trial on highly technical matters of econometrics. EPPs secured one-third of the maximum possible recovery their own expert calculated through Settlement and falls within the range of likely approval.

            This proposed settlement compares favorably to other antitrust and class action settlements that have received approval. *See In re Domestic Airline Travel Antitrust Litig.*, 378 F.Supp.3d at 19 (finding $15 million settlement to be "in line" with other icebreaker settlements); *see also Carlin v. DairyAmerica, Inc.*, 380 F. Supp.3d 998, 1011 (E.D. Cal. 2019) ("Courts regularly approve class settlements where class members recover less than one quarter of the maximum potential recovery amount."); *In re Mego Financial Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding settlement that provided plaintiffs one-sixth of their potential recovery to be "fair and

adequate"); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving settlement that provided between 8.5 and 25.4 percent of the potential recovery); *In re Critical Path, Inc.*, No. C01-00551, 2002 WL 32627559 (N.D. Cal. June 18, 2002) (finding $17.5 million settlement "not unreasonable" when compared to potential recovery of $200 million). When combined with the cooperation the COSI Defendants have agreed to provide, the relief provided for by the Settlement more than merits preliminary approval.

The fifth and sixth *Churchill Village* factors also support preliminary approval. Because of the time expended on this case, EPPs were in a good position to evaluate the value of the COSI Settlement. *See Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *11 (C.D. Cal. Feb. 16, 2017) (finding that extensive discovery shows that counsel fully understand case's factual and legal issues). Furthermore, EPPs are represented by Class Counsel with substantial experience in litigating and evaluating antitrust class actions. Manifold Decl., Ex. 3. Their views and experience also weigh in favor of approval.

**2. Rule 23(e) Factors Support Preliminary Approval**

As noted above, in addition to the *Churchill Village* factors, Rule 23(e)(2) requires courts to consider whether (1) class representatives and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the settlement provides adequate relief for the class; and (4) the proposal "treats class members equitably relative to each other." The Court finds that for the reasons discussed above, EPPs have established that class representatives and their counsel have adequately represented the class' interest; the COSI Settlement provides adequate relief for the class; and the proposal treats Settlement Class Members equitably.

In addition, when considering whether the settlement resulted from arm's-length negotiations, courts often find it useful to look at issues including (1) "attorneys' fees out of proportion to class member compensation;" (2) an agreement

1  by the defendant not to contest class counsel's attorney's fees; and (3) an agreement
2  to allow unawarded attorneys' fees to revert to the defendants. *Volkswagen Clean*
3  *Diesel Marketing Litig.,* 895 F.3d at 611 & n. 19 (citing *In re Bluetooth Headset Prod.*
4  *Liab. Litig.*, 654 F.3d at 947); *Procedural Guidance for Class Action Settlements*
5  §1(h). Here, Settlement Class Counsel will ***not*** be requesting any attorney fees, just
6  reimbursement for litigation costs and expenses, so these usual concerns are moot.
7  The COSI Defendants and any Settlement Class Member are free to object to Class
8  Counsel's request for reimbursement from the Settlement Fund.

9      The terms of the COSI Settlement Agreement further make clear that it is not
10 the result of collusion. It is similarly apparent that the COSI Settlement – secured after
11 multiple discussions and with experience counsel and a core COSI executive
12 present— resulted from hard-fought, arm's-length negotiations. Manifold Decl., ¶¶
13 11-14.

14     **a.**    **EPPs' Class Notice and Claims Program Is Reasonable.**

15     The Court must also assess whether the notice and claims program is reasonable
16 so Settlement Class Members can object to, or opt out of, the Settlement. *See* Fed. R.
17 Civ. P. 23(e)(4) -(5). Class Counsel retained JND, an experienced notice and claims
18 administrator, to serve as the notice provider and settlement claims administrator. The
19 Court approves and appoints JND as the Claims Administrator. EPPs and JND have
20 developed an extensive and robust notice program which satisfies prevailing reach
21 standards. JND also developed a distribution plan which includes an efficient and user
22 friendly claims process with an effective distribution program. The Notice is
23 estimated to reach over 85% of potential class members via notice placements with
24 the leading digital network (Google Display Network), the top social media site
25 (Facebook), and a highly read consumer magazine (*People*). The proposed Class
26 Notice clearly explains the objection process to Settlement Class Members and
27 informs them that they may appear at the fairness hearing or retain counsel to represent
28

their interests. Class members may appear at the Fairness Hearing, or submit a timely and appropriate written statement through counsel.

Here, the Settlement treats all Class members equitably, and there are no differences between the scope of relief between any Class members.

**INTERIM DISTRIBUTION OF MONIES TO CLAIMS ADMINISTRATOR**

Given its depth of reach, and the need to reach tens of millions of Settlement Class Members, an interim distribution of $1 million prior to final approval of the COSI Settlement is approved under the terms provided in the Settlement Agreement.

In light of all of the foregoing, the proposed COSI Settlement merits preliminary approval as it is likely to be finally approved after the Fairness Hearing.

**CONCLUSION**

For the foregoing reasons, the Court hereby preliminarily approves the COSI Settlement, and ORDERS the following:

(1) The Court certifies, for settlement purposes, the following Settlement Class:

All persons and entities who reside in one of the States described in paragraphs 113(b) to 113(gg) of the Fourth Consolidated Amended Complaint, specifically Arizona, Arkansas, California, the District of Columbia, Florida, Guam, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin, who indirectly purchased Packaged Tuna in cans or pouches smaller than forty ounces for end consumption and not for resale, produced by any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator during the period from June 1, 2011 to July 1, 2015.

(2) The Court appoints Wolf Haldenstein as Settlement Class Counsel.

(3) The Court appoints the named plaintiffs in the Class Order (ECF No. 1931) as Class Representatives for settlement purposes.

(4) The Court finds that the COSI Settlement Agreement has been negotiated at arm's length.

(5) The Court finds the COSI Settlement is fair, reasonable, and adequate, and in the best interests of the Settlement Class.

(6) The Court approves the notice content[2] and plan for providing notice of the COSI Settlement to members of the Settlement Class.

(7) The Court orders COSI and TUG to provide the relevant notices as required by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*.

(8) Finally, the Court adopts and sets the following deadlines:

| | |
|---|---|
| Deadline for disseminating Class notice | April 13, 2022 |
| Deadline for filing of affidavit attesting that notice was disseminated as ordered | May 9, 2022 |
| Deadline for Class members to opt out of the Class and/or of the Settlement and deadline to object to the Settlement | May 13, 2022 |
| Plaintiffs to file a motion for final approval and to request costs and expenses incurred to date of $4,155,027.67. | May 25, 2022 |
| Final approval hearing | July 15, 2022, at 1:30 p.m. |

**IT IS SO ORDERED.**

Dated: January 26, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court

---

[2] The notice requires one correction: The address for the Clerk of Court is 333 West Broadway, San Diego, CA 92101.