UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*Associated Wholesale Grocers, Inc. v. Bumble Bee Foods LLC et al.,* case no. 18cv1014-JLS-MDD<br><br>*Winn-Dixie Stores, Inc. et al. v. Bumble Bee Foods LLC et al*., case no. 16cv17-JLS-MDD<br><br>End Payer Class Actions<br><br>Commercial Food Preparer Class Actions<br><br>Direct Purchaser Class Actions. | Case No.: 15-MD-2670 DMS (MDD)<br><br>**CLASS ACTION**<br><br>**ORDER GRANTING IN PART AND DENYING IN PART STARKIST CO.'S MOTION FOR RECONSIDERATION AND TO CORRECT CLERICAL MISTAKES AND VACATING HEARING**<br><br>**(ECF No. 2681)** |

Pending before the Court is Defendant StarKist Co.'s ("StarKist") motion to reconsider a finding and correct two clerical errors in the Court's November 16, 2021 order granting in part and denying in part Direct Action Plaintiffs' and End Purchaser Plaintiffs' motions for partial summary judgment against StarKist based on guilty pleas and admissions in parallel criminal proceedings. For the reasons set forth below, the Motion is granted insofar as StarKist seeks correction of clerical errors and denied in all other respects.

StarKist requests the Court to reconsider and reverse its finding on summary adjudication that StarKist participated in the price-fixing conspiracy as of June 1, 2011. (*See* Order Granting in Part and Denying in Part Direct Action Pls.' and End Purchaser Pls.' Mots. For Partial Summ. J. Against StarKist Co. Based on Guilty Pleas and Admissions in Parallel Crim. Proceedings ("MSJ Order") at 32, ECF No. 2654.) StarKist urges the Court to reconsider in light of (1) testimony of Stephen Hodge[1] at trial of Christopher Lischewski that "he did not enter into any unlawful agreements ***until November 2011***" (Mot. at 1, 5); (2) Hodge's recent deposition testimony to the same effect in another case (*id.* at 5-6, 8, 10); and (3) StarKist's expectation of Charles Handford testifying, "hypothetically, that he did not enter into any unlawful agreements" (Mot. at 6; Mot., Ex. 5 ("Kates Decl.") ¶¶ 3, 5.) StarKist contends it was deprived of this evidence when it filed its opposition brief on November 7, 2019. In its Reply, StarKist also wants the Court to consider the deposition testimony of Joe Tuza (Reply at 1, 4; Reply Ex. 1) and a letter from Hodge to Judge Edward M. Chen prior to sentencing in the criminal case against him (Reply at 3; Reply Ex. 2).

Hodge, Handford, and Tuza were deposed in this MDL in 2018 during the pendency of parallel criminal proceedings. Hodge and Handford invoked the Fifth Amendment privilege and refused to answer any substantive questions. (Mot. at 2-3, 8; *see also* MSJ Order at 19-23.) StarKist claims this Court's adverse finding was the product of "unlucky timing" for StarKist. (Mot. at 12.)

Lischewski's trial commenced on November 4, 2019, and ended on December 3, 2019. *United States v. Lischewski*, U.S. Dist. Ct. N.D. Cal. Case No. 18cr203-EMC. Hodge testified on November 12, 13, and 15. (*See* Mot., Exs. 1-3 (collectively "Trial Tr.").) With its opposition filed November 7, 2019, StarKist included selected trial excerpts available at that time. (*See* StarKist Co.'s Omnibus Opp'n to Pls.' Mot. for Partial

---

[1] Unless otherwise noted, individuals are referred to by full names only when first introduced. Subsequently, they are referenced by last name only.

Summ. J. Against StarKist Co. and End Payer Pls.' Mot. for Partial Summ. J. at 25 n.12, ECF No. 2129.) Plaintiffs submitted their own selected trial excerpts, including excerpts of Hodge's testimony, with their reply briefs filed December 12, 2019. (*See* Pls.' Reply Mem. of P. & A. in Further Supp. of Mot. for Partial Summ. J. at 7-9, ECF No. 2218.) For two years, StarKist neither objected to Plaintiffs' trial excerpts nor requested leave to submit additional trial excerpts of its own. (*See* MSJ Order at 19 n.18.)

