# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>• Direct Purchaser Plaintiffs<br><br>• Commercial Food Preparer Plaintiffs<br><br>• Indirect Purchaser End Payer Plaintiffs | Case No.: 15-MD-2670 DMS (MDD)<br><br>**CLASS ACTION**<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST CLASS PLAINTIFFS ON STATUTE OF LIMITATIONS GROUNDS**<br><br>**(ECF No. 2007)** |

Pending before the Court in this multidistrict litigation is a partial motion for summary judgment against the Direct Purchaser Plaintiffs ("DPPs"), Indirect Purchaser End Payer Plaintiffs ("EPPs"), and Commercial Food Preparer Plaintiffs ("CFPs," collectively with DPPs and EPPs, the "Class Plaintiffs"). Specifically, Defendants Bumble Bee Foods, LLC ("Bumble Bee") and StarKist Company ("StarKist") filed a motion for partial summary judgment against Class Plaintiffs (Defs.' Mot. for Partial Summ. J., ECF No. 2007) on statute of limitations grounds. Class Plaintiffs filed an opposition to the motion (Class Pls.' Opp'n to Defs.' Mot., ECF No. 2089), and Defendant StarKist filed a

reply brief. (Reply Mem. of P. & A. in Further Supp. of Defs.' Mot., ECF No. 2178).[1] The matter is fully briefed and submitted.

The general background and history of this is litigation is well documented and extensively discussed in prior orders. (ECF Nos. 2454, 2654.) A similar motion for summary judgment on statute of limitations grounds was filed by Defendants against the Direct Action Plaintiffs ("DAPs"). The Court issued an Order denying that motion on February 7, 2022, finding triable issues of fact regarding whether Defendants fraudulently concealed their anticompetitive activity, thus tolling the statutes of limitation. (*See* Order Denying Defs.' Mot. against DAPs on Statute of Limitations Grounds ("DAPs SOL Order"), ECF No. 2748.) The subject motion is denied for the same reasons.

# I.
# BACKGROUND

For purposes of the present motion, the Court sets out only the relevant facts. On August 3, 2015, DPPs filed a complaint alleging an antitrust conspiracy by the three largest domestic tuna brands and their parent companies, including StarKist, Bumble Bee and Chicken of the Sea ("COSI"), to fix and maintain packaged tuna prices above competitive levels in violation of state and federal antitrust and consumer protection laws. Shortly thereafter, on August 24, 2015, EPPs and CFPs filed a complaint alleging the same conspiracy.

Some of those allegations proved to be true. Defendants Bumble Bee and StarKist pleaded guilty to conspiracy to violate federal antitrust laws under the Sherman Act, 15 U.S.C. § 1, on August 4, 2017, and November 14, 2018, respectively. COSI had earlier entered into a leniency agreement with the Department of Justice ("DOJ") Antitrust Division and agreed to cooperate and debrief concerning its participation as a "cartel"

---

[1] As noted in prior Orders of this Court, Bumble Bee filed for bankruptcy protection. (*See* ECF No. 2654.) Accordingly, this Order identifies Bumble Bee only insofar as it was one of the original moving parties.

member in the forgoing conspiracy. A number of executives of Defendants StarKist and Bumble Bee pleaded guilty to participating in the conspiracy in 2017, and another executive of Bumble Bee (Christopher Lischewski) was tried and convicted by jury on December 3, 2019, for his role in the conspiracy. (*See* Order Granting in Part and Denying in Part DAPs and EPPs' Mot. for Partial Summ. J. Against StarKist Co. Based on Guilty Pleas and Admis. In Parallel Criminal Proceedings; ECF No. 2654) (discussing guilty pleas, conviction and admissions of Defendants and their representatives and granting partial summary judgment).

Defendants now request summary judgment on Class Plaintiffs' claims of injury that fall outside the relevant statutes of limitation (four years for federal antitrust claims and one to six years for state antitrust and consumer protection claims). (Defs.' Mot. for Partial Summ. J., ECF No. 2007.) Class Plaintiffs oppose, and argue there are triable questions of fact regarding whether the doctrine of fraudulent concealment applies to Defendants and tolls the limitation periods. (Class Pls.' Opp'n to Defs.' Mot., ECF No. 2089.)

