Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Christopher L. Lebsock (Cal. Bar No. 184546)
Samantha J. Stein (Cal. Bar No. 302034)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: bsweeney@hausfeld.com
E-mail: clebsock@hausfeld.com
E-mail: sstein@hausfeld.com

*Class Counsel for the Direct Purchaser Class*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MDD MDL No. 2670 |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS AND SERVICE AWARDS FOR THE CLASS REPRESENTATIVES IN CONJUNCTION WITH THE COSI/TUG SETTLEMENT** |
| This filing relates to the Direct Purchaser Plaintiff Class Action Track | DATE:     June 17, 2022<br>TIME:     1:30 PM<br>JUDGE:   Dana M. Sabraw<br>CTRM:    13A |

# **TABLE OF CONTENTS**

I.  INTRODUCTION................................................................................1

II. BACKGROUND...............................................................................2

   A.  Litigation Background ...........................................................2

   B.  The Settlement With COSI And TUG ................................10

   C.  The Arbitration.....................................................................12

III.  DISCUSSION – ATTORNEYS' FEES & COSTS ..........................14

IV.  DISCUSSION – SERVICE AWARDS .........................................17

V. CONCLUSION ...............................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Hendricks v. StarKist Co.*,
  3:13-cv-00729-HSG, ECF No. 323 (N.D. Cal. Dec. 11, 2015) ........................... 9

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ................................................................. 17

*In re Packaged Seafood Prods. Antitrust Litig.*,
  148 F. Supp. 3d 1375 (J.P.M.L. 2015) ..................................................... 3

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1043 (S.D. Cal. 2017) .................................................... 5

*In re Packaged Seafood Prods. Antitrust Litig.*,
  277 F. Supp. 3d 1167 (S.D. Cal. 2017) .................................................... 5

*In re Packaged Seafood Prods. Antitrust Litig.*,
  332 F.R.D. 308 (S.D. Cal. 2019), *vacated sub nom. Olean Wholesale
  Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 993 F.3d 774 (9th
  Cir. 2021), *rehearing en banc granted*, 5 F.4th 950 (9th Cir. 2021) .............. 2, 8

*In re Packaged Seafood Prods. Antitrust Litig.*,
  338 F. Supp. 3d 1118 (S.D. Cal. 2018) .................................................... 5

*In re Packaged Seafood Prods. Antitrust Litig.*,
  No. 3:15-md-02670, 2017 WL 35571 (S.D. Cal. Jan. 3, 2017) ........................... 5

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*,
  993 F.3d 774 (9th Cir. 2021) ................................................................. 8

*Petersen v. CJ Am., Inc.*,
  No. 14-CV-2570 DMS JLB, 2016 WL 5719823 (S.D. Cal. Sept. 30,
  2016) ............................................................................................. 17

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................. 17

*United States v. Christopher Lischewski*,
  No. 3:18-cr-00203, ECF No. 1 (N.D. Cal. May 16, 2018) ................................ 6

*United States v. StarKist Co.*,
   18-cr-0513-EMC (N.D. Cal.) ................................................................. 9

**Rules & Statutes**

15 U.S.C. § 15 ............................................................................................ 14

18 U.S.C. § 3771 ......................................................................................... 9

Fed. R. Civ. P. 23(h) ............................................................................... 2, 14

Pub. L. No. 108-237, § 213(a)-(b), 118 Stat. 665 (2004) ..................... 1, 13

## I.     INTRODUCTION

After six years of hard-fought litigation, the Direct Purchaser Plaintiffs ("DPPs"), represented by lead counsel, Hausfeld LLP, and several other firms working with it (collectively, "Class Counsel"), settled with the Defendants Tri-Union Seafoods LLC d/b/a Chicken of the Sea ("COSI") and its parent company, Thai Union Group ("TUG") (the "Settlement"). *See* ECF No. 2674 (DPPs' renewed "Preliminary Approval Motion"). This was the first settlement between the DPPs and any of the Defendants, and the Court preliminarily approved the Settlement on January 26, 2022. ECF No. 2733 ("Preliminary Approval Order"). While claims remain against StarKist Co. ("StarKist") and Bumble Bee Foods LLC's ("Bumble Bee") parent companies, this initial settlement with COSI and TUG provides substantial relief to the settlement class, particularly given COSI's status as the leniency applicant in the United States Department of Justice ("DOJ") criminal investigation.[1] Now, in the seventh year of litigation, the DPPs move for an award of costs and attorneys' fees pursuant to the Court's Preliminary Approval Order and request that the Court grant the proposed order accompanying this motion in conjunction with its ruling on final approval of the Settlement.

