1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No.:  15-MD-2670 DMS (MDD) |
| This Document Relates To: | **CLASS ACTION** |
| | **ORDER (1) GRANTING DEFENDANT CHRISTOPHER LISCHEWSKI'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF ASSOCIATED WHOLESALE GROCERS, INC., AND (2) DENYING AS MOOT ASSOCIATED WHOLESALE GROCERS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| *Associated Wholesale Grocers, Inc. v. Bumble Bee Foods LLC*, et al., 3:18-cv-01014-DMS-MDD | |
| | **(ECF Nos. 2718, 2720)** |

Pending before the Court in this multidistrict litigation are two motions for summary judgment.  In the first motion, Defendant Christopher Lischewski ("Lischewski") argues that because the undisputed facts show he lacks minimum contacts with the State of Kansas and cannot be haled into court there, he is entitled to "judgment of dismissal" against Associated Wholesale Grocers, Inc.'s ("AWG") as a matter of law.  (Def.'s Mot. for Summ. J., ECF No. 2718-1.)  AWG filed an opposition (Pl.'s Opp'n to Defs.' Mot., ECF No.

2743), and Lischewski replied. (Reply Mem. of P. & A. in Further Supp. of Def.'s Mot., ECF No. 2767.) In the second motion, AWG seeks partial summary judgment against Lischewski based on his participation in a price-fixing conspiracy between 2008 and 2015. (Pl.'s Mot. for Summ. J., ECF No. 2720.) Lischewski filed an opposition (Def.'s Opp'n to Defs.' Mot., ECF No. 2745), and AWG replied. (Reply Mem. of P. & A. in Further Supp. of Pl.'s Mot., ECF No. 2768.) For the reasons set forth below, Lischewski's motion for summary judgment is granted and AWG's motion is denied as moot.

## I.

## BACKGROUND

In July 2015, the United States Department of Justice ("DOJ") announced its investigation into the packaged tuna industry. Criminal charges were filed against the three largest domestic producers of packaged tuna products—Tri-Union Seafoods LLC d/b/a Chicken of the Sea International ("COSI"), Bumble Bee Foods LLC ("Bumble Bee"), StarKist Company ("StarKist"), and their executives for violating federal antitrust laws. All defendants pled guilty or were convicted by jury.

Numerous civil actions have been filed against the same defendants alleging conspiracy to fix and maintain packaged tuna prices above competitive levels in violation of state and federal antitrust and consumer protection laws. These civil actions were consolidated in a multidistrict litigation ("MDL") for pretrial proceedings before this Court. The Court divided the plaintiffs into four tracks: (1) Direct Action Plaintiffs, who are direct purchasers proceeding individually; (2) Direct Purchaser Plaintiffs, who are proceeding on behalf of a putative class; (3) Commercial Food Preparer Plaintiffs, who are indirect purchasers proceeding on behalf of a putative class; and (4) End Payer Plaintiffs, who are consumers proceeding on behalf of a putative class.

AWG, a Direct Action Plaintiff, is a Kansas-based wholesale grocery distributor. (Second Am. Compl., ECF No. 14371 ("SAC"), ¶ 38.) Like other Plaintiffs in this MDL, AWG contends that due to price-fixing agreements among Bumble Bee, COSI, and StarKist, it paid inflated prices for certain tuna products. AWG filed a lawsuit on April 30,

2018, in the United States District Court for the District of Kansas against COSI, Bumble Bee, StarKist, their respective parent companies, and Lischewski, Bumble Bee's former Chief Executive Officer.  (*Assoc. Wholesale Grocers, Inc. v. Bumble Bee Foods et al.*, Case No. 18-cv-02212 (D. Kan.), ECF No. 1 ("Original Compl.").)  The AWG action was transferred to this MDL, (ECF No. 1015), and thereafter AWG filed a First Amended Complaint, followed by a Second Amended Complaint.

Lischewski moved to dismiss the Second Amended Complaint for lack of personal jurisdiction in Kansas.  (*See* ECF No. 1525).  The motion was granted, and AWG was granted leave to refile its claims against Lischewski in a proper forum. (Order (1) Granting Lischewski's Mot. to Dismiss; and (2) Denying as Moot AWG's Mot. to Lift Stay, ECF No. 2306 ("Order"), 11.)

