Michael P. Lehmann (Cal. Bar No. 77152)
Bonny E. Sweeney (Cal. Bar No. 176174)
Christopher L. Lebsock (Cal. Bar No. 184546)
Samantha J. Stein (Cal. Bar No. 302034)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: bsweeney@hausfeld.com
E-mail: clebsock@hausfeld.com
E-mail: sstein@hausfeld.com

*Class Counsel for the Direct Purchaser Class*
*Additional counsel listed below*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MDD<br>MDL No. 2670<br><br>**CLASS PLAINTIFFS' JOINT OPPOSITION TO LION DEFENDANTS' MOTION FOR CERTIFICATION UNDER 28 U.S.C. § 1292(B)** |
| This document relates to:<br><br>THE CLASS CASES | Re: ECF No. 2810<br><br>DATE:     May 20, 2022<br>TIME:     1:30 PM<br>JUDGE:   Dana M. Sabraw<br>CTRM:    13A |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................. 1

II. RELEVANT BACKGROUND ......................................................................... 1

III. LEGAL STANDARD ....................................................................................... 5

IV. DISCUSSION ................................................................................................... 6

  A.     The Lion Defendants Fail Section 1292(b)'s Appealability Test ................. 6

    1.     There is No "Controlling Question of Law" .............................................. 6

    2.     There Is No Substantial Ground for Difference of Opinion .................... 11

    3.     An Interlocutory Appeal Would Not Materially Advance the Litigation 14

V. CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Allen v. Conagra Foods, Inc.*,
  No. 13-cv-01279-JST, 2013 WL 6000456 (N.D. Cal. Nov. 12, 2013) ...............7

*Arandell Corp. v. Centerpoint Energy Servs.*,
  900 F.3d 623 (9th Cir. 2018) ..........................................................................5, 8

*California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*,
  No. 2:10-cv-01207-GEB-AC, 2016 WL 64419 (E.D. Cal. Jan. 5, 2016) ......6, 15

*In re Cement Antitrust Litig.*,
  673 F.2d at 1026 ..........................................................................................6, 7

*Chandler v. Phoenix Servs.*,
  No. 7:19-cv-00014-O, 2020 WL 1848047 (N.D. Tex. Apr. 13, 2020), *appeal
  transferred sub nom. Chandler v. Phoenix Servs. LLC*, 1 F.4th 1013 (Fed. Cir.
  2021) ...........................................................................................................12

*Coleman v. United Servs. Auto. Ass'n*,
  No. 21-cv-217-CAB-LL, 2021 WL 4034159 (S.D. Cal. Sept. 2, 2021) ............14

*Copperweld Corp. v. Independence Tube Corp.*,
  467 U.S. 752 (1984)....................................................................................4, 11

*Couch v. Telescope Inc.*,
  611 F.3d 629 (9th Cir. 2010) ...........................................................5, 6, 10, 11

*Env't Prot. Info. Ctr. v. Pac. Lumber Co.*,
  No. C 01-2821, 2004 WL 838160 (N.D. Cal. Apr. 19, 2004)............................16

*Finjan, Inc. v. Check Point Software Techs., Inc.*,
  No. 18-cv-02621-WHO, 2020 WL 1929250 (N.D. Cal. Apr. 21,
  2020)………………………………………………………………...10, 12, 14

*Flores v. Velocity Express, LLC*,
  No. 12-cv-05790-JST, 2015 WL 4463639 (N.D. Cal. July 21, 2015) ...............15

*ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ...............................................................................16

*Ins. Co. of the State of Penn. v. City of San Diego*,
No. 02-cv-0693 BEN (CAB), 2008 WL 11338575 (S.D. Cal. Sept. 4,
2008)……..............................................................................................7, 8, 10

*James v. Price Stern Sloan, Inc.*,
283 F.3d 1064 (9th Cir. 2002) ...............................................................................5

*Johnson v. Serenity Trans., Inc.*,
No. 15-cv-02004-JSC, 2017 WL 3168491 (N.D. Cal. July 26, 2017) ................7

*Keystone Tobacco Co. v. U.S. Tobacco Co.*,
217 F.R.D. 235 (D.D.C. 2003) ............................................................................10

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
No. 11 MDL 2262 (NRB), 2019 WL 1331830 (S.D.N.Y. Mar. 25, 2019) ........13

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) ...........................................................................10

*Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d
1124, 1130 (9th Cir. 2015) .....................................................................................9

*Rollins v. Dignity Health*,
No. 13-cv-01450-TEH, 2014 WL 1048637 (N.D. Cal. Mar. 17, 2014)...........5, 6

*S.E.C. v. Schooler*,
No. 3:12-cv-2164-GPC-JMA, 2014 WL 5757086 (S.D. Cal. Nov. 5, 2014).....15

