FILED

JUL 1 5 2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MDD |
|---|---|
| This filing relates to the End Payer Plaintiff Class Action Track | **ORDER GRANTING END PAYER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF PARTIAL SETTLEMENT** |

## I.   INTRODUCTION

Pending before the Court is the End Payer Plaintiffs ("EPPs") motion for final approval of their "ice-breaker" settlement[1] with Defendant Chicken of the Sea International ("COSI") and its parent company, Defendant Thai Union Group PCL ("TUG") (collectively "COSI").  Also pending before the Court is the EPPs' motion for costs and expenses in conjunction with final approval of this settlement.  Final approval of the settlement is not dependent on the pending request for an award of costs and expenses.  The costs motion is, therefore, decided separately.

In accordance with the Court's Preliminary Approval Order dated January 26, 2022 (ECF No. 2734), the Court held a Final Approval Hearing on July 15, 2022. After a robust notice plan to the settlement class members advising them of the July 15, 2022 Final Approval Hearing Date and of their rights to object and/or opt out, no objections were received by the parties as to the settlement.[2]  *See* ECF No. 2827 (Notice Declaration by Claims Administrator) ("Notice Decl.").   [No objector appeared at the July 15, 2022 hearing.]   The parties received only one request for exclusion -- made by 107 Direct Action Plaintiffs (DAPs) who filed their own actions in the MDL.[3]

The Court finds that the Claims Administrator (JND) engaged in a notice program with an appropriate depth of reach for a settlement class with tens of millions consumers.  *See* Notice Decl., ¶ 6 (exceeding the 85% reach goal).  The response of the Class is positive with 246,436 claims received.   As an initial matter, the Court finds that the settlement class members received the best notice that is practicable in

---

[1] *See* Manifold Decl., Ex. 1 ("COSI Settlement Agreement")

[2] The Claims Administrator further posted a copy of the motion papers seeking final approval on the settlement website.

[3] These entities include 107 businesses (DAPS) identified in the letter, including: The Kroger Co. ("Kroger), Albertsons Companies, Inc. ("Albertsons"), Hy-Vee Inc. ("Hy-Vee"), H.E. Butt Grocery Company ("HEB"), Ahold U.S.A., Inc. ("Ahold"), Delhaize America, LLC ("Delhaize") (collectively the "Opt-Out Entities").

1  such a large consumer action. As discussed below, the Court finds ample support for
2  final approval of the COSI Settlement Agreement and finds that the COSI Settlement
3  is fair, adequate and reasonable under the relevant Ninth Circuit standards.

4  **II.  SETTLEMENT TERMS**

5  The key benefits of the Settlement are as follows: (1) the maximum Settlement
6  Amount is twenty million ($20,000,000).  COSI Settlement Agreement, §1.a.xxvii
7  (ECF 2552-3 at 8); (2) under Paragraphs 11(b) and 18, up to five million ($5,000,000)
8  out of the Maximum Settlement Amount shall be used to cover the reasonable costs
9  of Class and Settlement Notices and administration for distribution of the Settlement
10  Fund of fifteen million ($15,000,000) ("Settlement Fund").  ECF 2552-3 at 13 and 14;
11  and (3) if the reasonable costs of Class and Settlement Notice is less than $5,000,000,
12  the difference is refunded to the COSI Defendants under Paragraph 18(b) of the COSI
13  Settlement Agreement.  *Id.* at 14 and 15.

14  Material terms of the Settlement Agreement are as follows:

15  **Settlement Class Definition.**  The Settlement Class definition is the same as
16  the EPP Class certified by the Court and upheld by an *en banc* decision of the Ninth
17  Circuit.  *See* ECF No. 1931; *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee*
18  *Foods, LLC, et. al.*, 2022 U.S. App. LEXIS 9455 (9th Cir. Apr. 8, 2022) ("*Olean*").

19  **Release.**  The Court notes that in exchange for the foregoing relief, the EPPs
20  agreed to release "all claims, . . . in any way arising out of or relating in any to the sale
21  or pricing of Packaged Tuna during the Class Period, including, but not limited to, any
22  conduct alleged or causes of action in any way arising out of the Complaint or in any
23  similar action filed in state court..." Manifold Decl., Ex. 1 ¶ 8. *See also* Ex.1, ¶ 9
24  (citing §1542 of California Civil Code, releasing under California law "with respect
25  to the subject matter of provisions" in Paragraph 8.) The Court finds that this release
26  is appropriately narrow and tailored to the claims in this action.

