LATHAM & WATKINS LLP
  Alfred C. Pfeiffer (CA 120965)
  Christopher S. Yates (CA 161273)
  Belinda S Lee (CA 199635)
  Niall E. Lynch (CA 157959)
  Ashley M. Bauer (CA 231626)
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  415-391-0600
Facsimile:  415-395-8095
*al.pfeiffer@lw.com*
*chris.yates@lw.com*
*belinda.lee@lw.com*
*niall.lynch@lw.com*
*ashley.bauer@lw.com*

*Counsel for Defendants StarKist Co. and Dongwon Industries Co., Ltd.*

(Additional Counsel on Signature Pages)

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MDD<br><br>MDL No. 2670<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFFS' PRIVATE LABEL CLAIMS**<br><br>**UNREDACTED VERSION REFILED PURSUANT TO ECF NO. 2873 (ORIGINALLY FILED AT ECF NO. 2209)**<br><br>Special Briefing Schedule Ordered |
| This Document Relates To:<br><br>(1)  Direct Purchaser Plaintiffs<br>(2)  End Payer Plaintiffs<br>(3)  Commercial Food Preparer Plaintiffs<br>(4)  *Affiliated Foods, Inc. v. Tri-Union Seafoods LLC, et al.*, 3:15-cv-02787-JLS-MDD<br>(5)  *Associated Wholesale Grocers, Inc. v. Bumble Bee Foods LLC, et al.*, 3:18-cv-01014-JLS-MDD<br>(6)  *Winn-Dixie Stores, Inc. v. Bumble Bee Foods LLC, et al.*, 3:16-cv-00017-JLS-MDD<br>(7)  *W. Lee Flowers & Co., Inc. v. Bumble Bee Foods, LLC, et al.*, 3:16-cv-01226-JLS-MDD | **Hearing**:<br>Date:     March 18, 2020<br>Time:     9:00 a.m.<br>Place:    Courtroom 4D<br>Judge:    Hon. Janis L. Sammartino |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-DMS-MDD

# **TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................ 1

II.  ARGUMENT ............................................................................................. 1

 A.  The Burden Is on Plaintiffs to Prove Their Private Label
     Claims, and Not on Defendants to Disprove Them ............................ 1

 B.  Plaintiffs Have Not Come Forward with Any Direct or
     Circumstantial Evidence Demonstrating that Defendants
     Colluded on Private Label ................................................................. 2

  1. Plaintiffs Do Not Have Any Direct Evidence of a
     Conspiracy Involving Private Label ............................................. 3

  2. Plaintiffs Do Not Have Any Circumstantial
     Evidence of a Conspiracy Involving Private Label ................. 5

   a. Expert Testimony and Opinions ...................................... 5

   b. Witness Testimony ....................................................... 7

   c. Emails and Other Business Documents ......................... 8

 C.  Plaintiffs Do Not Have Constitutional Standing for Their
     Private Label Claims, so Those Claims Should Be
     Dismissed ....................................................................................... 9

 D.  Plaintiffs Also Lack Antitrust Standing for Private Label
     Claims ........................................................................................... 11

  1. Defendants' Guilty Pleas Do Not Establish
     Antitrust Injury .......................................................................... 11

  2. "Linkage" Arguments Do Not Establish Antitrust
     Injury ........................................................................................... 12

  3. Plaintiffs' Private Label Claims Derive from a
     Market Where They Cannot Establish a Restraint
     of Trade .................................................................................... 13

III. CONCLUSION .......................................................................................... 14

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.,*
836 F.3d 1171 (9th Cir. 2016) ................................................................ 11

*Alsco-Harvard Fraud Litig.,*
523 F. Supp. 790 (D.D.C. 1981) ......................................................... 5, 11

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.,*
190 F.3d 1051 (9th Cir. 1999) ........................................................ 13, 14

*Am. Needle, Inc. v. Nat'l Football League,*
560 U.S. 183 (2010) ............................................................................. 11

*Assoc. Gen. Contractors of Ca., Inc. v. Ca. State Council of
Carpenters,* 459 U.S. 519 (1983) ......................................................... 11

*Atl. Richfield Co. v. USA Petroleum Co.,*
495 U.S. 328 (1990) ............................................................................. 11

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................... 2

*Hollingsworth v. Perry,*
570 U.S. 693 (2013) ............................................................................. 10

*Holmes v. Securities Investor Protection Corp.,*
503 U.S. 258 (1992) ............................................................................. 12

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.,*
2013 WL 4536569 (C.D. Cal. Aug. 26, 2013) ...................................... 4

*In re Cathode Ray Tube (CRT) Antitrust Litig.,*
2016 WL 6246736 (N.D. Cal. Oct. 26, 2016) ................................ 11, 13

*In re Citric Acid Litig.,*
191 F.3d 1090 (9th Cir.1999) ........................................................... 2, 5

*In re Digital Music Antitrust Litig.,*
812 F. Supp. 2d 390 (S.D.N.Y. 2011) .................................................. 14

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

*In re Korean Ramen Antitrust Litig.*,
281 F. Supp. 3d 892 (N.D. Cal. 2017) ................................................................. 13

*In re Online DVD Rental Antitrust Litig.*,
2011 WL 1629663 (N.D. Cal. April 29, 2011) ......................................... 7, 12, 13

*In re Packaged Seafood Prods. Antitrust Litig.*,
2017 WL 35571 (S.D. Cal. Jan. 3, 2017) ............................................................. 10

*In re Packaged Seafood Prods. Antitrust Litig.*,
332 F.R.D. 308 (S.D. Cal. 2019) ............................................................................. 6

*In re Pool Prods. Distribution Mktg. Antitrust Litig.*,
158 F. Supp. 3d 544 (E.D. La. 2016) ...................................................................... 3

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ............................................................................................... 10

