Michael P. Lehmann (#77152)
Christopher L. Lebsock (#184546)
Samantha J. Stein (#302034)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel:   (415) 633-1908
Fax:  (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: clebsock@hausfeld.com
E-mail: sstein@hausfeld.com

Michael D. Hausfeld (*pro hac vice*)
Brittany Lee Nyovanie (*pro hac vice*)
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
Tel:   (202) 540-7200
Fax:   (202) 540-7201
E-mail: mhausfeld@hausfeld.com
E-mail: bnieves@hausfeld.com

*Class Counsel for the Direct Purchaser Class*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MDD |
| | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR FINAL APPROVAL OF COSI/TUG SETTLEMENT** |
| This filing relates to the Direct Purchaser Plaintiff Class Action Track | DATE:      October 7, 2022<br>TIME:      1:30 PM<br>JUDGE:   Hon. Dana M. Sabraw<br>CTRM:    13A |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  BACKGROUND ................................................................................................. 2

  A.   Settlement Negotiations and Preliminary Approval ......................................... 2

  B.   Terms of the Settlement and Its Implementation ............................................. 3

    1.   The Settlement Class ................................................................................. 3

    2.   The Settlement Fund ................................................................................. 3

    3.   The Release ............................................................................................... 4

    4.   The Notice Plan and Claims Process ........................................................ 4

    5.   Attorneys' Fees and Costs ........................................................................ 5

  C.   Reaction to the Settlement .............................................................................. 5

III. DISCUSSION ..................................................................................................... 6

  A.   The Court Should Grant Final Approval of the Settlement .............................. 7

    1.   The Notice Program Gave the Best Practicable Notice to Settlement Class Members and Satisfied Rule 23 and Due Process ................................................. 7

    2.   The Settlement is Fair, Reasonable, and Adequate ..................................... 9

      a)   The Settlement Stems from Good-Faith, Informed, and Arm's Length Negotiations by the DPPs and Class Counsel That Have Adequately Represented the Class ..................................................................... 10

      b)   The Settlement Provides the Class with Substantial and More Than Adequate Relief ......................................................................................... 11

    3.   The Settlement Treats All Class Members Equitably ................................. 15

  B.   The Court Should Grant Certification of the Settlement Class ....................... 15

C.    The Court Should Grant the Pending Request for Attorney Fees, Litigation Expenses, and Service Awards ................................................................... 18

D.    Settlement and Claims Administration Expenses............................................. 19

IV. CONCLUSION................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..............................................................................................17

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007)...................................................................13

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015) ........................................................................17

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 14-CV-2058 JST, 2017 WL 2481782 (N.D. Cal. June 8, 2017) ...............14

*Four in One Co. v. S.K. Foods, L.P.*,
2:08-CV-3017 KJM EFB, 2014 WL 4078232 (E.D. Cal. Aug. 14,
2014) ......................................................................................................................14

*Harris v. Vector Mktg. Corp.*,
No. 08-cv-5198 EMC, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012)..................15

*In re High-Tech Emp. Antitrust Litig.*,
985 F. Supp. 2d (N.D. Cal. 2013)..................................................................16, 17

*Howell v. Advantage RN, LLC*,
17-CV-883 JLS, 2020 WL 3078522 (S.D. Cal. June 9, 2020)...........................13

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ................................................................................6

*Lo v. Oxnard Eur. Motors, LLC*,
No. 11-cv-1009 JLS MDD, 2011 WL 6300050 (S.D. Cal. Dec. 15,
2011) ......................................................................................................................16

*Mullane v. Central Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)................................................................................................8

*Nitsch v. Dreamworks Animation SKG Inc.*,
315 F.R.D. 270 (N.D. Cal. 2016) ..................................................................16, 17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................... 7, 8

*Radcliffe v. Experian Info. Solutions, Inc.*,
  715 F.3d 1157 (9th Cir. 2013) ........................................................ 11

*Rodriguez v. W. Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) .......................................................... 13

*Sali v. Corona Reg'l Med. Ctr.*,
  909 F.3d 996 (9th Cir. 2018) .......................................................... 16

*Schaffer v. Litton Loan Servicing, LP.*,
  No. CV 05-07673 MMM, 2012 WL 10274679 (C.D. Cal. Nov. 13,
  2012) ..................................................................................... 12

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008) ......................................................... 6

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .......................................................... 6

