1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11   IN RE: PACKAGED SEAFOOD                Case No.:  3:15-MD-02670-DMS-MDD

12   PRODUCTS ANTITRUST LITIGATION
                                            **ORDER GRANTING IN PART AND**
13   _____        **DENYING IN PART DEFENDANTS'**
                                            **MOTION FOR SUMMARY**
14                                          **JUDGMENT ON CERTAIN STATE**
     THIS DOCUMENT RELATES TO:              **LAW CLAIMS**
15
     (1) End Payer Plaintiffs
16                                          (ECF No. 1992)
     (2) Commercial Food Preparer Plaintiffs
17

18   (3) *W. Lee Flowers & Co., Inc. v. Bumble*
19   *Bee Foods LLC, et al.*, Case No. 3:16-cv-
     01226
20
     (4) *Associated Wholesale Grocers, Inc. v.*
21   *Bumble Bee Foods LLC, et al.*, Case No.
22   3:18-cv-02212

23
     (5) *Affiliated Foods, Inc., et al. v. Tri-*
24   *Union Seafoods, LLC, et al.*, Case No.
     3:15-cv-02787
25

26

27          Presently before the Court is a Motion for Partial Summary Judgment on Certain

28   State Law Claims by Defendants StarKist Co., Dongwon Industries Co., Ltd., Bumble Bee

                                         1
                                                            3:15-MD-02670-DMS-MDD

Foods,[1] LLC, Tri-Union Seafoods LLC d/b/a Chicken of the Sea International ("COSI"), Thai Union Group PCL, Del Monte Corporation, Lion Capital (Americas), Inc., Lion Capital LLP, and Big Catch Cayman LP (collectively, "Defendants").  (Defs.' Partial Summ. J., ECF No. 1992.)  End Payer Plaintiffs ("EPPs"), Commercial Food Preparers ("CFPs"), and Direct Action Plaintiffs ("DAPs") Associated Wholesale Grocers, Inc. ("AWG")[2] and W. Lee Flowers & Co. ("Flowers") (collectively referred herein as "Plaintiffs") jointly filed a Memorandum in Opposition (Pls.' Opp'n, ECF No. 2092). Defendants replied (Defs.' Reply, ECF No. 2203).  The motion is decided on the briefs without oral argument pursuant to Civil Local Rule 7.1.d.1.  For the reasons set forth below, the Court grants in part and denies in part Defendants' motion.

## I.

## BACKGROUND

The general background and history of this litigation are discussed extensively in prior orders and are only reiterated briefly.  (*See e.g.,* ECF No. 2654.)  Numerous civil actions have been filed against COSI, Bumble Bee Foods LLC ("Bumble Bee"), StarKist Company ("StarKist"), and their executives, alleging conspiracy to fix and maintain supracompetitive pricing for packaged tuna in violation of state and federal antitrust laws. The first such action was filed on August 3, 2015.  *See Olean Wholesale Groc. Coop., Inc. v. Bumble Bee Foods, LLC*, No. 15cv1714 (S.D. Cal. Aug. 3, 2015).  These actions were consolidated in a multidistrict litigation ("MDL") for pretrial proceedings before this Court.  (*See* Transfer Order, ECF No. 1).  The Court divided the plaintiffs into four tracks:

---

[1] On November 21, 2019, Bumble Bee filed for bankruptcy protection. *See In re: Bumble Bee Parent, Inc. et al.,* Case No. 19-12502-LSS (Bankr. D. Del.).  Proceedings against Bumble Bee are stayed pursuant to 11 U.S.C. § 362, and this action has been administratively closed insofar as claims are alleged against Bumble Bee.  (ECF No. 2591, 2286.)  This Order does not adjudicate any issues with regards to Bumble Bee.

[2] AWG has represented to Defendants that DAPs Affiliated Foods Inc. has assigned its interests to AWG.  (Defs.' Partial Summ. J. at 22, n.3.)

(1) Direct Action Plaintiffs, who are direct purchasers proceeding individually; (2) Direct Purchaser Plaintiffs, who are proceeding on behalf of a putative class; (3) Commercial Food Preparer Plaintiffs, who are indirect purchasers proceeding on behalf of a putative class; and (4) End Payer Plaintiffs, who are consumers proceeding on behalf of a putative class.

