1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12

IN RE: PACKAGED SEAFOOD
PRODUCTS ANTITRUST
LITIGATION

13
14
15
16

This Document Relates To:

  ALL ACTIONS

17
18
19
20

Case No.: 15md2670-DMS-MDD
MDL No. 2670

**ORDER (1) DENYING
PLAINTIFFS' EX PARTE
APPLICATION TO TAKE
LIMITED DEPOSITIONS, (2)
GRANTING DEFENDANTS'
LEAVE TO FILE SUR-REPLY,
AND (3) GRANTING PLAINTIFFS'
MOTION TO SEAL**

[ECF Nos. 2943, 2945, 2966]

21
22
23
24
25
26
27

Before the Court is Plaintiffs' *Ex Parte* Application for Leave to Take
Limited Depositions of W.H. Lee, Eric Lindberg, and Jae Chul Kim. (ECF No.
2945). Defendants Dongwon Industries, Co., Ltd. ("DWI"), StarKist Co.
("StarKist"), Lion Capital (Americas), Inc. ("Lion (Americas)"), Lion Capital
LLP ("Lion Capital") and Big Catch Cayman LP ("Big Catch") (collectively,
the "Lion Companies") responded in opposition. (ECF Nos. 2961-62).
Plaintiffs moved for Leave to File a Reply, which the Court granted. (ECF

Nos. 2963-65). Defendants StarKist and DWI moved to Strike Portions of Plaintiffs' Reply, or in the Alternative, for Leave to File a Sur-Reply in Opposition to Plaintiffs' Motion, joined by the Lion Companies. (ECF Nos. 2966-67). The Court **GRANTS** Defendants' Motion for Leave to File a Sur-Reply and **DENIES** the Motion to Strike.

For the reasons provided herein, Plaintiffs' Application is **DENIED**.

## BACKGROUND

Given the lengthy history of this case, the Court does not provide a full background of the facts here. As relevant to this Order, this case alleges a conspiracy to fix, raise, or maintain the prices of canned tuna sold to Associated Wholesale Grocers, Inc. ("AWG") between May 2004 (or earlier) and July 2015 (or later). (ECF No. 2517 ¶¶ 1–3). The Plaintiffs are composed of four distinct groups, the Direct Action Plaintiffs ("DAPs"), Direct Purchaser Class Plaintiffs ("DPPs"), Indirect Purchaser End Payer Plaintiffs ("EPPs"), and Commercial Food Preparer Plaintiffs ("CFPs") (collectively "Plaintiffs"). Plaintiffs are proceeding against three of the largest domestic producers of packaged seafood productions and their parent companies.

On November 20, 2018, the Court issued a scheduling order that required all parties, except Lion Capital and Big Catch, to complete deposition discovery by January 31, 2019. (ECF No. 1699 at 1 & nn.1-2). In March 2022, after previously being dismissed as Defendants, Lion Capital and Big Catch were reinstated as Defendants. (ECF No. 2781). On September 8, 2022, the Court reopened discovery as to Lion Capital and Big Catch. (ECF No. 2914). The scheduling order stated that the parties must complete the limited discovery, including the depositions of Scott Cameron, Kenneth Worsham, and Stephen Hodge, by November 18, 2022. (*Id.* at 2).

In late October into early November 2022, Plaintiffs' counsel asked

Defendants, the Lion Companies and StarKist, to stipulate to reopening discovery to depose W.H. Lee, Eric Lindberg, and Jae Chul Kim. (ECF No. 2945-3 at 2). Both Defendants quickly denied the request, pointing out that discovery had closed. (*See* ECF Nos. 2945-3 at 2 and 2945-4 at 2).

On November 30, 2022, Plaintiffs filed the *Ex Parte* Application to reopen discovery and modify the scheduling order to take depositions of W.H. Lee, Eric Lindberg, and Jae Chul Kim. (ECF No. 2945). Plaintiffs explained that they recently came across an email (the "2011 Lee email") addressing a meeting (the "2011 meeting") between Eric Lindberg and Jae Chul Kim while preparing for a deposition in this case. (*Id.* at 3). Plaintiffs contend that deposing the three individuals about the 2011 Lee email and 2011 meeting would likely provide ". . . relevant evidence about a number of key issues, including: (1) the relationship between Lion Capital LLP and Dongwon; and (2) the extent of Lion Capital LLP's knowledge regarding competitors' pricing actions." (*Id.* at 10).

