UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*All Actions* | Case No.: 15md2670 DMS(MSB)<br><br>**ORDER (1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO EXCLUDE FACT-FINDING TESTIMONY AND LEGAL CONCLUSIONS OF PLAINTIFFS' ECONOMISTS, AND (2) DENYING PLAINTIFFS' MOTION TO EXCLUDE CERTAIN TESTIMONY OF DEFENDANTS' PROPOSED EXPERTS** |

This litigation comes before the Court on two of the parties' Daubert motions. Specifically, (1) Defendants' Motion to Exclude Fact-Finding Testimony and Legal

/ / /

/ / /

/ / /

/ / /

/ / /

Conclusions of Plaintiffs' Economists (ECF No. 1979), and (2) Plaintiffs' Motion to Exclude Certain Testimony of Defendants' Proposed Experts (ECF No. 1969).[1]

## I. Defendants' Motion to Exclude Fact-Finding Testimony and Legal Conclusions of Plaintiffs' Economists

There are seven experts at issue in this motion: (1) Winn-Dixie and Bi-Lo's economist Dr. Gareth Macartney, (2) AWG and AFMC's economist Dr. Colin Carter, (3) Affiliated Foods Plaintiffs' economist Dr. Keith Leffler, (4) DAPs' economist Dr. Michael Baye, (5) EPPs' economist Dr. David Sunding, (6) CFPs' economist Dr. Michael Williams, and (7) DPPs' economist Dr. Russell Mangum.

Defendants do not challenge these experts' qualifications, nor do they challenge their methodologies. Instead, Defendants seek to exclude certain portions of the experts' opinions on three grounds: (1) They are offering improper narratives and interpretations of the facts, (2) they are offering testimony about the states of mind of Defendants' and their employees, and (3) they are offering legal conclusions.[2]

In response to Defendants' first argument, Plaintiffs respond that their experts are simply setting forth the facts and data supporting their opinions, which is required by the

///

///

---

[1] There are two additional Daubert/Daubert-type motions pending: The Lion Entities' Motion to Exclude Testimony of Adoria Lim and Marianne DeMario, (ECF No. 3037), and Dongwon's Motion to Strike Adoria Lim's Second Expert Report and Portions of Marianne DeMario's Expert Reports (ECF No. 3066). The Court will address those motions in a separate order.

[2] Defendants also move to exclude the same portions of Plaintiffs' experts' reports under Federal Rule of Evidence 403. Specifically, they argue these portions of the report "will mislead the jury and cause irreparable prejudice to Defendants." In light of the discussion below, the Court rejects Defendants' 403 argument. With the exception of those limited paragraphs identified for exclusion below, the experts' opinions are proper and otherwise admissible. That they are unfavorable to Defendants does not make them misleading or more prejudicial than probative, let alone substantially so.

Federal Rules of Civil Procedure and the Federal Rules of Evidence. Plaintiffs also dispute that their experts are offering any legal conclusions or improper state of mind testimony.[3]

### A. Factual Narratives

"It is well settled that an expert is free to offer testimony to provide a background for the case." *U.S. Info. Systems, Inc. v. Int'l Brotherhood of Electrical Workers Local Union No. 3*, 313 F.Supp.2d 213, 237 (S.D.N.Y. 2004) (citations omitted). *See also Rapp v. NaphCare Inc.*, No. 21-cv-5800-DGE, 2023 WL 5844724, at *8 (W.D. Wash. Sept. 11, 2023) (stating "expert testimony necessarily involves some discussion of factual evidence[.]") However, "an expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence." *Highland Capital Mgmt., L.P. v. Schneider*, 379 F.Supp.2d 461, 469 (S.D.N.Y. 2005) (citation omitted). *See also Aya Healthcare Services, Inc. v. AMN Healthcare, Inc.*, 613 F.Supp.3d 1308, 1322 (S.D. Cal. 2020) (same); *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2018 WL 11446831, at *4 (D. Ariz. Jan. 22, 2018) (stating experts are not permitted to "engage in lengthy factual narratives not necessary to the jury's understanding of their opinions."); *In re Fosamax Products Liab. Litig.*, 645 F.Supp.2d 164, 192 (S.D.N.Y. 2009) (quoting *In re Prempro Prods. Liab. Litig.*, 554 F.Supp.2d 871, 880, 886 (E.D. Ark. 2008)) (stating experts are not "permitted to merely read, selectively quote from, or 'regurgitate' the evidence.") Nor are experts allowed to "'gratuitously comment on factual evidence or present what are essentially lawyer arguments with regard to factual testimony.'" *Rapp*, 2023 WL 5844724, at *8 (quoting *In re Bard IVC Filters Prods. Liab. Litig.*, No. MDL 15-02641-PHX DGC, 2017 WL 11696720, at *3 (D. Ariz. Dec. 22, 2017)). This kind of narrative and commentary on the evidence is not admissible because it is not "'helpful to

