Michael J. Flannery (CA Bar 196266)
CUNEO GILBERT & LADUCA, LLP
Two CityPlace Drive, 2nd Floor
St. Louis, MO 63141
Tel: (314) 226-1015
mflannery@cuneolaw.com

Lissa Morgans
Cody McCracken
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Tel: 202.789.3960
lmorgans@cuneolaw.com
cmccracken@cuneolaw.com

*Counsel for Commercial Food Preparer Plaintiff Class*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 15md2670 DMS(MSB) |
| This Document Relates To:<br><br>All Commercial Food Preparer Plaintiff Actions | **MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT WITH DEFENDANTS DONGWON INDUSTRIES CO., LTD. AND STARKIST CO.**<br><br>DATE: May 3, 2024<br>TIME: 1:30 p.m.<br>JUDGE: Hon. Dana M. Sabraw<br>COURT: 13A (13th floor) |

## TABLE OF CONTENTS

I. INTRODUCTION .....1

II. LITIGATION HISTORY AND SETTLEMENT NEGOTIATION BACKGROUND .....2

A. The Class .....3

B. The Settlement Consideration .....4

C. Release of Claims .....4

D. Notice and Claims Administration Process .....5

III. ARGUMENT .....5

A. The Agreement Should Be Preliminarily Approved .....5

1. The Agreement Is the Result of Non-Collusive, Informed, Arm's Length Negotiations .....7

2. The Agreement Does Not Suffer from Any Obvious Deficiencies .....8

3. The Agreement Does Not Provide Preferential Treatment for Segments of the Class or the Class Representatives .....8

4. Fairness of the Plan of Allocation of the Settlement Funds .....9

5. The Agreement Falls Within the Range of Possible Approval .....9

6. The Service Awards for Class Representatives Reflect the Work They Undertook on Behalf of the Class .....10

B. The Court Should Reaffirm the Appointment of Class Counsel .....11

VI. CONCLUSION .....11

# TABLE OF AUTHORITIES

## Cases

*Bickley v. Schneider Nat'l, Inc.*, No. 08-CV-05806-JSW, 2016 WL 4157355 (N.D. Cal. Apr. 25, 2016)........................................................................................6

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011).............6

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................9

*In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015)..........................................................................................11

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..............................7

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015)................11

*In re Tableware Antitrust Litig*, 484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...........6, 10

*Nitsch v. Dreamworks Animation SKG Inc.*, No. 14-cv-04062 (N.D. Cal. 2016)...11

*Officers for Justice v. San Fran. Civ. Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022)...3

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021), *on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022)............................3

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009)................................6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ..................................................6

*Zepeda v. Paypal, Inc.*, No. C 10-1668 SBA, 2015 WL 6746913 (N.D. Cal. Nov. 5, 2015)....................10

**Rules**

Fed. R. Civ. P. 23....................12

**Other Authorities**

Manual for Complex Litigation (Fourth) § 21.632 (2004)....................6

## I. INTRODUCTION

Commercial Food Preparer Plaintiffs ("Plaintiffs"), a certified class of indirect purchasers of Foodservice-Size Packaged Tuna Products ("Packaged Tuna"), seek preliminary approval under Federal Rule of Civil Procedure 23 of a settlement agreement (the "Agreement").[1] Pursuant to the Agreement, Dongwon Industries Co., Ltd. ("DWI") and StarKist Co. ("StarKist"), (collectively "Defendants"), will collectively pay U.S. $3,600,000 (three million six hundred thousand U.S. dollars) minus fees and expenses, to be disbursed to purchasers of Packaged Tuna from Sysco, US Foods, Costco, Wal-Mart, Sam's Club, and/or DOT Foods in the Indirect Purchaser States.[2]

The Agreement is the result of extensive litigation and arm's-length negotiations between the parties. The Agreement will provide substantial monetary relief to Plaintiffs and the certified class as well as injunctive relief as set forth in Plaintiffs' Fourth Amended Complaint with respect to Packaged Tuna.

