BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile:   619/234-4599

*Class Counsel for the End Payer Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>This Document Relates To:<br><br>*End Payer Plaintiffs Action* | Case No. 15-MD-2670 JLS (MDD)<br><br>**DECLARATION OF ALEX J. TRAMONTANO IN SUPPORT OF *EX PARTE* APPLICATION TO MODIFY SCHEDULING ORDER AND TO FILE END PAYER (CONSUMER) PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT RE: STANDING AND FRAUDULENT CONCEALMENT**<br><br>JUDGE:  Hon. Dana M. Sabraw<br>CTRM:   13A (13th Floor) |

I, Alex J. Tramontano, declare as follows:

1.      I am an attorney in the law firm Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), Class Counsel for the End Payer (Consumer) Plaintiffs ("EPPs" or "Consumers") in this litigation. I have personal knowledge of the matters stated herein, or of the evidence supporting the matters and, if called upon, I could and would competently testify thereto. I submit this declaration in support of this *ex parte* application to modify the scheduling order and leave to file Consumers' motion to for partial summary judgment re: standing and fraudulent concealment. A true and correct copy of Consumers' Motion For Partial Summary Judgment Re: Standing And Fraudulent Concealment (including Appendix A) is attached hereto as **Exhibit 1**. The full evidentiary record attached to the Declaration of Betsy C. Manifold in support of the motion is ***not*** provided but will be completed and filed with the motion if leave to file is granted.  Defendants have access to this evidence.

2.      Each of the 32 State Classes has one or more named Plaintiffs appointed as a Class Representative. ECF 1931(Class Certification Order). During Discovery, Defendants chose to depose about a dozen of the over sixty proposed Class Representatives, each of whom reaffirmed under oath that they purchased cans or pouches of tuna fish during the Class Period.

3.      During the period from January 5, 2024 through April 25, 2024, the Consumers diligently and extensively met and conferred with Defendants in an attempt to resolve numerous evidentiary disputes. These discussions are still ongoing, and will continue through to the trial date. The parties, Consumers, DPPs, Lion, StarKist and Dongwon hold joint weekly meetings to confer via video-conference, and recently increased the frequency to twice per week.

4.      The parties have worked in an attempt to resolve the specific issues giving rise to this application and the underlying motion since March 5, 2024 and these discussions continued through April 25, 2024.

5.      Specifically, on or about March 11, 2024, Plaintiffs requested that

Defendants stipulate to the Consumers' class representatives' standing (*i.e.*, that each representative purchased packaged seafood during the class period, within the state they represent) and that all Plaintiff representatives only learned of the price-fixing conspiracy after the media's announcement of the DOJ's investigation in July of 2015.

6.   Consumers reasonably believed that Defendants would stipulate that at least one Representative Plaintiff had standing in each State and that the Representative Plaintiffs only learned of the price-fixing conspiracy after the media's announcement of the DOJ's investigation in July of 2015.

7.   During the period from March 11, 2024 through April 3, 2024, counsel for Consumers put together a summary for the Defendants and proposed stipulation. At the Defendants' request Plaintiffs put together all relevant deposition testimony, written discovery responses, and previously filed declarations to support their position.

8.   On April 3, 2024, Plaintiff Consumers sent the backup and proposed stipulation to Defendants for consideration. Consumers asserted these facts should be stipulated to, as they are not reasonably in dispute. Plaintiffs' backup chart included a comprehensive spreadsheet summarizing the available evidence for the Defendants.

9.   On April 8th, 15th, and 18th of 2024, the parties then met and conferred over video conferencing extensively to discuss whether a stipulation on this issue could be reached.

10.   On April 16, 2024, Defendants responded with a letter outlining perceived deficiencies in the proposed stipulation.  Then during the meet-and-confer that occurred on April 18, 2024, after the most recent status conference, Defendants refused to consent to a single Class Representative's undisputed standing, and demanded that all Class Representatives testify and be subject to cross-examination on whether they purchased cans of tuna fish during the Class Period and whether they knew of the price-fixing conspiracy before the media's announcement of the DOJ's investigation in July of 2015.

DEC. OF AJT ISO PLTFFS' EX PARTE
No. 15-MD-2670 DMS (MSB)

11.     On Monday April 22, 2024, the parties met and conferred during the weekly video conference. Consumers discussed the Class Representative's deposition testimony, sworn declarations (previously filed), discovery responses and offers to produce new declarations for each class representative. Defendants did not view the stipulation as a viable option.

12.     On April 24, 2024, Defendants' Counsel for StarKist and Dongwon responded to a further email from Plaintiffs, reaffirming those Defendants' opposition to a proposed stipulation or summary judgment.

13.     On the next day, April 25, 2024, I telephonically informed Defendants that Consumers would file an *ex parte* application seeking relief from the Court on both the underlying motions, and the instant *ex parte* application for a two day shortening of time (and waiving reply if granted) to put the hearing on May 22, 2024. I also sent a follow up email to the same effect, on the same day.

14.     Good cause exists for granting the relief sought by this *ex parte* application given the diligence of the parties' efforts to resolve these issues and narrow the scope of issues for trial.  After meeting and conferring with Defendants for months, once an impasse was reached, the Consumers immediately sought the relief requested to file a dispositive motion.

15.     Since the parties will already be in Court for an extended hearing on May 22, 2024, it would save expenses and Court time to shorten time for the Consumers' Motion to Amend the Scheduling Order and Motion for Partial Summary Judgment to be heard on the same date.

16.     At the time of filing, only StarKist and Dongwon have expressed their intent to oppose the *ex parte* relief sought by the instant motion. Lion entities stated no position, as long as their opposition to Plaintiffs underlying summary judgment motion would be due on May 15, 2024.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed this 26th day of April 2024,

1   at San Diego, California.

2

3                           */s/ Alex J. Tramontano*
                           ALEX J. TRAMONTANO

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 1

BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile:   619/234-4599

*Class Counsel for the End Payer Plaintiffs*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | ) Case No.: 15-MD-2670 DMS (MSB) <br> ) MDL No. 2670 <br> ) <br> ) <br> ) **END PAYER (CONSUMER)** <br> ) **PLAINTIFFS' NOTICE OF** <br> ) **MOTION FOR PARTIAL** <br> ) **SUMMARY JUDGMENT RE:** <br> ) **STANDING AND FRAUDULENT** <br> ) **CONCEALMENT** <br> ) |
| This Document Relates To: <br><br> End Payer Plaintiffs' Class | ) <br> ) DATE:          TO BE DECIDED <br> ) TIME:          TO BE DECIDED. <br> ) JUDGE:        Hon. Dana M. Sabraw <br> ) COURT:       13A (13th Floor) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

EPPs' NOT OF MSJ RE: STANDING AND FRAUDULENT CONCEALMNT
CASE No. 15-MD-2670 DMS (MSB)

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on [TO BE DECIDED] or as soon thereafter as the matter may be heard, in Courtroom 4D of the Honorable Dana M. Sabraw, United States District Judge, located at 221 West Broadway, San Diego, California 92101, Courtroom 13A, End Payer Plaintiffs ("EPP") will and hereby do move this Court for partial summary judgment on the following: (1) At least one Class Representative for the Cartwright Class and each State Class has standing based on facts not reasonably disputed by the Defendants; and (2) the Cartwright and State Classes are timely for the entire class period.

