LATHAM & WATKINS LLP
Alfred C. Pfeiffer (CA 120965)
Christopher S. Yates (CA 161273)
Belinda S Lee (CA 199635)
Ashley M. Bauer (CA 231626)
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone:  415-391-0600
Facsimile:  415-395-8095
al.pfeiffer@lw.com
chris.yates@lw.com
belinda.lee@lw.com
ashley.bauer@lw.com

LATHAM & WATKINS LLP
Jason M. Ohta (CA 211107)
12670 High Bluff Drive
San Diego, CA 92130
Telephone:  858-523-5400
Facsimile:  858-523-5450
jason.ohta@lw.com

*Counsel for Defendants StarKist Co. and
Dongwon Industries Co., Ltd.*

*[Additional counsel listed on signature pages]*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MSB |
| | MDL No. 2670 |
| This Document Relates To: | **DEFENDANTS STARKIST CO., DONGWON INDUSTRIES CO., LTD., LION CAPITAL (AMERICAS), INC., AND SPECIALLY APPEARING DEFENDANT LION CAPITAL LLP'S OPPOSITION TO END PAYER PLAINTIFFS' *EX PARTE* MOTION TO MODIFY CASE SCHEDULE** |
| End Payer Plaintiffs | |
| | Judge:  Hon. Dana M. Sabraw |

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ..................................................................................... 1

ARGUMENT ........................................................................................... 3

I.      EPPS DO NOT SATISFY THE STANDARD FOR *EX PARTE*
RELIEF ............................................................................................ 3

II.     EPPS DO NOT SATISFY THE GOOD CAUSE STANDARD
TO MODIFY THE CASE SCHEDULE ........................................ 5

III.    EPPS' PROPOSED MOTION FOR SUMMARY JUDGMENT
WOULD FAIL ON THE MERITS ................................................. 9

      A.      EPPs Have Produced No Reliable Evidence to Establish
the Named Plaintiffs' Standing and Lack of Knowledge ................. 10

      B.      Defendants Have a Due Process Right to Cross-Examine
the EPP Named Plaintiffs at Trial ...................................... 13

IV.     EPPS' PROPOSED ALTERNATIVE RELIEF SHOULD BE
DENIED........................................................................................ 14

CONCLUSION ...................................................................................... 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

### CASES

4

*Ambat v. City & County of San Francisco*,
   757 F.3d 1017 (9th Cir. 2014) ................................................................. 12

*D'Aquino v. United States*,
   192 F.2d 338 (9th Cir. 1951) .................................................................... 13

*Ducolombier v. Royal Ent., Inc.*,
   No. SACV 14-01371-JLS(RNBx), 2014 WL 12966964 (C.D. Cal.
   Dec. 16, 2014) .......................................................................................... 10

*Goldberg v. Kelly*,
   397 U.S. 254 (1970) ................................................................................. 13

*Greene v. McElroy*,
   360 U.S. 474 (1959) ................................................................................. 13

*Harries v. United States*,
   350 F.2d 231 (9th Cir. 1965) .................................................................... 13

*Isis Pharms., Inc. v. Santaris Pharma A/S Corp.*,
   No. 11CV02214 BTM (KSC), 2012 WL 4111157 (S.D. Cal. Sept.
   19, 2012) ................................................................................................... 10

*Johnson v. Mammoth Recreations, Inc.*,
   975 F.2d 604 (9th Cir. 1992) ...................................................................... 5

*Lee v. Hanna*,
   32 F. App'x 937 (9th Cir. 2002) ............................................................... 10

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................. 11

*Marks v. Am. Airlines, Inc.*,
   No. CV 05-8947-CAS(AJWx), 2006 WL 8463531 (C.D. Cal. Apr.
   24, 2006) ................................................................................................... 10

*Mission Power Eng'g Co. v. Cont'l Cas. Co.*,
   883 F.Supp. 488 (C.D. Cal. 1995) .............................................................. 3

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Moralez v. Wal-Mart Stores Inc.*,
  No. C 17-05127 WHA, 2018 WL 5458767 (N.D. Cal. Oct. 28,
  2018) ........................................................................................................ 3, 11

*Noyes v. Kelly Svs.*,
  488 F.3d 1163 (9th Cir. 2007) ................................................................ 5

*River City Mkts., Inc. v. Fleming Foods W., Inc.*,
  960 F.2d 1458 (9th Cir. 1992) ................................................................ 11

*Scott v. Pasadena Unified Sch. Dist.*,
  306 F.3d 646 (9th Cir. 2002) .................................................................. 1

*Sheehan v. Gustafson*,
  967 F.2d 1214 (8th Cir. 1992) ................................................................ 10

*Stern v. Cal. State Archives*,
  982 F. Supp. 690 (E.D. Cal. 1997) ......................................................... 11

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ......................................................................... 1, 7, 9

*Trujillo v. H&S LBSE Inc.*,
  No. 1:21-CV-0058 JLT BAM, 2024 WL 1344590 (E.D. Cal. Mar.
  29, 2024) .................................................................................................. 10

*Villiarimo v. Aloha Island Air, Inc.*,
  281 F.3d 1054 (9th Cir. 2002) ................................................................ 11

*Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*,
  654 F.3d 919 (9th Cir. 2011) .................................................................. 1

