1   Adam S. Paris (SBN 190693)
    parisa@sullcrom.com
2   Brandon T. Wallace (SBN 323471)
    wallaceb@sullcrom.com
3   **SULLIVAN & CROMWELL LLP**
    1888 Century Park East, Suite 2100
4   Los Angeles, California  90067
    Telephone:   (310) 712-6600
5   Facsimile:   (310) 712-8800

6   Paul H. Lazarow (SBN 311496)
    lazarowp@sullcrom.com
7   **SULLIVAN & CROMWELL LLP**
    550 Hamilton Avenue
8   Palo Alto, CA  94301
    Telephone:   (650) 461-5685
9   Facsimile:   (650) 461-5700

10  *Attorneys for Defendant Lion Capital*
    *(Americas), Inc. and Specially*
11  *Appearing Defendant Lion Capital*
    *LLP*

12

13

14              **UNITED STATES DISTRICT COURT**

15             **SOUTHERN DISTRICT OF CALIFORNIA**

16

17  IN RE: PACKAGED SEAFOOD          )    Case No. 3:15-md-2670-DMS-MSB
18  PRODUCTS ANTITRUST               )
    LITIGATION                       )    MDL No. 2670
19  _____ )
                                     )    **LION CAPITAL LLP AND LION**
20                                   )    **CAPITAL (AMERICAS), INC.'S**
                                     )    **MEMORANDUM OF**
21  This Document Relates to:        )    **CONTENTIONS OF FACT AND**
                                     )    **LAW**
22  (1) Direct Purchaser Plaintiffs  )
                                     )    Trial Date:  July 16, 2024
23  (2) End Payer Plaintiffs         )    Judge:       Hon. Dana M. Sabraw
                                     )    Courtroom:  13A
24                                   )
                                     )
25  _____ )

26

27

28

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION ................................................................................. 3

II.   SUMMARY OF PLAINTIFFS' CLAIMS .......................................... 5

III.  LION LLP'S CONTENTIONS OF FACT AND LAW REGARDING
      PERSONAL JURISDICTION ............................................................. 6
      A.    Points of Law Regarding Personal Jurisdiction ..................... 6
      B.    Material Facts Regarding Personal Jurisdiction .................... 9

IV.   THE LION COMPANIES' CONTENTIONS OF FACT AND LAW
      REGARDING DIRECT PARTICIPATION ...................................... 10
      A.    Points of Law Regarding Direct Participation ..................... 10
      B.    Material Facts Regarding Direct Participation .................... 11

V.    THE LION COMPANIES' CONTENTIONS OF FACT AND LAW
      REGARDING STATE LAW CLAIMS ............................................. 14
      A.    Points of Law Regarding State Law Claims ........................ 14
      B.    Material Facts Regarding State Law Claims ....................... 15

VI.   THE LION COMPANIES' CONTENTIONS OF FACT AND LAW
      REGARDING LION LLP'S VICARIOUS LIABILITY ............................ 15
      A.    Points of Law Regarding Plaintiffs' Agency Theory ......................... 15
      B.    Material Facts Undermining Plaintiffs' Agency Theory ................... 15
      C.    Points of Law Regarding Plaintiffs' Single-Entity Theory ............... 16
      D.    Material Facts Undermining Plaintiffs' Single-Entity Theory .......... 17
      E.    Points of Law Regarding Plaintiffs' Theory that Lion LLP Is Liable
            for the Acts of Lion (Americas) Personnel ..................................... 18
      F.    Material Facts Undermining Plaintiffs' Theory that Lion LLP Is
            Liable for the Acts of Lion (Americas) Personnel ....................... 18

VII.  THE LION COMPANIES' CONTENTIONS OF FACT AND LAW
      REGARDING DAMAGES ................................................................ 19

|  |  | A. | Points of Law Regarding Damages | 19 |
|  |  | B. | Material Facts Regarding Damages | 20 |
|  | VIII. | | ABANDONED ISSUES: | 20 |
|  |  | A. | Vicarious Liability – Law of the Case | 20 |
|  |  | B. | EPPs' Claims under Guam and Illinois Law | 23 |
|  | IX. | | EXHIBITS | 23 |
|  | X. | | WITNESSES | 28 |
|  |  | A. | Fact Witnesses | 29 |
|  |  | B. | Expert Witnesses | 30 |

Pursuant to the Court's Order re: Trial Structure and Scheduling (ECF No. 3124), Local Rule 16.1(f)(2), and Federal Rule of Civil Procedure Rule 26(a)(3), defendant Lion Capital (Americas), Inc. ("Lion (Americas)") and specially appearing defendant Lion Capital LLP ("Lion LLP," and collectively, the "Lion Companies") hereby submit their Memorandum of Contentions of Fact and Law (the "Memorandum"), the list of exhibits that the Lion Companies expect to offer at trial, and the list of trial witnesses that the Lion Companies will or may call, either live or by deposition, at trial.[1]

## I.   INTRODUCTION

In the fall of 2010, Lion LLP—a British private equity firm—was raising capital from investors for its third fund, Lion Capital Fund III ("Fund III"), and identifying possible investment targets for the Fund.  Consistent with Lion LLP's specialized investment strategy, it sought out well-known consumer brands in the fashion and food industries.  One potential investment target was Bumble Bee Foods LLC ("Bumble Bee"), a packaged seafood company with strong consumer recognition.  Bumble Bee's then-owner, a United States-based private equity firm called Centre Partners, was looking to exit the investment and retained J.P. Morgan to market Bumble Bee and advise it in connection with the sale.

Because Bumble Bee was based in the United States, Lion LLP utilized Lion (Americas)—the American, non-discretionary advisor to Lion LLP—to conduct due diligence and form an opinion of the suitability of Bumble Bee as a possible portfolio company of Fund III.  In October and November 2010, Lion (Americas) conducted research and reviewed pitch books and diligence reports prepared by J.P. Morgan, AlixPartners, and KPMG.  Lion (Americas) recommended to the Lion LLP Investment Committee that Fund III invest in Bumble Bee based on

---

[1]   This Memorandum contains a concise statement of material facts and points of law upon which the Lion Companies intend to rely at trial.  It does not address each individual fact or point of law the Lion Companies may seek to establish at trial.

its stable business, brand recognition among consumers, and likelihood of providing an acceptable return on investment within five years. The Lion LLP Investment Committee approved the investment, and Fund III completed the acquisition of Bumble Bee in December 2010 for nearly $1 billion.

In December 2014—four years later—the Lion Companies announced an agreement to sell Bumble Bee to Thai Union Group ("TUG"), which owned one of Bumble Bee's competitors in the United States packaged seafood products market, Chicken of the Sea ("COSI"). The Lion Companies submitted the proposed transaction to the United States Department of Justice Antitrust Division ("DOJ") for review and approval. To the Lion Companies' total surprise, the DOJ refused to approve the sale. During its review, the DOJ discovered that certain executives at Bumble Bee and two other companies, Tri-Union Seafoods LLC d/b/a Chicken of the Sea, and StarKist Co. ("StarKist"), were allegedly participating in a price-fixing conspiracy regarding canned tuna. The transaction was paused and never consummated.

