Michael P. Lehmann (#77152)
Christopher L. Lebsock (#184546)
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: clebsock@hausfeld.com

*Class Counsel for the Direct Purchasers*
*Additional counsel listed below*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MSB<br>MDL No. 2670<br><br>**PLAINTIFFS' PROPOSED SUPPLEMENTAL JURY INSTRUCTIONS** |
| This document relates to:<br><br>All Direct Purchaser Plaintiff Actions | JUDGE:   Hon. Dana M. Sabraw<br>CTRM:   13A |

The Direct Purchaser Class Plaintiffs and End Payer ("Consumer") Class Plaintiffs (together, "Plaintiffs") submit these Supplemental Jury Instructions.

In proposing the following jury instructions, Plaintiffs do not waive any objections to evidence or objections asserted in motions *in limine*. Nor do Plaintiffs concede the relevance of any issues addressed by these proposed instructions. Plaintiffs also reserve the right to amend or alter these proposed instructions or propose new instructions, including those based on further developments in this litigation and rulings or orders issued by the Court.

Dated: May 31, 2024                    HAUSFELD LLP

By:   *s/ Christopher L. Lebsock*
Christopher L. Lebsock (CA 184546)
Michael P. Lehmann (CA 77152)
Gary I. Smith, Jr. (CA 344865)
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Telephone: 415-633-1908
Facsimile:  415-358-4980
Email: clebsock@hausfeld.com
        mlehmann@hausfeld.com
        gsmith@hausfeld.com

Erika A. Inwald (*pro hac vice*)
33 Whitehall Street, 14th Floor
New York, NY 10004
Telephone: 646-357-1100
Facsimile: 212-202-4322
Email: einwald@hausfeld.com

*Class Counsel for the Direct Purchaser Class*

Dated: May 31, 2024                    WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By:   *s/ Betsy C. Manifold*
Betsy C. Manifold

Rachele R. Byrd
Alex J. Tramontano
Symphony Towers
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619-239-4599
Facsimile:  619-234-4599
Email: manifold@whafh.com
    byrd@whafh.com
    tramontano@whafh.com

Mark C. Rifkin
Thomas H. Burt
270 Madison Avenue
New York, NY 10016
Telephone: 212-545-4600
Facsimile: 212-686-0114
Email: rifkin@whafh.com
    burt@whafh.com

*Class Counsel for the End Payer Plaintiff Class*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SIGNATURE CERTIFICATION

Pursuant to Section 2.f.4 of the Court's CM/ECF Administrative Policies, I hereby certify that authorization for the filing of this document has been obtained from each of the other signatories shown above, and that all signatories have authorized placement of their electronic signature on this document.


Dated: May 31, 2024                    By: _s/ Betsy C. Manifold_
                                       Betsy C. Manifold

                                       _Counsel for the Indirect Purchaser_
                                       _End Payer Plaintiff Class_

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>INSTRUCTION NO. 1</u>

DUTIES OF JURY


See Parties' Agreed Instructions

PLAINTIFFS' PROPOSED INSTRUCTION NO. 2

CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief summary of the positions of the parties.

The direct purchaser plaintiffs are Olean Wholesale Grocery Cooperative, Inc., Pacific Groservice Inc. d/b/a PITCO Foods, Piggly Wiggly Alabama Distributing Co., Inc., Howard Samuels, Trepco Imports and Distribution Ltd., and Benjamin Foods LLC referred to collectively as "direct purchaser plaintiffs." The direct purchaser plaintiffs represent a class of all entities that directly purchased packaged seafood products within the United States or its territories at any time between June 1, 2011 to July 31, 2015. Packaged seafood products are defined as shelf-stable packaged tuna products.

The end payer plaintiffs are individuals who resided in 31 states, who indirectly purchased packaged tuna for end consumption, and not for resale, produced by any defendant, or any current or former subsidiary of a defendant, at any time between June 1, 2011 to July 31, 2015.

The direct purchaser plaintiffs and the end payer plaintiffs are sometimes referred to collectively as "plaintiffs."

The Defendants are StarKist Co. ("StarKist") and Dongwon Industries Co., Ltd. ("DWI"), as well as Lion Capital LLP and Lion Capital (Americas), Inc. I may refer to StarKist, DWI, Lion Capital LLP, and Lion Capital (Americas), Inc. collectively as "defendants".

StarKist Co. manufactures and sells packaged tuna products throughout the United States and its territories. Dongwon Industries Co., Ltd. is a company headquartered in Seoul, South Korea, and is part of the Dongwon Group of companies. DWI's primary business involves sourcing, processing, and selling tuna

and other varieties of fish around the globe. In October 2008, DWI purchased a 60% stake in StarKist Co. Since 2013, DWI. has owned 100% of StarKist Co.

Lion Capital LLP is a private equity firm organized as a limited liability partnership under the laws of the United Kingdom. Lion Capital (Americas), Inc. is a non-discretionary investment advisor to Lion Capital LLP. Lion Capital Fund III is an investment fund, comprised of private investors, that acquired shares in Bumble Bee Foods LLC in December 2010. Lion Capital LLP managed Fund III's investments on behalf of the fund, including Lion Fund III's investment in Bumble Bee Foods. Bumble Bee Foods LLC was a manufacturer of packaged tuna and filed for bankruptcy in November 2019.

Plaintiffs assert that Defendants and others agreed with each other to fix, raise, maintain, or stabilize the prices of their packaged tuna products sold in the United States and its territories from at least June 2011 through at least July 2015. Plaintiffs further assert that the Defendants' conduct inflated the price of packaged tuna products during the entire period from June 2011 through at least July 2015.

Defendants deny those claims. Defendants deny the conspiracy alleged by the Plaintiffs. The Court has found that StarKist participated in an agreement to fix, raise, and maintain the prices of branded canned tuna fish sold in the United States for the period June 1, 2011 through December 31, 2013. The Court has made no findings regarding Plaintiffs' claim that StarKist participated in an agreement through at least July 2015 or that the agreement concerned all of the products sold by StarKist. The Court has made no findings that Lion Capital LLP, Lion Capital (Americas) Inc., and Dongwon Industries Co., Ltd. participated in the price-fixing conduct engaged in by StarKist, and they assert that their conduct was consistent with permissible competition and that they did not join or participate in any alleged conspiracy. Defendants also assert that Plaintiffs' claims are too broad in both time and scope of products involved, and that Plaintiffs' damages claims are inflated.

<u>Plaintiffs assert that defendants and others agreed with each other to fix, raise, maintain, or stabilize the prices of their packaged tuna products from at least June 2011 through at least July 2015. Plaintiffs have the burden of proving this agreement to restrain competition.</u>

<u>The defendants deny plaintiffs' claims.</u>

This case is a civil case, not a criminal case. Plaintiffs have the burden of proving their case against each of the defendants by a preponderance of the evidence.

**Authority:** Ninth Circuit Pattern Civil Jury Instructions §1.4 (2017); *In re Capacitors Antitrust Litig.*, No. 17-MD-02801-JD (N.D. Cal. May 17, 2023), ECF. No. 1923 at 2.

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 3

### BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

The standard is different in criminal cases. In a criminal case, the government must prove its case beyond a reasonable doubt. That standard does not apply to civil cases like this case. Plaintiffs do not need to prove their case beyond a reasonable doubt.

When deciding your verdict, you must decide whether plaintiffs proved their case by a preponderance of the evidence. A preponderance of the evidence means evidence that has more convincing force than that opposed to it.

You should base your decision on all of the evidence, regardless of which party presented it.

**Authority:** American Bar Association Model Jury Instructions in Civil Antitrust Cases, ch. 2.A.1 (2016); Ninth Circuit Pattern Civil Jury Instructions § 1.6 (2017); *Rust v. Cate*, No. 08CV2404-JAH (CAB), 2010 WL 7408534, at *10 (S.D. Cal. Feb. 1, 2010), *report and recommendation adopted*, No. 3:08-CV-2404-JAH (CA, 2011 WL 4021318 (S.D. Cal. Sept. 12, 2011); *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 11-cv-8808 (N.D. Ill. December 21, 2023), ECF No. 676 at 6122-23. CACI No. 200 ("[i]n criminal trials, the prosecution must prove that the defendant is guilty beyond a reasonable doubt. But in civil trial, such as this one, the party who is required to prove something need prove only that it is more likely to be true than not true")

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>INSTRUCTION NO. 4</u>

WHAT IS EVIDENCE

See Parties' Agreed Instructions

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 5

### TWO OR MORE PARTIES

Intentionally Left Blank (Defendant Proposed)

## INSTRUCTION NO. 6

DEMONSTRATIVE

Intentionally Left Blank (Defendant Proposed)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>INSTRUCTION NO. 7</u>

WHAT IS NOT EVIDENCE

See Parties' Agreed Instructions

# INSTRUCTION NO. 8

## EVIDENCE FOR A LIMITED PURPOSE

See Parties' Agreed Instructions

1

## INSTRUCTION NO. 9

2

DIRECT AND CIRCUMSTANTIAL EVIDENCE

3

See Parties' Agreed Instructions

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 10

## RULING ON OBJECTIONS

See Parties' Agreed Instructions

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 11

### CREDIBILITY OF WITNESSES

See Parties' Agreed Instructions

## INSTRUCTION NO. 12

DEPOSITION IN LIEU OF LIVE TESTIMONY

See Parties' Agreed Instructions

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>INSTRUCTION NO. 13</u>

EXPERT OPINION

See Parties' Agreed Instructions

PLAINTIFFS' PROPOSED INSTRUCTION NO. 14

TRANSLATED DOCUMENTS

You saw <u>or heard</u> English translations of documents that were written originally in Korean. You must accept the translation of the document and disregard any different meaning or interpretation from any other source, including any understanding of the foreign language that you might have. The translation is the evidence, not the foreign language in the original document. Considering the translation, and not the foreign language document, is important to ensure that all jurors consider the same evidence.

