BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

*Class Counsel for the End Payer Plaintiffs*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>_____<br><br>This Document Relates to:<br><br>    End Payer Plaintiffs Class Track<br><br>_____ | Case No.: 15-MD-2670 DMS (MSB)<br><br>**END PAYER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTORITIES IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS**<br><br>DATE:    August 23, 2024<br>TIME:    1:30 p.m.<br>JUDGE:    Hon. Dana M. Sabraw<br>COURT:    13A (13th Floor) |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ....................................................................................... 1

II.   PLAINTIFFS' CLAIMS AND PROCEDURAL HISTORY OF THE
      LITIGATION .............................................................................................. 3

      A. History of the Litigation.................................................................... 3

      B. The "Icebreaker" COSI Settlement .................................................. 4

      C. Arm's-Length Negotiations of Settlement Agreements .................... 4

           1.  Settlement Discussions with StarKist .................................... 4

           2.  Settlement Discussions with the Lion Companies Defendants ........... 5

III.  SETTLEMENT TERMS.............................................................................. 6

      A. The End Payer Plaintiff Settlement Class Is the Same as the Certified
         Consumer Classes ............................................................................. 6

      B. Key Terms in the Settlement Agreements ........................................ 7

           1.  The Starkist Settlement Agreement ....................................... 7

           2.  The LC Settlement Agreement .............................................. 8

      C. Request for Attorneys' Fees and Expense Award ............................ 9

      D. Service Award to Named Plaintiffs ................................................ 11

      E. Agreements Required to Be Identified Under Fed. R. Civ. P. 23(e)(3) .. 13

IV.   PROPOSED NOTICE AND CLAIMS DISTRIBUTION PROCCESS....... 13

      A. An Experienced and Well-Respected Claims Administrator ................ 13

      B. The Proposed Notice Plan Will Reach 70% of the Settlement Class ...... 14

      C. The Proposed Form of Notice Is Appropriate................................. 14

      D. The Proposed Distribution Plan ..................................................... 15

      E. The Claims Process: Access to Online Submission of Claim Forms ... 16

      F. Objection Rights.............................................................................. 17

      G. No Further Exclusion or Opt-Out .................................................. 17

V.    ARGUMENT ............................................................................................ 18

      A. The Court is Likely to Approve the Settlement ............................... 18

           1.  The *Churchill Village* Factors Favor Preliminary Approval ............. 20

           2.  The Rule 23(e) Factors Support Preliminary Approval...................... 23

i

B. EPPs' Settlement Class Notice Provides the Opportunity to Object, and Class Members Had Two Prior Opportunities for Exclusion ................. 24

C. The Costs of Administration ............................................................... 25

D. EPPs' Claims Process Is Efficient and Reasonable ....................................... 25

E. The Court Should Order Notice and Schedule the Fairness Hearing ........... 26

VI.    CONCLUSION ............................................................................. 27

ii

1

**TABLE OF AUTHORITIES**

2

<u>**CASES**</u>                                                                          <u>Page(s)</u>

3

*Bellinghausen v. Tractor Supply Co.*,
4          306 F.R.D. 245 (N.D. Cal. 2015) ................................................. 19, 20, 22

5     *Birch v. Off. Depot, Inc.*,
          No. 06 CV 1690 DMS (WMC), 2007 WL 9776717
6          (S.D. Cal. Sept. 28, 2007) ....................................................................... 12

7     *Bravo v. Gale Triangle, Inc.*,
          No. CV 16-03347 BRO (GJSx), 2017 WL 708766
8          (C.D. Cal. Feb. 16, 2017) ................................................................... 20, 22

9     *Carlin v. DairyAmerica, Inc.*,
          380 F. Supp. 3d 998 (E.D. Cal. 2019) ............................................... 18, 20
10
     *Chen v. Chase Bank USA, N.A.*,
11        No. 19-cv-01082, 2020 WL 3432644 (N.D. Cal. June 23, 2020) ..................... 19

12    *Churchill Vill., L.L.C. v. Gen. Elec., Co.*,
          361 F.3d 566 (9th Cir. 2004) ....................................................... *passim*
13
     *DeSilvio v. Lion Biotechnologies, Inc.*,
14        No. 17-cv-02086-SI, *Slip. Op.* (N.D. Cal. June 30, 2021) ................................ 26

15    *Hefler v. Wells Fargo & Co.*,
          No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018), aff'd sub
16        nom. *Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ................................. 26

17    *In re Apple Inc. Device Performance Litig.*,
          50 F.4th 769 (9th Cir. 2022) .................................................................. 12
18
     *In re Bluetooth Headset Prod. Liab. Litig.*,
19        654 F.3d 935 (9th Cir. 2011) ......................................................... 19, 20, 23
20
     *In re BofI Holding, Inc. Sec. Litig.*,
21        No. 315CV02324GPCKSC, 2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ...... 13

22    *In re Broiler Chicken Antitrust Litig.*,
          No.16 C 8637, 2024 WL 3292794 (N.D. Ill. July 3, 2024) ............................. 11
23
     *In re Capacitors Antitrust Litig.*,
24        No. 3:14-cv-03264-JD, 2023 WL 2396782 (N.D. Cal. Mar. 6, 2023)............... 10

25    *In re Cathode Ray Tube (CRT) Antitrust Litig.*,
          No. 14-CV-2058 JST, 2017 WL 565003 (N.D. Cal. Feb. 13, 2017) ................ 22
26
     *In re Checking Acct. Overdraft Litig.*,
27        830 F. Supp. 2d 1330 (S.D. Fla. 2011)......................................................... 11

28    *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*,
          No. C 06-4333 PJH, 2013 WL 12333442 (N.D. Cal. Jan. 8, 2013)................. 26

     *In re Ikon Off. Sols., Inc. Sec. Litig.*,

iii

194 F.R.D. 166 (E.D. Pa. 2000) ..................................................................... 11

*In re Lenovo Adware Litig.*,
   No. 15-md-02624-HSG, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ........... 11

*In re Linerboard Antitrust Litig.*,
   No. MDL 1261, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ........................... 11

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 4:13-md-02420-YGR (DMR), 2017 WL 1086331
   (N.D. Cal. Mar. 20, 2017) ................................................................................ 21

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-02420-YGR, 2018 WL 3064391
   (N.D. Cal. May 16, 2018) ................................................................................. 11

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................................ 12

*In re Polyurethane Foam Antitrust Litig.*,
   No. 1:10 MD 2196, 2015 WL 1639269 (N.D. Ohio Feb. 26, 2015) ................ 11

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ..................................................................... 18

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   No. M 07-1827 SI, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ..................... 11

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
   895 F.3d 597 (9th Cir. 2018) ..................................................................... 18, 23

*Low v. Trump Univ., LLC*,
   881 F.3d 1111 (9th Cir. 2018) ......................................................................... 17

*Meijer, Inc. v. Abbott Lab'ys*,
   No. C-07-05985 CW, 2011 WL 13392313 (N.D. Cal. Aug. 11, 2011) ........... 11

*Mullan v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) ......................................................................................... 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir.), cert. denied sub nom. *StarKist Co. v. Olean Wholesale*
   *Grocery Coop., Inc., et al.,* 143 S. Ct. 424 (2022) ........................................ 18

*Redwen v. Sino Clean Energy Inc,*
   No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ...... 26

*Rodriguez v. W. Publ'g Corp.*,
   563 F. 3d 948 (9th Cir. 2009) .......................................................................... 21

*Winters v. Two Towns Ciderhouse, Inc.*,
   No. 20-CV-00468-BAS-BGS, 2021 WL 1889734
   (S.D. Cal. May 11, 2021) ................................................................................. 13

iv

## STATUTES & RULE                                                    Page(s)

California Civil Code § 1542 ........................................................................... 8

