Michael P. Lehmann (Cal. Bar No. 77152)
Christopher L. Lebsock (Cal. Bar No. 184546)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: clebsock@hausfeld.com

*Class Counsel for the Direct Purchaser Plaintiffs
Class*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS (MSB) |
| | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS** |
| This document relates to: | DATE:      August 23, 2024 |
| Direct Purchaser Plaintiff Class Action Track | TIME:      1:30 P.M. |
| | JUDGE:    Dana M. Sabraw |
| | CTRM:     13A |

# **TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................. 1

II.   BACKGROUND ............................................................................................... 4

  A.   History of the Litigation ............................................................. 4

  B.   The Settlement Agreements.......................................................... 7

  C.   Notice and Claims Process .......................................................... 8

III.   LEGAL STANDARD .................................................................................. 10

IV.   ARGUMENT................................................................................................. 10

  A.   The Proposed Settlement Class Satisfies the Requirements of Rules 23(a) and (b)(3). ................................................................................................................. 10

  B.   The Proposed Settlements Are Fair Under Rule 23(e). ................................... 15

    1.   The Class Representatives and Class Counsel have adequately represented the Class. ..................................................................................................... 16

    2.   The Parties negotiated the proposed Settlement at arm's length. .............. 16

    3.   The quality of relief to the Class weighs in favor of approval. .................. 17

      a.   Costs, risks, and delay of trial and appeal................................................ 18

      b.   The effectiveness of any proposed method of distributing relief to the Class. ................................................................................................................. 18

      c.   The method for processing claims........................................................... 20

      d.   Proposed award of attorneys' fees, including timing of payment............ 21

      e.   Any agreement required to be identified under Rule 23(e)(3). ................ 21

    4.   The Settlement treats all Settlement Class Members equitably. ................ 21

  C.   The Proposed Notice Is the Best Practicable Under the Circumstances. ........ 22

D.   CAFA Notice. ................................................................................................ 24

E.   Service Awards. ............................................................................................ 24

V.  CONCLUSION ................................................................................................ 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Capital S'holder Derivative Litig.*,
No. CIV. 11-2424, 2013 WL 3322294 (D. Md. June 28, 2013) ........................ 17

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......................................................................................... 14

*Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .......................................................................................... 14

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007) ............................................................... 18

*Bellows v. NCO Fin. Sys., Inc.*,
No. 3:07-cv-01413, 2008 WL 5458986 (S.D. Cal. Dec. 10, 2008) ................... 14

*Birch v. Office Depot*,
No. 06 CV 1690, 2007 WL 9776717 (S.D. Cal. Sept. 28, 2007) ...................... 24

*In re BofI Holding, Inc. Sec. Litig.*,
No. 3:15-CV-02324, 2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) .................. 22

*Boyd v. Bank of Am. Corp.*,
No. 13-cv-0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ....................... 22

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
308 F.R.D. 606 (N.D. Cal. 2015) ........................................................... 10, 12, 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. 14-CV-2058, 2017 WL 2481782 (N.D. Cal. June 8, 2017) ....................... 20

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ................ 14

*Four in One Co. v. S.K. Foods, L.P.*,
No. 2:08-CV-3017, 2014 WL 4078232 (E.D. Cal. Aug. 14, 2014) .................. 20

*Harris v. Vector Mktg. Corp.*,
No. 08-cv-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ........................... 22

*Hawaii v. Standard Oil Co. of Cal.*,
   405 U.S. 251 (1972)..................................................................................10

*In re High-Tech Emp. Antitrust Litig.*,
   985 F. Supp. 2d 1167 (N.D. Cal. 2013)..............................................11, 12, 15

*In re High-Tech Emp. Antitrust Litig.*,
   No. 11-CV-02509, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015) ....................20

*Howell v. Advantage RN, LLC*,
   No. 17-CV-883, 2020 WL 3078522 (S.D. Cal. June 9, 2020) ..........................18

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ..............................................................10, 11, 15

*Jabbari v. Farmer*,
   965 F.3d 1001 (9th Cir. 2020) ................................................................15

*In re Korean Ramen Antitrust Litig.*,
   No. 13-CV-04115, 2017 WL 235052 (N.D. Cal. Jan. 19, 2017) ......................12

*Lamb v. Bitech, Inc.*,
   No. 3:11-cv-05583, 2013 WL 4013166 (N.D. Cal. Aug. 5, 2013) ....................24

*Lo v. Oxnard European Motors, LLC*,
   No. 11CV1009, 2011 WL 6300050 (S.D. Cal. Dec. 15, 2011) ..................11, 12

*Messner v. Northshore Univ. HealthSystem*,
   669 F.3d 802 (7th Cir. 2012) ............................................................14

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*,
   311 F.R.D. 532 (N.D. Cal. 2015) ........................................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)........................................................14

*Nitsch v. Dreamworks Animation SKG Inc.*,
   315 F.R.D. 270 (N.D. Cal. 2016) ......................................................11, 14, 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ................................................................7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   5 F.4th 950 (9th Cir. 2021) ..................................................................7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   993 F.3d 774 (9th Cir. 2021) .................................................................. 6

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC et al.*,
   No. 15-cv-01714 (S.D. Cal., Aug. 3, 2015), ECF No. 1 ...................... 4

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................... 20

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ............................................................... 17

*In re Portal Software Sec. Litig.*,
   No. C-03-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) .......... 13

*Radcliffe v. Experian Info. Sols., Inc.*,
   715 F.3d 1157 (9th Cir. 2013) ............................................................. 17

*Reiter v. Sonotone Corp.*,
   442 U.S. 330 (1979).............................................................................. 10

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) .............................................. 16, 18, 22

*Ross v. Trex Co.*,
   No. 09-00670, 2013 WL 791229 (N.D. Cal. Mar. 4, 2013) ............... 23

*Sali v. Corona Reg'l Med. Ctr.*,
   889 F.3d 623 (9th Cir. 2018) ........................................................ 11, 12

*Santillan v. Verizon Connect, Inc.*,
   No. 3:21-cv-1257, 2024 WL 627998 (S.D. Cal. Feb. 13, 2024)......... 25

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
   264 F.R.D. 603 (N.D. Cal. 2009) ........................................................ 12

