Michael P. Lehmann (Cal. Bar No. 77152)
Christopher L. Lebsock (Cal. Bar No. 184546)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: clebsock@hausfeld.com

*Class Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS (MSB) |
| This document relates to: The Direct Purchaser Plaintiff Class Action Track | **DECLARATION OF ERIKA A. INWALD IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS**<br><br>DATE: August 23, 2024<br>TIME: 1:30 P.M.<br>JUDGE: Dana M. Sabraw<br>CTRM: 13A |

I, Erika A. Inwald, declare as follows:

1. I am an attorney licensed to practice law in the State of New York. I am an associate at Hausfeld LLP, 33 Whitehall St., 14th Floor, New York, NY, 10004. I make this declaration in support of the Direct Purchaser Plaintiffs' (the "DPPs") Motion for Preliminary Approval of their proposed Settlements with Defendants StarKist Co. and Dongwon Industries Co., Ltd. (collectively "StarKist and DWI"), and Defendant Lion Capital (Americas), Inc. and Specially Appearing Defendants Lion Capital LLP and Big Catch Cayman LP (collectively the "Lion Companies") (collectively with the DPPs, the "Parties"). I have personal knowledge of the facts set forth herein and, if called upon to do so, I could and would testify competently thereto.

2. Attached as **Exhibit A** is a true and accurate copy of the proposed Settlement Agreement between the DPPs and StarKist and DWI.

3. Attached as **Exhibit B** is a true and accurate copy of the proposed Settlement Agreement between the DPPs and the Lion Companies.

4. Attached as **Exhibit C** is a true and accurate copy of the separate agreement between the DPPs and StarKist and DWI to compensate DPP Class Counsel for coordinating the litigation efforts in this multidistrict litigation.

5. Attached as **Exhibit D** is a true and accurate copy of an excerpt from the transcript of the May 22, 2024 hearing held in this case.

6. Attached as **Exhibit E** is a true and correct copy of a news article available at https://www.post-gazette.com/business/money/2019/01/25/StarKist-Walmart-million-settle-antitrust-claims-tuna-price/stories/201901250139.

7. Attached as **Exhibit F** is a true and correct copy of Appendix C3 of the Addendum Expert Report of Dr. Andres V. Lerner dated May 21, 2024.

8. Attached as **Exhibit G** is a true and correct copy of the Honorable Michael S. Berg's Statement in Support of Settlement Agreements Between Direct Purchaser

Plaintiffs and End Purchaser Plaintiffs and StarKist Co., Dongwon Industries Co., Ltd., Lion Capital LLP, and Lion Capital (Americas), Inc.

9. The Court appointed Hausfeld LLP as Class Counsel for the Direct Purchaser Plaintiffs. ECF No. 1931.

10. I and the other attorneys at my firm who have worked on this case are experienced attorneys who have litigated many prior complex antitrust class actions such as this one. We have successfully resolved many of those cases in districts within this Circuit. We have brought that experience and knowledge to bear on behalf of the Class and in this proposed Settlement. As described below, the negotiations leading to the settlements with Defendants were vigorous, informed, and thorough; occurred over a span of many months; and were not concluded until after the completion of fact and expert discovery and full briefing of dispositive motions. The parties conducted their negotiations in good faith under the supervision of the Honorable Michael S. Berg, a United States Magistrate Judge for this District.

11. The trial in this Action was scheduled to take place on July 16, 2024. Had the trial occurred, Dr. Russell Mangum, the DPPs' expert economist, was prepared to present single damages of $90,349,227.

12. Class Counsel believe that the proposed Settlements provide fair compensation to the Settlement Class and are likely to be approved at a final approval hearing. The Settlement amounts are fair, adequate, and reasonable. A collection of a large judgment in this case is highly uncertain given that StarKist does not have assets sufficient to cover the financial exposure of the DPPs and the remaining plaintiffs, and that DWI and the Lion Companies do not have assets in the United States that could be attached. Moreover, I understand the Lion Companies are in the process of winding down their business operations and do not have substantial assets available to resolve the claims against them. Additionally, I have observed that the other Class Plaintiffs and most DAPs—which comprise most of the largest members of the DPP Class and

1  collectively account for around 80% of the purchases by DPP Class Members—have
2  already entered into settlements with Defendants.

3        13.    Based on existing and anticipated requests for exclusion (from the Direct
4  Action Plaintiffs ("DAPs"), for example), the proposed Settlement with StarKist and
5  DWI will deliver approximately $58,750,000 in cash and product to remaining Class
6  Members. The proposed Settlement with the Lion Companies will deliver
7  approximately $6,000,000 in cash to remaining Class Members. Together, the DPPs
8  settlements with StarKist and DWI and the Lion Companies total $64,750,000. This
9  is significant relief for the Settlement Class Members, whose purchases (after the
10  DAPs are excluded) represent approximately 20% the commerce at issue in this case,
11  as described in the DPPs' economist's expert report. *See* Mangum Merits Reply
12  Report ¶ 244, attached to the Declaration of Samantha Stein (ECF No. 2143), Ex. 242.
13  By comparison, it has been publicly reported that one of the most powerful retailers
14  in the market, Wal-Mart, which accounted for approximately 20% of packaged tuna
15  purchases during the relevant period, settled with StarKist for $20.5 million. Thus,
16  comparatively, the DPPs' proposed settlements achieve a result that is fair, reasonable,
17  and adequate—and do so without burdening Class Members with the distractions
18  associated with litigating on their own behalf.

