Michael J. Flannery (CA Bar 196266)
CUNEO GILBERT & LADUCA, LLP
Two CityPlace Drive, 2nd Floor
St. Louis, MO 63141
Tel: 314.226.1015
mflannery@cuneolaw.com

Lissa Morgans
Cody McCracken
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Tel: 202.789.3960
lmorgans@cuneolaw.com
cmccracken@cuneolaw.com

*Lead Counsel for Commercial Food
Preparer Plaintiff Class*

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No.:  15md2670 DMS(MSB) |
| | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF COMMERCIAL FOOD PREPARER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS** |
| This Document Relates To: | |
| All Commercial Food Preparer Plaintiff Actions | DATE:    November 15, 2024 |
| | TIME:    1:30 p.m. |
| | JUDGE:    Hon. Dana M. Sabraw |
| | COURT:    13A (13th floor) |

# **TABLE OF CONTENTS**

**Introduction** ..................................................................................................1

**Factual Background and Procedural History** ......................................1

**Argument** .......................................................................................................7

   I.   The Court Should Award Attorneys' Fees. ......................................7

      A.    The Court Should Use the Percentage-of-Recovery Method. ............7

      B.    Class Counsel's Fee Request is Reasonable. ......................................8

   II.    A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable. ..........13

   III.   The Court Should Approve Counsel's Reasonable Costs and Expenses. ..........14

   IV.   The Court Should Approve Kroll's Reasonable Settlement Administration and Notice Costs. ...............................................................................15

   V.    The Court Should Approve Additional Class Representative Service Awards...16

**Conclusion** ...................................................................................................17

# TABLE OF AUTHORITES

**Cases**

*Ahlman v. Barnes*, No. SACV20835JGBSHKX, 2022 WL 16957837 (C.D. Cal. Sept. 12, 2022) ............................................................................................................8

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .........................17

*Blum v. Stenson*, 465 U.S. 886 (1984) ............................................................................7

*Boeing Co. v. Van Gemert*, 444 U.S. 472 (1980) ............................................................7

*Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998 (E.D. Cal. 2019) .............................13

*Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 3616638 (N.D. Cal. June 26, 2017) ........................................................................................9

*Fernandez v. CoreLogic Credco, LLC.*, No. 20CV1262 JM(SBC), 2024 WL 3209391 (S.D. Cal. June 24, 2024) .......................................................................................14

*Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008) .......................................................................14

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ...................................................................13

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWx), 2014 WL 12591624 (C.D. Cal. Jan. 10, 2014) ..................................................12

*In re Animation Workers Antitrust Litig.*, No. 3:14-CV-4062 LHK, 2016 WL 663005 (N.D. Cal. Nov 11, 2016) ......................................................................................11

*In re Apple Inc. Device Performance Litig.*, 50 F.4th 769 (9th Cir. 2022) ......................14

*In re Capacitators Antitrust Litig.*, No. 3:14-cv-03264-JD, 2017 WL 9613950 (N.D. Cal. June 27, 2017) ......................................................................................................13

*In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730 (N.D. Cal. Sept. 2, 2015) ........................................................................................................17

*In re Immunex Sec. Litig.*, 864 F. Supp 142 (W.D. Wash. 1994) ..................................12

*In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) .....................................................................................................14

*In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362 (N.D. Cal. 1995) ......................14

ii

*In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-cv-02758-CW, 2017 WL
6040065 (N.D. Cal. Dec. 6, 2017) ................................................................10

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................9, 11

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934 (9th Cir. 2015) 7, 8, 13, 15, 16, 17

*In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-md-02143-RS, 2021 WL
4124159 (N.D. Cal. Sept. 9, 2021) .............................................................13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M:07-cv-01827, 2012 WL 13209696
(N.D. Cal. Nov. 9, 2012) ...........................................................................10

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 4126533 (N.D. Cal.
Aug. 3, 2016, *dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No.
16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017) ..................................9, 11

*Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239 (9th Cir. 2019)....................................13

*Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228 (C.D.
Cal. Apr. 2, 2018)......................................................................................11

*Messineo v. Ocwen Loan Servicing, LLC*, No. 15-cv-02076-BLF, 2017 WL 733219 (N.D.
Cal. Feb. 24, 2017).....................................................................................11

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir.),
*cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, *On Behalf
of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022) ........................4

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir.
2021), *on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022)...................................4

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2000) ....................................9, 16

*Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ........................................8

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002).........................7, 8, 9, 10, 12

