Michael J. Flannery (CA Bar 196266)
CUNEO GILBERT & LADUCA, LLP
Two CityPlace Drive, 2nd Floor
St. Louis, MO 63141
Tel: 314.226.1015
mflannery@cuneolaw.com

*Lead Counsel for Commercial Food*
*Preparer Plaintiff Class*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No.: 15md2670 DMS(MSB) |
| | **DECLARATION OF MICHAEL J. FLANNERY IN SUPPORT OF COMMERCIAL FOOD PREPARER PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND SERVICE AWARDS** |
| This Document Relates To: | |
| All Commercial Food Preparer Plaintiff Actions | DATE:     November 15, 2024 |
| | TIME:     1:30 p.m. |
| | JUDGE:    Hon. Dana M. Sabraw |
| | COURT:    13A (13th floor) |

I, Michael J. Flannery, declare as follows:

1. I am a partner with the law firm of Cuneo Gilbert & LaDuca, LLP ("CGL") and a member in good standing of the State Bar of California. CGL is Lead Counsel for the certified class of Commercial Food Preparer Plaintiffs ("CFPs"). Except where noted, the testimony set forth in this declaration is based on first-hand knowledge that I would and could testify competently in court if called upon to do so.

2. CGL prosecuted this case along with attorneys from several other firms (together, "Class Counsel"). Those firms have submitted separate declarations pertaining to, among other things, their hourly rates, the expenses incurred separate from the litigation fund that CGL has administered for this case, and their contributions to the prosecution of the CFPs' claims.

3. This declaration provides an overview of the litigation, including the work performed by Lead and Class Counsel since the inception of the case in 2015, a summary of the time Lead and Class Counsel has incurred during the prosecution of the CFPs' claims, as well as a breakdown of the expenses each firm has incurred after the Court awarded costs from the COSI settlement in August 2022.

## OVERVIEW

4. The CFPs case is coming to an end. After recent settlements with Dongwon Industries Co., Ltd. and StarKist Co. (collectively referred to as "StarKist") and Lion Capital (Americas), Inc., Lion Capital LLP and Big Catch Cayman LP (collectively referred to as "Lion"), the CFPs have resolved all of their claims against Defendants. This includes a prior $6,500,000 settlement with Tri-Union Seafoods LLC D/B/A Chicken of the Sea International and Thai Union Group (collectively referred to as "COSI") that the Court preliminarily approved in January 2022 and finally approved in August 2022. *See* ECF Nos. 2735, 2897. The current settlements with StarKist, for $3,600,000, and Lion, for $275,000, were preliminarily approved in May 2024. *See* ECF Nos. 3195, 3196. Final approval motions are due on September 27, 2024, and the Fairness Hearing is on November 15, 2024. All three settlements are the product of Class Counsel's thorough assessment and

evaluation of the strengths and weaknesses of the CFPs' case, and arose out of extended, informed, arm's-length negotiations between experienced counsel for the parties.

5.     Class Counsel did not seek a fee award in conjunction with the COSI settlement. Instead, Counsel moved for costs incurred up to that point in the case to litigate against the non-settling Defendants (i.e. StarKist and Lion). In August 2022, the Court awarded Class Counsel $2,507,500.25 in out-of-pocket costs, $361,000 for claims administration costs, and $90,000 for class representative service awards ($5,000 per representative). *See* ECF No. 2897. Counsel continued to litigate and prepared the case for trial, which included another round of notice to the CFPs, informing them of the class certification decision from the Ninth Circuit. Lead Counsel then proceeded to engage in extensive and intense pretrial preparations, reviewing the discovery record for purposes of preparing the CFPs case-in-chief and coordinating with counsel for the other classes—Direct Purchaser Plaintiffs ("DPPs") and End Purchaser Plaintiffs ("EPPs")—as well as certain Direct Action Plaintiffs ("DAPs"). With trial preparations well underway, Lead Counsel engaged in good-faith, arms'-length settlement negotiations, under the guidance of Magistrate Judge Berg, in an effort to resolve the matter with the remaining Defendants. The resulting settlements with StarKist and Lion have provided additional substantial settlement relief for the CFPs. Class Counsel now seek fees and costs with respect to the total settlement relief available from all three settlements.

## HISTORY OF THE LITIGATION

6.     Lead Counsel filed its complaint after a thorough investigation and due diligence. The complaint followed the Department of Justice's ("DOJ") announcement of an investigation into the packaged seafood industry. Once the MDL was established, CGL became instrumental in organizing the indirect cases and plaintiffs; and, on behalf of numerous CFPs, filed a consolidated class action in this Court alleging an antitrust conspiracy in the packaged seafood industry. *See In re Packaged Seafood Products Antitrust Litig.*, MDL No. 2670 (ECF No. 153) (S.D. Cal., filed May 23, 2016). Although the DOJ intervened and the case was temporarily stayed, CGL coordinated with the other

Classes and individual direct purchasers on a protective order and ESI and continued to investigate and advance the case forward.

## CGL APPOINTED INTERIM LEAD COUNSEL

7.    In March 2016, the Court appointed CGL as Interim Lead Counsel for the CFPs. ECF No. 119.

8.    At the appointment, the Court provided a substantial list of CGL's responsibilities. ECF No. 119. Class Counsel's responsibilities for the costs and expenses included the following: (i) To conduct or coordinate discovery on behalf of the CFPs consistent with the requirements of the Federal Rules of Civil Procedure, including . . . the examination of witnesses in depositions; (ii) To monitor the activities of co-counsel and to implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds by counsel are avoided; (iii) To collect time, lodestar, and expense reports from each of the law firms working on behalf of the class of CFPs; (iv) To conduct all pre-trial, trial, and post-trial proceedings on behalf of the class; and; (v) To employ and consult with experts. *See* ECF No. 119 at 5-6.

9.    Lead Counsel performed these duties and responsibilities and incurred reasonable and necessary expenses in the conduct of this litigation in order to reach both the early COSI settlement and the later settlements with StarKist and Lion.

## PLAINTIFFS ENGAGED IN EXTENSIVE DISCOVERY (INCLUDING EXPERTS)

10.    Class Counsel underwent comprehensive and ambitious discovery into Defendants' conduct, including the production and review of millions of pages of documents, the taking of numerous fact witness depositions, and extensive expert discovery.

11.    Class Counsel sought the production of the DOJ Documents (once the stay was lifted) which resulted in the production of over two million documents. The costs of hosting the millions of documents produced, and making them available for both counsel and experts' teams to review online, was shared to reduce cost to the classes. This reduced

3

amount reflects the proportional share of the CFPs after splitting with the other classes and would be greater if the sharing agreement had not been resolved.

12.     Class Counsel coordinated with all of the plaintiff tracks (EPPs, DPPs and DAPs) in taking numerous depositions of defense and third-party witnesses. International depositions required the use of translators for both documents and testimony. Class Counsel incurred, and has already paid, the cost (reporters, videographers, and sometimes translators) for each of these depositions. Transcript costs for depositions taken by defense counsel of plaintiffs, including the individual CFP class representatives and DAPs (used by Defendants in opposing class), were also incurred and paid out of pocket, years ago, and without recovery until the award of costs at the time of the COSI Settlement in August 2022. Class Counsel also participated in coordinating, preparing for, and attending multiple evidentiary proffers by COSI as the ACPERA leniency applicant.

