1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS (MSB) |
| | **ORDER GRANTING END PAYER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENTS** |
| This filing relates to the End Payer Plaintiff Class Action Track | |

Pending before the Court is the End Payer Plaintiffs ("EPPs") motion for preliminary approval of settlements with Defendants StarKist Co. and its parent Dongwon Industries Co., Ltd. ("DWI" and, collectively, "StarKist") and Defendants Lion Capital LLP, Lion Capital (Americas), Inc. and Big Catch Cayman LP (collectively, "Lion Companies"). The total settlement fund benefits for the EPPs in this matter, combined with a partial settlement already granted Court approval, is $152.2 million.[1]

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (internal quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976). The Court's approval is required for any settlement of a class action. *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1008 (E.D. Cal. 2019) (citing Fed. R. Civ. P. 23(e)). There are multiple steps to the approval process. *Id.*

As a first step, the Court must determine whether the proposed settlements warrant preliminary approval. *Id.* Preliminary approval is appropriate if the Court determines that it is likely to (i) certify the settlement class and (ii) grant final approval to the proposed settlements. Fed. R. Civ. P. 23(e)(1)(B). Since the Court previously certified the EPP Classes, which are substantially the same as the Settlement Class proposed by the parties, the first prong is readily met here. Fed. R. Civ. P. 23(e)(1)(B)(ii).

As to the second prong, the Court considers whether it is likely to approve the settlements at the fairness hearing. *See* Fed. R. Civ. P. 23(e)(1)(B)(i) and (e)(2). In

---

[1] On July 15, 2022, the Court granted final approval to the Partial (COSI) Settlement. ECF No. 2871. Under the COSI Settlement Agreement, the Maximum Settlement Amount was $20 million. ECF No. 2552-3 at 8.

ORDER

CASE NO. 15-MD-2670-DMS (MSB)

making this assessment, the Court need not conduct a full-fledged inquiry into whether it would grant final approval to the Settlement. Instead, at the preliminary stage, courts therefore ask merely whether the agreement "falls within the range of possible approval." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1036 (N.D. Cal. 2016), *quoting In re Tableware Antitrust Litig.*, 484 F.Supp.2d 1078, 1080 (N.D.Cal. 2007)); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 895 F.3d 597, 610 (9th Cir. 2018).

In reviewing the totality of the factors discussed in detail below, the Court finds that the proposed settlements are well within the range of possible approval. The StarKist and Lion Companies Settlement Agreements are likely to be approved as fair, adequate, and reasonable at the fairness hearing and the proposed notice plan is reasonable under the circumstances. The Court GRANTS the EPPs' Motion for Preliminary approval.

## I.    BACKGROUND

The general background and history of this litigation is well-documented and extensively discussed in the Court's prior orders. ECF Nos. 2454, 2654.

### A.    Litigation History

The Court previously certified the EPP Class in this case, following a three-day evidentiary hearing. ECF No. 1931 ("Class Order") which was upheld by the Ninth Circuit. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 684-685 (9th Cir.), cert. denied sub nom. *StarKist Co. v. Olean Wholesale Grocery Coop., Inc., et al.*, 143 S. Ct. 424 (2022).

The proposed Settlements were reached only after the parties had prepared for trial in this matter. The Settling Parties attended a trial setting conference, complied with all pre-trial disclosure and exchange deadlines, prepared and argued motions *in limine* ("MIL"), filed proposed jury instructions and a pre-trial order, and attended the meeting of counsel. *See* ECF Nos. 3189-3207 (MILs), 3211-3232 (MIL Oppositions),

3237-3239 (Memoranda of Facts & Contentions of Law), 3244 (MIL Hearing), and 3251-3255 (Proposed Jury Instructions and Objections).

### B.    Settlement Negotiations

The parties made notable attempts to settle the matter throughout the litigation. EPPs have engaged in informal settlement discussions with the Settling Defendants since mid-2019. Manifold Decl., ¶¶ 17, 18, 22 (including Bumble Bee). The EPPs and StarKist also participated in multiple settlement conferences with Magistrate Berg on October 4, 2023, April 25, 2024, May 22, May 23, 2024, and June 3, 2024. *Id.* at ¶ 20, 21. With the oversight and active participation of Magistrate Berg, the EPPs and StarKist finally reached a settlement in principle at the end of the June 3, 2024 conference.

