1

2

3

4

5

6

7

8        **UNITED STATES DISTRICT COURT**

9    **FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

10

11

| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MSB |
|---|---|
| | **ORDER GRANTING DIRECT PURCHASER PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENTS** |
| This document relates to: | |
| Direct Purchaser Plaintiff Class Action Track | |

I.      **INTRODUCTION**

Pending before the Court is the Direct Purchaser Plaintiffs ("DPPs") motion for preliminary approval of their proposed settlement with Defendants StarKist Co. and Dongwon Industries Co., Ltd. (collectively "StarKist and DWI"), and Defendant Lion Capital (Americas), Inc. and Specially Appearing Defendants Lion Capital LLP and Big Catch Cayman LP (collectively the "Lion Companies")—following nine years of litigation.[1] The DPPs, thus, respectfully ask the Court for preliminary approval of these Settlements and the proposed class notice, and that the Court set a hearing date for final approval.

As described below, the proposed Settlements with StarKist and DWI and the Lion Companies are likely to be approved as fair, adequate, and reasonable at a final approval hearing, and accordingly, the Court **GRANTS** the DPPs' Motion.

II.     **BACKGROUND**

The Parties have litigated this case for nine years, completing fact discovery, expert discovery, and dispositive motions—including with the Parties filing cross motions for summary judgment on various issues and *Daubert* motions against the opposing experts. *See, e.g.*, ECF Nos. 1967, 1970, 1976, 1981, 1984, 1993, 1998, 1999, 2001, 2007, 2009, 2015, 2030, 2035, 2043, 3036, 3037. The DPPs hired three experts: Dr. Russell Mangum (economist), Dr. Gary Hamilton (sociologist), and Marianne DeMario (forensic accountant). Inwald Decl. ¶ 16. The Defendants hired nine experts to oppose the DPPs: Dr. Randal Heeb (economist), Dr. Michael Moore (economist), Gary Kleinrichert (accountant), Arthur Laby (attorney), Dennis Carlton (economist), Andres Lerner (economist), Janusz Ordover (economist), Robert M. Daines (law professor), and Ilya A. Strebulaev (private equity professor). *Id.* The Parties completed all expert depositions and submitted final expert reports. *Id.* The Court granted in part and denied in part the defense motions to exclude the testimony

---

[1] Big Catch Cayman LP was previously dismissed from the Action by the Court with prejudice. ECF No. 3103.

of the DPPs' experts and granted partial summary judgment with respect to the Plaintiffs' motion as to StarKist. *See* ECF Nos. 2407, 2654, 3134.

The Court also certified the DPP Class in this case, following a three-day evidentiary hearing. *See* ECF No. 1931. In December of 2019, the Ninth Circuit Court of Appeals granted Defendants' motion for leave to appeal the Court's class certification decision pursuant to Fed. R. Civ. P. 23(f). ECF No. 2246. On April 6, 2021, a Ninth Circuit panel vacated the class certification decision and remanded the case so that the trial court could decide which expert was more persuasive on the issue of the number of uninjured parties in each class. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021). A rehearing *en banc* was granted on August 3, 2021. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 5 F.4th 950 (9th Cir. 2021). The court, in an *en banc* decision, affirmed the District Court's class certification order in full. *See generally Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).

Now, following extensive discussions, facilitated most recently by Judge Berg, the Parties have agreed to Settlements. *See* Inwald Decl. ¶ 18. The Settlement Agreements were negotiated between the Parties following multiple in-person, video conference, and telephonic mediation sessions. *Id.*

Some of the material terms of the Settlement Agreements are as follows:

**Settlement Class Definition.** The Settlement Class definition is the same as the DPP Class certified by the Court (*see* ECF No. 1931), with a correction of a typo so that the Class Period ends on July **3**1 as opposed to July 1 and an inclusion of additional exclusions. *See* Inwald Decl., Ex. A ¶¶ 1.23, 3; *Id.*, Ex. B ¶¶ 1.22, 3. The full definition of the Settlement Class, including the various exclusions, is:

> All persons and entities that directly purchased packaged tuna products within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 31, 2015. Excluded from the class are all governmental entities; Defendants and any parent, subsidiary or affiliate thereof; Defendants' officers, directors, employees, and immediate families; any federal judges or their staffs; purchases of tuna salad kits or cups;

and salvage purchases. Also excluded from the class is any person or entity that was excluded from the class, in whole or in part, pursuant to the Court's Order in this Action at ECF No. 3097, which incorporates the list of entities at ECF No. 3095-1.

