1
2
3
4
5
6
7
8

Michael P. Lehmann (Cal. Bar No. 77152)
Christopher L. Lebsock (Cal. Bar No. 184546)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: clebsock@hausfeld.com

*Class Counsel for the Direct Purchaser Class*

9
10
11

## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS (MSB) |
| | **DIRECT PURCHASER PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** |
| This document relates to: | |
| All Direct Purchaser Plaintiff Actions | DATE: November 22, 2024 |
| | TIME: 1:30 P.M. |
| | JUDGE: Dana M. Sabraw |
| | CTRM: 13A |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................ 1

II.     BACKGROUND ................................................................................. 2

    A.  History of the Litigation .............................................................. 2

    B.  The Settlement............................................................................. 8

III.    CLASS COUNSEL ARE ENTITLED TO AN AWARD OF
        ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES........ 10

    A.  Applicable Legal Standards Governing the Award of Attorneys' Fees in
        Common Fund Cases ................................................................... 10

    B.  The Requested 33.3% Fee Award Is Reasonable Under the Percentage-of-
        Recovery Method ........................................................................ 13

            1. The Results Achieved by Class Counsel Were Meaningful ................. 13

            2. The Risks of Litigation ........................................................... 14

            3. The Skill Required and the Quality of the Work Justifies the Request . 16

            4. The Contingent Fee Nature of the Case and the Financial Burden
               Carried by Class Counsel........................................................ 17

    C.  The Requested Fee Is Reasonable Under Lodestar Cross-Check.................... 18

    D.  The Expenses Are Reasonable and Should Be Reimbursed........................... 20

IV.     SERVICE AWARDS SHOULD BE APPROVED ..................................... 21

V.      CONCLUSION ................................................................. 23

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page(s)**

*In re Aggrenox Antitrust Litig.*,
  No. 3:14-MD-2516, 2018 WL 10705542 (D. Conn. July 19, 2018)..................13

*In re Apple Inc. Device Performance Litig.*,
  50 F.4th 769 (9th Cir. 2022) ....................................................................20

*Asner v. SAG-AFTRA Health Fund*,
  No. 2:20-cv-10914, 2023 WL 6984582 (C.D. Cal. Oct. 19, 2023),
  *reconsideration denied*, No. 2:20-cv-10914, 2023 WL 8529996 (C.D. Cal. Dec. 7, 2023) ..................................................................................................12

*Birch v. Office Depot*,
  No. 06 CV 1690, 2007 WL 9776717 (S.D. Cal. Sept. 28, 2007)......................22

*Blum v. Stenson*,
  465 U.S. 886 (1984)..................................................................................10

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)............................................................................10, 12

*In re BofI Holding, Inc. Sec. Litig.*,
  No. 3:15-cv-02324, 2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ...................22

*Boyd v. Bank of Am. Corp.*,
  No. 13-cv-0561, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014).......................22

*In re Brooktree Secs. Litig.*,
  915 F. Supp. 193 (S.D. Cal. 1996) ...........................................................12

*Carlin v. DairyAmerica, Inc.*,
  380 F. Supp. 3d 998 (E.D. Cal. 2019) .......................................................21

*Dexter's LLC v. Gruma Corp.*,
  No. 23-cv-212, 2023 WL 8790268 (S.D. Cal. Dec. 19, 2023).........................15

*Fernandez v. Corelogic Credco, LLC*,
  No. 20-cv-1262, 2024 WL 3209391 (S.D. Cal. June 24, 2024)........................16

*In re Fine Paper Antitrust Litig.*,
  751 F.2d 562 (3d Cir. 1984) ....................................................................19

*In re Flonase Antitrust Litig.*,
291 F.R.D. 93 (E.D. Pa. 2013) ........................................................................ 12

*Glass v. UBS Fin. Servs.*,
331 F. App'x 452 (9th Cir. 2009) .................................................................... 12

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
21 F.4th 1102 (9th Cir. 2021) ......................................................................... 12

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ........................................................................ 11

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) .............................................................................. 21

*Harris v. Vector Mktg. Corp.*,
No. 08-cv-5198, 2012 WL 381202 (N.D. Cal. Feb. 6, 2012) .......................... 22

*Hendricks v. StarKist Co.*,
4:13-cv-00729-HSG, (N.D. Cal. Dec. 11, 2015) .......................................... 7, 8

*In re Heritage Bond Litig.*,
No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005) ............... 16

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
No. 14-md-02542, 2021 WL 2328431 (S.D.N.Y. June 7, 2021) ...................... 13

*Larsen v. Trader Joe's, Co.*,
No. 11-cv-05188, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ...................... 13

*In re Lidoderm Antitrust Litig.*,
MDL No. 2521, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ...................... 12

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
487 F.2d 161 (3d Cir. 1973) ....................................................................... 18, 19

*Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*,
540 F.2d 102 (3d Cir. 1976) ............................................................................ 18

*Lopez v. Youngblood*,
No. CV-F-07-0474, 2011 WL 10483569 (E.D. Cal. Sept. 2, 2011) ................. 18

*In re Media Vision Tech. Sec. Litig.*,
913 F. Supp. 1362 (N.D. Cal. 1996) ................................................................ 21

*Mills v. Elec. Auto-Lite Co.*,
  396 U.S. 375 (1970)..........................................................................10, 21

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  31 F.4th 651 (9th Cir. 2022) .............................................................7, 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  5 F.4th 950 (9th Cir. 2021) .......................................................................7

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
  993 F.3d 774 (9th Cir. 2021) .............................................................7, 15

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC et al.*,
  No. 15-cv-01714 (S.D. Cal., Aug. 3, 2015)...............................................2

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ...................................................................22

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) .....................................................................13

*In re Packaged Seafood Prods. Antitrust Litig.*,
  242 F. Supp. 3d 1043 (S.D. Cal. 2017) ....................................................5

*In re Packaged Seafood Prods. Antitrust Litig.*,
  277 F. Supp. 3d 1167 (S.D. Cal. 2017) ....................................................5

*In re Packaged Seafood Prods. Antitrust Litig.*,
  338 F. Supp. 3d 1118 (S.D. Cal. 2018) ....................................................5

