Michael P. Lehmann (Cal. Bar No. 77152)
Christopher L. Lebsock (Cal. Bar No. 184546)
**HAUSFELD LLP**
600 Montgomery Street, Suite 3200
San Francisco, CA 94111
Tel: (415) 633-1908
Fax: (415) 358-4980
E-mail: mlehmann@hausfeld.com
E-mail: clebsock@hausfeld.com

*Class Counsel for the Direct Purchaser Plaintiffs*

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION<br><br>This document relates to:<br><br>All Direct Purchaser Plaintiff Actions | Case No. 3:15-md-02670-DMS (MSB)<br><br>**DECLARATION OF ERIKA A. INWALD IN SUPPORT OF DIRECT PURCHASER PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>DATE: November 22, 2024<br>TIME: 1:30 P.M.<br>JUDGE: Dana M. Sabraw<br>CTRM: 13A |

I, Erika A. Inwald, declare as follows:

1. I am an attorney licensed to practice law in the State of New York. I am an associate at Hausfeld LLP, 33 Whitehall Street, 14th Floor, New York, NY, 10004. I make this declaration in support of the Direct Purchaser Plaintiffs' ("DPPs") Motion for an Award of Attorneys' Fees and Reimbursement for Litigation Expenses concerning the DPPs preliminary approved Settlements with Defendants StarKist Co. and Dongwon Industries Co., Ltd. (collectively "StarKist and DWI"), and Defendant Lion Capital (Americas), Inc., Lion Capital LLP, and Big Catch Cayman LP (collectively the "Lion Companies") (collectively with the DPPs, the "Parties"). I have personal knowledge of the facts set forth herein and, if called upon to do so, I could and would testify competently thereto.

2. The Court appointed Hausfeld LLP as Class Counsel for the Direct Purchaser Plaintiffs. ECF No. 1931.

3. I and the other attorneys at my firm who have worked on this case are experienced attorneys who have litigated many prior complex antitrust class actions such as this one. We have successfully resolved many of those cases in districts within this Circuit. We have brought that experience and knowledge to bear on behalf of the Class. As described below, the negotiations leading to the settlements with Defendants were vigorous, informed, and thorough; occurred over a span of many months; and were not concluded until after the completion of fact and expert discovery and full briefing of dispositive motions. The parties conducted their negotiations in good faith under the supervision of the Honorable Michael S. Berg, a United States Magistrate Judge for this District.

4. The DPPs and Class Counsel maintain that the liability claims for violations under the antitrust laws are strong, given admissions of COSI, StarKist, and Bumble Bee (and additional judgments against Steve Hodge, Scott Cameron, Ken Worsham, and Chris Lischewski) for participation in a conspiracy to violate those laws.

However, collection of a large judgment in this case is highly uncertain given that StarKist does not have assets sufficient to cover the financial exposure of the DPPs and the remaining plaintiffs, and that DWI and the Lion Companies do not have assets in the United States that could be attached. Moreover, I understand the Lion Companies are in the process of winding down their business operations and do not have substantial assets available to resolve the claims against them. Additionally, I have observed that the other Class Plaintiffs and most DAPs—which comprise most of the largest members of the DPP Class and collectively account for around 80% of the purchases by DPP Class Members—have already entered into settlements with Defendants.

5. The proposed Settlement with StarKist and DWI will deliver approximately $58,750,000 in cash and product to remaining Class Members. The proposed Settlement with the Lion Companies will deliver approximately $6,000,000 in cash to remaining Class Members. Together, the DPPs' settlements with StarKist and DWI and the Lion Companies total $64,750,000. This relief is significant for the Settlement Class Members, whose purchases (after the DAPs are excluded) represent approximately 20% the commerce at issue in this case, as described in the DPPs' economist's expert report. *See* Mangum Merits Reply Report ¶ 244, attached to the Declaration of Samantha Stein (ECF No. 2143), Ex. 242. By comparison, it has been publicly reported that one of the most powerful retailers in the market, Wal-Mart, which accounted for approximately 20% of packaged tuna purchases during the relevant period, settled with StarKist for $20.5 million in cash and product. Thus, comparatively, the DPPs' proposed settlements achieve a result that is fair, reasonable, and adequate—and do so without burdening Class Members with the distractions associated with litigating on their own behalf.

