BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
ALEX J. TRAMONTANO (276666)
tramontano@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599

*Class Counsel for the End Payer Plaintiffs*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE:  PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | ) Case No.: 15-MD-2670 DMS (MSB) |
| | ) |
| | ) **END PAYER PLAINTIFFS' BRIEF** |
| | ) **IN SUPPORT OF THEIR** |
| | ) **MOTION FOR ATTORNEYS'** |
| | ) **FEES AND COSTS** |
| | ) |
| | ) |
| _____ | ) DATE:        November 22, 2024 |
| This Document Relates to: | ) TIME:        1:30 p.m. |
| | ) JUDGE:      Hon. Dana M. Sabraw |
|     End Payer Plaintiffs Class Track | ) COURT:     13A (13th Floor) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ........................................................................ iii

I.      INTRODUCTION ........................................................................ 1

II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY ................. 2

    A.      Lead Counsel Coordinated and Conducted Substantial Discovery ....... 3

    B.      Class Certification Was Hard-Fought and the Decision Widely Cited ............................................................................ 3

    C.      Expert Discovery and Successful Dispositive Motions ........................ 4

    D.      Preparations for Trial Were Substantially Complete ............................ 5

III.    THE SETTLEMENTS ................................................................. 5

    A.      Partial COSI Settlement Was Previously Approved by the Court ........ 5

    B.      StarKist and the Lion Companies Settled Just Weeks Before Trial ...... 6

    C.      Preliminary Approval of the Proposed Settlements .............................. 7

    D.      Settlement Terms and Payment Schedule ........................................... 7

IV.     CLASS COUNSEL ARE ENTITLED TO A FEE AWARD ...................... 8

    A.      Applicable Legal Standard Governing the Award of Attorney Fees in Common Fund Cases ............................................................ 8

    B.      The Requested 33% Fee Award is Reasonable Under the Percentage-of-Recovery Method ...................................................... 10

        1.      Class Counsel Achieved Excellent Results ............................... 11

        2.      The Risks of Complex Litigation Were High ............................. 12

        3.      The Skill Required and the Quality of the Work Justify  the Request ........................................................................ 15

        4.      The Contingent Fee Nature and Financial Burden Carried by Class Counsel Also Supports the Fee Request ........................... 16

    C.      Lodestar Cross-Check Confirms that the Requested Fee Is Reasonable ........................................................................ 17

    D.      Class Counsel Propose the Fee Award Be Net of Expenses and Paid Over Time In Proportion to Settlement Monies Received ......... 18

i

V.      EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED.... 20

VI.     SERVICE AWARDS SHOULD BE APPROVED ........................................ 21

VII.    THE COURT SHOULD APPROVE THE REASONABLE SETLEMENT ADMINISTRATION AND NOTICE COSTS .............................................. 22

VIII.   CONCLUSION ............................................................................................ 24

# TABLE OF AUTHORITIES

## CASES

Page(s)

*In re Aggrenox Antitrust Litig.*,
No. 3:14-MD-2516, 2018 WL 10705542 (D. Conn. July 19, 2018) ................... 10

*Ahlman v. Barnes*,
No. SA-CV-20835 (JGB), 2022 WL 16957837 (C.D. Cal. Sept. 12, 2022) .......... 9

*In re Animation Workers Antitrust Litig.*,
No. 3:14-CV-4062 LHK, 2016 WL 6663005 (N.D. Cal. Nov. 11, 2016) .......... 15

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022) ................................................................. 21

*Asner v. SAG-AFTRA Health Fund*,
No. 2:20-cv-10914, 2023 WL 6984582 (C.D. Cal Oct. 19, 2023),
*reconsideration denied,* 2023 WL 8529996 (C.D. Cal. Dec. 7, 2023) ............... 10

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ........................................................ 22

*Blum v. Stenson*,
465 U.S. 886 (1984) ............................................................................. 8

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ........................................................................ 8, 9

*In re Brooktree Secs. Litig.*,
915 F. Supp. 193 (S.D. Cal. 1996) ........................................................ 9

*Carlin v. DairyAmerica, Inc.*,
380 F. Supp. 3d 998 (E.D. Cal. 2019) .............................................. 10, 21

*In re: Cathode Ray Tube (CRT) Antitrust Litig.* ("*CRT*"),
MDL No. 1917, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ................... 11, 15

*Dexter's LLC v. Gruma Corp.*,
No. 23-cv-212, 2023 WL 8790268 (S.D. Cal. Dec. 19, 2023) ........................ 14

*Edwards v. Nat'l Milk Producers Fed'n*,
   No. 11-cv-04766-JSW, 2017 WL 3616638 (N.D. Cal. June 26, 2017) .............. 12

*Fernandez v. Corelogic Credco, LLC*,
   No. 20-cv-1262, 2024 WL 3209391 (S.D. Cal. June 24, 2024) .................... 16, 21

*Fernandez v. Victoria Secret Stores, LLC*,
   No. CV 06-04149 MM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008) ...... 18

*In re Flonase Antitrust Litig.*,
   291 F.R.D. 93 (E.D. Pa. 2013) ............................................................. 11

*In re Google Inc. Street View Elec. Commc'ns Litig.*,
   21 F.4th 1102 (9th Cir. 2021) ............................................................. 10

*Harris v. Marhoefer*,
   24 F.3d 16, 19 (9th Cir. 1994) ............................................................ 21

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) .......................................................................... 17

*In re Heritage Bond Litig.*,
   No. 02-ML1475 DT, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ....... 16

*Johnson v. MGM Holdings, Inc.*,
   943 F.3d 1239 (9th Cir. 2019) ............................................................. 17

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   No. 14-md-02542, 2021 WL 2328431 (S.D.N.Y. June 7, 2021) ........................ 10

*Larsen v. Trader Joe's Co.*,
   No. 11-cv-05188, 2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................ 10

*In re Lending Club Sec. Litig.*,
   No. C 16-02627 WHA, 2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) ............. 21

*In re Lidoderm Antitrust Litig.*,
   MDL No. 2521, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018) ........................ 10

*In re Lithium Ion Batteries Antitrust Litig.*,
   No. 13-md-02420-YGR, 2018 WL 3064391

(N.D. Cal. May 16, 2018) ................................................................................ 16

*Mills v. Elec. Auto-Lite Co.,*
   396 U.S. 375 (1970) ...................................................................................... 8

*In re National Football League's Sunday Ticket Antitrust Litig.,*
   2:15-md-02668-PSG, Judgment (C.D. Cal. Aug. 20, 2024) ............................... 14

*In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.,*
   No. 4:14-cv-02758-CW, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017) .............. 12

*In re Omnivision Techs., Inc.,*
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 11

*In re Online DVD-Rental Antitrust Litig.,*
   779 F.3d 934 (9th Cir. 2015) ...................................................................... 17, 22

*In re Optical Disk Drive Prods. Antitrust Litig.,*
   No. 10-md-02143-RS, 2021 WL 4124159 (N.D. Cal. Sept. 9, 2021) ................ 17

*In re Pac. Enters. Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) .............................................................................. 10

*Perma Life Mufflers, Inc. v. Int'l Parts Corp.,*
   392 U.S. 134 (1968) .......................................................................................... 9

*Pillsbury v. Conboy,*
   459 U.S. 248 (1983) .......................................................................................... 9

*In re Pork Antitrust Litig.,*
   No. 18-1976, 2022 WL 4238416 (D. Minn. Sept. 14, 2022) ............................ 10

*Rodriguez v. West Publ'g Corp.,*
   563 F.3d 948 (9th Cir. 2009) ...................................................................... 12, 22

*Schiller v. David's Bridal, Inc.,*
   No. 1:10-cv-00616, 2012 WL 2117001 (E. D. Cal. June 11, 2012) ................... 18

