# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS (MSB) |
| This filing relates to the End Payer Plaintiff Class Action Track | **ORDER GRANTING END PAYER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENTS AND JUDGMENT** |

Pending before the Court is the End Payer Plaintiffs' motion for final approval of their settlements with Defendants StarKist Co. and its parent Dongwon Industries Co., Ltd. ("DWI" and, collectively, "StarKist") and with Defendant Lion Capital (Americas), Inc. and Specially Appearing Defendants Lion Capital LLP and Big Catch Cayman LP[1] (collectively, "the Lion Companies") and for entry of judgment.

Final approval is a multi-step inquiry: first, the Court must certify the proposed settlement class; second, it must determine that the settlement proposal is "fair, reasonable, and adequate;" and third, it must assess whether notice has been provided in a manner consistent with Rule 23 and due process. Fed. R. Civ. P. 23(e)(2); *Adoma v. Univ. of Phoenix Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012). These procedures safeguard class members' due process rights and enable the Court to fulfill its role as the guardian of class interests.[2] As discussed below, the StarKist and the Lion Companies Settlement Agreements satisfy each of these requirements.

Here, the proposed Settlement Class (less opt-outs) is essentially the same Class as previously certified by the Court (ECF No. 1931) and as the Settlement Class certified by Court in the COSI partial settlement. ECF No. 2871 at 6. Based on these prior determinations by the Court, the proposed Settlement Class (consisting of the same Cartwright and State Law Consumer Classes, less any opt-outs) also satisfies Rules 23(a) and 23(b)(3) and is certified for settlement purposes.

The End Payer Plaintiffs ("EPPs" or "Consumers") reached settlements-in-principle with StarKist, and the Lion Companies that, together with the prior partial settlement with COSI, fully and finally resolve this indirect purchaser antitrust class action. The two new settlements provide for combined cash payments of $136,000,000. ECF No. 3302; Declaration of Betsy C. Manifold ("Manifold Decl.")

---

[1] Big Catch Cayman LP was previously dismissed from the Action by the Court with prejudice. ECF No. 3103.

[2] *See* 4 Albert Conte & Herbert Newberg, *Newberg On Class Actions* §§ 11.22, *et seq.* 4th ed. 2002).

| ORDER | CASE NO. 15-MD-2670-DMS (MSB) |
|---|---|

1

in Support of the EPPs' Motion for Final Approval, ¶2. When added to the previously approved COSI partial settlement, the settlements with StarKist and the Lion Companies provide total settlement benefits of $152,200,000 in cash.[3] These settlements provide very substantial cash benefits to the Consumers and represent a substantial recovery for the EPP Classes. Collectively, the total settlement benefits are approximately 68% of the EPP Classes' single damages as calculated by the EPPs' expert.[4] The Court finds that the Settlement Agreements and their terms are fair, adequate, and reasonable, in the best interest of Consumers, and warrant final approval.

At Preliminary Approval, the Court approved a robust Settlement Class Notice Plan, which was undertaken by the claims administrator. *See* ECF No. 3313-1 (Notice Declaration). The Court finds that the Settlement Notice Plan has been provided in a manner consistent with Rule 23 and due process and adequately provided Notice to Settlement Class Members.

In reviewing the totality of the factors (discussed below), the Court GRANTS the EPPs' Motion for Final Approval and for Entry of Judgment.

**I.   LITIGATION BACKGROUND**

The general background and history of this litigation is well-documented and extensively discussed in the Court's prior orders. ECF Nos. 2454, 2654. The Court previously certified the EPP Class in this case, following a three-day evidentiary hearing. ECF No. 1931 ("Class Order") which was upheld by the Ninth Circuit. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 684-685 (9th Cir.), cert. denied sub nom. *StarKist Co. v. Olean Wholesale Grocery Coop., Inc., et*

---

[3] The Court previously approved a partial settlement with COSI which adds $16.2 million to the Total Settlement Benefits of $152.2 million. ECF No. 2871 (COSI Final Approval Order) and 3286-1 (MPA) at 7 n.2.

[4] *See* Expert Report of David Sunding, dated February 16, 2019, p. 17, Table 2 (single damages of $224 million).

