BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile:   619/234-4599

*Class Counsel for the End Payer Plaintiffs*

[Additional counsel appear on signature page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | ) Case No.: 15-MD-2670 DMS (MSB) |
| | ) |
| | ) **MEMORANDUM OF POINTS** |
| | ) **AND AUTHORITIES IN** |
| | ) **SUPPORT OF MOTION FOR** |
| | ) **DISTRIBUTION OF CLASS** |
| | ) **ACTION SETTLEMENT** |
| | ) |
| _____ | ) DATE:        July 31, 2026 |
| | ) TIME:        1:30 p.m. |
| This Document Relates to: | ) JUDGE:      Hon. Dana M. Sabraw |
| | ) COURT:      13A (13th Floor) |
|    End Payer Plaintiffs Class Track | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| _____ | ) |

## TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................ 1

II.     NOTICE AND CLAIMS ADMINISTRATION: ALL SETTLEMENTS ..... 3

        A. The Robust Notice Process ................................................ 3

        B. Claims Administration Process was Fair, Reasonable and Adequate ....... 4

            1. Fraud Review .......................................................... 5

            2. Deficiency Notices .................................................. 5

        C. Plan of Distribution ...................................................... 6

        D. Cost of Claims Administration and Distribution of Funds ........................ 7

III.    COURT SHOULD APPROVE FINAL DISTRIBUTION ................................. 8

        A. The Court Should Approve the Settlement Administrator's
           Recommendations Regarding Acceptance or Rejection of Claims ........... 8

        B. The Court Should Adopt Lead Counsel's Recommendation Regarding
           Late Claims ............................................................. 10

        C. Recovery Forfeited if Checks Not Cashed Within 60 Days .................... 11

        D. Court Should Approve Cy Pres Recipient Designed in the Settlement
           Notice ................................................................. 12

        E. Records Retention Policy Should Be Approved ................................. 13

        F. The Court Should Authorize Payment of the Claims Administrator's
           Unpaid Invoices and Allow a Reserve for the Costs of Distribution ....... 13

        G. Proposed Schedule for Distribution ........................................ 14

IV.     CONCLUSION ................................................................ 15

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT
NO. 15-MD-2670 DMS (MSB)

i

# TABLE OF AUTHORITIES

**CASES**                                                                                     **Page(s)**

*Dennis v. Kellogg Co.*,
    697 F.3d 858 (9th Cir. 2012)...................................................................13

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018) ..............................................................2

*In re Cendant Corp. Prides Litig.*,
    233 F.3d 188 (3d Cir. 2000); accord *Burns v. Elrod*, 757 F.2d 151 (7th
    Cir. 1985)...................................................................................................10

*In re Easysaver Rewards Litig.*,
    906 F.3d 747 (9th Cir. 2018)...................................................................12

*In re Gypsum Antitrust Cases*,
    565 F.2d 1123 (9th Cir. 1977)............................................................10, 11

*In re Int'l Air Transp. Surcharge Antitrust Litig.*,
    No. M 06-01793 CRB, 2011 WL 6337625 (N.D. Cal. Dec. 19, 2011),
    aff'd, 577 F. App'x 711 (9th Cir. 2014).................................................4, 9

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
    246 F.3d 315 (3d Cir. 2001).....................................................................11

*In re Packaged Seafood Products Antitrust Litig.*,
    No. 3:15-MD-02670-DMS (MSB), 2024 WL 4875246 (S.D. Cal. Nov.
    22, 2024)................................................................................................1, 3, 8

*In re Valdez*,
    289 F. App'x 204 (9th Cir. 2008) .........................................................10, 11

*Lemus v. H & R Block Enters., LLC*,
    No. C 09-03179 SI, 2013 WL 3831866 (N.D. Cal. July 23, 2013), aff'd
    sub nom. *Lemus v. Madar*, 594 F. App'x 419 (9th Cir. 2015) .................10

*Norton v. LVNV Funding, LLC*,
    No. 18-CV-05051-DMR, 2022 WL 562831(N.D. Cal. Feb. 24, 2022).............11

