BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. BYRD (190634)
byrd@whafh.com
**WOLF HALDENSTEIN ADLER**
  **FREEMAN & HERZ LLP**
750 B Street, Suite 1820
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

*Class Counsel for the End Payer Plaintiffs*

[Additional counsel appears on signature page]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | ) Case No.: 15-MD-2670 DMS (MSB) |
| | ) |
| | ) **DECLARATION OF BETSY C.** |
| | ) **MANIFOLD IN SUPPORT OF** |
| | ) **END PAYER PLAINTIFFS'** |
| | ) **MOTION FOR FINAL** |
| | ) **DISBURSEMENT OF CLASS** |
| | ) **ACTION SETTLEMENT FUNDS** |
| ————————————— | ) |
| | ) DATE:      July 31, 2026 |
| This Document Relates to: | ) TIME:      1:30 p.m. |
| | ) JUDGE:    Hon. Dana M. Sabraw |
| End Payer Plaintiffs Class Track | ) COURT:    13A (13th Floor) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| ————————————— | ) |

DECL. OF BETSY C. MANIFOLD ISO EPPS' MOT. FOR FINAL DISTRIBUTION
NO. 15-MD-2670 DMS (MSB)

I, Betsy C. Manifold, declare as follows:

1.     I am an attorney licensed to practice before all the courts of the States of California, New York and Wisconsin and many other federal Courts of Appeals and District Courts. I am a partner of the law firm Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein"), Class Counsel for End Payer Plaintiffs ("EPPs"). I submit this declaration in support of End Payer Plaintiffs' Motion for Final Distribution of the Class Action Settlement Funds. I have personal knowledge of the matters stated herein and, if called upon, I could and would competently testify thereto.

2.     Since 2016, I have been responsible for litigating this action as Class Counsel for the End Purchaser Plaintiff Classes, including, among many other tasks, managing and coordinating the team of contributing attorneys who assisted in drafting complaints in this matter, litigating the matter through the discovery, law and motion, expert discovery, and preparing for trial. My firm has been involved in every aspect of this Action as Court-appointed Class Counsel. A summary of relevant events is well-known to this Court and is set forth in this Court's prior orders. *See In re Packaged Seafood Products Antitrust Litig.*, 2024 WL 4875246 (Nov. 22. 2024 S.D. Cal.); *In re Packaged Seafood Products Antitrust Litig.*, 2022 WL 789184 (S.D. Cal. Feb. 8, 2022); *In re Packaged Seafood Products Antitrust Litig.*, 242 F. Supp. 2d 1033 (S.D. Cal. 2017); and *In re Packaged Seafood Products Antitrust Litig.*, 338 F. Supp. 2d 1079 (S.D. Cal. 2018).

**SETTLEMENT FUNDS READY FOR DISTRIBUTION**

3.     After a decade of hard-fought litigation, the EPPs reached settlements with three separate groups of Defendants: (i) StarKist and Dongwon Industries Co., Ltd. (collectively "StarKist"), (ii) Lion Companies and (iii) Chicken of the Sea, Inc. ("COSI") (altogether the "Settling Defendants"). These settlements fully and finally resolved this indirect purchaser antitrust class action.

4. As part of the Settlements approved by the Court, each group of defendants negotiated an extended payment plan. The StarKist Settlement Agreement provided that StarKist pay a total of $130,000,000 in cash, payable in installments on specified dates over a period ending five hundred days after Preliminary Approval (or within five hundred days of August 23, 2024). *In re Packaged Seafood Products Antitrust Litig.*, 2024 WL 4875246, *3. Under the terms of the Lion Agreement, the Lion Companies  deposited $3 million in the Settlement Fund Escrow upon preliminary approval (Dkt. 3286-2 at 54, ¶ 1.22) and paid the remaining $3 million 45 days after Final Approval. *Id.* The earlier partial settlement with COSI added $16.2 million to the Total Settlement Benefits of $152.2 million. Dkt. 2871 (COSI Final Approval Order) and 3286-1 (MPA) at 7 n. 2. The final COSI payment in March 2026 was made no later than 30 days before final distribution of the settlement funds. With the final settlement payments by StarKist in December 2025 and by COSI in March 2026, the Settling Defendants have completed the payment of all Settlement Benefits and reached a final total of $152,200,000 in cash.

5. Due to the extended payment schedule, payments to authorized claimants from the net settlement funds were not immediately distributed but held until all settlement amounts have been paid by the Settling Defendants as required by the Settlement Agreements. *See* Dkt. 3286-3 at 16, ¶ 41. It was not efficient to make multiple distributions, with the costs of claims administration. Instead, it was more efficient to delay distribution until all settlement funds are received. With all judgements entered, all appeal periods completed, and all settlement benefits received, the net settlement fund is now ready for final distribution.

