**UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE: PACKAGED SEAFOOD PRODUCTS ANTITRUST LITIGATION | Case No. 3:15-md-02670-DMS-MSB<br><br>**ORDER GRANTING END PAYOR PLAINTIFFS' MOTION FOR FINAL DISBURSEMENT OF CLASS ACTION SETTLEMENT FUNDS** |
| This document relates to:<br><br>All End Payor Plaintiff Actions | |

Pending before the Court is the End Payor Plaintiffs' ("EPPs") motion for final distribution of a net settlement fund. The net settlement fund arises out of settlements reached with three separate groups of Defendants: (i) StarKist and Dongwon Industries Co., Ltd. (collectively "StarKist"), (ii) Lion Companies and (iii) Chicken of the Sea, Inc. ("COSI") (altogether the "Settling Defendants"). These settlements fully and finally resolved this indirect purchaser antitrust class action. *See In re Packaged Seafood Products Antitrust Litig.*, No. 3:15-MD-02670-DMS (MSB), 2024 WL 4875246 (S.D. Cal. Nov. 22, 2024). According to Settlement Class Counsel, with the final settlement payments by StarKist in December 2025 and by COSI in March 2026, the Settling Defendants have completed the payment of all Settlement Benefits and reached a final total of $152,200,000. Due to the costs of claim administration, payments to the settlement class were not immediately distributed but held until all settlement amounts have been paid by the Settling Defendants as required by the Settlement Agreements. *See* Dkt. 3286-3 at 16, ¶ 41.

Having considered the EPPs' motion, the record in this case, and the supporting papers, the Court finds that an Order authorizing the distribution of the net settlement fund to the approved claimants is proper and appropriate at this time because all the prerequisites have been satisfied. All funds to be distributed are in hand, deposited in escrow by the Settling Defendants, starting in 2022 and ending in 2026, judgments have been entered, and the time to appeal has expired.[1] *See* 4 *Newberg on Class Actions*, § 12:19 (5th ed.). The Court previously approved the *pro rata* Plan of Allocation; and as set forth in the Settlement Notices, the net settlement funds will be allocated on a *pro rata* basis to authorized claimants (as identified by the court-appointed Claims Administrator) based on the amount of Packaged Tuna purchased during the Class Period. *See* Dkt. 3313-1, Ex. F (***Press Release***) at 54 (estimating price per can recovery).

**FINAL PLAN OF DISTRIBUTION**

[1] The Court also notes that on May 1, 2026, the Ninth Circuit dismissed the appeal of the Court's Order upholding JND's Deficiency Letters. *See* Dkt. 3428.

Distribution of the net settlement funds, as set forth in the Declaration of Lana Jarjoura, an executive with the Claims Administrator, JND Legal Administration "JND"), will give effect to the approved *pro rata* Plan of Allocation compensating class members based on the extent of their injuries. See *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 332 (N.D. Cal. 2018) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable."). The proposed plan of distribution provides for a payment to all class members with valid claims and as provided in the Settlement Class Notice, sets a "floor" such that each approved claimant is paid no less than $5.00.

**CLAIMS PROCESS WAS FAIR, ADEQUATE AND REASONABLE**

JND's claims process consisted of multiple critical steps. First, the Claims Administrator established and followed quality control measures to ensure that each claim was properly tracked and notified claimants of potential deficiencies, including incomplete Claim Forms (not signed, no claim number), potentially duplicative, and Claims that lacked supporting information for claims over a threshold amount. Jarjoura (JND) Decl. ¶¶ 5-10. Second, Claimants had adequate opportunity to cure any deficiencies by providing additional information or documentation. *See*, *e.g.*, *id*. ¶¶ 9, 10. At the request of Settlement Class Counsel, the Claims Administrator processed certain late claims filed within a 120-day grace period and considered late responses to requests for information considered to be timely if relevant documentation and/or information were provided. *Id*. ¶ 6. Additionally, where possible, the Claims Administrator used claim information obtained in Direct Purchaser Settlement to avoid any duplication of certain large claims. *See id*. ¶ 15. Third, the Claims Administrator and Lead Counsel spent time working, both separately and together, with claimants and/or their representatives or counsel to resolve claim disputes. *Id*. ¶ 10. Class member participation in the claims process was robust. JND processed and reviewed a total of 980,568 claims and sent 207,825 deficiency notices to claimants whose claims were determined to be deficient. Jarjoura (JND) Decl. ¶¶ 5,9.