StarKist argues that due to the invocation of the Fifth Amendment in deposition, Hodge's subsequent testimony and Handford's proffered willingness to "uninvoke" if he were deposed again (*see* Kates Decl. ¶ 5) constitute "newly discovered evidence" justifying reconsideration. (Mot. at 1, 7-8) (citations omitted). Offering no binding authority in support of its argument,[2] StarKist assumes that invocation of the Fifth Amendment in deposition automatically entitles it to reconsideration if the deponent later decides to "uninvoke." None of the cited cases so holds. Moreover, StarKist's assumption is contrary to authority holding that courts have discretion to prohibit the "uninvoking" witness from testifying at trial and to draw negative inferences from the invocation of the Fifth Amendment in a previous deposition. *See Nationwide Life Ins. Co. v. Richards,* 541 F.3d 903, 910-14 (9th Cir. 2008) (bench trial)*; see also SEC v. Colello*, 139 F.3d 674, 678 (9th Cir. 1998) (summ. j.). StarKist also suggests that denying relief would amount to reversible error. (Mot. at 12) (citations omitted). The cited cases do not support StarKist's conclusion. *United States v. Mark*, 795 F.3d 1102 (9th Cir. 2015), the only published Ninth Circuit opinion cited by StarKist on this point,[3] does not address analogous circumstances, as it is a criminal case reversing a district court's denial of motion to reconsider denial of

---

[2] "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case." *Camreta v. Green,* 563 U.S. 692, 709 n.7 (2011).

[3] "Unpublished dispositions and orders of this Court are not precedent, except when relevant under the doctrine of law of the case or rules of claim preclusion or issue preclusion." 9th Cir. R. 36-3(a).

a motion to dismiss indictment. Finally, in none of StarKist's cited cases did the party seeking reconsideration wait for two years after obtaining relevant evidence to bring it to the court's attention, thus subjecting the court and opposing parties to unnecessary motions.

StarKist further argues that this "newly" discovered evidence "refutes" the finding that StarKist was involved in the price-fixing conspiracy before November 2011. (Mot. at 7-8.) The Court disagrees. StarKist's proffer is carefully limited to the propositions that Hodge did not enter into any unlawful agreements or personally participate in the conspiracy before November 2011,[4] and that Handford will testify he did not enter into any unlawful agreements.[5] Taken at face value, StarKist's proffers are not inconsistent with, and do not contradict, direct evidence that StarKist was involved in the price-fixing conspiracy as early as June 1, 2011. (*Cf.* MSJ Order at 16-25) (discussing evidence). Accepting StarKist's propositions and drawing all justifiable inferences in StarKist's favor, they are insufficient to raise a genuine issue of fact.

To the contrary, StarKist's contention that a reasonable trier of fact could conclude that StarKist was not involved in the conspiracy before November 2011, is negated by Hodge's own trial testimony.[6] Hodge was StarKist's Senior Vice President of Sales, and Tuza was its Senior Vice President of Marketing. (Trial Tr. at 1166.) Hodge managed the sales operations (*id.* at 1165), and Tuza was responsible for trade marketing and "setting the prices at which the product is sold[.]" (*Id.* at 1166). Handford reported to both of them. In his capacity as StarKist's Vice President of Trade Marketing, Handford reported to Tuza, and as Director of Northeast Sales, Handford reported to Hodge. (*Id.* at 1187, 1189.) As part of his trade marketing responsibilities, Handford oversaw all of StarKist's trade

///

---

[4] (Mot. at 1, 3-4, 5-6, 8, 10.)
[5] (*Id.* at 1, 6, 8, 11) (citing Kates Decl. ¶ 3).
[6] StarKist relies on several excerpts from Hodge's trial testimony beginning with page 1166 and ending at page 1195 of the trial transcript. (*See* Mot. at 1, 3-4, 5-6, 8, 10.)

marketing, including setting quarterly guidance.[7] (*Id.* at 1188-89; *see also id.* at 1887.) During the relevant time, Hodge was in daily contact with Tuza and Handford. (*Id.* at 1188, 1190.) When Tuza was terminated in November 2011, Hodge's responsibility was increased to head trade marketing in Tuza's place. (*Id.* at 1166-67, 1190.)

Before Tuza's termination, Hodge had a meeting with him, which he described at trial as follows:

> We were in Joe's [Tuza's] office and he said to me, "You know[] that we have conversations with our competitors in regards to certain pricing activities. Now that I'm leaving and Chuck [Handford] is gone[8], it's going to be up to you to handle this responsibility." And he gave me the names of two people, one with Bumble Bee and one with Chicken of the Sea, and said he would get me their contact information.