## II.

## DISCUSSION

As noted, Defendants argue that under both federal and state statutory frameworks, Class Plaintiffs' claims are time-barred. Based on the allegations in their complaints, DPPs and EPPs seek damages for class periods dating from June 1, 2011, through July 31, 2015. CFPs seek damages for class periods dating from June 1, 2011, through December 31, 2016.

As alleged by DPPs in their August 3, 2015 complaint, federal claims under the Sherman Antitrust Act have a four-year statute of limitations. 15 U.S.C. § 15(b). Accordingly, Defendants contend that DPPs federal law claims are partially time-barred because the relevant alleged injury period, June 1, 2011, through July 31, 2015, exceeds the four-year bar by 63 days during the first two months of the alleged period—June 1 through August 2, 2011.

|   |   |
|---|---|
| 1 | For CFPs and EPPs, Defendants contend that each state statutory framework would |
| 2 | truncate the relevant class period, depending on the statute of limitation of the underlying |
| 3 | state law.  Since CFP and EFP claims were filed on August 24, 2015, Defendants allege |
| 4 | that the claims are facially time-barred from June 1, 2011 to August 24, 2014, for claims |
| 5 | with a one-year statute of limitations, June 1, 2011 to August 24, 2013, for claims with a |
| 6 | two-year statute of limitations, June 1, 2011 to August 24, 2012, for claims with a three- |
| 7 | year statute of limitation, and June 1, 2011 to August 24, 2011, for claims with a four-year |
| 8 | statute of limitations.  Accordingly, Defendants contend that 1,181 days of the class period |
| 9 | are barred for claims with one-year statute of limitations, 816 days for claims with two- |
| 10 | year statute of limitations, 451 days for claims with three-year statute of limitations, and |
| 11 | 85 days for claims with four-year statute of limitations. |
| 12 | Defendants argue Class Plaintiffs "cannot point to any exception that would toll the |
| 13 | relevant limitations periods." (Defs.' Mot. for Partial Summ. J., at 2.)  According to |
| 14 | Defendants, the Court should grant summary judgment "because Class Plaintiffs cannot |
| 15 | raise a triable issue regarding Defendants' supposed fraudulent concealment." (*Id.*) |
| 16 | To prove fraudulent concealment, the burden is on the plaintiff to establish that: "(1) |
| 17 | the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have |
| 18 | 'actual or constructive knowledge of the facts giving rise to its claim'; and (3) the plaintiff |
| 19 | acted diligently in trying to uncover the facts giving rise to its claim." *Hexcel Corp. v.* |
| 20 | *Ineos Polymers, Inc.*, 681 F.3d 1055, 1060 (9th Cir. 2012).  Application of the fraudulent |
| 21 | concealment doctrine is a fact-based inquiry. *Conmar Corp. v. Mitsui & Co. (U.S.A.)*, 858 |
| 22 | F.2d 499, 502 (9th Cir. 1988). |
| 23 | Defendants focus on the second and third elements of the fraudulent concealment |
| 24 | doctrine and argue the uncontroverted evidence establishes that Class Plaintiffs had |
| 25 | knowledge of facts giving rise to their antitrust claims as early as July 2008 and failed to |
| 26 | conduct a reasonably diligent investigation, thus precluding use of the doctrine to toll the |
| 27 | statutes of limitation. (*See* Defs.' Mot. for Partial Summ. J., at 5-7.) |
| 28 | |