As the Court will recall, by the terms of the parties' Settlement Agreement, COSI and TUG agreed to pay reasonable costs and/or attorneys' fees capped at no more than $7 million, with the actual amount to be decided in a contested arbitration before a neutral arbitrator and paid ***separately from and in addition to*** the amounts due to the settlement class. *See* Declaration of Samantha J. Stein ("Stein Decl."), Ex.

---

[1] COSI—unlike its co-conspirators—has a maximum civil liability limited by the Antitrust Criminal Penalty Enhancement and Reform Act ("ACPERA") to single damages resulting solely from its own sales. *See* Pub. L. No. 108-237, § 213(a)-(b), 118 Stat. 665 (2004) (extended in October of 2020) (eliminating treble damages and joint and several liability for ACPERA applicant that provides satisfactory cooperation).

A ("Settlement Agreement"). No portion of the settlement class's relief is reduced or compromised by the costs and attorneys' fees awarded to the DPPs, as this Court recognized in its Preliminary Approval Order. *See* ECF No. 2733 at 17 ("[T]he methodology used for determining the proposed fee and cost award—a contested arbitration before a neutral arbitrator—is fair and reasonable. It does not detract from relief for the Class in any way."). Former federal Judge Layn Phillips presided over that contested arbitration between the DPPs and COSI/TUG on June 22, 2021, in which the DPPs argued for the full $7 million amount—a small fraction of the total costs and fees expended by Class Counsel during this litigation—and submitted over 600 pages of documentation supporting their request. COSI and TUG ardently disputed that request, as explained below. Following the arbitration, Judge Phillips ruled that the DPPs were entitled to $4,410,636.71 in past out of pocket expenses and fees of $1,539,363.29, for a total of $5.95 million. *See id.*, Ex. B ("Arbitration Award").

For the reasons set forth below, the DPPs now respectfully request that, in conjuction with final approval of the Settlement, the Court approve the fee and cost award as determined by Judge Phillips. *See* Fed. R. Civ. P. 23(h). The DPPs also seek modest incentive awards of $5,000 for each of the Class Representatives for their service in this case from the settlement fund. A copy of this motion and the arbitration ruling will be posted on the dedicated settlement website for settlement class members to review.

## II.  BACKGROUND

### A.  Litigation Background

Hausfeld, on behalf of a grocery and wholesaler cooperative from New York, Olean Wholesale Grocery Cooperative ("Olean"), filed the first civil case in the country regarding the antitrust conspiracy in the packaged tuna industry on August 3, 2015. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, *et al.*, No.

3:15-cv-0714-JLS-MDD, ECF No. 1 (S.D. Cal., filed Aug. 3, 2015). The suit, which followed on the heels of news of an investigation by the DOJ, was brought in the Southern District of California on behalf of a proposed class of direct purchasers. *Id.* Tag-along suits were filed by indirect purchasers, as well as some large retailers who indicated that they intended to opt out of the class action. While the cases were initially scattered across the country, including cases brought in venues from Arkansas to Florida, Hausfeld and Olean moved without delay to centralize and consolidate the cases in the Southern District of California as an MDL. As a result of Hausfeld's efforts, the Judicial Panel on Multidistrict Litigation granted Olean's motion and centralized the cases before the Honorable Janis L. Sammartino in December of 2015 as MDL No. 2670. *In re Packaged Seafood Prods. Antitrust Litig.*, 148 F. Supp. 3d 1375 (J.P.M.L. 2015).

Once the MDL was established, Hausfeld was instrumental in organizing these cases, including by promptly seeking productions of the documents Defendants had produced to the DOJ as part of the agency's investigation (the "DOJ Documents"). *See* ECF No. 21. Although the DOJ moved to intervene and the case was temporarily stayed, significant preliminary work was done to advance the litigation in the meantime, including coordinating Protective Orders, working out an ESI Protocol, and conducting additional case research. Stein Decl. ¶ 5.

On March 24, 2016, the Court formally appointed Hausfeld as interim lead counsel for the DPP Class and set the leadership structure for purposes of pretrial proceedings. ECF No. 119.[2] In appointing DPPs' lead counsel, the Court set forth an

---

[2] The Court also appointed a DPP Steering Committee consisting of the law firms of: Bernstein Liebhard LLP; Block & Leviton LLP; Cera LLP; Lowey Dannenberg Cohen & Hart, P.C. (now Lowey Dannenberg P.C.); Quinn Emanuel Urquhart & Sullivan, LLP; and Stueve Siegel Hanson LLP (later replaced by Hartley LLP). These firms, along with other firms (Steyer Lowenthal Boodrookas Alvarez & Smith LLP; Bleichmar Fonti & Auld LLP; and Rupp Baase Pfalzgraf Cunningham LLC) have all done work in this litigation.