Rather than refile its claims against Lischewski elsewhere, AWG filed a motion for leave to amend its jurisdictional allegations.  (Mem. of P.&A. in Supp. of AWG's Mot. to File Third Am. Compl. as to Lischewski Only, ECF No. 2412 ("Mot.").)  AWG proposed to supplement its Second Amended Complaint with fourteen pages of factual allegations based on testimony from Lischewski's criminal jury trial, which concluded on December 3, 2019, and resulted in his conviction. (*See* Proposed Third Am. Compl., ECF No. 2412-3 ("TAC"); *see also* Lischewski's Resp. to AWG's Mot. to File TAC as to Lischewski Only, ECF No. 2403 ("Opp'n"), 18.)  The Court granted leave to amend.  *See In re Packaged Seafood Prod. Antitrust Litig.*, No. 18CV1014-JLS-MDD, 2021 WL 778723, at *10 (S.D. Cal. Mar. 1, 2021).  Following supplemental discovery and filing of the TAC, Lischewski now moves for summary judgment, again on the basis of lack of personal jurisdiction in Kansas.  The motion is granted for the reasons set forth below.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses.  Summary judgment or adjudication of issues is appropriate if depositions, answers to interrogatories, and admissions on file, together

15-MD-2670 DMS (MDD)

with the affidavits, if any, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  A fact is material when, under the governing substantive law, it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The burden on the party moving for summary judgment depends on whether it bears the burden of proof at trial.

> When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case.

*C.A.R. Transp. Brokerage Co., Inc. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000); *see also Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018) ("Where the moving party will have the burden of proof at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.").

On the other hand, if the moving party would *not* bear the burden at trial, it can meet its burden on summary judgment by "either of two methods:"

> produce affirmative evidence . . . negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may . . . meet its initial burden of production by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case.

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1105-06 (9th Cir. 2000) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

If the moving party carries its burden of production, the nonmoving party must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Celotex*, 477 U.S. at 324.  In this regard, the nonmoving party:

must do more than simply show that there is some metaphysical doubt as to the material facts[, and] must come forward with specific facts showing that there is a genuine dispute for trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

In ruling on a motion for summary judgment, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).  "[A] judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.*  "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 651; *see also id.* at 657.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Anderson*, 477 U.S. at 255.

"The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  The court is not obligated "to scour the record in search of a genuine issue of triable fact."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

### III.

### DISCUSSION

In multidistrict litigation, as here, the transferee court has the jurisdiction and powers that the transferor district would have had in the absence of transfer.  *See* 28 U.S.C. § 1407(a); *In re FMC Corp. Pat. Litig.*, 422 F.Supp. 1163, 1165 (J.P.M.L. 1976) ("Following a transfer, the transferee judge has all the jurisdiction and powers over pretrial proceedings in the actions transferred to him that the transferor judge would have had in the absence of transfer.")  Because AWG's action was filed in the District of Kansas, this Court must determine whether Lischewski is subject to personal jurisdiction in Kansas.  *In re Zantac*

5

*(Ranitidine) Prod. Liab. Litig.*, No. MDL 2924, 2021 WL 5848067, at *3 (U.S. Jud. Pan. Mult. Lit. Dec. 3, 2021).

Here, the burden rests on AWG to establish personal jurisdiction over Lischewski. *Bell Helicopter Textron, Inc. v. Heliqwest Int'l, Ltd.*, 385 F.3d 1291, 1295 (10th Cir. 2004). To establish personal jurisdiction over a nonresident, "the plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *TH Agric. & Nutrition, L.L.C. v. Ace Eur. Grp. Ltd.*, 416 F.Supp.2d 1054, 1064 (D. Kan. 2006); *Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1276 (10th Cir. 2005); *Far W. Cap., Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995). "Because the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, we proceed directly to the constitutional issue." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1090 (10th Cir. 1998).

The Fourteenth Amendment's Due Process Clause protects an individual's liberty interest from "being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985); *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) ("[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") Accordingly, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum state." *OMI Holdings*, 149 F.3d at 1090 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980); *Burger King*, 471 U.S. at 474 ("[T]he constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum.")

The "minimum contacts" standard may be met in one of two ways. *Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). First, a court may exercise *general*

*jurisdiction* where the defendant has contacts that, "while not rising to the level of the traditional notion of presence in the forum state, are nonetheless 'continuous and systematic.'" *Beverly Kuenzle, Wayne Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996); *Bell Helicopter*, 385 F.3d at 1296 ("When the defendant has 'continuous and systematic general business contacts' with the forum state, courts in that state may exercise *general* jurisdiction over the defendant.")  Alternatively, a court may exercise *specific jurisdiction* where the defendant "has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *OMI Holdings*, 149 F.3d 1086, 1091 (10th Cir. 1998) (internal quotations omitted); *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) ("The minimum contacts test for specific jurisdiction encompasses two distinct requirements: (i) that the defendant must have 'purposefully directed its activities at residents of the forum state,' and (ii) that 'the plaintiff's injuries must arise out of [the] defendant's forum-related activities.'").  In this case, AWG has made no colorable showing that Lischewski had continuous and systematic contacts with Kansas. Accordingly, the Court confines its analysis to the minimum contacts inquiry for specific jurisdiction.