*Sonoda v. Amerisave Mortg. Corp.*,
No. C-11-1803 EMC, 2011 WL 3957436 (N.D. Cal. Sept. 7, 2011)................15

*Steering Comm. v. United States*,
6 F.3d 572 (9th Cir. 1993) ......................................................................................7

*Strauss v. Sheffield Ins. Corp.*,
No. 05-cv-1310-H(CAB), 2006 WL 6158770 (S.D. Cal. June 23, 2006)..........15

*U.S. Rubber Co. v. Wright*,
359 F.2d 784 (9th Cir. 1966) ...................................................................................6

*Union Cty., Iowa v. Piper Jaffray & Co.*,
  525 F.3d 643 (8th Cir. 2008) ................................................................11

*United States v. Bestfoods*,
  524 U.S. 51 (1998).......................................................................5, 9

*United States v. Lischewski*,
  18-cr-203-EMC (N.D. Cal. Dec. 2, 2019) ...........................................8

**Rules & Statutes**

28 U.S.C. § 1292(B) ...........................................................................*passim*

Federal Rule of Civil Procedure 54(b) ................................................3, 15

Federal Rule of Civil Procedure 8(a)(2)...............................................12

Federal Rule of Civil Procedure 12(b)(6) .............................................12

## I.  INTRODUCTION

Interlocutory appeals are extremely rare and reserved for exceptional cases. Lion Capital LLP ("Lion Capital") and Big Catch Cayman LP ("Big Catch") (collectively, the "Lion Defendants") offer no compelling reason for such extraordinary relief in their request for certification to appeal the Court's Order, ECF No. 2781 (the "Third Lion Order"), under 12 U.S.C. § 1292(b).

The Lion Defendants fail to meet their heavy burden to show that certification is warranted. Indeed, the Lion Defendants have failed to meet their burden to prove each of the required elements for certification pursuant to 12 U.S.C. § 1292(b). None of the questions the Lion Defendants raise here are controlling questions of law, much less questions for which there is a substantial difference of opinion or that would materially advance this case. To the contrary, interlocutory review, which is highly disfavored, would only increase the duration of this case—a case that has been ongoing for over seven years and is only now nearing trial. The Lion Defendants' sought-after appeal would put this case on hold for at least another year. No justification exists for such a significant delay in a case that has been pending for as long as this one, particularly where similar claims continue against Lion Capital (Americas), Inc. ("Lion Americas"), StarKist Co. ("StarKist"), and StarKist's owner, Dongwon Industries Co. Ltd. ("Dongwon"), regardless of the proposed appeal.

Thus, as explained below, the Class Plaintiffs[1] oppose the Lion Defendants' request, and the Court should deny the motion.

## II.  RELEVANT BACKGROUND

The history of this matter is well known to the Court and is documented extensively in recent orders, including relating to the investigation by Antitrust

---

[1] Indirect Purchaser End Payer Plaintiffs ("EPPs"), the Commercial Food Preparer Plaintiffs ("CFPs"), the Direct Purchaser Class Plaintiffs ("DPPs").

Division of the United States Department of Justice ("DOJ") into the packaged tuna industry, the related criminal charges, guilty pleas, convictions, and sentencings. ECF No. 2781 at 2-4. Similarly, the procedural history of the Plaintiffs' lawsuit against Tri-Union Seafoods LLC d/b/a Chicken of the Sea International ("COSI"), Bumble Bee Foods LLC ("Bumble Bee"), StarKist, and certain of their parent companies, including COSI's owner, Thai Union Group PCL ("TUG") and StarKist's owner, Dongwon is also extensively documented in this Court's prior Orders. *See* ECF Nos. 2454, 2654, 2781.

Following commencement of discovery, including a subpoena to Bumble Bee's parent entity, Lion Capital, Plaintiffs uncovered evidence implicating Bumble Bee's owners, Lion Americas and Lion Capital in the conspiracy. Plaintiffs sought and were granted leave to amend to name the Lion Defendants in the Third Amended Complaint. ECF No. 884.

In June 2018, the Lion Entities filed a motion to dismiss Plaintiffs' operative complaints. ECF No. 1248. On September 5, 2018, Judge Sammartino concluded that while the Court had personal jurisdiction over each of the Lion Entities on specific jurisdiction grounds, Plaintiffs had failed to state a claim against Lion Capital and Big Catch. ECF No. 1358 (the "First Lion Order"). However, the Court did find that Plaintiffs plausibly stated a claim against Lion Americas. Plaintiffs amended their complaints and Lion Capital and Big Catch again moved to dismiss on November 2, 2018. ECF No. 1631. On January 29, 2020, the motion to dismiss was granted without leave to amend (the "Second Lion Order"). ECF No. 2270.