27  **Notice Program**.  An experienced and well-respected claims administrator,
28  JND Legal Administration LLC ("JND"), administered a comprehensive and robust

1   notice plan to alert Settlement Class Members of the COSI Settlement Agreement. *See*
2   ECF No. 2827 (Notice Decl.), ¶¶ 4-24.  The Notice Plan included a robust 8-week
3   media campaign (February 17, 2022 through April 13, 2022) with an extensive digital
4   effort, publication in *People* magazine, spots on iHeart radio, an interactive case
5   website and a 24-hour toll-free number.  Notice Decl., ¶¶ 2-6, 20, 29.  As of May 16,
6   2022, the notice program reached over 761 million consumers by digital impression,
7   resulting in 1,760,053 page views, by 518,086 unique visitors to the settlement
8   website.[4]  Manifold Decl., ¶ 32.  Print and Radio efforts generated 285,383 digital
9   media clicks on the website, 1,142 telephone calls, and 349 emails related to the
10  notice.  Manifold Decl., ¶ 32.  The Notice Program surpassed the 85% reach goal.
11  Notice Decl., ¶¶ 6, 30.

12      **Long Form Class Notice and Claim Form**.  The Court finds that the Class
13  Notice, in plain language (both English and Spanish), outlines the benefit of the COSI
14  Settlement and explains how to get payment, how to be excluded from settlement, and
15  how to object to the settlement.  *See* Notice Decl., Ex. F.  The Class Notice also
16  explains what happens if the settlement class member does nothing.  The Class Notice
17  clearly explains the objection process to Settlement Class Members and informs them
18  that they may appear at the fairness hearing or retain counsel to represent their
19  interests.

20      **Claims Process.**  The Court finds that claims process was fair, reasonable,
21  adequate, and protected due process rights.  The Court also finds the claims process
22  to be convenient and efficient for the Settlement Class Members.  The digital ads
23  included an embedded link and the print ad a QR code, both of which allow Settlement
24  Class Members to receive more information about the COSI Settlement Agreement as
25  well as complete and file a simple on-line Claim Form.  Notice Decl., ¶¶ 8-9, 19.
26

27  [4] Digital impressions targeted adults 18 years of age or older in the U.S. and Guam and
28  was served across all common devices (desktop, laptop, tablet, and mobile). Notice
    Decl., ¶¶ 7, 8.

ORDER                                    CASE NO. 15-MD-2670-DMS (MDD)

3

Online claim processing is faster, easier, more efficient, and results in fewer deficiencies. *See* ECF 2673-9, ¶¶ 1, 12, 13 ("Claims Process Decl."). A Settlement Class Member could also request a printed claim form and return it by mail or e-mail. *Id.*, ¶ 14. As of May 16, 2022, JND reported it received 245,909 online claims and 527 paper claims, for a total of **246,436** claims. *See* Manifold Decl. ¶ 32.[5]

**Exclusion and Objection Rights.** The Court finds that Settlement Class Members were given ample opportunity to exclude themselves by filing an appropriate and timely written statement of the grounds for objection by May 13, 2022. Notice Decl., ¶¶ 23-24, Ex. F. The Court notes no objections to the settlement were received and only a <u>single</u> request for exclusion. Notice Decl., at ¶¶ 23-26. [No objector appeared at the July 15, 2022 hearing.]

**Distribution.** The Court finds the Settlement Agreement ensures all Settlement Class Members are equally and each Authorized Claimant receives a *pro rata* share of the Distribution Funds. *See* ECF 2827, Ex. F (Class Notice) at 48, 52, 53. All distributions shall be held until the claims against all Non-settling Defendants have been resolved by settlement, judgment or trial including any appeals because of the potential for additional settlement monies to be recovered from the Non-settling Defendants.[6] The Court agrees that the distribution of the partial settlement to Authorized Claimants be delayed until further order of the Court.

When distribution is authorized by subsequent Court Order, JND may distribute payments as specified on the claimant's Claim Form. *See* Notice Decl., Ex. F (if the total final payment of a particular claim is less than $5.00, no distribution will be made

---

[5] As next step, JND then reviews, determines the validity of, process and holds on to all Claim Forms submitted by claimants. Claims Process Decl., ¶ 18.

[6] If no further monies are recovered, Settlement Class Members are expected to receive approximately $10.50 for every 200 cans purchased (approximate number of cans if you purchased packaged tuna weekly during the Settlement Class Period). Claims Process Decl., ¶ 16.

1  to the Authorized Claimant). The Court agrees with setting the *de minimis* threshold

2  of $5.00, so that the costs of administration are not out of proportion to the size of the

3  claim payment. Claims Process Decl., ¶ 20.

4  **III. DISCUSSION**

5  Final approval is a multi-step inquiry: first, the Court must certify the proposed

6  settlement class; second, it must determine that the settlement proposal is "fair,

7  reasonable, and adequate;" and third, it must assess whether notice has been provided

8  in a manner consistent with Rule 23 and due process. Fed. R. Civ. P. 23(e)(2); *Adoma*

9  *v. Univ. of Phoenix Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). These procedures

10  safeguard class members' due process rights and enable the Court to fulfill its role as

11  the guardian of class interests.[7] The Court finds that the Settlement satisfies each of

12  these requirements.