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ................................................................................................. 3

*Monsanto Co. v. Spray-Rite Serv. Corp.*,
465 U.S. 752 (1984) ............................................................................................. 2, 3

*Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc.*,
210 F.3d 1099 (9th Cir. 2000) ................................................................................. 2

*Norris v. Baxter Healthcare Corp.*,
397 F.3d 878 (10th Cir. 2005) ................................................................................. 7

*Or. Laborers—Emp'rs Health & Welfare Trust Fund v. Philip Morris
Inc.*, 185 F.3d 957 (9th Cir. 1999) ........................................................................ 12

*United States v. Am. Packing Corp.*,
113 F. Supp. 223 (D.N.J. 1953) .............................................................................. 4

*Theme Promotions, Inc. v. News Am. Mktg. FSI*,
546 F.3d 991 (9th Cir. 2008) ................................................................................. 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

## STATUTES

Antitrust Criminal Penalty Enhancement and Reform Act of 2004,
Pub. L. No. 108-237, 118 Stat. 661 (2004) ........................................................ 4

## RULES

Fed. R. Civ. P. 26 ............................................................................................................ 6

Fed. R. Civ. P. 32 ............................................................................................................ 7

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

## LIST OF CITATIONS AND ABBREVIATIONS

| NAME | ABBREVIATION | CITATION |
|---|---|---|
| **Parties** | | |
| Affiliated Foods Midwest Cooperative | AFMC | |
| Associated Wholesale Grocers, Inc. | AWG | |
| Bumble Bee Foods, LLC | Bumble Bee | |
| Commercial Food Preparer Plaintiffs | CFPs | |
| Tri-Union Seafoods LLC d/b/a Chicken of the Sea International | COSI | |
| (1) Bumble Bee; (2) COSI; (3) Del Monte; (4) DWI; and (5) StarKist | Defendants | |
| Del Monte Corporation | Del Monte | |
| Direct Purchaser Plaintiffs | DPPs | |
| Dongwon Industries Co., Ltd. | DWI | |
| End Payer Plaintiffs | EPPs | |
| W. Lee Flowers & Co., Inc. | Flowers | |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

| (1) AFMC; | Plaintiffs[1] | |
| (2) AWG; | | |
| (3) CFPs; | | |
| (4) DPPs; | | |
| (5) EPPs; | | |
| (6) Flowers; and | | |
| (7) Winn-Dixie Plaintiffs | | |
| StarKist Co. | StarKist | |
| Winn-Dixie Stores, Inc. and Bi-Lo Holdings, LLC | Winn-Dixie Plaintiffs | |
| **Motions & Oppositions** | | |
| Memorandum of Points and Authorities in Support of Defendants' Motion to Strike Declaration of Russell W. Mangum III, Ph.D. | Defs.' Mot. to Strike | Filed concurrently herewith |
| Memorandum of Points and Authorities in Support of Defendants' Motion for Partial Summary Judgment on Plaintiffs' Private Label Claims | Motion or Mot. | ECF No. 2015 |

[1] This Motion was originally directed to these Plaintiffs, as well as certain other DAP Plaintiffs, who had active claims against Defendant Bumble Bee, but whose claims against Defendants COSI, Del Monte, StarKist, and DWI had been resolved. In the time since Defendants filed this Motion, Bumble Bee has subsequently filed for bankruptcy; cases against it are stayed, and it does not join in this Reply. To be clear, the undersigned Defendants do not direct this Reply against those other DAP Plaintiffs whose claims against them have been resolved.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vi

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

| Plaintiffs' Joint Opposition to Defendants' Motion for Summary Judgment on Private Label Claims | Opposition or Opp'n | ECF No. 2110 |
| --- | --- | --- |
| **Experts, Expert Reports, & Expert Depositions** | | |
| Deposition of Charles L. Alford, III, Ph.D., March 19, 2019 | Alford Dep. | Kapp Decl. Ex. 2[2] |
| Deposition of Andres V. Lerner, May 30, 2019 | Lerner Dep. | Kapp Decl. Ex. 1 |
| Expert Report of Dr. Andres V. Lerner, May 10, 2019 | Lerner Report | Lee Decl. Ex. 2[3] |
| Deposition of Russell W. Mangum, III, Ph.D., March 22, 2019 | Mangum Merits Dep. | Kapp Decl. Ex. 3 |

---

[2] All references to the "Kapp Decl." are to the concurrently filed Declaration of Gabriella Kapp in Support of Defendants' Reply Memorandum of Points and Authorities in Further Support of Defendants' Motion for Partial Summary Judgment on Plaintiffs' Private Label Claims.

[3] All references to the "Lee Decl." are to the previously filed Declaration of Belinda S Lee in Support of Defendants' Motion for Partial Summary Judgment on Plaintiffs' Private Label Claims. *See* ECF No. 2015-2.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

vii

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

| (1) Dr. Russell W. Mangum III, retained by DPPs;<br><br>(2) Dr. David L. Sunding, retained by EPPs;<br><br>(3) Dr. Michael A. Williams, retained by CFPs;<br><br>(4) Dr. Colin A. Carter, retained by AWG/AFMC;<br><br>(5) Dr. Gareth Macartney, retained by Winn-Dixie Plaintiffs; and<br><br>(6) Dr. Charles L. Alford III, retained by Flowers | Plaintiffs' Economists | |
| **Statutes** | | |
| Antitrust Criminal Penalty Enhancement and Reform Act of 2004, Pub. L. No. 108-237, 118 Stat. 661 (2004) | ACPERA | |
| **Other Documents & Abbreviations** | | |
| National brand tuna products | Branded | |
| Defendant Bumble Bee Foods, LLC's Corrected Fifth Supplemental Objections and Responses to Plaintiffs' Second Set of Interrogatories During the Limited Discovery Stay Period – Interrogatory No. 1 | Bumble Bee Interrogatory Response | Lee Decl. Ex. 27 |
| D.N. Gujarati, Basic Econometrics, McGraw-Hill (4th Ed. 2004) | Gujarati Textbook | Kapp Decl. Ex. 5 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