*Villegas v. J.P. Morgan Chase & Co.*,
  No. CV 09–0026100261 SBA (EMC), 2012 WL 5878390, at *6 (N.D.
  Cal. Nov. 21, 2012) .................................................................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab.
  Litig.*,
  895 F.3d 597 (9th Cir. 2018) .......................................................... 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ............................................................ 13

*In re Zynga Inc. Sec. Litig.*,
  No. 12-cv-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ............... 11

**Statutes**

28 U.S.C. § 1715(b) ........................................................................ 5

**Other Authorities**

Fed. R. Civ. P. 23(a)(1) ................................................................. 16

Federal Rules of Civil Procedure Rule 23.........................................................*passim*

Federal Rules of Civil Procedure Rule 54(b)........................................................20

Class Representatives for Direct Purchaser Plaintiffs ("DPPs"),[1] through the Court-appointed class counsel, Hausfeld LLP ("Class Counsel"), respectfully move, under Rule 23 of the Federal Rules of Civil Procedure, for final approval of the Settlement with Defendants Tri-Union Seafoods LLC d/b/a Chicken of the Sea ("COSI") and its parent company, Thai Union Group, PCL ("TUG") and entry of final judgment with respect to these parties. The Final Approval and Fairness Hearing date, as well as the hearing for the DPPs' pending Motion for Attorneys' Fees, ECF No. 2785, is scheduled for October 7, 2022, at 1:30 p.m. ECF No. 2838.

## I.    INTRODUCTION

Subject to this Court's final approval, the DPPs have agreed to resolve all claims brought against COSI and TUG on behalf of the DPP Class through a Settlement worth $13,001,961.86.[2] This is an exceptional result, which secures relief for the Class after over seven years of hard-fought litigation. In short, as set out below, the Settlement is fair, reasonable, and adequate. Additionally, the Class satisfies the certification requirements of Rule 23 for settlement purposes, and the Notice Program meets the requirements of Rule 23 and constitutional due process. The DPPs accordingly request that the Court grant final approval of the Settlement, which has not received a single objection.

---

[1] The Class Representatives are Olean Wholesale Grocery Cooperative, Inc., Pacific Groservice Inc. d/b/a PITCO Foods, Piggly Wiggly Alabama Distributing Co., Inc., Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc., Trepco Imports and Distribution Ltd., and Benjamin Foods LLC. In the Preliminary Approval Order, the Court appointed these plaintiffs as Class Representatives, and Hausfeld LLP as Class Counsel, for the purposes of settlement. ECF No. 2733 (Preliminary Approval Order) at 19.

[2] Litigation will continue against non-settling Defendants, including StarKist Co. ("StarKist"), Dongwon Industries Co. Ltd. ("Dongwon"), Lion Capital LLP ("Lion Capital"), Big Catch Cayman LP ("Big Catch"), and Lion Capital (Americas), Inc. ("Lion Americas"), the parent of the former Bumble Bee Foods LLC ("Bumble Bee").

Finally, having not received a single objection to DPPs' Motion for Attorneys' Fees and Costs and Service Awards for the Class Representatives in Conjunction with the COSI/TUG Settlement (ECF No. 2785), Class Counsel respectfully request that the Court award the requested attorneys' fees in the amount of $1,539,363.29, and litigation expenses in the amount of $4,410,636.71, in accordance with the arbitration award issued by United States Magistrate Judge Layn Phillips (Ret.).

## II.    BACKGROUND

The factual background and procedural history of the litigation have been detailed in the DPPs' previous filings in support of the Settlement and the DPPs' Motion for Attorneys' Fees, all of which are incorporated by reference here. (ECF Nos. 2674 (Motion for Preliminary Approval); 2674-2 (Decl. of Bonny E. Sweeney or "Sweeney Decl."); 2785 (Motion for Attorneys' Fees); 2785-2 (Decl. of Samantha J. Stein)). The preliminary approval of the Settlement, implementation of its terms, and reaction of the Settlement Class are summarized below.

### A.    Settlement Negotiations and Preliminary Approval

Following extensive discussions facilitated by United States Magistrate Judge Jan Adler (Ret.), a former Magistrate Judge for this District, COSI/TUG and the DPPs executed a Settlement on March 11, 2021. ECF No. 2785-3 ("Settlement Agreement"). The Settlement Agreement was negotiated between the Parties under the supervision of Judge Adler following multiple in-person, video conference, and telephonic mediation sessions in which Judge Adler was shown the material terms of the Direct Action Plaintiff ("DAP") settlements by COSI/TUG's counsel. Sweeney Decl., ¶ 12. On December 1, 2021, the DPPs filed their Renewed Motion for Preliminary Approval of Settlement. ECF No. 2674. The Court granted the DPPs' Motion and endorsed the proposed Notice Plan on January 26, 2022. ECF No. 2733.