## II.

## LEGAL STANDARD

Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses.  Summary judgment or adjudication of issues is appropriate if depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a), (c)(1).  A fact is material when it could affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[3]  A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

The party moving for summary judgment has "the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case."  *C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000); *see also Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).  "If a moving party fails to carry its initial burden of production … the nonmoving party may defeat the motion for summary judgment without producing anything."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.,* 210 F.3d 1099, 1102–03 (9th Cir. 2000); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970).  "If, however, a moving party carries its burden of production, the nonmoving party must produce evidence to support its claim or defense."  *Nissan Fire & Marine Ins.,* 210 F.3d at 1103.  The nonmoving party must "go beyond the

---

[3] Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, and footnotes are omitted from citations.

1   pleadings and … designate specific facts showing that there is a genuine issue for trial."
2   *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Matsushita Elec. Indus. Co.,*
3   *Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). In ruling on a motion for
4   summary judgment, "courts may not resolve genuine disputes of fact in favor of the party
5   seeking summary judgment." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Rather, "[t]he
6   evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn
7   in his favor." *Anderson*, 477 U.S. at 255. Determining credibility and weighing evidence
8   remain functions for a jury, not a judge on summary judgment. *Id.* As Defendants' instant
9   motion raises pure questions of law it is suitable for determination on summary judgment.

**III.**

**DISCUSSION**

**A.   South Carolina Unfair Trade Practices Act ("SCUPTA")**

13      Defendants first argue South Carolina's consumer protection statute expressly bars
14   class action claims and therefore EPP and CFP classes fail as a matter of law. (Defs.'
15   Partial Summ. J. at 8–18, ECF No. 1992.) According to Defendants, both the plain text of
16   the Rules Enabling Act and the Supreme Court's decision in *Shady Grove Orthopedic*
17   *Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010), dictate that Rule 23 cannot supply
18   EPPs and CFPs with a cause of action that the South Carolina legislature expressly
19   precluded. (*Id.*) While this Court previously considered whether SCUPTA's prohibition
20   against "representative" claims precludes the pursuit of those claims under Rule 23,
21   Defendants assert the Court did so prior to class certification and "in the context of limited
22   briefing." (*Id.* at 8.) Defendants thus request that the Court reconsider.

23      1.  The Legal Standard for Reconsideration

24      Judge Janis Sammartino explicitly considered and rejected Defendants' argument
25   that South Carolina's class action bar is a substantive rather than a procedural rule in an
26   Order dated March 14, 2017. *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp.
27   3d 1033, 1085–86 (S.D. Cal. 2017). The bar for seeking reconsideration of a prior order is

4

high, which Defendants concede, and is not met here.  (Defs.' Partial Summ. J. at 9, ECF No. 1992; Pls.' Resp. at 7, n.2, ECF No. 2203.)

First, because Defendants' request is brought well beyond the twenty-eight-day period for reconsideration set forth in the Local Rules, it is deemed untimely.  Civil Local Rule 7.1.i.2.

Second, to reexamine an issue previously decided by the same court is contrary to the law of the case doctrine.  *See, e.g.*, *Pyramid Lake Paiute Tribe of Indians v. Hodel*, 882 F.2d 364, n.5 (9th Cir. 1989) ("the orderly administration of lengthy and complex litigation such as this requires the finality of orders be reasonably certain … [which] is served by the doctrine of law of the case, which counsels against reopening questions once resolved in ongoing litigation.")  Defendants do not explicitly assert that any of the bases for seeking reconsideration apply here, namely that "1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or 5) a manifest injustice would otherwise result."  *U.S. v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).  Rather, Defendants argue that the Court's prior Order did not adequately consider "whether, in the context of a fractured Supreme Court opinion, a concurrence and a dissent may validly constitute the Court's legal holding."  (Defs.' Partial Summ. J. at 9, ECF No. 1992.)