Proposed deponent W.H. Lee is the drafter of the 2011 Lee email. He is the Chairman and CEO of one of the world's main tuna suppliers, Fung Chun Formosa Fishery Company ("FCF"). (*See* ECF No. 2945 at 2, 8). During the alleged conspiracy period (*i.e.*, 2004-2015), FCF was one of Bumble Bee's closest business partners. (*Id.* at 8). In 2020, FCF purchased Bumble Bee, and is now Bumble Bee's parent company. (*Id.* at 9 n.4).

Proposed deponent Eric Lindberg was a partner at Lion Capital at the time of the 2011 meeting and 2011 Lee email. (ECF No. 2945 at 3). Mr. Lindberg is no longer affiliated with Lion Capital. (ECF No. 2962 at 5). In January 2019, Mr. Lindberg was deposed by Plaintiffs for seven hours as part of this litigation. (*Id.* at 4). During the deposition, Mr. Lindberg was "extensively" examined about the 2011 meeting to which the 2011 Lee email

refers. (*Id.*). In September 2019, Mr. Lindberg also submitted a declaration that specifically addressed the 2011 meeting. (*Id.*).

The final proposed deponent is Jae Chul Kim, who was the chairman of StarKist's parent company, DWI, at the time of the 2011 meeting and 2011 Lee email. (ECF No. 2945 at 3). Mr. Kim has since resigned, but he retains a position at DWI as an honorary chairman. (*See* ECF No. 2965 at 7). In 2018, Plaintiffs asked this Court to depose Mr. Kim, but the Court denied the request without prejudice, finding that Mr. Kim did not have unique, personal information, and that his testimony would likely be cumulative. (ECF No. 1355).

## APPLICABLE STANDARD

The Court has "broad discretion in supervising the pretrial phase of litigation." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992). Where a movant seeks amendment of a Rule 16 scheduling order, the Court must evaluate whether there is good cause for the amendment. *See* Fed. R. Civ. P. 16(b)(4); *Cervantes v. Zimmerman*, Nos. 17cv1230-BAS-NLS, 18cv1062-BAS-NLS, 2019 WL 1129154, at \*5 (S.D. Cal. Mar. 12, 2019) (movant bears burden of showing good cause to amend scheduling order under Rule 16(b)). This standard "primarily considers the diligence of the party seeking the amendment." *Johnson*, 975 F.2d at 609. Where the amendment would reopen discovery, the good cause standard requires courts in the Ninth Circuit to consider six factors (the "*Schumer* factors"):

1) Whether trial is imminent;

2) Whether the request is opposed;

3) Whether the non-moving party would be prejudiced;

4) Whether the moving party was diligent in obtaining discovery;

5) The foreseeability of the need for additional discovery in light of the

1    time allowed by the scheduling order; and

2       6) The likelihood that the discovery will lead to relevant evidence.

3  *City of Pomona v. SQM North America Corp.*, 866 F.3d 1060, 1066 (9th Cir.

4  2017), citing *United States ex rel. Schumer v. Hughes Aircraft Co.*, 63 F.3d

5  1512, 1526 (9th Cir. 1995), *vacated on other grounds*, 520 U.S. 939 (1997).

6                               **DISCUSSION**

7       Plaintiffs fail to meet their burden of demonstrating good cause to

8  amend the scheduling order and reopen discovery. Five of the six *Schumer*

9  factors weigh against granting an amendment. Considered as a whole, the six

10  *Schumer* factors do not support a finding of good cause to amend the

11  scheduling order.