---

[3] Plaintiffs also argue that in the antitrust context, experts may opine on whether a defendant's conduct is consistent with collusion, and that the factual basis of an expert's testimony goes to credibility rather than admissibility. These arguments are misplaced as Defendants do not dispute the former argument, and are not challenging the factual bases for Plaintiffs' experts' opinions.

the finder of fact.'" *Sitts v. Dairy Farmers of Am., Inc.*, No. 2:16-cv-00287, 2020 WL 3467993, at *8 (D. Vt. June 24, 2020) (quoting *SourceOne Dental, Inc. v. Patterson Cos. Inc.*, No. 15-cv-5441 (BMC), 2018 WL 2172667, at *7 (E.D.N.Y. May 10, 2018)). Furthermore, "[a]cting simply as a narrator of the facts does not convey opinions based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology." *S.E.C. v. Tourre*, 950 F.Supp.2d 666, 675 (S.D.N.Y. 2013). For these reasons, "[m]ere narration thus fails to fulfill Daubert's most basic requirements." *Id.*[4]

To be admissible under Daubert, an expert's "commentary on any documents and exhibits in evidence" should "be limited to explaining the … context in which [those documents and evidence] were created, defining any complex or specialized terminology, or drawing inferences that would not be apparent without the benefit of experience or specialized knowledge." *In re Fosamax*, 645 F.Supp.2d at 192. "Where an expert uses record evidence 'to describe the setting in which the parties were operating' and 'applies economic principles to determine whether the situation described was one that tended to show economic indicators of' anticompetitive behavior, his or her opinions are admissible." *Sitts*, 2020 WL 3467993, at *8 (quoting *U.S. Info. Sys., Inc. v. Int'l Brotherhood of Elec. Workers Local Union Number 3*, 313 F.Supp.2d 213, 237 (S.D.N.Y. 2004)).

Here, despite Defendants' protestations, none of Plaintiffs' experts is presenting a pure narrative of the facts and evidence untethered from his opinions. Starting with Dr. Macartney, he sets out a lengthy description of the facts in his opening report, but he does so to support his opinion that Plaintiffs' allegations are consistent with Defendants' participation "in a price-fixing cartel that would have successfully elevated prices to anticompetitive levels." (Decl. of Corey Attaway in Supp. of Mot. ("Attaway Decl."), Ex.

---

[4] "In addition, narration of facts of the case may easily invade the province of the jury, providing a separate basis for exclusion." *Id.* (citing *In re Rezulin Prods. Liab. Litig.*, 309 F.Supp. 2d 531, 551 (S.D.N.Y. 2004)).

2 ¶ 83.) Dr. Macartney also engages with the facts in his rebuttal report, but in a way that helps the jury understand his critiques of Defendants' experts' opinions. *See In re Payment Card Interchange Fee and Merchant Discount Antitrust*, 638 F.Supp.3d 227, 311 (E.D.N.Y. 2022) (quoting *Highland Capital*, 379 F.Supp.2d at 469) (denying motion to exclude expert's testimony because expert was "not 'solely … constructing a factual narrative,' but rather using the evidence in the record to critique Plaintiffs' experts' opinions.")

The same may be said of:

*Dr. Carter*. (*See*, *e.g.*, Attaway Decl., Ex. 3 ¶¶ 82-266) (setting out lengthy description of facts in opening report, but doing so to support opinion that "Defendants' conduct is consistent with an anticompetitive conspiracy to fix, raise, and maintain the price of packaged tuna products[.]"); (Attaway Decl., Ex. 14 ¶¶ 135-16, 142) (reciting in rebuttal report facts necessary to support critiques of Defendants' experts' opinions, and to shore up his own opinions in response to Defendants' experts' attacks).