Furthermore, Plaintiffs and Defendants have devoted significant resources to vigorously litigating pretrial issues, including class certification and expert witness testimony, and preparation for trial. While Plaintiffs have a strong case, it is not without risk. In addition, Defendants are expected to vigorously contest various other aspects of Plaintiffs' case, including impact and damages. As a result, Class Counsel have investigated the facts and law at stake in the case and concluded that

---

[1] "Foodservice-Sized Packaged Tuna Products" shall have the same definition as Paragraph 4 of the Agreement. The Agreement is attached to the concurrently filed Declaration of Michael J. Flannery as **Exhibit A**.

[2] The Indirect Purchaser States are Arizona, Arkansas, California, District of Columbia, Florida, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin. *See* Agreement ¶ 7.

resolving the claims against these Defendants, according to the terms set forth below, is fair, adequate, reasonable, and in the best interests of Plaintiffs and the Class (as defined herein).

Class Counsel, who have litigated numerous antitrust and other class action matters, therefore recommend the Agreement to the Court. Plaintiffs respectfully request an order: (1) preliminarily approving the Agreement with Defendants; (2) staying the proceedings by Plaintiffs against Defendants in accordance with the terms of the Agreement; and (3) authorizing Plaintiffs to provide notice of the Agreement to members of the Class.

## II. LITIGATION HISTORY AND SETTLEMENT NEGOTIATION BACKGROUND

Plaintiffs filed this action on September 11, 2015. On March 24, 2016, the Court appointed Plaintiffs' counsel, Cuneo Gilbert & LaDuca, LLP, Interim Lead Counsel of the Commercial Food Preparer's class. *See* ECF No. 119. Since then, Plaintiffs' counsel engaged in extensive discovery concerning issues of liability, class certification, and damages. Defendants have produced significant amounts of discovery to Plaintiffs, and many depositions have taken place. Class certification motion practice along with expert reports and other related materials totaling more than 1,000 pages have been filed with the Court to date.

On July 30, 2019, the Court granted Plaintiffs' motion for class certification and appointed Cuneo Gilbert & LaDuca, LLP as class counsel. Class Cert. Order, ECF No. 1931. Thereafter, on December 20, 2019, the United States Court of Appeals for the Ninth Circuit granted Defendants' motion requesting permission to appeal the class certification order. Appeal Order, ECF No. 2247. On April 6, 2021, the Ninth Circuit Court of Appeals issued an opinion vacating the Court's order certifying the classes and remanding with instruction to determine the number of uninjured parties in the proposed class. *See Olean Wholesale Grocery Coop., Inc.*

*v. Bumble Bee Foods LLC*, 993 F.3d 774, 792 (9th Cir. 2021), *on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022). Following rehearing en banc, on April 8, 2022, the Ninth Circuit affirmed the Court's order certifying the classes. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 677 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc., On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022). On January 5, 2024, counsel for Plaintiffs and Defendant met at a settlement conference before Magistrate Judge Michael Berg. *See* ECF Nos. 3135, 3138-39.[3] This Motion is a direct result of that settlement conference.

**SUMMARY OF KEY SETTLEMENT TERMS & NOTICE**

**A. The Class**

The Class is defined as follows:

> All persons and entities in 27 named states and D.C., that indirectly purchased packaged tuna products produced in packages of 40 ounces or more that were manufactured by any Defendant (or any current or former subsidiary or any affiliate thereof) and that were purchased directly from DOT Foods, Sysco, US Foods, Sam's Club, Wal-Mart, or Costco (other than inter-company purchases among these distributors) from June, 2011 through December, 2016 (the "Class Period").

Agreement ¶ 12. This Class is identical to the proposed class in the operative complaint and the class that was certified by the Court. *See* Fourth Amended Complaint, ECF No. 1470 at 67; Order Granting Motions for Class Certification, ECF No. 1931.

---

[3] Plaintiffs previously settled against other defendants in this matter, Tri-Union Seafoods LLC D/B/A Chicken of the Sea International ("COSI") and Thai Union Group, *see* ECF Nos. 2898, 2900, and have filed a Motion for Preliminary Approval of Class Settlement concerning Lion Capital (Americas), Inc., Lion Capital LLP, and Big Catch Cayman LP concurrently with this Motion.

**B. The Settlement Consideration**

The Agreement provides that Defendants will pay a settlement amount of $3,600,000 and also agree to appropriate injunctive relief. Agreement ¶¶ 15, 35. Within 30 days after preliminary approval by the Court of the Agreement, Defendants will deposit the total amount $3,600,000 into the escrow account. *Id.* ¶ 25.