This Motion is based upon this Notice of Motion, the Memorandum of Points and Authorities, the accompanying declaration of Betsy C. Manifold, Appendix A, and any reply in further support, the records, pleadings, and files in this action, and such argument which may be presented at the hearing on this motion.

Dated: April [ ], 2024

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:   /s/ *Betsy C. Manifold*
Betsy C. Manifold
Rachele R. Byrd
Alex J. Tramontano
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Mark C. Rifkin
Thomas H. Burt
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

rifkin@whafh.com
burt@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Carl Malmstrom
111 West Jackson, Suite 1700
Chicago, IL 60604
Telephone: 312/984-0000
Facsimile: 312/212-4401
malmstrom@whafh.com

*Class Counsel for the*
*Indirect Purchaser End Payer Plaintiffs*

*SD #30452*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**
750 B. Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/239-4599

*Class Counsel for the End Payer Plaintiffs*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No.: 15-MD-2670 DMS (MDD) MDL No. 2670 |
| | **END PAYER (CONSUMER) PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT RE: STANDING AND FRAUDULENT CONCEALMENT** |
| This Document Relates To: | |
| End Payer Plaintiffs' Class | Honorable Dana M. Sabraw |
| | DATE:      TO BE DECIDED |
| | TIME:      TO BE DECIDED |
| | JUDGE:    Hon. Dana M. Sabraw |
| | COURT:   13A (13th Floor) |

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................1

II. BACKGROUND ...................................................................................3

III. PARTIAL SUMMARY JUDGMENT BEFORE TRIAL

　　IS APPROPRIATE ..............................................................................3

　A. One or More Class Representative for Each State

　　　Class Has Standing ..........................................................................4

　B. Cartwright and State Law Class Claims Are Timely

　　　During the Entire Period ...................................................................8

IV. IN THE ALTERNATIVE, THE CONSUMERS REQUEST 10

　　ADDITIONAL TRIAL HOURS ...........................................................14

V. CONCLUSION ...................................................................................16

# TABLE OF AUTHORITIES

## CASES                                                                 Page(s)

*Bradley v. Jordan,*
  182 So. 3d 439 (Miss. 2016).................................................................11

*Celotex Corp. v. Catrett,*
  477 U.S. 317 (1986) ...........................................................................8

*Conmar Corp. v. Mitsui & Co. (U.S.A.),*
  858 F.2d 499 (9th Cir. 1988) .............................................................10

*Contracting and Eng'g, Inc v. Hanson Aggregates Pac. Sw., Inc.,*
  926 F.3d 528 (9th Cir. 2019) ...............................................................7

*Ellis v. Experience Info. Sols., Inc.,*
  No. 17-CV-07092-LHK, 2018 WL 3036682 (N.D. Cal. June 19, 2018)..............7

*Erhart v. BofI Holding, Inc.,*
  No. 15-CV-02287-BAS-NLS, 2022 WL 119191
  (S.D. Cal., Jan. 12, 2022) ....................................................................3

*Frederick v. Wallerich,*
  No. A15-20252, 2016 Minn. App. Unpub. LEXIS 746
  (Minn. Ct. App. Aug. 1, 2016) *rev'd.* ....................................................11

*Hennegan v. Pacifico Creative Service, Inc*.,
  787 F.2d 1299 (9th Cir.), cert. denied, 479 U.S. 886 (1986) ...............................11

*Haverle v. Buchwald,*
  480 N.S. 2d 351 (Minn. Ct. App. 1992)................................................12

*In Re HIV Antitrust Litig.,*
  No. 19-CV-02573-EMC, 2022 WL 22609107 (N.D. Cal. 2022) .......................4

*In re Magnesium Oxide Antitrust Litig.,*
  No. CIV. 10-5943 DRD, 2011 WL 5008090 (D.N.J. Oct. 20, 2011) ...................5

*In re Processed Egg Products Antitrust Litig.,*
   851 F.Supp.2d 867 (E.D. Pa. 2012) ...................................................5

*Jones v. Koelling,*
   No. 2:14-cv-1372 WBS DB P, 2018 WL 6025850
   (E.D. Cal. Nov. 16, 2018).............................................................4, 6

*Kurin, Inc. v. Magnolia Med. Techs., Inc.,*
   473 F.Supp.3d 1117 (S.D. Cal. 2020)..........................................7

*Marshall v. Pricewaterhouse Coopers LLP,*
   371 Or. 536, 543-44 (2023) ............................................................12

*Mauro v. Fed. Exp. Corp.,*
   No. CV 08-8526DSF(PJWX), 2009 WL 1905036
   (C.D. Cal. June 18, 2009)..............................................................7

*Summers v. Teichert & Son, Inc.,*
   127 F.3d 1150 (9th Cir. 1997) .......................................................8

*Trigg v. Farese,*
   266 So. 3d 611 (Miss. 2018)...........................................................12

*Volk v. D.A. Davidson & Co.,*
   816 F.2d 1406 (9th Cir. 1987) ........................................................11

**STATUTES & RULES**

Cal. Bus. & Prof. Code §§ 16700................................................................4

Cartwright Act .................................................................................2, 4, 8

Fed. R. Civ. P. 1....................................................................................2

Sherman Act, 15 U.S.C. § 1.....................................................................1

## I.     INTRODUCTION

On August 24, 2015, the End Payer Plaintiffs ("EPPs" or "Consumers") filed a class action complaint alleging an antitrust conspiracy by the three domestic tuna brands and their parent companies, StarKist Co., ("StarKist"), Bumble Bee, and Chicken of the Sea ("COSI"), to fix and maintain packaged tuna prices above competitive levels in violation of state laws.[1] These allegations proved to be true. Defendants Bumble Bee and StarKist pled guilty to a criminal conspiracy to violate federal antitrust laws under the Sherman Act, 15 U.S.C. § 1, on August 4, 2017, and November 14, 2018 respectively. *See* ECF 2654 (Order Granting Partial Summary Judgment Against StarKist) (discussing guilty pleas, convictions, and admissions of Defendants).   COSI entered into a leniency agreement with the Department of Justice ("DOJ") Antitrust Division and agreed to cooperate and testify concerning its participation in the "cartel."[2] Several executives of Defendant StarKist and Bumble Bee pleaded guilty to participating in the conspiracy in 2017, and Bumble Bee's Chief Executive Officer was tried and convicted by jury on December 3, 2019, for his role in the conspiracy. *Id*. The Court granted summary judgment against StarKist on liability, finding that StarKist engaged in the price-fixing conspiracy from at least as early as November 2011 and continuing through at least as late as December 2013, but expressly permitting  Plaintiffs to present evidence and argue for a broader conspiracy. ECF 2654 at 27.  The Court also found that "the conspiracy had an actual effect on the market," leaving Plaintiffs to prove their damages at trial. *Id*.