*Zivkovic v. S. Cal. Edison Co.*,
  302 F.3d 1080 (9th Cir. 2002) ............................................................. 2, 5

**STATUTES**

15 U.S.C. § 4304 ............................................................................................ 8

**RULES**

Fed. R. Civ. P. 16(b)(4) ................................................................................. 5

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

## **INTRODUCTION**

End Payer Plaintiffs ("EPPs") bring indirect purchaser claims on behalf of consumers in 32 different states and territories—seeking over $200 million in damages (before trebling).  Each of those 32 states and territories has different antitrust laws with varying requirements that will each need to be proven at trial by a preponderance of the evidence.  As with any trial, witnesses will need to establish the elements of those varying claims for EPPs to prevail.  As the Supreme Court has made clear for all class actions, EPPs must prove that all named plaintiffs and all absent class members have Article III standing.  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("Every class member must have Article III standing in order to recover individual damages.  Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not[.]" (internal citation omitted)).  That is because "Article III standing is jurisdictional and can neither be waived by the parties nor ignored by the court."  *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 932 n.17 (9th Cir. 2011).  "[T]he burden of establishing Article III standing remains at all times with the party invoking federal jurisdiction."  *Scott v. Pasadena Unified Sch. Dist*., 306 F.3d 646, 655 (9th Cir. 2002).  Article III standing is not a theoretical question in this case; limited discovery taken of plaintiffs from a few of the 30-plus different states established fundamental Article III standing issues.

Defendants have long expected to confront the EPP Named Plaintiffs at trial—and to test their claims, including as to Article III standing, as the Federal Rules allow: through cross-examination.  Now, nearing the eve of trial, EPPs move *ex parte* in an attempt to avoid having their witnesses testify and be confronted by Defendants.  Their purported "emergency" is no such thing—it is an intentional change in EPPs' trial strategy, and there is no good cause to justify amending the Rule 16 Scheduling Order and forcing Defendants to oppose a meritless summary judgment motion at this late date.  EPPs chose not to file a summary judgment

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1    motion in compliance with the dispositive motion deadline in this case. *See* Order

2    Granting Mot. to Modify Case Schedule 2, ECF No. 1934 ("Scheduling Order").

3    They likewise could have sought this extraordinary relief at any point in the four

4    years since that deadline. But they did not. Instead, EPPs made repeated

5    representations to this Court about the limited amount of time they would need at

6    trial. Defendants questioned EPPs' estimates as being unreasonably short, but EPPs

7    stood by them because they suited EPPs' interests. Now, as the parties should be

8    focused on preparing for a trial that is a little over 10 weeks away, EPPs

9    unreasonably burden Defendants and this Court with an unnecessary "emergency"

10    proceeding and unfairly distract Defendants from their pretrial work.

11        There is neither an emergency justifying an *ex parte* application nor good

12    cause to amend the Scheduling Order.[1] Article III standing has always been a critical

13    issue in this case and EPPs have been on notice of that fact since at least 2016 when

14    Defendants raised the issue in their motion to dismiss. EPPs have not been

15    reasonably diligent in preparing their case. And, whether a plaintiff was diligent is,

16    of course, the key initial question in evaluating a request to modify a scheduling

17    order.[2] *See Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002). The

18

---

19    [1] EPPs incorrectly state that the "Lion entities stated no position, as long as their

20    opposition to Plaintiffs [sic] underlying summary judgment motion would be due on May 15, 2024." *See* Decl. of Alex. J. Tramontano in Supp. of *Ex Parte* Appl. to

21    Modify Scheduling Order ¶ 16, ECF No. 3183-1 ("Tramontano Decl."). The Lion Defendants' position was that they would not oppose *ex parte* relief to shorten

22    briefing time for the motion. Declaration of Ashley M. Bauer ("Bauer Decl.") ¶ 4. The Lion Defendants oppose EPPs' *ex parte* attempt to amend the scheduling

23    order, for the many reasons discussed.

24    [2] To obscure their lack of diligence, EPPs focus on the specially-set March 3, 2023 summary judgment deadline regarding the Lion Defendants. But that deadline was

25    for the Lion Defendants to file a motion for summary judgment after they were brought back into the case following a two-year hiatus. *See* Order Granting Lion

26    Capital LLP and Big Catch Cayman LP's Mot. for Scheduling Order 1, ECF No. 2914 ("Defendants StarKist Co., Dongwon Industries Co., Ltd., and Del Monte

27    Corporation ('the StarKist Defendants') join in the request to participate in any additional fact discovery, but do not wish to submit any additional dispositive

28    motions.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1   fact that EPPs waited until 12 weeks before trial to change their trial strategy on an

2   issue as critical as Article III standing does not constitute an emergency.

3          There is also no good cause to amend the Scheduling Order because there are

4   no grounds to grant the summary judgment motion EPPs apparently seek to file.

5   Plaintiffs filed summary judgment and *Daubert* motions in 2019, but did not seek

6   summary judgment regarding standing.  If they had so moved, it would have been

7   denied because any such motion in 2019 would have been—as the motion EPPs

8   apparently intend to file will be—based on self-serving declarations that courts

9   routinely hold insufficient to grant a plaintiff's motion for summary judgment.  *See,*

10  *e.g., Moralez v. Wal-Mart Stores Inc.*, No. C 17-05127 WHA, 2018 WL 5458767,

11  at *2 (N.D. Cal. Oct. 28, 2018) ("Plaintiff cites no authority suggesting that her

12  declaration alone is sufficient to establish her [claim] as a matter of law.   The

13  conclusory assertions in plaintiff's declaration are insufficient to carry her burden

14  on summary judgment.").