In connection with the DOJ's investigation and subsequent prosecutions, Bumble Bee and two Bumble Bee employees pleaded guilty to price fixing. Bumble Bee filed for bankruptcy in November 2019 as a result of the expense related to the guilty plea and subsequent civil litigation, including this multi-district litigation.

Until the DOJ's announcement of its investigation into the United States packaged seafood products market, no Lion Company employee was aware that any of the tuna companies' employees were engaged in anticompetitive conduct. As the DOJ concluded at the end of its investigation, the participants concealed from the Lion Companies, and others, their efforts to fix and raise prices of canned tuna.

Despite the voluminous evidence produced in discovery that shows that the Lion Companies were uninvolved in the conspiracy, Plaintiffs assert claims under "direct participation" theories. Plaintiffs allege that the Lion Companies

became aware of the conspiracy during due diligence and—notwithstanding the Lion Companies' plan to sell Bumble Bee to a competitor in a transaction that would invite careful antitrust scrutiny from the DOJ—decided to invest to capture supposed supracompetitive profits.  The evidence will show that this theory lacks any merit, and rather that the Lion Companies engaged in routine private equity investment activities; made a reasoned investment in Bumble Bee with no knowledge of any wrongdoing; and planned to exit the investment at the appropriate time by selling to a competitor whose purchase would require the DOJ's approval.

Plaintiffs also assert claims under vicarious liability theories, arguing that even if there is insufficient evidence to find that Lion LLP participated in the conspiracy directly, it should be held responsible for any conduct of Lion (Americas).  Again, the evidence shows that Lion (Americas) personnel acted in their capacities as Lion (Americas) employees, and there is insufficient evidence to show that their conduct should be imputed to Lion LLP.  *See United States* v. *Bestfoods*, 524 U.S. 51 (1998).

## II.    SUMMARY OF PLAINTIFFS' CLAIMS

Plaintiffs claim that the Lion Companies participated in the alleged conspiracy in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, and of various state law analogues.  The essential elements of a Section 1 Sherman Act claim are: "(1) an agreement among two or more persons or distinct business entities; (2) which is intended to harm or unreasonably restrain competition; and (3) which actually causes injury to competition." (Docket No. 283 at 8 (citation omitted).)  The law governing Plaintiffs' state law claims is further addressed *infra* and in the Memorandum of Contentions of Fact and Law of Defendants StarKist Co. and Dongwon Industries Co., Ltd., filed today, which the Lion Companies hereby join and incorporate by reference.

Plaintiffs also seek to hold Lion LLP vicariously liable for Lion (Americas) under the theories that: (1) Lion LLP and Lion (Americas) are a "single

economic unit" under the single-entity doctrine established in *Arandell Corp.* v. *Centerpoint Energy Servs.*, 900 F.3d 623 (9th Cir. 2018); (2) Lion (Americas) was the "agent" of Lion LLP; and (3) the conduct of Lion (Americas) employees Eric Lindberg, Jeff Chang, and/or Jacob Capps should be "imputed" to Lion LLP because they were acting "on behalf of" Lion LLP.[2]

### III.   LION LLP'S CONTENTIONS OF FACT AND LAW REGARDING PERSONAL JURISDICTION

#### A. Points of Law Regarding Personal Jurisdiction

A United States court may not exercise personal jurisdiction over a foreign entity in a manner inconsistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Morrill* v. *Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017). "Constitutional due process requires that defendants 'have certain minimum contacts' with a forum state 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Id.* (quoting *Int'l Shoe Co.* v. *Washington*, 326 U.S. 310, 316 (1945)). "In determining whether personal jurisdiction is present . . . the 'primary concern' is 'the burden on the defendant.'" *Bristol-Myers Squibb Co.* v. *Superior Ct. of California*, *San Francisco Cnty.*, 582 U.S. 255, 263 (2017) (citation omitted). "The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." *Ranza* v. *Nike, Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015).

A court may exercise personal jurisdiction over a foreign defendant on one of two recognized bases: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb*,

---

[2]   Plaintiffs previously asserted additional vicarious liability (alter ego) claims but abandoned those theories after the Court rejected them following the Lion Companies' motions to dismiss. *See* Section VIII, *infra*.

582 U.S. at 262 (quoting *Goodyear Dunlop Tires Operations, S.A.* v. *Brown*, 564 U.S. 915, 919 (2011)).  General jurisdiction over a business entity, *i.e.*, jurisdiction to hear "any and all claims against [it]," is justified "only when the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'"  *Daimler AG* v. *Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear*, 564 U.S. at 919).  Where general jurisdiction does not lie, jurisdiction over a foreign defendant is proper only where "the suit 'arise[s] out of or relate[s] to the defendant's contacts with the forum,'" *i.e.*, where there is specific jurisdiction. *Id*. at 127 (citations omitted).  The paradigmatic bases for general jurisdiction over a business are the business's "place of incorporation and principal place of business." *Id.* at 137 (alterations and citations omitted).

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotation marks omitted).  "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *InfoSpan, Inc.* v. *Emirates NBD Bank PJSC*, 903 F.3d 896, 902 (9th Cir. 2018) (quoting *Axiom Foods* v. *Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)).

> Two principles animate the "defendant-focused" inquiry.  First, the relationship between the nonresident defendant, the forum, and the litigation "must arise out of contacts that the 'defendant himself' creates with the forum State."  Second, the minimum contacts analysis examines "the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there."  It follows that "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction."

*Id.* (quoting same) (internal citations omitted) (emphasis omitted in original).

Exercise of specific jurisdiction over a non-resident defendant is permissible only where three requirements are met:

> (1) the defendant either "purposefully direct[s]" its activities or "purposefully avails" itself of the benefits afforded by the forum's laws; (2) the claim "arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction [] comport[s] with fair play and substantial justice, *i.e.*, it [is] reasonable."

*Williams* v. *Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017) (quoting *Dole Food Co.* v. *Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)) (alterations in original).[3]

"The Ninth Circuit has not adopted a conspiracy theory of personal jurisdiction, and district courts within the Ninth Circuit have rejected it." *Hilsenrath* v. *Equity Tr. (Jersey) Ltd.*, 2008 WL 728902, at *4 n.5 (N.D. Cal. Mar. 17, 2008) (citation omitted), *aff'd* 402 F. App'x 300 (9th Cir. 2010); *see also UMG Recordings, Inc.* v. *Glob. Eagle Ent., Inc.*, 2015 WL 12752879, at *8–*9 (C.D. Cal. July 2, 2015) (collecting cases). Therefore, in assessing "whether [a plaintiff's] claim arises out of or results from the Defendants' forum-related activities," the Ninth Circuit "use[s] a 'but for' test." *Mattel, Inc.* v. *Greiner & Housser GmbH*, 354 F.3d 857, 864 (9th Cir. 2003) (quoting *Harris Rutsky & Co. Ins. Servs., Inc.* v. *Bell & Clements Ltd.*, 328 F.3d 1122, 1131–32 (9th Cir. 2003)). Plaintiffs must prove that "but for" Defendants' contacts with the forum, the claims would not have arisen. *See Ballard* v. *Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995).