**Authority:** Plaintiffs accept Defendants' proposed instruction, with modifications as noted in underline. *In re Capacitors Antitrust Litig.*, No. 17-MD-02801-JD (N.D. Cal. May 17, 2023), ECF. No. 1923 at 16; *United States v. Fuentes-Montijo*, 68 F.3d 352, 353-355 (9th Cir. 1995) (affirming an instruction explaining that the jury members "were not free to disagree with the translation contained in the transcripts").

INSTRUCTION NO. 15

FOREIGN LANGUAGE TESTIMONY

See Parties' Agreed Instructions

INSTRUCTION NO. 16

REQUESTS FOR ADMISSION


See Parties' Agreed Instructions

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>INSTRUCTION NO. 17</u>

USE OF INTERROGATORIES

See Parties' Agreed Instructions

## INSTRUCTION NO. 18

STIPULATIONS OF FACT

See Parties' Agreed Instructions

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 19

## CORPORATIONS—AGENCY, AND RATIFICATION

Under the law, a corporation is a person, but it acts only through its agents. A corporation's agents include its directors, officers, and employees, or others acting on its behalf. (A corporation is not capable under the law of conspiring with its own agents, unincorporated divisions, or wholly owned subsidiaries.) Through its agents, (however,) a corporation is capable of conspiring with other persons or (independent) corporations.

A corporation is (legally bound by) responsible for the acts and statements of its agents or employees (done or made) performed within the scope of the agent's employment or apparent authority.

Acts done within the scope of employment are acts performed on behalf of the corporation and that are directly related to the performance of the duties the agent has general authority to perform. Apparent authority is the authority that persons outside the corporation could reasonably believe the agent would have, judging from his or her position with the company, the responsibilities previously entrusted to the person or the office, and the circumstances surrounding his or her past conduct. An agent can have apparent authority even when, despite these appearances, the agent is actually acting in a dishonest, fraudulent, or anticompetitive manner.

To summarize, for a corporation to be legally responsible for the acts or statements of its agents, you must find that the agent was acting within the scope of his or her employment or with apparent authority.

A corporation can also act as an agent for an affiliated corporation through principles of ratification.

Pursuant to this doctrine, a company ratifies the improper and/or illegal conduct of another company in situations where it has the authority to prevent that conduct and nevertheless fails to reasonably investigate claims of wrongdoing. Additionally, for companies that are not in a control relationship with one another, one company will be deemed to ratify improper and/or illegal conduct of another where (1) the latter company purports to act on behalf of the former company, and (2) the former company fails to reasonably investigate claims of wrongdoing by the latter company.

Additionally, an agent may act for multiple companies at the same time. This is called a dual agency under the law. An agent may also "change hats" from time to time to represent one company in one instance and another company in another instance. With respect to high-level personnel that have authority to act on behalf of both a parent company and its affiliated entities, it is generally presumed that the individual is only acting on behalf of the company that he or she purports to act on behalf of at any specific point in time. However, any presumption that an agent of one company only acts on behalf of that company, and not on behalf of other affiliates, must yield when the conduct at issue is inconsistent with the norms of corporate behavior, or otherwise violates the law. Members of a board of directors of a company owe a fiduciary duty to act on behalf of, and in the best interests of, both the company on whose board they serve as well as the company's owner or owners, who are also known as the shareholders of the company's stock.

The fact that a corporation has instructed its agents not to violate the antitrust laws does not excuse the corporation from responsibility for the unlawful acts of its agents done within the scope of their employment or apparent authority.

A corporation is entitled to the same fair trial as a private individual. The acts of a corporation are to be judged by the same standard as the acts of a private individual, and you may hold a corporation liable only if such liability is established

by the preponderance of the evidence. All persons, including corporations, are equal before the law.

**Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 2.C.13, 3 (2016); Ninth Circuit Pattern Civil Jury Instructions § 4.1, 4.4-4.5, 4.7 (2017); *People v. JTH Tax, Inc.*, 212 Cal. App. 4th 1219, 1242 (2013) (finding the fundamental tenet of an agency relationship is "the principal's right to control the activities of the agent"); *Phoenix Can. Oil Co. Ltd. v. Texaco Inc.*, 842 F.2d 1466, 1478 (3d Cir. 1988) ("The parents and subsidiaries may fully maintain their separate corporate existences; yet, as any two unrelated companies, they might have entered into a limited agency relationship for a specific transaction. Whether this occurred here is a question of fact [.]"); *Henderson v. United Student Aid Funds, Inc.*, 918 F.3d 1068, 1073 (9th Cir. 2019) (recognizing that whether an agency relationship exists "is for a court to decide based on an assessment of the facts of the relationship and not based on how the parties define their relationship"); *id.* (confirming that a party can ratify another's behavior via affirmative consent or through "willful ignorance"); Restatement (Third) of Agency § 4.01 (2006) ("*[R]atification may create a relationship of agency when none existed between the actor and the ratifier at the time of the act.*") (emphasis added); *United States v. Alaska S. S. Co.*, 491 F.2d 1147, 1155 (9th Cir. 1974) ("Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."); *In re Packaged Seafood Products Antitrust Litig.*, No. 15-2670 DMS (MDD) (S.D. Cal.), 2023 WL 54344133 at *18 (quoting *Murphy Tugboat Co. v. Shipowners & Merchs. Towboat Co.*, 467 F. Supp. 841, 852 (N.D. Cal. 1979) ("Lion Capital had the authority to stop Bumble Bee's anticompetitive behavior. . . . Accordingly, turning a blind eye to Bumble Bee's collusion enabled the conspiracy to continue. 'Participation [in an antitrust violation] may be found not solely on the basis of direct action but may also consist of knowing approval or ratification of unlawful acts.'"); *United States v. Paramount Pictures*, 334 U.S. 131, 161 (1948) ("[A]cquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one."); *Harkins Amusement Enters., Inc. v. Gen. Cinema Corp.*, 850 F.2d 477, 487 (9th Cir. 1988) (acknowledging that "acquiescence" could lead to a violation of section 1 of the Sherman Act); *In re: Vitamins Antitrust Litig.*, No. 99-mc-197 (D.D.C.), Final Jury Instructions ("A person's acquiescence in an illegal scheme is as much a violation as the creation and promotion one."); *In re Wolverton Assocs.*, 909 F.2d 1286, 1298 (9th Cir. 1990) (where company "retained the benefits of [its employee's] conduct even after

confronted with evidence of foul play . . . [this] conduct on [the company's] part supported the court's finding of ratification"); *Joint Equity Comm. of Invs. of Real Est. Partners, Inc. v. Coldwell Banker Real Est. Corp.*, 281 F.R.D. 422, 433 (C.D. Cal. 2012) (recognizing that "willful blindness or an unreasonable failure to investigate, may be sufficient to establish liability"); *Contract Assocs. Office Interiors, Inc. v. Ruiter*, No. CIV.S-07-00334 WBS EFB, 2008 WL 2225702, at *2 (E.D. Cal. May 29, 2008) ("[A] reasonable jury could readily infer that [the principal] had acquired the requisite knowledge of [its agent's] illicit conduct, effectively triggering its duty to disaffirm her acts."); *Kristensen v. Credit Payment Servs. Inc.,* 879 F.3d 1010, 1014 (9th Cir. 2018), *quoting* Restatement (Third) of Agency *Id*. § 4.06 cmt. d ("A principal has assumed the risk of lack of knowledge if 'the principal is shown to have had knowledge of facts that would have led a reasonable person to investigate further, but the principal ratified without further investigation.'"). *United States v. Bestfoods*, 524 U.S. 51, 70 n.13 (1998) (regarding dual agency of high-level corporate officials, "the presumption that an act is taken on behalf of the corporation for whom the officer claims to act is strongest when the act is perfectly consistent with the norms of corporate behavior, but wanes as the distance from those accepted norms approaches the point of action by a dual officer plainly contrary to the interests of the subsidiary yet nonetheless advantageous to the parent").

INSTRUCTION NO. 20

PURPOSE OF THE ANTITRUST LAW

This case involves the antitrust laws of the United States, specifically Section 1 of the Sherman Act. The goal of the antitrust laws is to protect economic freedom and opportunity by promoting free and fair competition in the marketplace. The Sherman Act rests on the central premise that competition produces (the best allocation of our economic resources,) the lowest prices, more choice, and the highest quality products. (, and the greatest material progress.)

**Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 1(A) (2016).

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 20.1

### OVERVIEW OF ANTITRUST CLAIMS

Plaintiffs allege that defendants violated the antitrust laws by conspiring, contracting, or combining to fix prices of packaged tuna products, and that this alleged conspiracy caused an increase in the price of packaged tuna products sold in the United States.