Fed. R. Civ. P. 23(a) ................................................................................... 2, 7

Fed. R. Civ. P. 23(b)(3) ....................................................................2, 7, 14, 24

Fed. R. Civ. P. 23(c) ..................................................................................... 15
Fed. R. Civ. P. 23(c)(2)(B) ............................................................................ 15
Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii) ................................................................. 15
Fed. R. Civ. P. 23(c)(3) ................................................................................. 15

Fed. R. Civ. P. 23(e) ..................................................................................... 17
Fed. R. Civ. P. 23(e)(1)(B) ..................................................................14, 17, 19
Fed. R. Civ. P. 23(e)(1)(B)(i) ........................................................................ 18
Fed. R. Civ. P. 23(e)(2) ............................................................................19, 23
Fed. R. Civ. P. 23(e)(2)(C) ........................................................................20, 21
Fed. R. Civ. P. 23(e)(2)(C)(i) .....................................................................20, 23
Fed. R. Civ. P. 23(e)(2)(C)(ii) ....................................................................24, 25
Fed. R. Civ. P. 23(e)(2)(C)(iii) ...................................................................... 24
Fed. R. Civ. P. 23(e)(2)(C)(iv) ...................................................................... 24
Fed. R. Civ. P. 23(e)(3) ................................................................................. 13
Fed. R. Civ. P. 23(e)(4)-(5) ........................................................................... 24

Sherman Act, 15 U.S.C. § 1 ........................................................................... 3

## OTHER AUTHORITIES                                                  Page(s)

*Manual for Complex Litigation*, § 21.312 (4th ed. 2023) ................................ 14

United States District Court, Northern District of California, *Procedural Guidance for Class Action Settlements*, https://www.cand.uscourts.gov/forms/procedural-guisance-for-class-action-settlements/ ..................................................21, 22, 23

v

No. 15-MD-2670 DMS (MSB)

# I.     INTRODUCTION

After nine years of hard-fought litigation, with the trial set to start on July 16, 2024, the End Payer Plaintiffs ("EPPs" or "Consumers") present for the Court's preliminary approval two substantial settlements with the Settling Defendants[1] with a combined cash value of $136 million. The nine long years of litigation included: a hotly disputed class certification process; extensive discovery with millions of documents and over 200 depositions; and multiple summary judgment motions. An earlier Partial Settlement with Defendant Chicken of the Sea and its parent, Thai Union Group, ("the COSI Settlement") adds another $16.2 million, for Total Settlement Benefits of $152.2 million.[2]

The StarKist and Lion Companies Settlement Agreements were vigorously and extensively negotiated at arm's-length by counsel experienced in antitrust class actions. Class Counsel were ready and willing to try this antitrust litigation to verdict. It was only through the extraordinary efforts of United States Magistrate Judge Michael S. Berg, who oversaw multiple heated mediation sessions between the

---

[1] The Settling Defendants are StarKist Co. and its parent Dongwon Industries Co., Ltd. ("DWI" and, collectively, "StarKist") and various "Lion Companies" (Lion Capital LLP, Lion Capital (Americas), Inc. and Big Catch Cayman LP) (collectively, "Lion Companies" or "LC").

[2] On July 15, 2022, the Court finally approved the Partial (COSI) Settlement. ECF No. 2871. Under the COSI Settlement Agreement, the Maximum Settlement Amount was $20 million. ECF No. 2552-3 at 8. Under Paragraphs 11(b) and 18, up to $5 million could be used to cover the reasonable costs of the Settlement Notice and administration of the $15 million Settlement Fund. Since the reasonable costs of Settlement Notice were less than $5 million, the difference was refunded to the COSI Defendants. *Id*. at 14 and 15. The Court also approved an Expense Award of $4,155,027.67 to reimburse Class litigation costs incurred as of May 2021. ECF No. 2872 at 4:17-19. The COSI Settlement provided $1.4 million in notice and administration benefits. COSI now requests reimbursement for $206,379.11 in administrative costs incurred in 2024 relating to claims administration which benefits the proposed settlements. Declaration of Betsy C. Manifold ("Manifold Decl."), ¶ 2. The total benefit provided by the COSI Settlement is $16.2 million.

settling parties in April, May, June, and July 2024, that these settlements were achieved – literally on the steps of the courthouse and the eve of trial. Collectively, the Total Settlement Benefits of $152.2 million represent approximately 68% of single damages as calculated by the EPPs' expert. This is an excellent outcome for the previously certified Consumer Classes.[3] EPPs submit that the Settlement Agreements are fair, adequate and reasonable.

EPPs respectfully request that the Court grant preliminary approval and enter an order finding that the StarKist and Lion Companies Settlement Agreements have been negotiated at arm's-length, and that both Settlement Agreements are fair, reasonable, and adequate and in the best interests of the Consumer Classes. As the Court's Class Order (ECF No. 1931) has already determined that the Consumer Classes satisfy Rules 23(a) and 23(b)(3), the proposed Settlement Class (consisting of the same Cartwright and State Law Consumer Classes, less any opt-outs previously so ordered by the Court), also satisfies Rules 23(a) and 23(b)(3) for settlement purposes. The EPPs ask the Court to: (i) approve again the EPPs' proposed Class Notice provider (JND) and approve the Settlement Class Notice and Distribution Plan; (ii) set a deadline (the "Objection Deadline") for persons to object; (iii) set a deadline for persons to make claims ("Claims Deadline") from the Settlements; and (iv) schedule a Fairness Hearing.

## II.   PLAINTIFFS' CLAIMS AND PROCEDURAL HISTORY OF THE LITIGATION

### A.   History of the Litigation

---

[3] This Court previously certified a multistate Cartwright Act class ("Cartwright Class") and multiple individual State Law Classes for 32 States, Districts, and Territories ("State Classes") (collectively referred to as "Consumer Classes"). The Cartwright Class consists of 31 State Classes. *See* July 30, 2019 Order re: Class Certification (ECF No. 1931) ("Class Cert. Order") at 46 (certifying Cartwright Class with 32 states); ECF No. 2925 at 10:10-17 (excising the South Carolina claimants from the Cartwright Class). The Settlement Class is defined as the Consumer Class, less the opt-outs so ordered by the Court. *See* ECF No. 1931 and 3120.

The general background and history of this litigation is well-documented and extensively discussed in prior orders. ECF Nos. 2454, 2654. The relevant highlights for the purpose of preliminary approval are as follows.

On August 24, 2015, the EPPs filed a class action complaint alleging an antitrust conspiracy by the three domestic tuna brands and their parent companies, StarKist Co. ("StarKist"), Bumble Bee, and Chicken of the Sea ("COSI"), to fix and maintain packaged tuna prices above competitive levels in violation of state laws. After nine years of hotly contested litigation, it is undisputed that all three Defendants participated in a conspiracy in violation of state and federal laws. Defendants Bumble Bee and StarKist pled guilty to a criminal conspiracy to violate federal antitrust laws under the Sherman Act, 15 U.S.C. § 1, on August 4, 2017, and November 14, 2018, respectively. *See* ECF No. 2654 (discussing guilty pleas, convictions, and admissions of Defendants). COSI entered into a leniency agreement with the Department of Justice ("DOJ") Antitrust Division and agreed to cooperate and testify concerning its participation in the "cartel." Executives of StarKist and Bumble Bee pled guilty to participating in the conspiracy in 2017, and Bumble Bee's Chief Executive Officer was tried and convicted by jury on December 3, 2019, for his role in the conspiracy. *Id*.

The Court granted summary judgment against StarKist on liability, finding that StarKist engaged in the price-fixing conspiracy from at least as early as November 2011, and continuing through at least as late as December 2013, but expressly permitting Plaintiffs to present evidence and argue for a broader conspiracy. ECF No. 2654 at 27. The Court also found that "the conspiracy had an actual effect on the market," leaving the Consumers to prove their damages at trial. *Id*. Only three disputed issues remain to be tried at trial: (i) the extent of the conspiracy; (ii) Plaintiffs' damages, and (iii) whether Defendants DWI and the Lion Companies are liable along with Defendant StarKist.