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008) ............................................................. 10

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
   267 F.R.D. 583 (N.D. Cal. 2010) ........................................................ 12

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) .............................................................. 10

*Villegas v. J.P. Morgan Chase & Co.*,
    No. CV 09–00261, 2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ...................16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    895 F.3d 597 (9th Cir. 2018) ..................................................................15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
    No. 2672, 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ...........................13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ...................................................................18

*In re Zynga Inc. Sec. Litig.*,
    No. 12-cv-04007, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)....................16

**Statutes**

Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.*............................................24

Sherman Act .....................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 23(c)(2) ......................................................................................24

Fed. R. Civ. P. 23(c)(2)(B).............................................................................22, 23

Fed. R. Civ. P. 23(e)(1) .................................................................................10, 22

Fed. R. Civ. P. 23(e)(1)(B).............................................................................10, 22

Fed. R. Civ. P. 23(e)(2)(A)................................................................................16

Fed. R. Civ. P. 23(e)(2)(B)................................................................................16

Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3)................................................................21

Fed. R. Civ. P. 23(e)(2)(D)...............................................................................21

Fed. R. Civ. P. 23(f) ..........................................................................................6

## I.   INTRODUCTION

The Direct Purchaser Plaintiffs ("DPPs") hereby submit their motion for preliminary approval of proposed Settlements between DPPs and Defendants StarKist Co. and Dongwon Industries Co., Ltd. (collectively "StarKist and DWI") and Defendant Lion Capital (Americas), Inc. and Specially Appearing Defendants Lion Capital LLP and Big Catch Cayman LP (collectively the "Lion Companies") (collectively with the DPPs, the "Parties"), which are memorialized in the Settlement Agreements Between Direct Purchaser Plaintiffs and StarKist and DWI and the Lion Companies (the "Settlement Agreements").[1] *See* Declaration of Erika A. Inwald ("Inwald Decl."), Exs. A, B.

In 2015, the DPPs filed the first lawsuit alleging a price-fixing conspiracy in the packaged tuna industry. Following nine years of hard-fought litigation, the DPPs, StarKist and DWI, and the Lion Companies have executed the proposed Settlement Agreements.[2]

The proposed Settlements provide fair compensation to the Settlement Class. The Settlement Class has previously obtained a settlement of $13,001,961.86, net of fees and costs, from COSI and TUG. *See* ECF No. 3011.[3] Now, StarKist and DWI have agreed to contribute an additional sum of $58,750,000 in cash and product to the Settlement Class, which will include the payment of $32,650,000 in cash as follows: StarKist and DWI will deposit One Million Dollars ($1,000,000.00) in United States

---

[1] Big Catch Cayman LP was previously dismissed from the Action by the Court with prejudice. ECF No. 3103.

[2] The Court has previously granted final approval to a Settlement Agreement between DPPs and Tri-Union Seafoods LLC d/b/a Chicken of the Sea International ("COSI") and its parent company, Defendant Thai Union Group PCL ("TUG"). *See* ECF No. 3011.

[3] The Court separately approved an arbitrator's award of fees and costs to Class Counsel in the amount of $1,539,363.29 (fees) and $4,410,636.71 (costs). *See* ECF No. 3012. This award constituted a small fraction of the total expenditure of fees and advanced costs made by Class Counsel over the course of nine years of this litigation.

currency into the Escrow Account within five (5) days after preliminary approval by the Court, Fifteen Million Eight Hundred and Twenty-Five Thousand Dollars ($15,825,000.00) in United States currency into the Escrow Account within 120 days after final approval by the Court, and Fifteen Million Eight Hundred and Twenty-Five Thousand Dollars ($15,825,000.00) in United States currency into the Escrow Account by no later than December 1, 2025. Inwald Decl., Ex. A. The Settlement Class will also be entitled to a pro rata share of $26,100,000.00 in packaged tuna product, which shall be redeemed over the course of no more than three (3) years following the Final Approval of the StarKist and DWI Settlement or following ninety (90) days after the Settlement Administrator provides StarKist with the pro rata allocation of the Product Component of the Settlement, whichever is later. *Id.* Settlement Class Members will be able to place an order for any StarKist-branded products on StarKist's national price list in effect on the date that they place their order to redeem their pro rata share of StarKist Products. *Id.* StarKist Products will be delivered FOB destination point to each Settlement Class Member who makes a claim and places an order, freight pre-paid to a single agreed shipping address within the continental United States for that claimant, provided that the claimant shall pay the standard shipping costs for any shipments that are made in less than full truckloads if more than one order for StarKist Products is placed for its allocated share of the Product Component. *Id.*

In addition, the Lion Companies will contribute an additional $6,000,000.00 dollars to the Settlement Class as follows: The Lion Companies will deposit Two Hundred Thousand Dollars ($200,000.00) in United States currency into the Escrow Account within five (5) days after preliminary approval, Two Million Eight Hundred Thousand Dollars ($2,800,000.00) in United States currency into the Escrow Account within thirty (30) days after preliminary approval, and Three Million Dollars

($3,000,000.00) in United States currency into the Escrow Account within forty-five (45) days after final approval. *Id.*, Ex. B.

In total, considering the COSI/TUG, the StarKist and DWI, and the Lion Settlements, the Settlement Class will have recovered $83,701,961.86 from the Defendants in this litigation, which is an excellent result given that StarKist and DWI and the Lion Companies were prepared to dispute the scope, duration, and effectiveness of the conspiracy. *See, e.g.*, Inwald Decl., Ex. D (May 22, 2024 Hearing Transcript) at 79:24-80:6 (StarKist's counsel: "In our view that means that the questions that remain for trial are limited: were DWI and the Lion Companies involved in a conspiracy? Did they consciously commit to a common scheme to achieve an unlawful purpose, as Monsanto says? Were private label products involved in the conspiracy? Did the conspiracy end in 2013 when Mr. Hodge was fired? Were Plaintiffs injured? Those are really the issues that remain for the jury[.]").[4] While, Class Counsel was confident in their position, trials are risky, and there is no certainty as to what a jury would decide. There was the additional practical reality that liability was disputed by the Lion Companies and by DWI, and that collection of a large judgment would be highly uncertain given that StarKist does not have assets sufficient to cover the financial exposure of the DPPs' and the remaining plaintiffs' claims, and that DWI and the Lion Companies do not have assets in the United States that could be attached. Moreover, the Lion Companies are in the process of winding down their business operations and do not have substantial assets available to resolve the claims against them. *See* Inwald Decl. ¶ 12. All these factors indicated that the reasonable

---

[4] Pursuant to Federal Rule of Civil Procedure 23(e)(2)(C), Class Counsel further notify the Court that Class Counsel has reached a separate agreement with StarKist and DWI that will provide compensation to Class Counsel for the work that they did coordinating the litigation efforts of the four litigation tracks established in this multidistrict litigation, including that of the companies that opted out of the DPP Class. *See* Inwald Decl., Ex. C (filed under seal). The negotiation of this agreement was supervised by the Hon. Michael S. Berg.