19        14.    The Settlement was achieved after significant discovery and development
20  of the case. The DPPs' initial suit was filed in August of 2015 after the U.S.
21  Department of Justice ("DOJ") began a criminal investigation. Hausfeld was the first
22  firm to file suit on behalf of the first filed Plaintiff in this litigation, Olean Wholesale
23  Grocery Cooperative, Inc. ("Olean"). Following the DOJ's criminal investigation,
24  COSI admitted Sherman Act violations, sought leniency, and cooperated with both the

DOJ and civil claimants by providing evidence against its co-conspirators and co-Defendants, StarKist and Bumble Bee Foods LLC.[1]

15. After filing suit, the DPPs began developing their case and conducting significant discovery. Among other things, Class Counsel have reviewed millions of pages of documents and have participated in many of the more than 200 depositions taken in this case across the United States and Asia. Class Counsel have also conducted extensive written discovery, including serving interrogatories and requests for admission. As a result of these and other efforts, Class Counsel were able to secure relief from Defendants for a period of time longer than the period for which the DOJ secured guilty pleas. Class Counsel have also investigated and litigated claims against the parent entity Defendants in this case (which were not charged by the DOJ), and as a result of those efforts, DWI and the Lion Companies are included in the Settlements as well.

16. The Parties also conducted expert discovery and briefed dispositive motions, with the DPPs and the Defendants filing cross motions for summary judgment on various issues and *Daubert* motions against the opposing experts. *See, e.g.*, ECF Nos. 1967, 1970, 1976, 1981, 1984, 1993, 1998, 1999, 2001, 2007, 2009, 2015, 2030, 2035, 2043, 3036, 3037. The DPPs hired three experts for use against Defendants: Dr. Russell Mangum (economist), Dr. Gary Hamilton (sociologist), and Marianne DeMario (forensic accountant). The Defendants hired nine experts to oppose the DPPs: Dr. Randal Heeb (economist), Dr. Michael Moore (economist), Gary Kleinrichert (accountant), Arthur Laby (attorney), Dennis Carlton (economist), Andres Lerner (economist), Janusz Ordover (economist), Robert M. Daines (law professor), and Ilya A. Strebulaev (private equity professor). The Parties completed

---

[1] When Bumble Bee and StarKist pleaded guilty to violations of the antitrust laws, the DOJ sent letters to DPP Class Counsel pursuant to the Crime Victim Rights Act to notify victims of the conspiracy, including DPP Class Members, of their rights to be heard in connection with the sentencing of these companies.

1  all expert depositions and submitted final expert reports. The Court granted in part and
2  denied in part the defense motions to exclude the testimony of the DPPs' experts and
3  granted partial summary judgment with respect to the Plaintiffs' motion as to StarKist.
4  ECF Nos. 2407, 2654, 3134.

5  17. All of this discovery, expert work, and motion practice has given Class Counsel more than sufficient information to evaluate the DPPs' claims. Particularly in light of the late stage of the litigation, Class Counsel is well-positioned to make an informed decision as to the value of the Settlements compared to the risks of continued litigation.

  18. The negotiations concerning the Settlements involved informal discussions between the parties' counsel over the course of many years, and recently were supervised by Judge Berg. The Settlement Agreements were negotiated over multiple in-person, video conference, and telephonic mediation sessions. Judge Berg oversaw the final negotiations with respect to the Settlements with both StarKist and DWI and the Lion Companies.

  19. StarKist and DWI and the DPPs executed a Settlement Agreement on August 13, 2024. The Lion Companies and the DPPs executed a Settlement Agreement on August 2, 2024.

  20. The Settlements provide the Settlement Class Members with significant relief. The total value of the settlement agreements with COSI and TUG, StarKist and DWI, and the Lion Companies is $83,701,961.86 (including a partial reimbursement of fees and advanced costs from the COSI settlement). That total value provides the Settlement Class Members with approximately 92.6% of their $90,349,227 in single damages. Moreover, if one compares the single damages from all the Settlement Class Members who already submitted claims for the COSI/TUG settlement with the relief received from the Settlement Agreement with StarKist and DWI, the claimants will receive an amount equaled to 9.44% of their total purchases of packaged tuna. That

figure is close to the 10.39% overcharge that DPP expert, Dr. Mangum, calculated for the DPPs. This relief is comparable to other settlements. For example, the EPPs settled with StarKist and DWI for $130,000,000. That settlement represents approximately 58% of their $224,000,000 in single damages. Similarly, the DPP settlement agreement with StarKist and DWI provides for cash and product valued at $58.75 million dollars, which is approximately 65% of the DPPs' $90,349,227 in single damages.