**Other Authorities**

Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) § 14:6 ........... 8

Mac Newton, *Fishy Class Certification: A Packaged Tuna Antitrust Case and a Shift in*
  *Class Certification Standards*, 88 MO. L. REV. (2023),
  https://scholarship.law.missouri.edu/mlr/vol88/iss2/14. ............................................... 11

## Introduction

After nearly a decade of hard-fought litigation, counsel for the Commercial Food Preparer Plaintiffs ("CFPs") have negotiated and presented the Court with two final settlements. These settlements, in addition to the one prior, total over $10 million and end the case for the CFPs.  Counsel and class representatives for the CFPs devoted a significant amount of time and resources to this litigation, and the current settlements provide a substantial benefit to the CFPs. Counsel now come before the Court and respectfully move for an award of attorneys' fees and costs. Pursuant to Federal Rules of Civil Procedure 23(h) and 54(d)(2), counsel respectfully request that the Court approve: (1) a 29% fee award of $3,008,750; (2) reimbursement of prior litigation costs and expenses of $514,886.31; (3) payment of costs associated with class notice and settlement administration of $396,838.08; and (4) service awards of $2,000 to each class representative, totaling $36,000.

## Factual Background and Procedural History

This litigation began in September 2015 following the Department of Justice's announcement of an investigation in the packaged seafood industry. After case consolidation, in March 2016, the Court appointed Cuneo Gilbert & LaDuca LLP ("CGL") as the CFPs' Interim Lead Counsel. *See* ECF No. 119. At the time of appointment, the Court provided CGL with a list of its lead counsel responsibilities:

a.  To brief and argue motions and file opposing briefs in proceedings initiated by other parties, and to present (by a designee) to the Court and opposing parties the position of all CFPs for all matters arising during all pretrial and trial proceedings;

b.  To designate attorneys to act as spokespersons at pretrial conferences;

c.  To conduct or coordinate discovery on behalf of the CFPs consistent with the requirements of the Federal Rules of Civil Procedure, including the preparation of joint interrogatories, requests for production of documents,

1

requests for admissions, and the examination of witnesses in depositions;

d.    To designate an attorney to enter into stipulations with opposing counsel necessary for the conduct of the litigation;

e.    To monitor the activities of co-counsel and to implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds by counsel are avoided;

f.    To collect time, lodestar, and expense reports from each of the law firms working on behalf of the class of CFPs, including paralegals and any other staff members whose time is expected to be included in any fee petition;

g.    To ensure that work assignments are not given to any firm that has not promptly submitted its time and expense records or paid its assessments;

h.    To sign any consolidated complaint, motions, briefs, discovery requests or objections, subpoenas, stipulations, or notices on behalf of the class of CFPs or those CFPs filing particular papers;

i.    To conduct all pre-trial, trial, and post-trial proceedings on behalf of the class of CFPs;

j.    To employ and consult with experts;

k.    To call meetings of the law firms representing the class of CFPs when deemed appropriate and to assign work to these law firms;

l.    To conduct settlement negotiations with defense counsel on behalf of the class of CFPs;

m.    To assure that all counsel for the class of CFPs are kept informed of the progress of this litigation; and

n.    To appoint an executive committee to assist Interim Lead Counsel in litigating the CFP actions.

*See* Order, ECF No. 119 at 5-6.

As Interim Lead Counsel, CGL—along with the other firms representing the CFPs

(collectively "Class Counsel")—briefed the opposition to Defendants' multiple motions to dismiss. *See* Declaration of Michael J. Flannery in Support of Motion for an Award of Attorneys' Fees and Costs ("Flannery Decl.") ¶¶ 13, 42. Each round of briefing involved extensive legal research and writing regarding the factual and legal underpinnings of the CFPs' antitrust claims. *Id.* ¶ 13. By the end of the briefing process, Class Counsel's efforts paid off as the Court denied the motions in large part, allowing for the majority of the CFPs' claims to proceed. *See* Order, ECF No. 295.

The parties then engaged in extensive and lengthy discovery, relating to all aspects of the CFPs' antitrust claims.  Flannery Decl. ¶ 10. Class Counsel requested and obtained over two million pages of materials from the Department of Justice's criminal investigation of Defendants, as well countless documents from Defendants themselves. *Id*. The parties also engaged in a robust deposition program, with Class Counsel deposing many Defendant and third-party witnesses. *Id.* ¶ 12. Counsel also produced documents for Defendants on behalf of the CFP's class representatives and defended client depositions.  *Id.* ¶¶ 10, 16. CGL also engaged expert witnesses and worked extensively with those experts to provide class certification and merits reports.  *Id.* ¶¶ 16-17.