## COORDINATION WITH OTHER CLASSES

13.     Lead Counsel coordinated with counsel for the other classes (DPPs and EPPs) at every stage of this litigation to effectively manage not only the parties' resources and costs but to preserve judicial resources. The three separate class tracks harmonized their factual allegations (as appropriate) based on coordinated investigation and research efforts (as needed) to support substantial and expanded new allegations. Class Counsel further coordinated on the filing of all Class amended complaints, responsive briefing among all of the parties, and oral argument to ensure a similar timeline for all three class tracks. These efforts permitted the Court to issue coordinated opinions denying, in large part, the Defendants' Motion to Dismiss.

14.     Here, the conspiratorial conduct consisted, in part, of certain illegal agreements among Bumble Bee, COSI, and StarKist to fix prices. Proving Defendants' conduct was anti-competitive required Class Counsel to pursue their claims against all

three manufacturers concurrently.[1] For example, in its interrogatory responses, COSI furnished a chart of seven different unlawful agreements reflecting coordinated conduct by all three defendants. A copy of the COSI chart is attached hereto as Exhibit 4. As a result, due to this joint conduct, the cost and expenses incurred in generally pursuing discovery against all three defendants was instrumental in reaching an early settlement with one defendant (COSI) such that discovery costs cannot be reasonably divided or parsed out by each individual defendant. *Id.*

## CLASS CERTIFICATION

15.    All Classes filed motions for class certification in May 2018. The court held a three-day hearing thereafter. Three highly respected economists supported each plaintiff groups' motions: Dr. Russell Mangum ("Mangum") for the DPPs; Dr. Michael Williams ("Williams") for the CFPs; and Dr. David Sunding ("Sunding") for the EPPs. Defendants countered with two experts from Edgeworth Economics: Dr. John Johnson ("Johnson"), responding to Mangum, and Dr. Laila Haider ("Haider"), responding to Williams and Sunding.

16.    Class Counsel also introduced Albert Rossi's expert report that described the close economic relationship between the various defendant parent corporations and their subsidiaries. Defendants countered with their own economists: Dr. Ilya Srebulaev (Lion Capital/Bumble Bee); Arthur Laby (COSI); and Robert Daines (StarKist). Class Counsel attended all expert depositions and defended the depositions of their experts Dr. Williams and Mr. Rossi. Class Counsel also deposed defendant witnesses and defended the depositions of CFP class representatives selected by defendants for deposition.

17.    Dr. Williams responded at length to each criticism. Dr. Williams submitted

---

[1] The DOJ also criminally prosecuted Lischewski, Bumble Bee's former CEO, and on December 3, 2019, a jury found that he had conspired with StarKist and COSI to fix packaged tuna prices in violation of the Sherman Act. *See United States v. Lischewski*, 2019 U.S. Dist. LEXIS 86432 (N.D. Cal. 2019).

5

four expert reports and testified at two depositions and a full-day hearing just for the CFPs' motion for class certification.

18.    Following a three-day hearing, on July 30, 2019, the Court granted the CFPs' motion for class certification that carefully evaluated the parties' evidence and arguments. ECF No. 1931 ("Class Opinion").

19.    Although the parties finalized the COSI settlement before the Class Opinion was issued, Defendants appealed the Class Opinion, resulting in a delayed preliminary approval process. On appeal, Class Counsel spent significant time dedicated to research and writing.  The Ninth Circuit initially reversed the Class Opinion, but that decision was reversed in an en banc decision. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 677 (9th Cir.), *cert. denied sub nom. StarKist Co. v. Olean Wholesale Grocery Coop., Inc.*, *On Behalf of Itself & All Others Similarly Situated*, 143 S. Ct. 424 (2022).

## **TRIAL PREPARATIONS**

20.    After the Ninth Circuit's order affirming the Class Opinion, Lead Counsel spent a significant amount of time prepping for trial. As part of building its case-in-chief, Counsel reviewed and analyzed all relevant discovery, particularly deposition transcripts, to determine potential trial exhibits. Lead Counsel also conducted numerous and regular communications with other classes' lead counsel, including DPPs and EPPs, to coordinate on trial strategy, including a mock trial, as the parties prepared for a trial in July 2024.

## **SETTLEMENT NEGOTIATIONS**

21.    As a result of Class Counsel's litigation efforts, the parties were well-informed about the issues in this case before and during settlement discussions, both prior to the COSI settlement and at the time of the StarKist and Lion settlements. The parties negotiated despite the fact that they had vastly different views of the merits and value of the claims and defenses. Settlement was not easy. COSI settlement negotiations took 17 months to complete, and negotiations with the remaining defendants were similarly protracted, gaining momentum only after the case was well on its way to trial in July 2024.

6

22.     Lead Counsel engaged in settlement negotiations with StarKist in early 2023. Counsel for StarKist are nationally recognized defense attorneys. At that time, counsel were unable to reach an agreement. Good-faith negotiations continued periodically through 2023. At the January 5, 2024 settlement conference before Magistrate Judge Michael Berg, Lead Counsel reached a settlement agreement with StarKist. *See* ECF Nos. 3135, 3138-39. The settlement agreement included $3,600,000 and six months of injunctive relief following final judgment. *See* ECF No. 3163-2 ¶ 35. On January 23, 2024, Lead Counsel settled with Lion at a settlement conference before Magistrate Judge Michael Berg for $275,000 and six months of injunctive relief following final judgement. *See* ECF Nos. 3164-2 ¶ 35. Nationally recognized attorneys also represented Lion.

### **THE SETTLEMENTS ARE IN THE BEST INTEREST OF THE CLASSES**

23.     In my and fellow Class Counsel's judgment, the proposed settlements (collectively) represent an excellent result for the CFPs, and are in all respects fair, reasonable, and adequate.

24.     The settlements were reached with the assistance of well-respected mediators (including Magistrate Judge Berg) and were completed only after additional, numerous negotiations among all parties.

25.     The settlements are fair, reasonable, and adequate based on my extensive experience in complex class action litigation, including many other antitrust cases. The settlements are the product of substantial investigation, litigation and arm's-length negotiation and, most importantly, are in the best interests of the CFPs. Despite my strong belief in the merits of this litigation and likelihood of success at trial, I nonetheless believe that the benefits to the CFPs pursuant to the agreed upon terms substantially outweigh the risks of continuing to litigate the claims—namely, the delay that would result before class members receive any benefits should the action proceed trial, the possibility of a negative outcome at trial, and the possibility of a negative post-trial outcome should Defendants appeal. These settlements provide significant benefits now and are in the best interest of all CFPs.

## THE REQUESTED ATTORNEYS' FEES ARE REASONABLE

### A.   Skill and Experience of Plaintiffs' Counsel

26.   As the Court is aware from the prior submissions in this litigation, Lead Counsel and Class Counsel have extensive experience in complex civil class action litigation, including in other antitrust cases.