The EPPs and the Lion Companies also attended a joint settlement conference before Magistrate Berg on August 7, 2023. *Id*. at ¶ 23. At the Lion Companies' request, the EPPs participated in a private mediation session overseen by retired United States District Judge Daniel Weinstein of JAMS in San Francisco, California on June 7, 2024. *Id*. On June 17, 2024, with the July 16, 2024 trial date imminent, the EPPs met with the Lion Companies (and their insurers and principals) in a settlement conference with Magistrate Berg that culminated in the parties reaching a settlement in principle. *Id*., ¶ 24. According to Counsel, Lion Companies and its founders' financial conditions were fully evaluated by Settlement Class Counsel, as well as by Magistrate Berg. *Id*. The nine-hour mediation session concluded with an agreement that the Lion Companies would pay $6 million to the EPP Consumer Classes to resolve the claims against them. *Id*.

Based on this record, the Court finds that the proposed settlements were the result of arm's-length negotiations.

## II.   SETTLEMENT TERMS

The material terms of the Settlement Agreements[2] are as follows:

---

[2] Capitalized terms are defined within the StarKist and Lion Settlement Agreements.

**Monetary Terms**. The key monetary terms of the StarKist Settlement are as follows: (1) the settlement amount is one hundred and thirty million dollars ($130,000,000) to be paid over a period of time as set forth in the StarKist Settlement Agreement (¶ 1.2); (2) under Paragraph 5.3 up to one million ($1,000,000) from the first $32 million cash payment to be paid upon Preliminary Approval "shall be used for settlement notice and administration of claims." StarKist SA, ¶¶ 1.24, 5.3.

The settlement amount in the Lion Companies Settlement Agreement is six million dollars ($6,000,000). Lion Companies SA, ¶ 1.2. Up to two hundred thousand dollars ($200,000) from the first $3 million cash payment to be paid upon Preliminary Approval "shall be used for notice and administration of claims." Lion Companies SA, ¶ 1.22.

**Combined Total Settlement Benefits.** The $136 million fund created by the proposed settlements, along with the $16.2 million in benefits from the COSI Settlement (in total referred to as the $152.2 million "Total Settlement Benefit") *See* StarKist SA, ¶ 1.2; Lion Companies SA, ¶ 1.22; ECF 2871 (Order re: Final Approval of COSI Settlement).

**Settlement Class Definition.** The Settlement Class definition is substantially the same as the EPP Classes certified by the Court. *See* ECF No. 1931 (Class Order); StarKist SA, ¶ 1.8; Lion Companies SA ¶ 3; *see also* ECF No. 2871 (Order approving the COSI Settlement).[3] The only difference is that the Settlement Class excludes the opt-outs so ordered by the Court and includes the three individual Illinois Plaintiffs. *See* ECF Nos. 3120, 2871. The Settlement Class Counsel and Settlement Class Representatives are also the same as Class Counsel and Class Representatives previously appointed by the Court in the Class Order. ECF No. 1931; StarKist SA ¶ 1.26; Lion Companies SA, ¶ 3. As the Court previously found, the Consumer Classes

---

[3] Excluded from the Class are all governmental entities, Defendants' parent, subsidiary or affiliate thereof, their officers, directors, employees, and immediate families, as well as any federal judges or their staffs. *Id.*

meet the requirements of Rule 23(a) (numerosity, common questions, typicality and adequacy) and the requirements of Rule 23(b)(3) (common issues predominate as to antitrust violation, impact and damages, and a class action is superior to other methods of adjudication), the same Settlement Class meets these requirements. ECF No. 1931 at 46-58; *see also* ECF No. 2871 at 6.

**Releases.** The proposed releases in both Settlement Agreements are substantially similar and appropriately narrow to claims in this litigation. The EPPs have agreed to release claims against StarKist "arising out of, resulting from, or in any way related to EPPs' purchases of Packaged Tuna, including any conduct concerning the pricing, selling, discounting, marketing, manufacturing, distribution, or promotion, of Packaged Tuna, during the period from June 1, 2011 to July 31, 2015." StarKist SA, ¶ 1.21 The Released Claims also include all claims that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint. *Id.* The StarKist Settlement Agreement also contains a waiver of California Civil Code § 1542. *Id.* at ¶ 8.2. Similarly, the EPPs have agreed to release claims against the Lion Companies, which arise out of, result from or relate to "any conduct concerning the pricing, selling, discounting, manufacturing, distribution, promotion, or marketing of Packaged Tuna Products during the period from June 1, 2011 to July 31, 2015 that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint." Lion Companies SA, ¶ 1.19.