**Benefits.** In exchange for releasing claims against StarKist and DWI and the Lion Companies in this litigation, the DPP Class will receive $64,750,000 in cash and product. *See* Inwald Decl. ¶ 13.

**Release.** In exchange for the foregoing relief, the DPPs have agreed to release "all Claims . . . on account of, arising out of, resulting from, or in any way related to any conduct concerning the pricing, selling, discounting, manufacturing, distribution, promotion, or marketing of Packaged Tuna Products during the period from June 1, 2011 to July 31, 2015 that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint." *Id.*, Ex. A ¶ 1.19; *Id.*, Ex. B ¶ 1.18.

## III.   DISCUSSION

In deciding whether to approve a proposed settlement, the Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (internal quotation omitted); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). "[T]here is [also] an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

In December of 2018, the Rules Committee revised Federal Rule of Civil Procedure 23 to formalize the preliminary approval process for district courts when first evaluating a proposed class action settlement. *See* Fed. R. Civ. P. 23(e)(1). Under the new rule, "[t]he court must direct notice [of the proposed settlement] in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i)

approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B).

**A. The Proposed Settlement Class Satisfies the Requirements of Rules 23(a) and (b)(3).**

The Supreme Court has long recognized that antitrust class actions are a vital component of antitrust enforcement. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 344 (1979); *Hawaii v. Standard Oil Co. of Cal.*, 405 U.S. 251, 266 (1972). Thus, courts "resolve doubts in these actions in favor of certifying the class." *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 308 F.R.D. 606, 612 (N.D. Cal. 2015) ("*CRT II*"). To certify a settlement class under Fed. R. Civ. P. 23, plaintiffs must satisfy the four prerequisites of Rule 23(a)—numerosity, commonality, typicality and adequacy of representation—as well as at least one of the three subsections of Rule 23(b). *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1002 (9th Cir. 2018) ("*Sali*") (citing Fed. R. Civ. P. 23(c)(1)(A)). A plaintiff seeking Rule 23(b)(3) certification must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The manageability requirement inherent in Rule 23(b)(3) does not apply to settlement classes. "[T]he criteria for class certification are applied differently in litigation classes and settlement classes." *Hyundai*, 926 F.3d at 556.

**Rule 23(a) Requirements.**

*Numerosity* is satisfied by a class as small as 40 entities. *Lo v. Oxnard European Motors, LLC*, No. 11CV1009, 2011 WL 6300050, at *2 (S.D. Cal. Dec. 15, 2011) ("*Lo*"). Here, the proposed Settlement Class contains several hundred class members.

*Commonality.* Rule 23(a)(2) requires that there be "questions of law or fact common to the class." "[F]or purposes of Rule 23(a)(2), even a single common question will do." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 283

(N.D. Cal. 2016) ("*Nitsch*") (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)).

Where, as here, the focus is on Defendants' alleged anticompetitive conduct, questions of law and fact are common to the class. "Where an antitrust conspiracy has been alleged, courts have consistently held that 'the very nature of a conspiracy antitrust action compels a finding that common questions of law and fact exist.'" *In re High-Tech Emp. Antitrust Litig.*, 985 F. Supp. 2d 1167, 1180 (N.D. Cal. 2013) ("*High-Tech*") (quoting *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 583, 593 (N.D. Cal. 2010), *amended in part by* No. 07-1827, 2011 WL 3268649 (N.D. Cal. July 28, 2011) ("*LCD*")). In this case, there are numerous common issues, including: (1) whether Defendants participated in a conspiracy to fix prices in violation of the antitrust laws; (2) the scope of that conspiracy; and (3) whether the Settlement Class Members suffered antitrust injury as a result of Defendants' alleged conspiracy.