*In re Packaged Seafood Prods. Antitrust Litig.*,
  No. 3:15-md-02670, 2017 WL 35571 (S.D. Cal. Jan. 3, 2017) ...............5

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.*,
  392 U.S. 134 (1968)..................................................................................11

*Pillsbury Co. v. Conboy*,
  459 U.S. 248 (1983)..................................................................................11

*In re Pork Antitrust Litig.*,
  No. 18-1776, 2022 WL 4238416 (D. Minn. Sept. 14, 2022) ...............13

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979)..................................................................................11

*Rodriguez v. West Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...............................................................22

*Santillan v. Verizon Connect, Inc.*,
  No. 3:21-cv-1257, 2024 WL 627998 (S.D. Cal. Feb. 13, 2024).......................23

*Schiller v. David's Bridal, Inc.*,
  No. 1:10-cv-00616, 2012 WL 2117001 (E.D. Cal. June 11, 2012) ..................20

*Six (6) Mexican Workers v. Arizona Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) .............................................................11

*Stanger v. China Elec. Motor, Inc.*,
  812 F.3d 734 (9th Cir. 2016) ........................................................*passim*

*State of Hawaii v. Standard Oil Corp.*,
  405 U.S. 251 (1972)..........................................................................11

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................15

*United States v. StarKist Co.*,
  No. 18-cr-0513-EMC (N.D. Cal.)...........................................................8

*In re Vitamins Antitrust Litig.*,
  No. 99-197, MDL 1285, 2001 WL 34312839 (D.D.C. July 16, 2001)..............16

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .......................................................13, 18

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ........................................................11, 17

*Williams v. MGM-Pathe Commc'ns Co.*,
  129 F.3d 1026 (9th Cir. 1997) .............................................................12

*Yamada v. Nobel Biocare Holding AG*,
  825 F.3d 536 (9th Cir. 2016) ..............................................................11

**Other Authorities**

Department of Justice, *Frequently Asked Questions About The Antitrust Division's Leniency Program And Model Leniency Letters*,
  https://www.justice.gov/atr/page/file/926521/download .....................................2

# I.    INTRODUCTION

Lead Counsel for the Direct Purchaser Plaintiffs, Hausfeld LLP ("Class Counsel"), respectfully submit this motion for an award of attorneys' fees, reimbursement of litigation expenses, and modest incentive awards for each of the Class Representatives for their service in this case. Subject to this Court's approval, Direct Purchaser Plaintiffs ("DPPs"), on behalf of the Settlement Class, have agreed to resolve claims against Defendants StarKist Co. and Dongwon Industries Co., Ltd. (collectively "StarKist and DWI") and Defendants Lion Capital (Americas), Inc., Lion Capital LLP, and Big Catch Cayman LP[1] (collectively the "Lion Companies") (collectively with the DPPs, the "Parties") through a Settlement of $38,650,000 in cash and $26,100,000 in StarKist product. This exceptional recovery arose only from Class Counsel's skillful and dedicated litigation of this complex action.

The Court has previously granted final approval to a Settlement Agreement between DPPs and Tri-Union Seafoods LLC d/b/a Chicken of the Sea International ("COSI") and its parent company, Defendant Thai Union Group PCL ("TUG"). *See* ECF No. 3011. In that settlement, the Settlement Class obtained $13,001,961.86, net of fees and costs, from COSI and TUG. *See id.* The Court separately approved an arbitrator's award of fees and costs to Class Counsel in the amount of $1,539,363.29 (fees) and $4,410,636.71 (costs) and approved $5,000 service awards for each of the named plaintiffs. *See* ECF No. 3012. This fee award constituted a small fraction of the total expenditure of fees and advanced costs made by Class Counsel over the course of nine years of this litigation.

Now, DPPs seek a fair and reasonable fee as compensation for their efforts on behalf of the Class. DPPs respectfully request a fee of 33.3% of the total value of the combined Settlements with the Lion Companies and StarKist and DWI. This

---

[1] Big Catch Cayman LP was previously dismissed from the Action by the Court with prejudice. ECF No. 3103.

percentage award is amply supported by the settlements achieved. DPPs' counsel have collectively provided 48,451.56 hours of professional services to the Settlement Class starting from appointment of interim class counsel on March 24, 2016. In addition to the aforementioned request for a reasonable fee, Plaintiffs also seek reimbursement of $1,294,084.54 in expenses incurred to prosecute this case since January 1, 2021.[2]

The proposed fee is consistent with precedent within this District and the Ninth Circuit generally. Furthermore, the fee request is fair and reasonable considering the outstanding settlement obtained, the substantial efforts Class Counsel have taken, and the considerable litigation risks faced by Class Counsel.

## II.   BACKGROUND

### A. History of the Litigation

DPPs' initial suit, filed in August of 2015, alleged an antitrust conspiracy by COSI, Bumble Bee Foods LLC ("Bumble Bee"), and StarKist, and their parent companies to fix and maintain prices. *See Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC et al.*, No. 15-cv-01714 (S.D. Cal., Aug. 3, 2015), ECF No. 1. The DOJ also conducted a criminal investigation into price-fixing in the packaged tuna industry. *Id.* ¶ 17. As a result of that investigation, COSI admitted Sherman Act violations, sought leniency (thereby admitting criminal liability),[3] and cooperated with both the DOJ and civil claimants by providing evidence against StarKist and Bumble Bee. *See* Inwald Decl. ¶ 7.

Multiple civil actions relating to this conspiracy were consolidated in a multidistrict litigation for centralized pretrial proceedings before this Court on

---

[2] The expenses incurred in this case prior to January 1, 2021 were addressed in the fee award from the COSI and TUG settlement. Collectively, Class Counsel advanced a total of $5,704,721.25 during the course of the litigation, and carried those costs for many years. Declaration of Erika A. Inwald ("Inwald Decl.") ¶ 31.

[3] *See* Department of Justice, *Frequently Asked Questions About The Antitrust Division's Leniency Program And Model Leniency Letters*, https://www.justice.gov/atr/page/file/926521/download.