6. The Settlement was achieved after significant discovery and development of the case. The DPPs' initial suit was filed in August of 2015 after the U.S. Department

of Justice ("DOJ") began a criminal investigation. Hausfeld was the first firm to file suit on behalf of the first filed Plaintiff in this litigation, Olean Wholesale Grocery Cooperative, Inc. ("Olean"). Following the DOJ's criminal investigation, COSI admitted Sherman Act violations, sought leniency, and cooperated with both the DOJ and civil claimants by providing evidence against its co-conspirators and co-Defendants, StarKist and Bumble Bee Foods LLC.[1]

7. On March 24, 2016, the District Court formally appointed Hausfeld as interim lead counsel for the DPP Class. The Court also appointed a DPP Steering Committee consisting of the law firms of: Bernstein Liebhard LLP; Block & Leviton LLP; Cera LLP; Lowey Dannenberg Cohen & Hart, P.C. (now Lowey Dannenberg P.C.); Quinn Emanuel Urquhart & Sullivan, LLP; and Stueve Siegel Hanson LLP (later replaced by Hartley LLP). These firms, along with other firms (Steyer Lowenthal Boodrookas Alvarez & Smith LLP; Bleichmar Fonti & Auld LLP; and Rupp Baase Pfalzgraf Cunningham LLC)) have completed work in this litigation.

8. After filing suit, the DPPs began developing their case and conducting significant discovery. In particular, Class Counsel performed significant work and expended significant resources in this case to the benefit of *all* members of the DPP Class. Class Counsel pushed for production of the DOJ Documents from the related criminal investigation, and when the stay was lifted to allow that material to be produced, Defendants produced over two million pages of documents as a result of these efforts. Hausfeld then organized and headed the review of those documents. As part of that document review, Hausfeld coordinated all of the other plaintiffs' counsel

---

[1] When Bumble Bee and StarKist pleaded guilty to violations of the antitrust laws, the DOJ sent letters to DPP Class Counsel pursuant to the Crime Victim Rights Act to notify victims of the conspiracy, including DPP Class Members, of their rights to be heard in connection with the sentencing of these companies.

to draft harmonized and stronger complaints.[2] Indeed, the complaints produced as a result of this effort contained substantial new allegations detailing the nature and scope of Defendants' conspiracy.

9. For example, in addition to suing Bumble Bee, StarKist, and COSI, the DPP Class has also sued TUG, COSI's parent; the Lion Companies, the parent of Bumble Bee and affiliated entities; and DWI, the parent of StarKist. None of these entities were prosecuted by DOJ, and all denied responsibility for the actions of their subsidiaries and affiliates. However, Class Counsel, having served and received discovery from the Lion Companies, uncovered significant new facts about these entities (and their participation in the conspiracy). Class Counsel immediately moved to add Defendants (ECF No. 530), which other plaintiffs later followed. The Court ultimately granted the request as to the Lion Companies. Hausfeld's efforts in this regard have provided an opportunity for all DPP Class members to recover from the Lion Companies, since Bumble Bee has sold its assets in the bankruptcy proceedings.

10. Class Counsel have reviewed millions of pages of documents and have participated in many of the more than 200 depositions taken in this case across the United States and Asia. Class Counsel have also conducted extensive written discovery, including serving interrogatories and requests for admission. As a result of these and other efforts, Class Counsel were able to secure relief from Defendants for a period of time longer than the period for which the DOJ secured guilty pleas.