*Six (6) Mexican Workers v. Arizona Citrus Growers,*
   904 F.2d 1301 (9th Cir. 1990) ........................................................................... 9

v

*Stanger v. China Elec. Motor, Inc.*,
    812 F.3d 734 (9th Cir. 2016) ...................................................................*passim*

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. M:07-cv-01827, 2012 WL 13209696 (N.D. Cal. Nov. 9, 2012)............ 13, 15

*Torrisi v. Tucson Elec. Power Co.*,
    8 F.3d 1370 (9th Cir. 1993) ................................................................... 13

*Vitamin Antitrust Litig.*,
    No. 99-197, MDL 1285, 2001 WL 34312839 (D.D.C. July 16, 2001)............... 16

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ....................................................... 10, 11, 12, 17

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
    19 F.3d 1291 (9th Cir. 1994) .....................................................................8-9

*In re Ziegler v. GW Pharm., PLC*,
    No. 21-cv-1019, 2024 U.S. Dist. LEXIS 52979
    (S.D. Cal. Mar. 25, 2024) .......................................................................10-11

## STATUTES & RULES                                                     Page(s)

Fed. R. Civ. P. 23(h) ................................................................................ 8
Fed. R. Civ. P. 54(d)(2) ............................................................................ 8

Sherman Act, 15 U.S.C. §§ 1, *et seq* ...................................................... 3, 7

S.D. Cal. Local Rule 16.1(f) ....................................................................... 5

## OTHER AUTHORITIES                                                    Page(s)

Mac Newton, *Fishy Class Certification: A Packaged Tuna Antitrust Case and a Shift in Class Certification Standards*, 88 MO. L. REV. (2023),
https://scholarship.law.missouri.edu/mlr/vol88/iss2/14
(last visited Oct. 23, 2024)......................................................................... 15

No. 15-MD-2670 DMS (MSB)

## I.    INTRODUCTION

Class Counsel for the End Payer Plaintiffs ("EPPs"), Wolf Haldenstein Adler Freeman & Herz LLP, respectfully submits this brief in support of the EPPs' motion for an award of reasonable attorneys' fees, reimbursement of litigation expenses, and modest incentive awards for each Class Representative (tiered in relation to their time and service in this case).

To bring more than nine years of hard-fought litigation to a close, Class Counsel have presented the Court with two final settlements, which the Court preliminarily approved on August 23, 2024. ECF No. 3302. Subject to the Court's final approval, these proposed settlements, with a combined cash value of $136,000,000 and in addition to the previously approved COSI Partial Settlement, will provide total settlement cash benefits of $152,200,000 to the EPP consumers.[1] As the Court is well aware, Class Counsel and their co-counsel devoted significant time and substantial resources to this lengthy, complex, and highly successful antitrust litigation, and the settlements provide a substantial benefit to the EPPs. This exceptional recovery arose only from Class Counsel's skillful and dedicated litigation of this complex case.

The Court previously approved a partial settlement with COSI that ultimately yielded $16.2 million in settlement benefits to the EPPs. ECF No. 2871. As part of the partial settlement with COSI, the Court previously approved an Expense Award of $4,155,027.67 to reimburse Class litigation costs incurred as of May 2021. ECF No. 2872 at 4:17-19. Class Counsel did not request a Fee Award in connection with the COSI partial settlement, continuing to prosecute the case vigorously with their fees entirely at risk. *Id*. at 2:19-22; ECF 2827, Ex. F (Class Notice) at 48, 52. Class Counsel reserved their right to seek an award of attorneys' fees from any monies recovered from the Non-Settling Defendants (*i.e.*, StarKist and the Lion Companies)

---

[1] *See* EPPs' Motion for Preliminary Approval of Class Action Settlements [ECF No. 3286] at 7 ("MPA") (all abbreviated and capitalized terms are as defined in the MPA).

and to include the monies received from the COSI partial settlement in any subsequent fee request. *Id.*; 2845-1 at 4 n.6.

For the excellent result they have achieved, EPPs' counsel seek reimbursement of their additional out-of-pocket expenses in the amount of $1,618,489.24 and an award of attorneys' fees in the amount of $48,320,739.40, which is 33% of the net cash settlement amount after deducting *all* expenses awarded by the Court. While a slight upward departure from the 9th Circuit's 25% fee benchmark, an award of 33% of the net recovery for the Consumer Class is amply supported by the time and effort expended by counsel for the EPPs and by the tremendous settlements achieved, and represents a *negative* multiplier of 0.82 on their time expended over nine years in this hard-fought litigation.[2] Class Counsel propose to withdraw the payment of any Fee Award over time in proportion to the receipt of settlement monies from the Defendants. *See* § IV.D below.

In addition, counsel for the EPPs seek reimbursement of $1,618,489.24 in additional expenses incurred since May 2021 to prosecute this case to its successful conclusion. *Id.* EPPs request that $206,379.11 of that amount be returned to COSI to reimburse it for administration costs that will be common to the proposed new settlements and the prior COSI partial settlement. ECF No. 3286-2 at 4, ¶7.

The proposed fee and expense request is consistent with other fee and expense awards in this District and the Ninth Circuit generally. Furthermore, the request is fair and reasonable considering the outstanding settlement obtained, the substantial efforts by Class Counsel, and the considerable litigation risks faced by Class Counsel at every stage of this nine-year old complex antitrust litigation.

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

---

[2] Counsel for the EPPs have excluded all time spent seeking appointment of lead counsel and all time spent seeking an award of fees and expenses from their time submitted in support of the fee application. *See* Declaration of Mark C. Rifkin in Support of the End Payer Plaintiffs' Motion for Fees and Costs ("Rifkin Decl."), ¶¶ 9-10.

Having presided over this complex litigation for many years, the Court is well familiar with the factual background and procedural history of the case. A summary of relevant events is included in the accompanying Declaration of Betsy C. Manifold ("Manifold Decl.") in Support of the EPPs' Motion for Preliminary. Only key events are highlighted here.

## A. Lead Counsel Coordinated and Conducted Substantial Discovery

Wolf Haldenstein was appointed by the Court as the EPPs' Interim Lead Counsel on March 24, 2016, and was tasked with several important responsibilities, including the duty to conduct and oversee the prosecution of all aspects of the Action for the EPP Classes, to retain and work with experts and consultants, and to coordinate and supervise the conduct of other counsel for the EPPs to ensure that the litigation was conducted effectively and efficiently. *See* ECF No. 119. As Class Counsel, Wolf Haldenstein also was given the duty to collect and review lodestar and expense information from all counsel for the EPPs and to allocate fees and expenses among all counsel for the EPPs in the event of a successful outcome. *Id*.

## B. Class Certification Was Hard-Fought and the Decision Widely Cited

Notably, class certification of the EPP Consumer Classes was especially hard-fought, involving three highly respected economists retained by Plaintiffs, Dr. Russel Mangum (DPPs), Dr. Michael Williams (CFPs); and Dr. David Sunding (EPPs), and countered by two equally respected economists hired by Defendants, Dr. John Johnson and Dr. Laila Haider. Manifold Decl., ¶31; ECF No. 2846-2 at ¶12. EPP Class Counsel prepped and defended 16 individual EPP Class Representative depositions. Manifold Decl., ¶31. On January 14-16, 2019, the Court conducted a three-day evidentiary hearing on class certification. *Id*., ¶32. The Court ultimately certified a Cartwright Act Class consisting of all persons and entities who resided in one of the states identified in the EPPs' operative complaint and indirectly purchased Packaged Tuna in consumer-sized cans or pouches produced by any Defendant during the period June 1, 2011 through July 1, 2015 (the "Class Period"). ECF No. 1931 at

46. The Court also certified a statewide damages class for each State identified in the operative complaint. *Id*. The Court appointed Wolf Haldenstein as Class Counsel. *Id*. at 58-59.