*al.*, 143 S. Ct. 424 (2022). The proposed settlements were reached only after the parties had prepared for trial in this matter. The Settling Parties attended a trial setting conference, complied with all pre-trial disclosure and exchange deadlines, prepared, and argued motions *in limine* ("MIL"), filed proposed jury instructions and a pre-trial order, and attended the meeting of counsel. *See* ECF Nos. 3189-3207 (MILs), 3211-3232 (MIL Oppositions), 3237-3239 (Memoranda of Facts & Contentions of Law), 3244 (MIL Hearing), and 3251-3255 (Proposed Jury Instructions and Objections).

## II. THE SETTLEMENTS

### The Settlements Were the Result of Arm's-Length Negotiations

Class Counsel engaged in several informal settlement discussions with the Settling Defendants and many more formal negotiations (most presided over with extreme care and exceptional skill by Magistrate Judge Berg) with counsel for StarKist and the Lion Companies. ECF 3286-2 at 7-9, ¶¶ 17, 18, 22 (including Bumble Bee). Based on this ample record, the Court found at the Preliminary Stage that the proposed settlements were the result of arm's-length negotiations. ECF No. 3302 at 4.

### The Settlement Class Was Certified By the Court

Under the StarKist and Lion Agreements, the Settlement Class is substantially the same as the Consumer Classes and the COSI Settlement Class previously certified by the Court with no material changes.[5] No consumers sought exclusion from the EPP Settlement Class in the COSI Settlement. The only differences are that the Settlement Class here *excludes* 114 consumers who subsequently opted out of the EPP Classes and *includes* the three individual Illinois Plaintiffs. *See* ECF Nos. 3120, 2871. Manifold Decl., ¶50. The Settlement Class Counsel and Settlement Class Representatives are the same as Class Counsel and Class Representatives previously appointed by the Court in the Class Order. ECF No. 1931 at 58-9; ECF No. 3286-2 at 26, ¶ 1.26 and at 56, ¶ 3. For these reasons, the Court concluded in its Preliminary

---

[5] *See* ECF No. 1931; ECF No. 3286-2 at 23, ¶ 1.8 and at 56, ¶ 3; *see also* ECF No. 2871 (Order approving the COSI Settlement).

Approval Order that "certification of the Settlement Class is appropriate for all reasons set forth in the Class Order." ECF No. 3302 at 7.

**Key Settlement Terms**

Complete copies of both the StarKist Agreement and the Lion Agreement are attached to the Declaration of Betsy C. Manifold in Support of EPPs' Motion for Preliminary Approval ("Preliminary Approval Motion") as Exhibits 1 and 2, respectively. *See* ECF No. 3286-2 at 19-46 (StarKist Agreement) and 47-72 (Lion Agreement). The Preliminary Approval Motion provides a detailed summary of the key terms in both settlements and is available (along with the exhibits) on the Settlement Website for Class Members. *See* ECF No. 3286-1 at 13-15.

At the Preliminary Approval stage, the Court approved the advancement of certain notice costs to the Claims Administrator under the terms of both Agreements. ECF No. 3302 at 15 ("an interim distribution of $1.2 million for notice costs prior to the Fairness Hearing is appropriate and is approved under the terms provided in the Settlement Agreements"). Class Counsel advised the Court that the claims administrator, JND Legal Administration LLC ("JND"), had incurred reasonable expenses in the amount of $726,702.30, slightly below the estimates provided to the Court. Manifold Decl., ¶59. As permitted by the terms of Settlements Agreements, Class Counsel advised the Court that they had paid JND for these reasonable costs of notice administration. *Id.*; ECF No. 3302 at 15; ECF No. 3286-2 at 29, ¶5.3 and at 58, ¶ 5.3 (advanced Notice Costs not recoverable by the Settling Defendants). Defendants' remaining payments into the Settlement Fund will be made as provided by their respective Settlement Agreements, as discussed *infra*.

**Summary of the StarKist Settlement Agreement**

*Payment Schedule.* The StarKist Settlement Agreement provides that StarKist will pay a total $130,000,000 in cash, payable in installments on specified dates over a period ending 500 days after Preliminary Approval (or within 500 days of August

23, 2024). The first payment of $32 million was paid on September 21, 2024, within 30 days after Preliminary Approval. ECF No. 3286-2 at 26, ¶ 1.24. Manifold Decl. ¶14.