*Silber v. Mabon*,

    18 F.3d 1449 (9th Cir. 1994) ................................................................................. 10

*Zients v. LaMorte*,

    459 F.2d 628 (2d Cir. 1972) ................................................................................. 10

**OTHER AUTHORITIES**                                                                                      **Page(s)**

    *Manual for Complex Litigation* (Fourth) § 21.662 (2004) ........................... 10

    William B. Rubenstein, *Newberg on Class Actions*, (5th ed. 2011) ......... 2, 11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT
NO. 15-MD-2670 DMS (MSB)

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

After a decade of hard-fought litigation, the End Payer Plaintiffs ("EPPs" or "Consumers") reached settlements with three different groups of Defendants: (i) StarKist and Dongwon Industries Co., Ltd. (collectively "StarKist"), (ii) Lion Companies and (iii) Chicken of the Sea, Inc. ("COSI") (altogether the "Settling Defendants") and fully and finally resolved this indirect purchaser antitrust class action. *See In re Packaged Seafood Products Antitrust Litig.*, No. 3:15-MD-02670-DMS (MSB), 2024 WL 4875246 (S.D. Cal. Nov. 22, 2024). With the final settlement payments by StarKist in December 2025 and by COSI in March 2026, the Settling Defendants have completed the payment of all Settlement Benefits and reached a final total of $152,200,000 in cash.[1]

Consumers now request an Order authorizing the distribution of the net settlement funds to the approved claimants. Entry of an Order permitting the distribution of the net settlement funds is proper and appropriate at this time because all the prerequisites have been satisfied.[2] All funds to be distributed are in hand,

---

[1] As part of the Settlements approved by the Court, each group of defendants negotiated an extended payment plan. The StarKist Settlement Agreement provided that StarKist will pay a total $130,000,000 in cash, payable in installments on specified dates over a period ending 500 days after Preliminary Approval (or within 500 days of August 23, 2024). *In re Packaged Seafood Products Antitrust Litig.*, 2024 WL 4875246, at *3. Under the terms of the Lion Agreement, the Lion Companies deposited $3 million in the Settlement Fund Escrow upon preliminary approval (Dkt. 3286-2 at 54, ¶ 1.22) and paid the remaining $3 million 45 days after Final Approval. *Id.* The earlier partial settlement with COSI added $16.2 million to the Total Settlement Benefits of $152.2 million. Dkt. 2871 (COSI Final Approval Order) and 3286-1 (MPA) at 7 n.2. The final COSI payment in March 2026 was made no later than 30 days before final distribution of the net settlement funds. Declaration of Betsy Manifold in Support of the Motion for Final Distribution of the Class Action Settlement Funds ("Manifold Decl.) ¶ 4.

[2] Payments to Authorized Claimants were not immediately distributed but held until all settlement amounts have been paid by the Settling Defendants as required by

deposited in escrow by the Settling Defendants, starting in 2022 and ending in 2026, judgments have been entered, and the time to appeal has expired.[3] *See* 4 William B. Rubenstein, *Newberg on Class Actions*, § 12:19 (5th ed.) (Westlaw 2018). The Court approved the pro rata Plan of Allocation; and as set forth in the Settlement Notices, the net settlement funds will be allocated on a *pro rata* basis to authorized claimants (as identified by the court-appointed Claims Administrator) based on the amount of Packaged Tuna purchased during the Class Period. *See* Dkt. 3313-1, Ex. F (**Press Release**) at 54 (estimating price per can recovery).

Distribution of the net settlement funds, as set forth in Jarjoura (JND) Declaration, will give effect to the approved pro rata Plan of Allocation compensating class members based on the extent of their injuries. See *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."). The proposed plan of distribution provides for a payment to all class members with valid claims and, as discussed below and provided in the Settlement Class Notice, sets a "floor" such that each approved claimant is paid no less than $5.00. Manifold Decl. ¶ 12.

The Settlement Administrator has completed a fair, reasonable, and adequate review of the claims. Courts typically give "deference" to decisions of an impartial settlement administrator who facilitates the implementation of a settlement agreement. *In re Int'l Air Transp. Surcharge Antitrust Litig.*, No. M 06-01793 CRB, 2011 WL 6337625, at *2 (N.D. Cal. Dec. 19, 2011), aff'd, 577 F. App'x 711 (9th Cir. 2014). Class member participation in the claims process has been robust. JND

---

the Settlement Agreements. *See* Dkt. 3286-3 at 16, ¶ 41. It was not efficient to make multiple distributions, with the costs of claims administration. Instead, it was more efficient to delay distribution until all settlement funds are received. Manifold Decl. ¶ 5.