**NET SETTLEMENT FUND AS OF JUNE 1, 2026**

6. As of  June 1, 2026, the net settlement fund is $97,539,130.47. The Net Settlement Amount is calculated as follows: all settlement proceeds plus interest, less 93% of the Court-approved attorneys' fees, expenses, class representative incentive

awards, taxes, accounting fees, escrow fees, and court-approved distributions to the Settlement Administrator for the Notice Plan.

| FUNDING RECEIVED | |
|---|---|
| Tri Union | $16,836,450.89 |
| Lion | $6,000,000.00 |
| Starkist | $130,000,000.00 |
| **Total Funding Received** | **$152,836,450.89** |
| | |
| **DISBURSEMENTS & RESERVES** | |
| Service Awards | $294,000.00 |
| Expense Reimbursement | $5,567,137.80 |
| Fees Distribution-paid | $41,745,224.72 |
| Fees Distribution-to be paid | $6,575,514.68 |
| | |
| **FUNDING RECEIVED** | |
| Media Funding | $914,090.00 |
| JND paid through July 2024 | $1,103,386.09 |
| JND paid since December 2024 | $1,589,732.22 |
| JND Outstanding Balance-Non-COSI | $594,570.95 |
| JND Outstanding Balance-COSI | $33,638.63 |
| **Total Disbursements & Reserves** | **$58,417,295.09** |
| | |
| **Interest Earned** | **$3,119,974.67** |

See Dkt. 3325 at 2-3 (total service awards in the amount of $294,000) at 3 (litigation expenses in the amount of $1,618,489.24 and attorneys' fees in the amount of

$48,320,739.40); Dkt. 3302 at 7 (approving $1.2 million for costs of notice for the Lion and StarKist settlements); and Dkt. 2734 (authorizing up to $5 million for reasonable costs of Class and Settlement Notices and administration of the Settlement Fund).

## FINAL ATTORNEY FEES WILL BE DISTRIBUTED WITH NET SETTLEMENT FUNDS TO AUTHORIZED CLAIMANTS

7.     Attorney's fees were paid along the same schedule that the settlement funding was received and the last 7.3% of attorney fees will be paid when the Court approves distribution of the net settlement fund.

## LATE CLAIMS SHOULD BE APPROVED BY THE COURT

8.     Based on the Notice for the StarKist and Lion Settlements, 437,522 claims were received through JND's secure online portal and 6,370 were received via postal mail. Jarjoura (JND) Decl. ¶5. Across all settlements, a total of 980,568 claims were filed before the Claims Cut-Off Date of December 31, 2024. (JND) Decl. ¶5; https://www.tunaendpurchasersettlement.com/ (Website Notice) (File a Claim by initial claims date of **December 31, 2024**). At my firm's direction, JND then processed an additional 310 "Late Claims", defined as claims received within first 120 days after the Claims Cut-Off Date ("the Grace Period.")  As Settlement Class Counsel, we then directed the Claims Administrator to deny all further claims received after the 120-day Grace Period (April 30, 2025). As Settlement Class Counsel, we believe that accepting these nominally late claims avoids further administration costs associated with claimant outreach and determining validity based on lateness based on potential motion practice and even Appeal. The Claims Administrator agreed with this decision. Jarjoura (JND) Decl. ¶6.

## CLAIM PROCESS WAS FAIR, REASONABLE AND ADEQUATE

9.    JND's Claims Process consisted of multiple critical steps. First, the Settlement Administrator established and followed quality control measures to ensure that each claim was properly tracked and notified claimants of potential deficiencies,

including incomplete Claim Forms (not signed, no claim number), potentially duplicative, and Claims that lacked supporting information for claims over a threshold amount. Jarjoura Decl. ¶¶ 5-10. Second, Claimants had adequate opportunity to cure any deficiencies by providing additional information or documentation. *See*, *e.g.*, *id.* ¶¶ 9-10. At our request, 310 Late Claims (filed within a 120-day Grace Period) were processed. As Settlement Class Counsel, where possible, we asked the Settlement Administrator to review claims filed in Direct Purchaser Settlement to avoid any duplication of certain large claims. We also spent time both with and without the Settlement Administrator with claimants and/or their representatives or counsel to resolve claim disputes.

10.    Based on our review of JND's claim processing methodology, its deficiency notice program, and denial letters, we believe that the JND's Claim Administration Process was fair, reasonable, and adequate.