The Court finds that that the claims process described by JND is reasonable, adequate, and fair. A class action settlement administrator's decision regarding class members' eligibility to participate in a distribution of settlement funds merits deference from the Court. *In re Int'l Air Transp. Surcharge Antitrust Litig.,* No. M 06-01793 CRB, 2011 WL 6337625, at *2 (N.D. Cal. Dec. 19, 2011), aff'd, 577 F. App'x 711 (9th Cir. 2014) ("The Settlement Administrator, who was involved in the mediation and negotiation of the settlement agreements, and has been administering the funds for three years, has direct and extensive knowledge of this case. . . . Thus, the Court must give some deference to his recommendation as to factual matters."). The Court approves the Claims Administrator's recommendations regarding claim processing, the deficiency process, and fraud analysis audit with respect to all claims submitted through April 30, 2025, including the Late Claims discussed below.

**APPROVAL OF LATE CLAIMS**

As to 310 Late Claims processed by the Claims Administration at the direction of Settlement Class Counsel, "[a] district court has discretion to allow late claims to a settlement fund." *Lemus v. H & R Block Enters., LLC*, No. C 09-03179 SI, 2013 WL 3831866, at *2 (N.D. Cal. July 23, 2013), aff'd sub nom. *Lemus v. Madar*, 594 F. App'x 419 (9th Cir. 2015) (citing *In re Valdez*, 289 F. App'x 204, 206 (9th Cir. 2008)); *see In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1128 (9th Cir. 1977). The Manual for Complex Litigation also recommends that "[t]he court should allow adequate time for late claims before any refund or other disposition of settlement funds occurs." *Manual for Complex Litigation* (Fourth) § 21.662 (2004).

The 310 Late Claims at issue here were nominally late (within a 120-day grace period), representing not even one hundredth of a percent of the total claims filed, will not delay distribution of the settlement funds, and will not incur any further obligation to the Settling Defendants. The acceptance of these nominally late claims avoids any potential objections regarding lateness and saves administration time. Good cause supports Settlement Class Counsel's request to accept the 310 Late Claims. *Norton v. LVNV Funding, LLC*, No. 18-CV-05051-DMR, 2022 WL 562831, at *6 (N.D. Cal.

Feb. 24, 2022). *See also* Jarjoura (JND) Decl. ¶ 6 (avoid further administration costs with outreach).

**OUTSTANDING COSTS AND EXPENSES OF CLAIMS ADMINISTRATION**

The Claims Administrator provided Lead Counsel with invoices detailing an additional $628,209.58 in fees and expenses incurred from June 27, 2025, through May 31, 2026, to administer claims submitted by the Settlement Class Members, prepare for the filing of this motion, and prepare to distribute the net settlement fund to Settlement Class Members. Jarjoura (JND) Decl. ¶ 16. Settlement Class Counsel reviewed each monthly invoice and determined that such fees and expenses are reasonable. This case required an elevated level of skill, dedication, and substantial effort. The Claims Administrator had to process and track nearly a million claims and conduct fraud and validation process over each claim submitted. Jarjoura (JND) Decl. ¶ 5. For example, over 6,000 claims were filed in paper form and had to be manually entered into a database. *Id*. JND also sent and resolved over 200,000 deficiency notices. *Id*. ¶ 9. The Court approves the payment of this unpaid amount as fair, reasonable and necessary for the administration of claims in this complex antitrust class action.

Based on estimates provided by JND, Class Counsel asks that the Court permit a reserve in the amount of $925,000 from the net settlement fund prior to distribution to cover JND's costs of final distribution. JND provided a detailed breakdown of the projected costs and expenses as follows: (i) $335,000 for postage and other out-of-pocket passthrough expenses; (ii) $230,000 for check printing, PayPal issuance, dissemination services, bank account management and tax preparation; and (iii) $310,000 for contact center support, IVR maintenance fees, researching and responding to Settlement Class Member inquiries and payment reissue requests, database management, and website maintenance. *Id*. Also, given that the initial claim submissions in the COSI Settlement were received prior to August 2022, JND anticipates $50,000 attributed to handling returned undeliverable checks, researching

for updated addresses, and processing reissues. *Id*. Based on the detailed estimates provided, the Court finds that this reserve is reasonable.