(Trial Tr. at 1191; *see also id.* at 1192.)[9] Together with the evidence discussed in the summary judgment order (MSJ Order at 16-25), and drawing all justifiable inferences in StarKist's favor, Hodge's trial testimony supports rather than raises questions about the finding that StarKist, through its officers and employees, participated in the price-fixing conspiracy before November 2011.[10]

///

---

[7] Quarterly guidance is pricing guidance given to the sales force and brokers to guide their negotiations with customers for promotional pricing, *i.e.*, how much tuna prices could be set below list prices. (Trial Tr. at 1177-78.)

[8] Handford left StarKist in September 2011. (Kates Decl. ¶ 1; *see also* Trial Tr. at 1187.)

[9] Tuza gave Hodge contact information for Scott Cameron, Hodge's counterpart at Bumble Bee, and John Sawyer at Chicken of the Sea. (Trial Tr. at 1191-92.) Although Hodge was given Cameron's contact information, he opted to contact Ken Worsham, Senior Vice President of Trade Marketing at Bumble Bee, instead. (*Id.* at 1192-93.)

[10] StarKist's Plea Agreement states that it participated in the conspiracy through its "officers and employees[,]" making explicit what is obvious—that it engaged in the conspiracy to fix prices through the acts of several of its officers and employees, not just Hodge. (Plea Agreement at 3-4, ECF No. 2129-36.) Furthermore, not every officer or employee need participate in each act or transaction of the conspiracy. *Arandell v. Centerpoint Energy Servs.*, 900 F.3d 623, 634 (9th Cir. 2018).

After Plaintiffs highlighted the foregoing testimony in their Opposition to reconsideration (Opp'n at 6), StarKist brought up for the first time in its Reply Tuza's deposition testimony and Hodge's letter to the sentencing judge. Aside from the fact that it is inappropriate to raise new arguments in a reply brief, *see Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007), neither warrants changing the summary judgment order.

Tuza's deposition was taken on May 1, 2018. (Reply, Ex. 1.) StarKist presents him as a key witness in defense against liability prior to November 2011. (*See* Reply at 1-2, 5 & n.2.) His testimony was available well in time for opposition to Plaintiffs' summary judgment motion on November 7, 2019, yet it was not argued either in StarKist's opposition brief or even in its Motion seeking reconsideration. This is not newly discovered evidence and StarKist has presented no compelling reason for not arguing it until this late date. Furthermore, as with Hodge and Handford, the relevant proffered excerpts are limited to Tuza not entering into agreements. (*Id.* at 1, 5 n.2.)

StarKist also relies on Hodge's letter to the sentencing judge to argue that Hodge was "speculating" when he testified at Lischewski's trial, suggesting that his testimony should not be credited. (*Id.* at 3.) However, this argument is refuted by the letter itself. Far from shrinking from his trial testimony, Hodge admitted he knew that StarKist was "bending the rules" before November 2011, although he did not know that the conduct was illegal. (Reply, Ex. 2 at 5.)[11]

For the reasons stated above, StarKist's request to reconsider and reverse the finding that it was participating in the price-fixing conspiracy as of June 1, 2011, is denied. The parties are reminded of the Court's recent admonition "not to bring motions for reconsideration unless [counsel] really believe, in good faith, after careful thought and consideration, that it is appropriate." (Tr. of Telephonic Status Conf. at 43, ECF No. 2627.)

/ / /

---

[11] Because the letter does not include page numbers, citation is to the page number generated by the CM/ECF System.

StarKist's motion is granted insofar as it seeks correction of two clerical errors. The Court will issue an amended order changing "Dongwon Enterprises Co. Ltd." (MSJ Order at 3) to "Dongwon Industries Co., Ltd." (Mot. at 13; *see also* ECF No. 2517) and changing "Dongwon Group's Vice Chairman Nam-jung Kim" (MSJ Order at 27) to "Dongwon Enterprise Co., Ltd. Vice Chairman and StarKist Board Member Nam-jung Kim"[12] (Mot. at 13; *see also* Mot., Ex. 7 (Kim Dep.) at 11-12, 32). The Motion is denied in all other respects.

**IT IS SO ORDERED**.

Dated: February 4, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court

---

[12] Neither the summary judgment order (ECF No. 2654) nor this Order makes any findings regarding the existence or legal significance of a "Dongwon Group." These issues are the subject of a separate summary judgment motion. (*See* ECF No. 1973.)