As an initial matter, the Court has already found triable issues of fact on the first element of the fraudulent concealment doctrine: whether Defendants engaged in affirmative acts to conceal their antitrust conspiracy. (DAPs SOL Order at 7-11, ECF No. 2748) (discussing evidence of coordinated pretextual public statements regarding can downsizing and price increases, document alteration and destruction, clandestine meetings, and other acts of obfuscation by Defendants). Class Plaintiffs advance the same arguments here: "Defendants were secretly discussing and meeting amongst themselves, strategizing on ways to artificially control and inflate the prices of Packages Seafood[,] …went to great lengths … to conceal these secret meetings and conversation from the Plaintiffs and the public in general." (Class Pls.' Opp'n to Defs.' Mot. at 15, ECF No. 2089.) Here, as with DAPs, there are numerous triable issues of fact whether Defendants took affirmative acts to mislead. Notably, too, since the filing of the complaints at issue, Defendants have pleaded guilty to participation in the antitrust conspiracy. Of course, the essence of such a conspiracy is to mislead.

On the second element of fraudulent concealment, the Court also found triable issues of fact regarding whether DAPs had knowledge of facts giving rise to their antitrust claims against Defendants. (DAPs SOL Order at 11-16, ECF No. 2748) (discussing facts actually or constructively known to DAPs and concluding triable issues of fact exist whether DAPs were on inquiry notice of their claims). Much of the Court's reasoning there, applies here and will not be repeated. However, two of Defendants' arguments in the present motion merit additional discussion.

First, Defendants argue Class Plaintiffs had actual notice of facts giving rise to their claims as early as July 2008, when "StarKist, Bumble Bee, and Chicken of the Sea downsized their packaged tuna cans from six ounces to five ounces." (Defs.' Mot. for Partial Summ. J., at 5-6.) Defendants note that EPPs allege "StarKist made 'public statements' about the downsize on July 21, 2008. (*Id.,* citing EPPs Operative Compl. ¶ 268.) Defendants argue that "Class representatives confirmed they noticed changes in

Defendants' can sizing" and thus, Plaintiffs had actual notice of their claims but failed to file a timely complaint. (*Id.*)

Defendants rely on three excerpts of depositions of EPP class representatives who admit learning about can downsizing. The first excerpt is from the deposition of Andrew Gorman, where he states that at some point in time he noticed the cans got smaller:

> Q. ... Do you know how many ounces each can is?
> A. Now I do, yes. And I noticed in the past when I was buying them, there was a difference in size. They became smaller.
> ***
> Q. Okay. And you realized that at some point in time there was a size differential?
> A. Yes.
> Q. Do you recall approximately when that was?
> A. No.

(Defs.' Mot. for Partial Summ. J. Ex. 1 ("Gorman Dep."), at 13–14, ECF No. 2006-1.)

The next excerpt comes from the deposition of Gay Birnbaum, where she also admits to learning about smaller can size:

> Q. Ms. Birnbaum, we talked a little bit before about the price of packaged tuna. Now, do you consider the size of a can of packaged tuna when you are making a purchase?
> A. Absolutely, yes.
> Q. How do you consider it?
> A. Well, I like to buy the 7-ounces and it went from 7 to 5 and that affects my recipes.
> Q. Where did it go from 7 to 5? You said that the size had changed from 7 to 5?
> A. Yes.

(Defs.' Mot. for Partial Summ. J. Ex. 2 ("Birnbaum Dep."), at 90–91, ECF No. 2006-2.)

The final transcript is from Kim Craig, who makes similar acknowledgments:

> Q. Do you recall whether the size of the cans that you purchased the packaged tuna have changed from 2005 to the present?
> A. Yes.
> Q. How so?
> A. They're smaller.

> Q. Do you recall when that happened?
> A. I don't remember.
> Q. When did you first become aware that the cans that you purchased, the packaged tuna cans that you purchased, were smaller?
> A. I don't remember when. I noticed it, but I just noticed the cans were small, smaller.

(Defs.' Mot. for Partial Summ. J. Ex. 3 ("Craig Dep."), at 38, ECF No. 2006-3.)

The Court addressed this issue at an earlier stage, on a motion to dismiss. The statements by the district judge then handling this case, Judge Janis Sammartino, apply with equal force today:

> In the present case, the most a reasonable EPP or CFP Plaintiff could have known prior to the investigation announcement was that prices for tuna were going up and can size was shrinking. These facts alone would almost certainly be insufficient to put Plaintiffs on notice that they should investigate the possibility of a tuna cartel.