extensive list of Hausfeld's responsibilities to ensure proper coordination and efficient prosecution throughout the consolidated pretrial proceedings:

> Interim Lead Counsel shall, in consultation with the Steering Committee, be responsible for the overall conduct of the litigation on behalf of the DPPs as follows:
>
> a. To brief and argue motions and file opposing briefs in proceedings initiated by other parties, and to present (by a designee) to the Court and opposing parties the position of all DPPs for all matters arising during all pretrial and trial proceedings;
>
> b. To designate attorneys to act as spokespersons at pretrial conferences;
>
> c. To conduct or coordinate discovery on behalf of the DPPs consistent with the requirements of the Federal Rules of Civil Procedure, including the preparation of joint interrogatories, requests for production of documents, requests for admissions, and the examination of witnesses in depositions;
>
> d. To designate an attorney to enter into stipulations with opposing counsel necessary for the conduct of the litigation;
>
> e. To monitor the activities of co-counsel and to implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds by counsel are avoided;
>
> f. To collect time, lodestar, and expense reports from each of the law firms working on behalf of the class of DPPs, including paralegals and any other staff members whose time is expected to be included in any fee petition;
>
> g. To ensure that work assignments are not given to any firm that has not promptly submitted its time and expense records or paid its assessments;
>
> h. To sign any consolidated complaint, motions, briefs, discovery requests or objections, subpoenas, stipulations, or notices on behalf of the class of DPPs or those DPPs filing particular papers;
>
> i. To conduct all pre-trial, trial, and post-trial proceedings on behalf of the class of DPPs;

j. To employ and consult with experts;

k. To call meetings of the law firms representing the class of DPPs when deemed appropriate and to assign work to these law firms;

l. To conduct settlement negotiations with defense counsel on behalf of the class of DPPs; and

m. To assure that all counsel for the class of DPPs are kept informed of the progress of this litigation.

ECF No. 119.

Class Counsel have performed significant work and expended significant resources in this case to the benefit the DPP class. Stein Decl. ¶ 4. As mentioned, Class Counsel pushed for production of the DOJ Documents, and when the stay was lifted to allow that material to be produced, Defendants produced over two million pages of documents as a result of these efforts. *Id.* ¶ 5. Hausfeld then organized and headed the review of those documents. *Id.* As part of that review, Hausfeld coordinated with all the other plaintiffs' counsel from the other plaintiff-tracks to draft harmonized and more detailed complaints. *Id.* Indeed, the complaints resulting from this effort contained substantial new allegations detailing the nature and scope of Defendants' conspiracy.[3]

For example, in addition to suing Bumble Bee, StarKist, and COSI, the DPP Class has also sued: (a) COSI's parent, TUG; (b) Bumble Bee's parent entities—Lion Capital LLP and Lion Capital (Americas), Inc. ("Lion Americas"), and Big Catch Cayman LP ("Big Catch") (collectively, the "Lion Entities"); and (c) StarKist's parent,

---

[3] The successive complaints in the litigation led the district court to issue voluminous opinions on various defense dismissal motions. *See In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670, 2017 WL 35571 (S.D. Cal. Jan. 3, 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1043 (S.D. Cal. 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167 (S.D. Cal. 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118 (S.D. Cal. 2018).

Dongwon Industries Co., Ltd. ("Dongwon"). None of these entities were prosecuted by DOJ, and all have denied responsibility for the actions of their subsidiaries and affiliates. Stein Decl. ¶ 6. However, Class Counsel, having served and received discovery from the Lion Entities, uncovered significant new facts about these entities (as well as more about Bumble Bee CEO, Chris Lischewski ("Lischewski")) and their participation in the conspiracy. Class Counsel immediately moved to add these new Defendants (*see* ECF No. 530, filed Oct. 16, 2017), which other plaintiffs later followed (*see*, *e.g.*, ECF No. 724-14). Stein Decl. ¶ 6. The Court ultimately granted the request to add the Lion Entities as Defendants.[4] Class Counsel's efforts in this regard have provided an opportunity for all DPP Class members to recover from Bumble Bee's parent entities (which the DPPs allege participated in the conspiracy), particularly now that Bumble Bee is in bankruptcy.

Moreover, Class Counsel hired and worked with three experts to support the DPPs' claims in this case: (1) Russell Mangum, Ph.D ("Mangum"), an economist, and his former economic consulting firm Nathan Associates, Inc.; (2) Marianne DeMario ("DeMario"), an accounting expert, and her firm Spectrum Consulting Partners LLC; and (3) Gary Hamilton, Ph.D ("Hamilton"), a sociologist with expertise in Asian corporate business structures. Stein Decl. ¶ 7.