There are three ways to satisfy the purposeful direction test for specific jurisdiction. *Old Republic*, 877 F.3d at 905.  To establish an out-of-state defendant's activities satisfy the purposeful direction requirement, the burden rests on plaintiff to show the existence of: "(1) continuing relationships with forum state residents ("continuing relationships"); (2) deliberate exploitation of the forum state market ("market exploitation"); [or] (3) harmful effects in the forum state ("harmful effects")." *Id.* at 905. Each test is reviewed in turn.[1]

_____

[1] Although the parties have historically agreed "the harmful effects test applies," *In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2020 WL 2747115, at *3 (S.D. Cal. May 26, 2020), the parties now contest the applicability of the continuing relationships and market exploitation tests.  In the Tenth Circuit, the standard for the purposeful direction turns on the nature of the underlying claims. *Dudnikov v. Chalk*

1

**A.      Continuing Relationships**

2        The traditional purposeful direction analysis reviews an out-of-state defendant's

3  "continuing relationships and obligations with citizens of [the forum state]." *Old Republic*,

4  877 F.3d at 905 (quoting *Burger King*, 471 U.S. at 473).  Indeed, the Supreme Court has

5  "upheld the assertion of jurisdiction over defendants who have purposefully 'reach[ed] out

6  beyond' their State and into another by, for example, entering a contractual relationship

7  that 'envisioned continuing and wide-reaching contacts' in the forum State[.]"  *Walden v.*

8  *Fiore*, 571 U.S. 277, 285 (2014) (quoting *Burger King*, 471 U.S. at 479-80).  Accordingly,

9  it is appropriate for a court to review "prior negotiations and contemplated future

10  consequences, along with the terms of the contract and the parties' actual course of dealing"

11  to assess whether a continuing relationship existed between AWG and Lischewski.  *Burger*

12  *King*, 471 U.S. at 479; *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223,

13  1230 (10th Cir. 2020) ("In *Burger King*, the Supreme Court eschewed such 'mechanical'

14  tests in favor of looking to the 'business negotiations,' 'future consequences' of the

15  contract, and the 'actual course of dealing' between the parties.").

16        Here, AWG argues that Bumble Bee had a continuing relationship with the State of

17  Kansas.  (Pl.'s Opp'n to Defs.' Mot., ECF No. 2743.)  To establish the existence of a

18  continuing relationship, as envisioned by *Burger King*, AWG points to the fact that: "(1)

19  AWG made 8,400 discrete purchases of packaged tuna products from Bumble Bee in

20  Kansas between 2002 and 2017; (2) AWG purchased $15 million in tuna products from

21

22

---

23  *& Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) ("The first element can
   appear in different guises.")  Lischewski argues that tort-based claims only require an

24  analysis under the harmful effects test.  (Def.'s Mot. for Summ. J., ECF No. 2718-1.)

25  Conversely, AWG argues "[a]lthough price-fixing is a tort, it also has quasi-contractual
   elements." (Pl.'s Opp'n to Defs.' Mot., ECF No. 2743.)  Because antitrust violations often

26  implicate both formal and informal contractual disputes, *Suture Exp., Inc. v. Cardinal*

27  *Health 200, LLC*, 963 F.Supp.2d 1212, 1221 (D. Kan. 2013), and "may be a tortious act,"
   *Merriman v. Crompton Corp.*, 282 Kan. 433, 464 (2006), the Court will consider all

28  applicable tests.

2002 to 2017; and (3) AWG purchased $10 million in tuna products from September 2008 to December 2017; (4) Bumble Bee communicated directly with AWG about pricing and orders; (5) Bumble Bee sent promotional proposals directly to AWG; and (6) Bumble Bee distributed product to retail outlets throughout Kansas." (Pl.'s Opp'n to Defs.' Mot., ECF No. 2743.) On these facts, AWG argues that "Bumble Bee's continuing relationship with Kansas was Lischewski's continuing relationship with Kansas." (*Id.* at 19.) But for jurisdictional analysis, the conduct of Bumble Bee is not automatically the conduct of Lischewski. The burden rests on AWG to establish that Lischewski *himself* has a continuing relationship with the State of Kansas. *Walden*, 571 U.S. at 277; *Burger King*, 471 U.S. at 475 ("Jurisdiction is proper, however, where the contacts proximately result from actions by the defendant *himself* that create a "substantial connection" with the forum State.").