On February 26, 2020, the DAPs filed a Motion for Reconsideration of the Second Lion Order, or alternatively, for entry of a final judgment against Lion Capital and Big Catch pursuant to Federal Rule of Civil Procedure 54(b). ECF No.

2285. The Class Plaintiffs meanwhile sought a Rule 54(b) Order, or alternatively, reconsideration.

Over two years later, on March 21, 2022, this Court granted the Motions for Reconsideration and denied Lion Capital and Big Catch's Motion to Dismiss, thereby resuscitating all Plaintiffs' claims against Lion Capital and Big Catch. ECF No. 2781. The Third Lion Order evinces the Court's understanding of Lion Capital's relationship to Bumble Bee and the conspiracy alleged in this case, as well as Big Catch's relationship to Lion Capital. For example, the Third Lion Order acknowledges that the allegations reflected how "[a]s equitable owner with knowledge of Bumble Bee's participation, Lion Capital could have directed Bumble Bee to disassociate itself from the conspiracy" and how "Lion Capital's role in knowingly encouraging Bumble Bee's collusion was crucial to the continued viability of the conspiracy." *Id.* at 19.

The Court found that Plaintiffs "sufficiently alleged Lion Capital's own acts in furtherance of the conspiracy" as "Lion Capital directly participated through Lindberg, its Member and Executive Officer." *Id.* The Third Lion Order recognizes the allegations that "Lindberg held himself out as acting on behalf of Lion Capital when he assured, on an 'owner to owner' basis, to Dongwon and TUG executives that Lion Capital would support and enforce the collusive pricing agreements. In this regard, Lindberg's ostensible capacity was that of an agent of Lion Capital." *Id.* Finally, the Court also found that "Plaintiffs alleged sufficient facts to raise a reasonable inference that Lion Capital participated through Lyndon Lea, its General Manager who was not employed by Lion Americas, as well as through the dual agents he directed[,]" explaining that the reports "Lindberg, Capps, and Chang" made "to Lea indicated that Bumble Bee continued to collude with its competitors[,]" and rather than "discouraging continued support of Bumble Bee's

collusion, Lea ratified and encouraged it by knowingly setting Bumble Bee's financial goals at levels which were untenable in the absence of collusion." *Id.* at 20.

Following the Court's Third Lion Order, Plaintiffs began discussing the limited set of discovery they now seek from the Lion Defendants. As the Court will recall, the DAPs have settled with all of the Defendants, except the Lion Entities; and the Class Plaintiffs have resolved their claims with COSI and TUG, while claims remain against the Lion Entities, StarKist, and Dongwon.

On April 19, 2022, the Lion Defendants brought the pending motion requesting the Court certify the Third Lion Order for interlocutory appeal, pursuant to 28 U.S.C. § 1292(b). ECF No. 2810. The Lion Defendants seek certification of four issues from this Court's Third Lion Order:

- Are allegations of a defendant's "knowledge" of an antitrust conspiracy and "coordinated activity" with its subsidiary sufficient to raise a reasonable inference of that defendant's participation in the conspiracy?

- Are allegations consistent with routine investment due diligence and investment oversight sufficient to infer that an investor learned— prior to any investment in the company—that the company's profits were the product of collusive price agreements, and then participated directly in that conspiracy?

- Does a complaint sufficiently allege that a parent company engaged in "coordinated activity" under *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984), and *Arandell Corp. v. Centerpoint Energy Servs.*, 900 F.3d 623 (9th Cir. 2018), by delegating to its subsidiary the role of monitoring and overseeing an investment in a portfolio company, such that the parent company is deemed to have directly participated in any anticompetitive conduct by the portfolio company?

- Can plaintiffs overcome the presumption under *United States v. Bestfoods*, 524 U.S. 51 (1998), that an individual was wearing their "subsidiary hat" and not their "parent hat" when doing the work of the subsidiary, without alleging any conduct inconsistent with the subsidiary's interests?

ECF No. 2810-1 at 7-11.

## III.  LEGAL STANDARD

"Section 1292(b) is a departure from the normal rule that only final judgments are appealable, and therefore must be construed narrowly." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). A district court may certify an appeal of an interlocutory order only if three factors are present: (1) the issue to be certified must involve a "controlling question of law," (2) there must be "substantial ground for difference of opinion" on the issue, and (3) it must be likely that an interlocutory appeal will "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). All three certification criteria are required, and the party pursuing the interlocutory appeal bears burden of demonstrating them. *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).