13  **A.    Certification of the Settlement Class**

14  The COSI Settlement Classes are identical to that previously certified by the

15  Court and affirmed *en banc* by the Ninth Circuit Court of Appeals:

> 16  All persons and entities who reside in one of the States described in
> 17  paragraphs 113(b) to 113(gg) of the Fourth Consolidated Amended
>     Complaint, specifically Arizona, Arkansas, California, the District of
> 18  Columbia, Florida, Guam, Hawaii, Iowa, Kansas, Maine, Massachusetts,
> 19  Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New
>     Hampshire, New Mexico, New York, North Carolina, North Dakota,
> 20  Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah,
> 21  Vermont, Virginia, West Virginia, and Wisconsin, who indirectly
>     purchased Packaged Tuna in cans or pouches smaller than forty ounces for
> 22  end consumption and not for resale, produced by any Defendant or any
> 23  current or former subsidiary or affiliate thereof, or any co-conspirator
>     during the period from June 1, 2011 to July 1, 2015.

24  And

> 25  All persons and entities who resided in [State, District, or Territory], who
> 26  indirectly purchased Packaged Tuna in cans or pouches smaller than forty

27

28  [7] *See* 4 Albert Conte & Herbert Newberg, Newberg On Class Actions §§ 11.22, et seq.
   4th ed. 2002).

ORDER                                                    CASE NO. 15-MD-2670-DMS (MDD)

5

> ounces for end consumption and not for resale, produced by any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the period June 1, 2011 through July 1, 2015. The class excludes purchases of meal kits. Also excluded from the Class is the Court.

Manifold Decl., Ex. 1 § 1(a) (defining Settlement Class Members); ECF No. 1931; *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods, LLC, et. al.*, 2022 U.S. App. LEXIS 9455 (9th Cir. Apr. 8, 2022).

In considering whether a settlement class is appropriate, the Court need not determine whether the proposed class would present manageability concerns. *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556-57 (9th Cir. 2019) (en banc) (citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Instead, the Court need only determine whether the proposed Settlement Class satisfies the remaining requirements Rules 23(a) and (b). *Id*. The EPPS separately set forth that both Federal Rule of Civil Procedure 23(a) and 23(b)(3) were satisfied and warrant certification of the a settlement classes.

The Court previously certified a contested EPP Class for trial under the requirements of Rule 23(a) and (b)(3). ECF No. 1931. The Court also appointed Wolf Haldenstein as Class Counsel for the EPP Class and the named plaintiffs as the Class Representatives in this case. *Id*. The Ninth Circuit *En Banc* Opinion affirmed the Class Order and did not alter the Court's previous findings that the proposed EPP Class otherwise satisfied the requirements of Rule 23. The Court sees no reason to change its view, and affirms its certification for the purpose of the settlement classes here.

**B.    The *Churchill Village* Factors Favor Final Settlement Approval**

Under the first *Churchill Village* factor, this Court considers the strength of plaintiffs' case. *See* Fed. R. Civ. P. 23(e)(2)(C). This includes the difficulty of "prevailing at summary judgment, prevailing on appeal, as well as the difficulty of satisfying any judgment in favor of the class." *Carlin v. DairyAmerica*, 380 F. Supp.

1   3d 998, 1009 (E.D. Cal. 2019).  In considering this factor, the Court need not reach
2   "any ultimate conclusion" about the case, "for it is the very uncertainty of outcome"
3   and avoiding more litigation "that induce consensual settlements."  *Bravo v. Gale*
4   *Triangle, Inc.*, 2017 U.S. Dist. LEXIS 77714, at *25-26 (C.D. Cal. Feb. 16, 2017).
5   "In most situations, unless the settlement is clearly inadequate, its acceptance and
6   approval are preferable to lengthy and expensive litigation with uncertain results."
7   *Bravo* at *28.

8       The Court notes this complex antitrust case has been highly contested by the
9   parties at every stage of the litigation.  Despite the presence of an ACPERA leniency
10  applicant and a criminal investigation, the issue of impact -- who was damaged and to
11  what extent remains hotly contested.  Manifold Decl., ¶ 22.  The parties will have to
12  put substantial resources into that trial, and any appeal that followed, which would
13  "prolong the litigation, and any recovery by class members, for years." *Rodriguez v.*
14  *West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); Manifold Decl., ¶ 23.