viii

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

| Declaration of Daniel Hofmeister in Support of Defendants' Motions for Partial Summary Judgment, September 19, 2019 | Hofmeister Decl. | Lee Decl. Ex. 85 |
|---|---|---|
| Examination of Christopher Lischewski, March 17, 2015 | Lischewski CID Dep. | Kapp Decl. Ex. 4 |
| Declaration of Andras Mecs in Support of Defendants' Motions for Partial Summary Judgment, September 18, 2019 | Mecs Decl. | Lee Decl. Ex. 83 |
| Declaration of Darren Parsons in Support of Defendants' Motion for Partial Summary Judgment on Plaintiffs' Private Label Claims, September 19, 2019 | Parsons Decl. | Lee Decl. Ex. 84 |
| Non-branded tuna products | Private Label | |
| Order Granting Joint Scheduling Proposal, November 20, 2018 | Scheduling Order | ECF No. 1699 |

# I.   INTRODUCTION

With no evidence of a conspiracy involving Private Label, Plaintiffs turn to burden shifting arguments that are incorrect as a matter of law, unsupported interpretations and misleading characterizations of the evidence, and a misapplication of bedrock standing principles.  *First*, Plaintiffs try to flip the burden onto Defendants to come forward with evidence *disproving* Plaintiffs' allegations of a conspiracy involving Private Label.  This is contrary to fundamental summary judgment principles.  *Second*, Plaintiffs offer improper interpretations of the guilty pleas, unfounded reliance on expert testimony, and irrelevant or out-of-context evidence in support of their Private Label conspiracy allegations.  This evidence does not satisfy *their burden* of identifying a genuine dispute of material fact.  *Third*, and finally, Plaintiffs lack both constitutional and antitrust standing to bring Private Label claims because any supracompetitive prices from Defendants' admitted agreements concerning Branded tuna cannot be used to establish standing for Private Label claims.

In short, Plaintiffs' Opposition boils down to the argument that because some relationship between Branded and Private Label exists, "[i]t stands to reason that Defendants considered and included Private Label tuna in their pricing agreements[.]"  Opp'n at 8.  Such speculation is insufficient to survive Defendants' Motion.  That is especially true where, as here, the undisputed evidence is that Private Label is not on the National Price Lists that were the subject of the Defendants' agreements and Private Label prices are set through individual negotiations between a Defendant and a retailer.  Mot. at 2-6.

# II.   ARGUMENT

## A.   The Burden Is on Plaintiffs to Prove Their Private Label Claims, and Not on Defendants to Disprove Them

Plaintiffs' Opposition is based on a fundamentally incorrect attempt to shift the burden onto Defendants to come forward with affirmative evidence *disproving*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1   Plaintiffs' allegations of a conspiracy involving Private Label.  *See, e.g.,* Opp'n at

2   8 ("Defendants can point to no document created during the conspiracy and not for

3   litigation purposes that limits the conspiracy to solely Branded products.").  But,

4   that is not how summary judgment works.  It is Plaintiffs who bear the burden of

5   responding with evidence to establish the existence of a conspiracy involving

6   Private Label or, at the very least, identify a genuine dispute of material fact.

7       Defendants satisfied their initial burden at summary judgment by showing

8   that there is no direct or circumstantial evidence to support Plaintiffs' Private Label

9   claims.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); Mot. at 2, 8-15.

10   And Defendants also came forward with affirmative evidence, including

11   declarations from knowledgeable employees, demonstrating that Branded and

12   Private Label tuna are distinct businesses subject to different pricing mechanisms

13   and market dynamics.  Mot. at 2-7.  Plaintiffs' Opposition is notably silent in

14   response to these declarations.  Taken together, this evidence shows that Plaintiffs

15   "do[] not have enough evidence of an essential element of" their Private Label

16   claims—i.e., the existence of an agreement concerning Private Label.  *See Nissan*

17   *Fire & Marine Ins. Co. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1106 (9th Cir.

18   2000).

19       To defeat Defendants' Motion, Plaintiffs must come forward with

20   affirmative evidence of such an agreement.  *In re Citric Acid Litig.*, 191 F.3d 1090,

21   1093 (9th Cir. 1999) ("On a claim of concerted price fixing, the antitrust plaintiff

22   must present evidence sufficient to carry its burden that there was such an

23   agreement.") (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 763

24   (1984)).  Plaintiffs have not carried this burden.

25      **B.**   **Plaintiffs Have Not Come Forward with Any Direct or**
**Circumstantial Evidence Demonstrating that Defendants**

26          **Colluded on Private Label**

27       Even after years of discovery—in which Defendants produced millions of

28   pages of documents, sat for hundreds of hours of depositions, and provided

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

thorough and comprehensive written responses to interrogatories—Plaintiffs still cannot answer the most basic questions about an alleged Private Label conspiracy: What were the terms of the Private Label agreement?  Which entities participated? When did the Private Label agreement start, and when did it end?  The lack of any evidence of an agreement involving Private Label is reflected in the documents, witness testimony, and other evidence Plaintiffs cite in their Opposition—none of which "tends to exclude the possibility" that Defendants acted independently with respect to their Private Label businesses.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986) (quoting *Monsanto*, 465 U.S. at 764)). Plaintiffs have thus failed to satisfy their evidentiary burden at summary judgment.