**B.    Terms of the Settlement and Its Implementation**

The following is a summary of the material terms of the Settlement (ECF No. 2785-3), and, where applicable, a discussion of how these terms have been implemented after entry of the Court's Preliminary Approval Order.

### 1.    The Settlement Class

Under Rule 23(b)(3) of the Federal Rules of Civil Procedure, the Settlement Class, as set forth in the Settlement Agreement and preliminarily certified for settlement purposes in the Preliminary Approval Order, is defined as follows:

> All persons and entities that directly purchased Packaged Tuna Products (excluding tuna salad kits and cups and salvage purchases) within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 31, 2015. Excluded from the class are all governmental entities, Defendants, any parent, subsidiary or affiliate thereof, Defendants' officers, directors, employees, and immediate families, as well as any federal judges or their staffs.

*See* ECF No. 2785-3 at 8 (the "Settlement Agreement"). Defendants' records identified approximately 759 putative Settlement Class Members. *See* Supplemental Declaration of Jennifer M. Keough, ¶ 4 ("Keough Decl."), filed in support of final approval of the COSI/TUG settlement.

### 2.    The Settlement Fund

The Settlement provides significant relief for Settlement Class Members and was negotiated at an arms' length between the parties. In exchange for releasing claims against COSI and TUG in this litigation, COSI and TUG agreed to pay 3.2% of the combined sales of Packaged Tuna Products that COSI and TUG sold to Settlement Class Members following exclusion requests from opt-outs from the Settlement Class. Settlement Agreement, ¶ 11.1. The DPPs anticipated that, when calculating the remaining commerce after likely exclusions from the Settlement Class, the value of the Settlement Fund would likely be approximately $13 million.

As the DPPs discussed in their preliminary approval motion, they proposed that the Settlement Fund be distributed on a *pro rata* basis to those who made claims. Then, as the Court acknowledged in its Preliminary Approval Order, "[t]he proceeds of the Settlement will be distributed at a reasonable time in the future after consideration of the costs associated with such a distribution and the amounts of other settlements, if any, available to distribute." Preliminary Approval Order at 4.

### 3.    The Release

Upon the Effective Date of the Settlement, in exchange for the foregoing relief, the DPPs have agreed to release COSI and TUG of:

> all Claims, . . . on account of, arising out of, resulting from, or in any way related to any conduct concerning the pricing, selling, discounting, promotion, or marketing of Packaged Tuna during the period from June 1, 2011 to July 31, 2015 that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint.

*See* ECF No. 2785-3, ¶ 1.19.

### 4.    The Notice Plan and Claims Process

The Settlement also proposed a robust notice program, which the Court approved in its Preliminary Approval Order, designed to satisfy the requirements of Rule 23 and Settlement Class Members' right to due process. JND Legal Administration was ordered to implement the Notice Program, which proposed notifying Settlement Class Members of the Settlement both by mail as well as by email for those Settlement Class Members for whom the DPPs have email addresses. Additionally, a press release was proposed to supplement the direct mail notice program. *See* Declaration of Gina Intrepido-Bowden ("Intrepido-Bowden Decl."), ECF No. 2674-6, ¶ 11. The DPPs' proposed notice plan also encouraged Settlement Class Members to go to the dedicated case website and register for further direct updates via email for future important events.

1    The DPPs also informed Settlement Class Members of the Settlement through
2  the case website, located at https://www.tunadirectpurchasercase.com/. The website
3  contains relevant documents, a list of key Settlement dates, an online portal for the
4  filing of claims, and contact information for JND, the notice and settlement
5  administrator. Through the claim filing portal, Settlement Class Members had the
6  option to review and verify their volume of purchases or commerce against total
7  amounts contained in Defendants' sales and transaction data. Settlement Class
8  Members who believed they purchased a different amount from what Defendants'
9  sales data showed could then submit documentation to validate their purchases,
10 subject to an audit by JND.

11    Additionally, COSI/TUG's counsel has represented to Class Counsel that
12 CAFA notice has been provided pursuant to 28 U.S.C. § 1715(b).