2. There Is No Change Warranting Reconsideration

Under the *Erie* line of authorities, courts exercising diversity jurisdiction apply state substantive laws, but federal procedural laws.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  However, lower courts have long struggled to classify state laws as substantive or procedural.  In *Shady Grove*, the Supreme Court considered whether a New York state law that "prohibit[ed] class actions in suits seeking penalties or statutory minimum damages" also "preclud[ed] a federal district court sitting in diversity from entertaining a class action under Federal Rule of Civil Procedure 23."  559 U.S. at 396 (plurality opinion).  The plurality established a two-step framework to resolve this question: first, do the federal and the state rules conflict, and second, does the Federal Rule run afoul of 28 U.S.C. § 2072(b)

and "abridge, enlarge or modify any substantive right." *Id.* at 397.  The Supreme Court ultimately determined that Rule 23 was not displaced by the state law.  *Id.* at 410 (plurality opinion); *id.* at 416 (Stevens, J., concurring in part and concurring in judgment).  Justice Scalia wrote for a four-justice plurality that "it is not the substantive or procedural nature or purpose of the affected state law that matters, but the substantive or procedural nature of the Federal Rule."  *Id.* at 410.  Justice Stevens concurred that Rule 23 controlled but based on a finding that the New York law was procedural in nature and therefore applying Rule 23 did not "abridge, enlarge, or modify" any substantive right under 28 U.S.C. § 2072(b).  *Id.* at 416–17 (Stevens, J., concurring in judgment).  Justice Ginsburg, writing for a four-justice dissent, found "no unavoidable conflict between Rule 23" and the state law.  *Id.* at 452 (Ginsburg, J., dissenting).

When analyzing plurality opinions, *Marks v. United States* dictates when "no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." 430 U.S. 188, 193 (1977) (internal quotation omitted).  The Ninth Circuit has instructed that *Marks* should be applied only where "the narrowest opinion is actually the logical subset of other, broader opinions, such that it embodies a position implicitly approved by at least five Justices who *support the judgment*." *Lair v. Bullock*, 697 F.3d 1200, 1205 (9th Cir. 2012) (emphasis added).

The Court's previous Order addressing SCUPTA's class action bar acknowledged that *Shady Grove* reflected a deeply divided court, leaving lower courts sitting in diversity jurisdiction grappling with similar questions around Rule 23.  242 F. Supp. 3d at 1086.  Ultimately, the Court determined that "that the SCUTPA class-action bar is a procedural rather than substantive rule."  *Id.*  Defendants now invite this Court to "update its analysis" (Defs.' Partial Summ. J. at 9, ECF No. 1992), by revisiting whether a dissenting opinion can be utilized in a *Marks* analysis.  At the time of Defendants' briefing, the Ninth Circuit had reserved on this question.  *See U.S. v. Davis*, 825 F.3d 1014, 1025 (9th Cir. 2016) ("Here, we assume but do not decide that dissenting opinions may be considered in a *Marks*

analysis."); *see also Sackett v. EPA*, 8 F.4th 1075, 1091 (9th Cir. 2021) ("*Davis* cannot stand for the proposition that dissents are off-limits in a *Marks* inquiry[.]").  However, the Ninth Circuit has recently made clear that "Dissenting opinions cannot be considered when determining the holding of a fractured Supreme Court decision—only the opinions of those who concurred in the judgments can be considered."  *Ballinger v. City of Oakland*, 24 F.4th 1287, 1295 (9th Cir.), *cert. denied sub nom. Ballinger v. City of Oakland, California*, 142 S. Ct. 2777 (2022).  This follows the explicit language in *Marks* that "the holding of the Court may be viewed as that position taken by those Members who *concurred* in the judgments."  430 U.S. at 193 (emphasis added).  As such, the Court's prior Order now has more, rather than less, support in the controlling case law.  An argument for reconsideration based on an intervening change in law or error in the prior decision as to *Shady Grove* is therefore unavailing.  Defendants have not met the high bar for reconsideration of the Court's prior order and their motion as to SCUPTA is thus denied.

**B.    South Carolina Unjust Enrichment Claims**

Defendants argue that CFPs' and EPPs' South Carolina claims for unjust enrichment fail as a matter of law because South Carolina bars indirect purchaser recovery in class actions. (Defs.' Partial Summ. J. at 18, ECF No. 1992.)  Defendants' motion and reply fail to cite any authority or present any argument in support of their assertion, and the Court has previously upheld these claims.  (*Id.* at 18, ECF No. 1992; Reply at 14, n. 4, ECF No. 2203); *In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1080 (S.D. Cal. 2017).  Because Defendants' argument is conclusory, the Court finds summary judgment inappropriate as to the EPPs' and CFPs' South Carolina unjust enrichment claims.