12       First, trial is not imminent—no trial date has been set.  This is the only

13  factor that favors reopening discovery. *See, e.g., Dixon v. Oleachea*, No. 15-cv-

14  2372-KJM-AC, 2021 WL 5912027, at *1 (S.D. Cal. Nov. 10, 2021) (no trial

15  imminent where trial date not set and court has already resolved motions for

16  summary judgment); *Kaseberg v. Conaco, LLC*, No. 15-cv-1637-JLS-DHB,

17  2017 WL 3149586, at *6 (S.D. Cal. July 25, 2017) (trial not imminent where

18  Court vacated trial date pending resolution of motion seeking modification to

19  scheduling order).

20       The second factor asks only whether the motion seeking amendment is

21  opposed. It is. Several Defendants filed Responses in Opposition to Plaintiffs'

22  Motion. (*See* ECF Nos. 2961-62).

23       The third factor is whether the non-moving party would be prejudiced

24  by the amendment. Here, reopening discovery would prejudice Defendants by

25  requiring them to relitigate costly and time-consuming aspects of the case.

26  Although Plaintiffs state that they would seek to take the depositions

27  remotely with a two-hour limit to reduce costs, Defendants would still be

exposed to significant financial expenses of preparing for three depositions, in addition to the potential of significant travel expenses. Mr. Lindberg resides out of state, in Texas, and Mr. Lee and Mr. Kim reside out of country, in Taiwan and South Korea, respectively. Defendants DWI and StarKist indicated that they would need to fly to South Korea to participate in Mr. Kim's deposition due to Mr. Kim's age and the fact that he does not fluently speak English and would need an interpreter (*See* ECF No. 2961 at 14).

Fourth, Plaintiffs must show that they were diligent in seeking discovery within the original deadline.  Plaintiffs fail to do so. Plaintiffs admit that the 2011 Lee email was produced in 2018. (*See* ECF No. 2965 at 5). The main justification Plaintiffs state for the delayed discovery request is that the 2011 Lee email was produced among millions of other documents throughout this litigation. (*See* ECF No. 2945 at 12). This is no excuse. The Court does not doubt that millions of documents have been produced throughout this case, but Bumble Bee's letter to Plaintiffs notifying them about the 2018 document production appeared among a range of 58,268 documents produced at that time. (*See* ECF Nos. 2961-3 at 2 [Bates Numbers labeled BB_Civil_001223784 though BB_Civil_001282052]).

As Defendants point out, Courts have previously found that parties seeking an amendment to the scheduling order "have not acted diligently when their request is delayed despite 'possess[ing] the documents containing the relevant information.'" *See City of Lincoln v. United States,* No. 2:16-cv-01164-KJM-AC, 2018 WL 3917711, at *6 (E.D. Cal. Aug. 16, 2018). In *Lincoln*, the plaintiff failed to discover a relevant document within their own 81,000-page document production. The plaintiff did not claim to be prevented from accessing or reviewing the documents, but instead pointed to the sheer quantity of documents produced as an excuse for delayed discovery. (*Id*.).

That court stated that plaintiff's delay in discovering relevant documents in its possession highlighted its lack of diligence, despite the voluminous document production. (*Id*.). Although, the facts are slightly different here because Bumble Bee produced the 2011 Lee email to Plaintiffs rather than it being among Plaintiffs own disclosures, it does not change the simple fact that Plaintiffs possessed the relevant document since 2018. The 2011 email going unnoticed for four years, until 2022, while in Plaintiffs' possession, highlights their failure to act diligently.

Plaintiffs also had a second opportunity in 2019 to discover the 2011 Lee email when it was introduced in Christopher Lischewski's criminal trial as an exhibit. (*See* ECF No. 2961 at 12). Mr. Lischewski is the former CEO of Bumble Bee who was convicted of conspiring to fix prices in the canned tuna market (*See United States v. Lischewski*, No. 18-cr-00203-EMC (N.D. Cal.)). Plaintiffs were involved in that trial because several Plaintiff attorneys spoke on behalf of the victims at the sentencing. (*See* ECF No. 2962 at 6). Plaintiffs state that they did not discover the 2011 Lee email during Mr. Lischewski's trial because they were focused on the testimony of Worsham, Cameron, and Hodge. (*See* ECF No. 2965 n.4). This also is no excuse. In both instances, Plaintiffs failed to act diligently.