*Dr. Leffler*. (*See*, *e.g.*, Attaway Decl., Ex. 4 ¶¶ 44-48, 54-62) (explaining why certain aspects of tuna industry support Plaintiffs' allegations that Defendants were engaged in a price fixing conspiracy).[5]

*Dr. Baye*. (*See*, *e.g.*, Attaway Decl., Ex. 5 ¶¶ 16-17, 43-44, 149) (stating his review of documents and testimony indicates Defendants engaged in activities consistent with collusion); (Attaway Decl., Ex. 17 ¶ 39) (discussing facts to rebut opinion of Defendants' expert).

*Dr. Sunding*. (*See*, *e.g.*, Attaway Decl., Ex. 18 ¶ 65) (setting out facts "for the econometric analysis that follows"); (Attaway Decl., Ex. 7 ¶¶ 15-20) (setting out facts supporting opinion that Defendants had opportunity to come to price fixing agreements); (Attaway Decl., Ex. 19 ¶ 27) (setting out facts to rebut Defendants' experts' opinions).

---

[5] Defendants also object to Paragraph 7 of Dr. Leffler's rebuttal report, but that single paragraph does not include a factual narrative. (*See* Attaway Decl., Ex. 16 ¶ 7.)

*Dr. Mangum.* (*See*, *e.g.*, Attaway Decl., Ex. 6 ¶¶ 83-87) (setting out evidence of successful collusion); (Attaway Decl., Ex. 23 ¶¶ 110, 114) (setting out facts to rebut Defendants' experts' opinions).[6]

Because none of Plaintiffs' experts engages in a lengthy narrative untethered to his opinions, the Court denies Defendants' motion to exclude based on this argument.

B. State of Mind

Defendants' second argument is that certain portions of Plaintiffs' experts' reports should be excluded because they offer improper opinions on the states of mind of Defendants and their employees. Plaintiffs do not appear to dispute that expert opinions on a party's state of mind are inadmissible,[7] but they do dispute that any of their experts offer this kind of testimony.

*Dr. Macartney.* After reviewing the relevant paragraphs from Dr. Macartney's reports, the Court finds the following paragraphs of Dr. Macartney's opening report offer state of mind testimony, and should be excluded: Paragraph 14 ("certain individuals tried to conceal their conduct by encouraging others to delete emails relating to price increases."); 81 ("Defendants knew their behavior was anticompetitive, because they made efforts to conceal it and disguise their communications."); and 142 (stating Scott Cameron

---

6 Defendants also object to three paragraphs in Dr. Williams's opening report on the ground they "impermissibly interpret fact evidence". (*See* Mem. of P. & A. in Supp. of Mot. at 13 n.13; Attaway Decl., Ex. 8 ¶¶ 24, 55, 66.) But interpreting fact evidence is precisely what experts are called on to do. *See Crow Tribe of Indians v. Racicot*, 87 F.3d 1039, 1045 (9th Cir. 1996) (stating experts interpret and analyze factual evidence). To the extent Defendants disagree with Dr. Williams's interpretation of the evidence, that is a matter for cross-examination. *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 373 (M.D. Fla. 2018). It is not the Court's role to resolve a dispute about the interpretation of evidence "through exclusion of one of the expert's opinions." *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 80 (S.D.N.Y. 2017).

7 If there was disagreement on this point, the case law supports Defendants' argument. *See Highland Capital*, 379 F.Supp.2d at 469 (stating expert's "speculation regarding the state of mind and motivations of certain parties" is inadmissible).

and Chuck Handford were "trad[ing] barbs," and Ken Worsham and Mike White's notes were "sarcastic", and that "Mr. Chan felt the need to reassure and appease Mr. Lischewski in person.")  The following paragraphs from Dr. Macartney's rebuttal report also offer state of mind testimony, and should be excluded:  Paragraph 130 ("Executives from [COSI and Bumble Bee] would have been aware (or been made aware) of this potential for scrutiny."), and 147 (stating StarKist never intended to lower the price of its reduced-size cans).  As to the remaining paragraphs, the motion is denied.