**C. Release of Claims**

Once the Agreement is final and effective, the Releasors (as defined by the Agreement), which include Plaintiffs and the Class, will release (i) StarKist; (ii) DWI;; (iii) all of StarKist's and DWI's respective past and present, direct and indirect, parents, subsidiary companies and Affiliates, including the respective predecessors, successors and assigns of StarKist and DWI; and (iv) each and all of the present and former principals, partners, officers, directors, supervisors, employees, agents, stockholders, members, representatives, insurers, attorneys, heirs, executors, administrators, and assigns of each of the persons and entities listed in (i), (ii), and (iii) (collectively, the "Releasees") from the Released Claims (as that term is defined in the Agreement). *Id.* ¶¶ 9, 10, 11, 23-24. The Released Claims do not include:

> (1) any claims made by direct purchasers of Foodservice-Size Packaged Tuna Products; (2) any claims made by end payors that are indirect purchasers of Foodservice-Size Packaged Tuna Products; (3) any claims made by any State, State agency, or instrumentality or political subdivision of a State, as to government purchases and/or penalties; (4) claims involving any negligence, personal injury, breach of contract, false advertising or fraud other than as alleged in the CFP Complaint, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities, or similar claim relating to Foodservice-Size Packaged Tuna Products; (5) claims concerning any packaged seafood product other than Foodservice-Size Packaged Tuna Products; (6) claims under laws other than those of the United States relating to purchases of Foodservice-Size Packaged Tuna Products made by any

> Releasor outside of the United States; and (7) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State. Releasors shall not, after the date of this Agreement, sue or otherwise seek to establish liability against any Releasee based, in whole or in part, upon any of the Released Claims unless the Agreement is, for any reason, not finally approved or terminated.

*Id.* ¶ 23.

### D. Notice and Claims Administration Process

As set forth in the supporting Declaration of Jeanne C. Finegan, APR Concerning Class Member Notification and Claims Administration ("Finegan Decl.")[4]—notice of settlement will be provided directly via mail to the known Class Members. Finegan Decl. ¶¶ 6-10. There will also be supplemental Internet notice, publications in print trade publications and trade e-newsletters, and a press release. *Id.* ¶¶ 11-28. Under Plaintiffs' claim process plan, Class Members will be able to rely upon any previously submitted purchasing data in connection with the COSI Settlement for their *pro rata* share of the Settlement Funds, dispute that amount and add additional claims, or add claims for the first time if a Class Member has no qualifying purchase value on record. *Id.* ¶¶ 7-8. Class Members will be able to access a website dedicated to the notice and claims administration process and have access to a 24-hour toll-free telephone line. *Id.* ¶¶ 30-31.

## III. ARGUMENT

### A. The Agreement Should Be Preliminarily Approved

Federal Rule of Civil Procedure 23(e) requires judicial approval of any compromise or settlement of class action claims. Settlement approval entails multiple steps. It starts with preliminary approval, then class notice and objections, followed by a motion for final approval and fairness hearing. *See Staton v. Boeing*

[4] Attached to the Finegan Declaration are **Exhibits B** and **C** (sample notice postcards), **Exhibit D** (press release), and **Exhibit E** (long form notice).

*Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also* Ann. Manual Complex Lit. § 21.632 (4th ed.). Preliminary approval is not a dispositive assessment of the fairness of the proposed settlement, but rather determines whether the settlement falls within the "range of possible approval." *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 301-302 (E.D. Cal. 2011) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)). If preliminary approval is granted, it establishes an "initial presumption of fairness" and provides that notice may be given to the class. *In re Tableware Antitrust Litig*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted). The "initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." *Officers for Justice v. San Fran. Civ. Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) (citations omitted).

> Preliminary approval of a settlement is appropriate if: 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval.'

*Bickley v. Schneider Nat'l, Inc.*, No. 08-CV-05806-JSW, 2016 WL 4157355, at *1 (N.D. Cal. Apr. 25, 2016) (quoting *Tableware,* 484 F. Supp. 2d at 1079)). The Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (citation omitted).