Only three disputed issues remain to be tried: (i) the extent of the conspiracy; (ii) Plaintiffs' damages, and (iii) whether Defendant Dongwon and the Lion Defendants are liable along with Defendant StarKist. Consumers seek to "secure the just, speedy, and

---

[1] *See Mathews v. Bumble Bee Foods*, 15-CV-01878 L (JLB), filed August 24, 2015 (S.D. Cal.); Transfer Order MDL No. 2670 (ECF 1); Amended Complaint (ECF 149).

[2] Bumble Bee filed for bankruptcy protection. ECF 2654.

inexpensive determination" of these issues for the certified class claims at trial.[3]  Fed. R. Civ. P. 1. To eliminate unnecessary, repetitive, and cumulative testimony from at least 30 out-of-state Class Representatives at trial, the Consumers move for partial summary judgment on two factual issues as to which there is no *genuine* factual dispute.

*First*, the Consumers seek a determination that at least one Class Representative for each State Class has standing based on facts not reasonably disputed by Defendants. Each of the 32 State Classes has one or more named Plaintiffs appointed as a Class Representative.[4]  A standing determination by the Court will avoid the presentation of cumulative and repetitive testimony by more than 30 witnesses as to his or her purchases of packaged tuna during the Class Period – a substantial waste of jury time.

*Second*, to invoke the doctrine of equitable tolling, the Consumers ask the Court to find that ordinary consumers, like the Class Representatives, had no knowledge of, and were not on inquiry notice of, the price-fixing conspiracy before it was revealed by the Antitrust Division of the Department of Justice ("DOJ") in July 2015 and that the Cartwright Class and State Classes are, therefore, timely for the *entire* class period.

If the Consumers' request for partial summary judgment as to standing and equitable tolling is denied, they respectfully request an additional ten (10) hours of trial time to permit

---

[3] This Court certified a multistate Cartwright Act class ("Cartwright Class") and multiple individual State Law Classes for 32 States, Districts, and Territories ("State Classes"). The Cartwright Class consists of 31 State Classes.  *See* July 30, 2019 Order re: Class Certification (ECF 1931) ("Class Cert. Order") at 46 (certifying Cartwright Class with 32 states); ECF 2925 at 10:10-17 (excising the South Carolina claimants from the Cartwright Class).

[4] *See* Declaration of Betsy Manifold in Support of End Payer Plaintiffs' Motion To Modify Scheduling Order and for Partial Summary Judmgent Re: Standing and Class Claims ("Manifold Decl."), ¶¶ [ ].

all those individual Class Representatives to testify at trial.[5]

## II.    BACKGROUND

The general background and history of this litigation is well-documented and extensively discussed in prior orders. ECF 2454, 2654. The relevant history (not already discussed above) is as follows.  Based on the allegations in their Sixth Amended Complaint (the "Complaint"), the Consumers seek damages for Class periods generally dating from June 1, 2011, though July 1, 2015 ("Class Period") on behalf of the Cartwright Class and certain State Classes. ECF 1461. ***Through two motions to dismiss certain state law claims on statute of limitations grounds, an extensive Class Certification process demonstrating the uncontested adequacy of the Class Representatives, and two partial motions for summary judgment on statute of limitations grounds, not a single Class Representative was challenged on standing and all of the state law claims in the current Complaint were found to be timely or tolled by either the Discovery Rule or Fraudulent Concealment.***[6]

## III.    PARTIAL SUMMARY JUDGMENT BEFORE TRIAL IS APPROPRIATE

Summary judgment is appropriate where, as here, the motion seeks to pare down the issues for trial. *Erhart v. BofI Holding, Inc.*, No. 15-CV-02287-BAS-NLS, 2022 WL 119191, at *3 (S.D. Cal., Jan. 12, 2022) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh,*

---

[5] To permit this motion for partial summary judgment to be heard on May 22, 2024, Plaintiffs waive their right to file a reply brief in support of this motion.

[6] *See* March 17, 2017 Order re Motions to Dismiss (ECF 295) at 99-101 citing the Court's State Law Statute of Limitations Compendium ("Court SOL Compendium) (holding class claims tolled by either the Discovery Rule or Fraudulent Concealment); Class Cert. Order at 47, 58 (adequacy of Class Representatives uncontested); and February 11, 2022 Order re Summary Judgment on Statute of Limitations Grounds (ECF 2761) (denying Defendants' Motion).  *See also* October 19, 2022 Order re: MSJ on Certain State Law Claims (ECF 2925) at 4-10 and February 7, 2022 Order re Motion for Summary Judgment on Statute of Limitations Grounds (ECF 2748) (denying Defendants' Motion).

*PA v. Ready Pac Foods, Inc.*, 782 F. Supp. 2d 1047, 1052 (C.D. Cal. 2011). Partial summary judgment properly may be granted even as to purported disputed facts if it helps to "narrow the issues for trial." *Jones v. Koelling*, No. 2:14-cv-1372 WBS DB P, 2018 WL 6025850, at *5 (E.D. Cal. Nov. 16, 2018) ("Undisputed facts 8, 9, and 10 are, according to defendant, in dispute. That does not mean plaintiff's understanding of those facts is not accurate . . . plaintiff should not be forced to prove facts that have been considered undisputed for months.").

**A. At Least One Class Representative for Each State Class Has Standing**

The Cartwright Class certified under Cal. Bus. & Prof. Code §§ 16700, *et seq.*, includes purchasers of packaged tuna in 31 states and territories. *See* n. 3, *infra*. The Court already has found that the multistate Class extends the Cartwright Act claim to all purchasers in the 31 jurisdictions. Class Cert. Order at 57. Each Class Representative's purchases of packaged tuna during the Class Period are individually sufficient to satisfy representative standing for the Cartwright Class as a whole. Accordingly, the Consumers can proceed to trial with one or a few Cartwright Class representatives, notwithstanding any standing issues presented as to the individual state classes.[7]  *See* Appendix ("App'x") A (California Class Representatives Mary Hudson, Michael Juetten, John Pels) attached hereto.

---

[7] *See In Re HIV Antitrust Litig.,* No. 19-CV-02573-EMC, 2022 WL 22609107 (N.D. Cal. 2022) ("whether a plaintiff can bring claims on behalf of unnamed plaintiffs under the laws of states in which the named plaintiff does not reside or was injured is a matter of typicality, adequacy, and predominance under Rule 23, ***not Article III standing***," and (2) whether a named plaintiff "'can adequately represent unnamed class members with claims under other states' laws depends on how variable the laws are'" – *e.g.*, "'[i]f the laws are similar enough, or if they can be grouped into a small number of categories with named plaintiffs representing each category, it may be unnecessary to have a named plaintiff from every state'") (citing *Sultanis v. Champion Petfoods U.S. Inc.*, No. 21-cv-00162-EMC, 2021 U.S. Dist. LEXIS 145293, at *21-22 (N.D. Cal. Aug. 3, 2021) (emphasis added)."