15         There is no good cause to ignore a longstanding Scheduling Order.  Nor is

16  there reason to give EPPs another 10 hours of trial time.  The Court should deny

17  EPPs' *Ex Parte* Application.

18                                       **ARGUMENT**

19  **I.     EPPs DO NOT SATISFY THE STANDARD FOR *EX PARTE* RELIEF**

20         To justify a request for *ex parte* relief, "the evidence must show that the

21  moving party's cause will be irreparably prejudiced if the underlying motion is heard

22  according to regular noticed motion procedures," and "it must be established that the

23  moving party is without fault in creating the crisis that requires ex parte relief, or

24  that the crisis occurred as a result of excusable neglect."  *Mission Power Eng'g Co.*

25  *v. Cont'l Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995).  EPPs come nowhere

26  close to meeting this standard.

27         EPPs cannot show that they are "without fault in creating" the asserted "crisis

28  that requires ex parte relief" or that it is one of "excusable neglect."  *See id.*  To the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1  contrary, this issue—establishing that EPPs' named plaintiffs and absent class

2  members have Article III standing—is one EPPs should have been aware of since

3  the commencement of this litigation in August 2015.  In fact, Defendants repeatedly

4  raised the issue of standing, first in a Joint Motion to Dismiss Plaintiffs' Complaints

5  for Lack of Standing,[3] filed in August 2016, and then in their Answers,[4] which were

6  filed in November 2017, June 2018, November 2018, October 2021, and April 2022.

7  And, of course, EPPs had ample opportunity during the dispositive motion phase of

8  this case to file a motion for summary judgment to attempt to obtain a determination

9  on this point.  But they did not.  EPPs also did not seek to address this issue in

10  November 2022 when the Supreme Court denied Defendants' petition for a writ of

11  certiorari appealing the class certification order.[5]  Nor did they seek to address this

12  issue in July 2023 after their class notice was complete and the deadline for class

13  members to opt out expired.  Instead, EPPs waited more than four years after the

14  dispositive motions deadline, made representations to the Court about how they

15

16  _____

[3] Defs.' Joint Mot. to Dismiss Pls.' Compls. for Lack of Standing, ECF No. 207,
17  Aug. 5, 2016.

18  [4] Def. StarKist Co.'s Answer to the Indirect Purchaser End Payer Pls.' Sixth Am.
Consolidated Class Action Compl. 112, ECF No. 1690, Nov. 19, 2018,
19  ("Plaintiffs' claims are barred, in whole or in part, because plaintiffs do not have
standing to raise those claims."); Def. Dongwon Indus. Co., Ltd.'s Answer to the
20  Indirect Purchaser End Payer Pls.' Sixth Am. Consolidated Class Action Compl.
126, ECF No. 1691, Nov. 19, 2018 (same); *see also* Def. Lion Capital (Americas),
21  Inc.'s Answer to the Indirect End Payer Pls.' Sixth Am. Compl. 147, ECF No.
2639, Oct. 5, 2021; Specially Appearing Def. Lion Capital LLP's Answer to the
22  Indirect End Payer Pls.' Sixth Am. Compl. 141, ECF No. 2797, Apr. 4, 2022.

23  [5] EPPs argue that "the appropriate time for a dispositive motion relating to the
Class Representatives' standing would have been after the stay related to class
24  certification activities was lifted, all appeals were finally resolved, notice was
complete, and prior to trial."  *Ex Parte* Appl. to Modify Scheduling Order and to
25  File End Payer (Consumer) Pls.' Mot. For Partial Summ. J. Re: Standing and
Fraudulent Concealment 6, ECF No. 3183 ("Mot.").  Setting aside the fact that this
26  Court did ***not*** stay the case pending the appeals related to class certification, if
EPPs believed at the time that a dispositive motion would be necessary at a future
27  date, they could and should have raised that with the Court at some point during
the past eight and a half years in which their case has been pending.
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1  planned to try their case, and then did nothing to address this issue until the eve of

2  trial.  That EPPs—out of strategy or error—elected to use summary judgment to seek

3  rulings on other issues and failed to raise this one in a timely manner does not render

4  this an emergency justifying *ex parte* relief.

5  **II.  EPPs DO NOT SATISFY THE GOOD CAUSE STANDARD TO MODIFY THE CASE SCHEDULE**

6

7  EPPs also cannot show that there is "good cause" to modify the case schedule.

8  "A schedule may be modified only for good cause and with the judge's consent."

9  Fed. R. Civ. P. 16(b)(4).  The "good cause" standard "focuses on the reasonable

10  diligence of the moving party."  *Noyes v. Kelly Svs.*, 488 F.3d 1163, 1174 n.6 (9th

11  Cir. 2007).  "If the party seeking the modification 'was not diligent, the inquiry

12  should end' and the motion to modify should not be granted."  *Zivkovic*, 302 F.3d at

13  1087 (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.

14  1992)).