In consideration of whether the exercise of specific personal jurisdiction would be reasonable and "comport with fair play and substantial

---

[3]     As Plaintiffs' claims are "premised on alleged tortious conduct by Defendants," "the purposeful availment test does not apply." *Morrill*, 873 F.3d at 1136 (citation omitted).

justice," courts consider factors such as "the extent of the defendant's purposeful interjection into the forum state" and "the burden on the defendant in defending in the forum." *Bancroft & Masters, Inc.* v. *Augusta Nat. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000), *overruled in part on other grounds by Yahoo! Inc.* v. *La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199 (9th Cir. 2006) (citation omitted); *see also Asahi Metal Indus. Co. Ltd.* v. *Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 114–16 (1987) (exercise of personal jurisdiction over foreign corporation "would be unreasonable and unfair" given "severe" burden placed onto corporation to "traverse the distance between . . . Japan and the Superior Court of California" to "defend [itself] in a foreign legal system.").

Where a "defendant contests personal jurisdiction at trial," the "plaintiff carries the burden of proving personal jurisdiction by a preponderance of the evidence." *Konvitz* v. *Midland Walywn Cap., Inc.*, 129 F. App'x 344, 346 (9th Cir. 2005) (citations omitted).

## B. Material Facts Regarding Personal Jurisdiction

Lion LLP will present evidence that it is not subject to personal jurisdiction within California, including, but not limited to, the following facts:

- Lion LLP is organized under the laws of the United Kingdom;
- Lion LLP's offices are located in the United Kingdom;
- None of Lion LLP's employees, Members, or Designated Members reside or are domiciled in the United States;
- Lion LLP has no business operations in the United States;
- Lion LLP did not commit a single intentional act affecting the pricing, marketing, or sale of packaged seafood products in California or the United States;
- Lion LLP was not engaged in any activity without which Plaintiffs' claims would not have arisen; that is, Lion LLP was not a "but-for" cause of any of Plaintiffs' alleged harms;

- Lion LLP has been subjected to a severe financial burden defending in this forum; and

- Lion LLP has contested personal jurisdiction ever since its initial involvement in this litigation.

## IV.   THE LION COMPANIES' CONTENTIONS OF FACT AND LAW REGARDING DIRECT PARTICIPATION

### A. Points of Law Regarding Direct Participation

To prove a violation of Section 1 of the Sherman Act, Plaintiffs must prove that the conspiracy existed and that the Lion Companies knowingly became a member of that conspiracy.  *See* AMERICAN BAR ASSOCIATION ANTITRUST SECTION, MODEL JURY INSTRUCTIONS IN CIVIL ANTITRUST CASES Ch. 2.A.1 (A.B.A., Chicago, Ill., 2016).   To prevail, Plaintiffs must prove that each Lion Company had a "'conscious commitment to a common scheme designed to achieve an unlawful objective.'"  *Toscano* v. *Pro. Golfers Ass'n*, 258 F.3d 978, 983 (9th Cir. 2001).

Plaintiffs must prove their claims through direct or circumstantial evidence.  "Direct evidence in a Section 1 conspiracy must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted."  *In re Citric Acid Litig.*, 191 F.3d 1090, 1094 (9th Cir. 1999) (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)).  There is no dispute in this case that Plaintiffs do not have any direct evidence that either Lion Company knowingly participated in an unlawful price-fixing agreement in violation of Section 1 of the Sherman Act or any state laws but instead rely entirely on circumstantial evidence.

"Circumstantial evidence can establish an antitrust conspiracy at trial or at summary judgment."  *Orchard Supply Hardware LLC* v. *Home Depot USA, Inc.*, 939 F. Supp. 2d 1002, 1009 (N.D. Cal. 2013) (citing *Monsanto Co.* v. *Spray-Rite Serv. Corp.*, 465 U.S. 752, 764–65 (1984)).  Where a plaintiff seeks to prove a conspiracy by relying exclusively on circumstantial evidence, the defendant "can

1  'rebut allegations of a conspiracy by showing a plausible and justifiable reason for

2  its conduct that is consistent with proper business practice,'" shifting the burden

3  "back to the plaintiff to provide specific evidence tending to show that the defendant

4  was not engaging in permissible competitive behavior."  *Cnty. of Tuolumne* v.

5  *Sonora Cmty. Hosp.*, 236 F.3d 1148, 1156 (9th Cir. 2001) (quoting *In re Citric Acid*,

6  191 F.3d at 1094).  That is, "conduct as consistent with permissible competition as

7  with illegal conspiracy does not, standing alone, support an inference of antitrust

8  conspiracy," *Matsushita Elec. Indus. Co.* v. *Zenith Radio Corp.*, 475 U.S. 574, 588

9  (1986) (quoting *Monsanto*, 465 U.S. at 764), and it is Plaintiffs' burden to "provide

10  specific evidence tending to show that [both Lion Companies were] not engaging in

11  permissible competitive behavior."  *Cnty. of Tuolumne*, 236 F.3d at 1156.

## B. Material Facts Regarding Direct Participation

13  1.  <u>Lion (Americas)</u> will present evidence that its conduct was

14  consistent with permissible competition, and that it did not knowingly (or otherwise)

15  join or directly participate in any alleged conspiracy.  This evidence will show that:

16  • Lion (Americas) never priced, marketed, or sold a single can of

17  tuna;

18  • Lion (Americas) did not learn about conspiratorial conduct

19  between Bumble Bee and its competitors until <u>after</u> the DOJ

20  announced its investigation;

21  • Lion (Americas) did not direct Bumble Bee employees to enter

22  into or maintain an illegal price-fixing conspiracy, and the

23  Bumble Bee employees who later admitted to engaging in price-

24  fixing concealed their conduct from both Lion (Americas) and

25  Lion LLP;

26  • Due diligence on Bumble Bee during 2010 by Lion (Americas)

27  and its third-party advisors, including KPMG International

28  Limited, AlixPartners LLP, Simpson Thacher & Bartlett LLP,

and Marsh LLC, revealed no indication that Bumble Bee was participating in any unlawful activity;

- The due diligence conducted by Lion (Americas) was typical of diligence conducted by investors in the private equity industry;

- Lion (Americas)' valuation analyses of Bumble Bee were typical of those performed in the private equity industry;

- Lion (Americas)' recommendation of Bumble Bee as an investment for Fund III was solely due to Lion (Americas)' belief that Bumble Bee fit with the Lion Companies' lawful corporate strategic goals, and was not due to the discovery of any unlawful activity on the part of Bumble Bee;

- Lion (Americas) recommended the investment into Bumble Bee because it was typical of Lion LLP's investment philosophy and of the private equity industry more generally with respect to focus on equity value creation, use of financial leverage, and effecting strategic and operational changes;