To establish a violation of the antitrust laws, each of the plaintiffs must prove the following by a preponderance of the evidence:

1. *First*, the existence of a conspiracy, contract, or combination among at least two entities to fix the prices of each of the packaged tuna products alleged to have been price-fixed;

2. *Second*, that each Defendant, or its agent, purposefully or knowingly became a party to that conspiracy, contract or combination;

3. *Third*, that the alleged conspiracy, contract, or combination occurred in or affected interstate or import commerce; and

4. *Fourth*, the anticompetitive conduct was a substantial factor in causing Plaintiffs to pay more for packaged tuna products in the United States than they otherwise would have.

If you find that the evidence is insufficient to prove any one or more of these elements as to a particular Defendant, then you must find for that Defendant and against Plaintiffs on Plaintiffs' price-fixing claim.

**Authority:** Plaintiffs accept Defendants' proposed instruction, less the final paragraph, which fails to account for liability based on derivative liability theories.

INSTRUCTION NO. 21

INTERSTATE COMMERCE

Intentionally Left Blank (Defendant Proposed)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>PLAINTIFFS' PROPOSED INSTRUCTION NO. 22</u>

OVERVIEW OF STATE ANTITRUST CLAIMS

<u>The consumer plaintiffs' state law antitrust claims are either modeled after federal antitrust law or are similar to federal antitrust claims. I have instructed you on the requirements of federal antitrust law. Those same requirements apply to the consumer plaintiffs' state law antitrust claims. If you find in favor of the plaintiffs under the Sherman Act, you should also find that they have established the defendants' liability under the state antitrust law.</u>

**Authority: Arizona Uniform State Antitrust Act Claim.** Ariz. Rev. Stat. § 44-1402 *et seq.*; **California Cartwright Act Claim.** Cal.Bus. & Prof. Code § 16720 *et seq.*; **District of Columbia Antitrust Act Claim.** D.C. Code Ann. § 28-4511 *et seq.*; **Hawaii Antitrust Act Claim.** Haw. Rev. Stat. § 480-3 *et seq.*; **Iowa Unfair Competition Claim.** Iowa Code § 553.2 *et seq.*; **Kansas Restraint of Trade Act Claim.** Kan. Stat. § 50-101 *et seq.*, § 50-163 *et seq.*; **Maine Unfair Trade Practices Claim.** Me. Rev. Stat. tit. 10, § 1101 *et seq.*; **Michigan Antitrust Reform Act Claim.** Mich. Comp. Laws § 445.781; Mich. Comp. Laws § 445.784 *et seq.*; **Minnesota Antitrust Law of 1971 Claim.** Minn. Stat. Ann. § 325D.45 *et seq.*; **Mississippi Antitrust Act Claim.** Miss. Code § 15-1-41 *et seq.*; **Nebraska Junkin Act Claim.** Neb. Rev. Stat. Ann. § 59-829 *et seq.*; **Nevada Unfair Trade Practice Act Claim.** Nev. Rev. Stat. § 598A.050 *et seq.*; **New Hampshire Antitrust Act Claim.** N.H. Rev. Stat. §§ 356:02 *et seq.*, 356:14 *et seq.*; **New Mexico Antitrust Act Claim.** N.M. Stat. Ann. § 57-1-15(B) *et seq.*; **New York Donnelly Act Claim.** N.Y. Gen. Bus. Law § 340 *et seq.*; **North Carolina Monopolies, Trusts, and Consumer Protection Act Claim.** N.C. Gen. Stat. Ann. § 75-1.1 *et seq.*; **North Dakota Uniform State Antitrust Act Claim.** N.D. Cent. Code Ann. § 51-08.1-2 *et seq.*; **Oregon Antitrust Law Claim.** Or. Rev. Stat. Ann. §§ 646.725, 646.730; **Rhode Island Antitrust Act Claim.** R.I. Gen. Laws Ann. §§ 6-36-2 to -6 *et seq.*; **South Dakota Restraint of Trade, Monopolies, and Discriminatory Trade Practices Claim.** S.D. Codified Laws § 37-1-3.1 *et seq.*; **Tennessee Trade Practices Act Claim.** Tenn. Code Ann. § 47-25-101 *et seq.*, Tenn. Code. Ann. § 47-18-115 *et seq.*; **Utah Antitrust Act Claim.** Utah Code Ann. § 76-10-3104 *et seq.*; **West Virginia Antitrust Act Claim.** W. Va. Code Ann. § 47-18-3 *et seq.*; **Wisconsin Antitrust Law Claim.** Wis. Stat. Ann. § 133.03 *et seq.*

PLAINTIFFS' PROPOSED INSTRUCTION NO. 23[1]

OVERVIEW OF STATE CONSUMER CLAIMS

The consumer plaintiffs also allege that the defendants have violated the consumer protection laws of several states. As a general matter, those laws make the following illegal: any unfair competition, as well as any unfair, unconscionable, deceptive, or fraudulent acts or practices.

To find in favor of the consumer plaintiffs on their consumer protection law claims, you must find that they have proven by a preponderance of the evidence that the defendants engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices.

1. An unlawful business practice is deemed to be unfair. If you find that the defendants engaged in any unlawful business practices, you may also find that they have violated the consumer protection laws.

2. An unfair act or practice is one that threatens a violation of an antitrust law or violates the policy or spirit of one of those laws because its effect significantly threatens or harms competition. If you find that the defendants engaged in conduct that threatened a violation of an antitrust law or violated the policy or spirit of one of those laws because its effect significantly threatened or harmed competition, you may also find that they have violated the consumer protection laws.

3. An unconscionable act or practice is one that is shocking, outrageous, or conspicuously or outstandingly bad. If you find that the defendants engaged in such conduct, you may also find that they have violated the consumer protection laws.

4. A deceptive act or practice is one that creates a likelihood of confusion or of misunderstanding. If you find that any of the defendants' acts or practices created

---

[1] Plaintiffs' Proposed Instruction No. 23 is an alternative to Defendants' Proposed Instructions No. 23.1-23.7.

a likelihood of confusion or of misunderstanding, you may also find that they have violated the consumer protection laws.

5.   A fraudulent act or practice is one in which members of the public are likely to be deceived. If you find that consumers were likely to be deceived by any of the defendants' acts or practices, you may also find that they have violated the consumer protection laws.

**Authority: Arkansas** Ark. Code Ann. §§ 4-88-101 to 4-88-503 *et seq.*; **Florida** Fla. Stat. §§ 501.201-501.213 *et seq.*; **Massachusetts** M.G.L.A. 93A § 2 *et seq.*; **Missouri** Mo. Rev. Stat. § 407.020(1) *et seq.*; **South Carolina** S.C. Code Ann. § 39-5-20 *et seq.*; **Virginia Consumer Protection Act Claim.** Va. Code Ann. § 59.1-200 *et seq.*; **Vermont** 9 V.S.A. § 2451 *et seq.*

PLAINTIFFS' PROPOSED INSTRUCTION NO. 24

FLAGRANT INSTRUCTION

Seven states, Arizona, Iowa, Michigan, New Hampshire, Massachusetts, North Dakota, and Virginia, require the Consumer Plaintiffs to prove that the Defendants' conduct was knowing, willful, and flagrant. You need not make a specific finding that the conduct was "knowing" because the guilty pleas establish knowing misconduct. A defendant cannot ***unknowingly*** commit a *per se* violation of the Sherman Act, and StarKist has admitted it "knowingly became a member of the conspiracy." You also need not make a separate finding that the conduct was "willful" because criminal prosecutions are only be brought for willful violations of the law. You only need to consider whether the Defendants' conduct was "flagrant." Flagrant conduct means conduct that is so obviously inconsistent with what is right or proper as to appear to be a flouting of law or morality.

Authority: **Arizona** Ariz. Rev. Stat § 44-1408(B) (stating that the trier of fact "shall" increase the penalty up to treble damages if it finds the conduct "flagrant"); **Iowa** Iowa Code § 553.12(3) (permitting court to award double damages where the factfinder finds the conduct "willful" or "flagrant"); **Michigan** Mich. Comp. Laws § 445.778 (allowing up to treble damages where violation is "flagrant"); **New Hampshire** N.H. Rev. Stat. Ann. § 356:11 (permitting up to treble damages where the conduct is "willful" or "flagrant"); **North Dakota** N.D. Cent. Code § 51-08.1-08 (allowing up to treble damages if it finds the conduct is "flagrant"); **Massachusetts** Mass. Gen. Laws ch. 93A § 9(3) (allowing double to treble damages

for a "willful or knowing" violation); **Virginia** Va. Code Ann. § 59.1-204 (permitting up to the greater of $1000 or treble damages where the conduct is "willful"); *In re Packaged Seafood Products Antitrust Litigation*, No. 15-2670 DMS (MSB) (S.D. Cal.), ECF No. 2750 at 8 (quoting *United States v. StarKist Co.*, No. 18-cr-00513-EMC (N.D. Cal. Nov. 14, 2018), ECF No. 1 (Information) at 1-2 and Plea Agreement at 3-4; Tr. 14-15); *United States v. Gypsum Co.*, 438 U.S. 422, 440 n.15 (1978) (citing The President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Crime and Its Impact—An Assessment 110 (1967));*"Flagrant." Merriam-Webster.com Dictionary*, *Merriam-Webster*, https://www.merriam-webster.com/dictionary/flagrant (Accessed May 21, 2024) ("[S]o obviously inconsistent with what is right or proper as to appear to be a flouting of law or morality.").