**B.    The "Icebreaker" COSI Settlement**

- 3 -

Incorporated by reference is the detailed history provided in the EPPs' Motion for Final Approval (ECF No. 2552-1 at 7-14). The key terms and conditions of the COSI Settlement as to any Fee and Expense Award sought by the EPPs and Class Counsel remain unchanged. Jt. Stip., ¶ 8, citing ECF No. 2552-3 at 18-19. However, the EPPs and Class Counsel elected unilaterally not to seek reimbursement of attorneys' fees solely from the COSI Defendants or the COSI Settlement Fund. Instead, the EPPs moved only for reimbursement of their litigation expenses as of that date, which the Court awarded in the amount of $4,155,027.67 from the Distribution Fund. ECF Nos. 2871, 2872. *See also* n.2, *infra*. At that time, Class Counsel reserved their rights to seek reimbursement of attorneys' fees from any monies recovered from the Non-Settling Defendants, and to include in the bases for any such fees request the benefits obtained in the COSI Settlement. *Id*. Class Counsel now respectfully request that any attorneys' fees award be based on the Total Settlement Benefits of $152.2 million.

## C.    Arm's-Length Negotiations of Settlement Agreements

EPPs have been engaged in informal settlement discussions with the Settling Defendants since mid-2019. Manifold Decl., ¶¶ 17, 18, 22 (including Bumble Bee).

### 1.    Formal Settlement Discussions with StarKist

Unable to make progress through this informal process, in 2020, the parties engaged retired United States Magistrate Judge Elizabeth LaPorte of JAMS as a mediator, but reached no resolution. *Id*. at ¶ 19. After the partial summary adjudication, the EPPs and StarKist participated in settlement conferences with Magistrate Berg on October 4, 2023. Manifold Decl., ¶ 20. No resolution was reached.

As the July 16, 2024 trial date approached, the EPPs and StarKist renewed settlement efforts. The parties participated in a settlement conference with Magistrate Berg on April 25, 2024, and again on May 22 and May 23, 2024. Manifold Decl., ¶ 21. While these sessions did not result in settlement, the parties agreed to meet again on June 3, 2024. *Id*. With the oversight and active participation of Magistrate Berg,

the EPPs and StarKist reached a settlement in principle at the end of that June 3, 2024 conference, in which the parties agreed to resolve the EPP claims in exchange for $130 million in cash. *Id*. In follow-on discussions mediated by Magistrate Berg over the next two months, the EPPs and StarKist negotiated core settlement issues, including an 18-month settlement payment schedule beginning with the date of preliminary approval. *Id*.

### 2. Formal Settlement Discussions with the LC Defendants

On August 7, 2023, the EPPs and the Direct Purchaser Plaintiffs ("DPPs") attended a joint settlement conference with LC before Magistrate Berg. *Id*. at ¶ 23. That session did not result in settlement. *Id*. At Lion Companies request, the EPPs and DPPs attended a joint settlement conference with LC in a private mediation session overseen by retired United States District Judge Daniel Weinstein of JAMS in San Francisco, California on June 7, 2024. *Id*. That session also did not result in settlement; however, the parties agreed to a further settlement conference before Magistrate Berg. Manifold Decl., ¶ 23.

On June 17, 2024, with trial imminent, the EPPs and DPPs met with LC (and their insurers and principals) in a day-long settlement conference before Magistrate Berg that culminated in the parties reaching a settlement in principle. *Id*., ¶ 24. During the session, LC and its founders' financial conditions were fully evaluated by Settlement Class Counsel, as well as by Magistrate Berg. *Id*. The nine-hour mediation session concluded with an agreement that the Lion Companies would pay $6 million to the EPP Consumer Classes to resolve the claims against them. *Id*.

### III. SETTLEMENT TERMS

The $136 million fund created by the StarKist and LC Settlement Agreements, along with the $16.2 million in benefits from the COSI Settlement, will be used to make payments to the Settlement Class Members and to pay costs of notice, claims administration and distribution, attorneys' fees, expenses, costs, and service awards

so ordered by the Court.[4] *See* StarKist Settlement Agreement ("SA") at ¶¶ 1.2, 14.1; Lion Companies SA at ¶¶ 1.22, 10.9, 10.10, 11.1. Defendants Starkist and LC have agreed that $1 million and up to $200,000, respectively, from their initial deposits of funds into the Settlement Fund, which shall occur within 30 days following entry by the Court of the Preliminary Approval Order, shall be used to pay for notice costs. Defendants' remaining deposits into the Settlement Fund will be as provided by their respective Settlement Agreements, as discussed *infra*. *See* StarKist S.A. at ¶ 5.3; Lion Companies S.A. at ¶ 1.22. The Proposed Settlement Notice and Distribution Plan is described in detail in Section IV, *infra*.

### A.   The End Payer Plaintiff Settlement Class Is the Same as the Certified Consumer Classes

Under the StarKist and LC Settlement Agreements, the Settlement Class is the same as the Consumer Classes certified by the Court:

> All persons and entities who reside in one of the States described in paragraphs 113(b) to 113(gg) of the Fourth Consolidated Amended Complaint, specifically Arizona, Arkansas, California, the District of Columbia, Florida, Guam, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, Virginia, West Virginia, and Wisconsin, who indirectly purchased Packaged Tuna in cans or pouches smaller than forty ounces for end consumption and not for resale, produced by any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator during the period from June 1, 2011 to July 1, 2015.

*See* ECF No. 1931; StarKist SA, ¶ 1.8; Lion Companies SA, ¶ 3; *see also* ECF No. 2871 (Order approving the COSI Settlement).[5] The only difference is that the Settlement Class excludes the opt-outs so ordered by the Court and includes the three

---

[4] Capitalized terms are defined within the StarKist and Lion Settlement Agreements.

[5] Excluded from the Class are all governmental entities, Defendants' parent, subsidiary or affiliate thereof, their officers, directors, employees, and immediate families, as well as any federal judges or their staffs. *Id*.

individual Illinois Plaintiffs. *See* ECF Nos. 3120, 2871. The Settlement Class Counsel and Settlement Class Representatives are also the same as Class Counsel and Class Representatives previously appointed by the Court in the Class Order. ECF No. 1931; StarKist SA, ¶ 1.26; Lion Companies SA, ¶ 3. As the Court previously found that the Consumer Classes meet the requirements of Rule 23(a) (numerosity, common questions, typicality and adequacy) and that the requirements of Rule 23(b)(3) (common issues predominate as to antitrust violation, impact and damages, and a class action is superior to other methods of adjudication), the same Settlement Class meets these requirements. ECF No. 1931 at 46-58; *see also* ECF No. 2871 at 6.

### B.    Key Terms in the Settlement Agreements

#### 1.    The StarKist Settlement Agreement

**Payment Schedule.** The StarKist Settlement Agreement provides that StarKist will pay $130 million in cash on the following schedule: within 30 days after preliminary approval - $32,000,000.00; prior to the Fairness Hearing also referred to as the "Final Approval Hearing" in StarKist SA, ¶1.24 - $18,000,000.00; within 180 days after Preliminary Approval - $15,000,000.00; within 240 days after Preliminary Approval - $12,000,000.00; within 300 days after Preliminary Approval - $11,000,000.00; within 360 days after Preliminary Approval - $11,000,000.00; within 420 days after Preliminary Approval - $11,000,000.00; within 480 days after Preliminary Approval - $10,000,000.00; and within 500 days after Preliminary Approval - $10,000,000.00. *See* StarKist SA, ¶ 1.24. Up to $1,000,000 from the first $32 million cash payment "shall be used for settlement notice and administration of claims." StarKist SA, ¶¶ 1.24, 5.3.