Settlements achieved here were preferable to the uncertainty of trial and post-judgment collection.

The total compensation obtained by the Settlement Class as a percentage of the potential damages that they suffered far surpasses the amounts obtained by any other group of plaintiffs. As just one example, the largest Direct Action Plaintiff ("DAP"), Wal-Mart, with approximately 20% of the total amount of packaged tuna purchased during the class period, obtained a settlement with StarKist and DWI, of $20.5 million based on a combination of cash and "commercial terms." *See* Inwald Decl. ¶ 13. By contrast, the DPPs, whose purchases constituted approximately 20% of the packaged tuna purchases during the class period, are receiving $58.75 million in cash and product from StarKist and DWI. *See id.*

It bears noting that the Settlement negotiations involved informal discussions between the Parties' counsel over the course of many years, and recently were supervised by Judge Berg, whose steady hand and persistence substantially assisted in the pretrial resolution of this litigation. *See id.* ¶ 18.

The deductions from the Settlements will be for notice and administration of the Settlements, which is not expected to exceed $850,000, reimbursement of Class Counsel's fees and costs, and $12,500 service awards for the following class representatives: Olean Wholesale Grocery Cooperative, Inc. ("Olean"), Piggly Wiggly Alabama Distributing Co., Inc., Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc., Trepco Imports and Distribution Ltd., Pacific Groservice Inc. d/b/a PITCO Foods, and Benjamin Foods LLC, if approved by the Court.

## II.    BACKGROUND

### A. History of the Litigation

The DPPs' initial suit, filed in August of 2015, alleged an antitrust conspiracy by COSI, Bumble Bee Foods LLC ("Bumble Bee"), and StarKist, and their parent companies to fix and maintain prices. *See Olean Wholesale Grocery Coop., Inc. v.*

*Bumble Bee Foods LLC et al.*, No. 15-cv-01714 (S.D. Cal., Aug. 3, 2015), ECF No. 1. The DOJ also conducted a criminal investigation into price-fixing in the packaged tuna industry. *Id.* ¶ 17. As a result of that investigation, COSI admitted Sherman Act violations, sought leniency (thereby admitting criminal liability),[5] and cooperated with both the DOJ and civil claimants by providing evidence against StarKist and Bumble Bee. Inwald Decl. ¶ 14.

Multiple civil actions relating to this conspiracy were consolidated in a multidistrict litigation for centralized pretrial proceedings before this Court on December 9, 2015. *See* Transfer Order, ECF No. 1. Early in this multidistrict litigation, the Court divided Plaintiffs into four tracks: (1) the DPPs; (2) the DAPs, who were direct purchasers, and consist of mainly large retailers or wholesalers, proceeding individually against Defendants; (3) the Commercial Food Preparers ("CFPs"), who were indirect purchasers proceeding on behalf of a proposed class; and (4) the End Payer Plaintiffs ("EPPs"), who were indirect purchasers proceeding on behalf of a proposed class (collectively, "Plaintiffs"). *See* ECF No. 119. At that time, the Court also appointed Hausfeld LLP ("Hausfeld") as interim lead counsel for the proposed DPP Class. *Id.*

After several rounds of motions to dismiss, which the Court largely denied, the Defendants answered the operative DPP Complaint, and the case proceeded to discovery. *See* Answers, ECF Nos. 1561, 1600, 1601, 1688, 1689, and 2637. More than 200 depositions were taken in this case across the United States and Asia. *See* Inwald Decl. ¶ 15. Millions of pages of documents were produced and reviewed by Class Counsel. *Id.*

In 2018, the DPPs moved the Court to certify the DPP Class (ECF No. 1140). After a three-day evidentiary hearing in January of 2019 (ECF Nos. 1774-75, 1777), the Court ultimately certified a DPP Class of all persons and entities that directly

---

[5] *See* https://www.justice.gov/atr/page/file/926521/download.

purchased packaged tuna products within the United States, its territories, and the District of Columbia from any Defendant at any time between June 1, 2011 and July 1, 2015, with minor exclusions.[6] ECF No. 1931. The Court also appointed Hausfeld LLP as Class Counsel for the DPP Class. *Id.*

The parties proceeded to expert discovery and dispositive motions, with the DPPs and the Defendants filing cross motions for summary judgment on various issues and *Daubert* motions against the opposing experts. *See, e.g.*, ECF Nos. 1967, 1970, 1976, 1981, 1984, 1993, 1998, 1999, 2001, 2007, 2009, 2015, 2030, 2035, 2043, 3036, 3037. The DPPs hired three experts: Dr. Russell Mangum (economist), Dr. Gary Hamilton (sociologist), and Marianne DeMario (forensic accountant). Inwald Decl. ¶ 16. The Defendants hired nine experts to oppose the DPPs: Dr. Randal Heeb (economist), Dr. Michael Moore (economist), Gary Kleinrichert (accountant), Arthur Laby (attorney), Dennis Carlton (economist), Andres Lerner (economist), Janusz Ordover (economist), Robert M. Daines (law professor), and Ilya A. Strebulaev (private equity professor). *Id.* The parties completed all expert depositions and submitted final expert reports. *Id.* The Court largely denied the defense motions to exclude the testimony of the DPPs' experts and granted partial summary judgment with respect to the Plaintiffs' motion as to StarKist. *See* ECF Nos. 2407, 2654, 3134.