21. Class Counsel has litigated this case for nine years on contingency—and has advanced millions of dollars in costs. Nearly six years into the litigation, the Court awarded Class Counsel $1,539,363.29 in fees and $4,410,636.71 in costs pursuant to an arbitration between COSI/TUG and Class Counsel. *See* ECF No. 3012. Class Counsel will ask the Court for 33.3% of the total value of the Settlement Agreements as attorneys' fees and will also ask the Court for unreimbursed costs, all of which will be detailed in a forthcoming motion for an award of fees and reimbursement of costs.

22. None of the Defendants have promised the Class Representatives preferential treatment in exchange for the Settlements.

23. The DPPs have retained JND,[2] a settlement and notice administrator, to provide notice of the Settlement, which will be mailed directly via first-class mail to the DPP Class as well as by email to those Class Members for whom the DPPs have email addresses. JND will attempt to individually contact certain Class Members, specifically food banks, to encourage them to make their claim. There will also be a Press Release, and given the widespread interest in this case, it is likely to be picked up by relevant media outlets, including those known to report on this case. JND will also remind Settlement Class Members through direct mail and email (to those Class

---

[2] Class Counsel solicited bids from other administrators and then engaged in substantial further negotiations with those that responded to ensure a cost-competitive retention was secured.

Members for whom the DPPs have email addresses) before the deadline to place an order for StarKist products is set to expire. The DPPs' proposed notice plan also encourages Class Members to go to the dedicated website and register for further direct updates via email for future important events or information. Although the DPPs anticipate that notice *and* claims administration will cost approximately $850,000, the Settlement conservatively provides that Class Counsel may withdraw funds as necessary for notice and administration from the Settlement Fund up to $1,200,000.

24.  A key part of the notice plan is also to encourage Class Members to sign up and register their preferred email and other contact information on the DPPs' case website to receive updates about the case. The DPPs will thus be able to notify the Class about any news with respect to this case by posting that information on the website and sending updates via email.

25.  Under the DPPs' proposed plan of allocation, Settlement Class Members will be able to make claims for their pro rata share of the Settlement Amounts. Class Members that previously submitted a claim for benefits from the COSI/TUG settlement will not need to file another claim to access the benefits of the current Settlements because their prior claim will be deemed submitted here as well, unless they have previously released claims against these Settling Defendants. As explained in the notice plan, the DPPs have the transactional data in this case and are able to determine Class Members' volume of commerce, and the settlement administrator plans to establish a secure online portal whereby Class Members can check and verify their volume of commerce. In the event that they believe a different amount of commerce is correct, they can dispute that amount, in which case their claim will be subject to an audit. This plan eases the verification process for Class Members and reduces the burden on them. Class Members will be entitled to a pro rata share of the available cash and product. Further, Class Members, including Class Members that are no longer purchasing packaged tuna, may donate their share of the product to non-

profits and receive the benefit of a charitable deduction on their taxes for doing so. This process will be explained on the dedicated website and included in the Class notice. Any unclaimed product will be distributed, *cy pres*, to food banks, hot meal programs, or other charities.

26. As required by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.*, the DPPs understand that all Parties will ensure that the relevant notices are provided.

27. Finally, the DPPs will respectfully request a service award of $12,500 for the following Class Representatives: Olean, Piggly Wiggly Alabama Distributing Co., Inc., Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc., Trepco Imports and Distribution Ltd., Pacific Groservice Inc. d/b/a PITCO Foods, and Benjamin Foods LLC. The Class Representatives have faithfully represented the Class for nearly nine years, including producing documents, responding to interrogatories, sitting for depositions, and monitoring the progress of the case. In addition, over the past few months, each of these parties has spent significant time with Class Counsel and assisted in the preparation for trial. Class Counsel communicated with class representatives multiple times by video conference, in person, and by telephone. Class Counsel practiced direct examinations with Class Representatives and reviewed potential trial exhibits with them. The Class Representatives, including those who had to travel to San Diego from the east coast, were willing to attend trial and testify if called upon by Class Counsel. All the Class Representatives were essential to Class Counsel in preparing for trial and were generous with their time. These proposed service awards are modest and do not fully reflect the contribution these parties have made over the last nine years. Neither Class Counsel nor Defendants made any promises about requesting such awards.

I declare under penalty of perjury that the foregoing facts are true and correct and that this declaration was executed in New York, New York on August 13, 2024.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: /s/ *Erika A. Inwald*
Erika A. Inwald
**HAUSFELD LLP**
einwald@hausfeld.com

*Class Counsel for the Direct Purchaser Plaintiffs*

INWALD DECL.                                             CASE NO. 15-MD-2670-DMS (MSB)

9

## CERTIFICATE OF SERVICE

I certify that on August 13, 2024, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

*/s/ Erika A. Inwald*
Erika A. Inwald