In May 2018, following the extensive discovery efforts and expert consultation described above, CGL filed a motion to certify the CFPs' class. *See* ECF No. 1143. In support of class certification, Counsel included the expert report of Michael Williams, PhD, who "performed regression analyses to assess whether the prices Defendants charged during the Class Period were inflated above competitive levels as a result of the Defendants' conspiracy and whether those overcharges were passed on to Class members." *See* Mem. Supp. Mot. Certify Class, ECF No. 1143-1 at 20. Dr. Williams estimated classwide damages at $37,495,818. *Id.* at 30; *see also* Expert Rep. of Michael Williams May 29, 2018, ECF No. 1143-3, Table 3. The class certification briefing efforts, like those at the motion to dismiss stage, were substantial and complex. Flannery Decl. ¶¶ 15-17.

After Defendants filed their own expert reports, the Court held a three-day

evidentiary hearing, with live expert testimony and argument from all parties' counsel. *Id*. On July 30, 2019, the Court granted the CFPs' motion for class certification. Class Cert. Order, ECF No. 1931. The Court also formally appointed CGL as Lead Counsel noting that all interim counsel appointments had been "effective and efficient" and that CGL would "fairly and adequately represent" the class. *Id.* at 58-59.

Defendants then filed an interlocutory appeal of the class certification order. On December 20, 2019, the United States Court of Appeals for the Ninth Circuit granted Defendants' motion requesting permission to appeal the class certification order. Appeal Order, ECF No. 2247. On April 6, 2021, the Ninth Circuit Court of Appeals issued an opinion vacating this Court's order certifying the classes and remanded with instruction to determine the number of uninjured parties in the proposed class. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 792 (9th Cir. 2021), *on reh'g en banc*, 31 F.4th 651 (9th Cir. 2022). However, following rehearing en banc, years after the initial motion to appeal, on April 8, 2022, the Ninth Circuit affirmed this Court's order certifying the classes. *Olean Wholesale Grocery Coop., Inc.*, 31 F.4th at 677, *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, *On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022).

Lead Counsel successfully engaged in extensive, good-faith, and arms'-length settlement efforts with Tri-Union Seafoods LLC D/B/A Chicken of the Sea International and Thai Union Group (collectively referred to as "COSI"). Flannery Decl. ¶¶ 19, 21 These extended negotiations were contentious, with both parties arguing their version of the case. In June 2020, the CFPs and COSI agreed on a $6,500,000 settlement. *See* ECF No. 2675-2. Lead Counsel moved for preliminary and final approval, and the Court held a Fairness Hearing on August 19, 2022. *See generally* ECF Nos. 2896, 2899. At the time of the COSI final approval, Counsel did not request any fees in connection with the COSI Settlement, but instead asked the Court to award $2,507,500.25 for reimbursement of present and future out-of-pocket litigation costs, as well as total past and future estimated notice and

4

settlement administration fees and expenses amounting to $361,000,[1] and class representative service awards of $5,000 per representative, totaling $90,000. ECF No. 2862-1 at 2-4. ECF No. 2896. On August 22, 2022, the Court granted final approval of the COSI settlement. ECF No. 2897.[2] To date, no funds have been distributed to the CFPs. All settlement funds, less any awards sought in this motion, will be distributed upon the Court's final approval.

Lead Counsel also supervised Kroll Settlement Administration's ("Kroll") notice program for the COSI settlement by reviewing long form notices, website materials, and transactional data claim forms. Flannery Decl. ¶ 54. Then, following the Ninth Circuit's class certification order, Lead Counsel supervised Kroll's second notice program to all members of the CFPs' litigation class (the "Litigation Notice"). *Id.* Again, Lead Counsel reviewed all materials associated with the Litigation Notice. *Id.* Both rounds of notice also involved constant interaction and consultation with Kroll as the settlement and claims administrator. *Id.*

Following the COSI settlement in 2022, Lead Counsel engaged in extensive trial preparations with counsel for the other classes (DPPs and EPPs) for trial set in July 2024. *Id.* ¶ 20. Counsel discussed trial strategy, analyzed discovery, and identified key documents and deposition testimony that Lead Counsel could use at trial. *Id*. Counsel coordinated with counsel for the other classes in weekly meetings about trial strategy, tactics and planning.

---

[1] The COSI settlement provided: "Under the terms of the COSI Settlement, five hundred thousand ($500,000) out of the six million five hundred thousand ($6,500,000) can be used to cover the reasonable costs of Class and Settlement Notices and administration for the distribution of the Settlement Fund." *See* ECF No. 2675-2 ¶ 32.