27.   CGL has been appointed Lead Class Counsel and is qualified to represent the CFPs in this case. Attached hereto as Exhibit 5 is a true and correct copy of my firm's résumé.

28.   Class Counsels' firm résumés are attached to their respective declarations.

29.   Lead and Class Counsel extensively investigated this case before it was filed. Since its filing, Lead and Class Counsel have prepared a number of complaints, successfully opposed motions to dismiss, successfully litigated a class certification motion before this Court and successfully defended that class certification decision at the Ninth Circuit, and prepared this case for trial.

30.   Since discovery commenced, Lead and Class Counsel have engaged in substantial and time-intensive discovery efforts, including the service of multiple sets of interrogatories and requests for production of documents, prepared for and defended numerous Plaintiff depositions, and taken the depositions of numerous defendant witnesses, third party witnesses, and expert witnesses.

31.   Lead and Class Counsel have also spent hundreds of hours reviewing and analyzing millions of pages of documents, including many reports containing large amounts of data. Lead and Class Counsel have spent additional time preparing responses to Defendants' document requests and interrogatories.

32.   Lead Counsel retained and worked extensively with highly qualified economic experts that analyzed the market at issue and conducted multiple regression analyses to determine if prices in the relevant market were raised above competitive levels and whether those overcharges were passed through to the CFPs. Lead Counsel spent a substantial number of hours consulting with these experts, preparing reports with these

experts, and presenting testimony from these experts at the evidentiary hearing in this matter on class certification.

33.    Lead Counsel spent substantial time negotiating settlements with defendants in this case, preparing for and participating in numerous good faith, arms'-length negotiation sessions with highly qualified mediators, including Magistrate Judge Berg.

34.    The collective experience of Lead Counsel, along with our in-depth knowledge of the facts and law concerning this case, qualifies us to represent the CFPs as Class Counsel.

**B.    The Number of Hours Claimed Is Reasonable**

35.    My firm maintained contemporaneous, detailed time records reflecting the time spent on this and other matters. In all instances, the timekeeper indicates the date and amount of time spent on a task, describes the work that was performed during the indicated time period, and identifies the case to which the time should be charged.

36.    Lead Counsel oversaw and directed the work of all Class Counsel to ensure efficiency, lack of duplication, and to limit the lodestar to the extent possible. We performed this task by assigning tasks to all attorneys involved, eliminating overlap and catch-up work as much as possible. We also worked to divide discovery tasks among the firms as much as possible.

37.    Throughout this action, Lead Counsel has sought to manage the administration and work division in this case in a systematic and efficient manner, coordinating work assignments through conference calls, working to avoid duplication of efforts or unnecessary work undertaken by any of Class Counsel, and ensuring that the skills and talents of counsel were put to use in an efficient and effective manner that maximized what each firm and attorney could contribute in a non-redundant way.

38.    The total number of hours expended on this litigation by my firm is 16,953.75 hours. The total lodestar for my firm is $13,514,901.00.

39.    The hours expended by my firms' professionals and their hourly rates is summarized in Exhibit 1.

40.    My firm's work (and the work of all Class Counsel) in this matter was on a wholly contingent basis. My firm devoted substantial resources to this matter and has not received payment for the hours of services performed or the expenses it incurred. In devoting the resources to this action, with no guarantee of payment, my firm forewent other opportunities.

41.    Class Counsels' hours and lodestar are set out in their respective declarations filed along with this Motion. A summary chart is provided in Exhibit 2.

42.    The number of hours dedicated to this case include: (1) engaging in extensive coordination efforts, (2) vetting potential class representatives, (3) extensively researching and filing the Complaint, as well as subsequent amended complaints, (4) opposing numerous motions, including motions to dismiss, (5) meeting and conferring regarding discovery disputes with defense counsel and negotiating agreements regarding discovery, (6) reviewing Defendants' production of millions of pages of documents and taking numerous depositions of key Defense witnesses, (7) coordinating with Plaintiff Class Representatives and producing their documents along with discovery responses, (8) undertaking substantial investigation of the claims in this case and consulting with several experts, (9) researching, drafting and successfully arguing a motion for class certification, and subsequently defending that class certification order before the Ninth Circuit, (10) attending multiple mediation sessions, and (11) negotiating the details of the Settlement Agreements over multiple months and drafting and arguing the preliminary approval motions.

43.    Moreover, additional work will be required. Lead Counsel must still: (1) prepare for and attend the final approval hearing, including the research and drafting of the final approval papers and responses to any objections; (2) oversee the Settlement through final approval and, should the outcome be favorable, oversee the distribution of the common fund; (3) should the Settlements be finally approved, oversee the claims administration process, including addressing any claim review issues; and (4) handle any appeals.

44.     Based on my extensive experience with comparable class action cases, the number of hours expended by Lead and Class Counsel are commensurate for a case of this broad scope, extreme complexity, and duration.

## C.     The Hourly Rates are Reasonable

45.     Lead and Class Counsel's firms are made up of well-respected leaders in the fields of complex antitrust class action litigation. Here, our hourly rates are reasonable in light of our significant experience, expertise, and skill.

46.     Lead and Class Counsel have brought to this case extensive experience in the area of antitrust class actions and complex litigation. Our hourly rates are in line with prevailing rates in this District and have been approved by other federal and state courts.

## CLASS COUNSEL SEEKS APPROVAL OF COSTS AND EXPENSES

47.     Class Counsel requests approval of the following costs and expenses: (i) reimbursement for past expenses in the amount of $514,886.31; and (ii) class representative service awards in the amount of an additional $2,000 per class representative. The requested costs are reasonable, necessary, and fair and warrant final approval.

48.     No objections to these costs were received as of August 16, 2022 (the day designated for the filing of this fee application). Class Counsel remains willing to address any objection (timely or not) at the November 15, 2024 Fairness Hearing. For the convenience of all CFPs, the Claims Administrator will post a copy of these motion papers detailing Class Counsel's request for fees and costs on the settlement website.

49.     As the Court is aware, having awarded costs to Class Counsel in 2022, during this lengthy and hard-fought litigation, Class Counsel incurred substantial expert costs, $2,134,918.87, as well as other expenses relating to, *inter alia*, document storage, depositions, e-discovery, translation services, research, and travel costs, bringing the total out-of-pocket expense reimbursement sought at the time of the COSI settlement to $2,507,500.25. Additional costs were incurred as the litigation continued against StarKist and Lion, with preparations for trial undertaken in 2022 and 2023. A breakdown of the unreimbursed expenses necessarily incurred by CFPs in pursuing the case against StarKist

and Lion (after the award of costs from the COSI settlement), is set forth in Exhibit 3.

50.     These are standard expenses incurred in prosecuting a civil lawsuit of this type and are the type of expenses billed by CGL to its paying clients. These standard expenses are also the type of expenses typically bill by other attorneys to paying clients in the marketplace. These expenses were reviewed by Lead Counsel and Class Counsel and are reflected in the regularly recorded and reported books and records of Lead and Class Counsel that are regularly kept in the ordinary course of business.