**Attorneys' Fees and Costs.** As to Settlement Class Counsel's attorneys' fees and expenses, "the allowance or disallowance by the Court" of any application is not part of the Settlement Agreement(s) and will "be considered by the Court separately" as part its consideration of fairness, reasonableness, and adequacy of the settlement. StarKist SA, ¶ 14.1; *see also* Lion Companies SA, ¶ 14.1. Any order relating to the application for fees and expenses "shall not operate to terminate or cancel" the Settlement Agreement or "delay the finality of the Judgment." *Id.*

1   **Notice Costs.** StarKist and Lion Companies have agreed to pay $1.2 million
2   into the Settlement Fund for the costs of notice and claims administration to be
3   dispersed within 30 days after Preliminary Approval. *See* Lion Companies SA, ¶ 1.22;
4   StarKist SA, ¶¶ 1.24, 5.3.

5   ## III.   THE COURT CERTIFIES THE SETTLEMENT CLASS.

6   The Court previously certified the Consumer Classes, which are now the
7   Settlement Class in the proposed settlements, minus prior opt-outs and the addition of
8   the Illinois plaintiffs, certification of the Settlement Class is appropriate for all the
9   reasons set forth in the Class Order. *See* ECF No. 1931, upheld on appeal in *Olean*
10  *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 684-85 (9th
11  Cir.), cert. denied sub nom. *StarKist Co. v. Olean Wholesale Grocery Coop., Inc., et*
12  *al.*, 143 S. Ct. 424 (2022). The Court also appointed Wolf Haldenstein Adler Freeman
13  & Herz LLP as Class Counsel for the EPP Class and the named plaintiffs as the Class
14  Representatives in this case and makes the same appointments on behalf of the
15  Settlement Class. *Id.*

16  ## IV.   THE COURT FINDS THAT THE PROPOSED SETTLEMENTS ARE
17  ## LIKELY TO BE APPROVED AT THE FAIRNESS HEARING

18  The Court must consider whether it is likely to approve the settlements at the
19  fairness hearing. Fed. R. Civ. P. 23(e)(1)(B)(i). The Ninth Circuit has identified the
20  following factors, commonly referred to as the *Churchill Village* factors, in assessing
21  whether a class settlement is fair:

22  (1) the strength of the plaintiff's case;
23  (2) the risk, expense, complexity, and likely duration of further litigation;
24  (3) the risk of maintaining class action status throughout the trial;
25  (4) the amount offered in settlement;
26  (5) the extent of discovery completed and the stage of the proceedings;
27  (6) the experience and views of counsel;
28  (7) the presence of a governmental participant; and

1   (8) the reaction of the class members to the proposed settlement.

2   *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("*In re*

3   *Bluetooth*") (quoting *Churchill Vill., L.L.C. v. Gen. Elec., Co.,* 361 F.3d 566, 575 (9th

4   Cir. 2004)); *Chen v. Chase Bank USA, N.A.*, No. 19-cv-01082, 2020 WL 3432644, at

5   *4 (N.D. Cal. June 23, 2020).

6       Rule 23(e)(2) also requires courts to consider whether: (1) class representatives

7   and counsel have adequately represented the class; (2) the proposal was negotiated at

8   arm's-length; (3) the settlement provides adequate relief for the class; and (4) the

9   proposal "treats class members equitably relative to each other." These factors are not

10  exclusive. This Court may consider any combination of factors that it deems

11  appropriate to assess the fairness of the settlement. *Bellinghausen v. Tractor Supply*

12  *Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (discussing *Churchill Village* factors);

13  *Chen,* 2020 WL 3432644, at *4 (noting that "different factors may predominate in

14  different factual contexts").

15      In reviewing the totality of the factors, the Court finds that these Settlements

16  are well within the range of possible approval.