*Typicality.* The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Sali*, 909 F.3d 1006 (quotation omitted). "In antitrust cases, typicality usually 'will be established by plaintiffs and all class members alleging the same antitrust violations by defendants.'" *High-Tech*, 985 F. Supp. 2d at 1181; *see also Lo*, 2011 WL 6300050, at *2. The claims of Plaintiffs and the proposed Settlement Class are all based on the same alleged antitrust violations, and they each have suffered injury as a result of Defendants' alleged antitrust conspiracy. Any factual differences among Settlement Class Members do not preclude a finding of typicality.[2]

---

[2] *See, e.g.*, *In re Korean Ramen Antitrust Litig.*, No. 13-CV-04115, 2017 WL 235052, at *20 (N.D. Cal. Jan. 19, 2017); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, 264 F.R.D. 603, 609 (N.D. Cal. 2009); *see also LCD*, 267 F.R.D. at 593.

***Adequacy of Representation.*** Adequacy requires that Plaintiffs "(1) have no interests that are antagonistic to or in conflict with the interests of the class; and (2) be represented by counsel able to vigorously prosecute their interests." *CRT II*, 308 F.R.D. at 618. "The mere potential for a conflict of interest is not sufficient to defeat class certification; the conflict must be actual, not hypothetical." *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-In-Aid Cap Antitrust Litig.*, 311 F.R.D. 532, 541 (N.D. Cal. 2015) (quotation omitted). There is no conflict between Plaintiffs' interests and those of absent Settlement Class Members. Plaintiffs and their expert have alleged that all Class Members were injured by having to pay supracompetitive prices for packaged tuna products. The DPPs and their counsel, Hausfeld, have vigorously prosecuted this case on behalf of the DPP Class. Hausfeld was the first firm to file suit on behalf of the first filed Plaintiff in this litigation, Olean Wholesale Grocery Cooperative ("Olean"). Olean and the other class representatives, with the assistance of Class Counsel, have more than adequately represented the DPP Class. *See* Inwald Decl. ¶¶14-17, 27. They have driven this litigation forward in all aspects for the betterment of all Plaintiffs. *Id.*

Among other things, Class Counsel have conducted extensive discovery, reviewing millions of pages of documents and taking depositions of numerous witnesses. *Id.* ¶ 15. As a result of these and other efforts, Class Counsel were able to secure relief from StarKist and DWI and the Lion Companies for a period of time beyond the period for which the DOJ has secured guilty pleas. *Id.* Class Counsel have also investigated and litigated claims against the parent entity Defendants in this case, and as a result of those efforts, DWI and the Lion Companies are included in the Settlements with the DPPs as well. *Id.*

Particularly, in light of the late stage of the litigation, Class Counsel have more than sufficient information to make an informed decision as to the value of the Settlement compared to the risks of continued litigation. The Parties have been preparing for trial over the last several months, which allows Class Counsel to make

an informed judgment in favor of the Settlement, a factor which the Court should consider.[3] In addition, Class Counsel have observed that the other Class Plaintiffs and most of the DAPs—which comprise the largest direct purchasers of Packaged Tuna Products and collectively account for around 80% of the direct purchases—have already entered into settlements with Defendants. Inwald Decl. ¶ 12.

Class Counsel are experienced lawyers who have successfully litigated many prior complex antitrust class actions such as this one, and have successfully resolved many of those cases in this Circuit. *Id.* ¶ 10. Class Counsel have brought that experience and knowledge to bear on behalf of the Class and in this proposed Settlement. *Id.*[4]

As set forth herein, and in view of the extensive class certification analysis set forth in the Court's class certification order, ECF No. 1931, I find that each of the Rule 23(a) criteria support certification of the Settlement Class.

**Rule 23(b)(3) Requirements.** "Predominance is a test readily met in certain cases alleging . . . violations of the antitrust laws." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Courts commonly find Rule 23's "predominance" requirement satisfied in direct purchaser horizontal price fixing cases. *See, e.g.,*

---

[3] *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672, 2016 WL 6248426, at *14 (N.D. Cal. Oct. 25, 2016) ("*Volkswagen*") ("[E]xtensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *see also In re Portal Software Sec. Litig.*, No. C-03-5138, 2007 WL 4171201, at *4 (N.D. Cal. Nov. 26, 2007).