December 9, 2015. *See* Transfer Order, ECF No. 1. Early in this multidistrict litigation, the Court divided Plaintiffs into four tracks: (1) the DPPs; (2) the DAPs, who were direct purchasers, and consist of mainly large retailers or wholesalers, proceeding individually against Defendants; (3) the Commercial Food Preparers ("CFPs"), who were indirect purchasers proceeding on behalf of a proposed class; and (4) the End Payer Plaintiffs ("EPPs"), who were indirect purchasers proceeding on behalf of a proposed class (collectively, "Plaintiffs"). *See* ECF No. 119. At that time, the Court also appointed Hausfeld LLP ("Hausfeld") as interim lead counsel for the proposed DPP Class.[4] *Id.*

In appointing DPPs' lead counsel, the Court set forth an extensive list of Hausfeld's responsibilities to ensure proper coordination and efficient prosecution throughout the consolidated pretrial proceedings:

> Interim Lead Counsel shall, in consultation with the Steering Committee, be responsible for the overall conduct of the litigation on behalf of the DPPs as follows:
>
> a. To brief and argue motions and file opposing briefs in proceedings initiated by other parties, and to present (by a designee) to the Court and opposing parties the position of all DPPs for all matters arising during all pretrial and trial proceedings;
>
> b. To designate attorneys to act as spokespersons at pretrial conferences;

---

[4] The Court also appointed a DPP Steering Committee consisting of the law firms of: Bernstein Liebhard LLP; Block & Leviton LLP; Cera LLP; Lowey Dannenberg Cohen & Hart, P.C. (now Lowey Dannenberg P.C.); Quinn Emanuel Urquhart & Sullivan, LLP; and Stueve Siegel Hanson LLP (later replaced by Hartley LLP). These firms, along with other firms (Steyer Lowenthal Boodrookas Alvarez & Smith LLP; Bleichmar Fonti & Auld LLP; and Rupp Baase Pfalzgraf Cunningham LLC) have done work in this litigation. Like Hausfeld, all of these firms have submitted declarations setting forth their respective costs and rate adjusted lodestars.

c. To conduct or coordinate discovery on behalf of the DPPs consistent with the requirements of the Federal Rules of Civil Procedure, including the preparation of joint interrogatories, requests for production of documents, requests for admissions, and the examination of witnesses in depositions;

d. To designate an attorney to enter into stipulations with opposing counsel necessary for the conduct of the litigation;

e. To monitor the activities of co-counsel and to implement procedures to ensure that schedules are met and unnecessary expenditures of time and funds by counsel are avoided;

f. To collect time, lodestar, and expense reports from each of the law firms working on behalf of the class of DPPs, including paralegals and any other staff members whose time is expected to be included in any fee petition;

g. To ensure that work assignments are not given to any firm that has not promptly submitted its time and expense records or paid its assessments;

h. To sign any consolidated complaint, motions, briefs, discovery requests or objections, subpoenas, stipulations, or notices on behalf of the class of DPPs or those DPPs filing particular papers;

i. To conduct all pre-trial, trial, and post-trial proceedings on behalf of the class of DPPs;

j. To employ and consult with experts;

k. To call meetings of the law firms representing the class of DPPs when deemed appropriate and to assign work to these law firms;

l. To conduct settlement negotiations with defense counsel on behalf of the class of DPPs; and

m. To assure that all counsel for the class of DPPs are kept informed of the progress of this litigation.

ECF No. 119.

Since their appointment, Class Counsel has performed significant work and expended significant resources in this case to the benefit of *all* members of the DPP

Class, as detailed below. Class Counsel pushed for production of the DOJ Documents from the related criminal investigation, and when the stay was lifted to allow that material to be produced, Defendants produced over two million pages of documents as a result of these efforts. Hausfeld then organized and headed the review of those documents. As part of that document review, Hausfeld coordinated all of the other plaintiffs' counsel to draft harmonized and stronger complaints.[5] Indeed, the complaints produced as a result of this effort contained substantial new allegations detailing the nature and scope of Defendants' conspiracy.

For example, in addition to suing Bumble Bee, StarKist, and COSI, the DPP Class has also sued TUG, COSI's parent; the Lion Companies, the parent of Bumble Bee and affiliated entities; and DWI, the parent of StarKist. None of these entities were prosecuted by DOJ, and all denied responsibility for the actions of their subsidiaries and affiliates. However, Class Counsel, having served and received discovery from the Lion Companies, uncovered significant new facts about these entities and their participation in the conspiracy. Class Counsel immediately moved to add Defendants (ECF No. 530), which other plaintiffs later followed. The Court ultimately granted the request as to the Lion Companies. Hausfeld's efforts in this regard have provided an opportunity for all DPP Class members to recover from the Lion Companies, since Bumble Bee has sold its assets in the bankruptcy proceedings.

After several rounds of motions to dismiss, which the Court largely denied, the Defendants answered the operative DPP Complaint, and the case proceeded to discovery. *See* Answers, ECF Nos. 1561, 1600, 1601, 1688, 1689, and 2637. More

---

[5] The successive complaints in the litigation led the district court judge to issue voluminous opinions on various defense dismissal motions. *See In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670, 2017 WL 35571 (S.D. Cal. Jan. 3, 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1043 (S.D. Cal. 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167 (S.D. Cal. 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118 (S.D. Cal. 2018).

than 200 depositions were taken in this case across the United States and Asia. *See* Inwald Decl. ¶ 10. In total, millions of pages of documents were produced and reviewed by Class Counsel. *Id.*

In addition to undertaking extensive factual investigations and researching and drafting numerous motions and other briefs, Class Counsel have driven this case forward by often serving as the coordinator for all case management related issues. For example, virtually any time scheduling issues or other sorts of logistical and organizational issues have arisen in the case, including preparing for Status Conferences or drafting Status Reports, the other parties have relied on Hausfeld to coordinate the other tracks of Plaintiffs and to liaise with Defendants' counsel on everything from discovery to logistical and organizational issues. Hausfeld has also been responsible for organizing translation services for foreign language documents.