11. In addition to undertaking extensive factual investigations and conducting extensive discovery, Class Counsel have driven this case forward by often serving as

---

[2] The successive complaints in the litigation led the district court judge to issue voluminous opinions on various defense dismissal motions. *See In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670, 2017 WL 35571 (S.D. Cal. Jan. 3, 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 242 F. Supp. 3d 1043 (S.D. Cal. 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 277 F. Supp. 3d 1167 (S.D. Cal. 2017); *In re Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118 (S.D. Cal. 2018).

the coordinator for all case management related issues. For example, virtually any time scheduling issues or other sorts of logistical and organizational issues have arisen in the case, including preparing for Status Conferences or drafting Status Reports, the other parties have relied on Hausfeld to coordinate the other tracks of Plaintiffs and to liaise with Defendants' counsel on everything from discovery to logistical and organizational issues. Hausfeld has also been responsible for organizing translation services for foreign language documents.

12. The Parties also conducted expert discovery and briefed dispositive motions, with DPPs and Defendants filing cross motions for summary judgment on various issues and *Daubert* motions against the opposing experts. *See, e.g.*, ECF Nos. 1967, 1970, 1976, 1981, 1984, 1993, 1998, 1999, 2001, 2007, 2009, 2015, 2030, 2035, 2043, 3036, 3037. DPPs hired three experts for use against Defendants: Dr. Russell Mangum (economist), Dr. Gary Hamilton (sociologist), and Marianne DeMario (forensic accountant). Defendants hired nine experts to oppose the DPPs: Dr. Randal Heeb (economist), Dr. Michael Moore (economist), Gary Kleinrichert (accountant), Arthur Laby (attorney), Dennis Carlton (economist), Andres Lerner (economist), Janusz Ordover (economist), Robert M. Daines (law professor), and Ilya A. Strebulaev (private equity professor). The Parties completed all expert depositions and submitted final expert reports. The Court granted in part and denied in part the defense motions to exclude the testimony of DPPs' experts and granted partial summary judgment with respect to the Plaintiffs' motion as to StarKist. ECF Nos. 2407, 2654, 3134.

13. Class Counsel's zealous efforts to prosecute this case to the benefit of the DPP Class has included tracking parallel class litigation against StarKist for allegedly underfilling their cans. To prevent the settlement in that case from releasing DPP Class members' claims in this action, Hausfeld intervened, and the parties in that action agreed to modify the proposed settlement class definition to protect Class members' antitrust claims from being released by the settlement agreement in that case. *See*

1  *Hendricks v. StarKist Co.*, 4:13-cv-00729-HSG, ECF No. 323 at 2-3 (N.D. Cal. Dec. 11, 2015) (describing Hausfeld's efforts and the corresponding modification of the scope of the release).

14.  Class Counsel's work has also involved carefully tracking the parallel criminal litigation. For example, when Hausfeld learned that StarKist was challenging the fine owed to the government in connection with its criminal sentencing in the case of *United States v. StarKist Co.*, No. 18-cr-0513-EMC (N.D. Cal.) ("*StarKist*"), arguing that it would not have funds to pay the civil plaintiffs if forced to pay the full fine, the DPPs moved to be heard under the Crime Victim's Rights Act (18 U.S.C. § 3771). Judge Edward Chen permitted the DPPs to be heard, and Class Counsel proceeded to offer evidence about their knowledge of StarKist's financial situation and to offer alternative options to the court to protect the victims of StarKist's conspiracy in the event the criminal court found that StarKist would not be able to pay the fine and compensate its victims for the damage it caused. *See StarKist*, ECF Nos. 29-30, 57, 85-86, 150, 180, 193. Class Counsel attended multiple hearings on this issue and submitted multiple briefs. Ultimately, the criminal court found that StarKist was in the position to pay both the government and its victims over a staged period, and ordered the maximum fine, with a *caveat* that the parties could return to the court if StarKist's financial position changed. Class Counsel's participation in those proceedings conferred further benefits on the Class members. *See StarKist*, ECF No. 181.

15.  The negotiations concerning the Settlements involved informal discussions between the parties' counsel over the course of many years, and recently were supervised by Judge Berg. The Settlement Agreements were negotiated over multiple in-person, video conference, and telephonic mediation sessions. DPPs participated in a mediation session with the Lion Companies before Judge Berg on August 7, 2023. *See* ECF No. 3101. No settlement was reached at that time, but the

1  Parties were encouraged to keep an open mind to settlement as the case progressed.
2  ECF No. 3288-9.

3      16.   On June 3, 2024, DPPs and StarKist and DWI reached an agreement in
4  principle to settle the case during a mediation session with Judge Berg. The Parties
5  agreed to resolve the claims in exchange for $58,750,000 in cash and product,
6  comprising $32,650,000 in cash and $26,100,000 in product. The DPP Class will be
7  eligible to receive product over a three-year period. In exchange, the DPP Class will
8  release all claims that they did assert, or could have asserted, in this Action.