The Court's class certification decision withstood extensive appeals in the Ninth Circuit, resulting in a comprehensive decision that has become the nation's leading antitrust class certification order, having been cited no fewer than 994 times by district courts throughout the United States. Manifold Decl., ¶33.  The Supreme Court denied a petition for *certiorari* from the Ninth Circuit's decision. *Id*.

### C.    Expert Discovery and Successful Dispositive Motions

In preparation for trial, EPPs engaged two experts: Dr. Sunding (economist) and Adoria Lim (forensic accountant). Manifold Decl., ¶34. The Defendants hired seven experts: Dr. Randal Heeb (economist), Dr. Michael Moore (economist), Gary Kleinrichert (accountant), Andres Lerner (economist), Janusz Ordover (economist), Robert Daines (law professor), and Ilya A. Strebulaev (private equity professor). *Id*. Extensive expert discovery concluded on February 23, 2023. ECF No. 2980.

After the close of discovery, in September 2019, the seven Defendants, three Plaintiff Classes, and 53 Direct Action Plaintiffs who remained in the case filed various dispositive motions and engaged in substantial briefing. Wolf Haldenstein played a substantial and leading role in organizing, coordinating, drafting, and filing the documents  associated with over twenty (20) dispositive motions. Manifold Decl., ¶35. Plaintiffs filed four motions for partial summary judgment [ECF Nos. 1976, 1993, 2009, 2035] and three narrow *Daubert* motions [ECF Nos. 1970, 1987, 2034], including a motion for summary judgment motion filed by the EPPs against StarKist, which the Court granted on liability. Defendants filed thirteen dispositive motions: ten joint motions for summary judgment [ECF No. 1973, 1992, 1998, 1999, 2001, 2007, 2010, 2015, 2023, 2025] and three *Daubert* motions [1967, 1981, 1984].

Plaintiffs largely prevailed on the *Daubert* and summary judgment motions. Manifold Decl., ¶37.

4

### D.     Preparations for Trial Were Substantially Complete

Preparations for the trial scheduled to begin on July 16, 2024, were substantially complete when the proposed settlements were reached. The extensive trial preparation included numerous motions *in limine* filed by all parties, the Local Rule 16.1(f) meeting held on June 3, 2024, the preparation of joint jury instructions, which Plaintiffs presented to the Court along with their respective supplemental instructions and objections on May 31, 2024, and preparation of the proposed Pre-Trial Order, which Class Counsel lodged with the Court on June 14, 2024, in anticipation of a final Pretrial Conference on June 21, 2024. Virtually all pre-trial proceedings were completed before these settlements were reached.

In sum, as amply reflected in more than 3,300 docket entries filed by the parties and entered by the Court over the last nine years, this MDL has been vigorously, efficiently, and successfully litigated by Class Counsel at every stage of the proceedings. The EPP Class has been extremely well represented by Class Counsel and the other counsel for the Consumer Class throughout these proceedings.

### III.   THE SETTLEMENTS

### A. Partial COSI Settlement Was Previously Approved by the Court

The COSI "icebreaker" settlement was the first settlement between the EPPs and any Defendant. It adds $16,200,000 to the Total Settlement Benefits of $152,200,000.[3] In granting final approval to the COSI partial settlement, the Court

---

[3] Under the COSI Settlement Agreement, the Maximum Settlement Amount was $20 million. ECF No. 2552-3 at 8. Under Paragraph 11(b) and 18, up to $5 million could be used to cover the reasonable costs of the Settlement Notice and administration of the $15 million Settlement Fund. Since the reasonable costs of the Settlement Notice were less than $5 million, the difference will be refunded to COSI. *Id*. at 14 and 15. The COSI settlement required COSI to pay certain notice and administration, from which COSI has requested reimbursement for $206,379.11 in administrative costs incurred in 2024 that are being shared with the proposed StarKist and Lion settlements. ECF 3286 at 7 n.2. Thus, the actual amount of the COSI settlement is $16.2 million.

5

noted "that significantly, Settlement Class Counsel have <u>not</u> requested any attorney fees, just reimbursement of actual litigation costs and expenses." ECF No. 2871 at 14. At that time, counsel for the EPPs reserved their rights to request attorneys from future settlements with the Non-Settling Defendants (StarKist and the Lion Companies) and to base their request upon the *total* settlement amounts obtained from *all* settling parties. *Id.*

### B. StarKist and the Lion Companies Settled Just Weeks Before Trial

The parties made notable attempts to settle the matter throughout the litigation. Since mid-2019, Class Counsel engaged in several informal settlement discussions and many more formal settlement negotiations (most presided over with extreme care and exceptional skill by Magistrate Judge Michael S. Berg) with counsel for the Settling Defendants. ECF No. 3286-2 at 7-9 ¶¶ 17, 18, 22 (including Bumble Bee). In particular, the EPPs and StarKist participated in multiple settlement conferences with Judge Berg on October 4, 2023, April 25, 2024, May 22, May 23, 2024, and June 3, 2024. *Id.* at ¶¶ 20, 21. With the oversight and guidance of Judge Berg, and with most pre-trial proceedings complete and the July 16, 2024, trial looming, the EPPs and StarKist finally reached a settlement-in-principle in the amount of $130 million on June 3, 2024.

The EPPs and the Lion Companies also attended a joint settlement conference before Judge Berg on August 7, 2023. ECF No. 3286-2 at ¶ 23. Counsel for the EPPs and for the Lion Companies continued to conduct informal and formal settlement negotiations, including a lengthy but unsuccessful formal mediation with Judge Michael Weinstein (retired). On June 17, 2024, nearly a year after beginning the settlement process and with the trial imminent, the EPPs again met with the Lion Companies (and their principals and insurers) in a day-long settlement conference with Judge Berg. The settlement conference resulted in the parties reaching a $6,000,000 settlement-in-principle, but only after the Lion Companies' and its

6

founders' financial condition were carefully and thoroughly evaluated by Class Counsel and by Judge Berg. *Id.*, ¶ 24.

### C.     Preliminary Approval of the Proposed Settlements

Based on this ample record, the Court found that the proposed settlements were the result of arms'-length negotiations. ECF No. 3302 at 4. After carefully reviewing the monetary terms, the Settlement Class definitions, and the releases provided for in both settlement agreements, the Court granted preliminary approval "as each is likely to be finally approved after the Fairness Hearing." *Id.* at 7.

### D.     Settlement Terms and Payment Schedule

Complete copies of both the StarKist Settlement Agreement and the Lion Settlement Agreement are attached to the Manifold Decl. as Exhibits 1 and 2, respectively. *See* ECF No. 3286-2 at 19-46 ("StarKist Settlement Agreement") and 47-72 ("Lion Settlement Agreement"). The Preliminary Approval Motion provided a detailed summary of the key terms in both settlements and is available (along with all the exhibits) on the Settlement Website. *See* ECF No. 3286-1 at 13-15.[4]

*StarKist*. The StarKist Settlement provides that StarKist will pay $130 million in cash over a period of time ranging from 30 days after preliminary approval (September 19, 2024) to 500 days after preliminary approval (January 6, 2026). ECF No. 3286-2 at 26, ¶ 1.24, App'x A; Manifold Decl., ¶14. The first payment of $32 million was paid on September 19, 2024, within 30 days after preliminary approval on August 21, 2024. *Id.*  The second payment of $18 million from StarKist is due prior to the Fairness Hearing on November 22, 2024. ECF No. 3286-2 at 26, ¶ 1.24. The remaining settlement payments by StarKist are fixed on certain dates following preliminary approval. *Id.* For the Court's convenience, the payment schedule is set forth in Appendix A at the end of this Memorandum.

---

[4] Once the final approval motion is filed on or before November 15, 2024, the motion and all supporting papers also will be posted on the settlement website, concurrently with the filing. ECF No. 3302 at 19.

*Lion Companies*. Under the terms of the Lion Settlement Agreement, the Lion Companies have deposited $3 million in the Settlement Fund Escrow. ECF No. 3286-2 (Lion SA) at 54, ¶ 1.22; Manifold Decl., ¶15. The final $3 million will be deposited within 45 days after final approval of the settlement. *Id.*, App'x A attached hereto.