*Released Claims.* The Released Claims are those "arising out of, resulting from, or in any way related to EPPs' purchases of Packaged Tuna, including any conduct concerning the pricing, selling, discounting, marketing, manufacturing, distribution, or promotion, of Packaged Tuna, during the period from June 1, 2011, to July 31, 2015." *Id.* at ¶ 1.21 The Released Claims also include all claims that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint. *Id.* The StarKist Agreement also contains a waiver of California Civil Code § 1542. *Id.* at ¶ 8.2.

*Attorneys' Fees and Expenses.* As to any Fee Award, "the allowance or disallowance by the Court" of any application for fees is not part of the Settlement Agreement, will be considered by the Court separately and "shall not operate to terminate or cancel" the Settlement Agreement or "delay the finality of the Judgment." ECF No. 3286-2 at 40, ¶ 14.1.

**Summary of the Lion Companies Settlement Agreement**

*Payment Schedule.* Under the terms of the Lion Agreement, the Lion Companies have deposited $3 million in the Settlement Fund Escrow. ECF No. 3286-2 at 54, ¶ 1.22); Manifold Decl. ¶15. The remaining $3 million will be deposited within 45 days after Final Approval. *Id.*

*Released Claims.* The Released Claims are those that arise out of, result from, or relate to "any conduct concerning the pricing, selling, discounting, manufacturing, distribution, promotion, or marketing of Packaged Tuna Products during the period from June 1, 2011 to July 31, 2015 that could have been brought based in whole or in part on the facts, occurrences, transactions, or other matters that were alleged in the Complaint." ECF No. 3286-2 at 53, ¶ 1.19.

*Attorneys' Fees and Expenses*. As to any Fee Award, the Lion Companies Settlement Agreement is substantially similar to the StarKist Settlement Agreement. Any order relating to the application for fees and expenses should be considered separately and "shall not operate to terminate or cancel" the settlement or "delay the finality of the Judgment." ECF No. 3286-2 at 68, ¶ 14.1.

**Agreements Required to Be Identified Under Fed. R. Civ. P. 23(e)(3)**

Class Counsel has represented to the Court that all the terms of the settlements are contained within the respective Settlement Agreements. Manifold Decl. ¶51; ECF No. 3286-2 at 19-72.

## III. SETTLEMENT NOTICE AND CLAIMS DISTRIBUTION PROCCESS

Notice was provided to the Settlement Class via email, U.S. Mail, posting on the Settlement Website, in *People* and by digital publication. ECF No. 3313-1. The EPPs again retained JND, an experienced and well-respected claims administrator. The Court previously approved JND as Claims Administrator for the COSI Settlement and to disseminate the Class Notice. ECF Nos. 2734 and 2781. Their prior experience in this case promotes greater efficiency. *See* ECF No. 2552-6.

The Settlement Notice Plan, approved by the Court's Preliminary Approval Order, was robust and provided the Settlement Class Notice (in various forms) to Settlement Class Members via email, posting on the Settlement Website and by digital and print publication. ECF No. 3313-1 (Notice Declaration), ¶¶4-20; ECF No. 3302 at 12-19. The digital effort delivered over 549 million impressions to adults over 18 in the U.S. (more than originally planned). ECF No. 3313-1, ¶4. A one-third-page color notice was placed in the October 7, 2024, issue of *People* magazine which included a QR Code for quick and direct access to the Settlement Website. *Id*., ¶9. As directed by the Preliminary Approval Order, on September 6, 2024, JND mailed the Court-Approved notice via first-class U.S. Mail ("Mailed Notice") to 265,926 COSI Settlement Claimants. ECF No. 3313-1, ¶¶12-14; ECF No. 3302 at 13. A national press release was distributed to English and Spanish media outlets via PR Newswire

1  and was picked up 585 times with a potential audience of 179.5 million. ECF No.
2  3313-1, ¶19. *The digital and print efforts alone reached more than 70% of potential*
3  *Settlement Class Members and further extended by Mail Notice*. *Id*., ¶26.

4        **The Form of Notice Was Reasonable**. Rule 23(e)(1)(B) requires the Court to
5  "direct notice in a reasonable manner to all class members who would be bound by a
6  proposed settlement…" regardless of whether the class was certified under Rule
7  23(b)(3). *Manual for Complex Litigation*, § 21.312 (4th ed. 2023). The best practicable
8  notice is that which is "reasonably calculated, under all circumstances, to apprise
9  interested parties of the pendency of the action and afford them an opportunity to
10 present their objections." *Mullan v. Cent. Hanover Bank & Tr. Co*., 339 U.S. 306, 314
11 (1950). The notice must contain specific information in plain, easily understood
12 language, including the nature of the action and the rights of the class members. Fed.
13 R. Civ. P. 23(c)(2)(B)(i)-(vii).