[3] On May 1, 2026, the Ninth Circuit dismissed the appeal of the Court's Order upholding JND's Deficiency Letters. *See* Dkt. 3428.

processed and reviewed a total of 980,568 claims. Jarjoura (JND) Decl. ¶ 5. Settlement Class Counsel asks the Court to approve the recommendations of the Claims Administrator as to the acceptance and rejection of claims, approve the payment of unpaid administration costs, and authorize a reserve from the net settlement fund to cover the costs of distribution.

As set forth below, the net settlement fund is ready for final distribution.[4] Settlement Class Counsel respectfully request that the Court approve the Distribution Plan fund and direct final distribution of the net settlement fund.

## II.   NOTICE AND CLAIMS ADMINISTRATION: ALL SETTLEMENTS

Having presided over this complex litigation for many years, the Court is well familiar with the factual background and procedural history of the case. A summary of relevant events is set forth in its prior orders. *See In re Packaged Seafood Products Antitrust Litig.*, 2024 WL 4875246 (S.D. Cal. Nov. 22. 2024); *In re Packaged Seafood Products Antitrust Litig.*, 2022 WL 789184 (S.D. Cal. Feb. 8, 2022); *In re Packaged Seafood Products Antitrust Litig.*, 242 F. Supp. 3d 1033 (S.D. Cal. 2017); and *In re Packaged Seafood Products Antitrust Litig.*, 338 F. Supp. 3d 1079 (S.D. Cal. 2018).

### A.   The Robust Notice Process

Notice of the settlements, via a court-approved Notice Plan, were published and sent to Class Members, certain Class Members opted out, and potential Class Members submitted claims to share in the settlement proceeds. For the claims process, the print notice and digital ads included an embedded link and the print ad a QR code, both of which allowed Settlement Class Members to complete and file an online Claim Form. Dkt. 3313-1, ¶ 9, Ex. A (*Digital Ads*), Ex B (*People Ad*) and Ex. C

---

[4] As of June 1, 2026, the net settlement fund is $97,539,130.47. Manifold Decl. ¶6 (accounting provided). This amount will change before final distribution because this amount *does not include deductions* to cover additional claims administration costs and fees, taxes, processing and distribution fees (all detailed in the JND (Jarjoura) Declaration) and the last 7% of attorney fees previously approved by the Court.

(*Mailed Notice*) at 34. If a Settlement Class Member was either unable or unwilling to file a claim on-line, she could request a printed claim form and either return it to JND via United States Mail (post-marked before the Claims Cut-Off Date) or create a pdf of the completed Claim Form and e-mail it to JND (before the Claims Cut-Off Date). *Id*.

Based on the Notice for the StarKist and Lion Settlements, 437,522 claims were received through JND's secure online portal and 6,370 were received via postal mail. Jarjoura (JND) Decl. ¶ 5. Across all settlements, a total of 980,568 claims were filed. *Id*. At the direction of Settlement Class Counsel, in the first 120 days after the Claims Cut-Off Date[5], JND received and processed an additional 310 Late Claims. Settlement Class Counsel directed the Claims Administrator to deny all further claims received after the 120-day grace period (April 30, 2025). *Id*. ¶ 6; As discussed below, the Claims Administrator and Settlement Class Counsel believe that accepting these nominally late claims avoids further administration costs associated with claimant outreach and determining validity based on lateness. Jarjoura (JND) Decl. ¶ 6; Manifold Decl. ¶ 7.