**PLAN OF ALLOCATION**

11.    The Court approved the pro rata Plan of Allocation; and as set forth in the Settlement Notices, the net settlement funds will be allocated on a *pro rata* basis to authorized claimants (as identified by the court-appointed Claims Administrator) based on the amount of Packaged Tuna purchased during the Class Period. *See* Dkt. 3313-1, Ex. F (***Press Release***) at 54 (estimating price per can recovery). The Court approved of and the Settlement Class was advised of the Distribution Plan with no objection received.

12.    Distribution of the net settlement funds, as set forth in Jarjoura (JND) Declaration, will give effect to the approved pro rata Plan of Allocation compensating class members based on the extent of their injuries. The proposed plan of distribution provides for a payment to all class members with valid claims and as provided in the Settlement Class Notice, sets a "floor" such that each approved claimant is paid no less than $5.00.

## COSTS OF ADMINISTRATION ARE REASONABLE AND SHOULD BE APPROVED

13.  JND provided monthly statements of tasks performed and costs incurred. As Settlement Class Counsel, we  reviewed each statement monthly and found such expenses to be reasonable considering this complex and substantial settlement, extensive Notice Plan, and processing nearly one million claims, including a successful response to a court challenge to the deficiency notice process.

14.  The Settlement Administrator provided us, as Settlement Class Counsel, with invoices detailing an additional $628,209.58 in fees and expenses incurred from June 27, 2025 through May 31, 2026 in order to administer claims submitted by the Class Members, prepare for the filing of this motion, and prepare to distribute the settlement funds to Class Members. Jarjoura (JND) Decl. ¶ 16.

15.  The Settlement Administrator's work in this case required an elevated level of skill, dedication, and substantial effort. The Settlement Administrator had to process and track nearly a million claims and conduct fraud and validation process over each claim submitted. Jarjoura (JND) Decl. ¶ 5. For example, over 6,000 claims were filed in paper form and had to be manually entered into a database. *Id*. JND also sent and resolved over 200,000 deficiency notices. *Id*. at ¶ 9.

16.  Based on first-hand knowledge of the work performed by the Settlement Administrator, Settlement Class Counsel recommends that the Court approve the payment of this unpaid amount as fair, reasonable and necessary for the administration of claims in this complex case.

17.  Based on estimates provided by JND, Settlement Class Counsel also respectfully request that Court permit a reserve in the amount of $925,000 from the Net Settlement Fund prior to distribution to cover JND's costs of final distribution. If the Court approves the Settlement Administrator's unreimbursed fees and costs and the proposed  reserve, the total estimated costs for Notice and Claims Processing through Final Distribution will be $5.8 million.

18. Settlement Class Counsel respectfully request that the Court enter an Order: 1) approving the Settlement Administrator's recommendations regarding the ineligibility of claims set forth in the Jarjoura Declaration; 2) authorizing payment of all claims approved by the Settlement Administrator according to the *pro rata* Plan of Allocation as approved by the Court and set forth in the Notices to the Settlement Class; 3) authorizing a payment to the Settlement Administrator for unreimbursed costs and expenses incurred in the amount of $$628,209.58;  4) authorizing Plaintiffs to reserve in escrow $925,000 for the payment of additional claims administration costs, as set forth above and in the Jarjoura Declaration (¶17); and approving the proposed schedule for distribution of the net settlement fund (set forth below).

19. Settlement Class Counsel, based on input from the Claims Administrator, proposes the following schedule for final distribution of the net settlement fund.

### PROPOSED SCHEDULE FOR SETTLEMENT DISTRIBUTION

| TIMING | EVENT |
|---|---|
| *10 days AFTER DISTRIBUTION ORDER IS SIGNED* | Settlement Class Counsel will transfer the net settlement funds to JND for distribution ("FUND TRANSFER"). |
| *30 days AFTER FUND TRANSFER* | JND will initiate distribution of the funds via check and electronic payment depending on the authorized claimants request for payment ("DISTRIBUTION"). |
| *60 days AFTER DISTRIBUTION* | All checks canceled and subject to re-distribution to check recipient upon updated information. |
| *120 days AFTER DISTRIBUTION* | Settlement Class Counsel will file a status report updating the Court on the status of distribution process. |
| *180 days AFTER DISTRIBUTION* | Final Accounting to the Court re: distribution of net settlement funds and approval of distribution of unclaimed funds to *cy pres* recipient. |

Dated: June 16, 2026                    By:    /s/ Betsy C. Manifold
                                               BETSY C.  MANIFOLD