**_CY PRES_ RECIIPIENT IS APPROPRIATE**

The Settlement Class Members were given notice, without any objection, of the parties' proposed selection of an appropriate *cy pres* recipient – the Consumer Protection Policy Center (CPPC) at the University of San Diego.[2] *See In re Easysaver Rewards Litig.,* 906 F.3d 747, 753 (9th Cir. 2018) (in a settlement for the mishandling of billing information, *cy pres* award to three beneficiaries including University of San Diego School of Law for funding programs "regarding privacy or internet data security" approved). "The availability of *cy pres* as a mechanism to distribute unclaimed funds rests on the premise that class action settlements will sometimes have just that—unclaimed funds." *Id*.

The selection of this *cy pres* recipient is consistent with "the objectives of the underlying statute(s)" and the interests of silent class members. *Easysaver,* 906 F.3d at 761 (citation omitted). Here, the Consumer Protection Policy Center (CPPC) at the University of San Diego is an appropriate *cy pres* recipient in a Settlement alleging price-fixing of a food staple on behalf of Consumers. There is "a driving nexus between the plaintiff class and the *cy pres* beneficiaries." *Dennis v. Kellogg Co*., 697 F.3d 858, 865 (9th Cir. 2012) (citation modified). This *cy pres* award is clearly guided by "(1) the objectives of the underlying statute(s) and (2) the interests of the silent class members." *Dennis*, 697 F.3d at 865(citation modified). The Court finds that the CPPC is an appropriate recipient. Once the Settlement Class Counsel submits the Final Accounting, the Court will consider and approve the distribution of unclaimed funds to the *proposed* cy pres recipient.

The Court finds that the net settlement fund is ready for final distribution.

---

[2] *See* https://www.tunaendpurchasersettlement.com (IMPORTANT DOCUMENTS) Long Form Notice, ¶ 8.

Accordingly, the Court **GRANTS** the EPPs' motion and **ORDERS** the following:

(1) The Court finds that Claims Administrator has completed a fair, reasonable, and adequate review of the claims and approves the recommendations of the Claims Administrator as to the acceptance and rejection of claims, including the 310 Late Claims.

(2) The Court approves JND's recommendation that if an authorized claimant requested a check, the authorized claimant will be notified that if he or she does not cash her distribution check within sixty (60) days of issuance or re-issuance, the check will lapse and any entitlement to recovery will be forfeited.

(3) The Claims Administrator is permitted to destroy paper copies of all Claims and supporting documentation one year after the Final Accounting is filed with the Court and is permitted to destroy all electronic copies of the Proofs of Claims and all supporting documentation two years after the Final Accounting is filed with the Court.

(4) The Court authorizes an additional payment to the Claims Administrator in the amount of $628,209.58 for claims administration services undertaken to date.

(5) The Court authorizes a reserve of $925,000 to cover the anticipated costs of distribution of the net settlement fund and any additional monies required for the payment of taxes.

(6) The Court directs that the net settlement fund be disbursed to Settlement Class Members with eligible claims ("Authorized Claimants"), as described herein and in the Declaration of Lara Jarjoura filed in support of this Motion.

(7) The Court approves the following schedule for distribution of the net settlement fund.

| **TIMING** | **EVENT** |
|---|---|
| ***10 days* AFTER DISTRIBUTION *ORDER IS SIGNED*** | Settlement Class Counsel will transfer the net settlement funds to JND for distribution ("FUND TRANSFER"). |
| ***30 days* AFTER FUND *TRANSFER*** | JND will initiate distribution of the funds via check and electronic payment depending on the authorized claimants request for payment ("DISTRIBUTION"). |
| ***60 days AFTER DISTRIBUTION*** | All checks canceled and subject to re-distribution to check recipient upon updated information. |
| ***120 days AFTER DISTRIBUTION*** | Settlement Class Counsel will file a status report updating the Court on the status of distribution process. |
| ***180 days AFTER DISTRIBUTION*** | Final Accounting to the Court re: distribution of net settlement funds and approval of distribution of unclaimed funds to cy pres recipient. |

**IT IS SO ORDERED.**

Dated: July 27, 2026

Hon. Dana M. Sabraw
United States District Judge