*In re Packaged Seafood Prods. Antitrust Litig.,* 242 F.Supp.3d 1033, 1099-1100 (S.D. Cal. 2017) (Sammartino, J.). Repackaging the same argument at a later stage of the proceedings—through deposition testimony and on a summary judgment motion—does not make it any more persuasive. Class Plaintiffs correctly point out what is undisputed: EPPs are "ordinary consumers" who could only observe retail prices of packaged seafood, and CFP caterers and restauranteurs who deal in many different kinds of food products could not comprehensively monitor upstream activity. (Class Pls.' Opp'n to Defs.' Mot. at 15, ECF No. 2089.) Accordingly, the deposition excerpts do not establish that the class representatives failed to recognize "red flags" that would put a reasonable person on inquiry notice of a massive antitrust scheme (a "tuna cartel") that was only uncovered years later—through the investigative resources of the federal government (announced in July 2015) and its subsequent indictments. (*See* ECF No. 2654.) To the contrary, the excerpts only indicate that the class representatives were consumers of the product who noticed the can size decrease. Two of the three class representatives could not identify when the can downsizing occurred—further indicating that a reasonable consumers' suspicions would

not be excited by the modification in can size. They were clearly annoyed, but to charge them with inquiry notice in 2008 of an antitrust conspiracy that was revealed by DOJ in July 2015 is a bridge too far.

Next, Defendants focus on certain allegations in EPPs' complaint. Defendants contend that EPPs have admitted that "can downsize must have been the product of collusion and was so far outside the self-interest of any individual Defendant that it could not have been effectuated without a collusive agreement among all companies." (Defs.' Mot. for Partial Summ. J., at 6.) According to Defendants, "this means Plaintiffs also *must* have known (or at least should have suspected) the possibility of collusion back in 2008." (*Id.*) But as Class Plaintiffs point out, EPPs' complaint in 2018 "says nothing about what consumers should have reasonably suspected in 2008." (Class Pls.' Opp'n to Defs.' Mot. at 11, ECF No. 2089.) Class Plaintiffs note that Olean Wholesale Grocery Cooperative, Inc. ("Olean") only added claims about can downsizing on October 13, 2015, after "COSI was a leniency applicant to the [DOJ] and … the facts concerning a longstanding cartel had come to light in the DOJ's review of COSI's merger application with Bumble Bee." (*Id.* at 11, n. 5.)

As the Court emphasized in the DAPs SOL Order, *when* Plaintiffs learned of the facts underlying the allegations in their complaints is a material question of fact unresolvable on a Rule 56 motion. Defendants' motion here suffers the same fate.

The final element in the fraudulent concealment analysis is due diligence. As noted in the DAPs SOL Order, a diligent examination of potential misconduct is only warranted under this doctrine where, "facts exist that would excite the inquiry of a reasonable person." *Conmar*, 858 F.2d at 504. No due diligence analysis is required where "there is a genuine issue of material fact whether the facts publicly available were sufficient to excite [plaintiff's] inquiry." *Id.* at 504–05. Because there are triable issues of fact regarding whether the information available to Class Plaintiffs was sufficient to excite inquiry, no due diligence need be demonstrated here to survive summary judgment. *Id.*

## III.

## CONCLUSION

For the foregoing reasons, Defendants' motion for partial summary judgment on statute of limitations grounds against Class Plaintiffs is denied; Defendants shall file unredacted versions of their briefs (ECF Nos. 2007) and related statements of undisputed facts, oppositions, exhibits, as well as the response thereto (ECF No. 2178); and they shall identify these documents on the docket as "unreadacted" versions of their prior filings and in each instance reference the docket number of the previous "redacted" version.

**IT IS SO ORDERED**.

Dated: February 11, 2022

Hon. Dana M. Sabraw, Chief Judge
United States District Court