Mangum prepared the first expert analysis on behalf of any direct purchaser in March of 2018, submitting his initial report in support of the DPPs' class certification motion. Mangum also submitted a rebuttal report on class certification. *Id.* ¶ 8. The two reports, including exhibits, charts, and tables, totaled 395 pages. *Id.* He presented his analysis in open court and was subject to cross-examination during the three-day hearing on class certification held between January 14-16, 2019, for which Class

---

[4] Although the Court did not permit the DPPs to pursue claims against Lischewski, the DOJ filed a criminal action against him in May of 2018. *See United States v. Christopher Lischewski*, No. 3:18-cr-00203, ECF No. 1 (N.D. Cal., filed on May 16, 2018). He was later found guilty of violating the antitrust laws following a jury trial.

Counsel prepared extensively and in which they participated. *Id.* Mangum also presented initial and rebuttal reports on the merits that DPPs utilized to oppose motions for summary judgment. *Id.* Those reports, with appendices, charts, and tables, totaled 346 pages. Defendants deposed Mangum three times. *Id.*

Class Counsel's work with their other experts similarly created substantial benefits to Class Members. DeMario and Hamilton performed in-depth analyses of COSI and TUG and the relationships between these entities (as well as between StarKist and its parent entity, Dongwon) to better assess and support the DPPs' claims about vicarious liability. Stein Decl. ¶ 9. These experts also opposed responses by Defendants' experts—including two of COSI and TUG's accounting and attorney experts. DeMario's initial and reply reports, including tables and appendices, totaled 97 pages. *Id.* Hamilton's initial and reply reports, including tables and appendices, totaled 161 pages. *Id.* These experts performed detailed examinations of the record and effectively summarized the mountain of evidence supporting the DPPs' vicarious liability claims against the parent entities. *Id.* Indeed, the joint opposition to the parent entity Defendants' summary judgment motion, which was submitted by all tracks of plaintiffs in this case (not just the DPPs), relied in part on DeMario and Hamilton's analyses. ECF No. 2139. Defendants also jointly deposed DeMario on two occasions and Hamilton once. Stein Decl. ¶ 9. These experts have played a pivotal role in the case, but their services are not free. Class Counsel have paid over $3.8 million in expert costs. *Id.*

Class Counsel were also responsible for responding to Defendants' experts—including *five* experts proffered by COSI and TUG alone. Stein Decl. ¶ 10. Class counsel deposed Defendants' class certification expert, Dr. John Johnson ("Johnson") and again cross-examined him at the class certification hearing. *Id.* Then, in response to Mangum's merits report, COSI offered the opinions of two economists: Dr. Randal Heeb ("Heeb"), and Dr. Michael Moore. *Id.* Class Counsel deposed both of these

experts as well (*id.*) and later filed *Daubert* motions against both. ECF No. 1970. COSI and TUG also put forward two other experts, Arthur Laby ("Laby") (an attorney) and Gary Kleinrichert (an accounting expert) to oppose DeMario and Hamilton's reports. Class Counsel deposed both of these witnesses (Stein Decl. ¶ 10) and filed a *Daubert* motion against Laby (ECF No. 1970). StarKist, Dongwon, Bumble Bee, and the Lion Entities also had their own experts, including three more economists and three more attorney/accounting experts to oppose DeMario and Hamilton. Stein Decl. ¶ 10. Class Counsel spent significant time and resources responding to all of these experts. *Id.*

In addition to undertaking extensive factual investigations and researching and drafting numerous motions and other briefs, Class Counsel have driven this case forward in other respects as well, including often serving as the coordinator for case management related issues, and taking and preparing for approximately 60 depositions, including traveling to Thailand to depose TUG's witnesses and Korea to depose Dongwon and StarKist's witnesses. Stein Decl. ¶ 11. Additionally, Class Counsel also engaged with COSI in its role as the leniency applicant. *Id.* As the leniency applicant, COSI was required to cooperate with the Plaintiffs, which involved preparing for and attending multiple evidentiary proffers. *Id.*

Outside of discovery, Class Counsel were primarily responsible for leading the opposition briefing on multiple summary judgment and *Daubert* motions, including TUG's motion for summary judgment and various motions filed by COSI and other Defendants to limit the scope of the case (such as on the applicable time period, the products involved, and other matters). *See, e.g.*, ECF Nos. 1970, 2108, 2110, 2121, 2135, 2139, 2169, 2173, 2176, 2262. Most recently, Class Counsel defended the class certification order on appeal to the Ninth Circuit and then to an *en banc* panel. *See In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308 (S.D. Cal. 2019), *vacated sub nom. Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC*, 993 F.3d 774 (9th Cir. 2021), *rehearing en banc granted*, 5 F.4th 950 (9th Cir. 2021) ("*Olean*

*Wholesale*"). Although the *en banc* decision has not yet been issued, the original Ninth Circuit panel acknowledged that this has been a "difficult case[.]" *Olean Wholesale Grocery Coop., Inc.*, 993 F.3d at 794.