Perhaps acknowledging the constitutional deficiency of indiscriminately applying an employer's personal jurisdiction to an employee, AWG acknowledges that generally an out-of-state employee's contacts with a forum "are not to be judged according to their employer's activities." *Calder v. Jones*, 465 U.S. 783, 790 (1984). To overcome this constitutional impediment, AWG argues that the general rule in *Calder* does not apply to Lischewski. Specifically, AWG argues Lischewski "was not the normal employee; indeed, he was not even a normal chief executive officer." (Pl.'s Opp'n to Defs.' Mot., ECF No. 2743.) To distinguish Lischewski from "normal" employees, AWG points to Lischewski's hands-on management style, requiring subordinates at times to communicate on an hourly basis, and his penchant to "manage Bumble Bee as a miniature fiefdom." (*Id.*) Further, AWG argues that nothing happened at Bumble Bee without Lischewski's approval. (*Id.*) An autocratic management style, however, does not bring Lischewski within the *Calder* exception.

In *Calder,* the Supreme Court noted that an employee may be subject to the jurisdiction of a forum where the employee is a "primary participant[] in [the] alleged wrongdoing intentionally directed at" the residents of the forum state. 465 U.S. at 790. To

15-MD-2670 DMS (MDD)

saddle Lischewski with a "primary participant" label requires a showing of his direct involvement in conduct intentionally directed at Kansas. Notably, in *Calder*, that showing was made where one defendant wrote and another defendant edited an article "that they knew would have a potentially devastating impact upon respondent." *Id.* at 789. Unlike in *Calder*, where the evidence showed intentional conduct by the employee "expressly aimed" at the forum jurisdiction, no such evidence is offered here.

AWG also argues that Lischewski may be held liable for the conduct of subordinates who interacted with the forum state. Specifically, AWG argues that "at all times," Scott Cameron, Senior Vice President of Sales of Bumble Bee, "acted as Lischewski's agent." (Pl.'s Opp'n to Defs.' Mot., ECF No. 2743.) AWG further notes that Cameron had frequent contact with AWG, including: "(1) visiting AWG's headquarters in Kansas; (2) numerous emails back and forth; and (3) telephone conversations." (*Id.*)

The problem with this argument is that Cameron was an agent of Bumble Bee, not Lischewski. "An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Golden Rule Ins. Co. v. Tomlinson*, 300 Kan. 944, 956 (2014) (quoting Restatement (Third) of Agency § 2.01 (2005)). Simply put, commitments made by Cameron would have legally bound Bumble Bee, not Lischewski. Further, AWG has provided no evidence that Cameron was conducting business with Kansas, or AWG specifically, at the direction of Lischewski. These evidentiary shortcomings are fatal to this theory of personal jurisdiction.

**B.    Market Exploitation**

AWG next argues that Lischewski is subject to personal jurisdiction in Kansas under the market-exploitation test. (Pl.'s Opp'n to Defs.' Mot., ECF No. 2743.) According to this test, an out-of-state defendant may be found to have purposefully directed their conduct into the forum state if the defendant "continuously and deliberately exploits the forum State's market." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 849 (10th Cir. 2020).

"Factors suggesting purposeful direction based on forum state market exploitation include: (a) high sales volume and large customer base and revenues, and (b) extensive nationwide advertising or ads targeting the forum state." *Old Republic*, 877 F.3d at 915.

To support its argument that Lischewski continuously and deliberately exploited the Kansas market, AWG relies almost exclusively on sales conducted by Bumble Bee in the State. But such sales do not establish that Lischewski himself exploited the Kansas market. *XMission*, 955 F.3d at 849. As discussed, the relationship between Lischewski and AWG "must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (2014). Here, AWG has not come forward with any evidence connecting any purposeful conduct of Lischewski to Kansas. Indeed, AWG concedes that Cameron served as the most senior official of the Bumble Bee team to coordinate sales with AWG.