Section 1292(b) certifications only "are granted in 'rare circumstances.'" *Rollins v. Dignity Health*, No. 13-cv-01450-TEH, 2014 WL 1048637, at *1 (N.D. Cal. Mar. 17, 2014) (quoting *James*, 283 F.3d at 1067 n.6) (noting that the Court of Appeals "has discretion to reject . . . interlocutory appeal[s], and does so quite frequently"). Indeed, the Ninth Circuit precedent "has recognized the congressional directive that section 1292(b) is to be applied sparingly and only in exceptional cases." *In re Cement Antitrust Litig.* (MDL No. 296), 673 F.2d 1020, 1027 (9th Cir. 1981). Accordingly, a movant seeking an interlocutory appeal has a "***heavy burden***," *Rollins*, 2014 WL 1048637, at *1 (emphasis added), and must show "that exceptional circumstances justify a departure from the basic policy of postponing

appellate review until after the entry of a final judgment," *California Sportfishing Prot. All. v. Chico Scrap Metal, Inc.*, No. 2:10-cv-01207-GEB-AC, 2016 WL 64419, at *1 (E.D. Cal. Jan. 5, 2016) (internal quotation marks omitted) (quoting *Ass'n of Irritated Residents v. Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1087 (E.D. Cal. 2008)).

Interlocutory appeals are "not intended merely to provide review of difficult rulings in hard cases," *U.S. Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966), nor are they permissible where the party requesting certification merely disagrees with the Court's ruling, *Couch*, 611 F.3d at 633.

## IV.    DISCUSSION

To warrant interlocutory review certification, "all three § 1292(b) requirements" must be met, *Couch*, 611 F.3d at 633, but the Lion Defendants cannot satisfy *any* of these criteria, let alone all three. The questions the Lion Defendants raise as to the Court's ruling in the Third Lion Order do not constitute an exceptional circumstance, much less one that requires a departure from the general rule that parties may only appeal from final orders. Accordingly, the Lion Defendants' motion should be denied, as explained below.

### A.    The Lion Defendants Fail Section 1292(b)'s Appealability Test

#### 1.    There is No "Controlling Question of Law"

All four of the Lion Defendants' proposed questions are applications of law to facts, not pure or abstract legal issues. Only the latter, *not* presented here, satisfies this prong. *See Johnson v. Serenity Trans., Inc.*, No. 15-cv-02004-JSC, 2017 WL 3168491, at *1 (N.D. Cal. July 26, 2017); *see Steering Comm. v. United States*, 6 F.3d 572, 575 (9th Cir.1993) (requiring an identifiable pure legal question for appeal).

A certifiable issue for interlocutory appeal requires a "controlling question of law." 28 U.S.C. § 1292(b). A "controlling" question of law, may only be found in those "exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation," because "resolution of the issue on appeal could materially affect the outcome of the litigation in the district court." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. "The term 'question of law' refers to abstract legal issues 'the court of appeals [can] decide quickly and cleanly without having to study the record.'" *Ins. Co. of the State of Penn. v. City of San Diego*, No. 02-cv-0693 BEN (CAB), 2008 WL 11338575, at *4 (S.D. Cal. Sept. 4, 2008) (internal citations omitted). "[A] question falls outside § 1292(b)'s purview, if it requires a fact-intensive inquiry." *Id*. Accordingly, "[a] 'mixed question of law and fact or the application of law to a particular set of facts' by itself is not appropriate for permissive interlocutory review." *Johnson*, 2017 WL 3168491, at *1 (internal citation omitted); *see Steering Comm.*, 6 F.3d at 575 (requiring an identifiable pure legal question for appeal); *Allen v. Conagra Foods, Inc.*, No. 13-cv-01279-JST, 2013 WL 6000456, at *3 (N.D. Cal. Nov. 12, 2013) (internal quotation marks omitted) (denying motion for interlocutory review where defendant sought "to appeal the Court's application of the relevant federal regulations to the facts alleged," an issue that was not "pure law").

The Lion Defendants' arguments fail completely under this test.

First, no controlling issue of law will materially affect the outcome of the litigation because even if the Lion Defendants were allowed to appeal, and the Ninth Circuit found in their favor, the conspiracy against the Lion Defendants would continue. This is because the Court specifically found that Plaintiffs had sufficiently alleged "Lion Capital's own acts in furtherance of the conspiracy." ECF No. 2810-1 at 3-4. In other words, the conspiracy case against the Lion Defendants

would continue regardless of any appeal on the grounds the Lion Defendants assert, because the Court already found that Lion Capital participated in the conspiracy through the acts of Lea, the General Manager of Lion Capital, and Lindberg, a member of Lion Capital and an executive officer.