15      Setting the risks of litigation aside, EPPs state COSI Defendants have indicated
16  that they may not be able to pay a full judgment.  Manifold Decl., ¶ 24.  The harm
17  caused by the conspiracy and the resulting damages were so large that thinly-
18  capitalized Bumble Bee could not withstand the strain, and it filed for bankruptcy and
19  was sold off to a fishing company during this litigation, leaving a shell from which no
20  recovery has been achieved. *Id.*, ¶ 25.  The Court finds the risks that EPPs face from
21  summary judgment, trial, and appeal, as well as the possibility that Defendants may
22  not be able to pay any resulting judgment following the conclusion of those
23  proceedings, all weigh strongly in favor of final approval. *Id.*

24      The third factor, requires this Court assess the EPPs risk of maintaining class
25  certification through trial, which, also weighs in favor of final approval.  *In re*
26  *Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, at 946 (9th Cir. 2011);
27  *Bellinghausen*, 306 F.R.D. at 255 (citing risk of maintaining certification "if the
28  litigation were to proceed"); *Chen v. Chase Bank USA*, 2020 U.S. Dist. LEXIS

110755, at *16-17 (N.D. Cal. June 23, 2022) (same).  The Court notes the agreement in principle for settlement was reached prior to the Court granting class certification, which the EPPs recognized had risk.  Manifold Decl., ¶ 26.  Even now, there is a risk of further appeal to the United States Supreme Court.  The Court finds these factors are an appropriate consideration here in approving the parties' decision to achieve resolution by settlement.

The fourth *Churchill Village* factor, the amount obtained through the Settlement, also supports final approval.  *See also* Fed. R. Civ. P. 23(e)(2)(C).  In considering the settlement obtained, the Court must also consider any limits on potential recovery.  Here, COSI applied for and was granted leniency applicant status under ACPERA § 213(a), 118 Stat. at 665 (as amended).  The leniency applicant is (a) exempt from joint and several liability, which otherwise attaches by operation of law in antitrust litigation; and (b) is exempt from trebling, which is likewise automatic in antitrust cases.  Accordingly, COSI's maximum exposure – by statute – was its single damages for its own sales: not single damages for the conspiracy, and nothing trebled.  *Morning Star Packing Co. v. S.K. Foods, L.P.*, 2015 U.S. Dist. LEXIS 80034 (E.D. Cal. June 18, 2015).

In assessing the amount recovered here, the Court also considers that, as the "first settlement in the litigation," this agreement carries additional "significant value" because it may "'break the ice' and bring other defendants to the point of serious negotiations."  *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 643 (E.D. Pa. 2003).  Courts typically approve settlements that offer the first settling party a discount due to "the significant value in and of itself as an icebreaker settlement," particularly when, as here, the settling defendants have agreed to cooperate in the remaining litigation.  *In re Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 19 (D.D.C. 2019); *In re Ampicillin Antitrust Litig.*, 82 F.R.D. 652, 654 (D.D.C. 1979) (finding that "assistance in the case" will "prove invaluable to the plaintiffs").

The Court finds that given these circumstances, the amount recovered ($20

1    million) is more than reasonable. EPPs secured one-third of the maximum possible

2    recovery their own expert calculated through Settlement. *See* ECF No. 1981-20, Ex.

3    18 at 17 (Expert Merit Report of David Sunding (Feb. 15, 2019) (calculating COSI

4    Defendants' overcharges to EPPs to be $60,078,695)).  This compares favorably to

5    other antitrust and class action settlements that have received approval. *See In re*

6    *Domestic Airline Travel Antitrust Litig.*, 378 F. Supp. 3d at 19 (finding $15 million

7    settlement to be "in line" with other  icebreaker settlements); *see also Carlin*, 380 F.

8    Supp. 3d at 1011 ("Courts regularly approve class settlements where class members

9    recover less than one quarter of the maximum potential recovery amount."); *In re*

10   *Mego Fin.l Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding settlement

11   that provided plaintiffs one-sixth of their potential recovery to be "fair and adequate");

12   *Bellinghausen*, 306 F.R.D. at 256 (approving settlement that provided between 8.5

13   and 25.4 percent of the potential recovery); *In re Critical Path, Inc., Secs. Litig.*, 2002

14   U.S. Dist. LEXIS 26399, at *21 (N.D. Cal. June 18, 2002) (finding $17.5 million

15   settlement "not unreasonable" when compared to potential recovery of $200 million).

16   The Court finds that the relief provided for by the Settlement merits final approval.

17          The fifth and sixth *Churchill Village* factors also support final approval. COSI

18   and EPPs signed a memorandum of understanding after over three and a half years of

19   litigation.[8] Because of the time and resources expended on this case, EPPs are in a

20   good position to evaluate the value of the Settlement. *See Bravo* at *32-33 (finding

21   that extensive discovery shows that counsel fully understand case's factual and legal

22   issues).  The Court finds the EPPs are represented by Class Counsel with substantial

23   experience in litigating and evaluating antitrust class actions. Their views and

24   experience also weigh in favor of approval." ECF 2734 at 10-11.

25

26

---

27   [8] The Court notes the EPPs and COSI Defendants were prepared to finalize a

28   settlement agreement in late 2019, when the Ninth Circuit granted the petition for interlocutory appeal.