**1.    Plaintiffs Do Not Have Any Direct Evidence of a Conspiracy Involving Private Label**

Plaintiffs' Opposition does not even try to argue there is direct evidence of a conspiracy encompassing Private Label.  *See In re Pool Prods. Distribution Mktg. Antitrust Litig.*, 158 F. Supp. 3d 544, 551 (E.D. La. 2016) ("[D]irect evidence is tantamount to an acknowledge of guilt.").  And the only direct evidence in this case that describes Defendants' conspiratorial agreements—Defendants' interrogatory responses and guilty pleas-undermines Plaintiffs' Private Label claims.  Certain are silent on the question of Branded versus Private Label while others expressly limit any admissions to Branded tuna.  *See* Mot. at 8-13.  Either way, none of it directly implicates Private Label.

*(1)  Plaintiffs are incorrect-Bumble Bee's admissions relate only to Branded tuna.*  Plaintiffs attempt to conjure a conspiracy involving Private Label by arguing that Bumble Bee's admission to coordinating certain list price increases relating to "canned tuna" should be read to include Private Label.  Opp'n at 6-7. But Bumble Bee's actual Interrogatory Response shows that Plaintiffs' interpretation cannot be true.  Bumble Bee admitted to agreements concerning its: (1) National Price Lists, which contain list prices for Branded tuna only; and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1   (2) Promotional Guidance, which contains net pricing guidance for Branded tuna

2   only.  *See* Mot. at 2-7 (explaining National Price Lists and Promotional Guidance

3   relate solely to Branded tuna); Lee Decl. Ex. 27 (Bumble Bee Interrogatory

4   Response), at 5-7.  Bumble Bee's admissions plainly relate to Branded tuna only

5   and cannot be read to include Private Label.

6         *(2)  Plaintiffs cannot just ignore that COSI's admissions relate only to*

7   *Branded tuna.*  Plaintiffs try to discount ACPERA cooperator COSI's sworn

8   interrogatory responses, which *expressly* limit the agreements to Branded tuna, by

9   describing those admissions as "litigation documents crafted to serve the interests

10  of the particular Defendant or Defendants."  Opp'n at 7.  But, in order to receive

11  the full protections of ACPERA, COSI must first provide "satisfactory

12  cooperation" to Plaintiffs in this case—which includes "a full account" of all

13  relevant facts.  ACPERA, at § 213(a)-(b).[4]  Regardless, to the extent Plaintiffs seek

14  to rely upon COSI's admissions to directly establish the existence of Defendants'

15  conspiracy, they must take these admissions at face value.  They are, at most,

16  direct evidence of agreements on Branded tuna, and nothing more.

17        *(3) General terms are not direct evidence of a Private Label conspiracy.*

18  Lastly, Plaintiffs ignore the law by arguing that, because Defendants' guilty pleas

19  do not expressly exclude Private Label, general references to "packaged seafood,"

20  "shelf-stable tuna," and "canned tuna" in those documents should be read to

21  include Private Label.  Opp'n at 5-6.  As explained in Defendants' Motion, a guilty

22  plea must be "construed strictly" and only "serves as an admission of the necessary

23  elements" of an antitrust violation, nothing more.  Mot. at 11-12 (citing *United*

24

---

25  [4] The recourse for failing to comply with these requirements is severe—forfeiture
    of limited civil liability that ACPERA offers, including protection from joint and
26  several liability and treble damages.  *See In re Aftermarket Auto. Lighting Prod.
    Antitrust Litig.*, No. 09 MDL 2007-GW (PJW), 2013 WL 4536569, at *5-6 (C.D.
27  Cal. Aug. 26, 2013) (granting motion "for an order that Defendants forfeited the
    benefits of limited civil liability under ACPERA" due to failure to provide
28  "satisfactory cooperation") (internal quotation marks omitted)).

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1  *States v. Am. Packing Corp.*, 113 F. Supp. 223, 225 (D.N.J. 1953); *Alsco-Harvard*

2  *Fraud Litig.*, 523 F. Supp. 790, 804 (D.D.C. 1981)).  Instead of addressing these

3  cases head-on, Plaintiffs ignore them, and do not cite a single authority supporting

4  their expansive interpretation.  *See* Mot. at 10-13; Opp'n at 5-6.  Put simply,

5  Plaintiffs ask this Court to interpret the guilty pleas in ways that are contrary to

6  both the law and the facts of the case.  The Court should decline Plaintiffs'

7  invitation to misconstrue Defendants' admissions, none of which provide a basis to

8  deny summary judgment on their Private Label claims.

9  **2.    Plaintiffs Do Not Have Any Circumstantial Evidence of a**
10  **Conspiracy Involving Private Label**

11      Plaintiffs' Opposition also cites no circumstantial evidence that Defendants'

12  conspiracy covered Private Label (and no specific facts to exclude the possibility

13  of independent action).  *See Citric Acid*, 191 F.3d at 1094 (holding that, when

14  basing their claims solely on circumstantial evidence, antitrust plaintiffs "must

15  present evidence 'that tends to exclude the possibility' that the alleged conspirators

16  acted independently.") (internal quotation marks omitted)).  Instead, Plaintiffs put

17  forward misunderstandings of Defendants' experts' econometric modeling, an

18  unfounded reliance on their own economists' opinions, irrelevant and out-of-

19  context witness testimony, and misleading characterizations of selected documents.

20  This does not meet their burden.

21      **a.    Expert Testimony and Opinions**

22      No expert testimony establishes the existence of a conspiracy that included

23  or affected Private Label.  Plaintiffs argue that because Defendants' experts

24  designed models examining both Branded and Private Label, Defendants implicitly

25  admit that these products were part of a single conspiracy.  Opp'n at 2, 16-18.