13                    **5.    Attorneys' Fees and Costs**

14    Although Class Counsel has litigated this case for seven years on contingency—
15 and has advanced approximately nearly $4.5 million in out-of-pocket costs—no
16 portion of fees or costs will come out of the Settlement Class Members' Settlement
17 amount. Instead, the parties agreed to a separate, contested arbitration of legal fees
18 and costs before a neutral arbitrator.

19    Since that time, Judge Phillips has rendered an arbitration award on this matter
20 for $1,539,363.29 in fees, and $4,410,636.71 in litigation expenses. The DPPs have
21 filed a motion for fees and costs in light of Judge Phillips' award, and there have been
22 no objections to the DPPs' motion.

23             **C.    Reaction to the Settlement**

24    The reaction to the Settlement has been uniformly positive. In accordance with
25 the Court's Preliminary Approval Order, any requests for exclusion from the Class
26 and any objections to the Settlement were required to be postmarked no later than
27 April 28, 2022. As of the filing of this motion, there have been no objections to the
28

Settlement. The complete absence of objections shows a favorable response to the Settlement and supports a finding that it is fair and reasonable.

The Settlement Administrator has determined the Settlement will provide $13,001,961.86 in relief for the Settlement Class Members after applying the formula provided in the Settlement Agreement. Counsel for COSI/TUG and the DPPs have accepted that determination.

## III.   DISCUSSION

Federal Rule of Civil Procedure 23(e) requires court approval for the resolution of claims on a class basis. In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (internal quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits . . . ." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Rule 23(e) provides five requirements that must be satisfied for a proposed class settlement to secure final approval:

- The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

- If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

- The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

- If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

- Any class member may object to the proposal if it requires court approval under the subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

## A.   The Court Should Grant Final Approval of the Settlement

At preliminary approval, the Court found that it was likely to approve the Settlement under Rule 23(e)(2) and certify the class for purposes of judgment on the proposal. Now, having distributed notice to the Settlement Class and having carried out the other requirements set out in the Court's Preliminary Approval Order, each of Rule 23(e)'s five requirements are readily satisfied, favoring final approval of the Settlement.

### 1.   The Notice Program Gave the Best Practicable Notice to Settlement Class Members and Satisfied Rule 23 and Due Process

To exercise jurisdiction over absent Settlement Class members, a court must assure itself that such class members receive notice of any settlement that is "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950)); Fed. R. Civ. P. 23(c)(2)(B). Such notice "should describe the action and the plaintiffs' rights in it," as well as provide each class member "with an opportunity to remove [itself] from the class by executing and returning an 'opt out' or 'request for exclusion' form." *Shutts*, 472 U.S. at 812.

As this Court found in its Preliminary Approval Order, "the rigorous notice plan proposed by JND satisfies requirements imposed by Rule 23 and the Due Process clause of the United States Constitution." ECF No. 2733 at 18. That plan has now been fully implemented in accordance with the Court's Order. *See* Keough Decl., ¶¶ 4-5.

As detailed in the Keough Decl., JND, the notice and settlement administrator, mailed notices to 759 potential Settlement Class Members as identified from Defendants' transaction records. *Id.* at ¶ 4. It used advanced address research and re-mailing protocols for those notices that did not reach their intended recipient, ensuring that the maximum number of Settlement Class Members received direct-mail notice. *Id.* at ¶ 5. In addition, email notice was sent to those Settlement Class Members for whom the DPPs have email addresses, and a press release was issued to supplement the direct notice program. *Id.* at ¶4.

This comprehensive Notice Program has ensured that the Court has jurisdiction over all Settlement Class Members, because they have received the notice required to satisfy constitutional due process. *See Shutts*, 472 U.S. at 811-12. The direct mail notice and email notice sent to Settlement Class Members, among other things, described the Class, the release, the amount and proposed distribution of the Settlement Fund, and their right to file a claim, as well as informed Settlement Class Members of their right to opt out or object and the procedural steps required to do so. The notice further informed Settlement Class Members of the time and place of the Fairness Hearing. And the notice explained to Settlement Class Members that they would be bound by a judgment unless they opted out, even if they did not file a claim. The notice additionally informed Settlement Class Members how Class Counsel intend to seek attorneys' fees and reimbursement of litigation expenses. Lastly, the notice informed Settlement Class Members that additional information would be available on the Settlement Website, where copies of the Agreement, notice, and Claim Form were made available.

In short, Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Rule 23(e)(1) is satisfied.