**C.    California Cartwright Act Claims**

Defendants assert that the CFPs' and EPPs' inclusion of South Carolina claimants under California's Cartwright Act fails as a matter of law because South Carolina bars representative suits, presenting a material conflict of law under Ninth Circuit precedent. (Defs.' Partial Summ. J. at 19, ECF No. 1992.)  Defendants seek to extinguish these

multistate classes, while Plaintiffs ask the Court to excise South Carolina claimants. (Pls.' Opp'n at 11, ECF No. 2092.)[4]

The Supreme Court has held that indirect purchasers cannot recover under federal antitrust laws. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 729 (1977). There, the Supreme Court stated that allowing suits by indirect purchasers would permit "potential plaintiffs at each level in the distribution chain . . . to assert conflicting claims … by contending that the entire overcharge was absorbed at that particular level in the chain." *Id.* at 737. Some states, including California, have enacted post-*Illinois Brick* legislation that allows for indirect purchaser recovery. *See* Cal. Bus. & Prof. Code § 16750(a) ("[An] action [under the Cartwright Act] may be brought by any person who is injured . . . regardless of whether such injured person dealt directly or indirectly with the defendant."). Other states, such as South Carolina, follow federal precedent. *See In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 87 (E.D.N.Y. 1980) (noting the "South Carolina policy that state antitrust laws be interpreted consistently with federal antitrust precedent"). To determine the appropriateness of applying California law to non-residents, the Ninth Circuit delineated a three-step analysis:

> First, the court determines whether the relevant law of each of the potentially affected jurisdictions with regard to the particular issue in question is the same or different.
>
> Second, if there is a difference, the court examines each jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.

---

[4] The Court previously denied Defendants' motion to dismiss a Cartwright Class, finding Defendants did not provide sufficient authority in support of their arguments. *See In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167, 1182 (S.D. Cal. 2017). However, the Court also previously found that EPPs' inclusion of claimants from states that had not enacted indirect purchaser recovery statutes in a California nationwide class is a material conflict of law. 242 F. Supp. 3d at 1085–86.

> Third, if the court finds that there is a true conflict, it carefully evaluates and compares the nature and strength of the interest of each jurisdiction in the application of its own law to determine which state's interest would be more impaired if its policy were subordinated to the policy of the other state, and then ultimately applies the law of the state whose interest would be more impaired if its law were not applied.

*Mazza v. America Honda Motor Company*, 666 F.3d 581, 590 (9th Cir. 2012) (overruled on other grounds).  Each step is discussed in turn.

### 1. There is a Conflict of Laws.

"The fact that two or more states are involved does not itself indicate that there is a conflict of law problem." *Wash. Mut. Bank F.A. v. Superior Court*, 24 Cal. 4th 906, 919–20 (2001).  "A problem only arises if differences in state law are material, that is, if they make a difference in this litigation." *Mazza*, 666 F.3d at 590.  As stated, after *Illinois Brick*, California passed a statute allowing for indirect purchaser recovery.  Allowing a nationwide class based on California antitrust law would allow claimants from South Carolina, which abides by federal precedent, to make claims where their state government has disallowed it.  This represents a material conflict in laws.

### 2. Each State Has an Interest.

Under the established principle of federalism, "each State may make its own reasoned judgment about what conduct is permitted or proscribed within its borders." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422 (2003).  "[E]very state has an interest in having its law applied to its resident claimants." *Mazza*, 666 F.3d at 592–93 (*citing Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1187 (9th Cir. 2001)).  Here, while California has an interest in seeing the Cartwright Act applied, South Carolina has an interest in delineating the reach and scope of recovery for indirect purchasers, and its choice to follow federal precedent "evince[s] a policy judgment … that should not be cast aside." *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d at 1068.

/ / /

/ / /

3. <u>South Carolina's Interest Is Most Impaired.</u>

Though each state has a compelling interest in applying its laws to the consumer transactions occurring within its borders, "if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Mazza*, 666 F.3d at 593.  California law recognizes that "the place of the wrong" has the predominant interest in regulating the conduct at issue and is the state where the last event necessary to make the actor liable occurred.  *Id.*  Here, the last event necessary to make the actor liable—the sale of supracompetitive priced tuna—occurred in South Carolina, not California.  South Carolina's laws would be more greatly impaired if California laws were imposed on their citizens, while California's interest in protecting citizens of South Carolina is more tenuous.  To find otherwise would ostensibly place California's interest above South Carolina's interest.  Therefore, the inclusion of South Carolina claimants in CFPs' and EPPs' California Cartwright claim fails as a matter of law.  Notwithstanding Defendants' prevailing arguments, the Court finds Defendants' suggested remedy—the extinguishment of CFPs' and EPPs' multistate class brought under the California Cartwright Act—a disproportionately harsh remedy.  It is more appropriate to maintain the class and excise the South Carolina claimants.