The fifth factor considers whether the need for this discovery was foreseeable within the time allowed by the scheduling order. The facts indicate that it was foreseeable. Plaintiffs have been aware of and highly interested in the 2011 meeting that the 2011 Lee email describes, for at least three years. During discovery in 2019, Plaintiffs deposed Mr. Lindberg extensively about the 2011 meeting, and Mr. Lindberg submitted a declaration that specifically addressed the 2011 meeting that same year. (*See* ECF No. 2962 at 4). Plaintiffs had the 2011 Lee email in their possession

7

since January 2018. A full year went by before Mr. Lindberg's deposition. Plaintiffs had ample time to discover the document.

The Court acknowledges that Bumble Bee's 2018 production was voluminous, but a simple search for "Eric" or "Kim" (the names of two individuals in the 2011 meeting about whom Plaintiffs were aware) could have supplied Plaintiffs with the 2011 Lee email while discovery was still open.

The sixth factor asks whether the discovery would likely lead to relevant evidence. Evidence is relevant if it has any tendency to make a fact of consequence in determining the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Plaintiffs have asked the Court to depose Mr. Lee, Mr. Lindberg and Mr. Kim, because "the contents of the purported conversation go to the core of Plaintiffs' allegations that Lion Capital's Eric Lindberg, and DWI's Jae Chul Kim participated in and/or ratified the collusion at issue in this litigation, and directly contradict Lindberg's prior deposition testimony." (*See* ECF No. 2945 at 3).

The Court understands that Plaintiffs are highly interested in the 2011 meeting that took place and the 2011 Lee email that followed. The Court also understands that Plaintiffs, unlike Defendants, believe the 2011 Lee email contradicts prior testimony given by Mr. Lindberg about the 2011 meeting. But Plaintiffs are requesting to depose individuals who are unlikely to produce relevant evidence.

First, Plaintiffs wish to depose Mr. Lee, who was the drafter of the 2011 Lee email, but who did not attend the 2011 meeting. Mr. Lee is unlikely to recall an email he sent eleven years ago about a meeting that he did even not attend. Second, Plaintiffs have already deposed Mr. Lindberg about the 2011 meeting, and Mr. Lindberg provided a declaration that specifically addressed

it. Mr. Lindberg is unlikely to offer any new information or recount the eleven-year-old meeting differently than before. Moreover, Mr. Lindberg was not included in the 2011 Lee email, and nothing suggests that he has knowledge of its existence. Similar reasoning applies to Mr. Kim, who is now nearly 90 years old. Mr. Kim is unlikely to recall the details of the 2011 meeting; he was not included in the 2011 Lee email, and no evidence shows that he had knowledge of its existence.

## CONCLUSION

Taken together, the *Schumer* factors weigh heavily against granting Plaintiffs' *Ex Parte* Application. Although trial is not imminent, Plaintiffs give no valid justification or explanation for their failure to pursue this discovery request within the time provided by the scheduling order. Because Plaintiffs do not show that they were diligent in using the time allotted, they have not demonstrated good cause to grant their request. The Court does not reach the parties' arguments concerning service, or Mr. Kim's status as a DWI employee because they are not relevant in assessing whether the scheduling order should be amended. The Motion is **DENIED**.

Plaintiffs filed a Motion to Seal Exhibits 6, 7, and 8, which are attached to the November 30, 2022, Nyovanie Declaration and to related portions of the *Ex Parte* Application. (ECF No. 2943). The Exhibits contain or refer to information that one or more of the Parties previously designated as "Confidential" or "Highly Confidential." (*Id.* at 4). Good cause appearing, the Court **GRANTS** the Motion to File Under Seal and directs the Clerk of Court to file the Exhibits under seal.

/ / /

/ / /

/ / /

1    **IT IS SO ORDERED**.

2    Dated:   January 26, 2023

3

4                                        Hon. Mitchell D. Dembin
                                         United States Magistrate Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

15md2670-DMS-MDD