*Dr. Carter*.  After reviewing the relevant paragraphs from Dr. Carter's reports, the Court finds the following paragraphs from Dr. Carter's opening report offer state of mind testimony, and should be excluded:  Paragraph 120 (stating "the three tuna major brans knew that the only way to prevent giving one firm a competitive advantage was to move together.") and 178 ("Dongwon had knowledge of these collusive price increases.").  As to the remaining paragraphs, the motion is denied.

*Dr. Mangum*.  After reviewing the relevant paragraphs from Dr. Mangum's reports, the Court finds Paragraph 31 of the reply merits report contains state of mind testimony ("Defendants knew they could not simply charge whatever prices they want and force downstream customers to accept them"), and should be excluded.  As to the remaining paragraphs, the motion is denied.

As to the remaining experts, Drs. Leffler, Baye and Sunding, the Court denies the motion as none of the relevant paragraphs contain state of mind testimony.

C. <u>Legal Conclusions</u>

Next, Defendants argue for exclusion of certain paragraphs of Plaintiffs' experts' reports because they offer legal conclusions.  Plaintiffs do not appear to dispute that experts may not offer opinions on ultimate issues, but they disagree that their experts have done so.

The Court has reviewed the relevant paragraphs of Plaintiffs' experts' reports, and finds that none of those paragraphs contain legal conclusions.  According, the Court denies the motion to exclude based on this argument.

In sum, and as discussed above, there are a few paragraphs in Plaintiffs' experts' reports that include state of mind testimony. As to those paragraphs, Defendants' motion is granted. As to the remainder of Defendants' arguments, the motion is denied.

## II. Plaintiffs' Motion to Exclude Certain Testimony of Defendants' Proposed Experts

In this motion, Plaintiffs seek to exclude certain testimony from StarKist's and Dongwon's experts Janusz Ordover[8], Andres Lerner, and Robert Daines. None of these experts' qualifications are in doubt. Rather, Plaintiffs assert that certain of these experts' opinions are irrelevant, subject to exclusion under Federal Rule of Evidence 403, and unreliable under Daubert.

### A. Dr. Ordover

Dr. Ordover was tasked with analyzing "the liability claims made by Plaintiffs and their economists." (Ordover Report at 8.) Specifically, he was:

> asked to offer opinions regarding: (i) whether Plaintiffs' economists' analyses can distinguish collusive behavior from the workings of a non-collusive interdependent oligopoly; (ii) whether Plaintiffs' economists have provided any economic evidence that StarKist engaged in cartel activity in time periods outside those covered in its plea agreement with the Department of Justice; and (iii) whether the alleged price-fixing cartel is likely to have been successful and whether the performance of the packaged tuna industry is more consistent with a successful price-fixing cartel or with competition.

(*Id.*) Plaintiffs challenge aspects of Dr. Ordover's opinions in each of these three areas.[9]

---

[8] StarKist substituted Dr. George Korenko for Dr. Ordover (now deceased). Dr. Korenko adopted Dr. Ordover's testimony, expert reports, and opinion with no changes. For the sake of consistency with the briefs, the Court refers to these opinions as Dr. Ordover's rather than Dr. Korenko's.

[9] The CFP Plaintiffs filed a joinder in the other Plaintiffs' motion arguing for exclusion of all paragraphs of Dr. Ordover's Report that reference Dr. Williams's Expert Merits Report on the ground that Dr. Ordover did not review the Williams Report or is extremely unfamiliar with it. Defendants respond that Dr. Ordover reviewed the Williams Report, and that any discrepancies in the citations to the multiple Williams Reports are simply

|  |  |
|---|---|
| 1 | Dr. Ordover discusses the first area at pages 10-23 of his report. To explain their objections to this area, Plaintiffs cite to Paragraphs 18 and 30 of Dr. Ordover's report. In Paragraph 18, Dr. Ordover explains why "[p]arallel pricing in an oligopoly is neither itself evidence of collusion … nor does it allow an economist to distinguish collusive activity from non-collusive oligopoly behavior absent additional evidence, such as evidence of actual agreements among alleged cartel participants." (*Id.* ¶ 17.) In Paragraph 30, Dr. Ordover states that the presence of certain features in an industry "cannot assist a fact-finder in distinguishing non-collusive interdependent conduct and unlawful collusion because the same industry structure can be fully consistent with both collusive and non-collusive behaviors." (*Id.* ¶ 21.) Plaintiffs object to this testimony on the grounds it is irrelevant, speculative, and lacking in any methodology. |