There are three factors district courts evaluate to assess whether collusion exists:

> (1) when counsel receive a disproportionate distribution of the settlement; (2) when the parties negotiate a clear sailing arrangement (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and (3) when the parties create a reverter that returns unclaimed funds to the defendant.

*Roes, 1-2*, 944 F.3d at 1049 (cleaned up) (citation omitted). Here, none of the collusions factors are present, which weighs in favor of preliminary approval.

**1. The Agreement Is the Result of Non-Collusive, Informed, Arm's Length Negotiations**

The Agreement arises out of extended, informed, arm's-length negotiations between experienced counsel for the parties. *See* Declaration of Michael J. Flannery ("Flannery Decl.") ¶ 4. The parties reached agreement after years of litigation. *Id.* ¶ 2. In that time, Plaintiffs have conducted a significant investigation of the claims, reviewed extensive discovery produced by Defendants, and extensively researched both filed and extensively researched many motions, including class certification, all of which supports a finding that the settlement was adequately informed. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (holding "significant investigation, discovery[,] and research" supported the district court's conclusion "that the Plaintiffs had sufficient information to make an informed decision about the Settlement"). Counsel for both sides are experienced and nationally recognized for competently handling large-scale, complex antitrust class action litigation. *See Smith*, 2015 WL 4498571, at *6; *see also* Flannery Decl. ¶ 2.

The Agreement also brings substantial value to the Class. The cash component of the Agreement, alone, represents about a fourth of the total damages Dr. Williams, the Plaintiffs' testifying economist, calculated to be StarKist's exposure for its own conduct. Additionally, although Plaintiffs' case is strong, Plaintiffs recognize the potential risks. In addition, Defendants were expected to contest impact based on rising fish costs and the extent of damages applicable to this plaintiff group.

The substance of the common fund Agreement also underscores that it is not the result of any collusion or conflict. The Agreement does not include a non-objectionable fee or reverter provision, and counsel is not set to receive a

disproportionate distribution of the settlement. *Cf. Roes, 1-2*, 944 F.3d at 1049. Rather, the Agreement provides that any fee petition from Plaintiffs' counsel must be reviewed and approved by this Court. Agreement ¶ 42. There is no provision allowing for payment of fees separate and apart from the class funds.

**2. The Agreement Does Not Suffer from Any Obvious Deficiencies**

The Agreement is the product of a thorough assessment and evaluation of the strengths and weaknesses of Plaintiffs' case. Flannery Decl. ¶ 3. The parties have litigated important issues in this case for many years and were preparing for trial at the time of settlement. Defendants have produced significant amounts of discovery to Plaintiffs and dozens of depositions have taken place. Plaintiffs and Defendants have produced expert reports, and fully briefed and argued a motion for class certification, that was granted and later affirmed on appeal. With the impending jury trial date scheduled, both sides were preparing motions in limine and trial work and were on the precipice of significant amounts of work on each of those fronts.

Additionally, the Agreement reflects risks that all plaintiffs must consider in continuing to litigate, including defending procedural and substantive pretrial motions and the inherent risks of a jury trial should the case have proceeded that far. Weighing the stage of litigation against the risks that Plaintiffs face in this litigation, there are no obvious deficiencies regarding the Agreement and this factor supports preliminary approval.

**3. The Agreement Does Not Provide Preferential Treatment for Segments of the Class or the Class Representatives**

The Agreement here does not exhibit any preferential treatment towards any class members. All class members who make claims will receive the same reimbursement rate per unit of Packaged Tuna.

**4. Fairness of the Plan of Allocation of the Settlement Funds**

A plan of distribution of class settlement funds must meet the "fair, reasonable and adequate" standard that applies to approval of class settlements. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (citation omitted); *see also In re Zynga Inc. Secs. Litig.*, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015). A plan of distribution that compensates class members based on the type and extent of their injuries is generally considered reasonable. *See Gaudin v. Saxon Mortg. Servs., Inc.*, No. 11-cv-01663, 2015 WL 7454183, at *8 (N.D. Cal. Nov. 23, 2015) ("Such a plan 'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries." (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005))). Like the COSI Settlement, Plaintiffs propose that allocation of the settlement funds be on a *pro rata* basis, based on the type and extent of injury suffered by each class member in those states which permit indirect purchaser antitrust claims. More precisely, the settlement funds will be allocated proportionately to the dollar volume of qualifying purchases made by class members: (1) whose purchase history information is contained in transactional data produced by certain intermediaries or (2) who submit valid claim forms attesting to their qualifying purchases. Finegan Decl. ¶¶ 6-8. There will be no reversion of unclaimed funds to StarKist or DWI.