The evidentiary record also establishes beyond dispute that during the relevant Class Period, each of the 63 Class Representatives purchased packaged tuna sold by one or more of the Defendants for their own use, and that their purchases were made in their respective State, District, or Territory while they were a resident of that State, District, or Territory (except for Mississippi Class Representative Christopher Todd).[8] *See* App'x A. All 63 Class Representatives each filed a Declaration in Support of Class Certification, and over sixty of them provided sworn answers to Defendants' interrogatories regarding their standing. *Id*. In addition, fifteen Class Representatives testified under oath at depositions noticed by Defendants as to these undisputed facts. *See id*. Based on that deep factual record, Defendants never disputed ***any*** Class Representative's standing during the extensive class certification process. Manifold Decl., ¶¶ [  ].

Defendants are now conjuring a standing dispute when none exists. For example, in the meet and confer process, Defendants questioned (for the first time) whether Ms. Bonnie Vander Laan, the Class Representative for North Dakota, resided in North Dakota since her mailing address was in South Dakota. Manifold Decl., ¶¶ [  ]. They claim that Ms. Vander Laan resides in South Dakota even though she testified under oath at her deposition that she lived in North Dakota (for which she is a Class Representative). Ms. Vander Laan explained during her deposition oath that she lived North Dakota, but the closest post office

---

[8] Mississippi Class Representative Christopher Todd resided in Louisiana and brought packaged tuna in Mississippi for his mother, who lived there. *See* App'x A. Mr. Todd is an adequate Mississippi Class Representative because in-state residency is ***not*** required to bring a claim under Mississippi law. *See In re Magnesium Oxide Antitrust Litig.,* No. CIV. 10-5943 DRD, 2011 WL 5008090 at *8, n. 11 (D.N.J. Oct. 20, 2011) (plaintiffs have standing to sue under Mississippi laws as it provides "no discernible requirement of in-state conduct or effect, or residency") ; *In re Processed Egg Products Antitrust Litig.*, 851 F.Supp.2d 867, 890 (E.D. Pa. 2012) (plausible construction of Mississippi statutory language "does not require cognizable injury be limited to residents' injuries or injuries suffered within the state").

to her farm was in South Dakota. *Id*. Ex. [   ].  Her mailing address was South Dakota, but she lived in North Dakota. *Id*. Without *any* reason to believe that Ms. Vander Laan, who is 83 years old and has lived in North Dakota for the last 60 years, gave false deposition testimony, Defendants insist she lives in South Dakota. To put Defendants' baseless accusations to rest, Consumers provide a copy of Ms. Vander Laan North Dakota property tax record, which shows *conclusively* that her farm (where she has resided for 20 years) is in Emmons County, North Dakota and she pays taxes in North Dakota.  *Id*., Ex. [   ].  Ms. Vander Laan is a resident of North Dakota.[9] Had Defendants bothered to consult the public record before making unfounded accusations of dishonesty, this issue would have ended.

When granting the Consumers' motion for class certification, the Court relied on these declarations (which were *unchallenged* by Defendants) and held, "Declarations by the EPP Representative from each state *proves* adequacy." Class Cert. Order at 58 (emphasis added). *See also Id.* at 47:19 ("Defendants do not contest that EPPs meet Rule 23(a) requirements.")   The Class Representatives provided such a sworn declaration, and Defendants had ample opportunity to "cross-examine" each of them on their standing but made a strategic choice *not to do so*. This deliberate choice does not mean the Court should provide the Defendants additional opportunities to dispute facts that have been considered undisputed for years. *See Jones v. Koellig*, 2018 WL 6025850, at *5. Any further debate as to the uncomplicated and non-controversial factual submissions proving standing (*i.e.*, one or more purchases of packaged tuna during the Class Period) would be redundant and thoroughly unnecessary at trial. Nonetheless, Defendants now recast these straightforward sworn declarations – which the Court previously held "proves" their standing – and their testimony under oath and verified discovery responses as self-serving and insufficient to

---

[9] Another North Dakota Class Representative, Tya Hughes, indisputably resides in North Dakota and purchased tuna products during the relevant Class Period. *See* App'x A (Hughes), making the baseless challenge to Ms. Vander Laan's residency pointless.

support a stipulation of uncontested fact for trial. A parade of Consumer Class Representatives to establish something at trial that is not genuinely disputed by Defendants is a waste of jury time, strains Court resources, and is a substantial and unnecessary expense for the Classes.[10]

Courts in the Ninth Circuit have held that issues intertwined with class certification are precluded from being relitigated at trial. In *Mauro v. Fed. Exp. Corp.*, No. CV 08-8526DSF(PJWX), 2009 WL 1905036, at *4 (C.D. Cal. June 18, 2009), the court barred the parties from raising issues relating to the previously certified class, finding that all parties had a full and fair opportunity to litigate the issue previously. *See also Contracting and Eng'g, Inc v. Hanson Aggregates Pac. Sw., Inc.*, 926 F.3d 528, 532 (9th Cir. 2019) ("[S]tanding is the threshold issue in any suit. If the individual plaintiff lacks standing, the court need never reach the class action issue."); *Ellis v. Experience Info. Sols., Inc.*, No. 17-CV-07092-LHK, 2018 WL 3036682, at *5 (N.D. Cal. June 19, 2018) (finding that a named plaintiff who lacks standing is necessarily an inadequate class representative and their claim is necessarily atypical.) This Court already issued its judgment regarding standing for 65 Class Representatives when it certified the 32 State Classes. *See* Class Cert. Order at 46. Accordingly, the facts that led this Court to find the Class Representatives were adequate, including that their declarations proved their standing, should sufficiently establish the same facts for trial.

The Class Representatives have met their burden to show their standing. Now the burden shifts to Defendants to produce admissible evidence showing that a genuine issue

---

[10] The pertinent facts for each Class Representative, previously determined as adequate by this Court, and not contested by Defendants, are summarized in Appendix A. Consumers provided a similar list (different format) of undisputed facts along with citations to relevant source materials to Defendants. Defendants' current position is that, at a minimum, a Class Representative for each State Class must appear at trial to testify as to standing. Manifold Decl., [   ].

of material fact exists as to standing. *Kurin, Inc. v. Magnolia Med. Techs., Inc.*, 473 F.Supp.3d 1117, 1127 (S.D. Cal. 2020) (*citing Nissan Fire & Marine Ins. Co. v. Fritz. Cos.*, 210 F.3d 1099, 1103 (9th Cir. 2000). "A mere scintilla of evidence will not be sufficient to defeat a properly supported motion for summary judgment." *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997) (citation and internal quotations omitted). If the non-moving party fails to make this showing, the moving party is entitled to summary judgment. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). But not even a "mere scintilla" of evidence is present. Through the extensive meet and confer process, Defendants offered ***nothing*** that even remotely suggests the sworn declarations, deposition testimony, and sworn discovery responses attesting to each Plaintiff's standing were untruthful in any respect or that the Court's prior finding of standing should be disturbed.

Because the Class Representatives standing is not reasonably disputed by Defendants and is supported as a matter of law by the Class Certification Order (ECF 1931), summary judgement on this issue is appropriate and necessary to narrow the issues for trial.  This finding will avoid the waste of substantial jury time and benefit the Classes, the Court, and all Parties involved in trial.