15  EPPs were not diligent in seeking summary judgment on this issue.  The

16  language from one of EPPs' joint oppositions to a prior *ex parte* application that

17  Defendants filed several years ago applies perfectly here.  Despite the fact that

18  Defendants' prior *ex parte* motion sought only a brief, 30-day extension of the

19  dispositive motion deadline (and that Defendants filed the application well before

20  that deadline had expired and while the parties were in the throes of preparing

21  summary judgment briefing), *see* Defs.' *Ex Parte* Mot. to Modify Case Schedule,

22  ECF No. 1926, Plaintiffs opposed Defendants' *ex parte* application:

23  > The parties are deep into this litigation and are familiar with the factual issues involved.  Defendants surely have known for years (or at least since opening merits reports were filed in February 2019) what the realistic bases for summary judgment might be.  Nothing has materially changed between March 2019 and today that would warrant the relief they seek.

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1  Pls.' Joint Opp'n to Defs.' *Ex Parte* Mot. to Modify Case Schedule 3, ECF No. 1929.

2  That position, which Plaintiffs articulated on July 26, 2019, is even more true

3  today—nearly five years later, well after all the dispositive motions have been filed

4  and ruled on in this matter, approaching the eve of trial.

5  For EPPs to now assert that they need emergency relief to file an additional

6  motion for partial summary judgment, on a longstanding legal issue, three months

7  before trial rings hollow.  EPPs knew "what the realistic bases for summary

8  judgment might be" well in advance of the August 2019 (or modified September

9  2019) dispositive motion deadline.  EPPs brought a case that currently has 32 state

10  law claims and 67[6] named plaintiffs ("EPP Named Plaintiffs").  That they did not

11  seek to establish that each of their named plaintiffs has standing until now constitutes

12  a textbook example of not acting diligently.

13  EPPs' arguments to the contrary fail.  They state that "[t]he alternative" to the

14  Court granting their Motion is "repetitive testimony from over thirty Class

15  Representatives as to facts not genuinely or reasonably disputed by Defendants."

16  Mot. at 3.[7]  But asserting that a fact is not in dispute does not make it so;[8] Defendants

17

18  [6] EPPs' operative Complaint lists 69 named plaintiffs and 33 states or territories.
*See* Sixth Am. Compl. of the Indirect Purchaser EPPs, ECF No. 1461 ("EPP Sixth

19  Am. Compl.").  However, EPPs have since withdrawn their claims as to Guam,
removing two plaintiffs.  EPPs' Supp. to Joint Status Report 1 n.1, ECF No. 3123.

20  In addition, EPPs have also conceded that they may seek individual, but not class,
relief as to their claims in Illinois, which are brought by three individual plaintiffs.

21  Order Granting in Part and Den. in Part Mots. to Dismiss 11, ECF No. 492.

22  [7] Direct Purchaser Plaintiffs ("DPPs") also state in their response to EPPs' *Ex
Parte* Motion that "it was not DPPs' contemplation" that EPPs "would require 31

23  (or more) witnesses to testify to standing issues."  *See* DPPs' Response to EPPs'
*Ex Parte* Application to Modify Scheduling Order 2, ECF No. 3185.  But that

24  neither class of plaintiffs evidently anticipated that EPPs would be held to their
burden of proving their case does not make this an emergency.

25

26  [8] EPPs cannot will into reality their improper description of the issues to be
decided at trial by mischaracterizing the Court's summary judgment order and

27  declaring that "[t]he Court granted summary judgment against StarKist on
liability . . . ."  *See* Mot. at 3.  The Court did not grant summary judgment on the

28  issue of "liability"—just on StarKist's participation in a conspiracy and the time

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
San Francisco

6

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1  need to cross-examine EPPs' Named Plaintiffs in order to know if there are factual
2  disputes.  And that it may be cumbersome for EPPs to present testimony from these
3  witnesses is a problem of EPPs' making, such that EPPs' additional arguments—
4  that this testimony will "waste[] substantial jury time, is very expensive, deprives
5  Plaintiffs of valuable trial time, and strains the Court's resources"—are misplaced
6  and unpersuasive.  *See* Mot. at 3.

7  *First*, the timing issue is a red herring.  EPPs are wrong to argue that granting
8  summary judgment will "ultimately substantially shorten the trial."  *Id*. at 4.  The
9  Court granted each side 40 hours to present their cases, *see* Order Re: Trial Structure
10  and Scheduling 3, ECF No. 3124; whether EPPs call their named plaintiffs will have
11  no effect on the overall length of the case unless the Court grants EPPs' request for
12  additional time, which (for reasons discussed below) it should not.[9]  And in terms of
13  Plaintiffs' trial time, EPPs should have considered this issue in 2019 when they
14  declined to file a summary judgment motion to this effect or when they asked the
15  Court to allocate time to the parties last fall.  *See* Tr. of Scheduling Conference at
16  20:25-21:8 (Sept. 22, 2023).

17  *Second*, with respect to the supposed expense, that it might be costly for EPPs
18  to prove their claims does not relieve them of their obligation to do so within the
19  bounds of the Court's Scheduling Order (not to mention the fact that, if Plaintiffs

---

21  period of that participation.  *See* Order Granting in Part and Den. In Part Direct
22  Action Pls. and EPPs' Mots. for Partial Summ. J., ECF No. 2654; *see also* Am. Order Granting in Part and Denying in Part Direct Action Pls. and EPPs' Mots. for Partial Summ. J., ECF No. 2750.