- Lion (Americas) planned from the outset for the eventual sale of Bumble Bee, and was aware that any such sale to another packaged seafood products market participant would require antitrust review by the DOJ Antitrust Division;

- The structure of Fund III's investment in Bumble Bee—a "leveraged buyout" involving existing management—was typical of the types of acquisitions that private equity sponsors conduct;

- Bumble Bee's debt leverage was within industry norms for targets of leveraged buyouts;

- Lion (Americas) personnel met with J.C. Kim, Thiraphong Chansiri, and other seafood industry representatives to explore

mutually beneficial transactions, including co-investments in other food companies and the possibility of selling Bumble Bee to a competitor such as TUG; understood what types of information could and could not be discussed with competitors; and never "crossed any lines";

- Lion (Americas) personnel reasonably interpreted emails received from outside sources, including Bumble Bee's management, to contain ordinary and legitimate competitive intelligence of the packaged seafood products market;

- The Lion Companies understood any references to "rational pricing" to be consistent with the ordinary business usage of that term, *i.e.*, a product being sold for a profit, rather than at a loss;

- Emails from Lion (Americas) employees reflected Lion (Americas)' belief that Bumble Bee and its competitors were setting and maintaining prices for independent, lawful business reasons, including reactions to market pressure, changes in input costs, and competitors' actions and public statements;

- Lion (Americas) did not manage Bumble Bee's day-to-day operations.   It instead participated in high-level strategic governance consistent with Lion (Americas)' management and oversight of other portfolio companies and with common private equity industry practices; and

- Lion (Americas) earned its revenue exclusively from Lion LLP—not Bumble Bee—in exchange for providing investment advice; did not have any direct or indirect ownership interest in Bumble Bee; and could not, and did not, stand to profit from Bumble Bee's performance.

2. <u>Lion LLP</u> will present evidence that its conduct was consistent with permissible competition and that it did not knowingly (or otherwise) join or "directly participate" in any alleged conspiracy:

- Lion LLP never priced, marketed, or sold a single can of tuna;
- Lion LLP did not learn about conspiratorial conduct between Bumble Bee and its competitors until after the DOJ announced its investigation;
- Lion LLP did not direct Bumble Bee employees to enter into or maintain an illegal price-fixing conspiracy, and the Bumble Bee employees who later admitted to engaging in price-fixing concealed their conduct from both Lion (Americas) and Lion LLP;
- Lion LLP's general oversight structure and the roles of its personnel in connection with the Bumble Bee investment reflected standard private equity industry norms and was consistent with Lion LLP's role for other portfolio companies;
- None of the reports or information Lion LLP received from Lion (Americas) contained information that would have revealed the existence of a price-fixing conspiracy; and
- Lion LLP did not have any ownership interest—direct or indirect—in Bumble Bee.

## V. THE LION COMPANIES' CONTENTIONS OF FACT AND LAW REGARDING STATE LAW CLAIMS

### A. Points of Law Regarding State Law Claims

The Lion Companies join and incorporate by reference the points of law regarding state law claims presented in the Memorandum of Contentions of Fact and Law of Defendants StarKist Co. and Dongwon Industries Co., Ltd., filed today.

## B. Material Facts Regarding State Law Claims

The material facts relating to Plaintiffs' state law claims are the same as those that the Lion Companies will present regarding Plaintiffs' federal law claims as outlined above in Section IV.B., *supra*.

## VI. THE LION COMPANIES' CONTENTIONS OF FACT AND LAW REGARDING LION LLP'S VICARIOUS LIABILITY

### A. Points of Law Regarding Plaintiffs' Agency Theory

"It is a general principle of corporate law deeply 'ingrained in our economic and legal systems' that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *Bestfoods*, 524 U.S. at 61 (citation omitted). To establish that Lion (Americas) was Lion LLP's agent, Plaintiffs must show "facts that demonstrate 'parental control of the subsidiary's internal affairs or daily operations.'" *In re Dynamic Random Access Memory Antitrust Litig.*, 2007 WL 9752971 at *4 (N.D. Cal. Feb. 20, 2007) (citing *Doe* v. *Unocal Corp.*, 248 F.3d 915, 927 (9th Cir. 2001), *abrogated on other grounds by Williams*, 851 F.3d at 1021. Such control "that gives rise to agency is comprehensive, immediate, and day-to-day, while control that is supervisory and even prescriptive may not indicate agency." *ING Bank* v. *Ahn*, 758 F. Supp. 2d 936, 941–42 (N.D. Cal. 2010).

### B. Material Facts Undermining Plaintiffs' Agency Theory

The Lion Companies will present evidence that Lion LLP exerted ordinary and supervisory control over Lion (Americas), not the comprehensive and immediate level of control necessary to hold Lion LLP vicariously liable for Lion (Americas)' actions under an agency theory. The evidence will show:

- Lion LLP's oversight of Lion (Americas) was high level—Lion LLP remained informed of major developments and not day-to-day details or operations;

- There are no facts showing that Lion LLP had comprehensive, immediate, and day-to-day control over Lion (Americas)' operations;

- Lion LLP is exclusively responsible for managing the investment funds under the Alternative Investment Fund Managers Directive, a European Union regulation;

- Pursuant to European Union regulations, a strict division between Lion LLP and Lion (Americas) exists to ensure compliance;

- Lion (Americas) employees acted in the interests of Lion (Americas) and did not cede day-to-day control over their business to Lion LLP; and

- The relationship between Lion LLP and Lion (Americas) was typical of similar relationships in the private equity industry.

## C. Points of Law Regarding Plaintiffs' Single-Entity Theory

*Arandell Corp.* v. *Centerpoint Energy Services, Inc.*, 900 F.3d 623 (9th Cir. 2018), which is derived from the Supreme Court's holding in *Copperweld Corp.* v. *Independence Tube Corp.*, 467 U.S. 752 (1984), holds that "[a] wholly owned subsidiary that engages in coordinated activity in furtherance of the anticompetitive scheme of its parent and/or commonly owned affiliates is deemed to engage in [] coordinated activity with the purposes of the single 'economic unit' of which it is a part." 900 F.3d at 632. The coordinated activity must be activity that furthers the anticompetitive scheme. *Id.*; *cf. Copperweld Corp.*, 467 U.S. at 771 ("[A] rule that punished coordinated conduct simply because a corporation delegated certain responsibilities to autonomous units might well discourage corporations from creating divisions with their presumed benefits. This would serve no useful antitrust purpose but could well deprive consumers of the efficiencies that decentralized management may bring."). Further, this rule only establishes the purpose (or

knowledge) element of an antitrust violation.   Plaintiffs must also prove the subsidiary's "own acts in purposeful and knowing furtherance of the alleged inter-enterprise price-fixing conspiracy." *Arandell*, 900 F.3d at 634.