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 25

### CONSPIRACY, CONTRACT, OR COMBINATION

Plaintiffs allege that Defendants participated in a conspiracy to restrain (trade) competition (by fixing prices). For purposes of this case, a (A) conspiracy is an agreement or understanding between two or more persons to restrain trade by fixing, raising, maintaining, or stabilizing the price of packaged tuna products.

Plaintiffs must prove both of the following elements by a preponderance of the evidence:

1. that the alleged conspiracy existed; and

2. that Defendants knowingly became members of that conspiracy. To act knowingly means to participate deliberately, and not because of mistake or accident or other innocent reason.

The basis of a conspiracy is an agreement or understanding between two or more persons. An agreement or understanding between two or more persons exists when they share a (conscious) commitment to a common scheme. To establish the existence of a conspiracy, the evidence need not show that its members entered into any formal or written agreement. The agreement itself may have been entirely unspoken. A person can become a member without full knowledge of all of the details of the conspiracy, the identity of all of its members, or the parts such members played in the charged conspiracy. The members of the conspiracy need not necessarily have met together, directly stated what their object or purpose was to one another, or stated the details or the means by which they would accomplish their purpose. To prove a conspiracy existed, the evidence must show that the alleged members of the conspiracy came to an agreement or understanding among themselves to accomplish a common purpose.

A conspiracy may be formed without all parties coming to an agreement at the same time. Similarly, it is not essential that all persons acted exactly alike, nor is it necessary that they all possessed the same motive for entering the agreement. It is also not necessary that all of the means or methods claimed by <u>Plaintiffs</u> were agreed upon to carry out the alleged conspiracy, nor that all of the means or methods that were agreed upon were actually used or put into operation, nor that all the persons alleged to be members of the conspiracy were actually members. It is the agreement or understanding to restrain <span style="color:red">(trade)</span> <u>competition</u> by <u>fixing or raising prices</u> that constitutes a conspiracy. Therefore, you may find a conspiracy existed regardless of whether it succeeded or failed.

<u>Once a conspiracy has been established, a person needs only a slight connection to the conspiracy to knowingly participate in that conspiracy. A person or entity participates in a conspiracy to restrain competition by directly participating in the anticompetitive agreement or through the conduct of its agents.</u>

<u>Plaintiffs</u> may prove the existence of the alleged conspiracy through direct evidence, circumstantial evidence, or both. Direct evidence is explicit and requires no inferences to establish the existence of the alleged conspiracy.

Direct evidence of an agreement may not be available, and therefore a conspiracy also may be shown through circumstantial evidence. You may infer the existence of a conspiracy from the circumstances, including what you find the alleged members actually did and the words they used. Mere similarity of conduct among various persons, however, or the fact that they may have associated with one another and may have met or assembled together, does not by itself establish the existence of a conspiracy. If they acted similarly but independently of one another, without any agreement among them, then there would not be a conspiracy.

In determining whether an agreement or understanding between two or more persons has been proved, you must view the evidence as a whole and not piecemeal.

**Authority: Plaintiffs agree to Defendants' proposed instruction, with deletions in red and with Plaintiffs' additions underlined.** Additional authority for Plaintiffs' additions are, American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 2.A.1 (2016) (2016) (Defendants' instruction largely tracks the model instruction, however the word "conscious" is not utilized in the model instruction and is duplicative unnecessary); *United States v. Saelee*, 51 F.4th 327, 342 (9th Cir. 2022) (quoting *United States v. Castaneda*, 16 F.3d 1504, 1507 (9th Cir. 1994)) ("To establish that the defendant had the requisite incriminating connection to a conspiracy, however, the Government 'need show only a slight connection with the conspiracy.'"); *United States v. Collazo*, No. 15-50509, 2022 WL 1553168, at *2 (9th Cir. May 17, 2022), cert. denied, 143 S. Ct. 323 (2022) (quoting *United States v. Perlaza*, 439 F.3d 1149, 1177 (9th Cir. 2006)) (to show the defendant "knowingly participated" in a conspiracy, the opposing party need only show that the defendant "had 'even a slight connection' to the conspiracy"); *United States v. Saldana*, No. 18-50368, 853 F. App'x 106, 108 (9th Cir. Apr. 14, 2021) ("Once a conspiracy is established, the Government can prove a defendant's knowing participation with evidence of the defendant's connection with the conspiracy. Even a slight connection will suffice." (citations omitted)).

## INSTRUCTION NO. 26

PARTICIPATION AND INTENT

Intentionally Left Blank (Defendant Proposed)

INSTRUCTION NO. 27

AGENT AND PRINCIPAL DEFINITION

Intentionally Left Blank (Defendant Proposed)

## INSTRUCTION NO. 28

AGENT - SCOPE OF AUTHORITY

Intentionally Left Blank (Defendant Proposed)

## INSTRUCTION NO. 29

RATIFICATION

Intentionally Left Blank (Defendant Proposed)

PLAINTIFFS' PROPOSED INSTRUCTION NO. 30

COORDINATED CONDUCT BY AFFILIATED COMPANIES
(*Arandell* Instruction)

Affiliated entities that participate together in the marketing, sale, pricing, or distribution of a good subject to a conspiracy in which any one of them participates are all equal participants in the conspiracy.. Knowledge of wrongdoing by any affiliated entity is imputed to every affiliated entity that participates in the marketing, sale, pricing, or distribution of a good whose prices were affected by the anticompetitive conduct.

**Authority:** *In re Capacitors Antitrust Litig.*, No. 17-MD-02801-JD (N.D. Cal. May 17, 2023), ECF. No. 1923 at 22-23 (given as jury instruction); *Arandell Corp. v. Centerpoint Energy Servs., Inc.*, 900 F.3d 623, 632 (9th Cir. 2018) (stating a "wholly owned subsidiary that engages in coordinated activity in furtherance of the anticompetitive scheme of its parent and/or commonly owned affiliates is deemed to engage in such coordinated activity with the purposes of the single 'economic unit' of which it is a part"); *Copperweld Corp. v. Indep. Tube Corp.*, 467 U.S. 752, 771 (1984) ("[T]he coordinated activity of a parent and its wholly owned subsidiary must be viewed as that of a single enterprise for purposes of § 1 of the Sherman Act. A parent and its wholly owned subsidiary have a complete unity of interest. Their objectives are common, not disparate; their general corporate actions are guided or determined not by two separate corporate consciousnesses, but one. They are not unlike a multiple team of horses drawing a vehicle under the control of a single driver. With or without a formal 'agreement,' the subsidiary acts for the benefit of the parent, its sole shareholder."); *Knutson v. Daily Review, Inc.*, 548 F.2d 795, 802 (9th Cir. 1976) (finding that the two defendants were "not a case of parent and independent subsidiary, but of a single separated only by the technicality of separate incorporation" because one individual controlled both entities, "the same individuals [were] in charge of important operations, " and there were "employees and/or officers [working at] both firms").

<u>PLAINTIFFS' PROPOSED [CONDITIONAL] INSTRUCTION NO. 31</u>

ALTER EGO LIABILITY

Generally, a company is presumed to be legally separate from those who own or control it, such as stockholders/owners. Corporate separateness can be demonstrated by strong corporate governance, separation of operational activities, and different officers and management. This separation often means that stockholders/owners are not legally responsible for the corporation's acts.

However, this presumption of separateness is not absolute, and there are situations where the law will disregard a company's separate existence from a stockholder/owner, such that the conduct/legal violation by one of them is imputed to all of them. In such instances, stockholders/owners of a company participate in and become legally responsible for the separate company's actions if the stockholders/owners dominate or control the separate entity and it is equitable under the circumstances to hold the stockholders/owners responsible for the conduct of the company. This doctrine turns on notions of fundamental fairness in light of the totality of the circumstances. On the one hand, the law recognizes the legal separateness of companies and their stockholders/owners. However, that general principle of law must yield in situations where respecting the corporate form would perpetrate a fraud or crime.

For this doctrine to apply here, plaintiffs must establish that one or more parties dominate or control another and that it would be unjust under the totality of the circumstances to respect their separate identities.

**Authority:** *G.E.J. Corp. v. Uranium Aire, Inc.*, 311 F.2d 749, 756 (9th Cir. 1962) ("Generally a corporation which owns and controls another is not responsible for the liabilities of the latter. But this rule is not without exception, and if the subsidiary is the alter-ego of the parent the fact of separate corporate existence will be

disregarded."); *Mou v. SSC San Jose Operating Co. LP*, 415 F. Supp. 3d 918, 929 (N.D. Cal. 2019) ("Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations."); *S.E.C. v. Elmas Trading Co.*, 620 F. Supp. 231, 234 (D. Nev. 1985) (citing *Town of Brookline v. Gorsuch*, 667 F.2d 215, 220 (1st Cir. 1981)) ("Under federal law, a corporate entity may be disregarded in the interests of public convenience, fairness, and equity[.]"); *In re SK Foods, LP*, 499 B.R. 809, 841 (E.D. Cal. Bank. 2013) (determining that "diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another" is a relevant factor in evaluating alter ego liability); *Laborers Clean-Up Contract Admin. Tr. Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 524 (9th Cir. 1984) ("To determine whether stockholders are personally liable for the debts of their corporations, this court relies on three factors: the amount of respect given to the separate identity of the corporation by its shareholders, the fraudulent intent of the incorporators, and the degree of injustice visited on the litigants by recognition of the corporate entity."); *Chemco Int'l Distribs., Inc. v. BASF, AG*, 932 F.2d 973 (9th Cir. 1991) ("To be subject to jurisdiction pursuant to an alter ego theory, the parent "must exercise a control relationship over its subsidiary."); *Edwin K. Williams & Co., Inc. v. Edwin K. Williams & Co.-East*, 542 F.2d 1053, 1063 (9th Cir. 1976) ("Generally, the corporate separateness is respected unless to do so would work an injustice upon innocent third parties.") (cleaned up) (internal quotation marks omitted); Eleventh Circuit Civil Pattern Jury Instructions § 4.26 (2022) ("But this rule is not absolute, and you can disregard the separate status of a corporation when a stockholder uses the corporation as a mere tool for the purpose of evading or violating a statutory or other legal duty, or for accomplishing some fraud or other illegal purpose."); *United Steelworkers of Am. v. Connors Steel Co.*, 855 F.2d 1499, 1506-07 (11th Cir. 1988) ("[T]here is no litmus test for determining whether a subsidiary is the alter ego of its parent. Instead, we must look to the totality of the circumstances.").