**Released Claims.** The Released Claims are those "arising out of, resulting from, or in any way related to EPPs' purchases of Packaged Tuna, including any conduct concerning the pricing, selling, discounting, marketing, manufacturing, distribution, or promotion, of Packaged Tuna, during the period from June 1, 2011 to July 31, 2015." *Id.* at ¶ 1.21 The Released Claims also include all claims that could

have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint. *Id*. The StarKist Settlement Agreement also contains a waiver of California Civil Code § 1542. *Id*. at ¶ 8.2.

**Attorneys' Fees and Expenses**. As to Settlement Class Counsel's Attorneys' Fee and Expenses, "the allowance or disallowance by the Court" of any application is not part of the Settlement Agreement and will "be considered by the Court separately" as part its consideration of fairness, reasonableness and adequacy of the settlement. StarKist SA, ¶ 14.1. Any order relating to the application for fees and expenses "shall not operate to terminate or cancel" the Settlement Agreement or "delay the finality of the Judgment." *Id*.

### 2.     The LC Settlement Agreement

**Payment Schedule.** The Lion Companies have agreed to pay the EPPs $6 million in cash. Lion Companies SA, ¶ 1.22. The Lion Companies will deposit $3 million in the Escrow Account thirty within (30) days after Preliminary Approval and the final $3 million within forty-five (45) days of Final Approval. *Id*. Up to $200,000 of the first $3 million cash payment "shall be used for [settlement] notice and administration of claims." Lion Companies SA, ¶ 1.22.

**Released Claims** The Released Claims must arise out of, result from or relate to "any conduct concerning the pricing, selling, discounting, manufacturing, distribution, promotion, or marketing of Packaged Tuna Products during the period from June 1, 2011 to July 31, 2015 that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint." Lion Companies SA, ¶ 1.19.

**Attorneys' Fees and Expenses** As to Settlement Counsel's Attorneys' Fee and Expenses, the LC Settlement Agreement is substantially similar to the StarKist Settlement Agreement. "[T]he allowance or disallowance by the Court" of any fee or expense application is not part of the Settlement Agreement and should be considered separately by the Court. Lion Companies S.A., ¶ 14.1. Any order relating to the

- 8 -

application for fees and expenses "shall not operate to terminate or cancel" the settlement or "delay the finality of the Judgment." *Id*.

### C. Request for Attorneys' Fees and Expense Award

EPPs will separately seek an award of attorneys' fees not to exceed one-third of the Total Settlement Fund ($152.2 million), net of any Fees, Expenses, Costs or Service Awards so ordered by the Court. As to timing, Settlement Class Counsel request that payment of any Attorneys' Fees Award follow the same payment schedule and portion of the settlement paid as set forth in the StarKist Settlement Agreement. StarKist SA, ¶ 1.24; *see also* § II.B, *supra*. Counsel request that the first payment of any Attorneys' Fees Award so ordered by the Court be paid five (5) days following the Court's Order. *See* StarKist SA, ¶ 14.1 (permitting payment five days after award).

The requested Expense Award breaks down as follow: (i) reimbursement of plaintiffs' counsel's reasonable costs and litigation expenses incurred since May 2021 in the amount of $1,618,489.24; and (ii) a request that $206,379.11 of that amount be distributed to COSI as a reimbursement for administration costs that will be common to both the proposed settlements and the COSI Settlement. Manifold Decl., ¶ 43; *see also* n.2, *supra*. This request by COSI is in accordance with the terms of the COSI Settlement Agreement. *Id*. The total requested Expense Award is $1,618,489.24. As to timing, Settlement Class Counsel request that any Expense Award so ordered by the Court be paid five (5) days following the Court's Order. *See* StarKist SA, ¶ 14.1 (permitting payment five days after award subject to any undertaking required by the Court in the event of an appeal); Lion Companies SA, ¶ 14.1 (same).

These requested awards, if so ordered by the Court, will be paid out of the Total Settlement Fund. The Settlement Class Notice (Long Form) (discussed, *infra* at § IV.C.) will advise Settlement Class Members of these requests, their amounts, and the timing for payment. ***Additionally, Class Counsel will publish on the Settlement Website and submit full briefing supporting their request for attorneys' fees and***

***expenses a minimum of twenty-one (21) days before the Objection Deadline.*** The
timing provides time for Settlement Class Members to consider this briefing before
the deadline. Settlement Class Counsel will not receive any payment unless the Court
grants the fee request.

Proposed Attorneys' Fees in the amount of one-third (33 1/3%) of the Total
Settlement Fund (after netting out costs) is within the range of reasonableness. *In re
Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD, 2023 WL 2396782 (N.D. Cal.
Mar. 6, 2023), supports the reasonableness of this request, given the late stage at
which settlement was reached and the substantial recovery to the Settlement Class
that was achieved. In the *Capacitor*s matter, the proposed $66,000,000 in attorneys'
fees amounted to 40% of the Settlement Fund created by that round of settlements,
and a cumulative 31.01% of the total settlements reached for the benefit of the class.
The one-third requested here is well within the range of reasonable fees awards,
especially in light of the complexity of antitrust cases and the degree of work and skill
required to obtain highly beneficial results for the Settlement Class. *See, e.g., In re
Lenovo Adware Litig.,* No. 15-md-02624-HSG, 2019 WL 1791420, at *7-9 (N.D. Cal.
Apr. 24, 2019) (30% of $8,300,000 recovery); *In re Lithium Ion Batteries Antitrust
Litig.,* No. 13-md-02420-YGR, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018)
(30% of $139,000,000 recovery); *In re TFT-LCD (Flat Panel) Antitrust Litig.,* No. M
07-1827 SI, 2013 WL 149692, at *2 (N.D. Cal. Jan. 14, 2013) (30% of $68,000,000
recovery); *Meijer, Inc. v. Abbott Lab'ys,* No. C-07-05985 CW, 2011 WL 13392313,
at *2 (N.D. Cal. Aug. 11, 2011) (33 1/3% of $52,000,000 recovery).[6]

[6] *See also, e.g., In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2015
WL 1639269, at *7 (N.D. Ohio Feb. 26, 2015) (30% of $147,800,000 recovery); *In
re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1366 (S.D. Fla. 2011)
(30% of $410,000,000 recovery); *In re Linerboard Antitrust Litig*., No. MDL 1261,
2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004) (30% of $202,572,489 recovery);
*In re Ikon Off. Sols., Inc. Sec. Litig.,* 194 F.R.D. 166, 170 (E.D. Pa. 2000) (30% of net
$116,000,000 recovery); *In re Broiler Chicken Antitrust Litig.*, No.16 C 8637, 2024
WL 3292794, at *3 (N.D. Ill. July 3, 2024) ($51,660,000.00, which was 30% of the
(continued…)

- 10 -

### D.   Service Award to Named Plaintiffs

The individual Plaintiffs have played a vital role in this litigation, including providing answers to interrogatories, appearing for deposition, providing declarations re: class standing, and preparing to appear at trial this July. Manifold Decl., ¶ 25. Each of them has been personally involved throughout this nine-year litigation, and they all support the proposed Settlements. *Id*. EPPs will separately petition the Court to award the individual EPPs service awards in amounts that reflect their contributions to the case. *Id*. at ¶ 26. The total amount requested for service awards is $294,000 which is insignificant (0.19%) in light of the substantial Total Settlement Fund ($152.2 million). The Service Award tiers break down as follows: $3,000 (Tier 1); $6,000 (Tier 2); and $9,000 (Tier 3). *Id*. at ¶ 26 (detailed breakdown of tier calculation). All of the EPPs who participated in discovery and provided class standing declarations will receive a service award of $3,000 (Tier 1). *Id*. For the EPPs who sat for deposition as part of the class certification process, the EPPs will seek a higher award of $6,000 (Tier 2). *Id*. at ¶ 27. For the EPPs who were deposed more than once (EPP Drew Gorman), acted as the plaintiff representative in the Bumble Bee bankruptcy proceeding, or were prepared to appear at trial in July, the EPPs will seek an award of $9,000 in recognition of the more significant time, effort and expense devoted to this litigation. *Id*. Finally, three individual plaintiffs from Illinois participated in discovery; to compensate them for their services, the EPPs will request a service award of $1,000 each for a total of $3,000. *Id.* at ¶ 28.