In 2019, Defendants appealed the Court's class certification decision pursuant to Fed. R. Civ. P. 23(f). ECF No. 2246. On April 6, 2021, a Ninth Circuit panel vacated the class certification decision and remanded the case so that the trial court could decide which expert was more persuasive on the issue of the number of uninjured parties in each class. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,

---

[6] The DPPs had a typographic error in their Litigation Class definition (July 1 instead of July 31) that they asked the Court to correct. ECF No. 1945. The Court later corrected the Class definition. *See* ECF No. 3024 at 3.

993 F.3d 774 (9th Cir. 2021). A rehearing *en banc* was granted on August 3, 2021. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 5 F.4th 950 (9th Cir. 2021). The *en banc* court affirmed the District Court's class certification order in full. *See generally Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). That decision has been cited 271 times as of July 17, 2024 and has become the leading antitrust class certification order in district court proceedings throughout the United States.

**B. The Settlement Agreements**

StarKist and the DPPs executed a Settlement Agreement on August 13, 2024. Inwald Decl., Ex. A.

The Lion Companies and the DPPs executed a Settlement Agreement on August 2, 2024. Inwald Decl., Ex. B.

**Settlement Class Definition.** The Settlement Class definition is almost identical to the DPP Class certified by the Court (*see* ECF No. 1931), with a correction of a typo so that the Class Period ends on July **3**1 as opposed to July 1 and an inclusion of additional exclusions. *See* Inwald Decl., Ex. A ¶¶ 1.23, 3; *Id.*, Ex. B ¶¶ 1.22, 3. The full definition of the Settlement Class, including the various exclusions, is:

> All persons and entities that directly purchased packaged tuna products within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 31, 2015. Excluded from the class are all governmental entities; Defendants and any parent, subsidiary or affiliate thereof; Defendants' officers, directors, employees, and immediate families; any federal judges or their staffs; purchases of tuna salad kits or cups; and salvage purchases. Also excluded from the class is any person or entity that was excluded from the class, in whole or in part, pursuant to the Court's Order in this Action at ECF No. 3097, which incorporates the list of entities at ECF No. 3095-1.

**Benefits.** The Settlements provide for significant relief for Settlement Class Members and was negotiated at an arms' length between the Parties. In exchange for

releasing claims against StarKist and DWI and the Lion Companies in this litigation, the DPP Class will receive $64,750,000 in cash and product. *See* Inwald Decl. ¶ 13.

**Release.** In exchange for the foregoing relief, the DPPs have agreed to release "all Claims . . . on account of, arising out of, resulting from, or in any way related to any conduct concerning the pricing, selling, discounting, manufacturing, distribution, promotion, or marketing of Packaged Tuna Products during the period from June 1, 2011 to July 31, 2015 that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint." *Id.*, Ex. A ¶ 1.19; *Id.*, Ex. B ¶ 1.18.

**Attorneys' Fees and Costs.** Class Counsel has litigated this case for nine years on contingency—and has advanced millions of dollars in costs. Inwald Decl. ¶ 21. Nearly six years into the litigation, the Court awarded Class Counsel $1,539,363.29 in fees and $4,410,636.71 in costs pursuant to an arbitration between COSI/TUG and Class Counsel. *See* ECF No. 3012.

Class Counsel will ask the Court for up to 33.3% of the total value of the Settlement Agreements as attorneys' fees and will also ask the Court for unreimbursed costs, all of which will be detailed in a forthcoming motion for an award of fees and reimbursement of costs. Inwald Decl. ¶ 21.

**C. Notice and Claims Process**

As set forth in the supporting Declaration of Gina Intrepido-Bowden—a Vice-President at JND, the settlement and notice administrator—notice of the settlement will be provided directly via mail to the DPP Class as well as by email for those Class Members for whom the DPPs have email addresses. *See* Declaration of Gina Intrepido-Bowden ("Intrepido-Bowden Decl.") ¶¶ 1, 9a. There will also be a Press Release, and given the widespread interest in this case, it is likely to be picked up by relevant media outlets, including those known to report on this case. *Id.* ¶ 9b. The DPPs' proposed notice plan also encourages Class Members to go to the dedicated

website and register for further direct updates via email for future important events. *Id.* ¶¶ 9c, 25, 26. Additionally, JND will attempt to individually contact certain Class Members, specifically food banks, to encourage them to make their claim. Inwald Decl. ¶ 23.

Under the DPPs' proposed plan of allocation, Settlement Class Members will be able to make claims for their *pro rata* share of the Settlement Amounts. As explained in the notice plan, the DPPs have the transactional data in this case and are able to determine Class Members' volume of commerce, and the settlement administrator plans to establish a secure online portal whereby Class Members can check and verify their volume of commerce. Intrepido-Bowden Decl. ¶ 31. If they believe a different amount of commerce is correct, they can dispute that amount, in which case their claim will be subject to an audit. *See id.* This plan eases the verification process for Class Members and reduces the burden on them. *Id.* Class Members will be entitled to a pro rata share of the available cash and product. JND will remind Settlement Class Members through direct mail and email before the deadline to place an order for StarKist products is set to expire. *Id.* ¶ 21. Further, Class Members, including Class Members that are no longer purchasing packaged tuna, may donate their share of the product to an approved charity and receive the benefit of a charitable deduction on their taxes for doing so. *See id.* ¶ 32. This process will be explained on the dedicated website and included in the Class notice. Any unclaimed product will be distributed, *cy pres*, to food banks, hot meal programs, or other charities. Inwald Decl. ¶ 25.

Within five business days after Preliminary Approval is granted by the Court, StarKist and DWI have agreed to deposit up to $1,000,000 and the Lion Companies have agreed to deposit up to $200,000 to pay for the costs of notice and administration. To the extent those funds are spent, they shall not be reimbursable in the event that final approval is not granted. *Id.*, Ex. A ¶ 5.3; *Id.*, Ex. B ¶¶ 1.21, 5.3. Although the

DPPs anticipate that *both* notice and the claims administration will not cost more than $850,000, the Settlement Agreements conservatively provide that Class Counsel may withdraw funds as necessary for notice and administration from the Settlement Fund of up to $1,200,000. *Id.* ¶ 23.