[2] The other plaintiffs groups also settled with COSI. In conjunction with those settlements, the EPPs did not seek a fee, *see* ECF No. 2845-1 at 1, and the DPPs sought a limited fee as established in the contested arbitration before Judge Layn Phillips, *see* ECF No. 2785-1 at 16. As part of their arbitration, DPPs sought a conservative fee in the amount of $1,539,363.29 considering the over $20 million lodestar, with no multiplier, and the litigation timeline, seven years. *Id*. The Court granted DPPs request. ECF No. 3012.

*Id*. Counsel also vetted trial consultants and prepared for mock trials for early 2024. *Id*.

Lead Counsel also filed trial-related motions, like the motion filed on December 28, 2023, concerning the expert opinions of Adoria Lim, CPA, and Albert Rossi, CPA, *see* ECF No. 3136, and prepared for motions in limine. As trial preparations were underway, Counsel also participated in mediation and settlement negotiations. Counsel performed these duties and responsibilities and incurred reasonable and necessary expenses in the conduct of this litigation to reach these settlements.

On January 5, 2024, Lead Counsel met with defendants Dongwon Industries Co., Ltd. and StarKist Co. (collectively, "StarKist") at a settlement conference before Magistrate Judge Michael Berg. *See* ECF Nos. 3135, 3138-39. As a result of the good-faith, arms'-length negotiations conducted by Magistrate Judge Berg, Lead Counsel agreed to a settlement with StarKist for $3,600,000, as well as related injunctive relief. ECF No. 3163-2 ¶ 35. On January 23, 2024, Lead Counsel met with Lion Capital (Americas), Inc., Lion Capital LLP and Big Catch Cayman LP (together, "Lion") at a settlement conference before Magistrate Judge Berg. *See* ECF Nos. 3142, 3144. Once again, as the result of good-faith, arms'-length negotiations conducted by Magistrate Judge Berg, Lead Counsel agreed to a settlement with the Lion for $275,000 and related injunctive relief. ECF No. 3164-2 ¶ 35.

Lead Counsel reached settlement after considerable litigation and negotiation with defense counsel. Flannery Decl. ¶¶ 21-22. Both settlements are a result of arms'-length and good faith negotiations overseen by Magistrate Judge Berg, as counsel for both parties had a strong understanding of the claims and defenses. *Id.* ¶ 22. On April 5, 2024, Lead Counsel filed motions to preliminarily approve both settlements. The Court held a preliminary approval hearing on May 3, 2024, and thereafter granted preliminary approval on both settlements. ECF Nos. 3195, 3196.

## Argument

District courts may award reasonable attorney's fees and expenses from the settlement of a class action upon motion under Federal Rules of Civil Procedure 23(h) and 54(d)(2). District courts retain discretion in determining the amount of attorney's fees to award counsel. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("*Online DVD*"); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (applying this standard to common fund settlement cases). This doctrine is equitable in nature and "rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

### I.     The Court Should Award Attorneys' Fees.

The over $10 million in settlements obtained by Lead Counsel is the result of extensive legal work performed on a contingent basis. Class Counsel worked for nine years and invested thousands of hours, at the trial and appellate level, to pursue the CFPs' claims. This case is now a frequently cited example of an appropriately certified commercial indirect purchaser class in the context of an antitrust class action. Class Counsel did not collect any interim fee awards in connection with the COSI settlement in this case. Accordingly, a 29% fee award of $3,008,750 is reasonable and warranted.

### A.     The Court Should Use the Percentage-of-Recovery Method.

The Supreme Court recognizes that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co.*, 444 U.S. at 478. When calculating attorney's fees under the common fund doctrine, "a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). "In this circuit, there are two primary methods to calculate attorneys['] fees: the lodestar method and the percentage-of-recovery method. Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this

circuit, the benchmark percentage is 25%." *Online DVD*, 779 F.3d at 949 (internal citations omitted); *see also Vizcaino*, 290 F.3d at 1048 (25% benchmark rate). "Whether to use one method over the other is in the court's discretion; however, the use of the percentage method in common fund cases appears to be dominant." *Ahlman v. Barnes*, No. SACV20835JGBSHKX, 2022 WL 16957837, at *4 (C.D. Cal. Sept. 12, 2022).