51.     These costs were reasonable and necessary to achieve the additional StarKist and Lion settlements in a complex antitrust conspiracy between the three dominant manufacturers of packaged tuna. In an extensive and robust notice plan, COSI Settlement Class Members were advised about the costs incurred up to the time of that "icebreaker" settlement. Notice was also provided to the CFPs at the time the Ninth Circuit affirmed the class certification decision. More recently, following preliminary approval of the settlements with StarKist and Lion, the CFPs were provided with updated Notice documents, informing them of the additional costs incurred in fully resolving the case, and of their ability to object to the settlements by August 30, 2024. Thus far, no such objections have been submitted, and Lead Counsel will inform the Court should any be submitted before the August 30, 2024 deadline.

## COSTS OF CLASS NOTICE AND CLAIMS ADMINISTRATION

52.     Under the terms of the COSI Settlement, $500,000 out of the $6,500,000 settlement may be used to cover the reasonable costs of Class and Settlement Notices and administration for the distribution of the Settlement Fund. Under the terms of the StarKist Settlement, $500,000 out of the $3,600,000 settlement may be used to cover the reasonable costs of Class and Settlement Notices and administration for the distribution of the Settlement Fund. Under the terms of the Lion settlement, $200,000 out of the $275,000 may be used to cover the reasonable costs of Class and Settlement Notices and administration for the distribution of the settlement funds.

53.     Notice and settlement administration service provider Kroll's already incurred

settlement administration fees and notice expenses from the COSI settlement through May 31, 2024, are $598,035.63. From June 1, 2024, to the completion of the case, Kroll estimates that it will incur class notice and claims administration costs of $159,802.45. As the Court appropriated $361,000 previously, an additional $396,838.08 is requested.

54.    Lead Counsel supervised Kroll's notice program for the COSI Settlement Class, Litigation Class, and this current round of notice by reviewing long form notices, website materials, and transactional data claim forms. Lead Counsel had constant interaction, through meetings, and consultation, through email, with Kroll as the settlement and claims administrator.

55.    The claims administrator has expended substantial efforts and incurred significant expenses in providing a robust and expansive class notice.

56.    Kroll has provided a declaration with attesting to the past and future expenses required to notice and administer this settlement with the Notice of Class Dissemination.

57.    Class Counsel believes that these expenses are in line with those approved by courts in other complex antitrust cases and an important element of the notice and claims process.

## CLASS REPRESENTATIVE SERVICE AWARDS

58.    Class representatives have had an opportunity to review the complaints, communicated with counsel, reviewed their records, engaged in discovery, and many have sat for depositions. Although they were awarded $5,000 apiece at the time of the COSI Settlement, Lead Counsel believe that the Class Representatives' efforts over the entire 9-year history of the litigation merits an additional award of $2,000 per representative, for a total of $36,000.

## EXHIBITS

A true and correct copy of the following exhibits is attached hereto:

Exhibit 1: Chart of Hours and Lodestar for Cuneo Gilbert & LaDuca, LLP Since Inception to July 31, 2024.

Exhibit 2: Lodestar Incurred by All Class Counsel Since the Inception to July 31,

13

2024.

Exhibit 3: Expenses Incurred by All Class Counsel Since COSI Cost Award to July 31, 2024.

Exhibit 4: Chart from Interrogatory Response by Chicken of the Sea.

Exhibit 5: CGL Firm Resume.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of August 2024 at St. Louis, Missouri.

By: /s/ *Michael J. Flannery*
Michael J. Flannery

14

# EXHIBIT 1

**Seafood Packaging**

Firm Name:                                              Cuneo Gilbert & LaDuca, LLP
Reporting Period:                                       Inception - July 31, 2024

| | Rate | Hours | Lodestar |
|---|---|---|---|
| Jonathan Cuneo (P) | $1,430 | 1,958.00 | $2,799,940.00 |
| Michael Flannery  (P ) | $1,130 | 482.65 | $545,394.50 |
| Joel Davidow (P) | $1,230 | 509.00 | $626,070.00 |
| Mark Dubester( P) | $1,130 | 6.50 | $7,345.00 |
| Monica Miller (P) | $1,130 | 17.50 | $19,775.00 |
| Katie Van Dyck  (P) | $980 | 3.25 | $3,185.00 |
| Daniel Cohen (P) | $980 | 918.80 | $900,424.00 |
| Jennifer Kelly  (P) | $850 | 67.25 | $57,162.50 |
| Victoria Sims  (P) | $850 | 0.60 | $ 510.00 |
| Blaine Finley (P) | $800 | 6,663.65 | $ 5,330,920.00 |
| Peter Gil-Montllor (P) | $800 | 1,903.10 | $1,522,480.00 |
| Christian Hudson (P) | $800 | 777.25 | $621,800.00 |
| Evelyn Li (P) | $800 | 8.00 | $6,400.00 |
| Lissa Morgans (P) | $800 | 235.10 | $188,080.00 |
| Taylor Asen (A) | $550 | 195.25 | $107,387.50 |
| Matthew Prewitt (A) | $550 | 1.00 | $550.00 |
| Cody McCracken (A) | $475 | 200.70 | $95,332.50 |
| Benjamin Elga  (A) | $450 | 134.00 | $60,300.00 |
| Zachary Freed (PL) | $325 | 1.00 | $325.00 |
| Aaron Zoellick (LC) | $325 | 107.55 | $34,953.75 |
| John Peter Yuill | $275 | 72.20 | $19,855.00 |
| Benjamin Appelbaum (PL) | $225 | 37.75 | $8,493.75 |
| Ally Bachart (PL) | $225 | 7.30 | $1,642.50 |
| Noah Bray  (PL) | $225 | 24.50 | $5,512.50 |
| Vienna Chan (PL) | $225 | 7.00 | $1,575.00 |
| Momena Haider  (PL) | $225 | 4.50 | $1,012.50 |
| Olivia Harwood  (PL) | $225 | 135.75 | $30,543.75 |
| Nicholas Hassett (PL) | $225 | 57.00 | $12,825.00 |
| Gregory Heeren  (PL) | $225 | 88.40 | $19,890.00 |
| Terra Johns (PL) | $225 | 124.80 | $28,080.00 |
| Leena Khan  (PL) | $225 | 3.00 | $675.00 |
| Jacob Levine (PL) | $225 | 159.55 | $35,898.75 |
| Tim Powell (PL) | $225 | 8.00 | $1,800.00 |
| Whitney Powers (PL) | $225 | 9.25 | $2,081.25 |
| Darren Villalobos  (PL) | $225 | 1,273.30 | $286,492.50 |
| Natasha Vij (PL) | $225 | 372.00 | $83,700.00 |
| Elanor Anthony (PL) | $175 | 5.25 | $918.75 |
| Melisa Azak  (PL) | $175 | 43.25 | $7,568.75 |
| Nadia Belkin (PL) | $175 | 2.50 | $437.50 |
| Alexandra Peck (PL) | $175 | 65.25 | $11,418.75 |
| Marie Schenk  (PL) | $175 | 5.00 | $875.00 |
| Camille Trotter (PL) | $175 | 85.80 | $15,015.00 |
| Roy Tiefer (PL) | $95 | 36.50 | $3,467.50 |
| Billy Czerwinski  (PL) | $50 | 135.75 | $6,787.50 |
| **Totals** | | **16,953.75** | **$13,514,901.00** |