17      **A. The *Churchill Village* Factors Favor Preliminary Approval.**

18      Under the first and second *Churchill Village* factors, this Court considers the

19  strength of plaintiffs' case and costs and risks at trial and the delay of any appeal. *See*

20  Fed. R. Civ. P. 23(e)(2)(C)(i). The case against the Settling Defendants regarding

21  liability is strong. Notwithstanding the guilty pleas, criminal convictions, and partial

22  summary judgment, EPPs still needed to prove their damages for the entire Class

23  Period at trial and whether DWI and the Lion Companies were liable along with

24  StarKist. Proving liability and class-wide damages for the entire Class Period would

25  inevitably result in a lengthy and costly 'battle of the experts' at trial. Even if

26  successful at trial, with potential treble damages of over $600 million, the Settling

27  Defendants may not have been able to sustain a verdict of that size. Indeed, Bumble

28

ORDER                                                    CASE NO. 15-MD-2670-DMS (MSB)

Bee already declared bankruptcy, leaving a shell from which no recovery could be achieved. All these facts weigh in favor of preliminary approval.

As to the third factor, the risk of maintaining class certification through trial favors preliminary approval. *In re Bluetooth,* 654 F.3d at 946; *Bellinghausen*, 306 F.R.D. at 255 (citing risk of maintaining certification "if the litigation were to proceed"); *Chen v. Chase Bank USA, N.A.*, 2020 WL 3432644, at *4 (N.D. Cal. 2015) (same). Class certification was widely disputed, appealed to Ninth Circuit and the Supreme Court. The risk of further appeal after trial weighs in favor of approval.

The fourth *Churchill Village* factor, the amount obtained, also supports preliminary approval. *See also* Fed. R. Civ. P. 23(e)(2)(C). The Total Settlement Benefits are considered in light of the limits on potential recovery. Regression modeling by the EPPs' expert, Professor David Sunding, shows single damages equal to $224 million.[4] Trebled, this is approximately $672 million. Based on the maximum single damages of $224 million for the entire conspiracy period, a total settlement recovery of $152.2 million is nearly 68% of the maximum single damages and over 20% of the maximum treble damages. "Maximum" damages are based on several assumptions: the jury believes the EPPs' damages expert (not the Settling Defendants' expert); and the jury awards full damages for all states. EPPs faced substantial risks at trial. The substantial recovery here warrants preliminary approval.

These proposed settlements also compare favorably with other antitrust and class action settlements that have received preliminary approval. In *Rodriguez v. W. Publ'g Corp.*, 563 F. 3d 948 (9th Cir. 2009), the Court of Appeals upheld approval of an antitrust settlement that was only 30% of the calculated single damages as fair, reasonable, and adequate. *Id.* at 955, 957, 964. *See also In re Lithium Ion Batteries Antitrust Litig.*, No. 4:13-md-02420-YGR (DMR), 2017 WL 1086331, at 4* (N.D. Cal. Mar. 20, 2017) (Overruling objections, the Court agreed that "the settlement represents 11.2% of the single damages attributable to Sony sales" and that the

---

[4] *See* Expert Merit Report of David Sunding dated Feb. 15, 2019, p. 17, Table 2.

possibility of the settlement being higher does not mean it was not fair and reasonable.); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058 JST, 2017 WL 565003, at *4, *6 (N.D. Cal. Feb. 13, 2017) (granting preliminary approval of settlement representing 24% of single damages, and previously finding 20% of single damages to be a good recovery in other cases.)

The fifth and sixth *Churchill Village* factors also support preliminary approval. This litigation began over nine years ago and was settled on the eve of trial. Because of the procedural posture of this case, EPPs were in the best position to evaluate the value of the Settlements. *See Bravo v. Gale Triangle, Inc.*, No. CV 16-03347 BRO (GJSx), 2017 WL 708766 at *11 (C.D. Cal. Feb. 26, 2017) (finding that extensive discovery shows that counsel fully understand the case's factual and legal issues). Furthermore, EPPs are represented by Settlement Class Counsel with substantial experience in litigating and evaluating antitrust class actions. Manifold Decl., ¶ 3. Counsel have shown they are ready and able to try this case to verdict, but believe this to be an excellent settlement under the circumstances and support its approval. *Id*. The views and experience of Class Counsel also weigh in favor of approval.

The final two *Churchill Village* factors – the presence of a governmental participant and the Class Members' reactions – need not be considered at this time. While the DOJ brought criminal charges, it did not seek restitution in any of its cases. The Settlement Agreement(s) require the Defendants to serve Class Action Fairness Act ("CAFA") notices on the DOJ and any relevant states, providing them the opportunity to "raise any concerns that they have during the normal course of the class action settlement procedures." *Bellinghausen*, 306 F.R.D. at 258; 28 U.S. Code § 1715 *et seq.*; Manifold Decl. ¶ 40; *see also Procedural Guidance for Class Action Settlements* § 10 (CAFA compliance). Settlement Class Members will also have the opportunity to object and provide feedback at the Fairness Hearing. The Court will therefore defer consideration of the final two *Churchill Village* factors until the Fairness Hearing.