[4] *See Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980) ("*Ellis*") ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("*Nat'l Rural Telecomms.*") ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citation omitted); *Bellows v. NCO Fin. Sys., Inc.*, No. 3:07-cv-01413, 2008 WL 5458986, at *8 (S.D. Cal. Dec. 10, 2008) (same).

1    *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012); *Nitsch*,

2    315 F.R.D. at 315.

3           Rule 23(b)(3) "does not require a plaintiff seeking class certification to prove

4    that each 'elemen[t] of [her] claim [is] susceptible to class-wide proof.' What the rule

5    does require is that common questions 'predominate over any questions affecting only

6    individual [class] members.'" *Amgen, Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S.

7    455, 469 (2013) (citation omitted; brackets in original). Predominance is satisfied

8    when "common questions present a significant aspect of the case" such that significant

9    facts and issues underlying the proposed classes' claims are subject to common proof.

10   *CRT II*, 308 F.R.D. at 620 (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022

11   (9th Cir. 1998)).

12          Here, the common questions identified above predominate over any individual

13   ones. The existence and scope of Defendants' alleged horizontal price-fixing

14   conspiracy is a class-wide issue that can be proved for each Settlement Class Member

15   through common evidence. "In price-fixing cases, courts repeatedly have held that the

16   existence of the conspiracy is the predominant issue and warrants certification even

17   where significant individual issues are present." *Nitsch*, 315 F.R.D. at 315 (quotation

18   and internal marks omitted); *CRT II*, 308 F.R.D. at 620, 625 (holding the same); *High-

19   Tech*, 985 F. Supp. 2d at 1217 (finding holistic examination of liability, not just

20   econometric analysis, justified certification). This is especially true in the context of a

21   settlement class, such as this one. In *Hyundai*, it was argued that the differences in

22   applicable state laws defeated predominance, but the Ninth Circuit, sitting *en banc*,

23   said that in the context of a settlement class, that is viewed as an issue of

24   manageability, which is a requirement that does not apply. 926 F.3d at 559-60. *Accord

25   Jabbari v. Farmer*, 965 F.3d 1001, 1007 (9th Cir. 2020).

26          As set forth herein, and in view of the extensive class certification analysis set

27   forth in the Court's class certification order, ECF No. 1931, I find that the Rule 23(b)

28   criteria support certification of the Settlement Class.

**B. The Proposed Settlements Are Fair Under Rule 23(e).**

The Court finds that the Proposed Settlements satisfy all the relevant factors to demonstrate that preliminary approval is appropriate.

### 1. The Class Representatives and Class Counsel have adequately represented the Class.

The Court finds that Class Counsel, Hausfeld LLP, and the Class Representatives have adequately represented the Class, including in this Proposed Settlement. Class Counsel are experienced class action lawyers.

After nine years, and preparing for trial for the last several months, Class Counsel have more than sufficient information to make an informed decision as to the value of the Settlements compared to the risks of continued litigation. *See Volkswagen*, 2016 WL 6248426, at *14 ("[E]xtensive review of discovery materials indicates [Plaintiffs have] sufficient information to make an informed decision about the Settlement. As such, this factor favors approving the Settlement."); *see also Ellis*, 87 F.R.D. at 18 ("[T]he fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight."); *Nat'l Rural Telecomms.*, 221 F.R.D. at 528 ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citation omitted).

### 2. The Parties negotiated the proposed settlement at arm's length.

The Court also finds that the Settlement satisfies the second Rule 23(e)(2) factor, which asks the Court to confirm that the proposed settlement was negotiated at arm's length. *See* Fed. R. Civ. P. 23(e)(2)(B); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) ("*Rodriguez*") ("We put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution.").