In 2018, DPPs moved the Court to certify the DPP Class (ECF No. 1140). After a three-day evidentiary hearing in January of 2019 (ECF Nos. 1774-75, 1777), the Court ultimately certified a DPP Class of all persons and entities that directly purchased packaged tuna products within the United States, its territories, and the District of Columbia from any Defendant at any time between June 1, 2011 and July 1, 2015, with minor exclusions.[6] ECF No. 1931. The Court also appointed Hausfeld LLP as Class Counsel for the DPP Class. *Id.*

The Parties proceeded to expert discovery and dispositive motions, with DPPs and Defendants filing cross motions for summary judgment on various issues and *Daubert* motions against the opposing experts. *See, e.g.*, ECF Nos. 1967, 1970, 1976, 1981, 1984, 1993, 1998, 1999, 2001, 2007, 2009, 2015, 2030, 2035, 2043, 3036, 3037. DPPs hired three experts: Dr. Russell Mangum (economist), Dr. Gary Hamilton

---

[6] The DPPs had a typographic error in their Litigation Class definition (July 1 instead of July 31) that they asked the Court to correct. ECF No. 1945. The Court later corrected the Class definition. *See* ECF No. 3024 at 3.

(sociologist), and Marianne DeMario (forensic accountant). Inwald Decl. ¶ 12. The Defendants hired nine experts to oppose DPPs: Dr. Randal Heeb (economist), Dr. Michael Moore (economist), Gary Kleinrichert (accountant), Arthur Laby (attorney), Dennis Carlton (economist), Andres Lerner (economist), Janusz Ordover (economist), Robert M. Daines (law professor), and Ilya A. Strebulaev (private equity professor). *Id.* The Parties completed all expert depositions and submitted final expert reports. *Id.* The Court largely denied the defense motions to exclude the testimony of DPPs' experts and granted partial summary judgment with respect to the Plaintiffs' motion as to StarKist. *See* ECF Nos. 2407, 2654, 3134.

In 2019, Defendants appealed the Court's class certification decision pursuant to Fed. R. Civ. P. 23(f). ECF No. 2246. On April 6, 2021, a Ninth Circuit panel vacated the class certification decision and remanded the case so that the trial court could decide which expert was more persuasive on the issue of the number of uninjured parties in each class. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774 (9th Cir. 2021) ("*Olean I*"). A rehearing *en banc* was granted on August 3, 2021. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 5 F.4th 950 (9th Cir. 2021). The *en banc* court affirmed the District Court's class certification order in full. *See generally Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) ("*Olean II*"). That decision has been cited 309 times as of October 2, 2024 and has become the leading antitrust class certification order in district court proceedings throughout the United States.

Class Counsel's zealous efforts to prosecute this case to the benefit of the DPP Class has included tracking parallel class litigation against StarKist for allegedly underfilling their cans. To prevent the settlement in that case from releasing DPP Class members' claims in this action, Hausfeld intervened, and the parties in that action agreed to modify the proposed settlement class definition to protect Class members' antitrust claims from being released by the settlement agreement in that case. *See*

*Hendricks v. StarKist Co.*, 4:13-cv-00729-HSG, ECF No. 323 at 2-3 (N.D. Cal. Dec. 11, 2015) (describing Hausfeld's efforts and the corresponding modification of the scope of the release).

Class Counsel's work has also involved carefully tracking the parallel criminal litigation. For example, when Hausfeld learned that StarKist was challenging the fine owed to the government in connection with its criminal sentencing in the case of *United States v. StarKist Co.*, No. 18-cr-0513-EMC (N.D. Cal.) ("*StarKist*"), arguing that it would not have funds to pay the civil plaintiffs if forced to pay the full fine, the DPPs moved to be heard under the Crime Victim's Rights Act (18 U.S.C. § 3771). Judge Edward Chen permitted the DPPs to be heard, and Class Counsel proceeded to offer evidence about their knowledge of StarKist's financial situation and to offer alternative options to the court to protect the victims of StarKist's conspiracy in the event the criminal court found that StarKist would not be able to pay the fine and compensate its victims for the damage it caused. *See StarKist*, ECF Nos. 29-30, 57, 85-86, 150, 180, 193. Class Counsel attended multiple hearings on this issue and submitted multiple briefs. Ultimately, the criminal court found that StarKist was in the position to pay both the government and its victims over a staged period, and ordered the maximum fine, with a *caveat* that the parties could return to the court if StarKist's financial position changed. Class Counsel's participation in those proceedings conferred further benefits on the Class members. *See StarKist*, ECF No. 181.

In sum, the MDL has been vigorously litigated, and Class Counsel has represented the Class in all variety of ways.

**B. The Settlement**

DPPs participated in a mediation session with the Lion Companies before the Honorable Michael S. Berg on August 7, 2023. *See* ECF No. 3101. No settlement was reached at that time, but the Parties were encouraged to keep an open mind to settlement as the case progressed. ECF No. 3288-9.

Over time, Judge Berg has held numerous settlement conferences with the various parties in this Action, including settlement conferences between DPPs and StarKist on May 29, 2024 and June 3, 2024; and between DPPs the Lion Companies on August 22, 2023 and June 17, 2024. *See* ECF Nos. 3106, 3249, 3256, 3267.

On June 3, 2024, DPPs and StarKist and DWI reached an agreement in principle to settle the case during a mediation session with Judge Berg. The Parties agreed to resolve the claims in exchange for $58,750,000 in cash and product, comprising $32,650,000 in cash and $26,100,000 in product. Inwald Decl. ¶ 16. The DPP Class will be eligible to receive product over a three-year period. *Id.* In exchange, the DPP Class will release all claims that they did assert, or could have asserted, in this Action. *Id.*

On June 17, 2024, DPPs reached an agreement in principle with the Lion Companies to resolve the claims made in the Action during a mediation session over which Judge Berg presided. *Id.* ¶ 17. This mediation followed similar mediation attempts between the Lion Companies and DPPs before two skilled, private mediators, the Hon. Daniel Weinstein (Ret.) and Amb. David Carden (Ret.) of JAMS. *Id.*

During the mediation, Judge Berg was able to fully evaluate Lion's financial condition, as did Class Counsel. *Id.* ¶ 18. Judge Berg heard the Lion Companies' proffers of their financial performance and reviewed the audited financial statements of the companies. DPPs and the Lion Companies had additional discussions about the financial capacity of the Lion Companies, with the Lion Companies' principal members, Lyndon Lea and Graham Tester. *Id.* The nine-hour mediation session concluded with an agreement that the Lion Companies pay $6 million to the DPP Class to resolve the claims against them. *Id.*

StarKist and DPPs executed a Settlement Agreement on August 13, 2024. ECF No. 3288-3. The Lion Companies and DPPs executed a Settlement Agreement on August 2, 2024. ECF No. 3288-4.