9      17.   On June 17, 2024, DPPs reached an agreement in principle with the Lion
10 Companies to resolve the claims made in the Action during a mediation session over
11 which Judge Berg presided. This mediation followed similar mediation attempts
12 between the Lion Companies and DPPs before two skilled, private mediators, the Hon.
13 Daniel Weinstein (Ret.) and Amb. David Carden (Ret.) of JAMS.

14     18.   During the mediation, Judge Berg was able to fully evaluate Lion's
15 financial condition, as did Class Counsel. Judge Berg heard the Lion Companies'
16 proffers of their financial performance and reviewed the audited financial statements
17 of the companies. DPPs and the Lion Companies had additional discussions about the
18 financial capacity of the Lion Companies, with the Lion Companies' principal
19 members, Lyndon Lea and Graham Tester. The nine-hour mediation session
20 concluded with an agreement that the Lion Companies pay $6 million to the DPP Class
21 to resolve the claims against them.

22     19.   StarKist and DWI and the DPPs executed a Settlement Agreement on
23 August 13, 2024. The Lion Companies and the DPPs executed a Settlement
24 Agreement on August 2, 2024.

25     20.   The Settlements provide the Settlement Class Members with significant
26 relief. The total value of the settlement agreements with COSI and TUG, StarKist and
27 DWI, and the Lion Companies is $83,701,961.86 (including a partial reimbursement
28

of fees and advanced costs from the COSI settlement). That total value provides the Settlement Class Members with approximately 92.6% of their $90,349,227 in single damages. This relief is comparable to other settlements. For example, the EPPs settled with StarKist and DWI for $130,000,000. That settlement represents approximately 58% of their $224,000,000 in single damages. Similarly, the DPP settlement agreement with StarKist and DWI provides for cash and product valued at $58.75 million dollars, which is approximately 65% of the DPPs' $90,349,227 in single damages.

21. Class Counsel has litigated this case for nine years on contingency—and has advanced $5,704,721.25 in costs. Nearly six years into the litigation, the Court awarded Class Counsel $1,539,363.29 in fees and $4,410,636.71 in costs pursuant to an arbitration between COSI/TUG and Class Counsel. *See* ECF No. 3012. Since interim Class Counsel was appointed on March 24, 2016, DPPs' counsel have collectively provided 48,451.56 hours of professional services to the Settlement Class, for a total lodestar of $23,527,505.50. This total lodestar reflects rates that were substantially reduced by Lead Counsel, and accordingly, includes rates that are lower than the regular rates charged for Class Counsel's services in non-contingent matters and lower than those which have been accepted in other complex or class action litigation. Lead Counsel reduced DPP Counsels' hourly rates because the total lodestar before reduction, $28,939,289.33, was much higher than any attorneys' fee award that Class Counsel would be willing to seek and that the Court might be willing to grant. In equalizing Class Counsel's hourly rates across every participating firm at rates that are lower than many of these firms normally charged, Lead Counsel attempts to ensure that everyone who worked on this case can receive fair compensation relative to the value of the services that they provided.

22. Even with this rate reduction, the total lodestar is still greater than the percentage fee award that Class Counsel requests. The requested fee of 33.3% of

$62,605,915.46 (the total amount of DPPs' settlements with StarKist and DWI and the Lion Companies minus litigation fund reimbursements, other costs and expenses, and expected costs for settlement class notice and administration) is $20,847,769.85, which is 89% of the reduced lodestar, or 72% of the lodestar at the rates the firms bill for their professional services.