The payment terms for the settlement monies and their timing is relevant here because, to share the burden of the delayed payment and the small risk of non-payment with the EPP Class, Class Counsel propose (*see* §IV.D. below) that the attorneys' fees awarded to them by the Court will be paid out to them over time in proportion to the monies actually received from the Settling Defendants.

## IV.   CLASS COUNSEL ARE ENTITLED TO A FEE AWARD

Counsel for the EPPs seek attorneys' fees in the amount of $48,320,739.40, which is 33% of the net settlement fund of $146,426,833.09 (after deducting expenses of $5,773,516.91). The requested fee is $10,338,011 *less* than the total lodestar of EPPs' counsel in the amount of $58,658,750.84 expended in diligent service of the Consumer Class over nine years and represents a ***negative multiplier*** of 0.82 on their professional time.

### A.   Applicable Legal Standard Governing the Award of Attorney Fees in Common Fund Cases

District courts may award reasonable attorney's fees and expenses from the settlement of a class action upon motion under Federal Rules of Civil Procedure 23(h) and 54(d)(2). Counsel who successfully represent a class and produce a benefit for the class members are entitled to be compensated for their services. As the Supreme Court has held, "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorneys' fee from a fund as a whole." *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980); *see also Mills v. Elec. Auto-Lite Co.,* 396 U.S. 375, 393 (1970). In *Blum v. Stenson,* 465 U.S. 886, 900 n.16 (1984), the Supreme Court recognized that under the common fund doctrine, a reasonable fee may be based "on a percentage of the fund bestowed on the

class." The purpose of the common fund doctrine is that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Washington Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994). *See also Boeing*, 444 U.S. at 478 ("persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigants' expense.")

The common fund doctrine is fully consistent with the strong public policy favoring vigorous enforcement of unfair competition laws. Courts have recognized the importance of private litigation as an effective enforcement of antitrust laws. *See Pillsbury v. Conboy,* 459 U.S. 248, 262-63 (1983). Antitrust laws are best served by ensuring that private action "will be an ever-present threat to deter anyone contemplating business behavior in violation of the antitrust laws." *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 139 (1968).

In the Ninth Circuit, there are two primary methods used to calculate attorneys' fees: the lodestar method and the percentage-of-recovery method. "Whether to use one method over the other is in the court's discretion; however, the use of the percentage method in common fund cases appears to be dominant." *Ahlman v. Barnes*, No. SA-CV-20-835 (JGB), 2022 WL 16957837, at *4 (C.D. Cal. Sept. 12, 2022). *See also Six (6) Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1311 (9th Cir. 1990) (courts regularly award fees as a percent-of-the recovery in common fund cases). The percentage-of-the-fund method is generally recognized as the superior method of calculating attorneys' fees in common fund settlements like this one because it "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Secs. Litig.,* 915 F. Supp. 193, 196 (S.D. Cal. 1996).

Under the percentage-of-the-fund approach, the district court awards a percentage of the fund created by the attorneys' efforts as their attorneys' fee. *Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734, 738 (9th Cir. 2016) ("*Stanger*"). The

9

percentage-of-recovery for fee computation purposes is based on the total amount of that fund made available. *Boeing,* 444 U.S. at 479-80. Cases in the Ninth Circuit often treat 25% as the benchmark percentage. *See*, *e,g*, *In re Google Inc. Street View Elec. Commc'ns Litig.,* 21 F.4th 1102, 1120 (9th Cir. 2021); *Asner v. SAG-AFTRA Health Fund,* No. 2:20-cv-10914, 2023 WL 6984582, at *12 (C.D. Cal Oct. 19, 2023), *reconsideration denied,* 2023 WL 8529996 (Dec.7, 2023).

However, courts in this Circuit and elsewhere often permit an upward departure from the benchmark due to the results achieved, the inherent complexities of the legal issues involved, and the risks assumed by attorneys involved. *See In re Lidoderm Antitrust Litig.,* MDL No. 2521, 2018 WL 4620695, at *4 (N.D. Cal. Sept. 20, 2018) ("As to the fifth factor, a fee award of one-third is within the range of awards in this Circuit."); *see also Larsen v. Trader Joe's Co.,* No. 11-cv-05188, 2014 WL 3404531, at *9 (N.D. Cal. July 11, 2014) (citing multiple cases awarding fees of 32% or greater); *In re Pac. Enters. Sec. Litig.,* 47 F.3d 373, 379 (9th Cir. 1995) (affirming award of one-third); *Carlin v. DairyAmerica, Inc.*, 380 F. Supp. 3d 998, 1023 (E.D. Cal. 2019) (finding an attorney's fees award of one-third reasonable because of the case complexity, lengthy procedural history, and class wide results) (collecting cases awarding 33% in attorneys' fees).[5]

### B.   The Requested 33% Fee Award is Reasonable Under the Percentage-of-Recovery Method

In common fund cases, "[s]election of benchmark or any other rate must be supported by the findings that take into account all of the circumstances of the case." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002); *Ziegler v. GW*

---

[5] For cases outside of this Circuit, *see*, *e.g.*, *In re Pork Antitrust Litig.,* No. 18-1976, 2022 WL 4238416, at *7 (D. Minn. Sept. 14, 2022) (awarding 33% of the settlement as attorney fees in consumer indirect purchaser action); *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,* No. 14-md-02542, 2021 WL 2328431, at *1 (S.D.N.Y. June 7, 2021) (awarding one-third of a $31 million settlement fund as attorneys' fee in indirect purchaser action); *In re Aggrenox Antitrust Litig.*, No. 3:14-MD-2516, 2018 WL 10705542, at *5 (D. Conn. July 19, 2018) (same).

*Pharm, PLC.,* No. 21-cv-1019, 2024 U.S. Dist. LEXIS 52979, at *19 (S.D. Cal. Mar. 25, 2024)(awarding one-third).[6] Counsel for the EPPs seek a fee of 33% of the net settlement fund. While slightly higher than the 25% "benchmark," the $48,320,739.40 requested fee is $10,338,011.44 ***less*** than the total lodestar of EPP's counsel and represents a ***negative multiplier*** of 0.82 on their professional time expended over nine years.

In setting an appropriate percentage fee, courts typically analyze the following non-exhaustive factors: the results achieved for the class; the risks of litigation; the skill, experience, and performance of counsel (both sides); and the contingent nature of the fee. *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 4126533, at *4 n.8 (N.D. Cal. Aug. 3, 2016) ("*CRT*") (providing discussion on why these factors apply in the percentage of recovery context, in addition to lodestar analysis), *dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017); *see also Stanger,* 812 F. 3d at 740. All four factors support the 33% fee request here.

### 1.   Class Counsel Achieved Excellent Results

Results are the primary factor in determining the reasonableness of an attorney's fee request. *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). The total settlement benefit achieved for the Consumer Class is $152,200,000. By any measure, the indirect purchaser settlement achieved here represents an excellent result.

Regression modeling by the EPPs' expert, Dr. David Sunding, showed single damages of approximately $224 million for the entire EPP Class.[7] When trebled (which is not automatic in all state law indirect purchaser cases), this is approximately

---

[6] In considering whether a fee request is appropriate, courts typically consider similar fees in comparable cases. *Vizcaino*, 290 F.3d at 1048 (comparable fees is a factor to be considered). "[A] one-third fee is standard in complex antitrust cases" such as this one. *In re Flonase Antitrust Litig.,* 291 F.R.D. 93, 104 (E.D. Pa. 2013).

[7] *See* Expert Report of David Sunding, dated February 16, 2019, p. 17, Table 2.