14       *Form of Notice:* Consistent with Rule 23(c)(2)(B), the Settlement Notices
15 described "(i) the nature of the action; (ii) the definition of the [Settlement] Class
16 certified; (iii) the class claims, issues, or defenses; (iv) [a directive] that a Settlement
17 Class Member may enter an appearance through an attorney if the member so desires;
18 and (v) the binding effect of judgment on members [of the Settlement Class] under
19 Rule 23(c)(3)." *See* ECF No. 3313 (Notice Declaration), ¶¶ 12-19, Ex. C (***Mailed***
20 ***Notice***), Ex. D (***Email Notice***), and Ex. F (***Press Release***).

21       *No Secondary Right to Opt-Out:* No right to opt-out was provided in the Mail
22 or Email Notices to the COSI Claimants because the COSI Claimants had already been
23 given the opportunity to opt out as part of the COSI Settlement. *See* ECF No. 3313,
24 ¶¶ 12-19, Ex. C (***Mailed Notice***) and Ex. D (***Email Notice***); ECF No. 2871. The ***Press***
25 ***Release*** also advised Settlement Class Members that there was no secondary right to
26 opt out. *See* ECF No. 3313, ¶¶ 12-19, Ex. F (***Press Release***) at 55 ("There is no
27 additional opportunity to exclude yourself ("Opt Out") from the StarKist and Lion
28 Settlements.")**.** The ***Press Release*** explained that Settlement Class Members were

already provided two opportunities to "opt out" in both the COSI Settlement and then in the Litigation Class. *Id*. *See* ECF Nos. 2871, 3120.

*Terms of Any Fee or Costs Award:* The Settlement Class Notices all advised Settlement Class Members that Class Counsel would request a fee of 33%. *See* ECF No. 3313-1, ¶¶ 12-19, Ex. C (***Mailed Notice***) ("Class Counsel will request an award of attorney fees equal to 33% of the Total Settlement Fund"); Ex. D (***Email Notice***) (same language); Ex. F (***Press Release***) ("Class Counsel will ask the Court to approve: (1) attorneys' fees equal to 33% of the Total Settlement Fund…" and repeated in Spanish). The Settlement Notices also disclosed that Class Counsel would request reimbursement for out-of-pocket litigation costs incurred since May 2021 in the amount of $1,618,489.24 and service awards totaling $294,000. *See* ECF No. 3313-1, ¶¶ 12-19, Ex. C (***Mailed Notice***) at 34, Ex. D (***Email Notice***) at 38 and Ex. F (***Press Release***) at 54.

**Plan of Distribution:** Each Authorized Claimant in the Settlement Class shall receive a *pro rata* share of the Distribution Funds as described in the Settlement Class Notice." ECF No. 3313-1, Ex. F (*Press Release*) at 54 (estimating price per can recovery). Class Counsel has requested that payments to Authorized Claimants not be immediately distributed but held until all settlement amounts have been paid by the Settling Defendants as required by the Settlement Agreements. *See also* ECF 3286-3 at 16, ¶ 41. Based on the facts here (a large consumer class with settlement payments to be made over time), the Court finds that it is more efficient to delay distribution until all settlement funds are received. *Id.* Once all appeals are exhausted, and all monies are collected under the Settlement Agreements, Class Counsel will direct JND to distribute payments as specified on the claimant's Claim Form. *See* ECF 3286-3 at 13, ¶ 32, Ex. H (Claim Form).

**Claims Processing:** The same online submission of claims, as was approved by the Court in the COSI Settlement, was again used. ECF No. 2781 at 15:8-22. According to Ms. Intrepido-Bowden, Vice President of JND Legal Administration and

a judicially recognized legal notice expert, claimants "generally favor online claims forms" because the process is user-friendly and convenient. ECF No. 3286-3, ¶¶ 25-26. If a Settlement Class Member is either unable or unwilling to file a claim on-line and requested a printed claim form, one was provided by the Claims Administrator. *Id.*, ¶¶ 27-28.