**B.    Claims Administration Process was Fair, Reasonable and Adequate**

JND's Claims Process consisted of multiple critical steps. First, the Settlement Administrator established and followed quality control measures to ensure that each claim was properly tracked and notified claimants of potential deficiencies, including incomplete Claim Forms (not signed, no claim number), potentially duplicative, and claims that lacked supporting information for claims over a threshold amount. Jarjoura (JND) Decl. ¶¶ 5-10. Second, Claimants had adequate opportunity to cure any deficiencies by providing additional information or documentation. *See, e.g., id*. ¶¶ 9, 10. As the request of Settlement Class Counsel, the Settlement Administrator

---

[5] See https://www.tunaendpurchasersettlement.com/ (Website Notice) (**FILE A CLAIM** Submitted online or postmarked by the initial claims date of **December 31, 2024)**

processed certain late claims filed within a 120-day grace period, and also considered late responses to requests for information considered to be timely if relevant documentation and/or information was provided. *Id*. ¶ 6. Additionally, where possible, the Settlement Administrator used claim information obtained in Direct Purchaser Settlement to avoid any duplication of certain large claims. *See id*. ¶ 15. Third, the Settlement Administrator and Lead Counsel spent a time working, both separately and together, with claimants and/or their representatives or counsel to resolve claim disputes. *Id*. ¶ 10; Manifold Decl. ¶ 9.

### 1. Fraud Review

JND has numerous measures in place to assist with detecting and preventing fraud, including a proprietary set of technical and operational controls. Jarjoura (JND) Decl. ¶¶ 7-8. JND reviewed, processed, and determined the validity of the nearly one million claims submitted. During the claim validation process, JND undertook de-duplication steps such as analyzing and standardizing claimant addresses to ensure a single claim per claimant. *Id*. JND also reviewed the PayPal email addresses to ensure multiple payments are not directed to a single PayPal email address. *Id*.

### 2. Deficiency Notices

Across all Tuna End Payer Plaintiffs' Settlements, JND sent 207,825 deficiency notices to claimants whose claims were determined to be deficient. Jarjoura (JND) Decl. ¶ 9. Examples of deficiencies include: (i) failure to sign a mailed Claim Form, (ii) failure to provide purchase information or identification when requested, (iii) submission of both a Claim Form and a valid request for exclusion from the Settlements, (iv) individual claimants who provided a total purchase quantity of Packaged Tuna that is greater than the "Threshold" (the maximum quantity purchased during the Class Period that, in consultation with Settlement Class Counsel, was determined to be reasonable for typical household consumption), and (v) other defects that make it impossible for JND to fully and fairly process the claim. *Id*.

JND then reviewed all responses to the deficiency notices to determine if the required information was provided. Jarjoura (JND) Decl. ¶ 10. In the case of claims that exceeded the Threshold, if the claimant made the effort to timely respond to the deficiency notice via postal mail, included a copy of their government-issued ID, and provided an updated quantity under the Threshold, their claim was approved. *Id*. If their response to the deficiency notice did not provide an updated quantity or the quantity provided was above the Threshold, the purchases were capped at the Threshold. *Id*. If the deficiency response did not include a copy of the claimant's government-issued ID, was sent via email, or raised additional concerns, the claim was denied. *Id*. Any claim that was denied after review of a deficiency response was subsequently sent a denial letter. *Id*.

There were eleven deficiency responses received from entities claiming donated Packaged Tuna in amounts exceeding the Threshold. Jarjoura (JND) Decl. ¶ 10. After discussion with Class Counsel, and verification of these Class Members (i.e., reviewing tax documents, declarations, sample documentation, cross-reference with claims in the direct purchaser settlements etc.), their claims were approved for the full amount they claimed. *Id*.

The Settlement Administrator has completed an extensive, fair, and reasonable review of the nearly one million claims filed and has a final list of approved claimants for distribution. Jarjoura (JND) Decl. ¶ 19; Manifold Decl. ¶ 10.

## C. Plan of Distribution

Consumers now seek permission for JND to distribute payments based on its review (discussed above) and as specified on the claimant's Claim Form.[6] *See* Dkt.

---

[6] On May 1, 2026, the Ninth Circuit voluntarily dismissed the appeal of this Court's Order Denying Motion Requesting Settlement Administration Rescind Its Requirement Regarding Government Issued IDs. No further objections, motions or appeals are outstanding with regard to the claims administration process.

3286-3 at 13, ¶ 32, Ex. H (Claim Form). JND will send payments to the address (check) or email (electronic payment such as via PayPal) provided by the authorized claimant on the Claim Form. *Id*. If the total final payment of a particular claim is less than $5.00, no distribution will be made to the Authorized Claimant. *Id.* ¶ 33, Ex. H.[7] It is typical to provide for such a *de minimis* claim threshold so that the costs of administration are not out of proportion to the size of the payments. *Id*.