Class Counsel's zealous efforts to prosecute this case to the benefit of the DPP Class has included tracking parallel class litigation against StarKist for allegedly underfilling their cans. To prevent the settlement in that case from releasing DPP Class members' claims in this action, Hausfeld intervened, and the parties in that action agreed to modify the proposed settlement class definition to protect Class members' antitrust claims from being released by the settlement agreement. *See Hendricks v. StarKist Co.*, 3:13-cv-00729-HSG, ECF No. 323 at 2-3 (N.D. Cal. Dec. 11, 2015) (describing Hausfeld's efforts and the corresponding modification of the scope of the release).

Class Counsel's work has also involved carefully tracking the parallel criminal litigation. For example, when Hausfeld learned that StarKist was challenging the fine owed to the government in connection with its criminal sentencing in the case of *United States v. StarKist Co.*, 18-cr-0513-EMC (N.D. Cal.) ("*StarKist*"), arguing that it would not have funds to pay the civil plaintiffs if forced to pay the full fine, the DPPs moved to be heard under the Crime Victim's Rights Act (18 U.S.C. § 3771). Judge Edward Chen permitted the DPPs to be heard, and Class Counsel proceeded to offer evidence about their knowledge of StarKist's financial situation and to offer alternative options to the court to protect the victims of StarKist's conspiracy in the event the criminal court found that StarKist would not be able to pay the fine and compensate its victims for the damage it caused. *See StarKist*, ECF Nos. 29-30, 57, 85-86, 150, 180, 193. Class Counsel attended multiple hearings on this issue and submitted multiple briefs. Ultimately, the criminal court found that StarKist was in the position to pay both the government and its victims over a staged period, and ordered the maximum fine, with a *caveat* that the parties could return to the court if StarKist's

1   financial position changed. Class Counsel's participation in those proceedings
2   conferred further benefits on the Class members. *See StarKist*, ECF No. 181.

3       In sum, Class Counsel have zealously litigated this case and benefitted the DPP
4   Class in a variety of significant ways.

5       **B.   The Settlement With COSI And TUG**

6       On March 11, 2021, following nearly six years of litigation, the DPP Class,
7   COSI and TUG executed a Settlement Agreement. *See* ECF No. 2674-3 (Settlement
8   Agreement filed with the Preliminary Approval Motion, re-attached here to the Stein
9   Decl. as Ex. A). The Settlement Agreement, which was the product of a multi-year
10  negotiation with COSI's counsel, required two in-person mediations and numerous
11  calls and other communications with the mediator, the Honorable Jan Adler (ret.), a
12  magistrate judge who sat on the bench in the Southern District of California. Stein
13  Decl. ¶ 14.

14      Over the course of the litigation, COSI consistently contended that its admitted
15  price-fixing conduct caused no damages to the DPP Class—or at least no class wide
16  damages. It presented this argument through its experts, Johnson on class certification
17  and Heeb on the merits. The latter argued that DPP Class damages hovered around
18  zero. At the time of the Settlement, a *Daubert* Motion to exclude Heeb's testimony
19  was pending. *See* ECF No. 1970.

20      COSI and TUG finally agreed to settle based on an overcharge of 3.2% of
21  commerce—a rate that is effectively 32 times more than what Heeb calculated the
22  potential exposure to be. The Settlement covered the period of time for which DPPs
23  sought class certification and not the more limited period advocated by Heeb. *See*
24  Stein Decl., Ex. A (Settlement Agreement) ¶ 11.1 ("The Settlement Amount shall be
25  calculated as 3.2% of the combined COSI sales of Packaged Tuna Products to
26  Settlement Class Members between June 1, 2011 and July 31, 2015.").

27      The Settlement provides other benefits to the DPP Class as well.

28

*First*, Class Counsel would not agree to settlement for a fixed dollar amount, instead linking the 3.2% overcharge to the commerce in the settlement class after opt-outs, which leaves open the possibility for a higher award for the settlement class if there are fewer opt-outs than predicted. In other words, although the parties estimate that roughly 80% of the commerce will end up opting out (*see* ECF Nos. 2674 and 2674-2, ¶ 13), resulting in an award for the Settlement Class of approximately $13 million, if a smaller percentage of class members opt out, a larger fund will be created for the settlement class. Thus, Class Counsel ensured that compensation for the settlement class was maximized based on the amount of commerce that actually remained in that class.