Additionally, AWG argues that Lischewski's coordination of a *nationwide* "Tuna the Wonderfish" advertising campaign is a sufficient basis for finding personal jurisdiction over Lischewski in Kansas. There are two shortcoming with this argument. First, no evidence has been produced that the nationwide marketing campaign was directly designed to attract consumers in Kansas, or in fact did so. *XMission*, 955 F.3d at 850. Second, there is no evidence that Lischewski made an "effort to transmit or tailor his message to users in any state in particular, and [the sales of packaged tuna products] had no inherent nexus to any geographic location." *Tomelleri v. MEDL Mobile, Inc.*, No. 2:14-CV-02113-JAR, 2015 WL 1957801, at *9 (D. Kan. Apr. 29, 2015). Accordingly, AWG has failed to establish Lischewski's purposeful direction to Kansas under the market exploitation test.

## C.   Harmful Effects

Finally, AWG argues that personal jurisdiction over Lischewski is appropriate under the harmful effects test. (Pl.'s Opp'n to Defs.' Mot., ECF No. 2743.) To establish purposeful direction under this test, the plaintiff must illustrate: "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics*, 946 F.3d at 1231.

To support its argument that personal jurisdiction over Lischewski is appropriate under this theory, AWG relies on a conspiracy theory of jurisdiction. Specifically, AWG argues:

> Neither the existence of the conspiracy nor Lischewski's participation in the conspiracy is in doubt. Indeed, all the key participants have been convicted, pleaded guilty, or admitted to their participation in the scheme. Kansas courts thus have jurisdiction over Lischewski if any of his coconspirators committed an overt act in furtherance of the conspiracy in Kansas.

(Pl.'s Opp'n to Defs.' Mot., ECF No. 2743.) The case law in the Tenth Circuit suggests otherwise. In *Melea, Ltd. v. Jawer SA*, 511 F.3d 1060 (10th Cir. 2007), the Tenth Circuit stated, "to hold that one co-conspirator's presence in the forum creates jurisdiction over other co-conspirators threatens to confuse the standards applicable to personal jurisdiction and those applicable to liability." *Id.* at 1070. This Court agrees.

"While a co-conspirator's presence within the forum might reasonably create the 'minimum contacts' with the forum necessary to exercise jurisdiction over another co-conspirator if the conspiracy is directed towards the forum, or substantial steps in furtherance of the conspiracy are taken in the forum," *id.*, AWG has not made such a showing. AWG's personal jurisdiction argument hinges on several email communications circulated to *all* of Bumble Bee's third-party brokers and its *entire* sales, trade marketing, consumer marketing, procurement, customer service, finance, deployment and logistics teams (not AWG specifically), discussing supply chain issues, and a presentation conducted by Cameron to AWG. Lischewski was a carbon-copied recipient of the email communications. But there is no evidence that Lischewski took part either in the drafting of the email communications or the preparation or execution of the presentation to AWG. These contacts with the forum state are insufficient to show that Lischewski was part of a conspiracy "directed towards the forum" or that "substantial steps" in furtherance of the alleged conspiracy were taken in Kansas.

Moreover, even if the conspiracy theory of jurisdiction were viable, the national price fixing conspiracy at issue involves Bumble Bee, COSI and StarKist. "[C]orporations

cannot conspire with their own officers[.]" *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, n.15 (1984), and AWG has not shown that Lischewski's actions, whatever they might be, were taken in any capacity other than as an officer of Bumble Bee. To be sure, some of Lischewski's conduct was criminal and found to be so by a jury of his peers. But Lischewski's involvement in a national price fixing conspiracy on behalf of Bumble Bee is not sufficient to establish minimum contacts by Lischewski himself in a particular State in the absence of evidence of purposeful direction in the forum. AWG has not made that showing.

## IV.

## CONCLUSION

AWG has failed to show purposeful direction by Lischewski in Kansas under any of the three tests, and thus it has failed to establish the "minimum contacts" necessary to satisfy due process and hold him to account in that forum.[2] *Old Republic*, 877 F.3d at 918. Therefore, Lischewski's motion for summary judgment based on lack of personal jurisdiction is granted, and AWG's motion for partial summary judgment against Lischewski is denied as moot.

**IT IS SO ORDERED**.

Dated: March 28, 2022

Hon. Dana M. Sabraw
United States District Judge

---

[2] In light of this finding, the Court need not consider whether the injuries alleged arise from Lischewski's alleged forum-related activities. *Team Indus. Servs. v. Zurich Am. Ins. Co.*, No. 19-2710-JAR-KGG, 2020 WL 4347255, at *4 (D. Kan. July 29, 2020).