Second, none of the Lion Defendants' questions are pure questions of law, but rather, each of them is fact-intensive, and therefore, inappropriate for interlocutory appeal. *See Ins. Co. of the State of Penn.*, 2008 WL 11338575, at *4.[2] Starting with the Lion Defendants' first inquiry as to whether "allegations of a defendant's 'knowledge' of an antitrust conspiracy and 'coordinated activity' with its subsidiary [are] sufficient to raise a reasonable inference of that defendant's participation in the conspiracy," ECF No. 2810-1 at 7, the Lion Defendants assert that the Court's ruling is in conflict with *Arandell* and argue whether Plaintiffs' allegations are sufficient under *Arandell* to show the Lion Defendants conducted their "own acts in purposeful and knowing furtherance of the alleged inter-enterprise price-fixing conspiracy, if proven." *Id.* (quoting *Arandell*, 900 F.3 at 634). Answering such a question requires examining Plaintiffs' alleged facts and performing an in-depth evaluation of them, as evidenced by the Court's Order. *See*, *e.g.*, ECF No. 2781 at 16-20. The Court's review of Plaintiffs' alleged facts and application of *Arandell*, as well as other case precedent, in no way presents a pure question of law.

---

[2] In their request for interlocutory appeal, the Lion Defendants cite *United States v. Lischewski*, 18-cr-203-EMC (N.D. Cal. Dec. 2, 2019) and reference the Government's argument (not testimony) at the conclusion of trial as additional evidence that the Court's Second Lion Order should apply, rather than the Third. *See* ECF No. 2810-1 at 6. To the extent the Lion Defendants are using their motion as an additional opportunity to skew the record, such conduct is not only inappropriate, but further supports Plaintiffs' argument that the issues at hand are factual rather than legal ones.

The Lion Defendants' other inquiries are similarly fact-intensive, with each question probing whether Plaintiffs' factual allegations suffice. The Lion Defendants' second question asks, "[a]re allegations consistent with routine investment due diligence and investment oversight sufficient to infer that an investor learned—prior to any investment in the company—that the company's profits were the product of collusive price agreements, and then participated directly in that conspiracy?" ECF No. 2810-1 at 8. The Lion Defendants claim that the Court was inferring a conspiracy based on allegations suggesting "rational" business behavior. *Id.* (citing *Name.Space, Inc. v. Internet Corp. for Assigned Names & Numbers*, 795 F.3d 1124, 1130 (9th Cir. 2015)). Firstly, it is the Lion Defendants' own opinion, not the Court's, that their alleged actions are "consistent with routine investment due diligence and investment oversight." *Id*. Secondly, the Lion Defendants' own explanation of the Court's analysis—that the Court's decision relied on facts regarding Lion Capital's sophistication, access to Bumble Bee records, awareness of macroeconomic trends, etc.—underscores that this question again fails to present a pure question of law and requires an examination into the factual record. *Id*. And thirdly, the Court did not just rely on ordinary, rational business behavior to infer conspiracy—instead, the Court acknowledged, as it had in prior orders, that from all of the allegations about Defendants discussing "rational market behavior" and the like, "it can reasonably be inferred that 'rational market behavior' was a euphemism for collusive pricing agreements among Bumble Bee, StarKist, and COSI." *See, e.g.*, ECF No. 2781 at 9 (citing First Lion Order at 49); *see also id.* at 12 (citing allegations how Lindberg reported that StarKist was "now in lockstep with us in setting pricing rationally"). These are factual issues—not legal ones.

The Lion Defendants' third and fourth questions fare no better. In explaining their question as to whether a plaintiff can sufficiently allege that a parent engaged in 'coordinated activity' by "delegating to its subsidiary the role of monitoring and overseeing an investment," the Lion Defendants again explain that the Court's analysis hinged on Plaintiffs' alleged facts, including Plaintiffs' allegation that Lion Capital used Lion Americas to assist in managing Bumble Bee, as well as other allegations regarding their relationship. And finally, the Lion Defendants' question of whether a plaintiff can overcome the presumption in *United States v. Bestfoods*, 524 U.S. 51 (1998), "without alleging any conduct inconsistent with the subsidiary's interest," likewise cannot be answered without reviewing the facts at issue and assessing whether Plaintiffs' allegations purport such conduct. *See* ECF No. 2810-1.

Each of the Lion Defendants' inquiries requires the application of law to the specific facts of this case—as evidenced by their own arguments. *See id*. at 7-12. However, such fact-intensive questions are impermissible for interlocutory appeal purposes. *See Finjan, Inc. v. Check Point Software Techs., Inc.*, No. 18-cv-02621-WHO, 2020 WL 1929250, at *4 (N.D. Cal. Apr. 21, 2020) (concluding movant failed to meet burden to show that issue was a controlling question of law where the facts alleged could not be extricated from the Court's discussion or from any conclusion reached); *Ins. Co. of the State of Penn.*, 2008 WL 11338575, at *4 (concluding movant's "proposed 'questions of law' are fact-intensive and therefore, inappropriate for interlocutory appeal"); *see, e.g.*, *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004) (stating that "§ 1292(b) appeals were intended, and should be reserved, for situations in which the court of appeals can rule on a pure, controlling question of law without having to delve beyond the surface of the record in order to determine the facts"); *Keystone Tobacco Co. v.*

*U.S. Tobacco Co.*, 217 F.R.D. 235, 239 (D.D.C. 2003) (explaining that when "the crux of an issue decided by the court is fact-dependent, the court has not decided a 'controlling question of law' justifying immediate appeal").