The next *Churchill Village* factor, the presence of a governmental participant, is not relevant here. While the DOJ has brought criminal charges based on the same underlying conduct, it has not sought restitution in any of its cases. The COSI Settlement Agreement requires the COSI Defendants to serve CAFA notices on DOJ and any relevant states, providing them the opportunity to "raise any concerns that they have during the normal course of the class action settlement procedures." *Bellinghausen*, 306 F.R.D. at 258; Manifold Decl., Ex. 1, § 47; *see also Procedural Guidance for Class Action Settlements* § 10 (CAFA compliance). Counsel for COSI served the CAFA notices after preliminary approval was granted and no governmental entity has raised any concerns.

As the final *Churchill Village* factor, the Court considers the reaction of class members to the proposed settlement when determining the Settlement's fairness. *Churchill Vill.*, 361 F.3d at 575. "It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (collecting cases); *see also In re Fleet/Norstar Sec. Litig.*, 935 F. Supp. 99, 107 (D.R.I. 1996). This Court finds it significant there was no objection and only a <u>single</u> request for exclusion by certain DAPs, and finds that given the reach of the Notice and the number of claims received, this factor weighs heavily in favor of approval.

## C.   Rule 23(e) Factors Support Preliminary Approval

As noted above, in addition to the *Churchill Village* factors, Rule 23(e)(2) requires this Court consider whether (1) class representatives and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the settlement provides adequate relief for the class; and (4) the proposal "treats class members equitably relative to each other."

The Court finds that for the reasons discussed above and cited by the Court in its Class Order, that class representatives and their counsel have adequately

1    represented the class' interest; the COSI Settlement Agreement provides adequate
2    relief for the class; and the proposal treats Settlement Class Members equitably. The
3    Court previously appointed Wolf Haldenstein as EPP Class Counsel (ECF No. 1931
4    at 59) and now Court appoints them as Settlement Class Counsel and certifies the
5    Settlement Classes. *See* Fed. R. Civ. P. 23(g) (1).

6         In considering whether the Settlement resulted from arm's-length negotiations,
7    courts often find it useful to look at issues including (1) "attorneys' fees out of
8    proportion to class member compensation;" (2) an agreement by the defendant not to
9    contest class counsel's attorney's fees; and (3) an agreement to allow unawarded
10   attorneys' fees to revert to the defendants. *In re Volkswagen "Clean Diesal"Mktg.,*
11   *Sales Practices, & Prods. Liab. Litig.,* 895 F.3d 597, 611 & n.19 (9th Cir. 2018) (citing
12   *In re Bluetooth,* 654 F.3d at 947); *Procedural Guidance for Class Action Settlements*
13   §1(h).

14        Here, the Court finds it significant Settlement Class Counsel are <u>not</u> requesting
15   any attorney fees, just litigation costs and expenses, from the COSI Settlement
16   Agreement, as a result, these concerns are moot. The Court also notes that the
17   settlement – secured after multiple discussions with experienced counsel and a core
18   COSI executive present— resulted from hard-fought, arm's-length negotiations. *See*
19   Manifold Decl. ¶¶ 16-20. Given the circumstances, the Court finds the amount
20   recovered ($20 million) is more than adequate. Finally, the Court finds significant
21   that the EPPs secured one-third of the maximum possible recovery by the EPPs' own
22   expert calculation, the Court finds this provides substantial relief.

23        Finally, the Court also finds the COSI Settlement Agreement and the
24   distribution plan for that settlement treats all Class members equitably, and there are
25   no differences between the scope of relief between any Class members. Therefore,
26   the Court finds the COSI Settlement Agreement satisfies Rule 23(e).

27   **D.   EPPs' Claims Process is Efficient and Reasonable**
28        The Court must also assess the effectiveness of the proposed method of

distributing relief to the class including the method of processing class-member claims to determine if the relief is adequate. *See* Fed. R. Civ. P. 23(e) (2) (C) (ii).

The Court recognizes JND's extensive experience in processing claims especially for millions of claimants. The Court finds JND has the capacity to distribute efficiently monies to millions of Authorized Claimants. The Court, relying on JND's assessment, approves the proposed claim-processing methodologies as convenient for and generally favored by Settlement Class Members (a simple on line claim submission) which provides faster claim processing with fewer deficiencies. Distribution of relief is equally efficient and based on the claimant's preferred method of payment (PayPal or check). The Court thus finds the effectiveness of JND's claim processing methodologies favors final approval.

The Class Notices also informs Settlement Class Members that no cash distribution will be made if a claim is below $5.00. Notice Decl., Ex. F. It is typical to provide for a *de minimis* threshold so that the costs of administration are not out of proportion to the size of the claim payment. *Id.* A claims threshold provides an incentive for Settlement Class members to cash small checks. *Id.* In JND's experience, it is not usual to see *de minimis* thresholds even higher. *Id.*

Courts routinely approve *de minimis* thresholds for claims processing and distribution and consider threshold payments to be "accepted as a feature of class action distributions." *In re Dynamic Random Access Memory Antitrust Litig.*, 2013 U.S. Dist. LEXIS 188116, *340 (N.D. Cal 2013) (setting a $10 threshold). Here, the Court finds the $5.00 *de minimis* thresholds for claims processing and distribution appropriate and reasonable.