26  However, this argument ignores the fact that Defendants' Economists were

27  charged with designing econometric models that responded to Plaintiffs' models

28  (which included both Branded and Private Label) and *assumed* all of Plaintiffs'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1  allegations to be true.  *See, e.g.*, Kapp Decl. Ex. 1 (Lerner Dep.), at 70:12-71:5;

2  Lee Decl. Ex. 2 (Lerner Report), at ¶¶ 9-10, 340-67.  These models say nothing

3  about how Defendants or their experts view the relationship between Branded and

4  Private Label—much less about the existence of a conspiracy on Private Label.

5       Plaintiffs' Economists' models also do not establish that Private Label was

6  part of the alleged conspiracy.[5]  According to Plaintiffs, these models show prices

7  for "shelf stable tuna fish" were higher during the various alleged conspiracy

8  periods than they would have been in the absence of anticompetitive conduct.

9  Opp'n at 17, 29.  Plaintiffs effectively admit their economists pooled Private Label

10 and Branded products, so including Private Label in the alleged conspiracy was by

11 Plaintiffs' Economists' *design*—and not the results of econometric testing.[6]

12      The correlation coefficient analysis submitted by Dr. Macartney,

13 Winn-Dixie Plaintiffs' economist, also is not evidence of the existence of a

14 conspiracy to fix Private Label prices.  Dr. Macartney's analysis shows only that

15 Private Label and Branded prices were correlated.  Mot. at 15-17.  As this Court

16 held at class certification, correlation is not proof of causation.  *In re Packaged*

17 *Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308, 322 (S.D. Cal. 2019).  Thus, Dr.

18 Macartney's correlation analysis cannot prove Defendants' Branded conduct

---

19 [5] Several of Plaintiffs' Economists admit that they simply accepted Plaintiffs'
20 allegations of conspiracy as true, and, thus, offer no opinions about the actual
   scope of the alleged conspiracy, including whether it encompassed Private Label.
21 *See, e.g.*, Kapp Decl. Ex. 3 (Mangum Merits Dep.), at 42:7-44:13; Ex. 2 (Alford
22 Dep.), 61:21-63:22.

23 [6] Plaintiffs also rely on an untimely supplemental expert report from DPPs'
   economist Dr. Mangum, which was not disclosed to Defendants until 8 months
24 after the deadline for Plaintiffs to provide their Rule 26 expert designations.  *See*
   Stein Decl., Ex. 240 (filed on November 7, 2019); Scheduling Order, at ¶ 2 (setting
25 February 15, 2019 deadline for Plaintiffs' opening expert reports).  The Mangum
   Supplemental Report contains wholly *new* opinions concerning the purported
26 impact of the alleged conspiracy on Private Label and, thus, violates the
   requirement that experts make "a complete statement of all opinions the witness
27 will express and the basis and reason for them" in their opening reports.  Fed. R.
   Civ. P. 26(a).  The Mangum Supplemental Report should be stricken.  *See* Defs.'
28 Mot. to Strike, filed concurrently.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1  caused an increase in Private Label prices, especially given that Private Label and

2  Branded tuna share common costs.  *See Norris v. Baxter Healthcare Corp.*, 397

3  F.3d 878, 885 (10th Cir. 2005) ("[C]orrelation does not equal causation."); Kapp

4  Decl. Ex. 5 (Gujarati Textbook), at 23 ("[A] statistical relationship in itself cannot

5  logically imply causation.").  Dr. Macartney's correlation analysis does not save

6  Plaintiffs' Private Label claims.

### b.   Witness Testimony

8       None of the witness testimony identified by Plaintiffs supports the existence

9  of a conspiracy involving Private Label.  Much of it merely suggests that Private

10  Label and Branded tuna competed with each other.  *See* Opp'n 8-9.  Such

11  competition does not demonstrate that those products were bound up in the same

12  conspiracy, much less that Plaintiffs suffered an injury connected to Private Label.

13  *See In re Online DVD Rental Antitrust Litig.*, No. 09-2029-PJH, 2011 WL

14  1629663, at *9 (N.D. Cal. April 29, 2011) (granting summary judgment where

15  there was no direct causal link between collusive pricing of product by one

16  competitor with non-collusive pricing of a similar product by another competitor).

17       To support their argument that the prices of Branded and Private Label were

18  "inextricably linked," Plaintiffs rely on out-of-context excerpts from a Civil

19  Investigative Demand deposition that the then-CEO of Bumble Bee Chris

20  Lischewski gave in connection with an ultimately failed merger between Bumble

21  Bee and COSI.[7]  Opp'n at 9-11.  Plaintiffs' selective citations are misleading.

22  What Mr. Lischewski actually described is the undisputed fact that the lowest

23  priced tuna product—Private Label—naturally restricts how high Branded

24  products can be priced.  *See* Kapp Decl. Ex. 4 (Lischewski CID Dep.), at 58:21-

25  61:4; 198:5-200:19.  He mentioned several reasons for this, including that many

---

[7] Plaintiffs may not rely on this deposition as evidence supporting their Opposition because certain Defendants, including StarKist, were not represented at the deposition and received no reasonable notice of it.  Fed. R. Civ. P. 32(a)(1)(A).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1   Branded customers are highly knowledgeable about prevailing raw fish prices

2   because they control raw fish procurement for their own Private Label products

3   (Kapp Decl. Ex. 4 (Lischewski CID Dep.), at 198:11-200:14) and that consumers

4   are only willing to pay up to a certain premium for Branded products (*id.* at 34:3-

5   35:3; 60:4-62:16; 81:20-82:1).  Mr. Lischewski did not testify that Defendants "set

6   Private Label and Branded pricing together."  Opp'n at 11.

7               **c.     Emails and Other Business Documents**

8         Plaintiffs have not come forward with emails or other documents sufficient

9   to meet their burden of showing the existence of a conspiracy involving Private

10  Label.  Instead, they point to a handful of documents that, as Plaintiffs put it,

11  "suggest that the conspiracy was not limited to Branded packaged tuna products."