## 2.      The Settlement is Fair, Reasonable, and Adequate

As amended, Rule 23 now provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018). Rule 23(e)(2) identifies several factors to be considered in that assessment; specifically, whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Attention to these factors "focus[es] the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. The key "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs. & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

### a) The Settlement Stems from Good-Faith, Informed, and Arm's Length Negotiations by the DPPs and Class Counsel That Have Adequately Represented the Class

Rule 23(e)(2)'s first two factors——whether the Class has been adequately represented, and whether the settlement was achieved through arm's length negotiations—are both satisfied here.

First, in determining at final approval whether the class has been adequately represented, the advisory committee emphasizes that the focus is on the "actual performance of counsel acting on behalf of the class." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. The information considered includes "the conduct of the litigation and of the negotiations leading up to the proposed settlement," the "nature and amount of discovery . . . [which] may indicate whether counsel negotiating on behalf of the class had an adequate information base," and "the involvement of a neutral or court-affiliated mediator." *Id.*

Class Counsel, Hausfeld LLP, was the first firm to file suit on behalf of the first filed Plaintiff in this litigation, Olean Wholesale Grocery Cooperative. Since then, Class Counsel and the Class Representatives have more than adequately represented the DPP Class, driving this litigation forward in all aspects for the betterment of all Plaintiffs. Among other things, Class Counsel have conducted extensive discovery, reviewing millions of pages of documents and taking depositions of dozens of witnesses. *See* Sweeney Decl., ¶ 8. As a result of these and other efforts, Class Counsel were able to secure relief from COSI/TUG for a period of time beyond the period for which the DOJ has secured guilty pleas. *Id.* Class Counsel have also investigated and litigated claims against the parent entity Defendants in this case, and as a result of those efforts, TUG is settling with the DPPs as well. *Id.*, ¶ 9.

Second, this Court has already found in its Preliminary Approval Order that the Settlement Agreement was the product of an arm's length negotiation. The Settlement was reached only after extensive, aggressive litigation and prolonged, well-informed,

and extensive arm's-length negotiations—including two in-person mediation sessions and additional negotiations—between experienced and knowledgeable counsel facilitated by Judge Adler. Sweeney Decl., ¶ 12. The use of a mediator supports the conclusion that the settlement process was not collusive. *See* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note (2018) ("[T]he involvement of a neutral . . . in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"); *see also In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (use of mediator and fact that some discovery had been completed "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement") (internal citation omitted). Moreover, neither COSI nor TUG have promised the Class Representatives or Class Counsel preferential treatment in exchange for the Settlement. Sweeney Decl., ¶ 15; *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (preferential treatment for class representatives can create a conflict of interest). All of the Settlement funds will be distributed *pro rata*, and Class Counsel are seeking reimbursement of expenses and fees from a separate fund consistent with the arbitration award.

### b)   The Settlement Provides the Class with Substantial and More Than Adequate Relief

The Settlement also satisfies the third factor, namely, whether "the relief provided for the class is adequate" in light of several subfactors set forth above. *See* Fed. R. Civ. P. 23(e)(2)(C).

***Substantial Relief Secured by the Settlement.*** The Settlement Agreement provides the Class Members with significant relief. And this relief is comparable, if not superior, to other publicly reported settlements. The Settlement Class Members

are mostly comprised of smaller companies, with other larger retailers having opted out of the Class, including choosing to file their own suits. The Settlement Class Members represent around 20% of the purchases of packaged tuna products during the relevant period. *See* Sweeney Decl., ¶ 7. The proposed Settlement provides a 3.2% overcharge on all purchases from COSI and TUG by the Settlement Class Members, which ultimately totals $13,001961.86, with fees and costs awarded separately. *Id.*

By comparison, one of the former DAPs in this case, Wal-Mart—the largest retailer in the country, which was StarKist's largest customer and alone represents nearly 20% of the packaged tuna purchases in the relevant period—resolved its antitrust claims against StarKist (which is subject to joint and several, trebled liability) for $20.5 million. *Id.* Thus, given COSI's leniency status—which gives it the benefit of de-trebling and protection from liability for its co-conspirators' overcharges—the DPP Settlement has achieved an excellent result for Settlement Class Members when compared to what Wal-Mart achieved for itself against a Defendant with vastly greater exposure. *See* Fed. R. Civ. P. 23 advisory committee notes (2018) ("[T]he actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base").