**D.   DAP Flowers' Claim pursuant to S.C. Code § 39-3-10 ("SCAA")**

Defendants assert that DAP Flowers' claim pursuant to the South Carolina antitrust statute fails as a matter of law because the statute applies to conduct affecting only intrastate commerce and provides no relief or remedy for the interstate commerce at issue. (Defs.' Partial Summ. J. at 20–21, ECF No. 1992.)  Defendants state that all of Flowers' purchases of Defendants' packaged tuna consist solely of products manufactured outside of South Carolina that are then shipped into the state. As such, the claim is "primarily interstate in nature" and should be dismissed.  (*Id.* at 21.)

Under the South Carolina Antitrust Act ("SCAA"):

> [a]ll arrangements, contracts, agreements, trusts or combinations . . .
> between two or more persons as individuals, firms or corporations,

10

made with a view to lessen, or which tend to lessen, full and free competition in the importation or sale of articles imported into this State . . . are declared to be against public policy, unlawful and void.

S.C. Code Ann. § 39-3-10.  As recognized by both Parties, there are significant variations in interpretations of state antitrust statutes enacted at the turn of the century as courts were tasked with determining the bounds of their antitrust statutes in relation to the Dormant Commerce Clause.  Courts have not found any unanimity as it pertains to the SCAA.  *See In re Wiring Device Antitrust Litig.*, 498 F. Supp. 79, 82-83 (E.D.N.Y. 1980) (noting "the longstanding holding of the South Carolina Supreme Court . . . that the state antitrust statute under which plaintiffs have attempted to bring their action applies only to intrastate commerce and does not reach interstate commerce of any kind."); *see also Three J. Farms, Inc. v. Alton Box Bd. Co.*, No. 78-1257, 1978 WL 1459, at *6 (D.S.C. Nov. 29, 1978) (holding that the South Carolina antitrust statute's "application was limited many years ago to exclude activities having an effect upon interstate commerce"); *but see Welchin v. Tenet Healthcare Corp.*, 366 F. Supp. 2d 338, 353 n.19 (D.S.C. 2005) (holding that South Carolina's antitrust law is not limited to intrastate commerce); *and In re Linerboard Antitrust Litig.*, 223 F.R.D. 335 (E.D. Pa. 2004) (allowing application of South Carolina's antitrust statute against a national trade restraint).

Defendants rely on *State v. Virginia-Carolina Chem. Co.*, 51 S.E. 455 (S.C. 1905), in which the South Carolina attorney general sued numerous fertilizer manufacturers. Defendant Virginia-Carolina Chemical Co. was incorporated in New Jersey and allegedly engineered a fertilizer price-fixing scheme in violation of South Carolina law.  *Id.* Defendant demurred arguing, inter alia, that the law violated the commerce clause.  *Id.* at 461.  The South Carolina Supreme Court overruled defendant's demurrer, stating that while the state did not have power over commerce, "It is a rule that a statute is not rendered unconstitutional by the presence therein of provisions which are unconstitutional when they can be eliminated without affecting the rest of the statute."  *Virginia-Carolina*, 51 S.E. at 461.  Thus, the intrastate portion of the statute was upheld.  *Id.*

11

1    Plaintiffs urge this Court to find *Virginia-Carolina* unpersuasive, because

2    "Defendants' argument relies on a line of decisions that rely on *Virginia-Carolina* court's

3    dicta, which is outdated under modern constitutional law."  (Pls.' Opp'n at 12, ECF No.

4    2092.)  Plaintiffs realistically imagine that limiting a state antitrust statute to intrastate

5    commerce today would effectively render the statute "a dead letter[.]"  *In re Brand Name*

6    *Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 613 (7th Cir. 1997) (abrogated).