Clearly, Dr. Ordover's opinions on these issues are relevant. And contrary to Plaintiffs' suggestion, Dr. Ordover is not speculating. Rather, he is explaining why it is difficult to discern whether parallel pricing in an oligopolistic market is evidence of collusion or simply oligopolistic behavior. In offering this explanation, Dr. Ordover relies on "[e]conomic theory", (*id.* ¶ 18), which Plaintiffs argue is insufficient. They argue he must use a methodology to support his explanation and opinion, but Plaintiffs are incorrect. In complex cases like this one, "having an expert provide general information can be helpful for the jury." *In re HIV Antitrust Litig.*, No. 19-cv-02573, 2023 WL 3090619, at *14 (N.D. Cal. Mar. 13, 2023). Indeed, the advisory committee notes to Rule 702 state "it might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case." Fed. R. Evid. 702 advisory committee notes. Paragraphs 18 and 30 of Dr. Ordover's report, and this line of testimony, provide precisely this kind of general information about the nature of oligopolistic markets and the difficulties those markets pose in determining

---

citation errors. The record supports Defendants' argument here, and thus the Court denies the CFPs' joinder arguments.

whether conduct is collusive or non-collusive. Thus, the Court denies the motion to exclude Dr. Ordover's testimony on these issues.

Plaintiffs also object to Dr. Ordover's testimony that "there are several very large purchasers of packaged tuna that likely could have disciplined any attempt to materially increase prices above the competitive level." (Ordover Report ¶ 33.) Dr. Ordover offers this statement in the context of discussing industry factors that could facilitate collusive activity, and to rebut Plaintiffs' experts' analysis of those factors. Plaintiffs object to this testimony on the ground it is speculative, but Dr. Ordover is properly offering this observation in rebuttal. *See Perez v. State Farm Mut. Auto. Ins. Co.*, No. C 06-01962 JW, 2011 WL 8601203, at *8 (N.D. Cal. Dec. 7, 2011) ("Rebuttal testimony is proper as long as it addresses the same subject matter that the initial experts address and does not introduce new arguments.") Accordingly, the Court denies the motion to exclude this testimony.

Next, Plaintiffs object to Section IV of Dr. Ordover's report, which is titled, "Economic Theory and Empirical Evidence is Inconsistent with the Alleged Cartel Successfully Raising Prices." (Ordover Report at 43-55.) In this section, Dr. Ordover discusses a number of factors that are indicative of a successful price fixing conspiracy. The first is "the ability to monitor cartel members' pricing to ensure compliance with the collusive agreement." (*Id.* ¶ 62.) Dr. Ordover notes that Plaintiffs' experts "claim that monitoring compliance with the alleged cartel agreements is easy in the packaged tuna industry," but Dr. Ordover disagrees with that claim. Contrary to Plaintiffs' experts, Dr. Ordover notes "that almost no purchasers paid list price and that individually-negotiated off-invoice discounting and promotional trade spending is prevalent." (*Id.* ¶ 64.) The second factor Dr. Ordover considers is market share, in particular, whether there were any attempts "to stabilize the [price-fixing] agreement by fixing the market shares of their participants." (*Id.* ¶ 71.) Dr. Ordover looked to the evidence in this case to conclude "that StarKist's market share was not stable over the alleged conspiracy period and thus not consistent with StarKist's participation in a successful cartel." (*Id.*) Dr. Ordover also "analyzed StarKist's variable margins to see if StarKist earned elevated margins during the

Class Period(s) proposed by DPPs, CFPs, and EPPs." (*Id.* ¶ 79.) Based on his review of the evidence, Dr. Ordover opines "that, even assuming there was a conspiracy that went beyond the timing of certain list price announcements, such a conspiracy was not particularly effective." (*Id.*) Plaintiffs object to all of this testimony on the ground it is not based on any methodology, any methodology used is not reliably applied to the facts or is based on insufficient facts, and it is subject to exclusion under Rule 403.