**5. The Agreement Falls Within the Range of Possible Approval**

To grant preliminary approval, this Court must decide that the Agreement falls within the range of possible approval. *Zepeda v. Paypal, Inc.*, No. C 10-1668 SBA, 2015 WL 6746913, at *1 (N.D. Cal. Nov. 5, 2015); *Tableware*, 484 F. Supp. 2d at 1079. To determine whether a settlement "falls within the range of possible

approval," courts consider "substantive fairness and adequacy" and "plaintiffs' expected recovery balanced against the value of the settlement[.]" *Tableware*, 484 F. Supp. 2d at 1080 (internal quotation marks and citations omitted). The amount of recovery for the class falls within a reasonable range given that the class faces the possibility of no recovery if no impact is found at trial. The Agreement properly accounts for these risks and is inherently equitable and adequate and thus in the approved range for preliminary approval.

**6. The Service Awards for Class Representatives Reflect the Work They Undertook on Behalf of the Class**

The Agreement permits Class counsel to submit an application to the District Court for "incentive awards, plus interest on such attorneys' fees, costs and expenses at the same rate and for the same period as earned by the Settlement Fund (until paid) as may be awarded by the Court (the 'Fee and Expense Award')." Agreement ¶ 42. The Agreement further provides that "Class Counsel reserve the right to make additional applications for Court approval of fees and expenses incurred or likely to be incurred and reasonable incentive awards," which, to the extent awarded, would be paid out of the settlement fund. *Id*. The incentive awards for the class representatives contemplated by the Agreement reflect the work they undertook on behalf of the Class. Class representatives have had an opportunity to review the complaints, communicated with counsel, reviewed their records, engaged in discovery, and sat for depositions. Plaintiffs will propose that each class representative receive an incentive award in the amount of $5,000.

"[I]ncentive awards that are intended to compensate class representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 957 (9th Cir. 2009)). Based on the contributions and commitments by the class representatives, the Agreement

contemplates an award to each class representative. There is no bright line minimum or maximum for service awards, and courts have awarded service awards in the amount sought here. For example, in *Nitsch v. Dreamworks Animation SKG Inc.*, the court granted preliminary approval of class settlement agreements that provided $10,000 for the class representatives. *See Nitsch*, No. 14-cv-04062 (N.D. Cal.), ECF Nos. 338 (motion for preliminary approval of settlement proposing $10,000 service award), 353 (granting motion for preliminary approval). *See also In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (recognizing $20,000 service awards in partial settlement agreements with other defendants and awarding additional service awards in the range of $80,000 to $120,000); *In Re Online DVD-Rental Antitrust Litigation*, 779 F.3d at 943 (affirming approval of "incentive awards of $5,000 each for nine class representatives" as "well within the usual norms of modest compensation paid to class representatives.").

### B. The Court Should Reaffirm the Appointment of Class Counsel

When the Court certified the CFP class, it appointed Cuneo Gilbert LaDuca, LLP as class counsel. *See* Order, ECF No. 1931 at 58-59. Cuneo Gilbert & LaDuca, LLP now requests that the firm's appointment be reaffirmed.

## VI. CONCLUSION

Plaintiffs respectfully request that this Court preliminarily approve the proposed Settlement Agreement and reaffirm the appointment of Cuneo Gilbert & LaDuca, LLP, as Class Counsel for purposes of administering the settlement.

Dated: April 5, 2024

*/s/ Michael J. Flannery*

Michael J. Flannery (CA Bar 196266)
CUNEO GILBERT & LADUCA, LLP
Two CityPlace Drive, 2nd Floor
St. Louis, MO 63141
Tel: (314) 226-1015

mflannery@cuneolaw.com

Lissa Morgans
Cody McCracken
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Tel: 202.789.3960
lmorgans@cuneolaw.com
cmccracken@cuneolaw.com

*Counsel for Commercial Food Preparer Plaintiff Class*