**B. Cartwright and State Law Class Claims Are Timely During the *Entire* Period**

Plaintiffs filed their complaint on August 24, 2015, shortly after the DOJ announced its comprehensive investigation of the tuna cartel in July 2015. On the question of equitable tolling, the sole factual issue regarding the timeliness of the Consumers' claims and their ability to bring claims for the ***full*** Class Period is whether they had actual or inquiry notice of Defendants' price-fixing conspiracy ***prior*** to DOJ's announcement. The relevant injury period is generally June 1, 2011, through July 15, 2015. For the Cartwright Class and certain State Classes, at issue is approximately only 85 days at the beginning of the Class Period, from June 1, 2011, to August 24, 2011. [11] *See* the Court's SOL Compendium (ECF

---

[11] Each member of the Cartwright Class has a Cartwright Act claim notwithstanding the

295 at 99-101) (applying either the discovery rule or fraudulent concealment to toll statute of limitations).[12]

On February 7, 2022, the Court denied Defendants' motion for partial summary judgment against the DAPs on the question of inquiry notice. *See* ECF No. 2748 at 7-11 (finding evidence of coordinated pretextual public statements regarding can downsizing and price increases, document alteration and destruction, clandestine meetings, and other acts of obfuscation by Defendants). Next, on February 11, 2022, the Court then denied Defendants' motion for partial summary judgment against the EPPs on statute of limitation grounds, again finding "triable issues of fact" on that same basis. ECF No. 2761 at 5. The Court also noted that "since filing the complaint at issue, Defendants have pled guilty to participation in an antitrust conspiracy. . . . ***Of course, the essence of such a conspiracy is to mislead.***" *Id.* (emphasis added).

The Court specifically rejected Defendants' argument that the EPPs were on inquiry notice of their claims as early as July 2008 when StarKist, Bumble Bee, and Chicken of the Sea all "downsized their packaged tuna cans from six ounces to five ounces." *Id.*[13] To

---

member's state of residence or purchase.

[12] The five states with a statute of limitations of five years or more (Arkansas, Missouri, Vermont, Maine, and Wisconsin) are timely on their face. ECF 295 at 76, n. 26 (Vermont), 102 (Maine and Wisconsin not time barred). There is no statute of limitations issue for Iowa, Kansas, Maine or Rhode Island because their relevant Class Periods correspond with the states' statute of limitations. *See* Complaint, ¶¶s 141(i) (Iowa starts August 25, 2011); (j) Kansas starts August 25, 2012); (k) (Maine starts August 25, 2009), (y) (Rhode Island starts July 15, 2013).

[13] The Court previously denied Defendants' motion to dismiss on the exact same grounds. ECF No. 2761 at 7 (quoting *In re Packaged Seafood Prods. Antitrust Litig.,* 242 F.Supp.3d 1033, 1099-1100 (S.D. Cal. 2017) (Sammartino, J.) ("[T]he most a reasonable EPP . . . Plaintiff could have known prior to the investigation announcement was that prices for tuna were going up and can size was shrinking. These facts alone would ***almost certainly be insufficient to put Plaintiffs on notice that they should investigate the possibility of a tuna cartel***.")) (Emphasis added). The Court chided Defendants for repeating their

the contrary, the Court accepted what was "**undisputed**: EPPs are 'ordinary consumers' who could only observe retail prices of packaged seafood," and thus lacked knowledge of any "'red flags' that would put a reasonable person on inquiry notice of a massive antitrust scheme (a "tuna cartel") that was **only uncovered years later**—through the investigative resources of the federal government (announced in July 2015) and its subsequent indictments. *Id*. (emphasis added) (citing ECF No. 2654)." A diligent examination of potential misconduct is only warranted where "facts exist that would excite the inquiry of a reasonable person." *Conmar Corp. v. Mitsui & Co. (U.S.A.),* 858 F.2d 499, 504 (9th Cir. 1988). The Court found that no due diligence was required because "there is a genuine issue of material fact whether the facts publicly available were sufficient to excite [plaintiff's] inquiry." *Id*. As the Court said, "to charge [ordinary consumers] with inquiry notice in 2008 of an antitrust conspiracy that was revealed by DOJ in July 2015 **is a bridge too far**." *Id*. at 8 (emphasis added).

   ***Nothing has changed since then***. No Consumer ever testified to knowing of the criminal price-fixing conspiracy. In addition to those Plaintiffs who were deposed, many of the Consumers have now submitted signed declarations stating they were unaware of the price-fixing conspiracy before the DOJ announcement in July 2015. *See* App'x A (citing declarations and sworn testimony). Even more importantly, despite being asked on two or three occasions by Plaintiffs' counsel during the lengthy meet and confer process, Defendants have not identified **any** facts in the public record that might put an ordinary consumer on inquiry notice of the massive price-fixing conspiracy or "excite" their inquiry before it was revealed by DOJ in July 2015. Manifold Decl., [     ]. Apart from the can-resizing in 2008 – which the Court already found did **not** put Plaintiffs on inquiry notice

---

argument without any new substance: "Repackaging the same argument at a later stage of the proceedings—through deposition testimony and on a summary judgment motion—does not make it any more persuasive." *Id*.

of the price-fixing conspiracy [14] – the record has absolutely **no evidence** of any "red flags" exciting or giving rise to a duty of inquiry. Defendants' statute of limitations argument – an artificial dispute over less than three months at the beginning of the Class Period – remains **a bridge too far**. Like their manufactured dispute over Ms. Vander Lann's residence, the dispute over actual or inquiry notice should not have been raised.

Under the equitable doctrine of fraudulent concealment, the applicable statute of limitations is tolled "if the plaintiff proves the defendant fraudulently concealed the existence of the cause of action so that the plaintiff, acting as a reasonable person, did not know of its existence." *Hennegan v. Pacifico Creative Service, Inc*., 787 F.2d 1299, 1302 (9th Cir.), cert. denied, 479 U.S. 886, 107 S. Ct. 279, 93 L. Ed. 2d 254 (1986). To establish fraudulent concealment, a Plaintiff must prove (1) Defendants fraudulently concealed the conspiracy, (2) Plaintiff did not discover the facts which form the basis of the claim, and (3) Plaintiff exercised due diligence in attempting to discover the facts. See *Volk v. D.A. Davidson & Co*., 816 F.2d 1406, 1415-16 (9th Cir. 1987).  The relevant state fraudulent concealment laws were previously provided to the Court. *See* ECF 231-1 at 32-35 (Appendix II: State Fraudulent Concealment Law). *See also Id.* at 37-45. (Appendix III: State & Territory Discovery Rules). [15]  **The applicable equitable doctrine for each of the**

---

[14] *See supra* n.13.