[9] EPPs appear confused about which party is required to prove standing, a foundational element of *their* case, stating that "Defendants did not challenge any Class Representative's individual standing, and they did not ask a single Class Representative whether he or she was aware of the price-fixing conspiracy before the DOJ investigation was publicly disclosed in July of 2015."  Mot. at 7.  But Defendants are not required to ask any such questions or disprove that the EPP Named Plaintiffs have standing.  To the contrary, it is EPPs' burden and responsibility to affirmatively establish that their Named Plaintiffs and absent class members have Article III standing, and they have not done so.  *See TransUnion*, 594 U.S. at 431.

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT. TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1    prevail at trial, they will be statutorily entitled to reasonable fees and costs, *see* 15

2    U.S.C. § 4304, rendering this argument even less convincing).

3        *Third*, the assertion that requiring EPPs to prove their own case will "strain[]

4    the court's resources" is disingenuous given that what is actually a strain on the

5    Court's resources is bringing a massive 33-jurisdiction class action that EPPs

6    evidently do not want to go to the effort of proving, and then filing an *ex parte*

7    motion requesting an additional motion for summary judgment just 12 weeks before

8    trial.  EPPs' recent filing of two additional motions, which violate the Court's Order

9    Re: Trial Structure and Scheduling, including Plaintiffs' Motion for Leave to Review

10   Grand Jury Transcripts, ECF No. 3153, reveals that EPPs have no concerns for the

11   Court's resources or time.

12       *Fourth*, EPPs' assertion that the testimony will serve "no practical purpose"

13   is surprising in light of the fact that standing is a bedrock element of their suit and

14   this Court's subject-matter jurisdiction.  *See* Mot. at 8.  Of course, EPPs are welcome

15   to try their case as they see fit and can elect not to put on this testimony if they really

16   think it will serve "no practical purpose."  But Defendants will certainly move for a

17   directed verdict at the close of EPPs' case if EPPs do not establish this foundational

18   and constitutional element of their claim.

19       As a last ditch effort to justify their request, EPPs assert that "[g]ood cause

20   exists to modify the Scheduling Order because Defendants only recently raised a

21   dispute over the Plaintiffs' standing."  Mot. at 6.  This is flatly contradicted by the

22   record.  Defendants raised the affirmative defense of standing repeatedly, first in a

23   Joint Motion to Dismiss Plaintiffs' Complaints for Lack of Standing,  ECF No. 207-

24   5, filed by certain defendants *in August 2016*, and then in answers to several of EPPs'

25   complaints—the earliest dating back to November 9, 2017.  *See* Def. StarKist's

26   Answer to the Indirect Purchaser EPPs' Third Am. Compl. 343 ¶ 7, ECF No. 649;

27   DWI's Answer to the Indirect Purchaser EPPs' Fifth Am. Compl. 119 ¶ 7, ECF No.

28   1240.  Regardless, even if Defendants had not raised the issue of standing early and

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

often (which they did) and had only recently raised the issue of standing (which is not true), it is EPPs' burden alone to prove that the EPP Named Plaintiffs have standing. *See TransUnion*, 594 U.S. at 431.

*Finally*, EPPs first told Defendants that they planned to propose a "stipulation" as to their named plaintiffs in January 2024. Declaration of Ashley M. Bauer ("Bauer Decl.") ¶ 5. But EPPs did not actually share a draft of that stipulation until April 3, 2024. *Id.* ¶ 6. Even if they had not realized it in the prior eight years of their case, EPPs clearly recognized that standing was an issue that they needed to address by no later than January 2024. Yet EPPs did nothing for months, presumably because they wanted to force Defendants to stipulate or brief an *ex parte* application and summary judgment motion at the exact same time that Defendants' motions *in limine* and contentions of fact and law are due. This sort of strategic gamesmanship, which is intended to disadvantage the opposing party, is not a good reason for EPPs to burden Defendants and the Court with a problem of their own making. There is no good cause to modify the Scheduling Order.

## III.   EPPs' PROPOSED MOTION FOR SUMMARY JUDGMENT WOULD FAIL ON THE MERITS

EPPs seek leave to file a motion for summary judgment more than four years after the deadline so that the Court can summarily determine that the EPP Named Plaintiffs have standing and lacked knowledge of the conspiracy. But, for the same reason that Defendants will not so stipulate, the Court cannot grant summary judgment on these issues. There are simply too many genuine disputes of material fact for the Court to determine, as a matter of law, that the EPPs can meet their burden of establishing that each of the EPP Named Plaintiffs have standing and lacked knowledge.

1

2

**A.    EPPs Have Produced No Reliable Evidence to Establish the Named Plaintiffs' Standing and Lack of Knowledge**

3   Defendants cannot stipulate to, and the Court cannot grant summary judgment

4   regarding, the EPP Named Plaintiffs' standing because EPPs have failed to produce

5   credible evidence to establish the residency of those plaintiffs.