### D. Material Facts Undermining Plaintiffs' Single-Entity Theory

The Lion Companies will present evidence that Lion LLP did not have an anticompetitive purpose, and Lion (Americas) did not engage in coordinated activity with Lion LLP in furtherance of any conspiracy and/or in furtherance of an anticompetitive scheme.   Moreover, even if *Arandell* allowed a plaintiff to impute the anticompetitive purpose of a subsidiary to its parent—which it does not—the Lion Companies will present similar evidence that Lion (Americas) did not have an anticompetitive purpose and that Lion LLP did not engage in coordinated activity with Lion (Americas) in furtherance of any conspiracy and/or an anticompetitive scheme.   These facts include:

- Lion LLP and Lion (Americas)' only "coordinated activity" with respect to the Bumble Bee investment was Lion LLP's decision, after approving the investment by Fund III, to delegate the task of monitoring the investment to Lion (Americas);

- The decision to have Lion (Americas) serve as a non-discretionary investment advisor to Lion LLP with respect to the Bumble Bee investment is consistent with private equity industry practice;

- The corporate relationship between Lion (Americas) and Lion LLP is standard in the private equity industry, and had no unusual characteristics or qualities; and

- Lion LLP's decision to delegate the task of monitoring the investment in Bumble Bee is the only "coordinated activity" between Lion LLP and Lion (Americas), was consistent with

normal practices in the private equity industry, and was not related to any anticompetitive scheme.

- The Lion Companies also incorporate by reference the facts discussed in Section IV.B *supra*.

### E. Points of Law Regarding Plaintiffs' Theory that Lion LLP Is Liable for the Acts of Lion (Americas) Personnel

It is a "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership" and that "courts generally presume 'that the directors are wearing their "subsidiary hats" and not their "parent hats" when acting for the subsidiary.'" *Bestfoods*, 524 U.S. at 69–70 (1998) (citations omitted). To impute the conduct of Messrs. Lindberg, Chang and/or Capps while performing their Lion (Americas) job duties to Lion LLP, Plaintiffs must show that their actions were taken in the interests of Lion LLP and not Lion (Americas). (*See* ECF No. 2270 at 16; *Bestfoods*, 524 U.S. at 70 n.13 ("[I]t is prudent to say only that the presumption that an act is taken on behalf of the corporation for whom the officer claims to act is strongest when the act is perfectly consistent with the norms of corporate behavior, but wanes as the distance from those accepted norms approaches the point of action by a dual officer plainly contrary to the interests of the subsidiary yet nonetheless advantageous to the parent.").)

### F. Material Facts Undermining Plaintiffs' Theory that Lion LLP Is Liable for the Acts of Lion (Americas) Personnel

The Lion Companies will present evidence that Messrs. Lindberg, Chang, and Capps were performing duties to monitor and manage Fund III's investment in Bumble Bee for Lion (Americas), not for Lion LLP, and did not take any actions for the benefit of Lion LLP but not for the benefit of Lion (Americas), including, but not limited to, the following:

- The actions of Lion (Americas) personnel—evaluating a potential investment in Bumble Bee, recommending that investment, and monitoring Bumble Bee's performance for Fund III—were at all times consistent with the interests of Lion (Americas), which was Lion LLP's U.S. investment advisor;

- Messrs. Lindberg, Chang, and Capps were at all times exclusively employees of Lion (Americas), were paid compensation only by Lion (Americas), and were never considered Lion LLP employees;

- Messrs. Lindberg, Chang and Capps were "Members" of Lion LLP, which means only that they were entitled to a certain share of Lion LLP's profits, and does not mean they were employees of Lion LLP; and

- Neither Lion LLP nor Lion (Americas) was ever an "owner" of Bumble Bee.

- The Lion Companies incorporate by reference the facts discussed in Section IV.B *supra*.

## VII.   THE LION COMPANIES' CONTENTIONS OF FACT AND LAW REGARDING DAMAGES

### A. Points of Law Regarding Damages

The Lion Companies join and incorporate by reference the damages analysis presented in the Memorandum of Contentions of Fact and Law of Defendants StarKist Co. and Dongwon Industries Co., Ltd., filed today. The Lion Companies further state the following, additional points of damages law.

To recover damages, EPPs bear the burden, as indirect purchasers, to show that DPPs passed on any alleged overcharges. EPPs and DPPs may not <u>both</u> recover the passed-on amount of any alleged overcharge, because subjecting a defendant to duplicative liability violates due process. *See W. Union Tel. Co.* v.

*Commonwealth of Pennsylvania*, 368 U.S. 71, 76–77 (1961) (requiring defendant to "pay a single debt more than once" would be to "take its property without due process of law"), *abrogated by statute on other grounds as recognized in Delaware* v. *Pennsylvania*, 598 U.S. 115, 128–129 (2023).  Supreme Court precedent prohibits holding Defendants liable twice for the same overcharge, and then collecting damages based on a trebling thereof.  *See id.*; *see also State Farm Mut. Auto. Ins. Co.* v. *Campbell*, 538 U.S. 408, 417 (2003) ("To the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property.") (citation omitted).

## B. Material Facts Regarding Damages

- The Lion Companies did not profit at all, in any way, from the alleged conspiracy;
- Fund III lost the value of its equity investment in Bumble Bee;
- Pricing decisions informed by knowledge about how competitors may act do not necessarily violate antitrust laws;
- Rising input costs put upward pressure on the prices that tuna companies needed to charge to maintain profitable during the conspiracy period;
- Throughout most or all of the conspiracy, the overcharge—the incremental price that customers would not have paid but for the existence of an effective conspiracy—was at, or near, zero; and
- Reliable econometric modelling of price behavior confirms that small overcharges during the alleged conspiracy period are statistically indistinguishable from zero.

## VIII. ABANDONED ISSUES

### A. Vicarious Liability – Law of the Case

Plaintiffs are precluded from arguing at trial that Lion (Americas) and/or Lion LLP are liable for Bumble Bee's conduct under any vicarious liability

theory.  The Court rejected Plaintiffs' theory that Bumble Bee is the alter ego of either of the Lion Companies in its 2018 ruling granting the Lion Companies' first motion to dismiss.  *See* ECF No. 1362, at 37–41, 70 ("The Court finds no alter ego liability between Bumble Bee and any Lion entity.").  When DPPs amended their complaint, they abandoned this claim accordingly.  *Compare*, *e.g.*, ECF No. 911 (DPPs' Third Amended Complaint) ¶ 35 ("Lion Capital is named as a Defendant in this case as a result of its direct participation in the conspiracy alleged herein and as the *alter ego* for Bumble Bee") *with* ECF No. 1460 (DPPs' Fourth Amended Complaint, abandoning this *alter ego* theory).  Nor do Plaintiffs allege any vicarious liability theories with respect to Bumble Bee in their operative complaints.