PLAINTIFFS' PROPOSED INSTRUCTION NO. 32

EVIDENTIARY EFFECT OF THE ABSENCE OF GOVERNMENT PROSECUTION

The fact that a person or entity was not criminally charged with anticompetitive conduct relevant to this litigation does not mean the person or entity is not liable for the conduct alleged by the plaintiffs here. You must independently consider the totality of the evidence presented during this trial to determine whether persons or entities that were not criminally charged by the United States Department of Justice nevertheless knowingly participated in the anticompetitive conduct that plaintiffs allege took place. The United States Department of Justice has great discretion in deciding whether to charge any person or entity with a crime, or to limit the scope of any charge that it does bring, and the Department of Justice's decision not to charge any particular entity does not bear in any way on whether you should find that entity liable in this case.

**Authority:** *Bond v. United States*, 572 U.S. 844, 864-65 (2014) ("[W]e have traditionally viewed the exercise of state officials' prosecutorial discretion as a valuable feature of our constitutional system. . . . Prosecutorial discretion involves carefully weighing the benefits of a prosecution against the evidence needed to convict, the resources of the public fisc, and the public policy of the State."); *Goffstein v. State Farm Fire & Cas. Co.*, 764 F.2d 522, 524 (8th Cir. 1985) ("As a general rule, evidence that criminal charges were not brought is inadmissible in a civil case arising out of the same events as the criminal charges" in order to establish the lack of culpability); *J.W. v. City of Oxnard*, No. CV 07-06191 CAS(SHx), 2008 WL 4810298, at *22 (C.D. Cal. Oct. 27, 2008) ("The decision …

to prosecute is highly discretionary and demonstrates nothing more than the opinion of the prosecutor."); *United States v. Bumble Bee Foods, LLC*, No. 17-cr-00249 (N.D. Cal. May 8, 2017), ECF No. 1 ¶ 9; *United States v. StarKist Co.*, No. 18-cr-00513-EMC (N.D. Cal. Nov. 14, 2018), ECF No. 24 ¶ 4(a)-(b); *United States v. Cameron*, No. 16-cr-00501-EMC (N.D. Cal. Jan. 25, 2017), ECF No. 18 ¶ 4(a)-(b); *United States v. Worsham*, No. 16-cr-00535-EMC (N.D. Cal. Mar. 15, 2017), ECF No. 14 ¶ 4(b); *United States v. Hodge*, No. 17-cr-0297-EMC (N.D. Cal. June 28, 2017), ECF No. 13 ¶4(b).

<u>PLAINTIFFS' PROPSOED INSTRUCTION NO. 33</u>

INVOCATION OF THE FIFTH AMENDMENT BY A NON-PARTY WITNESS

(Any person who becomes a witness, including a party, is required to answer all proper questions unless the court rules that the witness may decline to answer.)

Under the Constitution, a person has the right to refuse to answer questions that may tend to incriminate him or her in criminal activity.

During this case, Chuck Handford, the former Vice President of Sales for StarKist, refused to testify by exercising his right (privilege) against self-incrimination. (With respect to these witnesses' refusal to testify) <u>Because Mr. Handford is closely associated with StarKist,</u> you may (decide whether or not), <u>but are not required</u> to<u>,</u> infer that Mr. Handford's testimony would have been unfavorable to the Defendants <u>had truthful and complete answers been provided</u>. <u>Any inference you may draw should be based upon all the facts and circumstances in this case as you find them.</u>

**Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 7.B.2 (2016); *F.D.I.C. v. Fidelity & Deposit Co. of Md.*, 45 F.3d 969, 978 (5th Cir. 1995) (agreeing with other circuits which "have held that the fact that the witness no longer serves the party in an 'official capacity' does not present a bar to requiring the witness to assert the privilege in front of the jury"); *Planned Parenthood Fed'n of Am., Inc. v. Newman*, No. 20-16070, 2022 WL 13613963, at *4 n.4 (9th Cir. Oct. 21, 2022) ("The district court did not err in permitting adverse inferences based on two non-parties invocation of the privilege against self-incrimination."); *S.E.C. v. Jasper*, 678 F.3d 1116, 1125-26 (9th Cir. 2012) (accepting the jury instruction stating "Any inference you may draw should be based upon all of the facts and circumstances in this case as you find them"); *LiButti v. United States*, 107 F.3d 110, 123-24 (2d Cir. 1997) (considering four factors in drawing an adverse inference including "the nature of the relevant relationships[,]" "the degree of control of the party over the non-party witness[,]" the compatibility of the interests of the party and non-party witness in the outcome of the litigation[,]" and "the role

of the non-party witness in the litigation"); *State Farm Mut. Auto Ins. Co. v. Abrams*, No. 96 C 6365, 2000 WL 574466, at *6 (N.D. Ill. May 11, 2000) (collecting cases) ("Most of the courts that have imputed adverse Fifth Amendment inferences from one party to another have done so where there is a close family or business relationship between the person who exercised the Fifth Amendment right and the individual against whom an adverse inference is drawn."); *id.* at *7 ("[U]nder appropriate circumstances, an adverse inference could be drawn against a party from an alleged co-conspirator's invocation of the Fifth Amendment privilege against self-incrimination.").

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 34

### REMOVAL OF PARTIES

Bumble Bee, Chicken of the Sea, and Thai Union Group are no longer parties to this case. Do not speculate as to why (this person) these entities are no longer involved in this case. You should not consider (this) their absence during your deliberations.

**Authority:** California Civil Jury Instructions (CACI) No. 109.

PLAINTIFFS' PROPOSED INSTRUCTION NO. 35

EVIDENTIARY EFFECT OF PRIOR COURT RULINGS

In proceedings that occurred before this trial, the Court has ruled on certain issues that you must accept as established. Therefore, you must treat the following facts as having been proved:

- StarKist knowingly participated in an agreement to restrain competition with Bumble Bee and Chicken of the Sea.
- The agreement restrained competition in the market for packaged tuna products and affected interstate commerce.
- StarKist set, maintained, raised, or stabilized the prices for packaged tuna products for the period from at least as early as June 1, 2011 and continuing through at least as late as December 2013.
- StarKist's agreement to restrain competition involved all can sizes of packaged tuna.
- StarKist's agreement to restrain competition had an actual effect on the market for packaged tuna products.

You must still decide the scope of the conspiracy and whether the plaintiffs have suffered damages, and if so, in what amount. You must also decide whether Lion Capital LLP, Lion Capital (Americas), Inc., and/or Dongwon Industries, Inc. participated in the conspiracy.

**Authority:** *In re Packaged Seafood Products Antitrust Litigation*, No. 15-2670 DMS (MSB) (S.D. Cal.), ECF No. 2654 at 9-10, 32; *Wynn v. Reconstruction Fin. Corp.*, 212 F.2d 953, 955 n.9 (9th Cir. 1954) ("The partial summary judgment is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case. This adjudication . . . serves the purpose of speeding up litigation

by eliminating before trial matters wherein there is no genuine issue of fact."); *Lahoti v. VeriCheck, Inc.*, 586 F.3d 1190, 1202 n.9 (9th Cir. 2009) (same); *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 769 n.3 (9th Cir. 1981) ("The partial summary judgment is merely a determination before the trial that certain issues shall be deemed established in advance of trial. The procedure was intended to avoid a useless trial of facts and issues over which there was really never any controversy and which would tend to confuse and complicate a lawsuit."); *K.J.P. v. Cnty. of San Diego*, 621 F. Supp. 3d 1097, 1131 (S.D. Cal. 2022) ("[O]nce a district judge issues a partial summary judgment order removing certain claims from a case, the parties have a right to rely on the ruling by forbearing from introducing any evidence or cross-examining witnesses in regard to those claims[.]").

PLAINTIFFS' PROPOSED INSTRUCTION NO. 36

EVIDENTIARY EFFECT OF CRIMINAL FINES

The court in the criminal case imposed fines on StarKist and Bumble Bee commensurate with the seriousness of the crime. You need not be concerned with the amounts of the fines because they were not paid to any victims of the criminal conspiracy and are not to be part of your deliberation.

**Authority:** *Emich Motors Corp. v. General Motors Corp.*, 340 U.S. 558, 571 (1951) ("It is the task of the trial judge to make clear to the jury the issues that were determined against the defendant in the prior suit, and to limit to those issues the effect of that judgment as evidence in the present action. As to the manner in which such explanation should be made, no mechanical rule can be laid down to control the trial judge, who must take into account the circumstances of each case. He must be free to exercise 'a well-established range of judicial discretion'."); *Theatre Enters. v. Paramount Film Distrib. Corp.*, 346 U.S. 537, 542 (1954) (acknowledging the judge was "[e]xercising his discretion to choose the precise manner of explaining a decree to the jury"); American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 7.C.2 notes (2016).