"Empirical evidence shows that incentive awards are now paid in most class suits and average between **$10,000 to $15,000** per class representative." 5 Newberg and Rubenstein on Class Actions, Incentive awards—Generally, § 17:1 (6th ed.). Courts generally look at what services the class representatives have rendered (discovery, depositions, preparation for appearance at trial) and what percentage of the fund requested service awards will constitute (0.19% in this case). The baseline

_____

settlement fund after deducting the expenses and incentive awards).

test is reasonableness. Service awards are "intended to compensate class representatives for work undertaken on behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (internal quotation marks and citation omitted). *See also In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 786 (9th Cir. 2022) (reciting the *Stanton* factors and ultimately finding that "[s]o long as they are reasonable, [service awards] can be awarded"). The requested awards are in line with service awards awarded in other class actions. *See Birch v. Off. Depot, Inc.*, No. 06 CV 1690 DMS (WMC), 2007 WL 9776717, at *2 (S.D. Cal. Sept. 28, 2007) (awarding two named plaintiffs service awards of **$15,000** and **$10,000** respectively).[7]

EPPs' request for Service Awards is reasonable, consistent with other service awards in this district, and easily falls within the range of possible approval.

**E.    Agreements Required to Be Identified Under Fed. R. Civ. P. 23(e)(3)**

All the terms of the proposed settlements are contained within the respective Settlement Agreements attached as Exhibits 1 and 2 to the Manifold Declaration. Plaintiffs have not entered into any additional agreements with any of the Settling Defendants in connection with the proposed settlements.

**IV.    PROPOSED NOTICE AND CLAIMS DISTRIBUTION PROCCESS**

---

[7] *See also In re BofI Holding, Inc. Sec. Litig.*, No. 315CV02324GPCKSC, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) (granting **$15,000** service award after 6 years of litigation where plaintiff "expended 'significant time and effort on the litigation and face[d] the risk of retaliation [and] other personal risks....'" and the service award was .1% of the total $14,100,000 recovery.") and *Winters v. Two Towns Ciderhouse, Inc.*, No. 20-CV-00468-BAS-BGS, 2021 WL 1889734, at *3 (S.D. Cal. May 11, 2021) (grant of incentive awards of **$7,500** for a named plaintiff who "was the first plaintiff in the case, assisted with drafting pleadings, helped with informal discovery, sent the cans of product he had retained to the lab for testing, and attended the mediation that resulted in this settlement," and **$5,000** for a plaintiff who "regularly discussed the case with his lawyers, assisted in informal discovery, helped in drafting the Second Amended Complaint and stayed in touch with his attorneys during settlement discussions.")

Notice will be given to the Settlement Class via email, posting on the Settlement Website, and by digital publication.

## A.   An Experienced and Well-Respected Claims Administrator

The EPPs again retained an experienced and well-respected claims administrator, JND Legal Administration, LLC ("JND"), and prepared a comprehensive and robust settlement notice plan to notify the Settlement Class. The Court previously approved JND as Claims Administrator for the COSI Settlement and to disseminate the Class Notice. ECF Nos. 2734 and 2781. Their prior experience that this case promotes greater efficiency.

EPPs also retained JND to handle the settlement claims process and administration. JND is a nationally recognized claims administration firm that has successfully handled claims processing for complex class actions, including settlements requiring extensive media campaigns to large consumer classes. *See* ECF No. 2552-6 (reciting JND's class action claims administration experience).

## B.   The Proposed Notice Plan Will Reach 70% of the Settlement Class

JND will provide direct notice to Class Members who filed claims in the COSI Settlement, combined with a four-week media campaign that is estimated to reach over 70% of likely Settlement Class Members. Declaration of Gina Intrepido-Bowden ("Intrepido-Bowden Decl."), ¶ 8. The media campaign includes an extensive digital effort, publication in *People* magazine, direct notice, an interactive case website, and a 24-hour toll-free number. *Id.*, ¶¶ 14-23. The FJC's Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide ("FJC Checklist") considers a Notice Plan with a high reach (above 70%) effective. *Id.*, ¶ 7. This is a remarkable reach considering the following challenges: the Settlement Class consists of over 100 million consumers who purchased mostly 5 ounce cans of tuna; the earliest of the purchases took place nearly 10 years ago, from June 1, 2011 through July 1, 2015; records of purchases from retailers have long become stale, if they exist at all; most consumers do not have records of grocery purchases from that

- 13 -

1   long ago; and some Class Members have moved, aged or passed away. Manifold Decl.

2   ¶ 34.

3        **C.**    **The Proposed Form of Notice Is Appropriate**

4          Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to

5   all class members who would be bound by a proposed settlement…" regardless of

6   whether the class was certified under Rule 23(b)(3). Manual for Complex Litigation,

7   § 21.312 (4th ed. 2023). The best practicable notice is that which is "reasonably

8   calculated, under all circumstances, to apprise interested parties of the pendency of

9   the action and afford them an opportunity to present their objections." *Mullan v. Cent.*

10  *Hanover Bank & Tr. Co*., 339 U.S. 306, 314 (1950). The notice must contain specific

11  information in plain, easily understood language, including the nature of the action

12  and the rights of the class members. Fed. R. Civ. P. 23(c)(2)(B)((i)-(vii).

13         The proposed form of the settlement notice complies with Fed. R. Civ. P. 23(c).

14  *See* Intrepido-Bowden Decl., Ex. G (Settlement Class Notice (Long Form)).

15  Consistent with Rule 23(c)(2)(B), the proposed notice describes "(i) the nature of the

16  action; (ii) the definition of the [Settlement] Class certified; (iii) the class claims,

17  issues, or defenses; (iv) [a directive] that a Settlement Class Member may enter an

18  appearance through an attorney if the member so desires; and (v) the binding effect

19  of judgment on members [of the Settlement Class] under Rule 23(c)(3)." Fed. R. Civ.

20  P. 23(c)(2)(B); Intrepido-Bowden Decl., Ex. G. The Settlement Class was given two

21  prior opportunities to request exclusion: at the Class Certification stage, and as part

22  of the COSI Settlement. *See* ECF Nos. 2871, 3120.

23         The Settlement Notice also provides the terms of any proposed award of

24  attorneys' fees, costs, expenses, and service awards and timing, and provides an

25  opportunity for Settlement Class Members to object to either the Settlements or the

26  proposed fees, expenses, and service awards. Intrepido-Bowden Decl., Ex. G at ¶¶ 1-

27  2, 7-8. ***Class Counsel will publish on the Settlement Website and submit full briefing***

28  ***supporting their request for attorney fees' and expenses and service awards a***

- 14 -

***minimum of twenty-one (21) days before the Objection Deadline***. This will allow Settlement Class Members time to consider the motion before the objection deadline.