## III.   LEGAL STANDARD

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) ("*Hyundai*") (internal quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In December of 2018, the Rules Committee revised Federal Rule of Civil Procedure 23 to formalize the preliminary approval process for district courts when first evaluating a proposed class action settlement. *See* Fed. R. Civ. P. 23(e)(1). Under the new rule, "[t]he court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

## IV.   ARGUMENT

### A. The Proposed Settlement Class Satisfies the Requirements of Rules 23(a) and (b)(3).

The Supreme Court has long recognized that antitrust class actions are a vital component of antitrust enforcement. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972). Thus, courts

"resolve doubts in these actions in favor of certifying the class." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) ("*CRT II*").

To certify a settlement class under Fed. R. Civ. P. 23, plaintiffs must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy of representation—as well as at least one of the three subsections of Rule 23(b). *See Sali v. Corona Reg'l Med. Ctr.*, 889 F.3d 623, 629-31 (9th Cir. 2018) ("*Sali*") (citing Fed. R. Civ. P. 23(c)(1)(A)). A plaintiff seeking Rule 23(b)(3) certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The manageability requirement inherent in Rule 23(b)(3) does not apply to settlement classes. "[T]he criteria for class certification are applied differently in litigation classes and settlement classes." *Hyundai*, 926 F.3d at 556.

**Rule 23(a) Requirements**.

***Numerosity*** is satisfied by a class as small as 40 entities. *Lo v. Oxnard European Motors, LLC*, No. 11CV1009, 2011 WL 6300050, at *2 (S.D. Cal. Dec. 15, 2011) ("*Lo*"). Here, the proposed Settlement Class contains several hundred entities. *See* Inwald Decl., Ex. F.

***Commonality***. Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283 (N.D. Cal. 2016) ("*Nitsch*") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Where, as here, the focus is on Defendants' alleged anticompetitive conduct, questions of law and fact are common to the class. "Where an antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" *In re*

*High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) ("*High-Tech*") (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010), *amended in part by* No. 07-1827, 2011 WL 3268649 (N.D. Cal. July 28, 2011) ("*LCD*")). In this case, there are numerous common issues, including: (1) whether Defendants participated in a conspiracy to fix prices in violation of the antitrust laws; (2) the scope of that conspiracy; and (3) whether the Class suffered antitrust injury as a result of Defendants' alleged conspiracy.

*Typicality*. The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sali*, 889 F.3d at 633 (quotation omitted). "In antitrust cases, typicality usually 'will be established by plaintiffs and all class members alleging the same antitrust violations by defendants.'" *High-Tech*, 985 F. Supp. 2d at 1181 (quoting *Pecover v. Elec. Arts, Inc.*, No. 08-2820, 2010 WL 8742757, at *11 (N.D. Cal. Dec. 21, 2010)); *see also Lo*, 2011 WL 6300050, at *2. The claims of Plaintiffs and the proposed Class are all based on the same alleged antitrust violations, and they each have suffered injury as a result of Defendants' alleged antitrust conspiracy. Any factual differences among Class Members do not preclude a finding of typicality.[7]

*Adequacy of Representation*. Adequacy requires that Plaintiffs "(1) have no interests that are antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel able to vigorously prosecute their interests." *CRT II*, 308 F.R.D. at 618. "The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 541 (N.D.

---

[7] *See, e.g.*, *In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115, 2017 WL 235052, at *20 (N.D. Cal. Jan. 19, 2017); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009); *see also LCD*, 267 F.R.D. at 593.

Cal. 2015) (quotation omitted). There is no conflict between Plaintiffs' interests and those of absent Class Members. Plaintiffs and their expert have alleged that all Class Members were injured by having to pay supracompetitive prices for packaged tuna.

The DPPs and their counsel, Hausfeld, have vigorously prosecuted this case on behalf of the DPP Class. Hausfeld was the first firm to file suit on behalf of the first filed Plaintiff in this litigation, Olean. Olean and the other class representatives, with the assistance of Class Counsel, have more than adequately represented the DPP Class. *See* Inwald Decl. ¶¶ 14-17, 27. They have driven this litigation forward in all aspects for the betterment of all Plaintiffs. *Id.*

Among other things, Class Counsel have conducted extensive discovery, reviewing millions of pages of documents and taking depositions of dozens of witnesses. *Id.* ¶ 15. As a result of these and other efforts, Class Counsel were able to secure relief from Defendants for a period of time beyond the period for which the DOJ secured guilty pleas. *Id.* Class Counsel have also investigated and litigated claims against the parent entity Defendants in this case, and as a result of those efforts, DWI and the Lion Companies are included in the Settlements as well. *Id.*

Particularly in light of the late stage of the litigation, Class Counsel have more than sufficient information to make an informed decision as to the value of the Settlements compared to the risks of continued litigation. The Parties have been preparing for trial over the last several months, which allows Class Counsel to make an informed judgment in favor of the Settlements, a factor which the Court should consider.[8] In addition, Class Counsel have observed that the other Class Plaintiffs and

---

[8] *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("[E]xtensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *see also In re Portal Software Sec. Litig.*, No. C-03-5138, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007).

most of the DAPs—which comprise most of the largest Members of the DPP Class and collectively account for around 80% of the purchases by DPP Class Members— have already entered into settlements with Defendants. *See* Inwald Decl. ¶ 12.

Class Counsel are experienced lawyers who have successfully litigated many prior complex antitrust class actions such as this one, and have successfully resolved many of those cases in this Circuit. *Id.* ¶ 10. Class Counsel have brought that experience and knowledge to bear on behalf of the Class and in these proposed Settlements. *Id.*[9]

**Rule 23(b)(3) Requirements**. "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Courts commonly find Rule 23's "predominance" requirement satisfied in direct purchaser horizontal price fixing cases. *See, e.g.*, *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012); *Nitsch*, 315 F.R.D. at 315.

Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove that each 'elemen[t] of [her] claim [is] susceptible to classwide proof.' What the rule does require is that common questions 'predominate over any questions affecting only individual [class] members.'" *Amgen*, *Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 469 (2013) (citation omitted; brackets in original). Predominance is satisfied when "common questions present a significant aspect of the case" such that significant facts and issues underlying the proposed classes' claims are subject to common proof.