The long form notice provided to the class advised that Counsel would likely request fees totaling one-third of the settlement funds. *See also* Alba Conte & Herbert Newberg, *Newberg on Class Actions* (4th ed. 2002) § 14:6 at 551 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). Class Counsel now requests a fee award of 29%, less than the one-third request cited in the notice, but consistent with Counsel's efforts to work for the best interests of the class. As permitted by the Ninth Circuit, Counsel make this request from the gross settlement fund with the COSI settlement in mind.[3] *Staton v. Boeing Co.*, 327 F.3d 938, 975 (9th Cir. 2003) ("the choice of whether to base an attorneys' fee award on either net or gross recovery should not make a difference so long as the end result is reasonable. Our case law teaches that the reasonableness of attorneys' fees is not measured by the choice the denominator." (internal quotation marks and citation omitted)).

## B. Class Counsel's Fee Request is Reasonable.

The Ninth Circuit considers the circumstances of the case when assessing the reasonableness of an attorney's fee request. *Vizcaino*, 290 F.3d at 1048. Courts typically analyze the following non-exhaustive factors:

> (1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the

---

[3] Prior long form notices informed the CFPs that, in reference to attorneys' fees, "Class Counsel further reserves the right to base, in part, any such request on the benefit obtained in the COSI Settlement." ECF No. 3078-1, Ex. A at 8. *See also* ECF No. 2862-1 at 4 n.6.

8

skill, experience, and performance of counsel (both sides); (4) the contingent nature of the fee; and (5) fees awarded in comparable cases. *See id.* at 1048-49; *Bluetooth*, 654 F.3d at 941-42. These factors are known as the "*Kerr*" factors." *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000) (*citing Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague*, 505 U.S. 557 112 S.Ct. 2638 (1992)).

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 1917, 2016 WL 4126533, at *4 n.8 (N.D. Cal. Aug. 3, 2016) ("*CRT*") (providing discussion on why these factors apply in the percentage of recovery context, in addition to lodestar analysis), *dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017). Here, the Court should award Class Counsel the requested fee award because they were able to recover nearly a third of the CFPs' damages in settlement results over the course of nine years of contingent, hard-fought, and complex litigation prosecuted by skilled counsel.

### 1.    Settlement Results

Results are a key factor in determining the reasonableness of an attorney's fee request. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). At class certification, Dr. Williams estimated classwide damages for the CFPs at $37,495,818. *See* Mem. Supp. Mot. Certify Class, ECF No. 1143-1 at 30; *see also* Expert Rep. of Michael Williams May 29, 2018, ECF No. 1143-3, Table 3. In total, the CFPs' settlements are $10,375,000 or about 28% of untrebled damages. Settlements results around 30% recovery are fairly typical. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 954 (9th Cir. 2000) (finding a settlement that was about 30% of the untrebeled estimated damages as fair, adequate, and reasonable); *accord Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 3616638, at *3 (N.D. Cal. June 26, 2017) (finding a settlement representing about 30% of the total untrebled estimated damages as fair and reasonable). Because of Class Counsel's considerable efforts, obtaining nearly one-third of the untrebeled damages on behalf of the class, counsel for the CFPs should be awarded 29%

in fees.

## 2.    Complexity, Risk, and Expense to Counsel

The degree of risk assumed by counsel and litigation complexity are also relevant to the reasonableness of an attorney's fee request. *See Vizcaino*, 290 F.3d at 1048. Antitrust class actions are particularly complex matters. *See In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-cv-02758-CW, 2017 WL 6040065, at *4 (N.D. Cal. Dec. 6, 2017) (noting that "antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." (internal quotation marks omitted)). Here, the Court is well-versed with the complexity of this litigation and the particular complexities of the CFPs' as a plaintiff group. Class Counsel have worked for nearly a decade. Lead Counsel alone dedicated over 16,953.75 hours to this litigation. Flannery Decl. Ex. 1. In total, Class Counsel billed $19,602,171.50 hours to this litigation. *Id.* Ex. 2. In this effort, Lead Counsel coordinated the efforts of counsel representing the CFPs to maximize efficiency and to avoid duplicative efforts and unnecessary billing. *Id.* ¶ 37. Counsel has also monitored hours and costs to avoid unauthorized work and have been mindful of the CFPs' role in this litigation and the potential recoveries for their clients. *Id.*

The risk to counsel also increases the longer litigation goes on. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M:07-cv-01827, 2012 WL 13209696, at *4 (N.D. Cal. Nov. 9, 2012) ("*LCD*") (finding counsel entitled to a fee award over the 25% benchmark number because counsel had litigated for over six years, which compounds the litigation risk). Here, almost nine years have elapsed since the filing of the initial complaint. Litigating class certification at the Ninth Circuit was a risky endeavor. As a result of Counsel's risk, this case has become a model for econometric regression modeling in complex antitrust matters, particularly when it comes to what an expert has shown related to antitrust injury at class certification. *See* Mac Newton, *Fishy Class Certification: A Packaged Tuna Antitrust Case and a Shift in Class Certification Standards*, 88 Mo. L. Rev. (2023),

https://scholarship.law.missouri.edu/mlr/vol88/iss2/14.