# EXHIBIT 2

**In re Packaged Seafood Products Antitrust Litigation—CFP Expenditures**
Case No. 3:15-md-02670-DMS-MDD

Lodestar Incurred by All Class Counsel Since the Inception of this Litigation to July 31, 2024

| FIRM | AMOUNT |
|---|---|
| CGL | $13,514,901.00 |
| Barrett Law | $2,186,160.00 |
| Larson King | $459,112.50 |
| Lite DePalma | $674,490.00 |
| Lovelace | $558,315.00 |
| Derfner Alt. | $131,627.50 |
| Neal Harwell | $85,231.50 |
| Rupp | $201,421.50 |
| Shindler And. | $183,700.00 |
| Saveri | $680,135.00 |
| Thrash | $842,502.50 |
| Tostrud | $84,575.00 |
| | |
| **TOTAL** | $19,602,171.50 |

# EXHIBIT 3

**In re Packaged Seafood Products Antitrust Litigation—CFP Expenditures**
Case No. 3:15-md-02670-DMS-MDD

Expenses Incurred by All Class Counsel Since COSI Award to July 31, 2024

| DESCRIPTION | AMOUNT |
|---|---|
| Federal Express, Local Courier, etc. | $858.73 |
| Postage Charges | $0.00 |
| Long Distance | $2.82 |
| In-House Photocopying | $125.50 |
| Outside Photocopying | $0.00 |
| Travel (E.g., Transportation, Lodging, Meals) | $15,047.65 |
| Court Fees (E.g., Filing Fees) | $650.00 |
| Professional Fees (E.g., Expert/Investigators) | $463,905.43 |
| Witness/Service Fees | $0.00 |
| Court Reporter/Transcripts | $20,973.45 |
| Computer Research | $643.01 |
| Bank Fees, Mediation, Tech Support, Data Management | $12,679.72 |
| **TOTAL** | $514,886.31 |

These expenses are reflected in the regularly-recorded and reported books and records of lead and associated CFP counsel. These records are regularly kept in the ordinary course of business.

# EXHIBIT 4

**COSI Agreement Chart**

| Nature of Agreement | Time Period | Individuals with Information |
|---|---|---|
| Agreement between Bumble Bee and COSI to reduce the size of cans from 6 oz to 5 oz for branded tuna products | As early as March 2008 | John Sawyer, Shue Wing Chan |
| Agreement among Bumble Bee and COSI on timing of list price increase for branded tuna products | As early as June 2008 | Mike White, John Sawyer, Shue Wing Chan |
| Agreement among Bumble Bee and COSI on timing of net price increase for branded tuna products | As early as May 2010 | Mike White, John Sawyer, Shue Wing Chan |
| Agreement among Starkist, Bumble Bee and COSI on timing of list and/or net price increase for branded tuna products | As early as February 2011 | Mike White, John Sawyer, Shue Wing Chan |
| Agreement among Starkist, Bumble Bee and COSI on timing of list price increase for branded tuna products | As early as November 2011 | Mike White, John Sawyer, Shue Wing Chan |
| Agreement among Bumble Bee and COSI not to aggressively discount products through promotions for branded tuna products | As early as November 2011 | Shue Wing Chan |
| Agreement among Starkist, Bumble Bee and COSI not to produce a branded, FAD-Free Product | As early as February 2012 | John Sawyer, Shue Wing Chan |

*The individuals listed worked for COSI

# EXHIBIT 5

# CUNEO GILBERT & LADUCA, LLP
## FIRM PROFILE

We specialize in civil litigation in federal and state courts, including general commercial practice, antitrust, civil rights, government relations, products liability, administrative, securities, labor, and consumer law.

With a proven track record of winning in court and in Congress, we have represented and served clients since 1988 on issues of broad significance. Neither a mega-firm with 200 plus attorneys, nor a small firm with limited expertise, we are instead a group of over a dozen lawyers who together have decades of experience going to court to right wrongs. We focus on representing individuals and small businesses that have been victims of antitrust violations, faulty products, civil rights violations, and securities fraud.

**TRIAL AND APPELLATE**
Cuneo Gilbert & LaDuca attorneys are experienced advocates. Between them, our attorneys have:

- conducted numerous trials, the most recent of which resulted in a $113 million verdict on behalf of our clients, and ultimately, approval of a settlement valued at $117 million;

- argued contested motions in state and federal court and conducted quasi-adjudicative, administrative, and arbitral proceedings resulting in a final adjudication;

- argued appeals in federal circuit courts of appeal;

- argued appeals in state courts; and

- testified before Congress, state legislatures, or federal or state administrative bodies numerous times.

**GOVERNMENT SERVICE**
Cuneo Gilbert & LaDuca attorneys have held positions of trust in state or federal governments, including:

- One was the Executive Director of a Federal agency, the highest staff position; and

- Multiple were Assistant U.S. Attorneys or public defenders.

**ACADEMIC ACHIEVEMENTS/CLERKSHIPS**
Cuneo Gilbert & LaDuca attorneys have strong academic qualifications, and many were judicial clerks or interns. Multiple attorneys:

- Served as law review members or editors; and

- Served as judicial law clerks or interns.

**COMMUNITY AND CHARITY**
Cuneo Gilbert & LaDuca, LLP supports many charities in our community, both in the United States and abroad. Over the past five years, CGL has contributed to organizations supporting equal

justice, centers for human rights, groups combatting hunger, medical centers and universities in Israel, cancer research efforts, cancer survivor support, legal programs, law schools, juvenile justice initiatives, better government, and wounded veterans of the Iraqi and Afghanistan wars. CGL has also made a major financial commitment to help indigent clients seek representation in the District of Columbia through the "Raising the Bar" campaign of the D.C. Access to Justice Project.

## PARTNERS & FIRM MANAGEMENT COMMITTEE

**Charles J. LaDuca**, born Buffalo, New York, September 30, 1974.  Admitted to the New York State Bar, 2001; District of Columbia Bar, 2002; United States Supreme Court, 2009; United States Court of Appeals for the Second Circuit, 2007; United States Court of Appeals for the Third Circuit, 2004; United States Court of Appeals for the Sixth Circuit, 2012;  United States Court of Appeals for the Ninth Circuit, 2011; United States Court of Appeals for the District of Columbia Circuit, 2013; United States District Court for the Northern District of New York, 2002; United States District Court for the Western District of New York, 2004; United States District Court for the Southern District of New York, 2013; United States District Court for the District of Columbia, 2002; United States District Court for the Central District of Illinois, 2009; United States District Court for the District of Colorado, 2008; United States District Court for the Western District of Michigan, 2010. Education: George Washington University (B.A., 1996); Catholic University of America (J.D., 2000).  Member: District of Columbia Bar Association (Corporation, Finance and Securities Law Section); New York State Bar Association; New York State Society.