## B. Rule 23(e) Factors Support Preliminary Approval

As noted above, in addition to the *Churchill Village* factors, Rule 23(e)(2) requires courts to consider whether (1) class representatives and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the settlement provides adequate relief for the class; and (4) the proposal "treats class members equitably relative to each other."

First, Class Counsel was ready, able, and willing to try this case to verdict just a few weeks before these substantial settlements were reached. The Courts finds that the EPPs and their Class Counsel have adequately represented the Consumer Classes' interest.

Second, based on the multiple contentious settlement negotiations overseen by Magistrate Berg and other private mediators since 2019, the proposed Settlements were the result of arm's-length negotiations and not the result of collusion. Manifold Decl., ¶¶ 3-8, 17-24. Courts also look at issues such as "an agreement by the defendant not to contest class counsel's attorney's fees" or "an agreement to allow unawarded attorneys' fees to revert to the defendants." *In re Volkswagen "Clean Diesel" Mktg. Litig.*, 895 F.3d at 611 & n.19 (citing *In re Bluetooth*, 654 F.3d at 947); *Procedural Guidance for Class Action Settlements*, § 1(h). These issues do not exist in the proposed settlements. Such concerns are moot. *See* StarKist Settlement Agreement, ¶¶ 14.1, 14.2, 14.3.

Third, the amount recovered ($152.2 million Total Settlement Benefit) is more than adequate based on its equivalence to nearly 68% of the maximum single damages as calculated by the EPPs' damages expert. *Id.* Considering the substantial trial costs (multiple experts, IT Support, and other logistics such the EPPs' travel expenses) along with the very real risks of taking an antitrust case to verdict, long post-trial appeals, and collectability issues, the proposed settlements provide adequate relief. *See* Fed. R. Civ. P. 23(e)(2)(C)(i).

The effectiveness of distributing notice and relief to the Settlement Class

Members is adequate and discussed below. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). The Settlement Notices and Settlement Website will provide substantial detail as to the terms of the requested attorneys' fees, costs, expenses, and service awards, including the timing of payment. *See* Fed. R. Civ. P. 23(e)(2)(C)(iii); Intrepido-Bowden Decl., Exs. A-G (various forms of settlement notice). All short form settlement notices provide links to access these terms in further detail. *Id.*

Fourth, the Settlement Agreements treat class members equitably, providing *pro rata* distribution of the Settlement Fund after deduction of any Court-ordered awards. Therefore, the StarKist and Lion Companies Settlement Agreements satisfy Rule 23(e).

Finally, according to Counsel, all agreements made "in connection with" the settlement proposal have been identified. *See* Fed. R. Civ. P. 23(e)(2)(C)(iv) and (e)(3).

## V.   THE PROPOSED NOTICE, CLAIMS AND DISTRIBUTION PLANS ARE REASONABLE AND ADEQUATE.

Counsel retained a well-respected Claims Administrator and submitted a proposed Settlement Notice for the Court's review along with a plan for providing notice to Settlement Class members. *See* ECF No. 2552-6 (reciting JND's class action claims administration experience).

**Notice Plan**. JND prepared a comprehensive and robust settlement notice plan to notify the Settlement Class. *See generally* Declaration of Gina Intrepido-Bowden ("Intrepido-Bowden Decl."). The Court previously approved JND as Claims Administrator for the COSI Settlement and to disseminate the Class Notice. ECF Nos. 2734 and 2781. The prior experience of JND in this case promotes greater efficiency.

The Notice informs the Settlement Class that the EPPs will seek attorney fees of up to 33% of the Settlement Fund, net of expenses, and that EPPs seek total reimbursement of litigation costs and expenses of $1,618,489.24 as follows: (i) reimbursement of plaintiffs' counsel's reasonable costs and litigation expenses

1  incurred since May 2021 in the amount of $1,412,110.13; and (ii) a request that
2  $206,379.11 be distributed to COSI as a reimbursement for administration costs that
3  will be common to both the proposed settlements and the COSI Settlement.[5] EPPs also
4  request a Service Award for the over 60 individual plaintiffs in the amount of
5  $294,000.