The Settlement was reached only after prolonged, well-informed, and extensive arm's-length negotiations—including in-person mediation sessions and additional negotiations—between experienced and knowledgeable counsel facilitated by the

Hon. Michael S. Berg. *See* Inwald Decl. ¶ 18. The use of a court-appointed mediator supports the conclusion that the settlement process was not collusive. *See* Fed. R. Civ. P. 23(e)(2)(B) advisory committee's note (2018) ("[T]he involvement of a neutral or court-affiliated mediator or facilitator in [the parties'] negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09–00261, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (noting that private mediation "tends to support the conclusion that the settlement process was not collusive"); *see also In re Zynga Inc. Sec. Litig.*, No. 12-cv-04007, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015) (including that use of a mediator and fact that some discovery had been completed "support the conclusion that the Plaintiff was appropriately informed in negotiating a settlement") (internal citation omitted).

Moreover, Defendants have not promised the Class Representatives preferential treatment in exchange for the settlement. *See* Inwald Decl. ¶ 22. *Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (9th Cir. 2013) (stating preferential treatment for class representatives can create a conflict of interest). Here, the settlement funds will be distributed pro rata, and DPP Class Counsel will be reimbursed expenses and fees from the common fund, subject to the Court's approval. Class Counsel will ask the Court to approve a nominal service award to the Class Representatives out of the settlement funds to reimburse them for their efforts on behalf of the settlement class over the past several years, but neither Class Counsel nor any of the Defendants made any promises about requesting such awards. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) ("[T]he class settlement agreement provided no guarantee that the class representatives would receive incentive payments[.]").

### 3.  The quality of relief to the Class weighs in favor of approval.

The third factor to be considered is whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the

1   effectiveness of any proposed method of distributing relief to the class, including the

2   method of processing class-member claims; (iii) the terms of any proposed award of

3   attorney's fees, including timing of payment; and (iv) any agreement required to be

4   identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the

5   relief "to class members is a central concern." *See* Fed. R. Civ. P. 23(e)(2)(C) advisory

6   committee's note (2018).

### a. Costs, risks, and delay of trial and appeal.

8           The Court also finds that the costs, risks, and delay of trial and appeal favor the

9   settlement. The DPPs maintain that the liability claims for violations under the

10  antitrust laws are strong, given admissions of COSI, StarKist, and Bumble Bee (and

11  additional judgments against Steve Hodge, Scott Cameron, Ken Worsham, and Chris

12  Lischewski) for participation in a conspiracy to violate those laws. However, the

13  claims against DWI and the Lion Companies were disputed. And all of the Defendants

14  vigorously disputed the scope, duration, and effect of the collusion. Moreover, DWI

15  and the Lion Companies did not have collectible assets within the United States, and

16  the Lion Companies are winding down their operations. *See* Inwald Decl. ¶ 12. For all

17  of these reasons, the substantial settlements that have been achieved here are an

18  excellent result for the DPP Class. *See Rodriguez*, 563 F.3d at 966 (summarizing risks

19  of litigating antitrust class actions); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396

20  F.3d 96, 118 (2d Cir. 2005) ("'Indeed, the history of antitrust litigation is replete with

21  cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no

22  damages, or only negligible damages, at trial, or on appeal.'" (quoting *In re NASDAQ*

23  *Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998))); *In re Auto.*

24  *Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) ("*Auto*

25  *Refinishing*") (approving settlements in part because the "antitrust class action is

26  arguably the most complex action to prosecute [and] [t]he legal and factual issues

27  involved are always numerous and uncertain in outcome") (internal quotation

28  omitted).

Under these circumstances, while the DPPs maintain that they have "strong claims," "significant risk and uncertainty remain such that continuing the case could lead to protracted and contentious litigation." *See Howell v. Advantage RN, LLC*, No. 17-CV-883, 2020 WL 3078522, at *4 (S.D. Cal. June 9, 2020).