Plaintiffs moved for preliminary approval of the Settlement and related Notice Plan on August 13, 2024. The Court granted preliminary approval on August 23, 2024, certifying the following settlement class (the "Class"):

> All persons and entities that directly purchased packaged tuna products within the United States, its territories and the District of Columbia from any Defendant at any time between June 1, 2011 and July 31, 2015. Excluded from the class are all governmental entities; Defendants and any parent, subsidiary or affiliate thereof; Defendants' officers, directors, employees, and immediate families; any federal judges or their staffs; purchases of tuna salad kits or cups; and salvage purchases. Also excluded from the class is any person or entity that was excluded from the class, in whole or in part, pursuant to the Court's Order in this Action at ECF No. 3097, which incorporates the list of entities at ECF No. 3095-1.

ECF No. 3303 at 16. The Settlement Notice has been distributed, pursuant to the Court's order dated August 23, 2024. ECF No. 3303 at 18; ECF No. 3310.

## III.  CLASS COUNSEL ARE ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES

### A. Applicable Legal Standards Governing the Award of Attorneys' Fees in Common Fund Cases

Counsel who represent a class and produce a benefit for the class members are entitled to be compensated for their services. As the Supreme Court states, "this Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("*Boeing*"); *see also Mills v. Elec. Auto-Lite Co*., 396 U.S. 375, 393 (1970) ("*Mills*"). In *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984), the Court recognized that under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the class." The purpose of this doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose

skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("*WPPSS*").

This doctrine specifically extends to antitrust litigation. The Supreme Court repeatedly has recognized the importance of private antitrust litigation as a necessary and desirable tool to ensure the effective enforcement of the antitrust laws. *See, e.g.*, *Pillsbury Co. v. Conboy*, 459 U.S. 248, 262-63 (1983); *Reiter v. Sonotone Corp*., 442 U.S. 330, 331 (1979) ("*Reiter*"); *State of Hawaii v. Standard Oil Corp*., 405 U.S. 251, 266 (1972). "Congress created the treble-damages remedy of § 4 precisely for the purpose of encouraging private challenges to antitrust violations. These private suits provide a significant supplement to the limited resources available to the Department of Justice for enforcing the antitrust laws and deterring violations." *Reiter*, 442 U.S. at 344. Substantial fee awards in successful cases encourage meritorious class actions and thereby promote private enforcement of, and compliance with, antitrust laws. *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968) ("[T]he purposes of the antitrust laws are best served by insuring that the private action will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws.").

Courts in the Ninth Circuit regularly award fees as a percentage-of-the-recovery in common fund cases. *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("*Mexican Workers*").[7] The percentage-of-the-fund method is generally recognized as the superior method of calculating attorneys' fees in common fund class action settlements, like this one, because "the percentage-of-the-fund method aligns the interests of class counsel and the class, rather than

---

[7] The other method of awarding fees, through the lodestar approach, is typically used in "employment, civil rights and other injunctive relief class actions . . . because there is no way to gauge the net value of the settlement or any percentage thereof." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see also Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016).

rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Secs. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *see also Glass v. UBS Fin. Servs.*, 331 F. App'x 452, 457 (9th Cir. 2009) (finding that the objector's "contention that the district court erred in using common fund principles in assessing the award of attorneys' fees [using the percentage-of-the-fund method] is inconsistent with Ninth Circuit jurisprudence, which permits the application of common fund principles where—as in the present case—the class of beneficiaries is identifiable and the benefits can be traced in order to allocate the fees to the class").

Under the percentage-of-the-fund approach, the district court awards a percentage of the fund created by the attorneys' efforts as their reasonable attorneys' fee. *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) ("*Stanger*"). The percentage-of-recovery for fee computation purposes is based on the total amount of that fund made available. *Boeing*, 444 U.S. at 479-80; *Williams v. MGM-Pathe Commc'ns Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997). Ninth Circuit cases often treat 25% as a benchmark percentage. *See, e.g.*, *In re Google Inc. Street View Elec. Commc'ns Litig.*, 21 F.4th 1102, 1120 (9th Cir. 2021); *Asner v. SAG-AFTRA Health Fund*, No. 2:20-cv-10914, 2023 WL 6984582, at *12 (C.D. Cal. Oct. 19, 2023) ("In the Ninth Circuit, 25% of a common fund is considered a presumptively reasonable amount of attorneys' fees when using the percentage-of-recovery method."), *reconsideration denied*, No. 2:20-cv-10914, 2023 WL 8529996 (C.D. Cal. Dec. 7, 2023).

However, "a one-third fee award is standard in complex antitrust cases[,]" such as this one. *In re Flonase Antitrust Litig.*, 291 F.R.D. 93, 104 (E.D. Pa. 2013). Many antitrust courts, in this Circuit and others, provide for an upward departure due to the inherent complexity of the legal issues involved and the risk assumed by the attorneys' involved. *See In re Lidoderm Antitrust Litig.*, MDL No. 2521, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) ("As to the fifth factor, a fee award of one-third is within

the range of awards in this Circuit."); *see also Larsen v. Trader Joe's, Co.*, No. 11-cv-05188, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (citing multiple cases awarding fees of 32% or greater); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of 33%). For cases outside of this Circuit, see, e.g., *In re Pork Antitrust Litig.*, No. 18-1776, 2022 WL 4238416, at *7 (D. Minn. Sept. 14, 2022) (awarding 33% of settlement fund as attorneys' fees in consumer indirect purchaser action); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14-md-02542, 2021 WL 2328431, at *1 (S.D.N.Y. June 7, 2021) (awarding 33 1/3% of a $31 million settlement fund as attorneys' fees in indirect purchaser action); *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516, 2018 WL 10705542, at *5 (D. Conn. July 19, 2018) (awarding 33 1/3% of a settlement fund as attorneys' fees in indirect purchaser action).