23. The schedule attached hereto as Exhibit 1 is a detailed summary indicating the amount of time spent by attorneys and professional support staff of my firm who were involved in, and billed ten or more hours to, this litigation, and the lodestar calculation for those individuals based on my firm's then-current billing rates (including historical rates). For personnel who are no longer employed by my firm, the lodestar calculation is based on the billing rates for such personnel at the time they conducted work on behalf of DPPs. The schedule was prepared from contemporaneous daily time records regularly prepared and maintained by my firm. After the time records were compiled, the rates were then reduced to comply with hourly rates set for all DPP Counsel.

24. The hourly rates for the attorneys and professional support staff of my firm included in Exhibit 1 are set by lead counsel due to the circumstances of this particular matter and are lower than rates which have been accepted in other complex or class action litigation.

25. The total number of hours reflected in Exhibit 1 is 26,460.40. The total lodestar reflected in Exhibit 1 is $13,451,871.50, consisting of $12,625,973.00 for attorneys' time and $825,898.50 for professional support staff time.

26. My firm's lodestar figures are based on billing rates, which do not include charges for expense items. Expense items are billed separately and such charges are not duplicated in my firm's billing rates.

27. As detailed in Exhibit 2, my firm is seeking reimbursement for a total of $138,870.87 in litigation expenses incurred in connection with the prosecution of this

Action from January 1, 2021 through and including September 16, 2024 (this does not include contributions to the Litigation Fund).

28. The litigation expenses reflected in Exhibit 2 are the actual incurred expenses.

29. The expenses incurred in this Action are reflected on the books and records of my firm. These books and records are prepared from expense vouchers, check records, and other source materials and are an accurate record of the expenses incurred.

30. The firms that did significant work on this case also incurred costs related to this litigation that were not paid out of the Litigation Fund. Those costs are discussed in the declarations from the firms referenced in Paragraph 11.

31. Collectively, Class Counsel advanced a total of $5,704,721.25 during the course of the litigation, and carried those costs for many years. The total amount that DPP Counsel seek for expenses incurred to prosecute this case since January 1, 2021 is $1,294,084.54.

32. Class Counsel have not been reimbursed for the $1,133,202.18 they contributed to the litigation fund, which was used to pay for a host of litigation expenses from January 1, 2021 until the present. These expenses include the use of electronic document hosting platforms (CS Disco, Inc.); translation services (Transperfect Legal Solutions); deposition service providers (Veritext, LLC); process servers (Nationwide Legal, LLC); experts (Cirque Analytics LLC, Nathan Associates, Inc., Spectrum Consulting Partners), mediators and arbitrators (Judicate West, Phillips ADR Enterprises, P.C., and JAMS); trial consultants (Delphi Litigation Strategies, LLC) court reporters (such as Lee Ann Pence and Vanessa Evans); and the like.

33. Finally, the DPPs are respectfully requesting a service award of $12,500 for the following Class Representatives: Olean, Piggly Wiggly Alabama Distributing Co., Inc., Gregg Szilagyi as Trustee in Bankruptcy for Central Grocers, Inc., Trepco

1  Imports and Distribution Ltd., Pacific Groservice Inc. d/b/a PITCO Foods, and
2  Benjamin Foods LLC. The Class Representatives have faithfully represented the Class
3  for nearly nine years, including producing documents, responding to interrogatories,
4  sitting for depositions, and monitoring the progress of the case. In addition, over the
5  past year, each of these parties has spent significant time with Class Counsel and
6  assisted in the preparation for trial. Class Counsel communicated with Class
7  Representatives multiple times by video conference, in person, and by telephone.
8  Class Counsel practiced direct examinations with Class Representatives and reviewed
9  potential trial exhibits with them. The Class Representatives, including those who had
10 to travel to San Diego from the east coast, were willing to attend trial and testify if
11 called upon by Class Counsel. All the Class Representatives were essential to Class
12 Counsel in preparing for trial and were generous with their time. These proposed
13 service awards are modest and do not fully reflect the contribution these parties have
14 made over the last nine years.

15     I declare under penalty of perjury that the foregoing facts are true and correct
16 and that this declaration was executed in New York, New York on October 4, 2024.