11

$672 million. Based on the maximum single damages of $224 million for the entire conspiracy period, a total recovery of $152.2 million is ***nearly 68% of the maximum single damages*** and over 20% of the maximum treble damages. It is larger than the penalty amount recovered by the government in the criminal case and substantially higher (in absolute dollars) than the recovery by the DPPs in their direct action against StarKist. *See* DPP Fee Brief at 14:1-6 (ECF No. 3312-1). The EPPs' recovery also is comparable to the DPPs' percentage recovery as well. *See id.*

Here, a 68% recovery of single damages is meaningful and exceeds the usual range of recovery of 30-40% which is typical. *See Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 954 (9th Cir. 2009) (finding a settlement that was approximately 30% of the estimated damages before trebling fair, adequate, and reasonable); *accord Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 3616638, at *3 (N.D. Cal. June 26, 2017) (finding a settlement representing approximately 30% of the total estimated single damages fair and reasonable). Obtaining nearly 68% of single damages, particularly in a case where single damages are as high as they were in this case, is an excellent result and warrants the approval of the requested 33% attorneys' fee award.

### 2. The Risks of Complex Litigation Were High

Class Counsel endured significant risk in pursuing this litigation. *See Vizcaino*, 290 F.3d at 1048 (degree of risk assumed and complexity relevant to reasonableness of fee request); *Stanger,* 812 F. 3d at 740 (including risk of litigation as a factor in determining whether requested fees are reasonable). Antitrust class actions are particularly complex matters and inherently risky. *See In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-cv-02758-CW, 2017 WL 6040065, at *4 (N.D. Cal. Dec. 6, 2017) (noting that "antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain in outcome." (internal quotation omitted)).

With over 3,300 entries, the Court's docket reflects the complexities and risk of this nine-year old antitrust litigation, which survived multiple appeals, motions for reconsideration, *Daubert* challenges, evidentiary hearings, and disputes as to jury instructions, admissible evidence, and witnesses at trial. Although Class Counsel believe that the EPP Class claims had substantial merit, the risk and expense necessary to prosecute their claims through trial, and subsequent appeal were significant, and the inherent difficulties and delay in any final resolution for a multistate antitrust litigation like this case are substantial and well-known. *See*, *e.g.*, *Torrisi v. Tucson Elec. Power Co.,* 8 F.3d 1370, 1376 (9th Cir. 1993) (approving settlement based in part on "inherent risks of litigation").

Given the criminal convictions and guilty pleas by COSI, StarKist, and Bumble Bee, liability as to the plea period (November 2011 to December 2013) was strong. However, Bumble Bee was bankrupt and the claims against the parent companies were vigorously disputed and not part of the criminal investigation by the DOJ. StarKist and the Lion Companies vigorously disputed the scope, duration, and effect of the conspiracy. Manifold Decl., ¶41. The EPPs faced added complexities and risks at trial because, as consumers, they needed to prove liability for a multistate Cartwright Act Class claim and multiple individual state law claims as well as proving a pass-through of the overcharge to consumers. Those risks rise the longer litigation progresses. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M:07-cv-01827, 2012 WL 13209696, at *4 (N.D. Cal. Nov. 9, 2012) (finding counsel entitled to a fee award above the 25% benchmark because counsel had litigated for more than six years, which compounded the litigation risk).[8]

Another substantial risk was proving damages at trial through an expert economist, an inherently uncertain process fraught with conflicting expert testimony.

---

[8] The timing of the settlement and reduction of trial expense is also a relevant factor. *See Koenig v. Lime Crime, Inc.*, No. CV 16-503 PSG (JEMX), 2018 WL 11358228, at *6 (C.D. Cal. Apr. 2, 2018) (finding that settlement minimized litigation cost and that going to trial would significantly increase cost and attorney's fees sought).

Achieving maximum damages was based on two key assumptions: the jury would believe the EPPs' expert (not the Defendants' expert) and would award full damages for the entire Class Period and for all the repealer act states. The reaction of a jury, or even a judge, to such complex and disputed expert testimony is highly unpredictable, and in a battle of the experts a jury could find either no damages or just a fraction of the damages sought. *Dexter's LLC v. Gruma Corp.*, No. 23-cv-212, 2023 WL 8790268, at *4 (S.D. Cal. Dec. 19, 2023) ("'The court shall consider the vagaries of litigation and compare the significance of immediately recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.'") (quoting *Nat'l Rural Telecomms Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523, 526 (C.D. Cal. 2004)).

Even a jury verdict is no assurance of success. Antitrust cases with complex expert econometric modeling and treble damages face the very real risks of reversal at trial, after verdict and on appeal, and this case was no exception. *In re National Football League's Sunday Ticket Antitrust Litig.,* 2:15-md-02668-PSG, Judgment (C.D. Cal. Aug. 20, 2024) (ECF No. 1542), is a cautionary tale. From June 5 through June 26, 2024, the Court presided over a jury trial of antitrust claims against the NFL by a commercial class and a residential class of DirecTV subscribers to the NFL Sunday Ticket. *Id.* at 2. The NFL defendants moved for judgment under Rule 50(a) at the close of the plaintiffs' case, which the Court denied. *Id.* On June 27, 2024, the jury returned a verdict in Plaintiffs' favor, finding that NFL Defendants had violated the Sherman Act and awarded the commercial class nearly $100 million and the residential class over $4.6 billion in damages. Thereafter, based on the Court's own view of the plaintiffs' experts, the Court granted judgment for the defendants as a matter of law and vacated both verdicts. *Id.*

Even if successful at trial, the EPPs were concerned that post-trial events would threaten any verdict they obtained. In addition to post-trial motions, the EPPs faced a significant risk that they would be unable to collect or enforce their judgment against

14

either Dongwon Industries Co., Ltd. or the Lion Companies, all foreign defendants who might not have sufficient assets in the United States to satisfy the judgment, and that StarKist might not have sufficient assets itself to satisfy the judgment. *See Stanger,* 812 F.3d at 740 (assessing reasonableness can include weighing "the risk of nonpayment" and "the difficulty and risks inherent in litigating against defendants in a [foreign nation]"). The litigation risks at trial, on appeal, and after a judgment were all very real here.

### 3. The Skill Required and the Quality of the Work Justify the Request

The experience, skill, and reputation of counsel also is relevant to the reasonableness of an attorney's fee request. *See In re Animation Workers Antitrust Litig.*, No. 3:14-CV-4062 LHK, 2016 WL 6663005, at *7 (N.D. Cal. Nov. 11, 2016) (finding relevance in the plaintiff's nationally recognized antitrust and class action litigation in assessing counsel's fee petition); *CRT*, 2016 WL 4126533, at *4 (finding relevance in counsel's 30 years of experience in antitrust cases and the experience of the other participating law firms); *LCD*, 2012 WL 13209696, at *4 (finding that counsel's skills and experience in antitrust warranted an upward adjustment from the 25% benchmark).

This multistate antitrust litigation involved significant factual investigations, research, complex econometric modeling, representation of over 65 Class Representatives, coordination among multiple plaintiff groups, tens of millions of documents, 200 depositions and related criminal and bankruptcy proceedings. As a result of Counsel's skill and expertise, this case has become a model for econometric regression modeling in complex antitrust matters, particularly when it comes to what an expert has shown related to antitrust injury at class certification.[9]

The proposed settlements were hard-fought, negotiated at arm's-length against

---

[9] *See* Mac Newton, *Fishy Class Certification: A Packaged Tuna Antitrust Case and a Shift in Class Certification Standards*, 88 MO. L. REV. (2023), https://scholarship.law.missouri.edu/mlr/vol88/iss2/14.

highly experienced opposing counsel and only achieved after extensive face-to-face settlement meetings and on the very eve of trial. ECF No. 3286-2, ¶¶ 17-24. The difficulty of achieving such a settlement against such experienced and motivated opposing counsel (Latham & Watkins and Sullivan Cromwell) is substantial. *See, e.g. Fernandez v. Corelogic Credco, LLC,* No. 20-cv-1262, 2024 WL 3209391, at * 16 (S.D. Cal. June 24, 2024) (analyzing whether defense counsel was "experienced and quality"); *In re Heritage Bond Litig.,* No. 02-ML1475 DT, 2005 WL 1594403, at *20 (C.D. Cal. June 10, 2005) ("The Court also notes that the quality of opposing counsel is important in evaluating the quality of Plaintiff's counsel's work.")