**Claims Administration:** JND will review, determine the validity of, process and hold on to all Claim Forms submitted by claimants. *Id.*, ¶ 31. JND will flag any issues (such as failure to sign a paper or pdf Claim Form) and follow up with the claimant, as necessary. *Id.* JND will also review the Claim Forms to ensure submission by a single claim per claimant. *Id.* (avoiding doctored documentation and multiple payments to a single recipient).

**Objections**: No objections were received.

**Costs of Claims Administration:** Depending on the number of claims received, the claims administrator has provided the Court with a preliminary estimate of the costs of processing claims, running fraud analysis, and dispersing the Distribution Funds is between $2.1 and $5.8 million. Intrepido-Bowden Decl., ¶ 42.

### IV. Final Approval of the Settlement Is Granted

Rule 23(e) requires the district court to determine whether a proposed settlement is "fair, reasonable, and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). To assess the fairness of a class settlement, Ninth Circuit courts consider a number of factors, including the so-called *Churchill Village* factors. *Id.* (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Rule 23(e)(2) also requires courts to consider whether (1) class representatives and counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the settlement provides adequate relief for the class; and (4) the proposal "treats class members equitably relative to each other." These factors are not exclusive. This Court may consider any combination of factors that it deems appropriate to assessing the fairness of the settlement. *Bellinghausen v.*

*Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015).

Based on a combination of these factors (discussed below), the Court finds that the proposed Settlement Agreements and their respective terms are fair, adequate, and reasonable.

### 1. The *Churchill Village* Factors Support Final Approval

Under the first *Churchill Village* factor, this Court considers the strength of plaintiffs' case. *See* Fed. R. Civ. P. 23(e)(2)(C). The Court need not reach "any ultimate conclusion" about the case, "for it is the very uncertainty of outcome" and avoiding more litigation "that induce consensual settlements." *Bravo v. Gale Triangle, Inc.*, CV 16-03347, 2017 WL 708766, at *9 (C.D. Cal. Feb. 16, 2017). The EPPs had the benefit of criminal convictions and guilty pleas, and liability as to the plea period (November 2011 to December 2013). *See* ECF Nos. 2454, 2654. However, the claims against DWI and the Lion Companies – who were not part of the criminal investigation by the Department of Justice – were heavily contested. All the Defendants disputed the scope, duration, and effect of the conspiracy. Therefore, the Court balances the strength of the EPPs' case against the second *Churchill* factor: the risk, expense, complexity, and delay of further litigation. Fed. R. Civ. P. 23(e)(2)(C)(i).

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Bravo,* 2017 WL 708766, at *9 (internal quotation omitted). EPPs faced added complexities and risks at trial because, as consumers, the EPPs needed to prove liability for a multistate Cartwright Act Class claim and Individual State Law Class claims as well as proving pass-through of the overcharge to the consumers. Ultimately, at trial, the outcome of litigation is always uncertain. Antitrust class actions are particularly complex and inherently risky. *See In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.*, No. 4:14-cv-02758-CW, 2017 WL 6040065, at *3 (N.D. Cal. Dec. 6, 2017) (noting that "antitrust class action is arguably the most complex action to prosecute. The legal and factual issues involved are always numerous and uncertain

in outcome.") (Internal quotation marks omitted.) Proving damages at trial also is an expert-intensive and uncertain process, often involving conflicting testimony. Antitrust cases with complex expert econometric modeling and treble damages face the very real risks of reversal at trial, after verdict and on appeal, and this case was no exception. *See In re National Football League's Sunday Ticket Antitrust Litig.*, 2:15-md-02668-PSG, Judgment (C.D. Cal. August 20, 2024) (ECF No. 1542).[6]

The third *Churchill Village factor,* the risk of maintaining class certification through trial, also weighs in favor of final approval. *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, at 946 (9th Cir. 2011); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 255 (N.D. Cal. 2015) (citing risk of **maintaining** certification "if the litigation were to proceed"); *Chen v. Chase Bank USA*, No. 19-cv-01082, 2020 WL 3432644, at *6 (N.D. Cal. June 23, 2020) (same). Certification was hotly contested and the risk of further appeal after trial was highly likely.