### D. Cost of Claims Administration and Distribution of Funds

JND previously provided a preliminary estimate of the costs of processing claims, running fraud analysis, and dispensing the Distribution Fund of between $2.1 million and $5.8 million depending on the number of claims filed. *See* Dkt. 3327 at 10 (citing the Intrepido-Bowden Decl. ¶ 42). For its work performed to date including notice costs, claims administration and processing, JND has been paid $3,996.940.53, with an outstanding amount of $628,209.58 invoiced, but not reimbursed.[8] Jarjoura (JND) Decl. ¶ 19. *See* Dkt. 3302 at 7 (approving $1.2 million for costs of notice for the Lion and StarKist settlements); and Dkt. 2734 (authorizing up to $5 million to be used for reasonable costs of Class and Settlement Notices and administration of the Settlement Fund).

JND estimates another $925,000 in administrative fees and expenses to distribute the initial payments via check and PayPal. Jarjoura (JND) Decl. ¶ 20. The estimate breakdowns as follows: (i) $335,000 for postage and other out-of-pocket passthrough expenses; (ii) $230,000 for check printing, PayPal issuance,

---

[7] *See also* Long Form Notice on Settlement Website (same language). *See* https://www.tunaendpurchasersettlement.com (IMPORTANT DOCUMENTS)

[8] JND provided monthly statements of tasks performed and costs incurred. Settlement Class Counsel reviewed each statement on a monthly basis and found such expenses to be reasonable in light of this complex and substantial settlement, extensive Notice Plan, and processing nearly one million claims, including a successful response to a court challenge to the deficiency notice process. Manifold Decl. ¶ 13.

dissemination services, bank account management and tax preparation; and (iii) $310,000 for contact center support, IVR maintenance fees, researching and responding to Class Member inquiries and payment reissue requests, database management, and website maintenance. *Id*. Also, given that the initial claim submissions in the COSI Settlement were received prior to August 2022, JND anticipates $50,000 attributed to handling returned undeliverable checks, researching for updated addresses, and processing reissues. *Id*.

### III.    COURT SHOULD APPROVE FINAL DISTRIBUTION

All the appropriate steps for the final distribution of the settlement funds have been completed. Notice of the final settlements was approved by Court and completed. *In re Packaged Seafood Products Antitrust Litig.*, 2024 WL 4875246, at *8 (S.D. Cal. Nov. 22, 2024) (noting the Notice Plan reached 70% of potential class members). All settlement funds have been gathered for distribution and appeals exhausted. Manifold Decl. ¶¶ 3-5. The Claims Administrator has reviewed all eligible claims and determined the validity of all Claim Forms submitted by claimants. *See* Jarjoura (JND) Decl. ¶¶ 5-19. The Court approved of and the Settlement Class was advised of the Distribution Plan with no objection received. Manifold Decl. ¶ 11.

### A. The Court Should Approve the Settlement Administrator's Recommendations Regarding Acceptance or Rejection of Claims

The Court should adopt the Settlement Administrator's recommendations regarding the acceptance or rejection of claims submitted on or before the applicable Claims Deadline. As set forth above, the Settlement Administrator has conducted an extremely thorough and diligent review of claims in this complex case. Jarjoura (JND) Decl. ¶¶ 5-19. All claims submitted after April 30, 2025 (Late Claim Cut-off Date) were denied as late. *Id*. ¶ 6. JND sent 207,825 deficiency notices to claimants whose claims were determined to be deficient or above the "Threshold.". *Id*.[9] Where JND

---

[9] The "Threshold" is a determination of the maximum quantity purchased during the Class Period that, in consultation with Class Counsel, was determined to be reasonable for typical household consumption. Jarjoura Decl. ¶¶ 9-10.

found claims that were incomplete or deficient, a claimant was given a fair opportunity to correct or supplement her claim. *Id*. ¶¶ 9-10. The Claims Administrator's requirement for a government-issued ID for certain suspicious claims was upheld by this Court. *See* Dkts. 3428, 3429. An appeal of the Court's decision was then dismissed by the Ninth Circuit Court of Appeals. *Id*. Finally, any claim that was denied after review of a deficiency response was subsequently sent a denial letter. *Id*. As part of this process, the Settlement Administrator and Lead Counsel, both separately and together, spent a significant amount of time working with claimants and/or their representatives or counsel to resolve claim disputes. *Id.* ¶ 10; Manifold Decl. ¶ 9.