*Second*, the Settlement Agreement ensures that COSI will provide additional assistance to the DPPs through any trial, including: (1) producing all documents relevant to the sale, marketing, and pricing of Packaged Tuna Products; (2) making available appropriate COSI/TUG employees and former employees at deposition and/or trial and ensuring that these individuals are prepared to testify truthfully under oath; and (3) producing at trial, in person, by deposition or by affidavit, representatives to testify as to the genuineness, status as business records, and authenticity of documents produced by COSI in the MDL. Stein Decl., Ex. A, ¶ 16.

*Third*, TUG has never admitted guilt even though it, too, is settling its commerce as part of the Settlement Agreement—something that only the DPPs appear to have achieved.

*Fourth*, and finally, attorneys' fees and costs are separate from the settlement award for the settlement class, meaning the class's award is in no way diminished to pay attorneys' fees. COSI and TUG instead agreed that for settlement purposes, the DPPs are the prevailing party, and COSI and TUG will pay reasonable Contingent Legal Fees and Costs, defined as follows:

"Contingent Legal Fees and Costs" shall mean a payment in addition to

and separate from the Settlement Amount as described in Paragraph 11 below, to cover contingent legal fees and for the reimbursement of taxable and non-taxable costs advanced by the attorneys that worked on behalf of the class, including, but not limited to costs of stenographic and video deposition transcripts, reporter's fees, interpreter fees, room, board, and travel expenses, court costs, document hosting, exemplification and printing costs, document production costs, consultant and expert fees and costs, and expenses.

*Id.* ¶ 1.4.

However, critically, no set amount was agreed to by the Parties, except for a *cap* on the total potential fees and costs. *Id.* ¶ 11.2. Specifically, the parties agreed that the DPPs could recover no more than $7 million for fees and costs, with the ultimate amount to be determined in a separate, contested arbitration before a neutral arbitrator. *Id.*

## C.   The Arbitration

Former federal District Court Judge Layn Phillips presided over the parties' contested arbitration proceeding on fees and costs in June of 2021. Stein Decl. ¶ 15. Both sides presented full briefing and arguments to Judge Phillips. *Id.*

In the 600 pages worth of documentation that the DPPs submitted to Judge Phillips with their opening motion—including an accounting of costs expended and sworn declarations by Class Counsel, including lead partners from every firm relating to their lodestar and work in this case—the DPPs sought the full $7 million award.[5] *Id.* As the DPPs advised this Court with their original preliminary approval motion (ECF No. 2533), through this contested arbitration, the DPPs sought first to recover their out-of-pocket costs, which, after six years of litigation totaled over $4.7 million. *See* Stein Decl. ¶ 16. The vast majority of those costs—over $3.8 million—consists of fees paid to expert witnesses. *Id.* There have also been a host of other expenses, such as costs incurred by the use of electronic document hosting platforms; firms that

---

[5] At the Court's request, the DPPs are happy to submit this information *in camera* for the Court's review.

specialize in gathering ESI and other materials for the purposes of discovery; translation services; deposition service providers; process servers and litigation services; mediators and arbitrators; and court reporters. *Id.* While the DPPs have a substantial amount of lodestar (over $20 million at the time of the arbitration), with Class Counsel working on contingency for years without payment, rather than seeking attorneys' fees in the first instance, the DPPs requested that the remainder of the $7 million amount be put in a "war chest" to defray future costs as this case moves forward to trial and as other potential discovery and expert costs arise in the future. *Id.*

COSI and TUG vigorously disputed the requested relief, including arguing against payment for this "war chest" and also arguing that if the arbitrator decided to award fees and costs, those amounts should be substantially reduced as they pertain to COSI and TUG. Indeed, they argued that: (a) because of COSI's ACPERA status, the baseline of DPPs' fees should be equivalent to COSI's market share percentage, or about one-third of the amount expended; and (b) the DPPs' litigation expenditures were higher than necessary as to COSI, because COSI provided cooperation to the DPPs. *See* Stein Decl., Ex. B at 4 (describing same). The COSI Defendants therefore proposed that any fees be reduced by an additional 62%. *Id.* COSI and TUG themselves submitted 60 pages of material supporting their arguments. Stein Decl. ¶ 15.