### 2.    There Is No Substantial Ground for Difference of Opinion

To determine whether a 'substantial ground for difference of opinion' exists pursuant to section 1292(b), "courts must examine to what extent the controlling law is unclear." *Couch*, 611 F.3d at 633. A substantial ground for difference of opinion may be found where "the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id*. "[T]he mere presence of a disputed issue that is a question of first impression, standing alone, is insufficient to demonstrate a substantial ground for difference of opinion." *Id.* at 634 (internal quotation marks omitted) (quoting *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996)).

The Lion Defendants argue that the Honorable Janis L. Sammartino and the Honorable Dana M. Sabraw reaching different conclusions in their respective orders, *see* Second Lion Order, ECF No. 2270, and Third Lion Order, ECF No. 2781, is sufficient to satisfy the second prong. ECF No. 2810-1 at 14. They also argue that the "lack of controlling precedent" with respect to the application and import of *Copperweld* and *Arandell* additionally satisfies the second prong. *Id*.

However, "just because a court is the first to rule on a particular question or just because counsel contends that one precedent rather than another is controlling does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633 (quoting 3 Federal Procedure, Lawyers Edition § 3:212 (2010)). *Two* judges reaching different conclusions on the sufficiency of factual allegations, or an argued "lack of controlling precedent"

because *two* courts have interpreted *Arandell* under allegedly analogous facts, ECF No. 2810-1 at 14, does not create the substantial ground for difference of opinion required for interlocutory certification. Rather, these arguments have the opposite effect, demonstrating that there is no substantial ground for difference of opinion at all. *See Couch*, 611 F.3d at 634 (explaining that "the fact that no California court has addressed the precise questions at issue [does not] satisfy the requirement of a substantial ground for disagreement"); *see also Union Cty., Iowa v. Piper Jaffray & Co.*, 525 F.3d 643, 647 (8th Cir. 2008) (holding that a "dearth of cases" does not give rise to a substantial ground for difference of opinion).

Moreover, the two cases the Lion Defendants cite as "inconsistent with" the Court's Third Lion Order and as involving "analogous circumstances," are distinguishable. *See Finjan, Inc.*, 2020 WL 1929250, at *5 (dismissing motion for interlocutory appeal where cases relied upon to demonstrate 'substantial ground for difference opinion' were "easily distinguishable from this case because this determination is so fact dependent").

In *Chandler v. Phoenix Services*, the Court, on a motion for summary judgment, concluded there was no evidence to support each defendant's independent participation in the enterprise's scheme. *Chandler v. Phoenix Servs.*, No. 7:19-cv-00014-O, 2020 WL 1848047, at *14 (N.D. Tex. Apr. 13, 2020), *appeal transferred sub nom. Chandler v. Phoenix Servs. LLC*, 1 F.4th 1013 (Fed. Cir. 2021). Here, the parties are in a dissimilar procedural posture. As noted in the Court's Order, "[t]he issue of Lion Capital's liability was raised in the context of a Rule 12(b)(6) motion to dismiss," and accordingly, Plaintiffs' allegations must solely meet the Rule 8(a)(2) pleading standard. ECF No. 2781 at 5. The Court here, unlike in *Chandler*, had to accept as true all allegations of material fact in Plaintiffs' complaint and construe them in a light most favorable to Plaintiffs. Doing so, the

Court concluded that "[t]he allegations of Lion Capital's knowledge and the coordinated activity with Lion Americas in furtherance of the conspiracy are sufficient under *Arandell* to raise a reasonable inference of Lion Capital's own participation in the conspiracy." ECF No. 2781 at 19. The Court explained that "[a]s equitable owner with knowledge of Bumble Bee's participation, Lion Capital could have directed Bumble Bee to disassociate itself from the conspiracy" and that "Lion Capital's role in knowingly encouraging Bumble Bee's collusion was crucial to the continued viability of the conspiracy." *Id*. The Court's conclusion cannot be compared to the disparate ruling in *Chandler*, in which on a motion for summary judgment, the court performed an analysis pursuant to *Arandell*, looking not to the plaintiff's allegations, but to the evidence supporting them.