**E.    The Proposed Plan of Allocation is Fair, Reasonable, and Adequate**

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement; the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (citations omitted). When

1   allocating funds, "[i]t is reasonable to allocate the settlement funds to class members
2   based on the extent of their injuries or the strength of their claims on the merits." *In*
3   *re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045 (N.D. Cal. 2007) (citations
4   omitted) (approving securities class action settlement allocation on a "per-share
5   basis"); *Four in One Co. v. S.K. Foods, L.P.*, 2014 U.S. Dist. LEXIS 113084, at * 44
6   (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a *pro rata*
7   distribution of the net settlement fund based on verified claimants' volume of
8   qualifying purchases" as "fair, adequate, and reasonable").

9        All Settlement Class Members were eligible to make claims for cash from the
10   Distribution Fund by a Claim Form (either online, via telephone, or through the mail)
11   to receive funds. Notice Decl., ¶¶ 18, 22, 27. The Claim Form is simple and easy to
12   complete.  The Settlement Administrator JND will administer the entire process,
13   including validating the claims and calculating the Settlement Payment amounts in
14   accordance with the Settlement Agreement. *Id.*

15   **F.   Waiver of Attorney Fees Favors Final Approval of Settlement**

16        In considering the terms of any proposed award of attorneys' fees, including the
17   timing of payment, courts often find it useful to look at issues including (1) "attorneys'
18   fees out of proportion to class member compensation;" (2) an agreement by the
19   defendant not to contest class counsel's attorney's fees; and (3) an agreement to allow
20   unawarded attorneys' fees to revert to the defendants. *In re Volkswagen "Clean*
21   *Diesel" Mktg., Sales Practices, & Prods. Liab. Litig)*, 895 F.3d, 611 & n.19 (citing *In*
22   *re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d at 947); *Procedural Guidance for*
23   *Class Action Settlements* §1(h).  Here, the Court notes that significantly, Settlement
24   Class Counsel have <u>not</u> requested any attorney fees, just reimbursement of actual
25   litigation costs and expenses incurred to date. *See also* ECF 2673-7 ("Jt. Stip.") ¶¶ 5-
26   12 (*no* agreement between the Settling Parties for the reimbursement of or award of
27   attorneys' fees and costs "outside" of the COSI Settlement Agreement and
28   unilaterally waived any rights to seek attorneys' fees from the Settlement Funds or

ORDER                                                  CASE NO. 15-MD-2670-DMS (MDD)

1  from the COSI Defendants.).

2       The COSI Defendants have <u>no agreement</u> with Plaintiffs and Class Counsel for

3  the reimbursement or award of fees and costs other than as set forth in the Agreement.[9]

4       As discussed above, the lack of any proposed award of attorneys' fees from the

5  Distribution Fund and the identification of all agreements as required under Rule 23

6  (e) (2) (C)(iv) and 23(e)(3) further warrants final approval of the proposed settlement

7  as adequate.

**G.    The Court-Approved Notice Program Satisfies Due Process and Adequately Provided Notice to Class Members**

For all of the reasons discussed above, the Court finds class members were notified in a reasonable manner. Fed. R. Civ. P. 23(e)(1). The settlement class members received "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(b)(3). The Notice Program reached over 85% of potential class members via notice placements with the leading digital network (Google Display Network), the top social media site (Facebook), and a highly read consumer magazine (People). The Court finds Class Notice described "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). The Class Notice clearly explained the objection process to Settlement Class Members and informed them of their right to appear, to object, to opt-out or retain counsel. The Court finds due process was satisfied and the Notice Program provided adequate notice to settlement class members in a reasonable manner through all major and common forms of media.

**IV.  CONCLUSION**

In granting final approval of the COSI Settlement Agreement, the Court makes the following findings: (i) The COSI Settlement Agreement was negotiated at arm's length; (ii) Class Notice satisfies due process and provided the best notice practicable

---

[9] The Settling Parties have agreed to a cap of $5,000,000 for the costs of Class and Settlement Notice and claims administration as set forth in Paragraph 18.

to the Settlement Classes; and (iii) The COSI Settlement Agreement is fair, reasonable, and adequate, and in the best interests of the Settlement Classes.

For the foregoing reasons, the Court hereby finally approves the COSI Settlement Agreement, and ORDERS the following:

(1)   Settlement Classes are certified as follows:

All persons and entities who reside in one of the States described in paragraphs 113(b) to 113(gg) of the Fourth Consolidated Amended Complaint, specifically Arizona, Arkansas, California, the District of Columbia, Florida, Guam, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin, who indirectly purchased Packaged Tuna in cans or pouches smaller than forty ounces for end consumption and not for resale, produced by any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator during the period from June 1, 2011 to July 1, 2015.