12  Opp'n at 8.  For example, Plaintiffs cite a November 2010 internal StarKist email

13  describing a call in which Bumble Bee's Scott Cameron informed StarKist's

14  Chunk Handford that Bumble Bee was "waving the white flag on light meat."  *Id.*

15  This email does not mention Private Label.  Yet, Plaintiffs argue that because

16  "there was no suggestion that this communication was limited to only Branded

17  products" it must relate to Private Label.  *Id.*  This is another attempt to improperly

18  flip the burden to Defendants to disprove the existence of a conspiracy involving

19  Private Label.  Speculation and unfounded inferences do not satisfy Plaintiffs'

20  burden, especially in light of the undisputed evidence regarding the differences

21  between the Private Label and Branded businesses of each Defendant.  Mot. at 2-7.

22        The documents Plaintiffs rely on also do not show that pricing between

23  Private Label and Branded was directly linked.  This includes the emails Plaintiffs

24  point to in support of their argument that Private Label and Branded prices were

25  released to customers "in tandem."[8]  Opp'n at 13, 15.  The simple fact that Branded

26  _____

27  [8] Plaintiffs' suggestion that Defendants maintained National List Prices for Private
    Label products is wrong.  *See* Opp'n at 12-13.  The documents Plaintiffs rely on in

28  support of this argument are nothing more than internal lists used by Defendants'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1   National List Prices and Private Label prices were communicated to customers at

2   or around the same time says nothing about whether those prices were both

3   affected by anticompetitive conduct.  And the facts suggest otherwise:  Private

4   Label prices, unlike Branded National List Prices, were the product of separate and

5   individual negotiations with each customer.  *See* Mot. at 2-6.  Plaintiffs' other

6   documentary evidence about a pricing "gap" between Branded and Private Label

7   also comes up short.  *See e.g.*, Opp'n at 12 (citing Stein Decl., Exs. 22-25).[9]  This

8   argument relies on a number of inferences for which there is no evidence,

9   including that (1) Defendants *in fact* priced their Branded products higher than

10  Private Label at specific percentages, and (2) Plaintiffs *in fact* paid those prices.

11       As demonstrated, Plaintiffs have not come forward with any evidence of a

12  conspiracy involving Private Label.  Thus, Plaintiffs have not satisfied their

13  burden, and, consequently, their Private Label claims should be dismissed.

14       **C.   Plaintiffs Do Not Have Constitutional Standing for Their Private
15             Label Claims, so Those Claims Should Be Dismissed**

16       Having failed to identify evidence of any agreement to fix prices for Private

17  Label, Plaintiffs' standing arguments rest on no more than theoretical connections

18  between conduct in the Branded tuna market and prices in the Private Label

19  ───────────────────

20  personnel to track the separate and agreed upon prices for each individual Private
    Label customer.  *See e.g.*, Opp'n at 12-13 (citing Stein Decl., Exs. 27-28).

21  Plaintiffs also misrepresent testimony from StarKist employee Andras Mecs,
    claiming that he testified StarKist "has an 'ancillary price list' for 'private label' –

22  including one which actually kept track of the price of their Branded Tuna products
    relative to the discount baked into their Private Label sales."  Opp'n at 12.  Mr.

23  Mecs actually said *nothing* about a list tracking the relationship between Branded
    and Private Label pricing.  And he was unequivocal on the issue of whether

24  StarKist maintains National Price Lists for Private Label:  "Q. Apart from list
    prices and net prices, are there any other price lists that StarKist uses? A. No. Not

25  in terms of a national price list."  Stein Decl. Ex. 203, at 113:20-23.

26  [9] Plaintiffs again mischaracterize the evidence by suggesting that Bumble Bee's
    Interrogatory Response identifies Chuck Handford as a "key person" at StarKist

27  who carried out the conspiracy.  Opp'n at 12.  Nowhere did Bumble Bee ever
    describe Mr. Handford as a "key person" or "key player."  *See* Lee Decl. Ex. 27

28  (Bumble Bee Interrogatory Response), at 5-7.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1   market.  This argument fails because "linkages," price correlations, and the

2   substitutability of Branded and Private Label products do not prove an injury-in-

3   fact that is fairly traceable to Defendants' conduct, as required by Article III of the

4   Constitution.  *See Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013) (citing *Lujan*

5   *v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  As stated in the Motion,

6   there is no evidence that enables this Court to trace the purported effect of conduct

7   related to Branded tuna to an injurious effect on Private Label.  *See* Mot. at 18.

8        Defendants' Motion highlighted this Court's order dismissing Plaintiffs'

9   claims of a conspiracy encompassing all packaged seafood products to show that

10  allegations of a conspiracy concerning one product (Branded) are insufficient to

11  establish Article III standing for conspiracy claims involving other products

12  (Private Label).  Mot. at 18-19 (citing *In re Packaged Seafood Prods. Antitrust*

13  *Litig.*, Case No. 15-MD-2670 JLS (MDD), 2017 WL 35571, at *6-7 (S.D. Cal. Jan

14  3, 2017)).  Plaintiffs respond by arguing that their Private Label claims are

15  different than their original all-encompassing packaged seafood product claims

16  because they now supposedly have evidence that Branded and Private Label prices

17  are "intimately connected by Defendants' deliberate pricing initiatives."  Opp'n at

18  21.  But, as discussed in Section II.B.2, the expert opinions, witness testimony, and

19  documents upon which Plaintiffs rely establish no such thing.  And, even if they

20  did, Plaintiffs still would not have Article III standing for their Private Label

21  claims because, without evidence that they were injured by a conspiracy

22  encompassing Private Label, Plaintiffs fail to establish injury-in-fact.