Thus, while the DPPs may have been able to recover more from COSI and TUG if they had ultimately prevailed against these Defendants at trial, the settlement figure is nonetheless significant. COSI and TUG have aggressively litigated this action, including filing multiple summary judgment motions and retaining three merits experts to defend them at an ultimate trial in this case. There is no certainty that the Settlement Class Members would have achieved a result superior to the one obtained by way of settlement. *Schaffer v. Litton Loan Servicing, LP.*, No. CV 05-07673 MMM (JCx), 2012 WL 10274679, at *11 (C.D. Cal. Nov. 13, 2012) ("Estimates of what constitutes a fair settlement figure are tempered by factors such as the risk of losing at

1    trial, the expense of litigating the case, and the expected delay in recovery (often

2    measured in years).").[3]

3        ***The Risks and Costs of Delay.*** The DPPs' liability claims against COSI for

4    violations under the antitrust laws are undoubtedly strong, particularly given COSI's

5    admission of its participation in a conspiracy to violate those laws. The claims against

6    TUG, however, are heavily disputed, because it did not plead guilty to the conspiracy

7    alleged. Even as to the claims against COSI, the experts in this case have serious

8    disputes about the likely overcharge percentage, among other things. There are real

9    and significant risks in antitrust class actions. *Rodriguez v. W. Publishing Corp.*, 563

10   F.3d 948, 966 (9th Cir. 2009) (summarizing risks of litigating antitrust class actions).

11   And in light of the ongoing and potential appeals in this case, while the DPPs have

12   "strong claims," "significant risk and uncertainty remain such that continuing the case

13   could lead to protracted and contentious litigation." *Howell v. Advantage RN*, *LLC*,

14   17-CV-883 JLS (BLM), 2020 WL 3078522, at *4 (S.D. Cal. June 9, 2020). Moreover,

15   any successful trial recovery would likely be followed by an appeal and considerable

16   delay. Through the Settlement, however, Settlement Class Members secure substantial

17   financial relief and avoid the risks inherent in continued litigation.

18       ***Method of Distribution.*** The proceeds from the Settlement Amount will be

19   distributed on a *pro rata* basis, which supports a finding that the settlement is fair and

20   reasonable. The payment that a Settlement Class Member receives will be a *pro rata*

21   distribution based on the Class Member's volume of commerce (based either on

22

23   [3] *See*, *e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005)

24   ("Indeed, the history of antitrust litigation is replete with cases in which antitrust
     plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible

25   damages, at trial, or on appeal") (citation omitted); *In re Auto. Refinishing Paint
     Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) (approving settlements in

26   part because the "antitrust class action is arguably the most complex action to

27   prosecute[;] [t]he legal and factual issues involved are always numerous and uncertain
     in outcome") (citation omitted).

28

Defendants' transaction records or an individual Class Member's transaction records, subject to audit) compared with the volume of commerce of other claimants. After the Court orders distribution of the settlement fund, the Settlement Administrator will promptly distribute cash payments via check to Settlement Class Members. Such a method of distribution is common and well-established. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries." (*quoting In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005))); *Four in One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017 KJM EFB, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases").

At this time, the DPPs are unsure when they will ask the Court to order distribution of the Settlement Fund. That decision will be guided by the results of any additional audits by the claims administrator, a balance of the costs and benefits of distributing the funds sooner or later, and the timing of trial and any other potential settlements in this matter.

**Proposed Fee Award.** The proposed fee and cost award—determined in a contested arbitration before a neutral arbitrator—is fair and reasonable. It does not detract from relief for the Settlement Class in any way. The fee amount, in particular, represents only a small fraction of the lodestar incurred by Class Counsel in this case, which will remain at risk until later stages of the litigation.

**Other Agreements Required To Be Identified Under Rule 23(e)(3).** There are no other agreements between the DPPs, Class Counsel, and COSI or TUG.

### 3.    The Settlement Treats All Class Members Equitably

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note (2018).

Here, there are no differences between the scope of relief between any Settlement Class Members—no set of Settlement Class Members are singled out for either preferential or disadvantageous treatment. Rather, the Settlement treats all Settlement Class Members equitably, distributing settlement proceeds on a *pro rata* basis. In sum, all factors identified by Rule 23(e)(2) and the Ninth Circuit strongly support a finding that the Settlement is fair, reasonable, and adequate.[4]

### B.    The Court Should Grant Certification of the Settlement Class

For settlement purposes, the DPPs respectfully request that the Court certify the Class defined above and in the Settlement Agreement. As the Court held in its Preliminary Approval Order, the Settlement Class satisfies the applicable requirements of Rule 23(a) and of Rule 23(b)(3). There has been no change in circumstances since the Preliminary Approval Order that would detract from class-wide treatment of the claims at issue in this Settlement.