7    However, it is not for this Court to reimagine the SCAA under a modern framework,

8    as this Court cannot cast *Virginia-Carolina* aside as dicta.  When a federal court sitting in

9    diversity is presented with a novel issue of state law, the federal court must consider how

10   that state's highest court would likely decide the issue.  *See, e.g., Nolan v. Transocean Air*

11   *Lines*, 365 U.S. 293, 296 (1961) (remanding case for reconsideration due to recent state

12   court case containing "considered, relevant dictum of general scope").  The South Carolina

13   Supreme Court in *Virginia-Carolina* would have limited the SCAA to intrastate commerce,

14   so this Court need not speculate how it may hold on this issue.  Plaintiffs correctly note

15   that modern jurisprudence has reinterpreted similar state antitrust statutes enacted at the

16   turn of the century.  (Pls.' Opp'n at 15, ECF No. 2092.)  Indeed, there are striking parallels

17   between the instant matter and *In re Brand Name Prescription Drugs Antitrust Litig., infra.*

18   However, as previously stated, without further guidance from the South Carolina

19   legislature or the South Carolina Supreme Court, this Court finds these parallels persuasive,

20   but not binding.

21   It is uncontested that Defendants here are engaged in interstate commerce and that

22   the products whose prices are at issue were manufactured outside South Carolina and

23   shipped there for sale. ("Defs.' Separate Statement of Undisputed Material Facts", ECF

24   No. 1988 at 2–3).  As South Carolina has limited the application of its state antitrust statutes

25   to intrastate commerce, the SCAA does not apply.  Accordingly, Plaintiffs' SCAA claim

26   fails.

27   / / /

28   / / /

**E.      Prejudgment Interest for DAPs AFMC and AWG**

Finally, Defendants argue that DAPs Affiliated Foods Midwest Cooperative ("AFMC") and Associated Wholesale Grocers ("AWG"), respectively, are not entitled to prejudgment interest.

1.   <u>Summary judgment as to prejudgment interest for AFMC is denied as moot.</u>

First, Defendants argue AFMC is not entitled to prejudgment interest under Kansas law because AFMC does not assert a violation of the Kansas Restraint of Trade Act, only of federal law.  (*See* Williams Decl., ECF No. 1992-2; Ex. 1, ECF No. 1992-3; Ex. 2, No. ECF No. 1992-4.)  Defendants base this argument on the report and addendum to the report of Dr. Colin A. Carter, which estimates damages with a statutory interest rate for prejudgment interest at ten percent per annum according to Kansas law.  (Williams Decl. Ex. 1 at n.475, ECF No. 1992-3; Williams Decl. Ex. 2 at n.19, No. ECF No. 1992-4.) AFMC does not contest Defendants' argument, "as it did not plead a KRTA claim."  (Pls.' Opp'n at 12, n.6, ECF No. 2092.)  AFMC's complaint asserts only a single violation of Section 1 of the Sherman Act and does not assert a claim under Kansas law.  *Affiliated Foods, Inc. v. Tri-Union Seafoods, LLC, et al.*, Fourth Consol. Am. Compl., Oct. 5, 2018, ECF No. 1433.  As such, Defendants' request for summary judgment as to prejudgment interest under Kansas law is denied as moot, as AFMC has not stated a claim under Kansas law.[5]

2.   <u>Summary judgment as to prejudgment interest for AWG is denied as premature.</u>

Second, Defendants assert that under Kansas state law, AWG cannot recover prejudgment interest on the unliquidated claims at issue here, and no "unusual circumstances" exist to diverge from the general rule.  (Defs.' Partial Summ. J. at 24, ECF

---

[5] To the extent Defendants seek summary judgment as to prejudgment interest on AFMC's Sherman Act claim, such motion is denied without prejudice as premature.

No. 1992.)  AWG rebuts this argument stating it is premature and should be handled by a Kansas court.[6]

Generally, an award of prejudgment interest on a state law pendent claim is governed by state law.  *U.S. Industries, Inc. v. Touche Ross & Co*., 854 F.2d 1223, 1255 (10th Cir. 1988).  Under Kansas law, "an unliquidated claim for damages does not draw interest until liquidated-usually by judgment."  *Lightcap v. Mobil Oil Corp.*, 221 Kan. 448, 466 (1977).  However, in *Lightcap*, the Kansas Supreme Court explained that when equitable principles so require, the court in its discretion may permit prejudgment interest on an unliquidated claim.  *Id.* at 468.  Defendants and AWG both acknowledge the exception as articulated in *Lightcap* but disagree on whether it applies in the instant matter.