The Court disagrees with Plaintiffs' arguments. Dr. Ordover's analysis and opinions are offered to rebut Plaintiffs' experts, which Dr. Ordover is entitled to do. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2017 WL 10434367, at *3 (N.D. Cal. Jan. 23, 2017) ("If Dr. Ordover has criticisms regarding Dr. Rao's methodology, as opposed to his damages estimates, he can state them to the jury.") His opinions rely on either the same methodologies employed by Plaintiffs' experts or Dr. Ordover's specialized experience, which he reliably applied to the facts of this case, and his opinions are based on sufficient facts. Also, Plaintiffs have failed to show there are any 403 problems with Dr. Ordover's testimony on these issues. Accordingly, the Court denies the motion to exclude this testimony.

In sum, the motion to exclude Dr. Ordover's testimony is denied.

B.   <u>Dr. Andres Lerner</u>

Dr. Lerner is StarKist's economist. He was tasked with providing "an economic assessment of Plaintiffs' claims that the alleged conduct resulted in higher prices paid by Plaintiffs and the putative classes for packaged tuna products." (Lerner Report at 5.) In performing this task, Dr. Lerner identified errors in Plaintiffs' experts' models and made "corrections" to those models to show Plaintiffs' overcharge estimates are overstated. Plaintiffs move to exclude Dr. Lerner from offering opinions based on the "corrected" models on the ground those models are unreliable.

As stated above with respect to Dr. Ordover, Dr. Lerner is offering rebuttal testimony to Plaintiffs' experts, which he is entitled to do. *See In re CRT*, 2017 WL 10434367, at *3. That Dr. Lerner identifies flaws in Plaintiffs' experts' models, and suggests those flaws

result in incorrect overcharge estimates is not a basis for excluding Dr. Lerner's opinion. *See In re Digital Music*, 321 F.R.D. at 82 ("The fact that Professor Ordover identifies assumptions in Professor Noll's model and points to evidence that those assumptions may be incorrect are not bases for excluding Professor Ordover's opinion.") Plaintiffs have also failed to show that Dr. Lerner's use of "corrections" to Plaintiffs' experts' models renders his testimony unreliable. Accordingly, the Court denies the motion to exclude Dr. Lerner's testimony.

        C.      Robert Daines

Professor Robert Daines is StarKist's expert on corporate governance issues. Plaintiffs assert Professor Daines offers legal conclusions and opinions about Defendants' alter ego liability, which invades the province of the jury. Accordingly, Plaintiffs ask that his testimony be excluded. StarKist disputes that Professor Daines offers any legal conclusions or opinions on ultimate issues. They argue he opines on economic and policy issues regarding corporate governance, and offers rebuttal to the opinions of Plaintiffs' accounting and sociology experts, and that he should not be precluded from offering this testimony.

After reviewing Professor Daines's report, the Court agrees with Defendants that he does not offer any legal conclusions or opinions on ultimate issues in this case. Indeed, the majority of his report offers rebuttal to Plaintiffs' experts, which he is entitled to do. There is a portion of Professor Daines's report that discusses corporate structure and governance, in general, to which Plaintiffs' object, but this testimony would appear to fall within the realm of specialized knowledge and expertise that may be helpful to the jury, and is therefore admissible. Therefore, the Court denies the motion to exclude Professor Daines's testimony.

In sum, Plaintiffs' motion is denied.

**III.   Conclusion**

For the reasons set out above, the Court grants in part and denies in part Defendants' motion to exclude fact-finding testimony and legal conclusions of Plaintiffs' Economists,

12

15md2670 DMS(MSB)

1 and denies Plaintiffs' motion to exclude certain testimony of Defendants' proposed experts. Because detailed rulings on arguments like those raised in the present motions is "difficult, if not impossible, before the trial occurs," *Smilovits v. First Solar, Inc.*, No. CV12-00555-PHX-DGC, 2019 WL 6875492, at *12 (D. Ariz. Dec. 17, 2019), the Court's rulings here are without prejudice to refinement of the parties' arguments as the parties prepare for trial. To the extent the parties file any additional Daubert motions, the Court reminds counsel that their arguments should be deliberate and focused. Counsel should also keep in mind that objections to all witness testimony, including experts, may be addressed outside the presence of the jury and before the witness takes the stand, and can also be addressed during the witness's testimony.

**IT IS SO ORDERED**.

Dated:  December 18, 2023

Hon. Dana M. Sabraw, Chief Judge
United States District Court