[15] For the Court's convenience, Appendix II and III are also attached as Ex. [ ] to the Manifold Declaration.  Consumers' counsel review the caselaw in the Appendix and all remain good case except for the following: (i) In Appendix II, *Frederick v. Wallerich,* No. A15-20252, 2016 Minn. App. Unpub. LEXIS 746, at *9-10 (Minn. Ct. App. Aug. 1, 2016) was reversed.   However the elements of fraudulent concealment remain unchanged: "To establish fraudulent concealment, a plaintiff must prove there an affirmative act or statement which concealed a potential cause of action, that the was known to be false or was made in reckless disregard of its truth or falsity, and that the concealment could not have been discovered by reasonable diligence."  *Haverle v. Buchwald,*  480 N.S. 2d 351, 357 (Minn. Ct. App. 1992); and in Appendix III, for Mississippi, *Bradley v. Jordan,* 182 So. 3d 439, 440-41 (Miss. 2016) is replaced by *Trigg v. Farese,*  266 So. 3d 611 (Miss.

***State Classes listed in Appendix II (previously submitted to the Court) all contain the same three essential elements identified by the Ninth Circuit***. *Id*.  For example, as to the first prong, Defendants "wrongfully conceal[ed][16]" or committed a "positive" or "affirmative" acts of fraud,[17] or successfully concealed the fraud,[18] or knew of the wrongful act and concealed it from Plaintiffs.[19]  As to the second and third prong, which parallels the Discovery Rule standards all of the States require a showing that Plaintiff did not know about the price-fixing conspiracy and exercised diligence.  *See* ECF 231-1 at 32-35.  For the Discovery Rule, the second and third prong apply to all of the States and satisfy the requirements of the equitable tolling. *See* ECF 231-1 (Appendix III).

The "factual dispute" on the question of inquiry notice that the Court noted in denying Defendants' motions for partial summary judgment is now entirely one-sided and ripe for summary adjudication. When pressed to identify ***any*** facts that might put an ordinary consumer on inquiry notice of the massive price-fixing conspiracy or to "excite" their inquiry before it was revealed by DOJ in July 2015, ***Defendants were empty-handed***. There are no facts that would put any consumers on inquiry notice or "excite" their inquiry.

As to the first prong, there is overwhelming evidence in the record that Defendants affirmatively, knowingly, and actively concealed the criminal price-fixing conspiracy prior to the DOJ's announcement in 2015.  For example, Steve Hodge testified that ███████

---

2018) (under the discovery rule, the limitations period starts to run when a party acting with reasonable diligence could have discovered his injury); for Oregon, the case was superseded by statute and should be replaced by *Marshall v. Pricewaterhouse Coopers LLP,* 371 Or. 536, 543-44 (2023) (a statute of limitations does not begin to run until the injured party knows or should know that it has been injured).

[16]  See ECF 231-1 at 32, 35 (Arizona, Oregon).

[17] *See* ECF 231-1 at 32-36 (Arkansas, D.C., Illinois, Masschusetts, Minnesota, Missippi, Missouri, Nebraska, South Dakota, Viriginia, West Virginia)

[18] *See* ECF 231-1 at 32-36  (California, Florida, Michigan, New Hampshire, New York, North Carolina, North Dakota)

[19] *See* ECF 231-1 at 35, 36. (New Mexico, Utah, Vermont).

1

2

3

4

5

6 In addition, Ken Worsham testified about a dinner meeting with

7

8

9

10 Steve Cameron of Bumble Bee testified that

11 he was once instructed

12

13

14

15 Multiple emails also confirmed Defendants' efforts to conceal the criminal price-fixing

16 conspiracy. For example, on March 12, 2012, Andrew Choe

17

18

19 Manifold Decl., Park Ex. 660 & 660E. On January 18, 2012, Tucker sent Bumble

20 Bee's

21

22 Manifold Decl., White Ex. 1498.  On

23 August 18, 2011, Chuck Hanford (StarKist) sent Scott Cameron (Bumble Bee) an email

24

25 Manifold Decl., Ex. 2834.  Mr. Cameron

26 *Id.*

27

28

1    Prior to the DOJ's announcement in 2015, when Defendants announced price increases,

2    they often blamed price increases on other factors (such as rising fish costs), but never told

3    customers of the criminal price-fixing conspiracy. ███████████████████████

4    ██████████████████████████████████████████████████████████

5    ██████████████████████ Manifold Decl., ███████████████. The announcement did

6    not mention the criminal conspiracy.

7    The record is replete with additional instances of active, knowing, affirmative efforts to

8    conceal the criminal conspiracy. While fraudulent concealment might raise a disputed

9    question of fact, it is not in this case. The record is ***devoid*** of evidence that Defendants ever

10   disclosed the criminal conspiracy, the "essence" of which the Court already acknowledged

11   "***is to mislead***." ECF No. 2761 at 5 (emphasis added). Because the evidence of fraudulent

12   concealment is pervasive and fully one-sided, the Court should find that Defendants

13   actively concealed the criminal conspiracy prior to the DOJ investigation.

14   These affirmative acts to conceal, together with the declarations and deposition

15   testimony in the record attesting to the fact that many Class Representatives had no actual

16   knowledge of the criminal conspiracy before the DOJ announcement, is conclusive on the

17   question of equitable tolling. Accordingly, the Court should grant partial summary

18   judgment to the EPPs, finding: (i) no Class Representative knew of the massive price-fixing

19   conspiracy before it was revealed by DOJ in July 2015; (ii) there were no facts in the public

20   record to put an ordinary consumer on inquiry notice of the conspiracy or to excite their

21   inquiry; and (iii) the Consumers' claims are timely for the *entire* Class Period.

22   Summary judgment as to the equitable tolling of Cartwright and State Classes is

23   appropriate.

24   **IV.    IN THE ALTERNATIVE, THE CONSUMERS REQUEST TEN**
         **ADDITIONAL TRIAL HOURS**

25

26   If the Court declines to grant summary judgment to Plaintiffs on their standing, the

27   Consumers respectfully request that they be given ten additional hours of trial time to

28

permit them to call at least one Class representative from each of the 32 states included in State Classes, and that the jury be instructed the Defendants insisted that Consumers put all theduplicative, undisputed evidence on at trial.

When Plaintiffs estimated that this case could be tried in two weeks, the Consumers expected to call only three or four Class Representatives to describe their experiences in **short** testimony lasting no more than five or ten minutes each. The EPPs did not anticipate that Defendants would insist that they call to the stand Class Representatives for all 32 states to tell essentially identical stories to the jury. They had no reason to expect that Defendants would waste valuable clock time – or, more importantly, the Court's and the jury's time – on relatively unimportant testimony. Previously, during discovery, Defendants chose to depose only a dozen Class Representatives, each of whom reaffirmed under oath that they purchased cans or pouches of tuna fish during the Class Period. Defendants did not challenge any Class Representative's individual standing, and they did not ask a single Class representative whether he or she was aware of the price-fixing conspiracy before DOJ announced its investigation on December 3, 2015.

However, during the meet-and-confer that occurred on April 18, 2024, after the most recent status conference, Defendants refused to consent even to those dozen Plaintiffs' undisputed standing, and demanded that all Class Representatives testify and be subject to cross-examination on whether they purchased cans of tuna fish during the Class Period and whether they knew of the price-fixing conspiracy before the DOJ's announcement. Manifold Decl., [ ]. Plaintiffs are prepared to provide that testimony, but what they expected would require no more than 15 to 30 minutes of their allotted trial time will require closer to 10 hours of trial time to satisfy Defendants' unreasonable and unwarranted demand by calling a parade as many as sixty consumer witnesses to the stand to say the exact same thing: that they purchased cans or packages of tuna fish in 32 different states during the Class Period, and that they were unaware of the price-fixing conspiracy when they did so.