6   Defendants deposed 16 out of the 69 EPP Named Plaintiffs with the

7   understanding that Defendants would have an opportunity to cross-examine all 69

8   of them at trial if EPPs decided to call them as witnesses.  For the other 53 EPP

9   Named Plaintiffs, the only evidence that exists to establish their residency is a set of

10   declarations and interrogatory responses that have not been tested by cross-

11   examination.  *See e.g.*, EPP Class Certification Decls., ECF No. 1130-4.  This kind

12   of evidence cannot alone serve to show that there is no genuine dispute of material

13   fact.  *See Lee v. Hanna*, 32 F. App'x 937, 938 (9th Cir. 2002) (affirming denial of

14   summary judgment because "it would be inappropriate to grant summary judgment

15   on the basis of the officers' declarations alone, even though the officers were the

16   only percipient witnesses to the incident"); *Isis Pharms., Inc. v. Santaris Pharma*

17   *A/S Corp.*, No. 11CV02214 BTM (KSC), 2012 WL 4111157, at *5 (S.D. Cal. Sept.

18   19, 2012) ("[T]he Court declines to grant summary judgment in favor of

19   [defendant] . . . solely on the basis of the Ørum Declaration, without first providing

20   an opportunity for [Plaintiff] at least to conduct limited discovery and depose Dr.

21   Ørum[.]"); *Ducolombier v. Royal Ent., Inc.,* No. SACV 14-01371-JLS(RNBx), 2014

22   WL 12966964, at *4 (C.D. Cal. Dec. 16, 2014) (holding that "[a] self-serving

23   declaration . . . is insufficient for the Court to grant summary judgment").  It is

24   precisely for this reason that, in the analogous context of personal jurisdiction, "a

25   party's declaration as to where she is domiciled is significant, but not conclusive

26   evidence."  *Marks v. Am. Airlines, Inc.,* No. CV 05-8947-CAS(AJWx), 2006 WL

27   8463531, at *6 n.7 (C.D. Cal. Apr. 24, 2006) (citing *Sheehan v. Gustafson*, 967 F.2d

28   1214, 1215-16 (8th Cir. 1992)); *see also Trujillo v. H&S LBSE Inc.*, No. 1:21-CV-

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1   0058 JLT BAM, 2024 WL 1344590, at *5 (E.D. Cal. Mar. 29, 2024) (denying

2   motion for summary judgment where the "[p]laintiff relies primarily upon a self-

3   serving, conclusory declaration to support his motion").  Here too, EPPs cannot set

4   forth only declarations and claim that they constitute conclusive evidence of the EPP

5   Named Plaintiffs' residencies sufficient to confer standing.

6         Moreover, courts view self-serving declarations as even less convincing

7   evidence given that plaintiffs are held to an even higher standard when evaluating

8   motions for summary judgment.  As one district court has noted in a procedurally

9   identical scenario, "[s]etting aside the conclusory nature of the declaration at issue

10   in the present case, here, it is the plaintiff who is moving for summary judgment, not

11   the defendant.  Plaintiff cites no authority suggesting that her declaration alone is

12   sufficient to establish her [claim] as a matter of law.  The conclusory assertions in

13   plaintiff's declaration are insufficient to carry her burden on summary judgment."

14   *Moralez*, 2018 WL 5458767, at *2.  Because the elements of Article III standing

15   "are not mere pleading requirements but rather an indispensable part of the plaintiff's

16   case, each element must be supported in the same way as any other matter on which

17   the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence

18   required at the successive stages of the litigation."  *Lujan v. Defenders of Wildlife,*

19   504 U.S. 555, 561 (1992); *see also Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

20   1054, 1061 (9th Cir. 2002) (affirming grant of summary judgment and explaining

21   that "this court has refused to find a 'genuine issue' where the only evidence

22   presented is 'uncorroborated and self-serving' testimony" (citation omitted)); *River*

23   *City Mkts., Inc. v. Fleming Foods W., Inc.*, 960 F.2d 1458, 1462 (9th Cir. 1992)

24   ("[T]o survive a motion for summary judgment, plaintiffs must produce sufficient

25   evidence to establish the existence of every essential element of their case on which

26   they will bear the burden of proof at trial."); *Stern v. Cal. State Archives*, 982 F.

27   Supp. 690, 691 (E.D. Cal. 1997) ("Plaintiffs must produce sufficient evidence to

28   prove the existence of each and every element that is essential to their case and on

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

which they will bear the burden of proof at trial."). "Because summary judgment is a 'drastic device,' cutting off a party's right to present its case to a jury, the moving party bears a 'heavy burden' of demonstrating the absence of any triable issue of material fact." Burden of Proof on Mot. for Summ. J., Rutter Group Prac. Guide Fed. Civ. Proc. Before Trial, Ch. 14-D (Nat Ed.) (quoting *Ambat v. City & Cnty. of San Francisco*, 757 F.3d 1017, 1031 (9th Cir. 2014)).

The concern that these *ipse dixit* assertions of residency may not, in fact, establish that the EPP Named Plaintiffs have standing is not merely theoretical. Even without the benefit of cross-examination for the vast majority of the EPP Named Plaintiffs, Defendants have already identified several inconsistencies in the supposedly undisputed evidence. For example, EPPs seek to have Christopher Todd serve as their class representative for Mississippi. EPP Sixth Am. Compl. ¶ 520. But Mr. Todd's interrogatory response states that he is a "resident of Louisiana." *See* Bauer Decl. ¶ 7; Ex. 1 at 8 (Suppl. Resp. and Objs. of Christopher Todd to Defs.' First Set of Interrogs.). Similarly, EPPs name John Trent as the class representative for Tennessee, EPP Sixth Am. Compl. ¶ 602, but Mr. Trent's interrogatory response states that he is a resident of the "[s]tates of Tennessee, Georgia, and Florida" and it is not clear whether he resided in Tennessee at the appropriate time. *See id.* ¶ 8; Ex. 2 at 8 (Suppl. Resp. and Objs. of John Trent to Defs.' First Set of Interrogs.). And EPPs set forth Bonnie Vander Laan as the class representative for North Dakota (EPP Sixth Am. Compl. ¶ 795), but at her deposition—when she *was* subject to cross examination—she testified that she actually has a South Dakota address. *See id.* ¶ 9; Ex. 3 at 11:6-15 (Vander Laan Dep. Tr.).[10]