Were Plaintiffs to argue that they did not abandon their vicarious liability theories with respect to Bumble Bee because, in their opposition to the Lion Companies' Motion for Summary Judgment they argued that the Lion Companies, should be (1) "Bound as Principals by Bumble Bee's Collusive Conduct" under the federal common law of agency (*see* ECF No. 3062), and/or (2) liable under the "single-entity doctrine that encompasses the coordinated activity of Lion Capital, Lion Americas *and* Bumble Bee" (*see id*. (emphasis in original)), nothing changes. For the reasons stated in the Lion Companies' Reply, *see* ECF No. 3070 at 11–17, it was improper for Plaintiffs to assert those theories, which are nothing more than rehashes of their alter ego theory, given the law of the case that Bumble Bee is not the alter ego of either Lion Company, which Plaintiffs never challenged.  *See*, *e.g.*, *Mayweathers* v. *Terhune*, 136 F. Supp. 2d 1152, 1153–54 (E.D. Cal. Apr. 5, 2001) ("The law of the case doctrine requires that when a court decides on a rule, it should ordinarily follow that rule during the pendency of the matter" and "promotes finality and efficiency of the judicial process by protecting against the agitation of settled issue . . . .") (citations omitted).

It was improper to re-raise those theories in opposition to summary judgment when Plaintiffs did not allege those dismissed theories in their complaints.

*See*, *e.g.*, *Comprehensive Med. Ctr.*, *Inc.* v. *State Farm Mut. Auto. Ins.*, 2023 WL 7312970, at *6 (C.D. Cal. Sep. 5, 2023) ("As an initial matter, a motion for summary judgment is framed by the allegations in the pleadings.  A plaintiff cannot allege one theory of liability in a complaint and then 'turn around and surprise [a defendant] at the summary judgment stage' with a different theory of liability."); *see also Ray* v. *State Farm Mut. Auto. Ins. Co.*, 2021 WL 4902357, at *1 (9th Cir. Oct. 21, 2021) ("It was improper for [plaintiffs] to advance these new theories for the first time in its opposition to summary judgment."); *Lackman* v. *Blazin Wings, Inc.*, 2022 WL 563235, at *6 (S.D. Cal. Feb. 24, 2022) (granting summary judgment because "Plaintiff is the master of her complaint.  After two amendments to her complaint, she cannot now argue a new theory of liability for the first time in opposition to summary judgment.").  As noted, DPPs dropped the alter ego claim while amending their complaint to attempt to plead around the Court's first order dismissing the Lion Companies.  *See generally* ECF No. 1460 (DPPs' Fourth Amended Complaint) ("DPPs' Complaint").  DPPs never alleged in their complaint that Bumble Bee was an agent of either Lion Company despite making these allegations as to other entities.[4]  *See id.* ¶ 31 (alleging Tri-Union is agent of Thai Union Group), ¶ 40 (alleging Lion (Americas) is agent of Lion LLP).  Nor did DPPs—or EPPs—even allege that Bumble Bee and the Lion Companies were a "single-entity" despite making the same allegations as to others.  *See id.* ¶ 39, EPPs' Complaint ¶ 84 (alleging Lion (Americas) and Lion LLP "act[] as a single enterprise"); EPPs' Complaint at 50 ("COSI and TUG Act As A Single Entity"); *id.* at 56 ("Dongwon And StarKist Act As A Single Entity"); *id.* at 66 ("Del Monte And StarKist Acted As Single Entities").

---

[4]    The best the EPPs could argue is to point to a boilerplate footnote in their Sixth Amended Complaint.  *See* ECF No. 1461 (EPPs Sixth Amended Complaint) ("EPPs' Complaint") at 13 n.5 (passing reference to "agent, instrumentality, and *alter ego*.").  The Parties did not engage in discovery to identify evidence that would be relevant to this already dismissed claim, nor did Plaintiffs allege any facts to support it.

1    Given the law of the case, and the fact that at no other point in the nearly
2  six years since the Court denied Plaintiffs' alter ego theory did any Plaintiff attempt
3  to raise any vicarious liability theory against the Lion Companies with respect to
4  Bumble Bee, the Lion Companies were deprived of the opportunity to develop a
5  record to defend against any such theories and would be severely prejudiced if
6  Plaintiffs could suddenly argue at trial that either Lion Company is vicariously liable
7  for Bumble Bee.[5]

8    **B. EPPs' Claims under Guam and Illinois Law**

9    The Lion Companies join and incorporate by reference the statement
10  and analysis presented in the Memorandum of Contentions of Fact and Law of
11  Defendants StarKist Co. and Dongwon Industries Co., Ltd., filed today, that the
12  EPPs have abandoned their claims related to Guam and their class claims related to
13  Illinois.

14    **IX.   EXHIBITS**

15    Pursuant to the Court's September 29, 2023 Order re: Trial Structure
16  and Scheduling (ECF No. 3124), Local Rule 16.1(f)(4)(c), and Federal Rule of
17  Civil Procedure 26(a)(3)(A)(iii), Lion (Americas) and Lion LLP hereby designate
18  the following exhibits they expect to offer at trial.  The Lion Companies reserve
19  the right to use any other exhibits (1) designated by other parties to this action,
20  and/or (2) for impeachment.

21

22

23

24

25

26
27  [5]    The Lion Companies also incorporate by reference their Reply in Support of
      Summary Judgment (ECF No. 3070), and further join and incorporate by reference
      the vicarious liability analysis presented in the Memorandum of Contentions of
28  Fact and Law of Defendants StarKist Co. and Dongwon Industries Co., Ltd., filed
      today.

*In re: Packaged Seafood Products Antitrust Litigation*

Case No. 3:15-md-02670-DMS-MSB

**Lion Companies' Exhibits**

| Exhibit Number | Date Marked | Date Admitted | Description |
|---|---|---|---|
| A | | | 2007-07-06 Amended and Restated Limited Liability Partnership Deed relating to Lion Capital LLP (LINDBERG_0007– LINDBERG_0040) |
| B | | | 2008-09-12 SEC Guide to Definitions of Terms Used in Form D |
| C | | | 2012-02-13 Lion Capital (Americas), Inc., Investment Advisor Brochure |
| D | | | 2017-03-30 Lion Capital (Americas), Inc., Investment Advisor Brochure (LION_00014065–LION_00014075) |
| E | | | 2010 Presentation by J.P. Morgan, titled "Project Big Catch" (LION_00027868–LION_00027931) |
| F | | | 2010-09-26 Email from J. Chang to L. Lea, re: Bumble Bee Materials, with attachments titled "BB Interim IC Update v8a", "Bumble Bee Case Comparison (AllBond)", and "Bumble Bee Case Comparison (Bankbond)" (LION_00039903– LION_00039980) |
| G | | | 2010-09-27 Email from J. Chang to All Partners and All Directors, re: Bumble Bee IC update, with attachments titled "BumbleBee Operating Model 28sept10", "BB Interim IC Update 28sept10 FINAL", "BumbleBee LBO Model (AllBond) 28sept10", and "BumbleBee LBO Model (BankBond) 28sept10" (LION_00039981–LION_00040094) |
| H | | | 2010-10-10 Email from J. Chang to All Executives, re: Bumble Bee – IC Materials, with attachments titled "BB Final IC Update 12oct10 FINAL" and "100802 BumbleBee LBO model v59" (LION_00040095– LION_00040147) |
| I | | | 2011-02-04 Email from R. Darwent to L. Lea, re: Bumble Bee Holdco PIK (LION_00070130– LION_00070132) |