PLAINTIFFS' PROPOSED INSTRUCTION NO. 37

WITHDRAWAL

To find that a defendant has withdrawn from or abandoned a conspiracy <u>to restrain competition</u>, the <u>Defendant must prove, by a preponderance of the</u> evidence (must show) that <u>the</u> Defendant:

     1. undertook affirmative steps, inconsistent with the object of the conspiracy, to disavow or defeat the goal or purposes of the conspiracy; and

     2. either acted in a manner reasonably calculated to notify (coconspirators) <u>other participants in the conspiracy</u> that it was no longer participating in the (conspiracy) <u>anticompetitive conduct</u>, or disclosed the agreement to law enforcement authorities.

Mere inactivity is not proof of withdrawal. Furthermore, even if a defendant tells others of its intention to withdraw, it has not withdrawn if it continues to act in furtherance of the object of the conspiracy.

If you have concluded that a defendant was a member of a conspiracy, that defendant bears the burden of proving, by a preponderance of the evidence, that it withdrew from the conspiracy; there must be evidence of some affirmative act of withdrawal.

<u>A Defendant's continued receipt of benefits from the anticompetitive conduct after the Defendant's attempted withdrawal from the conspiracy negates any withdrawal defense.</u>

**Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 2.A.5 (2016) ("Where the evidence warrants, it may be appropriate to instruct the jury that a conspirator's continued receipt of benefits from the conspiracy after its claimed withdrawal can negate a withdrawal defense."); *In re Packaged*

*Seafood Prods. Antitrust Litig.*, No. 15-MD-2670 DMS (MDD), 2022 WL 1044061, at *3 (S.D. Cal. Mar. 1, 2022); *United States v. Lothian*, 976 F.2d 1257, 1264-65 (9th Cir. 1992) ("receipt of continued benefits from the scheme" negates a withdrawal defense); *United States v. Eppolito*, 543 F.3d 25, 49 (2d Cir. 2008) (a defendant asserting withdrawal "must not take any subsequent acts to promote the conspiracy or receive any additional benefits from the conspiracy") (internal quotes, citation omitted); *United States v. Eisen*, 974 F.2d 246, 269 (2d Cir.1992) (attorney who, despite resigning from the conspiratorial enterprise, continued to be entitled to a percentage of the conspiratorial proceeds and so did not effectively withdraw).

## INSTRUCTION NO. 38

ANTITRUST DAMAGES—INTRODUCTION AND PURPOSE
See Parties' Agreed Instructions.

## INSTRUCTION NO. 39

### DAMAGES—PROOF

It is the duty of the Court to instruct you about the measure of damages. By instructing you on damages, the Court does not mean to suggest for which party your verdict should be rendered.

If you find for either or both of the Plaintiff Classes (the plaintiff [on the plaintiff's [*specify type of claim*] claim]), you must determine the Plaintiffs' (plaintiff's) damages. The Plaintiffs have (plaintiff has) the burden of proving damages by a preponderance of the evidence. Damages means the amount of money that will reasonably and fairly compensate the Plaintiffs (plaintiff) for any injury you find was caused by the conspiracy. (defendant. You should consider the following:)

It is for you to determine what damages, if any, have been proved.

Your award must be based upon evidence and not upon speculation, guesswork or conjecture.

**Authority:** Ninth Cir. Model Civil Instruction 5.1 (Damages—Proof).

---

INSTRUCTION NO. 40

CAUSATION AND DISAGGREGATION

Intentionally Left Blank (Defendant Proposed)

PLAINTIFFS' PROPOSED INSTRUCTION NO. 41

ANTITRUST DAMAGES FOR DIRECT AND INDIRECT PURCHASERS

(If you have determined that there was an unlawful agreement among competitors to fix prices that caused some injury to plaintiff, you must now determine the amount of damages to award to the plaintiff.) I will now explain to you the way in which you may calculate the damages, if any, for the Direct Purchaser Class and the Consumer Class. You must calculate damages for the Direct Purchaser Class and the Consumer Class separately. The proper way to calculate the Direct Purchaser Class damages is to determine the difference between the prices the Direct Purchasers actually paid for packaged tuna at the time of purchase, and the prices the Direct Purchasers would have paid had there been no conspiracy, after accounting for the major factors that affect the price of packaged tuna products, including, in particular, the price of raw tuna. (to fix prices.) This calculation is referred to as the overcharge.

Your calculation of damages to the Direct Purchaser Class must not be reduced by any amounts the Direct Purchaser passed on to their customers.

The proper way to calculate the Consumer Class damages is to determine the difference between the prices the Consumer Class actually paid for packaged tuna, and the prices Consumers would have paid had there been no agreement to fix, raise, maintain, or stabilize prices. This calculation is called the overcharge.

Your calculation of damages to the Consumer Class must not be reduced by any amount of damage you may award to the Direct Purchaser Class.

Thus, you must not apportion the overcharge between the Direct Purchaser Class and the Consumer Class. If you find that Direct Purchasers were injured and, thereafter, Consumers were injured in the chain of distribution of packaged tuna

1  products, the law requires you to determine the full amount of damages that you find

2  was caused at each level in the chain of distribution without offset to either class of

3  purchasers.

4       Defendants are responsible for overcharges that occur after the cessation of

5  the conspiracy due to lingering effects of the conspiratorial conduct.

6

7

8  **The highlighted portion of this instruction is taken from Defendants' Proposed**

9  **instruction titled "Causation And Disaggregation". Plaintiffs object to long and**

10  **repetitive instructions that do not materially help the jury understand their**

11  **duties under the law.** ***See United States v. Assi*, 748 F.2d 62, 65 (2d Cir. 1984)**

    **("repetitive and unnecessarily long charges are confusing to a jury . . . and**

12  **prevent it from grasping and applying the law to its clear and independent**

13  **determination of the facts").**

14  **Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust

15  Cases, ch. 6.B.5 (2016) and ch. 6.B.1 ("In certain cases it may be appropriate to

16  clarify that the direct purchaser plaintiff is entitled to recover the full amount of the

17  overcharge as damages, without regard to whether some portion of the overcharge

18  was passed on to downstream customers. *See, e.g., Paper Sys. v. Nippon Paper*

19  *Indus. Co.*, 281 F.3d 629, 632-34 (7th Cir. 2002) (citing Illinois Brick Co. v. Illinois,

20  431 U.S. 720 (1977))."); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 262 n.14

21  (1972) ("[C]ourts will not go beyond the fact of th[e] [overcharge] injury to

22  determine whether the victim of the overcharge has partially recouped its loss in

23  some other way[.]"); *S. Pac. Co. v. Darnell-Taenzer Lumber Co.*, 245 U.S. 531, 534

24  (1918) ("The plaintiffs suffered losses [in] the amount of the [overcharge] when they

25  paid [it]. Their claim accrued at once in the theory of the law and it does not inquire

26  into later events." (citation omitted)); *Meijer, Inc. v. Abbott Labs.*, 251 F.R.D. 431,

27  433 (N.D. Cal. 2008) ("[W]hen a seller overcharges a buyer . . . , the fact that the

28  buyer raises the price for its own product, thereby passing on the overcharge to its

customers and avoiding a loss in profit, has no bearing on the issue of whether the

buyer has suffered an injury . . . . [D]amages are appropriate to the extent the buyer

was overcharged, and must be measured accordingly."); *In re Korean Ramen*

*Antitrust Litig.*, No. 3-13-cv-04115-WHO (N.D. Cal. Dec. 14, 2018), ECF No. 914

at 39; *California v. ARC Am. Corp.*, 490 U.S. 93, 105 (1989) ("the Court of Appeals

concluded that state indirect purchaser claims might subject antitrust defendants to multiple liability, in contravention of the "express federal policy" condemning multiple liability. 817 F.2d, at 1446 (citing *Illinois Brick; Associated General Contractors of California, Inc. v. Carpenters,* 459 U.S. 519, 544, 103 S.Ct. 897, 911, 74 L.Ed.2d 723 (1983); and *Blue Shield of Virginia v. McCready,* 457 U.S. 465, 474–475, 102 S.Ct. 2540, 2545–46, 73 L.Ed.2d 149 (1982)). But *Illinois Brick,* as well as *Associated General Contractors* and *Blue Shield,* all were cases construing § 4 of the Clayton Act; in none of those cases did the Court identify a federal policy against States imposing liability in addition to that imposed by federal law."; *Clayworth v. Pfizer, Inc.*, 49 Cal. 4th 758, 787 (2010) ("For state antitrust purposes, the *Hanover Shoe* rule should apply even as indirect purchasers are allowed to sue. We therefore conclude, under the Cartwright Act as under federal law, that a pass-on defense generally may not be asserted. Instead, in an antitrust price-fixing case, the presumptive measure of damages is the amount of the overcharge paid by the plaintiff."); *In re HIV Antitrust Litig.*, No. 19-CV-02573-EMC, 2023 WL 3011624, at *3 (N.D. Cal. Apr. 18, 2023) ("absent a clear indication (*e.g.*, from the text of a state statute, legislative history, and/or case law) that duplicative recovery is barred even where the direct purchaser obtains 100% recovery under federal antitrust law" there is no reduction allowed under state law either); *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 566 (1981) ("[t]he vagaries of the marketplace usually deny us sure knowledge of what plaintiff's situation would have been in the absence of defendant's antitrust violation"); *MCI Commc'ns Corp. v. AT&T*, 708 F.2d 1081, 1162-63 (7th Cir. 1983) ("When a plaintiff improperly attributes all losses to a defendant's illegal acts, despite the presence of significant other factors, the evidence does not permit a jury to make a reasonable and principled estimate of the amount of damage."); *Bazemore v. Friday*, 478 U.S. 385, 400 (1986) (Brennan, J., concurring) (inclusion of "major factors" in regression sufficient because "it is clear that a regression analysis that includes less than 'all measurable variables' may serve to prove a plaintiff's case"); *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, 20 F.4th 466, 488 (9th Cir. 2021) ("where an antitrust plaintiff suffers continuing antitrust injuries from anticompetitive changes to market structure that arose from a proven antitrust violation, we hold that the violation may be a material cause of that injury, and so recovery of damages is permitted, even after the last proven date of the violative conduct. This rule accords with the common-sense principle that 'if you break it, you buy it.'").