### D.    The Proposed Distribution Plan

Each Authorized Claimant in the Settlement Class "shall receive a *pro rata* share of the Distribution Funds as described in the Settlement Class Notice."[8] *Id.* ¶ 29, Ex. G, ¶ 7. Payments to Authorized Claimants will not be immediately distributed but held until all settlement amounts have been paid by the Settling Defendants as required by the Settlement Agreements. *See also* Intrepido-Bowden Decl., ¶ 41. It is not efficient to make multiple distributions, with the costs of claims administration, it is more efficient to delay distribution until all settlement funds are received.[9] *Id.*

Once the Court grants final approval of the StarKist and LC Settlements, all appeals are exhausted, and all monies are collected under the Settlement Agreements, JND will distribute payments as specified on the claimant's Claim Form. *See* Intrepido-Bowden Decl. ¶ 32, Ex. H (Claim Form). JND will send payments to the address (check) or email (electronic payment such as via PayPal) provided by the claimant on the Claim Form. *Id.* As noted on the Claim Form (and Settlement Class Notices), if the total final payment of a particular claim is less than $5.00, no distribution will be made to the Authorized Claimant. *Id.* ¶ 33, Ex. H, Ex. G, ¶ 8 (**"What can I get from the StarKist and LC Settlements?"**). It is typical to provide for such a *de minimis* claim threshold so that the costs of administration are not out of proportion to the size of the payments. *Id.*

### E.    The Claims Process: Access to Online Submission of Claim Forms

---

[8] "Distribution Funds" refers to the Total Settlement Benefits ($152.2 million), less notice and administration costs, and any attorneys' fees, cost and litigation expenses and Service Awards awarded by the Court.

[9] Settlement Class Members are expected to receive approximately $24.50 for every 200 cans purchased (approximate number of cans if you purchased packaged tuna weekly) Intrepido-Bowden Decl., Ex. G, ¶ 8.

- 15 -

The digital ads will include an embedded link and the print ad a QR code, both of which allow Settlement Class Members to receive more information about the StarKist and LC Settlements as well as complete and file an online Claim Form. Intrepido-Bowden Decl., ¶¶ 16, 24, Ex. H (Claim Form). The same claims process was approved by the Court in the COSI Settlement. ECF No. 2781. The Settlement Notice documents also provide a toll-free number to contact JND with any questions. *Id.* at Ex. H. According to Ms. Intrepido-Bowden, Vice President at JND Legal Administration and a judicially recognized legal notice expert, claimants "generally favor online claims forms" because the process is user-friendly and convenient. *Id.*, ¶¶ 1-2, 25-26. Online claim processing is faster, easier, more efficient, and results in fewer deficiencies. *Id.* at ¶25. If a Settlement Class Member is either unable or unwilling to file a claim on-line, she may request a printed claim form and either return it to JND via United States Mail (post-marked before the Claims Cut-off Date) or create a pdf of the completed Claim Form and e-mail it to JND (before the Claims Cut-off Date). *Id.*, ¶ 27-28.

Next, JND will review, determine the validity of, process and hold on to all Claim Forms submitted by claimants. *Id.*, ¶ 31. JND will flag any issues (such as failure to sign a paper or pdf Claim Form) and follow up with the claimant as necessary. *Id.* JND will also review the Claim Forms to ensure submission by a single claim per claimant. *Id.* (avoiding doctored documentation and multiple payments to a single recipient).

F.   **Objection Rights**

Class Members may object to the settlement by filing an appropriate and timely written statement of the grounds for objection. Intrepido-Bowden Decl., ¶ 39, Ex. G at ¶ 12-13. They may also appear at the Fairness Hearing. *Id.* at ¶ 39, Ex. G at 16-18. Attorneys for objectors must submit an appropriate and timely written statement of representation and the grounds for objection. *Id.* at ¶ 39.

G.   **No Further Exclusion or Opt-Out**

1       Due process only requires that class members be given a single opportunity to
2   opt out of a class. *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018). A
3   member who has failed to exclude herself at the class certification stage is not entitled
4   to exercise that option at the settlement stage. *Id.*, citing *Officers for Just. v. Civ. Serv.*
5   *Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 635 (9th Cir. 1982). Here,
6   Settlement Class Members were given two prior opportunities to request exclusion.
7   *See* ECF Nos. 3120 (Order re: Class Notice Opt Out Report); 2871 (Order re: COSI
8   Settlement). Two opportunities satisfies class members' due process rights.

9   **V.    ARGUMENT**

10      The Court's approval is required for any settlement of a class action. *Carlin v.*
11  *DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) (citing Fed. R. Civ.
12  P. 23(e)). There are multiple steps to the approval process. *Id*. First, the Court must
13  determine whether the settlement warrants preliminary approval. *Id*. Preliminary
14  approval is appropriate if the Court determines that it is likely to (i) certify the
15  settlement class and (ii) grant final approval to the settlement. Fed. R. Civ. P.
16  23(e)(1)(B). Since the Court previously certified the Consumer Classes, which are
17  now the Settlement Class in the proposed settlements, minus prior opt-outs,
18  certification of the Settlement Class is appropriate for all of the reasons set forth in
19  the Class Order. *See* ECF No. 1931, upheld on appeal in *Olean Wholesale Grocery*
20  *Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 684-685 (9th Cir.), cert. denied
21  sub nom. *StarKist Co. v. Olean Wholesale Grocery Coop., Inc., et al.*, 143 S. Ct. 424
22  (2022). If the Court grants preliminary approval, then it must order that settlement
23  notice be given to the prospective class members. *Carlin*, 380 F. Supp. 3d at 1008.
24  Once notice is complete, the Court must hold a fairness hearing to determine whether
25  final approval is warranted.

26      **A.    The Court is Likely to Approve the Settlement**

27      The Court must consider whether it is likely to approve the settlements at the
28  fairness hearing. Fed. R. Civ. P. 23(e)(1)(B)(i). In making this assessment, the Court

need not conduct a full-fledged inquiry into whether it would grant final approval to the Settlement. Instead, the Court need only consider whether the proposed Settlement is "possibly fair, reasonable, and adequate." *See In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 610 (9th Cir. 2018) ("*VW Clean Diesel Mktg. Litig.*") ("A proposed settlement that is 'fair, adequate and free from collusion' will pass judicial muster."). A court should grant preliminary approval of a settlement if it determines that "the proposed settlement is within the range of possible approval." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.,* No. 07 C 5 2898, 2011 WL 3290302, at *6 (N.D. Ill. July 26, 2011); Fed. R. Civ. P. 6 23(e)(1)(B).

The Ninth Circuit has identified the following factors, commonly referred to as the *Churchill Village* factors, in assessing whether a class settlement is fair:

(1) the strength of the plaintiff's case;

(2) the risk, expense, complexity, and likely duration of further litigation;

(3) the risk of maintaining class action status throughout the trial;

(4) the amount offered in settlement;

(5) the extent of discovery completed and the stage of the proceedings;

(6) the experience and views of counsel;

(7) the presence of a governmental participant; and

(8) the reaction of the class members to the proposed settlement.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("*In re Bluetooth*") (quoting *Churchill Vill., L.L.C. v. Gen. Elec., Co.,* 361 F.3d 566, 575 (9th Cir. 2004)); *Chen v. Chase Bank USA, N.A.*, No. 19-cv-01082, 2020 WL 3432644, at *4 (N.D. Cal. June 23, 2020). Rule 23(e)(2) also requires courts to consider whether: (1) class representatives and counsel have adequately represented the class; (2) the proposal was negotiated at arm's-length; (3) the settlement provides adequate relief for the class; and (4) the proposal "treats class members equitably relative to each

other." These factors are not exclusive. This Court may consider any combination of factors that it deems appropriate to assess the fairness of the settlement. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (discussing *Churchill Village* factors); *Chen,* 2020 WL 3432644, at *4 (noting that "different factors may predominate in different factual contexts"). The totality of the factors show that these Settlements are well within the range of possible approval.