---

[9] *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (citation omitted); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, at *6-7 (S.D. Cal. Dec. 10, 2008) (same).

*CRT II*, 308 F.R.D. at 620 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998)).

Here, the common questions identified above predominate over any individual ones. The existence and scope of Defendants' alleged horizontal price-fixing conspiracy is a class-wide issue that can be proved for each Class Member through common evidence. "In price-fixing cases, courts repeatedly have held that the existence of the conspiracy is the predominant issue and warrants certification even where significant individual issues are present." *Nitsch*, 315 F.R.D. at 315 (quotation and internal marks omitted); *CRT II*, 308 F.R.D. at 620, 625 (same); *High-Tech*, 985 F. Supp. 2d at 1217 (finding holistic examination of liability, not just econometric analysis, justified certification).

This is especially true in the context of a settlement class, such as this one. In *Hyundai*, it was argued that the differences in applicable state laws defeated predominance, but the Ninth Circuit, sitting *en banc*, said that in the context of a settlement class, that is viewed as an issue of manageability, which is a requirement that does not apply. 926 F.3d at 559-60. *Accord Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020).

**B. The Proposed Settlements Are Fair Under Rule 23(e).**

As amended, Rule 23 now provides a checklist of factors to consider when assessing whether a proposed settlement is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e)(2) advisory committee's note (2018) (although the Ninth Circuit previously used lists of factors to be considered, the revised Rule 23 now "directs the parties to present [their] settlement . . . in terms of [this new] shorter list of core concerns."). Ultimately, as the Ninth Circuit has admonished, the key "underlying question remains this: Is the settlement fair?" *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611 (9th Cir. 2018).

1. **The Class Representatives and Class Counsel have adequately represented the Class.**

On the first factor, the DPP Class representatives have already explained at length how the proposed Settlement Class was adequately represented by their counsel during the discussion of Rule 23(a)(4), which is incorporated by reference here.

2. **The Parties negotiated the proposed Settlement at arm's length.**

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length. Fed. R. Civ. P. 23(e)(2)(B). As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement." Fed. R. Civ. P. 23(e)(2)(A) & (B) advisory committee's note (2009); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("*Rodriguez*") ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Settlement was reached only after extensive, aggressive litigation and prolonged, well-informed, and extensive arm's-length negotiations—including in-person mediation sessions and additional negotiations—between experienced and knowledgeable counsel facilitated by Judge Berg. *See* Inwald Decl. ¶ 18. The use of a court appointed mediator supports the conclusion that the settlement process was not collusive. *See* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note (2018) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests.").[10]

---

[10] *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"); *see also In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (deciding that use of mediator and fact that some discovery had been completed "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement") (internal citation omitted).

Moreover, none of the Defendants have promised the Class Representatives preferential treatment in exchange for the Settlements. Inwald Decl. ¶ 22. *Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (stating preferential treatment for class representatives can create a conflict of interest). Here, the Settlement funds will be distributed pro rata, and DPP Class Counsel will be reimbursed expenses and fees from the common fund, subject to the Court's approval. Class Counsel will ask the Court to approve a nominal service award to the Class Representatives out of the Settlement funds to reimburse them for their efforts on behalf of the Settlement Class over the past several years, but neither Class Counsel nor any of the Defendants have made any promises about requesting such awards.[11]

### 3. The quality of relief to the Class weighs in favor of approval.

The third factor to consider is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). The relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C) advisory committee's note (2018).

---

[11] *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[T]he class settlement agreement provided no guarantee that the class representatives would receive incentive payments[.]"). The settlement process here has been arm's length in all respects. *See In re Am. Capital S'holder Derivative Litig.*, No. CIV. 11-2424, 2013 WL 3322294, at *4 (D. Md. June 28, 2013) ("The negotiations appear to have been appropriately adverse and at arm's length: for example, one of the key deal points—plaintiffs' attorneys' fees—was litigated before a private arbitrator, a former federal district judge, who arrived at the fee proposed in the Settlement Agreement.").

### a. Costs, risks, and delay of trial and appeal.

The DPPs maintain that the liability claims for violations under the antitrust laws are strong, given admissions of COSI, StarKist, and Bumble Bee (and additional judgments against Steve Hodge, Scott Cameron, Ken Worsham, and Chris Lischewski) for participation in a conspiracy to violate those laws. However, the claims against DWI and the Lion Companies were disputed. And all the Defendants vigorously disputed the scope, duration, and effect of the collusion. Moreover, DWI and the Lion Companies did not have collectible assets within the United States, and the Lion Companies are winding down their operations. For all these reasons, the substantial settlements that have been achieved here are an excellent result for the DPP Class.[12] *See* Inwald Decl. ¶ 12. Therefore, while the DPPs maintain they have "strong claims," "significant risk and uncertainty remain such that continuing the case could lead to protracted and contentious litigation." *Howell v. Advantage RN, LLC*, No. 17-CV-883, 2020 WL 3078522, at *4 (S.D. Cal. June 9, 2020).

### b. The effectiveness of any proposed method of distributing relief to the Class.

The Settlements provide the Settlement Class Members with significant relief. The total value of the settlement agreements with COSI and TUG, StarKist and DWI, and the Lion Companies is $83,701,961.86. *See* Inwald Decl. ¶ 20. That total value provides the Settlement Class Members with approximately 92.6% of their

---

[12] *Rodriguez*, 563 F.3d at 966 (summarizing risks of litigating antitrust class actions); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.'" (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998))); *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) ("*Auto Refinishing*") (approving settlements in part because the "antitrust class action is arguably the most complex action to prosecute [and] [t]he legal and factual issues involved are always numerous and uncertain in outcome") (internal quotation omitted).

---

$90,349,227 in single damages. *Id.* ¶ 20. Moreover, if one compares the single damages from all the Settlement Class Members who already submitted claims for the COSI/TUG Settlement with the relief received from the StarKist and DWI Settlement Agreement, the claimants will receive an amount equal to 9.44% of their total packaged tuna purchases. *Id.* ¶ 20. That figure is close to the 10.39% overcharge that DPP expert, Dr. Mangum, calculated for the DPPs. *Id.* ¶ 20.