The timing of the settlement and reduction of litigation expense is similarly relevant. *See Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228, at *6 (C.D. Cal. Apr. 2, 2018) (finding that settlement minimized litigation cost and that going to trial would significantly increase cost and attorney's fees sought). Here, at the time of settlement, Lead Counsel was ramping up its litigation efforts for a trial in five months' time. *See* Flannery Decl. ¶ 20. Settling the case avoided the risk of a negative outcome at trial, as well as the substantial expense of taking the case through trial. Because Counsel assumed a high level of risk litigating the case for nine years in a complex antitrust class action, the instant fee award request is reasonable.

### 3.    Skill, Experience, and Performance of Counsel

The experience, skill and reputation of counsel is relevant to the reasonableness of an attorney's fee request. *See In re Animation Workers Antitrust Litig.*, No. 3:14-CV-4062 LHK, 2016 WL 663005, at *7 (N.D. Cal. Nov. 11, 2016) (finding relevance in the plaintiff's nationally recognized antitrust and class action litigation in assessing counsel's fee petition); *CRT*, 2016 WL 4126533, at *4 (finding relevance in counsel's 30 years of experience in antitrust cases and the experience of the other participating law firms); *LCD*, 2012 WL 13209696, at *4 (finding that counsel's skills and experience in antitrust warranted an upward adjustment from the 25% benchmark fee rate). "The recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1043. *See also Messineo v. Ocwen Loan Servicing, LLC*, No. 15-cv-02076-BLF, 2017 WL 733219, at *6 (N.D. Cal. Feb. 24, 2017) (finding that counsel's experience and work ethic—reviewing an extensive discovery record—positioned them well to evaluate the case and determine that settlement was the best way forward).

Here, Lead Counsel is a nationally recognized antitrust and class action law firm with considerable expertise representing indirect purchaser plaintiff classes in antitrust

11

matters. Flannery Decl. ¶ 26; *see also id.* Ex. 5. CGL's lead attorney on this case, Michael Flannery, has over 33 years of expertise in leadership roles concerning complex antitrust matters. Flannery Decl. Ex. 5. All of the law firms acting as counsel for the CFPs similarly have distinguished class action practices. *Id.* ¶¶ 26, 28; *see also id.* ¶ 2. Furthermore, the Defendants' attorneys have nationally recognized antitrust defense practices. *Id.* ¶ 22. Counsel's expertise and the skill required to litigate this action over the course of nine years against defense counsel all favor the reasonableness of Counsel's instant fee award request.

### 4. Contingency Status

Whether counsel was paid hourly or on a contingent basis is relevant to an attorney's fee request. *See Vizcaino*, 290 F.3d at 1050 (noting it was relevant to the 28% fee request that counsel had worked on the case for eleven years on contingency). *See also In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWx), 2014 WL 12591624, at *5 (C.D. Cal. Jan. 10, 2014) (finding a 25% fee reasonable and noting class counsel undertook the litigation on a wholly contingent basis with no guarantee of payment); *In re Immunex Sec. Litig.*, 864 F. Supp 142, 145 (W.D. Wash. 1994) (finding a 30% fee reasonable and noting that contingency fees compensate attorneys for the financial risk of handling cases that may produce no recovery). Here, Class Counsel litigated this case on a wholly contingent basis with no guarantee of payment. Flannery Decl. ¶ 40. The large amount of work required to litigate this case for nearly a decade, at both the trial and appellate levels, supports a finding that the fee award request is reasonable.

### 5. Comparable Fees

The CFPs are the first plaintiff group to settle against all Defendants. Thus, this fee motion is the first of its kind in this litigation. *See supra* n. 2. Due to the complexity of antitrust litigation, fee awards for complex class action antitrust matters in the Ninth Circuit, like this consolidated class action, of up to 30-33% are common. *See In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD, 2017 WL 9613950, at *5 (N.D. Cal. June 27, 2017) (finding an attorney's fee award of 30% as consistent and comparable to

other Ninth Circuit antitrust cases); *see also Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (finding an attorney's fees award of 33.33% reasonable because of the case complexity, lengthy procedural history, and class wide results) (collecting cases awarding 33% in attorney's fees). After nine years of litigation on behalf of a complex plaintiff group at class certification, Counsel obtained settlements totaling one-third of the CFPs' untrebled damages; thus, a fee award of 29% is reasonable and comparable to other cases. *Accord LCD*, 2013 WL 149692, at *2 (finding complicated antitrust cases with high risk and effort put forth by plaintiff's counsel worthy of a departure from the benchmark of 25% to 30%).