**Pamela B. Gilbert**, born New Brunswick, New Jersey, October 3, 1958.  Admitted to the New York Bar, 1985 (inactive); District of Columbia Bar 1986.  Admitted to practice in D.C. Education: Tufts University (B.A., *magna cum laude*, 1980); New York University (J.D., 1984). Experience: Consumer Program Director, United States Public Interest Research Group (1984-1989); Legislative Director, Executive Director, Public Citizen's Congress Watch (1990-1992; 1992-1994); Attorney, M+R Strategic Services (1995); Executive Director, Consumer Product Safety Commission (1996-2001); Chief Operating Officer, M+R Strategic Services (2001-2002). Honors and Activities: Board Chair, American Antitrust Institute (2010 - ); Board Member, Project on Government Oversight (2016 - ); Past member of the Board of Directors, National Environmental Law Center (2006 - 2016); Past member of Board of Directors, Equal Justice Works (2004 - 2012). Publications: PRIVATE ENFORCEMENT OF THE ANTITRUST LAWS IN THE UNITED STATES (edited by Albert A. Foer and Randy M. Stutz), "Proposals for Reform," written with Victoria Romanenko. Member: New York Bar Association; District of Columbia Bar Association; American Bar Association; American Association for Justice; Public Justice; Consumer Attorneys of California.

**Michael J. Flannery**, born January 22, 1963.  Admitted to the Virginia Bar, 1991; District of Columbia Bar, 1992; California Bar, 1998; Missouri Bar, 2001. Admitted to practice before the United States Court of Appeals for the Third Circuit; United States Court of Appeals for the Ninth Circuit; United States District Court for the Eastern District of Missouri, United States District Court for the Western District of Missouri, United States District Court for the Southern District of Illinois, United States District Court for the Northern District of Illinois, United States District Court for the Northern District of California, United States District Court for the Southern District of California, United States District Court for the Central District of California, United States District Court for the Eastern District of California, and the United States District Court for the District of Columbia. Education: University of Notre Dame (B.A., 1985); College of William and Mary Marshall-Wythe School of Law (J.D., 1991). Honors and Awards:  William and Mary Law Review (1989-91); Publication of Student Note: "Abridged Too Far:  Anticipatory Search Warrants and the Fourth Amendment," 32 WM. & MARY L. REV. 781 (1991) (reprinted in 14 Criminal Law Review (1992)); Teaching Assistant, William and Mary Legal Skills Program; Chief Justice, William and Mary Honor Council; Notre Dame Scholar/Edward W. Krause Academic

Scholarship. <u>Experience</u>: Cohen, Milstein, Hausfeld & Toll, Washington, DC, 1994-1997; Milberg Weiss Bershad Hynes & Lerach, San Diego, CA, 1997-2000; Carey, Danis & Lowe, St. Louis, MO, 2000-2012.

## ATTORNEYS

**R. Michael Smith,** born Manhattan, Kansas, May 16, 1948. Admitted to state bars of Virginia, Maryland, New York, Pennsylvania, Texas, and District of Columbia. Admitted to bars of United States Supreme Court; United States Courts of Appeals for First, Second, Third, Fourth, Sixth, Seventh, Ninth, Tenth, and District of Columbia Circuits; United States District Courts for Maryland, Eastern and Western Districts of Virginia, Eastern and Middle Districts of Pennsylvania, Southern and Eastern Districts of New York, District of Columbia, Eastern and Western Districts of Washington. <u>Education:</u> Colgate University (BA, *Cum Laude*, 1970); University of Chicago Law School (J.D. 1975); Georgetown University Law School (LLM 1985). <u>Member</u>: American Bar Association (Labor and Employment Law Section), District of Columbia Bar Association. <u>Honors and Awards</u>: College of Labor and Employment Lawyers; Samuel Klein *Pro Bono* Award. <u>Military Service</u>: United States Marine Corps (1970-1972, Honorable Discharge).

**Daniel M. Cohen**, born Detroit, Michigan, January 24, 1958. Admitted to the Florida Bar, 1989; District of Columbia Bar, 2001; Maryland State Bar, 2003; Virginia State Bar, 2010. Admitted to practice before the United States District Court for Maryland, 2002; United States District Court for the Middle District of Florida, 2003; United States District Court of District of Columbia, 2008; Eastern District of Virginia, 2010; Western District of Virginia, 2010; Southern District of Florida, 2013. <u>Education</u>: Ithaca College (B.A., 1981); Western New England School of Law (J.D., 1988). <u>Experience</u>: Criminal Defense Trial Attorney, Public Defenders Office, tried 70 jury trials, Jacksonville Florida, 1989-1999. <u>Member</u>: District of Columbia Bar Association (Antitrust and Consumer Law Section); Florida State Bar Association.

**Monica Miller**, born Queens, New York, May 16, 1966. Admitted to the Bar of the Commonwealth of Massachusetts, 1992; Louisiana Bar, 1993; District of Columbia Bar, 1994. Admitted to practice before the United States Courts of Appeals for the First Circuit, 1998, Fourth Circuit, 2010, Ninth Circuit, 2010, Tenth Circuit, 2011, D.C. Circuit, 2012; United States District Court for the District of Massachusetts, 1994; United States District Court for the District of the District of Columbia, 2008. <u>Education</u>: Tufts University (B.A., *magna cum laude*, 1988); University of Virginia (J.D., 1991). <u>Experience</u>: Law Clerk to the Honorable Edith Brown Clement, United States District Court for the District of Louisiana, 1991-1993; Berman, DeValerio & Pease, Boston, MA 1994-1999; sole practitioner, 1999-2008. <u>Languages</u>: French, Spanish.

**Mark H. Dubester,** born Washington, DC, May 17, 1955. Admitted to the District of Columbia Bar, 1980; Member of the United States District Court for the District of Columbia. <u>Education</u>: Tufts University (B.A., *magna cum laude,* 1977); New York University School of Law (J.D., 1980). <u>Experience</u>: Trial Attorney, United States Department of Justice, Antitrust Division (*AT&T* case) (1980-1983); Assistant United States Attorney, United States Attorneys Office for the District of Columbia (60 jury trials) (1983-2007); Counsel for the Committee and Special Impeachment Counsel, House Committee on the Judiciary (2007-2010); Deputy Chief Investigative Counsel, Special Inspector General for the Troubled Asset Relief Program

4

(SIGTARP) (2011-2012); Associate General Counsel/Prosecutor, Special Inspector General for Afghanistan Reconstruction (SIGAR) (2012-2017).