6          JND will provide direct notice to Class Members who filed claims in the COSI
7  Settlement, combined with a robust four-week media campaign that is estimated to
8  reach over 70% of likely Settlement Class Members. *Id.*, ¶ 8. The FJC's *Judges' Class*
9  *Action Notice and Claims Process Checklist and Plain Language Guide* considers a
10 Notice Plan with a high reach (above 70%) effective. *Id.*, ¶ 7. The media campaign
11 includes an extensive digital effort, publication in *People* magazine, direct notice, an
12 interactive case website, and a 24-hour toll-free number. *Id.*, ¶¶ 14-23.

13         **Notice Form**. The Court finds that the proposed form of the settlement notice
14 complies with Fed. R. Civ. P. 23(c). *See* Intrepido-Bowden Decl., Ex. G (Settlement
15 Class Notice (Long Form)). Consistent with Rule 23(c)(2)(B), the proposed notice
16 describes "(i) the nature of the action; (ii) the definition of the [Settlement] Class
17 certified; (iii) the class claims, issues, or defenses; (iv) [a directive] that a Settlement
18 Class Member may enter an appearance through an attorney if the member so desires;
19 and (v) the binding effect of judgment on members [of the Settlement Class] under
20 Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B); Intrepido-Bowden Decl., Ex. G.

21
22 _____
   [5] Under the COSI Settlement Agreement, the Maximum Settlement Amount was $20
23 million. ECF No. 2552-3 at 8. Under Paragraphs 11(b) and 18, up to $5 million could
24 be used to cover the reasonable costs of the Settlement Notice and administration of
   the $15 million Settlement Fund. Since the reasonable costs of Settlement Notice were
25 less than $5 million, the difference was refunded to the COSI Defendants. *Id.* at 14
26 and 15. The Court also approved an Expense Award of $4,155,027.67 to reimburse
   Class litigation costs incurred as of May 2021. ECF No. 2872 at 4:17-19. The COSI
27 Settlement provided $1.4 million in notice and administration benefits. COSI now
28 requests reimbursement for $206,379.11 in administrative costs incurred in 2024
   relating to claims administration which benefits the proposed settlements.

ORDER                                          CASE NO. 15-md-2670-DMS (MSB)
                                    12

The Settlement Notice also provides the terms of any proposed award of attorneys' fees, costs, expenses, and service awards and timing, and provides an opportunity for Settlement Class Members to object to either the Settlements or the proposed fees, expenses, and service awards. Intrepido-Bowden Decl., Ex. G at ¶¶ 1-2, 7-8. Class Counsel will publish on the Settlement Website and submit full briefing supporting their request for attorneys' fees and expenses and service awards a minimum of fourteen (14) days before the Objection Deadline. This will allow Settlement Class Members time to consider the motion before the objection deadline.

**No Further Exclusion or Opt-Out Opportunity.** The Settlement Class was given two prior opportunities to request exclusion: at the Class Certification stage, and as part of the COSI Settlement so no additional opportunity to opt-out is provided. *See* ECF Nos. 2871, 3120. Due process only requires that class members be given a single opportunity to opt out of a certified class. *Low v. Trump Univ., LLC*, 881 F.3d 1111, 1121 (9th Cir. 2018). The notice provides a reasonable to opportunity object to the Settlement, satisfying. Fed. R. Civ. P. 23(e)(4)-(5).

**Claims Process.** Digital ads will include an embedded link and the print ad a QR code, both of which allow Settlement Class Members to receive more information about the proposed Settlements as well as complete and file an on-line Claim Form. Intrepido-Bowden Decl., ¶¶ 16, 24, Ex. H (Claim Form). The same claims process was approved by the Court in the COSI Settlement. ECF No. 2781. The Settlement Notice documents also provide a toll-free number to contact JND with any questions. *Id.* at Ex. H. According to Ms. Intrepido-Bowden, Vice President at JND Legal Administration and a judicially recognized legal notice expert, claimants "generally favor online claims forms" because the process is user-friendly and convenient. *Id.*, ¶¶ 1-2, 25-26. Online claim processing is faster, easier, more efficient, and results in fewer deficiencies. *Id.* at ¶ 25. If a Settlement Class Member is either unable or unwilling to file a claim on-line, she may request a printed claim form and either return it to JND via United States Mail (post-marked before the Claims Cut-off Date) or

create a pdf of the completed Claim Form and e-mail it to JND (before the Claims Cut-off Date). *Id.*, ¶¶ 27-28. JND will then review, determine the validity of, process and hold on to all Claim Forms submitted by claimants and flag issues. *Id.*, ¶ 31.