### b. The effectiveness of any proposed method of distributing relief to the Class.

The Settlement provides the Settlement Class Members with significant relief. The total value of the settlement agreements with COSI and TUG, StarKist and DWI, and the Lion Companies is $83,701,961.86 (including a partial reimbursement of fees and advanced costs from the COSI settlement). Inwald Decl. ¶ 20. That total value provides the Settlement Class Members with approximately 92.6% of their $90,349,227 in single damages. *Id.* Moreover, if one compares the single damages from all the Settlement Class Members who already submitted claims for the COSI/TUG Settlement with the relief received from the Settlement Agreement with StarKist and DWI alone, the claimants will receive an amount equal to 9.44% of their total packaged tuna purchases. *Id.* That figure is close to the 10.39% overcharge that DPP expert, Dr. Mangum, calculated for the DPPs. *Id.*

This relief is comparable to other settlements. For example, the EPPs settled with StarKist and DWI for $130,000,000. *Id.* That settlement represents approximately 58% of their $224,000,000 in single damages. *Id.* Similarly, the DPP settlement agreement with StarKist and DWI provides for cash and product valued at $58.75 million dollars, which is approximately 65% of the DPPs' $90,349,227 in single damages. *Id.*

Additionally, the Settlement Class Members are mostly comprised of smaller companies, with other larger retailers having effectively opted out of the Class by filing their own suits or separately settling with the Defendants. As it pertains to the Settlement Agreement with StarKist, the Settlement Class Members represent around

20% of the purchases of packaged tuna products during the relevant period and received $58.75 million dollars in cash and product. *See id.*

By comparison, as noted above, one of the former DAPs in this case, Wal-Mart—the largest retailer in the country, which alone represents nearly 20% of the purchases of the Packaged Tuna purchases in the relevant period—resolved its antitrust claims against StarKist for $20.5 million in cash and product. *Id.*, Ex. E. Thus, the StarKist and DWI Settlement Agreement alone has achieved a result that is nearly three times better for Settlement Class Members than what an individual direct action purchaser achieved for itself. *See* Fed. R. Civ. P. 23 advisory committee notes (2018) ("[T]he actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

### c. The method for processing claims.

The DPPs have advised the Court regarding their proposed method for processing claims. Specifically, Settlement Class Members who make a claim will be entitled to receive cash and product, with the actual amount received depending on the number of claims and the volume of commerce represented in those claims. Additionally, Class Members will have the option to donate their share of the available StarKist product to 501(c)(3) charitable non-profits and receive the benefit of a charitable deduction on their taxes for doing so. The proceeds from the Settlement Amount will ultimately be distributed on a pro rata basis. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-CV-2058, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "'fairly treats class members by awarding a pro rata share' to the class members based on the extent of their injuries." (quoting *In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, at *11 (C.D. Cal. June 10, 2005))); *In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (approving pro rata distribution of fractional share based upon a class member's total base salary as fair and reasonable); *Four in One Co. v. S.K. Foods, L.P.*, 2:08-CV-3017, 2014 WL

4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1045-46 (N.D. Cal. 2008) (approving securities class action settlement allocation on a "per-share basis").

### 4.  The settlement treats all settlement class members equitably.

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." *See* Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D) advisory committee's note (2018).

Here, the Settlement treats all Class Members equitably, and there are no differences between the scope of relief between any Class Members. While Class Counsel has requested nominal service awards for the Class Representatives for their efforts on behalf of the Class to date, such awards are well-established in the Ninth Circuit. *See Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards. In fact, the Ninth Circuit recently noted that incentive payments to named plaintiffs have become 'fairly typical' in class actions."); *see also Boyd v. Bank of Am. Corp.*, No. 13-cv-0561, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)).

In light of all of the foregoing, the proposed Settlement merits preliminary approval as it is likely to be finally approved after the Fairness Hearing.

**C. The Proposed Notice Is the Best Practicable Under the Circumstances.**

Where there is a class settlement, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez*, 563 F.3d at 962 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

In Rule 23(b)(3) actions, "the court must direct to class members the best notice that is practicable under the circumstances," and that notice "must clearly and concisely state in plain, easily understood language:" (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues, or defenses; (4) that a class member may enter an appearance through an attorney if the member so desires (5) that the court will exclude from the class any member who requests exclusion; (6) the time and manner for requesting exclusion; and (7) the binding effect of a class judgment on members under Rule 23(c)(3). *See* Fed. R. Civ. P. 23(c)(2)(B).