## B. The Requested 33.3% Fee Award Is Reasonable Under the Percentage-of-Recovery Method

In common fund cases, "[s]election of the benchmark or any other rate must be supported by findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ("*Vizcaino*"). Relevant circumstances of the case include the results counsel achieved for the class, the risk of litigation, counsel's performance, the contingent nature of the representation and the financial burden of the litigation. *Id.* at 1050-51; *see also Stanger*, 812 F.3d at 740.

### 1. The Results Achieved by Class Counsel Were Meaningful

The Settlements with the Lion Companies and StarKist and DWI provide the Settlement Class Members with significant relief. The total value of the settlement agreements with COSI and TUG, StarKist and DWI, and the Lion Companies is $83,701,961.86. *See* Inwald Decl. ¶ 20. That total value provides the Settlement Class Members with approximately 92.6% of their $90,349,227 in single damages. *Id.*

This relief is comparable to other settlements. For example, the EPPs settled with StarKist and DWI for $130,000,000. *Id.* That settlement represents approximately 58% of their $224,000,000 in single damages. *Id.* Similarly, the DPP settlement agreement with StarKist and DWI provides for cash and product valued at $58.75 million dollars, which is approximately 65% of the DPPs' $90,349,227 in single damages. *Id.*

Additionally, the Settlement Class Members are mostly comprised of smaller companies, with other larger retailers having effectively opted out of the Class by filing their own suits or separately settling with the Defendants. As it pertains to the Settlement Agreement with StarKist, the Settlement Class Members represent around 20% of the purchases of packaged tuna products during the relevant period and received $58.75 million dollars in cash and product. *See id.* ¶¶ 5, 20.

By comparison, as noted above, one of the former DAPs in this case, Wal-Mart—the largest retailer in the country, which alone represents nearly 20% of the packaged tuna purchases in the relevant period—resolved its antitrust claims against StarKist for $20.5 million in cash and product. ECF No. 3288-7. Thus, the StarKist and DWI Settlement Agreement alone has achieved a result that is nearly three times than what an individual direct action purchaser achieved for itself. *See* Fed. R. Civ. P. 23 advisory committee notes (2018) ("[T]he actual outcomes of other cases, may indicate whether counsel negotiating on behalf of the class had an adequate information base.").

### 2. The Risks of Litigation

Class Counsel endured significant risk in pursuing this litigation. *Stanger*, 812 F.3d at 740 (including risk of litigation as a factor in determining whether the requested attorneys' fees are reasonable). Although DPPs and their counsel believe that the Class's claims have substantial merit, they recognize the risk and expense necessary to prosecute their claims through trial, and subsequent appeals, as well as

the inherent difficulties and delays that antitrust litigation, like this case, entails.  *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("*Torrisi*") (approving settlement based in part on "inherent risks of litigation").

The DPPs maintain that the liability claims for violations under the antitrust laws are strong, given admissions of COSI, StarKist, and Bumble Bee (and additional judgments against Steve Hodge, Scott Cameron, Ken Worsham, and Chris Lischewski) for participation in a conspiracy to violate those laws. Inwald Decl. ¶ 4. However, the claims against DWI and the Lion Companies were disputed. *Id.* And all the Defendants vigorously disputed the scope, duration, and effect of the collusion. *Id.*

Additionally, Class Counsel endured the risk of the DPP class not being certified. After the Court certified the DPP class in 2019, a Ninth Circuit panel vacated the class certification decision. *See generally Olean I*, 993 F.3d 774. It was only after Class Counsel persuaded an *en banc* panel to affirm the District Court's class certification order in full, that the DPP class was certified. *See generally Olean II*, 5 F.4th 950.

Apart from the need to establish liability and class certification, proving damages at trial is an expert-intensive and uncertain process, often involving conflicting testimony.  The reaction of a jury to such intricate and contradictory expert testimony is highly unpredictable, and in such a battle, Class Counsel recognize the possibility that a jury could find there were either no damages or only a fraction of the amount of the damages contended. *Dexter's LLC v. Gruma Corp.*, No. 23-cv-212, 2023 WL 8790268, at *4 (S.D. Cal. Dec. 19, 2023) ("The court shall consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Even if DPPs were successful at trial, DWI and the Lion Companies do not have collectible assets within the United States, and the Lion Companies are winding down their operations. Inwald Decl. ¶ 4; *see Stanger*, 812 F.3d at 740 (acknowledging that assessing reasonableness can include weighing "the risk of nonpayment" and "the difficulty and risks inherent in litigating against defendants in [a foreign nation]"). Moreover, there is no guarantee that the judgment would ultimately be sustained by the trial court or on appeal.

### 3.  The Skill Required and the Quality of the Work Justifies the Request

As noted above, this case involved independent factual investigation and research, significant and complex analysis of antitrust law, economics, and documents, and the monitoring of related criminal and bankruptcy proceedings. Achieving settlement with StarKist and DWI and the Lion Companies involved extensive negotiations over the course of several face-to-face settlement meetings. Inwald Decl. ¶ 15; ECF No. 3288-9 ¶ 3.  This settlement was hard-fought, negotiated at arm's-length against qualified and motivated opposing counsel.  The difficulty of achieving such a settlement against experienced and motivated opposing counsel is substantial.  *See, e.g.*, *Fernandez v. Corelogic Credco, LLC*, No. 20-cv-1262, 2024 WL 3209391, at *16 (S.D. Cal. June 24, 2024) ("*Fernandez*") (analyzing whether defense counsel was "experienced and quality"); *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, *et al.*, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("The Court also notes that the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work.")