*/s/ Erika A. Inwald*
Erika A. Inwald

*Class Counsel for the Direct Purchaser Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on October 4, 2024, I filed the foregoing document and supporting papers with the Clerk of the Court for the United States District Court, Southern District of California, by using the Court's CM/ECF system. I also served counsel of record via this Court's CM/ECF system.

*/s/ Erika A. Inwald*
Erika A. Inwald

# Exhibit 1

| In re Packaged Seafood Products Antitrust Litigation, MDL 2670 Hausfeld LLP - Summary Time Report | | | |
|---|---|---|---|
| | Title | Hours | Amount |
| Bahceci, Mustafa (0221) | Law Clerk | 75.50 | $22,650.00 |
| Bailey, Jr., Arthur N. (0018) | Of Counsel | 144.60 | $97,120.00 |
| Bakshi, Debashish (0272) | 7 PQE Senior Associate | 442.90 | $221,450.00 |
| Bojedla, Swathi (0062) | Partner | 11.00 | $4,510.00 |
| Chavez, Kiara (0182) | Staff Attorney | 2,367.70 | $828,695.00 |
| Inwald, Erika (0282) | 3 PQE Associate | 1,047.50 | $523,750.00 |
| Kolmogorov, Pavel (0175) | Law Clerk | 604.00 | $181,200.00 |
| Lebsock, Christopher L. (0008) | Partner | 4,196.90 | $2,937,830.00 |
| Lehmann, Michael P. (0002) | Partner | 2,682.30 | $1,877,610.00 |
| Loughran, Thomas (0277) | Paralegal - Yr 2 | 11.00 | $3,850.00 |
| Macdonald, Caleigh (0176) | Senior Staff Attorney | 2,206.80 | $772,380.00 |
| Nguyen, Kelly (9044) | Paralegal - Yr 2 | 21.90 | $7,005.00 |
| Nieves, Brittany (0254) | 5 PQE Associate | 1,748.30 | $874,150.00 |
| Oborina, Darya (0243) | Paralegal - Yr 2 | 76.00 | $22,800.00 |
| Oduro, Kelly (0290) | Summer Associate | 96.90 | $25,194.00 |
| Ouellette, Tiffany (0137) | Law Clerk | 10.50 | $2,730.00 |
| Pahwa, Pranaya (0292) | Summer Associate | 59.00 | $15,340.00 |
| Patel, Krishna (0085) | Paralegal - Yr 2 | 922.10 | $320,335.00 |
| Peterson, Zee (0253) | Law Clerk | 11.60 | $3,016.00 |
| Robinson, Elliot (0059) | Paralegal - Yr 2 | 84.00 | $25,041.00 |
| Rosa, Gisela (0291) | 1 Year Associate | 11.00 | $2,860.00 |
| Scher, Irv (0106) | Senior Counsel | 10.40 | $7,280.00 |
| Shimizu, Season (0267) | Paralegal - Yr 2 | 295.20 | $98,772.50 |
| Sittler, Edward (0123) | Paralegal - Yr 2 | 180.00 | $53,022.00 |
| Smith, Gary (0084) | Partner | 217.50 | $152,250.00 |
| Stein, Samantha (0149) | Partner | 7,058.60 | $3,133,288.00 |
| Sweeney, Bonny (0101) | Partner | 1,704.00 | $1,192,800.00 |
| Wu, Claudia (9055) | Paralegal - Yr 2 | 163.20 | $44,943.00 |
| **TOTAL** | | **26,460.40** | **$13,451,871.50** |

# Exhibit 2

**In re Packaged Seafood Products Antitrust Litigation, MDL 2670**
**Hausfeld LLP - Expense Report**
**Jan. 1, 2021- Sept. 16, 2024**

| Category | Amount |
|---|---:|
| Travel expenses | $77,044.90 |
| Court filing service | $1,183.84 |
| FedEx/courier | $5,485.07 |
| Pacer/Westlaw | $44,848.38 |
| Long Distance Telephone Charges | $31.90 |
| Printing | $5,092.11 |
| Other | $5,184.67 |
|  |  |
| **TOTAL** | **$138,870.87** |