Class Counsel is a nationally recognized antitrust and class action law firm with considerable expertise representing indirect purchaser plaintiff classes in antitrust matters. Manifold Decl., ¶45. Such qualifications also should be taken into account when evaluating an appropriate fee award. *See Fernandez,* 2024 WL 3209391, at *16 (approving a fee award based in part on the experience of counsel); *see also Vitamins Antitrust Litig.*, No. 99-197, MDL 1285, 2001 WL 34312839, at *11 (D.D.C. July 16, 2001) ("[T]he attorneys involved are among some of the most highly skilled in the country with extensive experience in similar class action litigation . . . The experience, skill and professionalism of counsel and the performance and quality of opposing counsel all weigh in favor of the requested fee."). Therefore, the skill required and quality of work in the present case weigh in favor of the requested fee award. Manifold Decl., Ex. 2 at 4, 5 (Judge Berg stating, "[I[t is my recommendation that the District Court consider an upward departure from the presumptively reasonable benchmark fee of 25% in common fund cases" and finding that "an award at [one-third] is warranted.")

**4.    The Contingent Fee Nature and Financial Burden Carried by Class Counsel Also Supports the Fee Request**

The contingent nature of Class Counsel's representation further supports the fee request. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420-YGR, 2018 WL 3064391, at *1 (N.D. Cal. May 16, 2018) ("attorneys' fees requested were

16

reasonable and entirely contingent upon success – Plaintiffs' Counsel risked time and effort and advanced costs with no ultimate guarantee of compensation"). Similarly, Class Counsel litigated this case on a wholly contingent basis with no guarantee of payment and recovery only if they were successful.  Courts recognize the need to reward plaintiffs' counsel because of the risk of non-payment they face.

Here, the Court should not overlook the real risks faced by Class Counsel in accepting a large scale complicated and time-consuming antitrust action.  Antitrust cases inevitably require a tremendous investment of time, energy, and resources. Class  Counsel were ready to make, and did make an investment of over $5.7 million, with the very real possibility of an unsuccessful outcome. The demands and risks involved can readily deter participation by traditional class action firms. The fact that significant financial burden was carried for such an extended period supports the reasonableness of the requested fee percentage. *See Vizcaino,* 290 F.3d at 1050 ("These burdens [years of litigation, significant financial expenses, foregoing other work] are relevant circumstances.") (citations omitted).

## C.   Lodestar Cross-Check Confirms that the Requested Fee Is Reasonable

Although not required, courts often apply a lodestar "cross-check" on the reasonableness of the fee calculated as a percentage of the fund. *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 949 (9th Cir. 2015); *Johnson v. MGM Holdings, Inc.*, 943 F.3d 1239, 1242 (9th Cir. 2019) (encouraging the use of the cross-check method). Lodestar is generally the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To calculate lodestar, courts "multiply[] the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Online DVD*, 779 F.3d at 949 (internal quotation omitted). "A lodestar cross-check does not require 'mathematical precision' or 'bean-counting,' and the court 'may rely on summaries submitted by the attorneys and need not review actual

17

billing records." *In re Optical Disk Drive Prods. Antitrust Litig.*, No. 10-md-02143-RS, 2021 WL 4124159, at *2 (N.D. Cal. Sept. 9, 2021) (citing *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 307 (3rd Cir. 2005)). Courts may "use a rough calculation of the lodestar as a cross-check to assess the reasonableness of the percentage award." *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *9 (C.D. Cal. July 21, 2008).

The lodestar for the services performed by Class Counsel in this case results in a negative multiplier.[10] Class Counsel expended a total of 74,280.59 hours litigating this case following the appointment of lead counsel on March 24, 2016 for a total lodestar of $58,658,750.84. Rifkin Decl., ¶15. The total lodestar is greater than the percentage fee award that Class Counsel requests. The requested fee of 33% of $146,426,483 is $48,320,739.40, which is just 82% of their reduced lodestar. The **negative** multiplier of 0.82 supports the reasonableness of the percentage fee request. *Schiller v. David's Bridal, Inc.,* No. 1:10-cv-00616, 2012 WL 2117001, at *23 (E. D. Cal. June 11, 2012) (acknowledging reasonableness when "[n]otwithstanding [a] reduction in hourly rates . . . the resulting lodestar . . . is still greater than the percentage fee award counsel requests.")

There is no question that the requested fee award of 33% is reasonable based on a lodestar cross-check.

### D.   Class Counsel Propose the Fee Award Be Net of Expenses and Paid Over Time In Proportion to Settlement Monies Received

Class Counsel propose that any fees be awarded net of expenses and be paid

---

[10]  Wolf Haldenstein provides summary hour and lodestar information in the accompanying Declaration of Mark C. Rifkin. Firm-by-firm breakdown of hours and lodestar by timekeeper are included in the additional declarations filed concurrently herewith and submitted for each firm that completed work on this case. At the request of Class Counsel, two of the firms representing EPPs, Kralowec Law Group and Oliver Bell Law Group, that performed specific limited tasks in the Action agreed to submit their lodestars at hourly rates below their regularly hourly rates. The total lodestar for EPPs' counsel includes their time at those reduced hourly rates.

18

over time at the same rate as settlement monies are received from StarKist and the Lion Companies. *See* App'x B (attached hereto).

*First*, Class Counsel propose to "net out" and pay reasonable costs and expenses in the amount of $5,773,516.91, which consists of $4,155,027.67 in expenses previously awarded in the COSI partial settlement plus $1,618,489.24 in additional expenses now being sought (if they are approved by the Court) from the total value of the cash settlement of $152.2 million. Assuming the Court grants the additional expense request in full, the total amount of $5,773,516.91 in expenses will be deducted from the total EPP Class settlement amount of $152,200,000, leaving a net settlement fund of $146,426,483 (the "Net Settlement Amount"). EPPs' counsel seek an attorneys' fee award equal to 33% of the Net Settlement Amount, in the amount of $48,320,739.40.[11]

*Second*, subject to the Court's approval, Class Counsel will pay the attorneys' fee award over time to coincide with the receipt of settlement monies from StarKist and the Lion Companies in proportion to the settlement funds as they are actually received from Defendants. Rifkin Decl., ¶ 16.  *See* App'x B. While not required, and while Class Counsel would be reasonably justified in taking their ***entire*** attorneys' fee from the cash on hand at the time of the fee award, Class Counsel are prepared to share the burden of the delayed payment with the EPP Class and believe the short delay and the small risk of non-payment is warranted here.

To date, Class Counsel have received $32,000,000 from StarKist and $3,000,000 from the Lion Companies, which they are holding together with the $12,000,000 already received from COSI[12] in escrow as a qualified settlement fund.

---

[11] If the Court awards less than $1,618,489.24 in additional expenses, Class Counsel will adjust the net calculation to reflect the expenses actually awarded by the Court and will calculate the 33% accordingly. Rifkin Decl., ¶20.

[12] The COSI Partial Settlement was for up to a maximum of $20 million. Of that amount, COSI unconditionally agreed to pay $15 million to the EPP Classes. To date, COSI has paid $10 million of that amount plus $2,042,830 for notice and

(continued…)

Manifold Decl., ¶¶14-15. StarKist must pay another $18,000,000 into the Net Settlement Fund on the date of the Final Hearing. *See* App'x A. The remaining $70 million will be paid between November 23, 2024, and January 5, 2026. *See id*.