The fourth *Churchill Village* factor, the amount obtained through the Settlement, also supports final approval. *See also* Fed. R. Civ. P. 23(e)(2)(C); *Procedural Guidance for Class Action Settlements* § 1(e) (suggesting courts consider amount of settlement to potential recovery). Regression modeling by the EPPs' expert, Professor David Sunding, showed single damages equal to $224 million.[7] Trebled, this is approximately $672 million. Based on the maximum single damages of $224 million for the entire conspiracy period, a total recovery of $152,000,000 is nearly 68% of the maximum single damages and over 20% of maximum treble damages. Here, a 68% recovery exceeds the usual range of recovery of 30-40% which is typical.

---

[6] EPPs faced the risk of being unable to collect on and enforce any judgment against either DWI or the Lion Companies, all foreign defendants who might not have sufficient assets in the United States to satisfy the judgment, and that StarKist might not have sufficient assets itself to satisfy the judgment. *See Stanger v. China Elec. Motor, Inc.*, 812 F.3d 734,740 (9th Cir. 2016) (assessing reasonableness can include weighing "the risk of nonpayment" and "the difficulty and risks inherent in litigating against **defendants** in a [foreign nation]").

[7] *See* Expert Report of David Sunding, dated February 16, 2019, p. 17, Table 2.

*See Rodriguez*, 563 F.3d at 954 (finding a settlement that was approximately 30% of the estimated damages before trebling fair, adequate, and reasonable); *accord Edwards v. Nat'l Milk Producers Fed'n*, No. 11-cv-04766-JSW, 2017 WL 3616638, at *3 (N.D. Cal. June 26, 2017) (finding a settlement representing approximately 30% of the total estimated single damages fair and reasonable).

The fifth (stage of proceedings) and sixth (experience of counsel) *Churchill Village* factors also support final approval. On the eve of trial, EPPs were most able to evaluate any proposed settlements. Class Counsel is a nationally recognized antitrust and class action law firm with considerable expertise representing indirect purchaser plaintiff classes in antitrust matters. Manifold Decl., ¶45. Class Counsel has proven that it is ready, willing, and able to try this case to verdict, but believe this to be an excellent settlement under the circumstance and support its approval. *Id*.

The seventh *Churchill Village* factor – the presence of a governmental participant does not raise any concerns. A CAFA Notice was served on the DOJ and the relevant states on August 23, 2024, and provided them the opportunity to "raise any concerns that they have during the normal course of the class action settlement procedures." *Bellinghausen*, 306 F.R.D. at 258; Manifold Decl., Ex. 1, § 47; *see also Procedural Guidance for Class Action Settlements* § 10 (CAFA compliance). *See* ECF No. 3313-1 at 2, ¶3. To date, no governmental entity has provided any comment.

The eighth and final *Churchill Village* factor considers the reaction of class members to the ***proposed*** settlement when determining the Settlement's fairness. *Churchill Vill.*, 361 F.3d at 575.  [To date, there is no objection]. This factor weighs in favor of approval.

### 2. Rule 23(e) Factors Are Satisfied

The Court also finds that Rule 23(e)(2) factors are satisfied. *First,* the Court finds that Class Representatives and Class Counsel have adequately represented the Settlement Class. *See* Manifold Decl., ¶¶46-47. This multistate antitrust litigation was fully litigated from the appointment of Interim Lead Counsel to final trial preparations.

*First*, the Court finds that proposed settlements were hard-fought, negotiated at arm's-length against highly experienced opposing counsel and only achieved after extensive face-to-face settlement meetings overseen by Judge Berg and on the very eve of trial. ECF No. 3286-2, ¶¶ 17-24. *Second,* as referenced above, a settlement result of a 68% recovery of single damages which exceeds the usual 30-40% (or less) is good result. *See Rodriguez.*, 563 F.3d at 954. *Third*, the distribution of the proposed Settlement Fund treats all Settlement Class Members equally and distribution will be made to Authorized Claimants on a *pro rata* basis. ECF No. 3313-1, Ex. F at 54.

## V.   CLAIMS PROCESS IS EFFICIENT AND REASONABLE

The Court finds that the method of distributing relief to the Settlement Class including the method of processing Settlement Class Member claims (described in detail above) is adequate. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii). JND described its proposed methodologies for claims processing and distribution of funds. *See* ECF No. 3286-3 at 11-15, ¶¶ 24-40.  The Court finds that the proposed claims processing methodologies are convenient (simple online claim submission) and, according to the Claims administrator, provides faster claim processing with fewer deficiencies. *Id*. ¶ 32.