Based on the claims process described in detail herein, the Court should approve the Claims Administrator's recommendation as to the acceptance and rejection of claims based on JND's comprehensive analysis. This analysis included, among other things: creating and entering Claim data into a unique database, fraud analysis, verifying the completeness and accuracy of information provided on claimants' Claim Forms, requesting supporting documentation for claims above a Threshold, calculating loss pursuant to the Court-approved Plan of Allocation as set forth in the Notice, and identifying deficiency and ineligibility conditions existing within individual Claims. Jarjoura (JND) Decl. ¶¶ 5-14. Claims which were deficient were denied. *Id*.

A class action settlement administrator's decision regarding class members' eligibility to participate in a distribution of settlement funds merits deference from the Court. *In re Int'l Air Transp. Surcharge Antitrust Litig.,* 2011 WL 6337625, at *2 ("The Settlement Administrator, who was involved in the mediation and negotiation of the settlement agreements, and has been administering the funds for three years, has direct and extensive knowledge of this case. . . . Thus, the Court must give some deference to his recommendation as to factual matters."). Consumers request that the Court accept the Claims Administrator's recommendations as to claim processing, the

deficiency process, and fraud analysis audit with respect to all claims submitted through April 30, 2025, including the Late Claims discussed below. *See* Jarjoura (JND) Decl. ¶¶ 5-14; Manifold Decl. ¶¶ 9,10.

### B. The Court Should Adopt Lead Counsel's Recommendation Regarding Late Claims

As directed by Settlement Class Counsel, the Settlement Administrator processed 310 Late Claims, and also considered late responses to requests for information if relevant documentation and/or information was provided. Jarjoura (JND) Decl. ¶¶ 6, 9-10; Manifold Decl. ¶ 8.  "A district court has discretion to allow late claims to a settlement fund." *Lemus v. H & R Block Enters., LLC*, No. C 09-03179 SI, 2013 WL 3831866, at *2 (N.D. Cal. July 23, 2013), aff'd sub nom. *Lemus v. Madar*, 594 F. App'x 419 (9th Cir. 2015) (citing *In re Valdez*, 289 F. App'x 204, 206 (9th Cir. 2008)); *see In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977).[10] The Manual for Complex Litigation also recommends that "[t]he court should allow adequate time for late claims before any refund or other disposition of settlement funds occurs." *Manual for Complex Litigation* (Fourth) § 21.662 (2004).

Here, notice was provided both via direct, digital, and published notice to a large consumer class. It is reasonable that many class members may have only seen and responded to either the digital or publication notice in *People* just at or after the Claims Cut-Off Date. The 310 Late Claims at issue here were nominally late (within a 120-day grace period), representing not even a one hundredth of a percent of the total claims filed, will not delay distribution of the settlement funds, and will not incur any further obligation to the Settling Defendants. The acceptance of these nominally

---

[10] Multiple circuits had held that the court maintains an inherent equitable power to "allow late-filed proofs of claim and late-cured proofs of claim." *In re Cendant Corp. Prides Litig.*, 233 F.3d 188, 195 (3d Cir. 2000); accord *Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985*); Zients v. LaMorte*, 459 F.2d 628, 630 (2d Cir. 1972); cf. *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (recognizing that "the district court has discretion to extend a class member's time to opt out" of a class settlement).

late claims avoids any potential objections with regard to lateness and saves administration time. Good cause supports Settlement Class Counsel's request to accept the 310 Late Claims. *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2022 WL 562831, at *6 (N.D. Cal. Feb. 24, 2022). *See also* Jarjoura (JND) Decl. ¶ 6 (avoid further administration costs with outreach).