Following the arbitration held on June 22, 2021, Judge Phillips issued his ruling on June 25, 2021. ECF No. 2674-5, attached as Stein Decl., Ex. B. In that opinion, Judge Phillips rejected the DPPs' request for a "war chest" for future costs but found sufficient grounds to award the DPPs nearly their full costs for past expenses and also allotted a portion for attorneys' fees. Specifically, Judge Phillips found that the DPPs were entitled to an award of $5.95 million to be allocated as $4,410,636.71 in past out-of-pocket costs and $1,539,363.29 in attorneys' fees. *Id.* at 4.

Pursuant to the parties' agreement, the DPPs will not seek more than the

1    arbitration award, which the DPPs submitted with their renewed Motion for

2    Preliminary Approval of the Settlement. *See* ECF No. 2674-5 (Exhibit C to the

3    Sweeney Decl.). This Court granted the DPPs' Preliminary Approval Motion in

4    January of 2022. ECF No. 2733.

5    ### III.    DISCUSSION – ATTORNEYS' FEES & COSTS

6        The Court's Preliminary Approval Order required that the DPPs move for

7    attorneys' fees and costs prior to the Court's ruling on final approval and prior to the

8    deadline for settlement class members to opt-out of the Settlement, with the Court

9    retaining the ultimate authority to award fees and costs pursuant to Federal Rule of

10   Civil Procedure 23(h). ECF No. 2733. As set forth above, the DPPs contend that there

11   are substantial grounds for the Court to approve the fees and costs sought and awarded

12   by Judge Phillips' decision.

13       As an initial matter, for settlement purposes, the parties' agreed that "[t]he

14   determination of what amount the reasonable Contingent Legal Fees and Costs . . .

15   will be made through a separate, binding, and contested arbitration" and

16   "'[r]easonable' fees shall mean those fees that are available to Direct Purchaser

17   Plaintiffs as the prevailing party." Stein Decl., Ex. A, ¶ 11.2.1. As the prevailing party

18   for settlement purposes, the DPPs are entitled to fees and costs under 15 U.S.C. § 15,

19   which permits that "any person who shall be injured in his business or property by

20   reason of anything forbidden in the antitrust laws may sue therefor in any district court

21   of the United States . . . and shall recover . . . the cost of suit, including a reasonable

22   attorney's fee." Judge Phillips likewise recognized that "[p]ursuant to the S[ettlement]

23   A[greement], fees and costs are determined separately from the amount payable to the

24   DPP Class. DPPs' counsel are entitled to a reasonable fee as a prevailing party." Stein

25   Decl., Ex. B at 3.

26       In its Preliminary Approval Order, this Court discussed the framework for

27   resolving fees and costs to the DPPs as part of this settlement and found that "the

28

methodology used for determining the proposed fee and cost award—a contested arbitration before a neutral arbitrator—is fair and reasonable. It does not detract from relief for the Class in any way." ECF No. 2733 at 3, 17. Indeed, the arbitrated proceedings were subject to the full adversarial process before a neutral arbitrator, a former federal District Court Judge. The DPPs sought the full amount permitted under the Settlement Agreement's capped total amount, while COSI and TUG argued that the DPPs were entitled to, at most, a fraction of that amount. COSI and TUG even advanced novel legal arguments to reduce the fee and costs awarded, including asserting that COSI's status as the leniency applicant should limit the scope of fees and costs, with specific examples. Stein Decl., Ex. B at 4. As Judge Phillips noted, "[t]he difference between the DPPs' original proposal and the COSI Defendants' proposal was $2,868,865.79." Stein Decl., Ex. B at 4.[6]

Ultimately, Judge Phillips rejected COSI and TUG's arguments for a substantial reduction in costs and fees, but also did not award the DPPs their full requested amount. While Judge Phillips found that there were sufficient grounds for most of the DPPs' requested costs, he denied their request for the war chest to defray future expenses against the remaining Defendants and limited the DPPs' attorneys' fees against COSI and TUG. He explained that "[h]aving carefully considered the entire record"—over 700 pages worth of supporting material submitted by both sides—"the Arbitrator awards the DPP counsel $5.95 million in costs and in fees." *Id.*

As discussed above, based on Class Counsel's extensive and significant work in this case and the important costs incurred to the DPPs' claims, this arbitration award is fair and reasonable. The award of $4,410,636.71 in past out-of-pocket costs is, as noted, largely comprised of paying for the expert services of the DPPs' three experts

---

[6] It bears noting that there were no side agreements or communications between the parties about the amounts that would be argued before Judge Phillips. Stein Decl. ¶ 17. Both sides approached the arbitration through a strict adversarial process. *Id.*

in this case, including Mangum, the DPPs' economist, and Hamilton and DeMario for their work relating primarily to the hotly contested claims against the parent entities in this case. This work has been consequential. TUG, which has always disputed its liability, is settling its commerce as well as part of the Settlement Agreement as well—something that only the DPPs appear to have achieved. The remaining costs were on other important litigation expenses, including, for example, translations of documents and hosting millions of pages worth of produced materials. *See* Stein Decl. ¶ 16. Judge Phillips reviewed the DPPs' cost and expenses documentation and found all of these costs and expenses were warranted, with the exception of a limited payment related to the Bumble Bee bankruptcy proceedings. *See id.*, Ex. B at 4 and n.2.