The Lion Defendants similarly attempt to compare the Third Lion Order to the ruling in *In re LIBOR-Based Financial Instruments Antitrust Litigation*. There, the court concluded that plaintiffs lacked antitrust standing to bring claims based on instruments issued by defendants' subsidiaries, because "plaintiffs' complaint does not contain any factual allegations that give rise to the inference that [defendants'] subsidiaries and affiliates 'independently participated in' the alleged manipulation of LIBOR manipulation, or actually 'played a role in' the scheme." *In re LIBOR-Based Fin. Instruments Antitrust Litig. ("LIBOR")*, No. 11 MDL 2262 (NRB), 2019 WL 1331830, at \*38 (S.D.N.Y. Mar. 25, 2019). Beyond the factual allegations Plaintiffs include in their complaint as to Lion Capital's participation in the purported conspiracy—which the plaintiffs in *LIBOR* lacked—the court in *LIBOR* explained that plaintiffs' argument that the subsidiaries and affiliates' sale of instruments constituted 'coordinated activity,' "might make sense if the conspiracy were based on profit motives," but the conspiracy as pled "had nothing to do with the sale of LIBOR-based instruments." *Id*. In contrast, as explained by

the Court in its Order, Plaintiffs "sufficiently alleged that Lion Capital and Lion Americas engaged in coordinated activity as a single enterprise," and that "Lion Capital, with knowledge of Bumble Bee's ongoing participation in the conspiracy and as the managing agent of the Bumble Bee investment, used Lion Americas to assist in managing Bumble Bee with the objective of maintaining supra-competitive profits." ECF No. 2781 at 19.

The Lion Defendants' proposition that *two* judges reaching different conclusions as to whether a complaint sufficiently alleged a parent's participation in a conspiracy, and the Lion Defendants' argument that "only" two other courts have performed an analysis pursuant to *Arandell* thus far—*even if* the cases were not distinguishable—fail to meet the standard required to show that there are substantial grounds for a difference of opinion pertaining to the Lion Defendants' alleged "questions of law." *See*, *e.g.*, *Coleman v. United Servs. Auto. Ass'n*, No. 21-cv-217-CAB-LL, 2021 WL 4034159, at *2 (S.D. Cal. Sept. 2, 2021) (concluding that defendants' argument that "no legal precedent" exists and that "no court has ever applied [the relevant statute] outside of the employment context' as this Court has" are "not sufficient reasons to warrant the extraordinary step of certifying an order for interlocutory review" and do not satisfy the second prong).

### 3.   An Interlocutory Appeal Would Not Materially Advance the Litigation

Interlocutory review of a pleading motion, nearly seven years into litigation, after the Ninth Circuit affirmed class certification *en banc*, and after this Court disposed of most summary judgment motions, will only slow the pace of litigation instead of speeding its resolution. This is fatal under the legal standard for an interlocutory appeal.

An interlocutory appeal requires a showing that granting the appeal "may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Considering the effect of a reversal in the case, an interlocutory appeal materially advances the termination of the litigation where it "promises to advance the time for trial or to shorten the time required for trial." *Finjan, Inc.*, 2020 WL 1929250, at *6 (quoting *Dukes v. Wal-Mart Stores, Inc.*, 01-cv-02252-CRB, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10, 2012)). The Lion Defendants' argument on this point is a single sentence—that "it is not in the best interests of any party, nor is it beneficial to the Court's administration of this multidistrict litigation, to wait until after years of protracted and expensive litigation have resulted in final judgment before receiving clarity on the legal standards applicable to Plaintiffs' legal theories against Lion LLP and Big Catch." ECF No. 2810-1 at 15-16.

After nearly seven years, the Court has already endured the protracted and expensive litigation the Lion Defendants speak of. An interlocutory appeal is improper when it "comes after [multiple] years of extensive discovery and dispositive motion practice and immediately before final resolution of th[e] matter at trial." *Cal. Sportfishing Prot. All.*, 2016 WL 64419, at *2 (internal citations and quotation marks omitted).  Here, the parties have completed virtually all fact and expert discovery and fully briefed 20 summary judgment motions and related *Daubert* motions. This Court is currently diligently working its way through these motions. This case has been litigated since 2015, the parties are now preparing for trial, and the Lion Defendants' interlocutory appeal could potentially stay the case for another year or more. *See Strauss v. Sheffield Ins. Corp.*, No. 05-cv-1310-H(CAB), 2006 WL 6158770, at *4 (S.D. Cal. June 23, 2006) (concluding that Rule 54(b) certification "would surely protract the litigation, as the final resolution of an interlocutory appeal could take years").