And

All persons and entities who resided in [State, District, or Territory], who indirectly purchased Packaged Tuna in cans or pouches smaller than forty ounces for end consumption and not for resale, produced by any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator, during the period June 1, 2011 through July 1, 2015. The class excludes purchases of meal kits. Also excluded from the Class is the Court.

The Settlement Class definition is the same as set forth in the class certification decision (ECF No. 1931).

(2)   Wolf Haldenstein is appointed Settlement Class Counsel and Class Representatives identified in the Class Order (ECF No. 1931) are appointed as Settlement Class Representatives.

(3)   The Court approves the request for exclusion of the Opt-Out Entities. A list of the Opt-Out Entities is attached here as Exhibit A.

1    (4)    Final approval of the COSI Settlement is granted under the terms and

2    conditions set forth in the Settlement Agreement.

3

4    **IT IS SO ORDERED.**

5    Dated:    7-15-22

6    _____

     THE HONORABLE DANA M. SABRAW

7    UNITED STATES DISTRICT COURT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27    28438

28

ORDER                                    CASE NO. 15-MD-2670-DMS (MDD)

# EXHIBIT A



Direct Dial: (305) 381-7472
E-mail: wblechman@knpa.com

FOUR SEASONS TOWER
1441 BRICKELL AVENUE
SUITE 1100
MIAMI, FLORIDA 33131
TELEPHONE: 305.373.1000
FACSIMILE: 305.372.1861
WWW.KNPA.COM

April 18, 2022

***Via Certified Mail - R/R/R***

Tuna End Purchaser Settlement - EXCLUSIONS
c/o JND Legal Administration
Post Office Box 91442
Seattle, Washington  98111

Re:   ***In Re: Packaged Seafood Products Antitrust Litigation
No. 3:15-md-02670-JLS-MDD (S.D. Ca)***

Dear Sir or Madam:

We represent The Kroger Co. ("Kroger), Albertsons Companies, Inc. ("Albertsons"), Hy-Vee Inc. ("Hy-Vee"), H.E. Butt Grocery Company ("HEB"), Ahold U.S.A., Inc. ("Ahold"), Delhaize America, LLC ("Delhaize") (collectively the "Opt-Out Entities"), in the above-referenced matter. Although the Opt-Out Entities do not believe we are members of this Class, in an abundance of caution, we write to request our exclusion from it in the event that any Opt-Out Entity has any purchases that would qualify as part of this settlement.  The Opt-Out Entities are not aware of any such purchases, and to the extent that any such purchases do exist, the amount would be de minimis.

Accordingly, we hereby request to exclude ourselves from the COSI SETTLEMENT CLASS in the *In Re: Packaged Seafood Products Antitrust Litig.*, No. 15-md-2670 (DMS)(MDD).  This request applies to each of the Opt-Out Entities, and their respective current and former predecessors, successors, subsidiaries, affiliates which each controls (if any), partnerships in which each has a majority interest (if any), trade names, banners and divisions under which each does business, and assignors (if any) including all their subsidiaries and affiliates listed on Exhibits 1-5.

The Opt-Out Entities have previously filed separate, individual actions against the packaged seafood manufacturers which further evidences their intention to be excluded from the referenced COSI SETTLEMENT CLASS.

We do not know how the Opt-Out Entities are identified in the information sources being used by the Claims Administrator to identify firms in the referenced Settlement Class.  As such, we reserve the right to supplement the information in the Exhibits accompanying this letter, although we believe the "catch-all" language in this letter suitably and appropriately identifies

TEXAS OFFICE:
2630 EXPOSITION BLVD., SUITE 203A
AUSTIN, TEXAS 78703
TELEPHONE: 512.480.8023
FACSIMILE: 512.480.8037

WASHINGTON SATELLITE OFFICE:
1101 PENNSYLVANIA AVENUE, N.W., 6TH FLOOR
WASHINGTON, D.C. 20004-2436
TELEPHONE: 202.756.4373
FACSIMILE: 202.756.7323

**Tuna End Purchaser Settlement**                                                **April 18, 2022**
                                     **Page 2**
_____

all of the Opt-Out Entities and otherwise conforms to the request for information in the Notice. The Exhibits to this letter may be over-inclusive of corporate names in the interest of ensuring that a given Opt-Out Entity has excluded from the Chicken of the Sea/Thai Union Settlement Class all of its "family" of companies which might otherwise be a part of the Settlement Class.

Please accept this letter as our notice of exclusion from the referenced Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Please remove the foregoing Opt-Out Entities from any settlement class list that you have compiled or that you compile in the future regarding the COSI SETTLEMENT CLASS (as well as any litigation class that may be certified in the Litigation).

If you have any questions about this exclusion notice, please call us at the telephone number in the letterhead or write us at the address on this letterhead.

Thank you for your assistance.