23       Plaintiffs' Opposition also claims that Plaintiffs can prove injury-in-fact by

24  demonstrating that "Private Label products were subject to an anticompetitive

25  effect as a result of Defendants['] conspiracy."  Opp'n at 21.  But, the notion of

26  "umbrella damages" cannot save Plaintiffs.  According to Plaintiffs, the "umbrella

27  effect" supposedly explains why Private Label prices increased as Branded tuna

28  prices increased:  prices may increase for substitute goods irrespective of whether

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1   they were a target of the conspiracy. Opp'n at 20. But this misses the point. The
2   question is not whether an abstract pricing relationship exists between Branded and
3   Private Label. Rather, the relevant question is whether alleged overcharges on
4   purchases of Private Label were the direct and proximate result of Defendants'
5   unlawful acts. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, Case No. C-07-
6   5944-JST, 2016 WL 6246736, at *3 n.3 (N.D. Cal. Oct. 26, 2016) (citing *Atl.*
7   *Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 334-46 (1990)). Plaintiffs
8   presented no evidence that would allow the Court to answer this question
9   affirmatively and the mere existence of some relationship between Branded tuna
10  and Private Label prices is insufficient. Plaintiffs cannot establish constitutional
11  standing, so their Private Label claims fail as a matter of law.

12      **D.    Plaintiffs Also Lack Antitrust Standing for Private Label Claims**

13      Plaintiffs also lack antitrust standing because their Private Label claims
14  (1) derive from a market in which they cannot establish any restraint of trade; (2) at
15  best, are indirectly related to Defendants' conduct; and (3) are based on a
16  speculative measure of harm. *See Assoc. Gen. Contractors of Ca., Inc. v. Ca. State*
17  *Council of Carpenters*, 459 U.S. 519, 535, 545-46 (1983).

18      **1.    Defendants' Guilty Pleas Do Not Establish Antitrust Injury**

19      Defendants' guilty pleas do not establish Plaintiffs' antitrust standing. Mot.
20  at 10-13. In response, Plaintiffs argue the guilty pleas *include* Private Label
21  because they do not expressly *exclude* it. Opp'n at 23. But as discussed in Section
22  II.B.1 above, Plaintiffs cannot use Defendants' guilty pleas to establish anything
23  more than the "necessary elements" of a Sherman Act claim. *Alsco-Harvard*, 523
24  F. Supp. at 804. Here, the plea agreements only prove "(1) the existence of an
25  agreement, and (2) that the agreement was in unreasonable restraint of trade."
26  *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 836 F.3d 1171, 1178 (9th Cir. 2016)
27  (citing *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 189-90 (2010)).
28  Defendants' guilty pleas do not establish which products were affected, much less

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1    Plaintiffs' antitrust injury—a required element of their Private Label claims.

2                    **2.      "Linkage" Arguments Do Not Establish Antitrust Injury**

3              Plaintiffs' argument that they have established injury for Private Label

4    claims because Private Label bears some relationship to Branded tuna fails because

5    antitrust injury requires a "*direct relation* between the injury asserted and the

6    injurious conduct alleged." *Or. Laborers—Emp'rs Health & Welfare Trust Fund*

7    *v. Philip Morris Inc.*, 185 F.3d 957, 963 (9th Cir. 1999) (quoting *Holmes v.*

8    *Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992)).  Antitrust injury is

9    not established if the harm is merely "derivative" or "secondary, consequential, or

10   remote." *Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1004 (9th

11   Cir. 2008) (internal quotation marks omitted)).  The undisputed record is that

12   Private Label and Branded products are subject to different market dynamics,

13   making Plaintiffs' "linkage" argument untenable.  Mot. at 2-7.[10]  Nor do Plaintiffs

14   dispute that there are many more suppliers in the Private Label segment, most of

15   which do not operate in the Branded category, who would undercut any Private

16   Label price increase that is not purely a function of current and projected costs.

17   Lee Decl. Ex. 83 (Mecs Decl.), at ¶¶ 34-35, 39-41; Ex. 85 (Hofmeister Decl.), at

18   ¶¶ 23, 26, 28, 30, 32-33; Ex. 84 (Parsons Decl.), at ¶¶ 14-17.

19             At most, Plaintiffs can point to evidence suggesting that pricing for Private

20   Label increased alongside Branded tuna.  *See* Opp'n at 11-13.  That is unsurprising

21   and insufficient because both share the same input costs, *see* Motion at 5, and does

22   not meet Plaintiffs' burden at summary judgment.  *See Online DVD Rental*, 2011

23   WL 1629663, at *9 (granting summary judgment in favor of defendants on the

24   issue of antitrust injury because "there is nothing to indicate that Blockbuster

25   

26   [10] Indeed, Plaintiffs do not object nor otherwise attempt to undermine the evidence
27   that Private Label and Branded tuna are subject to different supply and demand
     forces.  *See* Lee Decl. Ex. 83 (Mecs Decl.), at ¶¶ 28-42; Ex. 85 (Hofmeister Decl.),
28   at ¶¶ 15-33; Ex. 84 (Parsons Decl.), at ¶¶ 2-17.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

pricing . . . was in any way *directly influenced or impacted* by Netflix's alleged anticompetitive conduct.") (emphasis added).  Plaintiffs identify no evidence that Private Label prices were "*directly* influenced or impacted" by anticompetitive conduct in the Branded category.[11]  *Online DVD Rental*, 2011 WL 1629663, at *9 (emphasis added).