---

[4] While DPPs request $5,000 service awards for Class Representatives, such awards are not unfair to the Class, and the Court has already deemed them reasonable here. *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198 EMC, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards. In fact, the Ninth Circuit recently noted that incentive payments to named plaintiffs have become 'fairly typical' in class actions."); Preliminary Approval Order at 18-19 (finding service awards nominal and reasonable).

***Numerosity.*** The numerosity requirement is satisfied here because the Settlement Class consists of hundreds of persons or entities from throughout the United States, and joinder of so many persons and entities is impracticable. *See* Fed. R. Civ. P. 23(a)(1).

***Commonality.*** Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)). In this case, there are numerous common issues, including: (1) whether Defendants participated in a conspiracy to fix prices in violation of the antitrust laws; (2) the scope of that conspiracy; and (3) whether members of the Settlement Class suffered antitrust injury as a result of Defendants' conspiracy.

***Typicality.*** The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018) (citation omitted). "In antitrust cases, typicality usually will be established by plaintiffs and all class members alleging the same antitrust violations by defendants." *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d at 1167, 1181 (N.D. Cal. 2013) (internal quotation marks and citation omitted); *see Lo v. Oxnard Eur. Motors, LLC*, No. 11-cv-1009 JLS MDD, 2011 WL 6300050, at *2 (S.D. Cal. Dec. 15, 2011). The claims of the DPPs and the proposed Settlement Class are all based on the same antitrust violations, and they each have suffered injury as a result of Defendants' antitrust conspiracy. Any factual differences among Settlement Class members do not preclude a finding of typicality.

***Adequacy of Representation.*** Lastly, Plaintiffs have more than adequately represented the Class. Adequacy requires that Plaintiffs "(1) have no interests that are

antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel able to vigorously prosecute their interests." *In re Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT II*"), 308 F.R.D. 606, 618 (N.D. Cal. 2015). Each of the DPP Class Representatives here has the same incentive to seek an equitable share of the Settlement Fund as absent class members; there is no divergence between their interests. And Plaintiffs have furthered their shared interests with other Settlement Class Members by selecting well-qualified counsel, who are highly experienced and capable in the field of class-action and antitrust litigation. Class Counsel have litigated scores of such cases to resolution—through both settlement and trial—and are recognized as top authorities in their field. Plaintiffs have prosecuted the action by participating in the discovery process, subjecting themselves to substantial discovery obligations necessary to propel the case forward. Because Plaintiffs have demonstrated that their interests align with those of the Class and they have prosecuted the action to a beneficial resolution, the adequacy factor of Rule 23 has been satisfied.

**Predominance.** "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Here, the common questions identified above predominate over any individual ones. The existence and scope of Defendants' horizontal price-fixing conspiracy is a class-wide issue that can be proved for each Settlement Class Member through common evidence. "In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." *Nitsch*, 315 F.R.D. at 315 (quotation and internal marks omitted); *CRT II*, 308 F.R.D. at 620, 625 (same); *High-Tech*, 985 F. Supp. 2d at 1217 (holistic examination of liability, not just econometric analysis, justified certification). This is especially true in the context of a settlement class, such as this one. In this case, all Settlement Class Members alleged injury arising from

Defendants' conduct and all will release that and other claims in return for compensation under the Settlement Agreement.

**Superiority.** In addition, a class action is the superior means of adjudication because of the large number of potential claims, the desirability for consistency in adjudications of these claims, the limited interest class members would have in controlling the prosecution of claims, and the economic factors that would render individual actions cost-prohibitive. Because Rule 23's requirements are satisfied, the Court should finally certify the Settlement Class.

**C.    The Court Should Grant the Pending Request for Attorney Fees, Litigation Expenses, and Service Awards**

In its Preliminary Approval Order, this Court approved a framework for resolving fees and costs to Class Counsel as part of this settlement and found that "the methodology used for determining the proposed fee and cost award—a contested arbitration before a neutral arbitrator—is fair and reasonable. It does not detract from relief for the Class in any way." Preliminary Approval Order at 3, 16. Now, consistent with the arbitration award by Judge Phillips and for the reasons detailed in the pending fee application (ECF No. 2785), Class Counsel respectfully request the Court approve a fee award of $1,539,363.29 and expenses of $4,410,636.71, neither of which will be taken from the Settlement Amount. Since the fee application was filed, no objections have been lodged, which further supports approval of the fee request.