The Kansas Supreme Court further clarified in *Farmers State Bank v. Production Credit Assoc. of St. Cloud*, that "the district court has the discretion to award prejudgment interest on an unliquidated claim when the defendant has had use of the money, the plaintiff has been deprived of the use of the money, and the order is necessary to award full compensation." 243 Kan. 87, 102 (1988).  "This exception, however, has been limited to situations where prejudgment interest is not simply awarded to make the injured party whole; but rather, where there are unusual circumstances making it equitable to allow for such an award."  *Fidelity & Deposit Co. of Maryland v Hartford Cas. Ins. Co.,* 216 F.Supp.2d 1240, 1244 (D. Kan. 2002); *see also Kearney v Kansas Public Serv.*, 233 Kan.

---

[6] AWG's argument that a Kansas district court is better suited to apply Kansas law is inapposite.  An MDL court assumes "responsibility over all subsequent proceedings in the case until remand occurs . . . [and] exercises all the powers a federal judge would have in actions properly filed in the district in which he or she sits."  Manual for Complex Litigation (Fourth, May 2021 Update) § 9:2.  Plaintiffs' position would render a transferee court powerless to meaningfully manage pretrial proceedings.  It is within this Court's authority to determine the merits of this motion and apply Kansas law to the instant matter. *In re Korean Airlines Co., Ltd*, 642 F.3d 685, 659 (9th Cir. 2011) ("[T]he MDL transferee court is generally bound by the same substantive legal standards, if not always the same interpretation of them, as would have applied in the transferor court.")

492 (1983).  A prejudgment interest award is within a court's discretion, to be guided by "Considerations of fairness and traditional equitable principles[.]"  *GFSI, Inc. v. J-Loong Trading, Ltd.*, 505 F.Supp.2d 935, 947 (D. Kan. 2007).

Antitrust damages in Kansas are statutorily set as "full consideration" or the "price paid" for the price-fixed goods.  K.S.A. 50-115.  Reasonable minds can differ as to whether prejudgment interest is an appropriate equitable remedy to make Plaintiffs whole for the cost of supracompetitive tuna cans.  Further, while determining the availability of prejudgment interest is possible at the summary judgment phase, a breadth of cases reserve that determination as a post-trial matter.  *See Icon Structures, Inc. v. 84 Lumber Co., L.P.*, 2020 WL 4785404 (D. Kan. 2020) ("Because the issue of prejudgment interest is routinely decided after a trial on the merits, this court has generally declined to address prejudgment interest in a motion for summary judgment."); *see also Nat'l Credit Union Admin. Bd. v. UBS Sec.*, LLC, No. 12-2591-JWL, 2016 WL 7496106, at *1 (D. Kan. Dec. 30, 2016) (finding summary judgment motion premature as the court considers prejudgment interest after trial); *Black & Veatch Int'l Co. v. Foster Wheeler Energy Corp.*, No. 00-2402-JAR, 2002 WL 1934372, at *2 (D. Kan. Aug. 12, 2002) (same).  This approach is appropriate here considering the facts and law presented by the parties.  As the trial court has discretion to award prejudgment interest even when the damages are unliquidated and that decision is appropriate for post-trial consideration, the Court denies Defendants' request for summary judgment as to prejudgment interest.  *See Black & Veatch Int'l Co.,* 2002 WL 1934372, at *2 ("The Court cannot determine whether the exception should apply and whether prejudgment interest will be necessary to provide full compensation until the underlying claims are determined on the merits.").

## IV.

## CONCLUSION

Accordingly, for the reasons set forth above, Defendants' motion for summary judgment is granted in part and denied in part.  Defendants' motion is denied as to the EPPs' and CFPs' SCUPTA claim and South Carolina unjust enrichment claims.

1  Defendants' motion is granted as to the CFPs' and EPPs' multistate Cartwright Act class,

2  such that South Carolina claimants are excised from that class.  Defendants' motion is

3  granted as to DAP Flowers' SCAA claim.  Defendants' motion is denied as to prejudgment

4  interest for DAPs AFMC and AWG.

5        **IT IS SO ORDERED.**

6  Dated:  October 19, 2022

7

8        Hon. Dana M. Sabraw
         United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28