That testimony will serve no practical purpose. However, it will deprive Plaintiffs

of valuable time they need to present substantive evidence on the primary issues left to be tried: the scope and duration of the conspiracy (and its lingering impact on the market), the liability of Dongwon and the Lion defendants, and the amount of their damages. It also risks creating an unfavorable impression on the jury, who are likely to hold that enormous waste of their time against Plaintiffs. No doubt, Defendants are well aware of these effects.

If the Court requires the Consumers to put on that evidence – which they are fully prepared to do – then it should grant Plaintiffs ten additional hours of trial time to satisfy Defendants' demand. In addition, to avoid penalizing Plaintiffs for any negative perception the jury likely will have, Plaintiffs also request an instruction explaining to the jury that Defendants insisted that the Consumers offer live testimony from every Class Representative to confirm their purchases of packaged tuna fish during the Class damages period so that the jury may lay any blame for that colossal waste of time where it belongs.

## V.    CONCLUSION

Based on the analysis, the Consumer Plaintiffs respectfully request that the Court grant their motion for partial summary judgment or, in the alternative, permit Plaintiffs to have 10 additional hours of trial time and instruct the jury accordingly.

Dated: April 26, 2024

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:    */s/ Betsy C. Manifold*

Betsy C. Manifold
Rachele R. Byrd
Alex J. Tramontano
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: (619) 239-4599
Facsimile: (619) 234-4599
Email: manifold@whafh.com
Email: byrd@whafh.com
Email: tramontano@whafh.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Mark C. Rifkin
Thomas H. Burt
270 Madison Avenue
New York, New York 10016
Telephone: 212/545-4600
Facsimile: 212/545-4653
Email: rifkin@whafh.com
Email: burt@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Carl Malmstrom
111 West Jackson, Suite 1700
Chicago, IL 60604
Telephone: 312/984-0000
Facsimile: 312/212-4401
Email: malmstrom@whafh.com

*Class Counsel for the*
*Indirect Purchaser End Payer Plaintiffs*

DOC#30445

**Appendix A in Support of End Payer Plaintiffs' Motion for Partial Summary Judgment**

*In re: Packaged Seafood Products Antitrust Litig.*, No. 3:15-md-2670-DMS

| State/District | Class Representative | Issue | Evidence |
|---|---|---|---|
| Arizona | Erica Rodriguez | Standing | Ex. 16 to Declaration of Betsy Manifold ("Manifold Decl.") at 8; ECF No. 1130-7, Ex. 51 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 95 |
| | Tina Grant | Standing | *See* Manifold Decl., Exs. 17–18; ECF No. 1130-5, Ex. 24 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 96 |
| | Tya Hughes | Standing | *See* Manifold Decl., Ex. 67; ECF 1130-5, Ex. 28 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 135 |
| Arkansas | Kim Eason (f/k/a Kim Craig) | Standing | *See* Manifold Decl., Ex. 1 at 27:4–6, 27:20–23, 28:19–21, 34:2–37:3; Manifold Decl., Ex. 19; ECF No. 1130-4, Ex. 12 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 97 |
| | Kathleen Garner | Standing | *See* Manifold Decl., Ex. 20; ECF No. 1130-5, Ex. 21 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 98 |
| California | Mary Hudson | Standing | *See* Manifold Decl., Ex. 2 at 9:15–18, 32:14–17, 34:6–35:22, 40:1–8, 40:11–14, 49:25–50:6, 51:8–24; ECF No. 1130-5, Ex. 27 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 99 |

| State/District | Class Representative | Issue | Evidence |
|---|---|---|---|
| | Michael Juetten | Standing | *See* Manifold Decl., Exs. 21–22; ECF No. 1130-6, Ex. 33 at ¶¶ 2–3 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 100 |
| | John Pels | Standing | *See* Manifold Decl., Ex. 23; ECF No. 1130-7, Ex. 46 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 101 |
| Florida | Barbara Blumstein | Standing | *See* Manifold Decl., Ex. 24; ECF 1130-4, Ex. 5 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 102 |
| | Edgardo Gutierrez | Standing | *See* Manifold Decl., Ex. 25; ECF 1130-5, Ex. 25 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 103 |
| | Zenda Johnston | Standing | *See* Manifold Decl., Ex. 26–27; ECF 1130-6, Ex. 32 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 104 |
| | Valerie Peters | Standing | *See* Manifold Decl., Ex. 28–29; ECF 1130-7, Ex. 48 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 105 |
| Hawaii | Gloria Emery | Standing | *See* Manifold Decl., Exs. 30–31; ECF 1130-5, Ex. 17 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 106 |
| Iowa | Carla Lown | Standing | *See* Manifold Decl., Ex. 3 at 11:7–11, 27:6–28:6, 48:4–17; ECF 1130-6, Ex. 36 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 107 |
| Kansas | Brian Depperschmidt | Standing | *See* Manifold Decl., Exs. 32–33; ECF 1130-4, Ex. 14 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 108 |

| State/District | Class Representative | Issue | Evidence |
|---|---|---|---|
| | Lisa Hall | Standing | *See* Manifold Decl., Ex. 4 at 13:12–14, 14:4–7, 14:16–19, 18:2–11, 28:1–24; ECF 1130-5, Ex. 26 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 109 |
| Maine | Greg Stearns | Standing | *See* Manifold Decl., Ex. 34; ECF No. 1130-7; Ex. 56 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 110 |
| | Thomas E. Willoughby III | Standing | *See* Manifold Decl., Exs. 35–36; ECF 1130-8, Ex. 64 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 111 |
| Massachusetts | Scott Caldwell | Standing | *See* Manifold Decl., Exs. 37–38; ECF 1130-4, Ex. 8 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 112 |
| | Sundé Daniels | Standing | *See* Manifold Decl., Exs. 39–40; ECF 1130-4, Ex. 13 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 113 |
| Michigan | Louise Adams | Standing | *See* Manifold Decl., Exs. 41–42; ECF 1130-4, Ex. 1 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 114 |
| | Barbara Olson | Standing | *See* Manifold Decl., Ex. 5 at 8:8–9:6, 20:5–7, 32:16–34:10, 37:25–38:9; ECF 1130-6, Ex. 44 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 115 |
| Mississippi | Christopher Todd | Standing | *See* Manifold Decl, Exs. 43–44; ECF 1130-7, Ex. 58 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 116 |