---

[10] EPPs attempt to add additional evidence into the record at this juncture to bolster the supposedly "undisputed" fact of Ms. Vander Laan's address. *See* Tramontano Decl. Ex. 1 at 5-6. But this additional (and new) evidence only serves to underscore Defendants' point that the record as it stands is insufficient for the Court to determine as a matter of law that there is no genuine dispute of material fact.

1    With respect to the issue of knowledge, which is Plaintiffs' burden to prove,

2  there is simply insufficient evidence for the Court to determine that the Named

3  Plaintiffs lacked the requisite knowledge.[11]  Given the facial inconsistencies in EPPs'

4  evidence regarding the residencies of the EPP Named Plaintiffs, and the dearth of

5  evidence regarding knowledge, EPPs cannot meet their burden to show that no

6  genuine dispute of material fact exists with respect to the EPP Named Plaintiffs'

7  standing and knowledge.  The Court should deny EPPs' *ex parte* application because

8  the underlying motion it seeks to file will fail.

9   **B.    Defendants Have a Due Process Right to Cross-Examine the EPP
10           Named Plaintiffs at Trial**

11    EPPs' proposed motion for partial summary judgment will fail for the separate

12  reason that granting it would trample on Defendants' fundamental right to cross-

13  examine witnesses.  "In almost every setting where important decisions turn on

14  questions of fact, due process requires an opportunity to confront and cross-examine

15  adverse witnesses." *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970).  Where "evidence

16  consists of the testimony of individuals whose memory might be faulty or who, in

17  fact, might be perjurers or persons motivated by malice, vindictiveness, intolerance,

18  prejudice, or jealousy," a defendant's right to show that this evidence is untrue relies

19  on confrontation and cross-examination.  *Greene v. McElroy*, 360 U.S. 474, 496–97

20  (1959).  "The right to cross examine a witness is fundamental in our judicial system,"

21  *Harries v. United States*, 350 F.2d 231, 236 (9th Cir. 1965), because "[v]igorous and

22  searching cross-examination is a powerful instrument for the ascertainment of truth,"

23  *D'Aquino v. United States*, 192 F.2d 338, 369 (9th Cir. 1951).

24    As discussed above, Defendants have serious concerns about the accuracy of

25  the EPP Named Plaintiffs' asserted states of residency.   At this stage of the

26

27  [11] In a letter sent to EPPs' counsel during the meet and confer process, Defendants
    identified 60 individuals for whom there is either no or insufficient evidence to
28  support the assertion that the EPP Named Plaintiffs lacked knowledge.  Bauer
    Decl. ¶ 10.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1   litigation—well after the discovery window has closed and the time for dispositive

2   motions practice has elapsed—the only way for Defendants to test the purported

3   standing of the EPP Named Plaintiffs is through cross-examination at trial.  EPPs

4   cannot avoid this legitimate challenge to the standing of the EPP Named Plaintiffs

5   by bringing this belated summary judgment motion.

6       Whether class representatives and the absent class have Article III standing is

7   not a negligible issue—it goes to the very heart of this Court's power to decide this

8   case (and has enormous implications for EPPs' asserted damages calculation of more

9   than $200 million).  If EPPs fail to establish that at least one class representative has

10  standing for each of the 32 states and territories, then they cannot recover damages

11  for that jurisdiction.  For the Court to grant summary judgment and deny Defendants

12  the opportunity to cross-examine the EPP Named Plaintiffs on such a fundamental

13  matter where the stakes are so high would run afoul of the promise of a fair trial.

14  **IV.   EPPs' PROPOSED ALTERNATIVE RELIEF SHOULD BE DENIED**

15      Recognizing the flaws inherent in their request, EPPs ask for alternative relief

16  in the form of "an additional ten hours of trial time to permit all those individual

17  Class Representatives to testify at trial." Mot. at 4.  This should also be denied.

18      As an initial matter, when the Court was deciding the trial schedule for this

19  matter, EPPs represented to the Court that they needed far less time than Defendants

20  requested. *See* Tr. of Scheduling Conference at 20:25-21:8 (Sept. 22, 2023).  In fact,

21  EPPs asserted that, "[w]e believe that [] trial can be completed comfortably within

22  about two weeks." *Id.* at 21:1-2.  They explicitly based this estimate on the fact that

23  "[t]here are a relatively small number of fact witnesses who will be testifying" and

24  "the remainder of the case will be experts." *Id.* at 21:21-22, 22:10.  The fact that

25  EPPs miscalculated the number of fact witnesses they need (even in light of the fact

26  that the Court ended up scheduling trial that is at least double the length EPPs

27  asserted they needed), *see* Order Re: Trial Structure and Scheduling 1, ECF No.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1  3124, does not justify granting them 10 extra hours to try their case.[12]