| | | | |
|---|---|---|---|
| J | | | 2011-11-11 Email from K. McNeil to L. Lea, J. Capps, E. Lindberg, J. Chang, J. Chou, and C. Lischewski, re: November 2011 Meeting Materials, with attachment titled "20111115 Board Meeting 2011_FINAL" (LION_00021860–LION_00021971) |
| K | | | Lion Capital Fund III (USD), L.P., Year Ended 31 December 2011, Confidential Report (LION_00015274–LION_00015297) |
| L | | | 2012-03-18 Email from E. Lindberg to L. Lea, R. Darwent, and J. Ferran, re: Bumble Bee updates (LION_00000342–LION_00000343) |
| M | | | 2012-03-23 Email from K. McNeil to L. Lea, J. Capps, E. Lindberg, J. Chang, J. Chou, and C. Lischewski, re: March 2012 Board Materials, with attachments titled "Board Meeting Mar 2012_FINAL" and "March 2012 Board_Appendix A" (LION_00020752–LION_00020884) |
| N | | | 2012-03-23 Email from J. Capps to M. Barry, re: FW: March 2012 Board Materials, with attachments titled "Board Meeting Mar 2012_FINAL" and "March 2012 Board_Appendix A" (LION_00025952–LION_00026084) |
| O | | | 2012-05-29 Email from E. Lindberg to L. Lea, R. Darwent, and J. Ferran, re: BB Bangkok meetings recap (LION_00000341) |
| P | | | 2013-01-25 Email from L. Lea to T. Bondy, re: Bumble Bee Update (LION_00071002) |
| Q | | | 2014-12-19 Email from L. Lea to E. Lindberg, re: RE: RE: RE: RE: (LION_00009305–LION_00009309) |
| R | | | 2008-09-15 Letter from J. Dunlop to E. Lindberg (LION_00064764–LION_00064765) |
| S | | | 2010-09-10 Bumble Bee Foods, LP Management Presentation (BBDOJ-000914624–BBDOJ-000914723) (Government Ex. 124) |
| T | | | 2010-10-06 Email from R. Wagner to R. Wagner, re: Big Catch - KPMG Report, with attachment titled "Project Big Catch DRAFT Report 10 6 10" (LION_00066110–LION_00066237) |
| U | | | 2010-12-20 Report from KPMG, titled "Lion Capital LLP Project Big |

| | | | |
|---|---|---|---|
| 1 | | | | Catch" (LION_00017460–LION_00017506) |
| 2–4 | V | | | 2011-01-05 Email from J. Chang to J. Capps, C. Lischewski, and E. Lindberg, re: Reports, with attachment titled "Lion Capital Big Catch Final Report_10_5_10vFinal" (LION_00040180–LION_00040323) |
| 5–6 | W | | | 2011-01-31 Email from C. Lischewski to E. Lindberg, re: TU (BB_Civil_000025786–BB_Civil_000025787) |
| 7–9 | X | | | 2011-02-09 Email from J. Chang to C. Forman, J. Dodson, S. Cruikshank, and S. Murphy, re: New Project - Need your input (LION_00060041–LION_00060042) |
| 9–13 | Y | | | 2011-02-26 Email from J. Dodson to J. Dunlop, et al., re: Lion Bumble Bee - revised paper to include tax analysis, with attachments titled "Big Catch_2_26_11 Post-acquisition Leverage Distribution sent" and "Big Catch_2_26_11 Post-acquisition Leverage Distribution sent" (LION_00056372–LION_00056396) |
| 14–15 | Z | | | Bumble Bee Foods, S.à r.l., 2011 Annual Report (LION_00017669–LION_00017730) |
| 15–16 | AA | | | 2012-02-03 Email from E. Lindberg to T. Chansiri, re: Greeting (LION_00002422–LION_00002424) |
| 17–19 | AB | | | 2012-11-14 Email from J. Chang to K. Mayer and E. Lindberg, re: FW: Lion Capital AIM Meeting Presentation, with attachment titled "Lion Annual Meeting v8" (LION_00004725–LION_00004739) |
| 20–21 | AC | | | 2013-01-23 Email from C. Lischewski to E. Lindberg, J. Capps, T. Bondy, and J. Chang, re: FW: Cosi (LION_00027827) |
| 22–23 | AD | | | 2013-01-23 Email from Lindberg to Lischewski, re: Cosi (BBDOJ-001189853–BBDOJ-001189854) (Government Ex. 298) |
| 24–25 | AE | | | 2013-01-22 Email from W.H. Lee to C. Lischewski and J. Tharp, re: Cosi (BB_Civil_001166820–BB_Civil_001166821) |
| 26–28 | AF | | | 2013-1-25 Email from K. Worsham to C. Lischewski, D. Nestojko, S. Cameron, D. Melbourne, J. Tharp, and D. George, re: Cosi (BBDOJ-000029135–BBDOJ-000029137) (Government Ex. 299) |

| | Exhibit Number | Date Marked | Date Admitted | Description |
|---|---|---|---|---|
| 1 2 3 | AG | | | 2013-1-25 Email from K. Worsham to C. Lischewski, D. Nestojko, S. Cameron, D. Melbourne, J. Tharp, and D. George, re: Cosi (BB_Civil_000040402– BB_Civil_000040404) |
| 4 5 | AH | | | 2014-09-17 Email from E. Lindberg to J. Chang, re: Project Jingle Update Call (LION_40002665– LION_40002668) |
| 6 7 8 | AI | | | 2014-12-18 Email from J. Chang to E. Lindberg and J. Capps, re: FW: Sale of Bumble Bee Foods, with attachment titled "Lion Capital Sale of Bumble Bee Foods (18Dec14) FINAL" (LION_00041743– LION_00041748) |
| 9 10 11 | AJ | | | 2016-07-01 P. Gompers, S. Kaplan, and V. Mukharlyamov, "What do private equity firms say they do?," Journal of Financial Economics |

Note: The Lion Companies reserve the right to introduce any exhibits designated by any party to this action and reserve all rights to introduce other documents as necessary for rebuttal or impeachment purposes.