INSTRUCTION NO. 41.1

LOST PROFITS IS NO DEFENSE TO COLLUSION

Plaintiffs do not have the burden to prove that the Defendants increased profits by entering into a conspiracy to restrain competition. The antitrust laws prohibit conspiracies to increase profits, as well as to conspiracies to avoid losses. It is not a defense to argue that a party entered into a conspiracy to avoid losses. A conspiracy to restrain competition could exist even if all members of the conspiracy lost money.

**Authority:** *Kraft Foods Glob., Inc. v. United Egg Producers, Inc.*, No. 11-cv-8808 (N.D. Ill. December 21, 2023), ECF No. 676 at 6150.

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 42

### INDIRECT PURCHASER DAMAGES

If you find in favor of the Consumer Plaintiffs on their state antitrust or unfair competition law claims, you must then consider whether they have proven their damages by a preponderance of the evidence on a state-by-state basis.

You have heard a description of expert evidence regarding the calculation of damages on a state-by-state basis under the laws of 31 separate states. For the Consumer Plaintiffs, you should compute your damages based upon the total damages for all of the states that have been proven to you by a preponderance of the evidence.

If you find that the Consumer Plaintiffs have proven the damages for all 31 states by a preponderance of the evidence, you may enter your verdict based upon the total amount of the damages they have proven to you.

If you find that the Consumer Plaintiffs have failed to prove the damages for any of the states by a preponderance of the evidence, you should exclude from your verdict the amount of damages attributable to those states.

Authority: *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 534 (6th Cir. 2008) (citing *In re NASDAQ Market–Makers Antitrust Litig.*, 169 F.R.D. 493, 525 (S.D.N.Y.1996)) ("Damages in an antitrust class action may be determined on a classwide, or aggregate, basis, without resorting to fluid recovery where the [evidence] . . . provide[s] a means to distribute damages to injured class members in the amount of their respective damages.").

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 43

## CLASS DAMAGES

Plaintiffs are seeking to recover damages on behalf of classes of purchasers. To award damages for one or more of the classes, you do not need to determine the overcharge paid by each class member with absolute mathematical certainty or precision. It is sufficient for you to determine the average overcharge paid by class members in each class or estimate the overcharge paid by class members in each class, as long as the average or estimate is based on evidence and reasonable inferences. You may not base your damages award on guesswork or speculation. If determining the amount of damages requires you to guess or speculate, or make speculative assumptions or inferences, you may not award damages.

You must consider any award of damages to the Direct Purchaser Class first, and then you must consider any award of damages to the Consumer Class separately.

**Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 6(B)(7) (2016), as modified by Defendants, and proposing the final paragraph to make clear to the jurors that they should first resolve the overcharge at the DPP level before separately determining the overcharge for consumers.

INSTRUCTION NO. 44

MULTIPLE PLAINTIFFS

Intentionally Left Blank (Defendant Proposed)

PLAINTIFFS' PROPOSED INSTRUCTION NO. 45

MITIGATION OF DAMAGES

When determining the amount of damages to award one or both of the plaintiff classes, you may not consider whether class members took steps to mitigate their damages. (The plaintiff has a duty to use reasonable efforts to mitigate damages.) To mitigate means to limit, avoid, or reduce damages. (The defendant has the burden of proving by a preponderance of the evidence:

1. that the plaintiff failed to use reasonable efforts to mitigate damages; and

2. the amount by which damages would have been mitigated.)

**Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 6(B)(14) (2016); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 6000154, at *3 (N.D. Cal. 2012); *In re Airline Ticket Comm'n Antitrust Litig.*, 918 F. Supp. 283, 286 (D. Minn. 1996) ("In a horizontal price-fixing case, however, mitigation and offset generally do not affect the ultimate measure of damages." (citing *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 745–46 (1977))."); *In re NFL's "Sunday Ticket" Antitrust Litig.*, No. 15-ml-02668 (C.D. Cal. Apr. 17, 2024), ECF No. 1292 at 6 (recognizing plaintiffs did not have a duty to mitigate damages because "there is no such duty arising from horizontal restraints that cause supracompetitive prices").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 46

### NOMINAL DAMAGES

See Parties' Agreed Instructions

PLAINTIFFS' PROPOSED INSTRUCTION NO. 47

JOINT AND SEVERAL LIABILITY

Each participant in a conspiracy that violates the antitrust laws is jointly and severally liable for all of the damages resulting from the conspiracy. This means that each conspirator is fully liable for all of the damages caused by the conspiracy and not solely for damages caused by an individual conspirator. One who knowingly joins an ongoing conspiracy is liable for the previous acts of the other conspirators in furtherance of the conspiracy.

If you find that Plaintiffs have proven the existence of the alleged conspiracy, that the Defendant participated in the conspiracy, and that Plaintiffs are entitled to recover damages based on the other instructions in this case, then that Defendant would be liable for all damages caused by the conspiracy.

(Thus, in that event, the Defendant would be liable for overcharges on all purchases of packaged tuna products by Plaintiffs from all members of the conspiracy, and not merely on purchases from that Defendant. If, however, you find that any of the other alleged conspirators were not a member of the conspiracy, then Defendants would not be liable for damages based on Plaintiffs' purchases from those alleged conspirators.)

**Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 6(B)(17) (2016). Plaintiffs accept Defendants' modifications, but reject the additional language proposed by them (as noted in red). Defendants' proposed language does not properly account for the role played by the parent entities.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

<u>INSTRUCTION NO.48</u>

PARALLEL CONDUCT

Intentionally Left Blank (Defendant Proposed)

## INSTRUCTION NO.49

EVIDENCE OF SIMILARITY

Intentionally Left Blank (Defendant Proposed)

## INSTRUCTION NO. 50

EVIDENCE OF EXCHANGE OF PRICE INFORMATION

Intentionally Left Blank (Defendant Proposed)

## INSTRUCTION NO. 51

GUILTY PLEAS AND CRIMINAL JUDGMENTS

Intentionally Left Blank (Defendant Proposed)

1   INSTRUCTION NO. 52

2   STATUTE OF LIMITATIONS

3       You may have heard the phrase "statute of limitations." This refers to laws

4   requiring that legal claims be brought by filing a lawsuit within a certain period of

5   time after the harm occurred. If no lawsuit is filed in that time, some or all of the

6   claims may be lost or "time barred."

7       DPPs filed this lawsuit on August 3, 2015, and seek damages beginning on

8   June 1, 2011. That period covers four years and sixty-three days. The relevant statute

9   of limitations <u>allows the plaintiff to recover damages arising from purchases made</u>

10  <u>during the four years prior to the filing of the lawsuit.</u> (is four years from the date

11  the plaintiff is first injured.) Accordingly, unless DPPs can establish <u>an applicable</u>

12  <u>tolling doctrine,</u> (fraudulent concealment,) their claims are partially time-barred <u>to</u>

13  <u>the extent of the first sixty-three days of their class period</u>.

14      EPPs filed this lawsuit on August 24, 2015 and seek damages beginning on at

15  least June 1, 2011. That period covers four years and eighty-five days. The relevant

16  statutes of limitations in the states covered by EPPs' claims range from two to four

17  years. Accordingly, for certain claims, Defendants contend that EPPs are not entitled

18  to recover damages for all of that time period because some of EPPs' purchases

19  occurred too long before the lawsuit was filed.

20      Unless EPPs can prove otherwise, this means that claims with the following

21  statutes of limitation will be time barred:

| Statute of Limitations: | Claims barred: | Days Excluded: |
|---|---|---|
| Two years | June 1, 2011 to August 24, 2013 | 816 days |
| Three years | June 1, 2011 to August 24, 2012 | 451 days |
| Four years | June 1, 2011 to August 24, 2011 | 85 days |

In particular, you will have to decide if some or all of the following claims are time barred: Arizona antitrust claims; California antitrust(, consumer protection, and unjust enrichment claims); District of Columbia antitrust claims; Florida consumer protection claims; Hawaii antitrust (and consumer protection claims); Iowa antitrust claims; Kansas antitrust (and unjust enrichment claims); Michigan antitrust claims; Minnesota antitrust claims; New Hampshire antitrust claims; (New Mexico consumer protection and unjust enrichment claims; North Carolina unjust enrichment claims; South Carolina consumer protection and unjust enrichment claims;) New York antitrust claims; South Dakota antitrust claims; Tennessee antitrust (and unjust enrichment claims); and Virginia consumer protection claims.