### 1.     The *Churchill Village* Factors Favor Preliminary Approval

Under the first *Churchill Village* factor, this Court considers the strength of plaintiffs' case. *See* Fed. R. Civ. P. 23(e)(2)(C). This includes the difficulty of prevailing at trial, "prevailing on appeal, as well as the difficulty of satisfying any judgment in favor of the class." *Carlin,* 380 F. Supp. 3d at 1009. In considering this factor, the Court need not reach "any ultimate conclusion about" the case, "for it is the very uncertainty of outcome" and avoiding more litigation "that induce consensual settlements." *Bravo v. Gale Triangle, Inc.,* No. CV 16-03347 BRO (GJSx), 2017 WL 708766, at *9 (C.D. Cal. Feb. 16, 2017). As discussed in Section II. A. above, the case against the Settling Defendants regarding liability is strong. EPPs must, however, balance the strength of their case against the second *Churchill* factor: the risk, expense, complexity and delay of further litigation such as the risks of an adverse verdict at trial and further appeal. Fed. R. Civ. P. 23(e)(2)(C)(i). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive trial with uncertain results as to specific damages." *Bravo*, 2017 WL 708766, at *9 (internal quotations and citation omitted).

Notwithstanding the guilty pleas, criminal convictions and partial summary judgment, Consumers still needed to prove their damages at trial. EPPs also needed to prove the extent of the conspiracy and whether DWI and LC were liable along with StarKist. Proving liability and class-wide damages for the entire Class Period would inevitably result in a lengthy and costly 'battle of the experts' at trial. Even if successful at trial, with potential treble damages of over $600 million, the Settling

- 19 -

Defendants may not have been able to sustain a verdict of that size. Bumble Bee had already declared bankruptcy, leaving a shell from which no recovery could be achieved. All of these facts weigh in favor of preliminary approval.

The third factor, the risk of maintaining class certification through trial, also weighs in favor of preliminary approval. *In re Bluetooth*, 654 F.3d at 946; *Bellinghausen*, 306 F.R.D. at 255 (citing risk of maintaining certification "if the litigation were to proceed"); *Chen*, 2020 WL 3432644, at *4 (same). Class certification was hotly contested. The Class Order was appealed to Ninth Circuit, it was reviewed *en banc*, and an appeal to the Supreme Court was made. The risk of further appeal after trial weighs in favor of approval.

The fourth *Churchill Village* factor, the amount obtained, also supports preliminary approval. *See also* Fed. R. Civ. P. 23(e)(2)(C). The Total Settlement Benefits must be viewed in light of the limits on potential recovery. Regression modeling by the EPPs' expert, Professor David Sunding, shows single damages equal to $224 million.[10] Trebled, this is approximately $672 million. Based on the maximum single damages of $224 million for the entire conspiracy period, a total settlement recovery of $152.2 million is nearly 68% of the maximum single damages and over 20% of the maximum treble damages. "Maximum" damages are based on several assumptions: the jury believes the EPPs' damages expert (not the Settling Defendants' expert); and the jury awards full damages for all states. Settling Defendants repeatedly called the EPPs' damage analysis an incredible "over-reach" by the Consumers. EPPs faced substantial risks at trial.

These proposed settlements compare favorably with other antitrust and class action settlements that have received preliminary approval. In *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948 (9th Cir. 2009), the Court of Appeals upheld approval of an antitrust settlement that was only 30% of the calculated single damages as fair, reasonable, and adequate. *Id.* at 955, 957, 964. *See also In re Lithium Ion Batteries*

---

[10] *See* Expert Merit Report of David Sunding dated Feb. 15, 2019, p. 17, Table 2.

*Antitrust Litig.*, No. 4:13-md-02420-YGR (DMR), 2017 WL 1086331, at 4* (N.D. Cal. Mar. 20, 2017) (Overruling objections, the Court agreed that "the settlement represents 11.2% of the single damages attributable to Sony sales" and that the possibility of the settlement being higher does not mean it was not fair and reasonable.); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2017 WL 565003, at *4, *6 (N.D. Cal. Feb. 13, 2017) (granting preliminary approval of settlement representing 24% of single damages, and previously finding 20% of single damages to be a good recovery in other cases.)

The fifth and sixth *Churchill Village* factors also support preliminary approval. This litigation began over nine years ago and was settled on the eve of trial. Because of the procedural posture of this case, EPPs were in the best position to evaluate the value of the Settlements. *See Bravo*, 2017 WL 708766 at *11 (finding that extensive discovery shows that counsel fully understand case's factual and legal issues). Furthermore, EPPs are represented by Settlement Class Counsel with substantial experience in litigating and evaluating antitrust class actions. Manifold Decl., ¶ 3. Counsel is ready and able to try this case to verdict but believe this to be an excellent settlement under the circumstances and support its approval. *Id*. Their views and experience also weigh in favor of approval.

The final two *Churchill Village* factors – the presence of a governmental participant and the Class Members' reactions – need not be considered at this time. While the DOJ brought criminal charges, it did not seek restitution in any of its cases. The Settlement Agreement(s) require the Defendants to serve CAFA notices on DOJ and any relevant states, providing them the opportunity to "raise any concerns that they have during the normal course of the class action settlement procedures." *Bellinghausen*, 306 F.R.D. at 258; Manifold Decl. ¶ 40; *see also Procedural Guidance for Class Action Settlements* § 10 (CAFA compliance). Settlement Class Members will also have the opportunity to object and provide feedback at the Fairness Hearing. The Court can therefore defer consideration of the final two *Churchill Village* factors

1    until the Fairness Hearing.

2           **2.      The Rule 23(e) Factors Support Preliminary Approval**

3           As noted above, in addition to the *Churchill Village* factors, Rule 23(e)(2)

4    requires courts to consider whether: (1) class representatives and counsel have

5    adequately represented the class; (2) the proposal was negotiated at arm's-length;

6    (3) the settlement provides adequate relief for the class; and (4) the proposal "treats

7    class members equitably relative to each other."

8           First, after nine years of hard-fought litigation with the active participation of

9    the Class Representatives throughout, they and Counsel have adequately represented

10   the Settlement Class. *See also* ECF No. 1931 (Class Order).

11          Second, considering whether the Settlement resulted from arm's-length

12   negotiations, courts often find it useful to look at issues including "an agreement by

13   the defendant not to contest class counsel's attorney's fees" or "an agreement to allow

14   unawarded attorneys' fees to revert to the defendants." *In re Volkswagen "Clean*

15   *Diesel" Mktg. Litig.*, 895 F.3d at 611 & n.19 (citing *In re Bluetooth*, 654 F.3d at 947);

16   *Procedural Guidance for Class Action Settlements*, §1(h). Here, the fees are within

17   the range requested for similar cases and there is no reversion or "clear sailing"

18   agreement with the Settling Defendants. *See* StarKist SA, ¶ 14.1, ¶ 14.2, ¶ 14.3.

19   Therefore, these concerns are moot. The extensive settlement negotiations supervised

20   by Magistrate Berg on the eve of trial and the terms of the Settlement Agreements

21   make clear that the proposed settlements are <u>not</u> the result of collusion. Manifold

22   Decl., ¶¶ 3-8, 17-24.

23          Third, the amount recovered ($152.2 million) is more than adequate based on

24   its equivalence to nearly 68% of the maximum single damages as calculated by the

25   EPPs' damages expert. *Id.* Taking into account the substantial trial costs (multiple

26   experts, IT Support, and other logistics such the EPPs' travel expenses) along with

27   the very real risks of taking an antitrust case to verdict, long post-trial appeals, and

28   collectability issues, the proposed settlements provide adequate relief. *See* Fed. R.