This relief is comparable to other settlements. For example, the EPPs settled with StarKist and DWI for $130,000,000. *Id.* That settlement represents approximately 58% of their $224,000,000 in single damages. *Id.* Similarly, the DPP settlement agreement with StarKist and DWI provides for cash and product valued at $58.75 million dollars, which is approximately 65% of the DPPs' $90,349,227 in single damages. *Id.*

Additionally, the Settlement Class Members are mostly comprised of smaller companies, with other larger retailers having effectively opted out of the Class by filing their own suits or separately settling with the Defendants. As it pertains to the Settlement Agreement with StarKist, the Settlement Class Members represent around 20% of the purchases of packaged tuna products during the relevant period and received $58.75 million dollars in cash and product. *See* Inwald Decl. ¶¶ 13, 20.

By comparison, as noted above, one of the former DAPs in this case, Wal-Mart—the largest retailer in the country, which alone represents nearly 20% of the packaged tuna purchases in the relevant period—resolved its antitrust claims against StarKist for $20.5 million in cash and product. *Id.*, Ex. E. Thus, the StarKist and DWI Settlement Agreement alone has achieved a result that is nearly three times than what an individual direct action purchaser achieved for itself. *See* Fed. R. Civ. P. 23 advisory committee notes (2018) ("[T]he actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

### c. The method for processing claims.

Settlement Class Members who make a claim will be entitled to receive cash and product, with the actual amount received depending on the number of claims and the volume of commerce represented in those claims. Making a claim should be very straightforward. Class Members that previously submitted a claim for benefits from the COSI/TUG settlement will not need to file another claim to access the benefits of the current Settlements because their prior claim will be deemed submitted here as well, unless they have previously released claims against these Settling Defendants. Further, Class Counsel have the transactional data from the Defendants, which identifies all purchases in this case. Using an online portal, Class Members will be able to check their claim volume, and in the event that their own data suggests that a different claimed volume of commerce is appropriate, they can provide that information, and it will be considered by the Claims Administrator, subject to audit. This information will be included on the Settlement website and in the Settlement Class notice. *See* Inwald Decl. ¶¶ 23-25. As noted above, the proceeds from the Settlement Amount will be distributed on a pro rata basis, which courts routinely accept.[13] It is proposed that any unclaimed portion of the Settlement proceeds after any distributions be donated to an appropriate charity/non-profit. *See* Inwald Decl.

---

[13] *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries." (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005))); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (approving pro rata distribution of fractional share based upon class member's total base salary as fair and reasonable); *Four in One Co. v. S.K. Foods, L.P.*, No. 2:08-CV-3017, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (approving securities class action settlement allocation on a "per-share basis").

¶ 25. The proposed notices to be furnished to Class Members will explain all of this information.

### d. Proposed award of attorneys' fees, including timing of payment.

The proposed fee and cost award is fair and reasonable, as described above. Judge Berg, who has spent a significant amount of time with the Parties over the course of the last year has endorsed all aspects of the proposed Settlement Agreements, and the proposed compensation of Class Counsel. *See* Inwald Decl., Ex. G.

### e. Any agreement required to be identified under Rule 23(e)(3).

Courts also must evaluate any agreement made in connection with the proposed settlement. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv), (e)(3). As noted above, StarKist has agreed to compensate Class Counsel for their substantial efforts in coordinating the various plaintiff tracks, and for assisting in the global resolution of this litigation. *See* Inwald Decl., Ex. C. Judge Berg was involved in this process and has endorsed the agreement. *See id.*, Ex. G.

### 4. The Settlement treats all Settlement Class Members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note (2018).

Here, the Settlements treat all Class Members equitably, and there are no differences between the scope of relief between any Class Members, with the following caveat: Certain Class Members opted out of the DPP Class as to StarKist and DWI, but not as to the Lion Companies, and thus they are not parties to StarKist and DWI's Settlement Agreement. While Class Counsel has requested nominal

service awards for the Class Representatives to reimburse them for their efforts on behalf of the Class, such awards are well-established in the Ninth Circuit.[14]

For all of these reasons, the proposed Settlement merits preliminary approval as it is likely to be finally approved after the Fairness Hearing.

**C. The Proposed Notice Is the Best Practicable Under the Circumstances.**

Pursuant to Fed. R. Civ. P. 23(c)(2)(B), "[f]or any class certified under Rule 23(b)(3) the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Here, the Court has certified the class under Rule 23(b)(3), *see* ECF No. 1931, but the Court has not yet authorized notice.

Where there is a class settlement, Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

In Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances," and that notice "must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a

---

[14] *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards. In fact, the Ninth Circuit recently noted that incentive payments to named plaintiffs have become 'fairly typical' in class actions."); *see also Boyd v. Bank of Am. Corp.*, No. 13-cv-0561, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)); *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-CV-02324, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) (granting a $15,000 service award).

1  class member may enter an appearance through an attorney if the member so desires

2  (5) that the court will exclude from the class any member who requests exclusion; (6)

3  the time and manner for requesting exclusion; and (7) the binding effect of a class

4  judgment on members under Rule 23(c)(3). *See* Fed. R. Civ. P. 23(c)(2)(B).

5        As described above, the notice plan proposed by the DPPs with the advice and

6  assistance of JND—a notice and settlement administrator with significant

7  experience—provides a thorough approach to notice by direct U.S. mail, with skip-

8  tracing and other methods to find changed addresses, as well as email where available,

9  all of which are designed so that notice will reach all Class Members. *See* Intrepido-

10  Bowden Decl. ¶¶ 1, 9a, 13-20 ; *see also, e.g.*, *Ross v. Trex Co.*, No. 09-00670, 2013

11  WL 791229, at *1 (N.D. Cal. Mar. 4, 2013) The notice plan proposed by JND satisfies

12  Rule 23 requirements and the Due Process clause of the United States Constitution. It

13  was also similarly used with the approval of this Court in connection with the earlier

14  settlement between the DPP Class and COSI/TUG. *See* ECF No. 2733 at 19 (Order

15  approving notice).