## II.   A Lodestar Crosscheck Confirms that the Requested Fee Is Reasonable.

Although not required, courts may apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *Online DVD,* 779 F.3d at 949; *Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019) (encouraging the use of the cross-check method). Lodestar is generally the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433(1983). To calculate lodestar, courts "multiply[] the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Online DVD*, 779 F.3d at 949. "A lodestar cross-check does not require 'mathematical precision' or 'bean-counting,' and the court 'may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-md-02143-RS, 2021 WL 4124159, at *2 (N.D. Cal. Sept. 9, 2021) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3rd Cir. 2005)). Courts may "use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *9 (C.D. Cal. July 21, 2008).

Here, Class Counsel's lodestar is substantial, totaling $19,602,171.50. Flannery Decl. Ex. 2. A summary of each firm's hourly rates per employee and hours expended from case inception to January 31, 2024, are provided in the declarations attached to this filing. *See also id.* Ex. 1. There is no question that the requested fee award of $3,008,750, considering the number of lodestar acquired, is reasonable and supported by the effort Class Counsel expended in achieving this result.

## III. The Court Should Approve Counsel's Reasonable Costs and Expenses.

"Class Counsel are entitled to reimbursement of the out-of-pocket costs they reasonably incurred investigating and prosecuting this case." *Fernandez v. CoreLogic Credco, LLC.*, No. 20CV1262 JM(SBC), 2024 WL 3209391, at *21 (S.D. Cal. June 24, 2024). This is equitable in nature. Under the common fund doctrine, "[r]easonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement." *In re Media Vision Tech. Sec. Litig.,* 913 F. Supp. 1362, 1366 (N.D. Cal. 1995) (citation omitted). In other words, "[t]he doctrine's fundamental purpose is to spread the burden of a party's litigation expenses among those who are benefited." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785-86 (9th Cir. 2022) (cleaned up).

Here, after the COSI settlement, Class Counsel expended an additional $514,886.31 in costs and expenses pursuing the case against StarKist and Lion. *See* Flannery Decl., Ex. 3. These are standard expenses incurred in prosecuting a civil lawsuit and are the type of expenses typically billed by attorneys to paying clients in the marketplace. Lead Counsel carefully scrutinized these expenses. *Id.* ¶ 30. These expenses are in line with those approved by courts in this Circuit and are all the type of expenses routinely charged to hourly paying clients. *See, e.g., In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying expenses were reasonable and recoverable). Accordingly, the request for litigation costs and expenses is

reasonable.

## IV. The Court Should Approve Kroll's Reasonable Settlement Administration and Notice Costs.

As part of a litigation costs and expenses, courts allow for reimbursement of reasonable settlement administration fees and costs, and any costs associated with providing class notice. *See Online DVD*, 779 F.3d at 953 ("[N]otice costs allow class members to learn about a settlement and litigation expenses make the entire action possible.") Counsel requests an additional $396,838.08 for Kroll's services.

As a claims administrator, Kroll incurred expenses in providing robust and expansive class notice. *See* Jeanne Finegan Decl., ECF No. 3298, ¶¶ 6-25. As of August 15, 2024, Kroll had delivered 49 million display, search and social media impressions were served. *See id.* ¶ 20. Kroll has substantiated the expenses incurred by a claims administrator to date and provided an estimate of additional costs. For example, Kroll seeks reimbursement for various notice and settlement administration services, including the maintenance of the case website and contact center, notice mailing, project management, and other necessary tasks. These are standard expenses incurred by a claims administrator in creating and implementing a robust notice plan in a complex antitrust case. These expenses are in line with those approved by courts in other complex consumer class action in antitrust and other areas and an important element of the notice and claims process.

The COSI settlement allowed $500,000 out of the $6,500,000 to cover the reasonable costs of class and settlement notices and administration for the distribution of the settlement funds. *See* ECF No. 2675-2 ¶ 32. Based upon a notice declaration from Kroll, Counsel requested $361,000 of that $500,000. *See* ECF No. 2862-1 at 2-4; *see also* ECF No. 2896. At that time, Kroll represented that it had spent $151,000 for the reimbursement of past expenses for notice and settlement administration services and estimated spending an additional $210,000 on notice. ECF No. 2862-1 at 2. After the COSI settlement, Kroll administrated its second round of notice concerning class certification, the Litigation

15

Notice. In all, from the COSI settlement through May 31, 2024, Kroll performed class notice and claims administration services totaling $598,035.63. Flannery Decl. ¶ 53.