**Alexandra C. Warren**, born Bucharest, Romania, October 9, 1977. Admitted to the Florida Bar, 2016; New York Bar, 2003 (retired); Massachusetts Bar, 2003 (retired); Pennsylvania Bar, 2004 (retired); District of Columbia Bar, 2007 (retired).  Admitted to practice before the United States District Court for the Eastern District of Pennsylvania, 2005; United States District Court for the Western District of Pennsylvania, 2007; United States District Court for the District of Columbia, 2007; United States District Court for the Middle District of Pennsylvania, 2009; United States District Court for the Western District of Michigan, 2010; United States District Court for the District of Massachusetts, 2012; United States Court of Appeals for the Third Circuit, 2009; United States Court of Appeals for the Fifth Circuit, 2009; United States Court of Appeals for the Ninth Circuit, 2011; United States Supreme Court, 2009. <u>Education</u>: Brandeis University (B.A., *cum laude*, 1999); Fordham University Law School (J.D., 2002) (Fordham Environmental Law Journal, Staff). <u>Honors</u>: Archibald R. Murray Public Service Award (2002); Addison M. Metcalf Labor Law Prize (2002). <u>Experience</u>: Law Clerk to the Honorable John E. Jones III, United States District Court for the Middle District of Pennsylvania (2002-2004); Associate, MacElree Harvey, Ltd. (2004-2006). <u>Member</u>: Florida Bar Association.

**Jennifer E. Kelly**, born Elmira, New York, July 7, 1975. Admitted to the Maryland Bar, 2007, District of Columbia Bar, 2008. Admitted to practice before the United States District Court for the District of Columbia, 2012; United States District Court for the Eastern District of Michigan, 2016; United States Court of Federal Claims, 2018. <u>Education</u>: Boston University (B.A., *cum laude*, 1997), American University (J.D., *cum laude*, 2007; highest grade designation, Wills, Trusts, & Estates). <u>Experience</u>: Internship, Parliament of Great Britain (1995); Internship, District of Columbia Corporation Counsel (1996); Legislative Assistant, Office of Senator Robert C. Byrd (1998-2002); American University Civil Practice Clinic (Oral Argument before the Maryland Court of Special Appeals and Maryland District Court Small Claims Trial) (2006); Associate, Bracewell, LLP (2007-2009) (Paralegal, 2003-2007); Volunteer Attorney, American Red Cross (2010-2011). <u>Honors and Awards</u>: Super Lawyers Rising Star 2015-2017 for Washington, DC area.

**Brendan S. Thompson**, born Buffalo, New York, February 21, 1974. Admitted to the Maryland Bar, 2008; Admitted to practice before the United States District Court for the District of Colorado, 2008; United States District Court for the Central District of Illinois, 2008; United States Court of Appeals for the Ninth Circuit, 2011. <u>Education</u>: University of Detroit (B.S., 1997); visiting student, George Mason Law School; University of Baltimore Law School (J.D., 2008). <u>Experience</u>: Student Internships: Congressman Brian Higgins (D-NY) (2007); Chambers of the Honorable LeRoy F. Millett Jr., Circuit Court for the 31st Judicial Circuit of Virginia (2006); The Commonwealth's Attorney's Office for Prince William County, Virginia (2005). <u>Member</u>: Maryland State Bar Association, Bar Association of Baltimore City, American Bar Association; New York State Society.

**Christian Hudson**, born Southampton, New York, July 26, 1985. Admitted to the New York Bar, 2013. Admitted to practice before the United States District Court for the Southern District of New York, 2013; Eastern District of Texas, 2014; Eastern District of New York, 2018. <u>Education</u>: New York University (J.D., 2012); Yale University (B.A., with distinction, 2007). <u>Experience</u>:

Associate, Gibson, Dunn & Crutcher LLP (2012-2018). <u>Member</u>: The Sedona Conference; LeGaL, the LGBT Bar Association of New York; American Bar Association.

**Amanda G. Lewis**, born Manhasset, New York, August 27, 1980. Admitted to the New York Bar, 2009. Admitted to practice before the United States District Court for the Southern District of New York and United States Court of Appeals for the Second Circuit. <u>Education</u>: Columbia University School of Law (J.D., Harlan Fiske Stone Scholar, 2008); New York University (B.A., *summa cum laude*, 2002). <u>Experience</u>: Associate, Cravath, Swaine & Moore LLP (2008-2009; 2010-2012); Law clerk to the Honorable Lawrence M. McKenna, United States District Court for the Southern District of New York (2009-2010); Attorney, Federal Trade Commission (2012-2022); Counsel on Detail to the Subcommittee on Antitrust, Commercial, and Administrative Law, United States House of Representatives Committee on the Judiciary Committee (2019-2022). <u>Member</u>: Advisory Board for American Antitrust Institute ("AAI") (2023-Present); American Bar Association, Antitrust Section, Co-Chair U.S. Comments and Policy Committee (2022-Present); Vice Chair, Health Care and Pharmaceuticals Committee, (2017-2022); Executive Editor, Antitrust Health Care Chronicle (2014-2022); Advisory Board, American Antitrust Institute ("AAI") (2023-Present) <u>Awards</u>: Janet D. Steiger Award for contributions to Staples/Office Depot Litigation (2016); Janet D. Steiger Award for contributions to Sysco/U.S. Foods Litigation (2015); Janet D. Steiger Award for contributions to Phoebe Putney/Palmyra Litigation (2013); Above & Beyond Award, Sanctuary for Families (2009).

**Cody McCracken,** born Havre, Montana, March 9, 1997. Admitted to the District of Columbia Bar, 2022; Montana Bar (*pending 2023*). Admitted to practice before the United States District Court for the District of Columbia, 2023. <u>Education</u>: William & Mary Law School (J.D., 2022), Montana State University (B.A., 2018). <u>Member</u>: American Agricultural Law Association. <u>Publications</u>: *Old MacDonald had a Trust: How Market Consolidation in the Agricultural Industry, Spurred on by a Lack of Antitrust Law Enforcement, is Destroying Small Agricultural Producers*, 13 Wm. & Mary Bus. L. Rev. 575 (2022); *Good For Business, Bad For Animals: The Rise of Industrialized Agriculture and Its Impact on Agricultural Animal Welfare*, 14 J.A.E.L. (Fall 2022).

**Lissa Morgans**, born Washington, DC, August 4, 1992. Admitted to the District of Columbia Bar, 2017. Admitted to practice before the Unites States Court of Appeals for the Fourth Circuit, 2023. <u>Education</u>: George Washington University Law School (J.D. with Honors, 2017) (Senior Editor, Law Journal), University of Virginia (B.A. with Distinction, 2014). <u>Member</u>: American Bar Association Antitrust Section. <u>Publications</u>: *Freedom of Speech, The War on Terror, and What's YouTube Got to Do with it: American Censorship During Times of Military Conflict*, 69 Fed. Comm. L.J. 145 (2017). <u>Experience</u>: Law clerk, United States District Court for the Eastern District of North Carolina (2017-2020); Assistant Public Defender, Alaska Public Defender Agency (2020-2021); Staff law clerk, United States Court of Appeals for the Fourth Circuit (2022-2023).