**Distribution Plan.** Each Authorized Claimant in the Settlement Class "shall receive a *pro rata* share of the Distribution Funds as described in the Settlement Class Notice."[6] *Id.* ¶ 29, Ex. G, ¶ 7. According to the proposed distribution plan, JND will efficiently process millions of Settlement Class member claims and effectively distribute monies to Authorized Claimants through the means to be elected by the claimant (usually electronic). Intrepido-Bowden Decl., ¶¶ 24-45. Distribution will occur after final approval of the proposed Settlements, once all appeals are exhausted and all monies are collected under the Settlement Agreements, The distribution plan also includes a *de minimis* claim threshold. If the total final payment of a particular claim is less than $5.00, no distribution will be made to the Authorized Claimant. *Id.* ¶ 33, Ex. H, Ex. G. The proposed distribution process satisfies Federal Rule of Civil Procedure 23(e) (2) (C) (ii).

**Costs of Notice and Claims Administration.** JND estimates that the proposed Notice Plan will cost approximately $750,000 to $1.2 million. Manifold Decl., ¶ 40. As part of Preliminary Approval, the EPPs request permission to pay up to $1.2 million in reasonable invoices submitted by the Claims Administrator for the media campaign in the Proposed Settlement Notice Plan prior to the Fairness Hearing. *Id.* ¶ 39. Given its depth of reach and the need to reach tens of millions of Settlement Class Members, an interim distribution of $1.2 million for notice costs prior to the Fairness Hearing is appropriate and is approved under the terms provided in the Settlement Agreements. *See* StarKist SA, ¶ 5.3; Lion Companies SA, ¶ 1.22.

---

[6] "Distribution Funds" refers to the Total Settlement Benefits ($152.2 million), less notice and administration costs, and any attorneys' fees, cost and litigation expenses and Service Awards awarded by the Court.

ORDER

As to the Claims Administration, depending on the number of claims received, a preliminary estimate of the costs of processing claims, running fraud analysis, and dispersing the Distribution Funds is between $2.1 and $5.8 million. Intrepido-Bowden Decl., ¶ 42. The Court deems this preliminary estimate reasonable for the Settlement Notice given the total possible number of class members and claims.

## VI. REQUESTS FOR COSTS OF CLAIMS ADMINSITRATION, ATTORNEYS FEES AND EXPENSES ARE REASONABLE.

EPPs seek the following Attorneys' Fees, Expenses, and Service Awards for the Class Representatives,

**Attorneys' Fees Award.** Class Counsel seeks an award of attorneys' fees not to exceed one-third of the Total Settlement Fund ($152.2 million), *net* of any expenses, Service Awards, and Notice Costs. Subject to the Court's further review of Counsel's motion in support of fees and expenses, proposed Attorneys' Fees in the amount of one-third (33 1/3%) of the Total Settlement Fund (after netting out expenses and service awards) is within the range of reasonableness. The Court finds that the analysis of the settlement involved in *In re Capacitors Antitrust Litig.*, No. 3:14-cv-03264-JD, 2023 WL 2396782 (N.D. Cal. Mar. 6, 2023) supports the reasonableness of this request, given the late stage at which settlement was reached and the substantial recovery to the Settlement Class that was achieved. Class Counsel shall publish on the Settlement Website and submit full briefing supporting their request for attorneys' fees and expenses a minimum of fourteen (14) days before the Objection Deadline. The timing provides time for Settlement Class Members to consider this briefing before the deadline. Settlement Class Counsel will not receive any payment unless the Court grants the fee request.

**Expense Award.** The total requested Expense Award is $1,618,489.24. The requested Expense Award breaks down as follow: (i) reimbursement of plaintiffs' counsel's reasonable costs and litigation expenses incurred since May 2021 in the amount of $1,412,110.13; and (ii) a request that $206,379.11 be distributed to COSI

as a reimbursement for administration costs that will be common to both the proposed settlements and the COSI Settlement. Manifold Decl., ¶ 43; *see also* n.5, *supra*. This request by COSI is in accordance with the terms of the COSI Settlement Agreement. *See* StarKist SA, ¶ 14.1 (permitting payment five days after award subject to any undertaking required by the Court in the event of an appeal); Lion Companies SA, ¶ 14.1 (same). The Court finds this request reasonable subject to final approval.