The notice plan proposed by the DPPs with the advice and assistance of JND provides a thorough approach to notice. *See* Intrepido-Bowden Decl. ¶¶ 9-27; *see also, e.g.*, *Ross v. Trex Co.*, No. 09-00670, 2013 WL 791229, at *1 (N.D. Cal. Mar. 4, 2013) ("[A]ctual notice is not required. . . . Due Process does not entitle a class member to 'actual notice,' but rather to the best notice practicable, reasonably calculated under the circumstances to apprise him of the pendency of the class action and give him a chance to be heard.") (internal quotation omitted). The rigorous notice plan proposed by JND satisfies requirements imposed by Rule 23 and the Due Process clause of the United States Constitution.

Moreover, the contents of the notice satisfactorily inform DPP Class Members of their rights under the Settlement. *See* Intrepido-Bowden Decl., Exs. A-C; *see also* 4 *Newberg on Class Actions* § 11:53 (4th ed. 2002) (stating that notice is "adequate if it may be understood by the average class member"). Accordingly, the notice program,

through direct mail and email where available and the press release, as well as the accompanying forms, are reasonable and adequate and are fairly calculated to apprise Class Members of their rights under the Settlement Agreements.

The Court finds that proposed notice of the Settlement Agreements satisfies the requirements of Rule 23(e)(1).

## IV. CONCLUSION

For the foregoing reasons, the Court hereby preliminarily approves the Settlement Agreement, and ORDERS the following:

(1)   The Court certifies, for settlement purposes, the following Settlement Class:

> All persons and entities that directly purchased packaged tuna products within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 31, 2015. Excluded from the class are all governmental entities; Defendants and any parent, subsidiary or affiliate thereof; Defendants' officers, directors, employees, and immediate families; any federal judges or their staffs; purchases of tuna salad kits or cups; and salvage purchases. Also excluded from the class is any person or entity that was excluded from the class, in whole or in part, pursuant to the Court's Order in this Action at ECF No. 3097, which incorporates the list of entities at ECF No. 3095-1.

(2)   The Court appoints Hausfeld LLP as Class Counsel for settlement purposes.

(3)   The Court appoints Olean Wholesale Grocery Cooperative, Inc., Pacific Groservice Inc. d/b/a PITCO Foods, Piggly Wiggly Alabama Distributing Co., Inc., Howard Samuels as Trustee in Bankruptcy for Central Grocers, Inc., Trepco Imports and Distribution Ltd., and Benjamin Foods LLC as Class Representatives, for settlement purposes.

(4)   The Court finds that the Settlement Agreements have been negotiated at arm's length.

1    (5)   The Court finds the Settlement Agreements are within the range of

2    settlements that could be approved as fair, reasonable, and adequate, and in the best

3    interests of the Settlement Class.

4    (6)   The Court approves the notice content and plan for providing notice of the

5    Settlement to members of the Class and Settlement Class.

6    (7)   The Court orders the Parties to ensure that the relevant notices as required

7    by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq*. are disseminated.

8    (8)   Finally, the Court adopts and sets the following deadlines:

9    / / /

10   / / /

11   / / /

12   / / /

13   / / /

14   / / /

15   / / /

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

| Deadline for disseminating Class notice | 14 days after entry of preliminary approval order |
| --- | --- |
| Deadline for filing affidavit attesting that notice was disseminated as ordered | 35 days after entry of preliminary approval order |
| Plaintiffs to file a motion for an award of attorneys' fees, costs, and service awards | 49 days before the Fairness Hearing |
| Deadline for Class Members to object to the Settlements | 35 days before the Fairness Hearing |
| Deadline for Class Members to file a claim | 35 days before the Fairness Hearing |
| Plaintiffs to file motion for final approval of Settlements | 28 days before the Fairness Hearing |
| Hearing on motion for final approval and motion for an award of attorneys' fees, costs, and service awards | 90 days after preliminary approval order (**November 22, 2024, at 1:30 p.m.**) |

**IT IS SO ORDERED.**

Dated:  August 23, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court