DPPs' Counsel are experienced antitrust and class action attorneys.  Inwald Decl. ¶¶ 3-7.  Such qualifications should also be taken into account when evaluating an appropriate fee award.  *See Fernandez*, 2024 WL 3209391, at *16 (approving a fee award based in part on the experience of counsel); *see also In re Vitamins Antitrust*

*Litig.*, No. 99-197, MDL 1285, 2001 WL 34312839, at \*11 (D.D.C. July 16, 2001) ("[T]he attorneys involved are among some of the most highly skilled in the country with extensive experience in similar class action litigation . . . The experience, skill and professionalism of counsel and the performance and quality of opposing counsel all weigh in favor of the requested fee."). Therefore, the skill required and quality of work in the present case weighs in favor of the requested fee award. *See* ECF No. 3288-9 ¶ 8, 9 (Judge Berg stating, "[I]t is my recommendation that the District Court consider an upward departure from the presumptively reasonable benchmark fee of 25% in common fund cases" and finding that "an award at [one-third] is warranted").

### 4. The Contingent Fee Nature of the Case and the Financial Burden Carried by Class Counsel

The contingent nature of Class Counsel's representation also supports the requested fee. Class Counsel took on this case and the out-of-pocket costs prosecuting it, with the understanding that they would be compensated only if they succeeded. Courts have recognized the need to reward plaintiffs' counsel who accept a case on a contingent fee basis because of the risk of non-payment that they face:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, *Economic Analysis of Law* § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299, 1300-01.

The Court should not overlook the real risks that DPPs' Counsel incur by accepting contingent fee cases, such as this one. Large-scale antitrust actions are, by their very nature, complicated and time-consuming. Any law firm undertaking a case such as this must inevitably be prepared to make a tremendous investment of time, energy, and resources. Class Counsel were prepared to make, and did make this investment of $5,704,721.25, with the very real possibility of an unsuccessful outcome

and no fee available. The demands and risks of this type of litigation overwhelm the resources—and deter participation—of many traditional claimants' firms.

Class Counsel prosecuted this case for nine years before achieving this settlement. The fact that significant financial burden was carried for such a long period supports the reasonableness of the requested fee percentage. *See Vizcaino*, 290 F.3d at 1050 ("These burdens [years of litigation, significant financial expense, foregoing other work] are relevant circumstances.") (citing *Mexican Workers*, 904 F.2d at 1311; *Torrisi*, 8 F.3d at 1377; *Soto v. Diakon Logistics (Delaware), Inc.*, No. 8-cv-33-L, 2015 WL 13344897, at *5 (S.D. Cal. June 25, 2015) (departing from the 25% benchmark when "the risks of litigation were real and substantial" and "[t]he complexity and potential duration of the case, coupled with the settlement negotiations" weighed in favor of the departure)); *see also Lopez v. Youngblood*, No. CV-F-07-0474, 2011 WL 10483569, at *8 (E.D. Cal. Sept. 2, 2011) (noting that "Class Counsel's efforts were extensive and involved all that occurs in a case that is litigated up to the eve of trial" in approving upward departure from benchmark fee).

**C. The Requested Fee Is Reasonable Under Lodestar Cross-Check**

The Ninth Circuit has held that the lodestar method "provides a check on the reasonableness of the percentage award. Where such investment is minimal, as in the case of an early settlement, the lodestar calculation may convince a court that a lower percentage is reasonable. Similarly, the lodestar calculation can be helpful in suggesting a higher percentage when litigation has been protracted." *Vizcaino*, 290 F.3d at 1050. Given the protracted litigation here, along with the fact that the 33.3% fee is significantly less than Class Counsel's total lodestar, the requested fee percentage is appropriate. *See* ECF No. 3288-9 ¶ 8.

The lodestar method, as set forth in the seminal cases *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 487 F.2d 161 (3d Cir. 1973) ("*Lindy I*"), and *Lindy Bros. Builders, Inc. v. Am. Radiator & Standard Sanitary Corp.*, 540 F.2d

102 (3d Cir. 1976), is a two-step process. *See Lindy I*, 487 F.2d at 167-68. The first step requires ascertaining the "lodestar" figure by multiplying the number of hours reasonably worked by the hourly rate of counsel. *Id.* at 168; *see also Stanger*, 812 F.3d at 738. In the second step of the analysis, a court adjusts the lodestar to account for, among other things, the risk of non-payment, the result achieved, the quality of representation, the complexity and magnitude of the litigation, and public policy considerations. *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 583 (3d Cir. 1984). To account for the foregoing factors, the court then applies an appropriate multiplier to the lodestar number.

The lodestar for the services performed by Class Counsel in this case results in a negative lodestar multiplier.[8] Class Counsel expended a total of 48,451.56 hours litigating this case starting from appointment of interim class counsel on March 24, 2016, for a total lodestar of $23,527,505.50. Inwald Decl. ¶ 21. This total lodestar reflects rates that were substantially reduced by Lead Counsel, and accordingly, includes rates that are lower than the regular rates charged for Class Counsel's services in non-contingent matters and lower than those which have been accepted in other complex or class action litigation. Lead Counsel reduced DPP Counsels' hourly rates because the total lodestar before reduction, $28,939,289.33, was much higher than any attorneys' fee award that Class Counsel would be willing to seek and that the Court might be willing to grant. In equalizing Class Counsel's hourly rates across every participating firm at rates that are lower than many of these firms normally charge, Lead Counsel attempts to ensure that everyone who worked on this case can receive fair compensation relative to the value of the services that they provided.

---

[8] Hausfeld LLP provides summary hour and lodestar information in the accompanying Declaration of Erika A. Inwald. Firm-by-firm breakdowns of hours and lodestar by timekeeper are included in additional declarations attached thereto submitted for each firm that completed work on this case.

Even with this rate reduction, the total lodestar is still greater than the percentage fee award that Class Counsel requests. The requested fee of 33.3% of $62,605,915.46 (the total amount of DPPs' settlements with StarKist and DWI and the Lion Companies minus litigation fund reimbursements, other costs and expenses, and expected costs for settlement class notice and administration) is $20,847,769.85, which is 89% of the reduced lodestar, or 72% of the lodestar at the rates the firms bill for their professional services. A negative lodestar multiplier supports the reasonableness of the percentage fee request. *Schiller v. David's Bridal, Inc.*, No. 1:10-cv-00616, 2012 WL 2117001, at *23 (E.D. Cal. June 11, 2012) (acknowledging reasonableness when "[n]otwithstanding [a] reduction in hourly rates, . . . the resulting lodestar . . . is still greater than the percentage fee award counsel requests"). In short, the lodestar cross-check confirms that the 33.3% fee requested by Class Counsel is reasonable.