The StarKist Settlement Agreement and the Lion Settlement Agreement both permit Class Counsel to be paid attorneys' fees awarded by the Court five days following entry of the Court's award of fees and costs. *See* ECF No. 3286-2 at 40, ¶14.1; at 68, ¶14.1. At that time, assuming the Court promptly approves the settlement and grants the additional expense request in full, the total amount of settlement proceeds on hand will be approximately $65,042,830 (including interest earned on the settlement proceeds already paid to Class Counsel). Rifkin Decl., ¶ 21. After deducting $5,773,516.91 for allowed expenses, the resulting 33% attorneys' fee on that amount ($59,269,313.09) will be $19,558,873.30, which Class Counsel will be permitted to take five days following the Court's award of fees and costs as permitted by the Settlement Agreements.[13] ECF No. 3286-2 at 40, ¶14.1; at 68, ¶14.1. Thereafter, Class Counsel will withdraw a proportionate 33% share as their Court-awarded attorneys' fees from each subsequent payment from StarKist and the Lion Companies as they are received. *Id*.

## V. EXPENSES ARE REASONABLE AND SHOULD BE REIMBURSED

Class Counsel respectfully request reimbursement for their additional litigation costs and expenses in the amount of $1,618,489.24 incurred to prosecute this case since May 2021. Rifkin Decl., ¶ 17. They also respectfully request that $206,379.11

---

administration costs. Manifold Decl., ¶ 8. The balance of the settlement payment from COSI is due to be paid on or before 30 days prior to distribution of the Net Settlement Fund to EPP Class members. *Id*. In addition, COSI has paid $206,379.11 in administration costs incurred in 2024, which will be returned to it. That sum will be credited against the settlement payment balance still owed to the EPP Classes under the payment terms of the settlement. *Id*., ¶¶9-10.

[13] That calculation will be changed proportionately if the Court reduces either the amount of expenses to reimburse or the amount of attorneys' fees to award to EPPs' counsel.  Rifkin Decl., ¶ 20.

of that amount be returned to COSI in the form of a credit against its remaining payment obligation as reimbursement for administration costs that were common to both the COSI Partial Settlement and the proposed StarKist and Lion Companies settlements. *Id;* ECF 2386-2 at 2-4 (¶¶ 5-8). After approving the COSI Partial Settlement, the Court separately approved an Expense Award of $4,155,027.67. ECF No. 2872 at 2. Since that date, Class Counsel have advanced $1,618,489.24 in additional reasonable expenses for which they now seek reimbursement. Rifkin Decl., ¶17. Under the common fund doctrine, Class Counsel are entitled to be reimbursed for all reasonable out-of-pocket expenses and costs incurred to prosecute the claims and obtain a settlement. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785-86 (9th Cir. 2022) (fundamental purpose is to spread a party's burden of litigation expenses among those who benefitted); *Fernandez,* 2024 WL 3209391, at *21.

These expenses are in line with those approved by courts in this Circuit and are all the type of expenses routinely charged to hourly paying clients. *See, e.g.*, *In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and lodging costs, legal research fees, and copying expenses were reasonable and recoverable); *Carlin,* 380 F. Supp. 3d at 1023-24; *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (approving expenses normally charged to paying client). Details concerning the expenses incurred are listed in the accompanying declarations. Accordingly, Class Counsel respectfully requests that litigation costs and expenses incurred since May 2021 in the amount of $1,618,489.24 be reimbursed.

## VI.   SERVICE AWARDS SHOULD BE APPROVED

Throughout nine years of litigation, the individual Class Representatives remained devoted to their duties and actively participated in the litigation. EPPs request a total Service Award in the amount of $294,000. The monies will be distributed to the sixty-seven (67) Class Representatives and three Illinois plaintiffs based on a tier system reflecting the extent of time and work that each put into the

case. *See* ECF No. 3286-2, ¶¶ 25-29. A chart of the Tier Breakdown by Class Representative is attached hereto as App'x C for the convenience of the Court and Settlement Class Members. The requested Service Award amount is insignificant (0.19%) in light of the Total Benefit Amount ($152.2 million).

The requested tiered Service Awards reflect the Class Representatives' specific contributions to this case. All of the forty-five (45) Class Representatives who participated in discovery and provided multiple Class standing declarations will receive a service award of $3,000 (Tier 1) for a total of $135,000. *Id.* For the fourteen (14) Class Representatives who sat for a deposition as part of the class certification process, the higher award of $6,000 is requested for a total of $84,000. *Id.* For the eight (8) Class Representatives who were deposed more than once (EPP Drew Gorman), functioned as a plaintiff representative in the Bumble Bee bankruptcy proceedings or were previously deposed and then prepped and prepared to appear at trial, the highest award of $9,000 is appropriate for a total of $72,000. *Id.*

Courts routinely grant service awards for class representatives. *Rodriguez*, 563 F.3d at 958-59. Incentive awards are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and to recognize their willingness to function as private attorneys general. *Id.* There is no bright line minimum or maximum for service awards, they "typically range from $2,000 to $10,000." *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015) (collecting cases discussing award amounts); *Online DVD*, 779 F.3d at 943 (affirming approval of "incentive awards of $5,000 each for nine class representatives" as "well within the usual norms of 'modest compensation' paid to class representatives." (citations omitted)). The Service Awards requested are well within the usual norms and should be approved.

## VII.   THE COURT SHOULD APPROVE THE REASONABLE SETLEMENT ADMINISTRATION AND NOTICE COSTS

Courts allow for reimbursement of reasonable settlement administration fees

1   and costs and any costs associated with providing class notice. *See Online DVD*, 779

2   F.3d at 953. The Settlement Notice Plan, approved by the Court, was robust and

3   provided notice (in various forms) to Settlement Class Members via email, U.S. Mail,

4   posting on the Settlement Website and by digital and print publication. ECF No. 3313-

5   1, ¶¶4-20; ECF No. 3302 at 12-19. The digital and print efforts alone reached more

6   than 70% of potential Settlement Class Members. *Id*., ¶26.

7        The costs of a robust notice program to a large consumer class is substantial.

8   For this reason, StarKist advanced $1 million and Lion Companies agreed to pay up

9   to $200,000 to cover the costs of notice administration. Manifold Decl., ¶59.  ECF

10  No. 3302 at 15 ("an interim distribution of $1.2 million for notice costs prior to the

11  Fairness Hearing is appropriate and is approved under the terms provided in the

12  Settlement Agreements"). As of October 18, 2024, JND has incurred reasonable

13  expenses in the amount of $726,702.30, slightly below the estimates provided to the

14  Court. Manifold Decl., ¶59.  As permitted by the terms of settlements agreements,

15  Class Counsel has paid JND for these reasonable costs of notice administration. *Id.*

16  ECF No. 3302 at 15; ECF No. 3286-2 at 29, ¶5.3 and at 58, ¶5.3 (advanced Notice

17  Costs not recoverable by the Settling Defendants).

18       JND has provided an estimate for the costs of processing claims, running fraud

19  analysis, and dispersing the Distribution Funds of $2.1 million to $5.8 million. ECF

20  No. 3302 at 19; ECF No. 3286-2 at 15-16, ¶41. The range is dependent on the number

21  of claims received. *Id*. For example, the estimated range of processing from 500,000

22  to 2,000,000 claims could range from $1.3 million or over $5 million. *Id*. Settlement

23  Class Counsel request permission to pay the periodic costs and expenses of claims

24  processing out of the Settlement Fund and, due to the delayed distribution of the

25  Settlement Funds to authorized claimants, will file periodic reports as directed by the

26  Court to update the Court as to the status and estimated costs for the Distribution Plan.

27

28

## VIII.  CONCLUSION

For the foregoing reasons, the EPPs respectfully request that, in conjunction with Final Approval of the proposed settlements, the Court grant their request for attorneys' fees in the amount of $48,320,739.40, award reimbursement of their additional litigation expenses in the amount of $1,618,489.24, and approve service awards to the named Class Representatives in the total amount of $294,000.