## VI.   PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

"Approval of a plan for the allocation of a class settlement fund is governed by the same legal standards that are applicable to approval of the settlement: the distribution plan must be 'fair, reasonable and adequate.'" *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) (citations omitted). All Settlement Class Members are eligible to make claims for cash from the settlement monies. Settlement Class Members must submit a Claim Form (either online, via telephone, or through the mail) to receive funds. ECF No. 3286-3 at  ¶¶ 24-29. The Claim Form is simple and easy to complete. *Id*., Ex. F (Claim Form). Class members will be asked for their names, mailing address, email, and to provide any documentation (if available) and an attestation demonstrating that they are a Settlement Class Member.

*Id.*, Ex. F. The Settlement Administrator JND will administer the entire process, including validating the claims and calculating the Settlement Payment amounts in accordance with the Settlement Agreement. *Id.*

## VII. SETTLEMENT CLASS MEMBERS WERE NOTIFIED IN A REASONABLE MANNER

The Court finds that class members were notified in a reasonable manner. Fed. R. Civ. P. 23(e)(1). When a settlement class is certified under Rule 23(b)(3), class members must receive "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(b)(3). Here, the Court-approved Notice Plan implemented by the Parties and the Settlement Administrator comports with due process and was the best practicable means under the circumstances. *See* ECF No. 2734 at 12-13.

The Notice reached over 70% of potential class members via notice placements with the leading digital network (Google Display Network), the top social media site (Facebook), and a highly read consumer magazine (People). Notice Decl., ¶ 30. The Settlement Notice explained the objection process to Settlement Class Members and informed them that they may appear at the Fairness Hearing or retain counsel to represent their interests. ECF No. 3286-3, Ex G (Long Form Notice) at ¶¶ 12-17; ECF 3313-1 at 6, ¶20 (posted on Settlement Website). Class members were provided with an opportunity to appear at the Fairness Hearing or submit a timely and appropriate written statement through counsel. *Id.* at ¶¶ 16-18.  No Settlement Class Member appeared at the Fairness Hearing and Settlement Class Member objected.

## VIII. CONCLUSION

The Court GRANTS final approval of the StarKist Settlement Agreement and the Lion Companies Settlement Agreement and ORDERS the following:

(1) The Court finds the StarKist Settlement Agreement and the Lion Companies Settlement Agreements and their respective terms are fair, reasonable, and adequate, and in the best interests of the Settlement Class and direct that Settlement Agreements be consummated according to their respective terms;

1     (2) The Court finds that the Settlement Notice content and the Settlement Notice Plan constituted, under the circumstances, the best practicable notice of the Settlement Agreements and the Fairness Hearing and constituted due and sufficient notice to Settlement Class Members;

    (3) The Court finds that the relevant notices as required by the Class Action Fairness Act, 28 U.S.C. § 1711, *et seq.* was provided;

    (4) In granting final approval of the Settlement Agreements, the Court hereby enters Judgment of dismissal with prejudice of the Action, with each party to bear its own costs and attorneys' fees;

    (5) This Judgment permanently bars and enjoins the institution, commencement, or prosecution, by any of the Releasing Parties, of any action asserting any Released Claim against any Released Party, in any local, state, federal, or other court of any nation, or in any agency or other authority or arbitral or other forum wherever located;

    (6) This Judgment also provides that any Settlement Class Member who failed to object in the manner prescribed in the Settlement Agreements and Notices shall be deemed to have waived any objections to the settlements and the Settlement Agreements and will forever be barred from making any such objections to the settlements or the Settlement Agreements;

    (7) The Court will retain exclusive jurisdiction over the settlement and the Settlement Agreements, including administration and consummation of the settlement, and Settlement Class Counsel to provide an update every ninety (90) days on the status of claims administration and the distribution process along with a statement of the reasonable costs incurred by the Court-appointed Claims Administrator;

/ / /

/ / /

/ / /

(8) The Court finds under Federal Rule 54(b) that this no just reason for delay and enters a Judgement of dismissal as to StarKist, DWI, and the Lion Companies.

**IT IS SO ORDERED.**

Dated: November 22, 2024

Hon. Dana M. Sabraw, Chief Judge
United States District Court