This approach avoids the delay and expense of continuing litigation over Late Claims. Manifold Decl. ¶ 8. In approving settlement administration in this context, courts must use their equitable powers under Rule 23 to manage the disparate interests competing over a finite pool of assets with which to satisfy the class. "A primary use of these equitable powers is balancing the goals of expedient settlement distribution and the consideration due to late-arriving class members." *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 246 F.3d 315, 321 (3d Cir. 2001) (internal quotation marks and citations omitted). Ultimately, "[t]he goal of any distribution method is to get as much of the available damages remedy to class members as possible and in as simple and expedient a manner as possible." 4 William B. Rubenstein, *Newberg on Class Actions* § 12:15 (5th ed.) (Westlaw 2018).    The Court has discretion to allow claims submitted after its Claims Deadline. *In re Gypsum Antitrust*, 565 F.2d at 1128. A Court may assert this power to allow late-filed proofs of claim and late-cured proofs of claim."). In the exercise of that discretion, courts have allowed late claims in some circumstances and denied them in others. *See*, *e.g.*, *In re Valdez*, 289 F. App'x at 206. Courts often approve the full payment of late claims. Settlement Class Counsel respectfully request that 310 Late Claims filed during the 120-day grace period after the Class Cut-Off Date be accepted and request that no other claims after April 30, 2025 (end of the 120-day grace period) be eligible for payment.

### C. Recovery Forfeited if Checks Not Cashed Within 60 Days

If approved by the Court, JND will then make a distribution of the net settlement fund. If an Authorized Claimant requested a check, she will be notified that if she does not cash her distribution check within 60 days of issuance or re-issuance

if based on updated information, the check will lapse and her entitlement to recovery will be forfeited. If any balance remains in the net settlement fund six months after the final distribution, Settlement Class Counsel will file a Status Report. *See* § III.G (Proposed Distribution Schedule) (see below). In the Final Accounting, after deducting JND's fees and expenses for distribution, payment of any taxes, the cost of preparing appropriate tax returns, and any escrow fees, then Settlement Class Counsel will request that the remaining funds be contributed to an appropriate *cy pres* recipient, approved by the Court.

### D. Court Should Approve Cy Pres Recipient Designed in the Settlement Notice

The Settlement Class Members were given notice, without any objection, of the parties' proposed selection of an  appropriate *cy pres* recipient – the Consumer Protection Policy Center (CPPC) at the University of San Diego.[11] *See In re Easysaver Rewards Litig.,* 906 F.3d 747, 753 (9th Cir. 2018) (in a settlement for the mishandling of billing information, *cy pres* award to three beneficiaries including University of San Diego School of Law for funding programs "regarding privacy or internet data security" approved). In *Easysaver,* an Objector argued that the approximately $3 million remaining should be distributed to class members instead. *Id*. at 760. The Ninth Circuit rejected the Objector's arguments and concluded that "it was reasonable for the district court to approve the use of a *cy pres* distribution." *Id*. at 760-761 (overruling the objector's geographic challenge because funding academic programs will have a nation-wide impact). "The availability of *cy pres* as a mechanism to distribute unclaimed funds rests on the premise that class action settlements will sometimes have just that—unclaimed funds." *Id*.

The recipient of *cy pres* funding should be selected in light of "the objectives

---

[11] *See* https://www.tunaendpurchasersettlement.com (IMPORTANT DOCUMENTS) Long Form Notice, ¶ 8.

of the underlying statute(s)" and the interests of silent class members. *Easysaver,* 906 F.3d at 761 (citation omitted). Here, the Consumer Protection Policy Center (CPPC) at the University of San Diego is an appropriate *cy pres* recipient in a Settlement alleging price-fixing of a food staple on behalf of Consumers. There is "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012) (citation modified). This *cy pres* award is clearly guided by "(1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Dennis*, 697 F.3d at 865(citation modified).

### E. Records Retention Policy Should Be Approved

Unless otherwise ordered by the Court, the Claims Administrator should be permitted to destroy paper copies of all Claims and supporting documentation one year after the Final Accounting is filed with the Court. Jarjoura (JND) Decl. ¶16. Unless otherwise ordered by the Court, two years after the Final Accounting is filed with the Court, the Claims Administrator will destroy the electronic copies of the Proofs of Claim and all supporting documentation. *Id*. ¶17.