While the DPPs preferred to proceed with a war chest for future costs, and only sought attorneys' fees in the event that Judge Phillips denied that request, the DPPs submit that Judge Phillips' ultimate determination on fees should be approved. He reviewed hundreds of pages worth of documentation from all Class Counsel, including declarations with lodestar information and related descriptions of Class Counsel's work in this case, and determined that, with respect to COSI and TUG, a fee of $1,539,363.29 was reasonable. As noted, that amount is only a small fraction of Class Counsel's over $20 million lodestar, with no multiplier. Judge Phillips was conservative and cautious in awarding this amount, particularly given the extent and value of the work performed by Class Counsel over the last nearly seven years of litigation.

In light of the contested arbitration before Judge Phillips, the DPPs respectfully request that the Court adopt his findings and approve the award of fees and costs to Class Counsel when the Court rules on final approval of the Settlement. No portion of this award reduces or otherwise alters the relief negotiated between the parties for the settlement class.

## IV.   DISCUSSION – SERVICE AWARDS

The DPPs also request service awards of $5,000 for each of the DPP Class Representatives from the settlement fund. Given the extent of time and work that the Class Representatives have put into this case over the last nearly seven years, this is a modest and fair request. These Plaintiffs have sat for depositions, produced documents, responded to written discovery, and faithfully fulfilled their duties throughout this entire long-running litigation.

Courts often approve incentive awards to class representatives for their service to the Class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943, 947-48 (9th Cir. 2015) ("*Online DVD*"); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) ("Incentive awards are fairly typical in class action cases."). Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to act as private attorneys general. *Id.* The DPPs' request of $5,000 per Class Representative are well within the amounts Ninth Circuit courts find acceptable. *See*, *e.g.*, *Online DVD*, 779 F.3d at 947-48 (approving $5,000 awards for the class representatives); *Petersen v. CJ Am., Inc.*, No. 14-CV-2570 DMS JLB, 2016 WL 5719823, at *2 (S.D. Cal. Sept. 30, 2016) (granting $5,000 service awards and *quoting Carter v. Anderson Merchandisers, LP*, Case No. EDCV 08-0025-VAP OPX, 2010 WL 1946757, at *4 (C.D. Cal. May 11, 2010) ("Given the relatively small size of the proposed [$5,000] recognition payments, the Court thus approves the recognition payments requested for both Carter and Lanasa.")).

## V.   CONCLUSION

For all of the foregoing reasons, the DPPs respectfully request that, in conjuction with final approval of the Settlement, the Court approve the fee and cost award as determined by Judge Phillips and grant the modest incentive awards of $5,000 for the each of the Class Representatives for their service.

1    Dated: March 24, 2022                        Respectfully submitted,

2                                                 By: s/ *Michael P. Lehmann*

3                                                 Michael P. Lehmann

4                                                 Bonny E. Sweeney
                                                  Christopher L. Lebsock

5                                                 Samantha J. Stein

6                                                 HAUSFELD LLP
                                                  600 Montgomery Street, Suite 3200

7                                                 San Francisco, CA 94111

8                                                 Tel: (415) 633-1908
                                                  Fax: (415) 358-4980

9                                                 E-mail: mlehmann@hausfeld.com

10                                                E-mail: bsweeney@hausfeld.com
                                                  E-mail: clebsock@hausfeld.com

11                                                E-mail: sstein@hausfeld.com

12                                                Michael D. Hausfeld

13                                                James J. Pizzirusso

14                                                HAUSFELD LLP
                                                  888 16th Street, N.W., Suite 300

15                                                Washington, DC 20006

16                                                Telephone: (202) 540-7200
                                                  Facsimile: (202) 540-7201

17                                                E-mail: mhausfeld@hausfeld.com
                                                  E-mail: jpizzirusso@hausfeld.com

18

19                                                *Class Counsel for the Direct Purchaser*

20                                                *Class*

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I certify that on March 24, 2022, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

By: s/ *Michael P. Lehmann*
Michael P. Lehmann
HAUSFELD LLP
mlehmann@hausfeld.com
*Class Counsel for the Direct Purchaser Class*