No justification exists for such a significant delay in a case that has been pending for as long as this one, *see Flores v. Velocity Express, LLC*, No. 12-cv-05790-JST, 2015 WL 4463639, at *4 (N.D. Cal. July 21, 2015) (concluding that "costs weigh[ ] against interlocutory appeal because it would not expedite the litigation, particularly given that the litigation has already been pending for over two-and-a-half years"), particularly where similar claims continue against Lion Americas, StarKist, and Dongwon regardless of the proposed appeal, *see S.E.C. v. Schooler*, No. 3:12-cv-2164-GPC-JMA, 2014 WL 5757086, at *4 (S.D. Cal. Nov. 5, 2014) (concluding Defendant failed to satisfy third prong where "if Defendants' appeal were successful, the case would not be terminated"); *Sonoda v. Amerisave Mortg. Corp.*, No. C-11-1803 EMC, 2011 WL 3957436, at *2 (N.D. Cal. Sept. 7, 2011) (explaining that "[w]hen litigation will be conducted in substantially the same manner regardless of our decision, the appeal cannot be said to materially advance the ultimate termination of the litigation" (internal quotation marks and citations omitted)).

The Lion Defendants themselves argued, over two years ago, that awaiting a decision on a single claim "does not aid the expeditious resolution of a case because it is 'more likely to cause additional delay than it is to ameliorate delay problems.'" *See* ECF No. 2289 (internal citations omitted); *see, e.g.*, *ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) (recognizing that "[e]ven when [the court of appeals] has jurisdiction over an issue under § 1292(b), it enjoys broad discretion to refuse to accept it" and "need not offer any reason at all" for doing so); *Env't Prot. Info. Ctr. v. Pac. Lumber Co.*, No. C 01-2821, 2004 WL 838160, at *2 (N.D. Cal. Apr. 19, 2004) (recognizing that "the court of appeals retains the authority to reject a interlocutory appeal certified by the

district court, and [ ] 'does so quite frequently'" (internal citations omitted)). The Lion Defendants' arguments are all the more true now.

## V.   CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court deny the Lion Defendants' motion to certify the Third Lion Order for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).


Dated:  May 6, 2022                         Respectfully submitted,

                                            HAUSFELD LLP

                                            By: s/ *Samantha J. Stein*
                                            Bonny E. Sweeney, Esquire
                                            (Cal. Bar No. 176174)
                                            Michael P. Lehmann, Esquire
                                            (Cal. Bar No. 77152)
                                            Christopher L. Lebsock, Esquire
                                            (Cal. Bar No. 184546)
                                            Samantha J. Stein, Esquire
                                            (Cal. Bar No. 302034)
                                            600 Montgomery Street
                                            Suite 3200
                                            San Francisco, CA 94111
                                            Tel:        (415) 633-1908
                                            Fax:        (415) 358-4980
                                            E-mail:    bsweeney@hausfeld.com
                                            mlehmann@hausfeld.com
                                            clebsock@hausfeld.com
                                            sstein@hausfeld.com

                                            ***Class Counsel for Direct Purchaser Plaintiffs***

                                            CUNEO GILBERT & LADUCA LLP

                                            By: s/ *Jonathan W. Cuneo*

Jonathan W. Cuneo, Esquire
Joel Davidow, Esquire
Blaine Finley, Esquire
4725 Wisconsin Avenue, N.W.
Suite 200
Washington, D.C. 20016
Tel:       (202) 789-3960
Fax:       (202) 589-1813
E-mail:    jonc@cuneolaw.com
joel@cuneolaw.com
bfinley@cuneolaw.com

***Class Counsel for the Indirect
Purchaser Commercial Food Preparer
Plaintiffs***

WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP

By: /s/     *Betsy C. Manifold*
Betsy C. Manifold, Esquire
(Cal. Bar No. 182450)
Rachele R. Byrd, Esquire
(Cal. Bar No. 190634)
Alex J. Tramontano, Esquire
(Cal. Bar No. 276666)
Symphony Towers
750 B Street, Suite 1820
San Diego, CA 92101
Tel:       (619) 239-4599
Fax:       (619) 234-4599
E-mail:    manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

Thomas H. Burt, Esquire
270 Madison Avenue
New York, NY 10016
Tel:       (212) 545-4600
Fax:       (212) 686-0114

E-mail:   burt@whafh.com

**_Class Counsel for Indirect Purchaser_**
**_End Payer Plaintiffs_**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I certify that on May 6, 2022, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

By: s/ *Samantha J. Stein*
Samantha J. Stein
HAUSFELD LLP
sstein@hausfeld.com
*Class Counsel for the Direct Purchaser Class*

---

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>SIGNATURE ATTESTATION</u>

Pursuant to the Court's CM/ECF Administrative Policies, I hereby certify that authorization for filing this document has been obtained from each of the other signatories show above, and that all signatories have authorized placement of their electronic signature on this document.

By: s/ *Samantha J. Stein*
Samantha J. Stein
HAUSFELD LLP
sstein@hausfeld.com
*Class Counsel for the Direct*
*Purchaser Class*