Very truly yours,

William J. Blechman
*Counsel for the Opt-Out Entities*

WJB:mb

cc:    Betsy Manifold, Esquire
       John Roberti, Esquire
       Christopher Yates, Esquire
       Adam Paris, Esquire
       (with enclosures, via e-mail)

Enclosures

645357.1



**EXHIBIT 1**

*In re Packaged Seafood Antitrust Litigation*

<u>**Request to be Excluded from Chicken
of the Sea/Thai Union Settlement Class**</u>

<u>**THE KROGER CO.**</u>

| | |
|---|---|
| Kroger | Harris Teeter, Inc. |
| The Kroger Co. | Harris Teeter, LLC |
| Kroger Limited Partnership I | Healthy Options, Inc. |
| KRGP Inc. | Jay C Food Stores |
| Kroger Texas L.P. | Junior Food Stores of West Florida, Inc. |
| The Kroger Co. of Michigan | Kessel |
| Baker's | Kessel Food Markets, Inc. |
| City Market | King Soopers |
| Copps Food Center | Mariano's Fresh Market |
| Dillon | Metro Market |
| Dillon Companies, Inc. | Owen's |
| FMJ, Inc. | Pick 'n Save |
| Food 4 Less | Pay Less Super Markets |
| Food 4 Less Holdings, Inc. | QFC |
| Fred Meyer | Ralphs |
| Fred Meyer, Inc. | Ralphs Grocery Company |
| Fred Meyer Jewelers, Inc. | Roundy's Inc. |
| Fred Meyer Stores, Inc. | Ruler Foods |
| Fry's | Smith's |
| Gerbes | Smith's Food & Drug Centers, Inc. |
| Harris Teeter | |

**EXHIBIT 2**

*In re Packaged Seafood Antitrust Litigation*

**Request to be Excluded from Chicken
of the Sea/Thai Union Settlement Class**

**ALBERTSONS COMPANIES, INC.**

| | |
|---|---|
| Albertsons | Carr-Gottstein Foods Co. |
| Albertson's, Inc. | Dominick's |
| Albertsons LLC | Dominick's Finer Foods, LLC |
| Albertsons Companies LLC | Extreme Value |
| Albertsons Companies, Inc. | Extreme Value Centers |
| Acme Markets, Inc. | Genuardi' |
| American Stores Company | Genuardi's Family Markets LP |
| American Drug Stores Company | Jerseymaid Milk Products |
| Jewel Foods | Pak 'N Save Foods |
| Jewel Foods, Inc. | Pavilions |
| Jewel Food Stores | Pavilions Place |
| Lucerne Foods, Inc. | Randall's |
| New Albertson's Inc. | Randall's Food & Drugs LP |
| Shaw's Supermarkets, Inc. | Simon David |
| Star Market | The Vons Companies, Inc. |
| Safeway | Tom Thumb Food & Drugs |
| Safeway Inc. | United Supermarkets, LLC |
| Safeway Food & Drug | Vons |
| | Vons Grocery Company |

**EXHIBIT 3**

*In re Packaged Seafood Antitrust Litigation*

<u>**Request to be Excluded from Chicken
of the Sea/Thai Union Settlement Class**</u>

<u>**HY-VEE, INC.**</u>

Hy-Vee

Hy-Vee, Inc.

Perishable Distributors of Iowa, Ltd.

Packaged seafood purchases by Topco Associates LLC or Topco Associates, Inc. (collectively "Topco"), and any of their predecessors or affiliates whom either controls, that Topco purchased from one or more Defendants and their co-conspirators and ever sold to Hy-Vee.

**EXHIBIT 4**

*In re Packaged Seafood Antitrust Litigation*

<u>**Request to be Excluded from Chicken
of the Sea/Thai Union Settlement Class**</u>

<u>**H.E. BUTT GROCERY COMPANY**</u>

H-E-B

H.E. Butt Grocery Company

H.E. Butt Grocery Company L.P.

Central Market

**EXHIBIT 5**

*In re Packaged Seafood Antitrust Litigation*

**Request to be Excluded from Chicken
of the Sea/Thai Union Settlement Class**

**AHOLD U.S.A., INC. & DELHAIZE AMERICA LLC**

Ahold

Delhaize

Ahold Delhaize

Ahold Delhaize America Holding, Inc.

Ahold Delhaize USA, Inc.

Ahold USA, Inc.

Bottom Dollar Food Northeast, LLC

Delhaize America, LLC

Delhaize America Distribution, LLC

Food Lion, LLC

Giant Brands, LLC

Giant Food, LLC

Giant Food Stores, LLC

Retail Business Services, LLC

Retained Subsidiary One, LLC

FreshDirect LLC

Giant of Maryland, LLC

Giant Martin's

Hannaford Brothers Co.

Hannaford Supermarkets

Peapod, LLC

Stop & Shop Supermarket Co. LLC

Packaged seafood purchases by C&S Wholesalers Inc. ("C&S"), and any of its predecessors or affiliates whom it controls, that C&S purchased from one or more Defendants and their co-conspirators and ever sold to Ahold or Delhaize.