Plaintiffs' reliance on *In re Korean Ramen Antitrust Litigation*, 281 F. Supp. 3d 892 (N.D. Cal. 2017) is misplaced.  *See* Opp'n at 24.  There, the court found that plaintiffs had presented "significant evidence showing *direct impact* and linkage between the pricing of domestic Korean product and Korean-produced exported product."  *Korean Ramen*, 281 F. Supp. at 929 (emphasis added). Plaintiffs have not presented any such direct impact evidence here.  Nor does *CRT* support their antitrust standing argument.  *See* Opp'n at 25.  Though the court in *CRT* allowed plaintiffs to maintain a price-ladder theory of damages, 2016 WL 6246736, at *5, Plaintiffs here have not identified any price-ladder relationship between Branded and Private Label products.  Neither Plaintiffs nor their experts advance this theory, much less support it with evidence.  And, for good reason. The undisputed evidence proves that there is none.  *See, e.g.*, Lee Decl. Ex. 83 (Mecs Decl.), at ¶¶ 38-39.

### 3.    Plaintiffs' Private Label Claims Derive from a Market Where They Cannot Establish a Restraint of Trade

Finally, Plaintiffs lack antitrust standing because their Private Label purchases occurred in a market that was not restrained.  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1057 (9th Cir. 1999).  Plaintiffs are wrong that "market participant" arguments are "routinely rejected."  Opp'n at 25.  The Ninth Circuit has made clear that "[p]arties whose injuries, though flowing from that

---

[11] As discussed in Section II.B.2.c, Plaintiffs cannot rely on their evidence of a price "gap" between Branded and Private Label because their argument relies on a number of additional unsupported inferences for which Plaintiffs have no evidence.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1  which makes the defendant's conduct unlawful, are experienced in another market

2  do not suffer antitrust injury." *Am. Ad Mgmt.*, 190 F.3d at 1057.  There is a

3  "narrow exception" to this general rule "for parties whose injuries are 'inextricably

4  intertwined' with the injuries of market participants." *Id.* at 1057 n.5 (citations

5  omitted).  Plaintiffs' Private Label claims come nowhere near this narrow

6  exception.  Although the two categories of goods share common inputs (*i.e.*, raw

7  fish), Branded and Private Label are subject to different supply and demand forces.

8   A few examples:  (1) there are many more competitors in the Private Label

9  category; (2) Private Label customers make purchasing decisions based on price

10  (as opposed to brand equity); and (3) Private Label prices are generally set through

11  specific bids that Defendants submit in response to a particular customer's

12  invitation.[12]  *See, e.g.*, Lee Decl. Ex. 83 (Mecs Decl.), at ¶¶ 31, 39-41; Mot. at 2-7.

13      Plaintiffs fail to demonstrate that they have suffered an antitrust injury

14  sufficient to meet the requirements of antitrust standing.  Defendants' Motion for

15  summary judgment should be granted.

16  **III.  CONCLUSION**

17      Defendants respectfully request that the Court grant Defendants' Motion and

18  enter partial summary judgment in Defendants' favor on all Private Label claims.

19

20

21

22

23

---

24  [12] Plaintiffs' attempt at undermining *In re Digital Music Antitrust Litigation*, 812 F.
25  Supp. 2d 390 (S.D.N.Y. 2011) is also unavailing.  *See* Opp'n at 26.  There, the
    Court found that CD-purchasers lacked antitrust standing partly because the "CD
26  market could have been affected by supply and demand, cost of production, or
    other economic factors wholly unrelated to Internet music." *Id.* at 403.  So too
27  here, where Private Label pricing was affected by factors inapplicable to Branded
    tuna, including auction procurement methods and heightened competition from
28  non-Defendant suppliers.

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

1 | Dated: December 12, 2019

LATHAM & WATKINS LLP

2

By: s/ Christopher S. Yates
3
Alfred C. Pfeiffer
Christopher S. Yates
4
Belinda S Lee
5
Niall E. Lynch
Ashley M. Bauer
6
LATHAM & WATKINS LLP
7
505 Montgomery Street
Suite 2000
8
San Francisco, CA 94111
9
Telephone: 415-391-0600
Facsimile: 415-395-8095
10
Email: al.pfeiffer@lw.com
11
Email: chris.yates@lw.com
Email: belinda.lee@lw.com
12
Email: niall.lynch@lw.com
13
Email: ashley.bauer@lw.com

14
*Counsel for Defendants StarKist Co. and*
15
*Dongwon Industries Co., Ltd.*

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
15                    3:15-md-02670-JLS-MDD

ALLEN & OVERY LLP

By: s/ John Roberti
John Roberti
Kelse Moen
1101 New York Avenue N.W.
Washington, D.C. 20005
Telephone: (202) 683-3800
Facsimile: (202) 683-3999
john.roberti@allenovery.com
kelse.moen@allenovery.com

Joshua Shapiro
Brian Fitzpatrick
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 610-6300
Facsimile: (212) 610-6399
joshua.shapiro@allenovery.com
brian.fitzpatrick@allenovery.com

*Counsel for Defendants Tri-Union
Seafoods LLC d/b/a Chicken of the Sea
International*

PEPPER HAMILTON LLP

By: s/ Barbara T. Sicalides
Barbara T. Sicalides
Barak A. Bassman
Megan Morley
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA 19103-2799
Telephone:  215-981-4783
Facsimile:  215-981-4750
sicalidesb@pepperlaw.com
bassmanb@pepperlaw.com
morleym@pepperlaw.com

*Counsel for Defendant Del Monte
Corporation*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD

## **SIGNATURE ATTESTATION**

Under Section 2.F.4 of the Court's CM/ECF Administrative Policies, I hereby certify that authorization for filing this document has been obtained from each of the other signatories shown above, and that all signatories have authorized placement of their electronic signature on this document.


Dated: December 12, 2019                     By: s/ Christopher S. Yates
                                                              Christopher S. Yates

*Counsel for Defendants StarKist Co. and Dongwon Industries Co., Ltd.*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

REPLY MEM. OF P. & A. IN FURTHER SUPP. OF  MOT.
FOR PARTIAL SUMM. J. (PRIVATE LABEL CLAIMS)
3:15-md-02670-JLS-MDD