Additionally, the DPPs ask that the Court finally approve the proposed $5,000 service awards to each Class Representatives, which the Court previously found are "modest and a reasonable, nominal acknowledgment of their service." Preliminary Approval Order at 19. No objection has been raised to these modest and well-deserved service awards.

Accordingly, the Court should grant the proposed order submitted with the DPPs' Motion for Approval of Fees and Costs and the related Service Awards.

### D.     Settlement and Claims Administration Expenses

While the DPPs initially estimated that notice and claims administration together would not cost more than $100,000, the settlement administrator received a high volume of claims filed by third-party filers on behalf of entities that did not appear as direct purchasers as reflected in Defendants' transaction data, and most of these third-party filers made no attempt to substantiate their claims with any supporting documentation proving membership in the Class. Keough Decl., ¶ 15. Processing and review of these claims took a significant amount of time, resulting in the claims administration costing more than initially anticipated. *Id.* Nonetheless, the Settlement Agreement provides that Settlement Class Counsel may withdraw funds as necessary for notice and administration from the Settlement Fund up to $500,000. Settlement Agreement, ¶ 11.4. JND now estimates that total fees and expenses for the notice and claims administration and distribution, including for the work done thus far, will not exceed $325,514.00. Keough Decl., ¶ 17. The DPPs therefore respectfully request that the Court authorize Class Counsel to withdraw up to this total amount from the Settlement Fund to compensate JND for the additional required claims administration and distribution to be performed.

## IV.   CONCLUSION

The Settlement constitutes a strong result for the Settlement Class, and readily meets the standards of fairness, reasonableness, and adequacy embodied in Rule 23. And Class Counsel's fee and expense request (ECF No. 2785) is reasonable, and like the Settlement itself, has received no objection or opposition from any Settlement Class member.

The DPPs therefore respectfully request that, following the Fairness Hearing, the Court enter the proposed Order submitted with this motion that:

1.  Grants final approval of the Settlement under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Grants final certification of the following Settlement Class for Settlement Purposes consistent with the Settlement Agreement, pg. 8:

> All persons and entities that directly purchased Packaged Tuna Products (excluding tuna salad kits and cups and salvage purchases) within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 31, 2015. Excluded from the class are all governmental entities, Defendants, any parent, subsidiary or affiliate thereof, and Defendants' officers, directors, employees, and immediate families, as well as any federal judges or their staffs.

3. Directs entry of final judgment under Rule 54(b) of the Federal Rules of Civil Procedure dismissing the Action against COSI and TUG with prejudice as to the Direct Purchaser Class's claims in accordance with the Settlement;

4. Orders COSI and TUG to deposit $12,926,961.86 ($13,001,961.86 less $75,000.00 that COSI and TUG have previously advanced for purposes of notice and administration);

5. Awards each of the Class Representatives $5,000 in Service Awards;

6. Awards from COSI/TUG to Class Counsel $1,539,363.29 in attorneys' fees, and $4,410,636.71 in litigation expenses;

7. Authorizes DPPs' counsel to withdraw up to $325,514.00 from the Settlement Fund to compensate JND for additional administration services required to process, validate, audit, and distribute claims;

7. Finds that the opt-outs identified in Exhibit A to the Keough Decl. have validly and timely requested exclusion from the Settlement Class and, therefore, are excluded, such that the opt-outs are not included in or bound by the proposed final judgment; and

8.   Retains   exclusive   jurisdiction   over   the   Settlement   and   the   Settlement Agreement, including the administration and consummation of the Settlement, as well as ultimate distribution of the Settlement Fund.

Dated: September 6, 2022                          Respectfully submitted,

By: s/ *Christopher L. Lebsock*
Michael P. Lehmann
Christopher L. Lebsock
Samantha J. Stein
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel:   (415) 633-1908
Fax:  (415) 358-4980
E-mail:  mlehmann@hausfeld.com
E-mail:  clebsock@hausfeld.com
E-mail:  sstein@hausfeld.com

Michael D. Hausfeld (*pro hac vice*)
Brittany Lee Nyovanie (*pro hac vice*)
HAUSFELD LLP
888 16th Street NW, Suite 300
Washington, DC 20006
Telephone: (202) 540-7200
Facsimile: (202) 540-7201
E-mail:   mhausfeld@hausfeld.com
E-mail:   bnieves@hausfeld.com

*Class Counsel for the Direct Purchaser Class*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I certify that on September 6, 2022, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

*/s/ Christopher L. Lebsock*
Christopher L. Lebsock