| State/District | Class Representative | Issue | Evidence |
|---|---|---|---|
| Minnesota | Laura Childs | Standing | *See* Manifold Decl., Ex. 6 at 13:2–19, 32:17–33:18; ECF 1130-4, Ex. 10 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 117 |
| | Rob Etten | Standing | *See* Manifold Decl., Exs. 45–46; ECF 1130-5, Ex. 18 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 118 |
| Missouri | John Frick | Standing | *See* Manifold Decl., Exs. 47–48; ECF 1130-5, Ex. 20 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 118 |
| | Steven Kratky | Standing | *See* Manifold Decl., Exs. 49–50; ECF 1130-6, Ex. 34 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 120 |
| | Rebecca Simoens | Standing | *See* Manifold Decl., Exs. 51–52; ECF 1130-7, Ex. 54 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 121 |
| | Amber Sartori | Standing | *See* Manifold Decl., Exs. 53–54; ECF 1130-7, Ex. 53 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 122 |
| Nebraska | Melissa Bowman | Standing | *See* Manifold Decl., Exs. 55–56; ECF 1130-4, Ex. 6 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 123 |
| Nevada | Nay Alidad | Standing | *See* Manifold Decl., Exs. 57–58; ECF 1130-4, Ex. 2 |
| | | Lack of Knowledge | *See* Manifold Decl., 124 |
| | Nancy Stiller | Standing | *See* Manifold Decl., Ex. 59; ECF 1130-7, Ex. 57 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 125 |

| State/District | Class Representative | Issue | Evidence |
|---|---|---|---|
| New Hampshire | Jessica Bartling | Standing | *See* Manifold Decl., Exs. 60–61; ECF 1130-4, Ex. 3 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 126 |
| | Rob Skaff | Standing | *See* Manifold Decl., Ex. 7 at 20:24–21:9, 23:18–24:22, 31:19–22, 36:18–25; Manifold Decl. Ex. 62; ECF 1130-7, Ex. 55 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 127 |
| New Mexico | Kathy Durand (f/k/a Kathy Gore) | Standing | *See* Manifold Decl., Ex. 8 at 7:13–22, 53:16–54:9, 56:1–4, 59:17–21, 60:10–23, 62:14–19; ECF 1130-5, Ex. 16 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 128 |
| | Laura Montoya | Standing | *See* Manifold Decl., Ex. 63; ECF 1130-6, Ex. 40 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 129 |
| New York | Michael Buff | Standing | *See* Manifold Decl., Ex. 9 at 5:11–17, 20:23–21:2, 21:13–17, 23:8–18; Manifold Decl., Ex. 64; ECF 1130-4, Ex. 7 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 130 |
| | Nigel Warren | Standing | *See* Manifold Decl., Ex. 65; ECF 1130-8, Ex. 62 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 131 |
| North Carolina | Corey Norris | Standing | *See* Manifold Decl., Ex. 10 at 12:5–14:20, 16:2–7, 25:19–26:5, 29:4–7; ECF 1130-6, Ex. 43 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 132 |

| State/District | Class Representative | Issue | Evidence |
|---|---|---|---|
| | Audra Rickman | Standing | *See* Manifold Decl., Ex. 66; ECF 1130-7, Ex. 50 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 133 |
| North Dakota | Bonnie Vander Laan | Standing | *See* Manifold Decl., Ex. 11 at 11:8–18, 49:6–50–7, 58:24–59:8, 71:3–5; ECF 1130-8, Ex. 61 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 134 |
| | Tya Hughes | Standing | *See* Manifold Decl., Ex. 67; ECF 1130-5, Ex. 28 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 135 |
| Oregon | Danielle Johnson | Standing | *See* Manifold Decl., Ex. 68; ECF 1130-6, Ex. 31 |
| | | Lack of Knowledge | *See* Declaration of Danielle Johnson |
| | Liza Milliner | Standing | *See* Manifold Decl., Ex. 69–70; ECF 1130-6, Ex. 39 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 136 |
| Rhode Island | Katherine McMahon | Standing | *See* Manifold Decl., Ex. 71; ECF 1130-6, Ex. 37 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 137 |
| | Elizabeth Perron | Standing | *See* Manifold Decl., Exs. 72–73; Ex. 1130-7, Ex. 47 |
| South Carolina | Gay Birnbaum | Standing | *See* Manifold Decl., Ex. 12 at 10:24–11:7, 36:12–18; Ex. 1130-4, Ex. 4 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 138 |
| South Dakota | Casey Christensen | Standing | *See* Manifold Decl., Exs. 74–75; Ex. 1130-4, Ex. 11 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 139 |

| State/District | Class Representative | Issue | Evidence |
|---|---|---|---|
| Tennessee | Kirsten Peck | Standing | *See* Manifold Decl., Ex. 76; ECF 1130-6, Ex. 45 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 140 |
| | John Peychal | Standing | *See* Manifold Decl., Exs. 77–78; ECF No. 1130-7, Ex. 49 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 141 |
| | John Trent | Standing | *See* Manifold Decl., Ex. 79; ECF No. 1130-7, Ex. 59 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 142 |
| Utah | Vivek Dravid | Standing | *See* Manifold Decl., Ex. 80; ECF No. 1130-4, Ex. 15 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 143 |
| | Tina Grant | Standing | *See* Manifold Decl., Exs. 17–18; ECF No. 1130-5, Ex. 24 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 96 |
| Virginia | Marissa Jacobus | Standing | *See* Manifold Decl., Exs. 81–82; ECF No. 1130-5, Ex. 30 |
| | Elizabeth Twitchell | Standing | *See* Manifold Decl., Ex. 13 at 6:20–7:5, 28:2-19, 36:11–37:9; Manifold Decl., Ex. 83; ECF No. 1130–5, Ex. 60 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 144 |
| Vermont | Stephanie Gipson | Standing | *See* Manifold Decl., Ex. 84; ECF No. 1130-5, Ex. 22 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 144 |
| | Jennifer Nelson | Standing | *See* Manifold Decl., Ex. 14 at 8:14–16, 11:4–6, 12:12–14, 13:24–14:6; ECF No. 1130-6, Ex. 42 |

| State/District | Class Representative | Issue | Evidence |
|---|---|---|---|
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 145 |
| Washington, D.C. | Ana Gabriela Felix Garcia | Standing | *See* Manifold Decl., Ex. 85; ECF No. 1130-5, Ex. 19 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 146 |
| | Andrew Gorman | Standing | *See* Manifold Decl., Ex. 15 at 15:8–14, 17:7–22, 28:8–29:4; ECF 1130-5, Ex. 23 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 147 |
| Wisconsin | Kathy Lingnofski | Standing | *See* Manifold Decl., Ex. 86; ECF 1130-6, Ex. 35 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 148 |
| | Julie Wiese | Standing | *See* Manifold Decl., Exs. 87–88; ECF 1130-8, Ex. 63 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 149 |
| | Dan Zwirlein | Standing | *See* Manifold Decl., Exs. 89–90; ECF 1130-8, Ex. 65 at ¶¶ 2–3 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 150 |
| West Virginia | Jade Canterbury | Standing | *See* Manifold Decl., Exs. 91–92; ECF 1130-4, Ex. 9 at ¶¶ 2–3 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 151 |
| | Diana Mey | Standing | *See* Manifold Decl., Exs. 93–94; ECF 1130-6, Ex. 38 at ¶¶ 2–3 |
| | | Lack of Knowledge | *See* Manifold Decl., Ex. 152 |

#30514/SD