2        Moreover, even assuming that the Court should grant any extra time to EPPs

3  (which it should not), the claim that they would need 10 extra hours—a 25% increase

4  in their total trial time—to call these witnesses is at odds with other assertions EPPs

5  make in their brief.  For example, EPPs state that they "expected to call only three

6  or four Class Representatives to describe their experiences in short testimony lasting

7  ***no more than five or ten minutes each***." Mot. at 8 (emphasis added).  If this is true,

8  then, by EPPs' own estimate, calling 31 EPP Named Plaintiffs should take between

9  155 and 310 minutes.[13]  But EPPs somehow assert that it will take 10 hours—or 600

10  minutes—"to call a parade of over thirty Class Representatives to the stand to say

11  the exact same thing: that they purchased cans or packages of tuna fish in 32 different

12  states during the Class Period, and that they were unaware of the price-fixing

13  conspiracy when they did so."  Mot. at 7.  Why EPPs suggest it will take 18-19

14  minutes to ask each witness a few questions, when they elsewhere estimate that it

15  would take only 5-10 minutes, is unclear.

16        Lastly, EPPs state—without any supporting case law—that if the Court is

17  inclined to deny their request it should nevertheless provide "an instruction

18  explaining to the jury that Defendants insisted that the Consumers offer live

19  testimony from every Class Representative to confirm their purchases of packaged

20  tuna fish during the Class damages period so that the jury may lay any blame for that

21  colossal waste of time where it belongs."  Mot. at 8.  Defendants disagree with this

22  request, not least because it again conflates which party is responsible for proving

23  the essential elements of EPPs' claim.  To the extent any instruction regarding the

24

25  [12] Defendants believe that the current time limits suffice and should not be
26  modified.  However, if the Court is inclined to grant EPPs extra time, Defendants
27  should be granted a reciprocal amount of extra time in the interests of fairness for
   cross-examination.

28  [13] Plaintiffs may also wish to call the three individual claimants from Illinois,
   which would add 15 to 30 minutes, if they elected to do so.

LATHAM&WATKINS^{LLP}
ATTORNEYS AT LAW
San Francisco

15

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1  selection of witnesses is warranted, the Court should simply explain that any party

2  may call the witnesses it wants to prove its case and that Plaintiffs bear the burden

3  of establishing all elements of their claims.  The Court should deny EPPs' requests

4  for alternative relief.

5                                      **<u>CONCLUSION</u>**

6          EPPs inexplicably believe that the Court's scheduling orders and pretrial rules

7  do  not  apply  to  them.    This  Court  should  not  condone  EPPs'  self-made

8  "emergencies," which unfairly distract Defendants from their crucial pretrial work.

9  Defendants respectfully request that the Court deny EPPs' *Ex Parte* Application to

10 Modify Scheduling Order.

11

12 Dated: May 2, 2024                          LATHAM & WATKINS LLP

13                                             By:   *s/ Christopher S. Yates*
                                               Alfred C. Pfeiffer (CA 120965)
14                                             Christopher S. Yates (CA 161273)
                                               Belinda S Lee (CA 199635)
15                                             Ashley M. Bauer (CA 231626)
                                               LATHAM & WATKINS LLP
16                                             505 Montgomery Street, Suite 2000
                                               San Francisco, CA 94111-6538
17                                             Telephone: 415-391-0600
                                               Facsimile: 415-395-8095
18                                             Email:  al.pfeiffer@lw.com
                                                       chris.yates@lw.com
19                                                     belinda.lee@lw.com
                                                       ashley.bauer@lw.com
20
                                               Jason M. Ohta (CA 211107)
21                                             12670 High Bluff Drive
                                               San Diego, CA 92130
22                                             Telephone: 858-523-5400
                                               Facsimile: 858-523-5450
23                                             Email: jason.ohta@lw.com

24                                             *Counsel for Defendants StarKist Co. and*
                                               *Dongwon Industries Co., Ltd.*
25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

SULLIVAN & CROMWELL LLP

By:   *s/ Adam S. Paris*
Adam S. Paris (CA 190693)
Brandon T. Wallace (CA 323417)
1888 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: 310-712-6600
Facsimile: 310-712-8800
Email: parisa@sullcrom.com
          wallaceb@sullcrom.com

Paul H. Lazarow (CA 311496)
550 Hamilton Avenue
Palo Alto, CA 94301
Telephone: (650) 461-5685
Facsimile: (650) 461-5700
Email: lazarowp@sullcrom.com

*Counsel for Defendant Lion Capital
(Americas), Inc. and Specially Appearing
Defendant Lion Capital LLP*

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB

1

## SIGNATURE CERTIFICATION

2      Pursuant to Section 2.f.4 of the Court's CM/ECF Administrative Policies, I

3  hereby certify that authorization for the filing of this document has been obtained

4  from each of the other signatories shown above, and that all signatories have

5  authorized placement of their electronic signature on this document.

6

Dated: May 2, 2024                    By: _s/ Christopher S. Yates_

7                                      Christopher S. Yates

8                                      *Attorney for Defendants StarKist Co. and*

9                                      *Dongwon Industries Co., Ltd.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFS.' OPP'N TO EPPS' *EX PARTE* MOT.
TO MODIFY CASE SCHEDULE
3:15-md-02670-DMS-MSB