The Lion Companies conditionally designate the following exhibits, which they may use at trial depending upon the Court's evidentiary rulings on pending matters and the evidence presented by other parties at trial:

| Exhibit Number | Date Marked | Date Admitted | Description |
|---|---|---|---|
| AK | | | 2010-11-15 Memorandum prepared by S. Lee, re: Lion Capital Visit and Luncheon (DWI_000027409– DWI_000027413) |
| AL | | | 2010-11-15 Memorandum prepared by S. Lee, re: Lion Capital Visit and Luncheon (DWI_000027409E– DWI_000027413E) (Translated Version with Certificate of Accuracy) |
| AM | | | 2010-11-22 Email from E. Lindberg to C. Lischewski, re: fyi Lion portfolio review (LION_00028090– LION_00028091) |
| AN | | | 2012-01-16 Email from J. Chang to E. Lindberg and J. Capps, re: Brief Update re: BB (LION_00012609– LION_00012610) |
| AO | | | 2012-01-16 Email from C. Lischewski to E. Lindberg, re: Dongwon bidding for Calvo, with attachment titled "Dongwon vies for |

| | | | | |
|---|---|---|---|---|
| | | | | Calvo – Fi" (LION_00028190–LION_00028194) |
| | AP | | | 2012-02-06 Email from C. Lischewski to E. Lingberg, re: couple items (LION_00003886–LION_00003887) |
| | AQ | | | 2012-03-28 Email from J. Capps to J. Chang, re: Bumble Bee Board Meeting Summary (LION_00003933–LION_00003938) |
| | AR | | | 2012-03-28 Email from J. Chang to L. Lea, re: Bumble Bee Board Meeting Summary (LION_00012614–LION_00012615) |
| | AS | | | 2012-03-30 Email from E. Lindberg to L. Lea, re: US tuna pricing, with attachment titled "Starkist CEO_US tuna pricing is not sustainable-Intrafish" (LION_00064127, LION_00049861–LION_00049862) |
| | AT | | | 2012-03-31 Email from L. Lea to E. Lindberg, re: US tuna pricing (LION_00046511) |
| | AU | | | 2012-07-30 Email from K. Mayer to L. Lea, re: RE: (LION_00000547–LION_00000548) |
| | AV | | | 2018-10-18 Defendant Tri-Union Seafoods LLC d/b/a Chicken of the Sea International's Second Supplemental Responses and Objections to Plaintiffs' Second Set of Interrogatories – Interrogatory No. 1 |
| | AW | | | 2019-12-02 *U.S.A.* v. *Lischewski* Transcript of Proceedings (excerpt) |
| | AX | | | 2020-02-10 United States' Opposition to Defendant's Renewed Motion for Judgment of Acquittal Under Rule 29 (excerpt) |

## X.   WITNESSES

Pursuant to the Court's September 29, 2023 Order re: Trial Structure and Scheduling (ECF No. 3124), Local Rule 16.1(f)(4)(d), and Federal Rule of Civil Procedure Rules 26(a)(3)(A)(i) and (ii), Lion (Americas) and Lion LLP hereby designate the following individuals as witnesses that they may call at trial. The Lion Companies reserve the right to call or examine (1) any witnesses

designated by other parties to this action, and/or (2) any additional witnesses whose testimony may be necessary for rebuttal.

### A. Fact Witnesses

| Name | Last Known Address and Contact Information | Will Call | May Call | Method |
|------|-------------------------------------------|-----------|----------|--------|
| Lyndon Lea | c/o Counsel for the Lion Companies | X | | Live |
| Jeff Chang | 250 20th St., Santa Monica, CA 90402<br><br>(Telephone number available upon request) | X | | Live or By Designation |
| Jacob Capps | 629 26th St Manhattan Beach, CA 90266<br><br>(Telephone number available upon request) | X | | Live or By Designation |
| Eric Lindberg | c/o Sean Hecker,<br>Kaplan Hecker & Fink LLP,<br><br>350 5th Avenue, 63rd Floor, New York, NY 10118<br>(212) 763-0883 | X | | Live |
| Graham Tester | c/o Counsel for the Lion Companies | | X | Live |
| Scott Cameron | Thomas R. Calcagni<br>Calcagni Kanefsky LLP<br>1085 Raymond Blvd.<br>14th Floor<br>Newark, NJ 07102<br><br>(862) 397-1796 | | X | By Designation |
| Stephen Hodge | Steven M. Kowal<br>K&L Gates<br>70 West Madison Street<br>Suite 3300<br>Chicago, Illinois 60602-4207<br>steven.kowal@klgates.com<br><br>(312) 807-4430 | | X | By Designation |
| Custodian of Records for Old BBF, LLC (formerly Bumble Bee Foods LLC) | c/o William B. Michael<br>Paul, Weiss, Rifkind, Wharton & Garrison LLP<br>2001 K Street NW<br>Washington, DC 20006-1047<br><br>(212) 373-3648 | | X | Live |

| 1 2 3 4 | Any witnesses designated by other Parties in this action whose testimony may be relevant to the Lion Companies' defenses | | | | X | |
| 5 6 | Any additional witnesses needed for rebuttal | | | | X | |

## B. Expert Witnesses

| Name | Last Known Address | Will Call | May Call | Method | Qualifications and Substance of Testimony |
|---|---|---|---|---|---|
| Ilya A. Strebulaev | c/o Counsel for the Lion Companies | X | | Live | Professor Strebulaev has a doctorate from London Business School, a B.S. in economics from Lomonosov Moscow State University, and a M.A in Economics from the New Economic School, Moscow.  Prof. Strebulaev is a professor of private equity and finance at the Graduate School of Business, Stanford.

Professor Strebulaev will testify as to the matters disclosed in his December 9, 2022 Report and January 6, 2023 Reply , including that the Lion Companies' leveraged buyout of Bumble Bee was typical of private equity investment practices and industry norms.  He will further testify regarding the relationship between Lion LLP and Lion (Americas).  Finally, he will testify in response to opinions stated by Plaintiffs' expert witnesses. |
| Dennis W. Carlton | c/o Counsel for the Lion Companies | X | | Live | Professor Carlton received his A.B. in Applied Mathematics and Economics from Harvard University and his M.S. in Operations Research and Ph.D. in Economics from the Massachusetts Institute of Technology.  He is the David McDaniel Keller Professor of Economics at the Booth School of |

| | | | | | Business of The University of Chicago. Professor Carlton will testify as to the matters disclosed in his May 10, 2019 Report, including that no reliable economic analysis establishes that Bumble Bee participated in a conspiracy outside of the plea period; that there is insufficient evidence to show that the alleged conspiracy was effective to raise prices; and that a stable economic model shows small or zero overcharges. Finally, he will testify in response to opinions stated by Plaintiffs' expert witnesses. |
|---|---|---|---|---|---|

Dated:    May 17, 2024

Respectfully submitted,

/s/  Adam S. Paris

Adam S. Paris (SBN 190693)
parisa@sullcrom.com
Brandon T. Wallace (SBN 323471)
wallaceb@sullcrom.com
**SULLIVAN & CROMWELL LLP**
1888 Century Park East, Suite 2100
Los Angeles, California  90067
Telephone:  (310) 712-6600
Facsimile:   (310) 712-8800

Paul H. Lazarow (SBN 311496)
lazarowp@sullcrom.com
**SULLIVAN & CROMWELL LLP**
550 Hamilton Avenue
Palo Alto, CA  94301
Telephone:  (650) 461-5685
Facsimile:   (650) 461-5700

*Attorneys for Defendant Lion Capital (Americas), Inc. and Specially Appearing Defendant Lion Capital LLP*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **CERTIFICATE OF SERVICE**

I certify that on May 17, 2024 I filed the foregoing document with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system.

/s/ *Adam S. Paris*
Adam S. Paris