**Authority:** Plaintiffs accept Defendants' proposed instruction, with the exception of material in red.

PLAINTIFFS' PROPOSED INSTRUCTION NO. 53

FRAUDULENT CONCEALMENT

The statute of limitations bars any recovery by the plaintiffs for (injuries) overcharges that occurred before August 3, 2011, which is four years prior to the date the plaintiffs filed this lawsuit. However, there is an exception to this rule called "fraudulent concealment." If the plaintiffs prove that the defendants' conspiracy to restrain competition by fixing, raising, maintaining, or stabilizing the price of packaged tuna was fraudulently concealed, the plaintiffs may recover for (injuries) overcharges that occurred between June 1, 2011 and August 3, 2011. To establish fraudulent concealment, the plaintiffs must prove (each of the following three elements by a preponderance of the evidence) that:

(1) the Defendants or any member of the conspiracy actively concealed the conspiracy to fix, raise, maintain, or stabilize the price of packaged tuna (that caused the plaintiffs' injuries);

(2) the plaintiffs did not discover the alleged conduct before August 3, 2011; and

(3) the plaintiffs exercised reasonable diligence in the circumstances and still did not discover the alleged conduct.

To establish the first element of fraudulent concealment—active concealment—the plaintiffs must show affirmative acts of concealment. Mere silence does not constitute fraudulent concealment. Rather, the plaintiffs must prove that (defendant) one or more of the participants in the conspiracy took affirmative steps to prevent (plaintiff from learning about [the alleged conduct]) their conduct from being discovered. Issuing false or materially misleading justifications for a price increase can serve to affirmatively conceal a conspiracy. When a person speaks on a subject, such as the reasons for a price increase, that person must disclose all material information on that subject.

<span style="color:red">(Defendant is responsible for its)</span> <u>Each of the defendants</u> is responsible for its own acts of concealment as well as any acts of concealment committed by <span style="color:red">(coconspirators)</span> <u>any other participant in the conspiracy</u> as long as the act of concealment occurred during the course of and in furtherance of the conspiracy. The plaintiffs need not establish concealment on a victim-by-victim basis; affirmative acts of concealment are considered to have an industry-wide effect.

In considering the third element of fraudulent concealment, <span style="color:red">(if facts were reasonably available to plaintiff that should have aroused suspicion that the [*alleged conduct*] had occurred, plaintiffs must have made a reasonable investigation to discover the [*alleged conduct*])</span> if you conclude that a reasonable investigation would not have uncovered the conspiracy to restrain competition in the packaged tuna market, then you must find that the third element has been established. If, under all the circumstances of the case, no suspicious facts were reasonable available to the plaintiffs, no investigation was required, and you must find that the third element has been established. Parallel conduct or parallel pricing by itself does not give rise to the duty to investigate.

<span style="color:red">(If you find that plaintiff has proved all three elements of fraudulent concealment, then plaintiff is entitled to recover for injuries that occurred before [*date X*]. If you find that plaintiff has failed to prove any one of the three elements, then plaintiff may not recover for injuries that occurred before [*date X*].)</span>

<u>If you find that the plaintiffs have established all three elements of fraudulent concealment, then the statute of limitations was tolled during the sixty-three day period from June 1, 2011-August 2, 2011, and plaintiffs may recover for their injuries during this time.</u>

**Authority:** American Bar Association, Model Jury Instructions in Civil Antitrust Cases, ch. 7.A.2 (2016); *In re Capacitors Antitrust Litig.*, No. 17-MD-02801-JD

(N.D. Cal. May 17, 2023), ECF. No. 1574-2 at 172-74; *Hexcel Corp. v. Ineos Polymers, Inc.*, 681 F.3d 1055, 1059-60 (9th Cir. 2012) (stating that the plaintiff "must plead facts showing that [the defendant] affirmatively misled it"); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2016 WL 8669891, at *10 (N.D. Cal. Aug. 22, 2016) (finding "attend[ing] secret meetings in hotels, record[ing] information on a blackboard instead of committing it to paper, instruct[ing] recipients of emails to destroy them after reading them, and us[ing] codes in correspondence" are affirmative acts for fraudulent concealment purposes); *Hinds County, Miss. v. Wachovia Bank N.A.*, 885 F. Supp. 2d 617, 627 (S.D.N.Y. 2012) ("As a general matter, the question of whether specific media reports serve to put a diligent plaintiff on inquiry notice involves an objective inquiry into whether the totality of the circumstances revealed probable—and not merely possible-illegal activity attributable to the defendants named in the complaint and of the type described therein."); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13- MD-2420 YGR, 2014 WL 309192, at *4, *9 (N.D. Cal. Jan. 21, 2014) (finding the plaintiff properly alleged fraudulent concealment where price increases were blamed on increases in raw materials, which was in part true, but where the increase in raw materials was still used as a pretext for "unwarranted" price increases by defendants); *Garrison v. Oracle Corp.*, 159 F. Supp. 3d 1044, 1073 (N.D. Cal. 2016) (quoting *Hexcel*, 681 F.3d at 1060) ("To plead fraudulent concealment, the plaintiff must allege that: (1) the defendant took affirmative acts to mislead the plaintiff; (2) the plaintiff did not have 'actual or constructive knowledge of the facts giving rise to [his] claim' as a result of the defendant's affirmative acts; and (3) the plaintiff acted diligently in trying to uncover the facts giving rise to his claim."); *Beltz Travel Serv., Inc. v. Int'l Transp. Ass'n*, 620 F.2d 1360, 1367 (9th Cir. 1980) ("If [a plaintiff] can establish the existence of a conspiracy in violation of the antitrust laws and that [defendants] were a part of such a conspiracy, [defendants] will be liable for the acts of all members of the conspiracy in furtherance of the conspiracy, regardless of the nature of [defendants'] own actions. Participation by each conspirator in every detail in the execution of the conspiracy is unnecessary to establish liability, for each conspirator may be performing different tasks to bring about the desired result."); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-2670 DMS (MSB) (S.D. Cal.), ECF No. 1358 at 87-90; *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 824 (N.D. Cal. 2022) (citing *Conmar Corp. v. Mitsui & Co. (U.S.A.), Inc.*, 858 F.2d 499, 504 (9th Cir. 1988)) ("The requirement of diligence is only meaningful, however, when facts exist that would excite the inquiry of a reasonable person.").

## PLAINTIFFS' PROPOSED INSTRUCTION NO. 54

### INJURY DISCOVERY RULE

The four-year statute of limitations applicable does not begin to run until the plaintiffs knew, or reasonably should have known, that they had been injured in any amount as a result of the conspiracy to restrain competition in the packaged tuna market. If you find that the plaintiffs have established that they did not know and reasonably could not have known of their injuries during the sixty-three day period from June 1, 2011-August 2, 2011, then the statute of limitations was tolled, and plaintiffs may recover for their injuries during this time.

**Authority:** *Pincay v. Andrews*, 238 F.3d 1106, 1109 (9th Cir. 2001) (adopting the "injury discovery" rule for claims made under 15 U.S.C. § 15b); *id.* (quoting *Grimmet v. Brown,* 75 F.3d 506, 511 (9th Cir.1996)) ("[T]he . . . limitations period begins to run when a plaintiff knows or should know of the injury that underlies his cause of action."); *Fenerjian v. Nongshim Company, Ltd.*, 72 F. Supp. 3d 1058, 1077 (N.D. Cal. 2014); *In re Copper Antitrust Litig.*, 436 F.3d 782, 789 (7th Cir. 2006) (same); *In re Packaged Seafood Prods. Antitrust Litig.*, No. 15-2670 DMS (MSB) (S.D. Cal.), ECF No. 283 at 26 (acknowledging that the Ninth Circuit has not "unequivocally reject[ed] the application of the discovery rule to Sherman Act Claims"); *Trotter v. Int'l Longshoremen's Warehousemen's Union, Local 13*, 704 F.2d 1141, 1143 n. 2 (9th Cir. 1983) ("The general federal rule is that a limitations period begins to run when the plaintiff knows or has reason to know of the injury which is the basis of the action."); *Airweld, Inc. v. Airco, Inc.*, 742 F.2d 1184, 1190 (9th Cir. 1984) (Sherman Act "cause of action does not accrue on the date of injury if damages are speculative" as of that date).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## INSTRUCTION NO. 55

### PERSONAL JURISDICTION

Intentionally Left Blank (Defendant Proposed)

## INSTRUCTION NO. 56

DUTY TO DELIBERATE

See Parties' Agreed Instructions

## INSTRUCTION NO. 57

### CONSIDERATION OF THE EVIDENCE—CONDUCT OF THE JURY

See Parties' Agreed Instructions

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>INSTRUCTION NO. 58</u>

TAKING NOTES

See Parties' Agreed Instructions

## INSTRUCTION NO. 59

CHARTS AND SUMMARIES

See Parties' Agreed Instructions

## INSTRUCTION NO. 60

COMMUNICATION WITH THE COURT

See Parties' Agreed Instructions

## INSTRUCTION NO. 61

### RETURN OF VERDICT

See Parties' Agreed Instructions

# INSTRUCTION NO. 62

POST DISCHARGE INSTRUCTION

See Parties' Agreed Instructions