Civ. P. 23(e)(2)(C)(i). The effectiveness of distributing relief to the Settlement Class Members is discussed in Section D below. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Settlement Notices and Settlement Website will provide substantial detail as to the terms of the requested attorneys' fees, costs, expenses and service awards, including the timing of payment. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii); Intrepido-Bowden Decl., Exs. A-G (various forms of settlement notice), and § III. C. and IV. C., *supra*. All short form settlement notices provide links to access these terms in further detail. *Id*. Next, all agreements made "in connection with" the settlement proposal have been identified. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) and (3); *See* § III. F., *supra*.

Finally, the Settlement Agreements treat class members equitably, providing *pro rata* distribution of the Settlement Fund after deduction of any Court-ordered awards. Therefore, the StarKist and LC Settlement Agreements satisfy Rule 23(e).

### B. EPPs' Settlement Class Notice Provides the Opportunity to Object, and Class Members Had Two Prior Opportunities for Exclusion.

The Court must also assess whether the notice and claims program is reasonable so Class Members can object to the Settlement. *See* Fed. R. Civ. P. 23(e)(4)-(5). The Court previously certified this class action under Rule 23(b)(3) and notice was provided, a partial settlement was reached with COSI and second opportunity to opt out was provided, and therefore the EPPs have not elected to afford individual Class Members a new opportunity to request exclusion if they did not do so previously. *See* Intrepido-Bowden Decl., Ex G at ¶ 11 (Settlement Notice); § III. F., *supra*.

The Settlement Notice also explains the objection process to Settlement Class Members and informs them that they may appear at the Fairness Hearing or retain counsel to represent their interests. Intrepido-Bowden Decl., Ex G at ¶¶ 12-17. Class members may appear at the Fairness Hearing or submit a timely and appropriate written statement through counsel. *Id*. at ¶¶ 16-18. JND's notice plan is robust with a 70% reach and satisfies due process. Intrepido-Bowden Decl., ¶ 38. The notice, objection and previous opt out procedures are also sufficient to satisfy Rule 23.

### C. The Costs of Administration

Given its depth of reach, and the need to reach tens of millions of Settlement Class Members, the Proposed Settlement Notice Plan is not inexpensive. Manifold Decl., ¶ 39. JND estimates that the Proposed Settlement Notice Plan will cost approximately $750,000 to $1.2 million. Manifold Decl., ¶ 40. As part of the preliminary approval order, the EPPs will request permission to pay up to $1.2 million in reasonable invoices submitted by the Claims Administrator for the media campaign in the Proposed Settlement Notice Plan prior to final approval. *Id*. ¶ 39.

JND is also well placed to distribute the settlement funds to the Class when directed to do so by the Court. EPPs seek to delay distribution until all the monies are collected as specified in the Settlement Agreements. Distributing all the Settlement Funds together will reduce the need for multiple rounds of payment and therefore the administrative cost per Class Member, resulting in larger payments to each Class Member. Depending on the number of claims received, a preliminary estimate of the costs of processing claims, running fraud analysis and dispersing the Distribution Funds is between $1.3 and $5 million. Manifold Decl., ¶ 41.

### D.   EPPs' Claims Process Is Efficient and Reasonable

The Court must also assess the effectiveness of the proposed method of distributing relief to the class including the method of processing class member claims to determine if the relief is adequate. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). JND has extensive experience in processing claims, especially for millions of claimants. JND also has the capacity to distribute monies efficiently to millions of Authorized Claimants once the Court grants final approval, the judgement is final and all appeals exhausted, and the Court orders distribution. As discussed in detail above, JND described its proposed methodologies for claims processing and distribution of funds. *See* Intrepido-Bowden Decl., ¶¶ 24-40 and § IV.D.-E., *supra*. The proposed claims processing methodologies are convenient for and generally favored by Settlement Class Members (simple online claim submission), which provides faster claim processing with fewer deficiencies. *Id*. ¶ 32. Distribution of relief is equally efficient

and based on the claimant's preferred method of payment (PayPal or check). *Id.* The effectiveness of JND's claim processing methodologies favor preliminary approval.

The Class Notices also inform Settlement Class Members that no cash distribution will be made if a claim is under $5.00. Intrepido-Bowden Decl., ¶ 33. It is typical to provide for a *de minimis* threshold so that the costs of administration are not out of proportion to the size of the claim payment. *Id.* A claims threshold provides an incentive for Settlement Class members to cash small checks. *Id.* In JND's experience, it is not usual to see even higher *de minimis* thresholds. *Id.*

Courts routinely approve *de minimis* thresholds for claims processing and distribution and consider threshold payments to be "accepted as a feature of class action distributions." *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. C 06-4333 PJH, 2013 WL 12333442, *81 (N.D. Cal. Jan. 8, 2013).

**E.    The Court Should Order Notice and Schedule the Fairness Hearing**

Because preliminary approval is in order, the Court should order that notice be given and schedule a Fairness Hearing. EPPs ask the Court to adopt and set the deadlines set forth in the Appendix attached directly to this Memorandum.

Dated: August 13, 2024          By:   */s/ Bets C. Manifold*
                                      BETSY C. MANIFOLD

                                **WOLF HALDENSTEIN ADLER**
                                 **FREEMAN & HERZ LLP**
                                BETSY C. MANIFOLD
                                RACHELE R. BYRD
                                ALEX J. TRAMONTANO
                                750 B Street, Suite 1820
                                San Diego, CA 92101
                                Telephone:   619/239-4599
                                Facsimile:   619/234-4599
                                manifold@whafh.com
                                byrd@whafh.com
                                tramontano@whafh.com

                                **WOLF HALDENSTEIN ADLER**
                                 **FREEMAN & HERZ LLP**
                                MARK C. RIFKIN
                                THOMAS H. BURT
                                270 Madison Avenue

- 25 -

1
2
3

New York, New York 10016
Telephone:  212/545-4600
Facsimile:   212/545-4653
rifkin@whafh.com
burt@whafh.com

4
5

**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLC**
CARL MALMSTROM

6
7
8

111 West Jackson, Suite 1700
Chicago, IL 60604
Telephone: 312/984-0000
Facsimile:   312/212-4401
malmstrom@whafh.com

9

*Class Counsel for the End Payer Plaintiffs*

10

4876-6193-0964v2

11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

- 26 -

*In Re: Packaged Seafood Products Antitrust Litigation*, Case No. 15-MD-2670 DMS (MSB)

## Proposed Notice and Final Approval Deadlines

| Date | Deadline/Event | Timing |
|---|---|---|
| Friday August 23, 2024 | Preliminary Approval Hearing | Preliminary Approval Granted ("Preliminary Approval Order")* |
| Friday, Sept. 13, 2024 | Deadline to begin disseminating Settlement Class Notice | 21 days after entry of Preliminary Approval Order |
| Friday, Oct. 4, 2024 | Deadline for EPPs to file Motion for Attorneys' Fees and Costs | 7 days prior to deadline for completion of disseminating Settlement Class Notice; and 21 days prior to Objection Deadline |
| Friday, Oct. 11, 2024 | Deadline to complete dissemination of Settlement Class Notice | 49 days after entry of Preliminary Approval Order |
| Friday, Oct. 18, 2024 | Deadline for filing affidavit attesting that Settlement Class Notice was disseminated as ordered | 56 days after entry of Preliminary Approval Order |
| Friday, Oct. 25, 2024 | Deadline for Settlement Class Members to object to the Settlement ("Objection Deadline") | 14 days after deadline to complete dissemination of Settlement Class Notice |
| Friday, Nov. 8, 2024 | Deadline for EPPs to file a motion for final approval. | 14 days before Objection Deadline |
| Tuesday, Nov. 12, 2024 | Deadline for Settlement Class Members to submit claims | 60 days after Settlement Class Notice dissemination begins |
| Friday, Dec. 6, 2024 | Fairness Hearing | 105 days after entry of Preliminary Approval Order |

# Appendix

*Assumes Preliminary Approval on August 23, 2021 hearing date for purposes of calculation.