16        Moreover, the contents of the notice satisfactorily inform DPP Class Members

17  of their rights in the class action and under the Settlement. *See* Intrepido-Bowden

18  Decl., Exs. A-C. The proposed notice form includes: (i) the case caption; (ii) a

19  description of the Class and Settlement Class; (iii) a description of the Settlement

20  Agreement, including the monetary consideration provided to the Settlement Class;

21  (iv) the names of Class Counsel; (v) the Fairness Hearing date; (vi) information about

22  the Fairness Hearing; (vii) information about the deadline for filing objections to the

23  Settlement Agreement; (viii) how Class Counsel will be compensated and that

24  additional information regarding Class Counsel's fees and costs will be posted on the

25  website prior to the deadline for objections; and (ix) how to obtain further information

26  about the proposed Settlement Agreements, including through the website maintained

27  by the Claims Administrator that will include links to the notice, motions for approval

28

1  and for attorneys' fees, and other important documents. *See id.*; *see also* 4 *Newberg*

2  *on Class Actions* § 11:53 (4th ed. 2002) (stating that notice is "adequate if it may be

3  understood by the average class member"); *Lamb v. Bitech, Inc.*, No. 3:11-cv-05583,

4  2013 WL 4013166, at *4 (N.D. Cal. Aug. 5, 2013). Accordingly, the notice program,

5  through direct mail, and email where available, as well as the accompanying forms,

6  are reasonable and adequate and are fairly calculated to apprise Class Members of

7  their rights. *See also* Fed. R. Civ. P. 23(c)(2) advisory committee's note (2018) (stating

8  that "electronic methods of notice, for example email, [will sometimes be] the most

9  promising" method for delivery of notice). The notice is also consistent with the

10  sample provided by the Federal Judicial Center.

11  JND will also assist Class Counsel with the implementation of the claims

12  administration and distribution process. *See* Intrepido-Bowden Decl. ¶¶ 31-32; Inwald

13  Decl. ¶ 23 (describing estimated costs from JND).

14  **D. CAFA Notice.**

15  Class Counsel will make efforts to ensure that the relevant notices required by

16  the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*. ("CAFA") are disseminated.

17  **E. Service Awards.**

18  The DPPs will also request a service award of $12,500.00 per Class

19  Representative, as noted above. These parties have faithfully represented the Class for

20  nearly nine years, including producing documents, sitting for depositions, and

21  monitoring the progress of the case. In addition, over the past few months, each of

22  these parties has spent significant time with Class Counsel and assisted in the

23  preparation for trial. Inwald Decl. ¶ 27. These proposed service awards are modest

24  and do not fully reflect the contribution these parties have made over the last nine

25  years. Nevertheless, it is a nominal acknowledgment of their service on behalf of the

26  whole Class. *Id.* As noted, such awards are routine in the Ninth Circuit. *See Birch v.*

27  *Office Depot*, No. 06 CV 1690, 2007 WL 9776717, at *2 (S.D. Cal. Sept. 28, 2007)

28

(Sabraw, J.) (awarding service awards of $15,000 and $10,000 because "Plaintiffs greatly assisted Class Counsel and committed a significant amount of effort in order to obtain the benefits on behalf of the class" and because the service awards were "well within amounts awarded by courts"); *Santillan v. Verizon Connect, Inc.*, No. 3:21-cv-1257, 2024 WL 627998, at *11 (S.D. Cal. Feb. 13, 2024) (granting a $10,000 incentive award).

## V.    CONCLUSION

For the foregoing reasons, the DPPs respectfully request that the Court enter the accompanying proposed order approving the Settlement Agreements, directing notice of the proposed Settlements, appointing Class Counsel and the Class Representatives for settlement purposes, and setting a hearing for the purpose of deciding whether to grant final approval of the Settlements. As set forth in the Proposed Order, the DPPs propose the following schedule for final approval and related deadlines:

| | |
|---|---|
| Deadline for disseminating Class notice | 14 days after entry of preliminary approval order |
| Deadline for filing affidavit attesting that notice was disseminated as ordered | 35 days after entry of preliminary approval order |
| Plaintiffs to file a motion for an award of attorneys' fees, costs, and service awards | 49 days before the Fairness Hearing |
| Deadline for Class Members to object to the Settlements | 35 days before the Fairness Hearing |
| Deadline for Class Members to file a claim | 35 days before the Fairness Hearing |
| Plaintiffs to file motion for final approval of Settlements | 28 days before the Fairness Hearing |
| Hearings on motion for final approval and motion for an award of attorneys' fees, costs, and service awards | 90 days after preliminary approval order |

1    Dated: August 13, 2024                    Respectfully submitted,

2                                              By: /s/ *Erika A. Inwald*
3                                              Erika A. Inwald
                                               **HAUSFELD LLP**
4                                              33 Whitehall Street, 14th Floor
                                               New York, NY 10004
5                                              Tel: (646) 357-1100
                                               Fax: (212) 202-4322
6                                              E-mail: einwald@hausfeld.com

7                                              Michael P. Lehmann
                                               Christopher L. Lebsock
8                                              **HAUSFELD LLP**
                                               600 Montgomery Street, Suite 3200
9                                              San Francisco, CA 94111
                                               Tel: (415) 633-1908
10                                             Fax: (415) 358-4980
                                               E-mail: mlehmann@hausfeld.com
11                                             E-mail: clebsock@hausfeld.com

12                                             Michael D. Hausfeld
                                               **HAUSFELD LLP**
13                                             888 16th Street NW, Suite 300
                                               Washington, D.C. 20006
14                                             Tel: (202) 540-7200
                                               Fax: (202) 540-7201
15                                             E-mail: mhausfeld@hausfeld.com

16                                             *Class Counsel for the Direct Purchaser
                                               Plaintiffs*

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>CERTIFICATE OF SERVICE</u>

2     I certify that on August 13, 2024, I filed the foregoing document and supporting

3 papers with the Clerk of the Court for the United States District Court, Southern

4 District of California, by using the Court's CM/ECF system. I also served counsel of

5 record via this Court's CM/ECF system.

6

7                                                          */s/ Erika A. Inwald*
                                                          Erika A. Inwald
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28