Under the terms of the StarKist and Lion settlements, $500,000 out of the $3,600,000 StarKist settlement and $200,000 out of the $275,000 Lion settlement may be used to cover the reasonable costs of class and settlement notices and administration for the distribution of the settlement funds. *See* ECF Nos. 3163-2 ¶ 37; 3164-2 ¶ 37. From June 1, 2024, to the completion of the case, Kroll estimates that it will incur class notice and claims administration costs of $159,800. Flannery Decl. ¶ 53. These numbers are significantly less because Counsel was able to rely upon Kroll's prior two notices programs. While there was some additional expense incurred prior to the StarKist and Lion settlements, the nature of that robust claims process allowed Counsel to reduce costs on this notice plan. Lead Counsel now request an additional $396,838.08 from the Court in settlement administration costs to cover the expenses incurred for all three rounds of class notice, the associated claims management process, and for future class member payments.

## V. The Court Should Approve Additional Class Representative Service Awards.

Courts routinely grant service awards for class representatives. *Rodriguez*, 563 F.3d at 958-59 ("Incentive awards are fairly typical in class action cases."). Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to act as private attorneys general. *Id. See also Online DVD*, 779 F.3d at 943, 947-48. There is no bright line minimum or maximum for service awards, they "typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases discussing award amounts). *See also In re High-Tech Emp. Antitrust Litig.*, No. 11-cv-02509, 2015 WL 5158730, at *17 (N.D. Cal. Sept. 2, 2015) (recognizing $20,000 service awards in partial settlement agreements with other defendants and awarding additional service awards in the range of $80,000 to

$120,000); *Online DVD*, 779 F.3d at 943 (affirming approval of "incentive awards of $5,000 each for nine class representatives" as "well within the usual norms of 'modest compensation' paid to class representatives." (citations omitted)).

Here, Counsel requests an additional service award of $2,000 per class representative, totaling $7,000 in service awards to each representative.[4] The original $5,000 award did not fully encompass the years of help the class representatives provided Class Counsel on this matter at both the trial and appellate levels. As Lead Counsel reviewed materials in preparation for trial, considering the motion work completed, the hours of deposition transcripts taken, and lengthy litigation time frame, Counsel requests that an additional $2,000 be awarded to each representative for their efforts in this litigation. The requested service award is well within the amounts authorized by this and other district courts. *See Bellinghausen*, 306 F.R.D. at 267.

### Conclusion

For the foregoing reasons, Counsel respectfully requests that the Court approve: (1) a 29% fee award of $3,008,750; (2) reimbursement of prior litigation costs and expenses of $514,886.31; (3) payment of costs associated with class notice and settlement administration of $396,838.08; and (4) service awards of $2,000 to each class representative, totaling $36,000.

Dated: August 15, 2024

*/s/ Michael J. Flannery*

Michael J. Flannery (CA Bar 196266)
CUNEO GILBERT & LADUCA, LLP
Two CityPlace Drive, 2nd Floor

---

[4] The class representatives are: Thyme Café & Market (CA), Simon-Hindi LLC, d/b/a Simon's (CA), Capitol Hill Supermarket (DC), Confetti's (FL), Maquoketa Care Center, Inc (IA), A-1 Diner (ME), Francis T. Enterprises d/b/a Erbert & Gerbert's (MN), Groucho's Deli of Raleigh (NC), Sandee's Catering (NY), Groucho's Deli of Five Points (SC), Rushin Gold d/b/a the Gold Rush (TN), and Erbert & Gerbert's (WI).

St. Louis, MO 63141
Tel: 314.226.1015
mflannery@cuneolaw.com

Lissa Morgans
Cody McCracken
CUNEO GILBERT & LADUCA, LLP
4725 Wisconsin Ave. NW, Suite 200
Washington, DC 20016
Tel: 202.789.3960
lmorgans@cuneolaw.com
cmccracken@cuneolaw.com

*Lead Counsel for Commercial Food Preparer Plaintiff Class*

1

## **CERTIFICATE OF SERVICE**

2        I certify that on August 15, 2024, I filed the foregoing document with the Clerk of

3  the Court for the United States District Court, Southern District of California, by using the

4  Court's CM/ECF system, and also served counsel of record via this Court's CM/ECF

5  system.

6                            /s/ *Michael J. Flannery*
                                 Michael J. Flannery

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28