## SPECIAL COUNSEL

**Robert J. Cynkar**, born Chicago, Illinois, April 22, 1952.  Admitted to the Illinois Bar, 1977; District of Columbia Bar, 1978; Virginia Bar, 1984.  Admitted to practice before the United States Supreme Court and before the United States Courts of Appeals for the First, Second, Third, Fourth,

Fifth, Sixth, Eighth, Eleventh, District of Columbia Circuit, and Federal Circuits. <u>Education</u>: Princeton University (A.B., *magna cum laude*, 1974); New York University School of Law (J.D., 1977) (Staff, Law Review). <u>Experience</u>: Associate, Fried, Frank, Harris, Shriver & Kampelman, Washington, D.C. (1977-1979); Counsel to Chairman Bob Dole, Subcommittee on Improvements in Judicial Machinery, United States Senate Committee on the Judiciary (1979-1981); General Counsel to Chairman Paul Laxalt, Subcommittee on Regulatory Reform, United States Senate Committee on the Judiciary (1981-1983); Assistant United States Attorney, Eastern District of Virginia (Criminal Division) (1983-1985); Special Assistant to Attorney General Edwin Meese (1985); Deputy Assistant Attorney General, Civil Division, United States Department of Justice (1985-1988); Associate, Shaw, Pittman, Potts & Trowbridge, Washington, D.C. (1988-1991); Partner, Shaw, Pittman, Potts & Trowbridge, Washington, D.C. (1991-1996); Founding Partner, Cooper & Kirk, Washington, D.C. (1996-2003); Partner, Egan, Fitzpatrick, Malsch & Cynkar, Vienna, Virginia (2004-2006); has tried over 25 cases in federal and state courts; has briefed numerous appeals in the majority of Federal Circuits and in State Supreme Courts, and in the U.S. Supreme Court, and personally argued many of those appeals. <u>Sample Noteworthy Cases</u>: *U.S. v. Fleming* (E.D. Va. 1984) (successful prosecution of a drunk driver who killed a mother of 11 for second-degree murder); *U.S. v. Winstar* (U.S. Sup. Ct. 1996) (holding that even the requirements of a broad change in regulatory policy by Congress cannot excuse the federal government's breach of contract); *U.S. ex rel. Ubl v. IIF Data Solutions* (E.D. Va. 2009) (successful defense of a government contractor accused of violating the False Claims Act in a bet-the-company case); *Livingston v. Virginia Dept. of Transportation* (Va. Sup. Ct. 2012) (establishing that a damaging for public use does not need to rise to the level of a taking to qualify for just compensation under the Virginia Constitution); *Settle v. RGR,* (Prince William Cir. Ct. 2012)(over $3 million jury award for the widow of a truck driver killed in a collision with a train). <u>Publications</u>: *Dumping on Federalism*, 75 U. COLO. L. REV. 1261 (2004); *The Changing Vocabulary of Administrative Law*, 43 FOOD DRUG COSM. L.J. 681 (1988); "*Buck v. Bell*: *'Felt Necessities' v. Fundamental Values?*" 81 COLUM. L. REV. 1418 (1981). <u>Member</u>: District of Columbia Bar Association; Virginia Bar Association; Fairfax County Bar Association; Federalist Society.

## OF COUNSEL

**Charles Tiefer**, born January 21, 1954. Admitted to the District of Columbia Bar. Admitted to practice before the United States Supreme Court; United States Court of Federal Claims. <u>Education</u>: Columbia University (B.A., *summa cum laude*, 1974), Harvard Law School (J.D., *magna cum laude*, 1977) (Member, Harvard Law Review). <u>Experience</u>: Law clerk, United States Court of Appeals for the D.C. Circuit (1977-1978); Trial Attorney, United States Department of Justice, Civil Rights Division (1978-1979); Assistant Senate Legal Counsel, United States Senate (1979-1984); Solicitor and Deputy General Counsel, United States House of Representatives (1984-1995); Professor of Law, University of Baltimore School of Law (1995 - ). <u>Publications</u>: VEERING RIGHT: HOW THE BUSH ADMINISTRATION SUBVERTS THE LAW FOR CONSERVATIVE CAUSES (U. Cal. Berkeley, 2004); GOVERNMENT CONTRACT LAW: CASES AND MATERIALS (co-author) (Carolina Academic Press, 2d ed., 2004); THE SEMI-SOVEREIGN PRESIDENCY (Westview, 1994); CONGRESSIONAL PRACTICE AND PROCEDURE (Greenwood Press, 1989); *Congress's Transformative "Republican Revolution" in 2001-2006 and the Future of One-Party Rule*, J. L. & POL. OF U. VA. (2008); *The Iran Debacle: The Rise and Fall of Procurement-Aided Unilateralism as a Paradigm of Foreign War*, UNIV. PENN. J. INT'L ECON. LAW (2008); *Can Appropriation*

*Riders Speed Our Exit From Iraq*? 42 STAN. J. INT'L L. 291 (2006); *The Gold Train Case: Successfully Suing the United States on Behalf of a Class of Holocaust-Era Victims*, 27 CLASS ACTION REP. 136 (2006); *Cancellation and Termination Without Forfeiture*, 54 MERCER L. REV. 1031 (2003).  Member: District of Columbia Bar Association.

**David W. Stanley**, born St. Louis, Missouri, May 30, 1944.  Admitted to the District of Columbia Bar, 1973; Virginia State Bar, 1972.  Admitted to practice before the United States Supreme Court, 1980; United States Court of Appeals for the District of Columbia Circuit, 1978; United States District Court for the District of Columbia, 1974.  Education:  University of Virginia (B.A., 1966); University of Virginia School of Law (J.D., 1972).  Experience: Law clerk to Honorable Gerard D. Reilly, Chief Judge, District of Columbia Court of Appeals (1972-1973).  Assistant U.S. Attorney, U.S. Attorney's Office for the District of Columbia, 1973-1984 (Fraud Division, 1981-1984); Assistant Chief Trial Attorney, Division of Enforcement, U.S. Securities and Exchange Commission (1984-1987); Of Counsel, Swidler & Berlin, Chartered (1987-1992).  Member: District of Columbia Bar Association (Corporation, Finance and Securities Law Section; Litigation Section); Assistant U.S. Attorneys Association (President, 1994-1995); Association of Securities and Exchange Commission Alumni; The Barristers.

**Bradford E. Kile**. Admitted to the District of Columbia Bar. Admitted to practice before the United States Supreme Court, United States Court of Appeals for the Federal, Fourth, and DC Circuits, United States District Court for the District of Columbia and Eastern District of Virginia. Registered to practice before the United States Patent and Trademark Office – Reg. No. 25,223. Education: The Ohio State University (B. Mech. Engr., 1966); The George Washington University (J.D., 1970; LL.M. 1978). Publications: *Legal 'X-Games' Risk: Officer and Director Passive Retention of Personal Liability for Patent Infringement*, 7 IP Litigator 11 (2001); "Lotus v. Borland-Copyright Protection of Computer Software in a State of Transition," Copyright World, 1995. Member: American Bar Association; Fellow of the Inn – Giles S. Rich American Inn of Court; American Intellectual Property Law Association; Federal Circuit Historical Society.