**Service Award to Named Plaintiffs.** The total amount requested for service awards is $294,000 which is insignificant (0.19%) in light of the substantial Total Settlement Benefit ($152.2 million). The Service Award tiers break down as follows: $3,000 (Tier 1); $6,000 (Tier 2); and $9,000 (Tier 3). Manifold Decl., ¶¶ 26-28 (detailed breakdown of tier calculation and descriptions). The requested awards are in line with service awards awarded in other class actions. *See Birch v. Off. Depot, Inc.*, No. 06 CV 1690 DMS (WMC), 2007 WL 9776717, at *2 (S.D. Cal. Sept. 28, 2007) (awarding two named plaintiffs service awards of $15,000 and $10,000 respectively). The Court finds the individual EPPs have played a vital role in this litigation, including their willingness to appear at trial. *See* Manifold Decl., ¶ 25.

# VII. CONCLUSION

The proposed Settlements merit preliminary approval as each is likely to be finally approved after the Fairness Hearing. The Court hereby GRANTS preliminarily approval of the StarKist Settlement and Lion Companies Settlement and ORDERS the following:

(1)   The Court certifies, for settlement purposes, the following Settlement Class:

All persons and entities who reside in one of the States described in paragraphs 113(b) to 113(gg) of the Fourth Consolidated Amended Complaint, specifically Arizona, Arkansas, California, the District of Columbia, Florida, Guam, Hawaii, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah,

Vermont, Virginia, West Virginia, and Wisconsin, who indirectly purchased Packaged Tuna in cans or pouches smaller than forty ounces for end consumption and not for resale, produced by any Defendant or any current or former subsidiary or affiliate thereof, or any co-conspirator during the period from June 1, 2011 to July 1, 2015.

*See* ECF No. 1931. Excluded from the Settlement Class are the opt-outs previously so ordered by the Court, and included in the Settlement Class are the three individually named Illinois plaintiffs. *See* ECF Nos. 3120, 2871.

(2)    The Court appoints Wolf Haldenstein Adler Freeman & Herz LLP as Settlement Class Counsel.

(3)    The Court appoints JND as the Claims Administrator.

(4)    The Court appoints the named plaintiffs in the Class Order (ECF No. 1931) as Class Representatives for settlement purposes.

(5)    The Court finds the StarKist Settlement Agreement and Lion Companies Settlement Agreement have been negotiated at arm's-length.

(6)    The Court finds the StarKist Settlement Agreement and Lion Companies Settlement Agreement are fair, reasonable, and adequate, and in the best interests of the Settlement Class.

(7)    The Court approves the Notice content and the Notice Plan for providing notice of the StarKist Settlement Agreement and Lion Companies Settlement Agreement to members of the Settlement Class.

(8)    The Court approves the use of $1,000,000 of the StarKist Settlement and up to $200,000 of the Lion Companies Settlement funds ($1,200,000 total) for notice costs per the Settlement Agreements. *See* StarKist Settlement Agreement at ¶ 5.3; Lion Companies Settlement Agreement at ¶ 1.22.

(9)    The Court orders StarKist and Lion Companies to provide the relevant notices as required by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*.

(10)   Finally, the Court adopts and sets the following deadlines:

ORDER

CASE NO. 15-MD-2670-DMS (MSB)

17

| Date | Deadline/Event |
|---|---|
| Friday August 23, 2024 | Preliminary Approval Hearing |
| Friday, Sept. 6, 2024 | Deadline to begin disseminating Settlement Class Notice |
| Friday, Oct. 25, 2024 | Deadline for EPPs to file Motion for Attorneys' Fees and Costs |
| Friday, Oct. 4, 2024 | Deadline to complete dissemination of Settlement Class Notice |
| Friday, Oct. 11, 2024 | Deadline for filing affidavit attesting that Settlement Class Notice was disseminated |
| Friday, Nov. 8, 2024 | Deadline for Settlement Class Members to object to the Settlement |
| Friday, Nov. 15, 2024 | Deadline for EPPs to file a motion for final approval |
| Tuesday, Dec. 31, 2024 | Deadline for Settlement Class Members to submit claims |
| Friday, Nov. 22, 2024, at 1:30 p.m. | Fairness Hearing |

**IT IS SO ORDERED.**

Dated: August 23, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court