## D. The Expenses Are Reasonable and Should Be Reimbursed

Class Counsel also respectfully request that they be reimbursed for the litigation costs and expenses in the amount of $1,294,084.54. Inwald Decl. ¶ 31. After approving the COSI settlement, the Court separately approved an arbitrator's $4,410,636.71 award of costs to Class Counsel for reimbursement of all reasonable out-of-pocket expenses occurring before January 1, 2021. *Id.* ¶ 21. Since that date, Class Counsel has additionally advanced $1,294,084.54 in reasonable expenses of which they now seek reimbursement. *Id.* ¶ 31. Under the common fund doctrine, Class Counsel are entitled to all reasonable out-of-pocket expenses and costs in prosecution of the claims and in obtaining a settlement. *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 (9th Cir. 2022).

It is common and appropriate for Class Counsel to be reimbursed out of the common fund for all reasonable litigation expenses, including expenses for document production, expenses for experts and consultants, Class administration expenses

including the mailing of class notices. *See* H. Newberg, Attorney Fee Awards § 2.19 at 69 (1986); *Mills*, 396 U.S. at 391; *see also In re Media Vision Tech. Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996) ("Reasonable costs and expenses incurred by an attorney who creates or preserves a common fund are reimbursed proportionately by those class members who benefit by the settlement."). Expenses are compensable in a common fund case if the particular expense is of the type typically billed by attorneys to paying clients in the marketplace. *See Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023-24 (E.D. Cal. 2019); *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (approving expenses normally charged to a fee-paying client). The categories of expenses for which Class Counsel seek payment here are of the type routinely charged to paying clients and, therefore, should be awarded. Details concerning the expenses incurred by each firm on this case are listed in the accompanying declarations submitted herewith.

Accordingly, it is respectfully requested that the out-of-pocket expenses of DPPs' counsel of $1,294,084.54 be reimbursed.

## IV.   SERVICE AWARDS SHOULD BE APPROVED

DPPs also request service awards of $12,500 for each of the DPP Class Representatives from the settlement fund. In the DPPs' settlement with COSI and TUG, DPPs' requested, and the Court granted, a $5,000 service award for each of the DPP Class Representatives. ECF Nos. 2785-1, 3012. Given the extent of time and work that the Class Representatives have put into this case over the last nine years, an additional award of $12,500 for each of the DPP Class Representatives is a modest and fair request. These Plaintiffs have sat for depositions, produced documents, responded to written discovery, monitored the progress of the case, and faithfully fulfilled their duties throughout this entire long-running litigation. In addition, over the past year, each of these parties has spent significant time with Class Counsel and assisted in the preparation for trial. Class Counsel communicated with class

representatives multiple times by video conference, in person, and by telephone. Class Counsel practiced direct examinations with Class Representatives and reviewed potential trial exhibits with them. The Class Representatives, including those who had to travel to San Diego from the east coast, were willing to attend trial and testify if called upon by Class Counsel. All the Class Representatives were essential to Class Counsel in preparing for trial and were generous with their time.

Courts often approve incentive awards to class representatives for their service to the Class. *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 943, 947-48 (9th Cir. 2015); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) ("*Rodriguez*") ("Incentive awards are fairly typical in class action cases."); *Harris v. Vector Mktg. Corp.*, No. 08-cv-5198, 2012 WL 381202, at *6 (N.D. Cal. Feb. 6, 2012) ("It is well-established in this circuit that named plaintiffs in a class action are eligible for reasonable incentive payments, also known as service awards. In fact, the Ninth Circuit recently noted that incentive payments to named plaintiffs have become 'fairly typical' in class actions."). Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to act as private attorney general. *Rodriguez*, 563 F.3d at 958-59. The DPPs' request of $12,500 per Class Representative are well within the amounts Ninth Circuit courts find acceptable. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, No. 13-cv-0561, 2014 WL 6473804, at *7 (C.D. Cal. Nov. 18, 2014) (citing *Staton v. Boeing Co.*, 327 F.3d 938, 976-77 (9th Cir. 2003)); *In re BofI Holding, Inc. Sec. Litig.*, No. 3:15-cv-02324, 2022 WL 9497235, at *8 (S.D. Cal. Oct. 14, 2022) (granting a $15,000 service award); *Birch v. Office Depot*, No. 06 CV 1690, 2007 WL 9776717, at *2 (S.D. Cal. Sept. 28, 2007) (Sabraw, J.) (awarding service awards of $15,000 and $10,000 because "Plaintiffs greatly assisted Class Counsel and committed a significant amount of effort in order to obtain the benefits on behalf of the class" and because the service awards

were "well within amounts awarded by courts"); *Santillan v. Verizon Connect, Inc.*, No. 3:21-cv-1257, 2024 WL 627998, at *11 (S.D. Cal. Feb. 13, 2024) (granting a $10,000 incentive award).

**V.    CONCLUSION**

For the foregoing reasons, DPPs respectfully request that, in conjunction with final approval of the Settlements with StarKist and DWI and the Lion Companies, the Court grant their application for an award of attorneys' fees in the amount of $20,847,769.85, reimbursement of litigation expenses in the amount of $1,294,084.54, and modest incentive awards of $12,500 for each of the Class Representatives for their service.

Dated: October 4, 2024                    Respectfully submitted,

By: */s/ Erika A. Inwald*
Erika A. Inwald
**HAUSFELD LLP**
33 Whitehall Street, 14th Floor
New York, NY 10004
Tel: (646) 357-1100
Fax: (212) 202-4322
E-mail: einwald@hausfeld.com

Michael P. Lehmann
Christopher L. Lebsock
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: clebsock@hausfeld.com

Michael D. Hausfeld
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, D.C. 20006
Tel: (202) 540-7200
Fax: (202) 540-7201
E-mail: mhausfeld@hausfeld.com

*Class Counsel for the Direct Purchaser Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF SERVICE</u>

I certify that on October 4, 2024, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

*/s/ Erika A. Inwald*
Erika A. Inwald