Dated: October 25, 2024

By:   *s/ Betsy C. Manifold*
BETSY C. MANIFOLD

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
BETSY C. MANIFOLD
RACHELE R. BYRD
ALEX J. TRAMONTANO
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile:   619/234-4599
manifold@whafh.com
byrd@whafh.com
tramontano@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
MARK C. RIFKIN
THOMAS H. BURT
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4653
rifkin@whafh.com
burt@whafh.com

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC**
CARL MALMSTROM
111 West Jackson, Suite 1700

24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Chicago, IL 60604
Telephone: 312/984-0000
Facsimile:   312/212-4401
malmstrom@whafh.com

*Class Counsel for the End Payer Plaintiffs*

4878-0242-7890v1

## APPENDIX A

In Re: Packaged Seafood Products Antitrust Litigation,
Case No. 15-MD-2670 DMS (MSB) (S.D. Cal.)

**StarKist Payment Schedule:**

| Date | Event/Deadline | Additional Amount Due | Total Amount |
|---|---|---|---|
| 8/23/2024 (Friday) | Preliminary Approval | N/A | N/A |
| 9/22/2024 (Sunday) | 30 days after Preliminary Approval | $32,000,000.00 | $32,000,000.00 |
| 11/22/2024 (Friday) | Anticipated Final Approval Date | $18,000,000.00 | $50,000,000.00 |
| 2/19/2025 (Wednesday) | 180 days after Preliminary Approval | $15,000,000.00 | $65,000,000.00 |
| 4/20/2025 (Sunday) | 240 days after Preliminary Approval | $12,000,000.00 | $77,000,000.00 |
| 6/19/2025 (Thursday) | 300 days after Preliminary Approval | $11,000,000.00 | $88,000,000.00 |
| 8/18/2025 (Monday) | 360 days after Preliminary Approval | $11,000,000.00 | $99,000,000.00 |
| 10/17/2025 (Friday) | 420 days after Preliminary Approval | $11,000,000.00 | $10,000,000.00 |
| 12/16/2025 (Tuesday) | 480 days after Preliminary Approval | $10,000,000.00 | $120,000,000.00 |
| 1/05/2026 (Monday) | 500 days after Preliminary Approval | $10,000,000.00 | $130,000,000.00 |

*See* ECF No. 3285-2 (StarKist Settlement Agreement) at 26, Paragraph 1.24.

**Lion Payment Schedule:**

| Date | Event/Deadline | Additional Amount Due | Total Amount |
|---|---|---|---|
| 8/23/2024 (Friday) | Preliminary Approval | N/A | N/A |
| 9/22/2024 (Sunday) | 30 days after Preliminary Approval | $3,000,000.00 | $ 3,000,000.00 |
| 11/22/2024 (Friday) | Anticipated Final Approval date | N/A | N/A |
| 1/6/2025 (Monday) | 45 days after Final Approval | $3,000,000.00 | $6,000,000.00 |

*See* ECF No. 3285-2 (Lion Companies Settlement Agreement) at 54, Paragraph 1.22

**COSI Payment Schedule:**

| Date | Event/Deadline | Additional Amount Due | Total Amount |
|---|---|---|---|
| Sunday, March 27, 2022 | 60 days after Preliminary Approval | $ 5,000,000.00 | $ 5,000,000.00 |
| Sunday, August 14, 2022 | 30 days after Final Approval | $5,000,000.00 | $10,000,000.00 |
| Sunday, August 14, 2022 | 30 days after Final Approval | $ 5,000,000.00 | $15,000,000.00 |
| Monday, January 5, 2026 | 30 days prior to Distribution | $5,000,000.00 | $20,000,000.00 |

*See* ECF No. 2846-2 (Partial (COSI) Settlement) at 23, Paragraph 11(d).

## APPENDIX B

Calculations: Fee Award Be Paid Over Time Proportional to Settlement Monies

**Total Money Received at or before Final Approval:** $65,042,830.00 **(total)**

- $50,000,000 from StarKist
- $3,000,000 from Lion
- $12,042,830.00 from COSI

**Total Costs to be Presently Netted Out or Already Paid from COSI: $5,773,516.91 (total)**

- -$4,155,027.67 for Approved Expenses (per ECF 2872)
- -$1,618,489.24 for Costs/Expenses since 4/2022 (Net Expenses from Mot. for Preliminary Approval)

<div style="margin-left:2em">

$65,042,830.00   **(Total Money at Final Approval)**
− $5,773,516.91   **(Total Costs & Expenses)**
$59,269,313.09   **(Total Fund at Final Approval after netting out costs)**

</div>

**Fees received at final approval: $19,558,873.30**

- 33% of $59,269,313.09 (Total Fund at Final Approval after netting out costs) = $19,558,873.30

**Fees received post-final approval: $29,040,000.00**

- $26,400,000.00 (33% of all remaining payments from StarKist)
- $1,650,000.00 (33% of all remaining payments from COSI)
- $990,000.00 (33% of all remaining payments from Lion)

**Combined Attys Fees Total:  $48,320,739.40**

- $19,558,873.30 (at final approval) + $29,040,000.00 (post-final approval) = $48,320,739.40 (Total Fees Award)

**Est. Remaining Balance of Funds at the time of Distribution: $98,948,573.70**

- The costs of administering the settlement fund, processing claims will be paid out of this figure. (Est. at $1,300,000.00 to $5,000,000.00.)

- Any Service Awards to award to Class Representatives will be paid out of this amount ($294,000.00 requested).

## APPENDIX C

### CLASS REPRESENTATION SERVICE AWARDS TIER CHART

|  | Tier 1 | Tier 2 | Tier 3 |
|---|---|---|---|
| # of Plfs | 46 | 14 | 8 |
| Individual Award | $3,000 | $6,000 | $9,000 |
| Total Award | $138,000 | $84,000 | $72,000 |
| List of Plaintiffs in Each Tier | Adams, Louise<br>Alidad, Nay<br>Bartling, Jessica<br>Blumstein, Barbara<br>Buenning, Barbara<br>Caldwell, Scott<br>Canterbury, Jade<br>Christensen, Casey<br>Cooper, Jody<br>Daniels, Sundé<br>Depperschmidt, Brian<br>Dravid, Vivek<br>Etten, Rob<br>Felix Garcia, Ana Gabriela<br>Frick, John<br>Garner, Kathleen<br>Gipson, Stephanie<br>Grant, Tina<br>Hughes, Tya<br>Jackson, Amy<br>Jacobus, Marissa<br>Johnson, Danielle<br>Johnston, Zenda<br>Juetten, Michael<br>Kratky, Steven<br>Lingnofski, Kathy<br>McMahon, Katherine<br>Mey, Diana<br>Milliner, Liza<br>Montoya, Laura<br>Peck, Kirsten<br>Perron, Elizabeth<br>Peters, Valerie<br>Peychal, John | Bowman, Melissa<br>Buff, Michael<br>Durand (f/k/a Gore), Kathy<br>Eason (f/k/a Craig), Kim<br>Emery, Gloria<br>Gutierrez, Edgardo<br>Lown, Carla<br>Musgrave, Rick<br>Norris, Corey<br>Pels, John<br>Skaff, Rob<br>Stearns, Greg<br>Vander Laan, Bonnie<br>Wiese, Julie | Birnbaum, Gay<br>Childs, Laura<br>Gorman, Andrew<br>Hall, Lisa<br>Hudson, Mary<br>Nelson, Jennifer<br>Olson, Barbara<br>Twitchell, Elizabeth |

| | | | |
|---|---|---|---|
| | Rickman, Audra<br>Rodriguez, Erica<br>San Agustin, Joelyna  A.<br>Sartori, Amber<br>Simoens, Rebecca Lee<br>Stiller, Nancy<br>Todd, Christopher<br>Trent, John<br>Warren, Nigel<br>Willoughby III, Thomas<br>Zwirlein, Dan | | |