### F. The Court Should Authorize Payment of the Claims Administrator's Unpaid Invoices and Allow a Reserve for the Costs of Distribution

The Settlement Administrator provided Lead Counsel with invoices detailing an additional $628,209.58 in fees and expenses incurred from June 27, 2025 through May 31, 2026 in order to administer claims submitted by the Class Members, prepare for the filing of this motion, and prepare to distribute the settlement funds to Class Members. Jarjoura (JND) Decl. ¶ 19; Manifold Decl. ¶14. Settlement Class Counsel reviewed each monthly invoice. Manifold Decl. ¶ 13. The Settlement Administrator's work in this case required a high level of skill, dedication, and substantial effort. Manifold Decl. ¶15. The Settlement Administrator had to process and track nearly a million claims and conduct fraud and validation process over each claim submitted. Jarjoura (JND) Decl. ¶ 5. For example, over 6,000 claims were filed in paper form and had to be manually entered in a database. *Id*. JND also sent and resolved over

200,000 deficiency notices. *Id*. ¶ 9.

Based on first-hand knowledge of the work performed by the Settlement Administrator, Settlement Class Counsel recommends that the Court approve the payment of this unpaid amount as fair, reasonable and necessary for the administration of claims in this complex case. Manifold Decl. ¶16.

Based on estimates provided by JND, Settlement Class Counsel also respectfully request that Court permit a reserve in the amount of $925,000 from the net settlement fund prior to distribution to cover JND's costs of final distribution. Manifold Decl. ¶17. If the Court approves the Settlement Administrator's unreimbursed fees and costs and the proposed reserve, the total estimated costs for Notice and Claims Processing through Final Distribution will be $5.8 million.

### G. Proposed Schedule for Distribution

Settlement Class Counsel, after consulting with the Claims Administrator proposes the following schedule for distribution of the net settlement fund:

**SCHEDULE FOR SETTLEMENT DISTRIBUTION**

| TIMING | EVENT |
|---|---|
| *10 days* **AFTER DISTRIBUTION ORDER IS SIGNED** | Settlement Class Counsel will transfer the net settlement funds to JND for distribution ("FUND TRANSFER"). |
| *30 days* **AFTER FUND** *TRANSFER* | JND will initiate distribution of the funds via check and electronic payment depending on the authorized claimants request for payment ("DISTRIBUTION"). |
| *60 days AFTER DISTRIBUTION* | All checks canceled and subject to re-distribution to check recipient upon updated information. |
| *120 days AFTER DISTRIBUTION* | Settlement Class Counsel will file a status report updating the Court on the status of distribution process. |
| *180 days AFTER DISTRIBUTION* | Final Accounting to the Court re: |

| | distribution of net settlement funds and approval of distribution of unclaimed funds to cy pres recipient. |
|---|---|

## IV.    CONCLUSION

For the foregoing reasons, Consumers respectfully request that the Court enter an Order: 1) approving the Settlement Administrator's recommendations regarding the ineligibility of claims set forth in the Jarjoura Declaration; 2) authorizing payment of all claims approved by the Settlement Administrator according to the *pro rata* Plan of Allocation as approved by the Court and set forth in the Notices to the Settlement Class; 3) authorizing payment to the Settlement Administrator for unreimbursed costs and expenses incurred in the amount of $628,209.58;  4) authorizing Plaintiffs to reserve in escrow $925,000 for the payment of additional claims administration costs, as set forth above and in the Jarjoura Declaration (¶17); and 5) approving the proposed Distribution Schedule.  Finally, the Consumers ask the Court to grant the motion for final disbursement of the net settlement fund, which gives effect to the Plan of Allocation previously approved by the Court, and find that the proposed distribution of the net settlement fund is fair, reasonable, and adequate.

Dated: June 18, 2026          By:      /s/ Betsy C. Manifold
                                         BETSY C. MANIFOLD

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
BETSY C. MANIFOLD
RACHELE R. BYRD
750 B Street, Suite 1820
San Diego, CA 92101
Telephone:   619/239-4599
Facsimile:    619/234-4599
manifold@whafh.com
byrd@whafh.com

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
MARK C. RIFKIN

THOMAS H. BURT
270 Madison Avenue
New York, New York 10016
Telephone:  212/545-4600
Facsimile:  212/545-4653
rifkin@whafh.com
burt@whafh.com

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLC**
CARL MALMSTROM
111 West Jackson, Suite 1700
Chicago, IL 60604
Telephone: 312/984-0000
Facsimile:  312/212-4401
malmstrom@whafh.com

*Class Counsel for the End Payer Plaintiffs*